# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Case No. 19-34054 (SGJ) |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>*Plaintiff*<br><br>v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND | Adv. Pro. No. 21-03076-sgj<br><br>DEFENDANTS JAMES DONDERO, DUGABOY INVESTMENT TRUST, GET GOOD TRUST, AND STRAND ADVISORS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE |

DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,

*Defendants.*

**DEFENDANTS JAMES D. DONDERO, DUGABOY INVESTMENT TRUST, GET GOOD TRUST, AND STRAND ADVISORS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE**

Pursuant to 28 U.S.C. §§ 157(d) and (e), Federal Rule of Bankruptcy Procedure 5011 and Local Bankruptcy Rule 5011-1, Defendants James Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc. ("Dondero Defendants") hereby respectfully move to withdraw the reference of the Complaint and Objection to Claims filed by Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust ("Kirschner Complaint"), from the United States Bankruptcy Court for the Northern District of Texas to the United States District Court for the Northern District of Texas.

**I.      INTRODUCTION**

1.      The Bankruptcy Court lacks post-confirmation jurisdiction to adjudicate this adversary proceeding, which was filed more than eight months after the Bankruptcy Court confirmed the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) (then "Plan") and which asserts a myriad of non-core, state-law claims that can have no conceivable impact on the implementation or execution of the confirmed Plan. Moreover, critically, the Dondero Defendants have a constitutional right to a trial by jury on all claims set forth in the Kirschner Complaint and have not, and do not, consent to the Bankruptcy Court's adjudication of this proceeding. Judicial economy and efficiency are best served by withdrawal

of the reference now, so that the merits of the underlying dispute may be fully adjudicated in the proper forum.

## II. FACTUAL BACKGROUND

### A. The Bankruptcy Proceedings and the Dondero Defendants' Role in Bankruptcy

2. On October 16, 2019, Highland Capital Management, L.P. ("HCMLP" or the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

3. Defendant James Dondero ("Mr. Dondero") is the former President and Chief Executive Officer of HCMLP and a former officer and member of the Board of Directors of Defendant Strand Advisors, Inc. ("Strand"), the general partner of HCMLP. Just three months after HCMLP's bankruptcy filing, in January 2020, Mr. Dondero agreed to resign from his positions at HCMLP and Strand. *See* Notice of Final Term Sheet [Dkt. 354], Ex A at 3. He briefly stayed on as a portfolio manager for certain of HCMLP's funds and investment vehicles, but that role was short-lived. After Mr. Dondero's resignation from HCMLP and Strand, a three-member Independent Board took control of Strand and thereafter removed Mr. Dondero from his role as portfolio manager on October 9, 2020. *See* Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief ("Confirmation Order") [Dkt. 1943], ¶ 4. Thereafter, Mr. Dondero played no ongoing role in the management or affairs of the Debtor.

4. Notably, although Mr. Dondero initially filed several proofs of claim in bankruptcy, the Bankruptcy Court and the Debtor repeatedly have argued that those claims are meritless, and the Bankruptcy Court has posited that Mr. Dondero's economic interest in the Debtor is "extremely remote." *See* Confirmation Order, ¶¶ 18-19. In any event, Mr. Dondero's proofs of claim have since been withdrawn by consent. *See* Order Approving Stipulation and Agreed Order Authorizing

Withdrawals of Proofs of Claim 138 and 188 Filed by James Dondero [Dkt. No. 1510]; Stipulation and Agreed Order Authorizing Withdrawal of Proofs of Claim Nos. 141, 142 and 145 [Dkt. No. 3190].

5. As noted, Defendant Strand is HCMLP's general partner and, as such, holds a residual equity interest but is not set to receive any distributions according to the Plan unless or until all unsecured claims have been paid. *See* Confirmation Order, ¶ 5; Plan, Article I, Section B, ¶ 44. Nor is Strand a creditor of the bankruptcy estate, having never filed a proof of claim in the bankruptcy case.

6. Defendant Dugaboy Investment Trust ("Dugaboy") held a minority economic interest and a majority voting interest in HCMLP's Class A partnership interests prior to the confirmation of the Plan. *See* Kirschner Compl., ¶ 16. Since Plan confirmation, Dugaboy's minority equity interest and majority voting interests have been extinguished. Although Dugaboy initially filed proofs of claim in the bankruptcy case, those proofs of claim have since been disallowed or withdrawn by consent. *See* Order Approving Stipulation and Agreed Order Authorizing Withdrawal of Proof of Claim 113 Filed by the Dugaboy Investment Trust [Dkt. No. 3007]; Order Disallowing Proof of Claim 131 Filed by the Dugaboy Investment Trust [Dkt. No. 2966]; Order Disallowing Proof of Claim 177 Filed by the Dugaboy Investment Trust [Dkt. No. 2965].

7. Defendant Get Good Trust ("Get Good") is a Delaware trust established by Mr. Dondero for the benefit of his living descendants. *See* Kirschner Compl., ¶ 28. Get Good is neither a residual equity holder in the Debtor's estate nor a creditor. Although Get Good initially filed proofs of claim in the bankruptcy case, those claims have since been disallowed or withdrawn by consent. *See* Order Approving Stipulation and Agreed Order Authorizing Withdrawal of Proof of

4

Claim 120 Filed by the Get Good Trust [Dkt. No. 3008]; Order Approving Stipulation and Agreed Order Authorizing Withdrawal of Proof of Claim 128 Filed by the Get Good Trust [Dkt. No. 3009]; Order Approving Stipulation and Agreed Order Authorizing Withdrawal of Proof of Claim 129 Filed by the Get Good Trust [Dkt. No. 3010].

8. On November 24, 2020, HCMLP filed its Plan, which contemplates an orderly liquidation and wind-down of HCMLP. *See* Dkt. Nos. 1472, 1808. The Bankruptcy Court confirmed the Plan on February 22, 2021, and the Plan became effective on August 11, 2021. *See* Dkt. Nos. 1943, 2700. According to the Debtor, since that time, the Plan has been substantially consummated, and "distributions to the Debtor's creditors are well underway." *See* Appellee's Motion to Dismiss Appeal as Equitably Moot, Adv. Proc. No. 3:21-cv-01895-D, pp. 17-20 [Dkt. No. 14] (Oct. 15, 2021).

### B. The Kirschner Complaint

9. Nearly eight months after Plan confirmation, Plaintiff Mark Kirschner, as Litigation Trustee of the Litigation Sub-Trust (the "Litigation Trustee"), commenced this Adversary Proceeding in the Bankruptcy Court by filing the Kirschner Complaint. *See* Adv. Dkt. No. 1. The Kirschner Complaint names 23 different defendants, including the founders of HCMLP, Mr. Dondero and Mark A. Okada, key employees Scott Ellington, Isaac Leventon, and Frank Waterhouse, as well as various other entities, trusts, and individuals. The Kirschner Complaint alleges 36 claims for relief based entirely on the alleged pre-petition conduct of the defendants dating back to 2010.

10. The Kirschner Complaint alleges 21 claims against Mr. Dondero, including claims seeking to avoid allegedly fraudulent and/or preferential transfers under federal and state law, a Delaware statutory claim seeking to unravel allegedly illegal partnership distributions, and state

5

common law claims for breach of fiduciary duty, civil conspiracy, tortious interference with prospective business relations, conversion, unjust enrichment, and alter ego liability. *See generally* Adv. Dkt. No. 1. The Kirschner complaint also seeks an order disallowing or subordinating certain proofs of claim filed in bankruptcy by Dondero and others; but, as explained above, those proofs of claim have been withdrawn. *See id.*, ¶¶ 379-391 (Count XXXIV), 393-396 (Count XXXV).

11. As to Defendant Dugaboy, the Kirschner Complaint alleges five claims for relief, including a claim seeking to avoid allegedly fraudulent transfers made by Dugaboy under state and federal law, a Delaware statutory claim seeking to unravel allegedly illegal partnership distributions, and a state common law alter ego claim. *See id.*, ¶¶ 169-174 (Count I), ¶¶ 176-180 (Count II), ¶¶ 182-186 (Count III), ¶¶ 240-243 (Count X). The Kirschner Complaint also contains a claim seeking disallowance or subordination of certain proofs of claim filed in bankruptcy by Dugaboy, *see id.*, ¶¶ 393-396 (Count XXXV), but again, those claims have been withdrawn.

12. As to Defendant Get Good, the Kirschner Complaint alleges five claims for relief, including state common law claims for aiding and abetting breach of fiduciary duty, civil conspiracy, and claims seeking to avoid allegedly fraudulent transfers under state and federal law. *See id.*, ¶¶ 267-269 (Count XV), ¶¶ 271-275 (Count XVI), ¶¶ 283-292 (Count XVIII), ¶¶ 294-300 (Count XIX). As with Mr. Dondero and Dugaboy, the Kirschner Complaint contains a claim against Get Good seeking disallowance or subordination its proofs of claim, *see id.*, ¶¶ 393-396 (Count XXXV), but those claims also have been withdrawn.

13. Finally, the Kirschner Complaint alleges seven claims for relief against Strand, including claims seeking to avoid allegedly preferential and/or fraudulent transfers under state and federal law, a Delaware statutory claim seeking to unravel allegedly illegal partnership distributions, and state common law claims for breach of fiduciary duty, civil conspiracy,

6

declaratory judgment, and alter ego liability. *See id.*, ¶¶ 169-174 (Count I), ¶¶ 176-180 (Count II), ¶¶ 182-186 (Count III), ¶¶ 188-194 (Count IV), ¶¶ 196-208 (Count V), ¶¶ 210-213 (Count VI), ¶¶ 221-230 (Count VIII), ¶¶ 260-265 (Count XIV).

### III. THE COURT SHOULD RECOMMEND IMMEDIATE WITHDRAWAL OF THE REFERENCE

14. The Kirschner seeks to hold 23 defendants liable for pre-petition conduct dating back eleven years, long before the HCMLP bankruptcy case was filed and well before any of the creditor disputes that dominated the bankruptcy proceedings even existed. The vast majority of the claims and allegations contained in the Kirschner Complaint have nothing whatsoever to do with HCMLP's bankruptcy proceedings or the effectuation of the Plan, making the Bankruptcy Court's jurisdiction to preside over the Kirschner action tenuous at best. Indeed, the majority of the claims asserted by the Litigation Trustee are state-law claims unrelated to the bankruptcy proceedings. But the Litigation Trustee chose to file the Kirschner Complaint in the Bankruptcy Court, presumably because it believed this Court is the most favorable forum. However, as set forth below, this Court's post-confirmation jurisdiction is extremely limited and certainly does not extend to state-law claims that have no tether to implementation or execution of the Plan. Nor may this Court preside over a jury trial on those claims for which the defendants possess a Seventh Amendment right to jury trial. For these reasons and the reasons that follow, this Court should recommend the immediate withdrawal of the reference so that this non-bankruptcy proceeding can be litigated and tried in the appropriate forum.

### A. **Withdrawal Of The Reference Is Warranted With Respect To All Non-Core Claims**

15. At the outset, it bears emphasizing that, notwithstanding anything contained in the Debtor's Plan, the Bankruptcy Court's post-confirmation jurisdiction is very limited. Notably, the

7

source of the bankruptcy courts' jurisdiction is not the debtor's plan of reorganization or the Bankruptcy Code but federal statute—specifically, 28 U.S.C. §§ 1334 and 157. *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002). Section 1334 grants the federal district courts jurisdiction over four types of bankruptcy matters: (1) "cases arising under title 11," (2) "proceedings arising under title 11," (3) proceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title 11. 28 U.S.C. § 1334(a)-(b).

16. Under 28 U.S.C. § 157, a federal district court may, by referral, authorize a bankruptcy court to "hear and determine" certain matters falling within the jurisdictional grant of Section 1334. 28 U.S.C. § 157(a)-(b). Specifically, in addition to hearing and determining matters related to the bankruptcy petition itself, Section 157 gives bankruptcy courts full judicial power over "all *core proceedings* arising under title 11, or arising in a case arising under title 11, referred under [Section 157]." 28 U.S.C. § 157(b)(1) (emphasis added).[1]

17. The Fifth Circuit repeatedly has held that a proceeding is core only if it invokes a substantive right under title 11 or it is a proceeding that, "by its nature, could only arise in the context of a bankruptcy case." *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987); *accord U.S. Brass*, 301 F.3d at 304. By contrast, "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding . . . [I]t is an 'otherwise related' or non-core proceeding." *In re Wood*, 825 F.2d at 97; *see also WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 609 (S.D. Tex. 1999) ("a state law contract or tort action that is not based on any right created by

---

[1] The Supreme Court has recognized that some claims defined as "core" by statute may not be constitutionally adjudicated by the bankruptcy court. *See Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 28 (2014).

the federal bankruptcy law, and that could arise outside the context of bankruptcy, is not a core proceeding").

18. Moreover, the analysis of what is "related to" changes after plan confirmation. "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001); *accord Elec. Reliability Council of Tex., Inc. v. May (In re Tex. Commer. Energy)*, 607 F.3d 153, 157 (5th Cir. 2010) (bankruptcy courts have post-confirmation jurisdiction only over those disputes that are "intimately tied to the terms of the Plan"); *see also In re Royce Homes, L.P.*, No. 11-03191, 2011 WL 13340482, *2 (Bankr. S.D. Tex. Oct. 13, 2011) ("Claims based upon state law for prepetition tortious conduct are [] non-core proceedings.") In short, the Bankruptcy Court may exercise post-confirmation jurisdiction only in very limited circumstances.

19. The majority of the claims asserted in the Kirscher Complaint against Dondero, Dugaboy, Get Good, and Strand are non-core claims over which the Bankruptcy Court lacks subject matter jurisdiction. Specifically—and at the very least—the Litigation Trustee's claims against these Defendants for illegal distributions under Delaware law (Count III), breach of fiduciary duties (Counts IV, V, XIV), declaratory judgment (Counts VI-VIII, X), aiding and abetting breach of fiduciary duties (Count XV), civil conspiracy (Count XVI), tortious interference with prospective business relations (Count XVII), conversion (Count XXV), and unjust enrichment (Count XXVI) are non-core state-law claims that cannot be heard or decided by this Court under any circumstances. *See In re Morrison*, 409 B.R. 384, 390 (Bankr. S.D. Tex. 2009) (finding that breach of fiduciary duty, conspiracy, and conversion proceedings are all non-core proceedings because they do not "arise under the Bankruptcy Code" nor "could [the causes of

9

action] only arise in a bankruptcy case"); *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 117-18 (N.D. Tex. 2006) (alter-ego, unlawful dividend, and aiding and abetting breach of fiduciary duty claims are all non-core); *In re Royce Homes, L.P.*, 2011 WL 3340482, at *2 ("claims based upon breach of fiduciary duty, civil theft and conversion, conspiracy to defraud, and unjust enrichment are also non-core proceedings"). As to these claims, the District Court's standing order of reference has no application, and the claims must be heard and decided solely by the District Court.

### B.  Immediate Withdrawal Of The Reference As To Non-Core Claims Is Appropriate[2]

20. The remaining claims asserted by the Litigation Trustee against the Dondero parties also should be heard and decided by the District Court.[3] Pursuant to 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." The Fifth Circuit Court of Appeals has prescribed the factors courts should consider when determining whether to recommend permissive withdrawal of the reference, including whether (i) the proceeding involves core or non-core issues, (ii) a party has demanded a jury trial, (iii) the withdrawal reduces forum shopping, (iv) the withdrawal would foster the economical use of the debtors' and creditors'

---

[2] Defendants hereby join in the Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants filed by Scott Ellington, Isaac Leventon, Frank Waterhouse, and CPCM, LLC (collectively, the "Former Employee Defendants"), *see* Dkt. Nos. 27 and 28), the Motion to Withdraw the Reference filed by the Okada Parties, *see* Dkt. Nos. 36-37, and the Motion to Withdraw the Reference filed by NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P., *see* Dkt Nos. 39-40. Among other things, the Former Employee Defendants, the Okada Parties, and NexPoint and HCMFA argue that withdrawal of the reference is mandatory as to Counts I, II, XXII, and XXIII because substantial and material consideration of federal tax and securities laws will be required to adjudicate these claims. *See* Dkt. No. 28 at 3-4; Dkt No. 37 at 5-7; Dkt. No. 40 at 5-13. Defendants join in these arguments and incorporate them by reference as if fully set forth herein.

[3] Notably, of the remaining nine claims asserted against the Dondero parties, two (Counts XXXIV and XXXV) seek disallowance of proofs of claim that the Dondero parties have withdrawn. Accordingly, there is nothing left to adjudicate relating to those counts.

10

resources while reducing confusion, (v) the withdrawal would expedite the bankruptcy process, and (vi) the withdrawal would further uniformity in bankruptcy administration. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985).

21. Application of the *Holland* factors in the case weighs heavily in favor of immediate withdrawal of the reference.

### 1. The Vast Majority Of The Claims Asserted Against The Dondero Defendants Are Non-Core

22. As set forth above, the majority of the claims asserted by the Litigation Trustee against the Dondero Defendants are non-core state-law claims over which the Court has no post-confirmation jurisdiction. *See* Section III.A, *supra*, ¶¶ 15-19.

23. In addition, the majority of claims asserted by the Litigation Trustee against the other Defendants in this litigation also are non-core state-law claims over which the Bankruptcy Court lacks subject matter jurisdiction. *See* Motion of Former Employee Defendants, Dkt. No. 28, at 5-17; Motion of Okada Parties, Dkt. No. 37 at 7-12; Motion of NexPoint and HCMFA, Dkt. No. 40, at 24-25.

24. Under these circumstances, the District Court must hear and decide most of the claims at issue in the litigation. It makes no sense to adjudicate the few remaining claims piecemeal in this Court. The first *Holland* factor weighs in favor of withdrawal of the reference.

### 2. The Dondero Defendants Have A Constitutional Right To A Jury Trial On The Majority of The Claims Asserted

25. Moreover and critically, withdrawal of the reference is appropriate because the Dondero Defendants have a constitutional right to trial by jury on all claims asserted against them.[4]

---

[4] The Dondero Defendants may have a contractual right to arbitrate some of the claims asserted against them; however, because this Court lacks jurisdiction over most of those claims, the issue of arbitrability is one for the District Court to decide. The Dondero Defendants explicitly do not waive, and hereby expressly reserve, their right to argue that some of the claims asserted in the Kirschner Complaint must be arbitrated pursuant to a binding and enforceable

Specifically, the Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const., amend. VII. The Supreme Court of the United States has interpreted the phrase "Suits at common law" to mean lawsuits in which legal or statutory rights, as opposed to equitable rights, are to be determined. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42 (1989). Further, where a complaint blends legal and equitable claims, "postponement and subordination" of the legal claims to equitable ones "is not permissible." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508 (1959). In short, "'[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with utmost care.'" *Id.* at 502 (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)); *see also Bowles v. Bennett*, 629 F.2d 1092, 1095 (5th Cir. 1980) ("The right of jury trial is fundamental, and courts must indulge every reasonable presumption against waiver.") (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)) (internal quotations and alterations omitted).

26.     It is well established that without the consent of all parties, a bankruptcy judge lacks the authority to conduct a jury trial. *In re Clay,* 35 F.3d 190, 196-97 (5th Cir. 1994); *see also* 28 U.S.C. § 157(e). Nor can the Bankruptcy Court enter judgment on a claim, regardless of whether it is core or non-core. *See Stern v. Marshall*, 564 U.S. 462, 475, 503 (2011) (holding that a bankruptcy court lacked jurisdiction to enter a final judgment on a state-law claim for tortious interference, despite the fact that it was a core bankruptcy proceeding); *see also Granfinanciera*, 492 U.S. at 35 ("We hold that the Seventh Amendment entitles such a person to a trial by jury, notwithstanding Congress's designation of fraudulent conveyance actions as 'core

---

arbitration agreement.

12

proceedings.'"). Further, where, as here, the parties do not consent to a jury trial in the bankruptcy court, no further "cause" for withdrawal of the reference must be shown. *Levine v. M&A Custom Home Builder & Dev., LLC*, 400 B.R. 200, 206 (S.D. Tex. Nov. 25, 2008).

27. To determine whether a party has a right to trial by jury, the courts employ a two-step analysis. First, they analyze whether the claim at issue is traditionally one brought in a court of law or a court of equity. *Granfinanciera*, 492 U.S. at 41-42. Second, the courts examine the remedy sought to determine whether it is legal or equitable. *Id.* at 42. "The second stage of this analysis is more important than the first." *Id.*

28. Application of this analysis to the claims asserted in the Kirschner Complaint against the Dondero Defendants leaves no doubt that those Defendants have a right to trial by jury on all of the claims asserted against them. The Litigation Trustee's claims seeking avoidance of fraudulent/preferential transfers (Counts I, II, XVII-XXIII, XXXI-XXXIII), as well as the claims for conspiracy (Count XVI), tortious interference (Count XVII), and conversion (Count XXV) all are traditionally legal actions to which the right to a jury trial attaches. *See id.* at 48-49 (fraudulent conveyance actions traditionally legal in nature and triggers Seventh Amendment right to a trial by jury); *Ross v. Berhard*, 396 U.S. 531, 533 (1970) (conversion is "unmistakably" an action at law triable to a jury); *In re Parkway Sales and Leasing, Inc.*, 411 B.R. 337, 351 (Bankr. E.D. Tex. 2009) ("claims alleging tortious interference with contract and civil conspiracy are claims for which DAA has a Seventh Amendment right to a jury trial.").

29. In addition, the claims for illegal distributions under Delaware state law (Count III), declaratory judgment that the Dondero Defendants are liable for the liabilities of each other and/or the Debtor as "alter egos" (Counts VI-X), breach of fiduciary duty (Counts IV, V, XIV), aiding and abetting breach of fiduciary duty (Count XV), and unjust enrichment (Counts XXVI) all seek

13

monetary damages rather than equitable relief. As a result, these claims too are legal in nature, and Defendants have a right to have these claims decided by a jury. *See Granfinanciera*, 492 U.S. at 47-48; *In re Jensen*, 946 F.2d 369, 371-72 (5th Cir. 1991) (claims, though historically equitable, requested monetary relief and thus became legal in nature under the second prong of the jury trial analysis); *Mirant Corp.*, 337 B.R. at 120-21 (defendant "entitled to trial by jury as to the fraudulent transfer and conveyance claims, the breach of fiduciary duty claims, and the illegal dividend claims" where plaintiff sought money damages); *Broyles v. Cantor Fitzgerald & Co.*, No. CV 3:10-854-JJB-CBW, 2016 WL 4054923, at *2 (M.D. La. July 26, 2016) (plaintiff entitled to jury trial on claim based on alter-ego and veil-piecing theories where plaintiffs sought monetary damages); *Markel Ins. Co. v. Origin Bancorp, Inc.*, No. 21-10051-RLJ-7, 2021 Bankr. LEXIS 3032, at *5 (Bankr. N.D. Tex. Sept. 29, 2021) (creditor was entitled to a jury trial on unjust enrichment claims where plaintiff sought money damages for recovery).

30. Because the Dondero Defendants have a constitutional right to a jury trial on all claims asserted in the Kirschner Complaint, the second *Holland* factor weighs heavily in favor of withdrawing the reference.

### 3. The Remaining *Holland* Factors Favor Withdrawal Of The Reference

31. The remaining Holland factors, which are aimed at serving judicial economy, likewise favor withdrawal of the reference. ***First***, withdrawal of the reference would reduce confusion and discourage forum shopping. As explained above, the vast majority of the claims in the Kirschner Complaint against the various Defendants must be heard and decided by the District Court, not the Bankruptcy Court, for jurisdictional reasons. Further, the parties' constitutional right to a jury trial cannot be postponed or subordinated to await a resolution of those few core claims that this Court has jurisdiction to determine. *See Beacon*, 359 U.S. at 508. In addition, in

light of the length and complexity of the Kirschner Complaint (with its numerous overlapping causes of action pleaded against numerous defendants), the chance for confusion and inconsistent judgments would be minimized if the reference were withdrawn immediately. *See In re Royce Homes, L.P.*, 2011 WL 13340482, at *4 ("Given the sheer volume of the First Amended Complaint, and the numerous causes of action pleaded therein, confusion will be minimized if the District Court immediately withdraws the reference and adjudicates this dispute."). And because this adversary proceeding is in its very early stages—Defendants have not yet answered the Kirschner Complaint, the parties have not served discovery, and the only motion practice to date relates to withdrawal of the reference—there is no real argument that withdrawal of the reference would encourage forum shopping. *See id.* (no suggestion of forum shopping where "all motions to withdraw reference were filed quite soon after the Trustee initiated th[e] adversary proceeding").

32. ***Second***, withdrawal of the reference would also ensure economical use of the debtors' and creditors' resources. As explained above, many, if not most, of the claims in the Kirschner Complaint are non-core proceedings that cannot be finally adjudicated by the Bankruptcy Court. In this situation, "adjudicating all of the claims, both core and non-core, in the district court … dispenses with the need for the district court to conduct a *de novo* review of proposed findings and conclusions of the bankruptcy judge after a trial in the bankruptcy court as to non-core claims." *Mirant Corp.*, 337 B.R. at 122. Here, withdrawal of the reference will conserve public and private resources by avoiding the costs of litigating potentially unnecessary appeals and *de novo* review by the District Court. *See id.*; *see also In re Royce Homes, L.P.*, 2011 WL 13340482, at *4.

33. Finally, withdrawal of the reference would not interfere with the HCMLP bankruptcy proceedings in any way or sacrifice uniformity in the bankruptcy administration. The

15

Bankruptcy Court confirmed the Plan nearly a year ago. *See* Section II.A, *supra*. Nor are any of the claims at issue fundamental to the Plan's implementation or execution. Under these circumstances, the final two *Holland* factors are largely irrelevant. *See Mirant Corp.*, 337 B.R. at 123.

## IV.     Conclusion

This Court's post-confirmation jurisdiction is extremely limited and should be exercised sparingly. The Kirschner Complaint alleges sweeping state-law claims against 23 defendants based entirely on pre-petition conduct that has nothing to do with implementation, execution, or administration of the Debtor's Plan. And the majority of the claims against a majority of the defendants cannot be decided by this Court. This is precisely the type of circumstance in which withdrawal of the reference is not just appropriate but is the only rational choice. The Dondero Defendants' motion to withdraw the reference should be granted.

Dated: January 25, 2022                     DLA PIPER LLP (US)

*/s/ Amy L. Ruhland*
Amy L. Ruhland (Rudd)
Texas Bar No. 24043561
Amy.Ruhland@us.dlapiper.com
303 Colorado Street, Suite 3000
Austin, TX 78701
Tele: 512.457.7000

Jason M. Hopkins
Texas Bar No.24059969
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: 214-743-4500/Fax: 214-743-4545
Email: jason.hopkins@us.dlapiper.com

*Attorneys for Defendants James Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc.*