KELLY HART PITRE
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

KELLY HART & HALLMAN
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Counsel for the Charitable Defendants

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** § | | **Case No. 19-34054-sgj11** |
| § | | |
| **HIGHLAND CAPITAL** § | | |
| **MANAGEMENT, L.P.,** § | | **Chapter 11** |
| § | | |
| **Debtor** § | | |

| | | |
|---|---|---|
| **MARC S. KIRSCHNER, AS** § | | |
| **LITIGATION TRUSTEE OF THE** § | | **Adversary No. 21-03076-sgj** |
| **LITIGATION SUB-TRUST** § | | |
| **Plaintiff,** § | | |
| § | | |
| **vs.** § | | |

1

| | |
|---|---|
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § |
| Defendants. | § |

**MOTION TO WITHDRAW THE REFERENCE**

**\*\*RELIEF SOUGHT FROM DISTRICT COURT\*\***

CLO HoldCo, Ltd. ("CLO HoldCo"), Charitable DAF HoldCo, Ltd. ("DAF HoldCo"), Charitable DAF Fund, L.P. ("DAF Fund"), and Highland Dallas Foundation ("HDF," together with CLO HoldCo, DAF HoldCo, DAF Fund, and HDF, the "Charitable Defendants") file *Motion*

2

*to Withdraw the Reference* (the "Motion")[1] pursuant to 28 U.S.C. § 157(d), FED. R. BANKR. P. 5011, Article IIII of the United States Constitution and Local Bankruptcy Rule 5011-1(a) respectfully requesting that the District Court <u>immediately</u> withdraw the reference in the above-captioned adversary proceeding (the "Adversary Proceeding") as to the counts asserted by the Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust (the "Trustee") against the Charitable Defendants (the "Actions Against the Charitable Defendants") in the *Complaint* [Dkt. No. 1], which are as follows:

1.  The first four (4) counts against the Charitable Defendants, Counts XV, XVI, XVII and XIX, concern a certain series of transfers taking place in late December 2016 whereby the Debtor ("HCMLP") transferred "assets" comprised of (1) $2,032,183.24 in Series A Interests in Highland Capital Loan Fund, L.P.; (2) $8,710,000 in participation interests in call options of American Airlines Group, Inc.; (3) participation and tracking interests in certain Highland

---

(1) The Charitable Defendants submit this Motion with intention to seek relief before the District Court, the proper forum, through Rule 12(b), the following non-exclusive relief:  (i) lack of subject-matter jurisdiction (unless the Trustee can establish, jurisdiction within the District Court, diversity jurisdiction - Count XXX); (ii) improper venue (on the basis of forum selection clauses in agreements affecting the Charitable Defendants that the Debtor performed post-bankruptcy until the first quarter of 2021 - all counts except the objection to claim count, which as mentioned is subject of a separate claim objection); (iii) failure to state a claim upon which relief can be granted (all counts - except the objection to claim count, which as mentioned is subject of a separate claim objection). This Motion is not a "responsive pleading" under Rule 12(b). "[W]hen the rule refers to a responsive pleading, it means a pleading, such as an answer." *Hines v. Hartford Life & Acc. Ins. Co*., No. 2:09-CV-1111, 2010 WL 1032623, at *1 (S.D. Ohio Mar. 16, 2010). In defining a responsive pleading, court look to the definition of pleading as set out in FED. R. CIV. P. 7(a). *Valdez v. Cap. Mgmt. Servs., LP*, No. CV B: 09-246, 2010 WL 11665008, at *1 (S.D. Tex. May 11, 2010). Rule 7(a) does not include motions to withdraw the reference. Rule 15(a), governing amendments to pleadings as of right, does not permit amendment without leave of court after a responsive pleading has been filed. In that context, motions to dismiss or motions for summary judgment have fairly uniformly been held not to constitute responsive pleadings within the meaning of Rule 15(a). *See Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1111 (7th Cir.1984); *Barksdale v. King*, 699 F.2d 744, 746–47 (5th Cir.1983); *Ohio Casualty Insurance Co. v. Farmers Bank of Clay*, 178 F.2d 570 (6th Cir.1949); *Hagee v. Evanston*, 95 F.R.D. 344 (N.D.Ill.1982); *Butler v. McDonnell–Douglas Saudi Arabia Corp*., 93 F.R.D. 384 (S.D.Ohio 1981); *Kroger Co. v. Adkins Transfer Co*., 284 F.Supp. 371, 374 (M.D.Tenn.1968), aff'd 408 F.2d 813 (6th Cir.1969). There is no particularized addition or modification to Rule 7012 that could change this analysis. This Motion is not a "responsive pleading."

(2) The Charitable Defendants also expressly reserve the right to move sever the Adversary Proceeding pursuant to Rule 21 or other applicable law.

Crusader Fund, L.P. and Highland Crusader Fund II, Ltd. (the "Crusader Funds") shares, which at the time were "valued" at $12,625,395.44 (together, the "Transferred Assets") by purchase and sale agreement to Get Good Trust ("Get Good") in exchange for the Dugaboy Note with a principal amount of $23,817,639.58 (the "Get Good Transfer").

2. After the Get Good Transfer was completed, Get Good donated the Transferred Assets to HDF. As has previously been disclosed in filings in the Bankruptcy Case, the Charitable Defendants comprise a charitable giving vehicle. Bankruptcy Case, Dkt. No. 2547 (the "Response to Disclosures Order"). The DAF Fund is a donor advised fund indirectly owned in part by HDF which itself is a supporting organization of The Dallas Foundation, which is one of the oldest and most well respected charitable organization is Texas. *See id.* at ¶31, Exhibit 4.

3. Pursuant to the usual operations of the Charitable Defendants, after Get Good donated the Transferred Assets to HDF, HDF contributed the Transferred Assets to DAF HoldCo, who transferred the Transferred Asset to the DAF Fund. Finally, the DAF Fund transferred the Transferred Assets to CLO Holdco, which is described as a corporate blocker because it blocks out unrelated business taxable income. *See id.* Exhibit 4 (Memorandum of Kenneth Bezozo explaining the purpose for and customary nature of the structure of the Charitable Defendants).

4. Based upon the forgoing, the Trustee asserts four (4) counts against the Charitable Defendants:

> COUNT XV: aiding and abetting breach of fiduciary duty under Delaware law or knowing participation in breach of fiduciary duty under Texas law ("Aiding Bad Conduct Action");
>
> COUNT XVI: civil conspiracy to breach fiduciary duties under Texas law by participating in the transfer of the Get Good Transfer (the "Civil Conspiracy Action");
>
> COUNT XVIII: avoidance of the Get Good Transfer and recovery of the Transferred Assets as constructively fraudulent transfers under 11 U.S.C. §§ 544 and 550 and applicable state law (either Delaware of Texas law) (the "Constructive Fraud Avoidance Action"); and

4

<u>COUNT XIX</u>: avoidance of the Get Good Transfer and recovery of the Transferred Assets as intentionally fraudulent transfers under 11 U.S.C. §§ 544 and 550 and applicable state law (either Delaware of Texas law) (the "Intentional Fraud Avoidance Action," together with the Constructive Fraud Avoidance Action, the "Get Good Avoidance Actions");

5.     Additionally, and through a stark exposition of illogic, the Trustee asserts Count XXX against CLO HoldCo (only), based upon the alleged fraudulently inducement by HCMLP of a third-party investor, HarbourVest, to purchase part of CLO HoldCo's interests in Highland CLO Funding, Ltd. ("HCLOF").

<u>Count XXX</u>: Unjust Enrichment against CLO HoldCo arguing that CLO HoldCo was unjustly enriched by its receipt of funds from HarbourVest's purchase (the "Unjust Enrichment Action").

6.     In the Bankruptcy Case, HarbourVest filed several proofs of claims which were eventually settled by HCMLP providing two allowed unsecured claims. *See* Proofs of Claim Nos. 143, 147, 149, 150, 153, 154. The gravamen of the HarbourVest proofs of claim is that while HCMLP was inducing it to invest in HCLOF, it was using and abusing HCLOF through multiple alleged misconduct acts that it failed to disclose and that were harmful HCLOF (and that this conduct continued after the investment to the detriment of the company and HarbourVest's investment in it).

7.     Of course, at all times relevant, HCMLP was investment advisor and manager of CLO HoldCo under two agreements, and in exercising its investment advice it recommended to CLO HoldCo that it sell to HarbourVest. Now, the Trustee, standing in the shoes of HCMLP (which continued to act under the advisor agreement post-petition and long after Mr. Dondero was run off from any involvement with management of HCMLP), says that because it (HCMLP) committed bad acts against HarbourVest, which bought a percentage of CLO HoldCo's interests in HCLOF, the bad actor, HCMLP, should be recompensed by CLO HoldCo for the amount CLO HoldCo received from HarbourVest. Ridiculous, of course. Also, noticeably absent from

5

HarbourVest's proofs of claim or from HCMLP's *Motion for Entry of an Order Approving Settlement with HarbourVest* (and the settlement agreement itself), is any recitation or allegation of a purported claim by HarbourVest against CLO HoldCo. Bankruptcy Case, Dkt. Nos. 1625, 1788.

8. In fact, had CLO HoldCo committed any bad act, HarbourVest had a direct right to bring such an action against CLO HoldCo. It did not, and any applicable statute of limitations has run with respect to any such claim that could have been brought by HarbourVest. So the Unjust Enrichment count is even more ridiculous: HarbourVest, which if there was a claim, held the claim, and brought no claim, but despite this, the bad actor HCMLP should be paid for its bad acts. Even worse, of course, is that at all times HCMLP was advisor to CLO HoldCo, so it is now suing its own advisee for advice it, as advisor, gave the advisee (this fact goes directly to the need for enforceability of the forum selection clause in the Advisory Agreement (defined in the Brief in Support), under the advisor agreement that was performed by HCMLP until termination in the first quarter of 2021).

9. The Trustee also asserts a cause of action for disallowance of CLO HoldCo's Proof of Claim (the "Disallowance Action"). *See* Count XXXVI. But the Trustee has also filed an *Objection to Claim* [Bankruptcy Case, Dkt. No. 3001], which is pending on the docket of the Bankruptcy Case. Thus, the allowance of CLO HoldCo's proof of claim is actually a pending contested matter pursuant to FED. R. BANKR. P. 9014.

10. By this Motion, the Charitable Defendants move for the immediate withdrawal of the reference as to the Aiding Bad Conduct Action, the Civil Conspiracy Action, the Get Good Avoidance Actions, and the Unjust Enrichment Action (the "Actions Against the Charitable Defendants").

11. Because (i) it is doubtful that the District Court (and by extension, the Bankruptcy

Court) has subject matter jurisdiction over the Unjust Enrichment Action under 28 U.S.C. §1334, and therefore the only ground of jurisdiction would possible be diversity of the parties, such that the District Court must decide, (ii) the Charitable Defendants have the right to a jury trial pursuant to the Seventh Amendment on all Actions Against the Charitable Defendants; and (iii) all Actions Against the Charitable Defendants arise under state law (even the Get Good Avoidance Actions, which arise under the TUFTA), there is no real question that the reference must be withdrawn.

12. We pause here, upfront, to recognize (as will be more fully discussed in the Brief in Support) that CLO HoldCo has filed an amended proof of claim (*see* Proof of Claim No. 253), and it is therefore arguable that CLO HoldCo—if the Get Good Avoidance Actions were against it, standing alone (which would make no sense as any liability of CLO HoldCo could only be derivative of the liability of Get Good, HDF, DAF HoldCo and DAF Fund)—might not be able to argue that under *Stern*, *Granfinanciera*, *Langenkamp*, and *Katchen v. Landy*, it holds a right to trial by jury.

13. But here, the Trustee has asserted other causes of action against CLO HoldCo which are not bound up in the claims allowance process [the Aiding Bad Conduct Action, and the Civil Conspiracy Action, along with the Unjust Enrichment Claim for which CLO HoldCo does have a right to a jury trial (both under *Stern*, et al (which would assume, incorrectly we think, jurisdiction under 28 U.S.C. § 1334)]. We will limit this particular discussion to the non-Unjust Enrichment Actions/claims, to deal only with those claims over which there appears to be 28 U.S.C. § 1334 jurisdiction, because those Actions/claims were pending before confirmation/effective date. The Trustee has asserted all Actions Against the Charitable Defendants together within this Adversary Proceeding, and the Get Good Avoidance Actions, the Aiding Bad Conduct and Civil conspiracy Actions clearly arise from the same nucleus of common facts. The Aiding Bad Conduct Action and the Civil Conspiracy Action do not involve responsive

7

proofs of claim or, put another way, do not involve the allowance of claims process, as they are not in any way involved with the CLO HoldCo amended claim or the allowance thereof. Therefore, CLO HoldCo retains a the right to a jury trial on the Aiding Bad Conduct Action and the Civil Conspiracy Action, including all issues common to both claims.

14. Further, CLO HoldCo was the last transferee of the chain of transfers involved in the Get Good Avoidance Actions, and therefore can only be liable if the initial transferee (Get Good), and the other subsequent transferees (HDF, DAF HoldCo, DAF Fund) are found liable under 11 U.S.C. § 550. All of these parties hold the right to a jury trial. Therefore, CLO HoldCo, with recognition that it has amended its proof of claim, should remain consolidated within the group of the other transferees, as the Trustee chose to proceed, as there can be no stripping of the jury trial rights of the other defendants. It makes no sense to carve out CLO HoldCo, given that its possible exposure is derivative of the possible exposure of four (4) other parties, all of which unquestionably hold the right to trial by jury as to the Get Good Avoidance Actions.

15. The dispute here, then, is whether, despite the fact the Bankruptcy Court cannot adjudicate the Actions Against the Defendants, the Bankruptcy Court should nonetheless handle pretrial matters. But as set forth herein, with respect to at least the Unjust Enrichment Action, there is no federal court jurisdiction unless it arises under the diversity statute, so withdrawal would only be for the purpose of allowing the District Court to decide if it has diversity jurisdiction; this withdrawal would not be subject to our under 28 U.S.C. § 157, as it is the referral statue giving bankruptcy courts authority to act through and on account of the District Court's bankruptcy rooted jurisdiction under 28 U.S.C. § 1334.

16. Further, the Actions Against the Charitable Defendants are subject to binding forum selection clauses mandating that they be brought and adjudicated in District Court (if that Court has subject matter jurisdiction (in Texas state court, if not)), given that all counts are related to

and/or raise from the and in connection with advisor and management agreements (for which HCMLP was paid millions of dollars) that HCMLP was acting under at all relevant times and continued to perform and be compensated for until the first quarter of 2021.

17. As such, and set forth more fully in the accompanying Brief in Support, the <u>immediate</u> withdrawal of the reference as to the Actions Against the Charitable Defendants is required.

**Respectfully submitted:**

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
**Louis M. Phillips (#10505)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing was served through this Court's CM/ECF Service on counsel for the Plaintiff and all Defendants on this January 26, 2022

*/s/ Louis M. Phillips*