KELLY HART PITRE
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

KELLY HART & HALLMAN
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Counsel for the Charitable Defendants

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 19-34054-sgj11** |
| | § | |
| **HIGHLAND CAPITAL** | § | |
| **MANAGEMENT, L.P.,** | § | **Chapter 11** |
| | § | |
| **Debtor** | § | |
| | | |
| **MARC S. KIRSCHNER, AS** | § | |
| **LITIGATION TRUSTEE OF THE** | § | **Adversary No. 21-03076-sgj** |
| **LITIGATION SUB-TRUST** | § | |
| **Plaintiff,** | § | |
| | § | |

vs.                                                    §
                                                       §
JAMES D. DONDERO; MARK A.                              §
OKADA; SCOTT ELLINGTON; ISAAC                          §
LEVENTON; GRANT JAMES SCOTT                            §
III; FRANK WATERHOUSE; STRAND                          §
ADVISORS, INC.; NEXPOINT                               §
ADVISORS, L.P.; HIGHLAND                               §
CAPITAL MANAGEMENT FUND                                §
ADVISORS, L.P.; DUGABOY                                §
INVESTMENT TRUST AND NANCY                             §
DONDERO, AS TRUSTEE OF                                 §
DUGABOY INVESTMENT TRUST;                              §
GET GOOD TRUST AND GRANT                               §
JAMES SCOTT III, AS TRUSTEE OF                         §
GET GOOD TRUST; HUNTER                                 §
MOUNTAIN INVESTMENT TRUST;                             §
MARK & PAMELA OKADA FAMILY                             §
TRUST – EXEMPT TRUST #1 AND                            §
LAWRENCE TONOMURA AS                                   §
TRUSTEE OF MARK & PAMELA                               §
OKADA FAMILY TRUST – EXEMPT                            §
TRUST #1; MARK & PAMELA OKADA                          §
FAMILY TRUST – EXEMPT TRUST #2                         §
AND LAWRENCE TONOMURA IN HIS                           §
CAPACITY AS TRUSTEE OF MARK &                          §
PAMELA OKADA FAMILY TRUST –                            §
EXEMPT TRUST #2; CLO HOLDCO,                           §
LTD.; CHARITABLE DAF HOLDCO,                           §
LTD.; CHARITABLE DAF FUND, LP.;                        §
HIGHLAND DALLAS FOUNDATION;                            §
RAND PE FUND I, LP, SERIES 1;                          §
MASSAND CAPITAL, LLC; MASSAND                          §
CAPITAL, INC.; SAS ASSET                               §
RECOVERY, LTD.; AND CPCM, LLC,                         §
                                                       §
        Defendants.

---

**BRIEF IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE**
**\*\*RELIEF SOUGHT FROM DISTRICT COURT\*\***

---

CLO HoldCo, Ltd. ("CLO HoldCo"), Charitable DAF HoldCo, Ltd. ("DAF HoldCo"),

Charitable DAF Fund, L.P. ("DAF Fund"), and Highland Dallas Foundation ("HDF," together

with CLO HoldCo, DAF HoldCo, DAF Fund, and HDF, the "Charitable Defendants") file this

brief in support (the "Brief in Support") of the Charitable Defendants' *Motion to Withdraw the Reference* (the "Motion")[1] pursuant to 28 U.S.C. § 157(d), FED. R. BANKR. P. 5011, Article IIII of the United States Constitution and Local Bankruptcy Rule 5011-1(a) respectfully requesting that the District Court immediately withdraw the reference as to the Actions Against the Charitable Defendants.

---

(1) The Charitable Defendants submit this Motion with intention to seek relief before the District Court, the proper forum, through Rule 12(b), the following non-exclusive relief: (i) lack of subject-matter jurisdiction (unless the Trustee can establish, jurisdiction within the District Court, diversity jurisdiction - Count XXX); (ii) improper venue (on the basis of forum selection clauses in agreements affecting the Charitable Defendants that the Debtor performed post-bankruptcy until the first quarter of 2021 - all counts except the objection to claim count, which as mentioned is subject of a separate claim objection); (iii) failure to state a claim upon which relief can be granted (all counts - except the objection to claim count, which as mentioned is subject of a separate claim objection). This Motion is not a "responsive pleading" under Rule 12(b). "[W]hen the rule refers to a responsive pleading, it means a pleading, such as an answer." *Hines v. Hartford Life & Acc. Ins. Co*., No. 2:09-CV-1111, 2010 WL 1032623, at *1 (S.D. Ohio Mar. 16, 2010). In defining a responsive pleading, court look to the definition of pleading as set out in FED. R. CIV. P. 7(a). *Valdez v. Cap. Mgmt. Servs., LP*, No. CV B: 09-246, 2010 WL 11665008, at *1 (S.D. Tex. May 11, 2010). Rule 7(a) does not include motions to withdraw the reference. Rule 15(a), governing amendments to pleadings as of right, does not permit amendment without leave of court after a responsive pleading has been filed. In that context, motions to dismiss or motions for summary judgment have fairly uniformly been held not to constitute responsive pleadings within the meaning of Rule 15(a). *See Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1111 (7th Cir.1984); *Barksdale v. King*, 699 F.2d 744, 746–47 (5th Cir.1983); *Ohio Casualty Insurance Co. v. Farmers Bank of Clay*, 178 F.2d 570 (6th Cir.1949); *Hagee v. Evanston*, 95 F.R.D. 344 (N.D.Ill.1982); *Butler v. McDonnell–Douglas Saudi Arabia Corp*., 93 F.R.D. 384 (S.D.Ohio 1981); *Kroger Co. v. Adkins Transfer Co*., 284 F.Supp. 371, 374 (M.D.Tenn.1968), aff'd 408 F.2d 813 (6th Cir.1969). There is no particularized addition or modification to Rule 7012 that could change this analysis. This Motion is not a "responsive pleading."

(2) The Charitable Defendants also expressly reserve the right to move sever the Adversary Proceeding pursuant to Rule 21 or other applicable law.

# CONTENTS

Contents ........................................................................................................................... iv

Table of Authorities ......................................................................................................... iv

Relevant Background ......................................................................................................... 1

    A.   The Charitable Defendants, and Proceedings/Appearances Relevant to Withdrawal of Reference ................................................................................................................... 2

Legal Argument .................................................................................................................. 5

    i)    The Get Good Avoidance Actions involve core and non-core claims (though the designation of "core" means nothing with respect to jury trial rights), while the Civil Conspiracy Action and the Aiding Bad Conduct Action are clearly non-core. ..................... 6

    ii)   The Charitable Defendants have the right to jury trial on the Actions over which the District Court has jurisdiction under 28 U.S.C. § 1334. ......................................................... 8

    iii)   The Bankruptcy Court does not have constitutional authority to enter final orders... 13

    iv)   The remaining applicable Holland factors favor immediate withdrawal. .................. 14

    v)    Referring the Actions Against the Charitable Defendants to the Bankruptcy Court for pretrial matters is inefficient .............................................................................................. 16

    B.   There is a lacks of post-confirmation bankruptcy jurisdiction over the Unjust Enrichment Action. ...................................................................................................................... 17

    C.   There are enforceable forum selection clauses requiring adjudication of the Actions Against the Charitable Defendants before the District Court. .................................................. 21

Conclusion ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Align Strategic Partners LLC*,
    No. 16-35702, 2019 WL 2527221 (Bankr. S.D. Tex. Mar. 5, 2019) ...................................... 17

*In re Avado Brands, Inc.*,
    358 B.R. 868 (Bankr. N.D. Tex. 2006) .................................................................................... 19

*In re Bailey*,
    217 B.R. 523 (Bankr. N.D. Tex.1997) ..................................................................................... 24

*BP RE, L.P v. RML Waxahachie Dodge, L.L.P. (In re DP RE, L.P.)*,
    735 F.3d 279 (5th Cir. 2013) .................................................................................................... 14

*Curtis v. Loether*,
    415 U.S. 189 (1974) ........................................................................................................... 11, 16

*Dairy Queen Inc. v. Wood*,
369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) ................................................................9

*In re Dune Energy, Inc.*,
575 B.R. 716 (Bankr. W.D. Tex. 2017) ..............................................................................19

*Duty Free World, Inc. v. Miami Perfume Junction, Inc.*,
253 So. 3d 689 (Fla. Dist. Ct. App. 2018) ........................................................................12

*Granfinanciera S.A. v. Nordberg*,
492 U.S. 33 (1989) .............................................................................................9, 11, 12

*Guffy v. Brown (In re Brown Med. Ctr., Inc.)*,
578 B.R. 590 (Bankr. S.D. Tex. 2016) ...............................................................................7

*Holland Am. Ins. Co. v. Succession of Roy*,
777 F.2d 992 (5th Cir. 1985) ........................................................................................6, 15

*Hughes v. Priderock Cap. Partners, LLC*,
No. 9:18-CV-80110, 2019 WL 771801 (S.D. Fla. Feb. 21, 2019), *aff'd sub
nom. Hughes v. Priderock Cap. Partners, LLC.*, 812 F. App'x 828 (11th Cir.
2020) ..................................................................................................................................12

*Johnson v. Williamson (In re British American Properties III, Ltd.)*,
369 B.R. 322 (Bankr. S.D. Tex. 2007) ..............................................................................15

*In re Lapeyre*,
No. CIV. A. 99-1312, 1999 WL 486888 (E.D. La. July 8, 1999) ......................................15

*Levine v. M & A Custom Home Builder & Developer, LLC*,
400 B.R. 200 (S.D. Tex. 2008) ................................................................................8, 9, 10

*In re Manchester, Inc.*,
417 B.R. 377 (Bankr. N.D. Tex. 2009) ..............................................................................24

*In re Mirant Corp.*,
2005 WL 2265446 (Bankr. N.D. Tex. 2005) .......................................................................8

*Mirant Corp. v. The Southern Co.*,
337 B.R. 107 (Bankr. N.D. Tex. 2006) .................................................................7, 8, 15, 24

*In re MPF Holding US LLC*,
No. 08-36084-H4-11, 2013 WL 12146958 (Bankr. S.D. Tex. Apr. 26, 2013)...............6, 17

*Nu Van Tech., Inc. v. Cottrell, Inc. (In re Nu Van Tech., Inc.)*,
No. 01-49589-DML-11, 2003 WL 23785355 (Bankr. N.D. Tex. Oct. 14,
2003) ..................................................................................................................................15

*Palmer & Palmer, P.C. v. US Trustee (In re Hargis)*,
  146 B.R. 173 (N.D. Tex. 1992) .................................................................................15

*In re Parkway Sales & Leasing, Inc.*,
  411 B.R. 337 (Bankr. E.D. Tex. 2009) ...................................................................10

*In re Royce Homes, L.P.*,
  No. 09-32467-H4-7, 2011 WL 13340482 (Bankr. S.D. Tex. Oct. 13, 2011) ...............8, 15, 16

*Simler v. Conner*,
  372 U.S. 221 (1963) .................................................................................................12

*Special Value Continuation Partners, L.P. v. Jones*,
  Adv. No. 11-3304, 2011 WL 5593058 (Bankr. S.D. Tex. Nov. 10, 2011) .................1, 4, 6, 16

*Veldekens v. GE HFS Holdings, Inc.*,
  362 B.R. 762 (S.D. Tex. 2007) .................................................................................17

*Wellness Int'l Network, Ltd. v. Sharif*,
  575 U.S. 665, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015) .........................................14

**Statutes**

11 U.S.C. § 544 .............................................................................................................7, 8

11 U.S.C. §550 ..................................................................................................................9

28 U.S.C. § 157(b)(3) .......................................................................................................7

28 U.S.C. § 157(d) ...........................................................................................................5

28 U.S.C. § 157(e) ...........................................................................................................8

28 U.S.C. § 1332 .............................................................................................................21

28 U.S.C. § 1334 .............................................................................................8, 11, 17, 18

**Other Authorities**

Seventh Amendment ................................................................................................. *passim*

RELEVANT BACKGROUND

1.      On October 16, 2019, HCMLP filed a voluntary petition for relief under chapter 11.

2.      On November 24, 2020, HCMLP filed the *Fifth Amended Plan of Reorganization* (the "Plan").  Bankruptcy Case, Dkt. Nos. 1472, 1808.

3.      On December 17, 2020, the Trustee's predecessor, the Official Committee of Unsecured Creditors (the "Committee") filed the previous lawsuit against various parties including the Charitable Defendants based upon the Get Good Transaction.  *See Official Committee of Unsecured Creditors vs. CLO Holdco, Ltd*., *et al*., Adv. Pro. No. 20-03195-sgj (the "Previous Lawsuit").

4.      On November 24, 2020, HCMLP filed the *Fifth Amended Plan of Reorganization* (the "Plan").  Bankruptcy Case, Dkt. Nos. 1472, 1808.

5.      On February 22, 2021, the Bankruptcy Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* (the "Confirmation Order").  Bankruptcy Case, Dkt. No. 1943.

6.      In the Previous Lawsuit, the Charitable Defendants who had been properly served filed a *Motion to Withdraw the Reference* on April 16, 2021, setting forth the basis for immediate withdraw of the reference as to each of the causes of action against the Charitable Defendants asserted by the Committee arising from the Get Good Transaction.  Previous Lawsuit, Dkt. No. 24 (the "First Motion to Withdraw the Reference").

7.      Before the Bankruptcy Court could hold the required status conference on the First Motion to Withdraw the Reference and without responding to the First Motion to Withdraw the Reference, the Committee sought and—over the strenuous objection of the Charitable

1

Defendants—was granted two consecutive stays of the Previous Lawsuit each essentially based upon the Trustee's inability to respond to the First Motion to Withdraw the Reference. *See* Previous Lawsuit, Dkt. No. 46; but *see* Bankruptcy Case, Dkt. No. 2306 (reflecting that at the time the motion to withdraw reference was filed the Trustee was already retained and heavily involved).

8. On April 11, 2021, the Plan went effective (the "Effective Date"). Bankruptcy Case, Dkt. No. 2700.

9. On October 15, 2021, some months after the Effective Date, the Trustee commenced this Adversary Proceeding asserting some thirty-six (36) causes of action in the Complaint against nineteen (19) defendants. On October 15, 2021, one minute after the filing of this Complaint, and after successfully precluding adjudication of the First Motion to Withdraw the Reference for over eight (8) months (and also any other proceedings therein except the fatally flawed injunction component, which was ultimately dismissed with prejudice under a stipulation with CLO HoldCo that it was entitled to receive the funds deposited in the Bankruptcy Court's registry almost two (2) years earlier), the Trustee dismissed the Previous Lawsuit. *See* Previous Lawsuit, Dkt. No. 96.

10. On November 16, 2021, the Trustee and Defendants entered into that certain *Stipulation and Proposed Initial Response and Briefing Schedule* [Dkt. No. 20] whereby the parties agreed that the Defendants' deadline to answer or otherwise move against the Complaint shall be February 21, 2022.

**A. The Charitable Defendants, and Proceedings/Appearances Relevant to Withdrawal of Reference**

11. On January 11, 2022, CLO HoldCo filed a *Second Amended Proof of Claim* related to CLO HoldCo's claim against HCMLP for amounts due to CLO HoldCo for a credit

HCMLP received in arbitration for the disposition of certain HCMLP interests in the Crusader Funds (the "HCMLP Crusader Interest"). CLO HoldCo, as of December 2016 held participation and tracking interests in certain HCMLP's shares in the Crusader Funds which obligated HCMLP to pay to CLO HoldCo (as then holder of the participation and tracking interests) the proceeds of any sale, assignment, or other disposition of any interest with respect to or in the HCMLP Crusader Interest. Previously the CLO HoldCo proof of claim had been amended to reflect a claim of $00.00, but had not been withdrawn or expunged.

12.    HDF, DAF HoldCo, and DAF Fund have not filed a proof of claim in the Bankruptcy Case, nor voluntarily participated.

13.    DAF Fund and CLO HoldCo were identified by HCMLP as "violators" of certain gatekeeping orders entered by the Bankruptcy Court in that certain *Motion for an Order Requiring the Violators to Show Cause Why They Should Not be Held in Civil Contempt for Violating Two Court Orders* [Bankruptcy Case, Dkt. No. 2247]. The Bankruptcy Court then adopted this language before any show cause hearing and ordered DAF Fund and CLO HoldCo to appear before the Bankruptcy Court and file a response (as violators). Bankruptcy Case, Dkt. No. 2255 (the "Show Cause Order").

14.    DAF Fund and CLO HoldCo filed a *Response* [Bankruptcy Case, Dkt. No. 2313] and appeared at the hearing on the Show Cause Order. At the hearing, it became clear that the Bankruptcy Court interpreted its previous order regarding the governance of HCMLP and the retention of James P. Seery as stripping the District Court of jurisdiction and authority over any lawsuit naming James Seery that in any way related to his role with HCMLP. DAF Fund and CLO HoldCo moved to modify this order [Bankruptcy Case, Dkt. No. 2242]. The Bankruptcy Court denied this motion [Bankruptcy Case, Dkt. No. 2506].

15.     On June 17, 2021, the Bankruptcy Court entered that certain *sua sponte Order Requiring Disclosures* [Bankruptcy Case, Dkt. No. 2460] (the "Disclosures Order") whereby the Bankruptcy Court unprompted required several parties who had never appeared before the Bankruptcy Court to make disclosures to the Bankruptcy Court, purportedly for the purpose of aiding the Bankruptcy Court to undertake its own wide ranging investigation of the "standing" of multiple parties, including several (a good many) who/that had never been before the Bankruptcy Court in any capacity whatsoever. The Charitable Defendants, among many others, were targets of this Disclosures Order.

16.     While vehemently objecting the propriety of this Disclosures Order, particularly in light of the pending Previous Lawsuit, CLO HoldCo, DAF Fund and HDF filed the Response Disclosures Order, in part on behalf of DAF HoldCo. Bankruptcy Case, Dkt. No. 2547. This Response was filed with an express reservation that it was not intended to be nor shall it be deemed waiver of the respondents' right to a jury trial on all claims or consent to the entry of final orders by the Bankruptcy Court. *See id*. at n.1.[2]

17.     Finally, as set forth herein, on July 29, 2021, the Committee and the Trustee filed the *Motion for Entry of Order Authorizing the Examination of Rule 2004 Parties* [Bankruptcy Case, Dkt. No. 2620] (the "Rule 2004 Motion"). In the Rule 2004 Motion, the Committee and Trustee targeted the Charitable Defendants, despite the pending Previous Lawsuit which asserted claims related to the same subject as the proposed examinations. The Charitable Defendants objected to the Rule 2004 Motion noting the complete impropriety of the proposed examination given the pending Previous Lawsuit. Bankruptcy Case, Dkt. No. 2718. In so doing, the Charitable Defendants expressly and carefully reserved all rights to a trial by jury on any claims

---

[2]     Interestingly, at least to counsel for the Charitable Defendants, the Bankruptcy Court has issued no report, analysis, or any word whatsoever dealing with its investigation into the possible standing of the persons and entities made respondents to the Disclosures Order.

asserted by the Committee and Trustee and the right to adjudication by an Article III court.  In response, the Committee and Trustee asserted they were not in fact seeking any Rule 2004 discovery from the Charitable Defendants—despite what the Rule 2004 Motion and proposed order said—but only the right to issue subpoenas after meet and confer sessions, with all rights reserved to the possible respondents to object to such subpoenas (in other words, the Committee, realizing it had been caught, folded).[3]

## LEGAL ARGUMENT

18.     Pursuant to *Miscellaneous Order No. 33, the Order of Reference of Bankruptcy Cases and Proceedings* (the "Order of Reference"), "any and all cases under Title 11 and any all proceedings arising under Title 11 or arising in or related to a case under Title 11 … which may be filed herein hereafter … be and they hereby are referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law."

19.     28 U.S.C. § 157(d) provides for the withdrawal of the reference by the district court.  "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."

20.     This Motion is timely, as it is filed nearly a month before the agreed deadline for responses to the Complaint

21.     The Fifth Circuit has set forth a number of factors to consider in determining whether to withdraw the reference for cause, including:

---

[3]     As shown below, this Rule 2004 Motion is clearly relevant to whether the Unjust Enrichment Action was pending (it was not), or that there was sufficient "antagonism" regarding that claim.  As specifically shown below, it was clear at that time that the Committee, which had been granted the authority to bring estate causes of action (that would have included the Unjust Enrichment Action), admittedly had done no inquiry or investigation and purportedly needed to take wide-ranging Rule 2004 discover to investigate and determine the universe of claim to be pursued.   That is not "antagonism sufficient to create subject matter jurisdiction (the effect of the boilerplate recitation of the list of causes of action reserved (within the disclosure statement and plan process), as we will show, cannot be jurisdiction-establishing "antagonism" as if it was, there would be no limiting principle and the Fifth Circuit limited view of post-confirmation (much less post-effective date) "related to" jurisdiction would be nullified by the sharp practices of counsel.

      i)      whether the proceeding involves core or non-core issues;

      ii)     whether a party has demanded a jury trial;

     iii)    whether the withdrawal would promote uniformity in bankruptcy administration;

     iv)    whether the withdrawal reduces forum shopping;

      v)    whether the withdrawal would foster the economical use of the debtors' and creditors' resources; and

     vi)    whether the withdrawal would expedite the bankruptcy process.

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985).

22.    While the *Holland* factors militate in favor of withdraw of the reference, courts within this Circuit recognize that the right to a jury trial should be given substantial weight in undertaking an analysis of withdrawal of the reference.  *In re MPF Holding US LLC,* No. 08-36084-H4-11, 2013 WL 12146958, at *3 (Bankr. S.D. Tex. Apr. 26, 2013).  As set forth herein, the Charitable Defendants have a Seventh Amendment right to a jury trial on all of the Actions Against the Charitable Defendants and thus withdrawal of the reference is required.

    ***i)    The Get Good Avoidance Actions involve core and non-core claims (though the designation of "core" means nothing with respect to jury trial rights), while the Civil Conspiracy Action and the Aiding Bad Conduct Action are clearly non-core.***

23.    In the Fifth Circuit, a core proceeding is one that "invokes a substantive right provided for by [T]itle 11 or … is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Special Value Continuation Partners, L.P. v. Jones*, Adv. No. 11-3304, 2011 WL 5593058, at *2 (Bankr. S.D. Tex. Nov. 10, 2011) (citing *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987).

24.    Here, the Trustee asserts state law TUFTA claims pursuant to 11 U.S.C. § 544(b). A 11 U.S.C. § 544 claim is a core proceeding pursuant to 28 U.S.C. § 157(b)(3) but the state law claim nonetheless remains a non-core "related to" proceeding.  *Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, 578 B.R. 590, 598 (Bankr. S.D. Tex. 2016).  Moreover, the Fifth Circuit's

holding in *Galaz v. Galaz (In re Galaz)* clarified that TUFTA causes of action are non-core claims that require final adjudication by the District Court. 765 F.3d 426, 431 (5th Cir. 2014) ("[t]he district court treated [the] TUFTA claim as being "related to" the bankruptcy rather than a core bankruptcy claim. We agree with this characterization, as while such actions are under the statue designated as 'core' proceedings, the jury trial cases and *Stern* establish that Congress is not the final arbiter of what is a truly 'core' bankruptcy matter.").

25.     Where an adversary proceeding encompasses both core and non-core claims, courts have held that withdrawal of the reference for the entire proceeding is warranted. *Brown Med. Ctr.*, 578 B.R. at 597 ("Where an adversary proceeding encompasses both core and non-core claims . . . withdrawal of the reference is appropriate because it promotes judicial efficiency."); *The Southern Co.*, 337 B.R. at 122 (withdrawing reference and holding that since "the action contains non-core [and core] claims and that [the defendant] is entitled to a trial by jury as to certain claims standing alone suggests that there should be a withdrawal of the reference"). "The creation of two sets of proceedings could create judicial inefficiency, which should be avoided. This weighs in favor of withdrawal in whole." *Brown Med. Ctr.*, 578 B.R. at 597.

26.     The Aiding Bad Conduct Action, the Civil Conspiracy Action and the CLO HoldCo Unjust Enrichment Action are unquestionably non-core, state law claims (with the Unjust Enrichment Action being one that was not pending before confirmation or the Effective Date, and therefore not one over which a federal court would have bankruptcy rooted jurisdiction, after the Effective Date). *In re Royce Homes, L.P.*, No. 09-32467-H4-7, 2011 WL 13340482, at *2 (Bankr. S.D. Tex. Oct. 13, 2011) (we do not cite *Royce* for the Unjust Enrichment Action proposition).

ii)     *The Charitable Defendants have the right to jury trial on the Actions over which the District Court has jurisdiction under 28 U.S.C. § 1334.*

27.     Under 28 U.S.C. § 157(e), bankruptcy courts may conduct jury trials under certain circumstances, but only "with the express consent of all the parties." *See also Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 203 (S.D. Tex. 2008).

28.     When a party with a legitimate jury trial right does not so consent, that party's right to a jury trial creates cause to withdraw the reference. *In re Quality Leasing and Rental Holdings, LLC*, Adv. Pro. No. 14-6005, 2016 WL 416961, at *5 (Bankr. S.D. Tex. Feb. 1, 2006) (recommending withdrawal of reference involving both core and non-core claims because "[w]hen a party that is entitled to a jury trial properly requests a jury and does not consent to a jury trial before the bankruptcy court, the bankruptcy court must recommend that the adversary proceeding be withdrawn to the district court for the trial").

29.     Indeed, the Bankruptcy Court for the Northern District of Texas has acknowledged that "a jury demand, if the party is entitled to a jury, automatically requires withdrawal of the reference." *In re Mirant Corp.*, 2005 WL 2265446, *5 (Bankr. N.D. Tex. 2005) (emphasis added), *report and recommendation rejected, Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 113 (Bankr. N.D. Tex. 2006).

30.     In the Get Good Avoidance Actions, the Trustee asserts constructively and/or intentionally fraudulent transfer claims pursuant to 11 U.S.C. § 544(b) and Delaware/Texas state law.  As the Bankruptcy Court for the Northern District of Texas recently stated in *Halperin v. Dalman (In re Senior Case Centers, LLC)*, "a litigant in a fraudulent transfer action… enjoys the Seventh Amendment right to a jury trial so long as he has not filed a proof of claim." *See* Adv. Proceeding No. 20-03177, Dkt. No. 33 (J. Jernigan, July 15, 2021 (citing to *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 41 (1989)).  The U.S. Supreme Court's ruling in *Granfinanciera*

established that litigants in fraudulent transfer actions enjoy the Seventh Amendment right to a jury trial—regardless of whether the action is characterized as a core or non- core proceeding—so long as no proof of claim has been filed in the bankruptcy case. 492 U.S. at 41.

31. Here, HDF, DAF HoldCo and DAF Fund have not filed proofs of claim in the Bankruptcy Case. As such, they are entitled a jury trial on the Get Good Avoidance Actions.

32. The Trustee's claim under 11 U.S.C. §550 ultimately seeks money damages. The Court in *Granfinanciera*, found that a request for a money judgment strongly indicates that the claim should be denominated as legal rather than equitable. *See Granfinanciera, S.A.,* 492 U.S. at 47, 109 S.Ct. 2782; *Dairy Queen Inc. v. Wood*, 369 U.S. 469, 476, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

33. But even if that were not the case, and assuming *arguendo* that the Charitable Defendants are not entitled to a jury trial on a 11 U.S.C. §550 claim, courts hold that "[i]f a legal claim is joined with an equitable claim, the right to a jury trial on the legal claim, including all issues common to both claims, remains intact." *Levine*, 400 B.R. at 206 (quoting *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974)).

34. For instance, in determining whether to withdraw the reference in *Levine*, the District Court for the Southern District of Texas ruled that the plaintiffs' equitable accounting claim was based on the same facts and circumstances and "include[d] . . . issues common to" the fraudulent transfer claim to which a jury right attached, and therefore, "[t]he plaintiffs complaint [was] legal in nature" and "[the defendant was] entitled to a jury trial" on all common issues. *Levine*, 400 B.R. at 206.

35.     As set forth herein, HDF, DAF Fund, and DAF HoldCo have never voluntarily participated in the Bankruptcy Case.  As such, each hold the Seventh Amendment right to a jury trial.

36.     The Charitable Defendants, including CLO HoldCo, demand and are entitled to a jury trial on the Aiding Bad Acts Action and the Civil Conspiracy Action.  *See In re Parkway Sales & Leasing, Inc.*, 411 B.R. 337, 351 (Bankr. E.D. Tex. 2009) (finding a Seventh Amendment right to a jury trial on civil conspiracy claims, which here must include the dubious proposition that the Trustee can assert against the Charitable Defendants an aiding and abetting claim (despite being manager and investment advisor for the Charitable Defendants).

37.     The Charitable Defendants expressly acknowledge that CLO HoldCo is in a different position, as regards to the Get Good Avoidance Actions, only, having asserted an amended proof of claim against HCMLP.  But the Trustee decided to sue all Charitable Defendants (as well as Get Good) together in a single Adversary Proceeding asserting the Get Good Avoidance Actions together with the Aiding Bad Conduct Action and the Civil Conspiracy Action, which arise out of that same Get Good Transaction.

38.     The Trustee included the mediate transferees, who each unquestionably have a right to a jury trial on the Get Good Avoidance Actions, with CLO HoldCo all in a single action. To maintain judicial economies, it makes little sense for CLO HoldCo, as the fifth transferee, to be carved out where the Trustee made the decision to sue all charitable Defendants together, and the fifth transferee can only be liable if transferees 1-4 are found liable.

39.     Further, while CLO HoldCo might not be able to assert a right to jury trial on the Get Good Avoidance Actions standing alone, due to the amended proof of claim, because the Aiding Bad Acts and Civil Conspiracy Actions are intertwined with the same nucleus of

common facts, CLO HoldCo's right to a jury trial attaches to the common issues of fact. As the Supreme Court has instructed "[i]f a legal claim is joined with an equitable claim, the right to a jury trial on the legal claim, including all issues common to both claims, remains intact." *Curtis*, 415 U.S. at 196 n. 11. While the Get Good Avoidance Actions are legal in nature, the logic holds. If in one action there are claims in which a party has a right to trial by jury, the party has a trial by jury over the entirety of the claims. Therefore, CLO HoldCo has a right to a jury trial on all common issues, which includes the entirety of the Get God Avoidance Actions, the Aiding Bad Conduct Action, and the Civil Conspiracy Action.

40. Alternative to CLO HoldCo seeking withdrawal of the reference over the Unjust Enrichment Action so that the District Court can determine whether there is diversity jurisdiction (briefed below), and while the Unjust Enrichment Action is one over which the Federal Court has no bankruptcy grounded jurisdiction, we brief the jury trial issue here alternatively, out of caution. In the event the District Court would conclude that there is 28 U.S.C. § 1334 jurisdiction, CLO HoldCo is entitled to withdrawal of the reference, nonetheless, as it is entitled to and demands a jury trial before the District Court on the CLO HoldCo Unjust Enrichment Action. The Seventh Amendment jury trial analysis requires (1) a comparison of the statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity and (2) a determination as to whether the remedy sought is legal or equitable in nature. *Granfinanciera*, 492 U.S. at 42. The second prong is considered to be the more significant of the two. *Id*.

41. Unjust enrichment is frequently described as equitable in nature. *See Duty Free World, Inc. v. Miami Perfume Junction, In*c., 253 So. 3d 689, 694 (Fla. Dist. Ct. App. 2018). However, "the use of the term 'equitable' in reference to an unjust enrichment claim denotes

fairness and does not mandate that unjust enrichment be construed as seeking only an equitable, as opposed to a legal, remedy." *Id*. In addition, although "the substantive dimension of the claim" is based in state law, "the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions." *Simler v. Conner*, 372 U.S. 221, 222 (1963).

42.     Federal courts have found unjust enrichment to be a legal claim.  *Hughes v. Priderock Cap. Partners, LLC*, No. 9:18-CV-80110, 2019 WL 771801, at *2 (S.D. Fla. Feb. 21, 2019), *aff'd sub nom. Hughes v. Priderock Cap. Partners, LLC*., 812 F. App'x 828 (11th Cir. 2020) (collecting cases).   Further, as to the second prong, the Trustee seeks money damages. Therefore, pursuant to *Granfinanciera*, CLO HoldCo has a right to a jury trial as to the CLO HoldCo Unjust Enrichment Action.

43.     Further, as we discuss below regarding forum selection, the Unjust Enrichment Action implicates contract claims and defenses (remedies or not), as HCMLP was the investment advisor to and manager of DAF Fund and DAF HoldCo as well as subsidiaries during the time of the transactions that the Trustee admits were generated by the bad acts of HCMLP (in whose chair the Trustee now sits).  The Trustee is suing his client (or former client) to recover from that client on account of the bad conduct of the Trustee's own entity.  There was no claim made by HarbourVest against CLO HoldCo (and the applicable statues of limitations have expired); but nevertheless, the Trustee is claiming to be owed $75 million and to be able to recover this amount, despite its fiduciary duty to CLO HoldCo at the time under the advisor agreement.  The Unjust Enrichment Action therefore cannot be separated out from the question whether under applicable law, the Trustee can make a claim given its contractual relationship.

44.     Therefore as set forth herein, the Charitable Defendants have a Seventh

Amendment right to a jury trial as to Actions Against the Charitable Defendants, and the reference should be withdrawn (if in fact there is bankruptcy jurisdiction held by the District Court, which we say there is not). This alone requires withdrawal of the reference.[4]

### iii) *The Bankruptcy Court does not have constitutional authority to enter final orders.*

45. The Bankruptcy Court does not have the constitutional authority to enter a final judgment in this action because determination of the Actions Against the Charitable Defendants, other than the Get Good Avoidance Actions as to CLO HoldCo alone, are not involved in the claims allowance process. As well, as established herein, the other particulars briefed establish that the Bankruptcy Court does not have authority to issue a final judgment in the Get Good Avoidance Actions (including against CLO HoldCo) because of the interrelationship among the Aiding Bad Conduct Action and Civil Conspiracy Action, the fact that the other defendants have the right to trial by jury, and the fact that any liability of CLO HoldCo would depend upon the liability of the other transferees.

46. In *Stern v. Marshall*, the United States Supreme Court held that even though bankruptcy courts are statutorily authorized to enter final judgment on certain types of bankruptcy related claims, Article III of the Constitution prohibits bankruptcy courts from finally adjudicating certain of those claims. 564 U.S. 462.

47. Because there is no claim allowance or disallowance process involved here (other than as to CLO HoldCo with respect to the Get Good Avoidance Actions), the Actions Against the Charitable Defendants are *Stern*-type claims. *Id.* *Stern* clarified that "*Langenkamp* ... explained ... that a preferential transfer claim can be heard in bankruptcy when the allegedly

---

[4]     As shown below, the amended proof of claim has no bearing on the question related to the Unjust enrichment Action, as resolution of the proof of claim is intertwined only with the Get Good Avoidance Action against CLO HoldCo (only), but as argued above, the possible Stern limitation is of no moment given the other defendants' posture and the assertion by the Trustee of the Aiding Bad Conduct Action and Civil Conspiracy Action.

favored creditor has filed a claim, because then the ensuing preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship." *Id*. But, in *Stern*, "there was never any reason to believe that the process of adjudicating [the creditor's] proof of claim would necessarily resolve [the debtor's] counterclaim." *Id*.

48. While recovery on the Actions Against the Charitable Defendants would augment the bankruptcy estate, the claims will not necessarily be resolved in the claims allowance process (other than CLO HoldCo), and therefore, the Bankruptcy Court is constitutionally prohibited from entering a final judgment. *BP RE, L.P v. RML Waxahachie Dodge, L.L.P. (In re DP RE, L.P.)*, 735 F.3d 279, 286 (5th Cir. 2013) (quoting *Waldman v. Stone*, 698 F.3d 910, 919 (6th Cir. 2012)).

49. Again, the Charitable Defendants do not consent to the Bankruptcy Court entering final orders on these claims. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015) (explaining that "consent—whether express or implied—must still be knowingly and voluntary"). There has been no knowingly and voluntary consent by the Defendant, as the Charitable Defendants at every turn expressly asserted both its right to adjudication by an Article III court and trial by jury. As such, the Bankruptcy Court cannot enter a final judgment on the Actions Against the Charitable Defendants.

*iv)* ***The remaining applicable* Holland *factors favor immediate withdrawal.***

50. As set forth herein, the Charitable Defendants have the right to a jury trial. Therefore, this factor mandates withdrawal of the reference. *See e.g. Nu Van Tech., Inc. v. Cottrell, Inc. (In re Nu Van Tech., Inc.)*, No. 01-49589-DML-11, 2003 WL 23785355, at *4 (Bankr. N.D. Tex. Oct. 14, 2003) ("[T]his court is convinced that Plaintiff's claims must be heard by an Article III court and that the reference must be withdrawn."); *Tow v. Speer (In re*

*Royce Homes, L.P.*), No. 09-32467-H4-7, 2011 WL 13340482, at *5 (Bankr. S.D. Tex. Oct. 13, 2011) (noting that a valid jury demand is a "crucial factor" in a *Holland* analysis); *In re Lapeyre*, No. CIV. A. 99-1312, 1999 WL 486888, at *3 (E.D. La. July 8, 1999) ("[T]he inability of a bankruptcy court to hold a jury trial in a related matter is sufficient ground for a district court to withdraw reference…"). Nevertheless, analysis of the other factors support withdrawal, despite that because a jury trial mandates withdrawal, the remaining factors are of little consequence.

51. Here, the Plan has been confirmed. As such, the "expediting-the-bankruptcy-process factor" is irrelevant. *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 123 (N.D. Tex. Jan. 10, 2006) (where the bankruptcy judge had already confirmed the reorganization plan, the "expediting-the-bankruptcy-process factor" was not relevant to the withdrawal decision).

52. Additionally, uniformity in the bankruptcy administration is similarly inapposite. "If a bankruptcy court is already familiar with the facts of the underlying action, then allowing the court to adjudicate the proceeding will promote uniformity in the bankruptcy administration." *Johnson v. Williamson (In re British American Properties III, Ltd.)*, 369 B.R. 322, 327 (Bankr. S.D. Tex. 2007); *Palmer & Palmer, P.C. v. US Trustee (In re Hargis),* 146 B.R. 173, 176 (N.D. Tex. 1992).

53. Here, while the Bankruptcy Court may be familiar with certain of the parties, and of the business of HCMLP, it is no familiarity with the merits of the Actions Against the Charitable Defendants.

54. While the HarbourVest proofs of claim were settled before the Bankruptcy Court, the issues in the CLO HoldCo Unjust Enrichment Action do not concern whether HCMLP is liable to HarbourVest for its fraud. Rather, the issues concern whether CLO HoldCo should liable to HCMLP's estate for HCMLP's fraud.

55. As explained in *Tow v. Park Lake Comty, L.P., (In re Royce Homes, LP)*, where "none of the substantive issues in the adversary proceeding had been reached" [before considering withdrawal of the reference], the Bankruptcy Court did not "obtain[] a significant level of familiarity with the dispute and therefore the factor favored withdrawal." 578 B.R. 748, 759 (Bankr. S.D. Tex. 2017) (citing *In re EbaseOne Corp.*, No. 01-31527-H4-7, 2006 WL 2405732, at *4 (Bankr. S.D. Tex. June 14, 2006)). Here, none of the substantive issues in the underlying CLO HoldCo Unjust Enrichment Action have been reached. Therefore, this factor favors immediate withdrawal.

**v)** ***Referring the Actions Against the Charitable Defendants to the Bankruptcy Court for pretrial matters is inefficient***

56. Concerns of judicial efficiency weigh in favor of <u>immediately</u> withdrawing the reference. Rather than fostering efficiency, retention of the Actions Against the Charitable Defendants for pretrial matters is imprudent because there is no dispute that the Charitable Defendants have a right to a trial by jury and do not consent to the Bankruptcy Court's adjudication. *Curtis*, 2020 WL 1983937 at *4 (finding the bankruptcy court's recommendation that it handle pretrial matters "imprudent" where the "Court would need to make a de novo review of the Bankruptcy Court's proposed findings of fact and conclusions of law."). As the court explained in *MPF Holdings*,

> Bankruptcy aims to maximize the efficient use of resources to administer the debtor's estate and resolve related litigation. However, the fact that a given law or procedure is efficient will not save it if it is contrary to the Constitution… [where] the Constitution both guarantees a jury trial to [a defendant] and requires an Article III court to adjudicate the claims against it. **The undersigned judge believes that immediate withdrawal of reference will serve the interests of judicial economy and conservation of resources because it will allow the District Court to gain familiarity with the facts of this Adversary Proceeding before trial. Accordingly, the interests of judicial economy and conservation of resources support the withdrawal of reference.**

*In re MPF Holding US LLC*, No. 08-36084-H4-11, 2013 WL 12146958, at *3 (Bankr. S.D. Tex. Apr. 26, 2013) (emphasis added). Therefore, this factor favors immediate withdrawal.

57. Finally, "[i]n some sense, any party who objects to Bankruptcy Court adjudication is forum shopping." *Veldekens v. GE HFS Holdings, Inc*., 362 B.R. 762 (S.D. Tex. 2007) (quoted in Royce Homes, Adv. No. 11–03191. Adv. Doc. No. 201, p. 7, ¶ 3). "A good faith claim of right ... should not on that basis alone be denied as forum shopping." *Id*. Here, the Charitable Defendants have a good faith right to a jury trial in the District Court *In re Align Strategic Partners LLC*, No. 16-35702, 2019 WL 2527221, at *4 (Bankr. S.D. Tex. Mar. 5, 2019).

58. If the Bankruptcy Court does not have authority at all with respect to the Unjust Enrichment Action (because the District Court has no 28 U.S.C. § 1334 jurisdiction, but finds diversity) then the Bankruptcy Court would be powerless to act, even in connection with pre-trial matters. Given the consolidated approach chosen by the Trustee, with which we say he is stuck, the Bankruptcy Court would have to carve out the Unjust Enrichment Action. This would require a procedural contortion by the Bankruptcy Court that could have no good rationale or purpose.

## B. There is a lacks of post-confirmation bankruptcy jurisdiction over the Unjust Enrichment Action.

59. 28 U.S.C. § 1334 provides for original and exclusive jurisdiction of all cases arising under, arising in, or related to a bankruptcy case, i.e. bankruptcy jurisdiction. The case law in the Fifth Circuit on post confirmation bankruptcy jurisdiction is set forth in great detail in the *Brief in Support of the Former Employee's Motion to Withdraw the Reference* [Dkt. No. 28] (the "Former Employee Brief"), ¶¶16-38, and rather than re-brief the same cases herein, the Charitable Defendants adopt this portion of the Former Employee Brief.

60. Applying the Fifth Circuit standard to the Actions Against the Charitable

Defendants, the Aiding Bad Conduct Action, the Civil Conspiracy Action, and the Get Good

Avoidance Actions were arguably subject to pending antagonism or claims as of the date of

confirmation. In the Previous Lawsuit, the Committee asserted actual fraud under TUFTA,

constructive fraud under TUFTA, and civil conspiracy all based upon the Get Good Transaction.

*See* Previous Lawsuit [Dkt. No. 6]. While the Committee did not plead aiding and abetting, the

pending Previous Lawsuit involving the Get Good Transaction arguably meets the Fifth Circuit

standard for a pending "antagonism or claim" as to the Aiding Bad Conduct Action as well, as

amendment (had plaintiff ever been serious about prosecuting the Previous Lawsuit (which it

was not)), would likely have been approved given that the aiding and abetting action would have

arisen out of the same set of transactions and occurrences, etc. as the other claims.[5]

61.     But nothing bearing any resemblance to antagonism or claim was present pre-

confirmation as to the Unjust Enrichment Action.

62.     In the Previous Lawsuit, the Committee asserted an unjust enrichment theory of

recovery against CLO HoldCo; however, this arose from the Get Good Transaction, not the

HarbourVest settlement.

63.     Some cases in this Circuit find bankruptcy jurisdiction where a plaintiff obtains

approval to bring certain causes of action pre-confirmation. *In re Dune Energy, Inc.*, 575 B.R.

716, 726 (Bankr. W.D. Tex. 2017); *In re Avado Brands, Inc.*, 358 B.R. 868, 878 (Bankr. N.D.

Tex. 2006).

64.     But here, the Committee sought and the Plan retained the ability to bring a

nonspecific, overly broad "any and claims" list against hundreds different parties. *See* Plan

Supplement, Exhibit DD ("Retained Causes of Action"), Bankruptcy Case, Dkt. No. 1875. The

---

[5]     We reserve all rights here, of course, as to dismissal under any applicable law; and we further recognize
that a federal court must first inquire as to its own jurisdiction.

Retained Causes of Action provides that the Causes of Action shall include:

> breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, usurpation of corporate opportunities, breach of implied covenant of good faith and fair dealing, conversion, misappropriation of assets, misappropriation of trade secrets, unfair competition, breach of contract, breach of warranty, fraud, constructive fraud, negligence, gross negligence, fraudulent conveyance, fraudulent transfer, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, tortious interference, quantum meruit, unjust enrichment, abuse of process, alter ego, substantive consolidation, recharacterization, business disparagement, indemnity, claims for recovery of distributions or dividends, claims for indemnification, promissory estoppel, quasi-contract claims, any counterclaims, equitable subordination, avoidance actions provided for under sections 544 or 547 of the Bankruptcy Code, claims brought under state law, claims brought under federal law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims.

Retained Causes of Action, p.1.

65.     The Retained Causes of Action list certain persons and entities in the body but not CLO HoldCo; however, the Retained Causes of Action adds any entities listed on Annex 1 which includes some **275 entities**.  Such an overly broad reservation of any and all generically described claims (with no factual underpinning or even assertion that any such claims exist) against hundreds of parties cannot be sufficient "antagonism or claim" to confer bankruptcy jurisdiction post confirmation, much less post-effective date, as such a mechanism would render the required more exacting test for related to jurisdiction meaningless.  If such a mechanism would accomplish an expansion of jurisdiction, then we are not really talking about jurisdiction, except that which can be conferred by sharp lawyering.  Suppose attached to a first day declaration is the same exhibit and description of the "claims" and potential entities (we have to look as we forgot whether the children of any listed persons would be included); would this work?  NO.  There are no real claims listed; no claims connected to any parties. This cannot be to "antagonism" counterpart to a pending piece of litigation (we can find no decisions directly

defining "antagonism"). Of course, the vast and overly general list of purported claims and potential parties was designed to preclude the waiver argument. But not having waived is not synonymous with antagonism prior to confirmation sufficient to maintain jurisdiction.

66. Moreover, the Rule 2004 Motion filed by the Committee and Trustee makes it even clearer that no such antagonism or claim existed as to the CLO HoldCo Unjust Enrichment Claim such that it was in any way put at issue. In response to the Rule 2004 Motion, the Charitable Respondents objected, in part, because the Committee had years to investigate estate claims. In response, the Committee and Trustee argued that the Committee did not actually investigate many claims and instead only focused on "high level review of specific transactions and an investigation into facts set forth in the [Previous Lawsuit]." *See* Bankruptcy Case, Dkt. No. 2741, ¶4. In fact, the Trustee stated (well post-confirmation, post-Effective Date) that the intention was always that investigation of claims would be occur after engagement of the Trustee (April 2021). *Id.* Therefore, well after the Effective Date, the Trustee took the position that he had not yet even investigated claims outside of the Get Good Transaction. Therefore, there could not possibly be the requisite pending "antagonism or claim" related to unmentioned actions like the CLO HoldCo Unjust Enrichment Action.

67. Finally, there are no facts or law deriving from the Plan necessary to the resolution of the Actions Against the Charitable Defendants. The only remote connection to the Plan here is that, pursuant to the Plan and the Litigation Sub-Trust Agreement, the Litigation Sub-Trust itself was vested with the right to pursue certain claims. That the Litigation Sub-Trust was created through an agreement under the Plan, however, "is of no special significance." *See Craig's Stores*, 266 F.3d at 391 (noting that "[t]he fact that the account management contract existed throughout the reorganization and was, by implication, assumed as part of the plan is of

no special significance.").

68.    As such, under the exacting theory of post confirmation jurisdiction in the Fifth

Circuit, there is no bankruptcy jurisdiction over the Unjust Enrichment Action.

69.    CLO HoldCo expressly reserves the right to challenge the existence of diversity

jurisdiction pursuant to 28 U.S.C. § 1332 before the District Court after the reference is

withdrawn.

**C. There are enforceable forum selection clauses requiring adjudication of the Actions Against the Charitable Defendants before the District Court.**

70.    Further, HCMLP, DAF Fund, and DAF HoldCo were parties to that certain

*Second Amended and Restated Service Agreement, Dated January 1, 2017 between Highland*

*Capital Management, L.P., and Charitable DAF Fund, L.P., Charitable DAF GP, LLC* (the

"Service Agreement") and the *Second Amended and Restated Investment Advisory Agreement,*

*Dated January 1, 2017 between Highland Capital Management, L.P. and Charitable DAF Fund,*

*L.P., and Charitable DAG GP, LLC*  (the "Advisory Agreement").  Both the Service Agreement

and the Advisory Agreement expressly provided that services to be provided by HCMLP would

be for the benefit for subsidiaries of the DAF Fund, which includes CLO HoldCo. *See*

Bankruptcy Case, Dkt. No. 2547.

71.    The Service Agreement and the Advisory Agreement were in place at all times

relevant to the Actions Against the Charitable Defendants, and HCMLP acted under both

agreements until HCMLP terminated both, effective in the first quarter of 2021.

72.    In the Service Agreement, HCMLP agreed to "provide to [the DAF GP], on

behalf [DAF Fund] and/or its subsidiaries, certain services as more fully described herein,

subject to the terms and conditions set forth herein."  *See* Service Agreement.  Among the

services included in the Service Agreement are trade execution, risk management, trade

settlement, and document review and preparation. *See* Service Agreement, Annex A.

73. The Advisory Agreement provides that HCMLP "shall act as investment advisor to the Fund, the General Partner with respect to the Fund and its subsidiaries and shall provide investment advice with respect to the investment and reinvestment of the cash, Financial Instruments and other properties comprising the assets and liabilities of the Fund and its subsidiaries." Advisory Agreement, ¶1. Specifically, HCMLP advised the "[DAF Fund] and its subsidiaries with respect to investing, directly or indirectly, on margin or otherwise, in all types of securities and other financial instruments of United States and non-U.S. entities…" *Id.* at ¶3(a). Further, HCMLP advised DAF Fund and its subsidiary on "possessing, transferring, mortgaging, pledging or otherwise dealing in, and exercising all rights, powers, privileges and other incidents of ownership or possession with respect to Financial Instruments and other property and funds held or owned by the Fund and/or its subsidiaries." *Id.*

74. In the Service Agreement, HCMLP agreed that:

any action, claim, litigation, or proceeding of any kind whatsoever against any other Party in any way arising from or relating to this Agreement and all contemplated transactions, including claims sounding in contract, equity, tort, fraud and statute ("Dispute") shall be submitted exclusively to the U.S. District Court for the Northern District of Texas or, if such court does not have subject matter jurisdiction, the courts of the State of Texas sitting in Dallas County, and any appellate court thereof ("Enforcement Court"). Each Party irrevocably and unconditionally submits to the exclusive personal and subject matter jurisdiction of the Enforcement Court for any Dispute and agrees to bring any Dispute only in the Enforcement Court. Each Party further agrees it shall not commence any Dispute in any forum, including administrative, arbitration, or litigation, other than the Enforcement Court. Each Party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

*See* Service Agreement, ¶7.14.

75. Similarly, in the Advisory Agreement, HCMLP agreed that:

any action, claim, litigation, or proceeding of any kind whatsoever against any

other Party in any way arising from or relating to this Agreement and all contemplated transactions, including claims sounding in contract, equity, tort, fraud and statute ("Dispute") shall be submitted exclusively to the U.S. District Court for the Northern District of Texas or, if such court does not have subject matter jurisdiction, the courts of the State of Texas sitting in Dallas County, and any appellate court thereof ("Enforcement Court").

*See* Advisory Agreement, Paragraph 14(F) (together with Service Agreement, ¶7.14 the "Forum Selection Clauses").

76. Upon information and belief, if DAF Fund, DAF HoldCo, and CLO HoldCo made any transfers of the Transferred Assets, those transfers were based upon advise given from HCMLP pursuant to the Advisory Agreement and were executed/effectuated by documents prepared by HCMLP pursuant to the Service Agreement.

77. Further, upon information and belief, the complained of sale of HCLOF ownership to HarbourVest was again at the advice of HCMLP pursuant to the Advisory Agreement and was executed/effectuated by documents prepared by HCMLP pursuant to the Service Agreement.

78. Thus, the Get Good Avoidance Actions, the Aiding Bad Conduct Action, Civil Conspiracy Action and the CLO HoldCo Unjust Enrichment Claim arise from and/or relate to the Advisory Agreement and/or the Service Agreement, and are therefore, subject to the Forum Selection Clauses.

79. Within a bankruptcy context, "the mere fact that Debtor/Plaintiff is in bankruptcy is not sufficient to prevent enforcement of a contractual forum selection clause." *In re Bailey,* 217 B.R. 523, 527 (Bankr. N.D. Tex.1997). With respect to "non-core" matters, forum selection clauses are enforceable to the same extent that they are enforceable outside of bankruptcy. *In re Manchester, Inc*., 417 B.R. 377, 384–85 (Bankr. N.D. Tex. 2009) (citing *In re Exide Techs*., 544 F.3d 196, 218 n. 15 (3rd Cir.2008) (stating that forum selection clauses will be enforced in

bankruptcy as to non-core matters unless enforcement would violate strong public policy)).

80. With respect to "core" bankruptcy matters, public policy favors the centralization of bankruptcy proceedings in the bankruptcy court where the debtor's bankruptcy case is pending. *Manchester*, 417 B.R. at 384. But, post-confirmation any purported public policy concern is lessened. *Id.* at 385 (quoting *In re D.E. Frey Group, Inc.*, 387 B.R. 799 (D.Colo.2008) ("[m]oreover, in a case such as the one at bar—where the debtor was able to obtain confirmation of its reorganization plan long before the contract claims covered by the forum selection clause were brought before to this court—any policy concern 'must be lessened.")). Clearly, Plaintiff in the First Lawsuit cared nothing about centralized administration, as it sought and obtained two stays (over the objection of the Charitable Defendants) so that plaintiff did not have to move forward until after Effective Date. Plaintiff (now the Trustee) got its wish. The problem? There are consequences to every action, some perhaps unforeseen. Post-confirmation, any "presumption in favor of maintaining venue of an adversary proceeding in the forum where the bankruptcy case is pending .... [is] significantly weakened, if not entirely destroyed, by the circumstance that this is now post-confirmation litigation." *Mirant Corp.*, 337 B.R. at 124.

81. Thus, in this post-confirmation posture, there is not public policy to protect by referring pretrial matters to the Bankruptcy Court where it is indisputable that the Actions Against the Charitable Defendants must be finally adjudicated by the District Court.

82. Therefore, the Forum Selection Clauses must be enforced and the reference immediately withdrawn as to the Actions Against the Charitable Defendants.

## CONCLUSION

As set forth herein, there is no question that the reference must be withdrawn as to the Actions Against the Charitable Defendants because of the Charitable Defendants' right to a jury trial. Further, with respect to the Unjust Enrichment Action, the reference must be withdrawn so that the District Court can decide whether it has diversity jurisdiction under 28 U.S.C. § 1332. Therefore, the inquiry is not if the reference should be withdrawn but when. Moreover, the enforceable Forum Selection Clauses which further mandate that the Actions Against the Charitable Defendants be fully adjudicated in the District Court (to the extent diversity jurisdiction exists). As such, the reference must be <u>immediately</u> withdrawn as to Actions Against the Charitable Defendants.

[*signature block on following page*]

Respectfully submitted:

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
**Louis M. Phillips (#10505)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was served through this Court's CM/ECF Service on counsel for the Plaintiff and all Defendants on this January 26, 2022

*/s/ Louis M. Phillips*