BTXN 138 (rev. 03/15)

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re: | § | |
| Highland Capital Management, L.P. | § | |
| | § | Case No.:   19–34054–sgj11 |
| Debtor(s) | § | Chapter No.:   11 |
| Marc Kirschner  et al. | § | |
| Plaintiff(s) | § | Adversary No.:   21–03076–sgj |
| vs. | § | |
| James D. Dondero  et al. | § | Civil Case No.: |
| Defendant(s) | § | |
| | § | |
| Marc Kirschner | § | |
| Plaintiff(s) | § | |
| vs. | § | |
| Mark Okada, et al. | § | |
| Defendant(s) | § | |
| | § | |
| | § | |

# NOTICE OF TRANSMITTAL REGARDING WITHDRAWAL OF REFERENCE

I am transmitting:

☑ One copy of the Motion to Withdraw Reference (USDC Civil Action No. – DNC Case) **NOTE**:
A Status Conference has been set for March 1, 2022 at 1:30pm, in  via webex:
https://us–courts.webex.com/meet/jerniga  before U.S. Bankruptcy Judge  Jernigan . The
movant/plaintiff, respondent/defendant or other affected parties are required to attend the Status
Conference.

☐ One copy of:  .

**TO ALL ATTORNEYS:** Fed.R.Bankr.P. 5011(a) A motion for withdrawal of a case or proceeding shall be heard by
a district judge, [*implied*] that any responses or related papers be filed likewise.

DATED:  1/28/22                    FOR THE COURT:
                                   Robert P. Colwell, Clerk of Court

                                   by: /s/Sheniqua Whitaker, Deputy Clerk

BTXN 116 (rev. 07/08)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# WITHDRAWAL OF REFERENCE SERVICE LIST

## Transmission of the Record

BK Case No.: _19–34054–sgj11_

Adversary No.: _21–03076–sgj_

Received in District Court by: _____

Date: _____

Volume Number(s): _____

cc: Stacey G. Jernigan
    Robert (Bob) Schaaf
    Nathan (Nate) Elner
    Attorney(s) for Appellant
    US Trustee

**Plaintiff**   Marc Kirschner

Paige Holden Montgomery
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 981–3300

**Defendant**   Mark Okada, MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST #1 AND
LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST
#1, MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN
HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST EXEMPT TRUST #2,

Brian D. Glueckstein
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
(212) 558–4000

Cortney C. Thomas
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225
(214) 367–6094

**Defendant**   Scott Ellington, Isaac Leventon, Frank Waterhouse, and CPCM, LLC

Debra A Dandeneau
Baker & McKenzie LLP
452 Fifth Avenue

New York, NY 10018
212–626–4875

Margaret Michelle Hartmann
Baker McKenize
1900 N. Pearl Street, Suite 1500
Dallasl, TX 75201
214–978–3421

**Defendant**   Grant James Scott III

John J. Kane
Kane Russell Coleman Logan PC
901 Main Street
Suite 5200
Dallas, TX 75202
(214) 777–4261


**Defendant**   James D. Dondero, STRAND ADVISORS, INC., DUGABOY INVESTMENT TRUST AND NANCY
DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST, and GET GOOD TRUST AND GRANT
JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST

Jason Michael Hopkins
DLA Piper
1717 Main Street
Suite 4600
Dallas, TX 75201
2147434546


**Defendant**   NexPoint Advisors, L.P, Highland Capital Management Fund Advisors, L.P.

Deborah Rose Deitsch–Perez
Stinson Leonard Street
3102 Oak Lawn Avenue
Suite 777
Dallas, TX 75219
(214) 560–2201


**Defendant**   Hunter Mountain Investment Trust

Hunter Mountain Investment Trust (Pro Se)
c/o E. P Keiffer
Rochelle McCullough, LLP
325 North St. Paul St., Suite 4500
Dallas, TX 75201
214.580.2525


**Defendant**   CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD., Charitable DAF Fund, LP, Highland
Dallas Foundation, Inc., and Highland Dallas Foundation, Inc

Louis M. Phillips
KELLY HART & PITRE
301 Main Street, Suite 1600
Baton Rouge, LA 70801
(225) 381–9643

**Defendant**  RAND PE FUND I, LP, SERIES 1 (Pro Se)

No Address


**Defendant**  MASSAND CAPITAL, LLC (Pro Se)

No Address


**Defendant**  MASSAND CAPITAL, INC. (Pro Se)

No Address


**Defendant**  SAS ASSET RECOVERY, LTD (Pro Se)

No Address

BTXN 150 (rev. 11/10)

| | | |
|---|---|---|
| In Re: | § | |
| Highland Capital Management, L.P. | § | |
| | § | |
| Debtor(s) | § | Case No.:    19–34054–sgj11 |
| | § | Chapter No.:   11 |
| Marc Kirschner  et al. | § | |
| Plaintiff(s) | § | Adversary No.:   21–03076–sgj |
| vs. | § | |
| James D. Dondero  et al. | § | |
| | § | |
| Defendant(s) | § | |

## CIVIL CASE COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**I.**  (a) **PLAINTIFF**
Marc Kirschner

**DEFENDANT**
Mark Okada, et al.

(b) County of Residence of First Listed Party:
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Party:
(IN U.S. PLAINTIFF CASES ONLY)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Paige Holden Montgomery
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 981–3300

Attorney's (If Known)
See Service List for representatives

---

**II. BASIS OF JURISDICTION**

○ 1  U.S. Government
       Plaintiff

○ 2  U.S. Government
       Defendant

◉ 3  Federal Question
       (U.S. Government
       Not a Party)

○ 4  Diversity
       (Indicate Citizenship
       of Parties in Item III)

---

**III. CITIZENSHIP OF PRINCIPAL PARTIES**

| | | | | | |
|---|---|---|---|---|---|
| Citizen of This State | ○ 1 | ○ 1 | Incorporated *or* Principal Place of Business In This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated *and* Principal Place of Business In Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. NATURE OF SUIT**

○  422 Appeal 28 USC 158         ◉  423 Withdrawal 28 USC 157         ○  890 Other Statutory Actions

---

**V. ORIGIN**

◉ 1  Original Proceeding     ○ 2  Removed from State
                                          Court

○ 3  Remanded from Appellate Court     ○ 4  Reinstated or
                                                               Reopened

○ 5  Transferred from
       another district

○ 6  Multidistrict
       Litigation

○ 7  Appeal to District Judge from
       Magistrate Judgment

---

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
423 Withdrawal 28 USC 157

Brief description of cause:
Motion for withdrawal of reference

---

**VII. REQUESTED IN COMPLAINT:**

☐   CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23      DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes  ☐ No

---

**VIII. RELATED CASE(S) IF ANY**
Judge:                                                    Docket Number:

---

DATED:  1/28/22

FOR THE COURT:
Robert P. Colwell, Clerk of Court
by: /s/Sheniqua Whitaker, Deputy Clerk

Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for the Former Employee Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | |
| Plaintiff, | |
| v. | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS | Adv. Pro. No. 21-03076-sgj |

MOTION TO WITHDRAW THE REFERENCE

TRUSTEE OF MARK & PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1; MARK & PAMELA
OKADA FAMILY TRUST – EXEMPT TRUST #2
AND LAWRENCE TONOMURA IN HIS CAPACITY
AS TRUSTEE OF MARK & PAMELA OKADA
FAMILY TRUST – EXEMPT TRUST #2; CLO
HOLDCO, LTD.; CHARITABLE DAF HOLDCO,
LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND
DALLAS FOUNDATION; RAND PE FUND I, LP,
SERIES 1; MASSAND CAPITAL, LLC; MASSAND
CAPITAL, INC.; SAS ASSET RECOVERY, LTD.;
AND CPCM, LLC,

           Defendants.

### MOTION TO WITHDRAW THE REFERENCE FOR THE CAUSES OF ACTION IN THE COMPLAINT ASSERTED AGAINST THE FORMER EMPLOYEE DEFENDANTS

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Scott Ellington, Isaac Leventon, Frank Waterhouse, and CPCM, LLC (collectively, the "**Former Employee Defendants**") hereby file this *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants* (the "**Motion**") to have the United States District Court for the Northern District of Texas, Dallas Division (the "**District Court**"), withdraw the reference to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**"), for the causes of action asserted against the Former Employee Defendants (the "**Causes of Action**") in the *Complaint and Objection to Claims*, Adv. Pro. No. 21-03076-sgj, [Dkt. No. 1] (the "**Complaint**")[1] filed in the

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Complaint.

above-captioned adversary proceeding (the "**Adversary Proceeding**").[2] The Causes of Action are listed in **Exhibit A**, which is attached hereto.[3]

Pursuant to 28 U.S.C. § 157(d), and for the reasons stated in the accompanying *Brief in Support of Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants*, filed contemporaneously herewith and which is incorporated herein by reference, the Former Employee Defendants request that the District Court withdraw from the Bankruptcy Court the reference of the Adversary Proceeding with respect to the Causes of Action, in which case the Adversary Proceeding will continue against the Former Employee Defendants as a civil action in the District Court.

---

[2] In accordance with Rule 5011(a) of the Federal Rules of Bankruptcy Procedure, "[a] motion for withdrawal of a case or proceeding shall be heard by a district judge." Under Rule 5011-1(a) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas, "[a] motion to withdraw the reference of a case or a proceeding in a case shall be directed to the district court, but shall be filed with the Bankruptcy Clerk." Accordingly, this Motion is addressed to the District Court, but filed in the Bankruptcy Court.

[3] A proposed order granting the Motion is attached and marked as **Exhibit B** hereto.

MOTION TO WITHDRAW THE REFERENCE - Page 3

WHEREFORE, the Former Employee Defendants respectfully request that the District Court grant the Motion, immediately withdraw the reference of the Adversary Proceeding to the District Court, and grant the Former Employee Defendants such other and further relief as is just.

Dated: January 18, 2022

By: */s/ Michelle Hartmann*
Michelle Hartmann
State Bar No. 24032402
**BAKER & MCKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
**BAKER & MCKENZIE LLP**
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for the Former Employee Defendants*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on January 10, 2022, she discussed the relief requested herein with Quinn Emanuel Urquhart & Sullivan, LLP, counsel of record for the above-named plaintiff in the Adversary Proceeding. On January 17, 2022, Deborah Newman of Quinn Emanuel Urquhart & Sullivan, LLP informed the undersigned that the plaintiff opposes said relief.

/s/ *Debra A. Dandeneau*
Debra A. Dandeneau

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on January 18, 2022, a true and correct copy of this document was served via the Court's CM/ECF system on counsel for the Plaintiff.

/s/ *Michelle Hartmann*
Michelle Hartmann

**EXHIBIT A**

## EXHIBIT A

### Causes of Action

The causes of action against the Former Employee Defendants are as follows: breach of fiduciary duty arising out of conduct that resulted in HCMLP liabilities (Count V against Ellington and Leventon); breach of fiduciary duty in connection with fraudulent transfers and schemes (Count XIV against Ellington); civil conspiracy to breach fiduciary duties under Texas law (Count XVI against Ellington and Leventon); avoidance and recovery of certain Massand transfers as constructive fraudulent transfers under 11 U.S.C. §§ 544, and 550, 26 U.S.C. § 6502, and applicable state law (Count XXII against Ellington); avoidance and recovery of Massand transfers as intentional fraudulent transfers under 11 U.S.C. §§ 544, and 550, 26 U.S.C. § 6502, and applicable state law (Count XXIII against Ellington); conversion (Count XXV against Ellington); unjust enrichment (Count XXVII against Ellington and Leventon); avoidance and recovery of the one-year transfers as preferential transfers under 11 U.S.C. §§ 547 and 550 (Count XXXI against Ellington); avoidance and recovery of the alleged expense transfers as constructive fraudulent transfers under 11 U.S.C. §§ 544, 548, and 550, and other applicable law (Count XXXII against Ellington); avoidance and recovery of the alleged expense transfers as intentional fraudulent transfers under 11 U.S.C. §§ 544, 548, and 550, and other applicable law (Count XXXIII against Ellington); and disallowance of claims under Sections 502(b), 502(d), and 502(e) of the Bankruptcy Code (Count XXXIV against Ellington, Leventon, Waterhouse and CPCM).[1]

---

[1] Capitalized terms used herein shall have the meanings ascribed to them in the Motion.

**EXHIBIT B**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,<br><br>Defendants. | Adv. Pro. No. 21-03076-sgj<br><br>Civil Action No. _____ |

## ORDER GRANTING MOTION TO WITHDRAW THE REFERENCE FOR THE CAUSES OF ACTION ASSERTED AGAINST <u>THE FORMER EMPLOYEE DEFENDANTS</u>

Upon consideration of the *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants* [Adv. Docket No. __] (the "**Motion**") and the brief filed in support thereof [Adv. Docket No. __] (the "**Brief**"),[1] any response thereto, the pleadings, the record of the above-captioned adversary proceeding, and the arguments presented by the parties before this Court, the Court hereby orders that the Motion is GRANTED. The Court finds that withdrawal of the reference under 28 U.S.C. § 157(d) is mandatory as to Counts XXII and XXIII of the Plaintiff's Complaint. Further, the Court finds that cause exists under 28 U.S.C. § 157(d) for withdrawal of the reference of all the Causes of Action. Because "the interest of courts in trying together all claims arising from the same transaction is adequate cause to exercise discretionary power" to withdraw the reference of the Plaintiff's Complaint in its entirety, *see, e.g., In re Contemporary Lithographers, Inc.*, 127 B.R. 122, 128 (M.D.N.C. 1991), the reference of the above-captioned adversary proceeding is withdrawn.

In addition, the Court finds that legitimate issues exist regarding whether the Bankruptcy Court has jurisdiction over the Non-Core Causes of Action such that the Bankruptcy Court should not preside over pre-trial matters, and, therefore, the reference of all the Causes of Action should be withdrawn immediately so that the Court, or a magistrate appointed by the Court, can preside over all pre-trial matters.

SO ORDERED.

Dated _____ , 2022,

_____

UNITED STATES DISTRICT JUDGE

**# # # End of Order # # #**

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Brief.

Proposed form of order prepared by:

Michelle Hartmann
State Bar No. 24032402
**BAKER & MCKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
**BAKER & MCKENZIE LLP**
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for the Former Employee Defendants*

Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for the Former Employee Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS | Adv. Pro. No. 21-03076-sgj |

TRUSTEE OF MARK & PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1; MARK & PAMELA
OKADA FAMILY TRUST – EXEMPT TRUST #2
AND LAWRENCE TONOMURA IN HIS CAPACITY
AS TRUSTEE OF MARK & PAMELA OKADA
FAMILY TRUST – EXEMPT TRUST #2; CLO
HOLDCO, LTD.; CHARITABLE DAF HOLDCO,
LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND
DALLAS FOUNDATION; RAND PE FUND I, LP,
SERIES 1; MASSAND CAPITAL, LLC; MASSAND
CAPITAL, INC.; SAS ASSET RECOVERY, LTD.;
AND CPCM, LLC,

Defendants.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT....................................................................................... 1

RELEVANT FACTUAL BACKGROUND...................................................................... 2

ARGUMENT .................................................................................................................. 2

I.      The Court Must Withdraw the Reference with Respect to Counts XXII and XXIII......3

II.     Under Principles of Permissive Withdrawal of the Reference, the Court Should Withdraw the Reference with Respect to All the Causes of Action. ............................4

    A.      Because the Bankruptcy Court Has No Jurisdiction Over Most of the Causes of Action, the First *Holland* Factor Weighs Significantly in Favor of Withdrawing the Reference................................................................................. 5

        1.      Most of the Causes of Action Asserted Against Ellington and All of Those Asserted Against Leventon Are Non-Core Proceedings............. 5

        2.      The Bankruptcy Court Lacks Post-Confirmation Jurisdiction over the Non-Core Causes of Action under Well-Established Fifth Circuit Precedent. ................................................................................................ 6

            a.      The First of the Fifth Circuit's Seminal Cases on Post-Confirmation Jurisdiction – Craig's Stores of Texas, Inc.......... 8

            b.      At the Other End of the Post-Confirmation Spectrum – Newby v. Enron Corp. (In re Enron Corp. Sec.) .................................... 9

            c.      U.S. Brass – The Last Piece of the Fifth Circuit's Post-Confirmation Jurisdiction Foundation. .................................... 10

            d.      The Decision Tree Presented by the Fifth Circuit's Jurisprudence on Post-Confirmation Jurisdiction ................... 11

            e.      Applying the Fifth Circuit's Framework, the Bankruptcy Court Lacks Post-Confirmation Jurisdiction to Adjudicate the Non-Core Causes of Action. ........................................................... 15

    B.      Ellington and Leventon Have a Jury Trial Right on the Non-Core Causes of Action.................................................................................................... 18

    C.      Judicial Economy and the other *Holland* Factors Favor Permissive Withdrawal. .................................................................................................. 21

        1.      Withdrawal Will Not Promote Forum Shopping. ............................... 21

        2.      Immediate Withdrawal Will Provide the Most Efficient, Economical Use of Judicial and Party Resources and Will Reduce Confusion....... 22

        3.      Withdrawal Will Not Impact the Bankruptcy Process Nor Adversely Affect the Uniformity of the Bankruptcy Administration................... 23

CONCLUSION .................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Walker* (*In re Gulf States Long Term Acute Care of Covington, L.L.C.*),
455 B.R. 869 (E.D. La. Aug. 25, 2011) ...................................................................24

*Ae Mktg. v. Jenkins-Baldwin Corp.*,
No. 3:07-CV-0321-F, 2010 U.S. Dist. LEXIS 161235 (N.D. Tex. Feb. 1,
2010) .......................................................................................................................11

*In re Align Strategic Partners LLC*,
No. 16-35702, 2019 Bankr. LEXIS 1906 (Bankr. S.D. Tex. Mar. 5, 2019).....................21, 23

*Allison v. Citgo Petroleum Corp.*,
151 F.3d 402 (5th Cir. 1998) ...................................................................................23

*Auto. Fin. Corp. v. Ray Huffines Chevrolet, Inc. (In re Parkway Sales & Leasing,
Inc.)*,
411 B.R. 337 (Bankr. E.D. Tex. 2009) .....................................................................19

*Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*,
266 F.3d 388 (5th Cir. 2001) ............................................................................ *passim*

*Beitel v. OCA, Inc. (In re OCA, Inc.)*,
551 F.3d 359 (5th Cir. 2008) .............................................................................11, 16

*BSA v. Hartford Accident & Indem. Co.*,
No. 3:19-CV-1318-B, 2020 U.S. Dist. LEXIS 140424 (N.D. Tex. Aug. 6,
2020) .........................................................................................................................5

*Burch v. Chase Bank of Tex. NA*,
No. 4:20-cv-00524-O, 2020 U.S. Dist. LEXIS 249633 (N.D. Tex. Nov. 6,
2020) .......................................................................................................................13

*Burch v. Freedom Mortg. Corp.*,
No. 3:18-CV-2731-M-BH, 2019 U.S. Dist. LEXIS 177188 (N.D. Tex. July
12, 2019) .................................................................................................................12

*Curriden v. Middleton*,
232 U.S. 633 (1914).................................................................................................19

*Earthwise Energy, Inc. v. Crusader Energy Grp., Inc.*,
No. 12-CV-00107-F, 2013 U.S. Dist. LEXIS 206522 (N.D. Tex. Jan. 17,
2013) .......................................................................................................................11

*Elec. Reliability Council of Tex., Inc. v. May (In re Tex. Commer. Energy)*,
    607 F.3d 153 (5th Cir. 2010) ...........................................................................11

*In re Enron Corp.*,
    MDL-1446, No. H-01-3624, 2005 U.S. Dist. LEXIS 34032 (S.D. Tex. July
    25, 2005) ........................................................................................................10

*In re Enron Corp. Secs*,
    MDL 1446, Nos. H-01-3624, H-05-0774, 2006 U.S. Dist. LEXIS 113831
    (S.D. Tex. Nov. 21, 2006).......................................................................................7

*Ernst & Young LLP v. Pritchard (In re Daisytek, Inc.)*,
    323 B.R. 180 (N.D. Tex. 2005).....................................................................13, 14

*First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In re Biloxi Casino Belle Inc.)*,
    368 F.3d 491 (5th Cir. 2004) .......................................................................11, 16

*In re Flambeaux Gas & Elec. Lights, LLC*,
    Case No. 18-11979, 2019 Bankr. LEXIS 1737 (Bankr. E.D. La. May 31,
    2019) .............................................................................................................15

*Galaz v. Katona (In re Galaz)*,
    841 F.3d 316 (5th Cir. 2016) .......................................................................12, 17

*George West 59 Inv., Inc. v. Williams (In re George West 59 Inv., Inc.)*,
    526 B.R. 650 (N.D. Tex. 2015).........................................................................11

*Granfinanciera, S.A. v. Norberg*,
    492 U.S. 33 (1989)....................................................................................18, 20

*Harris-Nutall v. Nationstar Mortg., LLC (In re Harris-Nutall)*,
    No. 15-3114-BJH, 2016 Bankr. LEXIS 4623 (Bankr. N.D. Tex. May 19,
    2016) .............................................................................................................24

*Helena Agri-Enters., LLC v. Young (In re Young)*,
    Case No. 17-14065-NPO, 2018 Bankr. LEXIS 3646 (Bankr. N.D. Miss. Nov.
    19, 2018) ........................................................................................................16

*Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas
    Petroleum, Inc.)*,
    522 F.3d 575 (5th Cir. 2008) .............................................................................12

*Holland Am. Ins. Co. v. Succession of Roy*,
    777 F.2d 992 (5th Cir. 1985) .................................................................... *passim*

*Jenkins v. Heritage Org., L.L.C. (In re Heritage Org., L.L.C.)*,
    No. 04-35574-BJH-11, 2008 Bankr. LEXIS 2071 (Bankr. N.D. Tex. July 23,
    2008) ........................................................................................................21, 24

*In re Jensen*,
  946 F.2d 369 (5th Cir. 1991) ........................................................................................18, 19

*Johnson v. Williamson (In re British Am. Props. III)*,
  369 B.R. 322 (Bankr. S.D. Tex. 2007) ...................................................................................25

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
  No. 3:08-CV-0261-L, 2008 U.S. Dist. LEXIS 77146 (N.D. Tex. Sept. 30,
  2008) ..........................................................................................................................................7

*Lopez v. Portfolio Recovery Assocs., LLC (In re Lopez)*,
  No. 09-70659, 2017 Bankr. LEXIS 2221 (Bankr. S.D. Tex. Mar. 20, 2017)........................22

*Lycoming Engines v. Superior Air Parts, Inc.*,
  No. 13-CV-1162-L, 2014 U.S. Dist. LEXIS 66819 (N.D. Tex. May 15, 2014)....................13

*Markel Ins. Co. v. Origin Bancorp, Inc. (In re Lauren Eng'rs & Constructors,
  Inc.)*,
  No. 21-10051-RLJ-7, 2021 Bankr. LEXIS 3032 (Bankr. N.D. Tex. Sept. 29,
  2021) ....................................................................................................................19, 20, 22

*Medallic Art Co., LLC v. Calvert (In re Northwest Terr. Mint, LLC)*,
  No. C16-01895-JCC, 2017 U.S. Dist. LEXIS 20068 (W.D. Wa. Feb. 13,
  2017) ........................................................................................................................................19

*Mirant Corp. v. Consol. Edison Co. of N.Y., Inc. (In re Mirant Corp.)*,
  No. 4:06-CV-540-A, 2007 U.S. Dist. LEXIS 108 (N.D. Tex. Jan. 3, 2007)..........................18

*Mobley v. Quality Lease & Rental Holdings, LLC (In re Quality Lease & Rental
  Holdings, LLC)*,
  Nos. 14-60074, 14-6005, 2016 Bankr. LEXIS 297 (Bankr. S.D. Tex. Feb. 1,
  2016) ........................................................................................................................................24

*Morrison v. Amway Corp. (In re Morrison)*,
  409 B.R. 384 (Bankr. S.D. Tex. 2009) .....................................................................................6

*Natixis Funding Corp. v. Genon Mid-Atlantic, LLC (In re Genon Energy, Inc.)*,
  Nos. 17-33695 (DRJ), 18-3409, 2019 Bankr. LEXIS 3983 (Bankr. S.D. Tex.
  Aug. 14, 2019) ..........................................................................................................................4

*Newby v. Enron Corp. (In re Enron Corp. Sec.)*,
  535 F.3d 325 (5th Cir. 2008) .............................................................................9, 10, 11, 16

*Palmer & Palmer v. U.S. Trustee (In re Hargis)*,
  146 B.R. 173 (N.D. Tex. 1992)................................................................................................24

*Pereira v. Farace*,
  413 F.3d 330 (2d Cir. 2005)....................................................................................................18

*Phillips Eleven Hundred, Ltd. v. Land Advisors, Ltd. (In re Phillips Eleven Hundred, Ltd.)*,
Nos. 03-34448-HDH-11, 03-03604, 2003 Bankr. LEXIS 1729 (Bankr. N.D. Tex. Dec. 22, 2003) ................................................................................................6

*Ross v. Berhard*,
396 U.S. 531 (1970) ................................................................................................19

*St. Paul Reinsurance Co. v. Greenberg*,
134 F.3d 1250 (5th Cir. 1998) ................................................................................7

*Superior Air Parts, Inc. v. Kübler*,
No. 3:14-CV-349-D, 2015 U.S. Dist. LEXIS 16777 (N.D. Tex. Feb. 11, 2015) ..................12

*Tex. United House. Program, Inc. v. Wolverine Motg. Partner Ret.*,
No. 3:17-cv-977-L, 2017 U.S. Dist. LEXIS 140992 (N.D. Tex. July 18, 2017) ...........3, 13, 17

*Tow v. Speer (In re Royce Homes, L.P.)*,
Nos. 09-32467-H4-7, 11-03191, 2011 Bankr. LEXIS 5795 (Bankr. S.D. Tex. Oct. 13, 2011) ................................................................................................6

*U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*,
301 F.3d 296 (5th Cir. 2002) ................................................................10, 11, 12

*Veldekens v. GE HFS Holdings, Inc.*,
362 B.R. 762 (Bankr. S.D. Tex. 2007) ................................................................21, 23

*Vetter v. McAtee*,
850 F.3d 178 (5th Cir. 2017) ................................................................................23

*Waldon v. Nat'l Fire Ins. Co. (In re EbaseOne Corp.)*,
No. 01-31527-H4-7, 2006 Bankr. LEXIS 1861 (Bankr. S.D. Tex. June 14, 2006) ................................................................................................24

*Weaver v. Tex. Capital Bank, N.A.*,
410 B.R. 453 (N.D. Tex. 2009) ................................................................................12

*Wood v. Wood (In re Wood)*,
825 F.2d 90 (5th Cir. 1987) ................................................................................5

*Yaquinto v. Mid-Continent Cas. Co. (In re Bella Vita Custom Homes)*,
No. 16-34790-BJH, 2018 Bankr. LEXIS 1699 (Bankr. N.D. Tex. May 27, 2018) ................................................................................................4, 22

**Statutes**

11 U.S.C. § 157(a) ................................................................................................2

26 U.S.C § 6502 .............................................................................................................1, 3

28 U.S.C. § 157(c)(1) ..........................................................................................................23

28 U.S.C. § 157(d) ...............................................................................................................3

28 U.S.C. § 1334 ..................................................................................................................3

**Other Authorities**

Federal Rules of Bankruptcy Procedure, Rule 9015 ...........................................................20

Federal Rules of Civil Procedure, Rule 38 ........................................................................20

*Ord. of Reference of Bankr. Cases and Proc. Nunc Pro Tunc, In re Misc. Ord. No.
33*, No. 3:04-MI-00033 .........................................................................................................3

U.S. CONST. amend. VII ................................................................................. *passim*

**BRIEF IN SUPPORT OF MOTION TO WITHDRAW THE**
**REFERENCE FOR THE CAUSES OF ACTION IN THE COMPLAINT**
**ASSERTED AGAINST THE FORMER EMPLOYEE DEFENDANTS**

The Former Employee Defendants hereby file their brief in support of the *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants* (the "***Motion***"),[1] filed contemporaneously herewith, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      This Motion is not about whether the District Court should withdraw the reference, but when. The Litigation Trustee relies upon application of 26 U.S.C § 6502 to support recovery under Counts XXII and XXIII against Ellington. Accordingly, these counts are subject to mandatory withdrawal of the reference. In addition, with respect to the Non-Core Causes of Action (defined below), not only does the Bankruptcy Court lack the power to enter final findings of fact or conclusions of law, but it also has no authority to conduct a jury trial with respect to such claims. These facts alone are sufficient to justify a withdrawal of the reference by the District Court prior to trial of the Causes of Action.

2.      This Motion, however, asks the District Court to withdraw the reference *immediately*. That is because the Non-Core Causes of Action – brought eight months after Plan confirmation and two months after the Effective Date (defined below) – assert state law causes of action over which the Bankruptcy Court has ***no*** post-confirmation jurisdiction whatsoever. As a result, the Reference Order (defined below) is inapplicable, and the Bankruptcy Court has no authority to preside over any matters relating to the Non-Core Causes of Action.

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion or in the Complaint. Unless otherwise stated herein, docket number identifications refer to Case No. 19-34054-sgj11 (the "***Bankruptcy Case***").

3.      Consequently, rather than have two courts preside over both pre-trial and trial of the Causes of Action, the interests of justice require that the District Court immediately withdraw the reference and preside over all the Causes of Action.

## RELEVANT FACTUAL BACKGROUND

4.      On October 16, 2019, HCMLP filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***").

5.      On November 24, 2020, HCMLP filed the Plan. Thereafter, on February 22, 2021 (the "***Confirmation Date***"), the Bankruptcy Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Dkt. No. 1943] (the "***Confirmation Order***").

6.      On August 11, 2021, HCMLP filed the *Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Dkt. No. 2700], thereby announcing that Plan had gone effective as of the date thereof (the "***Effective Date***"). Since the Effective Date, the Plan has been substantially consummated, and "distributions to the Debtor's creditors are well underway." *See Appellee's Motion to Dismiss Appeal as Equitably Moot*, Adv. Proc. No. 3:21-cv-01895-D, pp. 17-20 [Dkt. No. 14] (Oct. 15, 2021).

7.      On October 15, 2021, the Litigation Trustee commenced the Adversary Proceeding.

## ARGUMENT

8.      Under 11 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Pursuant to the District Court's standing order of reference, "any or all proceedings arising under Title 11 or arising in or related to a case under Title 11" are automatically "referred to the Bankruptcy Judges of this district

for consideration and resolution consistent with law." *Ord. of Reference of Bankr. Cases and Proc. Nunc Pro Tunc, In re Misc. Ord. No. 33*, No. 3:04-MI-00033 (N.D. Tex. Aug. 3, 1984) (the "**Reference Order**").

9.      "Significantly, such a blanket order of reference does not preclude a district court from exercising its jurisdiction pursuant to 28 U.S.C. § 1334." *Tex. United Hous. Program, Inc. v. Wolverine Motg. Partner Ret.*, No. 3:17-cv-977-L, 2017 U.S. Dist. LEXIS 140992, at *6 (N.D. Tex. July 18, 2017). Section 157(d) of title 28 of the United States Code governs mandatory and permissive withdrawal of the reference of a proceeding that is before a bankruptcy court:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).

**I.      The Court Must Withdraw the Reference with Respect to Counts XXII and XXIII.**

10.      Mandatory withdrawal of the reference applies when "substantial and material consideration" of other federal laws is required.  *Tex. United Hous. Program*, 2017 U.S. Dist. LEXIS 140992, at *17-18. Applying this standard, the District Court *must* withdraw the reference with respect to Counts XXII and XXIII because consideration of these counts will require an analysis of whether the Litigation Trustee (whose rights are limited to those available to the Internal Revenue Service (the "**IRS**") as creditor) may use 26 U.S.C § 6502 to extend the lookback period for certain of his fraudulent transfer claims, both as a matter of federal bankruptcy law and as a matter of federal tax law where, as here, HCMLP is a limited partnership, was treated as a passthrough entity for tax purposes, and did not pay income taxes directly to the IRS. Moreover, given that the IRS asserted claims for unspecified excise taxes that allegedly arose no earlier than

the third quarter of 2015, the Complaint raises the issue of whether, as a matter of federal law and IRS policies, HCMLP was liable for excise taxes under title 26 and, if so, whether the IRS may assert state law causes of action for transfers arising prior to the accrual of its claim.

## II. Under Principles of Permissive Withdrawal of the Reference, the Court Should Withdraw the Reference with Respect to All the Causes of Action.

11. The Fifth Circuit Court of Appeals has set forth a number of factors for courts to consider when determining if permissive withdrawal for cause is appropriate, including whether (i) the proceeding involves core or non-core issues, (ii) a party has demanded a jury trial, (iii) the withdrawal reduces forum shopping, (iv) the withdrawal would foster the economical use of the debtors' and creditors' resources while reducing confusion, (v) the withdrawal would expedite the bankruptcy process, and (vi) the withdrawal would further uniformity in bankruptcy administration. *See Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 998-99 (5th Cir. 1985). Not all factors must be met to withdraw the reference; courts have withdrawn the reference when only a few factors have been met. *Yaquinto v. Mid-Continent Cas. Co. (In re Bella Vita Custom Homes)*, No. 16-34790-BJH, 2018 Bankr. LEXIS 1699, at *6-7 (Bankr. N.D. Tex. May 27, 2018) (recommending withdrawal of the reference when four of the *Holland* factors favored withdrawal and the others were neutral); *see also Natixis Funding Corp. v. Genon Mid-Atlantic, LLC (In re Genon Energy, Inc.),* Nos. 17-33695 (DRJ), 18-3409, 2019 Bankr. LEXIS 3983 (Bankr. S.D. Tex. Aug. 14, 2019) (recommending withdrawal of the reference where causes of action were non-core, and withdrawal would expedite the bankruptcy process).

12. As applied in this case, the *Holland* factors weigh heavily in favor of the District Court withdrawing the reference: (i) the District Court must withdraw the reference with respect to Counts XXII and XXIII; (ii) for the Non-Core Causes of Action, the Bankruptcy Court has ***no jurisdiction***, and such jurisdictional defect can only be cured by relying upon the District Court's

diversity jurisdiction; (iii) Leventon is entitled to a jury trial under the Seventh Amendment to the United States Constitution (the "***Seventh Amendment***") for all of the Causes of Action asserted against him, and Ellington is entitled to a jury trial for most of the Causes of Action asserted against him; and (iv) judicial economy militates withdrawal of the reference under the other *Holland* factors.

> **A.** **Because the Bankruptcy Court Has No Jurisdiction Over Most of the Causes of Action, the First *Holland* Factor Weighs Significantly in Favor of Withdrawing the Reference.**

13.     Under the first *Holland* factor, non-core proceedings militate in favor of withdrawing the reference from the Bankruptcy Court. In the instant case, not only are most of the Causes of Action non-core, but under established Fifth Circuit precedent, the Bankruptcy Court has no jurisdiction whatsoever over such Causes of Action. As a result, the Reference Order is inapplicable, and the Bankruptcy Court has ***no*** authority to preside over such Causes of Action at any stage of this proceeding.

> **1.** **Most of the Causes of Action Asserted Against Ellington and All of Those Asserted Against Leventon Are Non-Core Proceedings.**

14.     In determining whether a proceeding is non-core, the Fifth Circuit Court of Appeals has explained that "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding … [I]t is an 'otherwise related' or non-core proceeding." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). Therefore, if an action could have proceeded in state court had there been no bankruptcy filing, and the proceeding does not otherwise invoke a substantive right created by bankruptcy law, it is a non-core proceeding. *See id.*; *see also BSA v. Hartford Accident & Indem. Co.*, No. 3:19-CV-1318-B, 2020 U.S. Dist. LEXIS 140424, at *29 (N.D. Tex. Aug. 6, 2020) (pre-petition insurance coverage action was a non-core proceeding as it did not invoke a

substantive right created by federal bankruptcy law and was a case that could exist outside of bankruptcy).

15. The Causes of Action for breach of fiduciary duties (Counts V and XIV), civil conspiracy (Count XVI), conversion (Count XXV), and unjust enrichment (Count XXVII) (collectively, the "***Non-Core Causes of Action***") all arise under state law, could have been asserted in a separate state court proceeding had the Bankruptcy Case not been filed, and do not invoke substantive rights in bankruptcy. These represent most of the Causes of Action asserted against Ellington and all of the Causes of Action asserted against Leventon.[2] *See Phillips Eleven Hundred, Ltd. v. Land Advisors, Ltd. (In re Phillips Eleven Hundred, Ltd.)*, Nos. 03-34448-HDH-11, 03-03604, 2003 Bankr. LEXIS 1729, at *8 (Bankr. N.D. Tex. Dec. 22, 2003) (breach of fiduciary duty and conspiracy to breach fiduciary duty claims are non-core).[3] None of the Non-Core Causes of Action makes any reference to the Bankruptcy Code — nor is it applicable. As such, all of the Non-Core Causes of Action are unmistakably non-core proceedings.

>    **2. The Bankruptcy Court Lacks Post-Confirmation Jurisdiction over the Non-Core Causes of Action under Well-Established Fifth Circuit Precedent.**

16. The issue in this case, however, is broader than a pure application of the first *Holland* factor. The Litigation Trustee has the burden to establish the Bankruptcy Court's subject matter jurisdiction over this Adversary Proceeding and each and every claim asserted therein. *See*

---

[2] The Complaint includes Ellington and Leventon in Count XXXIV, which seeks disallowance of certain claims filed by Ellington and Leventon. The Litigation Trust, Ellington, and Leventon have agreed to withdraw with prejudice the claims filed by Leventon and Ellington that are referenced in such count (other than claim 255, which is not a claim filed by Ellington). *See Stipulation and Agreed Order Authorizing Withdrawal of Proofs of Claim Nos. 182, 184, 185, 187, 192, 214, 215, 242, 245 and 253* [Dkt. 3091]. The only other claims referenced in such count, although originally filed by Ellington or Leventon, were transferred to CPCM prior to the Effective Date.

[3] *See also Tow v. Speer (In re Royce Homes, L.P.)*, Nos. 09-32467-H4-7, 11-03191, 2011 Bankr. LEXIS 5795, at *7 (Bankr. S.D. Tex. Oct. 13, 2011) (breach of fiduciary duty, conspiracy, and unjust enrichment proceedings are non-core); *Morrison v. Amway Corp. (In re Morrison)*, 409 B.R. 384, 390 (Bankr. S.D. Tex. 2009) (breach of fiduciary duty, conspiracy, and conversion claims are all non-core because they do not "arise under the Bankruptcy Code" nor "could [the causes of action] only arise in a bankruptcy case").

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, No. 3:08-CV-0261-L, 2008 U.S. Dist. LEXIS 77146, at *5-6 (N.D. Tex. Sept. 30, 2008) (the burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it); *In re Enron Corp. Secs*, MDL 1446, Nos. H-01-3624, H-05-0774, 2006 U.S. Dist. LEXIS 113831, at *82 (S.D. Tex. Nov. 21, 2006) ("The party invoking the court's bankruptcy jurisdiction … has the burden of proving that jurisdiction exists"); *see also St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it"). As set forth below, the Litigation Trustee cannot meet that burden for the Non-Core Causes of Action.

17.     Simply put, the Bankruptcy Court has no subject matter jurisdiction with respect to the Non-Core Causes of Action. Such a jurisdictional defect cannot be cured by withdrawal of the reference at the time of trial, but can only be cured by an immediate withdrawal of the reference on the basis of diversity jurisdiction.[4]

18.     As discussed below, the Fifth Circuit Court of Appeals has repeatedly made clear that the scope of a bankruptcy court's post-confirmation jurisdiction is extremely limited and differs markedly from the broad "related to" jurisdiction enjoyed by a bankruptcy court prior to confirmation of a chapter 11 plan. Because many lower court decisions[5] have muddied the test for post-confirmation jurisdiction, the starting point for the analysis must be the actual decisions of the Fifth Circuit Court of Appeals. A proper application of the standard shows that the Bankruptcy Court lacks post-confirmation jurisdiction over the Non-Core Causes of Action.

---

[4] The Former Employee Defendants are aware of at least one other defendant in this proceeding that is a Delaware entity and as to which the District Court lacks federal diversity jurisdiction. The Former Employee Defendants take no position at this time on whether the presence of any such non-diverse defendant, if not cured by the Litigation Trustee in this Adversary Proceeding, would compel dismissal of the Adversary Proceeding as to all defendants.

[5] As discussed below, though, the District Court-level decisions in the Northern District of Texas have almost universally adhered to the Fifth Circuit's standard.

a. *The First of the Fifth Circuit's Seminal Cases on Post-Confirmation Jurisdiction – Craig's Stores of Texas, Inc.*

19. In *Bank of La. v. Craig's Stores of Texas, Inc.* (*In re Craig's Stores of Tex., Inc.*), 266 F.3d 388 (5th Cir. 2001), the Fifth Circuit announced that it would apply an "exacting theory of post-confirmation bankruptcy jurisdiction." *Id.* at 391. *Craig's Stores* involved a dispute relating to a contract that the debtor had assumed under its chapter 11 plan. Eighteen months after confirmation, the debtor commenced an action in the bankruptcy court against the contract counterparty alleging claims relating to both pre- and post-confirmation conduct. *Id.* at 389. The Fifth Circuit expressly rejected the "related to" test for determining whether the bankruptcy court had jurisdiction over the action. Instead, the Fifth Circuit imposed its "more exacting theory of post-confirmation bankruptcy jurisdiction," explaining that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Id.* at 390.

20. Declining to find that the bankruptcy court had post-confirmation jurisdiction, the Fifth Circuit Court of Appeals reasoned that (i) the debtor's claim against the bank principally dealt with post-confirmation relations between the parties, (ii) no "antagonism" or claim was pending between the parties at the time of confirmation, and (iii) no facts or law deriving from the reorganization or the plan were necessary to the claim asserted by the debtor against the defendant. *Craig's Stores,* 266 F.3d at 391. Critically, the Fifth Circuit dismissed the debtor's argument that the bankruptcy court had post-confirmation jurisdiction because the status of the debtor's contract would affect distributions to creditors under the plan, noting that "the same could be said of any other post-confirmation contractual relations in which [the debtor] is engaged." *Id.* Nor was the court persuaded by the "[t]he fact that [the relevant contract] existed throughout the reorganization

and was, by implication, assumed as part of the plan," noting that this "is of no special significance." *Id.*

      b.   *At the Other End of the Post-Confirmation Spectrum – Newby v. Enron Corp. (In re Enron Corp. Sec.)*

21.     If *Craig's Stores* – a dispute commenced 18 months after confirmation that principally dealt with post-confirmation relations – is at one end of the post-confirmation jurisdiction spectrum, then *Newby v. Enron Corp.* (*In re Enron Corp. Sec.*), 535 F.3d 325 (5th Cir. 2008), is most decidedly at the other. At issue in *Newby v. Enron* was whether confirmation of a chapter 11 plan divested the bankruptcy court of jurisdiction over an adversary proceeding that had been commenced pre-confirmation and as to which all parties conceded the bankruptcy court had jurisdiction when it was commenced. The *Newby v. Enron* court applied the *Craig's Stores* factors, finding that (i) the dispute stemmed from prepetition activities precipitating the collapse of Enron, and (ii) the litigation was commenced prior to confirmation. *Id.* at 334-35. No evidence was given as to the third prong of the *Craig's Stores* analysis, but the court stated that such prong was ultimately of no consequence because the first two factors weighed so heavily in favor of jurisdiction. *Id.* at 335-36.

22.     In a much overlooked footnote, the Fifth Circuit was careful to distinguish its ruling from a ruling in an earlier Enron-related litigation in which the district court dismissed claims based on pre-confirmation conduct for lack of post-confirmation jurisdiction. Specifically, the Fifth Circuit noted that *Newby v. Enron* involved the issue of whether confirmation **divested** the court of jurisdiction over a pre-confirmation litigation, not whether jurisdiction existed over an action at the time of its commencement:

> [T]he District Court held that it lacked bankruptcy jurisdiction over claims based on pre-confirmation activities because the claims were raised post-confirmation. ***Considering that the claims were raised post-confirmation, the District Court held that such claims could not create jurisdiction***; it

said nothing as to whether it could maintain jurisdiction over the very same claims if they had been raised pre-confirmation.

*Id.* at 335 n.9 (summarizing *In re Enron Corp.*, MDL-1446, No. H-01-3624, 2005 U.S. Dist. LEXIS 34032 (S.D. Tex. July 25, 2005) (emphasis added)).

      c.    *U.S. Brass – The Last Piece of the Fifth Circuit's Post-Confirmation Jurisdiction Foundation.*

23.    The Fifth Circuit has recognized only one other circumstance in which a bankruptcy court has post-confirmation jurisdiction – where the dispute focuses on interpretation of the chapter 11 plan or otherwise seeks to prevent an action that is claimed to be inconsistent with the plan. *U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296 (5th Cir. 2002).

24.    In *U.S. Brass*, the debtor filed for chapter 11 protection to address product liability claims arising out of defective plumbing parts. The debtor's insurers objected to confirmation of the plan and reached an agreement with the debtor to preserve the insurers' coverage defenses. This agreement was reflected in the plan, which provided that the underlying product liability claims would be litigated before a court of competent jurisdiction and either settled or litigated to final judgment. Although the chapter 11 plan provided for arbitration with respect to certain claims, it specifically excluded the claims of Shell from that provision. *Id.* at 299-301.

25.    Thereafter, the debtor reached a settlement with Shell and agreed that Shell's claims would be resolved by binding arbitration. In objecting to the debtor's motion seeking bankruptcy court approval of the settlement, the insurers argued that the settlement agreement's arbitration provision constituted an impermissible modification of the plan. The insurers also argued that the bankruptcy court lacked post-confirmation jurisdiction to approve such modification. *Id.* at 302-03. The Fifth Circuit ruled that the bankruptcy court had post-confirmation jurisdiction. The Fifth Circuit, however, also reaffirmed its rejection of the broader view of post-confirmation

jurisdiction, criticizing the use of the "broad 'related to' test for application in post-confirmation disputes." *Id.* at 304. The court noted, though, that bankruptcy law and an interpretation of the plan would determine the outcome of the dispute in *U.S. Brass*; therefore, the bankruptcy court had core jurisdiction to decide the issue. *Id.* at 304-05. *See also Elec. Reliability Council of Tex., Inc. v. May (In re Tex. Commer. Energy)*, 607 F.3d 153, 157 (5th Cir. 2010) (post-confirmation jurisdiction existed to determine whether drawing on a letter of credit violated the terms of an injunction that was incorporated into the plan and specifically limited the ability to make such a draw because the "dispute was ***intimately tied to the terms of the [plan]***.") (emphasis added).

        d.    *The Decision Tree Presented by the Fifth Circuit's Jurisprudence on Post-Confirmation Jurisdiction*

26.    Applying the standard developed by the Fifth Circuit, a court should consider the following to determine whether it has post-confirmation jurisdiction over a cause of action:

i.)  ***Was the action commenced prior to confirmation of the plan?*** If so, then the bankruptcy court maintains its subject matter jurisdiction after confirmation of the plan. *First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In re Biloxi Casino Belle Inc.)*, 368 F.3d 491 (5th Cir. 2004); *Beitel v. OCA, Inc. (In re OCA, Inc.)*, 551 F.3d 359, 367 n.10 (5th Cir. 2008); *Newby v. Enron*, 535 F.3d at 335-36.[6]

ii.)  ***Does the action principally concern post-confirmation activities?*** If so, then the bankruptcy court does *not* have post-confirmation jurisdiction unless the last leg of the Fifth Circuit's post-confirmation jurisdiction analysis justifies retention of

---

[6] *See also George West 59 Inv., Inc. v. Williams (In re George West 59 Inv., Inc.)*, 526 B.R. 650, 654 n.10 (N.D. Tex. 2015) (bankruptcy court had post-confirmation jurisdiction over an adversary proceeding that was filed pre-confirmation); *Earthwise Energy, Inc. v. Crusader Energy Grp., Inc.*, No. 12-CV-00107-F, 2013 U.S. Dist. LEXIS 206522, at *41 (N.D. Tex. Jan. 17, 2013) ("The Adversary Proceeding commenced prior to plan confirmation, … [and] [t]he subsequent occurrence of plan confirmation does not divest the court of properly exercised jurisdiction over pending matters."); *Ae Mktg. v. Jenkins-Baldwin Corp.*, No. 3:07-CV-0321-F, 2010 U.S. Dist. LEXIS 161235, at *7-8 (N.D. Tex. Feb. 1, 2010) (bankruptcy court was not divested of jurisdiction to hear a matter filed pre-confirmation).

jurisdiction by the bankruptcy court. *Craig's Stores*, 266 F.3d at 390-91 (one of the reasons the bankruptcy court did not have post-confirmation jurisdiction to adjudicate the matter was because "Craig's claim against the Bank principally dealt with post-confirmation relations between the parties"). Note that this ***does not*** mean that the presence of pre-confirmation activities favors post-confirmation jurisdiction – it is necessary, but not sufficient.[7]

iii.) ***Does resolution of the action require an interpretation or enforcement of the plan?*** If so, then the bankruptcy court likely has subject matter jurisdiction and may even have core jurisdiction. *U.S. Brass*, 301 F.3d at 305 (bankruptcy court had post-confirmation subject matter jurisdiction over a motion that would have the effect of modifying a substantially consummated plan); *Highland Capital Mgmt. LP v. Chesapeake Energy Corp.* (*In re Seven Seas Petroleum, Inc.*), 522 F.3d 575, 589 (5th Cir. 2008) (although ultimately finding that bankruptcy court jurisdiction did not exist, "[t]he district court was thus correct in assuming that bankruptcy jurisdiction would exist over any claims that attempt to 'subvert' a confirmed plan"); *Galaz v. Katona* (*In re Galaz*), 841 F.3d 316, 320 (5th Cir. 2016) (because the action involved a potential violation of the discharge injunction, the bankruptcy court had core jurisdiction).[8]

---

[7] Some courts have leaped to the illogical conclusion that, because *Craig's Stores* found that post-confirmation activities led to no bankruptcy jurisdiction, then pre-confirmation activities would be a positive factor in finding that post-confirmation jurisdiction exists. Under basic logical reasoning, however, the converse of a statement does not have the same truth as the original statement.

[8] *See also Burch v. Freedom Mortg. Corp.*, No. 3:18-CV-2731-M-BH, 2019 U.S. Dist. LEXIS 177188, at *12 (N.D. Tex. July 12, 2019) (citing *U.S. Brass* and noting, "[t]hese causes of action bear on the interpretation and enforcement of each bankruptcy plan and order of discharge, which is within the bankruptcy court's jurisdiction to interpret and enforce its own prior orders"); *Weaver v. Tex. Capital Bank, N.A.*, 410 B.R. 453, 458-59 (N.D. Tex. 2009) (action seeking declaratory relief to interpret whether the plan of reorganization eliminated a creditor's rights to pursue guaranteed debts "inherently required interpretation of the confirmed plan"); *Superior Air Parts, Inc. v. Kübler*, No. 3:14-CV-349-D, 2015 U.S. Dist. LEXIS 16777, at *35-36 (N.D. Tex. Feb. 11, 2015) (bankruptcy court did not have

---

27.     As noted, the published Northern District of Texas decisions addressing post-confirmation jurisdiction are largely consistent with this framework. Two additional cases from the Northern District of Texas predominantly rely upon the third question in the above framework – does resolution of the claims require an interpretation or enforcement of the plan? In *Tex. United Hous. Program*, the debtor brought a post-confirmation lawsuit in district court against its prepetition lender alleging claims against the lender as a result of the lender's foreclosure action. The magistrate judge recommended referral of the action to the bankruptcy court because the debtor's chapter 11 plan had directly addressed the lender's debts and expressly allowed the lender to commence foreclosure proceedings if the debtor defaulted. 2017 U.S. Dist. LEXIS 140992, at *14. In *Burch v. Chase Bank of Tex. NA*, No. 4:20-cv-00524-O, 2020 U.S. Dist. LEXIS 249633 (N.D. Tex. Nov. 6, 2020), a former individual debtor commenced an action against a bank asserting that a note and mortgage were unenforceable against him as a result of the individual's prior bankruptcy case. The district court concluded that, because the individual's claims bore on the interpretation and enforcement of the individual debtor's plan, the suit was "arising in or related to" a case under title 11, and the bankruptcy court had post-confirmation jurisdiction. *Id.* at *7.

28.     Only one published Northern District of Texas case fails to follow the Fifth Circuit framework discussed above, primarily because the District Court in that decision improperly reduced its post-confirmation jurisdictional analysis to the "related to" standard that *Craig's Stores* rejected. In *Ernst & Young LLP v. Pritchard (In re Daisytek, Inc.)*, 323 B.R. 180 (N.D. Tex. 2005), the District Court found that a bankruptcy court had post-confirmation jurisdictional authority to

---

post-confirmation jurisdiction to adjudicate state law claims as the plaintiffs "neither allege[d] a violation of any of the bankruptcy court's orders … nor assert[ed] a violation of any obligation created by the bankruptcy plan"); *Lycoming Engines v. Superior Air Parts, Inc.*, No. 13-CV-1162-L, 2014 U.S. Dist. LEXIS 66819, at *11-12 (N.D. Tex. May 15, 2014) (upholding a bankruptcy court's jurisdiction to determine whether obligations under an agreement were discharged under the confirmed plan).

order a Rule 2004 examination because (1) a litigation trustee was seeking information relating to prepetition claims, and (2) any successful prosecution of the claims would impact creditors' recoveries under the plan. *Id.* at 185-86. Despite citing *Craig's Stores* to support its holding, the District Court in *Daisytek* did exactly what the Fifth Circuit rejected – it applied a pre-confirmation "related to" standard to find that a bankruptcy court had post-confirmation jurisdiction over a matter. Critically, the finding that prosecution of claims would impact creditor recoveries was expressly rejected in *Craig's Stores*. *See Craig's Stores*, 266 F.3d at 391. Therefore, *Daisytek* is inconsistent with Fifth Circuit precedent regarding a bankruptcy court's post-confirmation jurisdiction.

29.     It is worth noting that some bankruptcy courts, as well as district courts outside of the Northern District of Texas, have focused improperly on the nebulous reference to "antagonism" in *Craig's Stores* to hold onto post-confirmation conflicts with parties that were the principal antagonists in the chapter 11 case (not the case with the Former Employee Defendants) and have interpreted the "implementation" factor in *Craig's Stores* to mean any action that could bring money into the estate (thereby reducing post-confirmation jurisdiction to the rejected "related to" standard). As discussed above, however, this reasoning is not consistent with the Fifth Circuit's application of post-confirmation jurisdiction. Instead, the above construct avoids the judicial creep of such courts by removing the unwarranted gloss applied by them and, instead, accurately reflects how the Fifth Circuit has interpreted and applied its post-confirmation jurisdiction test first set out in *Craig's Stores.*

        e.     *Applying the Fifth Circuit's Framework, the Bankruptcy Court Lacks Post-Confirmation Jurisdiction to Adjudicate the Non-Core Causes of Action.*

30.      ***Was the action commenced prior to confirmation of the Debtor's chapter 11 plan?*** The Adversary Proceeding was not filed until almost eight months after the Confirmation Order was entered.

31.      Moreover, more than five months after confirmation of the Plan, the Unsecured Creditors' Committee filed a broad 2004 discovery request on behalf of the Litigation Trustee, who was then an adviser to the Unsecured Creditors' Committee.[9] The 2004 Motion stated that an investigation had been commenced that was aimed at gathering "additional information about … conduct that also may have harmed the Debtor" and could give rise to claims for breach of fiduciary duties, fraudulent transfer, conspiracy, or other causes of action. *Id*. at 3. The Unsecured Creditors' Committee, on behalf of the Litigation Trustee, requested authority to issue broad subpoenas for documents and depositions of nearly 130 organizations and individuals, including of Ellington, Leventon, and Waterhouse, to uncover any "potential causes of action" that could be brought against, among others, the Former Employee Defendants. *Id*. The Unsecured Creditors' Committee stated that that there was reason to believe that "Strand and Dondero (and potentially others) … may have breached their fiduciary duties," but pressed the need for 2004 discovery because an investigation was warranted to make this determination. *Id*. at 10. If five months after the Confirmation Date the relevant claims were still under "investigation" to the point that a massive Rule 2004 fishing expedition was warranted, then such claims could not also have been subject to an active dispute before the Bankruptcy Court prior to the Confirmation Date.[10]

---

[9] *See Motion of the Official Committee of Unsecured Creditors and the Litigation Advisor for Entry of an Order Authorizing the Examination of Rule 2004 Parties Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Dkt. No. 2620] (the "***2004 Motion***").

[10] *See, e.g.*, *In re Flambeaux Gas & Elec. Lights, LLC*, No. 18-11979, 2019 Bankr. LEXIS 1737, at *9 (Bankr. E.D. La. May 31, 2019) ("courts limit use of Rule 2004 when an adversary proceeding or contested matter is pending, since

32.     Therefore, unlike *Newby v. Enron*, *Biloxi Casino Belle*, and *OCA*, the Adversary Proceeding **was not** filed pre-confirmation, and the Litigation Trustee cannot satisfy the post-confirmation jurisdiction requirement under this prong.

33.     ***Are the actions that form the basis of the Complaint based upon post-confirmation activities?*** The Former Employee Defendants acknowledge that the Non-Core Causes of Action are based upon pre-confirmation activities. As noted above, however, this prong is **necessary** if the third prong (interpretation or enforcement of the plan) is not met. It does not mean, though, that pre-confirmation activities are **sufficient** to demonstrate post-confirmation jurisdiction.

34.     ***Does resolution of the merits of the Non-Core Causes of Action require interpretation of the Plan?*** The Non-Core Causes of Action are based upon state law. Their underlying merits are not tied to the terms of the Plan and do not require an interpretation of the Plan. The underlying bases asserted for the Non-Core Causes of Action in the Complaint do not seek to modify the terms of the Plan nor do they allege a violation of the terms of the Plan.

35.     Indeed, no facts derived from the Plan itself are necessary to adjudicate the underlying merits of the Non-Core Causes of Action. In fact, the Plan is not even implicated in the Complaint with respect to the Non-Core Causes of Action, which are wholly creatures of state law. This situation is in stark contrast to *Tex. United Hous. Program*, where the court found that, although the debtor's claims arose out of a post-confirmation foreclosure, the claims largely related to debts that were explicitly addressed, and actions that were expressly sanctioned, in the plan. *See*

---

Rule 2004 is broader in scope than the ordinary rules of discovery"); *Helena Agri-Enters., LLC v. Young (In re Young)*, No. 17-14065-NPO, 2018 Bankr. LEXIS 3646, at *9-10 (Bankr. N.D. Miss. Nov. 19, 2018) ("When an adversary proceeding is pending against a proposed examinee in bankruptcy court, courts generally limit the use of Rule 2004 examinations to prevent the party requesting the examination from avoiding the procedural safeguards of Rules 7026 through 7037 of the Federal Rules of Bankruptcy Procedure").

2017 U.S. Dist. LEXIS 140992 at *13-15. The instant Adversary Proceeding is also far afield from *Galaz*, in which the court had to determine whether the creditor's cause of action for nonpayment was subject to the bankruptcy court's discharge order. *In re Galaz*, 841 F.3d at 322.

36.     The only remote connection to the Plan here is that, pursuant to the Plan and the Litigation Sub-Trust Agreement, the Litigation Sub-Trust itself was vested with the right to pursue certain claims. That the Litigation Sub-Trust was created through an agreement under the Plan, however, "is of no special significance." *See Craig's Stores*, 266 F.3d at 391 (noting that "[t]he fact that the account management contract existed throughout the reorganization and was, by implication, assumed as part of the plan is of no special significance."). The creation of the Litigation Sub-Trust is purely mechanical in nature.

37.     Accordingly, the Litigation Trustee cannot base post-confirmation jurisdiction on this prong.

38.     Because the Litigation Trustee cannot demonstrate that the Non-Core Causes of Action satisfy the test for post-confirmation jurisdiction established by the Fifth Circuit in *Craig's Stores* and its progeny, the Bankruptcy Court does not have post-confirmation jurisdiction to adjudicate the Non-Core Causes of Action, and ***only*** the District Court has jurisdiction to preside over such Non-Core Causes of Action.[11] For this reason alone, the District Court should withdraw the reference with respect to the Non-Core Causes of Action immediately.

---

[11] Ellington and Leventon believe that certain of the Non-Core Causes of Action may be subject to mandatory arbitration under the Fourth Amended and Restated Agreement of Limited Partnership of HCMLP dated as of December 24, 2015. Because the Bankruptcy Court lacks jurisdiction over such Non-Core Causes of Action, any determination on a motion to compel arbitration also must be made by the District Court.

**B.      Ellington and Leventon Have a Jury Trial Right on the Non-Core Causes of Action.**

39.     Where a right to a jury trial exists, as it does for the Non-Core Causes of Action, the second *Holland* factor weighs heavily in favor of withdrawing the reference.

40.     The Seventh Amendment provides the right to a jury trial in cases in which the amount in controversy exceeds twenty dollars and the cause of action was brought to determine legal rights, as opposed to equitable rights. *Granfinanciera, S.A. v. Norberg*, 492 U.S. 33, 41 (1989); *In re Jensen*, 946 F.2d 369, 371 (5th Cir. 1991). To determine whether a claim is legal or equitable, the courts (i) "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity" and (ii) "examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera*, 492 U.S. at 42. The second prong is considered to be the more significant of the two, and generally, if the remedy seeks money damages, the claim is considered to be legal, and a jury trial right attaches. *See id*.; *Jensen*, 946 F.2d at 372. The jury trial analysis must be conducted on a claim-by-claim basis. *See, e.g., Mirant Corp. v. Consol. Edison Co. of N.Y., Inc. (In re Mirant Corp.)*, No. 4:06-CV-540-A, 2007 U.S. Dist. LEXIS 108 (N.D. Tex. Jan. 3, 2007). Because the Non-Core Causes of Action are all legal in nature, Ellington and Leventon have a right to a jury trial on these claims.

41.     Although claims for breach of fiduciary duties (Counts V and XIV) historically have been within the exclusive jurisdiction of the courts of equity, where monetary relief is sought, as it is here, these claims have been found to be legal in nature and, thus, a jury trial right attaches. *Jensen*, 946 F.2d at 371-72 (claims, though historically equitable, requested monetary relief and thus became legal in nature under the second prong of the jury trial analysis); *see also Pereira v. Farace*, 413 F.3d 330, 341 (2d Cir. 2005) (breach of fiduciary duty claim was legal in nature under the second prong of the jury trial analysis because the requested relief was monetary in nature).

Because the claims in the Complaint for breach of fiduciary duties seek monetary relief, Ellington and Leventon have a right to request a jury trial on these claims.

42. With respect to the civil conspiracy claim (Count XVI), the U.S. Supreme Court has found that a claim for damages based upon an alleged civil conspiracy is a legal right to be tried by a jury and not in equity. *See Curriden v. Middleton*, 232 U.S. 633, 635-36 (1914). The Fifth Circuit has similarly found that "a civil action for conspiracy did not really emerge until the latter half of the nineteenth century. Yet, civil conspiracy has its roots in criminal conspiracy, which was of course triable before a jury in a court of law." *Jensen*, 946 F.2d at 371-72 (citing *cf. Beacon Theatres v. Westover*, 359 U.S. 500, 512-13 (1959) (Stewart, J., dissenting) (civil conspiracy cause of action clearly triable as of right by a jury)) (holding that appellants were entitled to a jury trial under the Seventh Amendment on a civil conspiracy action); *see also Auto. Fin. Corp. v. Ray Huffines Chevrolet, Inc. (In re Parkway Sales & Leasing, Inc.)*, 411 B.R. 337, 351 (Bankr. E.D. Tex. 2009) (conspiracy cause of action is a claim for which a party has a Seventh Amendment right to a jury trial). Because the Litigation Trustee seeks damages for the civil conspiracy claim here, it is a legal claim carrying a jury trial right.

43. Conversion claims are suits based in law for which a right to a jury trial attaches. *See, e.g.*, *Ross v. Berhard*, 396 U.S. 531, 533 (1970) (noting conversion as "unmistakably" an action at law triable to a jury); *Medallic Art Co., LLC v. Calvert (In re Northwest Terr. Mint, LLC)*, No. C16-01895-JCC, 2017 U.S. Dist. LEXIS 20068, at *13 (W.D. Wa. Feb. 13, 2017) ("Conversion claims are legal in nature and therefore raise jury trial rights"). Moreover, the Litigation Trustee seeks money damages on his conversion claim (Count XXV). As a result, Ellington and Leventon have a jury trial right on the conversion claim. *See Markel Ins. Co. v. Origin Bancorp, Inc. (In re Lauren Eng'rs & Constructors, Inc.)*, No. 21-10051-RLJ-7, 2021

Bankr. LEXIS 3032, at *5 (Bankr. N.D. Tex. Sept. 29, 2021) (creditor was entitled to a jury trial on its conversion claim where it sought money damages for recovery).

44.     Likewise, the unjust enrichment claim (Count XXVII) seeks monetary relief from Ellington and Leventon in the form of alleged payments, transfers, profits, benefits, incentives, and "other things of value" for alleged "misconduct." Thus, this claim also is a state law legal claim that has a right to a jury trial. Although courts differ on whether claims for unjust enrichment are equitable or legal in nature, "[r]egardless of whether courts categorize the claims as equitable or legal, they have resoundingly found that when the plaintiff seeks money damages or a return of transferred funds on these claims, the plaintiff is entitled to a jury trial under the Seventh Amendment." *In re Lauren Eng'rs & Constructors*, 2021 Bankr. LEXIS 3032, at *7-8, *13 (creditor was entitled to a jury trial on its unjust enrichment claim where plaintiff sought money damages for recovery); *Granfinanciera*, 492 U.S. at 47-48 (claim for money had and received was legal in nature and did not belong in a court of equity). Ellington and Leventon have a right to a jury trial on the unjust enrichment claim.

45.     Based on the above analysis, the Non-Core Causes of Action are all legal claims for which a jury trial right attaches. As a result, the second *Holland* factor weighs heavily in favor of withdrawal of the reference because the Bankruptcy Court has no power, absent the consent of all parties, to conduct a jury trial. Even if the Bankruptcy Court had jurisdiction over the Non-Core Causes of Action, Ellington and Leventon do not consent to the Bankruptcy Court presiding over a jury trial, or making final findings of fact and conclusions of law, on such claims.[12]

---

[12] Subject to and without waiving their right to compel arbitration of all issues raised in the Adversary Proceeding, the Former Employee Defendants hereby provide notice pursuant to Fed. R. Civ. P. 38 and Fed. R. Bank. P. 9015 of their demand for a jury trial on all the issues so triable. The Former Employee Defendants respectfully do not consent to a jury trial before the Bankruptcy Court.

**C.      Judicial Economy and the other *Holland* Factors Favor Permissive Withdrawal.**

46.      The remaining *Holland* factors — whether withdrawal would (i) reduce forum-shopping, (ii) foster economical use of debtors' and creditors' resources while reducing confusion, (iii) expedite the bankruptcy process, and (iv) further uniformity in bankruptcy administration — are considered within the rubric of judicial economy. *Holland*, 777 F.2d at 999. Each of these factors strongly supports immediately withdrawing the reference *as to all Causes of Action* such that all counts pertaining to the Former Employee Defendants can be tried in one proceeding.

**1.      Withdrawal Will Not Promote Forum Shopping.**

47.      Although a motion to withdraw the reference, on its face, seeks to move a complaint to a different court, it is well established that "[a] good faith claim of right, even when motivated (at least in part) by a desire for a more favorable decision maker, should not on that basis alone be denied as forum shopping." *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 769 (Bankr. S.D. Tex. 2007); *see also Jenkins v. Heritage Org., L.L.C. (In re Heritage Org., L.L.C.)*, No. 04-35574-BJH-11, 2008 Bankr. LEXIS 2071, at *32-33 (Bankr. N.D. Tex. July 23, 2008) (no improper ulterior motive in forum shopping where the parties wanted to withdraw the reference in order to have a jury trial). In evaluating this factor, courts consider whether a litigant is seeking a "second bite at the litigation apple" by, for example, lying in wait during the early stages of a proceeding until the bankruptcy court has indicated how it will rule on the dispute and only then seeking to withdraw the reference. *See Veldekens*, 362 B.R. at 769.

48.      No such claim can be made here as withdrawal of the reference is being sought at the earliest possible stage in the litigation process and well before any issues on the merits of the Causes of Action have been raised, much less resolved. *Compare In re Align Strategic Partners LLC*, No. 16-35702, 2019 Bankr. LEXIS 1906, at *10 (Bankr. S.D. Tex. Mar. 5, 2019) (where

party moved quickly to withdraw the reference nine days after filing its motion to dismiss, party did not engage in forum shopping), *with Lopez v. Portfolio Recovery Assocs., LLC (In re Lopez)*, No. 09-70659, 2017 Bankr. LEXIS 2221, at \*10 (Bankr. S.D. Tex. Mar. 20, 2017) (when defendant did not move to withdraw the reference until over one year after adversary proceeding was filed, the potential of forum shopping weighed against withdrawal of the reference).

49.     To date, the only substantive event in the Adversary Proceeding has been the filing of the Complaint. The Bankruptcy Court has not heard, much less ruled upon, a single issue. Given the early stage of this matter, the Former Employee Defendants are plainly not engaging in improper forum shopping by seeking withdrawal of the reference.[13] Moreover, it is clear that the Former Employee Defendants have a good faith basis for doing so. In addition to preservation of their constitutionally-protected jury trial rights and the application of the other *Holland* factors, the Bankruptcy Court lacks subject matter jurisdiction over the Non-Core Causes of Action, and this jurisdictional defect could only be cured by immediate withdrawal of the reference.

### 2.     Immediate Withdrawal Will Provide the Most Efficient, Economical Use of Judicial and Party Resources and Will Reduce Confusion.

50.     The Court *must* withdraw the reference as to Counts XXII and XXIII against Ellington. In addition, all of the Causes of Action against Leventon and most of the Causes of Action against Ellington are Non-Core Causes of Action (i) over which the Bankruptcy Court lacks subject matter jurisdiction and (ii) with respect to which Leventon and Ellington have a right to a jury trial. Accordingly, immediate withdrawal of the reference as to *all* Causes of Action is the only real alternative.[14]

---

[13] As noted above, Ellington and Leventon may have a right to arbitration with respect to certain of the Non-Core Causes of Action, and the requested withdrawal should not be deemed a waiver of such arbitration rights.

[14] *See Markel Ins. Co. v. Origin Bancorp, Inc. (In re Lauren Eng'rs & Constructors, Inc.)*, No. 21-10051-RLJ-7, 2021 Bankr. LEXIS 3032, at \*12 (Bankr. N.D. Tex. Sept. 29, 2021) ("Withdrawal fosters an economic use of the parties' resources by avoiding potential disputes concerning jurisdiction and a jury trial."); *Yaquinto v. Mid-Continent Cas.*

51. Moreover, "[w]hen claims involving both legal and equitable rights are properly joined in a single case, the Seventh Amendment requires that all factual issues common to these claims be submitted to a jury for decision on the legal claims before final court determination of the equitable claims." *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 422-23 (5th Cir. 1998); *Vetter v. McAtee,* 850 F.3d 178, 186 (5th Cir. 2017) ("When both legal and equitable issues are presented in the same case, the trial court must allow determination of the legal claims first, by jury if demanded, then render judgment on the equitable claims, bound by relevant findings of the jury.").

52. The Non-Core Causes of Action cannot remain before the Bankruptcy Court. As such, the only conceivable alternative (and it is not a viable one), is to extract a small subset of the Causes of Action in the Complaint to remain with the Bankruptcy Court while the Non-Core Causes of Action proceed before the District Court. Such a procedural "solution" would provide no incremental value and is likely to lead to conflicting rulings, unnecessary duplication, and a colossal waste of resources. It clearly would be inefficient to have two different courts considering interrelated parts of this lawsuit when the District Court (and only the District Court) has the power to decide the whole case. Immediately withdrawing the reference for all of the Causes of Action is the only way to protect against duplication of judicial resources and confusion of the issues.

**3.      Withdrawal Will Not Impact the Bankruptcy Process Nor Adversely Affect the Uniformity of the Bankruptcy Administration.**

53. The Plan already has been confirmed, gone effective, and been substantially consummated. As such, any concerns regarding expediting the bankruptcy process are completely

---

*Co. (In re Bella Vita Custom Homes)*, No. 16-34790-BJH, 2018 Bankr. LEXIS 1699, *6-7 (Bankr. N.D. Tex. May 27, 2018) (adjudication of a claim in a single forum promotes economical use of parties' resources); *In re Align Strategic Partners LLC*, No. 16-35702, 2019 Bankr. LEXIS 1906, at *7 (Bankr. S.D. Tex. Mar. 5, 2019) (splitting the Trustee's claims into two proceedings "would be judicially inefficient."); *see* 28 U.S.C. § 157(c)(1); *see also Veldekens*, 362 B.R. at 763 ("[T]he inevitable appeal to this Court and resulting duplication of effort would result in delay, confusion, and frustration.").

irrelevant, and this factor supports withdrawal of the reference. *See Heritage Org.*, 2008 Bankr. LEXIS 2071, at *16 ("withdrawal of the reference will have no impact at all on the goal of expediting the bankruptcy process, since the bankruptcy process completely concluded quite some time ago.").[15]

54.     Additionally, withdrawing the reference will not adversely impact the uniformity of the bankruptcy administration. *See Mobley v. Quality Lease & Rental Holdings, LLC (In re Quality Lease & Rental Holdings, LLC)*, Nos. 14-60074, 14-6005, 2016 Bankr. LEXIS 297, at *20 (Bankr. S.D. Tex. Feb. 1, 2016) (after confirmation, "the outcome of this litigation will not bear heavily on the administration of the estate."). In determining whether this factor is satisfied, courts look to whether the bankruptcy court is already familiar with the specific facts underlying the dispute. *See Waldon v. Nat'l Fire Ins. Co. (In re EbaseOne Corp.)*, No. 01-31527-H4-7, 2006 Bankr. LEXIS 1861, at *14 (Bankr. S.D. Tex. June 14, 2006) (where court "ha[d] not reviewed the entire record of the case and is not intimately familiar with the underlying facts," withdrawing the reference would cause "no disruption in the uniformity of the bankruptcy administration"); *Palmer & Palmer v. U.S. Trustee (In re Hargis)*, 146 B.R. 173, 176 (N.D. Tex. 1992) (denying motion to withdraw the reference because "the bankruptcy judge had 'reviewed the entire record of this case and [wa]s intimately familiar with the underlying facts, the parties, and the remaining issue.'"). This factor favors withdrawal of the reference if it is requested early in the proceeding. *See In re EbaseOne Corp.*, 2006 Bankr. LEXIS 1861, at *14 (withdrawal favored when motion to withdraw reference is filed shortly after complaint is filed, and court has not reached significant

---

[15] *See also Harris-Nutall v. Nationstar Mortg., LLC (In re Harris-Nutall)*, No. 15-3114-BJH, 2016 Bankr. LEXIS 4623, at*26-27 (Bankr. N.D. Tex. May 19, 2016) (this factor was neutral in the court's decision to withdraw the reference because the plan was already confirmed); *Adler v. Walker (In re Gulf States Long Term Acute Care of Covington, L.L.C.)*, 455 B.R. 869, 878 (E.D. La. Aug. 25, 2011) (where the plan was already confirmed, "this factor ha[d] no bearing on the Court's decision" to withdraw the reference).

level of familiarity); *Johnson v. Williamson* (*In re British Am. Props. III*), 369 B.R. 322, 327 (Bankr. S.D. Tex. 2007) (withdrawal was favored because the "Court ha[d] not spent any significant time becoming familiar with the facts of the underlying complaint" given that only two motions had been filed shortly after an adversary proceeding was commenced). The Bankruptcy Court has yet to consider any of the many facts and elaborate legal arguments underlying the Causes of Action. Other than the Complaint, the docket for the Adversary Proceeding is virtually bare — no substantive motions have been filed, and no orders have been entered by the Bankruptcy Court with respect to the merits of the Complaint.

55.      Accordingly, all of the *Holland* factors favor immediate withdrawal of the reference so that the Causes of Action can be resolved in a single determination.

## CONCLUSION

56.      For the reasons set forth above, the District Court should grant the Motion.

Dated: January 18, 2022

By: */s/ Michelle Hartmann*
Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for the Former Employee Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 18, 2022, a true and correct copy of the

foregoing was served electronically via the Court's CM/ECF notice system to all counsel of

record registered to receive notice.

*/s/Michelle Hartmann*
Michelle Hartmann