**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
Benjamin I. Finestone (admitted *pro hac vice*)
Jordan Harap (admitted *pro hac vice*)
Alexandre J. Tschumi (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000

**SIDLEY AUSTIN LLP**
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Counsel for Marc S. Kirschner, as Litigation*
*Trustee of the Highland Litigation Sub-Trust*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>        Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>        Plaintiff,<br><br>    v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 | Adv. Pro. No. 21-03076-sgj |

---

[1]  The last four digits of the Reorganized Debtor's taxpayer identification number are (8357).  The Reorganized Debtor is a Delaware limited partnership.  The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.

AND LAWRENCE TONOMURA IN HIS CAPACITY
AS TRUSTEE OF MARK & PAMELA OKADA
FAMILY TRUST – EXEMPT TRUST #2; CLO
HOLDCO, LTD.; CHARITABLE DAF HOLDCO,
LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND
DALLAS FOUNDATION; RAND PE FUND I, LP,
SERIES 1; MASSAND CAPITAL, LLC; MASSAND
CAPITAL, INC.; SAS ASSET RECOVERY, LTD.;
AND CPCM, LLC,

Defendants.

**THE LITIGATION TRUSTEE'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS TO WITHDRAW THE REFERENCE**

## TABLE OF CONTENTS

                                                                              **Page**

I.    PRELIMINARY STATEMENT ........................................................................1

II.   BACKGROUND ...........................................................................................3

      A.    THE COURT CONFIRMS HCMLP'S PLAN, WHICH PROVIDES FOR
            THE CREATION OF THE LITIGATION SUB-TRUST TO PURSUE
            ESTATE CAUSES OF ACTION ............................................................3

      B.    THE LITIGATION SUB-TRUST COMMENCES THIS ADVERSARY
            PROCEEDING FOR THE BENEFIT OF CREDITORS .......................................4

III.  ARGUMENT ...............................................................................................6

      A.    THE BANKRUPTCY COURT HAS SUBJECT MATTER
            JURISDICTION OVER THIS PROCEEDING ......................................6

      B.    MANDATORY WITHDRAWAL OF THE REFERENCE IS NOT
            WARRANTED ...............................................................................13

            1.    Federal Tax Law Issues Do Not Necessitate Withdrawal ........................15

            2.    Federal Securities Law Issues Do Not Necessitate Withdrawal ................18

      C.    THE BANKRUPTCY COURT SHOULD CONSIDER ALL PRETRIAL
            MATTERS .....................................................................................22

            1.    Withdrawal Of The Reference Would Promote And Reward Forum
                  Shopping ...........................................................................26

            2.    Uniformity In Bankruptcy Administration Weighs In Favor Of
                  Denying The Withdrawal Motions ............................................29

            3.    Reorganized Debtor And Creditor Resources Are Preserved By
                  Denying The Withdrawal Motions ............................................31

            4.    The Bankruptcy Court's Retention Of This Case Will Expedite
                  Administration Of The Plan .....................................................32

            5.    Jury Trial Rights And Non-Core Claims Do Not Require
                  Immediate Withdrawal ...........................................................33

IV.   CONCLUSION ............................................................................................35

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*In re Acis Capital Mgmt., L.P.,*
  584 B.R. 115 (Bankr. N.D. Tex. 2018) ..................................................................... 29

*In re Acis Capital Mgmt., L.P.,*
  No. 18-30264-SGJ-11 (Bankr. N.D. Tex. Aug. 13, 2018) ....................................... 18

*American Classic Voyages Co. v. Westaff (USA), Inc. (In re American Classic Voyages Co.),*
  337 B.R. 509 (D. Del. 2006). ................................................................................... 35

*Baron v. Sherman, (In re Ondova Ltd. Co.),*
  Adv. Proc. No. 14-03121 (Bankr. N.D. Tex. June 29, 2016)
  *report and rec. adopted*, Case No. 3:16-CV-0947-M (N.D. Tex. Aug. 12, 2016) ................. 23

*Bledsoe v. Flamingo Props., LLC, (In re Musselwhite),*
  2021 WL 4342902 (Bankr. E.D.N.C. Sep. 23, 2021) ............................................. 16

*Bliss Tech., Inc. v. HMI Indus., Inc. (In re Bliss Tech., Inc.),*
  307 B.R. 598 (Bankr. E.D. Mich. 2004) .................................................................. 18

*Brickley for Cryptometrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC,*
  566 B.R. 815 (W.D. Tex. 2017) ...................................................................... 8, 11, 12

*Burch v. Select Portfolio Servicing, Inc.,*
  2020 WL 3619532 (N.D. Tex. May 28, 2020),
  *report and rec. adopted*, 2020 WL 3605835 (N.D. Tex. July 1, 2020) .................................. 23

*California v. Enron Corp., (In re Enron Corp.),*
  Case No. 1:05-cv-04079-GBD (S.D.N.Y. May 18, 2005) ....................................... 14

*Carptenter v. Holmes*, *(In re TOCFHBI, Inc.),*
  Adv. Proc. No. 07-3292 (Bankr. N.D. Tex. Jan. 25, 2008)
  *report and rec. adopted*, Case No. 3:07-CV-2142-N (N.D. Tex. Feb. 7, 2008) ..................... 23

*Charitable DAF Fund, L.P., v. Highland Capital Mgmt., L.P.,*
  Case No. 3:21-cv-01710 (N.D. Tex. July 22, 2021) ............................................... 18

*Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.),*
  309 B.R. 217 (Bankr. N.D. Tex. 2004) ............................................................... 8, 11

*Contemp. Lithographers, Inc. v. Hibbert,*
  127 B.R. 122 (M.D.N.C. 1991) ......................................................................... 19, 20

*Craig's Stores of Texas, Inc. v. Bank of Louisiana (In re Craig's Stores of Texas, Inc.)*,
    266 F.3d 388 (5th Cir. 2001) ............................................................ 6, 7, 8, 9, 10, 12

*Dune Operating Co. v. Watt (In re Dune Energy, Inc.)*,
    575 B.R. 716 (Bankr. W.D. Tex. 2017) ............................................................ 1, 8, 9, 12

*Ebner v. Kaiser (In re Kaiser)*,
    525 B.R. 697 (Bankr. N.D. Ill. 2014) ............................................................ 16

*In re Electro-Mech. Indus., Inc.*,
    2018 WL 6587299 (Bankr. S.D. Tex. Feb. 10, 2018) ............................................................ 14

*Engelhart v. Parish (In re Parish)*,
    2021 WL 3683909 (Bankr. S.D. Tex. Feb. 19, 2021) ............................................................ 31

*Ernst & Young LLP v. Pritchard (In re Daisytek, Inc.)*,
    323 B.R. 180 (N.D. Tex. 2005) ............................................................ 9, 10

*Faulkner v. Berg, (In re Heritage Org LLC)*,
    Adv. Proc. No. 06-3401, (Bankr. N.D. Tex. Dec. 15, 2006) ............................................................ 24, 29

*Faulkner v. Lane Gorman Trubitt, LLC, (In re Reagor-Dykes Motors, LP)*,
    2021 WL 4823525 (Bankr. N.D. Tex. Oct. 14, 2021) ............................................................ 7, 10, 12

*Finkel v. Polichuk, (In re Polichuk)*,
    2010 WL 4878789, (Bankr. E.D. Pa. Nov. 23, 2010) ............................................................ 16

*First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In Re Biloxi Casino Belle Inc.)*,
    368 F.3d 491 (5th Cir. 2004) ............................................................ 9, 10

*GenOn Mid-Atl. Dev., LLC v. Natixis Funding Corp.*,
    2020 WL 429880 (S.D. Tex. Jan. 28, 2020) ............................................................ 24, 32

*George West 59 Inv., Inc. v. Williams (In re George West 59 Inv., Inc.)*,
    526 B.R. 650 (N.D. Tex. 2015) ............................................................ 24

*Gordon v. Webster (In re Webster)*,
    629 B.R. 654 (Bankr. N.D. Ga. 2021) ............................................................ 15, 16

*Gregory Power Partners, LLC v. Reynolds Metals Co.*,
    2017 WL 3033424 (S.D. Tex. July 18, 2017) ............................................................ 34

*Guffy v. Brown (In re Brown Med. Ctr., Inc.)*,
    578 B.R. 590 (Bankr. S.D. Tex. 2016) ............................................................ 24

*In re Harrah's Ent., Inc. Sec. Litig.*,
    1996 WL 684463 (E.D. La. Nov. 26, 1996) ............................................................ 19

*Highland Capital Mgmt. L.P. v. Dondero (In re Highland Capital Mgmt. L.P.)*,
  2021 WL 2850562 (Bankr. N.D. Tex. July 7, 2021) ................................. 13, 14, 15, 23, 25, 30

*Highland Capital Mgmt. L.P. v. Highland Capital Mgmt. Fund Advisors, L.P. (In re Highland Capital Mgmt., L.P.)*,
  Adv. Proc. No. 21-03004 (Bankr. N.D. Tex. July 8, 2021) ...................................................... 31

*Highland Capital Mgmt. L.P. v. NexPoint Advisors, L.P, (In re Highland Capital Mgmt., L.P.)*,
  Adv. Proc. No. 21-03005 (Bankr. N.D. Tex. July 8, 2021) ...................................................... 31

*Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*,
  570 B.R. 816 (Bankr. D. Idaho 2017) ............................................................................... 15, 16

*Holland America Ins. Co. v. Succession of Roy*,
  777 F.2d 992 (5th Cir. 1985) ........................................................................................... 25, 32

*Internal Revenue Serv. v. Luongo (In re Luongo)*,
  259 F.3d 323 (5th Cir. 2001) .................................................................................................. 17

*Katchadurian v. NGP Energy Capital Mgmt., LLC (In re Northstar Offshore Grp., LLC)*,
  Adv. Proc. No. 18-03079 (Bankr. S.D. Tex. Sept. 25, 2019)
  *report and rec. adopted*, Case No. 19-03740 (S.D. Tex. Nov. 4, 2019).................................... 33

*Katchadurian v. NGP Energy Capital Mgmt. (In re Northstar Offshore Grp., LLC)*,
  616 B.R. 695 (Bankr. S.D. Tex. 2020) .................................................................................... 24

*Kaye v. Dupree (In re Avado Brands, Inc.)*,
  2006 WL 8437389 (Bankr. N.D. Tex. Apr. 21, 2006),
  *report and rec. adopted*, 2006 WL 8436979 (N.D. Tex. July 3, 2006) .................. 23, 32, 33, 35

*Kaye v. Dupree (In re Avado Brands, Inc.)*,
  358 B.R. 868 (Bankr. N.D. Tex. 2006)...................................................................................... 8

*Keach v. World Fuel Servs. Corp (In re Montreal Me. & Atl. Ry., Ltd.)*,
  2015 WL 3604335 (D. Me. June 8, 2015) .................................................................. 14, 15, 17

*Kenai Corp. v. Nat'l Union Fire Ins. Co.*,
  136 B.R. 59 (S.D.N.Y. 1992)................................................................................................... 31

*Kittery Point Partners, LLC v. Bayview Loan Servicing LLC, (In re Kittery Point Partners, LLC)*,
  2018 WL 1613573 (Bankr. D. Me. Mar. 12, 2018) ................................................................. 16

*Lange v. Fed. Deposit Ins. Corp. (In re TierOne Corp.)*,
  2011 WL 2133702 (Bankr. D. Neb. May 27, 2011) ................................................................ 14

*Levey v. Gillman, (In re Rep. Windows & Doors, LLC)*,
  2011 WL 5975256 (Bankr. N.D. Ill. Oct. 17, 2011) ................................................................ 16

*Levine v. M&A Custom Home Builder & Developer, LLC,*
    400 B.R. 200 (S.D. Tex. 2008) ................................................................. 24, 33, 34

*Lifemark Hosps. of La., Inc. v. Liljeberg Enters., Inc.,*
    161 B.R. 21 (E.D. La. 1993) ...................................................................... 22

*Lofstedt v. Oletski-Behrends, (In re Behrends),*
    2017 WL 4513071 (Bankr. D. Colo Apr. 10, 2017) ................................. 16

*Lone Star Bank of W. Tex. v. Rabo Agservices, Inc.,*
    Case No. 2:19-CV-098-Z (N.D. Tex. Oct. 23, 2020) .............................. 24

*Lopez v. Portfolio Recovery Assocs. LLC* (*In re Lopez*)
    2017 WL 3382099 (Bankr. S.D. Tex. Mar. 20, 2017) ............................. 33

*Manila Indus. Inc. v. Ondova Ltd. Co. (In re Ondova Ltd. Co.*),
    2009 WL 3681905 (Bankr. N.D. Tex. Oct. 2, 2009)
    *report and rec. adopted*, 2009 WL 3673026 (N.D. Tex. Nov. 3, 2009).................. 14

*Marshack v. Cavanaugh, (In re Ruby's Diner, Inc.),*
    2021 WL 4572001 (C.D. Cal. June 2, 2021) .................................... 15, 16

*Miller v. Boutwell, Owens & Co., Inc. (In re Guynes Printing Co. of Texas, Inc.*),
    2015 WL 3824070 (W.D. Tex. June 19, 2015) ......................................... 34

*Mitchell v. Zagaroli, (In re Zagroli),*
    2020 WL 6495156 (Bankr. W.D.N.C. Nov. 3, 2020)............................... 16

*Mobley v. Quality Lease & Rental Holdings, LLC (In re Quality Lease & Rental Holdings, LLC*),
    2016 WL 11644051 (S.D. Tex. Feb. 29, 2016) ........................................ 24

*Mukamal v. Citibank, N.A. (In re Kipnis),*
    555 B.R. 877 (Bankr. S.D. Fla. 2016)....................................................... 16

*Natixis Funding Corp. v. GenOn Mid-Atlantic, LLC (In re GenOn Energy, Inc.),*
    Adv. Proc. No. 18-03409 (Bankr. S.D. Tex. Aug. 14, 2019) .................. 25

*Newby v. Enron Corp. (In re Enron Corp. Securities),*
    535 F.3d 325 (5th Cir. 2008) ...................................................... 6, 7, 10

*O'Connell v. Terranova (In re Adelphi Inst., Inc.),*
    112 B.R. 534 (S.D.N.Y. 1990).................................................................. 34

*Official Comm. Of Unsecured Creditors of Appalachian Fuels v. Energy Coal Resources, Inc.
    (In re Appalachian Fuels, LLC),*
    472 B.R. 731 (E.D. Ky. 2012) ................................................................. 18

*Ogle v. Comcast Corp. (In re Houston Reg'l Sports Network, L.P.)*,
    547 B.R. 717 (Bankr. S.D. Tex. 2016) ................................................................. 1, 8

*Osherow v. Porras (In re Porras)*,
    312 B.R. 81 (Bankr. W.D. Tex. 2004) ................................................................. 16

*Palmer & Palmer, P.C. v. U.S. Trustee*,
    146 B.R. 173 (N.D. Tex. 1992) ............................................................................ 31

*Panda Energy Int'l, Inc. v. Factory Mut. Ins (In re Hereford Biofuels, L.P.)*,
    2011 WL 610016 (N.D. Tex. Feb. 14, 2011) ................................................... 24, 29

*Pendergraft v. Internal Revenue Serv. (In re Pendergraft)*,
    2017 WL 1091935 (Bankr. S.D. Tex. Mar. 22, 2017) ......................................... 17

*Phillips Eleven Hundred, Ltd. v. Land Advisors, Ltd., (In re Phillips Eleven Hundred, Ltd.)*,
    Adv. Proc. No. 03-03604 (Bankr. N.D. Tex. Dec. 23, 2003) ................................ 25

*Picard v. Avellino*,
    469 B.R. 408 (S.D.N.Y. 2012) ............................................................................ 21

*Picard v. Flinn Investments, LLC*,
    463 B.R. 280 (S.D.N.Y. 2011) ............................................................................ 21

*Post Confirmation Bd. Of Wadleigh Energy Group, Inc. v. Wadleigh*,
    516 B.R. 850 (E.D. La. 2014) ......................................................................... 32, 34

*Price v. Craddock*,
    85 B.R. 570 (D. Colo. 1988) ............................................................................... 19

*Principal Life Ins. Co. v. JPMorgan Chase Bank, N.A. (In re Brooks Mays Music Co.)*,
    Adv. Proc. No. 06-3508 (Bankr. N.D. Tex. Mar. 9, 2007)
    *report and rec. adopted*, Case No. 3:06-CV-2180-B (N.D. Tex. June 13, 2007) .................... 23

*Ramirez v. Rodriguez (In re Ramirez)*,
    413 B.R. 621 (Bankr. S.D. Tex. 2009) ................................................................. 18

*Randall v. Am. Solar King. Corp. (In re Am. Solar King Corp.)*,
    92 B.R. 207 (W.D. Tex. 1988) ....................................................................... 18, 19

*Roberts v. Adesa Fla., LLC (In re Ernie Haire Ford, Inc.)*,
    2012 WL 4356161 (M.D. Fla. Sept. 24, 2012) ..................................................... 18

*Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*,
    2009 WL 10714861 (Bankr. S.D. Tex. Mar. 6, 2009)
    *report and rec. adopted*, 421 B.R. 341 (S.D. Tex. 2009) ........................................ 13

*Schmidt v. Nordlicht*,
2017 WL 526017 (S.D. Tex. Feb. 9, 2017) .............................................................. 8, 9, 10, 12

*Schott v. Massengale*,
618 B.R. 444 (M.D. La. 2020) ................................................................................................. 29

*Sherman v. Emke, (In re Ondova Ltd. Co.)*,
2011 WL 3734479 (Bankr. N.D. Tex. Aug. 22, 2011)
*report and rec. adopted*, 2011 WL 3739553 (N.D. Tex. Aug. 23, 2011)................................. 23

*Sherman v. Greenstone Farm Credit Servs., (In re Hereford Biofuels, L.P.)*,
2011 WL 2133820 (Bankr. N.D. Tex. Apr. 6, 2011)
*report and rec. adopted*, 2011 WL 2038573 (N.D. Tex. May 24, 2011) ................................. 23

*Sibarium v. NCNB Texas Nat. Bank*,
107 B.R. 108 (N.D. Tex. 1989)................................................................................................. 24

*Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*,
504 F.3d 775 (9th Cir. 2007) .................................................................................................... 34

*Southern Pac. Transp. Co. v. Voluntary Purchasing Grps., Inc.*,
252 B.R. 373 (E.D. Tex. 2000) ................................................................................................ 14

*Superior Contracting Grp., Inc. v. Rachmale (In re LTC Holdings, Inc.)*,
2019 WL 4643801 (D. Del. Sept. 24, 2019)............................................................................ 34

*In re Sutherlin*,
1987 WL 5712 (E.D. La. Jan. 15, 1987)................................................................................... 19

*Texas United Hous. Program, Inc. v. Wolverine Mortg. Partner Ret.*,
2017 WL 3822754 (N.D. Tex. July 18, 2017),
*report and rec. adopted*, Case. No. 17-977 (N.D. Tex. Aug. 30, 2017) ................................... 23

*Tow v. Park Lake Cmty., LP (In re Royce Homes, LP)*,
578 B.R. 748 (Bankr. S.D. Tex. 2017) .............................................................................. 31, 32

*Travelers Indem. Co. of Am. v. Bailey*,
557 U.S. 137 (2009)................................................................................................................. 13

*TXMS Real Estate Invs., Inc. v. Senior Care Centers, LLC (In re Senior Care Centers, LLC)*,
622 B.R. 680 (Bankr. N.D. Tex. 2020)..................................................................................... 12

*U.S. Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*,
145 B.R. 539 (N.D. Tex. 1992)........................................................................................... 14, 22

*Veldekens v. GE HFS Holdings Inc. (In re Drs. Hosp. 1997, L.P.)*,
351 B.R. 813 (Bankr. S.D. Tex. 2006) ......................................................................... 29, 32, 33

*Vieira v. Gaither (In re Gaither)*,
  595 B.R. 201 (Bankr. D.S.C. 2018) ........................................................................ 16

*Wagner v. Ultima Homes, Inc. (In re Vaughan Co.)*,
  498 B.R. 297 (Bankr. D.N.M. 2013) ....................................................................... 16

*Yaquinto v. JGB Collateral, LLC*,
  2021 WL 2386143 (N.D. Tex. Jan. 26, 2021) ......................................................... 23

## **Rules / Statutes**

11 U.S.C. § 502 ................................................................................................................. 4

11 U.S.C. § 510 ................................................................................................................. 4

11 U.S.C. § 544 ............................................................................................... 4, 15, 16, 18

11 U.S.C. § 548 ................................................................................................................. 4

11 U.S.C. § 550 ........................................................................................................... 4, 18

26 U.S.C. § 6502 ................................................................................................. 15, 16, 17

28 U.S.C. § 157 ............................................................................................................ 6, 14

28 U.S.C. § 1334(b) ...................................................................................................... 6, 7

N. D. Tex. Bankr. Local R. 5011-1 ................................................................................. 23

Marc S. Kirschner, the above-captioned Plaintiff (the "Litigation Trustee"), through his undersigned counsel, hereby files this response in opposition (the "Opposition") to the Motions to Withdraw filed by the Former Employee Defendants, the Okada Defendants, NexPoint and HCMFA, the Dondero Defendants, Grant James Scott III, and the CLO Holdco-Related Defendants (together, "Defendants").[2] In support of this Opposition, the Litigation Trustee respectfully states as follows:

## I. PRELIMINARY STATEMENT

1. For over a decade, "courts within the Fifth Circuit have consistently held that bankruptcy jurisdiction continues to exist post-confirmation over suits based on pre-confirmation claims and activities brought by a plan trustee appointed under a bankruptcy plan." *Dune Operating Co. v. Watt (In re Dune Energy, Inc.)*, 575 B.R. 716, 725-26 (Bankr. W.D. Tex. 2017) (collecting cases). Indeed, litigation trusts "established pursuant to a confirmed plan . . . by their nature maintain a connection to the bankruptcy even after the plan has been confirmed because they often play a central role in the implementation of the plan." *Ogle v. Comcast Corp. (In re Houston Reg'l Sports Network, L.P.)*, 547 B.R. 717, 736 (Bankr. S.D. Tex. 2016) (internal quotations omitted). Unable to contend with the substance of this extensive collection of precedents, Defendants instead argue that the decisions are simply wrongly decided, and that the Fifth Circuit's holdings establish a bright line rule that effectively prohibits the litigation of any state law claims brought by a trustee post-confirmation before a bankruptcy court. Defendants'

---

[2] Capitalized terms not defined here or in the Preliminary Statement are defined later in this brief. Defendants Massand Capital, Inc. ("Massand Inc.") and Massand Capital, LLC ("Massand LLC" and together with Massand Inc., the "Massand Defendants") have neither filed nor joined any motion to withdraw. Defendant SAS Asset Recovery Ltd. ("SAS"), which is a foreign entity, has not yet appeared and has neither filed nor joined any motions to withdraw. For purposes of this Opposition, except where otherwise stated, these parties are not included in the definition of Defendants.

position cannot be reconciled with the Fifth Circuit decisions themselves or the numerous cases that have interpreted them in a contrary manner, and should be rejected.

2.       Here, the Plan itself makes clear that the Litigation Sub-Trust, which was charged with bringing claims exactly like those brought in this proceeding, is central to the Plan's purposes. And the Litigation Trustee is bringing these claims for the benefit of creditors, just as he is charged with doing under the Plan and Confirmation Order entered by this Court.  Further, unlike the cases cited by Defendants, which concern the adjudication of claims by and against companies that have emerged from bankruptcy based on conduct occurring after the completion of the bankruptcy process, the claims here all concern pre-confirmation conduct and accrued prior to confirmation— facts the Defendants concede (as they must).  It is hardly surprising that the flood of cases considering claims like these find in favor of jurisdiction in the bankruptcy court—the court most familiar with the bases for the claims, most experienced with the parties at issue and their relevant conduct, and most equipped to adjudicate claims that gave rise to the bankruptcy itself.

3.       Defendants' kitchen-sink attack on the Litigation Trustee's unremarkable decision to commence this action in this forum is unsurprising, given the substantial misconduct in which they have engaged before this Court, but is nonetheless meritless.  Each of the alternative arguments that Defendants have conjured fails on the merits:  (i) this Court has subject matter jurisdiction over all of the Litigation Trustee's claims for the reasons set forth in the vast body of case law noted above; (ii) there is no basis for mandatory withdrawal simply because the Court may be called upon to address federal tax or other law in the adjudication of claims, specifically with respect to issues that myriad bankruptcy courts already have addressed because they are well equipped to do so; and (iii) there is no reason to immediately withdraw this case to the District Court—in contravention of this Court's usual practice—when all of the relevant factors favor

consideration of all pre-trial matters by this Court, even if there is a basis to ultimately conduct a jury trial elsewhere.

4.     For the reasons set forth below, Defendants' various motions to withdraw the reference should be denied, and to the extent withdrawal is ultimately required, it should occur only upon the Court's certification that this action is trial-ready.

## II.     BACKGROUND

### A.     THE COURT CONFIRMS HCMLP'S PLAN, WHICH PROVIDES FOR THE CREATION OF THE LITIGATION SUB-TRUST TO PURSUE ESTATE CAUSES OF ACTION

5.     On October 16, 2019, Highland Capital Management L.P. ("HCMLP") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). On December 4, 2019, the Delaware Bankruptcy Court entered an order transferring venue of HCMLP's bankruptcy case to this Court. [Bankr. Docket No. 186].

6.     On February 22, 2021, this Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* (the "Confirmation Order") [Bankr. Docket No. 1943], which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)* (as amended, the "Plan") [Bankr. Docket No. 1808]. The Plan went effective on August 11, 2021 (the "Effective Date") [Bankr. Docket No. 2700].

7.     The Plan provided for the creation of the Claimant Trust for the benefit of holders of Allowed General Unsecured Claims and Allowed Subordinated Claims, which was vested with assets including "all Causes of Action" and "any proceeds realized or received from such Assets." Plan §§ I.B.24, I.B.26, I.B.27. The Plan also provided for the creation of the Litigation Sub-Trust, as a "sub-trust established within the Claimant Trust or as a wholly-owned subsidiary of the

Claimant Trust," for the purpose of "investigating, prosecuting, settling, or otherwise resolving the Estate Claims" transferred to it by the Claimant Trust pursuant to the Plan. Plan §§ I.B.81, IV.B.1 ("[T]he Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims."), IV.B.4. The Litigation Trustee of the Sub-Trust is "responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust[.]" Plan § I.B.83. Under the Plan, proceeds from the Litigation Trust's pursuit of claims "shall be distributed . . . to the Claimant Trust for distribution to the Claimant Trust Beneficiaries[.]" Plan § IV.B.4.

### B. THE LITIGATION SUB-TRUST COMMENCES THIS ADVERSARY PROCEEDING FOR THE BENEFIT OF CREDITORS

8. On October 15, 2021, the Litigation Trustee commenced this Adversary Proceeding for the benefit of HCMLP's creditors. [Adv. Proc. Docket. No. 1 (the "Complaint")]. The Complaint asserts 36 causes of action against 23 Defendants, including the Massand Defendants and SAS. The causes of action asserted in the Complaint all arise from pre-confirmation conduct perpetrated by HCMLP's founder James Dondero and individuals and entities affiliated with him, which resulted in hundreds of millions of dollars in damages to HCMLP. The Complaint asserts claims for the avoidance and recovery of intentional and constructive fraudulent transfers and obligations under sections 544, 548, and 550 of the Bankruptcy Code, illegal distributions under Delaware partnership law, breach of fiduciary duty, declaratory judgment that certain entities are liable for the debts of others under an alter ego theory, successor liability, aiding and abetting or knowing participation in breach of fiduciary duty, civil conspiracy, tortious interference with prospective business relations, breach of contract, conversion, unjust enrichment, and the disallowance or subordination of claims under sections 502 and 510 of the Bankruptcy Code.

9. Motions to withdraw the reference (collectively, the "Motions to Withdraw") were subsequently filed by the following defendants on the following dates:

- On January 18, 2022, Defendants Scott Ellington, Isaac Leventon, Frank Waterhouse, and CPCM, LLC (collectively, the "Former Employee Defendants") filed the *Motion to Withdraw the Reference for Causes of Action in the Complaint Asserted Against the Former Employee Defendants* [Adv. Proc. Docket No. 27] and their *Brief In Support* [Adv. Proc. Docket No. 28] (the "Former Employee Defs. Br.").

- On January 21, 2022, Defendants Mark A. Okada, The Mark & Pamela Okada Family Trust – Exempt Trust #1, Lawrence Tonomura in his Capacity as Trustee, The Mark & Pamela Okada Family Trust – Exempt Trust #2, and Lawrence Tonomura in his Capacity as Trustee (the "Okada Defendants") filed the *Motion of the Okada Parties to Withdraw the Reference* [Adv. Proc. Docket No. 36] and their *Memorandum Of Law In Support* [Adv. Proc. Docket No. 37] (the "Okada Defs. Br.").

- On January 21, 2022, Defendants NexPoint Advisors L.P ("NexPoint") and Highland Capital Management Fund Advisors L.P. ("HCMFA") filed the *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against Defendants* [Adv. Proc. Docket No. 39] and their *Memorandum Of Law In Support* [Adv. Proc. Docket No. 40] (the "NexPoint and HCMFA Br.").

- On January 25, 2022, Defendants James Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc. (the "Dondero Defendants") filed *Defendants James D. Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc.'s Motion to Withdraw the Reference* [Adv. Proc. Docket No. 45] and their *Memorandum Of Law In Support* [Adv. Proc. Docket No. 46] (the "Dondero Defs. Br.").

- On January 26, 2022, Defendant Grant James Scott III filed his *Motion to Withdraw the Reference* [Adv. Proc. Docket No. 50] and his *Memorandum Of Law In Support* [Adv. Proc. Docket No. 41] (the "Scott Br.").

- On January 26, 2022, CLO Holdco, Ltd., Highland Dallas Foundation, Inc., Charitable DAF Fund, LP, and Charitable DAF Holdco, Ltd. (the "CLO Holdco-Related Defendants") filed their *Motion to Withdraw the Reference* [Adv. Proc. Docket No. 59] and their *Brief In Support* [Adv. Proc. Docket No. 59] (the "CLO Holdco-Related Defs. Br.").

- On February 1, 2022, Defendants Hunter Mountain Investment Trust ("HMIT") and Rand PE Fund I, LP, Series 1 ("Rand" and together with HMIT, the "HMIT Defendants") filed a nominal joinder to the Motions to Withdraw. [Adv. Proc. Docket No. 70].

10.     The Motions to Withdraw argue that certain of the claims in the Complaint are subject to mandatory withdrawal and that the Court lacks subject matter jurisdiction over the claims predicated on state law, and request that the adversary proceeding be immediately

withdrawn to the District Court.  As set forth below, the Motions to Withdraw are without merit, and should be denied.

## III.    ARGUMENT

### A.    THE BANKRUPTCY COURT HAS SUBJECT MATTER JURISDICTION OVER THIS PROCEEDING

11.    Pursuant to 28 U.S.C. § 1334(b), the district courts shall have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Under 28 U.S.C. § 157(a) and (b), a district court may refer to the bankruptcy judges in the district "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11."[3]  The Northern District of Texas's standing order dated August 3, 1984 refers all "cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 . . . to the Bankruptcy Judges of this district for consideration and resolution consistent with law."

12.    Defendants' attempt to fashion a rule prohibiting a bankruptcy court's exercise of jurisdiction over claims asserted by a litigation trust formed under a confirmed plan out of the Fifth Circuit's rulings in *Craig's Stores of Texas, Inc. v. Bank of Louisiana (In re Craig's Stores of Texas, Inc.)*, 266 F.3d 388 (5th Cir. 2001) and *Newby v. Enron Corp. (In re Enron Corp. Securities)*, 535 F.3d 325 (5th Cir. 2008) fails.  In *Craig's Stores*, the Fifth Circuit found that a bankruptcy court could not exercise jurisdiction over a post-confirmation breach of contract claim

---

[3]    28 U.S.C. § 157(b) also provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."  Defendants concede, as they must, that this Court has subject matter jurisdiction over the core claims asserted by the Litigation Trustee, which form nearly half of the claims in the Complaint.  *See* Dondero Defs. Br. ¶ 19; Former Employee Defs. Br. ¶ 12; Okada Defs. Br. ¶ 16; NexPoint and HCMFA Br. ¶ 12; CLO Holdco-Related Defs. Br. ¶ 26; Scott Br. ¶ 28.

asserted by a reorganized debtor against its bank in connection with an alleged post-confirmation breach. Noting that following confirmation of a plan, "expansive bankruptcy court jurisdiction" is no longer "required to facilitate 'administration' of the debtor's estate," the Fifth Circuit held that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Craig's Store's*, 266 F.3d at 390.

13.     The Fifth Circuit elaborated on its *Craig's Store's* holding in *Enron*, where it held that confirmation of a plan does not divest a bankruptcy court of jurisdiction over an action commenced prior to confirmation. *Enron*, 535 F.3d at 335. Noting that "Section 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation," the Fifth Circuit explained that "three factors were critical to its decision" in *Craig's Stores*:

> [F]irst, the claims at issue "principally dealt with post-confirmation relations between the parties;" second, "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization;" and third, "no facts or law deriving from the reorganization or the plan [were] necessary to the claim." *Craig's Stores*, 266 F.3d at 391. Notwithstanding its statement that bankruptcy jurisdiction exists after plan confirmation only "for matters pertaining to the implementation or execution of the plan," the facts in *Craig's Stores* were narrow; they involved post-confirmation claims based on post-confirmation activities.

*Id.* (quoting *Craig's Stores*, 266 F.3d at 389–91) (second and third alteration in original).

14.     As numerous courts within the Fifth Circuit have subsequently held, the exception to jurisdiction at issue in *Craig's Store's* does not arise where, as here, a trustee of a litigation trust created under a confirmed plan of reorganization for the benefit of creditors pursues post-confirmation causes of action predicated on pre-confirmation conduct for creditors' benefit. *See Faulkner v. Lane Gorman Trubitt, LLC (In re Reagor-Dykes Motors, LP)*, 2021 WL 4823525, at *2–4 (Bankr. N.D. Tex. Oct. 14, 2021) (bankruptcy court had post-confirmation subject matter jurisdiction over a litigation trustee's state law claims "based on pre-petition conduct," the

recoveries of which would "affect distributions to creditors under the confirmed plan"); *Dune Energy*, 575 B.R. at 725–26 (bankruptcy court had post-confirmation subject matter jurisdiction over lawsuit asserting state law claims brought by liquidating trustee established under chapter 11 plan); *Brickley for Cryptometrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 830–32 (W.D. Tex. 2017) (holding that post-confirmation "related to" subject matter jurisdiction existed over creditors' trust's post-confirmation suit asserting pre-confirmation chapter 5 claims and non-core state law claims where the plan vested the claims in the trust); *Schmidt v. Nordlicht*, 2017 WL 526017, at *2–3 (S.D. Tex. Feb. 9, 2017) (holding that post-confirmation "related to" subject matter jurisdiction existed over state law claims aimed at pre-confirmation conduct brought by a litigation trustee established by a confirmed plan); *Houston Reg'l*, 547 B.R. at 736 (bankruptcy court had post-confirmation subject matter jurisdiction over lawsuit brought by litigation trustee established under confirmed chapter 11 plan that asserted state law claims); *Kaye v. Dupree (In re Avado Brands, Inc.)*, 358 B.R. 868, 878–79 (Bankr. N.D. Tex. 2006) (bankruptcy court had post-confirmation jurisdiction over litigation trustee's pre-confirmation core and non-core claims that were transferred to the trustee for prosecution under the plan, where proceeds were to be distributed to creditors); *Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 221 (Bankr. N.D. Tex. 2004) (bankruptcy court had post-confirmation jurisdiction over claims preserved under chapter 11 plan and assigned to the creditor's trust for prosecution with recovery to be distributed to creditors).

15.     These cases make perfect sense—and are entirely consistent with the Fifth Circuit's *Craig's Stores* holding—as claims commenced by a litigation trustee for creditors' benefit easily satisfy the Fifth Circuit's jurisdictional requirement that the claims at issue relate to "the implementation or execution of the Plan." *See Craig's Stores*, 266 F.3d at 390. Indeed, the

Confirmation Order here expressly states that "Implementation of the Plan" shall include the "establishment of" and "transfer of Estate Causes of Action" to "the Litigation Sub-Trust," the Trustee of which is charged with "investigating, pursuing, and otherwise resolving any Estate Claims." *See* Confirmation Order at ¶ 42(b); *see also* Plan § IV. A ("the Plan will be implemented through . . . the Litigation Sub-Trust"); *id*. at § I.B.4 ("The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims," the proceeds of which "shall be distributed . . . to the Claimant Trust for distribution to the Claimant Trust Beneficiaries . . . ."). As courts within the Fifth Circuit have repeatedly held, where, as here, a plan "contemplates the prosecution of the claims and the distribution of . . . recovery to creditors under the Plan, and the prosecution of the claims will thus impact compliance with, or completion of, the Plan, the *Craig's Stores* test for post-confirmation jurisdiction is satisfied." *Ernst & Young LLP v. Pritchard (In re Daisytek, Inc.)*, 323 B.R. 180, 185–86 (N.D. Tex. 2005) (bankruptcy court had post-confirmation subject matter jurisdiction over a Rule 2004 motion brought by the trustee of a creditors' trust, established under a confirmed plan, relating to potential accounting malpractice investigation); *see also First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In Re Biloxi Casino Belle Inc.)*, 368 F.3d 491, 496 (5th Cir. 2004) (a suit pertained to the implementation and execution of the plan where recovery had been assigned to a "liquidating trust . . . for the benefit of unsecured creditors"). As such, these claims "[w]ithout doubt . . . 'pertain[] to implementation and execution'" of the plan. *See Dune Energy*, 575 B.R. at 725–26 (quoting *Craig's Stores*).[4]

---

[4] The court in *Schmidt* also noted that "*Craig's* turned on the idea that a reorganized debtor's confirmed plan marked the end of the bankruptcy and the emergence of a new reorganized business entity not dependent on the bankruptcy court's protection," commenting that while "that rule makes a good deal of sense in the reorganization context . . . in a liquidation case like this one there is no entity that emerges from the bankruptcy to continue operations." *Schmidt*, 2017 WL 526017, at *3. Here, although the Plan is one of reorganization, it is "an 'asset monetization plan' providing for the orderly wind-down of the Debtor's estate, including the sale of assets and certain

16.     Additionally, the facts presented here are easily distinguished from those that the Fifth Circuit characterized as "critical" to its decision in *Craig's Stores*. *Enron*, 535 F.3d at 335; *see also Schmidt*, 2017 WL 526017, at *3 (noting that the factors identified in *Enron* "were not set out as a balancing test" but "as a narrow basis justifying *Craig's* departure from the ordinary jurisdictional standard").[5] First, unlike the post-confirmation contract dispute at issue in *Craig's Stores*, the claims here all arise from pre-confirmation conduct.[6] Second, antagonism plainly existed between the parties at the date of the reorganization. Contrary to Defendants' assertion that this factor requires that the action have been filed prior to confirmation, *see*, *e.g.*, Former Employee Defs. Br. ¶¶ 26, 30, courts in this Circuit consistently hold that "where the claims are based on pre-petition conduct and the cause of action appears to have accrued before the bankruptcy, the antagonism factor is satisfied." *Faulkner*, 2021 WL 4823525, at *3; *see also Schmidt*, 2017 WL 526017, at *3 (while "no claim was pending before the bankruptcy," "antagonism existed in the relevant sense; the defendant's alleged wrongdoing harmed the company prior to the bankruptcy, and the company's cause of action appears to have accrued

---

of its funds over time, with the Reorganized Debtor continuing to manage certain other funds." Confirmation Order at ¶ 2. Thus, as in *Schmidt*, the role of the Litigation Trust "is nothing more or less than maximizing the pot of money for distribution to creditors." *Schmidt*, 2017 WL 526017, at *3.

[5] While these factors weigh in favor of the Court's exercise of jurisdiction here, courts regularly assess the scope of post-confirmation jurisdiction without considering the *Craig's Stores* "factors" that Defendants claim must be rigidly treated as mandatory requirements for jurisdiction. *See*, *e.g.*, *Biloxi*, 368 F.3d at 496 (finding subject matter jurisdiction continued post-confirmation over a suit where recovery was assigned to a liquidating trust because the action "pertain[ed] to the implementation or execution of the plan" and satisfied *Craig's Stores*, without considering the factors); *Ernst & Young*, 323 B.R. at 185–86 (finding subject matter jurisdiction over a Rule 2004 motion where the "the prosecution of the claims will . . . impact compliance with, or completion of, the Plan").

[6] Defendants concede this point. *See* Former Employee Defs. Br. ¶ 33; Okada Defs. Br. ¶ 20; Dondero Defs. Br. ¶ 14 (acknowledging the action relates to "pre-petition conduct dating back eleven years"); NexPoint and HCMFA Br. ¶ 12.

before the bankruptcy"); *Brickley*, 566 B.R. at 831 (confirming that "actual litigation is not necessary to find the existence of antagonism"); *Coho Oil*, 309 B.R. at 221 (finding this factor satisfied where "claims were preserved under the Plan and assigned to the creditor's trust for prosecution").

17.     Indeed, though this factor is met by virtue of the fact that the claims accrued prior to bankruptcy, prior to confirmation Dondero, Dugaboy, Scott (as Trustee of Dugaboy and of the Get Good Trust), and all of the CLO Holdco-related Defendants were defendants to an action commenced by the Official Committee of Unsecured Creditors on behalf of the estate that asserted certain of the same causes of action asserted in the Complaint. *See Official Comm. of Unsecured Creditors v. CLO Holdco, Ltd.*, Adv. Proc. No. 20-03195 (Bankr. N.D. Tex. Dec. 20, 2020) (Docket No. 6).  Moreover, the Plan also expressly identified many of the Defendants as potential targets of Estate Causes of Action, and all of the Defendants, including the Massand Defendants and SAS, were identified as parties on whom the Committee sought to serve Rule 2004 discovery to investigate Estate Causes of Action.  *See* Plan Supplement, Exhibit DD ("Retained Causes of Action"), [Bankr. Docket No. 1875] (listing James Dondero, Mark Okada, Grant Scott, any current or former insider of the Debtor, the Dugaboy Investment Trust, Charitable DAF Holdco, Ltd, Hunter Mountain Investment Trust, NexPoint Advisors, L.P., Strand Advisors XVI, Inc., and Highland Capital Management Fund Advisors, L.P., and listing claims including breach of fiduciary duties, fraudulent transfer, and unjust enrichment); Motion Of The Official Committee Of Unsecured Creditors And The Litigation Advisor For Entry Of An Order Authorizing The Examination Of Rule 2004 Parties [Bankr. Docket No. 2620].

18.     To the extent the three factors need be considered at all, these two factors are sufficient to warrant the Court's exercise of jurisdiction here, as courts within this Circuit routinely

hold that subject matter jurisdiction exists over a litigation trustee's post-confirmation pursuit of claims based on these two factors alone. *See Brickley*, 566 B.R. at 831-32 ("Because two of the three *Craig's* factors weigh in favor of jurisdiction, the Court finds that it has subject matter jurisdiction . . . ."); *Schmidt*, 2017 WL 526017, at *3 (finding post-confirmation subject matter jurisdiction even though "[t]he third factor does not weigh meaningfully in either direction"); *Dune Energy*, 575 B.R. at 726 (finding jurisdiction exists because, "while limited facts and law deriving from the bankruptcy may be examined with respect to some of the claims, any net recoveries made by Plaintiff on these claims will affect distributions to creditors under the confirmed Plan"); *Faulkner*, 2021 WL 4823525, at *4 (finding jurisdiction even though only two of the three factors were satisfied because "any net recoveries made by the Trustee on these claims affect distributions to creditors under the confirmed plan").[7]

19.　　Finally, the Supreme Court has held that "a bankruptcy court has jurisdiction to interpret and enforce its own prior orders," and that "an explicit retention of jurisdiction provision [is] icing on the cake." *TXMS Real Estate Invs., Inc. v. Senior Care Centers, LLC (In re Senior*

---

[7]　The third circumstance underlying the *Craig's Stores* decision also favors jurisdiction here, because several of the facts underlying the Litigation Trustee's claims for breach of fiduciary duty arising out of conduct that resulted in HCMLP liabilities (Count V) and alter ego liability (Counts VI, VII, and VIII) were considered by this Court in approving certain settlements proposed by the Debtor, and the Count V claim is also predicated, in part, on conduct that occurred during the bankruptcy. *See* Complaint §§ IV.D, IV.E, IV.F; *see also* Order Approving Debtor's Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith, dated Jan. 21, 2021 [Bankr. Docket No. 1788]; Order Approving Debtor's Settlement with UBS Securities LLC and UBS AG London Branch and Authorizing Actions Consistent Therewith, dated May 27, 2021 [Bankr. Docket No. 2389]; Order Approving Debtor's Settlement with (A) The Redeemer Committee of the Highland Crusader Fund (Claim No. 72) and (B) The Highland Crusader Funds (Claim No. 81) and Authorizing Actions Consistent Therewith, dated Oct. 23, 2020 [Bankr. Docket No. 1273]; Debtor's Motion for Entry of an Order Approving Settlement with (A) Acis Capital Management, L.P. and Acis Capital Management GP LLC (Claim No. 23), (B) Joshua N. Terry and Jennifer G. Terry (Claim No. 156), and (C) Acis Capital Management, L.P. (Claim No. 159), and Authorizing Actions Consistent Therewith [Bankr. Docket No. 1087].

*Care Centers, LLC)*, 622 B.R. 680, 688 (Bankr. N.D. Tex. 2020) (Jernigan, J.) (citing *Travelers Indem. Co. of Am. v. Bailey*, 557 U.S. 137, 151 (2009)). Here, the cake is iced, as the Plan expressly provides that the Court would retain jurisdiction over claims brought by the Litigation Trustee. *See* Confirmation Order at ¶ 66 ("The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan and/or section 1142 of the Bankruptcy Code to the maximum extent under applicable law."); Plan Art. XI (Bankruptcy Court shall "retain jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Reorganized Debtor, the Claimant Trust, and this Plan to the maximum extent legally permissible, including, without limitation, jurisdiction to . . . decide or resolve any . . . adversary proceedings . . . and any other Causes of Action (including Estate Claims) that . . . may be commenced in the future."). This retention of jurisdiction is entirely consistent with applicable law and should be enforced.

## B. MANDATORY WITHDRAWAL OF THE REFERENCE IS NOT WARRANTED

20.     Defendants also contend that mandatory withdrawal is required because some of the claims will require substantial consideration of either federal tax law[8] or federal securities law.[9] But Defendants fail to demonstrate that there are questions of tax or securities law here that meet the high standard for mandatory withdrawal.[10]

---

[8]     *See* Former Employees Defs. Br. ¶ 10; Okada Defs. Br. ¶¶ 11-12; Dondero Defs. Br. n.2; NexPoint and HCMFA Br. ¶ 23.

[9]     *See* NexPoint and HCMFA Br. ¶¶ 14-15; Dondero Defs. Br. n. 2.

[10]     Defendants bear the burden of demonstrating that the Court is required to withdraw the reference on the basis of federal tax or securities law. *See Highland Capital Mgmt. L.P. v. Dondero (In re Highland Capital Mgmt. L.P.)*, 2021 WL 2850562, at *4 (Bankr. N.D. Tex. July 7, 2021) (Jernigan, J.) (noting movant had burden to demonstrate mandatory withdrawal was appropriate); *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 2009 WL 10714861, at *10 (Bankr. S.D. Tex. Mar. 6, 2009) ("The party seeking withdrawal of the reference bears the burden of establishing grounds for mandatory withdrawal."), *report and rec. adopted*, 421 B.R. 341 (S.D.

21.    Mandatory withdrawal is appropriate only where "the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Courts interpret section 157(d) narrowly, because otherwise it "would eviscerate much of the work of the bankruptcy courts." *Lange v. Fed. Deposit Ins. Corp. (In re TierOne Corp.)*, 2011 WL 2133702, at *3 (Bankr. D. Neb. May 27, 2011); *Manila Indus. Inc. v. Ondova Ltd. Co. (In re Ondova Ltd. Co.)*, 2009 WL 3681905, at *2 (Bankr. N.D. Tex. Oct. 2, 2009) (Jernigan, J.) ("[M]andatory withdrawal is to be applied narrowly . . . to prevent 157(d) from becoming an 'escape hatch'. . . ."), *report and rec. adopted*, 2009 WL 3673026 (N.D. Tex. Nov. 3, 2009).

22.    Cases that require a "straightforward application of a federal statute to a particular set of facts" do not mandate withdrawal; rather, "[b]efore withdrawing the reference, the district court must make an 'affirmative determination' that the relevant non-code legal issues will require substantial and material consideration." *In re Electro-Mech. Indus., Inc.*, 2018 WL 6587299, at *3 (Bankr. S.D. Tex. Feb. 10, 2018).[11]  "Unsubstantiated assertions that non-bankruptcy federal law issues are substantial and material to an adversary proceeding are insufficient to warrant

───────────────

Tex. 2009).

[11]  *See also U.S. Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 145 B.R. 539, 541 (N.D. Tex. 1992) ("Withdrawal of reference is not warranted, however, where it is a question of straightforward application of a federal statute to a particular set of facts.") (internal quotations omitted); *Southern Pac. Transp. Co. v. Voluntary Purchasing Grps., Inc.*, 252 B.R. 373, 382 (E.D. Tex. 2000) ("[W]ithdrawal of a matter from a bankruptcy court is required only when '*substantial and material consideration*' of a federal statute other than the Bankruptcy Code is necessary to the resolution of a case or proceeding.") (emphasis added) (citation omitted); *California v. Enron Corp. (In re Enron Corp.)*, Case No. 1:05-cv-04079-GBD, at 4 (S.D.N.Y. May 18, 2005) ("[m]andatory withdrawal is not available merely because during a bankruptcy proceeding, non-Bankruptcy Code federal statutes or laws will be considered"); *Keach v. World Fuel Servs. Corp (In re Montreal Me. & Atl. Ry., Ltd.)*, 2015 WL 3604335, at *5 (D. Me. June 8, 2015) ("The substantial and material consideration inquiry is not satisfied where resolving the case would require only 'simple' or 'routine' application of non-Code federal law.").

mandatory withdrawal." *Highland Capital Mgmt.*, 2021 WL 2850562, at *4. A party may not merely "tr[y] to kick up some dust to make the relevant analysis seem complicated." *Keach*, 2015 WL 3604335, at *7.

### 1. Federal Tax Law Issues Do Not Necessitate Withdrawal

23. As this Court previously stated in rejecting Dondero's argument for mandatory withdrawal in another Highland-related case, "[t]he bankruptcy court routinely considers tax law issues." *Highland Capital Mgmt.*, 2021 WL 2850562, at *4. Defendants' request for mandatory withdrawal based on the incorporation of 26 U.S.C. § 6502 into the Litigation Trustee's claims under section 544 of the Bankruptcy Code should also be rejected here, as Defendants do not— and cannot—provide an "explanation of how the [tax] issues are beyond the expertise of the bankruptcy court," and thus fail to provide a basis for mandatory withdrawal. *Id.*

24. First, the determination of whether 26 U.S.C. § 6502 constitutes "applicable law" under Bankruptcy Code section 544(b) has been considered by multiple bankruptcy courts, which have concluded that trustees do, in fact, step into the shoes of the IRS. *See Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*, 570 B.R. 816, 834 (Bankr. D. Idaho 2017) ("[A] clear majority of courts that have considered the question have held that when a bankruptcy trustee steps into the shoes of the IRS under § 544(b)(1), the trustee is likewise immune to the time limits in state statutes, just as IRS would be."); *Gordon v. Webster (In re Webster)*, 629 B.R. 654, 674 (Bankr. N.D. Ga. 2021) ("Most courts considering the issue agree that where the IRS is an unsecured creditor of a debtor's bankruptcy estate, the trustee may stand in the shoes of the IRS and pursue claims the IRS could pursue outside of bankruptcy.").[12]

---

[12] District courts considering this question agree. *See, e.g.*, *Marshack v. Cavanaugh (In re Ruby's Diner, Inc.)*, 2021 WL 4572001, at *2 (C.D. Cal. June 2, 2021) ("Most courts have held that section 544(b) allows the trustee to step into the shoes of the IRS and enjoy the ten-year statute of

25. This does not require "material" or "substantial" consideration of tax law, nor does it involve "complex" tax law issues. Indeed, the District Court for the Central District of California rejected the precise argument Defendants make here, when it held that the question of whether section 544(b) allows a trustee to use the 10-year IRS statute of limitations "turns on interpretation of the trustee's powers under 11 U.S.C. § 544(b) rather than any interpretation of 26 U.S.C. § 6502(a)(1)," and does not "present[] issues requiring interpretation, as opposed to application, of provisions of the Internal Revenue Code." *Marshack*, 2021 WL 4572001, at *2. Indeed, as far as the Litigation Trustee is able to discern, the question of whether 26 U.S.C. § 6502 constitutes "applicable law" under section 544(b) has been adjudicated by a bankruptcy court every time it has arisen.[13]

26. Defendants also preview a handful of issues that they contend the Court will be required to consider in analyzing whether the IRS's claims are valid under 26 U.S.C. § 6502: whether HCMLP, as a limited partnership, is subject to the statute; whether the statute applies to excise taxes;[14] and whether (as multiple courts have held) the statute affords the IRS (and thus the

---

limitations in 26 U.S.C. § 6502(a)(1).").

[13] *See, e.g.*, *Webster*, 629 B.R. at 674–75; *Bledsoe v. Flamingo Props., LLC (In re Musselwhite)*, 2021 WL 4342902, at *8 (Bankr. E.D.N.C. Sep. 23, 2021); *Marshack*, 2021 WL 4572001, at *2 (denying motion to withdraw and sending case back to bankruptcy court); *Mitchell v. Zagaroli (In re Zagaroli)*, 2020 WL 6495156, at *3 (Bankr. W.D.N.C. Nov. 3, 2020); *Vieira v. Gaither (In re Gaither)*, 595 B.R. 201, 208–10 (Bankr. D.S.C. 2018); *Kittery Point Partners, LLC v. Bayview Loan Servicing LLC (In re Kittery Point Partners, LLC)*, 2018 WL 1613573, at *10 (Bankr. D. Me. Mar. 12, 2018); *Hillen*, 570 B.R. at 823–34; *Lofstedt v. Oletski-Behrends (In re Behrends)*, 2017 WL 4513071, at *8–9 (Bankr. D. Colo Apr. 10, 2017); *Mukamal v. Citibank, N.A. (In re Kipnis)*, 555 B.R. 877, 881–83 (Bankr. S.D. Fla. 2016); *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 709–12 (Bankr. N.D. Ill. 2014); *Wagner v. Ultima Homes, Inc. (In re Vaughan Co.)*, 498 B.R. 297, 303–04 (Bankr. D.N.M. 2013); *Levey v. Gillman (In re Rep. Windows & Doors, LLC)*, 2011 WL 5975256, at *9–10 (Bankr. N.D. Ill. Oct. 17, 2011); *Finkel v. Polichuk (In re Polichuk)*, 2010 WL 4878789, at *3 n.9 (Bankr. E.D. Pa. Nov. 23, 2010); *Osherow v. Porras (In re Porras)*, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004).

[14] The Former Employee Defendants erroneously contend, at ¶ 10 of their brief, that the IRS asserted claims for taxes arising no earlier than 2015. In Claim No. 32, however, the IRS plainly

Litigation Trustee) a ten-year lookback period.[15]  These arguments—which merely raise questions about the application of § 6502 to the facts alleged in this case—are precisely the type of attempt "to kick up some dust" that is insufficient to warrant mandatory withdrawal.  *See Keach*, 2015 WL 3604335, at *7.  Bankruptcy courts routinely adjudicate tax claims—and are more than adept at interpreting and applying provisions of the tax code.  *See Internal Revenue Serv. v. Luongo (In re Luongo)*, 259 F.3d 323, 327 (5th Cir. 2001) (explaining that "bankruptcy courts have universally recognized their jurisdiction to consider tax issues," in the context of discussing "the broad grant of jurisdiction in § 505(a)(1) permitting a bankruptcy court to determine the merits of tax claims"); *Pendergraft v. Internal Revenue Serv. (In re Pendergraft)*, 2017 WL 1091935, at *3–4 (Bankr. S.D. Tex. Mar. 22, 2017) (finding that the bankruptcy court had subject matter jurisdiction to review the Secretary of the Treasury's "grant or denial of equitable relief" because "statutory language provides a bankruptcy court with the power to determine the legality of taxes and tax penalties").  Indeed, as *Luongo* recognizes, "[j]ust as bankruptcy courts are often called upon to apply state law in resolving bankruptcy matters, so too may they apply tax law in appropriate circumstances."  *Luongo*, 259 F.3d at 331.

27.     All told, Defendants' attempt to characterize commonplace tax law issues as sufficient to mandate withdrawal of the reference runs directly counter to the myriad bankruptcy decisions addressing just such issues without any need for another court's involvement.

---

asserts a claim for the 2013 tax year.  *See* Proof of Claim No. 32, *In re Highland Capital Mgmt. L.P.*, Case No. 19-34054 (Bankr. N.D. Tex. Feb. 13, 2020).

[15]  Former Employee Defs. Br. ¶ 10; NexPoint and HCMFA Br. ¶¶ 23-30; Okada Defs. Br. ¶¶ 12-13; Dondero Defs. Br. n. 2.

## 2. Federal Securities Law Issues Do Not Necessitate Withdrawal

28. HCMFA and NexPoint argue that withdrawal of "all" the counts against them is mandatory because consideration of these counts implicates federal securities law.[16] Their bald assertion that the Complaint's allegations will require adjudication of "key questions" under the securities laws, however, is wholly without support, and thus their assertion that withdrawal is mandatory is baseless.

29. First, Defendants point to cases requiring mandatory withdrawal of claims "based on federal securities statutes."[17] But here, the Litigation Trustee does not assert a single claim "based on federal securities statutes."[18] This stands in stark contrast, for example, to *American*

---

[16] NexPoint and HCMFA Br. ¶ 14.

[17] NexPoint and HCMFA Br. ¶ 14 (quoting *Randall v. Am. Solar King. Corp. (In re Am. Solar King Corp.)*, 92 B.R. 207, 210–11 (W.D. Tex. 1988)). Notably, this argument made by Dondero-controlled entities NexPoint and HCMFA stands in stark contrast to the actions of HCMLP (while controlled by Dondero) in the *Acis* bankruptcy, when Dondero brought claims *in the bankruptcy court* alleging Acis was liable for breach of fiduciary duties under the Investment Advisers Act. *See In re Acis Capital Mgmt., L.P.*, Case No. 18-30264-SGJ-11, Docket No. 497, at ¶ 34 (Bankr. N.D. Tex. Aug. 13, 2018). Subsequently, in *Charitable DAF Fund v. Highland Capital Management, L.P.*, Case No. 3:21-cv-00842 (N.D. Tex. July 22, 2021), Dondero, through the Charitable DAF Fund and CLO Holdco Ltd., alleged HCMLP had breached the Investment Advisers Act. *Id.*, Docket No. 1 (Complaint). HCMLP moved for an order to enforce the order of reference, *id.*, Docket No. 22, and Dondero opposed, *id.*, Docket No. 36, arguing that withdrawal of the reference is mandatory because the "the Complaint relies extensively on and largely is predicated on the Investment Advisers Act of 1940." *Id.*, Docket No. 36 at 3. The District Court nevertheless referred the case to this Court. *Id.*, Docket No. 64.

[18] None of the claims against either HCMFA or NexPoint is brought under federal securities law. Counts XI and XII are fraudulent transfer claims under 11 U.S.C. §§ 544 and 550—core bankruptcy law under 28 U.S.C. § 157(b)(2)—not federal securities law. *See, e.g., Official Comm. Of Unsecured Creditors of Appalachian Fuels v. Energy Coal Resources, Inc. (In re Appalachian Fuels, LLC)*, 472 B.R. 731, 739 (E.D. Ky. 2012); *Ramirez v. Rodriguez (In re Ramirez)*, 413 B.R. 621, 628 (Bankr. S.D. Tex. 2009); *Bliss Tech., Inc. v. HMI Indus., Inc. (In re Bliss Tech., Inc.)*, 307 B.R. 598, 600 (Bankr. E.D. Mich. 2004); *Roberts v. Adesa Fla., LLC (In re Ernie Haire Ford, Inc.)*, 2012 WL 4356161, at *2 (M.D. Fla. Sept. 24, 2012). Counts IX (Alter Ego), XIII (Successor Liability), XV (Aiding and Abetting Breach of Fiduciary Duty Under Delaware Law or Knowing Participation in Breach of Fiduciary Duty under Texas Law), XVI (Civil Conspiracy to Breach Fiduciary Duties Under Texas Law), and XVII (Tortious Interference with Prospective Business Relations) are all related-to state law claims; none are based on federal securities statutes. For that

*Solar King*, the principal case relied upon by Defendants, in which the plaintiff brought Rule 10b-5 claims in district court against a corporate defendant that subsequently filed for bankruptcy. After the company filed, plaintiff reasserted its claim that the company artificially inflated its stock price in bankruptcy court and sought removal to the district court—where the claim originally was filed—to adjudicate the securities action. 92 B.R. at 208. *American Solar King* was a quintessential securities law action, and thus—wholly unlike here—there was no question that interpretation of securities law would be central to the case.[19]

30.    Indeed, as far as the Litigation Trustee is able to discern, every time courts in the Fifth Circuit have found that withdrawal of the reference is mandatory because the proceeding involved a substantial and material question of federal securities law, the plaintiff asserted claims based on novel and complex federal securities law issues. *See In re Sutherlin*, 1987 WL 5712, at *4 (E.D. La. Jan. 15, 1987) (mandatory withdrawal based on civil RICO claims); *In re Harrah's Ent., Inc. Sec. Litig.*, 1996 WL 684463, at *2 (E.D. La. Nov. 26, 1996) (mandatory withdrawal based on "complicated" claims for "several" violations of the federal securities laws); *Am. Solar King*, 92 B.R. at 210–11 (mandatory withdrawal based on claim for violation of Rule 10b-5 of the federal securities laws). Again, that is not the case here—the Litigation Trustee has not asserted any claim based on federal securities laws, let alone claims based on novel and complex securities law issues.

31.    Second, unable to identify a securities law claim brought by the Litigation Trustee (because there are none), Defendants next suggest that their status as "registered investment

---

matter, none of the claims in the Complaint—against any Defendant—is a federal securities laws claim.

[19]  Plaintiffs in *Contemp. Lithographers, Inc. v. Hibbert*, 127 B.R. 122, 123 (M.D.N.C. 1991), and *Price v. Craddock*, 85 B.R. 570, 572 (D. Colo. 1988), similarly asserted securities claims.

advisors" means that their conduct will necessarily implicate "broad questions" of federal securities law.  That sweeping assertion is incorrect.  "If a party to a case is federally regulated, such as a bank or securities brokerage, but no federal regulation applies to the dispute at hand, the court need not withdraw the proceeding because no federal regulation will have to be considered." *Contemp. Lithographers*, 127 B.R. at 125.  The rule advanced by HCMFA and NexPoint would mean that bankruptcy courts would be unable to hear virtually any claims against any investment advisor or other financial entity regulated under the federal securities laws.  The scores of bankruptcy cases involving financial institutions and investment entities belie any such rule.

32.    Third, HCMFA and NexPoint resort to speculation that their defenses to the claims will require consideration of securities law issues.  They set out, for example, an array of restrictions, and exemptions to those restrictions, under the Investment Company Act (the "ICA"). But none of the listed issues are central to the case, and the Court need not reach any of the listed issues in a way that would constitute substantial consideration of non-bankruptcy federal law. Specifically, HCMFA and NexPoint contend that in order to address their defenses, the Court will have to answer:  (i) whether the transactions were subject to or exempt from the requirements of sections 17 and 18 of the ICA; (ii) whether the creation of NexPoint and HCMFA were motivated by compliance with securities laws; and (iii) whether the claims are preempted by the securities laws.[20]  But the question of whether the transactions at issue were subject to or exempted from (or have nothing at all to do with) the ICA is beside the point.  A transaction that complies with the ICA may of course nevertheless give rise to tort liability if it is otherwise violative of state or common law.  At most, the question of ICA compliance, and the issue of whether the transactions were motivated by a desire to comply with federal securities law, bear only on questions of intent

---

[20]  NexPoint and HCMFA Br. ¶¶ 21(a)–(f).

that may be raised by certain of the Litigation Trustee's claims.  Bankruptcy courts routinely adjudicate these types of issues, and the need to do so does not even come close to forming a basis for mandatory withdrawal.[21]  Additionally, HCMFA and NexPoint fail to provide any explanation as to why federal preemption would apply here, and do not (and could not) cite any law suggesting that compliance with securities laws preempts the Litigation Trustee's claims against them.

33.     In contending that issues raised by their defenses will be relevant, Defendants point to *Picard v. Flinn Investments, LLC*, 463 B.R. 280 (S.D.N.Y. 2011), and *Picard v. Avellino*, 469 B.R. 408 (S.D.N.Y. 2012), two Madoff-related cases brought by a Securities Investor Protection Act ("SIPA") trustee.  In *Flinn* and *Avellino*, the district court ordered partial withdrawal of specific issues (which arose across a swathe of Madoff cases) to be adjudicated by the district court, so that the bankruptcy court could then adjudicate the cases consistent with those holdings. The securities law issues raised in those cases—such as whether transfers to securities customers would satisfy antecedent debts when the underlying account statements were entirely fictitious (*Flinn*) and whether SIPA's incorporation of securities law concepts altered the standard for determining good faith for brokerage customers that received transfers from Madoff (*Avellino*)— were novel and complex.  And, importantly, those issues were essential to the determination of the claims before the court.  By contrast, HCFMA and NexPoint's bare bones references to potential defenses fail to identify difficult questions of federal securities law, let alone issues of federal securities law that will actually need to be adjudicated in this case.

---

[21]   HCMFA and NexPoint suggest that Defendants undertook these transactions "on advice of counsel, to comply with securities law."  NexPoint and HCMFA Br. ¶¶ 15, 21(e).  Their brief is wholly devoid of any detail as to why securities law required these transactions.  But, again, this argument simply goes to Defendants' intent, which is a factor bankruptcy courts regularly consider in adjudicating actual fraudulent transfer claims.

34.     The party moving for mandatory withdrawal must establish that the proceeding "involves a substantial and material question of both Title 11 and non-Bankruptcy Code federal law and that the non-Code federal law has more than a *de minimis* effect on interstate commerce." *Nat'l Gypsum*, 145 B.R. at 541.  HCMFA and NexPoint have not done so here.  Mere speculation that the claims brought might merit discussion of certain provisions of federal securities law in passing is insufficient to dictate mandatory withdrawal.  *See Lifemark Hosps. of La., Inc. v. Liljeberg Enters., Inc.*, 161 B.R. 21, 24 (E.D. La. 1993) ("Where application of non-bankruptcy federal law is merely speculative, mandatory withdrawal is not necessary.").  And just because a defendant asserts that a defense will require substantial consideration of non-bankruptcy law does not make it so—that would truly be an "escape hatch" from bankruptcy court adjudication of claims.

## C.     THE BANKRUPTCY COURT SHOULD CONSIDER ALL PRETRIAL MATTERS

35.     Given that the Court has subject matter jurisdiction over all of the causes of action asserted in the Complaint, the Court should continue to preside over all matters until such time, if any, that the case is trial-ready and Defendants are entitled to a jury trial on certain of the claims.  As this Court has explained, "the usual protocol in this district" is to "recommend that the reference only be withdrawn at such time as . . . the matters are trial-ready," and to have "the bankruptcy judge preside over pretrial matters."  May 25, 2021 Tr. Re: Status Conference Re: Motion to Withdraw the Reference, Adv. Proc. No. 21-3003-sgj, Docket No. 58, at 74:12-22; *see also* May 20, 2021 Tr. Re: Hrg. on Comm.'s Mot. to Stay, Adv. Proc. No. 20-03195-sgj, Docket No. 65, at 79:19-80:6 ("[D]istrict courts "almost always use the bankruptcy judges as their magistrates in a case when they withdraw the reference.  Bankruptcy judge[s], handle all the pretrial stuff, the discovery disputes, the motions to dismiss, motions for summary judgment.").  Indeed, Local Rule

22

5011-1 expressly provides that the Court may recommend, among other things, that "the motion be granted upon certification by the bankruptcy judge that the parties are ready for trial" or that "the motion be granted but that pre-trial matters be referred to the bankruptcy judge." N. D. Tex. Bankr. Local R. 5011-1(a)(8)(B)–(C). Thus, this is the common practice not only of this Court,[22] but of other courts within the Northern District of Texas as well.[23] Consistent with this practice,

---

[22] *See, e.g.*, *Highland Capital Mgmt.*, 2021 WL 2850562, at *7 (Jernigan, J.) (recommending that the reference be withdrawn in light of the movant's jury trial right, *but only when the parties were ready for trial*), *report and rec. adopted*, Case No. 3:21-CV-00881-X (N.D. Tex. Sept. 14, 2021) (Docket No. 14); *Baron v. Sherman (In re Ondova Ltd. Co.)*, Adv. Proc. No. 14-03121, at 20–21 (Bankr. N.D. Tex. June 29, 2016) (Docket No. 58) (Jernigan, J.) (recommending that the reference be withdrawn in light of the movant's jury trial right, *but only when the parties were ready for trial*), *report and rec. adopted*, Case No. 3:16-CV-0947-M (N.D. Tex. Aug. 12, 2016) (Docket No. 5); *Sherman v. Emke (In re Ondova Ltd. Co.)*, 2011 WL 3734479, at *3 (Bankr. N.D. Tex. Aug. 22, 2011) (Jernigan, J.) (recommending bifurcation of the core and non-core claims, retaining the former through a bench trial, retaining the latter for all pretrial matters), *report and rec. adopted*, 2011 WL 3739553 (N.D. Tex. Aug. 23, 2011); *Sherman v. Greenstone Farm Credit Servs. (In re Hereford Biofuels, L.P.)*, 2011 WL 2133820, at *1–2 (Bankr. N.D. Tex. Apr. 6, 2011) (Jernigan, J.) (*sua sponte* recommending immediate withdrawal of the reference only when a dispositive summary judgment motion was ready to be entered), *report and rec. adopted*, 2011 WL 2038573 (N.D. Tex. May 24, 2011); *Carpenter v. Holmes (In re TOCFHBI, Inc.)*, Adv. Proc. No. 07-3292, at 3 (Bankr. N.D. Tex. Jan. 25, 2008) (Docket No. 36) (Jernigan, J.) (recommending that the reference be withdrawn in light of the movant's jury trial right, *but only when the parties were ready for trial*), *report and rec. adopted*, Case No. 3:07-CV-2142-N (N.D. Tex. Feb. 7, 2008) (Docket No. 7); *Principal Life Ins. Co. v. JPMorgan Chase Bank, N.A. (In re Brooks Mays Music Co.)*, Adv. Proc. No. 06-3508, at 2 (Bankr. N.D. Tex. Mar. 9, 2007) (Docket No. 9) (Jernigan, J.) (recommending that the reference be withdrawn in light of the movant's jury trial right, *but only when the parties were ready for trial*), *report and rec. adopted*, Case No. 3:06-CV-2180-B (N.D. Tex. June 13, 2007) (Docket No. 10).

[23] *See, e.g.*, *Yaquinto v. JGB Collateral, LLC*, 2021 WL 2386143, at *3-4 (N.D. Tex. Jan. 26, 2021) (adopting the recommendation of Jernigan, J., that the motion to withdraw the reference be denied given the judicial economy of hearing both core and non-core claims before the same court); *Kaye v. Dupree (In re Avado Brands, Inc.)*, 2006 WL 8437389, at *4-5 (Bankr. N.D. Tex. Apr. 21, 2006) (recommending all pretrial matters are retained in the bankruptcy court; in case with multiple adversaries and overlapping legal issues, coordinated discovery and fewer court appearances served judicial economy), *report and rec. adopted*, 2006 WL 8436979 (N.D. Tex. July 3, 2006); *Burch v. Select Portfolio Servicing, Inc.*, 2020 WL 3619532, at *4 (N.D. Tex. May 28, 2020) (recommending referral to the bankruptcy court because the bankruptcy judge had already confirmed a plan, the debtor's assets were pending in that case, and consolidating all claims against the Debtor's assets into one forum promoted judicial efficiency), *report and rec. adopted*, 2020 WL 3605835 (N.D. Tex. July 1, 2020); *Texas United Hous. Program, Inc. v. Wolverine*

the Court has consistently retained its administration over pretrial matters in adversary proceedings involving the Debtor or Reorganized Debtor. *See*, *e.g.*, Order Adopting Bankruptcy Court Report and Recommendation, *Highland Capital Mgmt. LP, et al. v. Highland Capital Management Services, Inc.*, Case No. 21-01378 (N.D. Tex. July 26, 2021) (Docket No. 5) (Godbey, J); Order Adopting Bankruptcy Court Report and Recommendation, *Highland Capital Mgmt. LP, et al. v. NexPoint Advisors LP*, Case No. 21-00880 (N.D. Tex. July 28, 2021) (Docket No. 10) (Cummings, J).[24]

---

*Mortg. Partner Ret.*, 2017 WL 3822754, at *10–11 (N.D. Tex. July 18, 2017) (recommending referral to the bankruptcy court because the bankruptcy court had already ruled on related matters and consolidating all matters related to the Debtor and his assets would streamline administration of the Bankruptcy Plan), *report and rec. adopted*, Case No. 17-977 (N.D. Tex. Aug. 30, 2017); *Panda Energy Int'l, Inc. v. Factory Mut. Ins (In re Hereford Biofuels, L.P.)*, 2011 WL 610016, at *7 (N.D. Tex. Feb. 14, 2011) (denying motion to withdraw the reference because judicial economy improved "by leaving the case with a court familiar with the issues"); *Sibarium v. NCNB Texas Nat. Bank*, 107 B.R. 108, 115 (N.D. Tex. 1989) (denying the motion to withdraw because it is "premature and would not serve the interests of judicial economy" to withdraw before the bankruptcy court has determined which claims are core vs. non-core); *Faulkner v. Berg (In re Heritage Org LLC)*, Adv. Proc. No. 06-3401, at 9 (Bankr. N.D. Tex. Dec. 15, 2006) (Docket No. 76) (finding judicial economy served where all claims determined in a single forum and that the bankruptcy court was "very familiar with the Debtor and its estate and the nature of the claims pending by and against the estate").

[24] In fact, the bankruptcy courts in many of the cases cited by Defendants continued to administer the cases until certification that the cases were trial-ready. *See GenOn Mid-Atl. Dev., LLC v. Natixis Funding Corp.*, 2020 WL 429880, at *1 (S.D. Tex. Jan. 28, 2020) (denying objection to report and recommendation arguing the court should withdraw reference for all purposes, not just trial); *George West 59 Inv., Inc. v. Williams (In re George West 59 Inv., Inc.)*, 526 B.R. 650, 654 (N.D. Tex. 2015) (recounting adoption of bankruptcy court's report and recommendation that it withdraw the reference upon certification for trial); *Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, 578 B.R. 590, 600 (Bankr. S.D. Tex. 2016) (recommending reference be immediately withdrawn but case referred to bankruptcy judge for adjudication of all pretrial matters); *Katchadurian v. NGP Energy Capital Mgmt. (In re Northstar Offshore Grp., LLC)*, 616 B.R. 695, 704 (Bankr. S.D. Tex. 2020) (district court adopted report and recommendation to withdraw the reference only upon certification that all pre-trial and dispositive matters were concluded); *Levine v. M&A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 207 (S.D. Tex. 2008) (recommending withdrawal after all dispositive motions resolved by bankruptcy court); *Lone Star Bank of W. Tex. v. Rabo Agservices, Inc.*, Case No. 2:19-CV-098-Z, at 2 (N.D. Tex. Oct. 23, 2020) (Docket No. 7) (district court adopting recommendation to defer withdrawal until the case was ready for trial, based on the bankruptcy court's extensive familiarity and involvement with the case); *Mobley v. Quality Lease*

36. The Fifth Circuit has set forth the following factors that courts should consider when assessing whether and when to withdraw the reference: "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985); *see also Highland Capital Mgmt.*, 2021 WL 2850562, at \*4 (citing *Holland*, 777 F.2d at 999) (in determining whether and when to withdraw the reference, courts consider the goals of reducing forum shopping; promoting uniformity in bankruptcy administration; fostering the economical use of the debtors' and creditors' resources; expediting the bankruptcy process; whether the matter is core or non-core; and whether the matter involves a jury demand). These factors weigh in favor of the Court's continued administration of this case.[25]

---

*& Rental Holdings, LLC (In re Quality Lease & Rental Holdings, LLC)*, 2016 WL 11644051, at \*2 (S.D. Tex. Feb. 29, 2016) (withdrawing the reference, but referring all pre-trial matters to the bankruptcy court due to that court's significant familiarity with the case); *Natixis Funding Corp. v. GenOn Mid-Atlantic, LLC (In re GenOn Energy, Inc.)*, Adv. Proc. No. 18-03409, at 5 (Bankr. S.D. Tex. Aug. 14, 2019) (Docket. No. 114) (recommending all pre-trial matters be handled by the bankruptcy court based on efficiency and uniformity factors); *Phillips Eleven Hundred, Ltd. v. Land Advisors, Ltd. (In re Phillips Eleven Hundred, Ltd.)*, Adv. Proc. No. 03-03604 (Bankr. N.D. Tex. Dec. 23, 2003) (recommending withdrawal, but with the bankruptcy court hearing all pre-trial matters).

[25] The CLO Holdco-Related Defendants' assertion that forum selection clauses in service and advisory agreements between the Debtor, DAF Fund, and DAF HoldCo warrant immediate withdrawal is without merit. *See* CLO Holdco-Related Defs. Br. ¶¶ 70–82. The forum selection clauses do not apply to the Litigation Trustee's claims, as the Litigation Trustee's claims that the CLO Holdco-Related Defendants received fraudulent transfers, and that CLO Holdco was unjustly enriched by certain of Defendants' inequitable conduct, do not "arise from" or "relate to" the service and advisory agreements. And in any event, whether or not there are applicable forum selection clauses is not relevant to Defendants' present motions to withdraw the reference. Rather, the effect of such clauses—if any—can be raised in a motion to dismiss.

1. **Withdrawal Of The Reference Would Promote And Reward Forum Shopping**

37. A withdrawal of the reference now would promote and reward forum shopping. There is no question that the Motions to Withdraw are motivated in no small part by a desire to escape this Court, which has borne witness to Defendants' misconduct, questionable evidence, and flip-flopping positions. Indeed, the Court was forced to enter a temporary restraining order restricting Dondero (who effectively controls virtually all Defendants) from communicating with Debtor employees, interfering with the Debtor's business, or causing or encouraging any entity under his control to interfere with Debtor's business (the "TRO"), as a result of Dondero's efforts to interfere with the Debtor's asset sales and menacing text messages that he sent to the Debtor's newly-appointed Chief Executive Officer.[26] Incredibly, Dondero then violated the TRO, resulting in an order of contempt and a damages award of $450,000 to compensate for the concomitant harm caused to the estate.[27] And Dondero's cell phone was mysteriously "disposed of" hours after the TRO was entered, leading the Court to comment that it was "highly concerned about possible spoliation of evidence that may or may not be presented in a contested matter later."[28] Dondero and several of his affiliates went on to violate *another* court order, attempting to bypass this Court's

---

[26] *See* Order Granting Debtor's Motion for a Temporary Restraining Order Against James Dondero, *Highland Capital Mgmt. L.P. v. Dondero (In re Highland Capital Management L.P.*), Adv. Proc. No. 20-03190 (Bankr. N.D. Tex. Dec. 10, 2020) (Docket No. 10).

[27] *See* Memorandum Opinion and Order Granting in Part Plaintiff's Motion to Hold James Dondero in Civil Contempt of Court for Alleged Violation of TRO, *Highland Capital Mgmt. L.P. v. Dondero (In re Highland Capital Management L.P.*), Adv. Proc. No. 20-03190 (Bankr. N.D. Tex. June 7, 2021) (Docket No. 191).

[28] *Id.* at 47 (emphasis in original omitted).

"gatekeeper provisions" and impermissibly sue James Seery in District Court, resulting in another order of contempt and further sanctions.[29]

38.     That is not, unfortunately, the full extent of questionable conduct in connection with Highland. The Court has also observed HCMFA's and NexPoint's ever-changing theories as to why they should not be liable on the straightforward promissory notes at issue in the adversary proceedings that the Debtor commenced against Defendants HCMFA, Dondero, NexPoint, and others (collectively, the "Notes Litigation").[30]  For instance, in November 2021, ten months after the Notes Litigation was commenced, HCMFA requested leave to amend its answer for a second time to assert that certain notes were not actually "signed" by HCMFA. See Defendant [HCMFA]'s Second Motion For Leave To Amend Answer, Adv. Proc. No. 21-3004, Docket No. 82, at ¶ 1 ("HCMFA requests leave to amend its answer to expressly deny that the Notes were signed."). This came five months after HCMFA amended its defense for the express purpose of asserting that HCMFA signed the notes by "mistake." Defendant [HCMFA]'s Amended Answer, Adv. Proc. No. 21-3004, Docket No. 48, at ¶ 44 ("Waterhouse made a mistake in preparing and signing the Notes for the Defendant."). In denying the second motion for leave to amend, the Court found that HCMFA's "evolving theory of the case" was a "bombshell morphing of the case" that was unreasonably delayed in light of the "timeline" of events, and unsupported by any credible evidence.[31]  The Court stated that "the proposed second amended answer would essentially mean

---

[29]  See Memorandum Opinion and Order Holding Certain Parties and their Attorneys in Civil Contempt of Court for Violation of Bankruptcy Court Orders [Bankr. Docket No. 2660].

[30]  The Notes Litigation consists of adversary proceedings 21-3003, 21-3004, 21-3005, 21-3006, and 21-3007.

[31]  Transcript Regarding Hearing Held Jan. 10, 2022 Re: Defendant's Second Motion To Amend Answer, Adv. Proc. No. 21-3004, Docket No. 121, at 139:5–19, 128:19; 140:1–141:20, 128:19; 140:1–141:20.

HCMFA is arguing that Frank Waterhouse and perhaps others within both the Highland and HCMFA organization either lied or made a $7.4 million mistake in dozens of reports to interested stakeholders."[32] Moreover, in finding the proposed amendment futile, the Court explained that Dennis C. Sauter, Jr., a lawyer for NexPoint and the only declarant supporting HCMFA's proposed second amendment, had no "personal knowledge" regarding the origin of the notes and was merely "someone who just after the fact . . . goes back to look at the evidence."[33]

39.     NexPoint has brought similarly specious motions in the Notes Litigation. For instance, on the deadline for expert disclosures, NexPoint requested an extension of expert discovery deadlines so that it could proffer expert testimony on an affirmative defense that it asserted nine months earlier. After the Court denied its request to submit an expert report, NexPoint improperly relied on such a report in its summary judgment pleading.[34] Defendant CLO Holdco has also taken conflicting positions regarding its claim (or lack thereof) against the estate, depending on its perception of whether the claim will benefit or harm CLO Holdco in the particular moment.[35] And the Court concluded that testimony provided by Former Employee Defendants

---

[32]     *Id.* at 137:15-23 (referring to monthly operating reports signed by Frank Waterhouse, HCMFA's Treasurer, 15(c) reports to interested third parties, and audited financial statements reflecting the existence of the HCMFA notes).

[33]     *Id.* at 143:3-12.

[34]     *See* Motion to Extend Expert Disclosure and Discovery Deadlines, Adv. Proc. No. 21-3005, Docket No. 86; Original Answer, Adv. Proc. No. 21-3005, Docket No. 6, at ¶ 39 (asserting as an affirmative defense Plaintiff's alleged negligence and breach of its duty of care under the Shared Services Agreement); Def. Appendix, Adv. Proc. No. 21-3005, Docket No. 157, at Ex. 3-F (prohibited expert report); Defendants' Memorandum of Law in Response to Plaintiff's Motion for Partial Summary Judgment, Adv. Pro. 21-03003, Docket No. 154, at ¶ 28, n.76 (advancing arguments based on the prohibited expert report).

[35]     *Compare* May 20, 2021 Tr. Re: Hrg. On Comm.'s Mot. To Stay, Adv. Proc. No. 20-03195, Docket No. 65, at 57:16–19 ("CLO Holdco filed a proof of claim, but it was in effect disallowed and converted to a claim for zero.") *against* [Bankr. Docket No. 3178] (Motion To Ratify Second Amendment To Proof Of Claim).

Ellington and Leventon in the related bankruptcy case of Acis Capital Management, L.P. ("Acis") was "of questionable reliability," and that "oftentimes, there seemed to be an effort to convey plausible deniability."[36]

40.      Defendants' efforts to distance themselves from their prior conduct by forum shopping their way out of this Court should be rejected.  *See Panda Energy*, 2011 WL 610016, at *7 (forum shopping reduced by keeping the action in front of the judge where the "dispute" was filed almost two years ago); *Faulkner*, Adv. Proc. No. 06-3401, Docket No. 76, at 9 (recommending denying motion to withdraw where granting it would encourage, not inhibit, forum shopping); *Veldekens v. GE HFS Holdings Inc.* (*In re Drs. Hosp. 1997, L.P.*), 351 B.R. 813, 869, 875–76 (Bankr. S.D. Tex. 2006) (finding "blatant forum shopping" was most important *Holland* factor where movants feared additional adverse rulings); *Schott v. Massengale*, 618 B.R. 444, 453 (M.D. La. 2020) ("A motion to withdraw the reference provides 'significant risks of forum shopping because a party can first observe the bankruptcy judge's rulings, and then decide whether to bring the motion'. . . .  [A] motion to withdraw reference can be subterfuge for opportunistic delay or forum-shopping.") (internal citation omitted).

## 2.      Uniformity In Bankruptcy Administration Weighs In Favor Of Denying The Withdrawal Motions

41.      The goal of achieving uniformity in bankruptcy administration also weighs against withdrawal.  This Court has overseen the Debtor's bankruptcy case since it was transferred to the Court in December 2019, and also oversaw the related Acis involuntary bankruptcy cases that were commenced in January 2018.  All of the Defendants named in the Complaint except the Massand Defendants and SAS appeared in one or both of these proceedings.[37]  Additionally, the Court is

---

[36]  *In re Acis Capital Mgmt., L.P.*, 584 B.R. 115, 131 (Bankr. N.D. Tex. 2018).

[37]  *See*, *e.g.* [Bankr. Docket No. 505] (Notice of Appearance of James Dondero's counsel); [Bankr.

currently presiding over the Notes Litigation, in which Defendants Dondero, HCMFA, and NexPoint are defendants. *See* Adv. Proc. No. 21-3003, Docket No. 1; Adv. Proc. No. 21-3004, Docket No. 1; Adv. Proc. No. 21-3005, Docket No. 1. And the facts underlying the Litigation Trustee's claims for breach of fiduciary duty arising out of conduct that resulted in HCMLP liabilities (Count V) and alter ego liability (Counts VI, VII, and VIII) were already considered by the Court in approving certain Debtor settlements.[38]

42. The Court is thus particularly well-suited to preside over this action, given that, as a result of these other proceedings, the Court is familiar with the parties to this action, the Debtor's history, management, and affiliated entities, and the complex corporate structure in which the Debtor has operated. Simply stated, no other court is better suited to preside over this action. *See*, *e.g.*, *Highland Capital Mgmt.*, 2021 WL 2850562 (detailed Report and Recommendation filed by this Court in adversary proceeding against Dondero, examining the *Holland* factors and already recommending withdrawal of the reference with pretrial matters to be retained in the bankruptcy court); Report and Recommendation, *Highland Capital Mgmt. L.P. v. Highland Capital Mgmt.*

---

Docket No. 2719] (Notice of Appearance of counsel for Mark Okada, Mark & Pamela Okada Family Trust – Exempt Trust #1 and Lawrence Tonomura as Trustee, and Mark & Pamela Okada Family Trust – Exempt Trust #2 and Lawrence Tonomura as Trustee); [Bankr. Docket No. 702] (Notice of Appearance of counsel for Scott Ellington, Isaac Leventon, and Frank Waterhouse); [Bankr. Docket No. 338] (Stipulation between HCMLP and Strand Advisors, Inc.); [Bankr. Docket No. 835] (Motion to Appear Pro Hac Vice for counsel of NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P.); [Bankr. Docket No. 1154] (Motion for Leave to Amend Proofs of Claim by Dugaboy Investment Trust); [Bankr. Docket No. 2723] (Reservation of Rights filed by Nancy Dondero as witness); [Bankr. Docket No. 1595] (Notice of Appearance of counsel for Get Good Trust); [Bankr. Docket No. 77] (Notice of Appearance of counsel for Hunter Mountain Investment Trust); [Bankr. Docket No. 152] (Notice of Appearance of counsel for CLO Holdco, Ltd.); [Bankr. Docket No. 2718] (Objection to 2004 Examination by Charitable DAF Holdco, Ltd.); [Bankr. Docket No. 2248] (Motion to Reconsider by Charitable DAF Fund, L.P.); [Bankr. Docket No. 2547] (Notice of Response and Disclosures by Highland Dallas Foundation); [Bankr. Docket No. 837] (Opposition to Motion to Compel by Rand PE Fund I, LP, Series 1).

[38] *See supra* at n.7.

*Fund Advisors, L.P. (In re Highland Capital Mgmt., L.P.)*, Adv. Proc. No. 21-03004 (Bankr. N.D. Tex. July 8, 2021) (Docket No. 50) (same, with respect to adversary proceeding against HCMFA); Report and Recommendation, *Highland Capital Mgmt. L.P. v. NexPoint Advisors, L.P (In re Highland Capital Mgmt., L.P.)*, Adv. Proc. No. 21-03005 (Bankr. N.D. Tex. July 8, 2021) (Docket No. 40) (same, with respect to adversary proceeding against NexPoint); *cf.* Transfer Order [Bankr. Docket. No. 1] (Dec. 4, 2019) (marking the beginning of HCMLP's bankruptcy case in this court, with a docket braced to exceed 4500 entries). As the cases cited by Defendants hold, this fact supports the Court's retention of this action, and weighs against withdrawal. *See Tow v. Park Lake Cmty., LP (In re Royce Homes, LP)*, 578 B.R. 748, 759–61 (Bankr. S.D. Tex. 2017) (concluding that uniformity would not be served by withdrawal where court was familiar with the proceedings and recommending against withdrawal of reference); *Palmer & Palmer, P.C. v. U.S. Trustee*, 146 B.R. 173, 176 (N.D. Tex. 1992) (bankruptcy court's familiarity with parties and its expertise weighed in favor of keeping the reference); *Kenai Corp. v. Nat'l Union Fire Ins. Co.*, 136 B.R. 59, 61 (S.D.N.Y. 1992) ("Given [the bankruptcy's judge's] familiarity with the bankruptcy case involving [the debtor], [the bankruptcy judge] is in the best position to monitor all the proceedings related to that bankruptcy, including this adversary proceeding."); *Engelhart v. Parish (In re Parish)*, 2021 WL 3683909, at *6 (Bankr. S.D. Tex. Feb. 19, 2021) (recommending against withdrawal of the reference because the court was "familiar with the facts of th[e] case and the underlying bankruptcy").

### 3. Reorganized Debtor And Creditor Resources Are Preserved By Denying The Withdrawal Motions

43. Retention of all pre-trial matters in this Court will also preserve Reorganized Debtor and creditor resources. The Court's familiarity with the parties and issues raised in the Litigation Trustee's Complaint, combined with the Court's expertise in handling fraudulent

transfer and related claims, will allow this Court to efficiently and economically administer this adversary proceeding, which is a critical component of the administration of the Plan. *See, e.g.*, *Royce Homes*, 578 B.R. at 762 (when "the bankruptcy court is familiar with the parties, the factual background, and the legal issues involved, the goals of judicial efficiency and economical use of the estate's resources are best met by allowing the suit to remain in the bankruptcy court"); *Veldekens*, 351 B.R. at 869 (given the court's familiarity with the parties and issues, and the lengthy briefs already filed, withdrawal would only incur unnecessary attorneys' fees and delays while the District Court familiarized itself with the case); *GenOn*, 2020 WL 429880, at *4 (the bankruptcy court's significant experience with the underlying transactions and the impact of the litigation on current and future bankruptcy filings weighs in favor of the bankruptcy court hearing all pretrial matters); *Kaye*, 2006 WL 8437389, at *5 (coordination of pretrial matters in the bankruptcy court reduces costs and delays); *Post Confirmation Bd. Of Wadleigh Energy Group, Inc. v. Wadleigh*, 516 B.R. 850, 856 (E.D. La. 2014) ("Indeed, allowing the bankruptcy court time 'to function much like [a] magistrate[] to the district court on matters that are merely "related to" a bankruptcy' or that are otherwise unable to be finally adjudicated by that court, could considerably expedite the litigation.") (quoting *Holland*, 777 F.2d at 999).

### 4. The Bankruptcy Court's Retention Of This Case Will Expedite Administration Of The Plan

44. Defendants' assertion that this factor is neutral because the Plan has already been confirmed is misplaced.[39] As several courts within the Fifth Circuit have noted, the ability to administer the Plan includes the prosecution of adversary proceedings that are part of a confirmed plan. *See*, *e.g.*, *Veldekens*, 351 B.R. at 870 (finding expeditiousness in bankruptcy process was

---

[39] *See* Former Employee Defs. Br. ¶ 53; Okada Defs. Br. ¶ 28; Dondero Defs. Br. ¶ 33; Scott Br. ¶¶ 24-25; CLO Holdco-Related Defs. Br. ¶ 51.

best served by denying request to withdraw, reasoning that despite confirmed Plan "the bankruptcy process is not entirely complete" because the Adversary Proceeding "could have a critical impact on the success of the Debtor's confirmed Plan") (internal quotations omitted); *Lopez v. Portfolio Recovery Assocs. LLC (In re Lopez)*, 2017 WL 3382099, at *9 (Bankr. S.D. Tex. Mar. 20, 2017) (post-confirmation adversary proceeding should remain in bankruptcy court where "the potential expediency of the bankruptcy court resolution of the issues favors denial of the motion") (internal citations omitted); *see also Levine*, 400 B.R. at 203 (adopting the recommendation of Isgur, J. to retain pretrial matters in the bankruptcy court until dispositive motions had been heard, to expedite the bankruptcy process).

### 5.    Jury Trial Rights And Non-Core Claims Do Not Require Immediate Withdrawal

45.    Finally, the fact that this action includes both core and non-core claims, and that Defendants may have the right to a jury trial on certain of the claims, does not warrant immediate withdrawal.[40]  Bankruptcy courts routinely deny motions to withdraw the reference in actions involving non-core claims and jury rights in favor of continuing to oversee pretrial matters until the case is trial-ready.  *See supra* nn. 22–24 (collecting cases); *Kaye*, 2006 WL 8437389, at *5 (recommending withdrawal only when the parties were ready for trial when there was a mix of core and non-core matters, and noting "[t]he right to a jury does not require immediate withdrawal of the reference"); *see also Katchadurian v. NGP Energy Capital Mgmt., LLC (In re Northstar Offshore Grp., LLC)*, Adv. Proc. No. 18-03079, at 10–17 (Bankr. S.D. Tex. Sept. 25, 2019) (Docket No. 71) (Isgur, J.) (recommending withdrawal of the reference after pretrial matters

---

[40]    The Litigation Trustee does not concede that Defendants are correct as to which claims they contend are non-core, or that Defendants have jury trial rights with respect to all claims.  Rather, for purposes of this motion, the Litigation Trustee assumes that there are *some* non-core claims and claims on which Defendants have a right to a jury trial.

33

disposed of by the bankruptcy court, despite mix of core and non-core claims and a valid jury demand), *report and rec. adopted*, Case No. 19-03740 (S.D. Tex. Nov. 4, 2019) (Docket No. 7); *Gregory Power Partners, LLC v. Reynolds Metals Co.*, 2017 WL 3033424, at *2 (S.D. Tex. July 18, 2017) (adopting report and recommendation that the reference be withdrawn only when the parties are ready for trial, even when both parties suggested all claims were non-core, and noting a jury trial right does not imply immediate withdrawal is required); *Miller v. Boutwell, Owens & Co., Inc. (In re Guynes Printing Co. of Texas, Inc.*), 2015 WL 3824070, at *3 (W.D. Tex. June 19, 2015) (denying motion to withdraw immediately and ordering withdrawal when the parties were ready for trial, because even assuming a mix of core and non-core claims and a party's right to a jury trial, "immediate withdrawal of the reference is not required" and "a motion to withdraw is premature until such time [as] it is determined that a jury trial must be conducted") (internal quotations omitted); *Levine*, 400 B.R. at 203 (adopting the report and recommendation to withdraw the reference after the bankruptcy court rules on the dispositive motions to further judicial economy and expedite the bankruptcy process, despite a valid jury demand).[41]

---

[41] Indeed, courts across the country have held that, even if a party has a right to a jury trial, immediate withdrawal of the reference is not required. *See, e.g.*, *Superior Contracting Grp., Inc. v. Rachmale (In re LTC Holdings, Inc.)*, 2019 WL 4643801, at *6 (D. Del. Sept. 24, 2019) (stating that "generally such a right [to jury trial] does not compel withdrawing the reference until the case is ready to proceed to trial") (internal quotations omitted); *Wadleigh*, 516 B.R. at 856 (even though the defendants' motion emphasized their right to a jury trial and the bankruptcy court's inability to enter final judgments on certain claims, the court ruled that "these considerations alone do not lead the Court to the conclusion that there is good cause to withdraw the reference at this time"); *O'Connell v. Terranova (In re Adelphi Inst., Inc.)*, 112 B.R. 534, 538 (S.D.N.Y. 1990) ("Assuming for present purposes that the Terranovas are correct in their assessment of the 'non-core' nature of this proceeding and of their Seventh Amendment jury rights . . . there is no need for withdrawal of the proceeding to an Article III court now, given the pre-trial posture of the case."); *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 787 (9th Cir. 2007) ("[W]e have canvassed the numerous courts outside this circuit who have already addressed the issue. . . . Universally these courts have all reached the same holding, that is, a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court.") (internal citations omitted).

46.     This is particularly true where, as here, a proceeding is in its early stages. *See Kaye*, 2006 WL 8437389, at *5 ("A District Court may consider a demand for a jury trial insufficient cause for discretionary withdrawal if the motion is made at an early stage of the proceedings and dispositive motions may resolve the matter.") (quoting *American Classic Voyages Co. v. Westaff (USA), Inc. (In re American Classic Voyages Co.)*, 337 B.R. 509, 511–12 (D. Del. 2006)). "Courts have . . . recognized that it serves the interests of judicial economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for trial." *Id.* (citations omitted).

## IV.     CONCLUSION

47.     For the foregoing reasons, the Litigation Trustee respectfully requests that the Motions to Withdraw be denied.

Dated: March 4, 2022

Respectfully submitted,

SIDLEY AUSTIN LLP
/s/ *Paige Holden Montgomery*
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

-and-

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
Benjamin I. Finestone (admitted *pro hac vice*)
Jordan Harap (admitted *pro hac vice*)
Alexandre J. Tschumi (admitted *pro hac vice*)
51 Madison Avenue
Floor 22
New York, NY 10010
Telephone:  (212) 849-7000

*Counsel for Marc S. Kirschner, as Litigation*
*Trustee of the Highland Litigation Sub-Trust*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies, that on this 4th day of March 2022, the undersigned caused to be served a true and correct copy of the *Litigation Trustee's Response in Opposition to Defendants' Motions to Withdraw the Reference*, by electronically filing it with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

/s/ *Paige Holden Montgomery*
Paige Holden Montgomery
