Brian D. Glueckstein (admitted *pro hac vice*)
  New York Bar No. 4227005
  gluecksteinb@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588

Cortney C. Thomas
  Texas Bar No. 24075153
  cort@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone:  (214) 327-5000
Facsimile:  (214) 327-5001

*Counsel for Mark Okada and*
*Affiliated Parties*

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | : | Case No. 19-34054-sgj11 |
| | : | |
| Reorganized Debtor. | : | |

------------------------------------------------------------------------X

| | | |
|---|---|---|
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | : : : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 21-03076-sgj |
| | : | |
| v. | : | Civ. Act. #3:22-CV-00229-C |
| | : | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT | : : | |

-----

[1]  The Reorganized Debtor's last four digits of its taxpayer identification number are (8357).  The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

| | |
|---|---|
| JAMES SCOTT III; FRANK WATERHOUSE; | : |
| STRAND ADVISORS, INC.; NEXPOINT | : |
| ADVISORS, L.P.; HIGHLAND CAPITAL | : |
| MANAGEMENT FUND ADVISORS, L.P.; | : |
| DUGABOY INVESTMENT TRUST AND NANCY | : |
| DONDERO, AS TRUSTEE OF DUGABOY | : |
| INVESTMENT TRUST; GET GOOD TRUST AND | : |
| GRANT JAMES SCOTT III, AS TRUSTEE OF GET | : |
| GOOD TRUST; HUNTER MOUNTAIN | : |
| INVESTMENT TRUST; MARK & PAMELA | : |
| OKADA FAMILY TRUST – EXEMPT TRUST #1 | : |
| AND LAWRENCE TONOMURA AS TRUSTEE OF | : |
| MARK & PAMELA OKADA FAMILY TRUST – | : |
| EXEMPT TRUST #1; MARK & PAMELA OKADA | : |
| FAMILY TRUST–EXEMPT TRUST#2 AND | : |
| LAWRENCE TONOMURA IN HIS CAPACITY AS | : |
| TRUSTEE OF MARK & PAMELA OKADA | : |
| FAMILY TRUST–EXEMPT TRUST #2; CLO | : |
| HOLDCO, LTD.; CHARITABLE DAF HOLDCO, | : |
| LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND | : |
| DALLAS FOUNDATION; RAND PE FUND I, LP, | : |
| SERIES 1; MASSAND CAPITAL, LLC; MASSAND | : |
| CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; | : |
| AND CPCM, LLC, | : |
| | : |
| Defendants. | : |

-------------------------------------------------------------------- x

**REPLY IN SUPPORT OF THE OKADA PARTIES'
MOTION TO WITHDRAW THE REFERENCE**

Defendants Mark K. Okada, MPO Trust 1 and Lawrence Tonomura in his Capacity as Trustee, MPO Trust 2 and Lawrence Tonomura in his Capacity as Trustee (collectively, the "Okada Parties"), respectfully submit this reply (this "Reply") in response to *The Litigation Trustee's Response in Opposition to Defendants' Motions to Withdraw the Reference* [Dkt. No. 95] (the "Opposition" or "Opp.") and in further support of their *Motion to Withdraw the Reference* [Dkt. No. 36] (the "Motion").[2]

## **PRELIMINARY STATEMENT**

1.      The Litigation Trustee concedes that there are at least "some non-core claims and claims on which Defendants have a right to a jury trial." (Opp. ¶ 45 n.40.) Therefore, there can be no dispute that the Motion should be granted, and the question before the Court is simply "when" the District Court begins presiding over the entirety of the case. The facts and circumstances of this case provide that the reference should be withdrawn with the District Court taking over immediately.

2.      The Litigation Trustee fails to refute that his Complaint presents unsettled issues of federal income tax law that require substantial and material consideration alongside issues arising under chapter 11 of the Bankruptcy Code. Specifically, there is a threshold legal question of whether 26 U.S.C. § 6502 is forward-looking from the date of assessment or would provide the IRS a ten-year look back period even where no tax has been assessed or accrued. As a result, immediate withdrawal of the reference is mandatory pursuant to 28 U.S.C. § 157(d).

3.      Furthermore, immediate withdrawal of the reference for all purposes is appropriate here because the Bankruptcy Court lacks post-confirmation subject matter

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the *Memorandum of Law in Support of the Okada Parties' Motion to Withdraw the Reference* [Dkt. No. 37] (the "Memorandum" or "Memo."), as applicable. The Okada Parties also join and incorporate by reference the reply briefs filed by the other defendants with pending motions to withdraw the reference.

jurisdiction over the non-core breach of fiduciary duty claim asserted against Mr. Okada. Nothing in the Opposition demonstrates otherwise. Indeed, the Litigation Trustee's arguments focus on causes of action against, and alleged conduct of, other Defendants, while remaining conspicuously silent as to the jurisdictional basis for maintaining the claim against Mr. Okada.

4.     Immediate withdrawal of the reference for all purposes is also supported by a review of the *Holland* factors set forth by the Fifth Circuit Court of Appeals when deciding whether permissive withdrawal is appropriate. However, even if the Court were to disagree, the Motion must still be granted, with pre-trial matters referred to the Bankruptcy Court in accordance with Local Rule 5011-1(a)(8)(C).

## ARGUMENT

## I.     MANDATORY WITHDRAWAL OF THE CLAIMS IS REQUIRED

5.     The Litigation Trustee's contention that mandatory withdrawal of the reference with respect to the Claims against the Okada Parties is not required is wrong for two crucial reasons. *First*, the Litigation Trustee correctly acknowledges that the test for mandatory withdrawal is whether there is an issue that requires "substantial and material" consideration of both bankruptcy and non-bankruptcy law (Opp. ¶¶ 22, 34), but then fails to apply that standard. The Litigation Trustee instead argues that "[t]he bankruptcy court routinely considers tax law issues" and "Defendants do not—and cannot—provide 'an explanation of how the [tax] issues are beyond the expertise of the bankruptcy court.'" (Opp. ¶ 23.)

6.     But whether or not bankruptcy courts "routinely" consider tax issues, or whether a bankruptcy court has the competency to consider the non-bankruptcy law issues, the reference nonetheless *must* be withdrawn if the litigation will require "substantial and material consideration" of federal tax law. *U.S. Gypsum Co.* v. *Nat'l Gypsum Co. (In re Nat'l Gypsum*

*Co.)*, 145 B.R. 539, 541 (N.D. Tex. 1992).[3]    Immediate withdrawal is mandatory in circumstances, as presented here, where "the court must undertake analysis of significant open and unresolved issues regarding non-title 11 law – rather than the mere application of well-settled law." *Tex. United Hous. Program, Inc.* v. *Wolverine Mortg. Partner Ret.*, 2017 WL 3822754, at *7 (N.D. Tex. Jul. 18, 2017).

7.      *Second*, the Litigation Trustee completely misstates the federal tax law question at issue. The primary non-bankruptcy federal tax issue requiring adjudication is whether the IRS itself would have had the ability to seek to avoid transfers that occurred *prior to the date of any tax assessment* against HCMLP. The earliest claim asserted by the IRS in its proof of claim allegedly arose in December 2013 and since amended to June 2015, but the Litigation Trustee seeks to avoid distributions made to the Okada Parties dating back to April 2010. Putting aside for now critical factual questions of whether the IRS *ever* assessed the taxes claimed prior to the Petition Date—which, if not, would restrict the ability of the IRS to challenge *any* of the earlier distributions—there is no doubt that the Court will need to determine if, under the Internal Revenue Code, the IRS would as a matter of law have been able to utilize section 6502 to avoid transfers that predate any assessment or even the date that tax liability first accrued.

8.      This is plainly and entirely a matter of federal tax law under the Internal Revenue Code. As one court summarized in the recent case of *Gordon* v. *Webster (In re Webster)*, various courts have answered this question differently. *See* 629 B.R. 654, 674-677 (Bankr. N.D. Ga. 2021) (collecting cases considering whether section 6502 "operates as a lookback period stretching back ten years without regard for the date tax liability accrued or taxes were assessed

---

[3]    The cases cited by the Litigation Trustee to support the proposition that bankruptcy courts have subject matter jurisdiction to consider tax issues and law miss the mark. (Opp. ¶ 26) The question is whether the tax issues identified by the Okada Parties require substantial and material consideration, not whether bankruptcy courts generally have subject matter jurisdiction over tax-related matters.

or whether that period is forward-looking from the date of assessment"). "A plain reading of § 6502 . . . makes clear that it is the 'assessment' itself that, once made, starts the running of the ten-year period within which the IRS can commence efforts to collect an assessed tax." *Id.* at 677 (quoting *Remington* v. *United States*, 210 F.3d 281, 284 (5th Cir. 2000)); *see also Luria* v. *Thunderflower, LLC (In re Taylor, Bean & Whitaker Mortg. Corp.)*, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sept. 28, 2018) ("The Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment (or, alternatively, prior to accrual of the tax liability)."). If that majority view prevails, a significant portion of the Litigation Trustee's claims against the Okada Parties would be time-barred. However, other courts "have found that § 6502 is a lookback period" and not only a forward-looking statute of limitations. *Gordon* v. *Webster*, 629 B.R. at 675 (collecting cases); *see Finkel* v. *Polichuk (In re Polichuk)*, 506 B.R. 405, 428 (Bankr. E.D. Pa. 2014) (holding that a trustee could utilize § 6502 to avoid transfers up to ten years prior to filing of bankruptcy petition despite lack of IRS tax assessment). The resolution of this critical threshold question will require substantial and material consideration of federal tax law. Only if section 6502 is determined to have been available to the IRS to avoid transfers back to 2010 could the Litigation Trustee then attempt to argue that he can step into the shoes of the IRS and similarly utilize the extended limitations period.

9. Ignoring these complex issues altogether, the Litigation Trustee seeks to misdirect the Court by arguing at length about the secondary issue of "whether 26 U.S.C. § 6502 constitutes 'applicable law' under Bankruptcy Code section 544(b)," and arguing that question is a matter within the purview of the Bankruptcy Court. (Opp. ¶¶ 24-25.) The Okada Parties have never asserted that question requires mandatory withdrawal of the reference.[4]

---

[4] The Okada Parties reserve all rights with respect to the question of whether the Litigation Trustee can avail himself of 26 U.S.C. § 6502 if it is determined to have been available to the IRS here.

10.     The Litigation Trustee then dismisses the operative question as one of "a handful of issues" that merely "kick[s] up some dust" and "is insufficient to warrant mandatory withdrawal." (Opp. ¶ 26.) To the contrary, whether the IRS would have been permitted to seek to avoid transfers that occurred prior to any tax assessment is an unsettled issue that is the subject of inconsistent decisions among lower courts and will "materially affect the disposition of the case." *Great W. Sugar Co.* v. *Interfirst Bank, Dallas, N.A.*, 1985 WL 17671, at *1 (N.D. Tex. Nov. 7, 1985). As a result, the reference must be immediately withdrawn.

## II.     IMMEDIATE WITHDRAWAL IS APPROPRIATE BECAUSE THE BANKRUPTCY COURT LACKS POST-CONFIRMATION JURISDICTION OVER THE NON-CORE CLAIM

11.     The Litigation Trustee's attempt to bury Fifth Circuit precedent on post-confirmation jurisdiction in favor of subsequent lower court decisions should be rejected. Contrary to his assertions, the Okada Parties have not "attempt[ed] to fashion a rule" regarding post-confirmation jurisdiction (Opp. ¶ 12), but rather have set out the contours of the applicable binding case law under *Craig's Stores* and its progeny. (Memo. ¶¶ 17-19 (citing *Bank of La.* v. *Craig's Stores of Tex., Inc.* (*In re Craig's Stores of Tex., Inc.*), 266 F.3d 388 (5th Cir. 2001) and its progeny).) Under the law of this Circuit, the Bankruptcy Court does not have bankruptcy jurisdiction with respect to the non-core breach of fiduciary duty claim against Mr. Okada, and the reference thus must be immediately withdrawn.

12.     The Fifth Circuit in *Craig's Stores* clearly held that there is a narrowing of the Bankruptcy Court's post-confirmation jurisdiction and rejected the argument that jurisdiction continues to exist if a dispute is "related to" the bankruptcy in satisfaction of 28 U.S.C. § 1334(b). *Craig's Stores*, 266 F.3d at 390. Yet, the Litigation Trustee's arguments seek to avoid the analysis required by the Fifth Circuit in favor of sweeping generalizations that would,

at best, return the analysis to the familiar questions of effect on the estate that are asked when evaluating the broader "related to" statutory jurisdiction.

13.     The Litigation Trustee's argument that jurisdiction exists in all circumstances where "a trustee of a litigation trust created under a confirmed plan of reorganization for the benefit of creditors pursues post-confirmation causes of action predicated on pre-confirmation conduct for creditors' benefit" is misleading.  (Opp. ¶ 14.)  There is no such rule, and in fact each of the cases cited in the Opposition for this proposition merely applied *Craig's Stores* and its framework, and determined that the bankruptcy court had jurisdiction.[5]  Likewise, the Litigation Trustee's assertion that the Bankruptcy Court has jurisdiction because "claims commenced by a litigation trustee for creditors' benefit . . . relate to the 'implementation or execution of the Plan'" fails without much more.  (Opp. ¶ 15.)  In fact, that reasoning was expressly rejected by the Fifth Circuit in *Craig's Stores* itself.  *Craig's Stores*, 266 F.3d at 391 (explaining that "while Craig's insists that the status of its contract with the Bank will affect its distribution to creditors under the plan, the same could be said of any other post-confirmation contractual relations").

14.     The Fifth Circuit's standard for post-confirmation jurisdiction cannot be satisfied as to the non-core breach of fiduciary duty claim against Mr. Okada.  Specifically, the Opposition fails to provide *any* basis for the Court to conclude the second *Craig's Store* factor— "antagonism or a claim pending between the parties"—can be satisfied as to the Okada Parties. After the Litigation Trustee attempts to satisfy this factor based solely on the fact that the alleged claims accrued prepetition, which, without more, is insufficient,[6] he goes on to point to various

---

[5]     The only exception was *In re Houston Reg'l Sports Network, L.P.*, 547 B.R. 717 (Bankr. S.D. Tex. 2016), where the bankruptcy court incorrectly applied the "close nexus" test.

[6]     *See, e.g.*, *McVey* v. *Johnson (In re SBMC Healthcare, LLC)*, 519 B.R. 172, 187 (Bankr. S.D. Tex. 2014) (explaining that because the lawsuit was filed after the confirmation date, "the facts indicate that antagonism between the parties arose *after* the Plan was confirmed" and "[t]his factor weighs against jurisdiction."), *aff'd*, 2017 WL 2062992 (S.D. Tex. May 11, 2017); *Segner* v. *Admiral Ins. Co. (In re Palmaz Scientific, Inc.)*, 2018

events occurring prior to the filing of this Adversary Proceeding that supposedly evidence antagonism. (*See* Opp. ¶ 17.) But the Litigation Trustee fails to identify any such events, disputes or litigation involving the Okada Parties. The fact that there were disputes involving other parties with respect to issues beyond the scope of this Adversary Proceeding is irrelevant when considering whether there is post-confirmation jurisdiction for the fiduciary duty claim against Mr. Okada; the Defendants cannot be conflated or grouped together. That claims against the Okada Parties were preserved alongside many others or that they were named in the Rule 2004 Motion nearly six months after the Plan was confirmed do not create antagonism between the HCMLP estate and the Okada Parties. The fact is that the Okada Parties did not appear or participate in the HCMLP bankruptcy proceedings until August 2021—long after the Plan was confirmed by the Bankruptcy Court. (Memo. ¶ 6.)

15.     Similarly, the Litigation Trustee cannot point to any specific "facts or law deriving from the reorganization or the plan" that are necessary to the non-core breach of fiduciary duty claim asserted against Mr. Okada in order to satisfy the third necessary factor. *See Craig's Stores*, 266 F.3d at 391. None of the Okada Parties are named in any of the Counts the Litigation Trustee relies on in his attempt to satisfy this factor. (Opp. ¶ 18, n.7 (citing Counts V-VIII).) The *Craig's Stores* factors thus weigh against the Bankruptcy Court having post-confirmation jurisdiction over the non-core breach of fiduciary duty claim asserted against Mr. Okada and the reference must be immediately withdrawn.[7]

---

WL 661409, at *7 (Bankr. W.D. Tex. Jan. 31, 2018) (finding the second *Craig's Stores* factor to favor no jurisdiction despite the case "deal[ing] with pre-confirmation activities and a post-confirmation dispute").

[7]     The Litigation Trustee also asserts that "a bankruptcy court has jurisdiction to interpret and enforce its own prior orders." (Opp. ¶ 19.) That statement is of course true, but is irrelevant here. The Litigation Trustee is not asking for an interpretation of this Bankruptcy Court's prior orders but rather to exercise jurisdiction over a new adversary proceeding that seeks to recover damages.

4872-8155-4450 v.3

## III.   IMMEDIATE PERMISSIVE WITHDRAWAL OF THE REFERENCE IS APPROPRIATE

16.    Contrary to the Litigation Trustee's assertions (Opp. ¶¶ 35-46), the *Holland* factors weigh in favor of *immediately* withdrawing the reference of the Claims to the Bankruptcy Court.   The timing of withdrawal of the reference must be determined on a case-specific assessment of the circumstances presented.   Despite any perceived "usual protocol" (Opp. ¶ 35), bankruptcy courts in this Circuit do exercise their discretion to recommend immediate withdrawal of the reference.   *See, e.g.*, *Byman* v. *Horwood Marcus & Berk Chartered (In re Align Strategic Partners LLC)*, 2019 WL 2527221, at *5 (Bankr. S.D. Tex. Mar. 5, 2019) (recommending that the reference be immediately withdrawn based on defendant's right to a jury trial); *Compton* v. *GL Noble Denton (In re MPF Holding US LLC)*, 2013 WL 12146958, at *3 (Bankr. S.D. Tex. Apr. 26, 2013) (recommending immediate withdrawal to "allow the District Court to gain familiarity with the facts of this Adversary Proceeding before trial").

17.    With respect to the first two *Holland* factors, the Litigation Trustee does not dispute that the Adversary Proceeding involves both core and non-core claims or that Defendants have the right to a jury trial with respect to at least some claims.   (Opp. ¶ 45.)   Both factors therefore weigh in favor of immediate withdrawal of the reference.   (Memo. ¶¶ 15, 22-25.)   And while the Litigation Trustee dedicates four pages to describing the purported "misconduct" of "Defendants" that is supposedly indicative of forum shopping, there isn't a single allegation specific to or involving any of the Okada Parties that could warrant finding such factor supports denying the Motion.   (Opp. ¶¶ 37-40.)

18.    The Litigation Trustee's argument that "[t]he goal of achieving uniformity in bankruptcy administration also weighs against withdrawal" because the court "has overseen the Debtor's bankruptcy case," along with the bankruptcy case of another related entity, fares no

better. (Opp. ¶ 41.) While the Bankruptcy Court of course did preside over the underlying bankruptcy proceedings, if that were all that is required to "further uniformity," no reference would ever be permissively withdrawn. Nor is it relevant to this Motion that three of the other defendants in the Adversary Proceeding are defendants in another adversary proceeding before the Bankruptcy Court or that the Court has "familiarity with the parties and issues." (Opp. ¶¶ 41, 43.) The facts relevant to evaluating the Okada Parties' Motion are that they had no prior involvement in the underlying bankruptcy case or other adversary proceedings, and have timely moved to withdraw the reference shortly after the Adversary Proceeding was filed and before any substantive issues have been considered or decided.[8]

19. The Litigation Trustee is also wrong that the "expedition of the bankruptcy process" factor is not neutral. (Opp. ¶ 44.) Even the case cited by the Litigation Trustee in support of its argument determined this factor to be neutral "because the underlying bankruptcy [had] closed and withdrawal of the reference [would] not expedite the process." *See Lopez* v. *Portfolio Recovery Assocs., LLC (In re Lopez)*, 2017 WL 3382099, at *12 (Bankr. S.D. Tex. Mar. 20, 2017). The other cases cited by the Litigation Trustee are inapposite.

20. Furthermore, immediate withdrawal of the reference would promote judicial efficiency. Withdrawal would eliminate any questions about subject matter jurisdiction because the District Court could preside over all causes of action asserted in the Complaint on the basis

---

[8] The Litigation Trustee's cited cases offer no support for his manufactured standard. In *In re Royce Homes, LP*, the court noted that it had "already spent substantial time reviewing pleadings and conducting research, and [had] already held six hearings" *in that adversary proceeding*. 578 B.R. 748, 759-60 (Bankr. S.D. Tex. 2017). The issue in *In re Hargis* was the reasonableness of bankruptcy related fees and expenses—an issue inextricably tied to the facts of the underlying bankruptcy cases. 146 B.R. 173 (N.D. Tex. 1992) This is not the case here. The court in *In re Parish* noted that "[i]f the bankruptcy court maintains an 'intimate familiarity' with the case and has dedicated a large amount of time and resources *to the adversary proceeding*, this factor 'weighs heavily in favor of denying' the withdrawal of the reference. Conversely, this factor favors withdrawal when a motion to withdraw the reference is filed shortly after a complaint . . . ." 2021 WL 3683909, at *5 (Bankr. S.D. Tex. Feb. 19, 2021).

of federal diversity jurisdiction. Rather than promote efficiency, leaving the Adversary Proceeding in the Bankruptcy Court for pretrial purposes "would add an unnecessary, costly, and duplicative layer to the proceedings as any ruling made by the Bankruptcy Court on the non-core [] claim is subject to de novo review by the District Court." *Yaquinto* v. *Mid-Continent Cas. Co.* (*In re Bella Vita Custom Homes*), 2018 WL 2966838, at *2 (N.D. Tex. May 29, 2018) (finding that judicial economy "weigh[ed] heavily in favor of an immediate withdrawal of the reference"), *report and recommendation adopted*, 2018 WL 2926149 (N.D. Tex. June 8, 2018); *see also Mobley* v. *Quality Lease & Rental Holdings, LLC (In re Quality Lease & Rental Holdings, LLC)*, 2016 WL 416961, at *6 (Bankr. S.D. Tex. Feb. 1, 2016) (determining "immediate withdrawal of the entire adversary proceeding is most efficient course of action" where only the district court had jurisdiction to adjudicate all claims), *report and recommendation adopted*, 2016 WL 11644051 (S.D. Tex. Feb. 29, 2016).

Finally, there is no basis to deny the Motion as the Litigation Trustee requests. The Litigation Trustee concedes that at least some Defendants have jury trial rights with respect to at least some claims but nonetheless asserts that "the Court should continue to preside over all matters until such time, if any, that the case is trial-ready and Defendants are entitled to a jury trial on certain of the claims." (Opp. ¶¶ 35, 45 n.40.) Therefore, at minimum, the Motion must be granted with pre-trial matters referred to the Bankruptcy Court in accordance with Local Rule 5011-1(a)(8)(C). *See Levine* v. *Blake (In re Blake)*, 400 B.R. 200, 206 (S.D. Tex. 2008), (holding that "[w]hen a defendant has a 7th Amendment right to a jury trial and does not consent to a jury trial, no further 'cause' for withdrawal of the reference must be shown").

## **CONCLUSION**

21. For the foregoing reasons and those set forth in the Memorandum, the Okada Parties respectfully request that the District Court immediately withdraw the reference.

Dated: March 14, 2022
      New York, New York

                                  */s/ Brian D. Glueckstein*

Brian D. Glueckstein (admitted *pro hac vice*)
  New York Bar No. 4227005
  gluecksteinb@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Cortney C. Thomas
  Texas Bar No. 24075153
  cort@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile: (214) 327-5001

*Counsel for Defendants Mark Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #1 and Lawrence Tonomura as Trustee, and The Mark and Pamela Okada Family Trust – Exempt Trust #2 and Lawrence Tonomura as Trustee*

4872-8155-4450 v.3