Brian D. Glueckstein (admitted *pro hac vice*)
 New York Bar No. 4227005
 gluecksteinb@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Cortney C. Thomas
 Texas Bar No. 24075153
 cort@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone:  (214) 327-5000
Facsimile:  (214) 327-5001

*Counsel for Mark K. Okada and*
*Affiliated Parties*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

-------------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | : | Case No. 19-34054-sgj11 |
| | : | |
| Reorganized Debtor. | : | |

-------------------------------------------------------------------- X

| | | |
|---|---|---|
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 21-03076-sgj |
| | : | |
| v. | : | |
| | : | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; | : | |

---

[1]  The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

STRAND ADVISORS, INC.; NEXPOINT        :
ADVISORS, L.P.; HIGHLAND CAPITAL       :
MANAGEMENT FUND ADVISORS, L.P.;     :
DUGABOY INVESTMENT TRUST AND NANCY  :
DONDERO, AS TRUSTEE OF DUGABOY      :
INVESTMENT TRUST; GET GOOD TRUST AND  :
GRANT JAMES SCOTT III, AS TRUSTEE OF GET :
GOOD TRUST; HUNTER MOUNTAIN        :
INVESTMENT TRUST; MARK & PAMELA      :
OKADA FAMILY TRUST – EXEMPT TRUST #1   :
AND LAWRENCE TONOMURA AS TRUSTEE OF  :
MARK & PAMELA OKADA FAMILY TRUST –   :
EXEMPT TRUST #1; MARK & PAMELA OKADA  :
FAMILY TRUST–EXEMPT TRUST#2 AND      :
LAWRENCE TONOMURA IN HIS CAPACITY AS  :
TRUSTEE OF MARK & PAMELA OKADA     :
FAMILY TRUST–EXEMPT TRUST #2; CLO     :
HOLDCO, LTD.; CHARITABLE DAF HOLDCO,  :
LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND :
DALLAS FOUNDATION; RAND PE FUND I, LP,  :
SERIES 1; MASSAND CAPITAL, LLC; MASSAND :
CAPITAL, INC.; SAS ASSET RECOVERY, LTD.;  :
AND CPCM, LLC,                           :
                                          :
                Defendants.              :
                                          :
-----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF THE
## OKADA PARTIES' MOTION TO DISMISS

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT PURSUANT TO RULE 7012 ...........................................................2

BACKGROUND ......................................................................................................3

    A.    Mr. Okada's Role at HCMLP ....................................................................3

    B.    The Limited Partnership Agreement ..........................................................3

    C.    HCMLP Bankruptcy Proceedings ..............................................................4

    D.    The Litigation Trustee's Claims Against the Okada Parties .....................5

LEGAL STANDARD ................................................................................................7

ARGUMENT ............................................................................................................8

I.     THE BREACH OF FIDUCIARY DUTY CLAIM AGAINST MR. OKADA MUST BE DISMISSED ..............................................................................................8

    A.    Mr. Okada Owed No Fiduciary Duties with Regard to the HCMLP Equity Distributions ..............................................................................................9

         1.    The Litigation Trustee's Meager Allegations Cannot Support His Claim That Mr. Okada Had or Breached Any Relevant Duty. ...................9

         2.    The Highland LPA Precludes the Litigation Trustee's Fiduciary Duty Claim. .....................................................................................................11

         3.    The Litigation Trustee's Own Allegations Confirm That Mr. Okada Did Not Have a Relevant Duty. .................................................................12

    B.    The Litigation Trustee Fails To Plead Insolvency. ..................................13

         1.    2010 – 2012 ..............................................................................................14

         2.    2013 ..........................................................................................................15

         3.    2015 – 2019 ..............................................................................................16

    C.    The Trustee Cannot Pursue a Breach of Fiduciary Duty Claim Based on Equity Distributions Beyond by the Applicable Statute of Limitations. ...............16

II.     THE LITIGATION TRUSTEE CANNOT AVOID MOST OF THE
        DISTRIBUTIONS MADE TO THE OKADA PARTIES AS A MATTER OF LAW .....17

        A.     The Litigation Trustee's Fraudulent Transfer Claims Are Restricted by the
               Applicable Statutes of Limitations...........................................................................18

        B.     The IRS "Golden Creditor" Statute is Not Available. ..........................................19

               1.     The Litigation Trustee Cannot Benefit From the IRS's Sovereign
                      Exemption from State Statutes of Limitation. ...........................................19

               2.     The IRS Has Not Asserted Any Claims That Could Extend the Statute
                      of Limitations...........................................................................................22

III.    THE BANKRUPTCY COURT LACKS JURISDICTION TO ADJUDICATE THE
        NON-CORE BREACH OF FIDUCIARY DUTY CLAIM AGAINST MR. OKADA.....24

IV.     COUNT XXXV OF THE COMPLAINT SHOULD BE DISMISSED AS MOOT.........25

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Alaska Dept. of Envtl. Conservation* v. *EPA*,
540 U.S. 461 (2004)............................................................................................20

*In re AMC Investors, LLC*,
2022 WL 248133 (Bankr. D. Del. Jan. 27, 2022)..................................................17

*ASDI, Inc.* v. *Beard Res., Inc.*,
11 A.3d 749 (Del. 2010) .........................................................................................9

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)................................................................................................7

*Matter of ATP Oil & Gas Corp.*,
711 F. App'x 216 (5th Cir. 2017) ...................................................................13, 14

*Bank of La.* v. *Craig's Stores of Tex., Inc.* (*In re Craig's Stores of Tex., Inc.*),
266 F.3d 388 (5th Cir. 2001) ...........................................................................24, 25

*Barnett* v. *Am. Gen. Life Ins. Co.*,
2010 WL 11566353 (W.D. Tex. Oct. 7, 2010).......................................................8

*Beard Research, Inc.* v. *Kates*,
8 A.3d 573 (Del. Ch. 2010)....................................................................................9

*Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007)................................................................................................7

*Berger* v. *Transcon. Realty Invs., Inc.*,
2020 WL 1528994 (N.D. Tex. Mar. 31, 2020)......................................................9

*BFP* v. *Resolution Trust Corp.*,
511 U.S. 531 (1994)..............................................................................................21

*Biliouris* v. *Patman*,
2017 WL 1078526 (N.D. Tex. Mar. 21, 2017)....................................................19

*Blackburn* v. *City of Marshall*,
42 F.3d 925 (5th Cir. 1995) ....................................................................................7

*Brickell Pt'rs* v. *Wise*,
794 A.2d 1 (Del. Ch. 2001)..................................................................................11

*Bridgeport Holdings, Inc.* v. *Boyer* (*In re Bridgeport Holdings, Inc.*),
    388 B.R. 548 (Bankr. D. Del. 2008) ...................................................................10

*Burback* v. *Oblon*,
    2021 WL 4477607 (E.D. Tex. Sept. 30, 2021) ........................................................10

*Colvin* v. *Amegy Mortg. Co.*, *L.L.C.*,
    507 B.R. 915 (W.D. Tex. 2014).......................................................................... 24-25

*In re Crescent Res., LLC*,
    2012 WL 195528 (Bankr. W.D. Tex. Jan. 23, 2012)..................................13, 14, 15

*Curtis* v. *Cerner Corp.*,
    621 B.R. 141 (S.D. Tex. 2020) .............................................................................18

*In re CVAH, Inc.*,
    570 B.R. 816 (Bankr. D. Idaho 2017)....................................................................21

*Czyzewski* v. *Jevic Holding Corp.*,
    137 S. Ct. 973 (2017).......................................................................................19, 21

*Dean* v. *Reticulum Mgt., LLC*,
    620 B.R. 271 (Bankr. N.D. Tex. 2020)..................................................................23

*Dorsey* v. *Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) ..................................................................................3

*In re Dual D Health Care Operations, Inc.*,
    2021 WL 3083344 (Bankr. N.D. Tex. July 21, 2021) ......................................18, 22

*Eddystone Rail Co., LLC* v. *Bank of Am., N.A.*,
    2021 WL 4443371 (S.D.N.Y. Sept. 28, 2021).......................................................14

*Epic Sys. Corp.* v. *Lewis*,
    138 S. Ct. 1612 (2018)..........................................................................................21

*In re F-Squared Inv. Mgmt., LLC*,
    2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019) ................................................14

*Feeley* v. *NHAOCG, LLC*,
    62 A.3d 649 (Del. Ch. 2012)................................................................................11

*In re Giant Gray, Inc.*,
    629 B.R. 814 (Bankr. S.D. Tex. 2020) .................................................................18

*Guffy* v. *Brown* (*In re Brown Med. Ctr., Inc.*),
    578 B.R. 590 (Bankr. S.D. Tex. 2016) .................................................................24

*Heinze* v. *Tesco Corp.*,
971 F.3d 475 (5th Cir. 2020) ...............................................................7

*In re Herring*,
2015 WL 7753540 (Bankr. S.D. Tex. Dec. 1, 2015) ...............................................23

*Johnson* v. *E. Baton Rouge Fed'n of Tchrs.*,
706 F. App'x 169 (5th Cir. 2017) ...............................................................7

*Kaye* v. *Dupree* (*In re Avado Brands, Inc.*),
358 B.R. 868 (Bankr. N.D. Tex. 2006) ...............................................................17

*Kaye* v. *Lone Star Fund V (U.S.), L.P.*,
453 B.R. 645 (N.D. Tex. 2011) ...............................................................9, 12-13

*Lazard Debt Recovery GP, LLC.* v. *Weinstock*,
864 A.2d 955 (Del. Ch. 2004) ...............................................................10

*Luria* v. *Thunderflower, LLC* (*In re Taylor, Bean & Whitaker Mortg. Corp.*),
2018 WL 6721987 (Bankr. M.D. Fla. Sept. 28, 2018) ...............................................................23

*Lycoming Engines* v. *Superior Air Parts*,
*Inc.*, 2014 WL 1976757 (N.D. Tex. May 15, 2014) ...............................................................9

*Miller* v. *Fallas* (*In re J&M Sales Inc.*),
2022 WL 532721 (Bankr. D. Del. Feb. 22, 2022) ...............................................................22

*Mirant Corp.* v. *The S. Co.*,
337 B.R. 107 (N.D. Tex. 2006) ...............................................................24

*Norris* v. *Hearst Tr.*,
500 F.3d 454 (5th Cir. 2007) ...............................................................23

*In re Northstar Offshore Grp., LLC*,
616 B.R. 695 (Bankr. S.D. Tex. 2020) ...............................................................15

*PilePro, LLC* v. *Chang*,
152 F. Supp. 3d 659 (W.D. Tex. 2016) ...............................................................9

*PilePro, L.L.C.* v. *Heindl*,
676 F. App'x 341 (5th Cir. 2017) ...............................................................9

*Randall D. Wolcott, M.D., P.A.* v. *Sebelius*,
635 F.3d 757 (5th Cir. 2011) ...............................................................3, 15

*Reed* v. *Linehan* (*In re Soporex, Inc.*),
463 B.R. 344 (Bankr. N.D. Tex. 2011) ...............................................................7, 13

*Remington* v. *United States*,
    210 F.3d 281 (5th Cir. 2000) ..........................................................................23

*In re RFC & ResCap Liquidating Tr. Litig.*,
    2017 WL 1483374 (D. Minn. Apr. 25, 2017) ......................................................15

*Ryan* v. *Buckeye Partners, L.P.*,
    2022 WL 389827 (Del. Ch. Feb. 9, 2022) ...........................................................11

*SEC* v. *Calvo*,
    378 F.3d 1211 (11th Cir. 2004) .........................................................................20

*Segner* v. *Admiral Ins. Co. (In re Palmaz Scientific, Inc.)*,
    2018 WL 661409 (Bankr. W.D. Tex. Jan. 31, 2018)...........................................25

*Slyce Acquisition Inc.* v. *Syte - Visual Conception Ltd.*,
    422 F. Supp. 3d 1191 (W.D. Tex. 2019)............................................................12

*Smith* v. *Allstate Ins. Co.*,
    2016 WL 11201008 (N.D. Tex. Jan. 12, 2016) ...................................................17

*In re Specialty Select Care Ctr. of San Antonio, LLC*,
    2021 WL 3083522 (Bankr. N.D. Tex. July 21, 2021) .........................................18

*Stanziale* v. *Heico Holdings, Inc. (In re Conex Holdings, LLC)*,
    514 B.R. 405 (D. Del. 2014) .............................................................................11

*Triton Const. Co.* v. *E. Shore Elec. Servs., Inc.*,
    2009 WL 1387115 (Del. Ch. May 18, 2009)......................................................10

*United Healthcare Servs., Inc.* v. *Next Health, LLC*,
    2021 WL 764035 (N.D. Tex. Feb. 26, 2021).......................................................16

*United States* v. *Evans*,
    340 F. App'x 990 (5th Cir. 2009) ......................................................................20

*United States* v. *Lamirand*,
    669 F.3d 1091 (10th Cir. 2012) .........................................................................20

*U.S. Rest. Props. Operating L.P.* v. *Burger King Corp.*,
    2003 WL 21448389 (N.D. Tex. June 16, 2003) ..................................................17

*In re Vaughan Co.*,
    498 B.R. 297 (Bankr. D.N.M. 2013) ............................................................20, 21

*Weisbuch* v. *Cty. of L.A.*,
    119 F.3d 778 (9th Cir. 1997) ............................................................................12

*Whitman* v. *Am. Trucking Associations*,
  531 U.S. 457 (2001)..............................................................................................21

*Winslow* v. *Paxton*,
  2017 WL 283281 (N.D. Tex. Jan. 20, 2017) ..........................................................8

*In re Zagaroli*,
  2020 WL 6495156 (Bankr. W.D.N.C. Nov. 3, 2020)............................................21

### STATUTES

11 U.S.C. § 349...........................................................................................................21

11 U.S.C. § 544 ..................................................................................................... *passim*

11 U.S.C. § 548 ................................................................................................17, 18, 21

26 U.S.C. § 6502 .................................................................................................. *passim*

10 Del. Code § 8106 ...................................................................................................16

Texas Uniform Fraudulent Transfer Act,
  Tex. Bus. & Com. Code § 24.001 *et seq.*.......................................................... *passim*

Tex. Bus. & Com. Code § 24.005....................................................................................24

Tex. Bus. & Com. Code § 24.010.............................................................................18, 19

Tex. Civ. Prac. & Rem. Code § 16.004 .........................................................................17

### RULES

Fed. R. Civ. P. 12(b)(1)...........................................................................................1, 8

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 7

Fed. R. Bankr. P. 2004..........................................................................................5, 25

Fed. R. Bankr. P. 7012(b) ...............................................................................1, 2, 3, 7

### OTHER AUTHORITY

Anontin Scalia, *Common–Law Courts in a Civil Law System: The Role of United
  States Federal Courts in Interpreting the Constitution and Laws,* in A Matter
  of Interpretation (Amy Gutmann ed., 1997) ..........................................................21

Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, and Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Mark K. Okada, The Mark & Pamela Okada Family Trust – Exempt Trust #1 ("MPO Trust 1") and Lawrence Tonomura in his Capacity as Trustee, and The Mark & Pamela Okada Family Trust – Exempt Trust #2 ("MPO Trust 2") and Lawrence Tonomura in his Capacity as Trustee (collectively, the "Okada Parties"), respectfully submit this memorandum in support of their motion (the "Motion") to dismiss the causes of action as asserted against one or more of the Okada Parties in the Complaint: Counts I, II, XIV, and XXXV.[2] In support of their Motion, the Okada Parties hereby state as follows:

## PRELIMINARY STATEMENT

1.      The Litigation Trustee filed an expansive Complaint that asserts 36 counts against 23 defendants. However, despite two years to investigate his claims and unfettered access to HCMLP's files, the Litigation Trustee has not alleged a single act of wrongdoing by Mr. Okada or either of his family's trusts. Only three counts are asserted against any of the Okada Parties: claims alleging each of the Okada Parties received purported fraudulent transfers from HCMLP (Counts I and II, Compl. ¶¶ 168-80), and, in a single sentence, that Mr. Okada breached an unspecified fiduciary duty in connection with those distributions (Count XIV, Compl. ¶ 263). Each claim is deficient and must be dismissed.

2.      *First*, the Litigation Trustee's threadbare assertion that Mr. Okada breached a fiduciary duty in connection with the receipt of partnership distributions that he received over the course of a decade from 2010 to 2019 is unsupported by any factual allegation, and cannot meet

---

[2] Count XXXV for disallowance or subordination of claims under Sections 502 and 510 of the Bankruptcy Code is moot following the voluntary withdrawal of those claims by the Okada Parties, with prejudice, which was approved by order of the Court entered on January 7, 2022 [Bankr. Dkt. 3163]. *See* section IV, *infra*.

the requisite pleading standard.  Generalized group pleading cannot rescue the Complaint because it is black-letter law that each claim must be evaluated based on the allegations asserted against the Okada Parties, not other defendants.  Moreover, the Litigation Trustee's breach of fiduciary duty claim is precluded by the HCMLP partnership agreement, and is contrary to the Litigation Trustee's own allegations.  Furthermore, despite basing his fiduciary duty claim on the assertion that HCMLP purportedly was insolvent at the time of the distributions, the Litigation Trustee fails to plead any facts regarding HCMLP's alleged insolvency.  Finally, under any circumstances, a breach of fiduciary duty claim based on equity distributions occurring beyond the applicable statute of limitations is time barred.

3.      *Second*, nearly all of the alleged fraudulent transfers took place before the expiration of the federal statute of limitations on October 16, 2017, and those claims are thus fatally flawed.  Even if the Litigation Trustee could utilize the extended limitations period under the Texas Uniform Fraudulent Transfer Act ("TUFTA")—and he cannot because he did not plead a triggering creditor with a claim at the time of each alleged transfer—he could only seek to pursue avoidance of transfers occurring on or after October 16, 2015.  The Litigation Trustee cannot utilize the IRS as the "golden creditor" and invoke 26 U.S.C. § 6502 to extend the statute of limitations because the IRS did not assess any earlier taxes and he has failed to plead otherwise.

4.      *Third*, Count XIV, the breach of fiduciary duty claim against Mr. Okada, must independently be dismissed because the Bankruptcy Court lacks post-confirmation subject matter jurisdiction over that non-core claim.

## STATEMENT PURSUANT TO RULE 7012

5.      The Okada Parties respectfully do not consent to the entry of a final order or judgment by the Bankruptcy Court in this adversary proceeding.  Fed. R. Bankr. P. 7012(b).

## BACKGROUND

### A.   Mr. Okada's Role at HCMLP

6.    Mr. Okada was a co-founder of Highland Capital Management, L.P. ("HCMLP"), an alternative investment management company established in 1993. (Compl. ¶¶ 2, 38.) Mr. Okada served as HCMLP's Chief Investment Officer ("CIO") for more than 25 years. (*Id.* ¶ 13.) As CIO, Mr. Okada oversaw a wide range of investments managed by HCMLP, including investments in leveraged loans, real estate, structured credit, public equities, and other investments. Mr. Okada was a pioneer in alternative credit investing and helped to build HCMLP into a leading investment firm with responsibility for managing billions of dollars in assets. Mr. Okada announced his retirement from HCMLP in September 2019, prior to the commencement of HCMLP's bankruptcy proceedings. (*Id.*)

7.    Mr. Okada and his family trusts MPO Trust 1 and MPO Trust 2 held interests in HCMLP as limited partners. (Compl. ¶ 133.) Mr. Okada's responsibilities did not include either authority or responsibility for declaring distributions to HCMLP's equity holders, which the Litigation Trustee alleges belonged to Mr. Dondero through Strand. (*Id.* ¶¶ 177, 178, 221.)

### B.   The Limited Partnership Agreement

8.    HCMLP was governed prior to the bankruptcy by the Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "LP Agreement"). The LP Agreement expressly disclaimed liability for limited partners, providing that "[l]imited [p]artners" such as the Okada Parties "have no liability under this [LP] Agreement." (App'x 27, Glueckstein Decl. Ex. 1 ("LPA"), § 4.2(a)-(b).)[3] Responsibility for

---

[3] References to "Glueckstein Decl." are to the Declaration of Brian D. Glueckstein, filed contemporaneously herewith. The Court may consider the LP Agreement because it is a "document[] incorporated into the complaint by reference." *Randall D. Wolcott, M.D., P.A.* v. *Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey* v. *Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)); *see* Compl. ¶ 387.

managing the partnership belonged at all times solely to the general partner. (App'x 23-24, LPA § 4.1(a).) "During all periods relevant to the allegations set forth [in the Complaint], Strand [Advisors, Inc. ("Strand")] was the general partner of HCMLP." (Compl. ¶¶ 14, 212.) The Litigation Trustee alleges that "Strand was dominated and controlled by its sole owner, Dondero." (*Id.* ¶ 191.)

9.      Consistent with the general partner's responsibility to manage the conduct of the partnership, responsibility for making equity distributions belonged to the general partner, which could "make such pro rata or non-pro rata distributions as it may determine in its sole and unfettered discretion." (App'x 20, LPA § 3.9(a).) Under the LPA, duties of officers extended only to those that the general partner had delegated to them. (App'x 26-27, LPA § 4.1(k).) Liability of the general partner and its officers was limited to "gross negligence or willful or wanton misconduct." (App'x 26, LPA § 4.1(i)(i).)

**C.      HCMLP Bankruptcy Proceedings**

10.      On October 16, 2019 (the "Petition Date"), HCMLP filed a voluntary petition pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On November 24, 2020, HCMLP filed its Fifth Amended Plan of Reorganization [Bankr. Dkt. 1472, *as modified by* Bankr. Dkt. 1808] (the "Plan"), which was confirmed by the Bankruptcy Court following a contested hearing. On February 22, 2021, the Bankruptcy Court entered its confirmation order [Bankr. Dkt. 1943] (the "Confirmation Order"). The Plan went effective and HCMLP emerged from bankruptcy on August 11, 2021 [Bankr. Dkt. 2700] (the "Plan Effective Date"). Pursuant to the Plan, certain potential litigation claims previously held by HCMLP were irrevocably transferred to a newly created Litigation Sub-Trust following creation of the Claimant Trust. (*See* Conf. Order ¶ M; Plan Art. IV.B.)

11.      The Okada Parties did not participate in the chapter 11 proceedings prior to the Plan Effective Date.  Counsel for the Okada Parties first entered an appearance in HCMLP's chapter 11 case on August 16, 2021 [*see* Bankr. Dkt. 2719, 2720], in response to a July 29, 2021 motion filed by the official committee of unsecured creditors for examination pursuant to rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") [Bankr. Dkt. 2620].[4]  The Bankruptcy Rule 2004 motion, which was filed more than five months after the confirmation of the Plan and less than two weeks before it went effective, was the first attempt to seek documents and information from the Okada Parties.  (*See* Bankr. Dkt. 2620 ¶¶ 4-5.)

### D.      The Litigation Trustee's Claims Against the Okada Parties

12.      On October 15, 2021, the Litigation Trustee filed the Complaint and Objection to Claims (the "Complaint") commencing this adversary proceeding.  [Adv. Pro. Dkt. 1.]  Despite the expansive scope of the Litigation Trustee's allegations, the Complaint includes only three counts remaining against the Okada Parties: claims alleging they were recipients of certain equity distributions made to HCMLP's limited partners that were the result of constructive and intentional fraudulent transfers (Counts I and II), and a third claim summarily alleging that Mr. Okada breached an unspecified fiduciary duty in connection with those distributions (Count XIV).

13.      The Litigation Trustee alleges that following "years of successful operations," HCMLP's "business began to falter" as a result of the global recession in 2008.  (Compl. ¶¶ 4, 42.)  Funds managed by HCMLP allegedly suffered losses in connection with the financial crisis.  (*Id.* ¶ 42.)  As was true of many financial services firms at the time, HCMLP also allegedly faced

---

[4]  On April 8, 2020, prior to the bar date, each of the Okada Parties filed an unliquidated protective proof of claim in the bankruptcy proceedings related to the indemnification of certain potential tax liabilities.  With the consent of the Litigation Trustee, the Bankruptcy Court entered an order permitting the Okada Parties to withdraw those proofs of claim, with prejudice.  [*See* Bankr. Dkt. 3163.]

the possibility of litigation claims stemming from the investments of funds managed by HCMLP. (*Id.* ¶ 4.)

14.     The Litigation Trustee alleges that, to attempt to insulate HCMLP from potential litigation liability, Mr. Dondero undertook to transfer business and assets away from HCMLP, including into new entities that the Litigation Trustee denominates "lifeboats." (*See e.g.*, Compl. ¶¶ 5, 64.)   The Litigation Trustee repeatedly emphasizes that the challenged activities were directed by Mr. Dondero, who allegedly "exercised complete control over HCMLP from its founding until January 9, 2020." (*Id.* ¶ 40; *see also id.* ¶¶ 104, 107, 178, 191, 221, 262, 375.) Mr. Okada is not alleged to have engaged in any misconduct related to the challenged transfers.

15.     The only three counts asserted against Mr. Okada involve equity distributions that HCMLP made between 2010 and 2019 to its limited partners, including the Okada Parties. (Compl. ¶¶ 131, 133-55, 168-80, 259-65.)  The Litigation Trustee does not allege that Mr. Okada played any role in planning or executing the distributions (*id.* ¶¶ 168-80), and instead alleges that Mr. Dondero caused the transfers (*id.* ¶ 178).  The Litigation Trustee alleges that Mr. Okada "acquiesced to and profited from" the challenged transfers (*id.* ¶ 177), and that he "knew" that HCMLP purportedly was "balance sheet insolvent (or would be rendered balance sheet insolvent), inadequately capitalized, and/or unable to pay its debts as they came due" (*id.* ¶ 172).

16.     Similarly, with respect to the fiduciary duty claim against Mr. Okada, the Litigation Trustee alleges only that Mr. Okada "knew or willfully blinded himself to the fact that the HCMLP Distributions . . . were made at a time that HCMLP was insolvent and would not be able to satisfy its obligations to its present and future creditors." (*Id.* ¶ 263.)

17.     The Litigation Trustee's claims against the Okada Parties rely on an assertion that HCMLP was insolvent at every time an equity distribution was made to the limited partners over

a ten year period. (*Id.* ¶¶ 170, 178(e), 263.) But the Litigation Trustee does not provide specific financial information in support of his insolvency allegations. (*Id.* ¶¶ 100-02.) To the contrary, the Litigation Trustee seems to concede that at least between 2013 and 2015 HCMLP was in fact solvent. (*Id.* ¶ 101.)

## LEGAL STANDARD

18.     To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to these proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 8(a). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[A] complaint must allege 'more than labels and conclusions,' as 'a formulaic recitation of the elements of a cause of action will not do.'" *Heinze* v. *Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555); *see also Reed* v. *Linehan* (*In re Soporex, Inc.*), 463 B.R. 344, 367 (Bankr. N.D. Tex. 2011) ("[A] court is not to strain to find inferences favorable to the plaintiff and is not to accept [as true] conclusory allegations, unwarranted deductions, or legal conclusions." (internal quotation omitted)).

19.     The Supreme Court has established a two-step approach for evaluating the sufficiency of a complaint. First, the Court "identifies any allegations in the complaint that are conclusory, as these will not be afforded a presumption of truth." *Johnson* v. *E. Baton Rouge Fed'n of Tchrs.*, 706 F. App'x 169, 170 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678). Second, the Court "analyze[s] the remaining factual allegations to determine if, when presumed true, they add up to a violation of the law." *Id.* "[D]ismissal is appropriate where the complaint is devoid

of facts to establish any one of the required elements of the claim asserted." *Barnett* v. *Am. Gen. Life Ins. Co.*, 2010 WL 11566353, at *3 (W.D. Tex. Oct. 7, 2010) (citing *Blackburn* v. *City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)). This analysis must be undertaken with respect to the allegations against each defendant on a claim-by-claim basis because the "pleading standards . . . apply separately to each claim and each defendant" in the Complaint. *Winslow* v. *Paxton*, 2017 WL 283281, at *2 (N.D. Tex. Jan. 20, 2017). Finally, if a court lacks subject matter jurisdiction over a claim, that claim must be dismissed. Fed. R. Civ. P. 12(b)(1).

## ARGUMENT

## I. THE BREACH OF FIDUCIARY DUTY CLAIM AGAINST MR. OKADA MUST BE DISMISSED

20. The Litigation Trustee's breach of fiduciary duty claim against Mr. Okada is supported by a single sentence alleging, "[a]s Dondero's co-founder and HCMLP's Chief Investment Officer, Okada knew or willfully blinded himself to the fact that the HCMLP Distributions—including the distributions made to Okada, MPO Trust 1, and MPO Trust 2— were made at a time that HCMLP was insolvent and would not be able to satisfy its obligations to its present and future creditors." (Compl. ¶ 263.) This threadbare claim must be dismissed for three reasons. *First*, the Litigation Trustee fails to plead facts sufficient to show that Mr. Okada had, let alone breached, a duty in connection with the equity distributions. Indeed, the LP Agreement and the Litigation Trustee's own allegations establish that Mr. Okada had no such duty. *Second*, while the Litigation Trustee bases its breach of duty claim with respect to Mr. Okada on HCMLP's purported insolvency at the time of the distributions, the Litigation Trustee does not plead facts sufficient to show that HCMLP was insolvent at *any* time during the decade-long period when the distributions occurred, let alone that HCMLP was insolvent at the time of each distribution. *Third*, claims for alleged breaches based on distributions that took place

-8-

beyond the applicable statute of limitations are barred by Delaware's three-year statute of limitations.

      **A.**      **Mr. Okada Owed No Fiduciary Duties with Regard to the HCMLP Equity Distributions.**

            **1.**      **The Litigation Trustee's Meager Allegations Cannot Support His Claim That Mr. Okada Had or Breached Any Relevant Duty.**

      21.    Under Delaware law, "[a] claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Res., Inc.* v. *Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc.* v. *Beard Res., Inc.*, 11 A.3d 749 (Del. 2010).[5] The Litigation Trustee's bare allegation that Mr. Okada "knew or willfully blinded himself" to the fact that equity distributions were made when HCMLP was allegedly insolvent fails to plead facts sufficient to show either element. (Compl. ¶ 263; *see also id.* ¶ 177 (alleging Mr. Okada "acquiesced" to the distributions).) The Litigation Trustee fails to identify the fiduciary duty that Mr. Okada purportedly held in connection with the distributions received by the Okada Parties, in what capacity Mr. Okada held that purported duty, or how Mr. Okada allegedly breached it. "Such conclusory allegations are insufficient to survive a motion to dismiss." *Kaye* v. *Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 682 (N.D. Tex. 2011) (dismissing similar conclusory allegations that defendants "allegedly knew or should have known about [debtor's] insolvency," and "were involved with" or "participated in" certain transactions); *see also Berger* v. *Transcon. Realty Invs., Inc.*, 2020 WL 1528994, at *6 (N.D. Tex. Mar. 31, 2020) (dismissing as "conclusory and not supported" allegations that defendants

---

[5] Delaware law governs Plaintiff's claim for breach of fiduciary duty because HCMLP is a Delaware limited partnership and the LP Agreement includes a choice of law provision selecting Delaware law. *See PilePro, LLC* v. *Chang*, 152 F. Supp. 3d 659, 675 (W.D. Tex. 2016) (Delaware law governed breach of fiduciary duty claims because place of incorporation was Delaware), *aff'd sub nom. PilePro, L.L.C.* v. *Heindl*, 676 F. App'x 341 (5th Cir. 2017); App'x 33, LPA § 6.11.

were "complicit in this [transaction], approved it, and conspired in it"); *Lycoming Engines* v. *Superior Air Parts*, Inc., 2014 WL 1976757, at \*9 (N.D. Tex. May 15, 2014) (affirming the bankruptcy court's dismissal where "[t]here are absolutely no specific, non-conclusory factual allegations supporting this [fiduciary duty] claim").

22.     The Litigation Trustee suggests that Mr. Okada's alleged duty may have derived from his status as "co-founder and HCMLP's [CIO]." (Compl. ¶ 263.) However, the Litigation Trustee provides no basis to conclude that Mr. Okada's role in co-founding HCMLP—twenty years before the distributions at issue—conferred any responsibility for equity distributions. *Burback* v. *Oblon*, 2021 WL 4477607, at \*11 (E.D. Tex. Sept. 30, 2021) (dismissing claim of breach of fiduciary duty because plaintiffs only stated that the defendant was a "co-founder, member, agent, and/or representative" of the relevant entity and did "not sufficiently allege[] a basis for the existence of a fiduciary duty").

23.     Likewise, the Litigation Trustee alleges no facts that would show that Mr. Okada's role as CIO involved a fiduciary duty with respect to distributions. Any fiduciary duty Mr. Okada held as CIO was limited to the scope of his responsibilities, which involved overseeing the investments of HCMLP's capital. *See Triton Constr. Co.* v. *E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at \*9 (Del. Ch. May 18, 2009) ("[The] hallmark principles of agency law apply to traditional corporate fiduciaries, such as officers and directors, and to key managerial personnel."), *aff'd*, 988 A.2d 938 (Del. 2010); *Lazard Debt Recovery GP, LLC* v. *Weinstock*, 864 A.2d 955, 966 (Del. Ch. 2004) (holding "an agent's fiduciary duty is limited by the scope of the agency"). "A complaint fails to state a claim against an alleged officer for breach of fiduciary duty when it fails to allege facts demonstrating that (1) he took part in the challenged conduct and (2) failed to demonstrate the due care attendant to his particular office in

doing so." *Bridgeport Holdings, Inc.* v. *Boyer* (*In re Bridgeport Holdings, Inc.*), 388 B.R. 548, 573 (Bankr. D. Del. 2008) (dismissing breach of fiduciary duty claims against officers because the "acts of which [plaintiff] complains were entrusted to directors, and not officers"). The Litigation Trustee has not alleged any such facts, and thus has not pled that Mr. Okada had, let alone breached, a fiduciary duty in connection with the challenged distributions.[6]

> **2. The Highland LPA Precludes the Litigation Trustee's Fiduciary Duty Claim.**

24. The Litigation Trustee's breach of fiduciary claim is premised on equity distributions that Mr. Okada received as a limited partner of HCMLP. (Compl. ¶¶ 13, 124, 263.) The claim must be dismissed and cannot be pled for the independent reason that the LP Agreement expressly provides that "[l]imited [p]artners shall have no liability under this [LP] Agreement." (App'x 27, LPA § 4.2(a)-(b)); *see Ryan* v. *Buckeye Partners, L.P.*, 2022 WL 389827, at *13 (Del. Ch. Feb. 9, 2022) (dismissing breach of fiduciary duty claim where partnership agreement disclaimed fiduciary duties); *Brickell Partners* v. *Wise*, 794 A.2d 1, 4 (Del. Ch. 2001) ("[P]rinciples of contract preempt fiduciary principles where the parties to a limited partnership have made their intentions to do so plain."). The LP Agreement is consistent with the common law rule that limited partners "do not owe default fiduciary duties." *Feeley* v. *NHAOCG, LLC*, 62 A.3d 649, 662 (Del. Ch. 2012).[7]

---

[6] The Litigation Trustee in effect claims that Mr. Okada is liable because he held a senior management role at HCMLP, analogous to group pleading allegations that courts routinely reject. *See, e.g.*, *Stanziale* v. *Heico Holdings, Inc.* (*In re Conex Holdings, LLC*), 514 B.R. 405, 413 (D. Del. 2014) (dismissing conclusory allegations that "officers and directors" engaged in fraudulent transfers because it "failed to state what each individual did in connection with any particular transfer" and "failed to provide facts that any of the defendants were even authorized to make binding decisions under [debtor's] operating agreement").

[7] Although a limited partner may assume fiduciary duties if the limited partner also holds a management role in the partnership, those duties are limited to the scope of responsibilities of the limited partner. (App'x 26-27, LPA § 4.1(k).)

25.     Moreover, the LP Agreement specified that the general partner of HCMLP, Strand, had sole responsibility for managing the partnership.  (App'x 23-24, LPA § 4.1(a).) Consistent with that delegation of sole responsibility, the general partner had the sole authority to declare equity distributions, and "could make such pro rata or non-pro rata distributions as it may determine in its sole and unfettered discretion." (App'x 20, LPA § 3.9(a).)  In addition, duties of officers extended only to those that the general partner delegated to them (App'x 26-27, LPA § 4.1(k)), so there can be no assertion that Mr. Okada had any obligations with respect to declaring distributions in his role as CIO.

### 3.     The Litigation Trustee's Own Allegations Confirm That Mr. Okada Did Not Have a Relevant Duty.

26.     Finally, the Litigation Trustee cannot plead a claim that Mr. Okada breached a duty in connection with any equity distributions when the Litigation Trustee's own allegations repeatedly allege that Mr. Dondero was solely responsible for the challenged distributions.  "[A] plaintiff may plead himself out of court" if he "pleads facts which establish that he cannot prevail on his . . . claim." *Slyce Acquisition Inc.* v. *Syte - Visual Conception Ltd.*, 422 F. Supp. 3d 1191, 1198 (W.D. Tex. 2019) (alterations omitted) (quoting *Weisbuch* v. *Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).  The Litigation Trustee repeatedly alleges that "[Mr.] Dondero exercised his complete control of HCMLP" and "HCMLP's general partner Strand, which Dondero similarly dominated and controlled." (Compl. ¶ 104; *see also id.* ¶¶ 40, 107, 131, 177, 178, 191, 375.)  The Litigation Trustee also specifically alleges that Mr. Dondero "approved" and "caused HCMLP to make" the challenged transfers.  (*Id.* ¶¶ 178, 262; *see also* App'x 20, LPA § 3.9(a) (equity distributions are made in the "sole and unfettered discretion" of the general partner).)  "Assuming these allegations to be true," Mr. Okada could not "have stopped the transactions because they were all approved by" Mr. Dondero and/or Strand.  *Kaye*, 453 B.R. at

-12-

682-83 (dismissing breach of fiduciary duty claims against director where the challenged transactions were approved by "parent and sole shareholder" that "allegedly dominated [debtor's] board"); *see also In re Soporex*, 463 B.R. at 380 (dismissing a breach of fiduciary duty claim where the plaintiff failed to allege that there was any alternative to the challenged transaction and thus was "undercut by her own allegations"). The Litigation Trustee's fiduciary duty claim is inconsistent with The Litigation Trustee's own allegations, and must be dismissed.

### B. The Litigation Trustee Fails To Plead Insolvency.

27.     The Litigation Trustee bases its breach of fiduciary duty claim with respect to Mr. Okada on the allegation that Mr. Okada knew that HCMLP purportedly was insolvent when the equity distributions were made. (Compl. ¶ 263.) However, the Litigation Trustee fails to plead the key basis for this allegation—insolvency.[8] Insolvency must be pled in detail, and is not adequately pled by "conclusory assertions about [] financial condition and subjective determinations regarding the amount of available capital," as the Litigation Trustee does here. *Matter of ATP Oil & Gas Corp.*, 711 F. App'x 216, 223 (5th Cir. 2017).

28.     Under Fifth Circuit law, the Litigation Trustee must provide specific financial information to make its allegations plausible. In *ATP*, the trustee asserted that the debtor was insolvent, but "the district court correctly found that the [t]rustee failed to present any financial data showing that ATP was actually insolvent or had little capital when making the complained-of bonus payments." *Id.* "Without a specific reference to ATP's financial condition at the time—which the [t]rustee should [have] be[en] capable of making in light of his access to ATP's financial books and records—the [t]rustee [could not] plausibly show that ATP was insolvent at

---

[8] The Litigation Trustee must likewise plead sufficient facts to demonstrate insolvency at the time of each alleged constructive fraudulent transfer (Count I). The arguments set forth in this section provide an independent basis to dismiss Count I in addition to those set forth in Section II below, and are incorporated there by reference.

the time of the transfers." *Id.*; *see also In re Crescent Res., LLC*, 2012 WL 195528, at *8 (Bankr. W.D. Tex. Jan. 23, 2012) (complaint that alleged financial statements purportedly demonstrating insolvency, but did not provide the actual financial data, failed to adequately plead insolvency); *Eddystone Rail Co., LLC* v. *Bank of Am., N.A.*, 2021 WL 4443371, at *7 (S.D.N.Y. Sept. 28, 2021) (dismissing claims because "the complaint does not include any balance sheet test or information").

### 1. 2010 – 2012

29.    The Litigation Trustee alleges that "valuations" based on "contemporaneous projections" and "conservative valuations of HCMLP's contingent litigation liabilities show that HCMLP was balance sheet insolvent, inadequately capitalized, and/or intended to incur debts beyond its ability to pay in 2011 and 2012."  (Compl. ¶ 100.)  However, the Litigation Trustee provides no information concerning these valuations in its Complaint, making the allegation in substance a conclusory statement that HCMLP was insolvent.  *Crescent*, 2012 WL 195528, at *8 (rejecting allegations that "the Debtors' [SOFAs] and Disclosure Statement" indicated that the debtor was insolvent, because the plaintiff "did not attach any of these documents to its complaint" or "refer the Court to any specific facts provided in these documents that would allow the Court to draw a reasonable inference of insolvency"); *ATP*, 711 F. App'x at 223. Likewise, the Litigation Trustee's allegations that HCMLP faced potentially significant litigation liability cannot establish insolvency without a specific comparison to the value of HCMLP's assets.  *In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168, at *12 (Bankr. D. Del. Sept. 6, 2019) ("Simply facing liability . . . does not make a company insolvent, and uses of words such as 'massive' and 'enormous' to describe a company's liabilities are conclusory in nature and say nothing regarding the actual magnitude of the liabilities much less the magnitude relative to the company's assets.").

30. The Litigation Trustee further alleges that Mr. Dondero testified during a family court proceeding in 2012 that "the 2008 financial crisis took HCMLP 'to a state of insolvency and we've been juggling liquidity since that,' and that '[t]he last three, four years have been negative to the tune of hundreds of millions of dollars[.]'" (Compl. ¶ 48.) But again, as in *Crescent* where the chief financial officer submitted a declaration attesting to insolvency, a conclusory statement is not rendered fact because it is made by a company insider. *Crescent*, 2012 WL 195528, at *8. Moreover, the Litigation Trustee apparently quotes this testimony from a news article, which makes clear that "negative to the tune of hundreds of millions of dollars" referred to a decline in HCMLP's assets under management, and not to HCMLP's own balance sheet, as the Litigation Trustee implies.[9] Even accepting at face value that HCMLP became insolvent at some point following the 2008 financial crisis, that allegation does not establish that HCMLP was insolvent two years later at the time of the Litigation Trustee's first allegedly fraudulent transfer in 2010. *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 738 (Bankr. S.D. Tex. 2020) (explaining connection between transactions two years apart was "far too tenuous" and refusing to "leap from 2012 to 2014" without additional facts); *In re RFC & ResCap Liquidating Tr. Litig.*, 2017 WL 1483374, at *7 (D. Minn. Apr. 25, 2017) (similar).

**2. 2013**

31. The Litigation Trustee does not allege, let alone plead specific facts showing, that HCMLP was insolvent during 2013. (Compl. ¶ 101.) To the contrary, the Litigation Trustee alleges that "HCMLP's financial condition began to improve in 2013." (*Id.*) Despite this

---

[9] The news article from which this testimony was apparently quoted in fact states that HCMLP was solvent in 2012 based on standard GAAP accounting methods. (App'x 43, Glueckstein Decl. Ex. 2, at 1.) The Court may consider the news article as a "document[] incorporated into the complaint by reference." *Randall D. Wolcott*, 635 F.3d at 763. The fact that Plaintiff quotes the same two statements as the news article does, including the same portion of one sentence, provides a strong indication that Plaintiff is quoting the news article rather than an original transcript to which there is no citation.

apparent admission that HMCLP was solvent at the time, the Litigation Trustee seeks to recover for an April 30, 2013 transfer. (*Id.* ¶¶ 169, 176.) The Litigation Trustee's acknowledgment of HCMLP's improved financial condition, combined with a lack of any allegation of insolvency, falls far short of the required pleading standard. *United Healthcare Servs., Inc.* v. *Next Health, LLC*, 2021 WL 764035, at *16 (N.D. Tex. Feb. 26, 2021) (dismissing claims where "there [we]re no factual allegations regarding the debtors' solvency").

### 3.   2015 – 2019

32.     The Litigation Trustee resorts to general and conclusory allegations that "by 2015, the company was again firmly insolvent, inadequately capitalized and/or unable to pay its debts as they came due" because of "diminishing returns" and "significant employee expenses." (Compl. ¶ 102.) The Litigation Trustee also generally alleges that "HCMLP's financial condition deteriorated further between 2016 and 2019" due to "additional litigation claims." (*Id.*) These allegations represent the extent of the Litigation Trustee's insolvency allegations for 2015 through 2019, and amount to a conclusory statement that HCMLP was insolvent with declining returns and increasing expenses. The allegations pled provide no basis to compare the Litigation Trustee's assets and liabilities at any point during the five year period. Nor do they establish that HCMLP was insolvent at the time of each distribution over the course of five years, and are thus insufficient to support a claim.

### C.     The Trustee Cannot Pursue a Breach of Fiduciary Duty Claim Based on Equity Distributions Beyond by the Applicable Statute of Limitations.

33.     The Litigation Trustee alleges a series of breaches of fiduciary duty that purportedly occurred each time HCMLP made an equity distribution to its limited partners between 2010 and 2019. (Compl. ¶ 263.) However, the Litigation Trustee cannot under any circumstances maintain a claim for breach of fiduciary duty based on equity distributions that

occurred outside the statute of limitations period. HCMLP is incorporated in Delaware, which has a three-year statute of limitations for breach of fiduciary duty, and the LP Agreement includes a choice of law provision selecting Delaware law. 10 Del. Code § 8106 (three-year limitations period); App'x 33, LPA § 6.11. However, federal courts in Texas often regard statutes of limitations as procedural rather than substantive, and as a result instead apply Texas's four-year statute of limitations period to breach of fiduciary duty claims. *U.S. Rest. Props. Operating L.P.* v. *Burger King Corp.*, 2003 WL 21448389, at *3-4 (N.D. Tex. June 16, 2003); Tex. Civ. Prac. & Rem. Code § 16.004.[10] Either way, the Litigation Trustee's claim based on equity distributions beyond the limitations period is time barred and must be dismissed. *See Smith* v. *Allstate Ins. Co.*, 2016 WL 11201008, at *1 (N.D. Tex. Jan. 12, 2016) (dismissing breach of fiduciary duty claims outside Texas's four-year statute of limitations period); *In re AMC Investors, LLC*, 2022 WL 248133, at *15 (Bankr. D. Del. Jan. 27, 2022) (holding breach of fiduciary duty claims outside Delaware's three-year statute of limitations barred).

## II. THE LITIGATION TRUSTEE CANNOT AVOID MOST OF THE DISTRIBUTIONS MADE TO THE OKADA PARTIES AS A MATTER OF LAW

34. The Litigation Trustee alleges that 22 equity distributions made to HCMLP's limited partners over the course of a decade from 2010 to 2019, including to the Okada Parties, constituted actual and constructive fraudulent transfer claims pursuant to 11 U.S.C. §§ 544 and 548. (Compl. ¶¶ 168-80.) The Litigation Trustee's claims fail and must be dismissed since he cannot pursue all but four of those distributions from the Okada Parties as a matter of law because: (a) nearly all of the distributions occurred prior to October 16, 2017, the expiration of the two-year statute of limitations provided in section 548; (b) the Complaint fails to plead a

---

[10] A minority of courts in Texas nonetheless have applied the law of the state of incorporation. *See Kaye* v. *Dupree (In re Avado Brands, Inc.)*, 358 B.R. 868, 881-82 (Bankr. N.D. Tex. 2006) (looking to the Georgia law statute of limitations for fiduciary duty claims with respect to a Georgia corporation).

creditor who held a claim at the time of each of the alleged transfers to permit the Litigation Trustee to use the four-year statute of limitations provided in TUFTA that, in any event, would limit the actionable distributions to those made on or after October 16, 2015; (c) the Litigation cannot rely on 26 U.S.C. § 6502 to make an end-run around the statutes of limitations; and (d) as discussed, the Litigation Trustee has failed to plead insolvency.

### A. The Litigation Trustee's Fraudulent Transfer Claims Are Restricted by the Applicable Statutes of Limitations.

35.     Bankruptcy Code section 548(a)(1) limits the Litigation Trustee's ability to avoid transfers to those "made or incurred on or within 2 years before the date of the filing of the petition."  11 U.S.C. § 548(a)(1).  The Litigation Trustee's "petition was filed [on October 16,] 2019, so payments made before [October 16,] 2017 cannot be avoided under the federal statute." *Curtis* v. *Cerner Corp.*, 621 B.R. 141, 179-80 (S.D. Tex. 2020).

36.     In order to plead standing under § 544(b)(1), and thus utilize the longer four year statute of limitations provided by state law in TUFTA, the Litigation Trustee must "demonstrate the existence of an unsecured creditor that holds an allowable claim and who could have avoided the transfers under state law" for each alleged fraudulent transfer.  *In re Giant Gray, Inc.*, 629 B.R. 814, 828 (Bankr. S.D. Tex. 2020).  The Complaint fails to identify a triggering creditor with a claim at the time of any, let alone all, of the 22 alleged transfers.  The Litigation Trustee's actual and constructive fraudulent transfer claims based on § 544 therefore must be dismissed. *E.g.*, *In re Dual D Health Care Operations, Inc.*, 2021 WL 3083344, at *15-16 (Bankr. N.D. Tex. July 21, 2021) (dismissing fraudulent transfer claims where the complaint failed to identify a specific triggering creditor); *In re Specialty Select Care Ctr. of San Antonio, LLC*, 2021 WL 3083522, at *16 (Bankr. N.D. Tex. July 21, 2021) (similar).

37.     Even if the Litigation Trustee had pled a triggering creditor for purposes of section 544, the Trustee would be limited by TUFTA's four-year statute of limitations to only pursuing distributions made after October 16, 2015—four years prior to the Petition Date.  For constructive fraudulent transfer claims under §§ 24.005(a)(2) and 24.006, a fraudulent transfer claim under TUFTA must be brought "within four years after the transfer was made or the obligation was incurred."  Tex. Bus. & Com. Code § 24.010; *see also Biliouris* v. *Patman*, 2017 WL 1078526, at *3 (N.D. Tex. Mar. 21, 2017) (dismissing claims because "[m]ore than four years has passed since the transfers").[11]   Under all circumstances, distributions made prior to October 16, 2015 cannot be the subject of fraudulent transfer claims.

**B.      The IRS "Golden Creditor" Statute is Not Available.**

      **1.      The Litigation Trustee Cannot Benefit From the IRS's Sovereign Exemption from State Statutes of Limitation.**

38.     The Litigation Trustee seeks to escape TUFTA's four-year statute of limitations by utilizing section 544 of the Bankruptcy Code to step into the IRS's shoes and obtain the benefit of the IRS's immunity as a sovereign from controlling state statutes of limitation.  While some courts have permitted it, the Fifth Circuit has not opined on the issue to date.  The approach advocated by the Litigation Trustee would upset the existing statute of limitations framework and would contravene the U.S. Supreme Court's caution against technical interpretations of statutes without reference to their context.  *Czyzewski* v. *Jevic Holding Corp.*, 137 S. Ct. 973, 984-85 (2017).  It should thus be rejected.

39.     Pursuant to 26 U.S.C. § 6502, the IRS may collect a tax by initiating a court proceeding within ten years after the assessment of the tax.  The IRS may bring the collection

---

[11]    Actual fraudulent transfer claims may also be brought within one year after they were or could reasonably have been discovered by the claimant.  Tex. Bus. & Com. Code § 24.010(a)(1).  The Complaint contains no factual allegations supporting an inability to discover any of the distributions, nor could it given that the challenged distributions are all reflected on the books and records and known to HCMLP.

proceeding under state-law fraudulent transfer laws, including TUFTA, and in doing so is not constrained in collection by state-law statutes of limitations. *United States* v. *Evans*, 340 F. App'x 990, 993 (5th Cir. 2009) (affirming that the United States is not bound by the four-year TUFTA limitations period but rather subject to I.R.C. section 6502).

40.     Although the Litigation Trustee may stand in the shoes of the IRS as an unsecured creditor pursuant to Bankruptcy Code section 544, one court has thoughtfully explained that "[i]t does not necessarily follow [] that [the Litigation Trustee] standing in the shoes of the IRS is immunized from state statutes of limitation." *In re Vaughan Co.*, 498 B.R. 297, 304 (Bankr. D.N.M. 2013). This is because "[i]mmunity from state statutes of limitation is a sovereign power of the United States." *Id.* (citing *Alaska Dept. of Envtl. Conservation* v. *EPA*, 540 U.S. 461, 514 (2004)). "Where[ ]the government's action vindicates a private interest," immunity ordinarily does not apply." *SEC* v. *Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004).

41.     The *Vaughan* court recognized that the Litigation Trustee does not pursue a public interest that would entitle it to the benefit of the IRS's immunity, and that "[i]n expounding a statute, the Court must not be guided by a single sentence or member of a sentence, but must look to the provisions of the whole law, and to its object and policy." *Vaughan Co.*, 498 B.R. at 304 (quoting *United States* v. *Lamirand,* 669 F.3d 1091, 1096 (10th Cir. 2012)). Recognizing the significant adverse consequences that the Litigation Trustee's approach would have for the statute of limitations framework in fraudulent transfer proceedings, the court concluded it was "unwilling to draw an inference that Congress intended such a dramatic change in the law" and refused to allow the trustee the benefit of the IRS's sovereign immunity. *Id.* at 306.

42.     Although no circuit court has addressed this issue, the lower courts that have taken an expansive approach have adhered to the literal language of section 544(b)(1), which

enables the trustee to transfer an interest that is "voidable under applicable law by a creditor," and have thus concluded that the trustee should have the same powers as the IRS would if it had brought an individual suit outside of bankruptcy. *See e.g.*, *In re Zagaroli*, 2020 WL 6495156, at *3 (Bankr. W.D.N.C. Nov. 3, 2020) (trustee could step into shoes of IRS to avoid four-year statute of limitations under North Carolina's UFTA); *In re CVAH, Inc.*, 570 B.R. 816, 823-24 (Bankr. D. Idaho 2017) (similar). However, these courts necessarily read section 544 in isolation and rigidly adhered to its text. But "[i]n textual interpretation, context is everything." Anontin Scalia, *Common–Law Courts in a Civil Law System: The Role of United States Federal Courts in Interpreting the Constitution and Laws,* in A Matter of Interpretation 3, 37 (Amy Gutmann ed., 1997). The Supreme Court often rejects technocratic interpretations of statutes that produce results at odds with the broader statutory scheme and its operation. *See*, *e.g.*, *Czyzewski*, 137 S. Ct. at 984-85 (rejecting literal reading of 11 U.S.C. § 349 because when read in context, section 349 appears designed to give courts flexibility in certain narrower circumstances). "Congress 'does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.'" *Epic Sys. Corp.* v. *Lewis*, 138 S. Ct. 1612, 1626-27 (2018) (quoting *Whitman* v. *Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)) (holding Congress did not "trample[] the work done by these other laws" through a "catchall term"). Similarly here, it is implausible "that Congress, by enacting Section 544(b), intended to vest sovereign powers in a bankruptcy trustee and thereby immunize her from the strictures of state law." *Vaughan*, 498 B.R. at 304.

43. "Section 544(b) is most often used to recover transfers that would be voidable under state law." *Id.* at 302; *BFP* v. *Resolution Tr. Corp.*, 511 U.S. 531, 543 n.7 (1994) (section 544 applies to "transfers voidable under state law"). As a result, the Litigation Trustee's desired

approach would displace the typical two- to four-year lookback periods for fraudulent transfer claims under §§ 544 and 548, and would replace them with a ten-year period when there is no evidence Congress intended to do so. "If a bankruptcy trustee or debtor in possession could recover transfers made within ten years before the petition date, it would eviscerate the UFTA's four-year look back period" because "[t]he IRS holds an unsecured claim in a substantial portion of bankruptcy cases." *Vaughan*, 498 B.R. at 305; *see also Miller* v. *Fallas (In re J&M Sales Inc.)*, 2022 WL 532721, at *3 n.7 (Bankr. D. Del. Feb. 22, 2022) (noting that Trustee's theory of any unpaid tax triggering a ten-year lookback period would apply in every business bankruptcy and "cannot be what Congress had in mind when enacting Section 544(b)"). The Litigation Trustee should not be allowed to adopt the IRS's immunity as sovereign.

### 2. The IRS Has Not Asserted Any Claims That Could Extend the Statute of Limitations.

44. Irrespective of whether I.R.C. section 6502 could be available to the Litigation Trustee, the allegations set forth in the Complaint (and public information available by judicial notice) establish that it is not available here, and thus Counts I and II must be dismissed because they seek to avoid distributions beyond the four year statute of limitations deadline provided for in TUFTA—October 16, 2015. As an initial matter, the Complaint fails to plead that the IRS was a creditor of HCMLP at any point or that there was any assessment of taxes that would have entitled the IRS to relief, and thus permit the Litigation Trustee to invoke section 544 of the Bankruptcy Code. Instead, the Complaint merely notes in the claim title that the fraudulent transfer claims are brought pursuant to, among other statutes, 26 U.S.C. § 6502. (Compl. pp 62, 65.) This is insufficient. *See Dual D Health Care Ops.*, 2021 WL 3083344, at *15-16 (granting motion to dismiss where complaint failed to identify any triggering creditor). As a result, no extension of the otherwise applicable statute of limitations should be permitted.

45. Furthermore, I.R.C. section 6502 by its plain language operates as a forward looking collection statute, providing that when a tax has been timely assessed, the IRS may commence a proceeding to collect that tax "within 10 years after the assessment of the tax." 26 U.S.C. § 6502(a)(1). The Fifth Circuit has recognized the forward-looking nature of section 6502, explaining that:

> I.R.C. § 6502(a)(1) makes clear that it is the 'assessment' itself that, once made, starts the running of the ten-year period within which the IRS can commence efforts to *collect* the assessed tax.

*Remington* v. *United States*, 210 F.3d 281, 284 (5th Cir. 2000) (emphasis in original). As a result, any effort by the Litigation Trustee to utilize section 6502 as a blanket ten-year "look back" period from the Petition Date must fail. *See Luria* v. *Thunderflower, LLC (In re Taylor, Bean & Whitaker Mortg. Corp.)*, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sept. 28, 2018) ("The Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment (or, alternatively, prior to accrual of the tax liability)."). The Litigation Trustee could only ever attempt to utilize section 6502 if the IRS in fact had assessed taxes against HCMLP dating back to the April 9, 2010, which is the date of the earliest distribution put at issue. (Compl. ¶¶ 169, 176.) However, the first tax asserted by the IRS against HCMLP in its most recent amended claim is for the tax period June 30, 2015, but not assessed until January 4, 2021. (App'x 50, Glueckstein Decl. Ex. 3, IRS Proof of Claim No. 252.)[12] The earliest tax assessed in the IRS Claim is asserted to be on November 12, 2018.

---

[12] The Court can take judicial notice of the IRS proof of claim. *See, e.g.*, *Dean* v. *Reticulum Mgt., LLC* (*In re Dean*), 620 B.R. 271, 285 (Bankr. N.D. Tex. 2020) (Jernigan, J.) (taking judicial notice of proof of claim and contents therein); *In re Herring*, 2015 WL 7753540, at *2 (Bankr. S.D. Tex. Dec. 1, 2015) (court taking judicial notice of IRS proof of claim); *Norris* v. *Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

(*Id.*)[13]  Therefore, Counts I and II must be dismissed based on the existing record with respect to any distributions made to the Okada Parties prior to June 2015.

## III. THE BANKRUPTCY COURT LACKS JURISDICTION TO ADJUDICATE THE NON-CORE BREACH OF FIDUCIARY DUTY CLAIM AGAINST MR. OKADA

46.    The breach of fiduciary duty claim against Mr. Okada (Count XIV) is a non-core claim arising under state law.  *See Mirant Corp.* v. *The S. Co.*, 337 B.R. 107, 118 (N.D. Tex. 2006) (a breach of fiduciary duty claim "can in no manner . . . permit this Court's assertion of core jurisdiction.").  The Fifth Circuit has determined that the bankruptcy court's jurisdiction over non-core claims is limited after a plan is confirmed because "the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."  *Bank of La.* v. *Craig's Stores of Tex., Inc.* (*In re Craig's Stores of Tex., Inc.*), 266 F.3d 388, 390 (5th Cir. 2001).  For the sake of judicial economy, the Okada Parties will not repeat each of the reasons that subject matter jurisdiction is absent, which were described in detail in the previous briefing related to the Okada Parties' motion to withdraw the reference, and are incorporated here by reference.  (*See* Adv. Pro. Dkt. No. 37 ¶¶ 14-21; Adv. Pro. Dkt. No. 105 ¶¶ 11-15.)[14]

47.    In short, however, the *Craig's Stores* factors demonstrate that post-confirmation jurisdiction does not exist, and the non-core claim must be dismissed.  *See, e.g.*, *Colvin* v. *Amegy Mortg. Co., L.L.C.*, 507 B.R. 915, 923-24 (W.D. Tex. 2014) (the bankruptcy court "should have

---

[13] In all events, the earliest tax claimed by the IRS in its original and now superseded proof of claim was for the tax period December 31, 2013—more than three and a half years after the first challenged distribution, and there is no assertion that or any of the estimated excise taxes contained in that superseded claim was contemporaneously assessed.  (App'x 56, Glueckstein Decl. Ex. 4, IRS Proof of Claim No. 32.)

[14] The Complaint also asserts fraudulent transfer claims against the Okada Parties (Counts I and II), which arise in part under Texas state law.  *See* Tex. Bus. & Com. Code § 24.005(a)(1-2).  The Fifth Circuit has not decided whether TUFTA claims brought in conjunction with the Bankruptcy Code are core or non-core, but one court in this circuit has held that they are non-core.  *See Guffy* v. *Brown* (*In re Brown Med. Ctr., Inc.*), 578 B.R. 590, 597 (Bankr. S.D. Tex. 2016).

dismissed the action for lack of subject-matter jurisdiction" based on the *Craig's Stores* factors). In particular, "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization" relating to the Okada Parties. *Craig's Stores*, 266 F.3d at 391. The Trustee filed his non-core breach of fiduciary duty claim almost eight months after the Confirmation Order was entered and more than two months after the Plan Effective Date. The Okada Parties were not participants in the underlying bankruptcy proceedings, and were not the subject of any litigation claims or even discovery requests until long after the Plan was confirmed—in August 2021—when they were served with a motion seeking discovery pursuant to Bankruptcy Rule 2004. *See Segner* v. *Admiral Ins. Co. (In re Palmaz Scientific, Inc.*), 2018 WL 661409, at *7 (Bankr. W.D. Tex. Jan. 31, 2018) (finding the second *Craig's Stores* factor favors no jurisdiction when there is a post-confirmation complaint regarding pre-confirmation activities).

48. In addition, the non-core claim arises under state law and is not in any way derived from the Plan, and the Plan is similarly not necessary to the existence of the claim. The non-core breach of fiduciary duty claim against Mr. Okada therefore must be dismissed for lack of subject matter jurisdiction.

## IV.   COUNT XXXV OF THE COMPLAINT SHOULD BE DISMISSED AS MOOT

49. Count XXXV of the Complaint seeking disallowance or subordination of certain proofs of claim unrelated to the litigation should be dismissed as to the Okada Parties because it is moot. Each of the Okada Parties' claims identified in the Complaint: 135, 137, and 139 were withdrawn, with prejudice, pursuant to an order of the Bankruptcy Court. [*See* Bankr. Dkt. 3163.] As a result, Count XXXV is moot as to the Okada Parties.

## CONCLUSION

50. For the foregoing reasons, the Okada Parties respectfully request that the Court dismiss Counts I, II, XIV, and XXXV of the Complaint as against the Okada Parties.

Dated: March 23, 2022
       New York, New York

/s/ Brian D. Glueckstein
Brian D. Glueckstein (admitted *pro hac vice*)
  New York Bar No. 4227005
  gluecksteinb@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Cortney C. Thomas
  Texas Bar No. 24075153
  cort@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile: (214) 327-5001

*Counsel for Defendants Mark K. Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #1 and Lawrence Tonomura as Trustee, and The Mark and Pamela Okada Family Trust – Exempt Trust #2 and Lawrence Tonomura as Trustee*