Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau (*Admitted pro hac vice*)
Blaire Cahn (*Admitted pro hac vice*)
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
debra.dandeneau@bakermckenzie.com
blaire.cahn@bakermckenzie.com

*Counsel for Isaac Leventon*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,<br><br>Defendants. | Adv. Pro. No. 21-03076-sgj |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT BACKGROUND ................................................................................ 2

LEGAL STANDARD............................................................................................... 3

    I.     Federal Rule of Civil Procedure 12(b)(1)................................................... 3

    II.    Federal Rule of Civil Procedure 12(b)(6)................................................... 4

    III.   Federal Rule of Civil Procedure 12(e) ....................................................... 4

ARGUMENT AND AUTHORITIES........................................................................ 4

    I.     All Claims Against Leventon Must be Dismissed Due to Kirschner's Lack of Standing...................................................................................................... 4

        A.     The Plan Did Not Adequately Preserve *Any* Specific State Law Claims........ 4

        B.     Kirschner Lacks Standing to Bring a Civil Conspiracy Claim Against Leventon (Count XVI). ................................................................... 6

        C.     Because Leventon Is Not an Insider, Kirschner Lacks Standing to Assert the Remaining Claims Against Leventon............................................. 6

        D.     Kirschner Lacks Standing to Bring Breach of Fiduciary Duty Claims that Are Reorganized Debtor Assets (Count V). ........................................... 8

    II.    All Claims for Relief Against Leventon Must be Dismissed for Lack of Subject Matter Jurisdiction (Counts V, XVI, XXVII). ........................................... 9

    III.   The Complaint Fails to State a Claim Upon Which Relief Can be Granted as to All Claims Asserted Against Leventon. ....................................................... 10

        A.     Kirschner Fails to State a Claim for Breach of Fiduciary Duty by Leventon Based on Alleged Conduct Resulting in HCMLP Liabilities (Count V). ..... 10

            1.     Count V Fails to State a Claim Because Kirschner Asserts a Professional Negligence Claim Under the Guise of Breach of Fiduciary Duty............................................................................ 10

            2.     The Complaint Fails to Allege Leventon Did Anything but Obey and Follow Lawful Client Instructions. .................................................. 14

            3.     The Complaint Cannot, as a Matter of Texas Law, Adequately Allege the Element of Harm, as Kirschner May Not Substitute his

Assessment of Leventon's Legal Work for that of the Then-Client HCMLP. ........................................................................................... 15

4.   The Complaint Fails to Plausibly Allege that Leventon's Conduct Caused HCMLP Damages. ................................................................. 16

5.   The Complaint Cannot Claim Breach of Fiduciary Duties for Allegedly Enabling Conduct Harmful to Creditors. .......................... 19

6.   The Complaint Fails to Sufficiently Allege an Entitlement to Damages, as it Does Not Allege "Willful or Wanton Misconduct" Necessary for Liability Under the Governing Partnership Agreement ........................................................................................... 21

B.   Kirschner Fails to State a Claim Against Leventon for Civil Conspiracy to Breach Fiduciary Duties (Count XVI). ........................................................ 22

1.   The Allegations Against Leventon Are Vague, Conclusory, and Fail to Allege a Specific Object or Overt Act Involving Leventon .......... 22

2.   As an Agent of HCMLP, Leventon Cannot Legally Conspire with Other Agents of HCMLP. ................................................................. 22

3.   No Actionable Civil Conspiracy Exists Because the Complaint Fails to Allege a "Meeting of the Minds" to Cause the Injury .................. 24

4.   Dismissal of Certain of the Dondero Fiduciary Duty Claims Also Requires Dismissal of Count XVI ..................................................... 24

C.   Unjust Enrichment is Not an Independent Claim Cognizable Under Texas Law (Count XXVII). ........................................................................................... 25

CONCLUSION AND REQUESTED RELIEF ........................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adidas Am. Inc. v. Shoebacca Ltd.*,
3:20-CV-03248-N, 2021 U.S. Dist. LEXIS 183828, 2021 WL 4399745 (N.D. Tex. Sept. 27, 2021)........................................................................................................23

*Arencibia v. AGA Serv. Co.*,
No. 4:20-cv-00819-O, 2020 WL 10056799 (N.D. Tex. Nov. 13, 2020) ................................25

*In re Artho*,
587 B.R. 866 (Bankr. N.D. Tex. 2018)...................................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................................4

*Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*,
266 F.3d 388 (5th Cir. 2001) ..................................................................................................10

*Beanal v. Freeport-McMoran, Inc.*,
197 F.3d 161 (5th Cir. 1999) ....................................................................................................4

*Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*,
284 S.W.3d 416 (Tex. App.—Austin 2009, no pet.) .........................................................10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................4

*Border Demolition & Entvl., Inc. v. Pineda*,
535 S.W.3d 140 – 160 (Tex. App.—El Paso 2017, no pet.)...................................................10

*Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.)*,
336 F.3d 94 (2d Cir. 2003)......................................................................................................21

*Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification Beams Sys., LLC*,
556 B.R. 815 (W.D. Tex. 2017)...............................................................................................20

*Charles v. Tamez*,
878 S.W.2d 201 (Tex. App.—Corpus Christi 1994, writ denied) ..........................................15

*Chu v. Hong*,
249 S.W.3d 441 (Tex. 2008)....................................................................................................24

*Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*,
540 F.3d 351 (5th Cir. 2008) ....................................................................................................5

iii

*Edwards v. Dunlop-Gates*,
    344 S.W.3d 424 (Tex. App.—El Paso 2011, pet. denied) ......................................................14

*Fink v. Anderson*,
    477 S.W.3d 460 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ...........................................23

*Finova Capital Corp. v. Lawrence*,
    No. 399CV2552-M, 2000 WL 1808276 (N.D. Tex. Dec. 8, 2000).........................................20

*Garrett v. Giblin*,
    940 S.W.2d 408 (Tex. App.—Beaumont 1997, no writ).........................................................14

*Gibson v. Ellis*,
    126 S.W.3d 324 (Tex. App.—Dallas 2004, no pet.)...............................................................11

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
    817 A.2d 160 (Del. 2002) ......................................................................................................21

*Graham v. Pazos De La Torre*,
    821 S.W.2d 162 (Tex. App.—Corpus Christi-Edinburg 1991, writ denied) ..........................22

*Hancock v. Chicago Title Ins. Co.*,
    635 F. Supp.2d 539 (N.D. Tex. 2009) ...................................................................................25

*III Forks Real Estate, L.P. v. Cohen*,
    228 S.W.3d 810 (Tex. App.–Dallas 2007, no pet.)................................................................23

*Isaacs v. Schleier*,
    356 S.W.3d 548 (Tex. App.—Texarkana 2011, pet. denied) ...........................................11, 14

*Kimleco Petroleum, Inc. v. Morrison & Shelton*,
    91 S.W.3d 921 (Tex. App.—Fort Worth 2003, pet. denied) ..................................................14

*Latitude Sols., Inc. v. DeJoria*,
    922 F.3d 690 (5th Cir. 2019) .................................................................................................20

*McCullough v. Scarbrough, Medlin & Assocs.*,
    435 S.W.3d 871 (Tex. App.—Dallas 2014, pet. denied).......................................................25

*McLaughlin v. Martin*,
    940 S.W.2d 261 (Tex. App.—Houston [14th Dist.] 1997, no writ) .......................................15

*Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*,
    999 F.3d 970 (5th Cir. 2021) .................................................................................................25

*Mulvey v. Allstate Ins. Co.*,
    Civ. No. 3:18-CV-1271-K, 2018 U.S. Dist. LEXIS 204804 (N.D. Tex. Dec. 4,
    2018) ........................................................................................................................................3

iv

*MVS Int'l Corp. v. Int'l Advert. Sols., LLC*,
    545 S.W.3d 180 (Tex. App.—El Paso 2017, no pet.) ........................................................ 22, 24

*Nevares v. San Marcos Consol. Indep. Sch. Dist.*,
    111 F.3d 25 (5th Cir. 1997) ................................................................................................... 3

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*,
    511 F. Supp. 2d 742 (S.D. Tex. 2005) ............................................................................. 20, 21

*Official Stanford Investors Comm. v. Greenberg Traurig, LLP*,
    2014 WL 12572881 (N.D. Tex. Dec. 17, 2014) .............................................................. 11, 13

*Reneker v. Offill*,
    2009 WL 804134 (N.D. Tex. Mar. 26, 2009) ................................................................. 19, 20

*Rogers v. Zanetti*,
    517 S.W.3d 123 (Tex. App.—Dallas 2015), *aff'd*, 518 S.W.3d 394 (Tex.
    2017) ................................................................................................................................. 16

*Rogers v. Zanetti*,
    518 S.W.3d 394 (Tex. 2017) .............................................................................................. 16

*Sassen v. Tanglegrove Townhouse Condo. Ass'n*,
    877 S.W.2d 489 (Tex. App.—Texarkana 1994, writ denied) .......................................... 14, 23

*In re Segerstrom*,
    247 F.3d 218 (5th Cir. 2001) ........................................................................................ 15, 16

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991) ................................................................................................ 20

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
    365 F.3d 353 (5th Cir. 2004) ................................................................................................ 4

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1540 (2016) ........................................................................................................... 3

*Taylor v. Scheef & Stone, LLP*,
    No. 3:19-CV-2602-D, 2020 WL 4432848 (N.D. Tex. July 31, 2020) ........................ 16, 17, 18

*Taylor v. Trevino*,
    No. 3:20-CV-0393-D, 2021 WL 347566 (N.D. Tex. Feb. 2, 2021) ..................................... 25

*United States CFTC v. M25 Invs., Inc.*,
    Case No. 3:09-CV-1831-M, 2010 U.S. Dist. LEXIS 20557 (N.D. Tex. Mar. 6,
    2010) ................................................................................................................................... 4

*West Ford Advisors, LLC v. Sungard Consulting Servs., Inc.*,
   437 S.W.3d 917 (Tex. App.—Dallas 2014, pet. denied) ........................................24, 25

*Wolf v. Ramirez*,
   622 S.W.3d 126 (Tex. App.—El Paso 2020, no pet.) .................................................14

*Won Pak v. Harris*,
   313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied) .......................................11, 12

*Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*,
   714 F.3d 860 (5th Cir. 2013) ................................................................................2, 4, 5

*Zidell v. Bird*,
   692 S.W.2d 550 (Tex. App.—Austin 1985, no writ) ................................................14

*Zuniga v. Groce, Locke & Hebdon*,
   878 S.W.2d 313 (Tex. App.—San Antonio 1994, writ ref'd.) ...............................15

**Statutes**

11 U.S.C. § 11 ..................................................................................................................2

11 U.S.C. § 101(31) ...........................................................................................................8

11 U.S.C. § 101(31)(B) ......................................................................................................8

11 U.S.C. § 101(31)(C) ......................................................................................................7

11 U.S.C. § 101(31)(E) ......................................................................................................7

28 U.S.C. § 1334 ...........................................................................................................9, 10

Tex. Civ. Prac. & Rem. Code § 16.003(a) ................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(e) .........................................................................................................4

Fed. R. Civ. P. 12(h)(3) ...................................................................................................10

Fed. R. Civ. Proc. 12(b)(1) ...........................................................................................1, 3

Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6) ........................................................................2

Fed. R. Civ. Proc. 12(b)(6) ...........................................................................................1, 4

Restatement (Second) Of Agency § 401, com. d (1957) .........................................14, 23

## BRIEF IN SUPPORT OF DEFENDANT LEVENTON'S MOTION TO DISMISS

Former Employee Isaac Leventon hereby files his brief in support of the *Motion to Dismiss* (the "***Motion***"),[1] filed contemporaneously herewith, and respectfully states as follows:

## PRELIMINARY STATEMENT

1. Isaac Leventon has no place in this case, and all claims require dismissal as a matter of law.

2. Of the Complaint's four claims against Leventon, only three claims remain: Counts V for breach of fiduciary duty, XVI for civil conspiracy to breach fiduciary duty, and XXVII for unjust enrichment. Count XXXIV, for disallowance of claims, no longer is applicable because Leventon's Proof of Claim has been withdrawn, by agreement with the Debtor.

3. First and foremost, Kirschner lacks standing to bring his claims against Leventon. The claims were not adequately preserved under the Plan. Even if preserved, the claims are not "Estate Claims" (the only claims Kirschner has authority to pursue under the Plan), as Leventon is not and never has been an insider of HCMLP. The Court also lacks subject matter jurisdiction to preside over the claims. As a result, Rule 12(b)(1) requires dismissal of all claims asserted against Leventon.

4. In addition to Kirschner's inability to meet threshold standing requirements and the Court's lack of subject matter jurisdiction, all claims against Leventon also should be dismissed for failure to state claims upon which relief may be granted under Rule 12(b)(6). The Complaint asserts nothing more than conclusory allegations of guilt-by-association with the former leadership of HCMLP, with bare allegations against Leventon that he merely drafted documents and performed other customary in-house counsel activities, all at the direction of HCMLP's then

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion or in the Complaint [Dkt. 2934]. Unless otherwise stated herein, docket number identifications refer to Case No. 19-34054-sgj11 (the "***Bankruptcy Case***").

authorized leadership. Although the Complaint frequently lumps Leventon in with his superiors and uses monikers such as "loyalists," the 134-page Complaint contains no specific allegation that Leventon ever received a personal benefit in connection with any of the transactions alleged in the Complaint, much less that Leventon received an *improper* personal benefit. Without more, Kirschner's claims against Leventon amount to no more than new management's efforts to make in-house counsel an insurer of old management's litigation losses.

5.     In sum, Kirschner lacks standing to bring claims against Leventon, the Court does not have subject matter jurisdiction over the claims against Leventon, and the Complaint falls woefully short of satisfying the pleading requirements of both Rule 12(b)(1) and 12(b)(6). Accordingly, all claims against Leventon must be dismissed.

## RELEVANT BACKGROUND

6.     Leventon was employed by the Debtor, Highland Capital Management, L.P. ("***HCMLP***" or "***the Debtor***") from September 21, 2009 until January 2021 as Assistant General Counsel. Dkt. 2869 at ¶7.

7.     On October 16, 2019 (the "***Petition Date***"), HCMLP filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"). On November 24, 2020, HCMLP filed the Plan [Dkt. 1808]. Thereafter, on February 22, 2021 (the "***Confirmation Date***"), the Bankruptcy Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Dkt. 1943] (the "***Confirmation Order***").

8.     HCMLP filed the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization [Dkt. 2700] on August 11, 2021 (the "***Effective Date***"). Since the Effective Date, the Plan has been substantially consummated. See Adv. Proc. No. 3:21-cv-01895-D, pp. 17-20 [Dkt. 14] (Oct. 15, 2021).

9.      Pursuant to the Plan, two trusts were established to assert post-confirmation causes of action: (1) the Claimant Trust and (2) the Litigation Sub-Trust. All causes of action other than "Reorganized Debtor Assets" were transferred from the Debtor to the Claimant Trust by the Effective Date. *See* Plan § IV.B; Claimant Trust Agreement §§ 2.2, 2.3 [Dkt. 1811-2].[2]

10.     Under the Plan, only "Estate Claims" were transferred from the Claimant Trust to the Litigation Sub-Trust. *See* Plan § IV.B.; Dkt. 1811-4 (the "***Litigation Sub-Trust Agreement***"), § 2.3.

11.     On October 15, 2021, Kirschner commenced this Adversary Proceeding.

## LEGAL STANDARD

### I.      Federal Rule of Civil Procedure 12(b)(1)

12.     Federal courts have jurisdiction only where a case is presented by a party with standing to litigate. *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 25 (5th Cir. 1997). To survive a Federal Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction on the basis of standing, the plaintiff bears the burden to establish three elements: "(1) the plaintiff must have suffered an 'injury in fact'; (2) the 'injury in fact' is causally connected to the defendant's actions; and (3) the plaintiff's injury must be likely to be 'redressed by a favorable decision.'" *Mulvey v. Allstate Ins. Co.*, Civ. No. 3:18-CV-1271-K, 2018 U.S. Dist. LEXIS 204804, at *3 (N.D. Tex. Dec. 4, 2018) (internal citations omitted). At the pleading stage of the case, "the plaintiff must 'clearly… allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (internal citation omitted).

---

[2] *See* Plan, Definition of "Claimant Trust Assets" (expressly carving out "Reorganized Debtor Assets" from the definition); Plan, Definition of "Reorganized Debtor Assets." Only the Reorganized Debtor has standing to assert a cause of action that is considered a Reorganized Debtor Asset.

## II.     Federal Rule of Civil Procedure 12(b)(6)

13.     To survive a Federal Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a pleading does not set forth a legally "plausible claim" unless its non-conclusory allegations of wrongdoing are "more likely" than a lawful, alternative explanation. *Id.* at 679, 681.

## III.     Federal Rule of Civil Procedure 12(e)

14.     Fed. R. Civ. P. 12(e) allows a party to "move for a more definite statement" if "a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed…" *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999). On this basis, the Fifth Circuit has rejected "group pleadings" whereby a plaintiff pleads the element of a fraudulent misstatement or omission by impermissibly attributing corporate statements to individual defendants "based solely on their corporate titles" and without connecting any particular defendant to the fraud. *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 364 (5th Cir. 2004) (allegations against a general group of defendants are not "properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded").[3]

## ARGUMENT AND AUTHORITIES

## I.     All Claims Against Leventon Must be Dismissed Due to Kirschner's Lack of Standing

### A.     The Plan Did Not Adequately Preserve *Any* Specific State Law Claims.

15.     A plan must be "specific and unequivocal" in identifying causes of action that a debtor intends to preserve and pursue post-confirmation. *See Wooley v. Haynes & Boone, L.L.P.*

---

[3] *Accord United States CFTC v. M25 Invs., Inc.*, Case No. 3:09-CV-1831-M, 2010 U.S. Dist. LEXIS 20557, at *14-15 (N.D. Tex. Mar. 6, 2010) (because of "the use of improper group pleading," granting Fed. R. Civ. P. 12(e) motion to require plaintiff "to replead its complaint to more particularly allege who did or said what.").

*(In re SI Restructuring Inc.)*, 714 F.3d 860, 864 (5th Cir. 2013) (citing *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355-56 (5th Cir. 2008)). Such reservation is a prerequisite to Kirschner having standing and is a jurisdictional requirement that is separate from the issue of the court's subject matter jurisdiction to preside over the claims. *See United Operating*, 540 F.3d at 354-55 ("Standing is a jurisdictional requirement, and we are obliged to ensure it is satisfied regardless whether the parties address the matter").

16.     Blanket statements purporting to reserve "any and all" causes of action do not meet the required level of specificity. *Id*. The Fifth Circuit explained that "a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation." *Id*. at 355. Proper notice "allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it," and, "absent 'specific and unequivocal' retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote." *Id*. (quoting *In re Paramount Plastics, Inc.*, 172 B.R. 331, 334 (Bankr. W.D. Wash. 1994)).

17.     Attached as Exhibit DD to the *Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, dated as of February 1, 2021 [Dkt. 1875], is the "Schedule of Retained Causes of Action." This schedule is a generic laundry list of claims that may be asserted post-confirmation, with a 17-page list of potential defendants. Except for claims for civil conspiracy, discussed below, this list is tantamount to the "any and all claims" language rejected by the Fifth Circuit in *United Operating*. 540 F.3d at 356. Pursuant to this precedent, all state law claims brought by Kirschner in the Complaint must be dismissed, as they were not preserved.

**B.     Kirschner Lacks Standing to Bring a Civil Conspiracy Claim Against Leventon (Count XVI).**

18.     Even if the Schedule of Retained Causes of Action adequately preserved Kirschner's right to assert certain state law claims, the generic and exhaustive list did not expressly include civil conspiracy claims. Accordingly, the civil conspiracy claim (Count XVI) asserted against Leventon must be dismissed, as it was not preserved.

**C.     Because Leventon Is Not an Insider, Kirschner Lacks Standing to Assert the Remaining Claims Against Leventon.**

19.     Kirschner lacks standing to assert the breach of fiduciary duty (Count V), civil conspiracy (Count XVI), and unjust enrichment (Count XXVII) claims against Leventon because Leventon is not an insider against whom Estate Claims may be brought.

20.     Pursuant to the Plan [Dkt. 1808], the Litigation Sub-Trust Agreement, and the Claimant Trust Agreement, the Litigation Sub-Trust has standing only to pursue claims that are Estate Claims.[4] *See* Plan § IV.B ("Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims."); Claimant Trust Agreement § 2.3 ("The Claimant Trust shall retain all rights to commence and pursue all Causes of Action of the Debtor ***other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee*** pursuant to the terms of the Litigation Sub-Trust Agreement, and (ii) Causes of Action constituting Reorganized Debtor Assets") (emphasis added); Litigation Sub-Trust Agreement § 2.2 ("The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to ***any Estate Claim*** as of the Petition Date") (emphasis added). Therefore,

---

[4] As discussed below, the Reorganized Debtor has the sole authority to assert causes of action that are considered Reorganized Debtor Assets. *See infra* at I(D).

the Litigation Sub-Trust cannot assert any claim against the Former Employee Defendants unless it is an "Estate Claim."

21.     The Plan incorporates Dkt. 354 (the "***Final Term Sheet***"), which defines "Estate Claims" as "any and all estate claims and causes of action against Mr. Dondero, Mr. Okada, other insiders of the Debtor, and each of the Related Entities…" Compl. ¶ 11. Therefore, an Estate Claim cannot be asserted against Leventon, as he is neither an insider of the Debtor nor a Related Entity.

22.     Because the Debtor is organized as a partnership, insider status is determined by Section 101(31)(C) or Section 101(31)(E) of the Bankruptcy Code. Section 101(31)(C) provides that an "insider" of a debtor partnership includes a (1) general partner in the debtor; (2) relative of a general partner in, general partner of, or person in control of the debtor; (3) partnership in which the debtor is the general partner; (4) general partner of the debtor; or (5) person in control of the debtor. Leventon cannot be considered an insider of HCMLP pursuant to section 101(31)(C) because, at all relevant times, (1) the general partner of HCMLP was Strand Advisors, Inc. ("***Strand***") (Compl. ¶ 14), and Leventon is not alleged to be (2) a relative of Strand or Dondero, (3) a partnership in which HCMLP is a general partner, (4) a "general partner of" HCMLP, or (5) a "person in control" of HCMLP.[5]

23.     Pursuant to section 101(31)(E), an insider of a debtor also means an "affiliate, or insider of an affiliate as if such affiliate were the debtor." Leventon is not an insider of HCMLP under this definition either because Strand is an "affiliate" of the Debtor, and the Complaint does

---

[5] The Complaint could not allege that Leventon is a "person in control" because, pursuant to section 4.1(a) of the Fourth LPA, Strand, as general partner of the Debtor, was granted "full control of [*sic*] over all activities of the Partnership," including "the control of any matters affecting the rights and obligations of the Partnership, including, without limitation, the conduct of any litigation, the incurring of legal expenses, and the settlement of claims and suits."  There is no allegation that Leventon was a director or officer of Strand.

not allege—nor could it—that Leventon is an insider of Strand.[6]

24. Nor is Leventon one of the "Related Entities." Exhibit D to the Final Term Sheet defines that term, in relevant part, as "(v) any relative… of Mr. Dondero or Mr. Okada… [or] (vii) any entity or person that is an insider of the Debtor under Section 101(31) of the Bankruptcy Code…" The Complaint does not allege that Leventon fits any of those roles. Finally, Schedule C to the Final Term Sheet identifies all natural persons covered under the definition of Related Entities, but does not include Leventon. [Dkt. 354, Ex. D, Schedule C].[7]

25. The Complaint does not—and cannot—allege that Leventon is an insider of the Debtor or a Related Entity; accordingly, any claim asserted against Leventon cannot constitute an Estate Claim. As Kirschner only has standing to assert Estate Claims, the claims asserted against Leventon must be dismissed for lack of subject matter jurisdiction.

**D.     Kirschner Lacks Standing to Bring Breach of Fiduciary Duty Claims that Are Reorganized Debtor Assets (Count V).**

26. Kirschner also lacks standing to bring the breach of fiduciary duty claim against Leventon (Count V) because the claim constitutes part of the Reorganized Debtor Assets, which only the Reorganized Debtor may pursue. Specifically, the Plan provides that the Reorganized Debtor will administer "Reorganized Debtor Assets," Plan § IV.A, which expressly ***includes***

---

[6] Strand is a corporation. Section 101(31)(B) of the Bankruptcy Code provides that an "insider" of a corporation includes a "(i) director of the [corporation], (ii) officer of the [corporation], (iii) person in control of the [corporation], (iv) partnership in which the [corporation] is a general partner, (v) general partner of the [corporation], or (vi) relative of a general partner, director, officer, or person in control of the [corporation]." The Complaint does not allege (nor could it) that Leventon served in any of these roles for Strand.

[7] Throughout the docket, HCMLP acknowledges that Leventon is not an insider. HCMLP filed the above-cited Schedule C (listing all individual insiders) three times without including Leventon. Dkt. 281-1, 354, and 466. The Debtor's Statement of Financial Affairs lists all payments to insiders for one year prior to filing for bankruptcy; it includes salary payments to officers of Strand, but does not include payment of Leventon's salary. Dkt. 248 at Ex. C to SOFA #4. HCMLP filed an exhibit with a "complete list of individual persons listed as Insiders," but did not include Leventon. Dkt. 848-1 at Ex. A, p.5. Finally, HCMLP's Monthly Operating Reports, each signed by post-Dondero management, included salary payments to insiders that also were HCMLP employees, but did not include such payments to Leventon. Dkt. 800, 913, 1014, 1115, 1329, 1493, 1710, 1949, and 2030.

breach of fiduciary duty claims.[8] The Plan explicitly excludes Reorganized Debtor Assets from the assets transferred to the Claimant Trust.[9] Therefore, Kirschner lacks standing to bring the breach of fiduciary duty claims, as they remained with the Reorganized Debtor, were not transferred to the Claimant Trust, and could not have been assigned to the Litigation Sub-Trust.

## II. All Claims for Relief Against Leventon Must be Dismissed for Lack of Subject Matter Jurisdiction (Counts V, XVI, XXVII).

27.     The arguments set forth in the Former Employee Defendants' Brief in Support of Motion to Withdraw the Reference [Adv. Proc. Dkt. 28] (the "***Motion to Withdraw Brief***") and their Reply in support thereof [Adv. Proc. Dkt. 108] (the "***Motion to Withdraw Reply***") explain why the Court lacks subject matter jurisdiction over "***Non-Core Causes of Action***" applicable to Leventon. Leventon hereby incorporates section II(A) of the Motion to Withdraw Brief and section I of the Motion to Withdraw Reply. All the remaining claims against Leventon are Non-Core Causes of Action.

28.     The Complaint was filed in the Bankruptcy Court and asserts jurisdiction under 28 U.S.C. § 1334. Although the Complaint asserts claims arising prior to the confirmation of the Plan, the Complaint was filed seven months after confirmation, the Non-Core Causes of Action assert state law claims, no "antagonism" existed (nor is it alleged in the Complaint to have existed) with

---

[8] "Reorganized Debtor Assets" means "any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action ***(including, without limitation, claims for breach of fiduciary duty)***, that, for any reason, are not capable of being transferred to the Claimant Trust. For the avoidance of doubt, 'Reorganized Debtor Assets' includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds." *See* Plan, Definition of "Reorganized Debtor Assets" (emphasis added).

[9] "Claimant Trust Assets" means "(i) ***other than the Reorganized Debtor Assets (which are expressly excluded from this definition)***, all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC. For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets." *See* Definition of "Claimant Trust Assets" (emphasis added).

respect to the Non-Core Causes of Action against Leventon prior to confirmation of the Plan, and

the pursuit of the merits of the Non-Core Causes of Action does not require interpretation of the

Plan. Accordingly, under binding Fifth Circuit precedent in *Bank of La. v. Craig's Stores of Texas,*

*Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388 (5th Cir. 2001) and its progeny, no

jurisdiction exists under 28 U.S.C. § 1334 to adjudicate the Non-Core Causes of Action, and the

Non-Core Causes of Action must be dismissed. *See* Fed. R. Civ. P. 12(h)(3) ("If the court

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### III. The Complaint Fails to State a Claim Upon Which Relief Can be Granted as to All Claims Asserted Against Leventon.

#### A. Kirschner Fails to State a Claim for Breach of Fiduciary Duty by Leventon Based on Alleged Conduct Resulting in HCMLP Liabilities (Count V).

##### 1. *Count V Fails to State a Claim Because Kirschner Asserts a Professional Negligence Claim Under the Guise of Breach of Fiduciary Duty.*

29.     The Complaint acknowledges that Leventon was merely an employee in HCMLP's

legal team, not an officer or director; as such, his only alleged fiduciary duty arises from his

provision of legal services as an in-house attorney. Compl. ¶¶ 20, 196. Because Kirschner's

allegations sound in professional negligence (*i.e.*, legal malpractice) and fail to allege that

Leventon obtained an improper benefit, Kirschner fails to state a breach of fiduciary duty claim

for which relief may be granted.

30.     To prevail on a breach of fiduciary duty claim against an attorney, a plaintiff must

prove (1) the existence of a fiduciary relationship, (2) breach, (3) causation, and (4) damages to

the plaintiff. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex.

App.—Austin 2009, no pet.) (*citing Floyd v. Hefner*, 556 F. Supp. 2d 617, 661 (S.D. Tex. 2008)).

The breach element in a breach of fiduciary duty claim against an attorney is primarily

distinguishable from a mere legal malpractice claim because it "focuses on whether the attorney

obtained an improper benefit from representing the client." *Border Demolition & Entvl., Inc. v.*

*Pineda*, 535 S.W.3d 140, 159 – 160 (Tex. App.—El Paso 2017, no pet.); *Beck*, 284 S.W.3d at 429; *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.).

31.     The foregoing "anti-fracturing rule prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as… breach of fiduciary duty…" *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied). As explained by the Dallas Court of Appeals, this rule is important because, "[e]ven if a complaint implicates a lawyer's fiduciary duties, it does not necessarily follow that such a complaint is actionable apart from a negligence claim." *Won Pak*, 313 S.W.3d at 458; *see also Isaacs v. Schleier*, 356 S.W.3d 548, 559-560 (Tex. App.—Texarkana 2011, pet. denied) (allegation that attorney failed to disclose that he represented both sides of a real estate transaction sounded in negligence, not fiduciary duty). In that regard, this Court must look beyond mere labels in the Complaint and determine, *as a question of law*, whether the "gravamen" of the allegations sound in negligence because they focus on "the quality or adequacy of the attorney's representation," or, in contrast, whether the "gravamen" of the allegations sound in fiduciary duty because they focus on "the attorney obtain[ing] an improper benefit from representing the client…" *Won Pak*, 313 S.W.3d at 457 ("Whether certain allegations asserted against an attorney and labeled as breach of fiduciary duty or fraud are actually claims for professional negligence is a question of law to be determined by the court"); *Official Stanford Investors Comm. v. Greenberg Traurig, LLP*, 2014 WL 12572881, at *6 (N.D. Tex. Dec. 17, 2014) (Godbey, J.) (Texas courts consistently find that alleged misrepresentations or conflicts of interest giving rise to a breach of fiduciary duty claim "are those in which the lawyer has a direct pecuniary interest… that is adverse to the client").

32.     *Won Pak v. Harris* is instructive on the factual situation before the Court and, specifically, whether the Complaint properly alleges that Leventon obtained an improper

pecuniary benefit. 313 S.W.3d at 457-458. In that case, an attorney represented Sun Tec and multiple investors in a merger transaction to be accomplished via a new Texas limited partnership. Shortly after Sun Tec assigned its service contracts to the new partnership, the investors used their powers as general partner to exclude Sun Tec's owners, thereby stripping away future profits. Sun Tec's owners sued the attorney, who allegedly had secret communications with the investors before the merger closed, alleging he "conspired with, or aided and abetted the fraud of the other investors by not disclosing the conflict of interest… 'having divided loyalties among the six clients,' failing to disclose [investor's] email, failing to disclose after the merger that he did not draft the document assigning Sun Tec's vendor's contracts [to the new partnership], and 'failing to take corrective action' after he learned of their fraud." *Id*. at 458.

33.     The trial court held that the complaints "sound in negligence and not breach of fiduciary duty" because, although alleging that the mishandling of the representation enabled fellow investors to defraud them out of their business, the plaintiffs did "not complain specifically about any improper benefit [the attorney] received from representing" them. *Id*. The Dallas Court of Appeals affirmed the judgment in favor of the attorney. As recognized by the Dallas Court of Appeals, "the heart of [the] complaint is [the] alleged failure to provide adequate legal representation by his failure to properly inform, advise, and communicate with [plaintiffs]. As such, we conclude the gist of [the] allegations involves the quality of [the] representation rather than the integrity and fidelity of the attorney." *Id*.

34.     Similarly here, the gravamen of Kirschner's breach of fiduciary duty claim against Leventon (Count V) is that Leventon's performance of his job duties at the directions of his superiors allegedly assisted them in transactions that caused HCMLP to incur claims from third parties that it otherwise "never would have incurred" or would have resolved "for substantially

lower amounts." Compl. ¶ 197. Kirschner's focus is on the *harm* to HCMLP, rather than any *benefit* to Leventon. The conduct allegations specific to Leventon likewise concern quality of the legal representation and failure to adequately inform or advise the client, or others on behalf of the client, of a conflict of interest. *See, e.g.*, Complaint ¶ 200 (alleged postpetition failure to disclose transfer made by other persons years earlier); ¶ 203 (allegedly deficient trial testimony); ¶ 204 (alleged "assist[ance] in the drafting and execution of the agreement" that effected a transfer); ¶ 205 ("'providing direction' to keep the Redeemer Committee in the dark" about Dondero's alleged scheme). Far from addressing that Leventon obtained an "improper" personal benefit from any transaction addressed in Count V, Kirschner utterly fails to allege anywhere in the Complaint that Leventon obtained *any* personal financial benefit from any transaction addressed in Count V. *See* Complaint ¶¶ 195–208. As taught by Judge Godbey in the *Official Stanford Investors Committee* decision, the omission is fatal to the breach of fiduciary duty claim against Leventon, and Count V must be dismissed. 2014 WL 12572881, at *6 (dismissing a fiduciary duty claim when the law firm allegedly was "aware to a substantial degree of Stanford's misconduct, yet nevertheless continued to provide legal services that ultimately contributed to the proliferation and success of the underlying scheme," and holding that the law firm's work "in order to assure its continued employment by Stanford … does not allege an improper pecuniary interest supporting a conflict of interest; rather, it alleges the same general interest in getting paid that underlies every legal representation, an interest that Texas courts have consistently found insufficient to support a claim for breach of fiduciary duty").

    35.    Accordingly, Count V sounds in professional negligence and must be dismissed. *Id.* at 438-39.[10]

---

[10] A professional negligence claim is subject to a two-year statute of limitations, rather than the four-year limitations period applicable to fiduciary duty claims. TEX. CIV. PRAC. & REM. CODE § 16.003(a). If the Court finds that Plaintiff's

      2.      *The Complaint Fails to Allege Leventon Did Anything but Obey and Follow Lawful Client Instructions.*

36.      The Complaint states that Leventon performed all of the conduct alleged in support of the breach of fiduciary duty claim (Count V) at the instruction of Dondero, the founder and head of HCMLP and Leventon's client representative while serving as in-house counsel for HCMLP. Compl. ¶¶ 197-200, 204-208. Notably, however, the Complaint fails to allege that such instructions constituted a breach of the Fourth Amended and Restated Agreement of Limited Partnership of HCMLP (the "***Fourth LPA***") [Adv. Proc. No. 21-03003-sgj, Dkt. 109-8.]. Texas law is well-established that an attorney cannot be liable for malpractice if they obey and follow a client's lawful instruction. *See Edwards v. Dunlop-Gates*, 344 S.W.3d 424, 433 (Tex. App.—El Paso 2011, pet. denied); *Isaacs*, 356 S.W.3d at 559; *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923-924 (Tex. App.—Fort Worth 2003, pet. denied); *Garrett v. Giblin*, 940 S.W.2d 408, 410 (Tex. App.—Beaumont 1997, no writ), *Zidell v. Bird*, 692 S.W.2d 550, 553 (Tex. App.—Austin 1985, no writ); *see also Wolf v. Ramirez*, 622 S.W.3d 126, 142 (Tex. App.—El Paso 2020, no pet.) (attorneys have "the duty to follow the client's instructions" as part of their fiduciary duty of integrity and fidelity). The breach of fiduciary duty claim against Leventon must be dismissed on this basis as well. Kirschner cannot recover against Leventon for actions he allegedly undertook at his workplace at the specific instruction of Dondero and management of HCMLP.[11]

---

fiduciary duty claims properly sound in negligence, then Leventon reserves the right to move to dismiss based on the applicable two-year statute.

[11] "If the principal authorizes a tort, either advertently or inadvertently, he cannot recover for harm resulting to him from it." Restatement (Second) Of Agency § 401, com. d (1957); *see also Sassen v. Tanglegrove Townhouse Condo. Ass'n*, 877 S.W.2d 489, 492 (Tex. App.—Texarkana 1994, writ denied) (applying the same under Texas law).

3. *The Complaint Cannot, as a Matter of Texas Law, Adequately Allege the Element of Harm, as Kirschner May Not Substitute his Assessment of Leventon's Legal Work for that of the Then-Client HCMLP.*

37. The Fifth Circuit has specifically rejected post-hoc attempts such as that employed by Kirschner here to substitute a trustee's judgment for that of the then-client. *In re Segerstrom*, 247 F.3d 218, 226 (5th Cir. 2001) ("Texas courts have recognized that legal malpractice actions are 'intrinsically personal,' and that the satisfaction of the client in a legal malpractice case is 'paramount.'") (*citing Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex. App.—San Antonio 1994, writ ref'd.); *Charles v. Tamez*, 878 S.W.2d 201, 208 (Tex. App.—Corpus Christi 1994, writ denied)).

38. In the foregoing well-reasoned decisions, state and federal courts following Texas law explain why allegations must focus on the satisfaction of the client then-served by the attorney, and not on the satisfaction of a latter-arising bankruptcy estate asserting its dissatisfaction on behalf of the client. The courts also warn of the consequences of ignoring this rule when, as is the case with the HCMLP creditor body, a client's former litigation opponents gain control of the client. See *McLaughlin v. Martin*, 940 S.W.2d 261, 264 (Tex. App.—Houston [14th Dist.] 1997, no writ) ("The assignment of a malpractice claim is perhaps most incompatible with an attorney's duty of loyalty. An attorney's loyalty to his client is likely to be compromised if he knows the client can sell a potential malpractice claim to his adversary."); *Zuniga*, 878 S.W.2d at 318 ("By agreeing to represent an insolvent defendant, a lawyer could be putting his own assets and insurance within reach of a plaintiff who otherwise would have an uncollectible judgment."); *Tamez*, 878 S.W.2d at 208 (allowing previous litigation opponents to seize control of a malpractice claim "does not promote… the overall purpose of the Texas legal system.").

39. The Complaint makes no allegation that HCMLP was anything less than satisfied with Leventon's work when it was performed. While HCMLP obviously did not have the goal of

losing the Acis, Crusader, and UBS litigations, the Complaint does not allege that Leventon mismanaged litigation, but rather that he effectuated the underlying transactions leading to the litigation by, as specifically alleged in the Complaint, following the instructions of HCMLP, issued through Dondero. When the client "received[d] the precise goal" he sought in the representation, then the acts of counsel cannot be said to have caused "injury" to the client. *In re Segerstrom*, 247 F.3d at 226. Absent allegations that Leventon's then-client was dissatisfied with services provided at the time the work was performed, the claim cannot withstand dismissal.

        *4.     The Complaint Fails to Plausibly Allege that Leventon's Conduct Caused HCMLP Damages.*

    40.    A required element for a breach of a fiduciary duty or professional negligence claim against an attorney is but-for causation. In order to plead but-for causation, the plaintiff must allege that the client (1) was unaware of the illegality of its actions or (2) would have acted differently if advised differently. *See Taylor v. Scheef & Stone, LLP*, No. 3:19-CV-2602-D, 2020 WL 4432848 at *6 (N.D. Tex. July 31, 2020) (finding it "speculative to assume" a change in action of counsel would have altered the action of the client) (*citing Smith v. O'Donnell*, 288 S.W.3d 417, 422 (Tex. 2009)); *In re Segerstrom*, 247 F.3d at 226 ("The estate must prove not only that an alternative trial strategy was available to [the client], but that [the client] would have pursued that strategy with independent representation.") (*citing Trinity Universal Ins. Co. v. Bleeker*, 966 S.W.2d 489, 491 (Tex. 1998)). This element is important because the "measure of damages [is] 'the difference between the result obtained for the client and the result that would have been obtained with competent counsel.'" *Rogers v. Zanetti*, 518 S.W.3d 394, 404 (Tex. 2017); see also *Rogers v. Zanetti*, 517 S.W.3d 123, 128–29 (Tex. App.—Dallas 2015), *aff'd*, 518 S.W.3d 394 (Tex. 2017) ("To recover actual damages for the Lawyers' alleged fiduciary breaches, the Clients had to prove suit-within-a-suit causation"). The Complaint fails to adequately plead but-for causation.

41. The Complaint's conclusory assertion that "[b]ut for" the breach of "Dondero (and in turn, Strand), Ellington, and Leventon," HCMLP "never would have incurred" $350 million in allowed claims or would have resolved them "for substantially lower amounts" is insufficient to adequately plead and prove but-for causation as to Leventon. Compl. ¶ 197. Kirschner fails to allege facts that, if true, would show that there would have been a different outcome in the UBS, Crusader, and Acis litigations described in Count V absent Leventon's specific conduct. Indeed, Leventon is not mentioned at all in relation to the HarbourVest transaction.

42. "[A]llegations that a lawyer 'assisted' a client's illegal action or provided deficient legal advice that contributed to the client's harm, without more, are insufficient to satisfy the causation prong [of a] professional negligence claim." *Taylor*, WL 4432848, at *7. In *Taylor*, Judge Fitzwater held that allegations that an attorney lied to the client's regulator and drafted documents in furtherance of the client's illegal scheme "fail to plead sufficient facts" that the law firm's "assistance in illegal conduct constituted a breach of its duties to [the clients] or otherwise proximately caused their damages" because (1) the lawyer did not lie to his client, but rather (allegedly) to a third party, (2) the lawyer owed no duty to his client to whistle-blow on the client's alleged scheme, (3) the client allegedly was aware of the illegality of its conduct, and (4) there was no allegation the client would have acted differently if given different legal advice. *Id.* at *5-7.

43. Rather than plead any allegations particularized to Leventon, the Complaint focuses on the alleged conduct of Dondero and others as driving and profiting from these transactions, with Leventon's role limited to non-specific in-house counsel work that any lawyer on the legal team could have performed. *See* Compl. ¶ 67. Yet the Complaint fails to allege that Dondero and HCMLP would have acted any differently but for Leventon's "aid" in drafting legal documents to "consummate these transactions." *See* Compl. ¶ 67. The Complaint alleges numerous facts that

compel the opposite conclusion to but-for causation, including that "Dondero made every material business, operational, management, and financial decision for HCMLP" (Compl. ¶ 104); "Dondero was the 'ultimate decision-maker' for 'every [] entity in the firm and for the firm as a whole'" (Compl. ¶ 108); and "Dondero frequently instructed HCMLP's legal department to perform legal services in connection with Dondero's personal and business interests." (Compl. ¶ 113). These general and non-specific allegations do not adequately plead but-for causation as to Leventon. *Taylor*, 2020 WL 4432848, at \*7.

44. As to the UBS liabilities, Leventon was not even employed by HCMLP at the time UBS commenced its initial action against HCMLP. *Compare* Dkt. 2869 at ¶ 7 (Leventon's employment began September 21, 2009), *with* Compl. ¶ 44 (the UBS action commenced against HCMLP February 24, 2009). The *sole* allegation against Leventon is that "[a]fter the Petition Date, Dondero, Ellington, and Leventon actively concealed this transfer [to Sentinel in 2017]." Compl. ¶ 200. But there are no facts alleged in the Complaint to suggest that Leventon even knew about this transfer. Leventon is not alleged to have been involved at all, much less a necessary actor, in effectuating the transfer. The Complaint does not even plead how the alleged concealment, rather than the transfer itself, caused harm to HCMLP.

45. As to the Acis liabilities, Leventon's only alleged involvement is tangential at best, and the Complaint makes no attempt to make the requisite specific causal connection with the liability incurred by HCMLP. Testimony at trial characterized as of "questionable reliability" does not constitute a breach of a duty to HCMLP. Compl. ¶ 203. Likewise, "assist[ing] in the drafting and execution of the agreement that transferred Acis's interest in a note receivable from HCMLP" does not permit the conclusion that the subject transfer and $23 million liability would not have occurred but for Leventon's drafting assistance because (a) Leventon merely "assisted" others in

drafting the documents, indicating they would have been drafted without Leventon's involvement, (b) Leventon is not alleged to have thought up, advised, or instructed that the transaction take place, and (c) the Complaint never links the drafting of the note receivable agreement to any portion of the $23 million Acis liability. Compl. ¶ 204.

46.     As to the Crusader liabilities, the Complaint lists three underlying transactions that allegedly led to the Crusader liability (the "***Crusader Transactions***"). Compl. ¶ 206. However, other than a blanket statement that Leventon "caused" these transactions, the Complaint includes no allegations that Leventon thought up, drafted documents, advised, or otherwise participated in any of the Crusader Transactions. The Complaint certainly does not allege that these transactions would not have taken place but-for Leventon's involvement. Instead, the Complaint merely alleges that Leventon somehow aided Dondero in "keeping the [Crusader] Redeemer Committee in the dark" by allegedly communicating HCMLP's misrepresentations. Compl. ¶ 206. There is no allegation that but-for Leventon's communications, the Redeemer Committee would not have sought, and obtained, the same judgment against HCMLP for the Crusader Transactions.

47.     Accordingly, Count V must be dismissed for failure to sufficiently allege but-for causation against Leventon. In the alternative, Count V must be re-plead for lack of a definite statement because Kirschner vaguely groups Leventon with numerous other defendants in this claim despite a lack of specific connection between Leventon and alleged transfers.

> 5.     *The Complaint Cannot Claim Breach of Fiduciary Duties for Allegedly Enabling Conduct Harmful to Creditors.*

48.     Claims that a company's professionals aided and abetted the company in causing injury to its creditors do not belong to a party standing in the shoes of the company. *Reneker v. Offill*, 2009 WL 804134, at *6 (N.D. Tex. Mar. 26, 2009). As such, Kirschner, standing in the shoes of HCMLP, has no standing to assert claims resulting injuries caused by HCMLP to its

creditors.

49.     Moreover, Kirschner cannot recover against Leventon for the harms allegedly caused by HCMLP under the guise of a breach of fiduciary duty. In *Reneker*, Chief Judge Fitzwater dismissed a breach of fiduciary duty claim against a company's law firm for allegedly enabling conduct that harmed the company's creditors, which then resulted in the estate being liable to such creditors. *Id.* at *9. In so doing, he held that "allowing the [clients] to continue illegal and/or fraudulent activity, would only amount to a breach of fiduciary duty if [the law firm] owed the [clients] a fiduciary duty not to enable them to continue such activities." *Id.*; *see also Latitude Sols., Inc. v. DeJoria*, 922 F.3d 690, 697 (5th Cir. 2019) (adopting *Reneker* in reversing the trial court's damages finding against the defendants for breaches of fiduciary duty that resulted in creditor claims against the estate).

50.     Where the debtor "has joined with a third party in defrauding its creditors, the [debtor's] trustee cannot recover against the third party for the damage to the creditors." *Newby v. Enron Corp., (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 511 F. Supp. 2d 742, 797-798 (S.D. Tex. 2005) (*citing Breeden v. Kirkpatrick & Lockhart LLP* (*In re Bennett Funding Group, Inc.*), 336 F.3d 94, 100 (2d Cir. 2003)); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991). This is the so-called "*Wagoner* Rule"; "though the Fifth Circuit has not directly addressed the *Wagoner rule* specifically, district courts within this Circuit have agreed with the underlying principle." *Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification Beams Sys., LLC*, 556 B.R. 815, 838 (W.D. Tex. 2017) (citing *In re Enron Corp.*, 2007 WL 789141, at *7); *Finova Capital Corp. v. Lawrence*, No. 399CV2552-M, 2000 WL 1808276, at *2 (N.D. Tex. Dec. 8, 2000). "The rationale for the *Wagoner* rule is the fundamental principle of agency that the misconduct of managers within the scope of their employment will

normally be imputed to the corporation." *Bennett Funding*, 336 F.3d at 100. The corporation only may recover against the agent if he "is really committing fraud for his own benefit," and "has totally abandoned the principal's interests." *Id*. "This rule applies to professional liability claims." *Newby*, 511 F. Supp. 2d at 797. Therefore, a party standing in the shoes of the company does not have standing to bring claims that the professionals aided and abetted a company's bad acts against third parties. *Id*. As a matter of law, Kirschner cannot allege breaches of fiduciary duty against Leventon for allegedly enabling conduct harmful to a creditor, which then resulted in HCMLP's estate being liable to such creditor. *Id*.

> 6.  *The Complaint Fails to Sufficiently Allege an Entitlement to Damages, as it Does Not Allege "Willful or Wanton Misconduct" Necessary for Liability Under the Governing Partnership Agreement*

51.     The Fourth LPA, effective at the time of the conduct alleged in the Complaint, is governed by the laws of Delaware. *See* Fourth LPA at § 6.11. Under Delaware law, "if the limited partnership agreement unambiguously provides for fiduciary duties, any claim of a breach of fiduciary duty must be analyzed generally in terms of the partnership agreement." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170-71 (Del. 2002). Here, the Fourth LPA specifically provides for fiduciary duties. *See, e.g.*, Fourth LPA at §§ 4.1(e)(ii)-(iii), 4.1(g). Therefore, the Fourth LPA "leaves no room for the application of common law fiduciary duty principles to measure the General Partner's conduct" and breach of the Fourth LPA is the "sole source of protection." *Gotham Partners,* 817 A.2d at 171.

52.     Section 4.1(i)(i) of the Fourth LPA, titled "Liability of General Partner," provides, "Neither the General Partner nor its directors, officers, ***employees, agents, or representatives*** shall be liable to the Partnership or any Limited Partner for errors in judgment or for any acts or omissions that do not constitute gross negligence or willful or wanton misconduct." As the Complaint alleges that Leventon acted as an agent of the General Partner, Kirschner is barred from

recovering damages for any conduct of Leventon that does not satisfy a "willful and wanton misconduct" standard. Yet, as discussed above, the allegations against Leventon in Count V sound in professional negligence, were performed at the authorization of his client, and, as alleged, do not rise to the requisite level of "willful or wanton misconduct."

> **B.** **Kirschner Fails to State a Claim Against Leventon for Civil Conspiracy to Breach Fiduciary Duties (Count XVI).**

53.     Kirschner also fails to state a claim for civil conspiracy against Leventon. To state a claim for conspiracy, a plaintiff must allege "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 192 (Tex. App.—El Paso 2017, no pet.) (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)).

> *1.*     *The Allegations Against Leventon Are Vague, Conclusory, and Fail to Allege a Specific Object or Overt Act Involving Leventon*

54.     Count XVI contains allegations plead in the most vague and conclusory manner as to Leventon. The entirety of Count XVI and the supporting facts fail to identity a single act or omission by Leventon, other than including him in a laundry list of names generally "causing" the alleged breaches. Although the claim does allege certain acts in paragraph 274, none of them pertains to Leventon. Compl. ¶ 274.

> *2.*     *As an Agent of HCMLP, Leventon Cannot Legally Conspire with Other Agents of HCMLP.*

55.     Count XVI also fails because Leventon, acting as one of HCMLP's employees in the legal team, cannot as a matter of law conspire with other HCMLP employees when acting within the scope of his work authority, and the Complaint fails to allege that Leventon acted outside of the scope of his authority. *See Graham v. Pazos De La Torre*, 821 S.W.2d 162, 166

(Tex. App.—Corpus Christi-Edinburg 1991, writ denied) ("the general rules are that the principal is liable for the authorized acts of his agent and an agent is liable only if he acts beyond the scope of his authority."); *cf. Adidas Am. Inc. v. Shoebacca Ltd.*, 3:20-CV-03248-N, 2021 U.S. Dist. LEXIS 183828, 2021 WL 4399745, at *4 (N.D. Tex. Sept. 27, 2021) ("Under Texas law, a corporation's agents generally cannot conspire with each other or with the corporation because their acts are attributed to the corporation."); *see also III Forks Real Estate, L.P. v. Cohen*, 228 S.W.3d 810, 814 (Tex. App.–Dallas 2007, no pet.) ("A principal is liable for the fraudulent acts and misrepresentations of its authorized agent, even though the principal had no knowledge of the fraud and did not consent to it, whether or not the principal derives a benefit from it.").[12]

56.     The Complaint vaguely alleges that Leventon, Ellington and Dondero "orchestrated myriad transactions to divert funds from HCMLP to Dondero." Compl. ¶ 271. Yet the Complaint does not allege that Leventon's acts with regard to these transactions—described elsewhere in the Complaint as essentially drafting legal documents—were outside the scope of his authority. The absence of allegations in the Complaint that Leventon acted outside of the scope of his authority is not surprising given that "[c]onduct that serves ***any*** purpose of the employer is within the scope of employment even if the conduct escalates beyond that assigned or permitted." *Fink v. Anderson*, 477 S.W.3d 460, 466 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (emphasis added). Strand (and thereby Dondero) had sole discretion to control HCMLP by virtue of the Fourth LPA, and the Complaint specifically alleges that Dondero orchestrated the wrongful actions underlying the alleged conspiracy. *See* Section 4.1(a) of the LPA ("The general Partner shall conduct, direct, and

---

[12] The Restatement (Second) of Agency § 401, applied by Texas courts in analyzing common law agency relationships, explains that "[i]f the principal authorizes a tort, either advertently or inadvertently, he cannot recover for harm resulting to him from it. Hence, if the principal directs the agent to do an act which, to the knowledge of the agent, is either tortious or criminal, the agent is subject to no liability to the principal…" *Id.* com. d (1957); *see also Sassen*, 877 S.W.2d at 492 (applying the same).

exercise full control of over all activities of the Partnership …"). The Complaint solely seeks relief against Leventon for acts he took at the instruction, or with the consent, of Dondero, the control person of HCMLP. As a result, the Complaint does not (and cannot) allege that Leventon's conduct failed to serve *any* purpose of HCMLP or that Leventon acted outside of the scope of his authority, and Count XVI must be dismissed on this basis.

3.    *No Actionable Civil Conspiracy Exists Because the Complaint Fails to Allege a "Meeting of the Minds" to Cause the Injury.*

57.    Even if a valid conspiracy claim could be plead in Texas under the facts alleged, the Complaint fails to allege any non-conclusory facts to show that Leventon had the specific intent to harm HCMLP, as required to allege a "meeting of the minds on the object or course of action." *See MVS*, 545 S.W.3d at 192 ("The conspiring parties must be aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement," and an "actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means."). Agreeing to the conduct alone is not enough: "Conspiracy… requires a specific intent to cause the intended injury." *In re Artho*, 587 B.R. 866, 884-85 (Bankr. N.D. Tex. 2018); *see also Chu v. Hong*, 249 S.W.3d 441, 447 (Tex. 2008) (same). Instead, the Complaint vaguely lumps Leventon into a group of defendants and alleges that they "specifically intended to benefit themselves and Dondero at the expense of HCMLP," without more. Compl. ¶ 275. These bare allegations are insufficient to support Leventon's intent.

4.    *Dismissal of Certain of the Dondero Fiduciary Duty Claims Also Requires Dismissal of Count XVI*

58.    Leventon allegedly conspired with Dondero in violating his fiduciary duty in relation to the transactions listed at Complaint ¶ 274 (a) – (c). *See* Compl. at Count IV and XIV (breach of fiduciary duty claims against Dondero for the same transactions). Conspiracy is a derivative tort that depends on participation in some underlying tort. *West Ford Advisors, LLC v.*

*Sungard Consulting Servs., Inc.*, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. denied). If the underlying tort claim is dismissed, then the conspiracy claim must also be dismissed. *Id.* Therefore, if the Court dismisses Counts IV and XIV against Dondero in whole or in part for certain of the named transactions, then the Court must also dismiss Count XVI for conspiracy against Leventon for the same transactions.

## C. Unjust Enrichment is Not an Independent Claim Cognizable Under Texas Law (Count XXVII).

59. The Complaint includes a claim for "unjust enrichment" against Leventon, but, as the Fifth Circuit has held, no such independent cause of action exists under Texas law. *Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) ("unjust enrichment describes the nature of certain claims and remedies, not a distinct cause of action itself"); *see also McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 891 (Tex. App.—Dallas 2014, pet. denied) ("unjust enrichment is not an independent claim; rather it is a theory of recovery").

60. Count XXVII should be dismissed under binding precedent in the Northern District of Texas, which routinely dismisses purported "claims" for unjust enrichment. *See, e.g.*, *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp.2d 539, 561 (N.D. Tex. 2009); *Taylor v. Trevino*, No. 3:20-CV-0393-D, 2021 WL 347566, at *4 (N.D. Tex. Feb. 2, 2021); *Arencibia v. AGA Serv. Co.*, No. 4:20-cv-00819-O, 2020 WL 10056799, at *5 (N.D. Tex. Nov. 13, 2020).

## CONCLUSION AND REQUESTED RELIEF

61. The Court should dismiss without prejudice the claims against Leventon because Kirschner lacks standing and the Court lacks subject matter jurisdiction to adjudicate them. Moreover, the Court should dismiss with prejudice all the claims, because the Complaint fails to state claims for which relief can be granted against Leventon.

Dated: March 23, 2022

By: */s/ Michelle Hartmann*                             
Michelle Hartmann
State Bar No. 24032402
**BAKER & MCKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
**BAKER & MCKENZIE LLP**
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for Isaac Leventon*

## CERTIFICATE OF SERVICE

I certify that on March 23, 2022, a true and correct copy of the above and foregoing document was served via electronic email through the Court's CM/ECF system to the parties that have requested or consented to such service.

*/s/ Michelle Hartmann*
Michelle Hartmann