**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
**Counsel for the Charitable Defendants**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 19-34054-sgj11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Chapter 11** |
| | § | |
| **Debtor** | § | |
| **MARC S. KIRSCHNER, AS TRUSTEE OF THE LITIGATION SUB-TRUST** | § | **Adversary No. 21-03076-sgj** |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND** | § | |

| | |
|---|---|
| **ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,** | § |
| **Defendants.** | § |

**BRIEF IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT**

****RELIEF SOUGHT FROM DISTRICT COURT****

# TABLE OF CONTENTS

***Page(s)***

**I. ARGUMENTS AND AUTHORITIES SUPPORTING DISMISSAL** ....1

**A. Dismissal of the Aiding Bad Conduct Action and Civil Conspiracy Action is Required Under Rule 12(b)(1) and 12(b)(6) For Failure to Retain Such Claims Within the Debtor's Plan.** ....1

**B. Dismissal of Civil Conspiracy Action is Required Under Rule 12(b)(1) and 12(b)(6), as the Trustee Has No Standing Under Applicable State Law.** ....1

**C. Dismissal of the CLO HoldCo Unjust Enrichment Action Pursuant to Rule 12(b)(1) as There is No Subject Matter Jurisdiction.** ....4

**i. There is no subject matter jurisdiction under 28 U.S.C. § 1334 over the CLO HoldCo Unjust Enrichment Action.** .... 4

**ii. The Trustee lacks standing to bring the CLO HoldCo Unjust Enrichment Action.** .... 9

**D. Dismissal of the CLO HoldCo Unjust Enrichment Action is Required Pursuant to Rule 12(b)(6) as the Complaint Fails to State a Claim** ....10

**i. Applicable Standard Under Rule 12(b)(6).** .... 10

**ii. Texas law does not recognize a cause of action for unjust enrichment and amendment would be futile.** .... 11

**iii. The factual allegations in the Complaint do not raise a claim that is plausible on its face.** .... 14

**iv. CLO HoldCo Unjust Enrichment Action is barred by affirmative defenses of unclean hands and in pari delicto.** .... 17

**v. The Trustee has an adequate legal remedy for the purported unjust enrichment.** .... 20

**II. ARGUMENT AND AUTHORITIES SUPPORTING MOTION FOR MORE DEFINITE STATEMENT** ....22

**III. CONCLUSION** ....25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................10, 11

*Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*,
173 F. Supp. 3d 363 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 F. App'x 256 (5th Cir. 2018)....................18

*Bank of Saipan v. CNG Fin. Corp.*,
380 F.3d 836 (5th Cir.2004)....................13, 17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985)....................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................10, 11

*BMG Direct Mktg., Inc. v. Peake*,
178 S.W.3d 763 (Tex. 2005)....................21

*Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*,
566 B.R. 815 (W.D. Tex. 2017)....................7, 20

*Caplin v. Marine Midland Grace Trust Co.*,
406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972)....................9

*Cicalese v. Univ. of Texas Med. Branch*,
456 F. Supp. 3d 859 (S.D. Tex. 2020)....................24

*ClaimHub, Inc. v. Universal Risk Ins. Servs., Inc.*,
No. H-10-2841, 2011 WL 13247456 (S.D. Tex. July 25, 2011)....................4

*Crane v. Napolitano*,
920 F.Supp.2d (N.D. Tex. 2013)....................2

*Croft v. Governor of Tex.*,
562 F.3d 735 (5th Cir. 2009)....................2

*Daniels v. Church of the Living Word #4 PGT Assoc.*,
2001 WL 1445407 (N.D. Tex. Nov. 14, 2001)....................4

*In re Delta Invs. & Dev., LLC*,
No. 12-01160-NPO, 2019 WL 137578 (Bankr. S.D. Miss. Jan. 8, 2019)....................9

*In re Dune Energy, Inc.*,
575 B.R. 716 (Bankr. W.D. Tex. 2017)....................7

*Fisher v. Halliburton*,
667 F.3d 602 (5th Cir.2012)....................17

*Floyd v. CIBC World Markets, Inc.*,
426 B.R. 622 (S.D. Tex. 2009)....................20

*Fortune Prod. Co. v. Conoco, Inc.*,
52 S.W.3d 671 (Tex. 2000)....................21

*Gilliam v. JPMorgan Chase Bank, N.A.*,
No. CV H-18-2698, 2019 WL 2648017 (S.D. Tex. June 27, 2019)....................14

*Gutierrez v. Collins*,
583 S.W.2d 312 (Tex. 1979)....................12

*Hancock v. Chicago Title Ins. Co.*,
635 F. Supp. 2d 539 (N.D. Tex. 2009)....................13

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
885 F.2d 1149 (3d Cir.1989)....................18

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
143 F.3d 1006 (5th Cir. 1998)....................4

*Ingalls v. Beutel*,
No. A-05-CA-461-SS, 2007 WL 9718103 (W.D. Tex. Nov. 28, 2007)....................3

*Janvey v. Golf Channel, Inc.*,
487 S.W.3d 560 (Tex. 2016)....................23, 24

*Jones v. Gee*,
No. CV 18-5977, 2020 WL 564956 (E.D. La. Feb. 5, 2020)....................22

*Jones v. Wells Fargo Bank, N.A.*,
666 F.3d 955 (5th Cir. 2012)....................19

*Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*,
20 F.3d 1362 (5th Cir.1994)....................17

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Uni*t,
507 U.S. 163 (1993)....................10

*In re Levenson Grp., Inc.*,
613 B.R. 418 (Bankr. N.D. Tex. 2020)....................9

*Matter of Life Partners Holdings, Inc.*,
926 F.3d 103 (5th Cir. 2019) ....................24

*Mack v. Newton*,
737 F.2d 1343 (5th Cir. 1984) ....................2, 3

*Massey v. Armco Steel Co.*,
652 S.W.2d 932 (Tex. 1983)....................1

*Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*,
2007 WL 2729935 (N.D. Tex. Sept. 18, 2007) (Solis, J.) ....................13

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*,
999 F.3d 970 (5th Cir. 2021) ....................13

*Miller v. BAC Home Loans Servicing, L.P.*,
726 F.3d 717 (5th Cir. 2013) ....................5, 17

*In re Mirant*,
675 F.3d 530 (5th Cir. 2012) ....................11

*O'Dowd v. Trueger*,
233 F.3d 197 (3d Cir. 2000)....................18

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001)....................18

*In re OGA Charters, LLC*,
2017 WL 3141918 (Bankr. S.D. Tex. 2017)....................4

*Matter of Okedokun*,
968 F.3d 378 (5th Cir. 2020) ....................14, 15, 16

*Papasan v. Allain*,
478 U.S. 265 (1986)....................10

*Paterson v. Weinberger*,
644 F.2d 521 (5th Cir. 1981) ....................4, 5

*In re Pompa*,
No. 06-31759, 2012 WL 2571156 (Bankr. S.D. Tex. June 29, 2012)....................6

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) ....................11

*In re Rambo Imaging, L.L.P.*,
No. 07-11190FRM, 2007 WL 3376163 (Bankr. W.D. Tex. Nov. 8, 2007) ....................24

*Rogers v. McDorman*,
521 F.3d 381 (5th Cir. 2008) ....................19

*Matter of Royale Airlines, Inc.*,
98 F.3d 852 (5th Cir.1996) ....................19

*In re Segerstrom*,
247 F.3d 218 (5th Cir. 2001) ....................19

*St. Paul Fire & Marine Ins. Co. v. Labuzan*,
579 F.3d 533 (5th Cir. 2009) ....................9

*Steinberg v. Buczynski*,
40 F.3d 890 (7th Cir. 1994) ....................9

*Stier v. Reading & Bates Corp.*,
992 S.W.2d 423 (Tex. 1999)....................12

*Stonecipher v. Estate of Butts*,
591 S.W.2d 806 (Tex. 1980)....................3

*Stripling v. Jordan Production Co., L.L.C.*,
234 F.3d 863 (5th Cir. 2000) ....................14

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002)....................22

*Tilton v. Marshall*,
925 S.W.2d 672 (Tex. 1996)....................1

*Tow v. Rafizadeh (In re Cyrus II P'ship)*,
413 B.R. 609 (Bankr. S.D. Tex. 2008) ....................11

*Tuchman v. DSC Commc'ns Corp.*,
14 F.3d 1061 (5th Cir. 1994) ....................10

*In re TXCO Res., Inc.*,
475 B.R. 781 (Bankr. W.D. Tex. 2012)....................21

*In re United Operating, LLC*,
540 F.3d 351 (5th Cir. 2008) ....................2

*Wilmington Savings Fund v. iHeartMedia, Inc. (In re iHeartMedia, Inc.)*,
597 B.R. 339 (Bankr. S.D. Tex. 2019) ....................11, 12

*Wood v. Gateway, Inc.*,
2003 WL 23109832 (N.D. Tex. Dec. 12, 2003) ....................13

*Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Dev. Co.*,
642 F.2d 744 (5th Cir. 1981) ....................11

*Zakaria v. STL Int'l, Inc.*,
No. 4:20-CV-01722, 2020 WL 4368096 (S.D. Tex. July 30, 2020) ....................14

**Statutes**

11 U.S.C. § 541(a) ....................18

11 U.S.C. § 544(a)(1)....................3

11 U.S.C. § 544(b) ....................3, 4

28 U.S.C. 157....................5

28 U.S.C. § 1334....................4, 5

TEX. BUS. & COM. CODE § 24.005(a)(1)....................24

TEX. BUS. & COM. CODE § 24.005(a)(2)....................25

TEX. BUS. & COM. CODE § 24.006(a) ....................24

**Rules**

FED. R. BANKR. P. 2004 ....................8

FED. R. BANKR. P. 7008(a)....................11

FED. R. CIV. P. 8....................10, 11, 22

FED. R. CIV. P. 12.................... *passim*

CLO HoldCo, Ltd. ("CLO HoldCo"), Charitable DAF HoldCo, Ltd. ("DAF HoldCo"), Charitable DAF Fund, L.P. ("DAF Fund"), and Highland Dallas Foundation ("HDF," together with CLO HoldCo, DAF HoldCo, DAF Fund, and HDF, the "Charitable Defendants")[1] file this *Brief in Support* ("Brief in Support") of their *Motion to Dismiss and Motion for More Definite Statement* (the "Motion"),[2] and respectfully show as follows:

## I. ARGUMENTS AND AUTHORITIES SUPPORTING DISMISSAL

### A. Dismissal of the Aiding Bad Conduct Action and Civil Conspiracy Action is Required Under Rule 12(b)(1) and 12(b)(6) For Failure to Retain Such Claims Within the Debtor's Plan.

1. The Charitable Defendants re-urge the content of and authorities cited in the Motion, within paragraphs 23 through 27.

### B. Dismissal of Civil Conspiracy Action is Required Under Rule 12(b)(1) and 12(b)(6), as the Trustee Has No Standing Under Applicable State Law.

2. In order to establish a civil conspiracy, the Trustee must prove the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). However, conspiracy is a derivative tort, and a defendant's liability for conspiracy "depends on participation in some underlying tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). While the foregoing articulates the elements of a civil conspiracy claim, it is not necessary for the Court to engage in an analysis of these elements as the Trustee lacks standing to even assert this claim.

---

[1] The Charitable Defendants have filed a *Motion to Withdraw the Reference* [Dkt. No. 59], which moves for immediate withdrawal of the reference to the District Court. This Motion to Dismiss is filed without any waiver of the Charitable Defendants' right to adjudication of this matters by the District Court and any and all rights to a jury trial on all claims.

[2] Any and all capitalized terms that are not defined herein shall have the same meaning as ascribed to them in the Motion.

3. The requirement that a litigant have standing to invoke the power of a federal court is one of the most significant case-or-controversy doctrines. *Crane v. Napolitano*, 920 F.Supp.2d, 724, 732 (N.D. Tex. 2013). The issue of standing directly implicates the court's subject matter jurisdiction and as such, the court should apply the standards for a motion to dismiss and may dismiss pursuant to Rule 12(b)(1) and 12(b)(6). *Id.*; *see also In re United Operating, LLC*, 540 F.3d 351, 356 (5th Cir. 2008) (affirming dismissal pursuant to Rule 12(b)(6)); *Rossco*, 613 Fed. App'x at 308 (affirming dismissal pursuant to Rule 12(b)(1)). To prove standing, the plaintiff must establish injury-in-fact, causation, and redressability. *Crane*, 920 F.Supp.2d at 732; *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009) (internal citations omitted).

4. Case law expressly supports the proposition that the Trustee does not have standing in these circumstances. The Civil Conspiracy Action does not relate to any alleged "breach of fiduciary duty", rather it is derivative of the Trustee's fraudulent transfer claims. It is clear that, but for the fraudulent transfer claims, the Trustee has no alleged damages. The Trustee purposefully tied the Civil Conspiracy Action to his breach of fiduciary duty claim in order to sidestep any standing argument, but failed.

5. The Fifth Circuit has specifically found that under Texas law, a bankruptcy trustee does not have a cause of action for civil conspiracy related to a fraudulent transfer. *Mack v. Newton*, 737 F.2d 1343, 1356 (5th Cir. 1984). In *Mack*, the trustee brought an action against debtor's principals and lender seeking recovery on basis of civil conspiracy, conversion, fraudulent conveyances, and usury. The Fifth Circuit reiterated the Texas Supreme Court's prior holding that "a general creditor does not have a cause of action for civil conspiracy when a debtor's property is conveyed to others to evade payment." Further, "[t]he essence of a cause of action for conspiracy is damage resulting from the commission of a wrong which injures another, and not

the conspiracy itself. The damage suffered by a general creditor when property is fraudulently conveyed to another to evade payment is the deprivation of an opportunity to make a levy on the property. This damage, however, is too remote to support recovery." *Id.*; *Stonecipher v. Estate of Butts*, 591 S.W.2d 806, 808 (Tex. 1980). The Fifth Circuit concluded that "since the Trustee is a representative of [debtor's] general creditors in this action, it has suffered no damage for which it may recover under a cause of action for civil conspiracy as such." *Mack*, 737 F.2d at 1356. *see also Ingalls v. Beutel*, No. A-05-CA-461-SS, 2007 WL 9718103, at *4 (W.D. Tex. Nov. 28, 2007) (holding that the *Mack* opinion was not superseded by 11 U.S.C. § 544(a)(1), and that the trustee did not have standing to bring a cause of action for civil conspiracy).

6. *Clapper v. American Realty Investor*s further supports the Trustee's lack of standing. No. 3:14-CV-2970-D, 2015 WL 3504856, at *4–5 (N.D. Tex. June 3, 2015). There, discovering that the defendants had transferred all of its stock for no value, the creditors filed suit for TUFTA fraudulent conveyance, unjust enrichment, and civil conspiracy, amongst others. The defendants moved to dismiss the civil conspiracy claim arguing that under Texas law, general creditors, such as the plaintiffs, may sue for fraudulent transfers but cannot recover damages for conspiracy to commit a fraudulent conveyance. *Id*. at *4. The court agreed and explained that "a mere general creditor without a lien has no interest in the debtor's property, and hence is not legally injured by any conspiracy with the debtor to aid him in disposing of his property in order to evade the payment of his financial obligations, and cannot maintain an action based upon such conspiracy." *Id.*

7. Under Section 544(b), "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b). Here, the Trustee is utilizing

his Section 544(b) avoidance powers on behalf of the unsecured creditors and attempting to avoid various transfers, including the Get Good Transfer, pursuant to TUFTA. However, any civil conspiracy claim related thereto must fail, under binding precedent regarding state law.

8. Where, as here, "because a mere general creditor without a lien has no interest in the Debtor's property, and hence is not legally injured by any conspiracy with the Debtor to aid him in disposing of his property in order to evade the payment of his financial obligations," the Trustee lacks standing to maintain its conspiracy claim. *ClaimHub, Inc. v. Universal Risk Ins. Servs., Inc.*, No. H-10-2841, 2011 WL 13247456, at *7 (S.D. Tex. July 25, 2011).

**C. Dismissal of the CLO HoldCo Unjust Enrichment Action Pursuant to Rule 12(b)(1) as There is No Subject Matter Jurisdiction.**

***i. There is no subject matter jurisdiction under 28 U.S.C. § 1334 over the CLO HoldCo Unjust Enrichment Action.***

9. A federal court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The Fifth Circuit recognizes a distinction between a "facial" and a "factual" attack upon a complaint under Rule 12(b)(1).[3] When a defendant submits a factual attack, he must provide support with affidavits, testimony, or other evidentiary materials. *Paterson*, 644 F.2d at 523. Then, the plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of evidence that the court does have subject matter jurisdiction. However, if the defendant makes a facial attack, the court is required to merely look to the sufficiency of the

---

[3] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *see also In re OGA Charters, LLC*, 2017 WL 3141918, at *16 (Bankr. S.D. Tex. 2017); *Daniels v. Church of the Living Word #4 PGT Assoc.*, 2001 WL 1445407, at *1 (N.D. Tex. Nov. 14, 2001).

allegations in the complaint because they are presumed to be true. *Id.* Here, the Charitable Defendants' factual attack and supporting evidence reflect that there is no subject matter jurisdiction over the Unjust Enrichment Action.

10. The Trustee pleads the sole basis for jurisdiction over the matter is 28 U.S.C. §§ 157 and 1334, asserting that the proceeding is one arising under or relating to the bankruptcy petition filed by HCMLP. *See* Complaint, ¶35. 28 U.S.C. § 1334 provides for original and exclusive jurisdiction of all cases arising under, arising in, or related to a bankruptcy case, i.e. bankruptcy jurisdiction. Here, the Adversary Proceeding was commenced on October 15, 2021. The Bankruptcy Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Bankruptcy Case, Dkt. No. 1943] on February 22, 2021, and the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* went effective on August 11, 2021 [Bankruptcy Case, Dkt. No. 2700]. Therefore, the Adversary Proceeding was commenced post-confirmation and post-plan effective date.

11. In *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, the Fifth Circuit announced that it would apply an "exacting theory of post-confirmation bankruptcy jurisdiction." 266 F.3d 388, 391 (5th Cir. 2001). In *Craig's Stores*, the Fifth Circuit expressly rejected the "related to" test for determining whether the bankruptcy court had jurisdiction over the post-confirmation action. Instead, the Fifth Circuit imposed its "more exacting theory of post-confirmation bankruptcy jurisdiction," explaining that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Id.* at 390.

12. Declining to find that the bankruptcy court had post-confirmation jurisdiction, the Fifth Circuit reasoned that (i) the debtor's claim against the bank principally dealt with post-confirmation relations between the parties, (ii) no "antagonism" or claim was pending between the parties at the time of confirmation, and (iii) no facts or law deriving from the reorganization or the plan were necessary to the claim asserted by the debtor against the defendant. *Craig's Stores*, 266 F.3d at 391. The Fifth Circuit dismissed the debtor's argument that the bankruptcy court had post-confirmation jurisdiction because the status of the debtor's contract would affect distributions to creditors under the plan, noting that "the same could be said of any other post-confirmation contractual relations in which [the debtor] is engaged." *Id*. Nor was the court persuaded by the "[t]he fact that [the relevant contract] existed throughout the reorganization and was, by implication, assumed as part of the plan," noting that this "is of no special significance." *Id*.

13. Bankruptcy jurisdiction must be evaluated over each claim independently.[4] *In re Pompa*, No. 06-31759, 2012 WL 2571156, at *3 (Bankr. S.D. Tex. June 29, 2012) (citing *WRT Creditors Liquidation Trust v. C.I.B. C. Oppenheimer Corp.*, 75 F.Supp.2d 596, 608 (S.D. Tex. 1999)). Therefore, to determine if post-confirmation bankruptcy jurisdiction exists, a court must consider as to each claim the distinguishing factors of whether:

> (1) the claims primarily arise from pre-confirmation or post-confirmation relations between the parties; (2) any claims or antagonisms were pending between the parties on the date of plan confirmation; and (3) any facts or law deriving from the bankruptcy are necessary to the claims.

---

[4] Whether the jurisdictional statute speaks in terms of jurisdiction over a "civil action" (as does, e.g., the general federal question statute and the diversity statute) or a "proceeding" (as does the bankruptcy jurisdiction statute), "[o]riginal jurisdiction attaches on a claim-by-claim or 'claim-specific' basis." Indeed, "the original jurisdiction of the district courts is claim-specific in a pervasive and fundamental sense that pertains to the entire statutory and constitutional structure of federal subject matter jurisdiction."

38 No. 2 Bankruptcy Law Letter NL 1.

*In re Dune Energy, Inc*., 575 B.R. 716, 725 (Bankr. W.D. Tex. 2017).

14. The CLO HoldCo Unjust Enrichment Action relates to pre-confirmation relations.

15. But while there was a pending antagonism related to other claims against CLO HoldCo, before the Adversary Proceeding, there was no mention of any claim against CLO HoldCo arising from the HCLOF Investment or related to HarbourVest of any sort.

16. The exact definition of an antagonism has not been settled in the Fifth Circuit. *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC,* 566 B.R. 815, 831 (W.D. Tex. 2017). The *Brickely* court explained the uncertainty surrounding a "pending antagonism":

> One court very recently found that "antagonism existed in the relevant sense" where the defendant's alleged wrongdoing harmed the company prior to the bankruptcy, and the company's cause of action appears to have accrued before the bankruptcy as well. Another distinguished its case concerning "a claim for payment submitted between two contracting parties" with those where "the claims at issue ... had ... accelerated to the point of near litigation before the bankruptcy petition was filed. In one of those cases, the court found that jurisdiction existed where "the claims at issue in the Complaint arose pre-petition" and "[w]hile [the debtor] chose not to formally assert the claims until after the Plan was confirmed, the claims were preserved under the Plan and assigned to the creditor's trust for prosecution, with any net recoveries to be distributed to creditors pursuant to the Plan's terms."

*Id.* at 831. Distilling these cases, the *Brickley* court found that under any of these tests, an antagonism existed because the causes of action accrued prepetition and were expressly preserved in the plan and transferred to the creditor trust. *Id*.

17. But here, the Trustee's predecessor, the Official Committee of Unsecured Creditors (the "Committee") sought and HCMLP's plan retained the ability to bring a nonspecific, overly broad "any and all claims" list against hundreds different parties. *See* Motion, ¶26.

18. The Schedule of Retained Causes of Action list certain persons and entities in the body, but not CLO HoldCo; however, the Schedule of Retained Causes of Action adds any entities

listed on Annex 1 which includes several hundreds of entities and any entity "related to" those entities. *Id*. Such an overly broad reservation of any and all generically described claims (with no factual underpinning or even assertion that any such claims exist) against hundreds of parties, none of whom are connected to any particular claim of cause of action by any suggestion within the description of claims and causes of action reserved, cannot be sufficient "antagonism or claim" to confer bankruptcy jurisdiction post-confirmation, much less post-effective date, as such a mechanism would render the required more exacting test for post-confirmation jurisdiction meaningless. If such a mechanism would accomplish an expansion of jurisdiction, then we are not really talking about jurisdiction, except that which can be conferred by sharp lawyering.

19. Worse here, the Trustee in response to an objection to proposed FED. R. BANKR. P. 2004 discovery, in ***August 2021***, took the position that: all previous investigation of estate causes of action was limited to "specific transactions" and facts underlying the previously filed adversary proceeding, and it would be "simply inaccurate" to state that the "Committee had already conducted an expansive investigation of estate causes of action." *See* Appendix, p. 00453-00454. So in August 2021, months post-confirmation and even post-effective date, the Trustee took the position that there had not yet even been an ***investigation*** of estate causes of action.

20. Here, much unlike cases where specific causes of action against specific parties are preserved and transferred to a litigation trust under a plan, post-confirmation, the Trustee had not yet even investigated the estate causes of actions, much less elevated these claims to an antagonism.

### *ii. The Trustee lacks standing to bring the CLO HoldCo Unjust Enrichment Action.*

21. To the extent any claim against CLO HoldCo for unjust enrichment arising from the HCLOF Investment existed, HarbourVest has the exclusive standing to bring that claim[5] and nowhere in the Complaint does the Trustee allege an assignment of this right.

22. The Supreme Court explained in the *Caplin* case that a trustee generally does not have the power to assert, on behalf of the bankruptcy estate, a claim that a creditor has directly against a third party. *Caplin v. Marine Midland Grace Trust Co*., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972); *In re Levenson Grp., Inc*., 613 B.R. 418, 424 (Bankr. N.D. Tex. 2020). Rather, the trustee's role is limited to pursuing the legal and equitable interests of the debtor—that is, the estate's own causes of action. *Levenson*, 613 B.R. at 424. As the Seventh Circuit explained:

> [T]he Trustee is confined to enforcing entitlements of the corporation. He has no right to enforce entitlements of a creditor. He represents the unsecured creditors of the corporation; and in that sense when he is suing on behalf of the corporation he is really suing on behalf of the creditors of the corporation. *But there is a difference between a creditor's interest in the claims of the corporation against a third party, which are enforced by the trustee, and the creditor's own direct—not derivative—claim against the third party, which only the creditor himself can enforce*.

*Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) (emphasis added).

23. Whether a particular cause of action belongs to the estate depends on whether under applicable law the debtor could have raised the claim as of the commencement of the case. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 544 (5th Cir. 2009). Courts recognize that if a creditor assigns a claim against a third party to the estate, then the trustee has standing to pursue that claim; however, absent an assignment there is no such right. *In re Delta Invs. & Dev., LLC*, No. 12-01160-NPO, 2019 WL 137578, at *16 (Bankr. S.D. Miss. Jan. 8, 2019) (citing to *Steinberg v. Kendig (In re Ben Franklin Retail Stores, Inc.*), 225 B.R. 646, 650-51 (Bankr. N.D. Ill. 1998))

---

[5] Though outside the scope of the Complaint and therefore the scope of the Motion, at no point did, or has, HarbourVest asserted any claim against CLO HoldCo related to the HCLOF Investment. The Trustee knows this.

(noting that it is clear that without the assignments the trustee would not have standing to pursue claims that belong to the creditors).

24. Here, the Trustee fails to assert a basis under state law for HCMLP being able to bring the Unjust Enrichment Action against its advisee, CLO HoldCo, and does not assert an assignment. HarbourVest, rather than pursuing an unjust enrichment claim (or any claim) against CLO HoldCo, asserted various other causes of action *against HCMLP*. HarbourVest settled with HCMLP and transferred its entire interest in HCLOF to a HCMLP entity and received the HarbourVest Allowed Claims. *See* Settlement Agreement.

**D. Dismissal of the CLO HoldCo Unjust Enrichment Action is Required Pursuant to Rule 12(b)(6) as the Complaint Fails to State a Claim**

***i. Applicable Standard Under Rule 12(b)(6).***

25. In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Uni*t, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). "[N]aked assertions devoid of further factual enhancement" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

26. Moreover, the Complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). FED. R. CIV. P. 8(a)(2) ("Rule 8") "requires a showing, rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, [the complaint] 'stops short of the line between possibility and plausibility of 'entitlement

to relief.'" *Ashcroft,* 556 U.S. at 678. After all, "where the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged—but it has not shown—the pleader is entitled to relief." *Id.* at 679 (emphasis added, internal quotations omitted).

27. The Supreme Court's interpretation of Rule 8, incorporated here pursuant to FED. R. BANKR. P. 7008(a), requires pleadings that demonstrate "facially plausible claims," a standard satisfied when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts should not strain to find inferences favorable to the plaintiff or accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). Rather, after removing the conclusory allegations, a complaint must contain sufficient well pleaded factual allegations to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Unjust Enrichment Action fails to meet these pleading requirements and must be dismissed.

***ii. Texas law does not recognize a cause of action for unjust enrichment and amendment would be futile.***

28. Courts confronted with a choice of law issue in the context of bankruptcy must decide whether to apply federal law or the law of the forum. *Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744, 748 (5th Cir. 1981). The Fifth Circuit has yet to resolve this issue. *In re Mirant*, 675 F.3d 530, 536 (5th Cir. 2012); *Woods-Tucker Leasing,* 642 F.2d at 748. In *Cryus II* and more recently in an adversary proceeding arising out of *iHeartMedia*, Judge Isgur confronted what law should apply in a similar action and determined to apply the choice of law rules of Texas, the applicable forum, to determine the applicable law for plaintiff's causes of action. *Tow v. Rafizadeh (In re Cyrus II P'ship)*, 413 B.R. 609, 613 (Bankr. S.D. Tex.

2008); *Wilmington Savings Fund v. iHeartMedia, Inc. (In re iHeartMedia, Inc.)*, 597 B.R. 339, 350-51 (Bankr. S.D. Tex. 2019).

29. Texas law applies an issue-by-issue choice of law analysis. *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999). Choice of law for each issue is determined according to the factors set forth in the Restatement's "most significant relationship" test. *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex. 1979). The "most significant relationship" test in the Restatement (Second) of Conflict of Laws § 221 examines five factors: (i) the place where a relationship between the parties was centered, (ii) the place where the benefit or enrichment was received, (iii) the place where the act conferring the benefit or enrichment was done, (iv) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (v) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment. *iHeartMedia*, 597 B.R. at 351. Here, each of the factors militate towards the application of Texas law to the CLO HoldCo Unjust Enrichment Action.

30. According to the Complaint, "[a]t all times relevant to this Complaint," Dondero and Ellington were residents of Texas and CLO HoldCo's principal place of business was in Texas. Complaint, ¶¶12, 19, 25. Therefore, Texas is where the relationship between the parties was centered, where the purported enrichment to CLO HoldCo took place, and where the parties were either residents and/or did business. As such, Texas law applies.

31. But the Fifth Circuit recently "expressly distinguished the conceptual 'theory' of unjust enrichment from an 'independent claim,'" to align "with Texas state courts' understanding that unjust enrichment describes the nature of certain claims and remedies, ***not a distinct cause of***

*action itself*." *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) (emphasis added).

32. Rather than being a cause of action, courts, including numerous opinions in the Northern District of Texas, explain that unjust enrichment is a theory of liability that a plaintiff can pursue through several equitable causes of action, including money had and received, *but not as a separate and distinct claim.* *See e.g. Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560-61 (N.D. Tex. 2009) (citing *Redwood Resort Props., LLC v. Holmes Co.*, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006) (Fitzwater, J.) (dismissing unjust enrichment claim and holding that it is not an independent cause of action) (citing *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 709 n. 4 (Tex. App. 2006, pet. denied)); *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir.2004) ("Money had and received is an equitable doctrine applied to prevent unjust enrichment"); *Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*, 2007 WL 2729935, at *12 (N.D. Tex. Sept. 18, 2007) (Solis, J.) (explaining that "[a]nother basis for recovering under the theory of unjust enrichment is when a claim for 'money had and received' has been established"); *Wood v. Gateway, Inc.*, 2003 WL 23109832, at *12 (N.D. Tex. Dec. 12, 2003) (Cummings, J.) (dismissing unjust enrichment claim as not an independent cause of action).

33. While the Supreme Court of Texas and other courts still occasionally refer to an "unjust enrichment claim," a Northern District of Texas district court explained, "[t]hese opinions do not, however, characterize unjust enrichment as a separate cause of action from money had and received; they consider it to be a general theory of recovery for an equitable action seeking restitution." *Hancock*, 635 F. Supp. 2d at 561.

34. Because unjust enrichment is not a cause of action under Texas law but rather a theory of recovery, the Unjust Enrichment Action must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

35. While amendment of a complaint should generally be granted when justice so requires, a district court does not abuse its discretion when it denies leave to amend because the amendment would be futile. *See Stripling v. Jordan Production Co., L.L.C.*, 234 F.3d 863, 872 (5th Cir. 2000). An amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Id*. As set forth further herein, even had the Trustee asserted unjust enrichment as a theory of recovery, there is no claim, for example for money had and received, that could be plausible on its face though amendment, and therefore the Unjust Enrichment Action must be dismissed with prejudice.

***iii. The factual allegations in the Complaint do not raise a claim that is plausible on its face.***

36. Normally under an unjust enrichment theory of recovery, "a plaintiff can only recover [for unjust enrichment] when 'one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Matter of Okedokun*, 968 F.3d 378, 391 (5th Cir. 2020) (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)); *Zakaria v. STL Int'l, Inc*., No. 4:20-CV-01722, 2020 WL 4368096, at *4 (S.D. Tex. July 30, 2020) (quoting *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010)). Some courts also recognize that unjust enrichment can occur when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Gilliam v. JPMorgan Chase Bank, N.A.*, No. CV H-18-2698, 2019 WL 2648017, at *7 (S.D. Tex. June 27, 2019) (citing *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.)).

37. The Fifth Circuit in *Okedokun* considered the meaning of "unconscionable benefit" in the context of unjust enrichment. There, the debtor had defaulted on a loan from his private lender and the lender retained an attorney, Prins, to post the property for sale. 968 F.3d at 385. The morning of the foreclosure sale the debtor filed for bankruptcy but the foreclosure sale nonetheless proceeded with an investor, Elbar wiring $2.4 million to Prins with knowledge that automatic stay was in place. *Id*. Prins then stole the $2.4 million and paid off other clients from whom he had stolen. *Id*. Elbar sued the other clients in the debtor's bankruptcy case under a theory of unjust enrichment, amongst others. *Id*. at 390.

38. In rejecting the unjust enrichment theory, the Fifth Circuit found it need not resolve whether unjust enrichment is a cause of action because regardless of whether unjust enrichment was a case of action or theory of recovery, the argument that it would be unconscionable for the other clients to retain what they were paid failed. The Fifth Circuit explained:

> The bankruptcy court noted that "it is difficult to understand how a party receives a windfall which would be unconscionable to retain when that party genuinely believed it was receiving back its own funds." We agree. Elbar does not indicate how any action on the part of [the other clients] amounts to fraud, duress, or the taking of an undue advantage. Elbar argues that it would be unconscionable for [the other clients] to retain the benefits of Prins's actions. But the bankruptcy court correctly pointed out the uncomfortable truth: "Elbar is the ultimate source of its own misfortune." Elbar broke the law when it violated the automatic stay by wiring Prins $2.4 million; to make [the other clients] hold the bag for that decision would be the unjust result. The bankruptcy court did not err in denying Elbar's claim.

*Id*.

39. Similarly here, according to the Complaint, it was the bad acts of HCMLP that caused damage to HarbourVest. CLO HoldCo, an advisee of HCMLP, simply sold a portion of its interest in an entity, HCLOF, to HarbourVest while being advised with respect to investment decisions by HCMLP. The Complaint represents the *Okedoku* situation in only slightly different and worse clothing. Here, HCMLP is accused by a third party of bad/illegal conduct, that if true

(abuse of HCLOF both prior to and after the acquisition by HarbourVest), created claims on behalf of HarbourVest against HCMLP. It was HarbourVest that invested in HCLOF by purchasing a 49% share from CLO HoldCo. The Complaint makes no allegation that HCMLP was damaged at all by the purchase by HarbourVest from CLO HoldCo, no assertion that any assets of HCMLP were somehow ferreted out to CLO HoldCo. So, in fact, this situation is far less of a claim than that asserted in *Okedoku*, as at least there, the plaintiff alleged that the third party transferees received ill-gotten funds from plaintiff through the payment by Prins. There is no Prins here, no funds of HCMLP that somehow wound up in the hands of CLO HoldCo. And the asserted ground for the CLO HoldCo Unjust Enrichment Action is that its own misconduct to HarbourVest caused the HarbourVest Claims, and without recognition of the backwardness of its assertions, now CLO HoldCo owes HCMLP the money it received from HarbourVest to assuage HCMLP for its own misconduct.

40. In fact, it is clear, that as owner of HCLOF, if the HCMLP assertions of the grounds for the HarbourVest Claims were found to be true, CLO HoldCo itself was damaged just as was HarbourVest, both before and after the HarbourVest purchase. So not only is HCMLP asserting that CLO HoldCo should pay HCMLP for its own misconduct, it is alleging that it should pay, notwithstanding that if HarbourVest had claims, then so would CLO HoldCo. Like in *Okedokun*, the ultimate source of HCMLP's "misfortune" is HCMLP (and, allegedly, Dondero/Ellington). To make CLO Holdco hold the bag for HCMLP's actions would be the unjust result. CLO HoldCo received the price for what it sold while being advised by HCMLP, and now the advisor is suing the advisee because the advisor hurt a third party who purchased from the advisee. There can be no "unconscionable" benefit here.

41. Further, and for no good reason, the Trustee asserts that "Dondero caused CLO HoldCo to use the $75 million that it received from HarbourVest to make investments in other Dondero-owned entities…" Complaint, ¶72. This has no bearing upon whether HCMLP has asserted a claim upon which relief can be granted, as CLO HoldCo could have purchased 75 million hot dogs at a dollar apiece, and that would have had no bearing upon HCMLP. None of the purchase price paid to CLO HoldCo was property of HCMLP and HCMLP has made no claim that it in any way lost value because of the conduct of CLO HoldCo.

42. Therefore, taking the facts plead in the Complaint as true, the Trustee has not and cannot plead a theory of recovery of unjust enrichment against CLO HoldCo upon any claim related to the HCLOF Investment.

***iv. CLO HoldCo Unjust Enrichment Action is barred by affirmative defenses of unclean hands and in pari delicto.***

43. Here, the CLO HoldCo Unjust Enrichment Action is barred by two distinct affirmative defenses that appear from the face of Complaint—unclean hands and *in pari delicto*.

44. When an affirmative defense appears on the face of the pleadings, a complaint can be dismissed pursuant to Rule 12 (b)(6). *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex*., 20 F.3d 1362, 1366 (5th Cir.1994) (citation omitted); *see also Fisher v. Halliburton*, 667 F.3d 602, 608–09 (5th Cir.2012); *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013).

**a. The Trustee has unclean hands.**

45. The "unclean" hands doctrine is an affirmative defense to equitable relief. *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004). The doctrine of unclean hands requires that the party seeking equitable relief must come into court with clean hands. *Bank of Saipan*, 380 F.3d at 840. Once the defense is raised, "a plaintiff seeking equitable relief... must show that [it] has not contributed to the harm at issue." *Id*. The unclean hands doctrine applies

when a plaintiff's conduct "has been unconscientious, unjust, marked by a want of good faith or violates the principles of equity and righteous dealing." *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co*., 173 F. Supp. 3d 363, 407 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 F. App'x 256 (5th Cir. 2018).

46. In bankruptcy, a trustee is authorized to "commence and prosecute any action or proceeding in behalf of the estate before any tribunal." *See Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co*., 267 F.3d 340, 356-57 (3d Cir. 2001) (citing FED. R. BANKR. P. 6009; 11 U.S.C. §§ 1207, 1306). "Such actions fall into two categories: (1) those brought by the trustee as successor to the debtor's interest included in the estate under Section 541, and (2) those brought under one or more of the trustee's avoiding powers." *Id*. (citing 3 Collier on Bankruptcy ¶ 323.03[2] (15th rev. ed. 2001)).

47. As to the former, which is implicated here where a trustee brings claims as a successor to HCMLP's interest, Section 541 covers such claims, and under Section 541, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement" of bankruptcy. 11 U.S.C. § 541(a); *see also O'Dowd v. Trueger*, 233 F.3d 197, 202 (3d Cir. 2000). These legal and equitable interests include causes of action. 3 Collier on Bankruptcy ¶ 323.02[1]; *accord O'Dowd*, 233 F.3d at 202–03.

48. Given these provisions, courts have held that "in actions brought by the trustee as successor to the debtor's interest under Section 541, the trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. Conversely, the trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.'" *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 885 F.2d 1149, 1154 (3d Cir.1989) (quoting Collier on Bankruptcy ¶ 323.02[4]).

49. Thus, here, accepting the facts in the Complaint as true, the Trustee as successor to HCMLP, has unclean hands. As alleged by the Trustee, it is HCMLP, through Dondero and Ellington, that is alleged to have committed the bad acts against HarbourVest. Because the Trustee is subject to the same defenses that could have been asserted against HCMLP, the CLO HoldCo Unjust Enrichment Action, as well as any action for which unjust enrichment could be a theory of recovery, is barred by the affirmative defense of unclean hands.

**b. The affirmative defense of *in pari delicto* bars the Unjust Enrichment Action.**

50. The doctrine of *in pari delicto* is an affirmative defense that provides that wrongdoers ought to bear the consequences of their wrongdoing without legal recourse against each other. *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965 (5th Cir. 2012). The *in pari delicto* doctrine "embodies the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct and is undergirded by the concerns, first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985)).

51. Under the *Bateman Eichler* formulation of the *in pari delicto* doctrine, a plaintiff "cannot recover where, as a result of his own actions, the plaintiff bears at least substantially equal responsibility for the underlying wrongdoing of which he is complaining." *Matter of Royale Airlines, Inc.*, 98 F.3d 852, 856 (5th Cir.1996) (emphasis added); *see also Rogers*, 521 F.3d at 390 (citing *Bateman Eichler*, 472 U.S. at 310–11, 105 S. Ct. 2622). Again, the Trustee is subject to all defenses available against the debtor. *In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001).

52. While some courts have found that the defense of *in pari delcito* is improper for a motion to dismiss because it must be determined whether the pre-petition corporation bore at least equal responsibility for the wrongdoing forming the basis for the plaintiff's claim, here the Complaint is clear and unambiguous: it is only the debtor, HCMLP, into whose shoes the Trustee has stepped, that committed wrongdoing. Further, it is this sole actor's wrongdoing for which the Trustee now seeks to recover—not from an alleged wrongdoer, but from its very client to which HCMLP provided investment advice while (allegedly) committing wrongs against a third party. *Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 642 (S.D. Tex. 2009). The Trustee asserts plainly that HCLMP, through Dondero and Ellington, fraudulently induced the HCLOF Investment by HarbourVest by withholding information that HCMLP was and would keep on harming HCLOF through its management of it, and further harmed HarbourVest through continued harm done to HCLOF. There is no allegation that CLO HoldCo did anything wrong with respect to the HCLOF Investment whatsoever. As such, accepting the facts of the Complaint as true, HCMLP bears sole responsibility for the purported wrongdoing forming the basis of the CLO HoldCo Unjust Enrichment Action. *See Brickley*, 566 B.R. at 842 (finding the *in pari delicto* defense on the face of complaint when the debtor via the trustee sought to recover from another for its own intentional wrongdoing through its officers).

53. Here, the only parties who have been alleged to have engaged in unconscionable or like behavior with respect to the HCLOF Investment are Dondero, Ellington, and HCMLP. Accepting the allegations in the Complaint as true, the CLO HoldCo Unjust Enrichment Action is barred by the affirmative defenses of unclean hands and *in pari delicto*.

***v. The Trustee has an adequate legal remedy for the purported unjust enrichment.***

54. Like other equitable claims and defenses, the existence of an adequate legal remedy renders equitable claims of unjust enrichment unavailable with respect to true causes of action. *See, e.g., BMG Direct Mktg., Inc. v. Peake,* 178 S.W.3d 763, 770 (Tex. 2005); *see also Fortune Prod. Co. v. Conoco, Inc*., 52 S.W.3d 671, 683–84 (Tex. 2000). Where a party seeks damages based on the same conduct under another legal theory, there is no claim for unjust enrichment. *In re TXCO Res., Inc*., 475 B.R. 781, 837 (Bankr. W.D. Tex. 2012).

55. For instance, in *TXCO,* the debtor, brought an adversary proceeding, later prosecuted by the reorganized debtor, against the potential prepetition buyer of debtor's assets, asserting claims for misappropriation of trade secrets, violation of Texas Theft Liability Act (TTLA), unfair competition by misappropriation, breach of contract, tortious interference with prospective business relations, and imposition of constructive trust to prevent unjust enrichment. Judge King determined that damages for misappropriation of trade secrets were warranted, and therefore, "[t]he existence of an adequate legal remedy precludes TXCO's claim for unjust enrichment because the same conduct by [defendant] forms the basis of both claims." *Id*. at. 838.

56. Here, in the Complaint, the Trustee asserts the HCMLP Liability Claim, against Dondero and Ellington for breach of fiduciary duty asserting an almost verbatim recitation of the HCLOF Investment and arguing that they are responsible for any liability to HarbourVest arising from the HCLOF Investment. *See* Complaint, ¶205. Further in the Dondero Unjust Enrichment Claim and the Ellington Unjust Enrichment Claim, the Trustee asserts that Dondero and Ellington are responsible for any claims to which they exposed HCMLP.

57. The existence of an adequate legal remedy against Dondero and Ellington precludes recovery on the CLO HoldCo Unjust Enrichment Action, for this additional reason (though as there can be no recovery under an unjust enrichment theory whatsoever; this is just the final straw).

## II. ARGUMENT AND AUTHORITIES SUPPORTING MOTION FOR MORE DEFINITE STATEMENT

58. "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see Jones v. Gee*, No. CV 18-5977, 2020 WL 564956, at *8 (E.D. La. Feb. 5, 2020) ("When evaluating a motion for a more definite statement, courts must look to Federal Rule of Civil Procedure 8 for the minimal pleading requirements when analyzing the complaint.").

59. Here, the Trustee's Get Good Avoidance Actions are premised upon the idea that the Transferred Assets (the majority of the "value" of which included tracking and participation interests in shares of certain Crusader Funds held by HCMLP) were worth less than the Dugaboy Note. Complaint, ¶125.

60. The Complaint alleges that the assets transferred by HCMLP were valued at least $23,367,578 (along with the repeated conclusory assertion, that the interests were "worth potentially more"), noticeably absent from the Complaint is any recitation of what the Trustee asserts the value of the Dugaboy Note to be. *See* Complaint, ¶¶127, 128 (describing the Dugaboy Note but not pleading any type of valuation). Rather than pleading a value of the Dugaboy Note, the Trustee describes a "paltry" interest rate, lack of security, and that it "does ensure timely repayment without litigation" because ***other*** Dondero controlled entities are seeking to evade payment obligations on ***other*** notes. Complaint, ¶128. All conclusory. But in reality, since the date of the Duagboy Note, the principal balance has been paid down by $5,982,353.53, or approximately 25% and interest is current. Appendix p. 00463-000465. So while the Trustee bemoans the value of the Dugaboy Note, the Complaint in fact never offers a valuation of the

Dugaboy Note and it never pleads what it knows—that the principal balance has been reduced by some 25%, and interest is current.

61. The Trustee alleges that claims asserted by the Redeemer Committee in the Redeemer Arbitration—which included the claim that any Crusader Funds Interests held by HCMLP without Redeemer Committee approval were illegally obtained—were so damning that they caused HCMLP to begin siphoning off assets. *See* Complaint, ¶¶252(b), (e). Yet, the Trustee ignores the inconsistency that the majority of the very assets allegedly transferred because of the Redeemer Arbitration commenced in July 2016, consisted of the Crusader Funds Interests that were being directly attacked by the same Redeemer Arbitration as illegally obtained by HCMLP. *See* Complaint, ¶84, Appendix p. 00395, 00411.

62. Texas law provides that the value of a particular transaction is determined at the time of the exchange. *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 582 (Tex. 2016). Here, as plead by the Trustee, on July 5, 2016, the Redeemer Committee commenced the Redeemer Arbitration which directly attacked the Crusader Funds Interests. *See* Complaint, ¶84, Appendix p. 00395. Specifically, the Redeemer Committee asserted that the Crusader Funds Interests were obtained by HCMLP in breach of the Plan and Scheme and in breach of HCMLP's fiduciary duty because the Redeemer Committee had a right of first refusal. Appendix, p. 00411.

63. So well ***before*** the Get Good Transfer, HCMLP was aware that the Redeemer Committee asserted claims in the Redeemer Arbitration that the Crusader Funds Interests were illegally obtained. But according to the Trustee, it was HCMLP's certainty of liabilities arising from Redeemer Arbitration that motivated HCMLP to siphon off assets, i.e. commence the Get Good Transfer. Complaint, ¶252(b), (e). In doing so, according to the Trustee, HCMLP was so

certain of defeat in the Redeemer Arbitration, it rid itself of the Crusader Funds Interests that were plagued by the very same arbitration as being illegally obtained (so of little value from inception).

64. To prevail on his intentionally fraudulent transfer action, the Trustee must prove actual intent to hinder, delay, or defraud. *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019) (citation omitted); *see* TEX. BUS. & COM. CODE § 24.005(a)(1). While the Trustee of course copies this standard in the Complaint, when considering a Rule 12(b)(6) motion, the court does not accept as true facts in the complaint that are internally inconsistent. *See Cicalese v. Univ. of Texas Med. Branch*, 456 F. Supp. 3d 859, 872 (S.D. Tex. 2020); *In re Rambo Imaging, L.L.P.*, No. 07-11190FRM, 2007 WL 3376163, at *12 (Bankr. W.D. Tex. Nov. 8, 2007) (citing *Gersten v. Rundle*, 833 F.Supp. 906 (S.D.Fla.1993), *aff'd*, 56 F.3d 1389 (11th Cir. 1995), *cert. denied*, 516 U.S. 1118 (1996)).

65. Taking the allegations of the Trustee as true, ***at the time*** of the Get Good Transfer HCMLP so feared the Redeemer Arbitration that it began siphoning assets, including the Crusader Funds Interests, which comprised more than half of the "value" of the Transferred Assets and were being directly attacked and threatened by that very Redeemer Arbitration. If HCMLP believed at the time of the Get Good Transfer that the Redeemer Committee would be successful in the Redeemer Arbitration (which the Trustee pleads), then when HCMLP jettisoned the Crusader Funds Interests in exchange for the Dugaboy Note, it did so with the belief that it was transferring away troubled assets. This act of transferring away troubled assets for value cannot show intent to hinder, delay or defraud creditors.

66. As to constructive fraud, the Trustee must demonstrate a: (1) lack of reasonably equivalent value for the transfer; and (2) the transfer was 'financially vulnerable' or insolvent at the time of the transaction. *See Janvey*, 487 S.W.3d at 562, 566 & n.21 (Tex. 2016); TEX. BUS.

& COM. CODE § 24.006(a); TEX. BUS. & COM. CODE § 24.005(a)(2). Here, the lack of pleading of value of the Dugaboy Note is particularly problematic.

67. On the one hand, the Complaint alleges specifically that the assets transferred were "valued" at $23,367,578 (or "possibly more") and specifically asserts that the Crusader Funds Interests component of the valuation was more than 50% of the value of the assets transferred, but completely ignores is that the Crusader Funds Interests were subject to cancellation by the very same Redeemer Arbitration. Complaint, ¶127. The Trustee bemoans the value of the Dugaboy Note, but he never pleads what he knows —that the principal balance has been reduced by some 25%, and in fact never offers any valuation of the Dugaboy Note.

68. Here, because the Trustee has not plead a value for the Dugaboy Note and merely plead that it is less than the Transferred Assets combined (yet elsewhere pleading that at the time of the Get Good Transfer the majority of the Transferred Assets were plagued by the Redeemer Arbitration), the Charitable Defendants cannot reasonably prepare a response. *See* FED. R. CIV. P. 12(e). As such, the Charitable Defendants move for a more definite statement of Counts XVIII and XIX particularly the Trustee's assertion of value of the Dugaboy Note.

## III. CONCLUSION

**WHEREFORE** for the reasons set forth herein, the Charitable Defendants move for: (i) the immediate dismissal with prejudice of Count XV (Aiding Bad Conduct Action), Count XVI (Civil Conspiracy Action), and Count XXX (the Unjust Enrichment Action), all pursuant to Rule 12(b)(1) and (6) and (ii) a more definite statement as to Counts XVIII and XIX (the Get Good Avoidance Actions) pursuant to Rule 12(e).

[***signature block on following page***]

**Respectfully submitted:**

**KELLY HART PITRE**

***/s/ Louis M. Phillips***
**Louis M. Phillips (#10505)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing was served through this Court's CM/ECF Service on counsel for the Plaintiff and all Defendants on this March 23, 2022.

***/s/ Louis M. Phillips***