Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau (*Admitted pro hac vice*)
Blaire Cahn (*Admitted pro hac vice*)
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
debra.dandeneau@bakermckenzie.com
blaire.cahn@bakermckenzie.com

*Counsel for Scott Ellington*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,<br><br>Defendants. | Adv. Pro. No. 21-03076-sgj |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

RELEVANT BACKGROUND .................................................................................... 2

LEGAL STANDARD ................................................................................................. 3

ARGUMENT ............................................................................................................... 4

    I.  The Non-Core Causes of Action Against Ellington Must be Dismissed Due to Kirschner's Lack of Standing (Counts V, XIV, XVI, XXV, XXVII). .......................................................... 4

        A.      Kirschner Lacks Standing to Pursue the Non-Core Causes of Action. ....................... 4

        B.      The Bankruptcy Court Lacks Post-Confirmation Jurisdiction Over the Non-Core Causes of Action. ................................................................................................................. 4

    II.  The Complaint Fails to State a Claim Upon Which Relief Can be Granted as to Numerous Claims Against Ellington. ............................................................................................... 5

        A.      Kirschner Fails to State a Claim for Breach of Fiduciary Duty by Ellington (Counts V and XIV). ........................................................................................................................ 5

            1.     Counts V and XIV Fail Because Kirschner Does Not Plead a Breach of Ellington's Fiduciary Obligations, as Limited by the Fourth LPA. ....................................................... 5

            2.     Count V Also Fails to State a Claim Because Kirschner Asserts a Professional Negligence Claim Under the Guise of Breach of Fiduciary Duty. ...................................... 7

            3.     The Complaint Fails to Allege Ellington Did Anything but Obey and Follow Lawful Client Instructions. .......................................................................................................... 10

            4.     The Complaint Cannot, as a Matter of Texas Law, Adequately Allege the Elements of Harm, as Kirschner May Not Substitute his Judgment of Ellington's Legal Work for that of the Then-Client HCMLP ................................................................................................. 11

            5.     The Complaint Fails to Plausibly Allege that Ellington's Conduct Caused HCMLP Damages........................................................................................................................... 12

            6.     The Complaint Cannot Claim Breach of Fiduciary Duties for Allegedly Enabling Conduct Harmful to Creditors .......................................................................................... 14

        B.      Kirschner Fails to State a Claim Against Ellington for Civil Conspiracy to Breach Fiduciary Duties (Count XVI). .......................................................................................... 15

            1.     As an Agent of HCMLP, Ellington Cannot Legally Conspire With Other Agents of HCMLP........................................................................................................................... 16

2. No Actionable Civil Conspiracy Exists Because the Complaint Fails to Allege a "Meeting of the Minds" to Cause the Injury......................................................................... 17

C. Unjust Enrichment Is Not an Independent Claim Cognizable Under Texas Law (Count XXVII)........................................................................................................................... 18

D. *De Minimis* Amounts Allegedly Paid to Ellington Are Not Avoidable As Preferential Transfers and Must Be Dismissed (Count XXXI)................................................................ 18

E. Kirschner Fails to State a Claim Against Ellington for Avoidance and Recovery of Certain Massand Transfers (Counts XXII and XXIII). ......................................................... 18

1. Kirschner Fails to Allege that the Massand Transfers Between January 7, 2015 and September 29, 2015 Occurred Within the Applicable Repose Period.............................. 19

2. Kirschner Fails to Plead Insolvency. ........................................................................... 20

3. Kirschner Fails to Satisfy the Heightened Pleading Standard Applicable to the Intentional Fraudulent Transfer Claim (Count XXIII). ....................................................... 21

F. Kirschner Fails to State a Claim Against Ellington for Avoidance and Recovery of the Alleged Expense Transfers (Counts XXXII and XXXIII). .................................................... 22

1. Kirschner Fails to Plead That the Alleged Expense Transfers Are Anything Other than Valid Expense Reimbursements (Count XXXII and XXXIII). ................................. 22

2. The Constructive Fraudulent Transfer Claim (Count XXXII) Fails to Allege Lack of Reasonably Equivalent Value of the Alleged Expense Transfers. .................................... 23

CONCLUSION.................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arencibia v. AGA Serv. Co.*,
   No. 4:20-cv-00819-O, 2020 WL 10056799 (N.D. Tex. Nov. 13, 2020) ...............................18

*In re Artho*,
   587 B.R. 866 (Bankr. N.D. Tex. 2018) ...................................................................................17

*In re ATP Oil & Gas Corp.*,
   711 F. App'x 216 (5th Cir. 2017) ...........................................................................................20

*Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*,
   266 F.3d 388 (5th Cir. 2001) ...................................................................................................4

*Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*,
   284 S.W.3d 416 (Tex. App.—Austin 2009, no pet.) .................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................................22

*Border Demolition & Entvl., Inc. v. Pineda*,
   535 S.W.3d 140 – 160 (Tex. App.—El Paso 2017, no pet.)......................................................8

*Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.)*,
   336 F.3d 94 (2d Cir. 2003).......................................................................................................15

*Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification
   Beams Sys., LLC*,
   556 B.R. 815 (W.D. Tex. 2017)................................................................................................15

*Brown v. Douglas (In re Dual D Health Care Operations, Inc.)*,
   Nos. 17-41320-ELM, Adv. No. 20-04059, 2021 Bankr. LEXIS 1934 (Bankr.
   N.D. Tex. 2021) .......................................................................................................................21

*Charles v. Tamez*,
   878 S.W.2d 201 (Tex. App.—Corpus Christi 1994, writ denied) ...........................................12

*Chu v. Hong*,
   249 S.W.3d 441 (Tex. 2008).....................................................................................................17

*Crescent Res. Litig. Tr. v. Nexen Pruet, LLC (In re Crescent Res., LLC)*,
   No. 09-11507-CAG, Adv. No. 11-01082- CAG, 2012 Bankr. LEXIS 287
   (Bankr. W.D. Tex. 2012) ..........................................................................................................24

*In re Crescent Res., LLC*,
    2012 WL 195528 (Bankr. W.D. Tex. Jan. 23, 2012).............................................................20

*Eddystone Rail Co., LLC v. Bank of Am., N.A.*,
    2021 WL 4443371 (S.D.N.Y. Sept. 28, 2021)......................................................................20

*Edwards v. Dunlop-Gates*,
    344 S.W.3d 424 (Tex. App.—El Paso 2011, pet. denied) ......................................................11

*Faulkner v. Lone Star Brokering, LLC (In re Reagor-Dykes Motors, LP)*,
    2021 Bankr. LEXIS 1643 (Bankr. N.D. Tex. 2021)..............................................................24

*Fink v. Anderson*,
    477 S.W.3d 460 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ..........................................16

*Finova Capital Corp. v. Lawrence*,
    No. 399CV2552-M, 2000 WL 1808276 (N.D. Tex. Dec. 8, 2000).......................................15

*Garrett v. Giblin*,
    940 S.W.2d 408 (Tex. App.—Beaumont 1997, no writ).........................................................11

*Gerber v. EPE Holdings, LLC*,
    No. 3543-VCN, 2013 Del. Ch. LEXIS 8 (Ch. Jan. 18, 2013) ...................................................5

*Gibson v. Ellis*,
    126 S.W.3d 324 (Tex. App.—Dallas 2004, no pet.).................................................................8

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
    817 A.2d 160 (Del. 2002) .....................................................................................................5, 6

*Graham v. Pazos De La Torre*,
    821 S.W.2d 162 (Tex. App.—Corpus Christi-Edinburg 1991, writ denied) ..........................16

*Hancock v. Chicago Title Ins. Co.*,
    635 F. Supp.2d 539 (N.D. Tex. 2009) ...................................................................................18

*Haynes Family Tr. v. Kinder Morgan G.P., Inc.*,
    135 A.3d 76 (Del. 2016) ..........................................................................................................7

*III Forks Real Estate, L.P. v. Cohen*,
    228 S.W.3d 810 (Tex. App.–Dallas 2007, no pet.).................................................................16

*Isaacs v. Schleier*,
    356 S.W.3d 548 (Tex. App.—Texarkana 2011, pet. denied) ..............................................8, 11

*Kimleco Petroleum, Inc. v. Morrison & Shelton*,
    91 S.W.3d 921 (Tex. App.—Fort Worth 2003, pet. denied) ..................................................11

*Latitude Sols., Inc. v. DeJoria,*
  922 F.3d 690 (5th Cir. 2019) ............................................................14

*Marshall v. Intermountain Elec. Co.,*
  614 F.2d 260 (10th Cir. 1980) ..........................................................20

*McCullough v. Scarbrough, Medlin & Assocs.,*
  435 S.W.3d 871 (Tex. App.—Dallas 2014, pet. denied) ....................18

*Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.,*
  999 F.3d 970 (5th Cir. 2021) ............................................................18

*MVS Int'l Corp. v. Int'l Advert. Sols., LLC,*
  545 S.W.3d 180 (Tex. App.—El Paso 2017, no pet.) ...................16, 17

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.),*
  511 F. Supp. 2d 742 (S.D. Tex. 2005) .........................................14, 15

*Norton v. K-Sea Transp. Partners L.P.,*
  67 A.3d 354 (Del. 2013) .....................................................................7

*Official Stanford Investors Comm. v. Greenberg Traurig, LLP,*
  2014 WL 12572881 (N.D. Tex. Dec. 17, 2014) ..........................8, 10

*Reneker v. Offill,*
  2009 WL 804134 (N.D. Tex. Mar. 26, 2009) ...................................14

*In re Segerstrom,*
  247 F.3d 218 (5th Cir. 2001) ......................................................11, 12

*Shearson Lehman Hutton, Inc. v. Wagoner,*
  944 F.2d 114 (2d Cir. 1991) .............................................................15

*Taylor v. Scheef & Stone, LLP,*
  No. 3:19-CV-2602-D, 2020 WL 4432848 (N.D. Tex. July 31, 2020) .............12, 13

*Taylor v. Trevino,*
  No. 3:20-CV-0393-D, 2021 WL 347566 (N.D. Tex. Feb. 2, 2021) ....18

*VeroBlue Farms USA, Inc. v. Wulf,*
  465 F. Supp. 3d 633 (N.D. Tex. 2020) .......................................21, 23

*Wagner v. Ultima Homes, Inc. (In re Vaughan Co., Realtors),*
  498 B.R. 297 (Bankr. N.M. 2013) ....................................................20

*Wolf v. Ramirez,*
  622 S.W. 3d 126 (Tex. App.—El Paso 2020, no pet.) ......................11

*Won Pak v. Harris*,
 313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied) ....................................................8, 9

*Zidell v. Bird*,
 692 S.W.2d 550 (Tex. App.—Austin 1985, no writ) ...............................................................11

*Zuniga v. Groce, Locke & Hebdon*,
 878 S.W.2d 313 (Tex. App.—San Antonio 1994, writ ref'd.) ...............................................12

**Statutes**

6 Del. C. § 17-1101(d) ..............................................................................................................5

11 U.S.C. § 11 .......................................................................................................................1, 2

11 U.S.C. § 544 .......................................................................................................................19

11 U.S.C. § 544(b)(1) ..............................................................................................................19

11 U.S.C. § 547(c)(9) ..............................................................................................................18

11 U.S.C. § 548 ..........................................................................................................22, 23, 24

11 U.S.C. § 550 .......................................................................................................................19

26 U.S.C. § 6502 ................................................................................................................19, 20

28 U.S.C. § 1334 .......................................................................................................................4

Tex. Bus. & Com. Code § 24 ..................................................................................................19

Tex. Bus. & Com. Code § 24.005(a)(2) ..................................................................................19

Tex. Bus. & Com. Code § 24.005(s) .......................................................................................23

Tex. Bus. & Com. Code § 24.006(a) .......................................................................................19

Tex. Bus. & Com. Code § 24.010(a)(1) ..................................................................................19

Tex. Bus. & Com. Code § 24.010(a)(2) ..................................................................................19

Tex. Civ. Prac. & Rem. Code § 16.003(a) ..............................................................................10

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................................................................23, 24

Fed. R. Civ. P. 9 .......................................................................................................................21

Fed. R. Civ. P. 9(b) .......................................................................................................2, 21, 22, 23

Fed. R. Civ. P. 12(b)(1) ........................................................................................................2, 3

Fed. R. Civ. P. Rule 12(b)(6) ...............................................................................................2, 3

Fed. R. Civ. P. 12(e) ................................................................................................................3

Fed. R. Civ. P. 12(h)(3) ...........................................................................................................4

## BRIEF IN SUPPORT OF DEFENDANT ELLINGTON'S MOTION TO DISMISS

Defendant Scott Ellington hereby files his brief in support of the Motion to Dismiss (the "***Motion***"),[1] filed contemporaneously herewith, and respectfully states as follows:

### PRELIMINARY STATEMENT

1.     HCMLP is a limited partnership, and, as such, is a creature of contract. Kirschner casts a wide net of 36 different claims against 23 different Defendants, but—incredibly—fails to allege a single violation of the terms of the Fourth LPA (as defined herein), which governs the conduct at issue in this case. No doubt that is by design, as the Fourth LPA vested sole and exclusive authority in Strand (and thereby Dondero, its sole owner and director) to manage HCMLP, including specific rights to engage in the conduct that the Complaint decries.

2.     The Complaint repeatedly characterizes Ellington, the former General Counsel of HCMLP, as working in furtherance of Dondero's purported schemes and seeks to impose broad liability against Ellington for a variety of debts HCMLP incurred at the direction of Dondero. Ellington, however, did not control HCMLP, and Kirschner cannot now blame Ellington for acting in accordance with the instructions of HCMLP, which itself was controlled by its general partner, Strand. The Complaint is devoid of the necessary allegations to support the claims against Ellington and should be dismissed.

3.     Five of the claims against Ellington (breach of fiduciary duties (Counts V and XIV), civil conspiracy (Count XVI), conversion (Count XXV) and unjust enrichment (Count XXVII)) are for state law claims that do not arise under the Bankruptcy Code (the "***Non-Core Causes of Action***"). Kirschner lacks standing to bring such claim, the Bankruptcy Court lacks post-confirmation subject-matter jurisdiction. The Court must dismiss the Non-Core Causes of Action

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion or in the Complaint [Dkt. 2934]. Unless otherwise stated herein, docket number identifications refer to Case No. 19-34054-sgj11 (the "***Bankruptcy Case***").

under Rule 12(b)(1). Alternatively, the Court must dismiss the breach of fiduciary duty claims (Counts V and XIV), as those claims remained with HCMLP, were not transferred to the Claimant Trust, and could not have been subsequently assigned to the Litigation Sub-Trust.

4.      In addition, the Complaint fails to include allegations that, if true, would satisfy the respective elements of the fiduciary duty, civil conspiracy, and unjust enrichment claims under applicable law, and indeed, alleges conduct that is not actionable under the Fourth LPA. Therefore, these state law claims against Ellington also should be dismissed for failure to state claims upon which relief may be granted under Rule 12(b)(6).

5.      The remaining claims for relief also should be dismissed under Rule 12(b)(6). Count XXXI seeks avoidance and recovery of thirteen preferential transfers, eleven of which are for *de minimis* amounts not avoidable under the statute. Counts XXII, XXIII, XXXII and XXXIII seek avoidance and recovery of constructive and intentional fraudulent transfers, but Kirschner seeks avoidance of transfers beyond the four-year statute of repose, fails to plead adequately that HCMLP was insolvent at the pertinent times, and fails to satisfy the heightened pleading standard applicable to the intentional fraudulent transfer claims under Rule 9(b). Count XXXII relates to alleged expense transfers, and Kirschner's threadbare allegations fail to plausibly allege that HCMLP received less than reasonably equivalent value for expense reimbursements.

## RELEVANT BACKGROUND

6.      Ellington was employed by Highland Capital Management, L.P. ("***HCMLP***") until January 2021. At the time of termination of Ellington's employment with HCMLP, he served as its general counsel. Compl. ¶ 19.

7.      On October 16, 2019 (the "***Petition Date***"), HCMLP filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"). On November 24, 2020, HCMLP filed the Plan [Dkt. 1808]. Thereafter, on February 22, 2021 (the

2

"***Confirmation Date***"), the Bankruptcy Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Dkt. 1943].

8. On August 11, 2021, the Plan became effective (the "***Effective Date***"). *See* Dkt 2700. Since the Effective Date, the Plan has been substantially consummated. See [Dkt. 14], pp. 17-20 (Oct. 15, 2021).

9. The Plan established two trusts to assert post-confirmation causes of action: (1) the Claimant Trust and (2) the Litigation Sub-Trust. All causes of action other than "Reorganized Debtor Assets" were transferred from HCMLP to the Claimant Trust by the Effective Date. *See* Plan § IV.B; Claimant Trust Agreement §§ 2.2, 2.3 [Dkt. 1811-2].[2]

10. Under the Plan, only "Estate Claims" were transferred from the Claimant Trust to the Litigation Sub-Trust, which is memorialized in the agreement establishing the Litigation Sub-Trust (the "***Litigation Sub-Trust Agreement***") [Dkt. 1811-4]. *See* Plan § IV.B.; Litigation Sub-Trust Agreement, § 2.3.

11. On October 15, 2021, Kirschner commenced this Adversary Proceeding.

## LEGAL STANDARD

12. The applicable legal standard under the Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(e) is set forth more fully in the "Legal Standard" section of the *Brief in Support of the Defendant Leventon's Motion to Dismiss* (the "***Leventon Brief***"), which is hereby incorporated herein by reference for all purposes.

---

[2] *See* Plan, Definition of "Claimant Trust Assets" (expressly carving out "Reorganized Debtor Assets" from the definition); Plan, Definition of "Reorganized Debtor Assets." Only HCMLP has standing to assert a cause of action that is considered a Reorganized Debtor Asset.

**ARGUMENT**

**I. The Non-Core Causes of Action Against Ellington Must be Dismissed Due to Kirschner's Lack of Standing (Counts V, XIV, XVI, XXV, XXVII).**

**A.      Kirschner Lacks Standing to Pursue the Non-Core Causes of Action.**

13.      Kirschner lacks standing (1) as to *any* of the state law claims (Counts V, XIV, XVI, XXV, XXVII), because the Plan failed to adequately preserve them, (2) as to the civil conspiracy claim (Count XVI), because the Plan failed to list such a claim, and (3) as to the fiduciary duty claims (Counts V, XIV), because such claims may only be pursued by HCMLP. The arguments in support of dismissal for lack of standing are set forth more fully in Sections I.A, I.B and I.D of the Leventon Brief, which are hereby incorporated herein by reference for all purposes.

**B.      The Bankruptcy Court Lacks Post-Confirmation Jurisdiction Over the Non-Core Causes of Action.**

14.      The arguments set forth in the *Brief in Support of Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants* [Adv. Proc. Dkt. 28] (the "***Motion to Withdraw Brief***") and *The Former Employee Defendants' Reply in Support of the Motion to Withdraw the Reference* [Adv. Proc. Dkt. 108] (the "***Motion to Withdraw Reply***") also apply here with respect to the Court's lack of subject matter jurisdiction over the Non-Core Causes of Action. Ellington incorporates section II(A) of the Motion to Withdraw Brief and section I of the Motion to Withdraw Reply to Withdraw by reference for all purposes. The Complaint does not allege that "antagonism" existed with respect to the Non-Core Causes of Action prior to confirmation of the Plan or that an interpretation of the Plan is required to assess the merits of the Non-Core Causes of Action; accordingly, under binding Fifth Circuit precedent, no jurisdiction exists under 28 U.S.C. § 1334 to adjudicate these claims, and they must be dismissed. *See* Fed. R. Civ. P. 12(h)(3); *Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388 (5th Cir. 2001) and its progeny.

II. **The Complaint Fails to State a Claim Upon Which Relief Can be Granted as to Numerous Claims Against Ellington.**

    A. **Kirschner Fails to State a Claim for Breach of Fiduciary Duty by Ellington (Counts V and XIV).**

        1. *Counts V and XIV Fail Because Kirschner Does Not Plead a Breach of Ellington's Fiduciary Obligations, as Limited by the Fourth LPA.*

15. The Complaint alleges that "Ellington owed fiduciary duties to HCMLP in his capacity as HCMLP's Chief Legal Officer and General Counsel," lumping him in with Strand, which "owed fiduciary duties . . . in its capacity as HCMLP's general partner" and Dondero, who "owed fiduciary duties to HCMLP by virtue of his control over Strand and HCMLP, and as an officer of HCMLP." Comp. ¶ 196. Yet the Complaint utterly fails to identify any actual breach of a provision of the governing partnership agreement that is the sole source of any applicable fiduciary duties. Under applicable Delaware law, such deficiency is fatal to Kirschner's fiduciary duty claims against Ellington.

16. The Delaware Revised Uniform Limited Partnership Act permits a limited partnership agreement to restrict or even "eliminate all duties, other than the implied contractual covenant of good faith and fair dealing, that a person acting under that agreement may owe to a limited partnership." *Gerber v. EPE Holdings, LLC*, No. 3543-VCN, 2013 Del. Ch. LEXIS 8, at *25 (Ch. Jan. 18, 2013); 6 Del. C. § 17-1101(d). Thus, "[w]hen dealing with the internal affairs of a limited partnership, the reviewing court's first task is to determine what duties the defendants owe. Although a general partner and its affiliates may owe fiduciary duties to a limited partnership and its limited partners, a limited partnership agreement may 'establish[ ] a contractual standard of review that supplants fiduciary duty analysis.'" *Id.* at *24-25 (internal citations omitted). "[I]f the limited partnership agreement unambiguously provides for fiduciary duties, any claim of a breach of fiduciary duty must be analyzed generally in terms of the partnership agreement." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170-71 (Del. 2002).

17.    Here, the *Fourth Amended and Restated Agreement of Limited Partnership of HCMLP* (the "**Fourth LPA**") [Adv. Proc. No. 21-03003-sgj, Dkt. 109-8.], governed by Delaware law, was effective at the time of the conduct alleged in the Complaint. *See* Compl. ¶¶ 210, 213, 387; Fourth LPA at § 6.11. It specifically provides for fiduciary duties and limits the liability of the general partner (and its agents). *See, e.g.*, Fourth LPA at §§ 4.1(e)(ii)-(iii), 4.1(g). For instance, the Fourth LPA grants to the general partner Strand (and thereby Dondero) the exclusive power to "conduct, direct, and exercise full control over all activities of the Partnership," including "all management powers over the business and affairs of the Partnership." *Id.* at § 4.1(a). It also expressly permits conflicts of interest, entitling the General Partner, Affiliates and, *inter alia*, their officers and agents to engage in, "without limitation, business interests and activities in direct competition with the Partnership." *Id.* at § 4.1(f). Expressly replacing any other legal standard, the Fourth LPA provides that such a conflict will not constitute a breach of fiduciary duty "in the absence of bad faith by the General Partner . . . ."[3] In addition, the Fourth LPA directly limits the liability of the General Partner and its officers and agents, providing in Section 4.1(i)(i), "[n]either the General Partner nor its directors, officers, employees, agents*,* or representatives shall be liable to the Partnership or any Limited Partner for errors in judgment or for any acts or omissions that do not constitute gross negligence or willful or wanton misconduct." Accordingly, the Fourth LPA "leaves no room for the application of common law fiduciary duty principles," and breach of its terms is the "sole source of protection." *Gotham Partners*, 817 A.2d at 171.

18.    The Complaint's failure to allege that Ellington breached any contractual fiduciary

---

[3] Fourth LPA at § 4.1(g) ("whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or any Limited Partner, on the other hand, any action taken by the General Partner, in the absence of bad faith by the General Partner, shall not constitute a breach of the [Fourth LPA] or any other agreement contemplated herein or a breach of any standard of care or duty imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation.").

duty established in the Fourth LPA warrants dismissal of Counts V and XIV. As the Delaware Supreme Court has held, in the limited partnership context plaintiffs cannot "litigate . . . as if they were investors in a corporation, whose directors had the traditional duties of loyalty and care," but rather are "restrict[ed] to relying upon the agreement's terms for protection." *Haynes Family Tr. v. Kinder Morgan G.P., Inc.*, 135 A.3d 76, 76 (Del. 2016) (affirming dismissal of complaint alleging self-dealing transaction by general partner and board members because it sought to hold defendants "responsible for duties inconsistent with the agreement," which was "the exclusive source of protective rights"); *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 368-69 (Del. 2013) (dismissing claims against general partner parent's board members because plaintiff "cannot state a cognizable claim for relief against [them] for causing [the general partner] to take an action that did not breach [the general partner's] duties under the LPA").

19.     The Complaint fails to plausibly allege that Ellington engaged in any "gross negligence or willful or wanton misconduct," as is the requisite standard under the Fourth LPA. Fourth LPA § 4.1(i)(i). Far from alleging gross negligence or willful and wanton misconduct, the Complaint alleges Ellington implemented transactions at the specific direction of Dondero, who "exercised complete control over HCMLP" and had the discretion to do so under the Fourth LPA.

> 2.     *Count V Also Fails to State a Claim Because Kirschner Asserts a Professional Negligence Claim Under the Guise of Breach of Fiduciary Duty.*

20.     In the alternative, and to the extent the Complaint seeks to allege a breach of fiduciary duty based on Ellington's role as an in-house attorney (Compl. ¶ 196), Count V also fails to state a breach of fiduciary duty claim for which relief may be granted because the allegations sound in professional negligence (*i.e.*, legal malpractice).

21.     To prevail on a breach of fiduciary duty claim against an attorney, a plaintiff must prove (1) the existence of a fiduciary relationship, (2) breach, (3) causation, and (4) damages to

the plaintiff. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.) (*citing Floyd v. Hefner*, 556 F.Supp.2d 617, 661 (S.D. Tex. 2008)). The breach element in a breach of fiduciary duty claim against an attorney is primarily distinguishable from a mere legal malpractice claim because "it focuses on whether the attorney obtained an improper benefit from representing the client." *Border Demolition & Envtl., Inc. v. Pineda*, 535 S.W.3d 140, 159 – 160 (Tex. App.—El Paso 2017, no pet.); *Beck*, 284 S.W.3d at 429; *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.).

22.     The foregoing "anti-fracturing rule prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as . . . breach of fiduciary duty . . . ." *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied). As explained by the Dallas Court of Appeal, this rule is important because, "[e]ven if a complaint implicates a lawyer's fiduciary duties, it does not necessarily follow that such a complaint is actionable apart from a negligence claim." *Won Pak*, 313 S.W.3d at 458; *see also Isaacs v. Schleier*, 356 S.W.3d 548, 559-560 (Tex. App.—Texarkana 2011, pet. denied) (allegation that attorney failed to disclose that he represented both sides of a real estate transaction sounded in negligence, not fiduciary duty). In that regard, this Court must look beyond mere labels in the Complaint and determine, as a question of law, whether the "gravamen" of the allegations sound in negligence because they focus on "the quality or adequacy of the attorney's representation" or, in contrast, whether the "gravamen" of the allegations sound in fiduciary duty because they focus on "the attorney obtain[ing] an improper benefit from representing the client . . . ." *Won Pak*, 313 S.W.3d at 457; *Official Stanford Investors Comm. v. Greenberg Traurig, LLP*, 2014 WL 12572881, at *6 (N.D. Tex. Dec. 17, 2014) (Godbey, J.) (Texas courts consistently find that alleged

misrepresentations or conflicts of interest giving rise to a breach of fiduciary duty claim "are those in which the lawyer has a direct pecuniary interest . . . that is adverse to the client").

23.     *Won Pak v. Harris* is instructive on the factual situation before the Court and, specifically, whether the Complaint properly alleges that Ellington obtained an improper pecuniary benefit. 313 S.W.3d at 457-458. In that case, an attorney represented Sun Tec and multiple investors in a merger transaction to be accomplished via a new Texas limited partnership. Shortly after Sun Tec assigned its service contracts to the new partnership, the investors used their powers as general partner to exclude Sun Tec's owners, thereby stripping away future profits. Sun Tec's owners sued the attorney, who allegedly had secret communications with the investors before the merger closed, alleging he "conspired with, or aided and abetted the fraud of the other investors by . . . failing to disclose [investor] emails, failing to disclose after the merger that he did not draft the document assigning Sun Tec's vendor's contracts [to the new partnership], and 'failing to take corrective action' after he learned of their fraud." *Id*. at 458. The trial court held that the complaints "sound in negligence and not breach of fiduciary duty" because, although alleging that the mishandling of the representation enabled fellow investors to defraud them out of their business, the plaintiffs did "not complain specifically about any improper benefit [the attorney] received from representing" them. *Id*. The Dallas Court of Appeal affirmed the judgment in favor of the attorney. As recognized by the Dallas Court of Appeal, "the heart of [the] complaint is [the] alleged failure to provide adequate legal representation by his failure to properly inform, advise, and communicate with [plaintiffs]. As such, we conclude the gist of [the] allegations involves the quality of [the] representation rather than the integrity and fidelity of the attorney." *Id*.

24.     Similarly here, the gravamen of Kirschner's breach of fiduciary duty claim against Ellington in Count V is that performance of his job duties at the direction of his client allegedly

9

assisted it in transactions that caused HCMLP to incur claims from third parties that it otherwise "never would have incurred" or would have resolved "for substantially lower amounts." Compl. ¶ 197. Kirschner's focus in Count V is on the harm to HCMLP, rather than any benefit to Ellington. The conduct allegations specific to Ellington likewise concern quality of the legal representation and failure to adequately inform or advise the client, or others on behalf of the client, of a conflict of interest. *See, e.g.*, Compl. ¶ 200 (alleged postpetition failure to disclose transfer); ¶ 205 (providing false narratives). Kirschner never pleads, in support of Count V, that Ellington obtained *any* improper personal financial benefit from any transactions addressed in Count V. *See* Compl. ¶¶ 195–208. As taught by Judge Godbey in the *Official Stanford Investors Committee* decision, such omission is fatal to the breach of fiduciary duty claim against Ellington, and Count V must be dismissed. 2014 WL 12572881, at *6 (dismissing a fiduciary duty claim and holding that the law firm's work "in order to assure its continued employment by Stanford . . . does not allege an improper pecuniary interest supporting a conflict of interest; rather, it alleges the same general interest in getting paid that underlies every legal representation, an interest that Texas courts have consistently found insufficient to support a claim for breach of fiduciary duty").[4]

> 3. *The Complaint Fails to Allege Ellington Did Anything but Obey and Follow Lawful Client Instructions.*

25. The Complaint states that Ellington performed the conduct alleged in support of the breach of fiduciary duty claims (Counts V and XIV) at the instruction of Dondero, the owner and sole director of Strand, which was designated to have exclusive control over HCMLP under the Fourth LPA. Therefore, at all times pertinent to the Complaint, Dondero acted as the representative of Ellington's client while Ellington served as in-house counsel for HCMLP. Compl. ¶¶ 197-200,

---

[4] A professional negligence claim is subject to a two-year statute of limitations, rather than the four-year limitations period applicable to fiduciary duty claims. Tex. Civ. Prac. & Rem. Code § 16.003(a). If the Court finds that Plaintiff's fiduciary duty claims properly sound in negligence, then Ellington reserves the right to move to dismiss based on the applicable two-year statute.

206-208, 260. Notably, however, the Complaint fails to allege that such instructions constituted a breach of the Fourth LPA. Texas law is well established that an attorney cannot be liable for malpractice if they obey and follow a client's lawful instruction. *See Edwards v. Dunlop-Gates*, 344 S.W.3d 424, 433 (Tex. App.—El Paso 2011, pet. denied); *Isaacs*, 356 S.W.3d at 559; *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923-924 (Tex. App.—Fort Worth 2003, pet. denied); *Garrett v. Giblin*, 940 S.W.2d 408, 410 (Tex. App.—Beaumont 1997, no writ), *Zidell v. Bird*, 692 S.W.2d 550, 553 (Tex. App.—Austin 1985, no writ); *see also Wolf v. Ramirez*, 622 S.W. 3d 126, 142 (Tex. App.—El Paso 2020, no pet.) (attorneys have "the duty to follow the client's instructions" as part of their fiduciary duty of integrity and fidelity). The breach of fiduciary duty claim against Ellington must be dismissed on this basis as well. Kirschner cannot recover against Ellington for actions Kirschner alleges Ellington undertook at his workplace at the specific instruction of Dondero.

      4.      *The Complaint Cannot, as a Matter of Texas Law, Adequately Allege the Elements of Harm, as Kirschner May Not Substitute his Judgment of Ellington's Legal Work for that of the Then-Client HCMLP*

26.      The Fifth Circuit has specifically rejected post-hoc attempts such as that employed by Kirschner here to substitute a trustee's judgment for that of the then-client. *In re Segerstrom*, 247 F.3d 218, 226 (5th Cir. 2001) ("Texas courts have recognized that legal malpractice actions are 'intrinsically personal' and that the satisfaction of the client in a legal malpractice case is 'paramount.'") (*citing Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex. App.—San Antonio 1994, writ ref'd.); *Charles v. Tamez*, 878 S.W.2d 201, 208 (Tex. App.—Corpus Christi 1994, writ denied)).

27.      In the foregoing well-reasoned decisions, state and federal courts following Texas law explain why allegations must focus on the satisfaction of the client then-served by the attorney and warn of the consequences of ignoring this rule when, as is the case with the HCMLP creditor

body, a client's former litigation opponents gain control of the client. *See Zuniga*, 878 S.W.2d at 318 ("By agreeing to represent an insolvent defendant, a lawyer could be putting his own assets and insurance within reach of a plaintiff who otherwise would have an uncollectible judgment"); *Tamez*, 878 S.W.2d at 208 (allowing previous litigation opponents to seize control of a malpractice claim "does not promote . . . the overall purpose of the Texas legal system").

28.     The Complaint fails to allege that HCMLP was anything but satisfied with Ellington's work when it was performed, and, on that basis, Counts V and XIV must be dismissed. *In re Segerstrom*, 247 F.3d at 226 (when the client "receive[d] the precise goal" he sought in the representation, then the acts of counsel cannot be said to have caused "injury" to the client).

    5.     *The Complaint Fails to Plausibly Allege that Ellington's Conduct Caused HCMLP Damages.*

29.     A required element for a breach of fiduciary duty or professional negligence claim against an attorney is but-for causation. In order to plead but-for causation, the plaintiff must allege that the client (1) was unaware of the illegality of its actions or (2) would have acted differently if advised differently. *See Taylor*, 2020 WL 4432848 at \*6 (N.D. Tex. July 31, 2020) (finding it "speculative to assume" a change in action of counsel would have altered the action of the client); *In re Segerstrom*, 247 F.3d at 226 ("The estate must prove not only that an alternative trial strategy was available to [the client], but that [the client] would have pursued that strategy with independent representation") (*citing Trinity Universal Ins. Co. v. Bleeker*, 966 S.W.2d 489, 491 (Tex. 1998)). The Complaint fails to adequately plead but-for causation.

30.     The Complaint's conclusory assertion that "[b]ut for" the breach of "Dondero (and in turn, Strand), Ellington, and Leventon," HCMLP "never would have incurred" $350 million in allowed claims or would have resolved them "for substantially lower amounts" is insufficient to adequately plead and prove but for causation as to Ellington. Compl. ¶ 197. Kirschner fails to

allege facts that, if true, would show that there would have been a different outcome in the UBS, Acis and Crusader litigations described in Count V absent Ellington's specific conduct. Likewise in Count XIV, concerning the Massand Transfers, Ellington is always mentioned as an add-on to Dondero—never for any conduct he allegedly performed himself. *See* Compl. ¶¶ 260, 264 (repeating "Dondero and Ellington" five times).

31.     The Complaint fails to allege that Dondero and HCMLP would have acted any differently but for Ellington's "aid" in drafting legal documents to "consummate these transactions" in Count V or in connection with the alleged execution of and payment on consulting agreements or directing the use of escrow account funds in Count XIV. *See* Compl. ¶¶ 67, 260, 264. The Complaint alleges numerous facts that compel the opposite conclusion to but-for-causation, including the following: "Dondero made every material business, operational, management, and financial decision for HCMLP" (Compl. ¶ 104); "Dondero was the 'ultimate decision-maker' for 'every [] entity in the firm and for the firm as a whole'" (Compl. ¶ 108); and "Dondero frequently instructed HCMLP's legal department to perform legal services in connection with Dondero's personal and business interests" (Compl. ¶ 113). These general and non-specific allegations do not adequately plead but-for causation as to Ellington. *Taylor v. Scheef & Stone, LLP*, No. 3:19-CV-2602-D, 2020 WL 4432848, at *7 (N.D. Tex. July 31, 2020). ("[A]llegations that a lawyer 'assisted' a client's illegal action or provided deficient legal advice that contributed to the client's harm, without more, are insufficient to satisfy the causation prong [of a] professional negligence claim."). To take one example, as to the UBS liability, the allegations against Ellington in Count V include acting with Dondero to "cause" HCMLP to "orchestrate a surreptitious transfer" of $300 million which in turn led to an allowed claim of $125 million with UBS. But the Complaint's repeated grouping of Ellington with Dondero is not sufficient to plead that Ellington's

13

purported conduct was the but-for cause of the increase in the UBS settlement amount. The Complaint does not set forth why or how HCMLP agreed to *settle* with UBS for a higher amount as a result of the alleged "surreptitious transfer" or that the so-called surreptitious transfer even involved assets of HCMLP. *See* Compl. ¶ 199. Accordingly, Counts V and XIV must be dismissed for failure to sufficiently allege but-for causation against Ellington.

> 6. *The Complaint Cannot Claim Breach of Fiduciary Duties for Allegedly Enabling Conduct Harmful to Creditors*

32. Claims that a company's professionals aided and abetted the company in causing injury to its creditors do not belong to a party standing in the shoes of the company. *Reneker v. Offill*, 2009 WL 804134, at *6 (N.D. Tex. Mar. 26, 2009). As such, Kirschner, standing in the shoes of HCMLP, has no standing to assert claims resulting from injuries caused by HCMLP to its creditors.

33. Moreover, Kirschner cannot recover against Ellington for the harms allegedly caused by HCMLP under the guise of a breach of fiduciary duty. In *Reneker*, Chief Judge Fitzwater dismissed a breach of fiduciary duty claim against a company's law firm for allegedly enabling conduct that harmed the company's creditors, which then resulted in the estate being liable to such creditors. *Id.* at *9. In so doing, he held that "allowing the [clients] to continue illegal and/or fraudulent activity, would only amount to a breach of fiduciary duty if [the law firm] owed the [clients] a fiduciary duty not to enable them to continue such activities." *Id.*; *see also Latitude Sols., Inc. v. DeJoria*, 922 F.3d 690, 697 (5th Cir. 2019) (adopting *Reneker* in reversing the trial court's damages finding against the defendants for breaches of fiduciary duty that resulted in creditor claims against the estate).

34. Where the debtor "has joined with a third party in defrauding its creditors, the [debtor's] trustee cannot recover against the third party for the damage to the creditors." *Newby v.*

*Enron Corp., (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 511 F. Supp. 2d 742, 797-798 (S.D. Tex. 2005) (*citing Breeden v. Kirkpatrick & Lockhart LLP* (*In re Bennett Funding Group, Inc.*), 336 F.3d 94, 100 (2d Cir. 2003)); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991). This is the so-called "*Wagoner* rule;" "though the Fifth Circuit has not directly addressed the *Wagoner* rule specifically, district courts within this Circuit have agreed with the underlying principle." *Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification Beams Sys., LLC*, 556 B.R. 815, 838 (W.D. Tex. 2017) (citing *In re Enron Corp.*, 2007 WL 789141, at *7); *Finova Capital Corp. v. Lawrence*, No. 399CV2552-M, 2000 WL 1808276, at *2 (N.D. Tex. Dec. 8, 2000). "The rationale for the *Wagoner* rule is the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation." *Bennett Funding*, 336 F.3d at 100. The company only may recover against the agent if he "is really committing fraud for his own benefit" and "has totally abandoned the principal's interests." *Id*. "This rule applies to professional liability claims." *Newby*, 511 F. Supp. 2d at 797. Therefore, a party standing in the shoes of the company does not have standing to bring claims that the professionals aided and abetted a company's bad acts against third parties. *Id*. As a matter of law, Kirschner cannot allege breaches of fiduciary duty against Ellington for allegedly enabling conduct harmful to a creditor, which then resulted in HCMLP's estate being liable to such creditor. *Id*.

      **B.**      **Kirschner Fails to State a Claim Against Ellington for Civil Conspiracy to Breach Fiduciary Duties (Count XVI).**

      35.      Kirschner also fails to state a claim for civil conspiracy against Ellington. To state a claim for conspiracy, a plaintiff must allege "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance

of the object or course of action; and (5) damages occur as a proximate result." *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 196 (Tex. App.—El Paso 2017, no pet.) (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)).

        *1.*    *As an Agent of HCMLP, Ellington Cannot Legally Conspire With Other Agents of HCMLP.*

     36.    Count XVI fails because Ellington as an HCMLP employee in the legal team cannot, as a matter of law, conspire with other HCMLP employees when acting within the scope of his work authority, and the Complaint fails to allege that Ellington acted outside of the scope of his authority. *See Graham v. Pazos De La Torre*, 821 S.W.2d 162, 166 (Tex. App.—Corpus Christi-Edinburg 1991, writ denied) ("the general rules are that the principal is liable for the authorized acts of his agent and an agent is liable only if he acts beyond the scope of his authority."); *see also III Forks Real Estate, L.P. v. Cohen*, 228 S.W.3d 810, 814 (Tex. App.–Dallas 2007, no pet.) ("A principal is liable for the fraudulent acts and misrepresentations of its authorized agent, even though the principal had no knowledge of the fraud and did not consent to it, whether or not the principal derives a benefit from it.").

     37.    The Complaint vaguely alleges that Ellington, Leventon, and Dondero "orchestrated myriad transactions to divert funds from HCMLP to Dondero." Compl. ¶ 271. Yet the Complaint does not allege that Ellington took any action that was not at the direction, or with the approval, of Dondero or that Ellington's acts with regard to these transactions were outside the scope of his authority. The absence of allegations in the Complaint that Ellington acted outside of the scope of his authority is not surprising given that "[c]onduct that serves ***any*** purpose of the employer is within the scope of employment even if the conduct escalates beyond that assigned or permitted." *Fink v. Anderson*, 477 S.W.3d 460, 466 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (emphasis added). Strand (and thereby Dondero) had sole discretion to control HCMLP by virtue

16

of the Fourth LPA. *See* Section 4.1(a) of the Fourth LPA ("The general Partner shall conduct, direct, and exercise full control of over all activities of the Partnership . . . ***all management powers over the business and affairs of the Partnership shall be exclusively vested in the General Partner*** . . .") (emphasis added). Dondero had the exclusive right under the Fourth LPA to determine what actions HCMLP should take and to determine whether any such actions served any purpose of HCMLP. Kirschner cannot rewrite the Fourth LPA, and, therefore, cannot (and does not) allege that any transactions breached the Fourth LPA, that Dondero exceeded the scope of his authority under the Fourth LPA, or that Ellington was not entitled to follow the instructions of Dondero. Accordingly, Count XVI must be dismissed.

       2.     *No Actionable Civil Conspiracy Exists Because the Complaint Fails to Allege a "Meeting of the Minds" to Cause the Injury.*

    38.     Even if a valid conspiracy claim could be plead under the facts alleged, the Complaint fails to allege any non-conclusory facts to show that Ellington had specific intent to cause harm to HCMLP, which is required to allege a "meeting of the minds on the object or course of action." *See MVS*, 545 S.W.3d at 196 ("The conspiring parties must be aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement," and an "actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means."). Agreeing to the conduct alone is not enough; conspiracy "requires a specific intent to cause the intended injury." *In re Artho*, 587 B.R. 866, 885 (Bankr. N.D. Tex. 2018); *see also Chu v. Hong*, 249 S.W.3d 441, 447 (Tex. 2008) (same). Instead, the Complaint vaguely alleges that Ellington and others "specifically intended to benefit themselves and Dondero at the expense of HCMLP" and that Ellington was "aware that causing HCMLP to pay SAS's expenses . . . harmed HCMLP." Compl. ¶¶ 274-75. These bare allegations are insufficient to support intent.

### C. Unjust Enrichment Is Not an Independent Claim Cognizable Under Texas Law (Count XXVII).

39. The Complaint includes a claim for "unjust enrichment" against Ellington, but, as the Fifth Circuit has held, no such independent cause of action exists under Texas law. *Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) ("unjust enrichment describes the nature of certain claims and remedies, not a distinct cause of action itself"); *see also McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 891 (Tex. App.—Dallas 2014, pet. denied) ("unjust enrichment is not an independent claim; rather it is a theory of recovery").

40. Count XXVII should be dismissed under binding precedent in the Northern District of Texas, which routinely dismisses purported "claims" for unjust enrichment. *See, e.g.*, *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp.2d 539, 561 (N.D. Tex. 2009); *Taylor v. Trevino*, No. 3:20-CV-0393-D, 2021 WL 347566, at *4 (N.D. Tex. Feb. 2, 2021); *Arencibia v. AGA Serv. Co.*, No. 4:20-cv-00819-O, 2020 WL 10056799, at *5 (N.D. Tex. Nov. 13, 2020).

### D. *De Minimis* Amounts Allegedly Paid to Ellington Are Not Avoidable As Preferential Transfers and Must Be Dismissed (Count XXXI).

41. Pursuant to 547(c)(9) of the Bankruptcy Code, a trustee may not avoid a transfer that is less than $6,825. Count XXXI alleges thirteen separate transfers to Ellington, eleven of which are below the threshold amount. As such *de minimis* transfers are not avoidable under the statute, those portions of Count XXXI must be dismissed.

### E. Kirschner Fails to State a Claim Against Ellington for Avoidance and Recovery of Certain Massand Transfers (Counts XXII and XXIII).

42. Kirschner brings both constructive (Count XXII) and intentional (Count XXIII) fraudulent transfer claims against Ellington seeking to avoid the so-called "Massand Transfers"— payments allegedly made from HCMLP to Massand Capital pursuant to "fraudulent" consulting agreements between them. Compl. ¶ 311. The Complaint fails to plead how transfers beyond the

four-year statute of repose can be avoided and fails to plead that HCMLP was insolvent at all pertinent times. Therefore, Counts XXII and XXIII should be dismissed.

43. Kirschner pursues these Massand Transfer claims under sections 544 and 550 of the Bankruptcy Code, 26 U.S.C. § 6502, and "Applicable State Law." Section 544(b)(1) allows a trustee to avoid any transfer or obligation that is voidable by a creditor holding an allowed claim against HCMLP under applicable law. Courts interpret "applicable law" to mean state fraudulent transfer law, which in this case, is the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24, "***TUFTA***"). Kirschner also relies upon 26 U.S.C. § 6502, which presumably relates to amounts the Internal Revenue Service ("***IRS***") might seek to recover in its capacity as a creditor of HCMLP.

    *1.*     *Kirschner Fails to Allege that the Massand Transfers Between January 7, 2015 and September 29, 2015 Occurred Within the Applicable Repose Period.*

44. The Massand Transfers alleged to have occurred between January 7, 2015 to September 29, 2015 fail because they are time-barred and outside of the applicable repose period, which only goes as far back as October 16, 2015.

45. Section 24.010(a)(2) of TUFTA, relevant for the constructive fraudulent transfer claims, provides that a "fraudulent transfer or obligation under this chapter is extinguished unless action is brought: . . . (2) under Section 24.005(a)(2) or 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred." Similarly, TUFTA § 24.010(a)(1), applicable to the intentional fraudulent transfer claims, provides that a transfer is extinguished unless the action is brought "within four years after the transfer was made . . . or, if later, within one year after the transfer . . . could reasonably have been discovered by the claimant."

46. Applying TUFTA's four-year statute of repose period, the earliest transfers Kirschner can pursue are those beginning October 16, 2015—four years before the October 16,

2019 Petition Date. Yet Kirschner seeks to recover Massand Transfers from January 7, 2015 to September 29, 2015. *See* Compl. ¶¶ 311, 318. Because Kirschner does not plead facts to support avoidance of these transfers beyond the TUFTA statute of repose, the Court must dismiss both Counts XXII and XXIII as to such transfers.[5]

>    2.    *Kirschner Fails to Plead Insolvency.*

47.    To support a valid constructive transfer claim, Kirschner must plead that HCMLP was insolvent at the time of the transfer or as a result of the transfer. And to meet the Fifth Circuit's standard for a constructive transfer claim, Kirschner is required to provide *specific* financial information to make his allegations of insolvency plausible. *In re ATP Oil & Gas Corp.*, 711 F. App'x 216, 223 (5th Cir. 2017); *see also In re Crescent Res., LLC*, 2012 WL 195528, at *8 (Bankr. W.D. Tex. Jan. 23, 2012) (complaint required to provide actual financial data to adequately plead insolvency); *Eddystone Rail Co., LLC v. Bank of Am., N.A.*, 2021 WL 4443371, at *7 (S.D.N.Y. Sept. 28, 2021).

48.    The Complaint only contains general and conclusory allegations that, "[a]t the time of each of the Massand Transfers, HCMLP was insolvent, was engaged or was about to engage in business or a transaction for which the remaining assets of HCMLP were unreasonably small in relation to the business or transaction, and/or believed or reasonably should have believed that HCMLP would incur debts beyond HCMLP's ability to do so as they became due." Compl. ¶ 315.

---

[5] Kirschner cannot invoke 26 U.S.C. § 6502 and the IRS as a "golden creditor" in an attempt to circumvent the applicable state four-year statute of repose. Although the United States is not typically bound by state statutes of limitation, this "immunity" is not without limits. *See Wagner v. Ultima Homes, Inc. (In re Vaughan Co., Realtors)*, 498 B.R. 297, 304 (Bankr. N.M. 2013); *Marshall v. Intermountain Elec. Co.*, 614 F.2d 260, 304 (10th Cir. 1980) (declining to allow the trustee to invoke section 6502 to pursue a private action to avoid fraudulent transfers for the benefit of creditors). Moreover, even if Kirschner could use the IRS as a "golden creditor," he cannot use the IRS to recover transfers that occurred before the IRS had a claim against HCMLP. Kirschner has not pled the existence of any other creditor with standing to recover the Massand Transfers.

Accordingly, Count XXII should be dismissed for failure to adequately plead the requisite insolvency standards with appropriate specificity.

> 3.     *Kirschner Fails to Satisfy the Heightened Pleading Standard Applicable to the Intentional Fraudulent Transfer Claim (Count XXIII).*

49.     Kirschner has failed to plead with particularity, in accordance with Rule 9(b), "the circumstances constituting fraud or mistake" that support his intentional fraudulent transfer claims in Count XXIII.

50.     Rule 9(b) requires a complaint to lay out the "who, what, when, where, why, and how the false statements were made and to whom they were made." *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 647 (N.D. Tex. 2020) (applying Rule 9 heightened pleading standard to intentional fraudulent transfer claims). Here, Count XXIII is premised on the underlying alleged fraudulent conduct of Dondero. Compl. ¶ 319 ("Dondero caused HCMLP to make the Massand Transfers with actual intent to hinder, delay, and defraud HCMLP's creditors"). As a result, Kirschner must plead with particularity the factual basis for the alleged fraudulent intent of HCMLP (acting at the direction of Dondero) to state a plausible claim against Ellington, which he clearly has not done. *See Brown v. Douglas (In re Dual D Health Care Operations, Inc.),* Nos. 17-41320-ELM, Adv. No. 20-04059, 2021 Bankr. LEXIS 1934, at *35 (Bankr. N.D. Tex. 2021) (the complaint must "plead with particularity the facts relied upon by the plaintiff to support such badges of fraud and, ultimately, the actual fraud alleged").

51.     Instead, the Complaint concludes, with no factual support, that "Dondero caused HCMLP to make the Massand Transfers with actual intent to hinder, delay, and defraud HCMLP's creditors." Compl. ¶¶ 308, 319. Kirschner does not plead with particularity how Dondero "caused" HCMLP to make the Massand Transfers or in what way Dondero intended the alleged harm. Kirschner's actual fraud claims are predicated on HCMLP receiving no consideration in exchange

21

for its payments to Massand Capital, but these allegations are wholly conclusory and certainly not pled with the level of particularity mandated by Rule 9(b).

> **F. Kirschner Fails to State a Claim Against Ellington for Avoidance and Recovery of the Alleged Expense Transfers (Counts XXXII and XXXIII).**

52. The Complaint seeks to avoid and recover "Alleged Expense Transfers" Ellington purportedly received from HCMLP within one year of the Petition Date under theories of constructive (Count XXXII) and intentional (Count XXXIII) fraudulent transfers. The statutory bases Kirschner uses to pursue these claims are the same as recounted for the Massand Transfers, with the addition of section 548 of the Bankruptcy Code. Section 548(a)(1)(A) allows for the avoidance of intentional fraudulent transfers if the debtor "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud." Section 548 also allows for the avoidance of constructive fraudulent transfers when the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation" and was insolvent at the time of the transfer, or satisfied other enumerated conditions at the time of the transfer. These claims should be dismissed as well.

> *1. Kirschner Fails to Plead That the Alleged Expense Transfers Are Anything Other than Valid Expense Reimbursements (Count XXXII and XXXIII).*

53. Kirschner seeks to challenge each and every expense reimbursement made to Ellington within one year of the Petition Date, but only "to the extent" they did not constitute legitimate reimbursement claims. Compl. ¶¶ 362, 369, 374. In so doing, Kirschner fails to plead affirmatively that HCMLP did *not* receive reasonably equivalent value in exchange, and Kirschner improperly attempts shifts the burden to Ellington to prove the legitimacy of the payments. Without some alleged factual basis, the Court is not required to accept unsupported allegations that 100% of an employee's expense reimbursements are fraudulent. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a pleading does not set forth a legally "plausible claim" unless

its non-conclusory allegations of wrongdoing are "more likely" than a lawful, alternative explanation). Kirschner needs to allege facts to support that the transfers are other than for reimbursement of valid expenses. Mere threadbare recitals such as these are insufficient to survive a motion to dismiss, and certainly do not meet the pleading standard under either Rule 8 or 9(b).

54.     Likewise, Kirschner's intentional fraudulent transfer claim is premised on the speculation that no underlying expenses related to the Alleged Expense Transfers exist. Kirschner states that, "although Dondero and Ellington assert that the Alleged Expense Transfers constitute reimbursement for valid expenses, on information and belief, there is no factual basis for that assertion." Compl. ¶ 376(b). Kirschner has access to *all* HCMLP's books and records, yet the Complaint fails to state any underlying facts for how the expenses were not valid and reimbursable, and the Complaint certainly does not plead with particularity how or in what way HCMLP intended to defraud in relation to the Alleged Expense Transfers. *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 647 (N.D. Tex. 2020) (applying Rule 9(b) to intentional fraudulent transfer claim and noting it requires the complaint to lay out the "who, what, when, where, why, and how the false statements were made and to whom they were made."). Kirschner also does not plead with particularity how Ellington "caused" HCMLP to make the Alleged Expense Transfers. Because Kirschner fails to satisfy his pleading requirement under Rules 8 and 9(b), and 11 U.S.C. § 548, the intentional fraudulent transfer claim against Ellington must be dismissed.

> 2.     *The Constructive Fraudulent Transfer Claim (Count XXXII) Fails to Allege Lack of Reasonably Equivalent Value of the Alleged Expense Transfers.*

55.     With respect to section 548(a)(1)(B)(i) of the Bankruptcy Code, a trustee may only avoid a transfer if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." Section 24.005(s) TUFTA also requires a lack of "reasonably equivalent value in exchange for the transfer" as an element of a constructive fraudulent transfer

claim. "A complaint that only states that the debtor received less than reasonably equivalent value does not meet the pleading standard of Rule 8." *Faulkner v. Lone Star Brokering, LLC (In re Reagor-Dykes Motors, LP)*, 2021 Bankr. LEXIS 1643, at \*11-12 (Bankr. N.D. Tex. 2021). To sufficiently plead a "constructive fraudulent transfer under § 548, the complaint *must* plausibly allege that the debtor received less than reasonably equivalent value." *Id.* at \*10 (emphasis added).

56.     Here, Kirschner fails to plausibly allege that HCMLP received less than reasonably equivalent value for the Alleged Expense Transfers to Ellington, which is fatal to his constructive fraudulent transfer claim (Count XXXII). The Complaint in this case, like the one in *Reagor-Dykes*, lists the amount of expenses submitted by Ellington "without any information related to any invoices" and with conclusory statements regarding reasonably equivalent value.[6]

57.     These conclusory statements are insufficient to support the Trustee's requisite burden to show lack of reasonably equivalent value. As such, the constructive fraudulent transfer claims against Ellington must be dismissed. *See also Crescent Res. Litig. Tr. v. Nexen Pruet, LLC (In re Crescent Res., LLC)*, No. 09-11507-CAG, Adv. No. 11-01082- CAG, 2012 Bankr. LEXIS 287, at \*24-25 (Bankr. W.D. Tex. 2012) (ordering dismissal of section 548 fraudulent transfers when, "other than dates, amounts, and names of transferees . . . along with general conclusory allegations of insolvency and reasonably equivalent value, the Trust fails to support its allegations with factual assertions").

## CONCLUSION

58.     The Court should dismiss without prejudice all claims against Ellington because Kirschner lacks standing, and the claims have been brought in a court that lacks subject matter

---

[6] *See* Compl. at ¶¶ 362, 371, 376(f) ("HCMLP received less than reasonably equivalent value in exchange for each of the Alleged Expense Transfers. Indeed, HCMLP received no value for the Alleged Expense Transfers, each of which was a gratuitous transfer from HCMLP to or for the benefit of Dondero and Ellington," and "HCMLP received less than reasonably equivalent value (and in fact, received zero consideration) in exchange for the Alleged Expense Transfers.").

jurisdiction to adjudicate them. Alternatively, the Court should dismiss with prejudice eight of the claims against Ellington because the Complaint fails to state claims for which relief can be granted against Ellington.

Dated: March 23, 2022

By: */s/ Michelle Hartmann*
Michelle Hartmann
State Bar No. 24032402
**BAKER & MCKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
**BAKER & MCKENZIE LLP**
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for Scott Ellington*

## CERTIFICATE OF SERVICE

I certify that on March 23, 2022, a true and correct copy of the above and foregoing document was served via electronic email through the Court's CM/ECF system to the parties that have requested or consented to such service.

*/s/ Michelle Hartmann*
Michelle Hartmann