Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendant NexPoint Advisors, L.P.*
*and Highland Capital Management Fund Advisors, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>Reorganized Debtor. | **Chapter 11**<br><br>**Case No. 19-34054-sgj11** |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,**<br><br>Plaintiff,<br><br>v.<br><br>**JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,**<br><br>Defendants. | **Adv. Pro. No. 21-03076-sgj**<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iii

I.   Introduction ............................................................................................. 1

II.  Background ............................................................................................. 1

III. Standard of Review ................................................................................. 2

    A.   Federal Rule of Civil Procedure 12(b)(1) ....................................... 2

    B.   Federal Rule of Civil Procedure 12(b)(6) ....................................... 3

IV.  Arguments and Authorities ..................................................................... 3

    A.   Jurisdictional Arguments. ................................................................ 3

        1.   Plaintiff Lacks Standing to Pursue His State Law Claims Because the Bankruptcy Plan Did Not Specifically and Unequivocally Reserve the State Law Claims Against Defendants. ................. 3

        2.   Plaintiff's State Law Non-Core Claims Must be Dismissed for Lack of Subject Matter Jurisdiction. ....................... 4

        3.   The Complaint Fails to Plead a Benefit to the Estate. .............................. 4

    B.   Plaintiff Fails to Plead Insolvency. ................................................. 5

    C.   Plaintiff's Claims are Time-barred and Otherwise Unsustainable ........................ 6

        1.   Plaintiff's Count Seeking a Declaration that HCMFA and NPA are Alter Egos of HCMLP, Strand and Dondero Does Not State a Claim. ............... 6

            (a)   Defendants Cannot Be Treated as the Alter Egos of HCMLP Because Plaintiff Does Not Plead that Defendants Own Any Interest in HCMLP as Required by Delaware Law. ................... 6

            (b)   Alter Ego Liability is Not an Independent Cause of Action ........... 7

        2.   The Trustee's Claims for Avoidance Based on Constructive and Intentional Fraudulent Transfer Must Be Dismissed. ................... 7

            (a)   The Complaint Fails to Allege Facts Sufficient to Establish Plaintiff's Standing to Bring His Fraudulent Transfer Claims or to Extend the Statute of Limitations. ................... 7

            (b)   The IRS Cannot Be A Triggering Creditor Here. .......... 10

        3.   Plaintiff's Claim for Successor Liability Has Multiple Fatal Flaws. ........ 15

            (a)   Plaintiff Does Not Adequately Plead the De Facto Merger Because Defendants Never Acquired All of HCMLP's Assets. ................... 15

| | (b) | Plaintiff Does Not Adequately Plead the Elements of Mere Continuation Because HCMLP and Defendants Co-Existed for Years. ........................................................................... 16 |

4. Plaintiff's Claims for Aiding and Abetting Breach of Fiduciary Duty and Knowing Participation in Breach of Fiduciary Duty and Civil Conspiracy to Breach Fiduciary Duty Are Fatally Flawed. ........................................ 17

    (a) Counts 15 and 16 Are Time-Barred. ............................................. 17

    (b) Plaintiff Lacks Standing to Bring Claims for Breach of Fiduciary Duty, Defeating His Derivative Aiding and Abetting, Knowing Participation and Conspiracy Claims. ........................................... 18

    (c) Strand and Dondero Owed no Fiduciary Duties to HCMLP. ....... 19

    (d) The Complaint Fails to Allege Facts that the Alleged Breach Damaged HCMLP. ...................................................................... 20

    (e) Counts 15 and 16 Really Complain About Transfers, and There is No Secondary Liability for Fraudulent Transfers. ........................ 21

5. Plaintiff's Claim for Tortious Interference with Prospective Business Relations Has Two Fatal Flaws. ............................................................. 22

    (a) Plaintiff's Allegations of Tortious Conduct Are Insufficient. ...... 22

    (b) The LPA Precludes Plaintiff's Claim for Tortious Interference of Business Relations. ...................................................................... 23

6. Plaintiff's Claim for Unjust Enrichment Must Be Dismissed Because it is not an Independent Cause of Action under Texas Law and Plaintiff Cannot Recover If a Valid Contract Exists Governing the Issue. ......................... 24

V. Conclusion ...................................................................................................... 25

CERTIFICATE OF SERVICE .................................................................................. 26

CORE/3524885.0002/173000408.22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agar Corp. v. Electro Circuits Int'l, LLC*,
  580 S.W.3d 136 (Tex. 2019) ...................................................................................18

*Allen v. Encore Energy Partners, L.P.*,
  72 A.3d 93 (Del. 2013) ..........................................................................................23

*Arencibia v. AGA Serv. Co.*,
  No. 4:20-cv-00819-O, 2020 WL 10056799 (N.D. Tex. Nov. 13, 2020) .................24

*In re Asbestos Litigation (Bell)*,
  517 A.2d 697 (Del. Super. Ct. 1986) .....................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................3, 6

*In re ATP Oil & Gas Corp.*,
  711 Fed. Appx. 216 (5th Cir. 2017) .....................................................................5, 6

*In re Avado Brands, Inc.*,
  358 B.R. 868 (Bankr. N.D. Tex. 2006) ...................................................................17

*Balthazar & Sons Custom Homes & Remodeling, LLC v. Fuller*,
  No. 05-17-00956-CV, 2018 WL 3129743 (Tex. App.—Dallas June 25, 2018, no pet.) ...........5

*In re Bass*,
  No. ADV. 10-01101-CAG, 2011 WL 722384 (Bankr. W.D. Tex. Feb 11, 2011) ...................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................3, 6, 24

*Bot M8 LLC v. Sony Corp. of Amer.*,
  4 F.4th 1342 (Fed. Cir. 2021) ...............................................................................21

*Brinckerhoff v. Enbridge Energy Co., Inc.*,
  159 A.3d 242 (Del. 2017), *as revised* (Mar. 28, 2017) .......................................2, 19

*Cantu v. Falcon Int'l Bank*,
  No. 04-17-00467-CV, 2018 WL 1831651 (Tex. App. Apr. 18, 2018) ...................22

*Clapper v. Am. Realty Inv'rs, Inc.*,
  No. 3:14-cv-2970-L, 2019 WL 5865709 (N.D. Tex. Nov. 7, 2019) .......................24

iii

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
    417 S.W.3d 909 (Tex. 2013)........................................................................22

*Consol. Cement Corp. v. Pratt*,
    47 F.2d 90 (10th Cir. 1931) .....................................................................20

*Cornell Glasgow, LLC v. LaGrange Props., LLC*,
    2012 WL 3147124 (Del. Super. Aug. 1, 2012).........................................21

*In re CVAH, Inc.*,
    570 B.R. 816 (Bankr. D. Idaho 2017) ...............................................11, 13

*Czyzewski v. Jevic Holding Corp.*,
    137 S. Ct. 973 (2017).........................................................................12, 13

*Demarast v. Manspeaker*,
    498 U.S. 184 (1991)..................................................................................12

*In re Dual D Health Care Opers., Inc.*,
    No. 17-41320-ELM, 2021 WL 3083344 (Bankr. N.D. Tex. July 21, 2021) ...........................9

*Edgewater Growth Capital P'rs, L.P. v. H.I.G. Capital, Inc.*,
    2010 WL 720150 (Del. Ch. Mar. 3, 2010)...............................................21

*Elmer v. Tenneco Resins, Inc.*,
    698 F. Supp. 535 (D. Del. 1988)..............................................................15

*In re Essar Steel Minnesota LLC*,
    602 B.R. 600 (Bankr. D. Del. 2019) .........................................................7

*In re Essential Fin. Ed., Inc.*,
    629 B.R. 401 (Bankr. N.D. Tex. 2021).............................................8, 9, 10

*In re Expert South Tulsa, LLC*,
    522 B.R. 634 (10th Cir. BAP 2014)...........................................................6

*Faulkner v. AimBank (In re Reagor-Dykes Motors)*,
    2021 Bankr. LEXIS 800 (Bankr. N.D. Tex. Mar. 31, 2021) .....................4

*Fehl v. S.W.C. Corp.*,
    433 F.Supp. 939 (D. Del. 1977)...............................................................15

*Fortune Prod. Co. v. Conoco, Inc.*,
    52 S.W.3d 671 (Tex. 2000)................................................................24, 25

*Fountain v. Colonial Chevrolet Co.*,
    No. C.A. 85C-DE-88, 1988 WL 40019 (Del. Super. Ct. Apr. 13, 1988) ...............................15

*In re Gaither*,
    595 B.R. 201 (Bankr. D.S.C. 2018) ..........................................................................13

*Gerber v. EPE Holdings, LLC*,
    No. 3543-VCN, 2013 Del. Ch. LEXIS 8 (Del. Ch. Jan. 18, 2013) ..........................19

*In re Giant Gray, Inc*.,
    629 B.R. 814 (Bankr. S.D. Tex. 2020) ....................................................................10

*Gotham Partners, LP v. Hallwood Realty Partners, LP*,
    817 A.2d 160 (Del. 2002) ...................................................................................18, 19

*Hancock v. Chicago Title Ins. Co.*,
    635 F. Supp.2d 539 (N.D. Tex. 2009) ......................................................................24

*In re Hunt*,
    136 B.R. 437 (Bankr. N.D. Tex. 1991) .....................................................................13

*In re J&M Sales Inc*.,
    2022 WL 532721 (Bankr. D. Del. Feb. 22, 2022) ....................................................11

*Janvey* v. *Adams & Reese, LLP*,
    No. 3:12-CV-0495-N, 2013 WL 12320921 (N.D. Tex. Sept. 11, 2013) ..................17

*Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*,
    617 F.2d 133 (5th Cir. 1980) .....................................................................................6

*In re Kipnis*,
    555 B.R. 877 (S.D. Fla. 2016) ...................................................................................8

*Klinek v. LuxeYard, Inc*.,
    596 S.W.3d 437 (Tex. App. 2020) ...........................................................................19

*Lailfail, Inc. v. Learning 2000, Inc.*,
    No. 01-599-GMS, 2002 WL 31667861 (D. Del. Nov. 25, 2002) ..............................6

*Magnolia's at Bethany, LLC v. Artesian Consulting Engineers, Inc.*,
    No. CIV.A. S11C-04013ESB, 2011 WL 4826106 (Del. Super. Ct. Sept. 19, 2011) ........15, 16

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) .......................................................................................20

*Marks v. CDW Computer Centers, Inc.*,
    901 F. Supp. 1302 (N.D. Ill. 1995) ............................................................................2

*Marnayi S.p.A v. Keehan*,
    900 F. Supp. 2d 377 (D. Del. 2012) ....................................................................16, 17

CORE/3524885.0002/173000408.22

*Marshall v. Ribosome LP*,
    2019 WL 2041062 (Tex. App.—Houston [1st Dist.] May 9, 2019, no pet.)..........................18

*Maxwell v. Neri N. Am.*,
    No. 4:13-CV-269, 2014 WL 2441200 (S.D. Tex. May 30, 2012)...........................................24

*MC Asset Recovery, LLC v. Southern Co.*,
    2006 WL 5112612 (N.D. Ga. Dec. 11, 2006)...........................................................................5

*McCullough v. Scarbrough, Medlin & Assocs.*,
    435 S.W.3d 871 (Tex. App.—Dallas 2014, pet. denied).........................................................24

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*,
    800 Fed. Appx. 239 (5th Cir. 2020)........................................................................................18

*Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*,
    999 F.3d 970 (5th Cir. 2021) .................................................................................................24

*In re Mirant Corp.*,
    2010 WL 8708772 (Bankr. N.D. Tex. Apr. 22, 2010)............................................................13

*In re Mirant*,
    675 F.3d 530 (5th Cir. 2012) .......................................................................................4, 13, 14

*In re Moore*,
    379 B.R. 284 (Bankr. N.D. Tex. 2007).....................................................................................6

*Mora v. Univ. of Texas Sw. Med. Ctr.*,
    469 Fed. Appx. 295 (5th Cir. 2012).........................................................................................20

*Murphy v. Town of Harrison (In re Murphy)*,
    331 B.R. 107 (Bankr. S.D.N.Y. 2005).......................................................................................4

*Musgrave v. Horne Re-Abilene, LLC*,
    No. 1:09-CV-138-C, 2010 WL 11613937 (N.D. Tex. July 12, 2010)...............................24, 25

*Neilson v. Union Bank of Cal.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .....................................................................................8

*Nevares v. San Marcos Consol. Indep. Sch. Dist.*,
    111 F.3d 25 (5th Cir. 1997) .......................................................................................................2

*In re Northstar Offshore Group, LLC*,
    616 B.R. 695 (Bankr. S.D. Tex. 2020) ......................................................................................9

*Orthopaedic Assocs. of S. Delaware, P.A. v. Pfaff*,
    No. CV S17C-07-016 ESB, 2018 WL 822020 (Del. Super. Ct. Feb. 9, 2018) ......................22

*Pilepro, LLC* v. *Chang*,
  152 F. Supp. 3d 659 (W.D. Tex. 2016) .................................................................................17

*In re Porras*,
  312 B.R. 81 (Bankr. W.D. Tex. 2004) .................................................................................13

*ProTradeNet, LLC v. Predictive Profiles, Inc.*,
  369 F. Supp. 3d 788 (W.D. Tex. 2019) ...............................................................................22

*Quadrant Structured Products Co., Ltd. v. Vertin*,
  102 A.3d 155 (Del. Ch. 2014) .............................................................................................21

*Redwood Resort Properties, LLC v. Holmes Co. Ltd.*,
  No. CIVA 3:06CV1022 D, 2006 WL 3531422 (N.D. Tex. Nov. 27, 2006) ..........................24

*Remington v. U.S.*,
  210 F.3d 281 (5th Cir. 2000) ...............................................................................................14

*Reveille Trucking, Inc., v. Lear Corp.*,
  No. 4:14-CV-511, 2017 WL 661521 (S.D. Tex. Feb. 17, 2017) ...........................................24

*Sazerac Co. v. Falk*,
  861 F. Supp. 253 (S.D.N.Y. 1994) .........................................................................................2

*Sherman v. Wal-Mart Associates, Inc.*,
  550 B.R. 105 (N.D. Tex. 2016) ..............................................................................................3

*In re SI Restructuring Inc.*,
  714 F.3d 860 (5th Cir. 2013) .................................................................................................4

*In re Silver State Holdings, Assignee-7901 Boulevard 26 LLC*,
  No. 19-41579-MXM, 2020 WL 7414434 (Bankr. N.D. Tex. Dec. 17, 2020) .......................21

*Slone v. Lassiter (In re Grove-Merritt)*,
  406 B.R. 778 (Bankr. S.D. Ohio 2009) ..................................................................................4

*Sourcing Mgmt., Inc. v. Simclar, Inc.*,
  118 F. Supp. 3d 899 (N.D. Tex. 2015) .................................................................................15

*In re Specialty Select Care Ctr. of San Antonio, LLC*,
  No. 17-44248-ELM, 2021 WL 3083522 (Bankr. N.D. Tex. July 21, 2021) ...........................9

*Spokeo, Inc. v. Robins*,
  136 S.Ct. 1540 (2016) .............................................................................................................3

*In re Sverica Acquisition Corp.*,
  179 B.R. 457 (Bankr. E. D. Pa. 1995) ...................................................................................8

vii

*Taylor v. Tervino*,
No. 3:20-CV-0393-D, 2021 WL 347566 (N.D. Tex. Feb. 2, 2021) .......................................24

*In re Taylor, Bean & Whitaker Mtg. Corp.*,
2018 WL 6721987 (Bankr. M.D. Fla. Sep. 28, 2018) ............................................................14

*In re The Brown Sch.*,
368 B.R. 394 (Bankr. D. Del. 2007) .....................................................................................18

*In re The Heritage Org., LLC*,
413 B.R. 438 (Bankr. N.D. Tex. 2009).................................................................................10

*Thomas v. Reeves*,
961 F.3d 800 (5th Cir. 2020) (en banc) (Costa, J., concurring).........................................12, 13

*In re Trans Marketing*,
117 F.3d 1417 (5th Cir. 1997) ...............................................................................................4

*Trevino v. Merscorp, Inc.*,
583 F. Supp. 2d 521 (D. Del. 2008)......................................................................................6, 7

*In re Tri-Star Techs. Co.*,
260 B.R. 319 (Bankr. D. Mass. 2001) ....................................................................................8

*In re Tronox*,
503 B.R. 239 (Bankr. S.D.N.Y. 2013)..................................................................................13

*U.S. v. Ret. Serv. Grp.*,
302 F.3d 425 (5th Cir. 2002) ...............................................................................................12

*U.S. v. Rodriguez-Rios*,
14 F.3d 1040 (5th Cir. 1985) ...............................................................................................12

*U.S. v. Summerlin*,
310 U.S. 414 (1940)............................................................................................................12

*United Sav. Assn. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988)............................................................................................................12

*In re Vaughan Co.*,
498 B.R. 297 (D. N.M. 2013) ...................................................................................8, 12, 14

*Wal-Mart Stores, Inc. v. Sturges*,
52 S.W.3d 711 (Tex. 2001)...................................................................................................22

*Weaver v. Kellogg*,
216 B.R. 563 (S.D. Tex. 1997) ..............................................................................................6

viii

*Wellman v. Wellman*,
   933 F.2d 215 (4th Cir. 1991) ......................................................................4

*In re Wingspread Corp.*,
   178 B.R. 938 (Bankr. S.D.N.Y. 1995) .......................................................8

*Xperex Corp. v. Viasystems Techs. Corp.*,
   LLC, No. CIV.A.20582-NC, 2004 WL 3053649 (Del. Ch. July 22, 2004) ...........................16

*In re Zagaroli*,
   2020 WL 6495156 (Bankr. W.D.N.C. Nov. 3, 2020) ...................................13

**Rules and Statutes**

11 U.S.C. § 544(b) ................................................................................ *passim*

11 U.S.C. § 544(b)(1) ..........................................................................8, 13

11 U.S.C. § 550 ...........................................................................................4

11 U.S.C. § 550(a) .....................................................................................4

26 U.S.C. § 6502 ....................................................................9, 10, 12, 14

26 U.S.C. § 6502(a)(1) .......................................................................13, 14

26 U.S.C. § 6901(a) .................................................................................13

Del. Code Ann. tit. 6, § 17-1101(d) .......................................................19

Del. Code Ann. tit. 6, § 17-1101(f) .........................................................19

Fed. R.Civ. P. 12(b)(1) ....................................................................2, 3, 25

Fed. R. Civ. P. 12(b)(6) ...................................................................3, 7, 25

Tex. Bus. & Com. Code § 24.009(b) ........................................................5

Tex. Bus. & Com. Code § 24.010(a)(1) ....................................................8

Tex. Bus. & Com. Code § 24.010(a)(2) ....................................................8

**Other Authorities**

Collier on Bankruptcy 548.10 (16th ed. 2017) .........................................5

Restatement (Second) of Conflict of Laws § 187(1) ...............................17

Restatement (Second) of Conflict of Laws § 302 ....................................15

ix

Defendants Highland Capital Management Fund Advisors, L.P. ("HCMFA") and NexPoint Advisors, L.P. ("NPA," together, "Defendants") move to dismiss Counts 9, 11, 12, 13, 15, 16, 17, and 28 of Plaintiff's Complaint (the "Complaint"), as follows:

## I.     Introduction

Months after confirmation of Debtor's Plan, and years after most of the events recounted in the Complaint, Marc Kirschner ("Plaintiff"), the Litigation Trustee for the Debtor Highland Capital Management, L.P. ("HCMLP"), brought a 130-page, thirty-six count lawsuit against Defendants HCMFA and NPA, among many others, attempting to substitute his judgment for the permissible business judgment of nearly all the defendants he has sued, and blaming all defendants for the financial travails of the last decade. The Complaint is filled with flaws, both jurisdictional and substantive, and no amount of hyperbole can substitute for the missing required elements.

## II.     Background

HCMLP filed its voluntary petition for relief on October 16, 2019,[1] and its Plan on November 24, 2020, which was confirmed on February 22, 2021.[2] The Plan established a Litigation Sub-Trust, which received transferred "Estate Claims" via the Litigation Sub-Trust Agreement, Section 2.3.[3] Eight months after Plan confirmation, Plaintiff filed this lawsuit.

HCMLP was founded in 1993 as an investment advisor that also provided back- and middle-office services and engaged in proprietary trading.[4] HCMFA engaged in some of the same business activities as HCMLP,[5] and was "created to replace HCMLP as the new investment manager for certain open-ended retail funds."[6] HCMFA had a shared services agreement pursuant

---

[1] Dkt. No. 1.
[2] Dkt. No. 1943.
[3] *See* Dkt. No. 1811-4.
[4] *Complaint and Objection to Claims*, Case 21-03076-sgj [Doc 1]., ¶ 1 (the "Complaint").
[5] *Id.*, ¶ 17 ("[HCMFA] is a Delaware limited partnership.") (internal footnote omitted).
[6] *Id.*, ¶ 58.

to which HCMLP employees provided services to HCMFA.[7] NPA was created in March 2012 as a Delaware limited partnership,[8] but not "to siphon profits from HCMLP in order to evade HCMLP's creditors,"[9] as Plaintiff contends. Rather, NPA was created to provide fund-management services and had a shared services agreement providing that HCMLP would provide back- and middle-office services for NPA.[10] Thus, it is no surprise that "[NPA and HCMFA] used HCMLP's employees to perform the same investment management and advisory services . . . that were performed by HCMLP."[11] HCMLP's partnership agreement allowed for the creation of companies, such as NPA and HCMFA, that were in the same line of business as HCMLP.[12]

## III. Standard of Review

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal courts have jurisdiction only where a case is presented by a party with standing.[13] At the pleading stage of the case, "the plaintiff must 'clearly . . . allege facts demonstrating' each

---

[7] *Id.*, ¶ 236.

[8] *Id.*, ¶ 15 ("[NPA] is a Delaware limited partnership.").

[9] *Id.*, ¶ 50.

[10] Plaintiff acknowledges these shared services agreements: "As of the Petition Date, [Plaintiff] had three primary business lines: (i) investment management; (ii) *the provision of middle- and back-office services ("shared services") to other registered investment advisors*; and (iii) proprietary trading." *Id.*, ¶ 39 (emphasis added).

[11] *Id.*, ¶ 51.

[12] Fourth Amended and Restated Limited Partnership Agreement of Highland Capital Management, L.P. (the "4th LPA"), § 1.3, included in Appendix A as Defendants' Ex. A, D. Appx. pp. 5-41. The Second Amended and Restated Limited Partnership Agreement (the "2nd LPA"), Defendants' Ex. B, Appx. p. 42-100, which was in effect between 2004 and late 2015, is also included. The 2nd and 4th LPAs are identical in relevant respects. "In the event that a plaintiff alleges a claim based on a written instrument, as is the case here, the court may consider such an instrument in ruling on a Rule 12(b)(6) motion even if it was not attached to the complaint and made a part thereof under Rule 10(c)," and "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994). The movant may attach to a motion to dismiss any documents "mentioned in the Complaint and central to [the] claim," and the court will consider the documents along with the motion, even if the plaintiff did not attach the document to the complaint. *Marks v. CDW Computer Centers, Inc.*, 901 F. Supp. 1302, 1309–10 (N.D. Ill. 1995). Here, the Highland Partnership Agreement is mentioned in ¶¶ 105, 213, 221, and 387. The basis for any claim related to breach of fiduciary duty against Strand and Dondero must be the Partnership Agreement because the Partnership Agreement disclaims traditional fiduciary duties. *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 252–53 (Del. 2017), *as revised* (Mar. 28, 2017).

[13] *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 25 (5th Cir. 1997).

element."[14] Standing is a required element of subject matter jurisdiction and is therefore properly challenged on a Federal Rule 12(b)(1) motion to dismiss.[15]

### B. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face."[16] Mere "threadbare recitals of the elements of a cause of action," and those that do not permit a court to "infer more than the mere possibility of misconduct," are insufficient to overcome a motion to dismiss.[17] "Factual allegations must be enough to raise a right to relief above the speculative level."[18] Thus, a pleading does not set forth a legally "plausible claim" unless its non-conclusory allegations of wrongdoing are "more likely" than a lawful, alternative explanation.[19]

## IV. Arguments and Authorities

### A. Jurisdictional Arguments.

#### 1. Plaintiff Lacks Standing to Pursue His State Law Claims Because the Bankruptcy Plan Did Not Specifically and Unequivocally Reserve the State Law Claims Against Defendants.

Without an effective reservation of the estate's state law claims against HCMFA and NPA,[20] Plaintiff has no standing to bring those claims. As more specifically detailed in the motions to dismiss filed by co-Defendants,[21] the Plan's listing of reserved claims is so lengthy (as if they used a legal encyclopedia to try to list every claim known to man), it effectively becomes what the

---

[14] *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (internal citation omitted).

[15] *Sherman v. Wal-Mart Associates, Inc*., 550 B.R. 105, 107 (N.D. Tex. 2016).

[16] *Ashcroft v. Iqbal, 556* U.S. 662, 678 (2009) (citations omitted).

[17] *Id*. at 678-79.

[18] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[19] *Id*. at 680, 681-82.

[20] This argument covers Counts 9, 13, 15, 16, 17, and 28.

[21] For the sake of efficiency, Defendants adopt and incorporate the arguments and authorities cited in the memoranda of law in support of the motions to dismiss of the Dondero Parties [Dkt. 1xx], the Okada Parties [Dkt. 126], Leventon [Dkt. 129], and Ellington [Dkt. 133].

Fifth Circuit forbids, a reference to "any and all claims."[22] Despite all that, the Plan doesn't mention civil conspiracy, aiding and abetting or knowing participation claims, or claims for declaratory relief. Even if the court does not agree that the Plan's reservation was too expansive to be effective at all, under *SI Restructuring*, it must at least dismiss the claims not identified at all.[23]

### 2. Plaintiff's State Law Non-Core Claims Must be Dismissed for Lack of Subject Matter Jurisdiction.

For all of the reason previously briefed in the parties' motions to withdraw the reference, this Court lacks subject matter jurisdiction over Counts 9, 13, 15, 16, 17, and 28 because they are state law non-core causes of action.[24] NPA and HCMFA further adopt and incorporate the arguments and authorities in co-Defendants' memoranda in support of their motions to dismiss.

### 3. The Complaint Fails to Plead a Benefit to the Estate.

The Trustee seeks recovery pursuant to 11 U.S.C. § 550. Section 550(a) provides that, to the extent that a transfer is avoided under section 544, "the trustee may recover, ***for the benefit of the estate***, the property transferred . . . ." 11 U.S.C. § 550(a) (emphasis added). "[A] trustee may only avoid a [fraudulent] transfer *to the extent it benefits the estate*."[25] And indeed, some courts have ruled, because the fraudulent transfer laws are remedial, not punitive, recovery under section 550 should be limited to the amount necessary to satisfy creditor claims.[26]

---

[22] *In re SI Restructuring Inc.*, 714 F.3d 860, 864 (5th Cir. 2013). This argument has been rejected by *Faulkner v. AimBank (In re Reagor-Dykes Motors)*, 2021 Bankr. LEXIS 800 at 18-20 (Bankr. N.D. Tex. Mar. 31, 2021), but here, given the extensive laundry list of both claims and possible defendants, it should be accepted.

[23] *SI Restructuring* at 866 (upholding the dismissal of state law claims that were not specifically reserved in the plan).

[24] *See* motions to withdraw reference and memoranda in support at Dkt. Nos. 27, 28, 36, 37, 39, 40, 45, 46, 50, 51, and 59, and the transcript of the hearing on the motions. Dkt. No. 96.

[25] *In re Mirant*, 675 F.3d 530, 534 (5th Cir. 2012) (emphasis in original); *see also id.* ("Once a trustee's avoidance rights are triggered at the time of filing, they persist until avoidance will no longer benefit the estate under § 550."); *In re Trans Marketing*, 117 F.3d 1417 (5th Cir. 1997) (acknowledging that a trustee must demonstrate both that the transfer was avoidable and "also that avoiding the writ would result in a recovery 'for the benefit of the estate' under § 550(a) . . . ."); *Wellman v. Wellman*, 933 F.2d 215, 217-18 (4th Cir. 1991) ("We, likewise, agree with the district court that §§ 548 and 550 provide for avoidances of transfers and allow recovery of the transferred property or its value only if the recovery is for the benefit of the estate.").

[26] *See, e.g.*, *Slone v. Lassiter (In re Grove-Merritt)*, 406 B.R. 778 (Bankr. S.D. Ohio 2009); *Murphy v. Town of Harrison (In re Murphy)*, 331 B.R. 107 (Bankr. S.D.N.Y. 2005). Moreover, Texas law limits a creditor's right under

While the above is not universally held, with some courts suggesting that trustees can avoid a transfer that exceeds the total of the allowed unsecured claims,[27] it is also the case, as detailed in Collier on Bankruptcy, that "fraudulent transfer law generally is not intended to aid the debtor-transferor to recover property; a transfer is generally valid as between the debtor and the transferee. Consequently, the transferee should be entitled to retain the property transferred if the estate is sufficient to satisfy all claims, including administrative expenses."[28]

Plaintiff seeks to avoid transfers between HCMLP and either HCMFA or NPA as transferees without alleging that that the estate is not sufficient to satisfy all claims. Without such an allegation, all claims that seek to avoid transfers between HCMLP and either HCMFA or NPA must be dismissed.

### B. Plaintiff Fails to Plead Insolvency.

Relatedly, dozens of times throughout the Complaint, Plaintiff alleges that at various times HCMLP was "insolvent."[29] These allegations are repeated as necessary elements of Counts 11 and 12 (constructive and intentional fraudulent transfer) against HCMFA and NPA.[30] However, insolvency is not adequately pled by "conclusory assertions about [the debtor's] financial condition and subjective determinations regarding the amount of available capital."[31] The failure to "present any financial data showing that [the debtor] was actually insolvent or had little capital"

---

state law to avoid a fraudulent transfer to the extent necessary to satisfy that creditor's claim. *See Balthazar & Sons Custom Homes & Remodeling, LLC v. Fuller*, No. 05-17-00956-CV, 2018 WL 3129743, at *4 (Tex. App.—Dallas June 25, 2018, no pet.) ("The Texas Uniform Fraudulent Transfer Act allows the trial court to award a defrauded creditor 'judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less.'") (quoting Tex. Bus. & Com. Code § 24.009(b)).

[27] *MC Asset Recovery, LLC v. Southern Co.*, 2006 WL 5112612 at *5 (N.D. Ga. Dec. 11, 2006).

[28] Collier on Bankruptcy 548.10 (16th ed. 2017).

[29] Complaint, *passim*.

[30] *See* Complaint, ¶¶ 247, 252.

[31] *In re ATP Oil & Gas Corp.*, 711 Fed. Appx. 216, 223 (5th Cir. 2017).

CORE/3524885.0002/173000408.22

when making the transactions at issue is insufficient.[32] "Without a specific reference to [the debtor's] financial condition at the time – which the Trustee should be capable of making in light of his access to [the debtor's] financial books and records – the Trustee cannot plausibly show that [the debtor] was insolvent at the time of the transfers."[33] As more specifically detailed in the Okada Parties' Brief, incorporated here by reference, Plaintiff's allegations relating to HCMLP's insolvency are insufficient to meet its burdens under *Iqbal* and *Twombly*, and the claims related thereto should be dismissed.

### C. Plaintiff's Claims are Time-barred and Otherwise Unsustainable

#### 1. Plaintiff's Count Seeking a Declaration that HCMFA and NPA are Alter Egos of HCMLP, Strand and Dondero Does Not State a Claim.

##### (a) Defendants Cannot Be Treated as the Alter Egos of HCMLP Because Plaintiff Does Not Plead that Defendants Own Any Interest in HCMLP as Required by Delaware Law.

Under the governing Delaware law,[34] NPA and HCMFA, which are incorporated in Delaware,[35] cannot be alter egos of HCMLP and Strand because they do not own any interests in HCMLP or Strand (nor do HCMLP or Strand own any interests in NPA and HCMFA).

Under Delaware law, "in order to state a claim for piercing the corporate veil under an alter ego theory, [plaintiff] must show (1) that the corporation *and its shareholders* operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present."[36] In short,

---

[32] *Id.*

[33] *Id.*; *see also In re Expert South Tulsa, LLC*, 522 B.R. 634, 653 (10th Cir. BAP 2014) ("A number of courts have acknowledged that threadbare allegations a debtor's insolvency are insufficient to satisfy *Iqbal* and *Twombly*. This holding is consistent with the purpose of *Iqbal* and *Twombly* . . . .") (collecting cases).

[34] Texas courts apply the law of the state of incorporation veil-piercing issues such as alter ego liability. *Weaver v. Kellogg*, 216 B.R. 563, 585 (S.D. Tex. 1997); *In re Moore*, 379 B.R. 284, 289 (Bankr. N.D. Tex. 2007) (citing *Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*, 617 F.2d 133, 135 (5th Cir. 1980)); *In re Bass*, No. ADV. 10-01101-CAG, 2011 WL 722384, at *8 (Bankr. W.D. Tex. Feb 11, 2011) (collecting cases).

[35] Complaint, ¶ 15

[36] *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (citing *Lailfail, Inc. v. Learning 2000, Inc.*, No. 01-599-GMS, 2002 WL 31667861 at *11 (D. Del. Nov. 25, 2002), and dismissing a claim for alter ego liability under

the Trustee's admission that HCMLP and NPA do not own HCMLP and do not operate as a single entity with it,[37] means that it simply cannot state an alter ego claim.[38]

*(b)      Alter Ego Liability is Not an Independent Cause of Action*

Plaintiff's Ninth Count for alter ego fails because alter ego is not an independent cause of action under Delaware law. "[A]lter ego liability is *not an independent cause of action*, rather it is a theory of liability that is properly asserted with [an] underlying breach of contract claim."[39] Here, Plaintiff claims simply that "[Defendants] are the alter egos of each of HCMLP, Dondero, and Strand, and the Court should pierce the corporate veil to hold [Defendants] liable for the debts of each of HCMLP, Dondero and Strand."[40] This is not a viable claim under Delaware law.

**2.      The Trustee's Claims for Avoidance Based on Constructive and Intentional Fraudulent Transfer Must Be Dismissed.**

*(a)      The Complaint Fails to Allege Facts Sufficient to Establish Plaintiff's Standing to Bring His Fraudulent Transfer Claims or to Extend the Statute of Limitations.*

While the introductory allegations of the Complaint (i.e., all those before the claims section) contain a myriad of confusing and non-specific allegations of fraudulent transfers across broad swaths of time ranging between 2011 and 2019, the only claims alleging that HCMFA and NPA engaged in fraudulent transfers – Counts 11 and 12 – challenge only two transfers. The transfers alleged to be fraudulent are the December 15, 2011 transfer of management and advisory

---

Rule 12(b)(6) where plaintiff failed to plead facts showing that the corporation and its shareholders operated as a single economic entity) (emphasis added).

[37] Complaint, ¶¶ 13, 14, 15, 233, 236 (Strand is "wholly-owned by Dondero," and Dondero and Okada held HCMLP "directly through trusts.").

[38] *See Trevino,* 583 F. Supp. 2d at 528.

[39] *In re Essar Steel Minnesota LLC,* 602 B.R. 600, 606 (Bankr. D. Del. 2019) (searching Delaware law and determining that alter ego liability is not a stand-alone cause of action but rather a "theory of liability" that can be asserted "with [an] underlying breach of contract claim"). That is not what the Trustee has pleaded and there is no breach of contract claim in the Complaint in any event.

[40] Complaint, ¶ 238.

7

contracts from HCMLP to HCMFA[41] and the June 13, 2012 transfer by HCMFA of "Highland Credit Strategies Fund to the newly-created [NPA]."[42] HCMLP filed its bankruptcy petition on October 16, 2019. The Complaint was filed on October 15, 2021. The allegedly fraudulent transfers took place over seven years before the petition date and over nine years before the Complaint was filed.

Here, the statutes of limitation are determined by state law.[43] A claim for constructive fraudulent transfer is time-barred "four years after the transfer was made or the obligation was incurred,"[44] and a claim for actual fraudulent transfer is time-barred "four years after the transfer was made or the obligation was incurred, or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."[45] The transactions at issue (in 2011 and 2012 respectively) occurred more than four years before the Complaint was filed.

Additionally, Plaintiff's "right to avoid transfers [under § 544(b)] is derivative of an actual unsecured creditor's right. Thus, to establish standing under § 544(b), the Trustee must show the existence of an actual unsecured creditor holding an allowable unsecured claim as of the date of the petition that could avoid the challenged transfer."[46] Indeed, some courts go so far as to require that a plaintiff must plead the existence and identity of a triggering creditor (for each claim),[47] and Plaintiff has not done so in his Complaint.

---

[41] *Id.*, ¶¶ 245, 251.

[42] *Id.*, ¶¶ 248, 253.

[43] *Id.*, ¶¶ 249, 253. *E.g.*, *In re Kipnis*, 555 B.R. 877, 883 (S.D. Fla. 2016) (looking to state statute of limitations for § 544 claims); *In re Vaughan Co.*, 498 B.R. 297, 302 (D. N.M. 2013) (same).

[44] Tex. Bus. & Com. Code § 24.010(a)(2).

[45] Tex. Bus. & Com. Code § 24.010(a)(1).

[46] *In re Essential Fin. Ed., Inc.*, 629 B.R. 401, 419-20 (Bankr. N.D. Tex. 2021) (considering 11 U.S.C. § 544(b)(1)).

[47] *See, e.g., Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1147-48 (C.D. Cal. 2003); *In re Sverica Acquisition Corp.*, 179 B.R. 457, 464-65 (Bankr. E. D. Pa. 1995); *In re Wingspread Corp.*, 178 B.R. 938, 945-46 (Bankr. S.D.N.Y. 1995); *In re Tri-Star Techs. Co.*, 260 B.R. 319, 329, n. 10 (Bankr. D. Mass. 2001).

8

Defendants acknowledge that bankruptcy courts in the Northern District of Texas have adopted a looser standard, requiring the Plaintiff to plead only the existence of a triggering creditor.[48] In this case, Plaintiff attempts to satisfy its burden solely by including a reference to 26 USC § 6502 (the statute concerning the IRS' levy powers after a timely assessment of tax) in each of its fraudulent transfer claims in the Complaint.[49] Even putting aside the argument that this Court should adopt the better view that matters affecting standing should be more specifically pled,[50] and the argument that Plaintiff has failed to establish that his claims were timely brought because in these circumstances, the IRS cannot be a triggering creditor,[51] the Plaintiff has not even plead the bare minimum, namely, the existence of a triggering creditor.

Particularly with respect to constructively fraudulent transfers, where a future creditor does suffice to give a trustee standing, "[i]n order to establish standing to bring a claim for fraudulent transfer, the Trustee must identify an unsecured creditor with a claim, which is avoidable under Texas law, on both the transfer date and the petition date . . . ."[52] In a case where, as here, "the Defendants assert that [the fraudulent transfer claims fail] to state a plausible claim for relief because the Complaint fails to identify any triggering creditor in relation to the TUFTA claims asserted. . . . [those claims] fail[] to plausibly state a basis for relief under section 544(b) and TUFTA."[53] A "Trustee [does] not me[e]t his pleading burden [when] his complaint[] do[es] not

---

[48] *In re Essential Fin. Ed., Inc.*, 629 B.R. 401, 420 (Bankr. N.D. Tex. 2021).

[49] *See, e.g.*, *Complaint*, ¶¶ 249, 254.

[50] *See* cases cited in note 47 *supra*.

[51] *See* Section IV.C.2(b) *infra*.

[52] *In re Northstar Offshore Group, LLC*, 616 B.R. 695, 724 (Bankr. S.D. Tex. 2020).

[53] *In re Dual D Health Care Opers., Inc.,* No. 17-41320-ELM, 2021 WL 3083344, at *15-16 (Bankr. N.D. Tex. July 21, 2021); *see also In re Specialty Select Care Ctr. of San Antonio, LLC*, No. 17-44248-ELM, 2021 WL 3083522, at *16-17 (Bankr. N.D. Tex. July 21, 2021) (same).

9

demonstrate the existence of an unsecured creditor that holds an allowable claim and who could have avoided the transfers under state law."[54]

Here, Plaintiff has not identified any creditors holding an allowable unsecured claim on the date the transfers allegedly occurred or the date the petition was filed. Instead, Plaintiff attempts to satisfy its burden solely by including a reference to 26 U.S.C. § 6502 (the statute concerning the IRS's levy powers after a timely assessment of tax) in each of its fraudulent transfer claims.[55] However, an oblique reference to a statute does not satisfy the elements that must be pled, and accordingly, these claims should be dismissed.[56]

### (b)    The IRS Cannot Be A Triggering Creditor Here.

By its citation to § 6502, Plaintiff seeks to override the normal 4-year statute of limitations and avoid transfers that took place in 2011 and 2012 by contending that it stands in the shoes of the IRS. As a preliminary matter, as discussed in the motions to withdraw the reference, whether the IRS has the power to reach that far back in these circumstances is an unanswered question of federal non-bankruptcy law that should be decided by the District Court.[57]

The use of a federal tax claim to multiply Plaintiff's avoidance powers is a controversial legal issue. It is especially inappropriate here. While a trustee can potentially step into the shoes of the IRS to recover allegedly fraudulent transfers over a longer period than the state statute of limitations would allow, the policy behind this is to prevent the IRS from being deprived of the

---

[54] *In re Giant Gray, Inc.*, 629 B.R. 814, 828 (Bankr. S.D. Tex. 2020); *but see In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 419-20 (Bankr. N.D. Tex. 2021); *In re The Heritage Org., LLC*, 413 B.R. 438, 459 (Bankr. N.D. Tex. 2009). However, *In re Essential Fin. Educ.* and *In re The Heritage Org.* do not involve claims for constructive fraudulent transfers. Further, even if the Trustee were permitted to merely generally allege the existence of a triggering creditor, the Litigation Trustee has not done so. Accordingly, even under the more lenient standard, Plaintiff has not adequately plead fraudulent transfer claims.

[55] *See, e.g.*, Complaint, ¶¶ 249, 254.

[56] In addition to not identifying a specific creditor, while Plaintiff has made general allegations that creditors existed at various times, he has not alleged that such creditors were unsecured, existed at the time the bankruptcy petition was filed, or could have avoided the transfers under applicable state or federal law.

[57] *See* Motions to Withdraw Reference and briefs in support [Dkt. Nos. 27, 28, 36, 37, 39, 40, 45, 46, 50, and 51].

10

ability to satisfy its claims by reaching those transfers simply because the bankruptcy trustee, who on the petition date becomes the only person able to pursue the claim (depriving the IRS of its independent ability to do so), would be bound by the state statute of limitations.[58] Here, Plaintiff seeks millions, if not hundreds of millions of dollars in damages, on the basis of an approximately $4000 already-allowed IRS claim.[59] That cannot be what Congress intended and courts and commentators are increasingly so stating.

The most recent case law on this issue rejects the use of the IRS as a golden creditor even when a debtor alleged that it owed payroll taxes as of the petition date.[60] While the court specifically relied upon the fact that the IRS had not filed a proof of claim, a fact not present here, it noted that "[p]ayroll taxes accrue as wages are paid, but a deposit for those taxes is not due to the IRS until some period of time later . . . . As a result, virtually every business entity that files for bankruptcy will have accrued unpaid payroll taxes because those taxes are not yet due to be paid to the IRS."[61] Here, the IRS filed protective proofs of claim as placeholders, eventually seeking an extremely small amount of excise tax.[62] This, like the buildup of payroll tax in the *J&M Sales* case, is a common practice. Thus, as the court noted in the *J&M Sales* case, "[u]nder the Trustee's theory, therefore, every business bankruptcy case would automatically have a ten-year lookback period for fraudulent transfers under Section 544(b). That cannot be what Congress had in mind when enacting Section 544(b)."[63]

---

[58] *E.g.*, *In re CVAH, Inc.*, 570 B.R. 816, 835-36 (Bankr. D. Idaho 2017) (with giving a trustee the expanded powers, the "IRS would be deprived of its statutory right to recover the transfers the defendants received[,]" because the bankruptcy filing prevents the IRS from pursuing its claims directly).

[59] *See* motions to withdraw reference and briefs in support at Dkt. Nos. 27, 28, 36, 37, 39, 40, 45, 46, 50, 51, and 59; Second Notice of Allowed Claims Pursuant to the Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, LP [Bk. Dkt. 3307] at 4 (allowed IRS claims totaling $3,990.16).

[60] *In re J&M Sales Inc.*, 2022 WL 532721, at *3 n.7 (Bankr. D. Del. Feb. 22, 2022).

[61] *Id.*

[62] *See* Proofs of Claim Nos. 32, 173, 248, and 252; Def. Ex. C-F; Def. Appx. 101-123.

[63] *In re J&M Sales Inc.*, at *3 n.7.

Another court completely rejected the notion that the existence of an IRS claim enables a bankruptcy trustee to preempt state statutes of limitation, finding that although "the Trustee may stand in the shoes of any unsecured creditor to set aside transfers to third parties . . . [i]t does not necessarily follow . . . that a bankruptcy trustee standing in the shoes of the IRS is immunized from state statutes of limitations."[64] The federal government is typically not subject to state statutes of limitations as a function of sovereign immunity: "no time runs against the king."[65] However, even the federal government is not wholly immune from state statutes of limitations. "[I]f an action brought in the name of the United States does not involve public rights or interests, state statutes of limitations typically apply."[66] Section 6502 – which permits suits instituted by the IRS to collect taxes – involves the vindication of public rights. But here, Plaintiff is not seeking to recover money to pay the IRS; the Plaintiff here (as in *Vaughan*) is asserting only private rights of creditors. In short, allowing Plaintiff to evade state statutes of limitations would give him ***greater*** power than that afforded to the federal government. When an interpretation of a statute produces that incongruous a result, it cannot be correct.[67] The U.S. Supreme Court has instructed that "[s]tatutory construction . . . is a holistic endeavor" and that a court should select a "meanin[g that] produces a substantive effect that is compatible with the rest of the law."[68]  As in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 984 (2017), the phrase "applicable law" is "too weak a reed upon which to

---

[64] *See In re Vaughan Co.*, 498 B.R. 297, 304 (Bankr. D.N.M. 2013).

[65] *Id.* at 302.

[66] *Id.* at 304; *see also U.S. v. Summerlin*, 310 U.S. 414, 416 (1940).

[67] *Demarast v. Manspeaker*, 498 U.S. 184, 190 (1991) ("When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances . . . [such as] where the application of the statute as written will produce a result 'demonstrably at odds with the intentions of its drafters.'"); *Thomas v. Reeves*, 961 F.3d 800, 802-08 (5th Cir. 2020) (en banc) (Costa, J., concurring) (rejecting reading of statute justified by typical rules of statutory construction because it made no sense in the context of the purpose of the statute); *U.S. v. Rodriguez-Rios*, 14 F.3d 1040, 1044 (5th Cir. 1985) ("We are authorized to deviate from the literal language of a statute only if the plain language would lead to absurd results, or if such interpretation would defeat the intent of Congress."); *see also U.S. v. Ret. Serv. Grp.*, 302 F.3d 425, 435 (5th Cir. 2002) (rejecting a proposed statutory interpretation based on the plain language).

[68] *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

rest so weighty a power."[69] The Fifth Circuit has little patience for "clever" interpretation "creating unforeseen meaning or legal effects" from language with otherwise explainable meaning.[70] Indeed, in a very similar context, the Fifth Circuit rejected the use of the Federal Debt Collection Procedures Act as "applicable law" under section 544(b) to enable a trustee to step into the shoes of the IRS to expand the statute of limitations.[71]

With this backdrop, reading § 544(b)(1) in conjunction with 26 U.S.C. §§ 6502(a)(1) and 6901(a) produces a very different result than the cases that stretch to increase the power and reach of bankruptcy debtors and trustees, and by necessary implication, courts.[72] Section 544(b)(1) authorizes a litigation trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is ***voidable*** under applicable law by a creditor holding an unsecured claim that is allowable under section 502 . . . ."[73] IRS Code Section 6502(a)(1) provides that "[w]here an assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun within 10 years after the assessment of the tax." Section 6901(a) concerns "transferred assets" and establishes that they can generally be

---

[69] *Czyzewski*, 137 S. Ct. at 984; *see also id*. (noting that if "Congress were to intend a major departure" to important statutory schemes, we should "expect more than simple statutory silence").

[70] *Thomas*, 961 F.3d at 807-09.

[71] *In re Mirant Corp.*, 675 F.3d 530, 535 (5th Cir. 2012). The underlying bankruptcy case was even more instructive, holding that "[T]he avoidance powers in the FDCPA are exercisable by the United States solely for the benefit of the United States. Nothing in subchapter D of the FDCPA manifests any intent by Congress to benefit parties other than the United States." *In re Mirant Corp.*, 2010 WL 8708772, at *14 (Bankr. N.D. Tex. Apr. 22, 2010).

[72] *E.g.*, *In re Zagaroli*, 2020 WL 6495156, at *3 (Bankr. W.D.N.C. Nov. 3, 2020) (trustee could step into shoes of IRS to avoid state's four-year statute of limitations); *In re Gaither*, 595 B.R. 201 (Bankr. D.S.C. 2018) (same); *In re Porras*, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004) ("[T]he Trustee under § 544(b) may use statutes of limitations available to any creditor in whose shoes he stands in bringing the action."); *In re Hunt*, 136 B.R. 437, 451 (Bankr. N.D. Tex. 1991) ("[T]his Court concludes that Plaintiffs are not barred by the applicable state statutes of limitations since they acquired the status of the United States pursuant to § 544(b) of the Code."). It bears noting that some of the cases approving use of the IRS as the "golden creditor" include the issue of whether the FDCPA can be "applicable law" and reject the Fifth Circuit decision in *Mirant*, suggesting that they are not good indicia of what the Fifth Circuit would do if squarely faced with the issue. *E.g.*, *In re CVAH, Inc.*, 570 B.R. 816, 826-32 (Bankr. D. Idaho 2017); *In re Gaither*, 595 B.R. 201, 212-14 (Bankr. D.S.C. 2018); *In re Tronox*, 503 B.R. 239, 273 (Bankr. S.D.N.Y. 2013).

[73] 11 U.S.C. § 544(b) (emphasis added).

assessed, paid and collected in the same manner as the tax at issue. Neither section of the IRS Code says anything about avoiding transfers, and none of the cases advocating use of the IRS Code to abrogate state states of limitations explains exactly how the IRS statutes relied upon are the requisite "applicable law" when neither provides the IRS with an avoidance power.[74]

Further, the Fifth Circuit has recognized that section 6502 is a forward-looking statute, stating that 6502 "makes clear that it is the 'assessment' itself that, once made, starts the running of the ten-year period within which the IRS can commence efforts to *collect* the assessed tax."[75] By its plain terms, section 6502 permits the IRS to begin collection attempts within 10 years "after" the assessment of taxes.[76] Accordingly, "[t]he ten-year period appears to be a look-forward period rather than a lookback period."[77] The earliest tax assessed by the IRS against HCMLP is November 12, 2018.[78] Therefore, even if Plaintiff were permitted to "stand in the shoes" of the IRS and utilize section 6502, Plaintiff would not have the ability to "reach back" to transactions taking place in 2011 and 2012.[79]

In short, use of the IRS code to override state fraudulent transfer statutes of limitation is inconsistent with the purposes of section 544(b), which is to "incorporate" state law, not "subordinate" or "eviscerate" it.[80] This Court should follow the better reasoned *Vaughan* case that is consistent with the Fifth Circuit's *Mirant* opinion, and not the handful of cases that overreach to

---

[74] *See* cases cited in notes 58 and 67 *supra.*

[75] *Remington v. U.S.*, 210 F.3d 281, 284 (5th Cir. 2000) (emphasis in original).

[76] *See* 26 U.S.C. § 6502(a)(1) ("Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun – (1) within 10 years *after* the assessment of the tax . . . .") (emphasis added).

[77] *In re Taylor, Bean & Whitaker Mtg. Corp.*, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sep. 28, 2018) (slip opin.).

[78] *See* Def. Ex. C, Def. Appx. 101-106 (IRS Proof of Claim No. 32).

[79] *In re Taylor, Bean & Whitaker Mtg. Corp.*, 2018 WL 6721987, at *6 ("The Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment (or, alternatively, prior to the accrual of the tax liability) . . . .").

[80] *Vaughan*, at 304-05.

14

provide litigation trustees with powers that vastly exceed and contravene what state legislatures have provided to all other plaintiffs.

Finally, in the interests of efficiency, HCMFA and NPA join in and adopt the arguments and authorities cited by co-Defendants in connection with the argument that Plaintiff may not use the IRS as the "golden creditor."

### 3.    Plaintiff's Claim for Successor Liability Has Multiple Fatal Flaws.

There are four theories of successor liability under Delaware law: (1) express assumption of liability; (2) a *de facto* merger; (3) a mere continuation of a company under a different name; and (4) fraud.[81] Plaintiff does not allege express assumption of liability or fraud, so it appears to be relying on one of the other two theories.[82] It has not sufficiently plead either.

### (a)    *Plaintiff Does Not Adequately Plead the De Facto Merger Because Defendants Never Acquired All of HCMLP's Assets.*

Plaintiff cannot establish successor liability under the *de facto* merger theory. "The elements necessary to create a *de facto* merger [and find successor liability] under Delaware law are: (1) one corporation transfers ***all of its assets*** to another corporation; (2) payment is made in stock, issued by the transferee directly to the shareholders of the transferring corporation; and (3) in exchange for their stock in that corporation, the transferee agreeing to assume all the debts and

---

[81] *Magnolia's at Bethany, LLC v. Artesian Consulting Engineers, Inc.*, No. CIV.A. S11C-04013ESB, 2011 WL 4826106, at *2 (Del. Super. Ct. Sept. 19, 2011) (citing *Fountain v. Colonial Chevrolet Co.*, No. C.A. 85C-DE-88, 1988 WL 40019, at 7 (Del. Super. Ct. Apr. 13, 1988); *Fehl v. S.W.C. Corp.*, 433 F.Supp. 939, 945 (D. Del. 1977); *Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 540 (D. Del. 1988)). Similar to alter ego determinations, the law of the state of incorporation governs successor liability issues. *Sourcing Mgmt., Inc. v. Simclar, Inc.*, 118 F. Supp. 3d 899, 918 (N.D. Tex. 2015) ("under general choice of law principles, the law of the state of incorporation generally applies to successor liability," citing Restatement (Second) of Conflict of Laws § 302).
[82] Complaint, ¶¶ 255-258.

15

liabilities of the transferor."[83] Plaintiff nowhere pleads that NPA or HCMFA acquired "all" of HCMLP's assets, a necessary element of de facto merger based successor liability.

> **(b)** **Plaintiff Does Not Adequately Plead the Elements of Mere Continuation Because HCMLP and Defendants Co-Existed for Years.**

Plaintiff also did not adequately plead that Defendants are HCMLP's successors under the mere continuation doctrine. "The primary elements of [the mere] continuation [doctrine] include the common identity of the officers, directors, or stockholders of the predecessor and successor corporations, and the ***existence of only one corporation*** at the completion of the transfer."[84] The court in *Magnolia's* clarified:

> [T]his [mere continuation] exception has been construed ***very narrowly*** to require the purchaser of the assets to be a continuation of 'the same legal entity,' not just a continuation of the same business in which the seller of the assets engaged. The 'primary elements' of being the same legal entity have been said to include 'the common identity of the officers, directors, or stockholders of the predecessor and successor corporations, ***and the existence of only one corporation*** at the completion of the transfer.'[85]

Plaintiff alleges nothing close to satisfying the elements laid out above. Plaintiff simply claims that Defendants are "mere continuations"[86] of HCMLP, and goes on to claim that "[u]nder [Dondero's] common direction, there was continuity of management, physical location, assets, and general business operations between HCMLP on the one hand, and [Defendants] on the other hand."[87] In no form or fashion does Plaintiff ever plead the required element that only one corporation exist at the completion of a transfer. Even a few years of co-existence would not

---

[83] *Marnayi S.p.A v. Keehan*, 900 F. Supp. 2d 377, 397 (D. Del. 2012) (reciting necessary elements for *de facto* merger theory in Delaware, citing *Xperex Corp. v. Viasystems Techs. Corp.*, LLC, No. CIV.A.20582-NC, 2004 WL 3053649, at *2 (Del. Ch. July 22, 2004), and finding no transfer of all of corporation's assets).

[84] *Magnolia's,* 2011 WL 4826106, at *3 (citing *In re Asbestos Litigation (Bell)*, 517 A.2d 697, 699 (Del. Super. Ct. 1986)) (emphasis added).

[85] *Magnolia's,* 2011 WL 4826106, at *5 (internal citations omitted) (emphasis added).

[86] Complaint, ¶ 256.

[87] *Id.* at ¶ 257.

support a claim of successor liability.[88] Use of the same business materials (*e.g.*, marketing), use of similar products, and sharing of income simply do not support a successor liability theory when the two entities co-existed at all.[89] In this case, Defendants and HCMLP co-existed since at least 2012. The mere continuation theory cannot apply and Count 13 must be dismissed.

### 4. Plaintiff's Claims for Aiding and Abetting Breach of Fiduciary Duty and Knowing Participation in Breach of Fiduciary Duty and Civil Conspiracy to Breach Fiduciary Duty Are Fatally Flawed.

In Counts 15 and 16, Plaintiff alleges that HCMFA and NPA conspired in and/or participated in Strand and Dondero's alleged breach of fiduciary duty to HCMLP by knowingly participating in Dondero's alleged lifeboat scheme,[90] itself addressed in Count Four.[91] As a preliminary matter, the claims are time-barred. Moreover, contrary to Plaintiff's allegations, Strand and Dondero did not owe fiduciary duties to HCMLP. Even if they did owe such duties, the Complaint fails to sufficiently allege a breach or causation of damages. Finally, stripped of labels, Plaintiff is really contending that HCMFA and NPA participated in a conspiracy and/or aided and abetted a fraudulent transfer, and there is no such cause of action in either Texas or Delaware.

### (a) Counts 15 and 16 Are Time-Barred.

Counts 15 and 16 are barred by the applicable statute of limitations under either Texas law, which is four years, or Delaware law, which is three years.[92] In this case, the statute of limitations

---

[88] *Marnavi S.p.A.*, 900 F. Supp. 2d 377 at 397 (where companies co-existed from 2001 to 2004, there could be no mere continuation).

[89] *Id.*

[90] Complaint, ¶ 267.

[91] *Id.*, at ¶¶ 58, 59, 189, 245, 248.

[92] *Janvey* v. *Adams & Reese, LLP*, No. 3:12-CV-0495-N, 2013 WL 12320921, at *4 (N.D. Tex. Sept. 11, 2013) (rejecting application of internal affairs doctrine to statute of limitations on the basis that the limitations period was procedural); Delaware law, however, may supply the statute of limitations because HCMLP is incorporated and Delaware and the LPA's choice of law provision provides for Delaware law. *Pilepro, LLC* v. *Chang*, 152 F. Supp. 3d 659, 675 (W.D. Tex. 2016) (Delaware law governed breach of fiduciary duty claims because place of incorporation was Delaware); 4th LPA § 6.11, Def. Ex. A, Def. Appx. 33; 2nd LPA § 6.11, Def. Ex. B, Def. Appx. 70; *see also In re Avado Brands, Inc.*, 358 B.R. 868, 881–82 (Bankr. N.D. Tex. 2006) (looking to Georgia statute of limitations for fiduciary duty claims with respect to a Georgia corporation); Restatement (Second) of Conflict of Laws § 187(1) (the law chosen by the parties should govern "if the particular issue is one which the parties could have resolved by an

17

has run because the events that constitute the alleged breach occurred in 2011 and 2012.[93]

> **(b)** ***Plaintiff Lacks Standing to Bring Claims for Breach of Fiduciary Duty, Defeating His Derivative Aiding and Abetting, Knowing Participation and Conspiracy Claims.***

Plaintiff's claims for Aiding and Abetting Breach of Fiduciary Duty under Delaware Law or Knowing Participation in Breach of Fiduciary Duty under Texas Law[94] (Count 15) and Civil Conspiracy to Breach Fiduciary Duties under Texas Law (Count 16) must be dismissed because Plaintiff lacks standing to assert claims for breach of fiduciary duty. As more particularly described in the Leventon and Dondero Briefs, breach of fiduciary duty claims are expressly reserved as "Reorganized Debtor Assets," and the assets transferred to the Claimant Trust explicitly excludes Reorganized Debtor Assets. Claims of aiding and abetting breach of fiduciary duty under Delaware law,[95] knowing participation in breach fiduciary duty under Texas law,[96] and civil conspiracy to breach fiduciary duties under Texas law[97] are theories of vicarious liability. Thus, Plaintiff cannot prevail on those claims without proving an underlying breach of fiduciary duty. Because Plaintiff does not have standing to assert a breach of fiduciary duty claim, the claims

---

explicit provision in their agreement directed to that issue"). *In re The Brown Sch.*, 368 B.R. 394, 402–03 (Bankr. D. Del. 2007) (denying motion to dismiss because the Complaint relied on events that occurred within three years of the bankruptcy petition date).

[93] Complaint, ¶¶ 58, 59, 189, 245, 248. *See In re The Brown Sch.*, 368 B.R. 394, 402–03 (Bankr. D. Del. 2007) (denying motion to dismiss because the Complaint relied on events that occurred within three years of the bankruptcy petition date). Even under the 4-year Texas statute of limitations, the claims would be time-barred.

[94] The Fifth Circuit has yet to recognize the cause of action of aiding and abetting the breach of a fiduciary duty in Texas. *See Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 800 Fed. Appx. 239, 250 (5th Cir. 2020) ("We noted that the 'Texas Supreme Court has no expressly decided whether Texas recognizes a cause of action for aiding and abetting,' and '[w]hen sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts.' Therefore, we cannot recognize a claim that the Texas Supreme Court has yet to expressly adopt. For these reasons, we affirm the dismissal of the aiding and abetting claim.") (internal citations omitted).

[95] *See Gotham Partners, LP v. Hallwood Realty Partners, LP*, 817 A.2d 160, 172 (Del. 2002) (the elements of a claim for aiding and abetting breach of fiduciary duty include "the fiduciary breached its duty").

[96] *See Marshall v. Ribosome LP*, 2019 WL 2041062, at *6 (Tex. App.—Houston [1st Dist.] May 9, 2019, no pet.) (a claim for knowing participation in breach of fiduciary duty claim includes "the requirement that the plaintiff prove the existence of an underlying breach of fiduciary duty").

[97] *See Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) ("[C]ivil conspiracy is not an independent tort . . . . Civil conspiracy requires an underlying tort that has caused damages.").

for aiding and abetting, knowing participation, and civil conspiracy relating to breach of fiduciary duty must be dismissed.

### (c)    Strand and Dondero Owed no Fiduciary Duties to HCMLP.

Under Texas law, a Delaware business entity's internal affairs, including whether a fiduciary duty is owed, are governed by the law of the state where the entity is organized.[98] HCMLP is a Delaware limited partnership[99] and the LPA provides that Delaware law applies.[100] Delaware permits a general and limited partners' fiduciary duties and liability for breach of those fiduciary duties to be limited or eliminated by a partnership agreement, except for the duty of good faith.[101] Where fiduciary duties are disclaimed in the partnership agreement, duties of partners are determined "exclusively" by the partnership agreement.[102] In other words, "a limited partnership agreement 'may establish[] a contractual standard of review that supplants the fiduciary duty analysis,'"[103] and if so, "any claim of a breach of fiduciary duty must be analyzed generally in terms of the partnership agreement."[104] Under those circumstances, the partnership agreement's terms are the "sole source of protection."[105]

Under the LPA, in the event of a "conflict of interest" between HCMLP and Strand (or its affiliates) in a transaction, "any action taken" by Strand is subject to the duty to not act in "bad

---

[98] *Klinek v. LuxeYard, Inc*., 596 S.W.3d 437, 449–50 (Tex. App. 2020).

[99] Complaint, ¶ 1.

[100] 2ⁿᵈ LPA, § 6.11, Def. Ex. B, Def. Appx. 70; 4ᵗʰ LPA, § 6.11, Def. Ex. A, Def. Appx. 33.

[101] Del. Code Ann. tit. 6, § 17-1101(d), (f); *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 252–53 (Del. 2017).

[102] *Brinckerhoff*, 159 A.3d at 252–53.

[103] *Gerber v. EPE Holdings, LLC*, No. 3543-VCN, 2013 Del. Ch. LEXIS 8, at *23 (Del. Ch. Jan. 18, 2013) (internal citations omitted).

[104] *Gotham Partners, LP v. Hallwood Realty Partners, LP*, 817 A.2d 160, 170-71 (Del. 2002).

[105] *Id*. at 171.

faith" and no other "standard of care or duty imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation."[106]

When a plaintiff raises a claim based upon a permissibly eliminated duty, that claim must be dismissed.[107] Here, the Complaint alleges that Strand and Dondero owed fiduciary duties to HCMLP and challenges their acting on "both sides of the agreements and transactions" between HCMLP, on one hand, and NPA or HCMFA, on the other.[108] But doing so is precisely what the LPA permitted.[109] Plaintiff must allege a breach of the LPA to state a claim, which he failed to do.

### (d) The Complaint Fails to Allege Facts that the Alleged Breach Damaged HCMLP.

Plaintiff pleads that HCMLP had a financial turnaround after the alleged breaches.[110] Where the pleader's conclusion regarding insolvency and related fraudulent activity "is not only not justified but is contradicted by the facts alleged," the complaint should be dismissed.[111] Here, the Complaint alleges HCMLP's initial insolvency was the result of the 2008 financial crisis.[112] After the transfers in 2011 and 2012 to NPA and HCMFA, the Complaint recognizes that HCMLP turned around financially.[113] HCMLP then returned to insolvency in 2015 due to other factors.[114] The Complaint fails to state facts to support the element of causation of damages because Plaintiff's allegations demonstrate that the transfers of accounts to NPA and HCMFA resulted in a financial turnaround in 2013, while other factors drove it back into insolvency in 2015.[115]

---

[106] 2nd LPA, § 4.1(g), Def. Ex. B, Def. Appx. 63; 4th LPA, § 4.1(g), Def. Ex. A, Def. Appx. 25.

[107] *Malpiede v. Townson*, 780 A.2d 1075, 1094 (Del. 2001).

[108] *Id.*, ¶¶ 188, 191.

[109] 2nd LPA, § 4.1(g), Def. Ex. B, Def. Appx. 63; 4th LPA, § 4.1(g), Def. Ex. A, Def. Appx. 25.

[110] *Id.*, ¶¶ 64, 101.

[111] *Consol. Cement Corp. v. Pratt*, 47 F.2d 90, 93 (10th Cir. 1931).

[112] Complaint, ¶¶ 48, 100, 109.

[113] *Id.*, ¶¶ 64, 101.

[114] *Id.*, ¶ 102.

[115] *See Mora v. Univ. of Texas Sw. Med. Ctr.*, 469 Fed. Appx. 295, 299 (5th Cir. 2012) (holding that plaintiff's allegation that she was retaliated against was "contradicted by other facts alleged in the complaint, making the claim implausible

(e)    ***Counts 15 and 16 Really Complain About Transfers, and There is No Secondary Liability for Fraudulent Transfers.***

Counts 15 and 16 must be dismissed because Delaware and Texas law disallow secondary liability for fraudulent transfers.[116]   "[T]he District Court for the Northern District of Texas concluded that Texas law does not provide for secondary liability for fraudulent transfers through conspiracy, aiding and abetting, and similar secondary-liability theories."[117]  Likewise, "[u]nder Delaware law, a 'conspiracy cannot be predicated on fraudulent transfer.'"[118]

Plaintiff alleges in Count 15 that "[Defendants] aided and abetted the breaches of fiduciary duty committed by Dondero and Strand. . . . [by] knowingly participat[ing] in Dondero's scheme to divert HCMLP's valuable business into new 'lifeboat' entities that he owned and controlled."[119] By basing its claim on Dondero's alleged "lifeboat" scheme, Plaintiff does nothing more than refer to alleged fraudulent transfers it pleads in prior claims.[120] In Count 16, Plaintiff again refers back to its "lifeboat" theory (a/k/a its fraudulent transfer theory): "Dondero, [and Defendants] conspired to perpetrate the lifeboat scheme in order to place valuable assets outside the reach of HCMLP's creditors, in violation of Dondero's fiduciary duties."[121] Thus, Counts 15 and 16 are simply

---

on its face"); *see also Bot M8 LLC v. Sony Corp. of Amer.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) ("Where, as here, the factual allegations are actually *inconsistent* with and contradict [the plaintiff's claim], they are likewise insufficient to state a plausible claim.  As we have said before, while a plaintiff's pleading obligations are not onerous, it is possible that, in pleading its claims, a plaintiff may find that it has pleaded itself out of court.").

[116] *In re Silver State Holdings, Assignee-7901 Boulevard 26 LLC*, No. 19-41579-MXM, 2020 WL 7414434, at *31 (Bankr. N.D. Tex. Dec. 17, 2020).

[117] *Id.*

[118] *Quadrant Structured Products Co., Ltd. v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014) (quoting *Cornell Glasgow, LLC v. LaGrange Props., LLC,* 2012 WL 3147124, at 5 (Del. Super. Aug. 1, 2012); *Edgewater Growth Capital P'rs, L.P. v. H.I.G. Capital, Inc.*, 2010 WL 720150, at 2 (Del. Ch. Mar. 3, 2010)).

[119] Complaint, ¶ 267.

[120] *See* Complaint, Count 11 [Constructive Fraudulent Transfer] ¶ 248 (describing the alleged fraudulent transfer of assets: "[t]he result of this transfer was simply to shift the management fees relating to NHF <u>from one lifeboat entity to another</u>) (emphasis added); Count 12 [Intentionally Fraudulent Transfer] ¶ 252(c) (alleging that "HCMLP, through Dondero, was engaged in a multi-faceted scheme to defraud HCMLP's creditors, which involved, among other things, ***causing HCMLP to transfer its valuable management contracts and business opportunities to newly-created 'lifeboat' entities***") (emphasis added).

[121] *Id.*, ¶ 274(a).

disguised efforts to pursue Defendants for secondary liability for fraudulent transfers, which, as discussed above, has been rejected under both Delaware and Texas law.

### 5. Plaintiff's Claim for Tortious Interference with Prospective Business Relations Has Two Fatal Flaws.

#### (a) Plaintiff's Allegations of Tortious Conduct Are Insufficient.

Plaintiff has not established the elements of tortious interference with prospective business relations because the tortious conduct Plaintiff alleges – the fraudulent transfers – fails as discussed *supra*, IV.B.2(a-b). Under both Texas and Delaware law, to prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish that:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was <u>independently tortious or unlawful</u>; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.[122]

To be independently tortious, "the plaintiff must prove that the defendant's conduct would violate some other recognized tort duty."[123] Here, Plaintiff alleges that "[b]ut for the actions of Dondero, [NPA], and HCMFA, HCMLP would have continued to pursue the business opportunities that Dondero diverted to [NPA] and HCMFA[,]"[124] and that "[b]y using [Defendants] as part of his lifeboat scheme, Dondero breached his fiduciary duties to HCMLP."[125] However, as discussed *supra*, IV.C.2 and IV.C.4, the lifeboat scheme Plaintiff references (a/k/a the alleged fraudulent transfers) fails to state a claim, whether plead directly or disguised as aiding and abetting, knowing

---

[122] *Cantu v. Falcon Int'l Bank*, No. 04-17-00467-CV, 2018 WL 1831651, at *3 (Tex. App. Apr. 18, 2018) (citing *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *accord Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001)) (emphasis added); *see, e.g.*, *Orthopaedic Assocs. of S. Delaware, P.A. v. Pfaff*, No. CV S17C-07-016 ESB, 2018 WL 822020, at *2 (Del. Super. Ct. Feb. 9, 2018).

[123] *Wal-Mart Stores, Inc.*, 52 S.W.3d at 713; *see also Cantu*, 2018 WL 1831651, at *3; *see also ProTradeNet, LLC v. Predictive Profiles, Inc.*, 369 F. Supp. 3d 788, 794–95 (W.D. Tex. 2019).

[124] Complaint, ¶ 278.

[125] *Id.*, ¶ 279.

participation or conspiracy.  Therefore, Plaintiff states no independently tortious conduct upon which to base its claim and the claim must be dismissed.

>   *(b)*     ***The LPA Precludes Plaintiff's Claim for Tortious Interference of Business Relations.***

Plaintiff does not state a viable claim against Defendants for tortious interference with business relations because HCMLP disclaimed any rights to the very business relations it contends Defendants interfered with. Under Delaware law, the parties are free to do so, because courts do not "import standards of conduct from corporate or tort law to govern" limited partnerships, leaving partners free to agree to conduct that might be prohibited in other contexts.[126]

The LPA defines an "*Affiliate*" as "any Person that directly or indirectly controls, is controlled by, or is under common control with the Person in question."[127] HCMLP disclaimed "any rights . . . in any business ventures" of Defendants because Defendants are alleged to be Affiliates of Strand (the "General Partner") (which Plaintiff alleges are under the common control of Dondero).[128] HCMLP disclaimed any rights it may have had in the business ventures of entities such as NPA and HCMFA in the LPA.[129] Thus, because HCMLP disclaimed any rights in any

---

[126] *See Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 106 (Del. 2013).

[127] 2nd LPA, § 2.1, Def. Ex. B, Def. Appx. 48; 4th LPA, § 2.1, Def. Ex. A, Def. Appx. 10.

[128] Complaint, *passim*.

[129] 2nd LPA, § 4.1(f-g), Def. Ex. B, Def. Appx. 62-63 (emphasis added); 4th LPA, § 4.1(f-g), Def. Ex. A, Def. Appx. 25 (emphasis added):

>   (f)     Outside Activities' Conflicts of Interest.  The General Partner or any Affiliate thereof and any director, officer, employee, agent, or representative of the General Partner or any Affiliate thereof shall be entitled to and may have business interests and engage in business activities in addition to those relating to the Partnership, including, without limitation, business interests and activities *in direct competition with* the Partnership.  *Neither the Partnership nor any of the Partners shall have any rights* by virtue of this Agreement or the partnership relationship created hereby *in any business ventures* of the General Partner, any Affiliate thereof, or any director, officer, employee, agent, or representative of either the General Partner or any Affiliate thereof.
>
>   (g)     Resolution of Conflicts of Interest.  Unless otherwise expressly provided in this Agreement or any other agreement contemplated herein, whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or any Limited Partner, on the other hand, any action taken by the General Partner, in the absence of bad faith by the General Partner, shall not constitute a breach of this Agreement or any other agreement contemplated herein or a *breach of any standard of care or duty imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation*.

23

business ventures of Affiliates of the General Partner, it relinquished the right to bring such a claim

against Defendants in this matter and this claim must be dismissed under *Twombly*.

### 6. Plaintiff's Claim for Unjust Enrichment Must Be Dismissed Because it is not an Independent Cause of Action under Texas Law and Plaintiff Cannot Recover If a Valid Contract Exists Governing the Issue.

Plaintiff's claim for unjust enrichment is not an independent cause of action under Texas

law and accordingly must be dismissed.[130]

If the Court were to consider unjust enrichment as a separate cause of action – contrary to

Texas authority – the claim would still be subject to the general rule that a claim for unjust

enrichment does not lie when there is a contract governing the parties' dispute.[131] Here, Plaintiff

alleges that HCMFA and NPA paid too little for HCMLP's services.[132] But, when compensation

is determined by a contract, there can be no claim for unjust enrichment when the price determined

by the contract is paid.[133] "When a valid agreement already addresses the matter, recovery under

---

[130] *See Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) (". . .unjust enrichment describes the nature of certain claims and remedies, [but is] not a distinct cause of action itself"); *McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 891 (Tex. App.—Dallas 2014, pet. denied) ("unjust enrichment is not an independent claim; rather it is a theory of recovery"); *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp.2d 539, 561 (N.D. Tex. 2009) ("Because Texas law does not afford an independent cause of action for unjust enrichment, plaintiffs cannot simultaneously maintain both of these claims [for unjust enrichment and money had and received]," dismissing unjust enrichment claim); *Taylor v. Tervino*, No. 3:20-CV-0393-D, 2021 WL 347566, at *4 (N.D. Tex. Feb. 2, 2021) ("The court has previously held that Texas law does not recognize an independent cause of action for unjust enrichment," dismissing unjust enrichment claim on 12(b)(6) motion, since non-movant could not provide any authority to the contrary); *Redwood Resort Properties, LLC v. Holmes Co. Ltd.*, No. CIVA 3:06CV1022 D, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006) (dismissing unjust enrichment claim on 12(b)(6) motion because "[u]njust enrichment 'is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits. . .which give rise to an implied or quasi-contractual obligation to repay'"); *Arencibia v. AGA Serv. Co.*, No. 4:20-cv-00819-O, 2020 WL 10056799, at *5 (N.D. Tex. Nov. 13, 2020) (dismissing unjust enrichment claim on 12(b)(6) motion because ". . .Texas courts of appeals have consistently held that unjust enrichment is not an independent cause of action, but is instead a theory upon which an action for restitution may rest."); *Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-cv-2970-L, 2019 WL 5865709, at *9 (N.D. Tex. Nov. 7, 2019) (same).

[131] *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *Reveille Trucking, Inc., v. Lear Corp.*, No. 4:14-CV-511, 2017 WL 661521, at *13 (S.D. Tex. Feb. 17, 2017); *Maxwell v. Neri N. Am.*, No. 4:13-CV-269, 2014 WL 2441200, at *6 (S.D. Tex. May 30, 2012).

[132] Complaint, ¶ 347 ("Neither NexPoint nor HCMFA fairly compensated HCMLP for the use of its employees or resources [under the shared services agreements]").

[133] *Musgrave v. Horne Re-Abilene, LLC*, No. 1:09-CV-138-C, 2010 WL 11613937, at *6 (N.D. Tex. July 12, 2010) (dismissing unjust enrichment theory of recovery where the parties contested the amount payable for a tract of land, but there was a valid express contract governing the price to be paid).

an equitable theory [like unjust enrichment] is generally inconsistent with the express agreement."[134] Plaintiff's effort to repackage its allegations to fit every conceivable tort claim in Texas should be rejected and Plaintiff's unjust enrichment claim must be dismissed.

## V.    Conclusion

Defendants NPA and HCMFA therefore respectfully request this Court dismiss Plaintiff's Ninth, Eleventh, Twelfth, Thirteenth, Fifteenth, Sixteenth, Seventeenth, and Twenty-Eighth Counts in its Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Additionally, Defendants NPA and HCMFA do not consent to the Bankruptcy Court entering final orders or a judgment in this Adversary Proceeding.

Dated: March 23, 2022

Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Email:  deborah.deitschperez@stinson.com
Email:  michael.aigen@stinson.com

**ATTORNEYS FOR DEFENDANTS
NEXPOINT ADVISORS, L.P. AND
HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P.**

---

[134] *Id.* (quoting the Supreme Court of Texas in *Fortune Prod. Co.*).

## CERTIFICATE OF SERVICE

I certify that on March 23, 2022, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing system to the parties that are registered or otherwise entitled to receive electronic notices in this case.

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez

26