## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | |

| | |
|---|---|
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | Adv. Pro. No. 21-03076-sgj |
| *Plaintiff* | **MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANTS JAMES DONDERO, DUGABOY INVESTMENT TRUST, GET GOOD TRUST, AND STRAND ADVISORS, INC.** |
| v. | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; | |

SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,

        *Defendants.*

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANTS JAMES D. DONDERO, DUGABOY INVESTMENT TRUST, GET GOOD TRUST, AND STRAND ADVISORS, INC.

## **Table of Contents**

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND ........................................................................................ 1

    **A.**     HCMLP's History ................................................................................................1

    **B.**     The Dondero Defendants ....................................................................................2

    **C.**     The Bankruptcy Proceedings ..............................................................................4

III.    LEGAL STANDARD ................................................................................................... 5

IV.     THE COMPLAINT AGAINST THE DONDERO DEFENDANTS SHOULD BE
    DISMISSED ................................................................................................................. 6

    **A.**     The Court Does Not Have Subject Matter Jurisdiction Over The Non-
        Core, State-Law Claims Asserted Against The Dondero Defendants ....................6

    **B.**     The Litigation Trustee Lacks Standing To Pursue Non-Retained State-Law
        Claims ................................................................................................................7

    **C.**     The Fraudulent Transfer Claims Should Be Dismissed .........................................10

    **D.**     The Complaint Should Be Dismissed For Multiple Additional Reasons ..............14

        **1.**     The Complaint's Breach Of Fiduciary Duty Claims Fail ..........................14

            **a.**     Counts IV, XIV, and XVI are time-barred. ...................................15

            **b.**     The LPA precludes the breach of fiduciary claims........................17

            **c.**     Counts XV and XVI should be dismissed. ....................................19

        **2.**     The Complaint's Declaratory Judgment Claims Are Insufficient ............21

        **3.**     The Complaint Fails To Plead A Viable Conversion Claim......................24

        **4.**     The Litigation Trustee's Unjust Enrichment Claim Fails As A
            Matter Of Law...........................................................................................25

        **5.**     The Claims Seeking Disallowance Of Claims Are Moot ..........................25

V.      CONCLUSION ........................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
 580 S.W.3d 136 (Tex. 2019) .................................................................15

*In re Artho*,
 587 B.R. 866 (Bankr. N.D. Tex. 2018) ..................................................21

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .........................................................................5, 19

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................5

*Brickell Partners v. Wise*,
 794 A.2d 1 (Del. Ch. 2001) ..................................................................17

*In re Brown Med. Ctr., Inc.*,
 578 B.R. 590 (Bankr. S.D. Tex. 2016) ....................................................6

*In re Brown Sch.*,
 368 B.R. 394 (Bankr. D. Del. 2007) ......................................................15

*Chu v. Hong*,
 249 S.W.3d 441 (Tex. 2008) .................................................................21

*In re Coho Energy*,
 309 B.R. 217 (Bankr. N.D. Tex. 2004) ....................................................7

*In re Craig's Stores of Texas, Inc.*,
 266 F.3d 388 (5th Cir. 2001) ................................................................7

*Curtis v. Cerner Corp.*,
 621 B.R. 141 (S.D. Tex. 2020) .............................................................10

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
 888 F.3d 753 (5th Cir. 2018) ...............................................................15

*In re Dual D Health Care Operations, Inc.*,
 2021 WL 3083344 (Bankr. N.D. Tex. July 21, 2021) ..............................11

*In re Essential Fin. Educ., Inc.*,
 629 B.R. 401 (Bankr. N.D. Tex. 2021) (Larson, J.) ................................11

**Table of Authorities**
(Continued)

Page(s)

*In re Galaz*,
841 F.3d 316 (5th Cir. 2016) ....................................................................................7

*In re Giant Gray, Inc.*,
629 B.R. 814 (Bankr. S.D. Tex. 2020) ..................................................................11

*Gibson v. Wells Fargo Bank, N.A.*,
2016 WL 11755377 (N.D. Tex. June 9, 2016) .......................................................24

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
817 A.2d 160 (Del. 2002) .......................................................................................17

*Heinze v. Tesco Corp.*,
971 F.3d 475 (5th Cir. 2020) ....................................................................................5

*Johnson v. E. Baton Rouge Fed'n of Teachers*,
706 F. App'x 169 (5th Cir. 2017) ..........................................................................19

*In re Kipnis*,
555 B.R. 877 (S.D. Fla. 2016) ..........................................................................12, 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)...............................................................................................6, 7

*Le Mieux Bros. Corp. v. Armstrong*,
91 F.2d 445 (5th Cir. 1937) ....................................................................................17

*Lee By & Through MacMillan v. Biloxi Sch. Dist.*,
963 F.2d 837 (5th Cir. 1992) ..................................................................................25

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) ......................................................................................20

*Marshall v. Intermountain Elec. Co., Inc.*,
614 F.2d 260 (10th Cir. 1980) ................................................................................13

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*,
999 F.3d 970 (5th Cir. 2021) ..................................................................................25

*In re Mirant Corp.*,
675 F.3d 530 (5th Cir. 2012) ..................................................................................13

*Mirant Corp. v. The Southern Co.*,
337 B.R. 107 (N.D. Tex. 2006)..................................................................................6

**Table of Authorities**
**(Continued)**

**Page(s)**

*In re Morrison*,
409 B.R. 384 (Bankr. S.D. Tex. 2009) .......................................................................6

*MVS Int'l Corp. v. Int'l Advertising Solutions, LLC*,
545 S.W.3d 180 (Tex. App. 2017)......................................................................20, 21

*In re Nat'l Gypsum Co.*,
145 B.R. 539 (N.D. Tex. 1992)...............................................................................12

*In re Northstar Offshore Group, LLC*,
616 B.R. 695 (Bankr. S.D. Tex. 2020) ..................................................................11

*Pelican Refining Co. LLC v. Adams & Reese, LLP*,
2007 WL 1306808 (S.D. Tex. May 3, 2007) ...........................................................7

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
635 F.3d 757 (5th Cir. 2011) ...................................................................................3

*Redwood Resort Properties, LLC v. Holmes Co. Ltd.*,
2006 WL 3531422 (N.D. Tex. Nov. 27, 2006)......................................................25

*Rittgers v. United States*,
131 F. Supp. 3d 644 (S.D. Tex. 2015) .....................................................................4

*Rossco Holdings, Inc. v. McConnell*,
613 F. App'x 302 (5th Cir. 2015) ............................................................................8

*In re Royce Homes L.P.*,
2011 WL 13340482 (Bankr. S.D. Tex. Oct. 13, 2011)............................................6

*S.E.C. v. Calvo*,
378 F.3d 1211 (11th Cir. 2004) .............................................................................13

*Senger Creek Dev., LLC v. Fuqua*,
2017 WL2376529 (Tex. Ct. App.—Houston [1st Dist.] June 1, 2017, no pet.) .....15

*In re SI Restructuring*,
714 F.3d 860 (5th Cir. 2013) ..............................................................................8, 9

*Sivertson v. Citibank, N.A. as Trustee for Registered Holders of WAMU Asset-*
*Backed Certificates WAMU Series No. 2007-HE2*,
390 F. Supp. 3d 769 (E.D. Tex. 2019)...................................................................17

*In re Soporex, Inc.*,
463 B.R. 344 (Bankr. N.D. Tex. 2011).....................................................................5

**Table of Authorities**
(Continued)

Page(s)

*In re Specialty Select Care Ctr. of San Antonio, LLC,*
2021 WL 3083522 (Bankr. N.D. Tex. July 21, 2021) ...........................................................11

*In re Taylor, Bean & Whitaker Mortgage Corp.,*
2018 WL 6721987 (Bankr. M.D. Fla. Sept. 28, 2018) .........................................................12

*Tepper v. Keefe Bruyette & Woods, Inc.,*
2012 WL 4119490 (N.D. Tex. Sept. 19, 2012)......................................................................8

*Trevino v. Merscorp, Inc.,*
583 F. Supp. 2d 521 (D. Del. 2008)......................................................................................22

*Tri v. J.T.T.,*
162 S.W.3d 552 (Tex. 2005)..................................................................................................20

*In re U.S. Brass Corp.,*
301 F.3d 296 (5th Cir. 2002) .............................................................................................6, 7

*In re United Operating, LLC,*
540 F.3d 351 (5th Cir. 2008) .............................................................................................8, 9

*In re Vaughan Co.,*
498 B.R. 297 (D. N.M. 2013) .........................................................................................12, 13

*VeroBlue Farms USA, Inc. v. Wulf,*
465 F. Supp. 3d 633 (N.D. Tex. 2020) .................................................................................14

*In re Wheelabrator Techs., Inc. S'holders Litig.,*
1992 WL 212595 (Del. Ch. Sept. 1, 1992) .............................................................................4

*Winslow v. Paxton,*
2017 WL 283281 (N.D. Tex. Jan. 20, 2017) ....................................................................5, 19

*In re Wood,*
825 F.2d 90 (5th Cir. 1987) ...................................................................................................6

**Statutes**

6 Del. C. §17-1101(d) ...................................................................................................................17

11 U.S.C. § 547(c)(9)....................................................................................................................13

11 U.S.C. § 548.......................................................................................................................10, 13

11 U.S.C. § 1123(b)(3) ...................................................................................................................8

**<u>Table of Authorities</u>**
**(Continued)**

**Page(s)**

26 U.S.C. § 6502 ................................................................................................10, 11, 12

28 U.S.C. § 157 ..............................................................................................................6

28 U.S.C. § 1334 ......................................................................................................6, 25

United States Code title 11 chapter 11 ...................................................................4, 6, 8

Bankruptcy Code section 544 ............................................................................. *passim*

Bankruptcy Code section 548 ........................................................................................8

Bankruptcy Code section 550 ........................................................................................8

Delaware Revised Uniform Limited Partnership Act ...................................................17

Federal Debt Collection Procedures Act ......................................................................13

Tex. Bus. & Com. Code § 24.005(a)(1)-(2) ...................................................................6

Tex. Bus. & Com. Code § 24.010 ................................................................................11

Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4) ......................................................15

Texas Uniform Fraudulent Transfer Act ..................................................................6, 10

**Other Authorities**

Federal Rules of Bankruptcy Procedure 7012(b) .......................................................1, 5

Federal Rules of Civil Procedure 12 ..........................................................................1, 5

## I.      INTRODUCTION

Defendants James D. Dondero, Strand Advisors, Inc., Dugaboy Investment Trust, and Get Good Trust (collectively, the "Dondero Defendants") move to dismiss the Complaint and Objection to Claims ("Complaint") filed by Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust ("Litigation Trustee") because those claims are deficient under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

The Complaint, which asserts 36 sweeping causes of action against 23 defendants, attempts to saddle Mr. Dondero, his employees, and his affiliates (however tenuously connected) with liability for contractually sanctioned management activities undertaken for the benefit of Highland Capital Management, L.P. ("HCMLP").  Hoping to paint everyone and everything with the same bad brush, the Complaint vastly overreaches and falls well short of alleging viable claims against the Dondero Defendants.  As explained below, the Complaint should be dismissed under Rule 12(b)(1) because the Court lacks subject matter jurisdiction to hear or decide any of the non-core state-law claims asserted against the Dondero Defendants.  In addition, the Complaint should be dismissed under Rule 12(b)(6) because the Litigation Trustee lacks standing to assert the claims, they are barred by the applicable statutes of limitations, and/or the allegations of the Complaint fail to sufficiently plead the claims asserted.

## II.     FACTUAL BACKGROUND

### A.      HCMLP's History

HCMLP is an SEC-registered investment advisory business founded in 1993 by defendants Mr. Dondero and defendant Mark A. Okada.  *See* Compl., ¶¶ 1, 12-13.  Although the Complaint

---

[1] Rules 12(b)(1) and 12(b)(6) are made applicable in bankruptcy through Federal Rules of Bankruptcy Procedure 7012(b).  With all due respect, the Dondero Defendants do not consent to the entry of final orders or judgment by the Bankruptcy Court.

1

describes HCMLP and its affiliates as a complex "web" of entities operated at the whim and for the sole benefit of Mr. Dondero, for 26 years prior to filing a chapter 11 petition, HCMLP operated as a legitimate (and heavily regulated) Registered Investment Advisor ("RIA") for the benefit of its managed funds and investors. As the Complaint acknowledges, under Mr. Dondero's leadership, by the mid-2000s, HCMLP grew to over 100 employees, including "executive-level management employees, finance and legal staff, investment professionals, and back-office accounting and administrative personnel." *Id.*, ¶ 40. Thus, while the Litigation Trustee alleges that Mr. Dondero was "HCMLP's solitary decision-maker on all matters concerning the company's operation and management," *id.*, ¶ 40, that allegation makes no sense. Over the years, with the assistance of an expanded workforce and skilled executive team, Mr. Dondero shifted HCMLP's original focus on the leveraged loan market to "other asset classes, such as high-yield credit, public equities, real estate, private equity and special situations, structured credit, and sector- and region-specific industries." *Id.*, ¶ 38. At its high-water mark, HCMLP had assets under management "exceed[ing] $40 billion." *Id.*, ¶ 41 n.8.

Following the financial crisis in 2008, HCMLP and some of its managed funds and affiliates, like many other financial institutions and financial advisors across the globe, faced several lawsuits. Compl., ¶ 4. The Complaint characterizes those lawsuits as a "looming threat," *id.*, ¶ 5, but between 2008 and HCMLP's bankruptcy filing in 2019, virtually none of those lawsuits resulted in any sizeable liability against HCMLP, and certainly none that would render HCMLP insolvent. Indeed, the only significant award issued against HCMLP at any time between 2008 and 2019 (and the only one identified in the Complaint) is a $190 million arbitration award in favor of the Redeemer Committee. *See* Compl., ¶¶ 8, 84.

## B. The Dondero Defendants

***James D. Dondero and Strand.*** For most of its operating history, Mr. Dondero served as

the Chief Executive Officer of HCMLP by virtue of his ownership (and role as sole director) of its

general partner, Strand Advisors, Inc. ("Strand"). Compl., ¶¶ 12, 14. Notably, contrary to the

allegations of the Kirschner Complaint, when HCMLP filed for bankruptcy, Mr. Dondero did not

own any direct economic interest in the Debtor, as this Court has acknowledged.[2]

Moreover, as the Litigation Trustee acknowledges, the management of HCMLP prior to

Plan confirmation was governed by the Fourth Amended and Restated Agreement of the Limited

Partnership of Highland Capital Management, L.P. ("LPA"). *See* Compl., ¶ 387.[3] That LPA

contains several salient provisions that bear upon the allegations at issue. In particular, the

Agreement permitted Strand, as general partner:

- To "make such pro rata or non-pro rata distributions as it may determine in its sole and unfettered discretion" (LPA, §3.9(a));

  To "have business interests and engage in business activities in addition to those relating to the Partnership, including, without limitation, business interests and activities in direct competition with the Partnership" (*id.*, § 4(f)).[4]

- To exercise "full control over all activities of the Partnership," including by, among other things, (1) "purchasing and selling any asset, any debt instruments, any equity interests, any commercial paper, any note receivables, and any other obligation" of HCMLP, (2) "exchang[ing] . . . any or all of the assets of the Partnership," (3) executing on behalf of HCMLP "notes . . . and any and all other contracts," (4) "us[ing] the assets of the Partnership (including, without limitation, cash on hand) for any Partnership purpose on any terms [Strand] s[aw] fit," (5) "distributing . . . Partnership cash or other assets," (6) forming other limited or general partnerships, joint ventures, or other relationships and to contributing to "such partnerships, ventures, or relationships . . . assets and properties of the Partnership," and (7) controlling "the conduct of any

---

[2] *See* Order (I) Confirming the Fifth Amended Plan Reorganization of Highland Capital Management, L.P (as Modified) and (II) Granting Related Relief ("Confirmation Order"), Dkt. 1943, at ¶ 5; *see also id.*, ¶ 18 ("Mr. Dondero owns no equity in the Debtor directly.").

[3] The LPA is attached as Exhibit A to the Declaration of Amy L. Ruhland ("Ruhland Decl.") filed contemporaneously herewith. *See* Ruhland Decl., ¶ 2. The Court may consider the LPA because it is incorporated into the complaint by reference. *See* Compl., ¶ 387; *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[4] This right extended to Strand's directors, officers, agents, and representatives. Ruhland Decl., Ex. A, § 4.1(f).

litigation, the incurring of legal expenses, and the settlement of claims and suits" (*id.*, § 4.1(a)); and

Mr. Dondero, in turn, was authorized to act on behalf of Strand by virtue of his role as Strand's sole director, as set forth in Strand's organizational documents.[5] This makes sense: an entity like Strand could not act without an individual at the helm.

***Dugaboy.*** Prior to Plan confirmation, Defendant Dugaboy Investment Trust ("Dugaboy") held a minority (0.1866%) economic interest and a 74.4426% voting interest in HCMLP's Class A partnership interests. *See* Compl., ¶ 16; Plan Confirmation Order, ¶ 18. Despite these interests, there is no allegation that Dugaboy exercised any control of HCMLP or orchestrated or directed any of the transactions at issue. Upon Plan confirmation, Dugaboy's minority equity interest and majority voting interests were extinguished.

***Get Good.*** Defendant Get Good Trust ("Get Good") is a Delaware trust established by Mr. Dondero for the benefit of his living descendants. *See* Compl., ¶ 28. Get Good is neither a residual equity holder in the Debtor's estate nor a creditor. Nor does the Complaint allege that Get Good exercised any control of HCMLP or orchestrated or directed any of the transactions at issue.

### C.    The Bankruptcy Proceedings

On October 16, 2019 (the "Petition Date"), in response to an adverse arbitration award of $190 million, HCMLP filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Dkt. 1. Just three months after HCMLP's bankruptcy filing, on January 9, 2020, Mr. Dondero agreed to resign from his positions at HCMLP and Strand. Compl., ¶ 12.

---

[5] *See* Ruhland Decl., Exs. B & C. The Court may take judicial notice of a company's publicly filed organizational documents. *See Rittgers v. United States*, 131 F. Supp. 3d 644, 649-50 (S.D. Tex. 2015) (on a motion to dismiss, court may consider "documents that are subject to judicial notice as public record"); *see also In re Wheelabrator Techs., Inc. S'holders Litig.*, 1992 WL 212595, at *11-12 (Del. Ch. Sept. 1, 1992) (taking judicial notice of certificate of incorporation).

On November 24, 2020, HCMP filed its Fifth Amended Plan of Reorganization (the "Plan"), *see* Dkt. 1808, which the Bankruptcy confirmed on February 22, 2021 ("Confirmation Date"). *See* Dkt. 1943. The Plan became effective on August 11, 2021, *see* Dkt. 2700, and HCMLP has since represented that the Plan has been substantially consummated. *See* Adv. Proc. No. 3:21-cv-01895-D, Dkt. 14, at 17-20. The Litigation Trustee did not commence this Adversary Proceeding until eight months after the Confirmation Date, well after the Plan had gone effective..

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] complaint must allege 'more than labels and conclusions,' as 'a formulaic recitation of the elements of a cause of action will not do." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555); *see also In re Soporex, Inc.*, 463 B.R. 344, 367 (Bankr. N.D. Tex. 2011) ("[A] court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.") (internal quotation omitted). Further, where (as here), a complaint alleges multiple claims against multiple defendants, the pleading standards must be applied "separately to each claim and each defendant." *Winslow v. Paxton*, 2017 WL 283281, at *2 (N.D. Tex. Jan. 20, 2017).

## IV. THE COMPLAINT AGAINST THE DONDERO DEFENDANTS SHOULD BE DISMISSED[6]

### A. The Court Does Not Have Subject Matter Jurisdiction Over The Non-Core, State-Law Claims Asserted Against The Dondero Defendants

The Complaint should be dismissed because the majority of the 24 claims asserted against the Dondero Defendants are non-core, state-law claims over which the Bankruptcy Court lacks subject matter jurisdiction under 28 U.S.C. § 1334.[7] "Federal courts are courts of limited jurisdiction . . . and possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157." *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) (citation omitted). In relevant part, Section 1334 provides federal "district courts" with "original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(b).[8] The district court may refer (and has referred here) "proceedings . . . related to a case under title 11 . . . to the bankruptcy judges for the district." *Id.* § 157(a); Misc. Order No.

---

[6] The Complaint alleges many similar allegations against defendants Mark A. Okada (and his family trusts), Scott Ellington, Isaac Leventon, Frank Waterhouse, NexPoint Advisors, L.P., and Highland Capital Management Fund Advisors, L.P. The Dondero Defendants hereby incorporate by reference as if fully set forth herein the Motions to Dismiss filed by these defendants. *See* Dkt. Nos. 125, 126, 128, 129, 130, 133, 136, and 137.

[7] In particular, Counts I-VIII, X, XIV-XVII, and XXV-XXVI are non-core claims. *See In re Morrison*, 409 B.R. 384, 390 (Bankr. S.D. Tex. 2009) (breach of fiduciary duty, conspiracy, and conversion proceedings are non-core); *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 117–18 (N.D. Tex. 2006) (alter-ego, unlawful dividend, and aiding and abetting breach of fiduciary duty claims are non-core); *In re Royce Homes L.P.*, 2011 WL 13340482, at *2 (Bankr. S.D. Tex. Oct. 13, 2011) (fiduciary duty, conversion, conspiracy, and unjust enrichment are non-core). Notably, even the fraudulent transfer claims arise in part under state law—namely, the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *See* Tex. Bus. & Com. Code § 24.005(a)(1)-(2). The Fifth Circuit has not decided whether fraudulent transfer claims are core or non-core when the pleading asserts those claims under both the TUFTA and the Bankruptcy Code. At least one Texas bankruptcy court has held that they are non-core. *See In re Brown Med. Ctr., Inc.*, 578 B.R. 590, 597 (Bankr. S.D. Tex. 2016).

[8] Because these claims are "non-core," the only relevant proceedings described in 28 U.S.C. § 1334(b) are those "related to cases under title 11." *See In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987); *U.S. Brass Corp.*, 301 F.3d at 304.

33 (N.D. Tex. Aug. 3, 1984). But the "related to" jurisdiction of the district courts under Section 1334(b), and by reference, the bankruptcy courts, is much narrower after confirmation of the relevant plan of reorganization. *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001). For the most part, it "*ceases to exist.*" *Id.* (emphasis added); *accord In re Galaz*, 841 F.3d 316, 322 (5th Cir. 2016) (same). Post-confirmation, the debtor no longer needs the "protection" of the bankruptcy court to "facilitate 'administration' of the . . . estate." *Id.* Accordingly, in ascertaining its post-confirmation subject matter jurisdiction, the Bankruptcy Court must conform to an "*exacting*," "*narrow[]*" theory of jurisdiction. *Id.* The Court continues to have jurisdiction only over "matters pertaining to the implementation or execution of the plan." *Id.*

The exacting standard adopted and applied by the Fifth Circuit makes clear that this Court lacks post-confirmation jurisdiction over the non-core, state law claims asserted in the Complaint against the Dondero Defendants. None of those claims bears upon the "implementation or execution of the plan."[9] Accordingly, this Court should dismiss Counts III–VIII, X, XIV–XVII, and XXV–XXVI against the Dondero Defendants for lack of subject matter jurisdiction.

### B. The Litigation Trustee Lacks Standing To Pursue Non-Retained State-Law Claims

The state-law claims asserted against the Dondero Defendants also should be dismissed because the Litigation Trustee lacks standing to pursue them. Specifically, the Litigation Trustee lacks standing to pursue Counts III–VIII, X, XIV–XVII, and XXV–XXVI because the Plan did not specifically and unequivocally reserve those claims. It is axiomatic that, after confirmation of

---

[9] Some courts have wrongly considered whether a plan reserved particular claims in determining their post-confirmation "related to" jurisdiction. *See, e.g.*, *In re Coho Energy*, 309 B.R. 217, 221 (Bankr. N.D. Tex. 2004). That is error. The terms of the plan *cannot* confer subject matter upon a bankruptcy court. *U.S. Brass*, 301 F.3d at 303; *accord Pelican Refining Co. LLC v. Adams & Reese, LLP*, 2007 WL 1306808, at *3 (S.D. Tex. May 3, 2007); *Kokkonen*, 511 U.S. at 377 (federal jurisdiction "is not to be expanded by judicial decree").

a plan of reorganization, the bankruptcy estate "ceases to exist, and the debtor loses its status as debtor-in-possession along with its authority to pursue claims as though it were a trustee." *Rossco Holdings, Inc. v. McConnell*, 613 F. App'x 302, 306 (5th Cir. 2015) (quoting *In re SI Restructuring*, 714 F.3d 860, 864 (5th Cir. 2013)). "[B]y losing authority to pursue a claim, the debtor loses *standing* with respect to that claim." *Id.* (emphasis added). A plan of reorganization may vest a post-confirmation debtor or trustee with authority to pursue one or more claims held by the estate, 11 U.S.C. § 1123(b)(3), but "the ability of the debtor to enforce a claim once held by the estate is limited to that which has been retained in the plan." *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008). "Without an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved." *In re SI Restructuring*, 714 F.3d at 864 (internal quotations omitted); *In re United Operating*, 540 F.3d at 355.

The Fifth Circuit has held that a plan's claim retention language must be "specific and unequivocal." *In re United Operating*, 540 F.3d at 355; *accord Rossco*, 613 F. App'x at 308. This requirement ensures that creditors have adequate notice of which claims the debtor intends to pursue after confirmation so that they can "determine whether a proposed plan resolves matters satisfactorily before they vote to approve it." *In re United Operating*, 540 F.3d at 355. A blanket reservation of "any and all" claims, or a laundry list of generic claims, is insufficiently specific to meet this requirement. *Id.* at 356; *Rossco*, 613 F. App'x at 306–07. Likewise, a reservation of claims "arising under the Bankruptcy Code"—even if specific and unequivocal—is insufficient to preserve state common-law claims. *In re United Operating*, 540 F.3d at 356; *accord In re SI Restructuring Inc.*, 714 F.3d at 862-63; *Rossco*, 613 F. App'x at 306–07; *see also Tepper v. Keefe Bruyette & Woods, Inc.*, 2012 WL 4119490, at *5 (N.D. Tex. Sept. 19, 2012) (no "standing to pursue a fraudulent transfer claim under Texas and New York statutory law" where the plan "only

provide[d] for avoidance claims under . . . sections 544, 548, and 550 of the Bankruptcy Code").

Pursuant to these standards, the Plan and Plan Supplement fail to specifically and unequivocally retain the state-law claims asserted against the Dondero Defendants. The Plan contains sweeping language purporting to "retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action," defined to include "any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims." *See* Plan, Dkt. No. 1943, at 101, 146–47. That is exactly the kind of generalized, nonspecific language that the Fifth Circuit has repeatedly found insufficient to preserve standing. *See In re United Operating*, 540 F.3d at 356 (neither "blanket reservation of 'any and all claims' arising under the Code," nor "specific reservation of other types of claims under various Code provisions" sufficient to preserve the common-law claims); *In re SI Restructuring, Inc.*, 714 F.3d at 860 (same).

The Plan Supplement fares no better. In what can only be described as a kitchen-sink approach, the Supplement contains a laundry list of purportedly retained claims—including "claims brought under state law, claims brought under federal law, [and] claims under any common-law theory of tort or law or equity"—that is the equivalent of a blanket reservation of claims. *See* Dkt. No. 1875-3. What is more, the Supplement broadly purports to retain that laundry list of claims against a multi-page list of potential defendants. That overbroad list of potential claims and defendants did not apprise the Dondero Defendants of which, if any, claims might actually be filed against them post-confirmation. In the absence of a more "specific and unequivocal" retention of the state-law claims asserted against the Dondero Defendants, the Plan and Supplement fail to confer the requisite standing on the Litigation Trustee.

In any event and at the very least, the Litigation Trustee's claims against the Dondero Defendants for illegal distributions under the DRULPA (Count III), declaratory judgment (Counts

VI-VIII & X), aiding and abetting or knowing participation in breach of fiduciary duty (Count XV), and conspiracy (Count XVI) should be dismissed because neither the Plan nor the Supplement mentions those claims at all.  As a result, those claims were not retained, and the Litigation Trustee lacks standing to pursue them.

### C.    The Fraudulent Transfer Claims Should Be Dismissed

In Counts I-II, XVIII-XIX, XXII-XXIII, and XXXI-XXXIII, the Litigation Trustee seeks avoidance of transfers allegedly made to the Dondero Defendants dating back to 2010.  Compl., ¶¶ 168-180, 310-320.  These claims should be dismissed for several reasons.

***Constructive & Fraudulent Transfers (Counts I-II, XVIII-XIX, & XXII-XXIII).***  These Counts seek avoidance of transfers that occurred many years into the past.  But the Litigation Trustee's avoidance powers are limited in time.  Section 548(a)(1) allows the Litigation Trustee to avoid transfers only to the extent they were "made or incurred on or within 2 years before the date of the filing of the petition."  11 U.S.C. § 548(a)(1).  Because HCMLP's chapter 11 bankruptcy petition was filed on October 16, 2019, the Litigation Trustee generally cannot avoid transfers made before October 16, 2017.  *Curtis v. Cerner Corp.*, 621 B.R. 141, 179-80 (S.D. Tex. 2020).  To justify a longer lookback period, the Litigation Trustee relies on two statutory provisions: Bankruptcy Code § 544 and 26 U.S.C. § 6502.  As explained below, the Trustee's reliance on these statutory provisions is unavailing, and the Court should dismiss the fraudulent transfer claims to the extent that the transfers occurred prior to October 16, 2017.

First, the Litigation Trustee cannot rely on Bankruptcy Code § 544 to extend the limitations period because the Trustee has not pleaded allegations to support its application.  To utilize Section 544(b)(1) and acquire the benefit of the longer, four-year statute of limitations for avoidance

10

actions prescribed under state law (the TUFTA),[10] the Litigation Trustee must plead "the existence of an actual unsecured creditor holding an allowable secured claim as of the date of the petition that could avoid the challenged transfer." *In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 419-20 (Bankr. N.D. Tex. 2021) (Larson, J.).[11]  Moreover, the Litigation Trustee must plead the existence of a triggering unsecured creditor for each of the alleged fraudulent transfers at issue.  *In re Giant Gray, Inc.*, 629 B.R. 814, 828 (Bankr. S.D. Tex. 2020).  The Litigation Trustee fails to do so with respect to *any* of the alleged fraudulent transfers at issue, which is preclusive.[12]

Second, the Litigation Trustee's effort to invoke the so-called "golden creditor" rule by making passing reference to 26 U.S.C. § 6502 is also unavailing.  *See* Compl., ¶¶ 174, 180, 249, 254, 316, 320 (citing 26 U.S.C. § 6502).  Section 6502 affords the IRS ten years to bring a collection action from the date of a timely tax assessment.  While a minority of courts have allowed a trustee to stand in the shoes of the IRS and benefit from this ten-year lookback period, the Fifth Circuit has not sanctioned this practice.  And for several reasons, the Court should reject the Litigation Trustee's effort to invoke the IRS lookback period.

First, the Trustee's allegations are insufficient to establish that 26 U.S.C. § 6502 even applies.  There is no allegation that the IRS is the triggering creditor.  Nor does the Complaint

---

[10] Under the TUFTA, a fraudulent transfer claim must be filed "within four years after the transfer was made or the obligation was incurred." Tex. Bus. & Com. Code § 24.010.

[11] The need to identify a triggering creditor is particularly acute with respect to constructive fraudulent transfer claims. *In re Northstar Offshore Group, LLC*, 616 B.R. 695, 724 (Bankr. S.D. Tex. 2020); *see also In re Dual D Health Care Operations, Inc.*, 2021 WL 3083344, at *15-16 (Bankr. N.D. Tex. July 21, 2021) (complaint's failure to identify a "triggering creditor" warranted dismissal for failure to state plausible claim under section 544(b)); *In re Specialty Select Care Ctr. of San Antonio, LLC*, 2021 WL 3083522, at *16-17 (Bankr. N.D. Tex. July 21, 2021) (same); *In re Giant Gray, Inc.*, 629 B.R. 814, 828 (Bankr. S.D. Tex. 2020) (same).

[12] Even if the Litigation Trustee could allege the existence of a triggering creditor on the dates of each transfer at issue, that would only allow the Trustee to avoid transfers dating back four years before the Petition Date—to October 16, 2015.  To the extent the Complaint seeks to avoid transfers before that date (as it does in Counts I-II, XVIII-XIX, & XXII-XXIII), the Complaint should be dismissed.

identify an "assessment of any tax" the IRS could have or did make, the date of such assessment, the type of assessment, or any other facts that would enable this Court to ascertain the basis for the Litigation Trustee's invocation of 26 U.S.C. § 6502. There also is no allegation that would permit the Court to infer that the IRS could even invoke this statute to collect taxes dating back ten years. *See In re Taylor, Bean & Whitaker Mortgage Corp.*, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sept. 28, 2018) ("The Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment (or, alternatively, prior to accrual of the tax liability).").[13] Under these circumstances, the Complaint fails to plead any facts that would entitle the Litigation Trustee to invoke the golden creditor rule.

In addition, as a matter of statutory interpretation and policy, the Court should reject the Litigation Trustee's invitation to apply the golden creditor rule. Notably, only in a "'few and far' between" adversary proceedings have courts permitted bankruptcy trustees to wield federal tax law as a "weapon" to extend the relevant statute of limitations. *In re Kipnis*, 555 B.R. 877, 883 (S.D. Fla. 2016). There are several problems with these courts' analysis.

Most notably, the operative language of Section 544(b)(1) states that certain transfers are "*voidable* under applicable law." By its plain terms, Section 6502(a)(1) does not grant the IRS the power to "void" any transfer (nor does it provide the IRS with any state-law remedy); it merely gives the IRS the right to levy taxes. It makes no sense to read 26 U.S.C. § 6502 to permit the avoidance of transfers—something not even the IRS cannot do. Moreover, it is inappropriate to treat a trustee in bankruptcy as if it is on par with a sovereign. *In re Vaughan Co.*, 498 B.R. 297,

---

[13] Notably, as several of the defendants previously have argued in connection with their motions to withdraw the reference, whether the IRS itself could invoke the ten-year lookback period requires "substantial and material" consideration of federal tax laws which must be resolved by the District Court. *See, e.g.*, *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992).

304-05 (D. N.M. 2013). Unlike the IRS, a trustee is not vindicating public rights—it is vindicating the rights of private creditors. *See id*. at 305. Where the U.S. government seeks to vindicate private rather than public rights in bankruptcy, the state statute of limitations generally applies. *Id.* at 304 (citing *Marshall v. Intermountain Elec. Co., Inc.*, 614 F.2d 260, 263 n.3 (10th Cir. 1980); *S.E.C. v. Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004)).

Further, interpreting the law to permit a bankruptcy trustee to invoke the tax statute's ten-year lookback period has the potential to "eviscerate" the bankruptcy courts' long-standing practice of looking to state law for the relevant limitations period. *In re Kipnis*, 555 B.R. at 883. Because "[t]he IRS is a creditor in a significant percentage of bankruptcy cases," such an interpretation would undoubtedly encourage "widespread use of § 544(b) to avoid state statute of limitations." *Id*. at 883. The Fifth Circuit has prevented similar efforts to extend Section 544(b)(1) before. *See, e.g.*, *In re Mirant Corp.*, 675 F.3d 530, 535 (5th Cir. 2012) (Federal Debt Collection Procedures Act does not constitute "applicable law" under § 544(b)). The law should not be interpreted in this manner, and the few courts that have done so are wrong.

*Preferential Transfers (Count XXXI).* Pursuant to 11 U.S.C. § 547(c)(9), a trustee may not avoid preferential transfers of less than $6,825. The Complaint alleges at least two transfers to Mr. Dondero during the year before the Petition Date below this threshold amount. Compl., ¶ 362. The Complaint must be dismissed to the extent it seeks avoidance of these transfers.

*Expense Transfers (Counts XXXII-XXXIII).* The Complaint also seeks to avoid alleged expense transfers made to Mr. Dondero in the year before the Petition Date, invoking 11 U.S.C. § 548. Compl., ¶¶ 368-377. Section 548 allows a trustee to avoid intentional fraudulent transfers if the transfers occurred "with actual intent to hinder, delay, or defraud." The statute also allows the avoidance of constructive fraudulent transfers if the debtor received "less than a reasonably

equivalent value in exchange for such transfer" and was insolvent at the time of the transfer, or if other conditions existed at the time of the transfer warranting its avoidance. The Complaint fails to adequately plead facts supporting the avoidance of any of the alleged expense transfers.

As to the allegedly constructively fraudulent expense transfers, the Complaint only seeks avoidance of the transfers "[t]o the extent [they] do not constitute reimbursement for valid expenses." Compl., ¶ 369. In other words, the Complaint does not allege the transfers were not valid reimbursements, nor does it make any plausible allegations about why they should be considered invalid (other than allegations made on speculative "information and belief"). Nor does the Complaint allege that the transfers were made for less than reasonably equivalent value, as is required.

As for the allegedly intentionally fraudulent expense transfers, the Complaint is similarly deficient. Again, the Complaint only seeks to avoid these transfers "[t]o the extent [they] do not constitute reimbursement for valid expenses," Compl., ¶ 374, but offers no reason why the transfers should be considered anything other than valid reimbursements. *See* Compl., ¶ 376. Further, beyond rehashing allegations relating to Mr. Dondero's other unrelated bad acts, the Complaint makes no particular allegations demonstrating that Mr. Dondero made the transfers with specific intent to "hinder, delay, or defraud" creditors, which is preclusive. *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 647 (N.D. Tex. 2020) (Rule 9(b) applies to intentional fraudulent transfer claims).

Counts XXXII and XXXIII are deficiently pleaded, and they should be dismissed.

**D.    The Complaint Should Be Dismissed For Multiple Additional Reasons**

**1.    The Complaint's Breach Of Fiduciary Duty Claims Fail**

In Counts IV, V, XIV, XV, and XVI, the Litigation Trustee alleges that Mr. Dondero and Strand breached their fiduciary duties to HCMLP by, among other things, (1) creating certain

"lifeboats," including NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA"), (2) engaging in actions leading to pre-petition litigation, and (3) facilitating or directing certain transfers. *See* Compl., ¶¶ 187-208, 259-265. The Complaint further alleges that Get Good aided and abetted a breach of fiduciary duty by Mr. Dondero and Strand with respect to the CLO Holdco Transaction. *Id.*, ¶ 269.[14] And finally, the Complaint alleges that Get Good "conspired with Dondero to breach his fiduciary duties to HCMLP by intentionally siphoning assets away from HCMLP to evade HCMLP's creditors." *Id.*, ¶ 271. These claims each fail for several independent reasons.

### a. Counts IV, XIV, and XVI are time-barred.

The Complaint does not allege which state's law applies to the claims for breach of fiduciary duty, but in this case it makes no difference, because Counts IV, XIV, and XVI are time-barred under both Delaware and Texas law. Delaware applies a three-year statute of limitations to breach of fiduciary duty claims, while Texas applies a four-year statute of limitations to such claims. *In re Brown Sch.*, 368 B.R. 394, 402-03 (Bankr. D. Del. 2007); Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4). Texas also applies a four-year statute of limitations to claims for "knowing participation" in breach of fiduciary duty,[15] as well as to claims for civil conspiracy to breach fiduciary duty. *Senger Creek Dev., LLC v. Fuqua*, 2017 WL2376529, at *11 (Tex. Ct. App.—Houston [1st Dist.] June 1, 2017, no pet.); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,

---

[14] The Complaint describes the CLO Holdco Transaction as one in which Dugaboy issued a note to Get Good. Compl., ¶ 126. Get Good then gave the note to HCMLP in exchange for certain assets. *Id.*, ¶¶ 126-127. The Litigation Trustee alleges that this transaction was problematic because liquid assets were exchanged for an illiquid note worth less than the assets. *Id.*, ¶ 126. Ultimately the assets were contributed to defendant CLO Holdco Ltd. *Id.*

[15] Because the Texas Supreme Court has not recognized a tort for "aiding and abetting" breach of fiduciary duty, the federal courts may not do so. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 782, 781 (5th Cir. 2018). To the extent the Complaint seeks to hold the defendants liable for aiding and abetting breach of fiduciary duty under Delaware law, a three-year statute of limitation applies. *See In re Brown Sch.*, 368 B.R. at 402-03.

580 S.W.3d 136, 142 (Tex. 2019) (claim for civil conspiracy is governed by the same limitations period as the underlying tort).

*Lifeboat Scheme (Count IV).*  Count IV seeks to hold Mr. Dondero and Strand liable for engaging in the so-called "lifeboat scheme."  According to the Complaint, that scheme began "in or about 2011," when Mr. Dondero and Strand conceived of creating new entities for the purpose of siphoning money away from HCMLP.  Compl., ¶ 49.  Allegedly in furtherance of that scheme, Mr. Dondero and Strand allegedly created NexPoint "in March 2012," after which NexPoint, "[b]etween 2012 and 2015," allegedly received fees for business activities undertaken by HCMLP and its employees.  *Id.*, ¶¶ 50-52.  Further, according to the Complaint, "[b]etween 2012 and [May] 2017," HCMLP loaned NexPoint "approximately $30 million" but paid no principal or interest to NexPoint during that period.  *Id.*, ¶¶ 53-54.

As to HCMFA, the Complaint alleges that Mr. Dondero caused HCMLP to transfer its obligations for certain investment advisory services to HCMFA "[o]n December 15, 2011" for "no consideration."  *Id.*, ¶ 59.  The Complaint also alleges that "[f]ollowing the transfer, it was HCMFA rather than HCMLP that received" investment advisory fees.  *Id.*  Further, the Complaint alleges that, starting in 2011, HCMLP loaned HCMFA millions of dollars but that Mr. Dondero caused HCMFA to enter into "multiple forbearances" preventing the loans' repayment.  *Id.*, ¶ 61.

These allegations make clear that the conduct giving rise to the breach of fiduciary duty claim relating to the "lifeboat scheme" began in 2011 or 2012, more than nine years before the Complaint was filed and well outside of the applicable four-year statute of limitations.  As a result, Count IV is time-barred.

*Fraudulent Transfers (Counts XIV, XXII, & XXIII).*  The Complaint also alleges that Mr. Dondero and Strand breached their fiduciary duties to HCMLP by, among other things (1) causing

16

the company to make "payments of at least $519,000 per year to Massand Capital from November 2014 through 2019" (Compl., ¶¶ 157, 260) and (2) causing HCMLP to make equity distributions "between 2010 and 2012 and 2015 and 2019" that were "for Dondero's and Okada's ultimate benefit" (*id.*, ¶¶ 131-132, 262, 311, 318). To the extent that this breach of fiduciary duty claim is based on payments and transfers that occurred more than four years before the Petition Date—prior to October 16, 2015—they are time-barred and should be dismissed.

*Civil Conspiracy (Count XVI).* For similar reasons, the Complaint's vague civil conspiracy allegation against Get Good—that it "conspired with Dondero to breach his fiduciary duties to HCMLP by intentionally siphoning assets away from HCMLP to evade HCMLP's creditors" (*see id.*, ¶ 271)—is time-barred because it relates to the supposed "lifeboat scheme," which began well outside the applicable four-year statute of limitations period. *Id.*, ¶ 271.[16]

### b. The LPA precludes the breach of fiduciary claims.

Counts IV, V, and XIV also fail because the LPA precludes those claims. Notably, the DRULPA permits a limited partnership to restrict or even eliminate all fiduciary duties by contract. 6 Del. C. §17-1101(d); *see also Brickell Partners v. Wise*, 794 A.2d 1, 3–4 (Del. Ch. 2001) ("principles of contract preempt fiduciary principles" where a limited partnership agreement governs fiduciary duties). Where, as here, "the limited partnership agreement unambiguously provides for fiduciary duties, any claim of a breach of fiduciary duty must be analyzed generally in terms of the partnership agreement." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170-71 (Del. 2002). Applying these principles to the fiduciary duty claims asserted

---

[16] Nor may the Court apply any tolling doctrine to any of the fiduciary duty-related claims because there is no allegation in the Complaint that a tolling doctrine should apply. *See Sivertson v. Citibank, N.A. as Trustee for Registered Holders of WAMU Asset-Backed Certificates WAMU Series No. 2007-HE2*, 390 F. Supp. 3d 769, 785 (E.D. Tex. 2019) ("A plaintiff seeking to avail itself of the discovery rule must plead the rule's application . . . ."); *Le Mieux Bros. Corp. v. Armstrong*, 91 F.2d 445, 446 (5th Cir. 1937) (same).

in the Complaint makes clear that those claims are unsustainable.

The Litigation Trustee alleges that Mr. Dondero and Strand breached their fiduciary duties to HCMLP by (1) "transferr[ing] HCMLP's valuable business to the lifeboat entities, including NexPoint and HCMFA"; (2) incurring liability to UBS, Acis, Terry, HarbourVest, the Crusader Funds, and the Redeemer Committee by managing HCMLP's business in a manner that resulted in potential or actual litigation liabilities; and (3) approving transfers of money and assets to Massand Capital and CLO Holdco and approving partnership distributions to various individuals and entities. *See* Compl., ¶¶ 187-213, 259-65. Notably, the Litigation Trustee does not allege that Mr. Dondero or Strand breached HCMLP's LPA by taking (or directing) any of these actions, nor could it. As set forth above, the HCMLP LPA granted Strand (by and through its officers, directors, representatives, and agents) the authority to:

- Form other entities and to contribute to those entities "assets and properties of the Partnership," as well as to engage in "business interests and activities in direct competition with the Partnership" (LPA, §§ 4.1(a)(xi), 4.1(f))—as Strand allegedly did in the "lifeboat scheme";

- Perform "any and all acts necessary or appropriate to the operation of any business of the Partnership," including taking out loans, incurring indebtedness, using the assets of the Partnership, determining whether to negotiate, execute, or perform contracts, and controlling "the conduct of any litigation" (*id.*, § 4.1(a)(ii), (v), (vi), (vii), (viii), & (xii)—as Strand allegedly did in relation to UBS, Acis, Terry, HarbourVest, the Crusader Funds, and the Redeemer Committee; and

- Distribute "Partnership cash or other assets" in its "sole and unfettered discretion" (*id.*, § 4.1(ix); *id.*, § 3.9(a))—as Strand did in approving transfers and distributions to Massand, CLO Holdco, and others.

In short, the LPA granted Strand, and Mr. Dondero as Strand's director, the broad authority to undertake each and every action that allegedly constituted a breach of their fiduciary duties.

Further, Section 4.1(i) of the LPA expressly limits the liability of the General Partner and those acting on its behalf. Specifically, that section states that "[n]either the General Partner nor its directors, officers, employees, agents, or representatives shall be liable to the Partnership or any

Limited Partner for errors in judgment or for any acts or omissions that do not constitute gross negligence or willful or wanton misconduct." LPA, § 4.1(i)(i).  The section also reiterates that the General Partner may "exercise any of the powers granted to it" under the LPA "either directly or by or through its directors, officers, employees, agents, or representatives" and states that "the General Partner *shall not be responsible for any misconduct or negligence on the part of any agent or representative appointed by the General Partner*." *Id.*, § 4.1(i)(ii).  Again, the Litigation Trustee has not even attempted to plead that Mr. Dondero or Strand took actions that were beyond their powers under the LPA, nor has the Trustee alleged that Mr. Dondero's actions amounted to "gross negligence or willful or wanton misconduct," as is required.  Under these circumstances, the breach of fiduciary duty claims must be dismissed.

### c.      Counts XV and XVI should be dismissed.

*Aiding and Abetting.*   In Count XV, the Litigation Trustee alleges that "Scott, CLO Holdco, DAF Holdco, DAF, Get Good, and Highland Dallas aided and abetted Dondero's breach of fiduciary duties relating to the CLO Holdco Transaction." Compl., ¶ 269.  This single-sentence allegation against Get Good is insufficient to state a claim against it for several reasons.  First, the allegation is conclusory and lumps several defendants together, which is impermissible.  *See Johnson v. E. Baton Rouge Fed'n of Teachers*, 706 F. App'x 169, 170 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 687) ("conclusory" allegations "will not be afforded the presumption of truth"); *Winslow*, 2017 WL 283281, at *2 (allegations must be made separately for "each defendant").

Second, the allegation is insufficient to state a claim against Get Good for aiding and abetting liability under Delaware law, which requires the Litigation Trustee to plead, at a minimum: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation by a non-fiduciary in the fiduciary's breach, and (4) damages proximately

caused by the breach. *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).[17] For the reasons set forth above, *see* Section IV.D.1.b, the Litigation Trustee has not adequately pleaded that Mr. Dondero breached any fiduciary duty to HCMLP in view of the language of the LPA, nor does the Litigation Trustee even attempt to plead Get Good's "knowing participation" in any breach of fiduciary duty in relation to the CLO Holdco Transaction. These failures are fatal to the claim against Get Good.

**Civil Conspiracy.** In Count XVI, the Litigation Trustee alleges that "Ellington, Leventon, NexPoint, HCMFA, SAS, Scott, CLO Holdco, DAF Holdco, DAF, Get Good, and Highland Dallas conspired with Dondero to breach his fiduciary duties to HCMLP by intentionally siphoning assets away from HCMLP to evade HCMLP's creditors." Compl., ¶ 271. The Complaint fails to adequately plead civil conspiracy for two core reasons.

First, as with the aiding and abetting claim, a civil conspiracy claim cannot survive if there is no viable underlying tort claim. Because the breach of fiduciary duty claims against Mr. Dondero fail, there can be no civil conspiracy liability for participating in a non-existent and deficiently pleaded tort.

Second, the Complaint fails to allege the requisite "meeting of the minds" by the supposed co-conspirators, which is required. *MVS Int'l Corp. v. Int'l Advertising Solutions, LLC*, 545 S.W.3d 180, 196 (Tex. App. 2017) (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)). In this regard, conclusory allegations are insufficient. Instead, there must be specific allegations demonstrating that the conspiring parties were "aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement" and specifically intended and agreed "to

---

[17] As noted above, Texas law does not recognize a claim for aiding and abetting breach of fiduciary duty. *See* Section IV.D.1.a, *supra* at n.15. The Litigation Trustee does not plead any allegations that would support a claim against Get Good for "knowing participation" in breach of fiduciary duty under Texas law.

accomplish something unlawful." *Id*. Agreeing to engage in any particular conduct or transaction is not enough; conspiracy "requires a specific intent to cause the intended injury." *In re Artho*, 587 B.R. 866, 885 (Bankr. N.D. Tex. 2018); *see also Chu v. Hong*, 249 S.W.3d 441, 447 (Tex. 2008) (same). The Kirschner Complaint makes no allegations of intent against Get Good and makes only conclusory allegations against Mr. Dondero. In the absence of specific allegations of the requisite intent, the conspiracy claim fails.

### 2. The Complaint's Declaratory Judgment Claims Are Insufficient

Counts VI-VIII and X seek declaratory judgment that Mr. Dondero, Strand, and Dugaboy are liable for HCMLP's debts in various capacities. In Count VI, the Litigation Trustee seeks declaratory judgment that Strand is liable to HCMLP in its capacity as general partner. Compl., ¶¶ 209-213. Count VII seeks declaratory judgment that Mr. Dondero is liable for Strand's debts as Strand's "alter ego." *Id.*, ¶¶ 214-219. Count VIII seeks declaratory judgment that Mr. Dondero is liable for HCMLP's debts as HCMLP's "alter ego." *Id.*, ¶¶220-223. And Count X seeks declaratory judgment that Dugaboy is liable for the debts of Mr. Dondero as his alter ego. *Id.*, ¶¶ 239-243. Each of these claims is deficient and should be dismissed.

***Count VI (Strand Liable as GP).*** As an initial matter, as the Delaware statute cited in the Complaint explains, the liabilities of a general partner to the partnership may be altered by the relevant partnership agreement, which is precisely what occurred here. *See* DRULPA, § 17-403(b) (cited in Compl., ¶ 210). Count VI makes no reference to HCMLP's LPA, Strand's liabilities pursuant to the LPA, or whether and to what extent the LPA supports a judgment that Strand should be liable for HCMLP's "liabilities" (none of which are specifically identified). Under these circumstances, the Complaint falls well short of alleging a plausible claim for relief against Strand.

***Count VII (Dondero Liable as Strand's Alter Ego).*** Count VII suffers from similar problems. Again, Mr. Dondero's liabilities as an acting officer and director of Strand are governed

by HCMLP's LPA—a document that Count VII simply ignores. But in addition, the allegations of Count VII fall short in several other respects.

Most notably, the claim fails to sufficiently allege facts that would support declaratory judgment that Mr. Dondero is Strand's alter ego. Under Delaware law, "to state a claim for piercing the corporate veil under an alter ego theory, [the plaintiff] must show (1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (dismissing alter ego claim where plaintiff failed to plead facts showing that corporation and shareholders operated as a single economic entity). The Litigation Trustee fails to adequately plead either element here.

There is no allegation that Mr. Dondero and Strand "operated as a single economic entity." Although the Complaint alleges in conclusory fashion that Strand was a "sham entity" that "did not observe corporate formalities," the most the Litigation Trustee can point to in this regard is that "Strand never held a board meeting" and that Strand rarely documented corporate action. *See* Compl., ¶¶ 216, 218. Neither of these facts, even if accepted as true, establish that Strand was a "sham" entity or a mere instrumentality for Mr. Dondero. Notably, the Litigation Trustee does not allege that Strand was required to document Board meetings, stockholder meetings, or even corporate actions, such that its failure to do so was improper. Nor does the Partnership Agreement appointing Strand as General Partner require such actions. Further, as the Complaint acknowledges, Mr. Dondero was Strand's sole director and sole owner, which would make any documentation of meetings with himself quite surprising, to say the least. In the absence of any allegation that Strand and Mr. Dondero operated as a single economic unit in a way that was somehow "unfair" or "unjust," Count VII is deficient and should be dismissed.

***Count VIII (Dondero & Strand Liable as HCMLP's Alter Ego).*** Count VIII likewise fails to set forth allegations sufficient to demonstrate that Mr. Dondero or Strand acted as HCMLP's alter ego. Again, the Complaint simply ignores that the relationships between Mr. Dondero, Strand, and HCMLP were governed by the LPA (as well as Strand's organizational documents filed with the Delaware Secretary of State), which more than suffice to establish that all three defendants observed corporate formalities. Nor does the Complaint point to any provisions of the LPA that were violated by Strand or Mr. Dondero in the conduct of HCMLP's affairs.

Further, the Complaint does not sufficiently allege that Mr. Dondero, Strand, and HCMLP acted as a "single economic entity." The most that the Complaint says is that Mr. Dondero "through Strand and as an officer of HCMLP, dominated and exercised total control over HCMLP," "failed to observe corporate formalities," and "did not distinguish between HCMLP and his personal interests and businesses." Compl., ¶ 221, 223. But these conclusory allegations are insufficient in the absence of specific examples or the allegation of other facts that make the conclusory statements plausible. The Complaint does not, for example, allege that Mr. Dondero or Strand commingled HCMLP's money with their own, shared bank accounts with HCMLP, used the partnership as their personal piggybanks, or did anything else to make them economically indistinguishable from HCMLP.[18]

***Count X (Dugaboy as Dondero's Alter Ego).*** The Kirschner Complaint's allegation against Dugaboy is even more specious. Not only does the Complaint fail to allege any of the elements of alter ego liability that would justify the declaratory judgment sought, it is unclear how

---

[18] The most the Complaint says about Strand is that it "listed HCMLP's headquarters as its business address." Compl., ¶ 223. Putting aside that this makes sense—Strand was the GP operating HCMLP's business—it falls well short of establishing that the two entities "operated as a single economic entity."

any entity could ever be an individual's alter ego. That legal theory makes no sense, finds no support in any case law, and should be rejected.

### 3. The Complaint Fails To Plead A Viable Conversion Claim

In Count XXV, the Litigation Trustee alleges that Mr. Dondero is liable for conversion. To state a claim for conversion, a plaintiff must plead (1) the plaintiff "owned or had possession of the property or entitlement to possession;" (2) the defendant "unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner;" and (3) resulting damages. *Gibson v. Wells Fargo Bank, N.A.*, 2016 WL 11755377, at *3 (N.D. Tex. June 9, 2016). The Complaint fails to plead these requisite elements.

Most notably, the Complaint fails to plead that Mr. Dondero "unlawfully and without authorization assumed and exercised control over the property." *See id.* at *3. At most, the Complaint surmises "on information and belief" that Mr. Dondero "directed Wick Phillips to withhold the . . . proceeds" rightfully due to HCMLP. Compl., ¶ 333. But the Complaint does not allege that Mr. Dondero's instruction was unlawful or unauthorized, or that Mr. Dondero ever assumed or exercised actual control of or ownership of the proceeds. To the contrary, the Complaint alleges that Wick Phillips, and subsequently two Cayman Islands entities, exercised that control. *Id.*, ¶¶ 329, 333.[19] The Complaint also fails to plead that HCMLP was actually entitled to payment of the proceeds at issue. In the absence of allegations supporting each element of the conversion claim, it should be dismissed.

---

[19] Although the Complaint alleges that Grey Royale Ltd., was "owned and controlled by Dondero and Ellington," *see* Compl., ¶ 333, that allegation, standing alone, does not permit a factfinder to ignore the corporate form and hold the owners of Grey Royale Ltd. liable for conversion.

### 4. The Litigation Trustee's Unjust Enrichment Claim Fails As A Matter Of Law

Count XXVI also should be dismissed because unjust enrichment is not an independent cause of action. *Redwood Resort Properties, LLC v. Holmes Co. Ltd.*, 2006 WL 3531422, at *8 (N.D. Tex. Nov. 27, 2006) ("Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits . . . Accordingly, the court holds that Redwood has failed to state an unjust enrichment claim on which relief can be granted, and it dismisses this action."); *accord Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) (affirming dismissal of unjust enrichment claim because it is "not a distinct cause of action itself"). Because unjust enrichment is not an independent cause of action, the Court should dismiss XXVI of the Complaint.

### 5. The Claims Seeking Disallowance Of Claims Are Moot

Count XXXIV seeks disallowance of the certain proofs of claim filed by Mr. Dondero, Dugaboy, and Get Good. *See* Compl., ¶¶ 379, 393. But each of the Proofs of Claim referenced in Counts XXXIV and XXXV have been disallowed or withdrawn by consent. *See* Dkt. Nos. 1510, 2965, 2966, 3007, 3008, 3009, 3010, 3190. Thus, the plaintiff's claim is moot. *See Lee By & Through MacMillan v. Biloxi Sch. Dist.*, 963 F.2d 837, 839 (5th Cir. 1992).

## V. CONCLUSION

The Court should dismiss all counts against the Dondero Defendants, either in whole or in part, because (1) the Court lacks subject matter under 28 U.S.C. § 1334 to adjudicate any of the non-core state-law claims, (2) the Litigation Trustee lacks standing to pursue many of the claims; (3) applicable statutes of limitations bar the claims either in whole or in part; and (4) the Complaint fails to sufficiently plead the requisite elements of the claims asserted.

Dated: March 23, 2022

DLA PIPER LLP (US)

*/s/ Amy L. Ruhland*
Amy L. Ruhland (Rudd)
Texas Bar No. 24043561
Amy.Ruhland@us.dlapiper.com
303 Colorado Street, Suite 3000
Austin, TX 78701
Tele: 512.457.7000

*Attorneys for Defendants James Dondero,*
*Dugaboy Investment Trust, Get Good Trust,*
*and Strand Advisors, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 23, 2022, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Amy L. Ruhland*
Amy L. Ruhland (Rudd)

WEST\298028059.4