Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau (*Admitted pro hac vice*)
Blaire Cahn (*Admitted pro hac vice*)
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
debra.dandeneau@bakermckenzie.com
blaire.cahn@bakermckenzie.com

*Counsel for Isaac Leventon*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,<br><br>Defendants. | Adv. Pro. No. 21-03076-sgj |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ............................................................................................... 2

ARGUMENT AND AUTHORITIES....................................................................................... 3

    I.    All Claims Against Leventon Must be Dismissed Due to Kirschner's Lack of Standing ....... 3

        A.    The Plan Did Not Adequately Preserve *Any* Specific State Law Claims........ 3

        B.    Kirschner Lacks Standing to Bring the Civil Conspiracy (Count XVI) and Aiding and Abetting or Knowing Participation in Breach of Fiduciary Duty (Count XXXIV) Claims. ............................................................................... 4

        C.    Because Leventon Is Not an Insider, Kirschner Lacks Standing to Assert *Any* Claims Against Leventon that Are Not Estate Claims. .................................. 4

        D.    Kirschner Lacks Standing to Bring Breach of Fiduciary Duty Claims (Count V), Thereby Also Defeating Kirschner's Derivative Civil Conspiracy (Count XVI) and Aiding and Abetting or Knowing Participation (Count XXXIV) Claims........................................................................................................ 6

        E.    The Assignment Agreement Is an Impermissible Modification of the Plan ... 7

    II.    All Claims Against Leventon Must Be Dismissed for Lack of Subject Matter Jurisdiction (Counts V, XVI, XXVII and XXXIV). ................................................................................... 9

    III.    The Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted as to All Claims Asserted Against Leventon. ............................................................................... 10

        A.    Kirschner Fails to State a Claim for Breach of Fiduciary Duty by Leventon Based on Alleged Conduct Resulting in HCMLP Liabilities to Third Parties (Count V)...................................................................................................... 10

            1.    Count V Fails to State a Claim Because Kirschner Asserts a Professional Negligence Claim Under the Guise of Breach of Fiduciary Duty. .............. 10

            2.    The Amended Complaint Fails to Allege Leventon Did Anything but Obey and Follow Lawful Client Instructions. ...................................................... 13

            3.    The Amended Complaint Cannot, as a Matter of Texas Law, Adequately Allege the Element of Harm, as Kirschner May Not Substitute his Assessment of Leventon's Legal Work for that of the Then-Client, HCMLP. .................................................................................................. 14

            4.    The Amended Complaint Fails to Plausibly Allege that Leventon's Conduct Caused HCMLP Damages........................................................................ 15

5.     The Amended Complaint Cannot Claim Breach of Fiduciary Duties for Allegedly Enabling Conduct Harmful to Creditors. ................................... 18

6.     The Amended Complaint Fails to Sufficiently Allege an Entitlement to Damages, as it Does Not Plausibly Allege "Willful or Wanton Misconduct" Necessary for Liability Under the Governing Partnership Agreement........ 19

B.     Kirschner Fails to State a Claim Against Leventon for Civil Conspiracy to Breach Fiduciary Duties (Count XVI). ......................................................... 20

    1.     As an Agent of HCMLP, Leventon Cannot Legally Conspire with Other Agents of HCMLP....................................................................................... 20

    2.     No Actionable Civil Conspiracy Exists Because the Amended Complaint Fails to Allege a "Meeting of the Minds" to Cause the Injury. ................... 21

    3.     Dismissal of Certain of the Dondero Fiduciary Duty Claims Also Requires Dismissal of Count XVI. .................................................................... 22

C.     Kirschner Fails to State a Claim for Unjust Enrichment or Money Had and Received Under Texas Law (Count XXVII)................................................. 22

    1.     Unjust Enrichment Is Not an Independent Claim Cognizable Under Texas Law. ....................................................................................................... 22

    2.     The Amended Complaint Fails to Sufficiently Allege What Money Leventon Received that Belongs to HCMLP. ............................................. 23

    3.     To the Extent the Amended Complaint Seeks to Recover Employee Compensation Governed by Contract, Kirschner's "Money Had and Received" Claim Fails Under Texas Law. .................................................. 23

D.     Kirschner Fails to State a Claim for Aiding and Abetting or Knowing Participation in a Breach of Fiduciary Duty (Count XXXIV) ...................... 24

CONCLUSION AND REQUESTED RELIEF .......................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adidas Am. Inc. v. Shoebacca Ltd.*,
  3:20-CV-03248-N, 2021 U.S. Dist. LEXIS 183828, 2021 WL 4399745 (N.D.
  Tex. Sept. 27, 2021) ................................................................................................................. 20

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
  580 S.W.3d 136 (Tex. 2019) ..................................................................................................... 7

*Alberta Energy Partners v. Blast Energy Servs. (In re Blast Energy Servs.)*,
  593 F.3d 418 (5th Cir. 2010) ..................................................................................................... 8

*In re Artho*,
  587 B.R. 866 (Bankr. N.D. Tex. 2018) ................................................................................... 22

*Assure Re Intermediaries, Inc. v. W. Surplus Lines Agency, Inc.*,
  No. 1:20-CV-189-H, 2021 U.S. Dist. LEXIS 110090 (N.D. Tex. 2021) ......................... 22, 23

*Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*,
  266 F.3d 388 (5th Cir. 2001) ................................................................................................... 10

*Bates Energy Oil & Gas v. Complete Oilfield Servs.*,
  361 F. Supp. 3d 633 (W.D. Tex. 2019) ................................................................................... 23

*Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*,
  284 S.W.3d 416 (Tex. App.—Austin 2009, no pet.) ......................................................... 12, 13

*Border Demolition & Entvl., Inc. v. Pineda*,
  535 S.W.3d 140 (Tex. App.—El Paso 2017, no pet.) .............................................................. 12

*Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Group, Inc.)*,
  336 F.3d 94 (2d Cir. 2003) ...................................................................................................... 19

*Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification
  Beams Sys., LLC*,
  556 B.R. 815 (W.D. Tex. 2017) ............................................................................................... 19

*Cent. Tex. Express Metalwork v. Chavez*,
  No. 2:20-CV-193, 2021 U.S. Dist. LEXIS 159150 (S.D. Tex. 2021) ..................................... 25

*Charles v. Tamez*,
  878 S.W.2d 201 (Tex. App.—Corpus Christi 1994, writ denied) ........................................... 15

*Chu v. Hong*,
  249 S.W.3d 441 (Tex. 2008) ................................................................................................... 22

*De Montaigu v. Ginther (In re Ginther Trs.)*,
 Nos. 98-32663-11, 06-3556, 2006 Bankr. LEXIS 3676 (Bankr. S.D. Tex.
 2006) .............................................................................................................9

*Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*,
 540 F.3d 351 (5th Cir. 2008) ...............................................................3, 4

*Edwards v. Dunlop-Gates*,
 344 S.W.3d 424 (Tex. App.—El Paso 2011, pet. denied) ......................14

*Fink v. Anderson*,
 477 S.W.3d 460 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ...........21

*Finova Capital Corp. v. Lawrence*,
 No. 399CV2552-M, 2000 WL 1808276 (N.D. Tex. Dec. 8, 2000).........19

*Fortune Prod. Co. v. Conoco, Inc.*,
 52 S.W.3d 671 (Tex. 2000)......................................................................23

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
 817 A.2d 160 (Del. 2002) ........................................................................19

*Graham v. Pazos De La Torre*,
 821 S.W.2d 162 (Tex. App.—Corpus Christi-Edinburg 1991, writ denied) ..........................20

*Highland Capital Mgmt. Fund Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*,
 Civil Action No. 3:21-CV-1895-D, 2022 U.S. Dist. LEXIS 15648 (N.D. Tex.
 2022) .............................................................................................................8

*Hunter v. Berkshire Hathaway, Inc.*,
 829 F.3d 357 (5th Cir. 2016) .....................................................................7

*III Forks Real Estate, L.P. v. Cohen*,
 228 S.W.3d 810 (Tex. App.—Dallas 2007, no pet.)................................20

*Isaacs v. Schleier*,
 356 S.W.3d 548 (Tex. App.—Texarkana 2011, pet. denied) ............11, 14

*Jacobs v. Meghji*,
 C.A. No. 2019-1022-MTZ, slip op. (Del. Ch. Oct. 8, 2020) ..................25

*Latitude Sols., Inc. v. DeJoria*,
 922 F.3d 690 (5th Cir. 2019) ...................................................................18

*Marshall v. Ribosome LP*,
 2019 WL 2041062 (Tex. App.—Houston [1st Dist.] May 9, 2019, no pet.)..........................24

iv

*McLaughlin v. Martin*,
  940 S.W.2d 261 (Tex. App.—Houston [14th Dist.] 1997, no writ) ........................................14

*Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*,
  999 F.3d 970 (5th Cir. 2021) ................................................................................................22

*Morrison v. Berry*,
  C.A. No. 12808-VCG, 2020 Del. Ch. LEXIS 200 (Del. Ch. June 1, 2020) ...........................25

*Murphy v. Gruber*,
  241 S.W.3d 689 (Tex. App.—Dallas 2007, pet. denied) .......................................................13

*MVS Int'l Corp. v. Int'l Advert. Sols., LLC*,
  545 S.W.3d 180 (Tex. App.—El Paso 2017, no pet.) .............................................................21

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*,
  511 F. Supp. 2d 742 (S.D. Tex. 2005) ..............................................................................18, 19

*Official Stanford Investors Comm. v. Greenberg Traurig, LLP*,
  2014 WL 12572881 (N.D. Tex. Dec. 17, 2014) (Godbey, J.) ...................................11, 12, 13

*Reneker v. Offill*,
  2009 WL 804134 (N.D. Tex. Mar. 26, 2009) ........................................................................18

*Rodgers v. Colin-G Props., Ltd.*,
  Civil Action No. 3:12-CV-4831-L, 2013 U.S. Dist. LEXIS 119744 (N.D. Tex.
  2013) .......................................................................................................................................8

*Rogers v. Zanetti*,
  518 S.W.3d 394 (Tex. 2017) .................................................................................................16

*In re Segerstrom*,
  247 F.3d 218 (5th Cir. 2001) ...........................................................................................14, 15

*Shearson Lehman Hutton, Inc. v. Wagoner*,
  944 F.2d 114 (2d Cir. 1991) .............................................................................................18, 19

*Taylor v. Scheef & Stone, LLP*,
  No. 3:19-CV-2602-D, 2020 WL 4432848 (N.D. Tex. July 31, 2020) ........................15, 16, 17

*United States Brass Corp. v Travelers Ins. Group, Inc. (In re United States Brass
  Corp.)*,
  301 F.3d 296 (5th Cir. 2002) .................................................................................................8

*West Ford Advisors, LLC v. Sungard Consulting Servs., Inc.*,
  437 S.W.3d 917 (Tex. App.—Dallas 2014, pet. denied) ........................................................22

*Wolf v. Ramirez*,
622 S.W.3d 126 (Tex. App.—El Paso 2020, no pet.)................................................................14

*Won Pak v. Harris*,
313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied)............................................10, 11, 13

*Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*,
714 F.3d 860 (5th Cir. 2013) .................................................................................................3

*Zuniga v. Groce, Locke & Hebdon*,
878 S.W.2d 313 (Tex. App.—San Antonio 1994, writ ref'd.) ................................................15

**Statutes**

11 U.S.C. § 11...........................................................................................................................2

11 U.S.C. § 101(31)...................................................................................................................6

11 U.S.C. § 101(31)(C)..............................................................................................................5

11 U.S.C. § 101(31)(E)...............................................................................................................5

11 U.S.C. § 1122........................................................................................................................8

11 U.S.C. § 1123........................................................................................................................8

11 U.S.C. § 1127(b)................................................................................................................8, 9

28 U.S.C. § 1334......................................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)..............................................................................................................1

Fed. R. Civ. P. 12(b)(6)..............................................................................................................2

## BRIEF IN SUPPORT OF DEFENDANT LEVENTON'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant Isaac Leventon hereby files his brief in support of the *Motion to Dismiss the Amended Complaint* (the "***Motion***")[1], and respectfully states as follows:

### PRELIMINARY STATEMENT

1.      Nothing in the Amended Complaint cures the serious deficiencies evident in the initial pleading. The Amended Complaint confirms that Isaac Leventon has no place in this case, and all claims against him require dismissal as a matter of law.

2.      The Amended Complaint lodges four claims against Leventon: Counts V for breach of fiduciary duty, XVI for civil conspiracy to breach fiduciary duty, XXVII for unjust enrichment or money had and received, and a new Count XXXIV for aiding and abetting or knowing participation in a breach of fiduciary duty.

3.      First and foremost, Kirschner lacks standing to bring any claims against Leventon because the claims were not adequately preserved under the Plan. Even if preserved, the claims are not "Estate Claims" (the only claims Kirschner has authority to pursue under the Plan), as Leventon is not and never has been an insider of HCMLP. Moreover, the Assignment Agreement (as defined below) upon which Kirschner now relies (for the first time in the Amended Complaint) does not confer standing because the purported assignment from the Claimant Trust to the Litigation Sub-Trust is an impermissible modification of the Plan. The Court also lacks subject matter jurisdiction to preside over the claims. For all of these reasons, Rule 12(b)(1) requires dismissal of all claims asserted against Leventon.

---

[1] On January 18, 2022, Leventon filed the *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants* [Adv. Proc. Dkt. 27]. Such motion remains pending a decision by the District Court. Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion or in the Amended Complaint [Dkt. 2934], and docket number identifications refer to Case No. 19-34054-sgj11 (the "***Bankruptcy Case***").

4.      In addition, all claims against Leventon should be dismissed for failure to state claims upon which relief may be granted under Rule 12(b)(6). The Amended Complaint asserts nothing more than conclusory allegations of guilt-by-association with the former leadership of HCMLP, alleging that Leventon merely drafted documents and performed other customary in-house counsel activities, all at the direction of HCMLP's then authorized leadership and in his role as an employee (not an officer) of HCMLP. Without more, Kirschner's claims against Leventon amount to no more than new management's efforts to make in-house counsel an insurer of old management's litigation losses.

**RELEVANT BACKGROUND**

5.      Leventon was employed by HCMLP from September 21, 2009 until January 2021, and served as Assistant General Counsel from 2011 until 2021. Dkt. 2869 ¶ 7; Am. Compl. ¶ 20.

6.      On October 16, 2019, HCMLP filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On February 22, 2021, the Bankruptcy Court confirmed the Plan [Dkt. 1808] pursuant to the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Dkt. 1943].

7.      The "Effective Date" of the Plan occurred on August 11, 2021. *Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization* [Dkt. 2700]. The Plan established two trusts established to assert post-confirmation causes of action: (1) the Claimant Trust and (2) the Litigation Sub-Trust. The Plan transferred all causes of action other than "Reorganized Debtor Assets" from the Debtor to the Claimant Trust on the Effective Date. *See* Plan § IV.B; Claimant Trust Agreement §§ 2.2, 2.3 [Dkt. 1811-2].[2] Under the Plan, the Claimant Trust then transferred only "Estate Claims" to the Litigation Sub-Trust. *See* Plan § IV.B.;

---

[2] *See* Plan, Definition of "Claimant Trust Assets" (expressly carving out "Reorganized Debtor Assets" from the definition); Plan, Definition of "Reorganized Debtor Assets." Only the Reorganized Debtor has standing to assert a cause of action that is considered a Reorganized Debtor Asset.

Litigation Sub-Trust Agreement, § 2.3 [Dkt. 1811-4]. Since the Effective Date, the Plan has been substantially consummated. *See Appellee's Motion to Dismiss Appeal as Equitably Moot*, pp. 11-14, Fifth Cir. Case No. 21-10449 [Doc. No. 00516045149].

8.      On October 15, 2021, Kirschner commenced this Adversary Proceeding. On May 19, 2022, Kirschner filed the Amended Complaint.

## ARGUMENT AND AUTHORITIES

**I.      All Claims Against Leventon Must be Dismissed Due to Kirschner's Lack of Standing**

> **A.      The Plan Did Not Adequately Preserve *Any* Specific State Law Claims.**

9.      A plan must be "specific and unequivocal" in identifying causes of action that a debtor intends to preserve and pursue post-confirmation. *See Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*, 714 F.3d 860, 864 (5th Cir. 2013) (citing *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355-56 (5th Cir. 2008)). Such reservation is a prerequisite to Kirschner's standing and a jurisdictional requirement that is separate from the issue of the court's subject matter jurisdiction to preside over the claims. *See United Operating*, 540 F.3d at 354-55 ("Standing is a jurisdictional requirement, and we are obliged to ensure it is satisfied regardless whether the parties address the matter").

10.      Blanket statements purporting to reserve "any and all" causes of action do not meet the required level of specificity. *Id*. The Fifth Circuit explained that "a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation." *Id*. at 355. Proper notice "allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it," and, "absent 'specific and unequivocal' retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote." *Id*. (quoting *In re Paramount Plastics, Inc.*, 172 B.R. 331, 334 (Bankr. W.D. Wash. 1994)).

11.     Attached as Exhibit DD to the *Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, dated as of February 1, 2021 [Dkt. 1875], is the "Schedule of Retained Causes of Action." This schedule—a generic laundry list of claims that may be asserted post-confirmation, with a 17-page list of potential defendants—is tantamount to the "any and all claims" language rejected by the Fifth Circuit in *United Operating*. 540 F.3d at 356. Pursuant to this precedent, all state law claims in the Amended Complaint must be dismissed, as they were not preserved.

**B.    Kirschner Lacks Standing to Bring the Civil Conspiracy (Count XVI) and Aiding and Abetting or Knowing Participation in Breach of Fiduciary Duty (Count XXXIV) Claims.**

12.     Even if the Schedule of Retained Causes of Action adequately preserved Kirschner's right to assert certain state law claims, it did not expressly include civil conspiracy (Count XVI) or "aiding and abetting or knowing participation in breach of fiduciary duty" (Count XXXIV). Accordingly, these claims must be dismissed, as they were not preserved.

**C.    Because Leventon Is Not an Insider, Kirschner Lacks Standing to Assert *Any* Claims Against Leventon that Are Not Estate Claims.**

13.     Kirschner also lacks standing to assert ***any*** of the causes of action asserted against Leventon because Leventon is not an insider against whom Estate Claims may be brought.

14.     Pursuant to the Plan, the Litigation Sub-Trust Agreement, and the Claimant Trust Agreement, the Litigation Sub-Trust has no standing to pursue *non*-Estate Claims. *See* Plan § IV.B ("Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims."); Claimant Trust Agreement § 2.3 ("The Claimant Trust shall retain all rights to commence and pursue all Causes of Action of the Debtor ***other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee*** pursuant to the terms of the Litigation Sub-Trust Agreement, and (ii) Causes of Action constituting Reorganized Debtor Assets") (emphasis added); Litigation Sub-Trust

4

Agreement § 2.2 ("The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to *any Estate Claim*.") (emphasis added).

15. The Plan incorporates Dkt. 354 (the "*Final Term Sheet*"), which defines "Estate Claims" as "any and all estate claims and causes of action against Mr. Dondero, Mr. Okada, other insiders of the Debtor, and each of the Related Entities . . . ." Am. Compl. ¶ 36. An Estate Claim cannot be asserted against Leventon, as he is neither an insider of the Debtor nor a Related Entity.

16. Because the Debtor is organized as a partnership, insider status is determined by section 101(31)(C) or section 101(31)(E) of the Bankruptcy Code. Section 101(31)(C) provides that an "insider" of a debtor partnership includes a (1) general partner in the debtor; (2) relative of a general partner in, general partner of, or person in control of the debtor; (3) partnership in which the debtor is the general partner; (4) general partner of the debtor; or (5) person in control of the debtor. Leventon cannot be considered an insider of HCMLP pursuant to section 101(31)(C) because, at all relevant times, (1) Strand was the general partner of HCMLP (Am. Compl. ¶ 14), and Leventon is not alleged to be (2) a relative of Strand or Dondero, (3) a partnership in which HCMLP is a general partner, (4) a "general partner of" HCMLP, or (5) a "person in control of" HCMLP.

17. Pursuant to section 101(31)(E), an insider of a debtor also means an "affiliate, or insider of an affiliate as if such affiliate were the debtor." Leventon is not an insider of HCMLP under this definition either because the Amended Complaint does not allege—nor could it—that Leventon is an insider of any affiliate of HCMLP. Nor is Leventon one of the "Related Entities." Exhibit D to the Final Term Sheet defines that term, in relevant part, as "(v) any relative . . . of Mr. Dondero or Mr. Okada . . . [or] (vii) any entity or person that is an insider of the Debtor under

5

section 101(31) of the Bankruptcy Code . . . ." The Amended Complaint does not allege that Leventon fits any of those roles. Finally, Schedule C to the Final Term Sheet identifies all natural persons covered under the definition of Related Entities, but does not include Leventon. [Dkt. 354, Ex. D, Schedule C].[3]

> **D. Kirschner Lacks Standing to Bring Breach of Fiduciary Duty Claims (Count V), Thereby Also Defeating Kirschner's Derivative Civil Conspiracy (Count XVI) and Aiding and Abetting or Knowing Participation (Count XXXIV) Claims.**

18.     Kirschner also lacks standing to bring the breach of fiduciary duty claim against Leventon (Count V) because the claim constitutes part of the Reorganized Debtor Assets, which only the Reorganized Debtor may pursue. In turn, Kirschner lacks standing to bring the derivative torts of civil conspiracy (Count XVI) and aiding and abetting or knowing participation (Count XXXIV), each of which necessarily requires an underlying breach of fiduciary duty (which Kirschner cannot assert). Specifically, the Plan provides that the Reorganized Debtor will administer "Reorganized Debtor Assets," Plan § IV.A, which expressly ***include*** breach of fiduciary duty claims.[4] The Plan then expressly ***excludes*** those Reorganized Debtor Assets from the assets transferred to the Claimant Trust.[5] Therefore, Kirschner lacks standing to bring "claims for breach

---

[3] Throughout the docket in the Bankruptcy Case, HCMLP acknowledges that Leventon is not an insider. HCMLP filed the above-cited Schedule C (listing all individual insiders) three times without including Leventon. Dkt. 281-1, 354, and 466. The Debtor's Statement of Financial Affairs lists all payments to insiders for one year prior to filing for bankruptcy; it includes salary payments to officers of Strand, but does not include payment of Leventon's salary. Dkt. 248 at Ex. C to SOFA #4. HCMLP filed an exhibit with a "complete list of individual persons listed as Insiders," but did not include Leventon. Dkt. 848-1 at Ex. A, p.5. Finally, HCMLP's Monthly Operating Reports, each signed by post-Dondero management, included salary payments to insiders that also were HCMLP employees, but did not include such payments to Leventon. Dkt. 800, 913, 1014, 1115, 1329, 1493, 1710, 1949, and 2030.

[4] "Reorganized Debtor Assets" means, in relevant part, "any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action ***(including, without limitation, claims for breach of fiduciary duty)***, that, for any reason, are not capable of being transferred to the Claimant Trust." *See* Plan, Definition of "Reorganized Debtor Assets" (emphasis added).

[5] "Claimant Trust Assets" means "(i) ***other than the Reorganized Debtor Assets (which are expressly excluded from this definition)***, all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC. For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of

of fiduciary duty," as they remained with the Reorganized Debtor, were not transferred to the Claimant Trust, and could not have been assigned to the Litigation Sub-Trust. Derivative torts to the breach of fiduciary duty claim, namely civil conspiracy and aiding and abetting or knowing participation, are "connected to the underlying tort and survive[] or fail[] alongside it." *See Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019); *see also Hunter v. Berkshire Hathaway, Inc.*, 829 F.3d 357, 365 (5th Cir. 2016) (dismissing plaintiffs' "derivative participation claim" when plaintiff did not sufficiently plead the underlying breach claim). In the absence of standing to assert the breach of fiduciary duty claim, Kirschner also lacks standing to bring the civil conspiracy and aiding and abetting or knowing participation claims.

### E.    The Assignment Agreement Is an Impermissible Modification of the Plan

19.    Kirschner incorrectly contends that "[a]ll of the claims asserted in this Amended Complaint belong to the Litigation Sub-Trust." Am. Compl. ¶ 37. Kirschner presumably is relying upon that certain Assignment Agreement, dated October 8, 2021, by and between the Claimant Trust and the Litigation Sub-Trust, which purported to transfer and assign any and all causes of action not previously assigned by operation of the Plan, or otherwise, from the Claimant Trust to the Litigation Sub-Trust (the "***Assignment Agreement***"). *Id*. The Assignment Agreement, however, constitutes an impermissible modification of the Plan, and, therefore, any assignment of claims from the Claimant Trust to the Litigation Sub-Trust was ineffective. Moreover, because the Reorganized Debtor is not even a party to the Assignment Agreement, that document could not possibly have had the effect of assigning the Reorganized Debtor Assets.

20.    Under the Bankruptcy Code, "the proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan ***and before substantial***

---

being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets." *See* Definition of "Claimant Trust Assets" (emphasis added).

*consummation of such plan*, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title." 11 U.S.C. § 1127(b) (emphasis added). Once a plan of reorganization is substantially consummated, it may not be modified. *United States Brass Corp. v Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 307-08 (5th Cir. 2002) ("[Section 1127(b)] operates to prohibit modification once 'substantial consummation' has occurred."); *Alberta Energy Partners v. Blast Energy Servs. (In re Blast Energy Servs.)*, 593 F.3d 418, 427 n.8 (5th Cir. 2010) (Section 1127(b) "operates to prohibit *any* modification after substantial consummation"); *see also Rodgers v. Colin-G Props., Ltd.*, Civil Action No. 3:12-CV-4831-L, 2013 U.S. Dist. LEXIS 119744, at *19 (N.D. Tex. 2013) (same). As the Fifth Circuit noted in *Blast Energy*, "Section 1127(b) of the Bankruptcy Code—which provides that the debtor or proponent of a confirmed reorganization plan may modify the plan *before* it has been substantially consummated—is 'the sole means for modification of the plan of reorganization after it has been confirmed.'" *Id.* at 427 (citing *In re Brass*, 301 F.3d at 306-08). Here, the Plan was substantially consummated by at least October 6, 2021—*before* the Assignment Agreement was executed. *See Appellee's Motion to Dismiss Appeal as Equitably Moot*, pp. 11-14, Fifth Cir. Case No. 21-10449 [Doc. No. 00516045149]. The only issue, then, is whether the Assignment Agreement is an attempted modification of the Plan—*and it clearly is*.

21.     The Fifth Circuit holds that any alteration of parties' "rights, obligations, and expectations" under a plan of reorganization that was not "specifically contemplated and negotiated by the parties at confirmation" constitutes a plan modification. *See United States Brass*, 301 F.3d at 308-309; *cf. Highland Capital Mgmt. Fund Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, Civil Action No. 3:21-CV-1895-D, 2022 U.S. Dist. LEXIS 15648, at *5 (N.D. Tex. 2022) (holding that a bankruptcy order did *not* alter the parties'

rights, obligations, and expectations because its proposed actions *were* "specifically contemplated" by the plan). An attempt to change the party with standing to pursue claims under a plan constitutes a modification prohibited under section 1127(b). *See De Montaigu v. Ginther (In re Ginther Trs.)*, Nos. 98-32663-11, 06-3556, 2006 Bankr. LEXIS 3676, at *35 (Bankr. S.D. Tex. 2006).

22.     At the Effective Date, the Plan only permitted the Litigation Trustee to bring Estate Claims. The Plan clearly contemplated at confirmation that the Claimant Trust might *initiate* actions that are ***not*** Estate Claims. *See* Plan § IV.B.1 (expressly providing that "[t]he Claimant Trustee ***shall be the exclusive trustee of the Claimant Trust Assets, excluding the Estate Claims***") (emphasis added); *accord id.* § IV.B.10 (stating that the "***[t]he Claimant Trustee shall have the exclusive right***, on behalf of the Claimant Trust, ***to institute***, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw ***any and all Causes of Action included in the Claimant Trust Assets (except for the Estate Claims) . . .*** [and] ***the Litigation Trustee shall have the exclusive right to institute***, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all ***Estate Claims*** included in the Claimant Trust Assets . . .") (emphasis added). The Plan language contains a clear division of rights as between the Litigation Sub-Trust and the Claimant Trust—the Litigation Sub-Trust can ***only*** pursue Estate Claims and nothing more, while the Claimant Trust retains the sole right to assert all other causes of action, except those that constitute Reorganized Debtor Assets. Any alteration of these expectations following substantial consummation of the Plan constitutes an impermissible plan modification.

## II.     All Claims Against Leventon Must Be Dismissed for Lack of Subject Matter Jurisdiction (Counts V, XVI, XXVII and XXXIV).

23.     The arguments set forth in the Former Employee Defendants' Brief in Support of Motion to Withdraw the Reference [Adv. Proc. Dkt. 28] (the "***Motion to Withdraw Brief***") and their Reply in support thereof [Adv. Proc. Dkt. 108] (the "***Motion to Withdraw Reply***") explain

why the Court lacks subject matter jurisdiction over the claims against Leventon. Leventon hereby incorporates section II(A) of the Motion to Withdraw Brief, section I of the Motion to Withdraw Reply, section I of the *Objection to Report and Recommendation* [Case No. 22-cv-00203, Dkt. 16], and section I of the *Reply in Support of Objection to Report and Recommendation* [*Id.* at Dkt. 29], for all purposes. Accordingly, under binding Fifth Circuit precedent in *Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388 (5th Cir. 2001) and its progeny, no jurisdiction exists under 28 U.S.C. § 1334, and the claims must be dismissed.

### III. The Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted as to All Claims Asserted Against Leventon.

#### A. Kirschner Fails to State a Claim for Breach of Fiduciary Duty by Leventon Based on Alleged Conduct Resulting in HCMLP Liabilities to Third Parties (Count V).

##### 1. Count V Fails to State a Claim Because Kirschner Asserts a Professional Negligence Claim Under the Guise of Breach of Fiduciary Duty.

24. The Amended Complaint acknowledges that Leventon was merely an employee in HCMLP's legal team, not an officer or director; as such, his only alleged fiduciary duty arises from his provision of legal services as an in-house attorney. Am. Compl. ¶¶ 20, 202. Because Kirschner's allegations sound in professional negligence (*i.e.*, legal malpractice) and also fail to plausibly allege that Leventon obtained an improper, direct benefit as a result of the transactions at issue, Kirschner fails to state a breach of fiduciary duty claim for which relief may be granted.

25. To prevail on a breach of fiduciary duty claim against an attorney, Texas courts have adopted an "anti-fracturing rule," which prevents plaintiffs from converting professional negligence claims against an attorney into other claims, such as breach of fiduciary duty. *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied). As explained by the Dallas Court of Appeals, this rule is important because, "[e]ven if a complaint implicates a lawyer's fiduciary duties, it does not necessarily follow that such a complaint is actionable apart from a

negligence claim." *Won Pak*, 313 S.W.3d at 458; *see also Isaacs v. Schleier*, 356 S.W.3d 548, 559-560 (Tex. App.—Texarkana 2011, pet. denied) (attorney's alleged failure to disclose that he represented both sides of a real estate transaction sounded in negligence, not fiduciary duty). This Court must look beyond mere labels in the Amended Complaint and determine, *as a question of law*, whether the "gravamen" of the allegations sound in negligence because they focus on "the quality or adequacy of the attorney's representation," or, in contrast, whether the "gravamen" of the allegations sound in fiduciary duty because they focus on "the attorney obtain[ing] an improper benefit from representing the client . . . ." *Won Pak*, 313 S.W.3d at 457 ("Whether certain allegations asserted against an attorney and labeled as breach of fiduciary duty or fraud are actually claims for professional negligence is a question of law to be determined by the court"); *Official Stanford Investors Comm. v. Greenberg Traurig, LLP*, 2014 WL 12572881, at *6 (N.D. Tex. Dec. 17, 2014) (Godbey, J.).

26.     *Won Pak v. Harris* is instructive on the factual situation before the Court. 313 S.W.3d at 457-58. In that case, an attorney represented Sun Tec and multiple investors in a merger transaction to be accomplished via a new Texas limited partnership. Shortly after Sun Tec assigned its service contracts to the new partnership, the investors used their powers as general partner to exclude Sun Tec's owners, thereby stripping away future profits. Sun Tec's owners sued the attorney, alleging conspiracy, failure to disclose material information, divided loyalties, and fraud. *Id*. at 458. In affirming the trial court's dismissal of the claims as sounding in negligence only, the Dallas Court of Appeals held that "the heart of [the] complaint is [the] alleged failure to provide adequate legal representation by his failure to properly inform, advise, and communicate with [plaintiffs]. As such, we conclude the gist of [the] allegations involves the quality of [the] representation rather than the integrity and fidelity of the attorney." *Id*.

11

27.     Similarly here, the conduct allegations specific to Leventon in Count V concern quality of the legal representation and failure to adequately inform or advise the client, or others on behalf of the client, of a conflict of interest. *See, e.g.*, Am. Compl. ¶ 207 (alleged postpetition failure to disclose transfer made to an entity years earlier); ¶ 210 (allegedly deficient trial testimony); ¶¶ 211-12 (allegedly "took the steps necessary to consummate the transactions" and "assisted in the drafting and execution of the agreement" that effected a transfer); and ¶ 213 ("'providing direction' to keep the Redeemer Committee in the dark" about Dondero's alleged scheme). These allegations sound in negligence, and, as a result, the claim must be dismissed. *Border Demolition & Entvl., Inc. v. Pineda*, 535 S.W.3d 140, 159-60 (Tex. App.—El Paso 2017, no pet.); *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.— Austin 2009, no pet.).

28.     The claim also must be dismissed because the Amended Complaint fails to allege that Leventon obtained an improper, direct pecuniary benefit from the transactions whereby he allegedly breached his fiduciary duty. Kirschner vaguely alleges that Leventon benefited from "faithfully serving Dondero's interest" through his compensation (Am. Compl. ¶ 204), but Kirschner never ties Leventon's compensation to any of the transactions. Kirschner's allegation that Leventon "indirectly" benefited by merely continuing to receive his normal pay for serving as in-house counsel during the time of the relevant transactions (*see* Am. Compl. ¶¶ 204, 372) fails under settled law and does not constitute an "improper benefit" sufficient to make out a breach of fiduciary duty claim. *Official Stanford Investors Committee*, 2014 WL 12572881, at *6 (law firm's work "in order to assure its continued employment by Stanford … does not allege an improper pecuniary interest supporting a conflict of interest; rather, it alleges the same general interest in getting paid that underlies every legal representation, an interest that Texas courts have

consistently found insufficient to support a claim for breach of fiduciary duty"). Kirschner also alleges that an entity unrelated to HCMLP made payments "to compensate Ellington and Leventon for the amounts that would have been paid to them in 2020 but for the Committee's objection." Am. Compl. ¶ 171. The transactions that form the basis of Count V in the Amended Complaint occurred pre-bankruptcy, and, therefore, cannot be connected to the 2020 payments. Additionally, the payments are not an "improper benefit" as a matter of law because they were ordinary compensation due to be paid and promised by HCMLP to be paid. It is not plausible for the Court to leap from (a) Leventon being promised his normal pay for serving as in-house counsel to HCMLP in 2019 (*after* the occurrence of the events alleged in support of Count V), to (b) alleged payment of that compensation by an entity unrelated to HCMLP in 2020 (even more years after the events allegedly occurred) to (c) such compensation being both improper **and** a direct benefit arising from such earlier transactions. Even Kirschner does not attempt to connect those dots. The Amended Complaint does not plead (nor could it), that Leventon received a direct benefit from any of the transactions alleged in Count V, and the payments as alleged by Kirschner amount to nothing more than normal compensation. *Official Stanford Investors Committee*, 2014 WL 12572881, at *6 (dismissing a fiduciary duty claim against a law firm that allegedly was "aware to a substantial degree of Stanford's misconduct, yet nevertheless continued to provide legal services that ultimately contributed to the proliferation and success of the underlying scheme" when the law firm's only benefit was continued employment compensation).[6]

> 2. *The Amended Complaint Fails to Allege Leventon Did Anything but Obey and Follow Lawful Client Instructions.*

29. The Amended Complaint states that Leventon performed all of the conduct alleged

---

[6] See also *Won Pak*, 313 S.W.3d at 458 (favoring obtaining one's own legal fees, even over the client's interests, is not sufficient to convert a negligence claim to a fiduciary duty claim); *Murphy v. Gruber*, 241 S.W.3d 689, 692-93 (Tex. App.—Dallas 2007, pet. denied) (same); *Beck*, 284 S.W.3d at 433 (expectation of compensation cannot convert a negligence claim into a fiduciary duty claim).

in support of the breach of the fiduciary duty claim (Count V) at the instruction of Dondero, the founder and head of HCMLP and Leventon's client representative, while serving as in-house counsel for HCMLP. Compl. ¶¶ 204-207, 211-216. Notably, however, the Amended Complaint fails to allege that Dondero's instructions constituted a breach of the Fourth Amended and Restated Agreement of Limited Partnership of HCMLP (the "***Fourth LPA***") [Adv. Proc. No. 21-03003-sgj, Dkt. 109-8.]. Texas law is well-established that an attorney cannot be liable for malpractice if they obey and follow a client's lawful instruction. *See Edwards v. Dunlop-Gates*, 344 S.W.3d 424, 433 (Tex. App.—El Paso 2011, pet. denied); *Isaacs*, 356 S.W.3d at 559; *see also Wolf v. Ramirez*, 622 S.W.3d 126, 142 (Tex. App.—El Paso 2020, no pet.) (attorneys have "the duty to follow the client's instructions" as part of their fiduciary duty of integrity and fidelity).

> 3. *The Amended Complaint Cannot, as a Matter of Texas Law, Adequately Allege the Element of Harm, as Kirschner May Not Substitute his Assessment of Leventon's Legal Work for that of the Then-Client, HCMLP.*

30. The Fifth Circuit has rejected post-hoc attempts such as those employed by Kirschner in the Amended Complaint to substitute a trustee's judgment for that of the then-client. *In re Segerstrom*, 247 F.3d 218, 226 (5th Cir. 2001) ("Texas courts have recognized that legal malpractice actions are 'intrinsically personal,' and that the satisfaction of the client in a legal malpractice case is 'paramount.'") (*citing Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex. App.—San Antonio 1994, writ ref'd.); *Charles v. Tamez*, 878 S.W.2d 201, 208 (Tex. App.—Corpus Christi 1994, writ denied)). In the foregoing well-reasoned decisions, state and federal courts following Texas law explain why allegations must focus on the satisfaction of the client then-served by the attorney, and not on the satisfaction of a latter-arising bankruptcy estate asserting its dissatisfaction on behalf of the client. The courts also warn of the consequences of ignoring this rule when, as is the case here, a client's former litigation opponents gain control of the client. *See McLaughlin v. Martin*, 940 S.W.2d 261, 264 (Tex. App.—Houston [14th Dist.]

14

1997, no writ) ("The assignment of a malpractice claim is perhaps most incompatible with an attorney's duty of loyalty. An attorney's loyalty to his client is likely to be compromised if he knows the client can sell a potential malpractice claim to his adversary."); *Zuniga*, 878 S.W.2d at 318 ("By agreeing to represent an insolvent defendant, a lawyer could be putting his own assets and insurance within reach of a plaintiff who otherwise would have an uncollectible judgment."); *Tamez*, 878 S.W.2d at 208 (allowing previous litigation opponents to seize control of a malpractice claim "does not promote . . . the overall purpose of the Texas legal system.").

31.     The Amended Complaint makes no allegation that HCMLP was anything less than satisfied with Leventon's work when it was performed. The Amended Complaint does not allege that Leventon mismanaged litigation, but rather that he effectuated the underlying transactions leading to the litigation by following the instructions of HCMLP, issued through Dondero. When the client "receive[d] the precise goal" he sought in the representation, the acts of counsel cannot be said to have caused "injury" to the client. *In re Segerstrom*, 247 F.3d at 226.

        *4.      The Amended Complaint Fails to Plausibly Allege that Leventon's Conduct Caused HCMLP Damages.*

32.     A required element for a breach of a fiduciary duty or professional negligence claim against an attorney is but-for causation. In order to plead but-for causation, the plaintiff must allege that the client (1) was unaware of the illegality of its actions or (2) would have acted differently if advised differently. *See Taylor v. Scheef & Stone, LLP*, No. 3:19-CV-2602-D, 2020 WL 4432848 at *6 (N.D. Tex. July 31, 2020) (finding it "speculative to assume" a change in action of counsel would have altered the action of the client) (*citing Smith v. O'Donnell*, 288 S.W.3d 417, 422 (Tex. 2009)); *In re Segerstrom*, 247 F.3d at 226 ("The estate must prove not only that an alternative trial strategy was available to [the client], but that [the client] would have pursued that strategy with independent representation."). This element is important because the "measure of damages [is]

15

'the difference between the result obtained for the client and the result that would have been obtained with competent counsel.'" *Rogers v. Zanetti*, 518 S.W.3d 394, 404 (Tex. 2017).

33. The Amended Complaint's conclusory assertion that "[b]ut for" the breach of "Dondero (and in turn, Strand), Ellington, and Leventon," HCMLP "never would have incurred" $350 million in allowed claims or would have resolved them "for substantially lower amounts" is insufficient to adequately plead and prove but-for causation as to Leventon. Am. Compl. ¶ 204. Kirschner fails to allege facts that, if true, show that there would have been a different outcome in the UBS, Crusader, and Acis litigations described in Count V absent Leventon's specific conduct. Indeed, Leventon is not mentioned at all in relation to the HarbourVest transaction. "[A]llegations that a lawyer 'assisted' a client's illegal action or provided deficient legal advice that contributed to the client's harm, without more, are insufficient to satisfy the causation prong [of a] professional negligence claim." *Taylor*, WL 4432848, at *7. In *Taylor*, Judge Fitzwater held that allegations that an attorney lied to the client's regulator and drafted documents in furtherance of the client's illegal scheme "fail to plead sufficient facts" that the law firm's "assistance in illegal conduct constituted a breach of its duties to [the clients] or otherwise proximately caused their damages" because (1) the lawyer did not lie to his client, but rather (allegedly) to a third party, (2) the lawyer owed no duty to his client to whistle-blow on the client's alleged scheme, (3) the client allegedly was aware of the illegality of its conduct, and (4) there was no allegation the client would have acted differently if given different legal advice. *Id.* at *5-7.

34. Rather than plead any allegations particularized to Leventon, the Amended Complaint focuses on the alleged conduct of Dondero and others as driving and profiting from these transactions, with Leventon's role limited to non-specific in-house counsel work that any lawyer on the legal team could have performed. *See* Am. Compl. ¶ 70. Yet the Amended Complaint

fails to allege that Dondero and HCMLP would have acted any differently but for Leventon's "aid" in "implementing Dondero's directives" and drafting legal documents to "consummate these transactions." *See* Am. Compl. ¶ 70. The Amended Complaint alleges numerous facts that compel the opposite conclusion to but-for causation, including that "Dondero made every material business, operational, management, and financial decision for HCMLP" (Am. Compl. ¶ 111); "Dondero was the 'ultimate decision-maker' for 'every [] entity in the firm and for the firm as a whole'" (Am. Compl. ¶ 115); and "Dondero frequently instructed HCMLP's employees to perform services in connection with Dondero's personal and business interests." (Am. Compl. ¶ 120). These general and non-specific allegations do not adequately plead but-for causation as to Leventon. *Taylor*, 2020 WL 4432848, at *7. The specific transactions alleged in support of Count V, the allegations fall woefully short of particularized allegations as to Leventon:

- As to the UBS liabilities, Leventon was not even employed by HCMLP at the time UBS commenced its initial action against HCMLP. *Compare* Dkt. 2869 at ¶ 7 (Leventon's employment began September 21, 2009), *with* Am. Compl. ¶ 46 (the UBS action commenced against HCMLP February 24, 2009). The allegations against Leventon are that he was one of six people (including Dondero) who "took steps to transfer" non-detor assets to Sentinel, and that "[a]fter the Petition Date, Dondero, Ellington, and Leventon actively concealed this transfer [to Sentinel in 2017]." Am. Compl. ¶¶ 76, 207. The Amended Complaint, however, does not allege any facts suggesting that the transfer would not have occurred without Leventon's alleged involvement or what "steps" Leventon allegedly took.

- As to the Acis liabilities, the Amended Complaint makes no attempt to make the requisite specific causal connection with the liability incurred by HCMLP. Testimony at trial characterized as of "questionable reliability" does not constitute a breach of a duty to HCMLP. Am. Compl. ¶ 210. Likewise, "implement[ing] Dondero's directives" (Am. Compl. ¶ 211), and "assist[ing] in the drafting and execution of the agreement that transferred Acis's interest in a note receivable from HCMLP" (Am. Compl. ¶ 212) do not permit the conclusion that the subject transfer and $23 million liability would not have occurred but for Leventon's drafting assistance because (a) Leventon merely "assisted" others in drafting the documents (which presumably would have been drafted without Leventon's involvement); (b) Leventon is not alleged to have thought up, advised, or instructed that the transaction take place; and (c) the Amended Complaint never links the drafting of the note receivable agreement to any portion of the $23 million Acis liability. Am. Compl. ¶ 212.

- As to the Crusader liabilities, the Amended Complaint lists four underlying transactions that allegedly led to the Crusader liability. Am. Compl. ¶ 214. The Amended Complaint merely

alleges that Leventon somehow aided Dondero in "keep[ing] the [Crusader] Redeemer Committee in the dark" by allegedly communicating HCMLP's misrepresentations. Am. Compl. ¶ 214. There is no allegation that but-for Leventon's communications, the Redeemer Committee would not have sought, and obtained, the same judgment against HCMLP or that Leventon thought up, drafted documents, advised, or was otherwise instrumental in any of such transactions.

> 5.    *The Amended Complaint Cannot Claim Breach of Fiduciary Duties for Allegedly Enabling Conduct Harmful to Creditors.*

35.    Claims that a company's professionals aided and abetted the company in causing injury to its creditors do not belong to a party standing in the shoes of the company. *Reneker v. Offill*, 2009 WL 804134, at *6 (N.D. Tex. Mar. 26, 2009). As such, Kirschner, standing in the shoes of HCMLP, has no standing to assert claims resulting in injuries caused by HCMLP to its creditors. Moreover, Kirschner cannot recover against Leventon for the harms allegedly caused by HCMLP under the guise of a breach of fiduciary duty.

36.    In *Reneker*, Chief Judge Fitzwater dismissed a breach of fiduciary duty claim against a company's law firm for allegedly enabling conduct that harmed the company's creditors, which then resulted in the estate being liable to such creditors. *Id.* at *9. In so doing, he held that "allowing the [clients] to continue illegal and/or fraudulent activity, would only amount to a breach of fiduciary duty if [the law firm] owed the [clients] a fiduciary duty not to enable them to continue such activities." *Id.*; *see also Latitude Sols., Inc. v. DeJoria*, 922 F.3d 690, 697 (5th Cir. 2019) (adopting *Reneker* in reversing breaches of fiduciary duty damages award).

37.    Where the debtor "has joined with a third party in defrauding its creditors, the [debtor's] trustee cannot recover against the third party for the damage to the creditors." *Newby v. Enron Corp., (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 511 F. Supp. 2d 742, 797-798 (S.D. Tex. 2005) (*citing Breeden v. Kirkpatrick & Lockhart LLP* (*In re Bennett Funding Group, Inc.*), 336 F.3d 94, 100 (2d Cir. 2003)); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991). This is the so-called "*Wagoner* Rule"; "though the Fifth Circuit has not

directly addressed the *Wagoner* Rule specifically, district courts within this Circuit have agreed with the underlying principle." *Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification Beams Sys., LLC*, 556 B.R. 815, 838 (W.D. Tex. 2017) (citing *In re Enron Corp.*, 2007 WL 789141, at *7); *Finova Capital Corp. v. Lawrence*, No. 399CV2552-M, 2000 WL 1808276, at *2 (N.D. Tex. Dec. 8, 2000). "The rationale for the *Wagoner* rule is the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation." *Bennett Funding*, 336 F.3d at 100. The corporation only may recover against the agent if he "is really committing fraud for his own benefit" and "has totally abandoned the principal's interests." *Id.* "This rule applies to professional liability claims," and the rule supports dismissal of the claim here. *Newby*, 511 F. Supp. 2d at 797.

      6.      *The Amended Complaint Fails to Sufficiently Allege an Entitlement to Damages, as it Does Not Plausibly Allege "Willful or Wanton Misconduct" Necessary for Liability Under the Governing Partnership Agreement.*

38.      The Fourth LPA, effective at the time of the conduct alleged in the Amended Complaint, is governed by the laws of Delaware. *See* Fourth LPA at § 6.11. Under Delaware law, "if the limited partnership agreement unambiguously provides for fiduciary duties, any claim of a breach of fiduciary duty must be analyzed generally in terms of the partnership agreement." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170-71 (Del. 2002). Here, the Fourth LPA specifically provides for fiduciary duties. *See, e.g.*, Fourth LPA at §§ 4.1(e)(ii)-(iii), 4.1(g). Therefore, the Fourth LPA "leaves no room for the application of common law fiduciary duty principles to measure the General Partner's conduct," and breach of the Fourth LPA is the "sole source of protection." *Gotham Partners,* 817 A.2d at 171.

39.      Section 4.1(i)(i) of the Fourth LPA, titled "Liability of General Partner," provides, "Neither the General Partner nor its directors, officers, ***employees, agents, or representatives*** shall be liable to the Partnership or any Limited Partner for errors in judgment or for any acts or

omissions that do not constitute gross negligence or willful or wanton misconduct." As the Amended Complaint alleges that Leventon acted as an agent of the General Partner, Kirschner is barred from recovering damages for any conduct of Leventon that does not satisfy a "willful and wanton misconduct" standard. Yet, as discussed above, the allegations against Leventon in Count V sound in professional negligence, were performed at the authorization of his client, and, as alleged, do not rise to the requisite level of "willful or wanton misconduct," despite the tacking on of that term in the Amended Complaint.

**B.     Kirschner Fails to State a Claim Against Leventon for Civil Conspiracy to Breach Fiduciary Duties (Count XVI).**

*1.     As an Agent of HCMLP, Leventon Cannot Legally Conspire with Other Agents of HCMLP.*

40.     Count XVI fails because Leventon, acting as one of HCMLP's employees in the legal team, cannot conspire with other HCMLP employees when acting within the scope of his work authority, and the Amended Complaint fails to allege conduct outside of the scope of his authority. *See Graham v. Pazos De La Torre*, 821 S.W.2d 162, 166 (Tex. App.—Corpus Christi-Edinburg 1991, writ denied) ("the general rules are that the principal is liable for the authorized acts of his agent and an agent is liable only if he acts beyond the scope of his authority."); *cf. Adidas Am. Inc. v. Shoebacca Ltd.*, 3:20-CV-03248-N, 2021 U.S. Dist. LEXIS 183828, 2021 WL 4399745, at *4 (N.D. Tex. Sept. 27, 2021) ("Under Texas law, a corporation's agents generally cannot conspire with each other or with the corporation because their acts are attributed to the corporation."); *see also III Forks Real Estate, L.P. v. Cohen*, 228 S.W.3d 810, 814 (Tex. App.—Dallas 2007, no pet.) ("A principal is liable for the fraudulent acts and misrepresentations of its authorized agent, even though the principal had no knowledge of the fraud and did not consent to it, whether or not the principal derives a benefit from it.").

41.     The Amended Complaint vaguely alleges that Leventon, Ellington, and Dondero

"orchestrated myriad transactions to divert funds from HCMLP to Dondero . . . ." Am. Compl. ¶ 293. Yet the Amended Complaint cannot plausibly allege that Leventon's alleged acts with regard to these transactions—described elsewhere in the Amended Complaint as essentially drafting legal documents at the direction of his superiors—were outside the scope of his authority. Indeed, "[c]onduct that serves ***any*** purpose of the employer is within the scope of employment even if the conduct escalates beyond that assigned or permitted." *Fink v. Anderson*, 477 S.W.3d 460, 466 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (emphasis added). Strand (and thereby Dondero) had sole discretion to control HCMLP under the Fourth LPA, and the Amended Complaint specifically alleges that Dondero orchestrated the wrongful actions underlying the alleged conspiracy. *See* Section 4.1(a) of the LPA ("The General Partner shall conduct, direct, and exercise full control of over all activities of the Partnership …"). The Amended Complaint solely seeks relief against Leventon for actions taken at the instruction, or with the consent, of Dondero, in whom the Fourth LPA vested sole control. Therefore, the Amended Complaint does not (and cannot) plausibly allege that Leventon's conduct failed to serve ***any*** purpose of HCMLP.

>    2.    *No Actionable Civil Conspiracy Exists Because the Amended Complaint Fails to Allege a "Meeting of the Minds" to Cause the Injury.*

42.    Even if a valid conspiracy claim could be pled in Texas under the facts alleged, the Amended Complaint fails to allege any non-conclusory facts to show that Leventon had the specific intent to harm HCMLP, as required to allege a "meeting of the minds on the object or course of action." *See MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 192 (Tex. App.—El Paso 2017, no pet.) ("The conspiring parties must be aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement," and an "actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means."). Agreeing to the conduct alone is not enough:

"Conspiracy… requires a specific intent to cause the intended injury." *In re Artho*, 587 B.R. 866, 884-85 (Bankr. N.D. Tex. 2018); *see also Chu v. Hong*, 249 S.W.3d 441, 447 (Tex. 2008) (same). Instead, the Amended Complaint vaguely lumps Leventon into a group of defendants and alleges that they "specifically intended to benefit themselves and Dondero at the expense of HCMLP." Am. Compl. ¶ 296. These bare allegations (which never even identify any direct or indirect "benefit" to Leventon) are insufficient to support Leventon's intent.

> ### 3. *Dismissal of Certain of the Dondero Fiduciary Duty Claims Also Requires Dismissal of Count XVI.*

43.     Leventon allegedly conspired with Dondero in violating his fiduciary duty in relation to the transactions listed at Am. Complaint ¶ 295 (a) – (e). *See* Am. Compl. at Count IV and XIV (breach of fiduciary duty claims against Dondero for the same transactions). Conspiracy is a derivative tort that depends on participation in some underlying tort. *West Ford Advisors, LLC v. Sungard Consulting Servs., Inc.*, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. denied). If the underlying tort claim is dismissed, then Count XVI must also be dismissed. *Id.*

## C.     Kirschner Fails to State a Claim for Unjust Enrichment or Money Had and Received Under Texas Law (Count XXVII).

> ### 1.     *Unjust Enrichment Is Not an Independent Claim Cognizable Under Texas Law.*

44.     The Amended Complaint includes a claim for "unjust enrichment" against Leventon, but, as the Fifth Circuit has held, no such independent cause of action exists under Texas law. *Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) ("unjust enrichment describes the nature of certain claims and remedies, not a distinct cause of action itself"). Where, as here, a party alleges unjust enrichment in tandem with a money had and received claim, courts address both claims "as one claim for money had and received" and dismiss the unjust enrichment claim "as repetitive and superfluous." *See Assure Re Intermediaries, Inc. v. W. Surplus Lines Agency, Inc.*, No. 1:20-CV-189-H, 2021 U.S. Dist. LEXIS 110090, at *20 (N.D.

Tex. 2021). As such, the unjust enrichment claim must be dismissed.

       2.    *The Amended Complaint Fails to Sufficiently Allege What Money Leventon Received that Belongs to HCMLP.*

45.    Dismissal of a money had and received claim is appropriate when the plaintiff fails "to identify what money [Defendant] actually received individually and why, exactly, that money belongs to [Plaintiff]." *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 675 (W.D. Tex. 2019). Here, Kirschner seeks to recover "portions" of Leventon's compensation (Am. Compl. ¶ 372), but fails to identify what Kirschner means by "portions." Kirschner does not identify either a specific monetary value or even a date range for what compensation could be at issue, let alone *why* those specific funds belong in good conscience to Kirschner. This failure to describe what "portion" of compensation belongs to Kirschner is fatal to his claim under 12(b)(6).

       3.    *To the Extent the Amended Complaint Seeks to Recover Employee Compensation Governed by Contract, Kirschner's "Money Had and Received" Claim Fails Under Texas Law.*

46.    In the alternative, to the extent Kirschner is seeking to recover "[p]ortions of . . . Leventon's compensation" governed by the terms of a contract, Kirschner's quasi-contract claim of "money had and received" is barred and must be dismissed.

47.    "In Texas, a claim for money had and received is an equitable or quasi-contract theory of relief that is available only when there is no contract between the parties that covers the subject matter of the dispute." *Assure*, 2021 U.S. Dist. LEXIS 110090, at *18 (quotations omitted). "When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). Here, Kirschner makes the conclusory assertion that there was "no valid express contract governing the subject matter of this dispute," and in turn seeks to recover "portions" of Leventon's compensation. Am. Compl. ¶¶ 375, 372. Filings in the Bankruptcy Case, including by the Debtor itself, make clear that this conclusory assertion is unequivocally false and

that employee compensation was governed by contractual agreements.[7] Leventon's compensation under such agreements, inclusive of bonus amounts and base salary, is reflected in Leventon's 2018, 2017, and 2016 *Compensation and Benefit Statements* issued by the Debtor. *See* Dkt. 1796-13. Given the contractual basis for Leventon's compensation, Kirschner's money had and received claim cannot lie.

**D.    Kirschner Fails to State a Claim for Aiding and Abetting or Knowing Participation in a Breach of Fiduciary Duty (Count XXXIV)**

48.    The Fourth LPA precludes Kirschner's claims for aiding and abetting or knowing participation in a breach of fiduciary duty by Dondero and Strand. To prevail on an aiding and abetting or knowing participation claim, Kirschner must demonstrate the existence of an underlying breach of fiduciary duty. *See Marshall v. Ribosome LP*, 2019 WL 2041062, at *6 (Tex. App.—Houston [1st Dist.] May 9, 2019, no pet.). For the reasons set forth above, Strand (and thereby Dondero) had "full control" over HCMLP by virtue of the express terms of the Fourth LPA. *See* Section 4.1(a) of the LPA ("The General Partner shall conduct, direct, and exercise full control of over all activities of the Partnership . . ."). The Fourth LPA granted Strand, and Dondero as Strand's director, broad authority to undertake every action that allegedly constituted a breach of their fiduciary duties. In view of the language of the Fourth LPA, Kirschner has not plausibly pled that Strand or Dondero acted beyond their powers under the Fourth LPA, nor does Kirschner allege that any of the conduct alleged breached the Fourth LPA.

49.    The Amended Complaint also does not (and cannot) plausible allege that Leventon *knew* that following Dondero's instruction constituted assisting a breach of Dondero's fiduciary duty. "The pleading standard a plaintiff must achieve is [] a high one; a plaintiff must plead facts

---

[7] *See Motion of the Debtor for Entry of an Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations under Employee Bonus Plans and Granting Related Relief* [Dkt. 177], wherein the Debtor recognized, and sought to honor, its obligations under the annual employee bonus plan and deferred employee bonus plan.

making it reasonably conceivable that the alleged aider-and-abettor acted with scienter." *See Morrison v. Berry*, C.A. No. 12808-VCG, 2020 Del. Ch. LEXIS 200 (Del. Ch. June 1, 2020); *see also Cent. Tex. Express Metalwork v. Chavez*, No. 2:20-CV-193, 2021 U.S. Dist. LEXIS 159150, at *22 (S.D. Tex. 2021) (knowing participation requires a defendant to be "aware of his participation in the third party's breach."). Strand (and thereby Dondero) had sole discretion under the Fourth LPA to control HCMLP and to direct Leventon as an attorney on behalf of HCMLP. Without actual knowledge or awareness by Leventon that the conduct he was instructed to perform was an underlying breach, the aiding and abetting or knowing participation claim fails. *See Jacobs v. Meghji*, C.A. No. 2019-1022-MTZ, slip op. at 25 (Del. Ch. Oct. 8, 2020) (dismissing claims against investor in a transaction when specific facts regarding knowing participation in a breach were lacking).

50.     The Amended Complaint also fails to allege facts to plausibly support a claim for aiding and abetting breach of fiduciary duty. The Amended Complaint recognizes that Leventon took each of the actions pled in connection with the litigation liabilities as an attorney on behalf of HCMLP at the instruction HCMLP's principal Dondero. Am. Compl. ¶ 419-427. Leventon cannot be held liable for following his client's lawful instructions, even if such instructions later resulted in liabilities to HCMLP. *See supra* Section III(A); *see also Chavez*, 2021 U.S. Dist. LEXIS 159150, at *22 (dismissing knowing participation claim when the alleged tortfeasors acted as agents of the principal).

## CONCLUSION AND REQUESTED RELIEF

51.     The Court should dismiss without prejudice the claims against Leventon because Kirschner lacks standing and the Bankruptcy Court lacks subject matter jurisdiction to adjudicate them. Moreover, the Court should dismiss with prejudice all the claims because the Amended Complaint fails to state claims for which relief can be granted against Leventon.

25

Dated: July 11, 2022

By: */s/ Michelle Hartmann*
Michelle Hartmann
State Bar No. 24032402
**BAKER & MCKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
**BAKER & MCKENZIE LLP**
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for Isaac Leventon*

## CERTIFICATE OF SERVICE

I certify that on July 11, 2022, a true and correct copy of the above and foregoing document was served via electronic email through the Court's CM/ECF system to the parties that have requested or consented to such service.

*/s/ Michelle Hartmann*
Michelle Hartmann