Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau (*Admitted pro hac vice*)
Blaire Cahn (*Admitted pro hac vice*)
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
debra.dandeneau@bakermckenzie.com
blaire.cahn@bakermckenzie.com

*Counsel for Scott Ellington*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,<br><br>Defendants. | Adv. Pro. No. 21-03076-sgj |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND .............................................................................................. 2

LEGAL STANDARD ............................................................................................................ 3

ARGUMENT AND AUTHORITIES ..................................................................................... 4

    I. All Non-Core Causes of Action Against Ellington Must be Dismissed Pursuant to Rule 12(b)(1) (Counts V, XIV, XVI, XXV, XXVII, XXXIV, and XXXV). ...................................................4

        A.    Kirschner Lacks Standing to Pursue the Non-Core Causes of Action. ........................ 4

        B.    The Bankruptcy Court Lacks Post-Confirmation Jurisdiction Over the   Non-Core Causes of Action. .................................................................................................................... 4

        C.    The Assignment Agreement Did Not Assign the Breach of Fiduciary Duty Claims (Counts V and XIV) to the Litigation Sub-Trust ..................................................................... 5

    II. The Amended Complaint Fails to State a Claim Upon Which Relief Can be Granted as to the Majority of Claims Against Ellington........................................................................................5

        A.    Kirschner Fails to State a Claim for Breach of Fiduciary Duty by Ellington (Counts V and XIV). ............................................................................................................................ 5

            1.    Counts V and XIV Fail Because Kirschner Does Not Plead a Breach of Ellington's Fiduciary Obligations, as Limited by the Fourth LPA. ........................................................5

            2.    Count V Also Fails to State a Claim Because Kirschner Asserts a Professional Negligence Claim Under the Guise of Breach of Fiduciary Duty. ..................................... 8

            3.    The Amended Complaint Fails to Allege Ellington Did Anything but Obey and Follow Lawful Client Instructions. ........................................................................................ 10

            4.    The Amended Complaint Cannot, as a Matter of Texas Law, Adequately Allege the Element of Harm, as Kirschner May Not Substitute his Assessment of Ellington's Legal Work for that of the Then-Client, HCMLP ............................................................................ 11

            5.    The Amended Complaint Fails to Plausibly Allege that Ellington's Conduct Caused HCMLP Damages.......................................................................................................... 12

            6.    The Amended Complaint Cannot Claim Breach of Fiduciary Duties for Allegedly Enabling Conduct Harmful to Creditors................................................................................ 14

         B.    Kirschner Fails to State a Claim Against Ellington for Civil Conspiracy to Breach Fiduciary Duties (Count XVI). ................................................................................................ 15

            1.    As an Agent of HCMLP, Ellington Cannot Legally Conspire with Other Agents of HCMLP........................................................................................................................... 15

            2.    No Actionable Civil Conspiracy Exists Because the Amended Complaint Fails to Allege a "Meeting of the Minds" to Cause the Injury................................................................... 16

         C.    Kirschner Fails to State a Claim for Unjust Enrichment or Money Had and Received Under Texas Law (Count XXVII). ........................................................................................... 17

            1.    Unjust Enrichment Is Not an Independent Claim Cognizable Under Texas Law.................. 17

2. The Amended Complaint Fails to Sufficiently Allege Which Money Ellington Holds that Belongs to HCMLP................................................................................................................. 17

3. To the Extent the Amended Complaint Seeks to Recover Employee Compensation Governed by Contract, Kirschner's "Money Had and Received" Claim Fails Under Texas Law. ................. 18

D. Kirschner Fails to State a Claim for Aiding and Abetting or Knowing Participation in a Breach of Fiduciary Duty (Counts XXXIV and XXXV)..................................................... 19

E. Kirschner Fails to Satisfy the Reasonable Due Diligence Requirement Necessary to State a Preference Claim (Count XXXI). ............................................................................ 20

F. Kirschner Fails to Satisfy the Heightened Pleading Standard Applicable to the Intentional Fraudulent Transfer Claim of Certain Massand Transfers (Count XXIII). ........ 21

G. Kirschner Fails to State a Claim Against Ellington for Avoidance and Recovery of the Alleged Expense Transfers (Counts XXXII and XXXIII). ................................................. 22

1. Kirschner Fails to Plead That the Alleged Expense Transfers Are Anything Other than Valid Expense Reimbursements (Count XXXII and XXXIII). ............................................................. 23

2. The Constructive Fraudulent Transfer Claim (Count XXXII) Fails to Allege Lack of Reasonably Equivalent Value of the Alleged Expense Transfers.................................................. 24

CONCLUSION AND REQUESTED RELIEF ........................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arete Creditors Litig. Tr. v. TriCounty Fam. Med. Care Grp., LLC* (*In re Arete
Healthcare LLC*),
Nos. 19-52578-cag, 21-05079-cag, 2022 Bankr. LEXIS 322 (Bankr. W.D.
Tex. 2022) .......................................................................................................................21

*In re Artho*,
587 B.R. 866 (Bankr. N.D. Tex. 2018) ..................................................................17

*Assure Re Intermediaries, Inc. v. W. Surplus Lines Agency, Inc.*,
No. 1:20-CV-189-H, 2021 U.S. Dist. LEXIS 110090 (N.D. Tex. 2021) .........................17, 18

*Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*,
266 F.3d 388 (5th Cir. 2001) ...............................................................................5

*Bates Energy Oil & Gas v. Complete Oilfield Servs.*,
361 F. Supp. 3d 633 (W.D. Tex. 2019)..................................................................17

*Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*,
284 S.W.3d 416 (Tex. App.—Austin 2009, no pet.) ............................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................23

*Border Demolition & Envtl., Inc. v. Pineda*,
535 S.W.3d 140 (Tex. App.—El Paso 2017, no pet.)............................................10

*Breeden v. Kirkpatrick & Lockhart LLP* (*In re Bennett Funding Group, Inc.*),
336 F.3d 94 (2d Cir. 2003).....................................................................................15

*Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification
Beams Sys., LLC*,
556 B.R. 815 (W.D. Tex. 2017)..............................................................................15

*Brown v. Douglas (In re Dual D Health Care Operations, Inc.)*,
Nos. 17-41320-ELM, Adv. No. 20-04059, 2021 Bankr. LEXIS 1934 (Bankr.
N.D. Tex. 2021) ..................................................................................................22

*Cent. Tex. Express Metalwork v. Chavez*,
No. 2:20-CV-193, 2021 U.S. Dist. LEXIS 159150 (S.D. Tex. 2021) ..............................19, 20

*Charles v. Tamez*,
878 S.W.2d 201 (Tex. App.—Corpus Christi 1994, writ denied) ...........................11

*Chu v. Hong*,
249 S.W.3d 441 (Tex. 2008)..................................................................................17

*Crescent Res. Litig. Tr. v. Nexen Pruet, LLC* (*In re Crescent Res., LLC*),
No. 09-11507-CAG, Adv. No. 11-01082- CAG, 2012 Bankr. LEXIS 287
(Bankr. W.D. Tex. 2012) .......................................................................................25

*Edwards v. Dunlop-Gates*,
344 S.W.3d 424 (Tex. App.—El Paso 2011, pet. denied) ......................................11

*Faulkner v. Lone Star Brokering, LLC* (*In re Reagor-Dykes Motors, LP*),
2021 Bankr. LEXIS 1643 (Bankr. N.D. Tex. 2021)....................................21, 24, 25

*Fink v. Anderson*,
477 S.W.3d 460 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ..........................16

*Finova Capital Corp. v. Lawrence*,
No. 399CV2552-M, 2000 WL 1808276 (N.D. Tex. Dec. 8, 2000).......................15

*Fortune Prod. Co. v. Conoco, Inc.*,
52 S.W.3d 671 (Tex. 2000)....................................................................................18

*Gerber v. EPE Holdings, LLC*,
No. 3543-VCN, 2013 Del. Ch. LEXIS 8 (Ch. Jan. 18, 2013) ..................................6

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
817 A.2d 160 (Del. 2002) ....................................................................................6, 7

*Graham v. Pazos De La Torre*,
821 S.W.2d 162 (Tex. App.—Corpus Christi-Edinburg 1991, writ denied)..........15

*Haynes Family Tr. v. Kinder Morgan G.P., Inc.*,
135 A.3d 76 (Del. 2016) ...........................................................................................7

*Husted v. Taggart* (*In re ECS Ref., Inc.*),
625 B.R. 425 (Bankr. E.D. Cal. 2020)..............................................................20, 21

*III Forks Real Estate, L.P. v. Cohen*,
228 S.W.3d 810 (Tex. App.–Dallas 2007, no pet.)................................................15

*Isaacs v. Schleier*,
356 S.W.3d 548 (Tex. App.—Texarkana 2011, pet. denied) ............................9, 11

*Jacobs v. Meghji*,
C.A. No. 2019-1022-MTZ, slip op. (Del. Ch. Oct. 8, 2020) ..................................20

*Latitude Sols., Inc. v. DeJoria*,
922 F.3d 690 (5th Cir. 2019) .................................................................................14

*Marshall v. Ribosome LP*,
   2019 WL 2041062 (Tex. App.—Houston [1st Dist.] May 9, 2019, no pet.)..........................19

*Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*,
   999 F.3d 970 (5th Cir. 2021) ...............................................................................................17

*Morrison v. Berry*,
   C.A. No. 12808-VCG, 2020 Del. Ch. LEXIS 200 (Del. Ch. June 1, 2020) ...........................19

*Murphy v. Gruber*,
   241 S.W.3d 689 (Tex. App.—Dallas 2007, pet. denied) ........................................................10

*MVS Int'l Corp. v. Int'l Advert. Sols., LLC*,
   545 S.W.3d 180 (Tex. App.—El Paso 2017, no pet.)..............................................................16

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*,
   511 F. Supp. 2d 742 (S.D. Tex. 2005) ..............................................................................14, 15

*Norton v. K-Sea Transp. Partners L.P.*,
   67 A.3d 354 (Del. 2013) ..........................................................................................................7

*Official Stanford Investors Comm. v. Greenberg Traurig, LLP*,
   2014 WL 12572881 (N.D. Tex. Dec. 17, 2014) ................................................................9, 10

*Reneker v. Offill*,
   2009 WL 804134 (N.D. Tex. Mar. 26, 2009) .........................................................................14

*In re Segerstrom*,
   247 F.3d 218 (5th Cir. 2001) ............................................................................................11, 12

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir. 1991)..............................................................................................14, 15

*Taylor v. Scheef & Stone, LLP*,
   No. 3:19-CV-2602-D, 2020 WL 4432848 (N.D. Tex. July 31, 2020)..............................12, 13

*VeroBlue Farms USA, Inc. v. Wulf*,
   465 F. Supp. 3d 633 (N.D. Tex. 2020) .............................................................................22, 24

*Wolf v. Ramirez*,
   622 S.W. 3d 126 (Tex. App.—El Paso 2020, no pet.).............................................................11

*Won Pak v. Harris*,
   313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied)..................................................8, 9, 10

*Zuniga v. Groce, Locke & Hebdon*,
   878 S.W.2d 313 (Tex. App.—San Antonio 1994, writ ref'd.) ................................................11

**Statutes**

6 Del. C. § 17-1101(d) ........................................................................................6

11 U.S.C. § 11 ...............................................................................................2, 3

11 U.S.C. § 547(b) ......................................................................................20, 21

11 U.S.C. § 548 ......................................................................................23, 24, 25

28 U.S.C. § 1334 ..............................................................................................5

Tex. Bus. & Com. Code § 24 .................................................................................24

Tex. Bus. & Com. Code § 24.005(s) ........................................................................24

**Other Authorities**

Fed. R. Civ. P. 8 .................................................................................21, 23, 24

Fed. R. Civ. P.  9 ...............................................................................................22

Fed. R. Civ. P. 9(b) .......................................................................21, 22, 23, 24

Fed. R. Civ. P. 12(b)(1) ...................................................................................2, 3, 4

Fed. R. Civ. P. 12(b)(6) ...................................................................................2, 3

## BRIEF IN SUPPORT OF DEFENDANT ELLINGTON'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant[1] Scott Ellington hereby files his brief in support of the Motion to Dismiss the Amended Complaint (the "***Motion***")[2] and respectfully states as follows:

### PRELIMINARY STATEMENT

1. HCMLP is a limited partnership and, as such, is a creature of contract. Kirschner casts a wide net of 36 different claims against 23 different Defendants, but—incredibly—fails to allege a single violation of the terms of the Fourth LPA (as defined herein), which governs the conduct at issue in this case. No doubt that is by design, as the Fourth LPA vested sole and exclusive authority in Strand (and thereby Dondero, its sole owner and director) to manage HCMLP, including specific rights to engage in the conduct that the Amended Complaint decries.

2. The Amended Complaint repeatedly characterizes Ellington, the former General Counsel of HCMLP, as working in furtherance of Dondero's purported schemes and seeks to impose broad liability against Ellington for a variety of debts that HCMLP incurred at the direction of Dondero. Ellington, however, did *not* control HCMLP, and Kirschner cannot now blame Ellington for acting in accordance with the instructions of HCMLP, which was controlled by its general partner, Strand. The Amended Complaint is devoid of the necessary allegations to support the majority of claims against Ellington and should be dismissed.

3. Seven of the claims against Ellington (breach of fiduciary duties (Counts V and XIV), civil conspiracy (Count XVI), conversion (Count XXV), unjust enrichment or money had and received (Count XXVII), and aiding and abetting or knowing participation in breach of

---

[2] On January 18, 2022, Ellington filed the *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants* [Adv. Proc. Dkt. 27]. Such motion remains pending a decision by the District Court. Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion or in the Amended Complaint [Dkt. 2934], and docket number identifications refer to Case No. 19-34054-sgj11 (the "***Bankruptcy Case***").

fiduciary duty (Counts XXXIV and XXXV)) are for state law claims that do not arise under the Bankruptcy Code (the "***Non-Core Causes of Action***"). Kirschner lacks standing to bring such claims as the Plan did not adequately preserve the ability to assert the Non-Core Causes of Action post-confirmation. Additionally, the Bankruptcy Court lacks post-confirmation subject matter jurisdiction over the Non-Core Causes of Action, and the Court must dismiss the Non-Core Causes of Action under Rule 12(b)(1). Alternatively, the Court must dismiss the breach of fiduciary duty claims (Counts V and XIV), as those claims remained with HCMLP, were not transferred to the Claimant Trust, and could not have been subsequently assigned to the Litigation Sub-Trust.

4. Further, six of the seven Non-Core Causes of Action (breach of fiduciary duties (Counts V and XIV), civil conspiracy (Count XVI), unjust enrichment or money had and received (Count XXVII), and aiding and abetting or knowing participation in breach of fiduciary duty (Counts XXXIV and XXXV)), the preferential transfer claim (Count XXXI), and the majority of the avoidance and recovery claims against Ellington (Counts XXIII, XXXII, and XXXIII), should be dismissed for failure to state claims upon which relief may be granted under Rule 12(b)(6). Initially, the Amended Complaint fails to include allegations that, if true, would satisfy the respective elements of the majority of the state law claims under applicable law, and indeed, alleges conduct that is not actionable under the Fourth LPA. Secondly, the Amended Complaint fails to state a claim for the preferential transfer claim and three avoidance and recovery claims by either failing to plead due diligence, failing to satisfy a heightened pleading standard, or failing to plausibly allege a basis that such transfers are anything other than valid. As such, Rule 12(b)(6) supports dismissal of ten of the claims against Ellington.

### RELEVANT BACKGROUND

5. Ellington was employed by Highland Capital Management, L.P. ("***HCMLP***" or the "***Debtor***") until January 2021. At the time of termination of Ellington's employment with HCMLP,

he served as its general counsel. Am. Compl. ¶ 19.

6.      On October 16, 2019, HCMLP filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On February 22, 2021, the Bankruptcy Court confirmed the Plan [Dkt. 1808] by the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Dkt. 1943].

7.      The "Effective Date" of the Plan occurred on August 11, 2010. *Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization* [Dkt. 2700]. The Plan established two trusts to assert post-confirmation causes of action: (1) the Claimant Trust and (2) the Litigation Sub-Trust. The Plan transferred all causes of action other than "Reorganized Debtor Assets" from the Debtor to the Claimant Trust and then only "Estate Claims" from the Claimant Trust to the Litigation Sub-Trust. *See* Plan § IV.B; Claimant Trust Agreement §§ 2.2, 2.3 [Dkt. 1811-2].[3]

8.      Since the Effective Date, the Plan has been substantially consummated. *See Appellee's Motion to Dismiss Appeal as Equitably Moot*, pp. 11-14, Fifth Cir. Case No. 21-10449 [Doc. No. 00516045149].

9.      On October 15, 2021, Kirschner commenced this Adversary Proceeding. On May 19, 2022, Kirschner filed the Amended Complaint.

## LEGAL STANDARD

10.      The applicable legal standard under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is set forth more fully in the "Legal Standard" section of the *Brief in Support of the*

---

[3] *See* Plan, Definition of "Claimant Trust Assets" (expressly carving out "Reorganized Debtor Assets" from the definition); Plan, Definition of "Reorganized Debtor Assets." Only the Reorganized Debtor has standing to assert a cause of action that is considered a Reorganized Debtor Asset.

*Defendant Leventon's Motion to Dismiss the Amended Complaint* (the "**Leventon Brief**"), which

is hereby incorporated herein by reference for all purposes.

## ARGUMENT AND AUTHORITIES

**I. All Non-Core Causes of Action Against Ellington Must be Dismissed Pursuant to Rule 12(b)(1) (Counts V, XIV, XVI, XXV, XXVII, XXXIV, and XXXV).**

### A. Kirschner Lacks Standing to Pursue the Non-Core Causes of Action.

11.     Kirschner lacks standing on *any* of the state law Non-Core Causes of Action

(Counts V, XIV, XVI, XXV, XXVII, XXXIV, and XXXV) because the Plan failed to adequately

preserve them in a generic laundry list of claims itemized under the "Schedule of Retained Causes

of Action",[4] the civil conspiracy and aiding and abetting claims (Counts XVI, XXXIV, and

XXXV) because those causes of action were not identified at all as being retained under the Plan,

and the fiduciary duty claims (Counts V and XIV) and the civil conspiracy and aiding and abetting

or knowing participation claims (Counts XVI, XXXIV, and XXXV) because such claims may only

be pursued by HCMLP. The arguments in support of dismissal for lack of standing of these claims

are set forth more fully in sections I.A, I.B and I.D of the Leventon Brief, which are hereby

incorporated herein by reference for all purposes.

### B. The Bankruptcy Court Lacks Post-Confirmation Jurisdiction Over the Non-Core Causes of Action.

12.     The arguments set forth in the *Former Employee Defendants' Brief in Support of

Motion to Withdraw the Reference* [Adv. Proc. Dkt. 28] (the "**Motion to Withdraw Brief**") and

their Reply in support thereof [Adv. Proc. Dkt. 108] (the "**Motion to Withdraw Reply**") explain

why the Court lacks subject matter jurisdiction over "**Non-Core Causes of Action**" applicable to

Ellington (Counts V, XIV, XVI, XXV, XXVII, XXXIV, and XXXV). Ellington hereby

incorporates section II(A) of the Motion to Withdraw Brief, section I of the Motion to Withdraw

---

[4] The Schedule of Retained Causes of Action is attached as Exhibit DD to the *Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, dated as of February 1, 2021 [Dkt. 1875].

Reply, section I of the *Objection to Report and Recommendation* [Case No. 22-cv-00203, Dkt. 16], and section I of the *Reply in Support of Objection to Report and Recommendation* [*Id.* at Dkt. 29], for all purposes. Accordingly, under binding Fifth Circuit precedent in *Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388 (5th Cir. 2001), and its progeny, no jurisdiction exists under 28 U.S.C. § 1334, and the claims must be dismissed.

      C.      **The Assignment Agreement Did Not Assign the Breach of Fiduciary Duty Claims (Counts V and XIV) to the Litigation Sub-Trust**

      13.      Kirschner inaccurately suggests that "[a]ll of the claims asserted in this Amended Complaint belong to the Litigation Sub-Trust." This flawed conclusion is based upon that certain Assignment Agreement, dated October 8, 2021, by and between the Claimant Trust and the Litigation Sub-Trust, which purported to transfer and assign any and all causes of action not previously assigned by operation of the Plan, or otherwise, from the Claimant Trust to the Litigation Sub-Trust (the "***Assignment Agreement***"). For the reasons stated in section I.D. of the Leventon Brief, which is hereby incorporated herein by reference for all purposes, the breach of fiduciary duty causes of action are Reorganized Debtor Assets. Because the Reorganized Debtor is not a party to the Assignment Agreement, the breach of fiduciary duty claims could not have been assigned to the Litigation Sub-Trust.

II.      **The Amended Complaint Fails to State a Claim Upon Which Relief Can be Granted as to the Majority of Claims Against Ellington.**

      A.      **Kirschner Fails to State a Claim for Breach of Fiduciary Duty by Ellington (Counts V and XIV).**

          1.      *Counts V and XIV Fail Because Kirschner Does Not Plead a Breach of Ellington's Fiduciary Obligations, as Limited by the Fourth LPA.*

      14.      The Amended Complaint alleges that "Ellington owed fiduciary duties to HCMLP in his capacity as HCMLP's Chief Legal Officer and General Counsel," lumping him in with Strand, which "owed fiduciary duties . . . in its capacity as HCMLP's general partner" and Dondero, who "owed fiduciary duties to HCMLP by virtue of his control over Strand and HCMLP,

and as an officer of HCMLP." Am. Comp. ¶ 202. Yet the Amended Complaint utterly fails to identify any actual breach of a provision of the governing partnership agreement that is the sole source of any applicable fiduciary duties. Under applicable Delaware law, such deficiency is fatal to Kirschner's fiduciary duty claims against Ellington.

15.     The Delaware Revised Uniform Limited Partnership Act permits a limited partnership agreement to restrict or even "eliminate all duties, other than the implied contractual covenant of good faith and fair dealing, that a person acting under that agreement may owe to a limited partnership." *Gerber v. EPE Holdings, LLC*, No. 3543-VCN, 2013 Del. Ch. LEXIS 8, at *25 (Ch. Jan. 18, 2013); 6 Del. C. § 17-1101(d). Thus, "[w]hen dealing with the internal affairs of a limited partnership, the reviewing court's first task is to determine what duties the defendants owe. Although a general partner and its affiliates may owe fiduciary duties to a limited partnership and its limited partners, a limited partnership agreement may 'establish[ ] a contractual standard of review that supplants fiduciary duty analysis.'" *Id.* at *24-25 (internal citations omitted). "[I]f the limited partnership agreement unambiguously provides for fiduciary duties, any claim of a breach of fiduciary duty must be analyzed generally in terms of the partnership agreement." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170-71 (Del. 2002).

16.     Here, the *Fourth Amended and Restated Agreement of Limited Partnership of HCMLP* (the "**Fourth LPA**") [Adv. Proc. No. 21-03003-sgj, Dkt. 109-8.], governed by Delaware law, was effective at the time of the conduct alleged in the Amended Complaint. *See* Am. Compl. ¶¶ 218, 221; Fourth LPA at § 6.11. It specifically provides for fiduciary duties and limits the liability of the general partner (and its agents). *See, e.g.*, Fourth LPA at §§ 4.1(e)(ii)-(iii), 4.1(g). For instance, the Fourth LPA grants to the general partner Strand (and thereby Dondero) the exclusive power to "conduct, direct, and exercise full control over all activities of the Partnership,"

including "all management powers over the business and affairs of the Partnership." *Id.* at § 4.1(a). It also expressly permits conflicts of interest, entitling the General Partner, Affiliates and, among others, their officers and agents to engage in, "without limitation, business interests and activities in direct competition with the Partnership." *Id.* at § 4.1(f). Expressly replacing any other legal standard, the Fourth LPA provides that such a conflict will not constitute a breach of fiduciary duty "in the absence of bad faith by the General Partner . . . ."[5] In addition, the Fourth LPA directly limits the liability of the General Partner and its officers and agents, providing in section 4.1(i)(i), "Neither the General Partner nor its directors, officers, employees, agents*,* or representatives shall be liable to the Partnership or any Limited Partner for errors in judgment or for any acts or omissions that do not constitute gross negligence or willful or wanton misconduct." Accordingly, the Fourth LPA "leaves no room for the application of common law fiduciary duty principles," and breach of its terms is the "sole source of protection." *Gotham Partners*, 817 A.2d at 171.

17. The Amended Complaint's failure to allege that Ellington breached any fiduciary duty established in the Fourth LPA warrants dismissal of Counts V and XIV. As the Delaware Supreme Court has held, in the limited partnership context plaintiffs cannot "litigate . . . as if they were investors in a corporation, whose directors had the traditional duties of loyalty and care," but rather are "restrict[ed] to relying upon the agreement's terms for protection." *Haynes Family Tr. v. Kinder Morgan G.P., Inc.*, 135 A.3d 76, 76 (Del. 2016) (affirming dismissal of complaint alleging self-dealing transaction by general partner and board members because it sought to hold defendants "responsible for duties inconsistent with the agreement," which was "the exclusive source of protective rights"); *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 368-69 (Del.

---

[5] Fourth LPA at § 4.1(g) ("whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or any Limited Partner, on the other hand, any action taken by the General Partner, in the absence of bad faith by the General Partner, shall not constitute a breach of the [Fourth LPA] or any other agreement contemplated herein or a breach of any standard of care or duty imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation.").

2013) (dismissing claims against general partner parent's board members because plaintiff "cannot state a cognizable claim for relief against [them] for causing [the general partner] to take an action that did not breach [the general partner's] duties under the LPA"). The Amended Complaint fails to plausibly allege that Ellington engaged in any conduct that rises to the level of "gross negligence or willful or wanton misconduct," as is the requisite standard under the Fourth LPA. Fourth LPA § 4.1(i)(i). Instead, the Amended Complaint alleges Ellington implemented transactions at the specific direction of Dondero, who "exercised complete control over HCMLP" and had the discretion to do so under the Fourth LPA.

18.     In addition, the Fourth LPA provides that the authority and duties of officers extends only to those that the General Partner delegated to them. Fourth LPA § 4.1(k). There is no allegation in the Amended Complaint that Dondero delegated any such duties to Ellington. As such, Kirschner cannot allege that Ellington breached a duty for which he was never delegated.

   2.     *Count V Also Fails to State a Claim Because Kirschner Asserts a Professional Negligence Claim Under the Guise of Breach of Fiduciary Duty.*

19.     In the alternative, and to the extent the Amended Complaint seeks to allege a breach of fiduciary duty based on Ellington's role as an in-house attorney (Am. Compl. ¶ 202), Count V also fails to state a breach of fiduciary duty claim for which relief may be granted because the allegations sound in professional negligence (*i.e.*, legal malpractice).

20.     To prevail on a breach of fiduciary duty claim against an attorney, Texas courts have adopted an "anti-fracturing rule," which prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as a breach of fiduciary duty. *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied). As explained by the Dallas Court of Appeals, this rule is important because, "[e]ven if a complaint implicates a lawyer's fiduciary duties, it does not necessarily follow that such a complaint is

actionable apart from a negligence claim." *Won Pak*, 313 S.W.3d at 458; *see also Isaacs v. Schleier*, 356 S.W.3d 548, 559-560 (Tex. App.—Texarkana 2011, pet. denied) (attorney's alleged failure to disclose that he represented both sides of a real estate transaction sounded in negligence, not fiduciary duty). This Court must look beyond mere labels in the Amended Complaint and determine, as a question of law, whether the "gravamen" of the allegations sound in negligence because they focus on "the quality or adequacy of the attorney's representation" or, in contrast, whether the "gravamen" of the allegations sound in fiduciary duty because they focus on "the attorney obtain[ing] an improper benefit from representing the client . . . ." *Won Pak*, 313 S.W.3d at 457; *Official Stanford Investors Comm. v. Greenberg Traurig, LLP*, 2014 WL 12572881, at *6 (N.D. Tex. Dec. 17, 2014) (Godbey, J.)

21. *Won Pak v. Harris* is instructive on the factual situation before the Court. 313 S.W.3d at 457-58. In that case, an attorney represented Sun Tec and multiple investors in a merger transaction to be accomplished via a new Texas limited partnership. Shortly after Sun Tec assigned its service contracts to the new partnership, the investors used their powers as general partner to exclude Sun Tec's owners, thereby stripping away future profits. Sun Tec's owners sued the attorney, alleging conspiracy, failure to disclosure material information, divided loyalties, and fraud. *Id*. at 458. In affirming the trial court's dismissal of the claims as sounding in negligence only, the Dallas Court of Appeals held that "the heart of [the] complaint is [the] alleged failure to provide adequate legal representation by his failure to properly inform, advise, and communicate with [plaintiffs]. As such, we conclude the gist of [the] allegations involves the quality of [the] representation rather than the integrity and fidelity of the attorney." *Id*.

22. Similarly here, the conduct allegations specific to Ellington on Count V sound in negligence and concern quality of the legal representation and failure to adequately inform or

advise the client, or others on behalf of the client, of a conflict of interest. *See, e.g.*, Am. Compl. ¶ 207 (alleged postpetition failure to disclose transfer); and ¶ 213 (providing false narratives). Kirschner never plausibly pleads, in support of Count V, that Ellington personally received an improper, direct financial benefit from any transactions addressed in Count V—at most, Kirschner merely alleges that funds were transferred through affiliated *entities* in which Ellington allegedly had an ownership share. *See* Am. Compl. ¶¶ 201-16. As Judge Godbey held in the *Official Stanford Investors Committee* decision, such omission is fatal to the breach of fiduciary duty claim against Ellington, and Count V must be dismissed. 2014 WL 12572881, at *6 (dismissing a fiduciary duty claim and holding that the law firm's work "in order to assure its continued employment by Stanford . . . does not allege an improper pecuniary interest supporting a conflict of interest; rather, it alleges the same general interest in getting paid that underlies every legal representation, an interest that Texas courts have consistently found insufficient to support a claim for breach of fiduciary duty"). These allegations sound in negligence, and, as a result, the claim must be dismissed. *Border Demolition & Entvl., Inc. v. Pineda*, 535 S.W.3d 140, 159-60 (Tex. App.—El Paso 2017, no pet.); *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.). [6]

> 3.  *The Amended Complaint Fails to Allege Ellington Did Anything but Obey and Follow Lawful Client Instructions.*

23.     The Amended Complaint states that Ellington performed the conduct alleged in support of the breach of the fiduciary duty claims (Counts V and XIV) at the instruction of Dondero, the founder and head of HCMLP and Ellington's client representative while serving as in-house counsel for HCMLP. Am. Compl. ¶¶ 204-207, 214-216, 277. Notably, however, the

---

[6] See also *Won Pak*, 313 S.W.3d at 458 (favoring obtaining one's own legal fees, even over the client's interests, is not sufficient to convert a negligence claim to a fiduciary duty claim); *Murphy v. Gruber*, 241 S.W.3d 689, 692-93 (Tex. App.—Dallas 2007, pet. denied) (same); *Beck*, 284 S.W.3d at 433 (expectation of compensation cannot convert a negligence claim into a fiduciary duty claim).

Amended Complaint fails to allege that such instructions constituted a breach of the Fourth LPA. Texas law is well established that an attorney cannot be liable for malpractice if they obey and follow a client's lawful instruction. *See Edwards v. Dunlop-Gates*, 344 S.W.3d 424, 433 (Tex. App.—El Paso 2011, pet. denied); *Isaacs*, 356 S.W.3d at 559; *see also Wolf v. Ramirez*, 622 S.W. 3d 126, 142 (Tex. App.—El Paso 2020, no pet.) (attorneys have "the duty to follow the client's instructions" as part of their fiduciary duty of integrity and fidelity).

> 4. *The Amended Complaint Cannot, as a Matter of Texas Law, Adequately Allege the Element of Harm, as Kirschner May Not Substitute his Assessment of Ellington's Legal Work for that of the Then-Client, HCMLP*

24. The Fifth Circuit has rejected post-hoc attempts such as those employed by Kirschner in the Amended Complaint to substitute a trustee's judgment for that of the then-client. *In re Segerstrom*, 247 F.3d 218, 226 (5th Cir. 2001) ("Texas courts have recognized that legal malpractice actions are 'intrinsically personal' and that the satisfaction of the client in a legal malpractice case is 'paramount.'") (*citing Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex. App.—San Antonio 1994, writ ref'd.); *Charles v. Tamez*, 878 S.W.2d 201, 208 (Tex. App.—Corpus Christi 1994, writ denied)).

25. In the foregoing well-reasoned decisions, state and federal courts following Texas law explain why allegations must focus on the satisfaction of the client then-served by the attorney and not on the satisfaction of a latter-arising bankruptcy estate asserting its dissatisfaction on behalf of the client. The courts also warn of the consequences of ignoring this rule when, as is the case here, a client's former litigation opponents gain control of the client. *See Zuniga*, 878 S.W.2d at 318 ("By agreeing to represent an insolvent defendant, a lawyer could be putting his own assets and insurance within reach of a plaintiff who otherwise would have an uncollectible judgment"); *Tamez*, 878 S.W.2d at 208 (allowing previous litigation opponents to seize control of a malpractice claim "does not promote . . . the overall purpose of the Texas legal system"). The Amended

11

Complaint fails to allege that HCMLP was anything but satisfied with Ellington's work when it was performed, and, on that basis, Counts V and XIV must be dismissed. *In re Segerstrom*, 247 F.3d at 226 (when the client "receive[d] the precise goal" he sought in the representation, then the acts of counsel cannot be said to have caused "injury" to the client).

> 5. *The Amended Complaint Fails to Plausibly Allege that Ellington's Conduct Caused HCMLP Damages.*

26.     A required element for a breach of a fiduciary duty or professional negligence claim against an attorney is but-for causation. In order to plead but-for causation, the plaintiff must allege that the client (1) was unaware of the illegality of its actions or (2) would have acted differently if advised differently. *See Taylor*, 2020 WL 4432848 at *6 (N.D. Tex. July 31, 2020) (finding it "speculative to assume" a change in action of counsel would have altered the action of the client); *In re Segerstrom*, 247 F.3d at 226 ("The estate must prove not only that an alternative trial strategy was available to [the client], but that [the client] would have pursued that strategy with independent representation") (*citing Trinity Universal Ins. Co. v. Bleeker*, 966 S.W.2d 489, 491 (Tex. 1998)). The Amended Complaint fails to adequately plead but-for causation.

27.     The Amended Complaint's conclusory assertion that "[b]ut for" the breach of "Dondero (and in turn, Strand), Ellington, and Leventon," HCMLP "never would have incurred" $350 million in allowed claims or would have resolved them "for substantially lower amounts" is insufficient to adequately plead and prove but-for causation as to Ellington. Am. Compl. ¶ 204. Kirschner fails to allege facts that, if true, would show that there would have been a different outcome in the UBS, Acis and Crusader litigations described in Count V absent Ellington's specific conduct. Likewise in Count XIV, concerning the Massand Transfers, Ellington is always mentioned as an add-on to Dondero—never for any conduct he allegedly performed himself. *See* Am. Compl. ¶¶ 277, 283 (repeating "Dondero and Ellington" six times).

12

28. The Amended Complaint fails to allege that Dondero and HCMLP would have acted any differently but for Ellington's "aid" in drafting legal documents to "consummate these transactions" in Count V or in connection with the alleged execution of and payment on consulting agreements or directing the use of escrow account funds in Count XIV. *See* Am. Compl. ¶¶ 70, 277, 283. The Amended Complaint alleges numerous facts that compel the opposite conclusion to but-for-causation, including the following: "Dondero made every material business, operational, management, and financial decision for HCMLP" (Am. Compl. ¶ 111); "Dondero was the 'ultimate decision-maker' for 'every [] entity in the firm and for the firm as a whole'" (Am. Compl. ¶ 115); and "Dondero frequently instructed HCMLP's employees to perform services in connection with Dondero's personal and business interests" (Am. Compl. ¶ 120). These general and non-specific allegations do not adequately plead but-for causation as to Ellington. *Taylor v. Scheef & Stone, LLP*, No. 3:19-CV-2602-D, 2020 WL 4432848, at *7 (N.D. Tex. July 31, 2020). ("[A]llegations that a lawyer 'assisted' a client's illegal action or provided deficient legal advice that contributed to the client's harm, without more, are insufficient to satisfy the causation prong [of a] professional negligence claim."). To take one example, as to the UBS liability, the allegations against Ellington in Count V include acting with Dondero to "cause" HCMLP to "orchestrate a surreptitious transfer" of non-debtor assets having a face value of $300 million which in turn led to an allowed claim of $125 million with UBS. But the Amended Complaint's repeated grouping of Ellington with Dondero is not sufficient to plead that Ellington's purported conduct was the but-for cause of the increase in the UBS settlement amount. The Amended Complaint does not set forth why or how HCMLP agreed to ***settle*** with UBS for a higher amount as a result of the alleged "surreptitious transfer" or that the so-called surreptitious transfer even involved assets of HCMLP. *See* Am. Compl. ¶ 206. Accordingly, Counts V and XIV must be

13

dismissed for failure to sufficiently allege but-for causation against Ellington.

6.     *The Amended Complaint Cannot Claim Breach of Fiduciary Duties for Allegedly Enabling Conduct Harmful to Creditors*

29.     Claims that a company's professionals aided and abetted the company in causing injury to its creditors do not belong to a party standing in the shoes of the company. *Reneker v. Offill*, 2009 WL 804134, at *6 (N.D. Tex. Mar. 26, 2009). As such, Kirschner, standing in the shoes of HCMLP, has no standing to assert claims resulting in injuries caused by HCMLP to its creditors.

30.     Moreover, Kirschner cannot recover against Ellington for the harms allegedly caused by HCMLP under the guise of a breach of fiduciary duty. In *Reneker*, Chief Judge Fitzwater dismissed a breach of fiduciary duty claim against a company's law firm for allegedly enabling conduct that harmed the company's creditors, which then resulted in the estate being liable to such creditors. *Id.* at *9. In so doing, he held that "allowing the [clients] to continue illegal and/or fraudulent activity, would only amount to a breach of fiduciary duty if [the law firm] owed the [clients] a fiduciary duty not to enable them to continue such activities." *Id.*; *see also Latitude Sols., Inc. v. DeJoria*, 922 F.3d 690, 697 (5th Cir. 2019) (adopting *Reneker* in reversing breaches of fiduciary duty damages award).

31.     Where the debtor "has joined with a third party in defrauding its creditors, the [debtor's] trustee cannot recover against the third party for the damage to the creditors." *Newby v. Enron Corp., (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 511 F. Supp. 2d 742, 797-798 (S.D. Tex. 2005) (*citing Breeden v. Kirkpatrick & Lockhart LLP* (*In re Bennett Funding Group, Inc.*), 336 F.3d 94, 100 (2d Cir. 2003)); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991). This is the so-called "*Wagoner* Rule." "[T]hough the Fifth Circuit has not directly addressed the *Wagoner* rule specifically, district courts within this Circuit have agreed

with the underlying principle." *Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech Identification Beams Sys., LLC*, 556 B.R. 815, 838 (W.D. Tex. 2017) (citing *In re Enron Corp.*, 2007 WL 789141, at *7); *Finova Capital Corp. v. Lawrence*, No. 399CV2552-M, 2000 WL 1808276, at *2 (N.D. Tex. Dec. 8, 2000). "The rationale for the *Wagoner* rule is the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation." *Bennett Funding*, 336 F.3d at 100. The corporation only may recover against the agent if he "is really committing fraud for his own benefit" and "has totally abandoned the principal's interests." *Id*. "This rule applies to professional liability claims," and the rule supports dismissal of the claim here. *Newby*, 511 F. Supp. 2d at 797.

**B.  Kirschner Fails to State a Claim Against Ellington for Civil Conspiracy to Breach Fiduciary Duties (Count XVI).**

*1.  As an Agent of HCMLP, Ellington Cannot Legally Conspire with Other Agents of HCMLP.*

32.  Count XVI fails because Ellington, as an HCMLP employee in the legal team, cannot conspire with other HCMLP employees when acting within the scope of his work authority, and the Amended Complaint fails to plausibly allege conduct outside of the scope of his authority. *See Graham v. Pazos De La Torre*, 821 S.W.2d 162, 166 (Tex. App.—Corpus Christi-Edinburg 1991, writ denied) ("the general rules are that the principal is liable for the authorized acts of his agent and an agent is liable only if he acts beyond the scope of his authority."); *see also III Forks Real Estate, L.P. v. Cohen*, 228 S.W.3d 810, 814 (Tex. App.—Dallas 2007, no pet.) ("A principal is liable for the fraudulent acts and misrepresentations of its authorized agent, even though the principal had no knowledge of the fraud and did not consent to it, whether or not the principal derives a benefit from it.").

33.  The Amended Complaint vaguely alleges that Ellington, Leventon, and Dondero "orchestrated myriad transactions to divert funds from HCMLP to Dondero," and in so doing, that

they "acted outside the scope of their HCMLP employments." Am. Compl. ¶¶ 293, 291. Yet the Amended Complaint does not plausibly allege that Ellington took any action that was not at the direction, or with the approval, of Dondero. Indeed, "[c]onduct that serves *any* purpose of the employer is within the scope of employment even if the conduct escalates beyond that assigned or permitted." *Fink v. Anderson*, 477 S.W.3d 460, 466 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (emphasis added). Strand (and thereby Dondero) had sole discretion to control HCMLP under the Fourth LPA. *See* Section 4.1(a) of the Fourth LPA ("The General Partner shall conduct, direct, and exercise full control of over all activities of the Partnership . . . *all management powers over the business and affairs of the Partnership shall be exclusively vested in the General Partner* . . .") (emphasis added). Dondero had the exclusive right under the Fourth LPA to determine what actions HCMLP should take and to determine whether any such actions served any purpose of HCMLP. Kirschner cannot rewrite the Fourth LPA, and, therefore, cannot (and does not) allege that any transactions breached the Fourth LPA, that Dondero exceeded the scope of his authority under the Fourth LPA, or that Ellington was not entitled to follow the instructions of Dondero. Accordingly, Count XVI must be dismissed.

> 2. *No Actionable Civil Conspiracy Exists Because the Amended Complaint Fails to Allege a "Meeting of the Minds" to Cause the Injury.*

34.      Even if a valid conspiracy claim could be pled in Texas under the facts alleged, the Amended Complaint fails to allege any non-conclusory facts to show that Ellington had the specific intent to harm HCMLP, as is required to allege a "meeting of the minds on the object or course of action." *See MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 192 (Tex. App.—El Paso 2017, no pet.) ("The conspiring parties must be aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement," and an "actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to

accomplish something lawful by unlawful means."). Agreeing to the conduct alone is not enough. Conspiracy "requires a specific intent to cause the intended injury." *In re Artho*, 587 B.R. 866, 885 (Bankr. N.D. Tex. 2018); *see also Chu v. Hong*, 249 S.W.3d 441, 447 (Tex. 2008) (same). Instead, the Amended Complaint vaguely alleges that Ellington and others "specifically intended to benefit themselves and Dondero at the expense of HCMLP," that Ellington's conduct was directed at enriching himself, and that Ellington was "aware that causing HCMLP to pay SAS's expenses . . . harmed HCMLP." Am. Compl. ¶¶ 294-96. These bare allegations are insufficient to support intent.

### C. Kirschner Fails to State a Claim for Unjust Enrichment or Money Had and Received Under Texas Law (Count XXVII).

#### 1. *Unjust Enrichment Is Not an Independent Claim Cognizable Under Texas Law.*

35. The Amended Complaint includes a claim for "unjust enrichment" against Ellington, but, as the Fifth Circuit has held, no such independent cause of action exists under Texas law. *Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) ("unjust enrichment describes the nature of certain claims and remedies, not a distinct cause of action itself"). Where, as here, a party alleges unjust enrichment in tandem with a money had and received claim, courts address both claims "as one claim for money had and received," and dismiss the unjust enrichment claim "as repetitive and superfluous." *See Assure Re Intermediaries, Inc. v. W. Surplus Lines Agency, Inc.*, No. 1:20-CV-189-H, 2021 U.S. Dist. LEXIS 110090, at *20 (N.D. Tex. 2021). As such, the unjust enrichment claim must be dismissed.

#### 2. *The Amended Complaint Fails to Sufficiently Allege Which Money Ellington Holds that Belongs to HCMLP.*

36. Dismissal of a money had and received claim is appropriate when the plaintiff fails "to identify what money [Defendant] actually received individually and why, exactly, that money belongs to [Plaintiff]." *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633,

675 (W.D. Tex. 2019). Here, Kirschner seeks to recover "portions" of Ellington's compensation (Am. Compl. ¶ 372), but fails to identify what Kirschner means by "portions." Kirschner does not identify either a specific monetary value or even a date range for what compensation could be at issue, let alone *why* those specific funds belong in good conscience to Kirschner. This failure to describe what "portion" of compensation belongs to Kirschner is fatal to his claim under 12(b)(6).

3. *To the Extent the Amended Complaint Seeks to Recover Employee Compensation Governed by Contract, Kirschner's "Money Had and Received" Claim Fails Under Texas Law.*

37. In the alternative, to the extent Kirschner is seeking to recover "[p]ortions of Ellington's . . . compensation" governed by the terms of a contract, Kirschner's quasi-contract claim of "money had and received" is barred and should be dismissed.

38. "In Texas, a claim for money had and received is an equitable or quasi-contract theory of relief that is available only when there is no contract between the parties that covers the subject matter of the dispute." *Assure*, 2021 U.S. Dist. LEXIS 110090, at *18 (quotations omitted). "When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). Here, Kirschner makes the conclusory assertion that there was "no valid express contract governing the subject matter of this dispute," and in turn seeks to recover "portions" of Ellington's compensation. Am. Compl. ¶¶ 375, 372. However, filings in the Bankruptcy Case, including by the Debtor itself, make clear that that this conclusory assertion is unequivocally false, and rather, that employee compensation was governed by contractual agreements.[7] Ellington's compensation under such agreements, inclusive of bonus amounts and base salary, is reflected in Ellington's 2018, 2017, and 2016 *Compensation and Benefit Statements*

---

[7] *See Motion of the Debtor for Entry of an Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations under Employee Bonus Plans and Granting Related Relief* [Dkt. 177], wherein the Debtor recognized, and sought to honor, its obligations under the annual employee bonus plan and deferred employee bonus plan.

issued by the Debtor. *See* Dkt. 1796-14. Given the contractual basis for Ellington's compensation, Kirschner's money had and received claim cannot lie.

### D. Kirschner Fails to State a Claim for Aiding and Abetting or Knowing Participation in a Breach of Fiduciary Duty (Counts XXXIV and XXXV)

39.     The Fourth LPA precludes Kirschner's claims for aiding and abetting or knowing participation in a breach of fiduciary duty by Dondero and Strand. To prevail on an aiding and abetting or knowing participation claim, Kirschner must demonstrate the existence of an underlying breach of fiduciary duty. *See Marshall v. Ribosome LP*, 2019 WL 2041062, at *6 (Tex. App.—Houston [1st Dist.] May 9, 2019, no pet.). For the reasons set forth above, Strand (and thereby Dondero) had "full control" over HCMLP by virtue of the express terms of the Fourth LPA. *See* Section 4.1(a) of the LPA ("The General Partner shall conduct, direct, and exercise full control of over all activities of the Partnership . . ."). The Fourth LPA granted Strand, and Dondero as Strand's director, broad authority to undertake every action that allegedly constituted a breach of their fiduciary duties. In view of the language of the Fourth LPA, Kirschner has not plausibly pled that Strand or Dondero acted beyond their powers under the Fourth LPA, nor does Kirschner allege that any of the alleged conduct breached the Fourth LPA.

40.     Moreover, the Amended Complaint does not (and cannot) plausibly allege that Ellington *knew* that he was assisting Dondero in breaching Dondero's fiduciary duties when Ellington followed the direction of Dondero. "The pleading standard a plaintiff must achieve is [] a high one; a plaintiff must plead facts making it reasonably conceivable that the alleged aider-and-abettor acted with scienter." *See Morrison v. Berry*, C.A. No. 12808-VCG, 2020 Del. Ch. LEXIS 200 (Del. Ch. June 1, 2020); *see also Cent. Tex. Express Metalwork v. Chavez*, No. 2:20-CV-193, 2021 U.S. Dist. LEXIS 159150, at *22 (S.D. Tex. 2021) (knowing participation requires a defendant to be "aware of his participation in the third party's breach."). Strand (and thereby

Dondero) had sole discretion to control HCMLP under the Fourth LPA, as well as sole discretion to direct Ellington as an attorney on behalf of HCMLP. Without actual knowledge or awareness by Ellington that the conduct he was instructed to perform was an underlying breach, the aiding and abetting or knowing participation claims fail. *See Jacobs v. Meghji*, C.A. No. 2019-1022-MTZ, slip op. at 25 (Del. Ch. Oct. 8, 2020) (dismissing claims against investor in a transaction when specific facts regarding knowing participation in a breach were lacking).

41.     The Amended Complaint also fails to allege facts to plausibly support a claim for aiding and abetting a breach of fiduciary duty under Count XXXIV. The Amended Complaint recognizes that Ellington took each of the actions pled in connection with the litigation liabilities as an attorney on behalf of HCMLP at the instruction HCMLP's principal, Dondero. Am. Compl. ¶ 419-427. Ellington cannot be held liable for following his client's lawful instructions, even if such instructions later resulted in liabilities to HCMLP. *See supra* Section II(A); *see also Chavez*, 2021 U.S. Dist. LEXIS 159150, at *22 (dismissing knowing participation claim when the alleged tortfeasors acted as agents of the principal).

**E.     Kirschner Fails to Satisfy the Reasonable Due Diligence Requirement Necessary to State a Preference Claim (Count XXXI).**

42.     Kirschner's claim for avoidance and recovery of preferential transfers fails under 11 U.S.C. § 547(b) due to Kirschner's failure to satisfy a condition precedent to his claim, *i.e.*, pleading reasonable due diligence and consideration of known affirmative defenses. Section 547(b) sets forth the prima facie elements of a trustee's preference action:

> (b) Except as provided in subsections (c), (i), and (j) of this section, the trustee may, based on *reasonable due diligence* in the circumstances of the case *and taking into account a party's known or reasonably knowable affirmative defenses* under subsection (c), avoid any transfer of an interest of the debtor in property—…

11 U.S.C. § 547(b) (emphasis added). When "a condition precedent [is] an element of the prima facie case, rather than an affirmative defense, it must be plead." *See Husted v. Taggart (In re ECS*

*Ref., Inc.)*, 625 B.R. 425, 453 (Bankr. E.D. Cal. 2020). In *Husted*, the bankruptcy court dismissed a trustee's preference transfer claim under section 547(b) when the complaint did "not expressly recite the efforts [the trustee] undertook to evaluate the merits of a prima facie case or reasonably knowable affirmative defenses … suggest[ing] a lack of pre-filing due diligence." *Id.* Although the Northern District of Texas has not yet decided whether due diligence is an element of a preferential transfer claim, it has recognized how the addition of the due diligence requirement to section 547(b) is meant "to curb perceived abuses by trustees of their ability to avoid and recover preferential transfers." *See Faulkner v. Lone Star Brokering, LLC* (*In re Reagor-Dykes Motors, LP*), Nos. 18-50214-RLJ-11, 20-05028, 20-05038, 20-05044, 2021 Bankr. LEXIS 1643 (Bankr. N.D. Tex. 2021) (dismissing preferential transfer claim on another basis). Moreover, "[i]f due diligence is an element, merely paraphrasing the element will not satisfy Rule 8." *See Arete Creditors Litig. Tr. v. TriCounty Fam. Med. Care Grp., LLC* (*In re Arete Healthcare LLC*), Nos. 19-52578-cag, 21-05079-cag, 2022 Bankr. LEXIS 322, at *29-30 (Bankr. W.D. Tex. 2022).

43.     In Count XXXI, Kirschner alleges two transfers to Ellington with the conclusory statement that such transfers "constitute[] an avoidable preference pursuant to Section 547(b) of the Bankruptcy Code." Am. Compl. ¶ 406. Kirschner does not even attempt to plead due diligence, let alone consideration of Ellington's affirmative defenses or other pre-filing due diligence. As such, the Amended Complaint falls woefully short of the requirements for a preference claim, and Count XXXI against Ellington should be dismissed.

**F.      Kirschner Fails to Satisfy the Heightened Pleading Standard Applicable to the Intentional Fraudulent Transfer Claim of Certain Massand Transfers (Count XXIII).**

44.     Kirschner has failed to plead with particularity, in accordance with Rule 9(b), "the circumstances constituting fraud or mistake" that support his intentional fraudulent transfer claims in Count XXIII.

45. Rule 9(b) requires a complaint to lay out the "who, what, when, where, why, and how the false statements were made and to whom they were made." *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 647 (N.D. Tex. 2020) (applying Rule 9 heightened pleading standard to intentional fraudulent transfer claims). Here, Count XXIII is premised on the underlying alleged fraudulent conduct of Dondero. Am. Compl. ¶ 346 ("Dondero caused HCMLP to make the Massand Transfers with actual intent to hinder, delay, and defraud HCMLP's creditors"). As a result, Kirschner must plead with particularity the factual basis for the alleged fraudulent intent of HCMLP (acting at the direction of Dondero) to state a plausible claim against Ellington, which he clearly has not done. *See Brown v. Douglas (In re Dual D Health Care Operations, Inc.),* Nos. 17-41320-ELM, Adv. No. 20-04059, 2021 Bankr. LEXIS 1934, at *35 (Bankr. N.D. Tex. 2021) (the complaint must "plead with particularity the facts relied upon by the plaintiff to support such badges of fraud and, ultimately, the actual fraud alleged").

46. Instead, the Amended Complaint concludes, with no factual support, that "Dondero caused HCMLP to make the Massand Transfers with actual intent to hinder, delay, and defraud HCMLP's creditors." Am. Compl. ¶¶ 333, 346. Kirschner does not plead with particularity how Dondero "caused" HCMLP to make the Massand Transfers or in what way Dondero intended the alleged harm. Kirschner's actual fraud claims are predicated on HCMLP receiving no consideration in exchange for its payments to Massand Capital, but these allegations are wholly conclusory and certainly not pled with the level of particularity mandated by Rule 9(b).

**G.  Kirschner Fails to State a Claim Against Ellington for Avoidance and Recovery of the Alleged Expense Transfers (Counts XXXII and XXXIII).**

47. The Amended Complaint seeks to avoid and recover "Alleged Expense Transfers" Ellington purportedly received from HCMLP within one year of the Petition Date under theories of constructive (Count XXXII) and intentional (Count XXXIII) fraudulent transfers. The statutory

bases Kirschner uses to pursue these claims are the same as recounted for the Massand Transfers, with the addition of section 548 of the Bankruptcy Code. Section 548(a)(1)(A) allows for the avoidance of intentional fraudulent transfers if the debtor "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud." Section 548 also allows for the avoidance of constructive fraudulent transfers when the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation" and was insolvent at the time of the transfer, or satisfied other enumerated conditions at the time of the transfer. These claims should be dismissed as well.

> 1. *Kirschner Fails to Plead That the Alleged Expense Transfers Are Anything Other than Valid Expense Reimbursements (Count XXXII and XXXIII).*

48. Kirschner seeks to challenge each and every expense reimbursement made to Ellington within one year of the Petition Date, but only "to the extent" they did not constitute legitimate reimbursement claims. Am. Compl. ¶¶ 402, 409, 414. In so doing, Kirschner fails to plead affirmatively that HCMLP did *not* receive reasonably equivalent value in exchange, and Kirschner improperly attempts to shift the burden to Ellington to prove the legitimacy of the payments. Without some alleged factual basis, the Court is not required to accept unsupported allegations that 100% of an employee's expense reimbursements are fraudulent. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a pleading does not set forth a legally "plausible claim" unless its non-conclusory allegations of wrongdoing are "more likely" than a lawful, alternative explanation). Kirschner has the burden of alleging facts showing the transfers are other than for reimbursement of valid expenses. Mere threadbare recitals such as these are insufficient to survive a motion to dismiss and certainly do not meet the pleading standard under either Rule 8 or 9(b).

49. Likewise, Kirschner's intentional fraudulent transfer claim is premised on the speculation that no underlying expenses related to the Alleged Expense Transfers exist. Kirschner

states that, "although Dondero and Ellington assert that the Alleged Expense Transfers constitute reimbursement for valid expenses, on information and belief, there is no factual basis for that assertion." Am. Compl. ¶ 416(b). Kirschner has access to **all** HCMLP's books and records, yet the Amended Complaint fails to state any underlying facts for how the expenses were not valid and reimbursable, and the Amended Complaint does not plead with particularity how or in what way Ellington intended to defraud HCMLP in relation to the Alleged Expense Transfers. *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 647 (N.D. Tex. 2020) (applying Rule 9(b) to intentional fraudulent transfer claim and noting it requires the complaint to lay out the "who, what, when, where, why, and how the false statements were made and to whom they were made."). Kirschner also does not plead with particularity how Ellington "caused" HCMLP to make the Alleged Expense Transfers. Because Kirschner fails to satisfy his pleading requirement under Rules 8 and 9(b), and 11 U.S.C. § 548, the intentional fraudulent transfer claim must be dismissed.

2.     *The Constructive Fraudulent Transfer Claim (Count XXXII) Fails to Allege Lack of Reasonably Equivalent Value of the Alleged Expense Transfers.*

50.     With respect to section 548(a)(1)(B)(i) of the Bankruptcy Code, a trustee may only avoid a transfer if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." Section 24.005(s) of the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24, "TUFTA") also requires a lack of "reasonably equivalent value in exchange for the transfer" as an element of a constructive fraudulent transfer claim. "A complaint that only states that the debtor received less than reasonably equivalent value does not meet the pleading standard of Rule 8." *Faulkner v. Lone Star Brokering, LLC (In re Reagor-Dykes Motors, LP)*, 2021 Bankr. LEXIS 1643, at *11-12 (Bankr. N.D. Tex. 2021). To sufficiently plead a "constructive fraudulent transfer under § 548, the complaint *must* plausibly allege that the debtor received less than reasonably equivalent value." *Id.* at *10 (emphasis added).

51.     Here, Kirschner fails to plausibly allege that HCMLP received less than reasonably equivalent value for the Alleged Expense Transfers to Ellington, which is fatal to his constructive fraudulent transfer claim (Count XXXII). The Amended Complaint in this case, like the one in *Reagor-Dykes*, lists the amount of expenses submitted by Ellington "without any information related to any invoices" and with conclusory statements regarding reasonably equivalent value.[8] These conclusory statements are insufficient to support Kirschner's requisite burden to show lack of reasonably equivalent value, and as such, the constructive fraudulent transfer claims must be dismissed. *See also Crescent Res. Litig. Tr. v. Nexen Pruet, LLC* (*In re Crescent Res., LLC*), No. 09-11507-CAG, Adv. No. 11-01082- CAG, 2012 Bankr. LEXIS 287, at *24-25 (Bankr. W.D. Tex. 2012) (ordering dismissal of section 548 fraudulent transfers when, "other than dates, amounts, and names of transferees . . . along with general conclusory allegations of insolvency and reasonably equivalent value, the Trust fails to support its allegations with factual assertions").

## CONCLUSION AND REQUESTED RELIEF

52.     The Court should dismiss without prejudice all claims against Ellington because Kirschner lacks standing, and the claims have been brought in a court that lacks subject matter jurisdiction to adjudicate them. Alternatively, the Court should dismiss with prejudice ten of the claims against Ellington because the Amended Complaint fails to state claims for which relief can be granted against Ellington.

---

[8] *See* Am. Compl. at ¶¶ 402, 411, 416(f) ("HCMLP received less than reasonably equivalent value in exchange for each of the Alleged Expense Transfers. Indeed, HCMLP received no value for the Alleged Expense Transfers, each of which was a gratuitous transfer from HCMLP to or for the benefit of Dondero and Ellington," and "HCMLP received less than reasonably equivalent value (and in fact, received zero consideration) in exchange for the Alleged Expense Transfers.").

Dated: July 11, 2022

By: */s/ Michelle Hartmann*
Michelle Hartmann
State Bar No. 24032402
**BAKER & MCKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
**BAKER & MCKENZIE LLP**
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for Scott Ellington*

## CERTIFICATE OF SERVICE

I certify that on July 11, 2022, a true and correct copy of the above and foregoing document was served via electronic email through the Court's CM/ECF system to the parties that have requested or consented to such service.

*/s/ Michelle Hartmann*
Michelle Hartmann