**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
**Counsel for the Charitable Defendants**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-sgj11 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P.,** | § | **Chapter 11** |
| | § | |
| Debtor | § | |

| | | |
|---|---|---|
| **MARC S. KIRSCHNER, AS TRUSTEE** | § | |
| **OF THE LITIGATION SUB-TRUST** | § | **Adversary No. 21-03076-sgj** |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| **JAMES D. DONDERO; MARK A.** | § | |
| **OKADA; SCOTT ELLINGTON; ISAAC** | § | |
| **LEVENTON; GRANT JAMES SCOTT** | § | |

i

III; FRANK WATERHOUSE; STRAND          §
ADVISORS, INC.; NEXPOINT               §
ADVISORS, L.P.; HIGHLAND CAPITAL       §
MANAGEMENT FUND ADVISORS,              §
L.P.; DUGABOY INVESTMENT TRUST         §
AND NANCY DONDERO, AS TRUSTEE          §
OF DUGABOY INVESTMENT TRUST;           §
GET GOOD TRUST AND GRANT               §
JAMES SCOTT III, AS TRUSTEE OF         §
GET GOOD TRUST; HUNTER                 §
MOUNTAIN INVESTMENT TRUST;             §
MARK & PAMELA OKADA FAMILY             §
TRUST – EXEMPT TRUST #1 AND            §
LAWRENCE TONOMURA AS                   §
TRUSTEE OF MARK & PAMELA               §
OKADA FAMILY TRUST – EXEMPT            §
TRUST #1; MARK & PAMELA OKADA          §
FAMILY TRUST – EXEMPT TRUST #2         §
AND LAWRENCE TONOMURA IN HIS           §
CAPACITY AS TRUSTEE OF MARK &          §
PAMELA OKADA FAMILY TRUST –            §
EXEMPT TRUST #2; CLO HOLDCO,           §
LTD.; CHARITABLE DAF HOLDCO,           §
LTD.; CHARITABLE DAF FUND, LP.;        §
HIGHLAND DALLAS FOUNDATION;            §
RAND PE FUND I, LP, SERIES 1;          §
MASSAND CAPITAL, LLC; MASSAND          §
CAPITAL, INC.; SAS ASSET               §
RECOVERY, LTD.; AND CPCM, LLC,         §
                                       §
     Defendants.                       §
                                       §

**BRIEF IN SUPPORT OF MOTION TO DISMISS**
**AND MOTION FOR MORE DEFINITE STATEMENT**

**\*\*RELIEF SOUGHT FROM DISTRICT COURT\*\***

CLO HoldCo, Ltd. ("CLO HoldCo"), Charitable DAF HoldCo, Ltd. ("DAF HoldCo"),

Charitable DAF Fund, L.P. ("DAF Fund"), and Highland Dallas Foundation ("HDF," together

with CLO HoldCo, DAF HoldCo, DAF Fund, and HDF, the "Charitable Defendants")[1] file this *Brief in Support* ("Brief in Support") of their *Motion to Dismiss and Motion for More Definite Statement* (the "Motion"),[2] and respectfully show as follows:

---

[1]    The Charitable Defendants have filed a *Motion to Withdraw the Reference* [Dkt. No. 59], which moves for immediate withdrawal of the reference to the District Court.  This Motion to Dismiss is filed without any waiver of the Charitable Defendants' right to adjudication of this matters by the District Court and any and all rights to a jury trial on all claims.

[2]    Any and all capitalized terms that are not defined herein shall have the same meaning as ascribed to them in the Motion.

**TABLE OF CONTENTS**

**PAGE(S)**

**I. THE TRUSTEE DOES NOT HAVE STANDING TO ASSERT COUNTS XV, XVI, OR XXX AND THEREFORE THESE COUNTS MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.** ................................................................1

   **A. The Plan did not retain the Aiding and Abetting Bad Conduct Action and Civil Conspiracy Action.** ................................................................................1

   **B. Further, the Trustee lacks standing under applicable state law regarding the Civil Conspiracy Action.** ................................................................................3

**II. THERE IS NO SUBJECT MATTER JURISDICTION OVER THE UNJUST ENRICHMENT ACTION, BECAUSE THE COMPLAINT WAS FILED AFTER THE EFFECTIVE DATE OF THE CONFIRMED PLAN, AND NO OTHER GROUND OF JURISDICTION IS PLEAD EXCEPT FOR 28 U.S.C §1334.** ................................5

**III. THE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.** ................................................................................................10

   **A. State law precludes this claim.** ................................................................10

   **B. The Unjust Enrichment Action is barred by affirmative defenses.** ............16

      *i. The doctrine of unclean hands bars the Unjust Enrichment Action* ...........17

      *ii. The doctrine of in pari delicto bars the Unjust Enrichment Action* ...........18

      *iii. The pleading of adequate legal remedies precludes the Unjust Enrichment Action* 20

**IV. THE TRUSTEE MUST MAKE A MORE DEFINITE STATEMENT OF THE GET GOOD AVOIDANCE ACTIONS TO REMEDY THE INCONSISTENT ALLEGATIONS.** ................................................................................................22

**V. CONCLUSION** ................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*,
    173 F. Supp. 3d 363 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 F.
    App'x 256 (5th Cir. 2018) .........................................................................................17

*Bank of Saipan v. CNG Fin. Corp.*,
    380 F.3d 836 (5th Cir. 2004) ...............................................................................11, 17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985)...........................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................10, 11

*Blanchard 1986, Ltd. v. Park Plantation, LLC*,
    553 F.3d 405 (5th Cir.2008) .......................................................................................2

*BMG Direct Mktg., Inc. v. Peake*,
    178 S.W.3d 763 (Tex. 2005).......................................................................................20

*Bohnsack v. Varco, L.P.*,
    668 F.3d 262 (5th Cir. 2012) .....................................................................................14

*Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams
    Sys., LLC*,
    566 B.R. 815 (W.D. Tex. 2017)..............................................................................8, 20

*Causey v. Sewell Cadillac–Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) .....................................................................................15

*Cicalese v. Univ. of Texas Med. Branch*,
    456 F. Supp. 3d 859 (S.D. Tex. 2020) .......................................................................24

*ClaimHub, Inc. v. Universal Risk Ins. Servs., Inc.*,
    No. H-10-2841, 2011 WL 13247456 (S.D. Tex. July 25, 2011) ................................5

*Container Store, Inc. v. Fortna Inc.*,
    No. 3:20-CV-2893-B, 2021 WL 1250334 (N.D. Tex. Apr. 5, 2021) .......................14

*Crane v. Napolitano*,
    920 F.Supp.2d (N.D. Tex. 2013) .................................................................................1

*In re Crescent Res., LLC*,
463 B.R. 423 (Bankr. W.D. Tex. 2011) .................................................................................2

*Croft v. Governor of Tex.*,
562 F.3d 735 (5th Cir. 2009) .................................................................................................1

*Daniels v. Church of the Living Word #4 PGT Assoc.*,
2001 WL 1445407 (N.D. Tex. Nov. 14, 2001).......................................................................5

*In re Dune Energy, Inc.*,
575 B.R. 716 (Bankr. W.D. Tex. 2017).................................................................................7

*Embraer S.A. v. Dougherty Air Tr., LLC*,
348 F. Supp. 3d 246 (S.D.N.Y. 2018)..................................................................................15

*Fisher v. Halliburton*,
667 F.3d 602 (5th Cir.2012) ................................................................................................16

*Floyd v. CIBC World Markets, Inc.*,
426 B.R. 622 (S.D. Tex. 2009) ............................................................................................19

*Fortune Prod. Co. v. Conoco, Inc.*,
52 S.W.3d 671 (Tex. 2000)...................................................................................................20

*Gilliam v. JPMorgan Chase Bank, N.A.*,
No. CV H-18-2698, 2019 WL 2648017 (S.D. Tex. June 27, 2019)......................................12

*Hancock v. Chicago Title Ins. Co.*,
635 F. Supp. 2d 539 (N.D. Tex. 2009) ................................................................................11

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
634 F.3d 787 (5th Cir. 2011) ................................................................................................2

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
885 F.2d 1149 (3d Cir.1989)................................................................................................18

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
143 F.3d 1006 (5th Cir. 1998) ..............................................................................................5

*Ingalls v. Beutel*,
No. A-05-CA-461-SS, 2007 WL 9718103 (W.D. Tex. Nov. 28, 2007)...................................4

*Janvey v. Golf Channel, Inc.*,
487 S.W.3d 560 (Tex. 2016)..........................................................................................23, 25

*Jones v. Gee*,
No. CV 18-5977, 2020 WL 564956 (E.D. La. Feb. 5, 2020) ...............................................22

vi

*Jones v. Wells Fargo Bank, N.A.*,
666 F.3d 955 (5th Cir. 2012) ...............................................................................18

*Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*,
20 F.3d 1362 (5th Cir.1994) ................................................................................16

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993)...............................................................................................10

*Matter of Life Partners Holdings, Inc.*,
926 F.3d 103 (5th Cir. 2019) ..............................................................................24

*Mack v. Newton*,
737 F.2d 1343 (5th Cir. 1984) ...........................................................................3, 4

*Massey v. Armco Steel Co.*,
652 S.W.2d 932 (Tex. 1983).................................................................................3

*Miller v. BAC Home Loans Servicing, L.P.*,
726 F.3d 717 (5th Cir. 2013) ..............................................................................16

*O'Dowd v. Trueger*,
233 F.3d 197 (3d Cir. 2000)..........................................................................17, 18

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001)................................................................................17

*In re OGA Charters, LLC*,
2017 WL 3141918 (Bankr. S.D. Tex. 2017)..........................................................5

*Matter of Okedokun*,
968 F.3d 378 (5th Cir. 2020) ..................................................................12, 13, 14

*Papasan v. Allain*,
478 U.S. 265 (1986)..............................................................................................10

*Paterson v. Weinberger*,
644 F.2d 521 (5th Cir. 1981) ................................................................................5

*In re Pompa*,
No. 06-31759, 2012 WL 2571156 (Bankr. S.D. Tex. June 29, 2012) .......................7

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) ..............................................................................11

*In re Rambo Imaging, L.L.P.*,
No. 07-11190FRM, 2007 WL 3376163 (Bankr. W.D. Tex. Nov. 8, 2007) ..........................24

*Rogers v. McDorman*,
    521 F.3d 381 (5th Cir. 2008) ....................................................................18, 19

*Matter of Royale Airlines, Inc.*,
    98 F.3d 852 (5th Cir.1996) ..................................................................................19

*In re Segerstrom*,
    247 F.3d 218 (5th Cir. 2001) ..............................................................................19

*Stonecipher v. Estate of Butts*,
    591 S.W.2d 806 (Tex. 1980)..................................................................................4

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)..............................................................................................22

*Tilton v. Marshall*,
    925 S.W.2d 672 (Tex. 1996)..................................................................................3

*In re TXCO Res., Inc.*,
    475 B.R. 781 (Bankr. W.D. Tex. 2012) ..............................................................21

*In re United Operating*,
    540 F.3d 351 (5th Cir. 2008) ................................................................................1

*Zakaria v. STL Int'l, Inc.*,
    No. 4:20-CV-01722, 2020 WL 4368096 (S.D. Tex. July 30, 2020) ......................12

**Statutes**

11 U.S.C. § 541.......................................................................................................17

11 U.S.C. § 544.........................................................................................................4

11 U.S.C. § 1123.......................................................................................................1

28 U.S.C. § 157.........................................................................................................5

TEX. BUS. & COM. CODE § 24.005(a)(1)..............................................................24

TEX. BUS. & COM. CODE § 24.005(a)(2)..............................................................25

TEX. BUS. & COM. CODE § 24.006(a) ..................................................................25

**Rules**

FED. R. BANKR. P. 7008 ........................................................................................11

FED. R. BANKR. P. 9019 ........................................................................................15

FED. R. CIV. P. 8 ................................................................................................................10, 11, 22

FED. R. CIV. P. 12 ...................................................................................................................... *passim*

As set forth in the Motion, for the reasons stated herein, the Charitable Defendants move for dismissal of the Aiding Bad Conduct Action, Civil Conspiracy Action, and Unjust Enrichment Action, and for a more definite statement of the Get Good Avoidance Actions.

## I.   THE TRUSTEE DOES NOT HAVE STANDING TO ASSERT COUNTS XV, XVI, OR XXX AND THEREFORE THESE COUNTS MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

The requirement that a litigant have standing to invoke the power of a federal court is one of the most significant case-or-controversy doctrines. *Crane v. Napolitano*, 920 F.Supp.2d, 724, 732 (N.D. Tex. 2013). The issue of standing directly implicates the court's subject matter jurisdiction and as such, the court should apply the standards for a motion to dismiss and may dismiss pursuant to Rule 12(b)(1) and 12(b)(6). *Id.* To prove standing, the plaintiff must establish injury-in-fact, causation, and redressability. *Crane*, 920 F.Supp.2d at 732; *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009) (internal citations omitted). The Trustee lacks standing to assert Counts XV, XVI, and XXX.

### A. The Plan did not retain the Aiding and Abetting Bad Conduct Action and Civil Conspiracy Action.

1.     While the Bankruptcy Code permits a plan to "provide for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any" claim belonging to the estate. *See* 11 U.S.C. § 1123(b)(3)(B), the Fifth Circuit has held that a representative of the estate may only continue to enforce a claim previously held by the estate after confirmation if the claim was retained by the plan, through retention language is "specific and unequivocal.". *In re United Operating*, 540 F.3d 351, 355 (5th Cir. 2008). Absent such language, the court must dismiss that claim for lack of subject matter jurisdiction under Rule 12(b)(1) and 12(b)(6). *See United Operating*, 540 F.3d at 356 (affirming dismissal pursuant to

1

Rule 12(b)(6)); *Rossco*, 613 Fed. App'x 302, 308 (5th Cir. 2015) (affirming dismissal pursuant to Rule 12(b)(1)).[3]

2.     Whether courts cite to Rule 12(b)(1) or Rule 12(b)(6), the applicable standard is clear: "in order for a debtor (or successor to the debtor) to have standing to bring an action post-confirmation, the plan of reorganization must contain specific and unequivocal language retaining that cause of action." *In re Crescent Res., LLC*, 463 B.R. 423, 426 (Bankr. W.D. Tex. 2011).

3.     Here, the Schedule of the Retained Causes of Action fails the "specific and unequivocal" language requirement of the Fifth Circuit.  Notwithstanding the boilerplate listing of claims and causes of action retained (which itself is insufficient), there is no mention of civil conspiracy, and no specific mention of aiding and abetting breach of fiduciary duty under Delaware law or knowing participation in breach of fiduciary duty under Texas law. The Fifth Circuit has specifically found that blanket descriptions used by the Trustee, like "claims brought under state law, claims brought under federal law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims," ___are not a specific and unequivocal___ reservation.  *Crescent Res.,* 463 B.R. at 430 (citing to *United Operating*, 540 F.3d at 354). Here there is not even the proscribed vague, general reservation, and therefore the Trustee lacks standing to bring either, and therefore this Court is without subject matter jurisdiction to adjudicate the supposed claims raised in Counts XV and XVI.

---

[3]     As the Fifth Circuit has explained while a dismissal for lack of constitutional standing should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6). *See Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir.2008); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 (5th Cir. 2011)

**B. Further, the Trustee lacks standing under applicable state law regarding the Civil Conspiracy Action.**

4.      Even had the Civil Conspiracy Action been retained, state law precludes the Trustee.  To establish a civil conspiracy claim, the plaintiff must establish: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). However, conspiracy is a derivative tort, and a defendant's liability for conspiracy "depends on participation in some underlying tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).  There is no underlying tort upon which to hang this claim.  In fact, the Civil Conspiracy Action does not relate to any alleged "breach of fiduciary duty", rather it is derivative of the Get Good Avoidance Actions.  But for the fraudulent transfer claims the Trustee has no alleged damages.  While Trustee purposefully tried to tie the Civil Conspiracy Action to his breach of fiduciary duty claim to sidestep any standing argument, he failed.

5.      The Fifth Circuit has specifically found that under Texas law, a bankruptcy trustee does not have a cause of action for civil conspiracy related to a fraudulent transfer. *Mack v. Newton*, 737 F.2d 1343, 1356 (5th Cir. 1984).  In *Mack*, the trustee brought an action against debtor's principals and lender seeking recovery on basis of civil conspiracy, conversion, fraudulent conveyances, and usury.  The Fifth Circuit reiterated the Texas Supreme Court's prior holding that "a general creditor does not have a cause of action for civil conspiracy when a debtor's property is conveyed to others to evade payment."  Further, "[t]he essence of a cause of action for conspiracy is damage resulting from the commission of a wrong which injures another, and not the conspiracy itself.  The damage suffered by a general creditor when property is fraudulently conveyed to another to evade payment is the deprivation of an opportunity to make a levy on the

3

property. This damage, however, is too remote to support recovery." *Id.*; *Stonecipher v. Estate of Butts*, 591 S.W.2d 806, 808 (Tex. 1980).

6.      The Fifth Circuit concluded that "since the Trustee is a representative of [debtor's] general creditors in this action, it has suffered no damage for which it may recover under a cause of action for civil conspiracy as such." *Mack*, 737 F.2d at 1356.[4] *Clapper v. American Realty Investor*s further confirms the Trustee's lack of standing. No. 3:14-CV-2970-D, 2015 WL 3504856, at *4–5 (N.D. Tex. June 3, 2015). There, discovering that the defendants had transferred all of its stock for no value, the creditors filed suit for TUFTA fraudulent conveyance, unjust enrichment, and civil conspiracy, amongst others. The defendants moved to dismiss the civil conspiracy claim arguing that under Texas law, general creditors, such as the plaintiffs, may sue for fraudulent transfers but cannot recover damages for conspiracy to commit a fraudulent conveyance. *Id.* at *4. The court agreed and explained that "a mere general creditor without a lien has no interest in the debtor's property, and hence is not legally injured by any conspiracy with the debtor to aid him in disposing of his property in order to evade the payment of his financial obligations, and cannot maintain an action based upon such conspiracy." *Id.* Here, the Trustee is utilizing his Section 544(b) avoidance powers on behalf of the unsecured creditors, attempting to avoid the Get Good Transfer, pursuant to TUFTA.

7.      Where, as here, "because a mere general creditor without a lien has no interest in the Debtor's property, and hence is not legally injured by any conspiracy with the Debtor to aid

---

[4]      *See also Ingalls v. Beutel*, No. A-05-CA-461-SS, 2007 WL 9718103, at *4 (W.D. Tex. Nov. 28, 2007) (holding that the *Mack* opinion was not superseded by 11 U.S.C. § 544(a)(1), and that the trustee did not have standing to bring a cause of action for civil conspiracy). Clearly under Section 544(b) the Trustee's rights are derivative of the rights of particular unsecured creditors. Under 11 U.S.C. § 544(b), "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b).

him in disposing of his property in order to evade the payment of his financial obligations," the Trustee lacks standing to maintain its conspiracy claim. *ClaimHub, Inc. v. Universal Risk Ins. Servs., Inc.*, No. H-10-2841, 2011 WL 13247456, at *7 (S.D. Tex. July 25, 2011). Therefore, the Trustee lacks standing on this additional ground regarding the Civil Conspiracy Action, necessitating dismissal pursuant to Rule 12(b)(1) or 12(b)(6).

## II.    THERE IS NO SUBJECT MATTER JURISDICTION OVER THE UNJUST ENRICHMENT ACTION, BECAUSE THE COMPLAINT WAS FILED AFTER THE EFFECTIVE DATE OF THE CONFIRMED PLAN, AND NO OTHER GROUND OF JURISDICTION IS PLEAD EXCEPT FOR 28 U.S.C §1334.

8.    A federal court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The Fifth Circuit recognizes a distinction between a "facial" and a "factual" attack upon a complaint under Rule 12(b)(1).[5] When a defendant submits a factual attack, he must provide support with affidavits, testimony, or other evidentiary materials, and is required to submit facts through some evidentiary method and has the burden of proving by a preponderance of evidence that the court does have subject matter jurisdiction. *Paterson*, 644 F.2d at 523. Here, the Charitable Defendants' factual attack and supporting evidence reflect that there is no subject matter jurisdiction over the Unjust Enrichment Action.

9.    The Trustee pleads the sole basis for jurisdiction over the matter is 28 U.S.C. §§ 157 and 1334, asserting that the proceeding is one arising under or relating to the bankruptcy

---

[5]    *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *see also In re OGA Charters, LLC*, 2017 WL 3141918, at *16 (Bankr. S.D. Tex. 2017); *Daniels v. Church of the Living Word #4 PGT Assoc.*, 2001 WL 1445407, at *1 (N.D. Tex. Nov. 14, 2001). The Charitable Defendants acknowledge that they bring a factual attack.

petition filed by HCMLP. *See* Amended Complaint, ¶33. 28 U.S.C. § 1334 provides for original and exclusive jurisdiction of all cases under Title 11 and all proceedings arising under, arising in, or related to a bankruptcy case, i.e. bankruptcy jurisdiction. Here, the Adversary Proceeding was commenced post-confirmation and post-plan effective date. The Unjust Enrichment Action could only have been a proceeding "related to" the bankruptcy case.

10. In *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, the Fifth Circuit announced that it would apply an "exacting theory of post-confirmation bankruptcy jurisdiction." 266 F.3d 388, 391 (5th Cir. 2001). In *Craig's Stores*, the Fifth Circuit expressly rejected the "related to" test for determining whether the bankruptcy court had jurisdiction over the post-confirmation action. Instead, the Fifth Circuit imposed its "more exacting theory of post-confirmation bankruptcy jurisdiction," explaining that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Id.* at 390.

11. Declining to find that the bankruptcy court had post-confirmation jurisdiction, the Fifth Circuit reasoned that (i) the debtor's claim principally dealt with post-confirmation relations between the parties, (ii) no "antagonism" or claim was pending between the parties at the time of confirmation, ***and*** (iii) no facts or law deriving from the reorganization or the plan were necessary to the claim asserted by the debtor against the defendant. *Craig's Stores*, 266 F.3d at 391 (emphasis supplied). The Fifth Circuit dismissed the debtor's argument that the bankruptcy court had post-confirmation jurisdiction because the status of the debtor's contract would affect distributions to creditors under the plan, noting that "the same could be said of any other post-confirmation contractual relations in which [the debtor] is engaged." Nor was the court persuaded by the "[t]he

fact that [the relevant contract] existed throughout the reorganization and was, by implication, assumed as part of the plan," noting that this "is of no special significance." *Id.*

12.  Bankruptcy jurisdiction must be evaluated over each claim independently.[6] *In re Pompa*, No. 06-31759, 2012 WL 2571156, at *3 (Bankr. S.D. Tex. June 29, 2012) (citing *WRT Creditors Liquidation Trust v. C.I.B. C. Oppenheimer Corp.*, 75 F.Supp.2d 596, 608 (S.D. Tex. 1999)). Therefore, to determine if post-confirmation bankruptcy jurisdiction exists, a court must consider as to each claim the distinguishing factors of whether:

> (1) the claims primarily arise from pre-confirmation or post-confirmation relations between the parties; (2) any claims or antagonisms were pending between the parties on the date of plan confirmation; ___*and*___ (3) any facts or law deriving from the bankruptcy are necessary to the claims.

*In re Dune Energy, Inc.*, 575 B.R. 716, 725 (Bankr. W.D. Tex. 2017) (emphasis supplied).

13.  In other words, a three-part test. The Unjust Enrichment Action admittedly relates to pre-confirmation relations, so part 1 favors jurisdiction. However, prior to the complaint, there was no mention of any claim against CLO HoldCo in any way related to the HCLOF Investment or the HarbourVest Claim which the Unjust Enrichment Action is. Further, while the Plan provides the authorization for the Litigation Sub-Trust to pursue Estate Claims (as defined in the Plan), litigation of Estate Claims requires no reference to facts or law deriving from the bankruptcy that are necessary to the Estate Claims, which could be litigated in any other court having jurisdiction

---

[6]  Whether the jurisdictional statute speaks in terms of jurisdiction over a "civil action" (as does, e.g., the general federal question statute and the diversity statute) or a "proceeding" (as does the bankruptcy jurisdiction statute), "[o]riginal jurisdiction attaches on a claim-by-claim or 'claim-specific' basis." Indeed, "the original jurisdiction of the district courts is claim-specific in a pervasive and fundamental sense that pertains to the entire statutory and constitutional structure of federal subject matter jurisdiction." 38 No. 2 Bankruptcy Law Letter NL 1.

on the same basis as in federal court  So, parts 2 and 3 are the linchpin components of the analysis (the test is conjunctive).  We focus on the "pending antagonism" prong first.

14.     The exact definition of an antagonism has not been settled in the Fifth Circuit. *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC,* 566 B.R. 815, 831 (W.D. Tex. 2017).  Some bankruptcy courts have determined that the "pending antagonism" is met where there is a specific preservation of claims in the plan and assignment of those claims to a creditor's trust for prosecution, with net recoveries to be distributed to creditors pursuant to the plan.  *Id.* at 831.

15.     In response to various motions to withdraw the reference, the Trustee argues that those cases should apply here, but much unlike those cases, here, there was so no such preservation. The Schedule of Retained Causes of Action lists certain persons and entities in the body, but not CLO HoldCo; however, the Schedule of Retained Causes of Action adds any entities listed on Annex 1 which includes several ***hundreds*** of entities and any entity "related to" those entities. Such an overly broad reservation of any and all generically described claims (with no factual underpinning or even assertion that any such claims exist) against hundreds of parties, none of whom are connected to any particular claim of cause of action by any suggestion within the description of claims and causes of action reserved, cannot be sufficient "antagonism or claim" to confer bankruptcy jurisdiction post-confirmation, much less post-effective date, as such a mechanism would render the required more exacting test for post-confirmation jurisdiction meaningless.  If such a mechanism would accomplish an expansion of jurisdiction, then we are not really talking about jurisdiction, except that which can be conferred by sharp lawyering.

16.     Worse, here, months after confirmation of the Plan, the Trustee took the position that: all previous investigation of estate causes of action was limited to facts and circumstances

8

connected with "specific transactions" that were already made the subject of an adversary complaint, and that it would be "simply inaccurate" to state that the "Committee had already conducted an expansive investigation of estate causes of action." *See* Appendix, p. 00453-00454. So in August 2021, months post-confirmation and even post-effective date, the Trustee took the position that there had not yet even been an ***investigation*** of estate causes of action except for certain claims already raised within a filed complaint. Without investigation, the Trustee cannot in good faith argue there was a pending antagonism.

17.    So while the Fifth Circuit has not set forth an exact definition of "pending antagonism", to find that prong met here—where there had not even been an investigation into potential causes of action—would render the requirement of a pending antagonism meaningless, which has been the Trustee's position. According to the Trustee, if a cause of action accrued pre-confirmation, the antagonism factor is met. *See* Dkt. No. 155, p. 15-16. The Bankruptcy Court adopted this same rationale when it determined that bankruptcy subject matter jurisdiction exists in its *Report and Recommendation* related to the motions to withdraw the reference. Dkt. No. 151. According to the Bankruptcy Court, the "exception to jurisdiction at issue in *Craig's Store's*" does not arise where a trustee of a litigation trust created under a confirmed plan of reorganization for the benefit of creditors pursues post-confirmation causes of action, predicated on pre-confirmation conduct, for the creditors' benefit. *Id*. at 15. In other words, there is no "pending antagonism" requirement, only an accrual pre-confirmation requirement.

18.    But this short-cut *per se* rule collapses two of these critical factors into one (recall part 1 - whether or not the claim accrued pre-confirmation, a distinct factor from part 2 - that there be a "pending antagonism"), and replaces the analytical framework required by the Fifth Circuit, which sets forth three distinct "critical" factors, with one of the Bankruptcy Court's making.

19.     This *per se* rule is particularly imprudent as applied here where, there was not only no "pending antagonism," but as well, no pre-confirmation articulation of specific causes of action or even investigation of causes of action.

20.     Because there was no pending antagonism present as of confirmation related to the Unjust Enrichment Claim, and no facts or law deriving from the bankruptcy that are necessary to the Unjust Enrichment Claim, there is no post-confirmation bankruptcy jurisdiction, and this Court lacks subject matter jurisdiction over the Unjust Enrichment Claim on this additional ground. Dismissal of the Unjust Enrichment Claim is required under Rule 12(b)(1).

## III.     THE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.[7]

### A.     State law precludes this claim.

21.     In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Uni*t, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Amended Complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). FED. R. CIV. P. 8(a)(2) ("Rule 8") "requires a showing, rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, [the complaint] 'stops short of the line between possibility and plausibility of 'entitlement

---

[7]     This Article III is applicable in the event the Court does not dismiss on the basis of lack of subject matter jurisdiction as plead and argued above.

to relief.'" *Ashcroft*, 556 U.S. at 678.  After all, "where the well-pleaded facts do not permit the court to infer more than the mere ***possibility*** of misconduct, the complaint has alleged—but it has not shown—the pleader is entitled to relief."  *Id.* at 679 (emphasis added, internal quotations omitted).

22.    The Supreme Court's interpretation of Rule 8, incorporated here pursuant to FED. R. BANKR. P. 7008(a), requires pleadings that demonstrate "facially plausible claims," a standard satisfied when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Courts should not strain to find inferences favorable to the plaintiff or accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). Rather, after removing the conclusory allegations, a complaint must contain sufficient well pleaded factual allegations to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

23.    As set forth in the Motion, the Trustee amended the Unjust Enrichment Action related to the HCLOF Investment to plead that the claim was one for unjust enrichment "or money had and received."  This amendment was necessitated because Texas law does not recognize unjust enrichment as a claim, but rather, unjust enrichment is a theory of recovery that a plaintiff can pursue through several equitable causes of action, including money had and received.  *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560–61 (N.D. Tex. 2009) (citing *Redwood Resort Props., LLC v. Holmes Co.*, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006).  Here, the Trustee has solely plead money had and received as an equitable doctrine to prevent unjust enrichment and therefore, the only theory of recovery plead by the Trustee in Count XXX, as amended, remains unjust enrichment. *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) ("Money

11

had and received is an equitable doctrine applied to prevent unjust enrichment." (quoting *Miller–Rogaska, Inc. v. Bank One, Tex., N.A.*, 931 S.W.2d 655, 662 (Tex. App. 1996, no pet.))).

24.     Normally under an unjust enrichment theory of recovery, "a plaintiff can only recover [for unjust enrichment] when 'one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'"[8]  Some courts also recognize that unjust enrichment can occur when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain."[9]

25.     The Fifth Circuit in *Okedokun* considered the meaning of "unconscionable benefit" in the context of unjust enrichment.  There, the debtor had defaulted on a loan from his private lender and the lender retained an attorney, Prins, to post the property for sale.  968 F.3d at 385.  The morning of the foreclosure sale the debtor filed for bankruptcy but the foreclosure sale nonetheless proceeded with an investor, Elbar wiring $2.4 million to Prins with knowledge that automatic stay was in place.  *Id.*  Prins then stole the $2.4 million and paid off other clients from whom he had stolen.  *Id.*  Elbar sued the other clients in the debtor's bankruptcy case under a theory of unjust enrichment, amongst others.  *Id.* at 390.

26.     In rejecting the unjust enrichment theory, the Fifth Circuit ***rejected*** the argument that it would be unconscionable for the other clients to retain what they were paid.  The Fifth Circuit explained:

> The bankruptcy court noted that "it is difficult to understand how a party receives
> a windfall which would be unconscionable to retain when that party genuinely

---

[8]     *Matter of Okedokun*, 968 F.3d 378, 391 (5th Cir. 2020) (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)); *Zakaria v. STL Int'l, Inc.*, No. 4:20-CV-01722, 2020 WL 4368096, at *4 (S.D. Tex. July 30, 2020) (quoting *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010)).

[9]     *Gilliam v. JPMorgan Chase Bank, N.A.*, No. CV H-18-2698, 2019 WL 2648017, at *7 (S.D. Tex. June 27, 2019) (citing *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.)).

believed it was receiving back its own funds." We agree. Elbar does not indicate how any action on the part of [the other clients] amounts to fraud, duress, or the taking of an undue advantage. Elbar argues that it would be unconscionable for [the other clients] to retain the benefits of Prins's actions. But the bankruptcy court correctly pointed out the uncomfortable truth: "Elbar is the ultimate source of its own misfortune." Elbar broke the law when it violated the automatic stay by wiring Prins $2.4 million; to make [the other clients] hold the bag for that decision would be the unjust result. The bankruptcy court did not err in denying Elbar's claim.

*Id*.

27.     Similarly here, according to the Amended Complaint, it was the bad acts of **_HCMLP_** that caused damage to HarbourVest.  CLO HoldCo, an advisee of HCMLP, simply sold a portion of its interest in an entity, HCLOF, to HarbourVest while being advised with respect to investment decisions by HCMLP.  The Amended Complaint represents the *Okedoku* situation in only slightly different and worse clothing.  Here, HCMLP is accused by a third party of bad/illegal conduct, that if true (abuse of HCLOF both prior to and after the acquisition by HarbourVest), created claims on behalf of HarbourVest against HCMLP.

28.     It was HarbourVest, a third party, that invested in HCLOF by purchasing a 49% share from CLO HoldCo, on the advice of HCMLP (and CLO HoldCo that sold pursuant to the HCMLP advice).  The Amended Complaint makes no allegation that HCMLP was damaged at all by the purchase by HarbourVest from CLO HoldCo; nor any assertion that any assets of HCMLP were somehow ferreted out to CLO HoldCo; nor any assertion that CLO HoldCo, in taking the advice of HCMLP, did anything wrong.

29.     So, in fact, this situation is far less of a claim than that asserted in *Okedoku*, as at least there, the plaintiff alleged that the third party transferees received ill-gotten funds from plaintiff through the payment by Prins.  There is no Prins here, no funds of HCMLP that somehow wound up in the hands of CLO HoldCo.  The Trustee's Unjust Enrichment Action is more analogous to a different version of *Okedoku*, one in which Prins himself would have sued the

clients he paid after stealing from Elbar, on the basis that the payment to the clients he first stole from damaged him because he had to steal from Elbar to get the money to pay them with. The asserted ground for the Unjust Enrichment Action is that the HCMLP misconduct toward HarbourVest (which also would have damaged CLO HoldCo just as much), caused the HarbourVest Claims, and without recognition of the backwardness of its assertions, now CLO HoldCo owes HCMLP the money it received from HarbourVest to assuage HCMLP for its own misconduct. Like in *Okedokun*, the ultimate source of HCMLP's "misfortune" is HCMLP (and, allegedly, Dondero/Ellington). To make CLO Holdco pay HCMLP to full amount received, so that CLO HoldCo should receive nothing for its interest in HCLOF sold to HarbourVest, when the sale was advised by HCMLP, and the misconduct of HCMLP is the cause of its troubles, would surely be the kind of "money had a received claim" that would give CLO HoldCo an unjust enrichment right against HCMLP, the bad actor; not the reverse.

30. And still worse here, despite the fact that the HarbourVest claim included fraudulent inducement component, the allegations did not implicate CLO HoldCo, but rather the abuse by HCMLP of HCLOF (using the entity as a litigation pawn which devalued it  =and not disclosing this activity to HarbourVest, which if true would also have damaged CLO HoldCo's interest in HCLOF). As well, HCMLP, under the direction of Seery, did ***not*** settle the HarbourVest Claims because of the purported fraud in the inducement claims, which under any applicable law, requires that the plaintiff reasonably rely upon the purported misrepresentation.[10]

---

[10]     *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012)(under Texas law, fraud in the inducement requires reliance by the plaintiff*); Container Store, Inc. v. Fortna Inc*., No. 3:20-CV-2893-B, 2021 WL 1250334, at *5 (N.D. Tex. Apr. 5, 2021) (Texas fraudulent inducement and common-law fraud share the same basic elements).

31.     Because the Trustee has asserted a cause of action expressly arising from the Settlement Agreement, the Settlement Agreement is a document referred to in the Amended Complaint and central to the Trustee's claim, and thus, properly considered in a Rule 12(b)(6) motion. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).   The Settlement Agreement was subject to approval of the Bankruptcy Court under FED. R. BANKR. P. 9019, in connection with which a bankruptcy court relies upon "the opinions of the debtor, the parties to the settlement, and professionals in evaluating..." *Embraer S.A. v. Dougherty Air Tr., LLC*, 348 F. Supp. 3d 246, 258 (S.D.N.Y. 2018).   Therefore, the testimony by HCMLP to the Bankruptcy Court regarding the Settlement Agreement is an integral part of the Settlement Agreement itself and also properly considered in a Rule 12(b)(6) motion.

32.     HCMLP testified to the Bankruptcy Court that HarbourVest, a highly sophisticated and experienced investor which managed over one hundred billion dollars, retained two of the most well-known law firms in the world to conduct due diligence into the HCLOF Investment. *See* Appendix, p. 00561.   While HCMLP reached the Settlement Agreement with HarbourVest, as explained by Mr. Seery, the driver behind the Settlement ***was not the fraud in the inducement claim*** which was subject to strong defenses, but rather the Improper Legal Fees.   *See* Appendix, pp. 00508, 00509.[11]   And in explaining the reasonableness of the settlement, Mr. Seery testified that "the actual value going out … well could be, is less than on a pro forma basis the fees that were taken and charged to HCLOF." *Id.* at p. 00505.

---

[11]     As Mr. Seery explained to the Bankruptcy Court: "with respect to the claim around the fees, I believed there was significant risk. With respect to the other claims, I thought our defenses would make them worthless."  Appendix, p. 00508.

33.     Therefore, the only tether plead by the Trustee between CLO HoldCo and the HarbourVest Claims—the inducement by HCMLP to purchase the HCLOF Investment from CLO HoldCo—was expressly _**not**_ the basis for the HarbourVest Settlement.  Rather, it was the Improper Legal Fees which, if HCMLP did cause HCLOF to pay the Improper Legal Fees, CLO HoldCo itself was damaged just as much as HarbourVest was, because it owned close to the same share in HCLOF.

34.     CLO HoldCo received the price for what it sold while being advised by HCMLP. HCMLP allegedly charged the Improper Legal Fees harming all investors in HCLOF—CLO HoldCo and HarbourVest alike, and HCMLP settled with HarbourVest expressly based upon these Improper Legal Fees.  And now the Trustee, standing in the shoes HCMLP, is asserting that CLO HoldCo as its advisee is liable to HCMLP, the advisor, because the advisor hurt a third party in the same way it harmed CLO HoldCo.[12]  Objectively shameless.

35.     Taking the facts plead in the Amended Complaint as true, the Trustee has not plead a theory of recovery of unjust enrichment against CLO HoldCo.

### B.     The Unjust Enrichment Action is barred by affirmative defenses.

36.     When an affirmative defense appears on the face of the pleadings, a complaint can be dismissed pursuant to Rule 12 (b)(6).[13]

---

[12]     The nonsensical nature of the Unjust Enrichment Claim is amplified when considering the requested damages.  The Trustee asserts that CLO Holdco should have to disgorge "all payments, transfers, profits, fees, benefits, incentives, and other things of value obtained by it as a result of its unjust receipt and use of the proceeds of the HarbourVest investment."  *See* Amended Complaint, ¶399.  So according to the Trustee, CLO HoldCo should have to pay the estate more than $75 million when according to HCMLP, the net economic impact of the HarbourVest Claims was between $12 and $14 million.  *See* Appendix, p.00 459.  Therefore, again according to the Trustee, HCMLP's estate is entitled to receive $60 million more than its purported harm, which of course was based solely upon HCMLP's own misconduct.  Such a windfall predicated upon the debtor's own misconduct is unconscionable.

[13]     *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir.1994) (citation omitted); *see also Fisher v. Halliburton*, 667 F.3d 602, 608–09 (5th Cir.2012); *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013).

### i.   The doctrine of unclean hands bars the Unjust Enrichment Action

37.     The "unclean" hands doctrine is an affirmative defense to equitable relief. *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004). The doctrine of unclean hands requires that the party seeking equitable relief must come into court with clean hands. *Bank of Saipan*, 380 F.3d at 840. Once the defense is raised, "a plaintiff seeking equitable relief... must show that [it] has not contributed to the harm at issue." *Id*. The unclean hands doctrine applies when a plaintiff's conduct "has been unconscientious, unjust, marked by a want of good faith or violates the principles of equity and righteous dealing."[14]

38.     In bankruptcy, a trustee is authorized to "commence and prosecute any action or proceeding in behalf of the estate before any tribunal." *See Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356-57 (3d Cir. 2001) (citing FED. R. BANKR. P. 6009; 11 U.S.C. §§ 1207, 1306). "Such actions fall into two categories: (1) those brought by the trustee as successor to the debtor's interest included in the estate under Section 541, and (2) those brought under one or more of the trustee's avoiding powers." *Id*. (citing 3 Collier on Bankruptcy ¶ 323.03[2] (15th rev. ed. 2001)).

39.     As to the former, which is implicated here, where a trustee brings claims as a successor to HCMLP's interest, Section 541 covers such claims, and under Section 541, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement" of bankruptcy. 11 U.S.C. § 541(a); *see also O'Dowd v. Trueger*, 233 F.3d 197,

---

[14]     *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 407 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 F. App'x 256 (5th Cir. 2018).

202 (3d Cir. 2000). These legal and equitable interests include causes of action. 3 Collier on Bankruptcy ¶ 323.02[1]; *accord O'Dowd*, 233 F.3d at 202–03.

40.     Courts have held that "in actions brought by the trustee as successor to the debtor's interest under Section 541, the trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. Conversely, the trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.'" *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 885 F.2d 1149, 1154 (3d Cir.1989) (quoting Collier on Bankruptcy ¶ 323.02[4]).

41.     Thus, here, accepting the facts in the Amended Complaint as true, the Trustee as successor to HCMLP, has unclean hands. As alleged by the Trustee, it is HCMLP, through Dondero and Ellington, that is alleged to have committed the bad acts against HarbourVest (and CLO HoldCo, though the Trustee ignores this). Because the Trustee is subject to the same defenses that could have been asserted against HCMLP, the equitable claim of Unjust Enrichment Action is barred by the affirmative defense of unclean hands.

### ii.     *The doctrine of in pari delicto bars the Unjust Enrichment Action*

42.     The doctrine of *in pari delicto* is an affirmative defense that provides that wrongdoers ought to bear the consequences of their wrongdoing without legal recourse against each other. *Jones v. Wells Fargo Bank, N.A*., 666 F.3d 955, 965 (5th Cir. 2012). The *in pari delicto* doctrine "embodies the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct and is undergirded by the concerns, first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Rogers v.*

18

*McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985)).

43.     Under the *Bateman Eichler* formulation of the *in pari delicto* doctrine, a plaintiff "cannot recover where, as a result of his own actions, the plaintiff bears at least substantially equal responsibility for the underlying wrongdoing of which he is complaining." *Matter of Royale Airlines, Inc.*, 98 F.3d 852, 856 (5th Cir.1996) (emphasis added); *see also Rogers*, 521 F.3d at 390 (citing *Bateman Eichler*, 472 U.S. at 310–11, 105 S. Ct. 2622).   Again, the Trustee is subject to all defenses available against the debtor. *In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001).

44.     While some courts have found that the defense of *in pari delcito* is improper for a motion to dismiss because it must be determined whether the pre-petition corporation bore at least equal responsibility for the wrongdoing forming the basis for the plaintiff's claim, here the Amended Complaint is clear and unambiguous: it is only the debtor, HCMLP, into whose shoes the Trustee has stepped, that committed wrongdoing.   Further, it is this sole actor's wrongdoing for which the Trustee now seeks to recover—not from an alleged wrongdoer, but from its very client to which HCMLP provided investment advice while (allegedly) committing wrongs against a third party and the advisee to whom the Trustee's predecessor gave advice.   *Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 642 (S.D. Tex. 2009).   The Trustee asserts plainly that HCLMP, through Dondero and Ellington, fraudulently induced the HCLOF Investment by HarbourVest by withholding information that HCMLP was and would keep on harming HCLOF through its management of it, and further harmed HarbourVest through continued harm done to HCLOF (of course the same damage allegedly suffered by HarbourVest would have been suffered by CLO HoldCo as well, a fact the Trustee ignores).

45. The Trustee asserts only the conclusion that CLO HoldCo was aware that HarbourVest was fraudulently induced to engage in the HCLOF Investment but said nothing to HarbourVest. Amended Complaint, ¶396. First, there has been no allegation or showing, nor could there be, that there even was a fraudulent inducement because HarbourVest was a sophisticated investor which undertook extensive due diligence into the HCLOF Investment. But of course, a third party like CLO HoldCo could never be responsible for what HCMLP and HarbourVest disclosed or failed to disclose to one another. The Trustee's grasping and gasping is evident.

46. Accepting the facts of the Amended Complaint as true, HCMLP bears sole responsibility for the purported wrongdoing forming the basis of the Unjust Enrichment Action. *See Brickley*, 566 B.R. at 842 (finding the *in pari delicto* defense on the face of complaint when the debtor via the trustee sought to recover from another for its own intentional wrongdoing through its officers). Here, the only parties who have been alleged to have engaged in unconscionable or like behavior with respect to the HCLOF Investment are Dondero, Ellington, and HCMLP. Accepting the allegations in the Amended Complaint as true, the Unjust Enrichment Action is barred by *in pari delicto*.

### iii. *The pleading of adequate legal remedies precludes the Unjust Enrichment Action*

47. Like other equitable claims and defenses, the existence of an adequate legal remedy renders equitable claims of unjust enrichment unavailable with respect to true causes of action.[15]

---

[15] *See, e.g., BMG Direct Mktg., Inc. v. Peake,* 178 S.W.3d 763, 770 (Tex. 2005); *see also Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000).

Where a party seeks damages based on the same conduct under another legal theory, there is no claim for unjust enrichment. *In re TXCO Res., Inc.*, 475 B.R. 781, 837 (Bankr. W.D. Tex. 2012).

48.    For instance, in *TXCO*, the debtor, brought an adversary proceeding, later prosecuted by the reorganized debtor, against the potential prepetition buyer of debtor's assets, asserting claims for misappropriation of trade secrets, violation of Texas Theft Liability Act (TTLA), unfair competition by misappropriation, breach of contract, tortious interference with prospective business relations, and imposition of constructive trust to prevent unjust enrichment. Judge King determined that damages for misappropriation of trade secrets were warranted, and therefore, "[t]he existence of an adequate legal remedy precludes TXCO's claim for unjust enrichment because the same conduct by [defendant] forms the basis of both claims." *Id.* at. 838.

49.    In the Amended Complaint, the Trustee asserts the HCMLP Liability Claim, against Dondero and Ellington, for breach of fiduciary duty grounded in their contractual/officer/employment relationships with HCMLP. The Trustee asserts an almost verbatim recitation of purported facts underlying the HCMLP caused damage to itself through its misconduct related to the HarbourVest HCLOF Investment, and argues that on the basis of the duties owed by Dondero and Ellington to HCMLP because of their positions with the company, they are responsible for any liability to HarbourVest arising from the HCLOF Investment and therefore the damages to HCMLP. HCMLP has therefore plead the right to recover for breach of fiduciary duty against other parties because of those parties' contractual/officer and employee status with HCMLP. Therefore, because it has plead the right to legal recovery from third parties it cannot assert the Unjust Enrichment Action against CLO HoldCo.

**IV. THE TRUSTEE MUST MAKE A MORE DEFINITE STATEMENT OF THE GET GOOD AVOIDANCE ACTIONS TO REMEDY THE INCONSISTENT ALLEGATIONS.**

50. "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see Jones v. Gee*, No. CV 18-5977, 2020 WL 564956, at *8 (E.D. La. Feb. 5, 2020) ("When evaluating a motion for a more definite statement, courts must look to Federal Rule of Civil Procedure 8 for the minimal pleading requirements when analyzing the complaint."). Here, the Trustee's Get Good Avoidance Actions are premised upon the idea that the Transferred Assets (the majority of the "value" of which included tracking and participation interests in shares of certain Crusader Funds held by HCMLP) were worth less than the Dugaboy Note. Amended Complaint, ¶134.

51. The Amended Complaint alleges that the assets transferred by HCMLP were valued at least $23,367,578, noticeably absent from the Amended Complaint is any recitation of what the Trustee asserts the value of the Dugaboy Note to be. *See* Amended Complaint, ¶¶134, 136 (describing the Dugaboy Note but not pleading any type of valuation). Rather than pleading a value of the Dugaboy Note, the Trustee describes a "paltry" interest rate, lack of security, and that it "does ensure timely repayment without litigation" because ___*other*___ Dondero controlled entities are seeking to evade payment obligations on ___*other*___ notes. Amended Complaint, ¶134. All conclusory.

52. But what is more, the Trustee pleads that Dondero orchestrated the Get Good Transfer to " transfer assets out of Get Good so that they would not be available to his ex-wife." Amended Complaint, ¶132. So while superficially bemoaning the value of Dugaboy Note on one hand, the Trustee also lauds the value of the Dugaboy Note as cause for Dondero wanting to move it out of Get Good and away from his ex-wife.

53. In reality, since the date of the Dugaboy Note, the principal balance has been paid down by $5,982,353.53, or approximately 25% and interest is current. Appendix, p. 00636-38.

54. On the other side of Get Good Transaction, the Trustee alleges that claims asserted by the Redeemer Committee in the Redeemer Arbitration—which included the claim that HCMLP's interests in the Crusader Funds (the "Crusader Funds Interests" - which are the basis for Crusader Participation Interests) were obtained without Redeemer Committee approval and thus, were illegal from inception—were so damning that they caused HCMLP to begin siphoning off assets. *See* Amended Complaint, ¶¶320(b), (e). Yet, the Trustee ignores the inconsistency that the majority of the very assets allegedly transferred months after the Redeemer Arbitration commenced in July 2016, consisted of the Crusader Funds Interests that were being directly attacked by the same Redeemer Arbitration as having been illegally obtained by HCMLP. *See* Amended Complaint, ¶88, Appendix p. 00395, 00411.

55. Texas law provides that the value of a particular transaction is determined at the time of the exchange. *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 582 (Tex. 2016). Here, as plead by the Trustee, on July 5, 2016, the Redeemer Committee commenced the Redeemer Arbitration which directly attacked the Crusader Funds Interests. *See* Complaint, ¶88, Appendix p. 00395. Specifically, the Redeemer Committee asserted that the Crusader Funds Interests were obtained by HCMLP in breach of the Plan and Scheme and in breach of HCMLP's fiduciary duty because the Redeemer Committee had a right of first refusal. Appendix, p. 00411.

56. So well ***before*** the Get Good Transfer, HCMLP was aware that the Redeemer Committee asserted claims in the Redeemer Arbitration that the Crusader Funds Interests were illegally obtained. But according to the Trustee, it was HCMLP's certainty of liabilities arising from Redeemer Arbitration that motivated HCMLP to siphon off assets, i.e. commence the Get

23

Good Transfer. Amended Complaint, ¶320(b), (e). In doing so, according to the Trustee, HCMLP was so certain of defeat in the Redeemer Arbitration, it rid itself of the Crusader Funds Interests that were plagued by the very same arbitration as being illegally obtained (so of little or no value from inception, a fact known to HCMLP as alleged by the Trustee).

57.     To prevail on his intentionally fraudulent transfer action, the Trustee must prove actual intent to hinder, delay, or defraud. *Matter of Life Partners Holdings, Inc*., 926 F.3d 103, 117 (5th Cir. 2019) (citation omitted); *see* TEX. BUS. & COM. CODE § 24.005(a)(1). While the Trustee of course copies this standard in the Amended Complaint, when considering a Rule 12(b) motion, the court does not accept as true facts in the complaint that are internally inconsistent.[16]

58.     Taking the allegations of the Trustee as true, ***at the time*** of the Get Good Transfer HCMLP so feared the Redeemer Arbitration that it began siphoning assets, including the Crusader Funds Interests, which comprised more than half of the "value" of the Transferred Assets and were being directly attacked and threatened by that very Redeemer Arbitration. If HCMLP believed at the time of the Get Good Transfer that the Redeemer Committee would be successful in the Redeemer Arbitration (which the Trustee pleads), then when HCMLP transferred the Crusader Funds Interests in exchange for the Dugaboy Note, it did so with the belief that it was transferring away troubled assets. This act of transferring away troubled assets for value cannot show intent to hinder, delay or defraud creditors. Yet this is what the Trustee alleges.

59.     As to constructive fraud, the Trustee must demonstrate a: (1) lack of reasonably equivalent value for the transfer; and (2) the transfer was 'financially vulnerable' or insolvent at

---

[16]     *See Cicalese v. Univ. of Texas Med. Branch*, 456 F. Supp. 3d 859, 872 (S.D. Tex. 2020); *In re Rambo Imaging, L.L.P.*, No. 07-11190FRM, 2007 WL 3376163, at *12 (Bankr. W.D. Tex. Nov. 8, 2007) (citing *Gersten v. Rundle*, 833 F.Supp. 906 (S.D.Fla.1993), *aff'd*, 56 F.3d 1389 (11th Cir. 1995), *cert. denied*, 516 U.S. 1118 (1996)).

the time of the transaction. *See Janvey*, 487 S.W.3d at 562, 566 & n.21 (Tex. 2016); TEX. BUS. & COM. CODE § 24.006(a); TEX. BUS. & COM. CODE § 24.005(a)(2). Here, the lack of pleading of value of the Dugaboy Note is particularly problematic.

60. On the one hand, the Amended Complaint alleges specifically that the assets transferred were "valued" at $23,367,578 and specifically asserts that the Crusader Funds Interests component of the valuation was more than 50% of the value of the assets transferred, but completely ignores is that the Crusader Funds Interests were subject to cancellation by the very same Redeemer Arbitration. The Trustee bemoans the value of the Dugaboy Note, but also argues that it was so valuable that Dondero wanted to move it out of his ex-wife's reach. The Trustee never pleads what he knows—that the principal balance of the Dugaboy Note has been reduced by some 25%, and is current. But while bemoaning a lack of value, the Trustee in fact never offers any even rough valuation of the Dugaboy Note.

61. The Amended Complaint is rife with irreconcilable conflicting statements, which preclude a rational response. *See* FED. R. CIV. P. 12(e). As such, the Charitable Defendants move for a more definite statement of the Get Good Avoidance Actions particularly the Trustee's assertion of value of the Dugaboy Note and the Crusader Participation Interests.

## V. CONCLUSION

For the reasons set forth herein and in the Motion, the Charitable Defendants move for dismissal of the Aiding Bad Conduct, Civil Conspiracy, and Unjust Enrichment Actions, and for a more definite statement of the Get Good Avoidance Actions.

[***signature block on following page***]

25

**Respectfully submitted:**

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
**Louis M. Phillips (#10505)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was served through this Court's CM/ECF Service on counsel for the Plaintiff and all Defendants on this July 11, 2022.

*/s/ Louis M. Phillips*

26