Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendant NexPoint Advisors, L.P.*
*and Highland Capital Management Fund Advisors, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>　　　　**Reorganized Debtor.** | **Chapter 11**<br><br>**Case No. 19-34054-sgj11** |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,**<br><br>　　　　**Plaintiff,**<br><br>　　**v.**<br><br>**JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,**<br><br>　　　　**Defendants.** | **Adv. Pro. No. 21-03076-sgj**<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.'S MOTION TO DISMISS** |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... iii

I.   Introduction .......................................................................................... 1

II.  Background ........................................................................................... 1

III. Standard of Review ............................................................................... 2

    A.   Federal Rule of Civil Procedure 12(b)(1) ...................................... 2

    B.   Federal Rule of Civil Procedure 12(b)(6) ...................................... 3

IV.  Arguments and Authorities .................................................................... 3

    A.   Jurisdictional Arguments. ............................................................. 3

        1.   Plaintiff Lacks Standing to Pursue His State Law Claims Because the Bankruptcy Plan Did Not Specifically and Unequivocally Reserve the State Law Claims Against Defendants ................................. 3

        2.   Plaintiff's State Law Non-Core Claims Must be Dismissed for Lack of Subject Matter Jurisdiction. ...................................................... 4

        3.   The Assignment Agreement Constitutes an Impermissible Modification of the Plan. ........................................................... 4

    B.   Plaintiff's Claims are Time-barred and Otherwise Unsustainable. ...... 5

        1.   Plaintiff's Counts X and XI Seeking a Declaration that HCMFA and NPA are Alter Egos of HCM, Strand and Dondero Does Not State a Claim. ........................................................................................ 5

            (a)   Defendants Cannot Be Treated as the Alter Egos of HCM Because Plaintiff Does Not Plead that Defendants Own Any Interest in HCM. ................................................................ 5

            (b)   Alter Ego Liability is Not an Independent Cause of Action. ........... 6

            (c)   Plaintiff Fails to Plead That Each Defendant and Dondero Operated as Single Economic Entity. ........................................ 6

        2.   The Trustee's Claims for Avoidance Based on Constructive and Intentional Fraudulent Transfer Must Be Dismissed. ....................... 7

            (a)   The Claims are Barred by the Statute of Limitations. .................. 7

            (b)   The IRS Cannot Be A Triggering Creditor Here. .......................... 9

        3.   Plaintiff's Claim for Successor Liability Has Multiple Fatal Flaws. ........ 14

        4.   Plaintiff's Claims for Aiding and Abetting Breach of Fiduciary Duty and Knowing Participation in Breach of Fiduciary Duty and Civil Conspiracy to Breach Fiduciary Duty Are Fatally Flawed. ..................... 14

            (a)   Counts 15 and 16 Are Time-Barred. ......................................... 15

(b) Plaintiff Lacks Standing to Bring Claims for Breach of Fiduciary Duty, Defeating His Derivative Aiding and Abetting, Knowing Participation, and Conspiracy Claims. .......... 18

(c) Strand and Dondero Owed no Fiduciary Duties to HCM. ............ 18

(d) The Complaint Fails to Allege Facts that the Alleged Breach Damaged HCM. ................................................................................. 20

(e) Counts 15 and 16 Complain About Transfers, and There is No Secondary Liability for Fraudulent Transfers. ....................... 20

5. Plaintiff's Claim for Tortious Interference with Prospective Business Relations Has Two Fatal Flaws. ................................................ 21

(a) Plaintiff's Allegations of Tortious Conduct Are Insufficient. ................................................................................................. 21

(b) The LPA Precludes Plaintiff's Claim for Tortious Interference of Business Relations. ............................................... 22

6. Plaintiff's Claims for Unjust Enrichment and Money Had and Received Must Be Dismissed Because They Fail to State a Claim for Relief. ........................................................................................................ 23

(a) Unjust Enrichment is not an Independent Cause of Action under Texas Law. ..................................................................... 23

(b) Plaintiff Cannot Recover under Unjust Enrichment or Money Had and Received Because a Valid Contract Governs the Issue. ................................................................................. 24

(c) Plaintiff's Claim for Money Had and Received is Barred by the Applicable Statute of Limitations. ........................................ 25

V. Conclusion ..................................................................................................... 25

CORE/3524885.0002/175138797.9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agar Corp. v. Electro Circuits Int'l, LLC,*
    580 S.W.3d 136 (Tex. 2019)...............................................................................18

*Allen v. Encore Energy Partners, L.P.,*
    72 A.3d 93 (Del. 2013) ......................................................................................22

*In re AMC Investors, LLC,*
    637 B.R. 43 (Bankr. Del. 2022) .........................................................................16

*Antioch Company Litigation Trust v. Morgan,*
    644 Fed. Appx. 579 (6th Cir. 2016)....................................................................16

*Arencibia v. AGA Serv. Co.,*
    No. 4:20-cv-00819-O, 2020 WL 10056799 (N.D. Tex. Nov. 13, 2020) ................24

*Ashcroft v. Iqbal,*
    *556* U.S. 662 (2009).............................................................................................3

*In re Avado Brands, Inc.,*
    358 B.R. 868 (Bankr. N.D. Tex. 2006)................................................................15

*In re Bass,*
    No. ADV. 10-01101-CAG, 2011 WL 722384 (Bankr. W.D. Tex. Feb 11,
    2011) ...................................................................................................................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................................3

*Bot M8 LLC v. Sony Corp. of Amer.,*
    4 F.4th 1342 (Fed. Cir. 2021) .............................................................................20

*Bren v. Capital Realty Group Senior Housing, Inc.,*
    2004 WL 370214 (Del. Ch. Feb. 27, 2004) .........................................................16

*In re Bridgeport Holdings, Inc.,*
    388 B.R. 548 (Bankr. Del. 2008) ........................................................................17

*Brinckerhoff v. Enbridge Energy Co., Inc.,*
    159 A.3d 242 (Del. 2017), *as revised* (Mar. 28, 2017)......................................2, 19

*Cantu v. Falcon Int'l Bank,*
    No. 04-17-00467-CV, 2018 WL 1831651
    (Tex. App.—San Antonio Apr. 18, 2018, pet. denied)..........................................22

*City Nat'l Rochdale Fixed Inc. Opps. (Ireland) Ltd. v. Amer. General Life Ins. Co.*,
No. 3:17-CV-2067-S, 2018 WL 4732431 (N.D. Tex. Sep. 13, 2018)....................................24

*Clapper v. Am. Realty Inv'rs, Inc.*,
No. 3:14-cv-2970-L, 2019 WL 5865709 (N.D. Tex. Nov. 7, 2019)........................................24

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
417 S.W.3d 909 (Tex. 2013)................................................................................................22

*Consol. Cement Corp. v. Pratt*,
47 F.2d 90 (10th Cir. 1931) .................................................................................................20

*Cornell Glasgow, LLC v. LaGrange Props., LLC*,
2012 WL 3147124 (Del. Super. Aug. 1, 2012)......................................................................21

*In re CVAH, Inc.*,
570 B.R. 816 (Bankr. D. Idaho 2017)..............................................................................10, 12

*Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*,
814 F. Supp.2d 698 (N.D. Tex. 2011) ..................................................................................15

*Czyzewski v. Jevic Holding Corp.*,
137 S. Ct. 973 (2017).........................................................................................................11

*Demarast v. Manspeaker*,
498 U.S. 184 (1991)...........................................................................................................11

*Edgewater Growth Capital P'rs, L.P. v. H.I.G. Capital, Inc.*,
2010 WL 720150 (Del. Ch. Mar. 3, 2010).............................................................................21

*Elmer v. Tenneco Resins, Inc.*,
698 F. Supp. 535 (D. Del. 1988)..........................................................................................14

*In re Essar Steel Minnesota LLC*,
602 B.R. 600 (Bankr. D. Del. 2019) .......................................................................................6

*In re Essential Fin. Ed., Inc.*,
629 B.R. 401 (Bankr. N.D. Tex. 2021)....................................................................................8

*F.D.I.C. v. Shrader & York*,
991 F.2d 216 (5th Cir. 1993) ...............................................................................................17

*Faulkner v. AimBank (In re Reagor-Dykes Motors)*,
2021 Bankr. LEXIS 800 (Bankr. N.D. Tex. Mar. 31, 2021) ......................................................4

*Federal Deposit Ins. Corp. v. Shrader & York*,
777 F. Supp. 533 (S.D. Tex. 1991).......................................................................................17

*Fehl v. S.W.C. Corp.*,
    433 F. Supp. 939 (D. Del. 1977)................................................................................14

*Fortune Prod. Co. v. Conoco, Inc.*,
    52 S.W.3d 671 (Tex. 2000)....................................................................................24

*Fountain v. Colonial Chevrolet Co.*,
    No. C.A. 85C-DE-88, 1988 WL 40019 (Del. Super. Ct. Apr. 13, 1988) ...............14

*In re Gaither*,
    595 B.R. 201 (Bankr. D.S.C. 2018) .......................................................................12

*Gerber v. EPE Holdings, LLC*,
    No. 3543-VCN, 2013 Del. Ch. LEXIS 8 (Del. Ch. Jan. 18, 2013)........................19

*Gotham Partners, LP v. Hallwood Realty Partners, LP*,
    817 A.2d 160 (Del. 2002) ................................................................................18, 19

*Guaranty Trust Co. v. York*,
    326 U.S. 99 (1945)................................................................................................16

*Hancock v. Chicago Title Ins. Co.*,
    635 F. Supp.2d 539 (N.D. Tex. 2009) ...................................................................23

*In re Hunt*,
    136 B.R. 437 (Bankr. N.D. Tex. 1991)...................................................................12

*In re J&M Sales Inc.*,
    2022 WL 532721 (Bankr. D. Del. Feb. 22, 2022) ..................................................10

*Janvey v. Adams & Reese, LLP*,
    No. 3:12-CV-0495-N, 2013 WL 12320921 (N.D. Tex. Sept. 11, 2013) ................15

*Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*,
    617 F.2d 133 (5th Cir. 1980) ..................................................................................5

*Johansen v. E.I. Du Pont De Nemours & Co.*,
    810 F.2d 1377 (5th Cir. 1987) ...............................................................................15

*In re Jones*,
    445 B.R. 677 (Bankr. N.D. Tex. 2011)...................................................................17

*In re Kipnis*,
    555 B.R. 877 (S.D. Fla. 2016) .................................................................................8

*Klinek v. LuxeYard, Inc.*,
    596 S.W.3d 437 (Tex. App.—Houston [14th Dist.] 2020, pet denied) ..................19

*Lailfail, Inc. v. Learning 2000, Inc.*,
No. 01-599-GMS, 2002 WL 31667861 (D. Del. Nov. 25, 2002)............................................5

*In re LSC Wind Down, LLC*,
610 B.R. 779 (Bankr. Del. 2020) ............................................................................................8

*Mack v. Newton*,
737 F.2d 1343 (5th Cir. 1984) ................................................................................................4

*Magnolia's at Bethany, LLC v. Artesian Consulting Engineers, Inc.*,
No. CIV.A. S11C-04013ESB, 2011 WL 4826106 (Del. Super. Ct. Sept. 19,
2011) ......................................................................................................................................14

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) ....................................................................................................19

*Marks v. CDW Computer Centers, Inc.*,
901 F. Supp. 1302 (N.D. Ill. 1995) ........................................................................................2

*Marshall v. Ribosome LP*,
2019 WL 2041062 (Tex. App.—Houston [1st Dist.] May 9, 2019, no pet.)..........................18

*Maxwell v. Neri N. Am.*,
No. 4:13-CV-269, 2014 WL 2441200 (S.D. Tex. May 30, 2012).........................................24

*McCullough v. Scarbrough, Medlin & Assocs.*,
435 S.W.3d 871 (Tex. App.—Dallas 2014, pet. denied) .......................................................23

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*,
800 Fed. Appx. 239 (5th Cir. 2020).......................................................................................18

*Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*,
999 F.3d 970 (5th Cir. 2021) .................................................................................................23

*In re Mirant Corp.*,
2010 WL 8708772 (Bankr. N.D. Tex. Apr. 22, 2010)...........................................................12

*In re Mirant Corp.*,
675 F.3d 530 (5th Cir. 2012) ...........................................................................................12, 13

*In re Moore*,
379 B.R. 284 (Bankr. N.D. Tex. 2007)....................................................................................5

*Mora v. Univ. of Texas Sw. Med. Ctr.*,
469 Fed. Appx. 295 (5th Cir. 2012)........................................................................................20

*Musgrave v. Horne Re-Abilene, LLC*,
No. 1:09-CV-138-C, 2010 WL 11613937 (N.D. Tex. July 12, 2010)...............................24, 25

CORE/3524885.0002/175138797.9

*In re National Service Industries, Inc.*,
    2015 WL 3827003 (Bankr. Del. June 19, 2015)........................................................................8

*Nevares v. San Marcos Consol. Indep. Sch. Dist.*,
    111 F.3d 25 (5th Cir. 1997) ......................................................................................................3

*Orthopaedic Assocs. of S. Delaware, P.A. v. Pfaff*,
    No. CV S17C-07-016 ESB, 2018 WL 822020 (Del. Super. Ct. Feb. 9, 2018) ......................22

*Payne v. Wells Fargo Bank N.A.*,
    637 Fed. Appx. 833 (5th Cir. 2016)........................................................................................24

*Pilepro, LLC v. Chang*,
    152 F. Supp. 3d 659 (W.D. Tex. 2016)....................................................................................15

*In re Porras*,
    312 B.R. 81 (Bankr. W.D. Tex. 2004) ....................................................................................12

*ProTradeNet, LLC v. Predictive Profiles, Inc.*,
    369 F. Supp. 3d 788 (W.D. Tex. 2019)....................................................................................22

*Quadrant Structured Products Co., Ltd. v. Vertin*,
    102 A.3d 155 (Del. Ch. 2014)..................................................................................................21

*Redwood Resort Properties, LLC v. Holmes Co. Ltd.*,
    No. CIVA 3:06CV1022 D, 2006 WL 3531422 (N.D. Tex. Nov. 27, 2006)............................23

*Remington v. U.S.*,
    210 F.3d 281 (5th Cir. 2000) ..................................................................................................13

*Resolution Trust Co. v. Walke*,
    1994 WL 777355 (W.D. La. July 29, 1994) ..........................................................................16

*Resolution Trust Corp. v. Scaletty*,
    891 P.2d 1110 (Kan. 1995)......................................................................................................16

*Reveille Trucking, Inc., v. Lear Corp.*,
    No. 4:14-CV-511, 2017 WL 661521 (S.D. Tex. Feb. 17, 2017)............................................24

*Sazerac Co. v. Falk*,
    861 F. Supp. 253 (S.D.N.Y. 1994) ..........................................................................................2

*Sherman v. Wal-Mart Associates, Inc.*,
    550 B.R. 105 (N.D. Tex. 2016)................................................................................................3

*In re SI Restructuring Inc.*,
    714 F.3d 860 (5th Cir. 2013) ....................................................................................................4

*In re Silver State Holdings, Assignee-7901 Boulevard 26 LLC*,
No. 19-41579-MXM, 2020 WL 7414434 (Bankr. N.D. Tex. Dec. 17, 2020) .................20, 21

*Sourcing Mgmt., Inc. v. Simclar, Inc.*,
118 F. Supp. 3d 899 (N.D. Tex. 2015) ................................................................................14

*Spokeo, Inc. v. Robins*,
136 S.Ct. 1540 (2016) ...........................................................................................................3

*Taylor v. Tervino*,
No. 3:20-CV-0393-D, 2021 WL 347566 (N.D. Tex. Feb. 2, 2021) .....................................23

*In re Taylor, Bean & Whitaker Mtg. Corp.*,
2018 WL 6721987 (Bankr. M.D. Fla. Sep. 28, 2018) ........................................................13

*In re The Brown Sch.*,
368 B.R. 394 (Bankr. D. Del. 2007) ...................................................................................15

*Thomas v. Reeves*,
961 F.3d 800 (5th Cir. 2020) .........................................................................................11, 12

*Trevino v. Merscorp, Inc.*,
583 F. Supp. 2d 521 (D. Del. 2008) ............................................................................5, 6, 7

*In re Tronox*,
503 B.R. 239 (Bankr. S.D.N.Y. 2013) ................................................................................12

*U.S. v. Ret. Serv. Grp.*,
302 F.3d 425 (5th Cir. 2002) ..............................................................................................11

*U.S. v. Rodriguez-Rios*,
14 F.3d 1040 (5th Cir. 1985) ..............................................................................................11

*U.S. v. Summerlin*,
310 U.S. 414 (1940) ............................................................................................................11

*United Sav. Assn. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988) ............................................................................................................11

*Universal MRI & Diagnostics, Inc. v. Med Lien Mgmt., Inc.*,
497 S.W.3d 653 (Tex. App.—Houston [14th Dist.] 2016, no pet.) .....................................24

*In re Vaughan Co.*,
498 B.R. 297 (D. N.M. 2013) ....................................................................................8, 11, 13

*Verizon Employee Benefits Comm. v. Frawley*,
655 F. Supp. 2d 644, 647-48 (N.D. Tex. 2008) .................................................................25

*Wal-Mart Stores, Inc. v. Sturges*,
  52 S.W.3d 711 (Tex. 2001) .......................................................................................22

*Weaver v. Kellogg*,
  216 B.R. 563 (S.D. Tex. 1997) ...................................................................................5

*In re Zagaroli*,
  2020 WL 6495156 (Bankr. W.D.N.C. Nov. 3, 2020) .............................................12

*In re Zohar III, Corp.*,
  631 B.R. 133 (Bankr. Del. 2021) .............................................................................8, 9

**Statutes**

11 U.S.C. § 544 ..............................................................................................................8

11 U.S.C. § 544(b) ....................................................................................8, 10, 12, 13

11 U.S.C. § 544(b)(1) .............................................................................................8, 12

26 U.S.C. § 6502 ....................................................................................................11, 13

26 U.S.C. § 6502(a)(1) ...........................................................................................12, 13

26 U.S.C. § 6901(a) ......................................................................................................12

Del. Code Ann. tit. 6, § 17-1101(d) .............................................................................19

Del. Code Ann. tit. 6, § 17-1101(f) ..............................................................................19

Tex. Bus. & Com. Code § 24.010(a)(1) .........................................................................8

Tex. Bus. & Com. Code § 24.010(a)(2) .........................................................................8

**Other Authorities**

Fed. R. Civ. P. 10(c) ......................................................................................................2

Fed. R. Civ. P. 12(b)(1)..........................................................................................2, 3, 25

Fed. R. Civ. P. 12(b)(6).....................................................................................2, 3, 5, 25

Restatement (Second) of Conflict of Laws § 187(1) ...................................................15

Restatement (Second) of Conflict of Laws § 302 .......................................................14

Defendants Highland Capital Management Fund Advisors, L.P. ("HCMFA") and NexPoint Advisors, L.P. ("NPA," together, "Defendants") move to dismiss Counts 10, 11, 12, 13, 15, 16, 17, and 28 of Plaintiff's Amended Complaint (the "Complaint")[1], as follows:

## I.     Introduction

1.      Reacting to Defendants' first Motion to Dismiss with an Amended Complaint, Marc Kirschner ("Plaintiff"), the Litigation Trustee for the Debtor Highland Capital Management, L.P. ("HCM"), brings a 142-page, thirty-six count lawsuit against Defendants HCMFA and NPA, among many others, attempting to substitute his judgment for the permissible business judgment of nearly all the defendants he has sued, still blaming all defendants for the financial travails of the last decade. Plaintiff's newest Complaint is still riddled with flaws, both jurisdictional and substantive, and no amount of hyperbole can substitute for the missing required elements.

## II.     Background[2]

2.      HCM filed its bankruptcy petition on October 16, 2019,[3] and its Plan on November 24, 2020, which was confirmed on February 22, 2021.[4] The Plan established a Litigation Sub-Trust, which received transferred "Estate Claims" via the Litigation Sub-Trust Agreement, Section 2.3.[5]

3.      HCM was founded in 1993 as an investment advisor that also provided back- and middle-office services and engaged in proprietary trading.[6] HCMFA engaged in some of the same

---

[1] Dkt. No. 158.

[2] Defendants adopt and incorporate the "Relevant Background" portion of co-Defendants Leventon and Ellington's memoranda for the purpose of providing further background. *See Brief in Support of Defendant Leventon's Motion to Dismiss the Amended Complaint*, § I.A., filed on July 11, 2022 ("Leventon Mem."); *Brief in Support of Defendant Ellington's Motion to Dismiss the Amended Complaint*, § I.A., filed on July 11, 2022 ("Ellington Mem.").

[3] Dkt. No. 1.

[4] Dkt. No. 1943.

[5] *See* Dkt. No. 1811-4.

[6] *Id.*, ¶ 2.

CORE/3524885.0002/175138797.9

business activities as HCM,[7] and was "created to replace HCM as the new investment manager for certain open-ended retail funds."[8] HCMFA had a shared services agreement pursuant to which HCM employees provided services to HCMFA.[9] NPA was created in March 2012 as a Delaware limited partnership,[10] but not "to siphon profits from HCM in order to evade HCM's creditors,"[11] as Plaintiff contends. Rather, NPA was created to provide fund-management services and had a shared services agreement providing that HCM would provide back- and middle-office services for NPA.[12] Thus, it is no surprise that "[NPA and HCMFA] used HCM's employees to perform the same . . . services . . . that were performed by HCM."[13] HCM's partnership agreement allowed for the creation of companies, such as NPA and HCMFA, in the same line of business as HCM.[14]

## III. Standard of Review

### A. Federal Rule of Civil Procedure 12(b)(1)

4. Federal courts have jurisdiction only where a case is presented by a party with

---

[7] *Id.*, ¶ 17 ("[HCMFA] is a Delaware limited partnership.") (internal footnote omitted).

[8] *Id.*, ¶ 61.

[9] *Id.*, ¶ 63.

[10] *Id.*, ¶ 15 ("[NPA] is a Delaware limited partnership.").

[11] *Id.*, ¶ 52.

[12] Plaintiff acknowledges these shared services agreements: "As of the Petition Date, [Plaintiff] had three primary business lines: (i) investment management; (ii) *the provision of middle- and back-office services ("shared services") to other registered investment advisors*; and (iii) proprietary trading. *Id.*, ¶ 41 (emphasis added).

[13] *Id.*, ¶¶ 53, 63 ("Meanwhile, HCMLP – whose employees performed most services required by HCMFA – received a [] fee. . .").

[14] Fourth Amended and Restated Limited Partnership Agreement of Highland Capital Management, L.P. (the "4th LPA"), § 1.3, included in Appendix A as Defendants' Ex. A, D. Appx. pp. 5-41. The Second Amended and Restated LPA (the "2nd LPA"), Defendants' Ex. B, Appx. p. 42-100, which was in effect between 2004 and late 2015, is also included. The 2nd and 4th LPAs are identical in relevant respects. "In the event that a plaintiff alleges a claim based on a written instrument, as is the case here, the court may consider such an instrument in ruling on a Rule 12(b)(6) motion even if it was not attached to the complaint and made a part thereof under Rule 10(c)," and "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994). The movant may attach to a motion to dismiss any documents "mentioned in the Complaint and central to [the] claim," and the court will consider the documents along with the motion, even if the plaintiff did not attach the document to the complaint. *Marks v. CDW Computer Centers, Inc.*, 901 F. Supp. 1302, 1309–10 (N.D. Ill. 1995). Here, the HCM Partnership Agreement is mentioned in ¶ 221 of the Complaint. The basis for any claim related to breach of fiduciary duty against Strand and Dondero must be the Partnership Agreement because the Partnership Agreement disclaims traditional fiduciary duties. *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 252–53 (Del. 2017), *as revised* (Mar. 28, 2017).

CORE/3524885.0002/175138797.9

standing.[15] At the pleading stage of the case, "the plaintiff must 'clearly . . . allege facts demonstrating' each element."[16] Standing is a required element of subject matter jurisdiction and is therefore properly challenged on a Federal Rule 12(b)(1) motion to dismiss.[17]

### B. Federal Rule of Civil Procedure 12(b)(6)

5.     To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face."[18] Mere "threadbare recitals of the elements of a cause of action," and those that do not permit a court to "infer more than the mere possibility of misconduct," are insufficient to overcome a motion to dismiss.[19] "Factual allegations must be enough to raise a right to relief above the speculative level."[20] Thus, a pleading does not set forth a legally "plausible claim" unless its non-conclusory allegations of wrongdoing are "more likely" than a lawful, alternative explanation.[21]

## IV. Arguments and Authorities

### A. Jurisdictional Arguments.

#### 1. Plaintiff Lacks Standing to Pursue His State Law Claims Because the Bankruptcy Plan Did Not Specifically and Unequivocally Reserve the State Law Claims Against Defendants.

6.     Without an effective reservation of the estate's state law claims against HCMFA and NPA,[22] Plaintiff has no standing to bring those claims. As more specifically detailed in the motions to dismiss filed by co-Defendants,[23] the Plan's listing of reserved claims is so lengthy it

---

[15] *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 25 (5th Cir. 1997).

[16] *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (internal citation omitted).

[17] *Sherman v. Wal-Mart Associates, Inc.*, 550 B.R. 105, 107 (N.D. Tex. 2016).

[18] *Ashcroft v. Iqbal, 556* U.S. 662, 678 (2009) (citations omitted).

[19] *Id*. at 678-79.

[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[21] *Id*. at 680, 681-82.

[22] This argument covers Counts 10, 11, 15, 16, 17, and 28.

[23] For the sake of efficiency, Defendants adopt and incorporate the arguments and authorities cited in the memoranda of law in support of the motions to dismiss of the Dondero Parties [Dkt. 1xx], the Okada Parties [Dkt. 126], Leventon [Dkt. 129], and Ellington [Dkt. 133].

effectively becomes what the Fifth Circuit forbids, a reference to "any and all claims."[24] Indeed, Plaintiff directly refers to the Plan's designation of claims as "any and all estate claims and causes of action against [all Defendants]," clearly running afoul of the holding in *SI Restructuring*.[25] Even if the Court does not agree that the Plan's reservation was too expansive to be effective at all, under *SI Restructuring*, it must at least dismiss the claims not identified at all.[26] Allegations in the Amended Complaint cannot retroactively modify the Plan.[27]

### 2. Plaintiff's State Law Non-Core Claims Must be Dismissed for Lack of Subject Matter Jurisdiction.

7. For all of the reasons previously briefed in the parties' motions to withdraw the reference, this Court lacks subject matter jurisdiction over Counts 10, 11, 15, 16, 17, and 28.[28] Further, the Fifth Circuit has specifically held that under Texas Law, a bankruptcy trustee does not have a cause of action for civil conspiracy related to an alleged fraudulent transfer.[29]

### 3. The Assignment Agreement Constitutes an Impermissible Modification of the Plan.

8. As argued in the *Leventon Mem.* and *Ellington Mem.*, incorporated herein by reference,[30] the plain language of the Plan demonstrates a clear division of rights between the Litigation Sub-Trust and the Claimant Trust—the Litigation Sub-Trust can ***only*** pursue Estate Claims and nothing more, while the Claimant Trust retains the sole right to assert all other causes

---

[24] *In re SI Restructuring Inc.*, 714 F.3d 860, 864 (5th Cir. 2013). This argument has been rejected by *Faulkner v. AimBank (In re Reagor-Dykes Motors)*, 2021 Bankr. LEXIS 800 at 18-20 (Bankr. N.D. Tex. Mar. 31, 2021), but here, given the extensive laundry list of both claims and possible defendants, it should be accepted.

[25] Complaint, ¶ 36.

[26] *SI Restructuring* at 866 (upholding the dismissal of state law claims that were not specifically reserved in the plan).

[27] *See Leventon Mem.*, ¶¶ 19-22*; Ellington Mem.*, ¶ 13.

[28] Dkt. Nos. 27, 28, 36, 37, 39, 40, 45, 46, 50, 51, and 59, and the transcript of the hearing on the motions. Dkt. No. 96. NPA and HCMFA further adopt and incorporate the arguments and authorities in co-Defendants' memoranda.

[29] *See Mack v. Newton*, 737 F.2d 1343, 1356 (5th Cir. 1984) (Fifth Circuit reiterating the Supreme Court of Texas' holding that a general creditor does not have a cause of action for civil conspiracy when a debtor's property is conveyed to others allegedly to evade payment).

[30] *Leventon Mem.*, (also referencing defined terms in this Section); *Ellington Mem.*, (same).

of action, except those that constitute Reorganized Debtor Assets. The attempt to assign such rights to the Litigation Sub-Trust was not contemplated at confirmation and alters the expectations of the parties, making the Assignment Agreement an impermissible modification of a substantially consummated Plan. Therefore, the purported assignment of claims from the Claimant Trust to the Litigation Sub-Trust was ineffective, and the Complaint must be dismissed on these grounds alone.

**B.     Plaintiff's Claims are Time-barred and Otherwise Unsustainable.**

**1.     Plaintiff's Counts X and XI Seeking a Declaration that HCMFA and NPA are Alter Egos of HCM, Strand and Dondero Does Not State a Claim.**

**(a)     Defendants Cannot Be Treated as the Alter Egos of HCM Because Plaintiff Does Not Plead that Defendants Own Any Interest in HCM.**

9.     Under the governing Delaware law,[31] NPA and HCMFA, which are incorporated in Delaware,[32] cannot be alter egos of HCM and Strand because they do not own any interests in HCM or Strand, regardless of Plaintiff's new allegations that HCM, through Jim Dondero, exercised control over NPA and HCMFA.[33]

10.     Under Delaware law, "in order to state a claim for piercing the corporate veil under an alter ego theory, [plaintiff] must show (1) that the corporation *and its shareholders* operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present."[34] In

---

[31] Texas courts apply the law of the state of incorporation to veil-piercing issues such as alter ego liability. *Weaver v. Kellogg*, 216 B.R. 563, 585 (S.D. Tex. 1997); *In re Moore*, 379 B.R. 284, 289 (Bankr. N.D. Tex. 2007) (citing *Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*, 617 F.2d 133, 135 (5th Cir. 1980)); *In re Bass*, No. ADV. 10-01101-CAG, 2011 WL 722384, at *8 (Bankr. W.D. Tex. Feb 11, 2011) (collecting cases).

[32] Complaint, ¶¶ 15, 17.

[33] In the Complaint, Plaintiff now only claims that NPA and HCMFA are alter egos of Dondero. Complaint, ¶¶ 253, 261. Defendants reserve the argument that Defendants cannot be treated as the alter egos of HCMLP and Strand in the event that Plaintiff reverts to its prior arguments. Plaintiff alleges that Jim Dondero owns and controls both HCMFA and NPA, but never once pleads that either HCMFA or NPA have any ownership in HCMLP, which is required to prove alter ego claims under Delaware law.

[34] *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (citing *Lailfail, Inc. v. Learning 2000, Inc.*, No. 01-599-GMS, 2002 WL 31667861 at *11 (D. Del. Nov. 25, 2002), and dismissing a claim for alter ego liability under Rule 12(b)(6) where plaintiff failed to plead facts showing that the corporation and its shareholders operated as a single economic entity) (emphasis added).

5

short, the Trustee's admission that HCMFA and NPA do not own HCM and do not operate as a single entity with it,[35] preclude his alter ego claim.[36]

> **(b)** **Alter Ego Liability is Not an Independent Cause of Action.**

11. Plaintiff's Tenth and Eleventh Counts for alter ego fail because alter ego is not an independent cause of action under Delaware law. "[A]lter ego liability is *not an independent cause of action*, rather it is a theory of liability that is properly asserted with [an] ***underlying breach of contract claim***."[37] Here, Plaintiff alleges only that NPA and HCMFA are "alter ego[s] of Dondero."[38] Plaintiff has improperly asserted alter ego as an independent cause of action rather than as a theory of liability for an underlying claim against NPA or HCMFA, ***much less an underlying breach of contract claim***.

> **(c)** **Plaintiff Fails to Plead That Each Defendant and Dondero Operated as Single Economic Entity.**

12. Plaintiff fails to plead facts necessary to allege NPA and Dondero, or HCMFA and Dondero, each operated as a single economic entity. The Third Circuit sets forth a multi-factor test for determining whether a "single economic entity" exists between entities, listing: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.[39]

13. In so many words, Plaintiff alleged that Dondero dominated and controlled each

---

[35] Complaint, ¶¶ 13, 14 (Strand is "wholly-owned by Dondero," and Dondero and Okada held HCMLP "directly and through trusts.").

[36] *See Trevino,* 583 F. Supp. 2d at 528.

[37] *In re Essar Steel Minnesota LLC,* 602 B.R. 600, 606 (Bankr. D. Del. 2019) (searching Delaware law and determining that alter ego liability is not a stand-alone cause of action but rather a "theory of liability" that can be asserted "with [an] underlying breach of contract claim") (emphasis added).

[38] Complaint, ¶¶ 253, 261.

[39] *Trevino,* 583 F. Supp. 2d at 528–29.

Defendant; that each Defendant benefited from HCM's investment, services, and forbearance against it; and that each Defendant in turn made distributions for Dondero's benefit.[40] Plaintiff fails to allege that any of this activity caused Defendants to be undercapitalized or insolvent, that Defendants do not observe formalities such as board meetings or recordkeeping, or that Defendants do not pay dividends (on the contrary, it is alleged that distributions were made).

14.     "While no single factor justifies a decision to disregard the corporate entity", some combination of the above is required, and "an overall element of injustice or unfairness must always be present, as well."[41] Here, Plaintiff fails to allege that honoring the separate entity of each Defendant will cause anyone injustice or unfairness. Instead, Plaintiff alleges that disregarding each entity will not cause any of Defendants' shareholders or creditors any harm.[42] That is a misconstruction of the standard. Plaintiff's claim must be dismissed.

### 2.     The Trustee's Claims for Avoidance Based on Constructive and Intentional Fraudulent Transfer Must Be Dismissed.

#### (a)     The Claims are Barred by the Statute of Limitations.

15.     While the introductory allegations of the Complaint (i.e., all those before the claims section) contain many confusing and non-specific allegations of fraudulent transfers across broad swaths of time ranging between 2011 and 2019, the only claims alleging that HCMFA and NPA engaged in fraudulent transfers – Counts 12 and 13 – challenge only two transfers. The transfers alleged to be fraudulent are the December 15, 2011 transfer of management and advisory contracts from HCM to HCMFA[43] and the June 13, 2012 transfer by HCMFA of "Highland Credit Strategies Fund to the newly-created [NPA]."[44] HCM filed its petition on October 16, 2019. The Complaint

---

[40] Complaint, ¶¶ 245–61.
[41] *Trevino* at 529.
[42] Complaint, ¶¶ 252, 260.
[43] *Id.*, ¶¶ 62, 264, 270.
[44] *Id.*, ¶¶ 62, 267, 272.

7

was filed on October 15, 2021. The allegedly fraudulent transfers took place over seven years before the petition date and over nine years before the Complaint was filed.

16.     Here, the statutes of limitation are determined by state law.[45] A claim for constructive fraudulent transfer is time-barred "four years after the transfer was made or the obligation was incurred,"[46] and a claim for actual fraudulent transfer is time-barred "four years after the transfer was made or the obligation was incurred, or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."[47] The transactions at issue (in 2011 and 2012 respectively) occurred more than four years before the Complaint was filed.

17.     Plaintiff's "right to avoid transfers [under § 544(b)] is derivative of an actual unsecured creditor's right. Thus, to establish standing under § 544(b), the Trustee must show the existence of an actual unsecured creditor holding an allowable unsecured claim as of the date of the petition that could avoid the challenged transfer."[48] Plaintiff has "no greater rights of avoidance than the creditor would have if the creditor were asserting invalidity on its own behalf."[49] "Consequently, if the creditor is barred from recovery because of the running of a statute of limitations prior to the commencement of the case, the [trustee] is likewise barred."[50]   The "fraudulent transfer claims [] will be timely so long as one of [the] creditors was entitled as of the Petition Date to assert a claim against the Defendants under the fraudulent transfer laws of [the

---

[45] *E.g.*, *In re Kipnis*, 555 B.R. 877, 883 (S.D. Fla. 2016) (looking to state statute of limitations for § 544 claims); *In re Vaughan Co.*, 498 B.R. 297, 302 (D. N.M. 2013) (same).

[46] Tex. Bus. & Com. Code § 24.010(a)(2).

[47] Tex. Bus. & Com. Code § 24.010(a)(1).

[48] *In re Essential Fin. Ed., Inc.*, 629 B.R. 401, 419-20 (Bankr. N.D. Tex. 2021) (considering 11 U.S.C. § 544(b)(1)).

[49] *In re Zohar III, Corp.*, 631 B.R. 133, 160 (Bankr. Del. 2021); *In re LSC Wind Down, LLC*, 610 B.R. 779, 784 (Bankr. Del. 2020); *In re National Service Industries, Inc.*, 2015 WL 3827003, at *6–9 (Bankr. Del. June 19, 2015).

[50] *In re Zohar III, Corp.*, 631 B.R. at 160 (internal marks omitted).

applicable state].”[51]

18.     Here, Plaintiff is barred from recovery because the statute of limitations has run on the fraudulent transfer claims.  Plaintiff alleges that UBS, the Redeemer Committee, Patrick Daugherty, and Acis held allowable claims to avoid each of the transfers made *on or after* October 16, 2015.[52] Because the December 15, 2011 transfer of management and advisory contracts from HCM to HCMFA[53] and the June 13, 2012 transfer by HCMFA of “Highland Credit Strategies Fund to the newly-created [NPA]”[54] occurred long *before* October 16, 2015, the statute of limitations has run on Counts 12 and 13 and they must be dismissed.

#### (b)     The IRS Cannot Be A Triggering Creditor Here.

19.     Plaintiff seeks to override the normal 4-year statute of limitations and avoid transfers that took place in 2011 and 2012 by contending that it stands in the shoes of the IRS.[55] As a preliminary matter, as discussed in the motions to withdraw the reference, whether the IRS has the power to reach that far back in these circumstances is an unanswered question of federal non-bankruptcy law that should be decided by the District Court.[56]

20.     The use of a federal tax claim to enhance Plaintiff's avoidance powers is a controversial legal issue that is especially inappropriate here. While a trustee can potentially step into the shoes of the IRS to recover allegedly fraudulent transfers over a longer period than the state statute of limitations would allow, the policy behind this is to prevent the IRS from being deprived of the ability to satisfy its claims by reaching those transfers simply because the bankruptcy trustee, who on the petition date becomes the only person able to pursue the claim

---

[51] *Id.*
[52] Complaint, ¶ 39.
[53] *Id.*, ¶¶ 62, 264, 270.
[54] *Id.*, ¶¶ 62, 267, 272.
[55] Complaint, ¶¶ 39, 263, 270.
[56] *See* Motions to Withdraw Reference and briefs in support [Dkt. Nos. 27, 28, 36, 37, 39, 40, 45, 46, 50, and 51].

(depriving the IRS of its independent ability to do so), would be bound by the state statute of limitations.[57] Here, Plaintiff seeks millions, if not hundreds of millions of dollars in damages, on the basis of an approximately $4000 already-allowed IRS claim.[58] That cannot be what Congress intended, and courts and commentators are increasingly so stating.

21.    In February,  a bankruptcy court rejected the use of the IRS as a golden creditor even when a debtor alleged that it owed payroll taxes as of the petition date.[59] While the court specifically relied upon the fact that the IRS had not filed a proof of claim, a fact not present here, it noted that "[p]ayroll taxes accrue as wages are paid, but a deposit for those taxes is not due to the IRS until some period of time later . . . . As a result, virtually every business entity that files for bankruptcy will have accrued unpaid payroll taxes because those taxes are not yet due to be paid to the IRS."[60] Here, the IRS filed protective proofs of claim as placeholders, eventually seeking an extremely small amount of excise tax.[61] This, like the buildup of payroll tax in the *J&M Sales* case, is a common practice. Thus, as the court noted in the *J&M Sales* case, "[u]nder the Trustee's theory, therefore, every business bankruptcy case would automatically have a ten-year lookback period for fraudulent transfers under Section 544(b). That cannot be what Congress intended when enacting Section 544(b)."[62]

22.    Another court completely rejected the notion that the existence of an IRS claim enables a bankruptcy trustee to preempt state statutes of limitation, finding that although "the

---

[57] *E.g.*, *In re CVAH, Inc.*, 570 B.R. 816, 835-36 (Bankr. D. Idaho 2017) (with giving a trustee the expanded powers, the "IRS would be deprived of its statutory right to recover the transfers the defendants received[,]" because the bankruptcy filing prevents the IRS from pursuing its claims directly).

[58] *See* motions to withdraw reference and briefs in support at Dkt. Nos. 27, 28, 36, 37, 39, 40, 45, 46, 50, 51, and 59; Second Notice of Allowed Claims Pursuant to the Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, LP [Bk. Dkt. 3307] at 4 (allowed IRS claims totaling $3,990.16).

[59] *In re J&M Sales Inc.*, 2022 WL 532721, at *3 n.7 (Bankr. D. Del. Feb. 22, 2022).

[60] *Id.*

[61] *See* Proofs of Claim Nos. 32, 173, 248, and 252; Def. Ex. C-F; Def. Appx. 101-123.

[62] *In re J&M Sales Inc.*, at *3 n.7.

Trustee may stand in the shoes of any unsecured creditor to set aside transfers to third parties . . . [i]t does not necessarily follow . . . that a bankruptcy trustee standing in the shoes of the IRS is immunized from state statutes of limitations."[63] The federal government is typically not subject to state statutes of limitations as a function of sovereign immunity: "no time runs against the king."[64] However, even the federal government is not wholly immune from state statutes of limitations. "[I]f an action brought in the name of the United States does not involve public rights or interests, state statutes of limitations typically apply."[65] Section 6502 – which permits suits instituted by the IRS to collect taxes – involves the vindication of public rights. But here, Plaintiff is not seeking to recover money to pay the IRS; the Plaintiff here (as in *Vaughan*) is asserting only private rights of creditors. In short, allowing Plaintiff to evade state statutes of limitations would give him **greater** power than that afforded to the federal government. When an interpretation of a statute produces that incongruous a result, it cannot be correct.[66] The U.S. Supreme Court has instructed that "[s]tatutory construction . . . is a holistic endeavor" and that a court should select a "meanin[g that] produces a substantive effect that is compatible with the rest of the law."[67]  As in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 984 (2017), the phrase "applicable law" is "too weak a reed upon which to rest so weighty a power."[68] The Fifth Circuit has little patience for "clever"

---

[63] *See In re Vaughan Co.*, 498 B.R. 297, 304 (Bankr. D.N.M. 2013).

[64] *Id.* at 302.

[65] *Id.* at 304; *see also U.S. v. Summerlin*, 310 U.S. 414, 416 (1940).

[66] *Demarast v. Manspeaker*, 498 U.S. 184, 190 (1991) ("When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances . . . [such as] where the application of the statute as written will produce a result 'demonstrably at odds with the intentions of its drafters.'"); *Thomas v. Reeves*, 961 F.3d 800, 802-08 (5ᵗʰ Cir. 2020) (en banc) (Costa, J., concurring) (rejecting reading of statute justified by typical rules of statutory construction because it made no sense in the context of the purpose of the statute); *U.S. v. Rodriguez-Rios*, 14 F.3d 1040, 1044 (5ᵗʰ Cir. 1985) ("We are authorized to deviate from the literal language of a statute only if the plain language would lead to absurd results, or if such interpretation would defeat the intent of Congress."); *see also U.S. v. Ret. Serv. Grp.*, 302 F.3d 425, 435 (5ᵗʰ Cir. 2002) (rejecting a proposed statutory interpretation based on the plain language).

[67] *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

[68] *Czyzewski*, 137 S. Ct. at 984; *see also id.* (noting that if "Congress were to intend a major departure" to important statutory schemes, we should "expect more than from simple statutory silence").

interpretation "creating unforeseen meaning or legal effects" from language with otherwise explainable meaning.[69] Indeed, in a very similar context, the Fifth Circuit rejected the use of the Federal Debt Collection Procedures Act as "applicable law" under section 544(b) to enable a trustee to step into the shoes of the IRS to expand the statute of limitations.[70]

23.     With this backdrop, reading § 544(b)(1) in conjunction with 26 U.S.C. §§ 6502(a)(1) and 6901(a) produces a very different result than the cases that stretch to increase the power and reach of bankruptcy debtors and trustees, and by necessary implication, courts.[71] Section 544(b)(1) authorizes a litigation trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is ***voidable*** under applicable law by a creditor holding an unsecured claim that is allowable under section 502 . . . ."[72] IRS Code Section 6502(a)(1) provides that "[w]here an assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun within 10 years after the assessment of the tax." Section 6901(a) concerns "transferred assets" and establishes that they can generally be assessed, paid and collected in the same manner as the tax at issue. Neither section of the IRS Code says anything about avoiding transfers, and none of the cases advocating use of

---

[69] *Thomas,* 961 F.3d at 807-09.

[70] *In re Mirant Corp.*, 675 F.3d 530, 535 (5th Cir. 2012). The underlying bankruptcy case was even more instructive, holding that "[T]he avoidance powers in the FDCPA are exercisable by the United States solely for the benefit of the United States. Nothing in subchapter D of the FDCPA manifests any intent by Congress to benefit parties other than the United States." *In re Mirant Corp.*, 2010 WL 8708772, at *14 (Bankr. N.D. Tex. Apr. 22, 2010).

[71] *E.g.*, *In re Zagaroli*, 2020 WL 6495156, at *3 (Bankr. W.D.N.C. Nov. 3, 2020) (trustee could step into shoes of IRS to avoid state's four-year statute of limitations); *In re Gaither*, 595 B.R. 201 (Bankr. D.S.C. 2018) (same); *In re Porras*, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004) ("[T]he Trustee under § 544(b) may use statutes of limitations available to any creditor in whose shoes he stands in bringing the action."); *In re Hunt*, 136 B.R. 437, 451 (Bankr. N.D. Tex. 1991) ("[T]his Court concludes that Plaintiffs are not barred by the applicable state statutes of limitations since they acquired the status of the United States pursuant to § 544(b) of the Code."). It bears noting that some of the cases approving use of the IRS as the "golden creditor" include the issue of whether the FDCPA can be "applicable law" and reject the Fifth Circuit decision in *Mirant*, suggesting that they are not good indicia of what the Fifth Circuit would do if squarely faced with the issue. *E.g.*, *In re CVAH, Inc.*, 570 B.R. 816, 826-32 (Bankr. D. Idaho 2017); *In re Gaither*, 595 B.R. 201, 212-14 (Bankr. D.S.C. 2018); *In re Tronox*, 503 B.R. 239, 273 (Bankr. S.D.N.Y. 2013).

[72] 11 U.S.C. § 544(b) (emphasis added).

12

the IRS Code to abrogate state states of limitations explains exactly how the IRS statutes relied upon are the requisite "applicable law" when neither provides the IRS with an avoidance power.[73]

24.      Further, the Fifth Circuit has recognized that section 6502 is a forward-looking statute, stating that 6502 "makes clear that it is the 'assessment' itself that, once made, starts the running of the ten-year period within which the IRS can commence efforts to *collect* the assessed tax."[74]  By its plain terms, section 6502 permits the IRS to begin collection attempts within 10 years "after" the assessment of taxes.[75] Accordingly, "[t]he ten-year period appears to be a look-forward period rather than a lookback period."[76] Plaintiff's Complaint now alleges that the IRS filed a proof of claim asserting an unsecured tax claim for the period of June 30, 2015.[77]Therefore, even if Plaintiff were permitted to "stand in the shoes" of the IRS and utilize section 6502, Plaintiff would not have the ability to "reach back" to transactions taking place in 2011 and 2012.[78]

25.      In short, use of the IRS code to override state fraudulent transfer statutes of limitation is inconsistent with the purposes of section 544(b), which is to "incorporate" state law, not "subordinate" or "eviscerate" it.[79] This Court should follow the better reasoned *Vaughan* case that is consistent with the Fifth Circuit's *Mirant* opinion, and not the handful of cases that overreach to provide litigation trustees with powers that vastly exceed and contravene what state legislatures have provided to all other plaintiffs.  Finally, HCMFA and NPA join in and adopt the

---

[73] *See* cases cited in notes 57 and 66 *supra.*

[74] *Remington v. U.S.*, 210 F.3d 281, 284 (5th Cir. 2000) (emphasis in original).

[75] *See* 26 U.S.C. § 6502(a)(1) ("Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun – (1) within 10 years *after* the assessment of the tax . . . .") (emphasis added).

[76] *In re Taylor, Bean & Whitaker Mtg. Corp.*, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sep. 28, 2018) (slip opin.).

[77] Complaint, ¶ 39.

[78] *In re Taylor, Bean & Whitaker Mtg. Corp.*, 2018 WL 6721987, at *6 ("The Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment (or, alternatively, prior to the accrual of the tax liability) . . . .").

[79] *Vaughan*, at 304-05.

13

arguments and authorities cited by co-Defendants in connection with the argument that Plaintiff

may not use the IRS as the "golden creditor."

### 3. Plaintiff's Claim for Successor Liability Has Multiple Fatal Flaws.

26.     There are four theories of successor liability under Delaware law: (1) express

assumption of liability; (2) a *de facto* merger; (3) a mere continuation of a company under a

different name; and (4) fraud.[80] Plaintiff does not allege express assumption of liability or fraud,

so it appears to be relying on one of the other two theories.[81] It has not sufficiently plead either.[82]

### 4. Plaintiff's Claims for Aiding and Abetting Breach of Fiduciary Duty and Knowing Participation in Breach of Fiduciary Duty and Civil Conspiracy to Breach Fiduciary Duty Are Fatally Flawed.

27.     In Counts 15 and 16, Plaintiff alleges that HCMFA and NPA conspired in and/or

participated in Strand and Dondero's alleged breach of fiduciary duty to HCM by knowingly

participating in Dondero's alleged lifeboat scheme,[83] itself addressed in Count Four.[84] As a

preliminary matter, the claims are time-barred. Moreover, contrary to Plaintiff's allegations, Strand

and Dondero did not owe fiduciary duties to HCM. Even if they did owe such duties, the Complaint

fails to sufficiently allege a breach or causation of damages. Finally, stripped of labels, Plaintiff is

really contending that HCMFA and NPA participated in a conspiracy and/or aided and abetted a

fraudulent transfer, and there is no such cause of action in either Texas or Delaware.

---

[80] *Magnolia's at Bethany, LLC v. Artesian Consulting Engineers, Inc.*, No. CIV.A. S11C-04013ESB, 2011 WL 4826106, at *2 (Del. Super. Ct. Sept. 19, 2011) (citing *Fountain v. Colonial Chevrolet Co.*, No. C.A. 85C-DE-88, 1988 WL 40019, at 7 (Del. Super. Ct. Apr. 13, 1988); *Fehl v. S.W.C. Corp.*, 433 F. Supp. 939, 945 (D. Del. 1977); *Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 540 (D. Del. 1988)). Similar to alter ego determinations, the law of the state of incorporation governs successor liability issues. *Sourcing Mgmt., Inc. v. Simclar, Inc.*, 118 F. Supp. 3d 899, 918 (N.D. Tex. 2015) ("under general choice of law principles, the law of the state of incorporation generally applies to successor liability," citing Restatement (Second) of Conflict of Laws § 302).

[81] Plaintiff's Original Complaint (Dkt. No. 1), ¶¶ 255-258.

[82] While Plaintiff amended its Complaint to abandon this claim, Defendants reserve their arguments made in Plaintiff's Original Complaint, Dkt. No. 1 in the event Plaintiff re-pleads to include it again.

[83] Complaint, ¶¶ 285–96.

[84] *Id.*, at ¶¶ 193–200.

CORE/3524885.0002/175138797.9

(a)     **Counts 15 and 16 Are Time-Barred.**

28.     Counts 15 and 16 are barred by the applicable statute of limitations under either Texas law, which is four years, or Delaware law, which is three years.[85] Here, the statute of limitations has run because the events constituting the alleged breach occurred in 2011 and 2012.[86]

29.     Plaintiff fails to plead sufficient facts that would support tolling the statute of limitations. Plaintiff alludes to the "adverse domination" doctrine by stating that, before Dondero was removed on January 9, 2020 (after HCM filed bankruptcy), "the conduct alleged herein was inherently undiscoverable because of the complete domination and control that Dondero exercised over HCM and the Dondero Entities."[87]

30.     But the "adverse domination" doctrine is not recognized under applicable Delaware law. When "the jurisdiction[] whose substantive law controls views statutes of limitations as substantive, that jurisdiction's limitations, and not the procedural limitations of the forum state, will apply."[88] The LPA provides that Delaware substantive law controls the breach of fiduciary duty claims by HCM against Strand and Dondero that underlie the third-party claims against

---

[85] *Janvey* v. *Adams & Reese, LLP*, No. 3:12-CV-0495-N, 2013 WL 12320921, at *4 (N.D. Tex. Sept. 11, 2013) (rejecting application of internal affairs doctrine to statute of limitations on the basis that the limitations period was procedural); Delaware law, however, may supply the statute of limitations because HCMLP is incorporated and Delaware and the LPA's choice of law provision provides for Delaware law. *Pilepro, LLC* v. *Chang*, 152 F. Supp. 3d 659, 675 (W.D. Tex. 2016) (Delaware law governed breach of fiduciary duty claims because place of incorporation was Delaware); 4th LPA § 6.11, Def. Ex. A, Def. Appx. 33; 2nd LPA § 6.11, Def. Ex. B, Def. Appx. 70; *see also In re Avado Brands, Inc.*, 358 B.R. 868, 881–82 (Bankr. N.D. Tex. 2006) (looking to Georgia statute of limitations for fiduciary duty claims with respect to a Georgia corporation); Restatement (Second) of Conflict of Laws § 187(1) (the law chosen by the parties should govern "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue"). *In re The Brown Sch.*, 368 B.R. 394, 402–03 (Bankr. D. Del. 2007) (denying motion to dismiss because the Complaint relied on events that occurred within three years of the bankruptcy petition date).

[86] Complaint, ¶¶ 51, 55, 62, 195, 286, 293, 295(a). *See In re The Brown Sch.*, 368 B.R. 394, 402–03 (Bankr. D. Del. 2007) (denying motion to dismiss because the Complaint relied on events that occurred within three years of the bankruptcy petition date). Even under the 4-year Texas statute of limitations, the claims would be time-barred.

[87] Complaint, ¶¶ 195, 203, 276, 289, 292.

[88] *Cypress/Spanish Ft. I, L.P.* v. *Professional Service Industries, Inc.*, 814 F. Supp.2d 698, 709, n. 4 (N.D. Tex. 2011) (citing *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1381 (5th Cir. 1987)) ("if that jurisdiction's limitations period is considered substantive, that provision will govern").

Defendants.[89] Delaware law also views the adverse domination doctrine as substantive and does not recognize it.[90] Other courts have expressly characterized the adverse domination doctrine as conferring substantive rights.[91] Because Delaware substantive law controls and views the adverse domination doctrine as substantive, Delaware law must apply. Because Delaware law does not recognize the adverse domination doctrine, Plaintiff's allegations pursuant to that doctrine fail as a matter of law to plead grounds to toll the statute on Plaintiff's claims.

31. Delaware does not recognize the adverse domination doctrine because its law affords a partnership and its creditors other avenues for recovery based on breach of fiduciary duty. In Delaware, limited partners and creditors (when the partnership is insolvent), have standing to bring breach of fiduciary duty claims.[92] Where a creditor fails to do so and later attempts to bring such claims after the statute of limitations has run, the claims are barred.[93] HCM was allegedly insolvent from 2010 to 2013,[94] therefore the time for HCM and its creditors[95] to bring claims against Dondero and Strand (and the Defendants) related to the transfers in question in 2011 and 2012 expired no later than in 2016 (assuming a four-year statute of limitations under Texas law).

---

[89] 4th LPA §§ 4.1(g), 6.11, Def. Ex. A, Def. Appx. 33; 2nd LPA §§ 4.1(g), 6.11, Def. Ex. B, Def. Appx. 70.

[90] *In re AMC Investors, LLC*, 637 B.R. 43, 57, n. 60 (Bankr. Del. 2022) ("Because the court believes that Delaware's tolling mechanisms, in combination with the availability of shareholder derivative actions, already address the concerns that underlie the adverse domination doctrine, the court declines to recognize adverse domination as a viable tolling mechanism in Delaware.")

[91] *Antioch Company Litigation Trust v. Morgan*, 644 Fed. Appx. 579, 583 (6th Cir. 2016) (Where state law did not recognize adverse domination, "federal courts do not have the power . . . to create substantive rights denied by State law") (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 105 (1945) (internal marks omitted)); *Resolution Trust Co. v. Walke*, 1994 WL 777355, at *9 (W.D. La. July 29, 1994) ("the court declines to create new substantive law for Louisiana"); *Resolution Trust Corp. v. Scaletty*, 891 P.2d 1110, 1115 (Kan. 1995) (stating that some courts view the adverse domination doctrine as similar to a substantive statute of repose).

[92] *Bren v. Capital Realty Group Senior Housing, Inc.*, 2004 WL 370214, at *4–6 (Del. Ch. Feb. 27, 2004).

[93] *Id.* at * 6.

[94] Complaint, ¶ 106.

[95] The two largest alleged unsecured creditors with allowable claims for whose alleged benefit Plaintiff makes the claims against Defendants—UBS and the Redeemer Committee—brought claims against HCMLP years ago. UBS filed suit in 2009 and proceeded to trial in 2017. Complaint, ¶¶ 45, 46, 76. Various investors (which led to formation of the Redeemer Committee in 2011) made claims in 2008, filed suit in 2016, and received an arbitration award in 2019. Complaint, ¶¶ 87, 88. During HCMLP's alleged period of insolvency from 2010 to 2013 (Complaint, ¶ 106), UBS and the Redeemer Committee could have also made claims against Dondero, Strand, and the Defendants regarding the transfers in 2011 and 2012 that the Plaintiff is now making for their alleged benefit.

32. Even if the adverse domination doctrine was applicable under Texas law, "Plaintiff has failed to show that the doctrine has bearing in this case" against the Defendants.[96] Where the claim is against a third party rather than officers or directors, there is "no justification for applying the 'adverse domination' theory to toll the applicable statute of limitations."[97] Even where a plaintiff alleges that an officer prevented suit against the third party "in order to avoid exposure of his own wrongdoing," the doctrine does not extend "beyond corporate officers and directors."[98]

33. Plaintiff otherwise has failed to plead facts that would support application of the "discovery rule" under either Texas or Delaware law. Under Texas law, the rule "defers the time a cause of action accrues (and the time that the limitation period begins) to the date that the injury is actually discovered" when the claim arises from a fiduciary relationship.[99] Under Delaware law, "the statute will begin to run only upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, is pursued, would lead to the discovery of facts."[100]

34. Here, Plaintiff fails to allege that HCM and its creditors during HCM's alleged period of insolvency from 2010 to 2013 (which overlaps the alleged 2011 and 2012 transfers to Defendants) did not know and were not on inquiry notice of the injuries allegedly caused them by Dondero, Strand, and the Defendants by the 2011 and 2012 transfers. Rather, Plaintiff makes the irrelevant allegation that neither he nor the Estate could have discovered the conduct or inquired about the conduct before Dondero was removed on January 9, 2020.[101] Therefore, the claims against the Defendants must be dismissed.

---

[96] *Federal Deposit Ins. Corp. v. Shrader & York*, 777 F. Supp. 533, 535 (S.D. Tex. 1991).
[97] *Id.*
[98] *F.D.I.C. v. Shrader & York*, 991 F.2d 216, 227 (5th Cir. 1993).
[99] *In re Jones*, 445 B.R. 677, 718, n. 124 (Bankr. N.D. Tex. 2011).
[100] *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 561 (Bankr. Del. 2008).
[101] Complaint, ¶¶ 195, 203, 276, 289, 292.

> **(b)** **Plaintiff Lacks Standing to Bring Claims for Breach of Fiduciary Duty, Defeating His Derivative Aiding and Abetting, Knowing Participation, and Conspiracy Claims.**

35.     Plaintiff's claims for Aiding and Abetting Breach of Fiduciary Duty under Delaware Law or Knowing Participation in Breach of Fiduciary Duty under Texas Law[102] (Count 15) and Civil Conspiracy to Breach Fiduciary Duties under Texas Law (Count 16) must be dismissed because Plaintiff lacks standing to assert claims for breach of fiduciary duty. As more particularly described in the Leventon and Dondero Briefs, breach of fiduciary duty claims are expressly reserved as "Reorganized Debtor Assets," and the assets transferred to the Claimant Trust explicitly excludes Reorganized Debtor Assets. Claims of aiding and abetting breach of fiduciary duty under Delaware law,[103] knowing participation in breach fiduciary duty under Texas law,[104] and civil conspiracy to breach fiduciary duties under Texas law[105] are theories of vicarious liability. Thus, Plaintiff cannot prevail on those claims without proving an underlying breach of fiduciary duty. Because Plaintiff does not have standing to assert a breach of fiduciary duty claim, the claims for aiding and abetting, knowing participation, and civil conspiracy relating to breach of fiduciary duty must be dismissed.

> **(c)** **Strand and Dondero Owed no Fiduciary Duties to HCM.**

36.     Under Texas law, a Delaware business entity's internal affairs, including whether a

---

[102] The Fifth Circuit has yet to recognize the cause of action of aiding and abetting the breach of a fiduciary duty in Texas. *See Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 800 Fed. Appx. 239, 250 (5th Cir. 2020) ("We noted that the 'Texas Supreme Court has no expressly decided whether Texas recognizes a cause of action for aiding and abetting,' and '[w]hen sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts.' Therefore, we cannot recognize a claim that the Texas Supreme Court has yet to expressly adopt. For these reasons, we affirm the dismissal of the aiding and abetting claim.") (internal citations omitted).

[103] *See Gotham Partners, LP v. Hallwood Realty Partners, LP*, 817 A.2d 160, 172 (Del. 2002) (the elements of a claim for aiding and abetting breach of fiduciary duty include "the fiduciary breached its duty").

[104] *See Marshall v. Ribosome LP*, 2019 WL 2041062, at *6 (Tex. App.—Houston [1st Dist.] May 9, 2019, no pet.) (a claim for knowing participation in breach of fiduciary duty claim includes "the requirement that the plaintiff prove the existence of an underlying breach of fiduciary duty").

[105] *See Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) ("[C]ivil conspiracy is not an independent tort . . . . Civil conspiracy requires an underlying tort that has caused damages.").

CORE/3524885.0002/175138797.9

fiduciary duty is owed, are governed by the law of the state where the entity is organized.[106]  HCM

is a Delaware limited partnership[107] and the LPA provides that Delaware law applies.[108] Delaware

permits a general and limited partners' fiduciary duties and liability for breach of those fiduciary

duties to be limited or eliminated by a partnership agreement, except for the duty of good faith.[109]

Where fiduciary duties are disclaimed in the partnership agreement, duties of partners are

determined "exclusively" by the partnership agreement.[110] In other words, "a limited partnership

agreement 'may establish[] a contractual standard of review that supplants the fiduciary duty

analysis,'"[111] and if so, "any claim of a breach of fiduciary duty must be analyzed generally in

terms of the partnership agreement."[112] Under those circumstances, the partnership agreement is

the "sole source of protection."[113]

37.     Under the LPA, in the event of a "conflict of interest" between HCM and Strand

(or its affiliates) in a transaction, "any action taken" by Strand is subject to the duty to not act in

"bad faith" and no other "standard of care or duty imposed herein or therein or under the Delaware

Act or any other applicable law, rule, or regulation."[114]

38.     When a plaintiff raises a claim based upon a permissibly eliminated duty, that claim

must be dismissed.[115] Here, the Complaint alleges that Strand and Dondero owed fiduciary duties

to HCM and challenges their acting on "both sides of the agreements and transactions" between

---

[106] *Klinek v. LuxeYard, Inc.*, 596 S.W.3d 437, 449–50 (Tex. App.—Houston [14th Dist.] 2020, pet denied).

[107] Complaint, n. 1.

[108] 2nd LPA, § 6.11, Def. Ex. B, Def. Appx. 70; 4th LPA, § 6.11, Def. Ex. A, Def. Appx. 33.

[109] Del. Code Ann. tit. 6, § 17-1101(d), (f); *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 252–53 (Del. 2017).

[110] *Brinckerhoff*, 159 A.3d at 252–53.

[111] *Gerber v. EPE Holdings, LLC*, No. 3543-VCN, 2013 Del. Ch. LEXIS 8, at *23 (Del. Ch. Jan. 18, 2013) (internal citations omitted).

[112] *Gotham Partners, LP v. Hallwood Realty Partners, LP*, 817 A.2d 160, 170-71 (Del. 2002).

[113] *Id*. at 171.

[114] 2nd LPA, § 4.1(g), Def. Ex. B, Def. Appx. 63; 4th LPA, § 4.1(g), Def. Ex. A, Def. Appx. 25.

[115] *Malpiede v. Townson*, 780 A.2d 1075, 1094 (Del. 2001).

HCM, on one hand, and NPA or HCMFA, on the other.[116] But doing so is precisely what the LPA permitted.[117] Plaintiff must allege a breach of the LPA to state a claim, which he failed to do.

### (d) The Complaint Fails to Allege Facts that the Alleged Breach Damaged HCM.

39.     Plaintiff pleads that HCM had a financial turnaround after the alleged breaches.[118] Where the pleader's conclusion regarding insolvency and related fraudulent activity "is not only not justified but is contradicted by the facts alleged," the complaint should be dismissed.[119] Here, the Complaint alleges HCM's initial insolvency was the result of the 2008 financial crisis.[120] After the transfers in 2011 and 2012 to NPA and HCMFA, the Complaint recognizes that HCM turned around financially.[121] HCM then returned to insolvency in December, 2016, due to other factors.[122] The Complaint fails to state facts to support the element of causation of damages because Plaintiff's allegations demonstrate that the transfers of accounts to NPA and HCMFA resulted in a financial turnaround in 2013, while other factors drove it back into insolvency in 2015.[123]

### (e) Counts 15 and 16 Complain About Transfers, and There is No Secondary Liability for Fraudulent Transfers.

40.     Counts 15 and 16 must be dismissed because Delaware and Texas law disallow secondary liability for fraudulent transfers.[124] "[T]he District Court for the Northern District of

---

[116] Complaint, ¶ 197.

[117] 2nd LPA, § 4.1(g), Def. Ex. B, Def. Appx. 63; 4th LPA, § 4.1(g), Def. Ex. A, Def. Appx. 25.

[118] Complaint, ¶¶ 67, 107.

[119] *Consol. Cement Corp. v. Pratt*, 47 F.2d 90, 93 (10th Cir. 1931).

[120] Complaint, ¶¶ 50, 105.

[121] *Id.*, ¶¶ 67, 107.

[122] *Id.*, ¶ 108.

[123] *See Mora v. Univ. of Texas Sw. Med. Ctr.*, 469 Fed. Appx. 295, 299 (5th Cir. 2012) (holding that plaintiff's allegation that she was retaliated against was "contradicted by other facts alleged in the complaint, making the claim implausible on its face"); *see also Bot M8 LLC v. Sony Corp. of Amer.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) ("Where, as here, the factual allegations are actually *inconsistent* with and contradict [the plaintiff's claim], they are likewise insufficient to state a plausible claim. As we have said before, while a plaintiff's pleading obligations are not onerous, it is possible that, in pleading its claims, a plaintiff may find that it has pleaded itself out of court.").

[124] *In re Silver State Holdings, Assignee-7901 Boulevard 26 LLC*, No. 19-41579-MXM, 2020 WL 7414434, at *31 (Bankr. N.D. Tex. Dec. 17, 2020).

Texas concluded that Texas law does not provide for secondary liability for fraudulent transfers through conspiracy, aiding and abetting, and similar secondary-liability theories."[125] Likewise, "[u]nder Delaware law, a 'conspiracy cannot be predicated on fraudulent transfer.'"[126]

41.     Plaintiff alleges in Count 15 that "[Defendants] aided and abetted the breaches of fiduciary duty committed by Dondero and Strand. . . . [by] knowingly participat[ing] in Dondero's scheme to divert HCM's valuable business into new 'lifeboat' entities that he owned and controlled."[127]  By basing its claim on Dondero's alleged "lifeboat" scheme, Plaintiff does nothing more than refer to alleged fraudulent transfers it pleads in prior claims.[128]  In Count 16, Plaintiff again refers back to its "lifeboat" theory (a/k/a its fraudulent transfer theory): "Dondero, [and Defendants] conspired to perpetrate the lifeboat scheme in order to place valuable assets outside the reach of HCM's creditors, in violation of Dondero's fiduciary duties."[129]  Thus, Counts 15 and 16 are simply disguised efforts to pursue Defendants for secondary liability for fraudulent transfers, which, as discussed above, has been rejected under both Delaware and Texas law.

### 5.     Plaintiff's Claim for Tortious Interference with Prospective Business Relations Has Two Fatal Flaws.

#### (a)     Plaintiff's Allegations of Tortious Conduct Are Insufficient.

42.     Plaintiff has not established the elements of tortious interference with prospective business relations because the tortious conduct Plaintiff alleges – the fraudulent transfers – fails as

---

[125] *Id.*

[126] *Quadrant Structured Products Co., Ltd. v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014) (quoting *Cornell Glasgow, LLC v. LaGrange Props., LLC,* 2012 WL 3147124, at 5 (Del. Super. Aug. 1, 2012); *Edgewater Growth Capital P'rs, L.P. v. H.I.G. Capital, Inc.*, 2010 WL 720150, at 2 (Del. Ch. Mar. 3, 2010)).

[127] Complaint, ¶¶ 262–73.

[128] *See* Complaint, Count 12 [Constructive Fraudulent Transfer] ¶ 267 (describing the alleged fraudulent transfer of assets: "[t]he result of this transfer was simply to shift the management fees relating to NHF from one lifeboat entity to another) (emphasis added); Count 13 [Intentionally Fraudulent Transfer] ¶ 271(c) (alleging that "HCMLP, through Dondero, was engaged in a multi-faceted scheme to defraud HCMLP's creditors, which involved, among other things, *causing HCMLP to transfer its valuable management contracts and business opportunities to newly-created 'lifeboat' entities*") (emphasis added).

[129] *Id.*, ¶ 295(a).

discussed *supra*, IV.B.2(a-b). Under both Texas and Delaware law, to prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish that the defendant's conduct was "independently tortious or unlawful."[130] To be independently tortious, "the plaintiff must prove that the defendant's conduct would violate some other recognized tort duty."[131] Here, Plaintiff alleges that "[b]ut for the actions of Dondero, [NPA], and HCMFA, HCM would have continued to pursue the business opportunities that Dondero diverted to [NPA] and HCMFA[,]"[132] and that "[b]y using [Defendants] as part of his lifeboat scheme, Dondero breached his fiduciary duties to HCM."[133] However, as discussed *supra*, IV.B.2 and IV.B.4, the lifeboat scheme Plaintiff references (a/k/a the alleged fraudulent transfers) fails to state a claim, whether plead directly or disguised as aiding and abetting, knowing participation, or conspiracy. Therefore, Plaintiff does not state the independently tortious conduct required to state a claim.

### (b) The LPA Precludes Plaintiff's Claim for Tortious Interference of Business Relations.

43. Plaintiff does not state a viable claim against Defendants for tortious interference with business relations because HCM disclaimed any rights to the very business relations it contends Defendants interfered with. Under Delaware law, the parties are free to do so, because courts do not "import standards of conduct from corporate or tort law to govern" limited partnerships, leaving partners free to agree to conduct that might be prohibited in other contexts.[134]

44. The LPA defines an "*Affiliate*" as "any Person that directly or indirectly controls,

---

[130] *Cantu v. Falcon Int'l Bank*, No. 04-17-00467-CV, 2018 WL 1831651, at *3 (Tex. App.—San Antonio Apr. 18, 2018, pet. denied) (citing *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)); *accord Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001) (emphasis added); *see, e.g.*, *Orthopaedic Assocs. of S. Delaware, P.A. v. Pfaff*, No. CV S17C-07-016 ESB, 2018 WL 822020, at *2 (Del. Super. Ct. Feb. 9, 2018).

[131] *Wal-Mart Stores, Inc.*, 52 S.W.3d at 713; *see also Cantu*, 2018 WL 1831651, at *3; *see also ProTradeNet, LLC v. Predictive Profiles, Inc.*, 369 F. Supp. 3d 788, 794–95 (W.D. Tex. 2019).

[132] Complaint, ¶ 299.

[133] *Id.*, ¶ 300.

[134] *See Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 106 (Del. 2013).

is controlled by, or is under common control with the Person in question."[135] HCM disclaimed

"any rights . . . in any business ventures" of Defendants because Defendants are alleged to be

Affiliates of Strand (the "General Partner") (which Plaintiff alleges are under the common control

of Dondero).[136] HCM disclaimed any rights it may have had in the business ventures of entities

such as NPA and HCMFA in the LPA.[137] Because HCM disclaimed any rights in any business

ventures of Affiliates of the General Partner, it relinquished the right to bring this claim.

> **6.      Plaintiff's Claims for Unjust Enrichment and Money Had and Received Must Be Dismissed Because They Fail to State a Claim for Relief.**
>
> > **(a)      Unjust Enrichment is not an Independent Cause of Action under Texas Law.**

45.      Unjust enrichment is not an independent claim in Texas and must be dismissed.[138]

---

[135] 2nd LPA, § 2.1, Def. Ex. B, Def. Appx. 48; 4th LPA, § 2.1, Def. Ex. A, Def. Appx. 10.

[136] Complaint, *passim*.

[137] 2nd LPA, § 4.1(f-g), Def. Ex. B, Def. Appx. 62-63 (emphasis added); 4th LPA, § 4.1(f-g), Def. Ex. A, Def. Appx. 25 (emphasis added):

> (f)      Outside Activities' Conflicts of Interest.  The General Partner or any Affiliate thereof and any director, officer, employee, agent, or representative of the General Partner or any Affiliate thereof shall be entitled to and may have business interests and engage in business activities in addition to those relating to the Partnership, including, without limitation, business interests and activities *in direct competition with* the Partnership.  *Neither the Partnership nor any of the Partners shall have any rights* by virtue of this Agreement or the partnership relationship created hereby *in any business ventures* of the General Partner, any Affiliate thereof, or any director, officer, employee, agent, or representative of either the General Partner or any Affiliate thereof.

> (g)      Resolution of Conflicts of Interest.  Unless otherwise expressly provided in this Agreement or any other agreement contemplated herein, whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or any Limited Partner, on the other hand, any action taken by the General Partner, in the absence of bad faith by the General Partner, shall not constitute a breach of this Agreement or any other agreement contemplated herein or a *breach of any standard of care or duty imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation*.

[138] *See Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) (". . .unjust enrichment describes the nature of certain claims and remedies, [but is] not a distinct cause of action itself"); *McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 891 (Tex. App.—Dallas 2014, pet. denied) ("unjust enrichment is not an independent claim; rather it is a theory of recovery"); *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp.2d 539, 561 (N.D. Tex. 2009) ("Because Texas law does not afford an independent cause of action for unjust enrichment, plaintiffs cannot simultaneously maintain both of these claims [for unjust enrichment and money had and received]," dismissing unjust enrichment claim); *Taylor v. Tervino*, No. 3:20-CV-0393-D, 2021 WL 347566, at *4 (N.D. Tex. Feb. 2, 2021) ("The court has previously held that Texas law does not recognize an independent cause of action for unjust enrichment," dismissing unjust enrichment claim on 12(b)(6) motion, since non-movant could not provide any authority to the contrary); *Redwood Resort Properties, LLC v. Holmes Co. Ltd.*, No. CIVA 3:06CV1022 D, 2006 WL

(b)    **Plaintiff Cannot Recover under Unjust Enrichment or Money Had and Received Because a Valid Contract Governs the Issue.**

46.    A claim for unjust enrichment does not lie when there is a contract governing the parties' dispute,[139] and the same principle applies to money had and received.[140] Plaintiff alleges that HCMFA and NPA paid too little for HCM's services.[141] When compensation is determined by a contract, there can be no claim for unjust enrichment when the price determined by the contract is paid.[142] Regarding Plaintiff's claim for money had and received, Plaintiff alleges that "[t]here was no valid express contract governing the subject matter of this dispute."[143]  However, this allegation is contradicted by other portions of the Complaint.  The "dispute" referred to in Plaintiff's money had and received claim is that "NexPoint and HCMFA utilized HCM's employees to perform management and advisory services that HCM had directly provided, and should have continued to provide.  Neither NexPoint nor HCMFA fairly compensated HCM for

---

3531422, at *9 (N.D. Tex. Nov. 27, 2006) (dismissing unjust enrichment claim on 12(b)(6) motion because "[u]njust enrichment 'is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits. . .which give rise to an implied or quasi-contractual obligation to repay'"); *Arencibia v. AGA Serv. Co.,* No. 4:20-cv-00819-O, 2020 WL 10056799, at *5 (N.D. Tex. Nov. 13, 2020) (dismissing unjust enrichment claim on 12(b)(6) motion because ". . .Texas courts of appeals have consistently held that unjust enrichment is not an independent cause of action, but is instead a theory upon which an action for restitution may rest."); *Clapper v. Am. Realty Inv'rs, Inc.,* No. 3:14-cv-2970-L, 2019 WL 5865709, at *9 (N.D. Tex. Nov. 7, 2019) (same).

[139] *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *Reveille Trucking, Inc., v. Lear Corp.*, No. 4:14-CV-511, 2017 WL 661521, at *13 (S.D. Tex. Feb. 17, 2017); *Maxwell v. Neri N. Am.*, No. 4:13-CV-269, 2014 WL 2441200, at *6 (S.D. Tex. May 30, 2012).

[140] *City Nat'l Rochdale Fixed Inc. Opps. (Ireland) Ltd. v. Amer. General Life Ins. Co.*, No. 3:17-CV-2067-S, 2018 WL 4732431, at *4 (N.D. Tex. Sep. 13, 2018) (internal quotation marks omitted); *see also Payne v. Wells Fargo Bank N.A.*, 637 Fed. Appx. 833, 838 (5th Cir. 2016) ("[T]he existence of an express contract precludes equitable relief under the theory of money had and received."); *Universal MRI & Diagnostics, Inc. v. Med Lien Mgmt., Inc*., 497 S.W.3d 653, 663 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("As a general rule, there can be no recovery under a quasi-contractual theory – such as money had and received – when a valid, express contract covers the subject matter of the parties' dispute.").

[141] Complaint, ¶ 379 ("Neither NexPoint nor HCMFA fairly compensated HCMLP for the use of its employees or resources [under the shared services agreements]").  The shared services agreements between HCMLP and Defendants are alleged (with illustrations) throughout the Complaint: ¶¶ 54, 62, 63, 121, 169, 195, 197, 199, 234, 249, 258, 264, 270, 293. The Complaint also alleges the existence of various potentially relevant forbearance agreements (¶¶ 57, 64, 251), a note agreement (¶ 380), and a payroll reimbursement agreement (¶ 63).

[142] *Musgrave v. Horne Re-Abilene, LLC*, No. 1:09-CV-138-C, 2010 WL 11613937, at *6 (N.D. Tex. July 12, 2010) (dismissing unjust enrichment theory of recovery where the parties contested the amount payable for a tract of land, but there was a valid express contract governing the price to be paid).

[143] *See* Amended Complaint, ¶ 383.

the use of its employees or resources."[144] Other portions of the Amended Complaint specifically refer to Shared Services Agreements between HCM, on the one hand, and NexPoint and HCMFA, on the other hand, which governed the terms of the services provided and the fees and costs charged.[145] Plaintiff's claim for money had and received specifically references multiple agreements,[146] and its effort to repackage its allegations to fit every conceivable tort should be rejected and Plaintiff's unjust enrichment and money had and received claims must be dismissed.

### (c) Plaintiff's Claim for Money Had and Received is Barred by the Applicable Statute of Limitations.

47. Further, Plaintiff's claim for money had and received is subject to a two-year statute of limitations,[147] and is based on alleged misconduct between 2012 and 2017.[148] Accordingly, the Court should dismiss Plaintiff's claim for money had and received because the statute of limitations expired before Plaintiff filed his claims.

## V. Conclusion

48. Defendants NPA and HCMFA therefore respectfully request this Court dismiss Plaintiff's Tenth, Eleventh, Twelfth, Thirteenth, Fifteenth, Sixteenth, Seventeenth, and Twenty-Eighth Counts in its Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Additionally, Defendants NPA and HCMFA do not consent to the Bankruptcy Court entering final orders or a judgment in this Adversary Proceeding.

---

[144] *See* Amended Complaint, ¶ 379.

[145] *See* Amended Petition, ¶¶ 52-65; *see also id.*, ¶ 54 ("[Dondero] caus[ed] NexPoint to enter into a SSA with HCMLP that required NexPoint to pay fees to HCMLP based on a formula . . . ."); *id.* ¶ 249 (same); *id.* ¶ 258 ("Agreements between HCMLP and HCMFA were structured to ensure that HCMFA retained the vast majority of profits for the work performed by HCMLP and its employees. To the extent that sub-advisory and shared services agreements existed between HCMLP and HCMFA . . . .").

[146] *See id.* ¶ 380 ("HCMLP provided substantial financial support for NexPoint and HCMFA, including in the form of below-market ***note agreements***.") (emphasis added).

[147] *See Verizon Employee Benefits Comm. v. Frawley*, 655 F. Supp. 2d 644, 647-48 (N.D. Tex. 2008).

[148] *See* Amended Complaint, ¶¶ 52-65.

Dated: July 11, 2022

Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Email:  deborah.deitschperez@stinson.com
Email:  michael.aigen@stinson.com

**ATTORNEYS FOR DEFENDANTS
NEXPOINT ADVISORS, L.P. AND
HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

I certify that on July 11, 2022, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing system to the parties that are registered or otherwise entitled to receive electronic notices in this case.

*/s/ Deborah Deitsch-Perez*

Deborah Deitsch-Perez

27