Brian D. Glueckstein (admitted *pro hac vice*)
 New York Bar No. 4227005
 gluecksteinb@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588

Cortney C. Thomas
 Texas Bar No. 24075153
 cort@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone:  (214) 327-5000
Facsimile:   (214) 327-5001

*Counsel for Mark K. Okada and*
*Affiliated Parties*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

------------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | : | Case No. 19-34054-sgj11 |
| | : | |
| Reorganized Debtor. | : | |

------------------------------------------------------------------- X

| | | |
|---|---|---|
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 21-03076-sgj |
| | : | |
| v. | : | |
| | : | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT | : | |

---

[1]  The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and
   service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

| | |
|---|---|
| JAMES SCOTT III; STRAND ADVISORS, INC.; | : |
| NEXPOINT ADVISORS, L.P.; HIGHLAND | : |
| CAPITAL MANAGEMENT FUND ADVISORS, | : |
| L.P.; DUGABOY INVESTMENT TRUST AND | : |
| NANCY DONDERO, AS TRUSTEE OF DUGABOY | : |
| INVESTMENT TRUST; GET GOOD TRUST AND | : |
| GRANT JAMES SCOTT III, AS TRUSTEE OF GET | : |
| GOOD TRUST; HUNTER MOUNTAIN | : |
| INVESTMENT TRUST; MARK & PAMELA | : |
| OKADA FAMILY TRUST – EXEMPT TRUST #1 | : |
| AND LAWRENCE TONOMURA AS TRUSTEE OF | : |
| MARK & PAMELA OKADA FAMILY TRUST – | : |
| EXEMPT TRUST #1; MARK & PAMELA OKADA | : |
| FAMILY TRUST–EXEMPT TRUST#2 AND | : |
| LAWRENCE TONOMURA IN HIS CAPACITY AS | : |
| TRUSTEE OF MARK & PAMELA OKADA | : |
| FAMILY TRUST–EXEMPT TRUST #2; CLO | : |
| HOLDCO, LTD.; CHARITABLE DAF HOLDCO, | : |
| LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND | : |
| DALLAS FOUNDATION; RAND PE FUND I, LP, | : |
| SERIES 1; MASSAND CAPITAL, LLC; MASSAND | : |
| CAPITAL, INC.; AND SAS ASSET RECOVERY, | : |
| LTD., | : |
| | : |
| Defendants. | : |
| | : |
| ---------------------------------------------------------------------- X | |

## MEMORANDUM OF LAW IN SUPPORT OF THE OKADA PARTIES' MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ................................................................................1

STATEMENT PURSUANT TO RULE 7012 ..........................................................3

BACKGROUND .....................................................................................................3

    A.    Mr. Okada's Role at HCMLP .................................................................3

    B.    The Limited Partnership Agreement......................................................3

    C.    HCMLP Bankruptcy Proceedings..........................................................4

    D.    The Litigation Trustee's Claims Against the Okada Parties...................5

LEGAL STANDARD...............................................................................................7

ARGUMENT ..........................................................................................................8

I.    THE BREACH OF FIDUCIARY DUTY CLAIM AGAINST MR. OKADA MUST BE DISMISSED ............................................................................8

    A.    Mr. Okada Owed No Fiduciary Duties with Regard to the HCMLP Equity Distributions...................................................................................9

        1.    The Highland LP Agreement Precludes the Litigation Trustee's Breach of Fiduciary Duty Claim. ..................................................9

        2.    The Amended Complaint's Meager Allegations Cannot Support the Litigation Trustee's Claim That Mr. Okada Had or Breached Any Relevant Duty. .........................................................................10

        3.    The Litigation Trustee's Own Allegations Confirm That Mr. Okada Did Not Have a Relevant Duty. ...............................................11

    B.    The Litigation Trustee Fails to Plead Insolvency. .................................12

        1.    April 2010 – April 2013............................................................13

        2.    December 2016 – March 2019...................................................14

    C.    The Trustee Cannot Pursue a Breach of Fiduciary Duty Claim Beyond the Applicable Statute of Limitations. ........................................................15

II.    THE AIDING AND ABETTING OR KNOWING PARTICIPATION IN BREACH OF FIDUCIARY DUTY CLAIM AGAINST MR. OKADA MUST BE DISMISSED ...16

III.   THE LITIGATION TRUSTEE CANNOT AVOID MOST OF THE
       DISTRIBUTIONS MADE TO THE OKADA PARTIES AS A MATTER OF LAW .....18

       A.     The Litigation Trustee's Fraudulent Transfer Claims Are Restricted by
              the Applicable Statutes of Limitations....................................................................18

       B.     The IRS "Golden Creditor" Statute Is Not Available. ...........................................19

              1.     The Litigation Trustee Cannot Benefit From the IRS's Sovereign
                     Exemption from State Statutes of Limitation. ...........................................19

              2.     The IRS Has Not Asserted Any Claims That Could Extend the  Statute
                     of Limitations..........................................................................................22

IV.    THE BANKRUPTCY COURT LACKS JURISDICTION TO ADJUDICATE THE
       NON-CORE CLAIMS AGAINST MR. OKADA...........................................................24

CONCLUSION.........................................................................................................................25

4860-9305-8082 v.6

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*AAB Logistics, Inc.* v. *Forward Air, Inc.*,
  2016 WL 8672773 (N.D. Tex. Nov. 18, 2016) ........................................................18

*Alaska Dept. of Envtl. Conservation* v. *EPA*,
  540 U.S. 461 (2004) ...............................................................................................20

*In re AMC Investors, LLC*,
  2022 WL 248133 (Bankr. D. Del. Jan. 27, 2022) ...................................................16

*ASDI, Inc.* v. *Beard Res., Inc.*,
  11 A.3d 749 (Del. 2010) .........................................................................................10

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009) ............................................................................................7, 16

*Matter of ATP Oil & Gas Corp.*,
  711 F. App'x 216 (5th Cir. 2017) ......................................................... 12-13, 14, 15

*Bank of La.* v. *Craig's Stores of Tex., Inc.* (*In re Craig's Stores of Tex., Inc.*),
  266 F.3d 388 (5th Cir. 2001) .............................................................................24, 25

*Barnett* v. *Am. Gen. Life Ins. Co.*,
  2010 WL 11566353 (W.D. Tex. Oct. 7, 2010) .........................................................8

*Beard Research, Inc.* v. *Kates*,
  8 A.3d 573 (Del. Ch. 2010) ....................................................................................10

*Bell Atlantic Corp.* v. *Twombly*,
  550 U.S. 544 (2007) ..................................................................................................7

*BFP* v. *Resolution Trust Corp.*,
  511 U.S. 531 (1994) ............................................................................................21-22

*Biliouris* v. *Patman*,
  2017 WL 1078526 (N.D. Tex. Mar. 21, 2017) .......................................................19

*Blackburn* v. *City of Marshall*,
  42 F.3d 925 (5th Cir. 1995) ......................................................................................8

*Brickell Pt'rs* v. *Wise*,
  794 A.2d 1 (Del. Ch. 2001) .......................................................................................9

*Bridgeport Holdings, Inc.* v. *Boyer* (*In re Bridgeport Holdings, Inc.*),
    388 B.R. 548 (Bankr. D. Del. 2008) .................................................................11

*Colvin* v. *Amegy Mortg. Co., L.L.C.*,
    507 B.R. 915 (W.D. Tex. 2014)...........................................................................25

*Computer Assocs. Int'l, Inc.* v. *Altai, Inc.*,
    918 S.W.2d 453 (Tex. 1996)................................................................................16

*In re Crescent Res., LLC*,
    2012 WL 195528 (Bankr. W.D. Tex. Jan. 23, 2012)..................................13, 14, 15

*Curtis* v. *Cerner Corp.*,
    621 B.R. 141 (S.D. Tex. 2020) ............................................................................18

*In re CVAH, Inc.*,
    570 B.R. 816 (Bankr. D. Idaho 2017)..................................................................21

*Czyzewski* v. *Jevic Holding Corp.*,
    137 S. Ct. 973 (2017)...................................................................................19, 21

*Dean* v. *Reticulum Mgt., LLC*,
    620 B.R. 271 (Bankr. N.D. Tex. 2020).................................................................24

*In re Del Monte Foods Co. Shareholders Litig.*,
    25 A.3d 813 (Del. Ch. 2011)........................................................................... 16-17

*Epic Sys. Corp.* v. *Lewis*,
    138 S. Ct. 1612 (2018).......................................................................................21

*In re Essendant, Inc. Stockholder Litig.*,
    2019 WL 7290944 (Del. Ch. Dec. 30, 2019)........................................................17

*Fid. & Guar. Ins. Underwriters Inc.* v. *Wells Fargo Bank, Nat'l Ass'n*,
    2005 WL 8165022 (S.D. Tex. Mar. 31, 2005)......................................................18

*In re Fruehauf Trailer Corp.*,
    250 B.R. 168 (D. Del. 2000) ..............................................................................18

*In re Giant Gray, Inc.*,
    629 B.R. 814 (Bankr. S.D. Tex. 2020) ................................................................19

*Guffy* v. *Brown* (*In re Brown Med. Ctr., Inc.*),
    578 B.R. 590 (Bankr. S.D. Tex. 2016) ................................................................25

*Heinze* v. *Tesco Corp.*,
    971 F.3d 475 (5th Cir. 2020) ...............................................................................7

*In re Herring*,
  2015 WL 7753540 (Bankr. S.D. Tex. Dec. 1, 2015) .............................................................24

*Johnson* v. *E. Baton Rouge Fed'n of Tchrs.*,
  706 F. App'x 169 (5th Cir. 2017) ..........................................................................................7

*Kaye* v. *Dupree* (*In re Avado Brands, Inc.*),
  358 B.R. 868 (Bankr. N.D. Tex. 2006)..................................................................................15

*Kaye* v. *Lone Star Fund V (U.S.), L.P.*,
  453 B.R. 645 (N.D. Tex. 2011)..............................................................................................12

*L A Pt'rs, L.P.* v. *Allegis Corp.*,
  1987 WL 14541 (Del. Ch. Oct. 22, 1987) .............................................................................17

*Lazard Debt Recovery GP, LLC.* v. *Weinstock*,
  864 A.2d 955 (Del. Ch. 2004)................................................................................................10

*Lone Star Fund V (U.S.), L.P.* v. *Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ...................................................................................................4

*Luria* v. *Thunderflower, LLC* (*In re Taylor, Bean & Whitaker Mortg. Corp.*),
  2018 WL 6721987 (Bankr. M.D. Fla. Sept. 28, 2018) ..........................................................23

*Malpiede* v. *Townson*,
  780 A.2d 1075 (Del. 2001) ....................................................................................................17

*Meadows* v. *Hartford Life Ins. Co.*,
  492 F.3d 634 (5th Cir. 2007) .................................................................................................17

*Miller* v. *Fallas* (*In re J&M Sales Inc.*),
  2022 WL 532721 (Bankr. D. Del. Feb. 22, 2022) .................................................................22

*Mirant Corp.* v. *The S. Co.*,
  337 B.R. 107 (N.D. Tex. 2006)..............................................................................................24

*Norris* v. *Hearst Tr.*,
  500 F.3d 454 (5th Cir. 2007) .................................................................................................24

*In re Northstar Offshore Grp., LLC*,
  616 B.R. 695 (Bankr. S.D. Tex. 2020) ....................................................................... 14, 22-23

*PilePro, LLC* v. *Chang*,
  152 F. Supp. 3d 659 (W.D. Tex. 2016)..................................................................................10

*PilePro, L.L.C.* v. *Heindl*,
  676 F. App'x 341 (5th Cir. 2017) ..........................................................................................10

*In re Primedia, Inc. Shareholders Litig.*,
    67 A.3d 455 (Del. Ch. 2013)..................................................................... 17-18

*Randall D. Wolcott, M.D., P.A.* v. *Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ...................................................................24

*Reed* v. *Linehan* (*In re Soporex, Inc.*),
    463 B.R. 344 (Bankr. N.D. Tex. 2011)...................................................12

*Remington* v. *United States*,
    210 F.3d 281 (5th Cir. 2000) ...................................................................23

*In re RFC & ResCap Liquidating Tr. Litig.*,
    2017 WL 1483374 (D. Minn. Apr. 25, 2017)........................................14

*Ryan* v. *Buckeye Partners, L.P.*,
    2022 WL 389827 (Del. Ch. Feb. 9, 2022) ...............................................9

*SEC* v. *Calvo*,
    378 F.3d 1211 (11th Cir. 2004) ...............................................................20

*Segner* v. *Admiral Ins. Co.* (*In re Palmaz Scientific, Inc.*),
    2018 WL 661409 (Bankr. W.D. Tex. Jan. 31, 2018)..............................25

*Shaw* v. *Villanueva*,
    918 F.3d 414 (5th Cir. 2019) ...................................................................16

*Slyce Acquisition Inc.* v. *Syte - Visual Conception Ltd.*,
    422 F. Supp. 3d 1191 (W.D. Tex. 2019)..................................................11

*Smith* v. *Allstate Ins. Co.*,
    2016 WL 11201008 (N.D. Tex. Jan. 12, 2016) ................................. 15-16

*Stanziale* v. *Heico Holdings, Inc.* (*In re Conex Holdings, LLC*),
    514 B.R. 405 (D. Del. 2014)....................................................................11

*Starling* v. *JPMorgan Chase Bank, N.A.*,
    2013 WL 4494525 (N.D. Tex. Aug. 22, 2013)..........................................4

*Triton Const. Co.* v. *E. Shore Elec. Servs., Inc.*,
    2009 WL 1387115 (Del. Ch. May 18, 2009)...........................................10

*United States* v. *Evans*,
    340 F. App'x 990 (5th Cir. 2009) ............................................................20

*United States* v. *Lamirand*,
    669 F.3d 1091 (10th Cir. 2012) ...............................................................20

*U.S. Bank Nat'l Ass'n* v. *Verizon Commc'ns, Inc.*,
    817 F. Supp. 2d 934 (N.D. Tex. 2011) ............................................................ 16-17

*U.S. Rest. Props. Operating L.P.* v. *Burger King Corp.*,
    2003 WL 21448389 (N.D. Tex. June 16, 2003) ...................................................15

*In re Vaughan Co.*,
    498 B.R. 297 (Bankr. D.N.M. 2013) ....................................................20, 21, 22

*Weisbuch* v. *Cty. of L.A.*,
    119 F.3d 778 (9th Cir. 1997) ....................................................................11

*Whitman* v. *Am. Trucking Associations*,
    531 U.S. 457 (2001) ..............................................................................21

*Winslow* v. *Paxton*,
    2017 WL 283281 (N.D. Tex. Jan. 20, 2017) ...........................................................8

*In re Zagaroli*,
    2020 WL 6495156 (Bankr. W.D.N.C. Nov. 3, 2020) .................................................21

## STATUTES

11 U.S.C. § 349.....................................................................................................21

11 U.S.C. § 544............................................................................................. *passim*

11 U.S.C. § 548..................................................................................................18, 22

26 U.S.C. § 6502........................................................................................... *passim*

10 Del. Code § 8106.........................................................................................15

Texas Uniform Fraudulent Transfer Act,
    Tex. Bus. & Com. Code § 24.001 *et seq.* .......................................... *passim*

Tex. Bus. & Com. Code § 24.005........................................................................19, 24

Tex. Bus. & Com. Code § 24.010........................................................................19

Tex. Civ. Prac. & Rem. Code § 16.004 ..............................................................15

## RULES

Fed. R. Civ. P. 12(b)(1)...................................................................................1, 8

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 7

Fed. R. Bankr. P. 2004.....................................................................................5

Fed. R. Bankr. P. 7012(b) ......................................................................................................1, 3, 7

**OTHER AUTHORITY**

Antonin Scalia, *Common–Law Courts in a Civil Law System: The Role of United States Federal Courts in Interpreting the Constitution and Laws,* in A Matter of Interpretation (Amy Gutmann ed., 1997) ...........................................................................21

4860-9305-8082 v.6

Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, and Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Mark K. Okada, The Mark & Pamela Okada Family Trust – Exempt Trust #1 ("MPO Trust 1") and Lawrence Tonomura in his Capacity as Trustee, and The Mark & Pamela Okada Family Trust – Exempt Trust #2 ("MPO Trust 2") and Lawrence Tonomura in his Capacity as Trustee (collectively, the "Okada Parties"), respectfully submit this memorandum in support of their motion to dismiss (the "Motion") the causes of action asserted against one or more of the Okada Parties in the Amended Complaint: Counts I, II, XIV, and XXXV. In support of their Motion, the Okada Parties hereby state as follows:

## PRELIMINARY STATEMENT

1.      The Litigation Trustee filed an expansive Amended Complaint that asserts 36 counts against 21 defendants but musters virtually nothing against the Okada Parties. The Litigation Trustee does not allege a single act of wrongdoing by Mr. Okada or either of his family's trusts despite spending two years investigating claims with unfettered access to HCMLP's files, and now having amended the original complaint in response to the Defendants' initial motions to dismiss.

2.      The Amended Complaint asserts only four counts against any of the Okada Parties: claims alleging each of the Okada Parties received purported fraudulent transfers from HCMLP (Am. Compl. ¶¶ 172-86), that Mr. Okada breached his fiduciary duties as Chief Investment Officer in connection with those distributions (Am. Compl. ¶¶ 280-82), and that Mr. Okada aided and abetted Mr. Dondero's breach of his duties by failing to stop distributions declared by Mr. Dondero—who had absolute authority to do so (*Id.* ¶ 433). In fact, the Amended Complaint concedes certain of the transfers the Okada Parties received are not

actionable. The remainder of the claims asserted against the Okada Parties are deficient and must be dismissed.

3. *First*, the Litigation Trustee's threadbare assertions that Mr. Okada breached his fiduciary duties are unsupported by any factual allegations, and cannot meet the requisite pleading standard. Generalized group pleading cannot rescue the Amended Complaint because it is black-letter law that each claim must be evaluated based on the allegations asserted against the Okada Parties, not other defendants. Moreover, the Litigation Trustee's breach of fiduciary duty claim is precluded by the HCMLP partnership agreement, and is contrary to the Litigation Trustee's own allegations. Furthermore, despite partly basing his fiduciary duty claim on the assertion that HCMLP purportedly was insolvent at the time of the distributions, the Litigation Trustee fails to sufficiently plead HCMLP's insolvency. Finally, under any circumstances, a breach of fiduciary duty claim based on equity distributions occurring beyond the applicable statute of limitations is time-barred.

4. *Second*, the newly added aiding and abetting breach of fiduciary duty claim against Mr. Okada fails because the Litigation Trustee has not alleged any facts sufficient to show that Mr. Okada knowingly participated in such breach, and he could not have done so.

5. *Third*, many of the alleged fraudulent transfers took place beyond the statute of limitations period under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), and thus those claims as to the Okada Parties cannot be maintained. The Litigation Trustee cannot utilize the IRS as the "golden creditor" and invoke 26 U.S.C. § 6502 to extend the statute of limitations because such a privilege should not be available to the Litigation Trustee and, even if it is, the Amended Complaint acknowledges the IRS did not assess any taxes against HCMLP for a tax period prior to June 30, 2015.

6.       *Fourth*, the non-core claims against Mr. Okada for breach of fiduciary duty and aiding and abetting breach of fiduciary duty must be dismissed because the Bankruptcy Court lacks post-confirmation subject-matter jurisdiction over them.

**STATEMENT PURSUANT TO RULE 7012**

7.       The Okada Parties respectfully do not consent to the entry of a final order or judgment by the Bankruptcy Court in this adversary proceeding.  Fed. R. Bankr. P. 7012(b).

**BACKGROUND**

### A.       Mr. Okada's Role at HCMLP

8.       Mr. Okada was a co-founder of Highland Capital Management, L.P. ("HCMLP"), an alternative investment management company established in 1993.  (Am. Compl. ¶¶ 2, 40.) Mr. Okada was a pioneer in alternative credit investing and served as HCMLP's Chief Investment Officer ("CIO") for over 25 years.  (*Id.* ¶ 13.)  As CIO, Mr. Okada oversaw a range of investments managed by HCMLP, including in leveraged loans, real estate, structured credit, public equities, and other investments.  Mr. Okada announced his retirement from HCMLP in September 2019, prior to the commencement of HCMLP's bankruptcy proceedings.  (*Id.*)

9.       Mr. Okada and his family trusts MPO Trust 1 and MPO Trust 2 held interests in HCMLP as limited partners.  (*Id.* ¶ 139.)  Mr. Okada's responsibilities did not include either authority or responsibility for declaring distributions to HCMLP's equity holders, which the Litigation Trustee alleges belonged to Mr. Dondero through Strand.  (*Id.* ¶¶ 183, 184, 229.)

### B.       The Limited Partnership Agreement

10.      HCMLP was governed prior to the bankruptcy by the Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "LP Agreement").  The LP Agreement expressly disclaimed liability for limited partners, providing that "[l]imited [p]artners" such as the Okada Parties "have no liability under this [LP

-3-

Agreement." (App'x 27, Glueckstein Decl. Ex. 1 ("LPA"), § 4.2(a)-(b).)[2] Responsibility for managing the partnership belonged at all times solely to the general partner. (App'x 23-24, LPA § 4.1(a).) "During all periods relevant to the allegations set forth [in the Amended Complaint], Strand [Advisors, Inc. ('Strand')] was the general partner of HCMLP." (Am. Compl. ¶ 220.) The Litigation Trustee alleges that "Strand was dominated and controlled by its sole owner, Dondero." (*Id.* ¶ 197.)

11.     Responsibility for making equity distributions belonged to the general partner, which could "make such pro rata or non-pro rata distributions as it may determine in its sole and unfettered discretion." (App'x 20, LPA § 3.9(a).) Under the LP Agreement, duties of officers extended only to those that the general partner had delegated to them. (App'x 26-27, LPA § 4.1(k).) Liability of the general partner and its officers was limited to only "gross negligence or willful or wanton misconduct." (App'x 26, LPA § 4.1(i)(i).)

### C.     HCMLP Bankruptcy Proceedings

12.     On October 16, 2019 (the "Petition Date"), HCMLP filed a voluntary petition pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On November 24, 2020, HCMLP filed its Fifth Amended Plan of Reorganization [Bankr. Dkt. 1472, *as modified by* Bankr. Dkt. 1808] (the "Plan"), which the Bankruptcy Court confirmed on February 22, 2021 [Bankr. Dkt. 1943] (the "Confirmation Order"). The Plan went effective and HCMLP emerged from bankruptcy on August 11, 2021 [Bankr. Dkt. 2700] (the "Plan Effective

---

[2] References to "Glueckstein Decl." are to the Declaration of Brian D. Glueckstein, filed contemporaneously herewith. The Court may consider "documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P.* v. *Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The LP Agreement is critical to the Litigation Trustee's claims and the Amended Complaint's reference to the "operative partnership agreements" (Am. Compl. ¶ 221) is sufficient to incorporate the document by reference. *See Starling* v. *JPMorgan Chase Bank, N.A.*, 2013 WL 4494525, at *3 (N.D. Tex. Aug. 22, 2013) (considering "several documents" that the defendant attached to its motion to dismiss because "[p]laintiffs reference[d] [them] (albeit not by name)").

Date").  Pursuant to the Plan, certain potential litigation claims previously held by HCMLP were irrevocably transferred to a newly created Litigation Sub-Trust following creation of the Claimant Trust.  (*See* Conf. Order ¶ M; Plan Art. IV.B.)

13.     The Okada Parties did not participate in the chapter 11 proceedings prior to the Plan Effective Date.  Counsel for the Okada Parties first entered an appearance in HCMLP's chapter 11 case on August 16, 2021 [*see* Bankr. Dkt. 2719, 2720], in response to a July 29, 2021 motion filed by the official committee of unsecured creditors for examination pursuant to rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") [Bankr. Dkt. 2620].[3]  The Bankruptcy Rule 2004 motion, which was filed more than five months after the confirmation of the Plan and less than two weeks before it went effective, was the first attempt to seek documents and information from the Okada Parties.  [*See* Bankr. Dkt. 2620 ¶¶ 4-5.]

       **D.     The Litigation Trustee's Claims Against the Okada Parties**

14.     On May 19, 2022, the Litigation Trustee filed the Amended Complaint and Objection to Claims (the "Amended Complaint").  [Adv. Pro. Dkt. 158.]  Despite its expansive scope, it includes only four counts against one or more of the Okada Parties:  claims that they were recipients of certain equity distributions that were constructive and intentional fraudulent transfers (Counts I and II), a claim that Mr. Okada breached his fiduciary duties as CIO in connection with those distributions (Count XIV), and a claim that Mr. Okada aided and abetted Mr. Dondero's alleged breach of his fiduciary duties (Count XXXV).

15.     The Litigation Trustee's theory of the case as alleged in the Amended Complaint demonstrates the claims against the Okada Parties are baseless.  The Amended Complaint alleges

---

[3]  On April 8, 2020, prior to the bar date, each of the Okada Parties filed an unliquidated protective proof of claim in the bankruptcy proceedings related to the indemnification of certain potential tax liabilities.  With the consent of the Litigation Trustee, the Bankruptcy Court entered an order permitting the Okada Parties to withdraw those proofs of claim, with prejudice.  [*See* Bankr. Dkt. 3163.]

4860-9305-8082 v.6

that following "years of successful operations," HCMLP's "business began to falter" as a result of the global recession in 2008. (Am. Compl. ¶¶ 4, 44.) Funds managed by HCMLP allegedly suffered losses in connection with the financial crisis. (*Id.* ¶ 44.) As was true of many financial services firms at the time, HCMLP also allegedly faced the possibility of litigation claims stemming from the investments of funds managed by HCMLP. (*Id.* ¶ 4.)

16. The Litigation Trustee alleges that, in an attempt to insulate HCMLP from potential litigation liability, Mr. Dondero undertook to transfer business and assets away from HCMLP, including into new entities that the Litigation Trustee denominates "lifeboats." (*See e.g.*, *id*. ¶¶ 5, 67.) The Litigation Trustee repeatedly emphasizes that the challenged activities were directed by Mr. Dondero, who allegedly "exercised complete control over HCMLP from its founding until January 9, 2020." (*Id.* ¶ 42; *see also id.* ¶¶ 111, 114, 184, 197, 229, 279, 415.) Mr. Okada is not alleged to have engaged in any misconduct related to the challenged transfers.

17. The only four counts asserted against Mr. Okada involve equity distributions that HCMLP made to its limited partners, including the Okada Parties, from 2010 to 2013 and 2016 to 2019. (*Id*. ¶¶ 137, 139-56, 172-86, 274-84, 429-33.) The Litigation Trustee does not allege that Mr. Okada played any role in planning or executing the distributions (*id.* ¶¶ 274-84), and instead alleges that Mr. Dondero caused the transfers (*id.* ¶ 184, 279). The Litigation Trustee alleges only that Mr. Okada "acquiesced to and profited from" the challenged transfers (*id.* ¶ 183), and that he "knew" that HCMLP was purportedly "balance sheet insolvent (or would be rendered balance sheet insolvent), inadequately capitalized, and/or unable to pay its debts as they came due" (*id.* ¶ 177). He similarly alleges, in conclusory fashion, that Mr. Okada "knew or willfully blinded himself to the fact that the HCMLP Distributions . . . were made at a time that HCMLP was insolvent and would not be able to satisfy its obligations to its present and future

-6-

creditors." (*Id.* ¶ 280; *see also id.* ¶ 433.) The Amended Complaint also asserts that Mr. Okada "willfully and wantonly [did] not return[] the distributions." (*Id.* ¶ 281.)

18.     Nearly all of the Litigation Trustee's claims against the Okada Parties rely on the assertion that HCMLP was insolvent each time an equity distribution was made to the limited partners from 2010 through 2013 and from 2016 through 2019. (*Id.* ¶¶ 175, 184(e), 280, 433.) Rather than support this assertion beyond a barebones, summary chart, the Amended Complaint includes only conclusory allegations and actually concedes years-long periods of solvency between alleged periods of insolvency. (*Id.* ¶¶ 106-09.)

## LEGAL STANDARD

19.     To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to these proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 8(a). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[A] complaint must allege 'more than labels and conclusions,' as 'a formulaic recitation of the elements of a cause of action will not do.'" *Heinze* v. *Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555).

20.     The Supreme Court has established a two-step approach for evaluating the sufficiency of a complaint. First, the Court "identifies any allegations . . . that are conclusory, as these will not be afforded a presumption of truth." *Johnson* v. *E. Baton Rouge Fed'n of Tchrs.*, 706 F. App'x 169, 170 (5th Cir. 2017). Second, the Court "analyze[s] the remaining factual allegations to determine if, when presumed true, they add up to a violation of the law." *Id.*

"[D]ismissal is appropriate where the complaint is devoid of facts to establish any one of the required elements of the claim asserted." *Barnett* v. *Am. Gen. Life Ins. Co.*, 2010 WL 11566353, at \*3 (W.D. Tex. Oct. 7, 2010) (citing *Blackburn* v. *City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)). Courts must review the allegations against each defendant on a claim-by-claim basis because the "pleading standards . . . apply separately to each claim and each defendant." *Winslow* v. *Paxton*, 2017 WL 283281, at \*2 (N.D. Tex. Jan. 20, 2017). Finally, if a court lacks subject-matter jurisdiction over a claim, that claim must be dismissed. Fed. R. Civ. P. 12(b)(1).

## **ARGUMENT**

## I. THE BREACH OF FIDUCIARY DUTY CLAIM AGAINST MR. OKADA MUST BE DISMISSED

21. The Amended Complaint alleges that "[a]s Dondero's co-founder and HCMLP's Chief Investment Officer, Okada knew or willfully blinded himself to the fact that the HCMLP Distributions—including but not limited to the distributions made to Okada, MPO Trust 1, and MPO Trust 2—were made at times that HCMLP was insolvent and would not be able to satisfy its obligations to its present and future creditors." (Am. Compl. ¶ 280.) The Amended Complaint then alleges that Mr. Okada breached his fiduciary duties as CIO of HCMLP by "not returning the distributions" received and "permitting unlawful distributions to Dondero" and others. (*Id.* at ¶ 281.) These meager allegations do not support claims against Mr. Okada, which must be dismissed for several reasons.

22. *First*, the Litigation Trustee fails to plead facts sufficient to show that Mr. Okada had, let alone breached, a duty in connection with the equity distributions. Indeed, the LP Agreement and the Litigation Trustee's own allegations establish that Mr. Okada had no such duty. *Second*, while the Litigation Trustee bases his breach of duty claim with respect to the distributions on HCMLP's purported insolvency, the Litigation Trustee's cursory charts are

-8-

insufficient to plead that HCMLP was insolvent at the time of each distribution. *Third*, claims for alleged breaches based on distributions that took place beyond the applicable statute of limitations are time-barred.

      **A.**    **Mr. Okada Owed No Fiduciary Duties with Regard to the HCMLP Equity Distributions.**

           **1.**    **The Highland LP Agreement Precludes the Litigation Trustee's Breach of Fiduciary Duty Claim.**

23.      The breach of fiduciary duty claim against Mr. Okada must be dismissed because the LP Agreement expressly provides that the general partner of HCMLP, Strand, had sole responsibility for managing the partnership (App'x 23-24, LPA § 4.1(a)), and the ***sole*** authority to declare equity distributions. (App'x 20, LPA § 3.9(a) (noting that the general partner "could make such pro rata or non-pro rata distributions as it may determine in its sole and unfettered discretion")). Assertions by the Litigation Trustee that Mr. Okada breached a duty because he "knowingly permitted unlawful distributions" (Am. Compl. ¶ 281) therefore fail, because the Litigation Trustee has not and cannot plead that Mr. Okada in fact had any authority whatsoever over such distributions, or the right or authority to prevent them.

24.      In addition, the LP Agreement provides that "[l]imited [p]artners shall have no liability under this [LP] Agreement." (App'x 27, LPA § 4.2(a)-(b)); *see Ryan* v. *Buckeye Partners, L.P.*, 2022 WL 389827, at *13 (Del. Ch. Feb. 9, 2022) (dismissing breach of fiduciary duty claim where partnership agreement disclaimed fiduciary duties); *Brickell Pt'rs* v. *Wise*, 794 A.2d 1, 4 (Del. Ch. 2001) (same). And the duties of officers, like the CIO, extend only to those that the general partner delegated to them. (App'x 26-27, LPA § 4.1(k)) There is no allegation anywhere in the Amended Complaint that responsibility for distributions was delegated to Mr. Okada in his capacity as CIO. The Litigation Trustee thus cannot allege that Mr. Okada had any duties with respect to distributions, and this claim must be dismissed.

> **2.**    **The Amended Complaint's Meager Allegations Cannot Support the Litigation Trustee's Claim That Mr. Okada Had or Breached Any Relevant Duty.**

25.    Under Delaware law, "[a] claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Res., Inc.* v. *Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc.* v. *Beard Res., Inc.*, 11 A.3d 749 (Del. 2010).[4]   The Litigation Trustee fails to plead facts establishing either element.

26.    The Amended Complaint alleges only that Mr. Okada "owed fiduciary duties to HCMLP in his capacity as [CIO]," and that "[b]y willfully and wantonly not returning the distributions made to [the Okada Parties] that were made at times that Okada knew that HCMLP was insolvent, and knowingly permitting unlawful distributions to Dondero and his controlled entities, Okada breached his fiduciary duties to HCMLP." (Am. Compl. ¶¶ 275, 281.)   But these conclusory allegations parroting the legal standard are insufficient.   Moreover, any fiduciary duty Mr. Okada held as CIO was limited to the scope of his responsibilities, which involved overseeing the investments of HCMLP's capital. *See Triton Constr. Co.* v. *E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *9 (Del. Ch. May 18, 2009) ("[The] hallmark principles of agency law apply to traditional corporate fiduciaries, such as officers and directors, and to key managerial personnel."), *aff'd*, 988 A.2d 938 (Del. 2010); *Lazard Debt Recovery GP, LLC* v. *Weinstock*, 864 A.2d 955, 966 (Del. Ch. 2004) (holding "an agent's fiduciary duty is limited by the scope of the agency").

---

[4]  Delaware law governs Plaintiff's claim for breach of fiduciary duty because HCMLP is a Delaware limited partnership and the LP Agreement includes a choice-of-law provision selecting Delaware law. *See PilePro, LLC* v. *Chang*, 152 F. Supp. 3d 659, 675 (W.D. Tex. 2016) (Delaware law governed breach of fiduciary duty claims because place of incorporation was Delaware), *aff'd sub nom. PilePro, L.L.C.* v. *Heindl*, 676 F. App'x 341 (5th Cir. 2017); App'x 33, LPA § 6.11.

-10-

27.    "A complaint fails to state a claim against an alleged officer for breach of fiduciary duty when it fails to allege facts demonstrating that (1) he took part in the challenged conduct and (2) failed to demonstrate the due care attendant to his particular office in doing so." *Bridgeport Holdings, Inc.* v. *Boyer* (*In re Bridgeport Holdings, Inc.*), 388 B.R. 548, 573 (Bankr. D. Del. 2008) (dismissing breach of fiduciary duty claims against officers because the "acts of which [plaintiff] complains were entrusted to directors, and not officers").   The Amended Complaint does not allege any facts demonstrating that Mr. Okada, as CIO, had fiduciary duties with respect to the distributions at issue, or how he breached any such duties.[5]

### 3.    The Litigation Trustee's Own Allegations Confirm That Mr. Okada Did Not Have a Relevant Duty.

28.    Finally, the Litigation Trustee cannot plead a claim that Mr. Okada breached a duty in connection with any equity distributions when the Litigation Trustee's own allegations repeatedly allege that Mr. Dondero was solely responsible for the challenged distributions.  "[A] plaintiff may plead himself out of court" if he "pleads facts which establish that he cannot prevail on his . . . claim."  *Slyce Acquisition Inc.* v. *Syte - Visual Conception Ltd.*, 422 F. Supp. 3d 1191, 1198 (W.D. Tex. 2019) (alterations omitted) (quoting *Weisbuch* v. *Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).   The Litigation Trustee repeatedly alleges that "[Mr.] Dondero exercised his complete control of HCMLP" and "HCMLP's general partner Strand, which Dondero similarly dominated and controlled."  (Am. Compl. ¶ 111; *see also id.* ¶¶ 42, 115, 116, 117, 118, 183, 194, 195, 197, 203, 223, 227, 229, 232, 255.)

---

[5]  The Litigation Trustee in effect claims that Mr. Okada is liable because he held a senior management role at HCMLP, analogous to group pleading allegations that courts routinely reject.  *See, e.g.*, *Stanziale* v. *Heico Holdings, Inc.* (*In re Conex Holdings, LLC*), 514 B.R. 405, 413 (D. Del. 2014) (dismissing conclusory allegations that "officers and directors" engaged in fraudulent transfers because they "failed to state what each individual did in connection with any particular transfer" and "failed to provide facts that any of the defendants were even authorized to make binding decisions under [debtor's] operating agreement").

29.     The Litigation Trustee also specifically alleges that Mr. Dondero "approved" and
"caused HCMLP to make" the challenged transfers.  (*Id.* ¶¶ 137, 184; *see also* App'x 20, LPA
§ 3.9(a) (equity distributions are made in the "sole and unfettered discretion" of the general
partner).)   "Assuming these allegations to be true," Mr. Okada could not "have stopped the
transactions because they were all approved by" Mr. Dondero and/or Strand.  *Kaye* v. *Lone Star
Fund V (U.S.), L.P.*, 453 B.R. 645, 682-83 (N.D. Tex. 2011) (dismissing breach of fiduciary duty
claims against director where the challenged transactions were approved by "parent and sole
shareholder" that "allegedly dominated [debtor's] board"); *see also Reed* v. *Linehan (In re
Soporex)*, 463 B.R. 344, 380 (Bankr. N.D. Tex. 2011) (dismissing a breach of fiduciary duty
claim where the plaintiff failed to allege that there was any alternative to the challenged
transaction and thus was "undercut by her own allegations").  Because the Litigation Trustee's
fiduciary duty claims are inconsistent with the Litigation Trustee's own allegations, the claim
must be dismissed.[6]

### B.     The Litigation Trustee Fails to Plead Insolvency.

30.     The Litigation Trustee bases his breach of fiduciary duty claim with regard to the
distributions on the allegation that Mr. Okada knew that HCMLP was insolvent when the
distributions were made.  (Am. Compl. ¶¶ 280-81.)  However, the Amended Complaint fails to
plead the premise for this allegation: insolvency.[7]  Insolvency must be pled in detail and is not
adequately pled by "conclusory assertions about . . . financial condition and subjective

---

[6] The same reasoning applies to the Litigation Trustee's summary allegation that "Dondero and Okada breached
their fiduciary duties by using HCMLP employees for their own personal affairs and private business interests, on
HCMLP's time and payroll."  (Am. Compl. ¶ 282.)  Critically, as above, the Amended Complaint specifically
alleges that any such use was "[a]t Dondero's direction."  (*Id.* ¶ 119.)

[7] The Litigation Trustee must likewise plead sufficient facts to demonstrate insolvency at the time of each alleged
constructive fraudulent transfer (Count I).  The arguments set forth in this section provide an independent basis to
dismiss Count I in addition to those set forth in Section II below, and are incorporated there by reference.

determinations regarding the amount of available capital." *Matter of ATP Oil & Gas Corp.*, 711 F. App'x 216, 223 (5th Cir. 2017).

### 1. April 2010 – April 2013

31.     The Litigation Trustee alleges that "a valuation of HCMLP's assets and liabilities shows that HCMLP was balance sheet insolvent, inadequately capitalized, and/or intended to incur debts beyond its ability to pay in 2011 and 2012." (Am. Compl. ¶ 105.)  In a transparent attempt to pursue a distribution made to the Okada Parties on April 9, 2013, the Litigation Trustee alleges that this insolvency continued until at least April 30, 2013.  (*Id*. ¶ 106.)  In support of these allegations, the Litigation Trustee merely pastes a barebones chart into the Amended Complaint that is allegedly based on "[c]ontemporaneous valuations performed by the company" and purports to show the total assets and liabilities of HCMLP at five points in time from April 2010 through April 2013.  (*Id.* ¶¶ 105-06.)  This is insufficient.

32.     Under Fifth Circuit law, the Litigation Trustee must provide specific financial information to make his solvency allegations plausible.  *See In re Crescent Res., LLC*, 2012 WL 195528, at *8 (Bankr. W.D. Tex. Jan. 23, 2012) (granting motion to dismiss complaint alleging that the debtor's financial statements demonstrated insolvency without providing the underlying financial data).  In *Crescent*, the trustee alleged that "the Debtors' Schedules, [SOFAs], and Disclosure Statement, along with the declaration of the Debtors' chief financial officer" all reflected that the debtor was insolvent.  *Id.*  However, the court found the allegations to be insufficient because the trustee "did not attach any of these documents to its Complaint nor did it refer the Court to any specific facts provided in these documents that would allow the Court to draw a reasonable inference of insolvency."  *Id.*

33.     Likewise here, the cursory chart provided in the Amended Complaint is not enough because it neither includes any of the actual underlying financial data or details about the

alleged valuations, nor attaches them. (Am. Compl. ¶ 106.) The data on its face also improperly makes various undocumented assumptions and mixes asset information with hindsight-looking settlement liabilities information. The chart is no more than a conclusory statement that HCMLP was insolvent. *Crescent*, 2012 WL 195528, at *8; *ATP*, 711 F. App'x at 223.

34.     The Litigation Trustee further alleges that Mr. Dondero testified during a family court proceeding in 2012 that "as a result of the economic recession of 2008 HCMLP 'almost went under and . . . moved to a state of insolvency.'" (Am. Compl. ¶ 105.) But again, as in *Crescent* where the chief financial officer submitted a declaration attesting to insolvency, a conclusory statement is not rendered fact because it is made by a company insider. *Crescent*, 2012 WL 195528, at *8. Even accepting for purposes of the Motion that HCMLP became insolvent at some point following the 2008 financial crisis, that allegation does not establish that HCMLP was insolvent two years later at the time of the Litigation Trustee's first allegedly fraudulent transfer in 2010 and continued for three years before returning to solvency. *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 738 (Bankr. S.D. Tex. 2020) (explaining connection between transactions two years apart was "far too tenuous" and refusing to "leap from 2012 to 2014" without additional facts); *In re RFC & ResCap Liquidating Tr. Litig.*, 2017 WL 1483374, at *7 (D. Minn. Apr. 25, 2017) (similar).

**2.     December 2016 – March 2019**

35.     The Amended Complaint concedes that HCMLP was again solvent for at least a 3.5-year period from April 2013 through November 2016 before allegedly becoming insolvent again. (Am. Compl. ¶ 107.) But the Litigation Trustee then resorts to similar general and conclusory allegations that "by December 2016, the company was again firmly insolvent, inadequately capitalized and/or unable to pay its debts as they came due" because of "diminishing returns" and "significant employee expenses." (*Id.* ¶ 108.) The Litigation Trustee

-14-

also generally alleges that "HCMLP's financial condition deteriorated further between 2017 and 2019" due to "additional litigation claims." (*Id.*) The Amended Complaint again only provides a summary chart listing assets and liabilities that are supposedly from "valuations prepared on HCMLP's behalf." (*Id.* ¶ 109.) As discussed, this is insufficient. *Crescent*, 2012 WL 195528, at *8; *ATP*, 711 F. App'x at 223. The breach of fiduciary duty claim against Mr. Okada must therefore be dismissed.

### C. The Trustee Cannot Pursue a Breach of Fiduciary Duty Claim Beyond the Applicable Statute of Limitations.

36. The Amended Complaint alleges breaches of fiduciary duty that purportedly occurred each time HCMLP made an equity distribution to its limited partners between 2010 and 2013. (Am. Compl. ¶¶ 274-282.) However, to the extent not dismissed for the reasons discussed above, the Litigation Trustee cannot maintain a claim for breach of fiduciary duty based on equity distributions that occurred outside the statute of limitations period. HCMLP is incorporated in Delaware, which has a three-year statute of limitations for breach of fiduciary duty, and the LP Agreement includes a choice of law provision selecting Delaware law. 10 Del. Code § 8106 (three-year limitations period); App'x 33, LPA § 6.11. However, federal courts in Texas often regard statutes of limitations as procedural rather than substantive, and as a result instead apply Texas's four-year statute of limitations period to breach of fiduciary duty claims. *U.S. Rest. Props. Operating L.P.* v. *Burger King Corp.*, 2003 WL 21448389, at *3-4 (N.D. Tex. June 16, 2003); Tex. Civ. Prac. & Rem. Code § 16.004.[8] Either way, the Litigation Trustee's claim based on equity distributions beyond the limitations period is time-barred and must be dismissed. *See Smith* v. *Allstate Ins. Co.*, 2016 WL 11201008, at *1 (N.D. Tex. Jan. 12, 2016)

---

[8] A minority of courts in Texas nonetheless have applied the law of the state of incorporation. *See Kaye* v. *Dupree (In re Avado Brands, Inc.)*, 358 B.R. 868, 881-82 (Bankr. N.D. Tex. 2006) (looking to the Georgia law statute of limitations for fiduciary duty claims with respect to a Georgia corporation).

(dismissing breach of fiduciary duty claims outside Texas's four-year statute of limitations period); *In re AMC Investors, LLC*, 2022 WL 248133, at *15 (Bankr. D. Del. Jan. 27, 2022) (holding breach of fiduciary duty claims outside Delaware's three-year statute of limitations barred).

37.     In an attempt to salvage the time-barred claims, the Litigation Trustee alleges that "[n]either the Litigation Trustee nor the Estate could have discovered the conduct by Dondero, Strand, Ellington, or Okada set out herein with reasonable diligence prior to Dondero's removal as Chief Executive Officer and President of HCMLP" and that "the breaches alleged herein were inherently undiscoverable because of the complete domination and control that Dondero exercised." (Am. Compl. ¶ 276.)  The Litigation Trustee's bald assertions, which appear to have been included to invoke the so-called "discovery rule," are insufficient to toll the statute of limitations.  The discovery rule will toll the statute of limitations under Texas law only if the plaintiff can show, among other things, the alleged injury is "inherently undiscoverable." *Computer Assocs. Int'l, Inc.* v. *Altai, Inc*., 918 S.W.2d 453, 456 (Tex. 1996).  Simply reciting that element without more is insufficient to invoke the rule.  *Shaw* v. *Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quoting *Iqbal*, 556 U.S. at 678).

## II.     THE AIDING AND ABETTING OR KNOWING PARTICIPATION IN BREACH OF FIDUCIARY DUTY CLAIM AGAINST MR. OKADA MUST BE DISMISSED

38.     Count XXXV of the Amended Complaint asserts a claim against Mr. Okada for aiding and abetting Mr. Dondero's breach of fiduciary duty under both Delaware and Texas law (Am. Compl. ¶ 433), but the Amended Complaint's allegations fail as to both.  Delaware and Texas law each require that a claim of aiding and abetting (Delaware) or knowing participation in (Texas) a breach of fiduciary duty plead the "critical element" that there was "knowing

-16-

participation" by Mr. Okada in the purported breach by Mr. Dondero. *U.S. Bank Nat'l Ass'n* v. *Verizon Commc'ns, Inc.*, 817 F. Supp. 2d 934, 944 (N.D. Tex. 2011) (quoting *In re Del Monte Foods Co. Shareholders Litig.*, 25 A.3d 813, 836 (Del. Ch. 2011)); *Meadows* v. *Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007). Knowing participation "requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach." *Malpiede* v. *Townson*, 780 A.2d 1075, 1097 (Del. 2001). That requirement is a "stringent one . . . that turns on proof of scienter of the alleged abettor." *In re Essendant, Inc. Stockholder Litig.*, 2019 WL 7290944, at *17 (Del. Ch. Dec. 30, 2019). At the pleading stage, "there must be some factual allegations from which 'knowing participation' can be inferred." *L A Pt'rs, L.P.* v. *Allegis Corp.*, 1987 WL 14531, at *8 (Del. Ch. Oct. 22, 1987).

39. There are no such allegations here. The Amended Complaint merely alleges that Mr. Okada "knew or willfully blinded himself to the fact that the HCMLP Distributions . . . were made at times that HCMLP was insolvent." (Am. Compl. ¶ 433.) The Amended Complaint is devoid of any allegations Mr. Okada knowingly participated in the breaches alleged against Mr. Dondero. The Litigation Trustee does not, for example, allege that Mr. Okada participated in, assisted with, or advocated for the actions at issue. Moreover, as discussed above, the Litigation Trustee has failed to adequately plead insolvency at the time of the distributions, let alone that Mr. Okada *knew* about any such insolvency. For the same reasons, the Litigation Trustee has failed to allege facts sufficient to show that Mr. Okada was "aware [he] was participating in the breach." *Meadows*, 492 F.3d at 639. The claim must therefore be dismissed. *See, e.g.*, *In re Primedia, Inc. Shareholders Litig.*, 67 A.3d 455, 496 (Del. Ch. 2013) (dismissing aiding and abetting claim where the complaint "has not adequately pled how [the defendant] knowingly

participated in the breach of duty"); *AAB Logistics, Inc.* v. *Forward Air, Inc.*, 2016 WL 8672773, at *5 (N.D. Tex. Nov. 18, 2016) (same).[9]

## III. THE LITIGATION TRUSTEE CANNOT AVOID MOST OF THE DISTRIBUTIONS MADE TO THE OKADA PARTIES AS A MATTER OF LAW

40.     The Amended Complaint alleges that 17 equity distributions made to HCMLP's limited partners, including to the Okada Parties, over the course of 2010-2013 and 2016-2019 constituted actual and constructive fraudulent transfer claims pursuant to 11 U.S.C. §§ 544 and 548.  (Am. Compl. ¶¶ 172-86.)  Those claims must be dismissed since the Litigation Trustee cannot pursue a majority of those distributions from the Okada Parties as a matter of law because: (a) the four-year statute of limitations provided in TUFTA limits the actionable distributions to those made on or after October 16, 2015; (b) the Litigation Trustee cannot rely on 26 U.S.C. § 6502 to make an end run around the statutes of limitations; and (c) as discussed, the Litigation Trustee has failed to adequately plead insolvency.

### A. The Litigation Trustee's Fraudulent Transfer Claims Are Restricted by the Applicable Statutes of Limitations.

41.     Bankruptcy Code section 548(a)(1) limits the Litigation Trustee's ability to avoid transfers to those "made or incurred on or within 2 years before the date of the filing of the petition."  11 U.S.C. § 548(a)(1).  The Litigation Trustee's "petition was filed [on October 16,] 2019, so payments made before [October 16,] 2017 cannot be avoided under the federal statute." *Curtis* v. *Cerner Corp.*, 621 B.R. 141, 179-80 (S.D. Tex. 2020).  In order to plead standing under § 544(b)(1), and thus utilize the longer four-year statute of limitations provided by state law in

---

[9] For the same reasons as those explained in Section I.C above, claims based on distributions made beyond the applicable statute of limitations are time-barred.  *See In re Fruehauf Trailer Corp.*, 250 B.R. 168, 184 (D. Del. 2000) (applying a three-year statute of limitations to aiding and abetting breach of fiduciary duty claims); *Fid. & Guar. Ins. Underwriters Inc.* v. *Wells Fargo Bank, Nat'l Ass'n*, 2005 WL 8165022, at *5 (S.D. Tex. Mar. 31, 2005) (applying a four-year statute of limitations).

TUFTA, the Litigation Trustee must "demonstrate the existence of an unsecured creditor that holds an allowable claim and who could have avoided the transfers under state law" for each alleged fraudulent transfer. *In re Giant Gray, Inc.*, 629 B.R. 814, 828 (Bankr. S.D. Tex. 2020).

42.     The Litigation Trustee's claims are limited by TUFTA's four-year statute of limitations to only pursuing distributions made after October 16, 2015—four years prior to the Petition Date.  For constructive fraudulent transfer claims under §§ 24.005(a)(2) and 24.006, a fraudulent transfer claim under TUFTA must be brought "within four years after the transfer was made or the obligation was incurred."  Tex. Bus. & Com. Code § 24.010; *see also Bilouris* v. *Patman*, 2017 WL 1078526, at *3 (N.D. Tex. Mar. 21, 2017) (dismissing claims because "[m]ore than four years has passed since the transfers").[10]   Under all circumstances, therefore, distributions made prior to October 16, 2015 cannot be the subject of fraudulent transfer claims.

**B.     The IRS "Golden Creditor" Statute Is Not Available.**

**1.     The Litigation Trustee Cannot Benefit From the IRS's Sovereign Exemption from State Statutes of Limitation.**

43.     The Litigation Trustee seeks to escape TUFTA's four-year statute of limitations by utilizing section 544 of the Bankruptcy Code to step into the IRS's shoes and obtain the benefit of the IRS's immunity as a sovereign from controlling state statutes of limitation.  (Am. Compl. ¶¶ 173, 181.)  While some courts have permitted it, the Fifth Circuit has not opined on the issue to date.  The approach advocated by the Litigation Trustee would upset the existing statute of limitations framework and contravene the U.S. Supreme Court's caution against technical interpretations of statutes without reference to their context.  *Czyzewski* v. *Jevic Holding Corp.*, 137 S. Ct. 973, 984-85 (2017).  It should thus be rejected.

---

[10] Actual fraudulent transfer claims may also be brought within one year after they were or could reasonably have been discovered by the claimant.  Tex. Bus. & Com. Code § 24.010(a)(1).  The Amended Complaint contains no factual allegations supporting an inability to discover any of the distributions, nor could it given that the challenged distributions are all reflected on the books and records and known to HCMLP.

44.     Pursuant to 26 U.S.C. § 6502, the IRS may collect a tax by initiating a court proceeding within ten years after the assessment of the tax.  The IRS may bring the collection proceeding under state-law fraudulent transfer laws, including TUFTA, and in doing so is not constrained in collection by state-law statutes of limitations.  *United States* v. *Evans*, 340 F. App'x 990, 993 (5th Cir. 2009) (affirming that the United States is not bound by the four-year TUFTA limitations period but rather subject to I.R.C. section 6502).

45.     Although the Litigation Trustee may stand in the shoes of the IRS as an unsecured creditor pursuant to Bankruptcy Code section 544, one court has thoughtfully explained that "[i]t does not necessarily follow . . . that [the Litigation Trustee] standing in the shoes of the IRS is immunized from state statutes of limitation."  *In re Vaughan Co.*, 498 B.R. 297, 304 (Bankr. D.N.M. 2013).  This is because "[i]mmunity from state statutes of limitation is a sovereign power of the United States."  *Id.* (citing *Alaska Dept. of Envtl. Conservation* v. *EPA*, 540 U.S. 461, 514 (2004)).  "Where . . . the government's action vindicates a private interest," immunity ordinarily does not apply."  *SEC* v. *Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004).

46.     The *Vaughan* court recognized that the Litigation Trustee does not pursue a public interest that would entitle it to the benefit of the IRS's immunity, and that "[i]n expounding a statute, the Court must not be guided by a single sentence or member of a sentence, but must look to the provisions of the whole law, and to its object and policy."  *Vaughan Co.*, 498 B.R. at 304 (quoting *United States* v. *Lamirand,* 669 F.3d 1091, 1096 (10th Cir. 2012)).  Recognizing the significant adverse consequences that the Litigation Trustee's approach would have for the statute of limitations framework in fraudulent transfer proceedings, the court concluded it was "unwilling to draw an inference that Congress intended such a dramatic change in the law" and refused to allow the trustee the benefit of the IRS's sovereign immunity.  *Id.* at 306.

4860-9305-8082 v.6

47.     Although no circuit court has addressed this issue, the lower courts that have taken an expansive approach have adhered to the literal language of section 544(b)(1), which enables the trustee to transfer an interest that is "voidable under applicable law by a creditor," and have thus concluded that the trustee should have the same powers as the IRS would if it had brought an individual suit outside of bankruptcy. *See e.g.*, *In re Zagaroli*, 2020 WL 6495156, at *3 (Bankr. W.D.N.C. Nov. 3, 2020) (trustee could step into shoes of IRS to avoid four-year statute of limitations under North Carolina's UFTA); *In re CVAH, Inc.*, 570 B.R. 816, 823-24 (Bankr. D. Idaho 2017) (similar). However, these courts necessarily read section 544 in isolation and rigidly adhered to its text. But "[i]n textual interpretation, context is everything." Antonin Scalia, *Common–Law Courts in a Civil Law System: The Role of United States Federal Courts in Interpreting the Constitution and Laws,* in A Matter of Interpretation 3, 37 (Amy Gutmann ed., 1997). The Supreme Court often rejects technocratic interpretations of statutes that produce results at odds with the broader statutory scheme and its operation. *See*, *e.g.*, *Czyzewski*, 137 S. Ct. at 984-85 (rejecting literal reading of 11 U.S.C. § 349 because, when read in context, section 349 appears designed to give courts flexibility in certain narrower circumstances). "Congress 'does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.'" *Epic Sys. Corp.* v. *Lewis*, 138 S. Ct. 1612, 1626-27 (2018) (quoting *Whitman* v. *Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)). Similarly here, it is implausible "that Congress, by enacting Section 544(b), intended to vest sovereign powers in a bankruptcy trustee and thereby immunize her from the strictures of state law." *Vaughan*, 498 B.R. at 304.

48.     "Section 544(b) is most often used to recover transfers that would be voidable under state law." *Id.* at 302; *BFP* v. *Resolution Tr. Corp.*, 511 U.S. 531, 543 n.7 (1994) (section

544 applies to "transfers voidable under state law"). As a result, the Litigation Trustee's desired approach would displace the typical two- to four-year lookback periods for fraudulent transfer claims under §§ 544 and 548, and would replace them with a ten-year period when there is no evidence Congress intended to do so. "If a bankruptcy trustee or debtor in possession could recover transfers made within ten years before the petition date, it would eviscerate the UFTA's four-year look back period" because "[t]he IRS holds an unsecured claim in a substantial portion of bankruptcy cases." *Vaughan*, 498 B.R. at 305; *see also Miller* v. *Fallas (In re J&M Sales Inc.)*, 2022 WL 532721, at *3 n.7 (Bankr. D. Del. Feb. 22, 2022) (noting that Trustee's theory of any unpaid tax triggering a ten-year lookback period would apply in every business bankruptcy and "cannot be what Congress had in mind when enacting Section 544(b)"). The Litigation Trustee should not be allowed to adopt the IRS's immunity as sovereign.

### 2. The IRS Has Not Asserted Any Claims That Could Extend the Statute of Limitations.

49. Irrespective of whether I.R.C. section 6502 could be available to the Litigation Trustee at all, the allegations set forth in the Amended Complaint (and public information available by judicial notice) establish that it is not available here to extend the statute of limitations. Counts I and II must be dismissed because they seek to avoid distributions beyond TUFTA's four-year statute of limitations deadline—October 16, 2015. As an initial matter, the Amended Complaint does not plead that the IRS was a creditor of HCMLP or that there was any assessment of taxes that would have permitted the IRS to relief prior to June 30, 2015, as required. (*See* Am. Compl. ¶ 39 (alleging the amended IRS proof of claim "asserts unsecured claims including for the tax period of June 30, 2015").)[11] *In re Northstar Offshore Grp., LLC,*

---

[11] While the Okada Parties disagree with the assertion that the statute of limitations can be extended because the "IRS's claim arose within a reasonable time of those transfers" (Am. Compl. ¶ 39), there plainly could be no

616 B.R. at 724 (requiring that "the Trustee . . . identify an unsecured creditor with a claim, which is avoidable under Texas law, on both the transfer date and the petition date").

50.    Furthermore, I.R.C. section 6502 by its plain language operates as a forward-looking collection statute, providing that when a tax has been timely assessed, the IRS may commence a proceeding to collect that tax "within 10 years after the assessment of the tax."  26 U.S.C. § 6502(a)(1).  The Fifth Circuit has recognized the forward-looking nature of section 6502, explaining that:

> I.R.C. § 6502(a)(1) makes clear that it is the "assessment" itself that, once made, starts the running of the ten-year period within which the IRS can commence efforts to *collect* the assessed tax.

*Remington* v. *United States*, 210 F.3d 281, 284 (5th Cir. 2000) (emphasis in original).  As a result, any effort by the Litigation Trustee to use section 6502 as a blanket ten-year "look back" period from the Petition Date must fail.  *See Luria* v. *Thunderflower, LLC (In re Taylor, Bean & Whitaker Mortg. Corp.)*, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sept. 28, 2018) ("The Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment (or, alternatively, prior to accrual of the tax liability).").  The Litigation Trustee could only attempt to use section 6502 for all of the transfers if the IRS in fact had assessed taxes against HCMLP dating back to April 9, 2010, the date of the earliest distribution put at issue. (Am. Compl. ¶¶ 174, 182.)  However, as the Amended Complaint acknowledges (*Id.* ¶ 39), the first tax asserted by the IRS against HCMLP in its most recent amended claim is for the tax period June 30, 2015, which was not assessed until January 4, 2021.  (App'x 46, Glueckstein

---

application of any such doctrine here where the Amended Complaint seeks to avoid transfers occurring between April 9, 2010 and April 9, 2013—between 2.5 and 5.5 years before the earliest IRS claim.

Decl. Ex. 2 ("IRS Claim").)[12]  The earliest tax assessed in the IRS Claim is asserted to be on

November 12, 2018.  (*Id.*)  Therefore, Counts I and II must be dismissed based on the existing

record with respect to any distributions made to the Okada Parties prior to June 2015.

## IV.    THE BANKRUPTCY COURT LACKS JURISDICTION TO ADJUDICATE THE NON-CORE CLAIMS AGAINST MR. OKADA

51.    The breach of fiduciary duty (Count XIV) and aiding and abetting breach of

fiduciary duty (Count XXXV) claims against Mr. Okada are non-core claims arising under state

law.  *See Mirant Corp.* v. *The S. Co.*, 337 B.R. 107, 118 (N.D. Tex. 2006) (an aiding and

abetting breach of fiduciary duty claim and a breach of fiduciary duty claim "can in no

manner . . . permit this Court's assertion of core jurisdiction.").  The Fifth Circuit has determined

that the bankruptcy court's jurisdiction over non-core claims is limited after a plan is confirmed

because "the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for

matters pertaining to the implementation or execution of the plan."  *Bank of La.* v. *Craig's Stores*

*of Tex., Inc.* (*In re Craig's Stores of Tex., Inc.*), 266 F.3d 388, 390 (5th Cir. 2001).  For the sake

of judicial economy, the Okada Parties will not repeat each of the reasons that subject-matter

jurisdiction is absent, which were described in the their motion to withdraw the reference

briefing, and are incorporated here by reference.  (*See* Adv. Pro. Dkt. 37 ¶¶ 14-21; Adv. Pro.

Dkt. 105 ¶¶ 11-15; Case No. 22-203 (N.D. Tex.) Dkt. 17 ¶¶ 22-25; Case No. 22-203 (N.D. Tex.)

Dkt. 26 pp. 7-9.)[13]

---

[12] The Court can take judicial notice of the IRS proof of claim.  *See, e.g., Dean* v. *Reticulum Mgt., LLC* (*In re Dean*), 620 B.R. 271, 285 (Bankr. N.D. Tex. 2020) (Jernigan, J.) (taking judicial notice of proof of claim and contents therein); *In re Herring*, 2015 WL 7753540, at *2 (Bankr. S.D. Tex. Dec. 1, 2015) (court taking judicial notice of IRS proof of claim); *Norris* v. *Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *Randall D. Wolcott, M.D., P.A.* v. *Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (court may consider "document[] incorporated in the complaint by reference").

[13] The Amended Complaint also asserts fraudulent transfer claims against the Okada Parties (Counts I and II), which arise in part under Texas state law.  *See* Tex. Bus. & Com. Code § 24.005(a)(1-2).  The Fifth Circuit has not decided whether TUFTA claims brought in conjunction with the Bankruptcy Code are core or non-core, but one

52.     In short, however, the *Craig's Stores* factors demonstrate that post-confirmation jurisdiction does not exist, and the non-core claims must be dismissed.  *See, e.g.*, *Colvin* v. *Amegy Mortg. Co., L.L.C.*, 507 B.R. 915, 923-24 (W.D. Tex. 2014) (the bankruptcy court "should have dismissed the action for lack of subject-matter jurisdiction" based on the *Craig's Stores* factors).  In particular, "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization" relating to the Okada Parties.  *Craig's Stores*, 266 F.3d at 391.  The Trustee filed his non-core breach of fiduciary duty claim almost eight months after the Confirmation Order was entered and more than two months after the Plan Effective Date.  The Okada Parties were not participants in any bankruptcy proceedings until August 2021, long after the Plan was confirmed.  *See Segner* v. *Admiral Ins. Co. (In re Palmaz Scientific, Inc.)*, 2018 WL 661409, at *7 (Bankr. W.D. Tex. Jan. 31, 2018) (finding the second *Craig's Stores* factor favors no jurisdiction when there is a post-confirmation complaint regarding pre-confirmation activities).  The non-core claims against Mr. Okada therefore must be dismissed.

53.     In addition, the non-core claims arise under state law and are not derived from the Plan, and the Plan is similarly not necessary to the existence of the claims.  The non-core claims against Mr. Okada therefore must be dismissed for lack of subject-matter jurisdiction.

## CONCLUSION

54.     For the foregoing reasons, the Okada Parties respectfully request that the Court dismiss Counts I, II, XIV, and XXXV of the Amended Complaint as against the Okada Parties, with prejudice because further amendment would be futile.

---

court in this circuit has held that they are non-core.  *See Guffy* v. *Brown (In re Brown Med. Ctr., Inc.)*, 578 B.R. 590, 597 (Bankr. S.D. Tex. 2016).

4860-9305-8082 v.6

Dated: July 11, 2022
     New York, New York

                         */s/ Brian D. Glueckstein*
                         Brian D. Glueckstein (admitted *pro hac vice*)
                          New York Bar No. 4227005
                          gluecksteinb@sullcrom.com
                         SULLIVAN & CROMWELL LLP
                         125 Broad Street
                         New York, New York 10004
                         Telephone: (212) 558-4000
                         Facsimile: (212) 558-3588

                         Cortney C. Thomas
                          Texas Bar No. 24075153
                          cort@brownfoxlaw.com
                         BROWN FOX PLLC
                         8111 Preston Road, Suite 300
                         Dallas, Texas 75225
                         Telephone: (214) 327-5000
                         Facsimile: (214) 327-5001

                         *Counsel for Defendants Mark K. Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #1 and Lawrence Tonomura as Trustee, and The Mark and Pamela Okada Family Trust – Exempt Trust #2 and Lawrence Tonomura as Trustee*

4860-9305-8082 v.6