**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
**Counsel for the Charitable Defendants**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-sgj11 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | **Chapter 11** |
| | § | |
| Debtor | § | |

| | | |
|---|---|---|
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST | § § § | • **Adversary No. 21-03076-sgj** |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| **JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC** | § § | |

i

LEVENTON; GRANT JAMES SCOTT §
III; FRANK WATERHOUSE; STRAND §
ADVISORS, INC.; NEXPOINT §
ADVISORS, L.P.; HIGHLAND CAPITAL §
MANAGEMENT FUND ADVISORS, §
L.P.; DUGABOY INVESTMENT TRUST §
AND NANCY DONDERO, AS TRUSTEE §
OF DUGABOY INVESTMENT TRUST; §
GET GOOD TRUST AND GRANT §
JAMES SCOTT III, AS TRUSTEE OF §
GET GOOD TRUST; HUNTER §
MOUNTAIN INVESTMENT TRUST; §
MARK & PAMELA OKADA FAMILY §
TRUST – EXEMPT TRUST #1 AND §
LAWRENCE TONOMURA AS §
TRUSTEE OF MARK & PAMELA §
OKADA FAMILY TRUST – EXEMPT §
TRUST #1; MARK & PAMELA OKADA §
FAMILY TRUST – EXEMPT TRUST #2 §
AND LAWRENCE TONOMURA IN HIS §
CAPACITY AS TRUSTEE OF MARK & §
PAMELA OKADA FAMILY TRUST – §
EXEMPT TRUST #2; CLO HOLDCO, §
LTD.; CHARITABLE DAF HOLDCO, §
LTD.; CHARITABLE DAF FUND, LP.; §
HIGHLAND DALLAS FOUNDATION; §
RAND PE FUND I, LP, SERIES 1; §
MASSAND CAPITAL, LLC; MASSAND §
CAPITAL, INC.; SAS ASSET §
RECOVERY, LTD.; AND CPCM, LLC, §
§
     Defendants. §

---

## MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT

### **RELIEF SOUGHT FROM DISTRICT COURT**

---

CLO HoldCo, Ltd. ("**CLO HoldCo**"), Charitable DAF HoldCo, Ltd. ("**DAF HoldCo**"),

Charitable DAF Fund, L.P. ("**DAF**"), and Highland Dallas Foundation ("**HDF**," together with

CLO HoldCo, DAF HoldCo, DAF, and HDF, the "**Charitable Defendants**")[1] file this *Motion To Dismiss and Motion For More Definite Statement* (the "**Motion**"), seeking pursuant to Fed. R. Civ. P. 12(b)(1), (6) and 12(e) (hereinafter, "**Rule 12**"), dismissal with prejudice of:

> COUNT XV:  aiding and abetting breach of fiduciary duty under Delaware law or knowing participation in breach of fiduciary duty under Texas law ("**Aiding Bad Conduct Action**");
>
> COUNT XVI: civil conspiracy to breach fiduciary duties under Texas law by participating in the transfer of the "Get Good Transfer"[2] (the "**Civil Conspiracy Action**"); and
>
> Count XXX: unjust enrichment or money had and received against CLO HoldCo arguing that CLO HoldCo was unjustly enriched by its receipt of funds from the HCLOF Investment[3] (the "**Unjust Enrichment Action**")

and a more definite statement of:

> COUNT XVIII: avoidance of the Get Good Transfer and recovery of the Transferred Assets[4] as constructively fraudulent transfers under 11 U.S.C. §§ 544 and 550 and applicable state law (either Delaware of Texas law) (the "**Constructive Fraud Avoidance Action**"); and
>
> COUNT XIX: avoidance of the Get Good Transfer and recovery of the Transferred Assets as intentionally fraudulent transfers under 11 U.S.C. §§ 544 and 550 and applicable state law (either Delaware of Texas law) (the "**Intentional Fraud Avoidance Action**," together with the Constructive Fraud Avoidance Action, the "**Get Good Avoidance Actions**"),

---

[1]     The Charitable Defendants have filed a *Motion to Withdraw the Reference* [Dkt. No. 59] (the "**Motion to Withdraw the Reference**") which moves for immediate withdrawal of the reference to the District Court.  This Motion to Dismiss is filed without any waiver of the Charitable Defendants' right to adjudication of this matters by the District Court and any and all rights to a jury trial on all claims.

[2]     Defined herein at ¶6.

[3]     Defined herein at ¶12.

[4]     Defined herein at ¶6.

set forth in the *Amended Complaint* [Dkt. No. 158] filed by Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust (the "**Trustee**") on May 19, 2022 (the "**Amended Complaint**").

## TABLE OF CONTENTS

PAGE(S)

I.    CLAIMS ASSERTED BY THE TRUSTE ........................................................................1

    A.    The Get Good Transfers ..................................................................................3

    B.    The HCLOF Investment ..................................................................................4

    C.    The Plan and Schedule of Retained Causes of Action ....................................8

II.   GROUNDS FOR RELIEF ..........................................................................................10

III.  ADOPTION OF GROUNDS AND BRIEFING OF OTHER DEFENDANTS ...........11

TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Dynasty Oil & Gas, L.L.C. v. Citizens Bank (In re United Operating, L.L.C.)*,
    540 F.3d 351 (5th Cir.2008) ....................................................................9

*Hancock v. Chicago Title Ins. Co.*,
    635 F. Supp. 2d 539 (N.D. Tex. 2009) .........................................................8

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*,
    912 F.3d 759 (5th Cir. 2019) ....................................................................1

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010).………………………………………………………...1

*Mack v. Newton*,
    737 F.2d 1343 (5th Cir. 1984) ................................................................11

*Phalanx Grp. Int'l v. Critical Sols. Int'l*, No. 3:18-CV-0244-B, 2019 WL 954727,
    (N.D. Tex. Feb. 26, 2019),......................................................................1

*In re Texas Wyoming Drilling, Inc.*,
    647 F.3d 547 (5th Cir. 2011) ....................................................................9

**Statutes**

11 U.S.C. § 1123 ...................................................................................9

**Other Authorities**

FED. R. BANKR. P. 2004 ...........................................................................10

FED. R. BANKR. P. 7056 ............................................................................1

FED. R. CIV. P. 12 ........................................................................... *passim*

FED. R. CIV. P. 56 .....................................................................................1

Local Bankruptcy Rule 7007-1(d) ...............................................................11

Local Bankruptcy Rule 7007-g....................................................................1

vi

## I.    CLAIMS ASSERTED BY THE TRUSTEE

1.      Upon the Motion as set forth more fully below, the Charitable Defendants are entitled to  dismissal, with prejudice, of Count XV, XVI and XXX of the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim, which cannot be amended to set forth a claim upon which relief should be granted. The Charitable Defendants submit a *Brief in Support* (the "**Brief in Support**") herewith and attach true and correct copies of the exhibits further described in the Charitable Defendants' *Appendix* (the "**Appendix**"), filed separately pursuant to Local Bankruptcy Rule 7007-g, and incorporate the exhibits by reference into the Motion and Brief in Support.  The exhibits contained in the Appendix are integral to the Amended Complaint and are referenced within the Amended Complaint as being integral to the purported claims asserted therein.

2.      Therefore, the Appendix exhibits are properly submitted to the Court as part of the Motion, do not convert the Motion to a summary judgment motion under FED. R. CIV. P. 56 or FED. R. BANKR. P. 7056, and should be considered by the Court under Rule 12.  *See Phalanx Grp. Int'l v. Critical Sols. Int'l*, No. 3:18-CV-0244-B, 2019 WL 954727, at *3 (N.D. Tex. Feb. 26, 2019) (explaining that in the context of 12(b) a court may review the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint) (citing *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) and *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

3.      As explained by the Trustee, Highland Capital Management, L.P. ("**HCMLP**") was founded as an investment advisor that also provided middle and back-office services.  Amended Complaint, ¶1.

4. At all times relevant to the Amended Complaint, HCMLP provided such middle/ back office services and investment advisory services to the Charitable Defendants pursuant to two agreements: the *Second Amended and Restated Service Agreement, Dated January 1, 2017 between Highland Capital Management, L.P., and Charitable DAF Fund, L.P., Charitable DAF GP, LLC* (the "**Service Agreement**") and the *Second Amended and Restated Investment Advisory Agreement, Dated January 1, 2017 between Highland Capital Management, L.P. and Charitable DAF Fund, L.P., and Charitable DAG GP, LLC* (the "**Advisory Agreement**"). Amended Complaint, ¶21; Appendix pp. 00006-00011, 00012-00018.

5. Under to the Service Agreement, HCMLP provided all back-office support for DAF Fund, DAF GP, and CLO HoldCo. *See* Amended Complaint, ¶21. The services specifically included: trade execution, risk management, trade settlement, and document review and preparation. *See* Appendix p. 00011. Pursuant to the Advisory Agreement, HCMLP acted as investment advisor to DAF Fund, DAF GP, and CLO HoldCo with respect to the to the investment and reinvestment of the cash, Financial Instruments and other properties comprising the assets and liabilities of the Fund and its subsidiaries." *See* Amended Complaint, ¶21; Appendix p. 00012. Further, HCMLP advised DAF Fund and its subsidiaries on "possessing, transferring, mortgaging, pledging or otherwise dealing in, and exercising all rights, powers, privileges and other incidents of ownership or possession with respect to Financial Instruments and other property and funds held or owned by the Fund and/or its subsidiaries." *Id.*

6. Thus, at all times relevant to the Amended Complaint, HCMLP provided all office support and investment advice to the Charitable Defendants. Now, the Trustee, standing in the shoes of HCMLP, asserts various causes of action against the Charitable Defendants arising from two of the transactions HCMLP advised the Charitable Defendants to undertake and facilitated in

the capacity as contract manager and advisor.

7. The Trustee asserts five (5) causes of action against the Charitable Defendants arising from two transactions which arose pursuant to the Service Agreement and Advisory Agreement: the Get Good Transfers and the HCLOF Investment.

**A.     The Get Good Transfers**

8. As alleged by the Trustee, the Aiding Bad Conduct Action, Civil Conspiracy Action, and Get Good Avoidance Actions concern a series of transfers taking place in late December 2016 whereby, according to the Trustee, HCMLP transferred "assets" comprised of (1) $2,032,183.24 in Series A Interests in Highland Capital Loan Fund, L.P.; (2) $8,710,000 in participation interests in call options of American Airlines Group, Inc.; (3) participation and tracking interests in certain Highland Crusader Fund, L.P. and Highland Crusader Fund II, Ltd. (the funds, the "**Crusader Funds**" and the interests, the "**Crusader Participation Interests**") shares, which at the time were "valued" at $12,625,395.44 (together, the "**Transferred Assets**") by purchase and sale agreement to the Get Good Investment Trust ("**Get Good**") in exchange for a promissory note (the "**Dugaboy Note**"), (the "**Get Good Transfer**"). *See* Amended Complaint, ¶¶131-36.

9. After the Get Good Transfer was completed, Get Good donated the Transferred Assets to HDF. Amended Complaint, ¶135. After Get Good donated the Transferred Assets to HDF, HDF contributed the Transferred Assets to DAF HoldCo, who transferred the Transferred Asset to the DAF Fund. Finally, the DAF Fund transferred the Transferred Assets to CLO Holdco. *Id*.

10. Central to the Trustee's allegations surrounding the Get Good Transfer are that Mr. James Dondero ("Dondero") believed the arbitration against HCMLP (the "**Redeemer**

**Arbitration**") commenced by the committee overseeing the wind down of the Crusader Funds (the "**Redeemer Committee**") would be successful and render HCMLP insolvent. Amended Complaint, ¶¶131, 278, 320. Therefore, according to the Trustee, Dondero caused HCMLP to transfer the Transferred Assets to "siphon valuable assets from HCMLP" in return for the Dugaboy Note because he was so fearful of the Redeemer Arbitration. *Id.*

11. In so doing, the Trustee fails to note that the Redeemer Arbitration directly attacked the very existence of the majority of the Transferred Assets—the interests underlying the Crusader Participation Interests. So according to the Trustee, Dondero caused HCMLP to transfer away assets plagued by the Redeemer Arbitration (which Dondero believed would be successful) and in exchange, HCMLP received the Dugaboy Note.

12. The Trustee asserts the Dugaboy Note was just "empty promises" but elsewhere pleads that Dondero's subjective motive in transferring the Dugaboy Note out of the Get Good Trust was to "to place value out of his ex-wife's reach." *See* Amended Complaint, ¶131.

13. Therefore, according to the Trustee, by the Get Good Transfer, Dondero caused HCMLP to transfer what were undoubtedly highly problematic assets to the Get Good Trust in exchange for the Dugaboy Note, which Dondero believed was so valuable that he wanted to make sure that it was out of his ex-wife's reach.

**B.    The HCLOF Investment**

14. According to the Trustee, in November 2017, HCMLP, again through Dondero and with help of HCMLP counsel Scott Ellington ("**Ellington**"), induced HarbourVest[5] to purchase

---

[5]    HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P. (collectively, "**HarbourVest**").

49.9% of Highland CLO Funding, Ltd. ("**HCLOF**") from CLO HoldCo for approximately $75 million in cash, with a commitment to invest an additional $75 million in HCLOF (the "**HCLOF Investment**"). Amended Complaint, ¶213. In inducing the HCLOF investment from HarbourVest, according to the Trustee, HCMLP made misrepresentations and omissions to HarbourVest. *Id*. at ¶71.[6]

15. The Amended Complaint alleges that on April 8, 2020, the HarbourVest entities filed proofs of claim against HCMLP alleging that HCMLP had fraudulently induced them into entering into the HCLOF Investment based on HCMLP's misrepresentations and omissions. Amended Complaint ¶295, *see also* Appendix pp. 21-74 (the "**HarbourVest Claims**").

16. On December 23, 2020, HCMLP filed that certain *Motion for Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith* [Bankruptcy Case, Dkt. No. 1625] (the "**Settlement Motion**"). *See* Amended Complaint ¶395; Appendix pp. 00105. The Settlement Motion explained that HarbourVest asserted claims against HCMLP for fraud, securities violations, and breach of fiduciary duties, amongst others. *See* Amended Complaint, ¶395; Appendix p. 00091-00103.[7]

17. A hearing on the settlement Motion took place on January 14, 2021 (the "**Settlement Hearing**"). *See* Appendix pp. 445-612 (the "**Settlement Hearing Transcript**").[8] At

---

[6]  Also, but of no moment as regards CLO HoldCo or any claim against it, according to the Trustee, Dondero caused CLO HoldCo to invest the cash it received from the HCLOF Investment in Dondero-owned entities, including NexPoint and HCMFA.

[7]  Though outside the scope of the Complaint and therefore the scope of the Motion, at no point did, or has, HarbourVest asserted any claim against CLO HoldCo related to the HCLOF Investment. The Trustee knows this.

[8]  As set forth in the accompanying Brief, the Settlement Motion is central to the Unjust Enrichment Action and referenced in the Amended Complaint. Because the Settlement Agreement was subject the Bankruptcy Court approval and such approval was dependent upon the representations made to the Bankruptcy Court at the Settlement

the Settlement Hearing, the independent director, Mr. James Seery ("**Seeery**") testified before the Bankruptcy Court as to HCMLP's view of the HarbourVest Claims and the contours of the settlement agreement reached between HCMLP and HarbourVest (the "**Settlement Agreement**"). Specifically, Seery testified that many of the HarbourVest Claims were subject to "strong defenses," like the claim that HarbourVest was fraudulently induced to make the HCLOF Investment. *See* Appendix, pp. 508, 509.

18.    Seery explained that HarbourVest was a highly sophisticated investor which managed over one hundred billion dollars and an active investor in HCLOF, making any claim that it reasonably relied upon an omissions from HCMLP specious. *See* Appendix p. 00509. But according to Seery, there was one part of the HarbourVest Claims that had no real defense: the legal fees HCMLP charged to HCLOF related to litigation with Mr. Joshua Terry (the "**Improper Legal Fees**"). *See* Appendix, p. 00511. As Mr. Seery explained to the Bankruptcy Court, it was the Improper Legal Fees that were the basis for the Settlement Agreement. *Id*. at p. 00526 (Seery testifying that "with respect to the claim around the fees, I believed there was significant risk. With respect to the other claims, I thought our defenses would make them worthless.").

19.    Pursuant to the Settlement Agreement, HarbourVest received an allowed general unsecured claim in the amount $45 million and a subordinated allowed general unsecured claim of $35 million [Bankruptcy Case, Dkt. No. 1631-1]. *See* Amended Complaint, ¶396; Appendix, p. 00117-00125. When other parties objected to the Settlement Motion on the basis of the unfounded nature of the HarbourVest Claims, HCMLP defended the Settlement Agreement before the Bankruptcy Court arguing that the true cost to the estate of the Settlement Agreement was

---

Hearing, the transcript thereof is also central to the Unjust Enrichment Action and referenced in the Amended Complaint.

between $12 and $14 million, which was about the same amount of the Improper Legal Fees (as part of the Settlement Agreement, HCMLP obtained the HarbourVest interest in HCLOF).[9] Appendix, p. 00476-77. Of course, CLO HoldCo, which retained a 49.02% investment in HCLOF, would also have been damaged by the same alleged Improper Legal Fees. *Id*. at p. 00585.

20.    The Settlement Agreement makes no mention of CLO HoldCo, nor does it assign any rights of HarbourVest to HCMLP.

21.    According to the Trustee's Unjust Enrichment Action, somehow, CLO HoldCo, the advisee of HCMLP, is responsible to HCMLP for $75 million based upon HCMLP's purported fraudulent inducement of the HCLOF Investment which the Trustee asserts "HCMLP was forced to settle." Amended Complaint, ¶395. But, HCMLP took the position before the Bankruptcy Court that the fraudulent inducement claim ***was not*** the basis for the Settlement Agreement.

22.    So, according to the Trustee, CLO HoldCo, the advisee of HCMLP, should pay its investment advisor's estate for following the investment advice provided because HarbourVest asserted a fraud in the inducement claim which HCMLP disputed and the independent director and Chief Restructuring Officer determined to be unfounded.

23.    In fact, the Trustee is alleging that CLO HoldCo, the advisee of HCMLP, should pay the bad actor (HCMLP) for taking the advice of the bad actor, because doing so somehow unjustly enriched the advisee to the detriment of the advisor. Ignored, of course is that the purported fraud in the inducement claim, and the Improper Legal Fees claim would have damaged CLO HoldCo just as it would have HarbourVest.

---

[9]    Though not before the Court through the Motion, Plaintiff knows that the HCMLP interest in HCLOF, obtained through the settlement is worth in excess of $40 million.

24. The Trustee is therefore claiming that CLO Holdco is liable to HCMLP for the misconduct of HCMLP that purportedly damaged both HarbourVest and CLO HoldCo. This, of course, is backwards and cannot state claim upon which relief can be granted.

25. The Trustee amended his complaint to add "money had and received" as an alternative cause of action in the Unjust Enrichment Action. As the Charitable Defendants set forth in their original *Motion to Dismiss* [Dkt. No. 131, 132], Texas law does not recognize unjust enrichment as a cause of action; rather, unjust enrichment is a theory of recovery that a plaintiff can pursue through several equitable causes of action, including money had and received. *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560–61 (N.D. Tex. 2009) (citing *Redwood Resort Props., LLC v. Holmes Co.*, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006). The Trustee amended solely to do just this: plead money had and received based upon unjust enrichment as a theory of recovery. As such, the pleading of "money had and received" in the alternative does not change the basis for relief plead, which remains solely: unjust enrichment, and as set forth herein and in the Brief, fails to state a claim upon which relief can be granted.

### C. The Plan and Schedule of Retained Causes of Action

26. The Trustee pleads that he has standing to bring the causes of action set forth in the Amended Complaint because pursuant to the Debtor's *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P* (the "**Plan**"), the Claimant Trust was assigned the claims set forth in the Amended Complaint. Amended Complaint, ¶37.

27. On February 22, 2021, the Bankruptcy Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Bankruptcy Case, Dkt. No. 1943] confirming the Plan. Amended Complaint p.1.

28.     "[A]fter confirmation of a plan, the ability of the debtor to enforce a claim once held by the estate is limited to that which has been retained in the [bankruptcy] plan." *Dynasty Oil & Gas, L.L.C. v. Citizens Bank (In re United Operating, L.L.C.)*, 540 F.3d 351, 355 (5th Cir.2008); see also 11 U.S.C. § 1123(b)(3).  Therefore, plans must expressly provide for the retention of a cause of action for post-confirmation adjudication.  *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 550 (5th Cir. 2011).

29.     Here, the Plan provided that the schedule of retained Causes of Action (the "**Schedule of Retained Causes of Action**") would be provided in the Plan Supplement.  *See* Plan, Article, I, ¶95, Confirmation Order, ¶25.  HCMLP filed the first Schedule of Retained Causes of Action on November 13, 2020 which was expressly amended and superseded on January 4, 2021, then on January 22, 2021, and again on February 1, 2021.  *See* Appendix, pp. 00320-00387; [Bankruptcy Case, Dkt. Nos. 1389-5, 1656-1, 1811-1, 1875-3].  The final February 1, 2021 Schedule of Retained Causes of Action contains an extensive (and boilerplate) list of generic causes of actions.[10] Appendix, pp. 00371-00387.  Absent from the Schedule of Retained Causes of Action is any mention of civil conspiracy, aiding and abetting breach of fiduciary duty under Delaware law or knowing participation in breach of fiduciary duty under Texas law.

---

[10]     The Retained Causes of Action "definition" includes: breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, usurpation of corporate opportunities, breach of implied covenant of good faith and fair dealing, conversion, misappropriation of assets, misappropriation of trade secrets, unfair competition, breach of contract, breach of warranty, fraud, constructive fraud, negligence, gross negligence, fraudulent conveyance, fraudulent transfer, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, tortious interference, quantum meruit, unjust enrichment, abuse of process, alter ego, substantive consolidation, recharacterization, business disparagement, indemnity, claims for recovery of distributions or dividends, claims for indemnification, promissory estoppel, quasi-contract claims, any counterclaims, equitable subordination, avoidance actions provided for under sections 544 or 547 of the Bankruptcy Code, claims brought under state law, claims brought under federal law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims

30.     Further, there is not even an attempt to link **_any_** retained cause of action to **_any_** specific party. Instead, the Schedule of Retained Causes of Action list certain persons and entities in the body but incorporates any entities listed on Annex 1 which includes several **_hundreds_** of entities and any entity "related to" those entities. *Id*. Therefore, the Schedule of Retained Causes of Action was merely a boilerplate recitation of hundreds of nonspecific claims that may be asserted against any number of the hundreds of nonspecific entities.

31.     If there were any question was to the complete lack of specificity, the Trustee and his predecessor in interest, the Official Committee of Unsecured Creditors (the "**Committee**"), clarified in August 2021 (six months post-confirmation) that there had not yet even been an investigation into potential estate causes of action. In response to objections to F ED. R. B ANKR. P. 2004 discovery, the Trustee asserted to the Bankruptcy Court that the Committee's previous investigation of estate causes of action was limited to "specific transactions" and facts underlying a specific previously filed adversary proceeding, and it would be "simply inaccurate" to state that the "Committee had already conducted an expansive investigation of estate causes of action." *See* Appendix, pp. 00453-00454. So in August 2021, months post-confirmation and even post-effective date, the Trustee took the position that there had not yet even been an **_investigation_** of estate causes of action.

32.     On October 15, 2021, the Trustee commenced this Adversary Proceeding. On May 19, 2022 the Trustee filed the Amended Complaint.

## II.     GROUNDS FOR RELIEF

33.     The Charitable Defendants move for distinct grounds for relief pursuant to Rule 12 in a single Motion because Rule 12 requires it. *See* Rule 12(g)(2) (requiring a party that makes a

motion under Rule 12 to not make another motion under Rule 12). For the reasons set forth in the Brief, the Charitable Defendants seek dismissal of:

- The Aiding and Abetting Bad Conduct Action and Civil Conspiracy Action for lack of standing by failing to retain the causes of action in the Plan;

- The Civil Conspiracy Action for lack of standing as set forth in the binding *Mack v. Newton,* 737 F.2d 1343, 1356 (5th Cir. 1984) which specifically found that under Texas law, a bankruptcy trustee does not have a cause of action for civil conspiracy related to a fraudulent transfer;

- The Unjust Enrichment Action for lack of post-confirmation bankruptcy subject matter jurisdiction; and

- The Unjust Enrichment Action for failure to state a claim upon which relief can be granted.

The Charitable Defendants seek a more definite statement with relation to the Get Good Avoidance Action in relation to the obvious contradictory statements within the Amended Complaint concerning the value of the Transferred Assets and Dugaboy Note. Pursuant to Local Bankruptcy Rule 7007-1(d), the Charitable Defendants set forth their legal argument supporting the relief sought herein in the accompanying Brief.

### III. ADOPTION OF GROUNDS AND BRIEFING OF OTHER DEFENDANTS

In addition to the dismissal grounds set forth herein and within the legal argument in the Brief, the Charitable Defendants adopt the "Former Employees'"[11] dismissal ground and briefing in support of the Aiding and Abetting Bad Conduct Action and Civil Conspiracy Action as

---

[11] Former Employees includes Defendant Isaac Leventon and Defendant Scott Ellington.

derivative torts on the additional lack of standing basis because the Plan provides that the Reorganized Debtor would administer any breach of fiduciary duty claims, as opposed to the Claimant Trust (and therefore Litigation Sub-Trust), such that there was no assignment of any breach of fiduciary duty claim to the Trustee.

[*signature block on following page*]

Respectfully submitted:

**KELLY HART PITRE**

**/s/ Louis M. Phillips**
**Louis M. Phillips (#10505)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was served through this Court's CM/ECF Service on counsel for the Plaintiff and all Defendants on this July 11, 2022.

**/s/ Louis M. Phillips**

13

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-sgj11 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | **Chapter 11** |
| | § | |
| Debtor | § | |

| | | |
|---|---|---|
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | § | **Adversary No. 21-03076-sgj** |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| **JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST;** | § | |

Proposed Order

| | |
|---|---|
| **GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,** | § § § § § § § § § § § § § § § § § § § § § § § § § § |
| **Defendants.** | § § |

## ORDER GRANTING MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT

Upon consideration of the *Motion To Dismiss and Motion For More Definite Statement* [Dkt. No. ] (the "Motion")[1] and *Brief in Support* [Dkt. No. ] filed by CLO HoldCo, Ltd. ("CLO HoldCo"), Charitable DAF HoldCo, Ltd. ("DAF HoldCo"), Charitable DAF Fund, L.P. ("DAF Fund"), and Highland Dallas Foundation ("HDF," together with CLO HoldCo, DAF HoldCo, DAF Fund, and HDF, the "Charitable Defendants"), the responses thereto, the record in the above-captioned adversary proceeding, and the arguments presented by the parties before the Court, the Court hereby finds that the Motion should be **GRANTED**. Accordingly,

---

[1]    Capitalized terms not otherwise defined herein take their meaning from the Motion.

**IT IS HEREBY ORDERED THAT**:

     **1.**     The causes of action against the Charitable Defendants in COUNT XV (Aiding Bad Conduct Action) and COUNT XVI (Civil Conspiracy Action) are **DISMISSED WITH PREJUDICE** pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction and FED. R. CIV. P. 12(b)(6) for failure to state claim upon which relief can be granted.

     **2.**     The cause of action against Charitable Defendants in COUNT XXX (Unjust Enrichment Action) is **DISMISSED WITH PREJUDICE** pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction and FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

     **3.**     The Trustee must re-plead COUNTS XVIII and XIX (the Get Good Avoidance Actions) and provide a more definite statement as to the purported value of the Transferred Interests; how the Redeemer Arbitration affected the value of the Crusader Funds Interest and Transferred Interests; and the value of the Dugaboy Note.

**##END OF ORDER##**

**SUBMITTED BY:**

**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737

katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Counsel for the Charitable Defendants