| | |
|---|---|
| **KELLY HART PITRE** | **KELLY HART & HALLMAN** |
| Louis M. Phillips (#10505) | Hugh G. Connor II |
| One American Place | State Bar No. 00787272 |
| 301 Main Street, Suite 1600 | hugh.connor@kellyhart.com |
| Baton Rouge, LA 70801-1916 | Michael D. Anderson |
| Telephone: (225) 381-9643 | State Bar No. 24031699 |
| Facsimile: (225) 336-9763 | michael.anderson@kellyhart.com |
| Email: louis.phillips@kellyhart.com | Katherine T. Hopkins |
| Amelia L. Hurt (LA #36817, TX #24092553) | Texas Bar No. 24070737 |
| 400 Poydras Street, Suite 1812 | katherine.hopkins@kellyhart.com |
| New Orleans, LA 70130 | 201 Main Street, Suite 2500 |
| Telephone: (504) 522-1812 | Fort Worth, Texas 76102 |
| Facsimile: (504) 522-1813 | Telephone: (817) 332-2500 |
| Email: amelia.hurt@kellyhart.com | |

**Counsel for the Charitable Defendants**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 19-34054-sgj11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § | **Chapter 11** |
| | § | |
| **Debtor** | § | |

| | | |
|---|---|---|
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | § § § | **Adversary No. 21-03076-sgj** |
| Plaintiff, | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST;** | § § § § § § § § § § § | |

i

| | |
|---|---|
| **GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,** | § § § § § § § § § § § § § § § § § § § § § § |
| **Defendants.** | § |

# REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT

## **RELIEF SOUGHT FROM DISTRICT COURT**

CLO HoldCo, Ltd. ("**CLO HoldCo**"), Charitable DAF HoldCo, Ltd. ("**DAF HoldCo**"), Charitable DAF Fund, L.P. ("**DAF**"), and Highland Dallas Foundation ("**HDF**," together with CLO HoldCo, DAF HoldCo, DAF, and HDF, the "**Charitable Defendants**")[1] file this *Reply* (the "**Reply**") in support of its *Motion to Dismiss and Motion For More Definite Statement* [**Dkt. No.**

---

[1] The Charitable Defendants have filed a *Motion to Withdraw the Reference* [Dkt. No. 59] (the "**Motion to Withdraw the Reference**") which moves for immediate withdrawal of the reference to the District Court. This Motion to Dismiss is filed without any waiver of the Charitable Defendants' right to adjudication of this matters by the District Court and any and all rights to a jury trial on all claims.

**191**] (the "**Motion**"), which moves pursuant to FED. R. CIV. P. 12(b)(1), (6) and 12(e) (hereinafter, "**Rule 12**"), for dismissal with prejudice of the Aiding Bad Conduct Action, the Civil Conspiracy Action, the Unjust Enrichment Action, and a more definite statement of the Get Good Avoidance Action alleged in the *Amended Complaint* [**Dkt. No. 158**] filed by Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust (the "**Trustee**") on May 19, 2022 (the "**Amended Complaint**"). On September 19, 2022, the Trustee filed his *Response in Opposition to Defendants' Motions to Dismiss and the CLO Holdco Defendants' Motion for a More Definitive Statement* [**Dkt. No. 210**] (the "**Opposition**").

# TABLE CONTENTS

TABLE CONTENTS ................................................................................................................ IV

TABLE OF AUTHORITIES ..................................................................................................... V

REPLY .......................................................................................................................................... 1

    A.        The Trustee does not have standing to pursue claims not specifically retained, which include the Aiding Bad Conduct Action and the Civil Conspiracy Action ("Unnamed Actions"). ....................................................................................................... 1

    B.        Additionally, the Trustee pleads claims expressly and solely related to a fraudulent transfer which is not permitted under Texas law. ..................................................... 3

    C.        The Trustee has no standing to bring the Unjust Enrichment Action; and the claim fails as well as a matter of law. ................................................................................... 7

CONCLUSION .......................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re American International Refinery, Inc.*,
 676 F.3d 455 (5th Cir. 2012) ..................................................................................................6

*Bank of Saipan v. CNG Fin. Corp.*,
 380 F.3d 836 (5th Cir. 2004) ..................................................................................................8

*BMG Direct Mktg., Inc. v. Peake*,
 178 S.W.3d 763 (Tex. 2005)..................................................................................................11

*Caplin v. Marine Midland Grace Trust Co.*,
 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972).......................................................10, 12

*In re E.F. Hutton Sw. Properties II, Ltd.*,
 103 B.R. 808 (Bankr. N.D. Tex. 1989)..................................................................................12

*Matter of Educators Group Health Tr.*,
 25 F.3d 1281 (5th Cir. 1994) ...........................................................................................10, 11

*F.D.I.C. v. White*,
 No. 3:96-CV-0560-P, 1998 WL 120298 (N.D. Tex. Mar. 5, 1998) .........................................4

*Fortune Production Co. v. Conoco, Inc.*,
 52 S.W.3d 671 (Tex. 2000)....................................................................................................11

*In re Hunt*,
 149 B.R. 96 (Bankr. N.D. Tex. 1992)...............................................................................11, 12

*In re Levenson Grp., Inc.*,
 613 B.R. 418 (Bankr. N.D. Tex. 2020)..................................................................................10

*Mack v. Newton*,
 737 F. 2d 1343 (5th Cir. 1984) ....................................................................................3, 4, 5, 6

*Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*,
 751 F.3d 368 (5th Cir. 2014) .............................................................................................3, 13

*Off. Stanford Invs. Comm. v. Greenberg Traurig, LLP*,
 No. 3:12-CV-4641-N, 2014 WL 12572881 (N.D. Tex. Dec. 17, 2014)...................................4

*In re Okedokun*,
  968 F.3d 378 (5th Cir. 2020) ..................................................................................8, 9

*In re SI Restructuring Inc.*,
  714 F.3d 860 (5th Cir. 2013) ..................................................................................1, 2, 3

*In re Silver State Holdings, Assignee-7901 Boulevard 26 LLC*,
  No. 19-41579-MXM, 2020 WL 7414434 (Bankr. N.D. Tex. Dec. 17, 2020),
  *subsequently aff'd sub nom. Matter of Silver State Holdings, Assignee 7901
  Boulevard 26, L.L.C.*, No. 21-10212, 2022 WL 3755778 (5th Cir. Aug. 30,
  2022) .........................................................................................................................3

*Smith v. EMC Corp.*,
  393 F.3d 590 (5th Cir. 2004) ..................................................................................7

*Synergy Strategic Solutions, LLC v. Totus Solutions, Inc.*,
  2019 WL 1406599 (N.D. Tex. 2019)......................................................................8, 9

*In re TOFHBI, Inc.*,
  413 B.R. 523 (Bankr. N.D. Tex. 2009)...................................................................3, 4, 5, 6

**Other Authorities**

FED. R. CIV. P. 12(b)(6)....................................................................................................3

# REPLY

The Charitable Defendants incorporate each ground for dismissal and more definite statement set forth in the Motion and Brief in Support. Here, the Charitable Defendants reply to the Opposition to support the substance of the Motion and further establish that as a matter of law, accepting all of the allegations in the Complaint as true, the Trustee does not have standing to bring the Aiding Bad Conduct Action, the Civil Conspiracy Action, or the Unjust Enrichment Action, and the Unjust Enrichment Action fails under state law.

**A.    The Trustee does not have standing to pursue claims not specifically retained, which include the Aiding Bad Conduct Action and the Civil Conspiracy Action ("Unnamed Actions").**

1. The Trustee asserts that the defendants argue that the Plan's list of "retained causes of action [is] **too comprehensive** to be effective." Opposition, ¶4 (emphasis in original). This is wrong. The supposedly comprehensive reserved list does not include the particular causes of action, and the only possible attempted reservation is by means of a boilerplate catch-all blanket reservation, of the kind rejected by the Firth Circuit. The Trustee insists the Schedule of Retained Causes of Action is "in sharp contrast to the blanket reservation in *SI Restructuring*" because it "lists specific causes of action and specific potential targets of such causes of action." Opposition, ¶60. The Trustee misstates. In fact, there is no distinction with respect to the Unnamed Actions.

2. *First*, this is the purportedly "specific" list of causes of action:

breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, usurpation of corporate opportunities, breach of implied covenant of good faith and fair dealing, conversion, misappropriation of assets, misappropriation of trade secrets, unfair competition, breach of contract, breach of warranty, fraud, constructive fraud, negligence, gross negligence, fraudulent conveyance, fraudulent transfer, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, tortious interference, quantum meruit, unjust enrichment, abuse of process, alter ego, substantive consolidation, recharacterization, business disparagement, indemnity, claims for recovery of distributions or dividends, claims for indemnification, promissory estoppel, quasi-

1

contract claims, any counterclaims, equitable subordination, avoidance actions provided for under sections 544 or 547 of the Bankruptcy Code, **claims brought under state law, claims brought under federal law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims.**

Appendix, pp. 00371-00387 (emphasis added). The Aiding Bad Conduct Action and Civil Conspiracy Action are not named and therefore, the Trustee can only be relying upon the emphasized boilerplate language, which is indistinguishable in nature from the impermissible "blanket reservation" in *SI Restructuring*. 714 F.3d 860, 863 (5th Cir. 2013) ("any claims, rights or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar provision of state law, or any other statute or legal theory"). So, there is no "sharp contrast" or even "contrast" to the *SI Restructuring* reservation. The operative sections are equally blanket and non-descriptive.

3. ***Second***, while the purportedly "specific potential targets" include hundreds of entities plus a catchall "any entity 'related to'" those hundreds of entities, the Trustee refuses to acknowledge that he made no attempt to link any claim to any potential target. To be effective, a reservation must, at a minimum, be specific enough to put "creditors on notice of any claim [the debtor] wishes to pursue after confirmation." *SI Restructuring*, 714 F.3d at 864. Here, the reservation of "claims brought under state law, claims brought under federal law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims" is a rejected blanket reservation, made worse because there is absolutely no link of any generalized claim to any of the **hundreds** of entities listed. Therefore, there was no reservation.

4. ***Third***, the Trustee asserts that further specificity was impossible because the defendants are too complex and the misconduct too pervasive. Opposition, ¶60. In *SI Restructuring*, one of the arguments in support of the blanket reservation was that the facts or theories giving rise to causes of action were unknown at the time the plan was confirmed. 714 F.3d

2

at 866. But in *SI Restructuring*, the Fifth Circuit explained that allowing a party to escape the requirement of a specific retention of causes of action because facts were unknown as of confirmation, "would be inconsistent with the nature of a bankruptcy, which is designed primarily to secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time." *Id*.

5.   The Trustee did not retain the Unnamed Actions and therefore, lacks standing to bring either. This Court is therefore without subject matter jurisdiction to adjudicate the Aiding Bad Conduct Action or the Civil Conspiracy Action, both of which must be dismissed, with prejudice. *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (not permitting leave to amend is proper where an amended complaint would similarly be dismissed under a Rule 12(b)(6) motion).

**B.   Additionally, the Trustee pleads claims expressly and solely related to a fraudulent transfer which is not permitted under Texas law.**

6.   Even if the Trustee could establish standing to bring the Aid and Abetting Bad Conduct Action and the Civil Conspiracy Action, the Complaint fails as a matter of law. In his Opposition, the Trustee attempts to escape the holding of *Mack v. Newton* by recasting his allegations concerning aiding and abetting a breach of fiduciary duty and civil conspiracy as being separate and apart from what it terms the CLO HoldCo Transaction. *See* Opposition, ¶¶107-08, n.24. In doing so, the Trustee misstates the allegations in his own Complaint to try to fit his causes of action into this Court's opinion *In re TOFHBI, Inc*. As shown below, the Trustee fails.

7.   As briefed in the Motion, "Texas law does not provide for secondary liability for fraudulent transfers through conspiracy, aiding and abetting, and similar secondary-liability theories." *See In re Silver State Holdings, Assignee-7901 Boulevard 26 LLC*, No. 19-41579-MXM, 2020 WL 7414434, at *31 (Bankr. N.D. Tex. Dec. 17, 2020), *subsequently aff'd sub nom. Matter*

3

*of Silver State Holdings, Assignee 7901 Boulevard 26, L.L.C*., No. 21-10212, 2022 WL 3755778 (5th Cir. Aug. 30, 2022) (summarizing *Mack v. Newton*, 737 F. 2d 1343, 1356 (5th Cir. 1984) and its progeny).[2]

8.  In contrast, in *TOFHBI*, a chapter 7 trustee brought causes of action against professionals related to pre-petition asset protection measures. 413 B.R. 523, 528 (Bankr. N.D. Tex. 2009). The trustee asserted various causes of action against the professionals related to the business structure and transactions including malpractice, breach of fiduciary duty, and aiding and abetting the debtor's breach of fiduciary duty. *Id*. In support of its aiding and abetting cause of action, the trustee pointed to the professionals' participation in devising and implementing the new business structure, facilitating and papering the improper transfer, failing to advise of its conflicts of interests, and then later taking steps to conceal the fraudulent nature of the transactions. *Id*. at 534–35. The professionals raised a defense under *Mack*, which this Court rejected, explaining:

> The causes of action asserted in *Mack v. Newton* were conversion, civil conspiracy, and fraudulent conveyance under the old Bankruptcy Act. Additionally, the trustee moved under the Texas fraudulent conveyance statute. Ergo, the trustee in *Mack v. Newton* was not seeking recovery based upon breach of fiduciary duty or aiding and abetting breach of fiduciary duty. So while it is perfectly true that "the general rule under [the Bankruptcy Code or the old Act] is that one who did not actually

---

[2] As the Fifth Circuit explained:

> The Texas Supreme Court has held that a general creditor does not have a cause of action for civil conspiracy when a debtor's property is conveyed to others to evade payment. The essence of a cause of action for conspiracy is damage resulting from the commission of a wrong which injures another, and not the conspiracy itself. The damage suffered by a general creditor when property is fraudulently conveyed to another to evade payment is the deprivation of an opportunity to make a levy on the property. This damage, however, is too remote to support recovery. Therefore, since the Trustee is a representative of [the debtor's] general creditors in this action, it has suffered no damage for which it may recover under a cause of action for civil conspiracy as such.

*Mack v. Newton,* 737 F. 2d 1343, 1356 (5th Cir. 1984). (internal citations omitted). The rule of Texas law explained in *Mack* has been applied equally to aiding and abetting claims that are similarly solely related to a fraudulent transfer. *Off. Stanford Invs. Comm. v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N, 2014 WL 12572881, at *10 (N.D. Tex. Dec. 17, 2014); *see also F.D.I.C. v. White*, No. 3:96-CV-0560-P, 1998 WL 120298, at *2 (N.D. Tex. Mar. 5, 1998) (explaining that the applicable Texas law "allows a creditor to track the property. Nowhere does the statute imply that recovery could exceed the fraudulently transferred property.").

receive any of the property fraudulently transferred (or any part of a 'preference') will not be liable for its value, even though he may have participated or conspired in the making of the fraudulent transfer (or preference), the Chapter 7 Trustee, in this case, is **not moving under the fraudulent transfer statute and arguing something amazingly similar such as "conversion" and "conspiracy" regarding the same acts**—and, in the process, joining Defendants who would not normally have liability under the relevant fraudulent transfer statutes. Rather, the Chapter 7 Trustee is asserting the Debtor's right to sue its former counsel for aiding and abetting its former officers and directors in breaching their fiduciary duties owed to the corporation, **which stands separate and apart from the fraudulent transfer cause of action (and seems to involve more than simply the acts of the actual transfers).** Accordingly, as to the question of aiding and abetting breach of fiduciary duty, this court thinks *Mack v. Newton* is not applicable.

*Id.* at 535 (emphasis added).

9. Unlike the chapter 7 trustee in *TOFHBI* and exactly like the trustee in *Mack*, the Aiding and Abetting Bad Conduct and Civil Conspiracy Actions are **comprised of the same acts** as those giving rise to the purportedly fraudulent transfer against the Charitable Defendants, which the Trustee also claims are recipients of the purported transfer and therefore liable therefor.

10. The Trustee points the Court to Paragraph 291 of the Complaint as demonstrating that the Civil Conspiracy Action relates to more than a fraudulent transfer. The Trustee states that:

> Ellington, Leventon, NexPoint, HCMFA, SAS, Scott, CLO Holdco, DAF Holdco, DAF, Get Good, and Highland Dallas conspired with Dondero to breach his fiduciary duties to HCMLP by intentionally siphoning assets away from HCMLP to evade HCMLP's creditors.

Complaint, ¶291. But what the Trustee omits from his Opposition is that the Complaint goes on to detail how each entity allegedly did so, and the **sole allegation** related to the Charitable Defendants is the CLO HoldCo Transaction, an alleged fraudulent transfer, that he seeks to recover from the Charitable Defendants. Complaint, ¶295(c).[3]

---

[3] "Dondero, Scott, CLO Holdco, DAF Holdco, the DAF, Get Good, and Highland Dallas conspired to cause HCMLP to transfer valuable assets to CLO Holdco for less than reasonably equivalent value. Scott—and in turn, CLO Holdco, DAF Holdco, DAF, Get Good, and Highland Dallas—consciously participated in the scheme to transfer assets

5

11. Similarly, in pleading the Aiding and Abetting Bad Conduct Action, the Trustee again points exclusively to the Charitable Defendants' participation in the CLO HoldCo Transaction as the sole action that "aided and abetted Dondero's breach of fiduciary duties." Complaint, ¶288. Again, the Trustee ties the Aiding and Abetting Bad Conduct allegation expressly and solely to the CLO HoldCo Transaction and the Charitable Defendants' "knowing participation" therein. *Id*.

12. The Aiding and Abetting Bad Conduct and Civil Conspiracy Actions are exactly what *Mack* prohibits and this Court recognized **did not occur** in *TOFHBI*. There, the action was against parties other than recipients of a fraudulent transfer upon a set of allegations "**which stands separate and apart from the fraudulent transfer cause of action (and seems to involve more than simply the acts of the actual transfers)**." Here, the Trustee asserts additional claims against recipients of the alleged fraudulent transfer upon allegations related solely to the transfer, and as such, the Aiding and Abetting and Civil Conspiracy Actions must be dismissed with prejudice.

13. The only conceivable way to salvage the Aiding and Abetting and Civil Conspiracy Actions is for the Trustee to amend his Complaint to assert wholly new allegations and theories of purported action(s) by the Charitable Defendant separate and apart from the CLO HoldCo Transaction. But such amendments are expressly prohibited. *In re American International Refinery, Inc.,* 676 F.3d 455, 467 (5th Cir. 2012) (cautioning that amendments should not be permitted where they would "fundamentally alter the nature of the case."); *Smith v. EMC Corp.*,

---

valued by the company at approximately $24 million to CLO Holdco in exchange for a note worth significantly less than the transferred assets, including by executing the necessary documentation to cause the Transferred CLO Holdco Assets to be transferred to Get Good, DAF Holdco, DAF, CLO Holdco, and Highland Dallas. Each of Dondero, Scott, CLO Holdco, DAF Holdco, DAF, Get Good, and Highland Dallas were aware that the CLO Holdco Transaction breached fiduciary duties to HCMLP, constituted a fraudulent transfer, and harmed HCMLP by diverting valuable assets in exchange for the far less valuable Dugaboy Note."

393 F.3d 590, 596 (5th Cir. 2004) (amendments prohibited that add claims that require a defendant to prepare a defense for a claim different from the one before the court). Therefore, dismissal with prejudice is required.

**C.    The Trustee has no standing to bring the Unjust Enrichment Action; and the claim fails as well as a matter of law.**

14.    The Trustee asserts that "CLO Holdco obtained an undue advantage through its receipt of the $75 million, and that equity and good conscience demand **that such money be returned** to HCMLP, as compensation for the damages HCMLP was required to pay as a result of the transaction." Opposition, ¶118 (emphasis added). But, the allegations are that HCMLP, while acting as contractual investment advisor to CLO HoldCo, advised HarbourVest to buy from CLO HoldCo, and CLO HoldCo to sell to HarbourVest, an ownership interest in the entity HCLOF. Further, the Complaint asserts that HCMLP committed bad acts toward HCLOF which created a claim by HarbourVest. The HarbourVest Claim was for damages to HCLOF by HCMLP which damaged HarbourVest's ownership interest (and that these bad acts were occurring and continued to occur after the sale).[4] The money paid to CLO HoldCo was property of HarbourVest. HCMLP had no interest in any payment to CLO HoldCo, and no other property of the HCMLP estate was transferred to CLO HoldCo. The Trustee ignores that because HCMLP never transferred any money or property, there can be nothing **to be returned** to HCMLP.

15.    But now the Trustee demands that CLO HoldCo repay its investment advisor, HCMLP, for acting upon its advice, because HCMLP, after advising CLO HoldCo to sell, caused damage to HarbourVest, despite the acts complained of equally damaging CLO HoldCo. In sum:

---

[4]    The HarbourVest Claim makes no assertion against CLO HoldCo. *See* Appendix pp. 21-74

(i) investment advisor advises advisee to sell; (ii) advisee sells; (iii) investment advisor does harm to entity owned by advisee and the buyer from advisee; (iv) buyer sues advisor, and (v) advisor now sues advisee to recover funds paid by buyer to advisee because of advisor's bad acts. Advisor seeks payment from advisee for advisor's misconduct as to buyer, because advisee while being advised, took advisor's advice.

16. An estate recovering against a third party for the debtor's own bad acts (when the third party was equally harmed by the debtor) is not only unpalatable but also exactly why the affirmative defense of unclean hands prohibits the Unjust Enrichment Action. *See Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 841 (5th Cir. 2004).

17. "Under Texas law, '[t]he question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong.'" *Id.* at 840; *In re Okedokun*, 968 F.3d 378, 390 (5th Cir. 2020). The Trustee argues that *Synergy Strategic Solutions, LLC v. Totus Solutions, Inc.*, is instructive, as the Trustee makes the general allegation that CLO HoldCo knew of the bad acts of HCMLP (not that CLO HoldCo did anything wrong, and there are no specific facts alleged that could establish such "knowledge"). 2019 WL 1406599 (N.D. Tex. 2019). The Trustee is wrong.

18. *Synergy* involved prepayment by plaintiff for goods to be shipped but the recipient paid its lender rather than using prepayment to fill the order for which payment was made. The court found that the funds **from the plaintiff** that were paid to the lender established the basis for a claim because of the lender's involvement in utilizing its leverage for compelling the payment. So the question there was whether the lender obtained the plaintiff's funds, or, funds that were paid initially by the plaintiff and diverted to lender as opposed to the intended use. The essential distinction from the Trustee's allegations is that the Trustee has not and cannot allege that HCMLP

8

ever owned or held the funds received by CLO HoldCo, and must allege that the only cause of loss to HCMLP was the bad acts of HCMLP as against HarbourVest and HCLOF.[5]

19. *Synergy* may be instructive, but for the opposite proposition that as suggested by the Trustee. Here, because the funds paid to CLO HoldCo were funds of **HarbourVest**, and HCMLP never had any right or claim to such funds (and in fact CLO HoldCo sold while being advised by HCMLP), *Synergy* is inapposite, and contravenes the Trustee's claim. Because any loss to HCMLP was because of **its bad acts**, **and no funds or property originated from HCMLP**, it cannot make the claim under applicable state law that it has a better ownership claim to the funds received by CLO HoldCo, that were paid by HarbourVest on account of advice from HCMLP that HarbourVest buy and CLO HoldCo sell.

20. Also, the Trustee's discussion of *Okedokun* is misdirection. In *Okedokun*, client (Elbar) hired lawyer (Prins) to handle the purchase of property at a foreclosure. 968 F.3d at 391. Elbar knew at the time of the foreclosure that the owner had filed bankruptcy and carrying out of the foreclosure would be a violation of the automatic stay. Though funds were stolen from Elbar by Prins and paid by Prins to third parties, the point of *Okedokun* is that the bad acts of Elbar (repeated knowing stay violations) tipped the balance of equities against him in favor of good faith third parties who received his funds after Prins stole them. The point then is that a party's bad acts can preclude recovery of funds that would otherwise be found to be owned by such party. Here, the plaintiff never owned funds, never suffered loss from the payment of any funds or property.

---

[5] The record in the Bankruptcy Case is clear that while HCMLP settled HarbourVest's Claim (which the Trustee says created the damages), it did not do so based on HarbourVest's purported fraud in the inducement claim; but rather, because HCMLP had improperly made HCLOF fund extensive legal fees. *See* Brief in Support, ¶¶30-33. These acts, allegedly damaging HCLOF equally damaged CLO HoldCo. *Id*.

Further, Trustee alleges that **because of its own bad acts** against a third party (and CLO Holdco, who was after the sale to HarbourVest the co-owner of the entity damaged), the bad acting plaintiff has greater rights to the funds received by CLO HoldCo from HarbourVest, and therefore should be adjudged to be the rightful owner of the funds in which it never had any interest. Plaintiff Trustee is wrong.

21. The allegations in the Complaint do not set forth a viable claim for unjust enrichment or for money had and received related to the HCLOF Investment. The funds received by CLO HoldCo were from HarbourVest, not HCMLP. The Trustee—as HCMLP never owned funds paid to CLO HoldCo—is essentially pleading a claim against CLO HoldCo that only **HarbourVest** could have asserted (but did not), solely on the basis that HarbourVest filed a claim against the estate.

22. As this Court has recognized, the Supreme Court explained in *Caplin* that a trustee does not have the power to assert, on behalf of the bankruptcy estate, a claim that a creditor has directly against a third party. *In re Levenson Grp., Inc.*, 613 B.R. 418, 424 (Bankr. N.D. Tex. 2020) (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972)). Instead, the trustee's role is limited to pursuing the legal and equitable interests **of the debtor**—that is, the estate's own causes of action. *Id*. (emphasis in original). To determine if a claim is that of a creditor against a third-party of a debtor's, courts consider whether the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. *Matter of Educators Group Health Tr.*, 25 F.3d 1281, 1283–84 (5th Cir. 1994). Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate. *Id.*.

23. Here, the Trustee tries to allege a cause of action against CLO HoldCo for money had and received under a theory of unjust enrichment for CLO HoldCo's receipt of the funds from HarbourVest for the HCLOF Investment. But HCMLP could never have asserted a cause of action against CLO HoldCo related to the HCLOF Investment under a theory of unjust enrichment (or otherwise) as of the commencement of the case (because any funds received by CLO HoldCo were from HarbourVest, not HCMLP). Therefore, under binding Fifth Circuit law, the Unjust Enrichment Claim cannot belong to HCMLP. If there could have been any such claim it would belong only to HarbourVest, not the estate.[6]

24. According to the Trustee, because HarbourVest subsequently filed a proof of claim against HCMLP and HCMLP settled that claim, this changes the result, and the Trustee can jump into the shoes of HarbourVest and assert its claims against CLO HoldCo. But the Trustee pleads no basis for being able to do so.

25. In *Hunt*, trustees asserted causes of action against defendants under RICO for disposing of assets that would have "otherwise have been available to pay the lawful claims of their creditors." 149 B.R. 96, 99 (Bankr. N.D. Tex. 1992). The trustees argued that they had standing to bring these claims because the estates have "been injured in their business or property by reason of a violation [of the RICO statute]," (which prohibited co-conspirators for bringing

---

[6] While outside the scope of this pleading, even accepting the Trustee's allegations as true, HarbourVest could not legally maintain an equitable claim against CLO HoldCo related to the HCLOF Investment because HarbourVest would have had adequate legal remedies under applicable securities law that would preclude equitable relief and the claim would have arisen out of a valid contract, the contract of sale of the ownership interest in HCLOF. *See Fortune Production Co. v. Conoco, Inc.,* 52 S.W.3d 671, 683–85 (Tex. 2000) (when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005) (an adequate legal remedy may render equitable claims of unjust enrichment unavailable).

11

causes of action for violations of RICO against each other). In analyzing whether the trustees could bring a cause of action against the co-conspirators of the debtor under RICO, the court explained:

> The [trustee's] First Amended Complaint … specifically allege that the debtors participated in the acts giving rise to the RICO claims. Since they were conspirators in the purported fraud prohibited by RICO, the debtors, on the date of their bankruptcy filings, would have been unable to sue the present RICO defendants (their co-conspirators) for the fraud in question.

*Id*. a 102. Therefore, the court decided that under *Caplin*, the trustee lacked standing to bring a RICO claim for the harm to the estate because the debtor could not have brought that claim as of the commencement of the case; rather, the claim could only be brought by the debtor's creditors, and the Bankruptcy Code did not grant the trustee standing to bring these direct claims. *Id*. at 104.[7]

26.    Just like the RICO claim in *Hunt*, HCMLP, on the date of its bankruptcy filing, would have been unable to maintain a claim against CLO HoldCo for unjust enrichment related to the HCLOF Investment—it never had any ownership interest in the funds paid by HarbourVest. The allegation that somehow CLO HoldCo's "knowledge" of the bad acts of its advisor, HCMLP, generates causation for damage HCMLP did to itself, could not confer a cause of action on behalf of HCMLP, just as the bad acts of the co-conspirators in *Hunt* could not bring actions against one another. Here, the alleged facts do not nearly reach those in *Hunt*, as the Trustee asserts only that CLO HoldCo had some unarticulated form of "knowledge" (with no allegation of fact upon which to base the conclusory assertion, and no allegation of fact that CLO HoldCo had any duty to disclose its supposed knowledge to protect HCMLP from itself) of the bad acts of HCMLP, and

---

[7] S*ee also E.F. Hutton Sw. Properties II, Ltd*., 103 B.R. 808, 815 (Bankr. N.D. Tex. 1989) (rejecting the reasoning that because recovery against the third party would inure to the estate then the trustee should be permitted to pursue a creditor's claim, and finding "although the …proposal is attractive **it lacks merit**.") (emphasis added).

12

therefore HCMLP should reap the benefit of the HCLOF Investment by HarbourVest, we suppose to pay it for HCMLP's own bad conduct.

27. Because HCMLP could not pursue a claim against CLO HoldCo as of commencement of the Bankruptcy Case, the Trustee has no standing to assert a claim that could only have been asserted by HarbourVest. Permitting the Trustee to be subrogated to the rights of HarbourVest solely by virtue of its proof of claim contradicts well-settled law that trustees cannot bring claims that belong to creditors. Therefore, even accepting the Trustee's factual allegations as true, he has no standing to pursue the Unjust Enrichment Action and therefore it must be dismissed with prejudice as any amendment would be futile. *Marucci Sports*, 751 F.3d at 378.

## CONCLUSION

For the reasons set forth herein as well as in the Motion, the Trustee does not have standing to bring Aiding Bad Conduct Action, the Civil Conspiracy Claim, or the Unjust Enrichment Claim, and such claims as well fail as a matter of law. Therefore such claims must be dismissed, with prejudice.

[*signature block on following page*]

**Respectfully submitted:**

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
**Louis M. Phillips (#10505)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was served through this Court's CM/ECF Service on counsel for the Plaintiff and all Defendants on this November 14, 2022.

*/s/ Louis M. Phillips*