Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendant NexPoint Advisors, L.P.*
*and Highland Capital Management Fund Advisors, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **In re:**<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>Reorganized Debtor. | **Chapter 11**<br><br>**Case No. 19-34054-sgj11** |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,**<br><br>Plaintiff,<br><br>v.<br><br>**JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,**<br><br>Defendants. | **Adv. Pro. No. 21-03076-sgj**<br><br>**DEFENDANTS NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.'S REPLY TO THE LITIGATION TRUSTEE'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS[1]** |

---

[1] Defendants adopt and reference the defined terms in their *Memorandum of Law in Support of [Defendants'] Motion to Dismiss* (referenced herein as Defendants' "Motion"), Case No. 21-03076-sgj [Dkt. 183].

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

I. The Aiding and Abetting and Conspiracy Claims Were Not Sufficiently Preserved. .......... 1

II. This Court Lacks Subject Matter Jurisdiction over Plaintiff's Non-Core Claims. ............... 1

III. Plaintiff's Claims for Aiding and Abetting Breach of Fiduciary Duty, Knowing Participation in Breach of Fiduciary Duty and Civil Conspiracy Fail. ................................ 1

    A. The Claims Are Barred by the Statute of Limitations. .................................................. 1

    B. Even if Plaintiff Did Have Standing, the Claims Fail Because Strand and Dondero Owed no Fiduciary Duties to HCM. ............................................................................. 4

    C. The Claims Fail Because Plaintiff Fails to Allege Facts Showing the Alleged Breach Damaged HCM. ............................................................................................................ 6

IV. Plaintiff's Alter Ego Claims Fail Because They are Not Independent Causes of Action, and Defendants Own No Interest in HCM. .......................................................................... 6

V. Plaintiff's Money Had and Received or Unjust Enrichment Claim Fails. ............................ 8

VI. The Trustee's Claims for Avoidance Based on Constructive and Intentional Fraudulent Transfer Must Be Dismissed. ................................................................................................ 8

VII. Plaintiff's Tortious Interference with Prospective Business Relationship Claim Still Fails. ..................................................................................................................................... 12

VIII. Conclusion. ......................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*,
998 F.3d 190 (5th Cir. 2021)..................................................................................................2

*Adelphia Recovery Trust v. Goldman, Sachs & Co.*,
748 F.3d 110 (2d Cir. 2014)..................................................................................................10

*In re AMC Investors, LLC*,
637 B.R. 43 (Bankr.Del. 2022) ...............................................................................................4

*Antioch Company Litigation Trust v. Morgan*,
644 Fed.Appx. 579 (6th Cir. 2016) .........................................................................................4

*Brotherhood of Locomotive Engineers v. Atchison, T. & S.F.R.R.*,
516 U.S. 152 (1996) ................................................................................................................9

*Wallace ex. Rel. Cencom Cable Income Partners II v. Wood*,
752 A.2d 1175 (Del. Ch. 1999)...............................................................................................7

*Cont'l Ins. Co. v. Rutledge & Co.*,
750 A.2d 1219 (Del. Ch. 2000)...............................................................................................5

*Corrosion Prevention Techs. LLC v. Hatle*,
No. 4:20-CV-2201, 2020 WL 6202690 (S.D. Tex. Oct. 22, 2020)..................................12, 13

*Crosse v. BCBSD, Inc.*,
836 A.2d 492 (Del. 2003)........................................................................................................7

*Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*,
814 F. Supp. 2d 698 (N.D. Tex. 2011)....................................................................................4

*Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*,
540 F.3d 351 (5th Cir. 2008)...................................................................................................1

*In re Essar Steel Minn. LLC*,
602 B.R. 600 (Bankr. D. Del. 2019) .......................................................................................7

*Feeley v. NHAOCG, LLC*,
62 A.3d 649 (Del. Ch. 2012)...................................................................................................5

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006)...................................................................................................3

*Hancock v. Chicago Title Ins. Co.*,
635 F. Supp. 2d 539 (N.D. Tex. 2009)....................................................................................8

CORE/3524885.0002/177944121.11

*In re Hoku Corp.*,
    554 B.R. 901 (Bankr. D. Idaho 2016) ...................................................................................6

*In re J&M Sales*,
    2022 WL 532721 (Bankr. D. Del. Feb. 22, 2022)................................................................10

*Johansen v. E.I. Du Pont De Nemours & Co.*,
    810 F.2d 1377 (5th Cir. 1987)...............................................................................................4

*In re Kipnis*,
    555 B.R. 877 (Bankr. S.D. Fla. 2016)...................................................................................9

*KPMG Peat Marwick v. Harrison County Housing Finance Corp.*,
    988 S.W.2d 746 (Tex.1999) ..................................................................................................2

*M-I LLC v. Stelly*,
    733 F. Supp. 2d 759 (S.D. Tex. Aug. 17, 2010)............................................................ 12, 13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 547 (1986) ............................................................................................................11

*Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*,
    999 F.3d 970 (5th Cir. 2021) ................................................................................................8

*Miller v. Am. Real Est. Partners, L.P.*,
    No. Civ. A. 16788, 2001 WL 1045643 (Del. Ch. Sept. 6, 2001) ..................................... 4, 5

*PPG Indus. Inc. v. JMB/Hous. Ctrs. Partners Ltd.*,
    146 S.W.3d 79 (Tex. 2004) ...................................................................................................2

*Pureshield, Inc. v. Allied Bioscience, Inc.*,
    No. 4:20-CV-734-SDJ, 2021 WL 4492861 (E.D. Tex. Sept. 30, 2021) .............................12

*Quadrant Structured Prod. Co. v. Vertin*,
    102 A.3d 155 (Del. Ch. 2014) ..............................................................................................6

*Remington v. US*,
    210 F.3d 281 (5th Circ. 2000) ............................................................................................11

*Resolution Trust Co. v. Walke*,
    1994 WL 777355 (W.D. La. July 29, 1994) ........................................................................4

*Resolution Trust Corp. v. Scaletty*,
    891 P.2d 1110 (Kan. 1995) ..................................................................................................4

*SEC v. Joiner*,
    320 U.S. 344 (1943) .............................................................................................................9

*In re SI Restructuring Inc.*,
    714 F.3d 860 (5th Cir. 2006)................................................................................................1

iii

*In re Taylor, Bean & Whitaker Mtg. Corp.*,
  2018 WL 6721987 (Bankr. M.D. Fla. Sep. 28, 2012) ................................................................. 11

*In re Topps Holding II Corp.*,
  2022 WL 6827457 (Bankr. S.D.N.Y. Oct. 12, 2022) ................................................................... 12

*Trevino v. Merscorp, Inc.*,
  583 F. Supp. 2d 521 (D. Del. 2008) ............................................................................................. 7

*United Savings Ass'n v. Timbers of Inwood Forest Assocs.*,
  484 U.S. 365 (1988) ..................................................................................................................... 9

*US v. Boisdore's Heirs*,
  49 U.S. (8 How.) 113 (1850) ....................................................................................................... 9

*US v. Summerlin*,
  310 U.S. 414 (1940) ................................................................................................................... 10

*USPPS, Ltd. v. Avery Dennison Corp.*,
  326 F. App'x 842 (5th Cir. 2009) ............................................................................................. 1, 2

*In re Vaughn Co.*,
  498 B.R. 297 (Bankr. D.N.M. 2013) ......................................................................................... 10

*Verizon Employee Benefits Comm. v. Frawley*,
  655 F. Supp. 2d 644 (N.D. Tex. 2008) ........................................................................................ 8

*In re Verizon Ins. Coverage Appeals*,
  222 A.3d 566 (Del. 2019) ............................................................................................................ 7

*VTX Commc'ns, LLC v. AT&T Inc.*,
  2020 WL 4465968 (S.D. Tex. Aug. 4, 2020) .............................................................................. 5

*Wagner & Brown, Ltd. v. Horwood*,
  58 S.W.3d 732 (Tex.2001) .......................................................................................................... 2

**Statutes**

26 U.S.C. § 6502(a)(1) ............................................................................................................ 8, 10, 11

I.      **The Aiding and Abetting and Conspiracy Claims Were Not Sufficiently Preserved.**

1.    Plaintiff's characterization of the Plan's blanket reservation of claims as being in "sharp contrast" to the reservation rejected by the Fifth Circuit in *In re SI Restructuring Inc.* is laughable.[2] In *SI Restructuring Inc.*, the Fifth Circuit ruled that a reservation of "any and all claims[,]" was ineffective, ruling that "[f]or a reservation [of claims] to be effective, it 'must be specific and unequivocal.'"[3] Plaintiff contends that the "Schedule of Causes of Action here lists specific causes of action[,]" but attempts to excuse the fact that it failed to list aiding and abetting and civil conspiracy claims by contending they fall within the Schedule's reference to "any cause of action based on . . . breach of fiduciary duties."[4] This is no different than the blanket reservation of "any and all claims" rejected by the Fifth Circuit, requiring dismissal of Counts 10, 11, 15, 16, 17, and 28.[5]

II.     **This Court Lacks Subject Matter Jurisdiction over Plaintiff's Non-Core Claims.**

2.    Plaintiff in effect asserts that this Court's Report and Recommendation holding that it has subject matter jurisdiction over Plaintiff's non-core claims is dispositive.[6] But that recommendation is ***still pending*** before the District Court.[7] As previously argued, this Court lacks jurisdiction over Counts 10, 11, 15, 16, 17, and 28.[8]

III.    **Plaintiff's Claims for Aiding and Abetting Breach of Fiduciary Duty, Knowing Participation in Breach of Fiduciary Duty and Civil Conspiracy Fail.**

    A.    **The Claims Are Barred by the Statute of Limitations.**

3.    First, Counts 15 and 16 are time-barred.[9] Plaintiff responds that such claims are not time-barred because the discovery rule saves Plaintiff's claims, citing *USPPS, Ltd. v. Avery Dennison*

---

[2] *See* Response, ¶ 60; 714 F.3d 860 (5th Cir. 2013).
[3] *In re SI Restructuring Inc.*, 714 F.3d 860, 864 (5th Cir. 2006) (quoting *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355-56 (5th Cir. 2008)).
[4] Compare Response, ¶ 60 (claiming that the Schedule was so specific in its reservation of causes of action as to not run afoul of *In re SI Restructuring Inc.*'s preclusion against a blanket reservation of causes of action), with Response, ¶ 61 (painfully reaching to claim that, even though the "specific" Schedule did *not include* claims for aiding and abetting and civil conspiracy, it somehow vaguely included such claims because of its catch-all language).
[5] *Id.*
[6] *See* Response, ¶¶ 55-56.
[7] *Id.*, at footnote 7.
[8] *See* Dkt. Nos. 27, 28, 36, 37, 39, 40, 45, 46, 50, 51, and 59 and the transcript of the hearing on the motions, Dkt. No. 96; *see also* Motion, ¶ 7. Defendants incorporate the arguments and authorities in co-Defendants' memoranda.
[9] *Id.*, at 28–34.

1

*Corp.*[10] In *USPPS*, the court reviewed the facts of *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*,[11] in which the court rejected the discovery rule because the plaintiff failed to conduct timely due diligence regarding the allegedly wrongful conduct.[12] In Texas, the discovery rule is "that the date of accrual [is] not deferred when a plaintiff knew or should have known of its wrongful injury."[13] The *KPMG* Court held that the plaintiff should have investigated because the amounts at issue were very large, which should have alerted Plaintiff to the potential wrongdoing.[14] In *USPPS*, by contrast, the court allowed the claims because there were no facts that Plaintiff could readily have found in the public record or otherwise that would have alerted plaintiff to the wrongful injury.[15]

4. Similarly, in *Quest Diagnostics*, the Fifth Circuit affirmed dismissal of civil conspiracy claims based on the statute of limitations, rejecting the discovery rule.[16] The Fifth Circuit explained that "[t]he discovery rule does not apply 'simply because a claimant does not know the *specific cause* of the injury, the party responsible for it, the full extent of it, or the chances of avoiding it.'"[17] Rather, "[t]he discovery rule is a limited exception to statutes of limitation and will only be applied when the *nature of the plaintiff's injury* is both inherently undiscoverable and objectively verifiable."[18] "Texas courts have set the inherently undiscoverable bar high, to the extent that the discovery rule will apply only where it is nearly impossible for the plaintiff to be aware of his injury at the time he is injured."[19]

5. Here, Counts 15 and 16 should be dismissed, given the magnitude of what Plaintiff contends Defendants have usurped and the very public nature of the transfer of advisory duties (and

---

[10] Response, ¶¶ 126–33; 326 F. App'x 842 (5th Cir. 2009).
[11] 988 S.W.2d 746 (Tex.1999).
[12] *USPPS, Ltd.*, 326 F. App'x 842 at 849.
[13] *Id.* (citing *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 737 (Tex.2001)).
[14] *Id.* at 849–50.
[15] *Id.* at 850.
[16] *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 201 (5th Cir. 2021).
[17] *Id.* at 199–200 (quoting *USPPS, Ltd. v. Avery Dennison Corp.*, 326 F. App'x 842, 847 (5th Cir. 2009) and *PPG Indus. Inc. v. JMB/Hous. Ctrs. Partners Ltd.*, 146 S.W.3d 79, 93–94 (Tex. 2004)) (internal marks omitted) (emphasis added).
[18] *Id.* at 200 (internal marks and citation omitted) (emphasis added).
[19] *Id.* (internal marks and citations omitted).

fees), because Plaintiff has not and cannot allege that HCM and its creditors could not have been aware from 2011 to 2021 of the fact that millions of dollars of advisory fees were going to HCMFA and NPA (and alleged predecessors), the very fact of which Plaintiff now complains.[20]

6.  Not surprisingly – because the public record is replete with disclosures – Plaintiff fails to allege that HCM or its creditors did not know of the alleged injury, the transfer of advisory agreements in 2011 and 2012 allegedly giving rise to millions of dollars of revenues for HCMFA and NPA. Instead, Plaintiff ambiguously alleges that neither he nor the Estate could have discovered some ***unspecified*** ***conduct*** before Dondero was removed on January 9, 2020.[21] But this is demonstrably false, as shown by the voluminous documents in the public record of which this Court can take judicial notice.[22]

---

[20] Numerous public documents, of which the below are a tiny example, show (1) the transfer of advisory agreements from HCM to HCMFA and/or NexPoint and/or their predecessors (i.e., the Advisors) or (2) show NexPoint and/or HCMFA providing advisory services that at least in theory, creditors could have inquired by HCM was not the fee-generating advisor, when the same public documents show that HCM provided services to the Advisors, even though HCM no longer held the advisory contracts with the funds to which the Advisors provided services. https://www.sec.gov/Archives/edgar/data/1356115/000094040012000351/nexpoint-q1.txt (2012 publicly filed document documenting publically the novation of advisory contracts to Pyxis and then to NexPoint); https://www.sec.gov/Archives/edgar/data/1356115/000094040012000351/nexpoint-q1.txt (showing on page 3 of a 2015 NexPoint Capital prospectus, that NexPoint was providing advisory services of the type that HCM previously provided and that HCM provided services to NexPoint even though it was not the "advisor" to the fund); https://www.sec.gov/Archives/edgar/data/1588272/000119312514381771/d782232dsc13d.htm (public 13D Report from August 18, 2014, acknowledging in Item 2 that "[HCM] [] is an affiliate of [NPA] and makes available to [NPA] experienced investment professionals and other resources" further evidencing the knowledge made readily available to investors that NPA and HCM openly shared investment services); https://www.sec.gov/Archives/edgar/data/1356115/000119312515407963/d68799d40appa.htm (publicly filed Dec. 18, 2015 Second Amended to Application for an order permitting joint transactions noting "NexPoint Advisors has entered into an agreement with Highland Capital Management, L.P., its affiliate, pursuant to which Highland Capital Management, L.P. makes available to NexPoint Advisors experienced investment professionals and other resources of Highland Capital Management, L.P. and its affiliates. NexPoint Advisors is an affiliate of, and indirectly controlled by, Mr. James Dondero, the president of NexPoint Capital and a portfolio manager of each of NexPoint Capital and NHF.") In 2011 and again in 2015-2016, Highland Capital Management, L.P. filed an application and amended applications with the SEC to permit transactions shared among HCM and HFAM (in 2011) and HCM, NexPoint, Acis Capital Management, Highland Capital Healthcare Advisors, L.P. and various of the other challenged entities. *See, e.g.*, https://www.sec.gov/Archives/edgar/data/1167365/000119312516509986/d116277d40appa.htm (March 18, 2016 Joint Application by Nexpoint Capital Inc, Nexpoint Advisors, HCM, and other related entities to permit certain joint transactions otherwise prohibited by Section 17(d) and Section 57(a)(4) of the Act and Rule 17d-1 under the Act); https://www.sec.gov/Archives/edgar/data/891079/000095012311084690/d84584e40vappza.htm (Sep. 15, 2011 Second Amended and Restated Application to permit investment companies "advised by HCM, HFAM, or any person controlling, controlled by, or under common control with HCM or HFAM" to permit investment in non-security investments). In addition, the Advisors were required to file annual "Form ADVs" that is the "uniform form used by investment advisers to register with both the SEC and state securities authorities. https://www.investor.gov/introduction-investing/investing-basics/glossary/form-adv Not only are these publically available each year, they are distributed to advisory client. *Id*. Thus, every year creditors of HCM were able to determine what related companies to HCM were providing advisory services of the kind HCM previously provided and be alerted to the very same fact that they contend now triggered their suspicions.

[21] Complaint, ¶¶ 195, 203, 276, 289, 292.

[22] *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) ("[Courts] are permitted, however, to rely on matters of public record. Moreover, in securities actions, the court may, as did the district court here, rely on public disclosure documents required by law to be, and that have been, filed with the SEC . . .") (internal citations omitted). The creditors' awareness of the kinds of alleged wrongdoing about which Kirschner now complains was hidden until he was able to rummage through Debtor's books and records is shown in the creditors early efforts to remove Mr. Dondero.

3

7. At most, Kirschner is alleging, however improbably, that creditors could not have known the *specific cause* of injury, which, under Qwest, is insufficient to trigger the discovery rule. Plaintiff further fails to allege that it was impossible for HCM and its creditors to have discovered their alleged injuries and the alleged wrongdoing. Given the very public formation of HCMFA and NPA and the publicized nature of their businesses,[23] Plaintiff's pleading failures merely underscore the obvious, that HCM's creditors were well aware of the business being undertaken by HCMFA and NPA that Plaintiff now contends belonged to HCM alone.

8. Plaintiff also responds that such claims are not time-barred because the adverse domination doctrine saves Plaintiff's claims.[24] But the "adverse domination" doctrine is not recognized under applicable Delaware law.[25] Because the adverse domination doctrine is substantive[26] and Delaware law does not recognize it, the doctrine cannot save Plaintiff's claims.[27]

**B. Even if Plaintiff Did Have Standing, the Claims Fail Because Strand and Dondero Owed no Fiduciary Duties to HCM.**

9. Strand and Dondero owed no duties to HCM because the LPA, as permitted by applicable Delaware law, replaced such duties with a different standard for Strand and its affiliates.[28]

10. Plaintiff relies on four cases to argue that the LPA does not displace Delaware fiduciary duties.[29] First, Plaintiff attempts to analogize the LPA to the language of the partnership agreement in *Miller v. Am. Real Est. Partners, L.P.*[30] In *Miller*, the partnership agreement provided

---

[23] *See supra*, n. 20.
[24] Response, ¶¶ 126–33.
[25] *See Cypress/Spanish Ft. I, L.P. v. Professional Service Industries, Inc.*, 814 F. Supp. 2d 698, 709, n. 4 (N.D. Tex. 2011) (citing *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1381 (5th Cir. 1987)) ("if that jurisdiction's limitations period is considered substantive, that provision will govern").
[26] *Antioch Company Litigation Trust v. Morgan*, 644 Fed.Appx. 579, 583 (6th Cir. 2016); *Resolution Trust Co. v. Walke*, 1994 WL 777355, at *9 (W.D. La. July 29, 1994) ("the court declines to create new substantive law for Louisiana"); *Resolution Trust Corp. v. Scaletty*, 891 P.2d 1110, 1115 (Kan. 1995).
[27] *In re AMC Investors, LLC*, 637 B.R. 43, 57, n. 60 (Bankr.Del. 2022) ("Because the court believes that Delaware's tolling mechanisms, in combination with the availability of shareholder derivative actions, already address the concerns that underlie the adverse domination doctrine, the court declines to recognize adverse domination as a viable tolling mechanism in Delaware.").
[28] Motion, ¶¶ 36–38.
[29] Response, ¶¶ 73–78.
[30] No. Civ. A. 16788, 2001 WL 1045643, at *8–9 (Del. Ch. Sept. 6, 2001).

the general partner with the "sole discretion,"[31] to take various acts; which language the court found insufficient to displace statutory and common law duties.[32] By contrast, here, in the event of a "conflict of interest" between HCM and Strand (or its affiliates), "any action taken" by Strand is subject to a duty to not act in "bad faith" and, explicitly, ***not*** any other "standard of care or duty imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation."[33] It is the disclaimer of such other "standard[s] of care or dut[ies]" that is present in this case and was absent in *Miller* that the Delaware court found dispositive, making the *Miller* case supportive of Defendants' not Plaintiff's position.[34]

11. In Plaintiff's second case,[35] the partnership agreement, similar to *Miller*, had no language, as there is here, that exculpated the general partner in the case of a conflict of interest.[36] In Plaintiff's fourth case, there similarly was "[n]o contractual language eschew[ed] the general partner's duty . . . to refrain from entering into self-dealing transactions."[37]

12. Plaintiff's third case clinches the argument for Defendants. In *VTX Commc'ns, LLC v. AT&T Inc.*,[38] a Texas federal district court held that where the partnership agreement "in self-dealing transactions" permits the general partner to resolve such conflicts "in the absence of gross negligence or willful misconduct," (i) such language reduces "the general partner's duties from a fiduciary duty to merely a duty of good faith," (ii) "the inquiry with respect to the Defendants' alleged breach is addressed by contractual standards," and (iii) "Plaintiffs' claims for breach of fiduciary duty cannot survive."[39]  Given the disclaiming language in the LPA, Plaintiff 's claims fail.

---

[31] *Id.* at *8.
[32] *Id.* at *11.
[33] Motion, ¶ 37.
[34] *See Miller*, 2001 WL 1045643 at *8.
[35] *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 664 (Del. Ch. 2012).
[36] Motion, ¶ 37.
[37] *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1237 (Del. Ch. 2000).
[38] 2020 WL 4465968, at *19 (S.D. Tex. Aug. 4, 2020).
[39] *Id.*

### C. The Claims Fail Because Plaintiff Fails to Allege Facts Showing the Alleged Breach Damaged HCM.

13. The Complaint fails to allege facts that the alleged breach damaged HCM.[40] Plaintiff responds that the Complaint adequately alleges damages against Defendants.[41] But to the contrary, Plaintiff's allegations demonstrate that soon after the transfer of accounts from HCM to Defendants, and for years thereafter, HCM's financial standing improved.[42]

14. Plaintiff's Complaint is an attempt to substitute Plaintiff's business judgment for that of the Defendants. Delaware's default standard of review is the business judgment rule, and a case must be dismissed when a plaintiff simply wants to substitute its business judgment.[43] Here, on the one hand, Plaintiff alleges that the diminishing returns of certain investments managed by HCM contributed to causing HCM's return to insolvency much later in December 2016.[44] On the other hand, Plaintiff alleges that transferring other investment accounts to NPA and HCMFA in 2011 and 2012 caused much of the harm to HCM later in 2016 and beyond. Plaintiff would have the Court impermissibly substitute his business judgment for Strand and Dondero's as a basis for his claims. HCM's solvency through December of 2016 following the transfer of accounts to NPA and HCMFA in 2011 and 2012 further supports application of the business judgment rule to this case, and dismissal of Plaintiff's claims. The Plaintiff's "pleadings have [] failed to show what, if any damages [the debtor] suffered as a result of the subject transactions," that is the transfer of accounts to Defendants.[45]

### IV. Plaintiff's Alter Ego Claims Fail Because They are Not Independent Causes of Action, and Defendants Own No Interest in HCM.

15. Plaintiff's assertion that "substantial Delaware precedent . . . identif[ies] an alter ego claim . . . as a right that may be independently asserted" is misleading.[46] Plaintiff's authority simply

---

[40] Motion, ¶ 39.
[41] Response, ¶¶ 97–99.
[42] Motion, ¶ 39.
[43] *Quadrant Structured Prod. Co. v. Vertin*, 102 A.3d 155, 183, 184, 186, 192 (Del. Ch. 2014) (citation omitted).
[44] Complaint, ¶ 108.
[45] *In re Hoku Corp.*, 554 B.R. 901, 917–18 (Bankr. D. Idaho 2016) (applying Delaware law).
[46] Response, ¶ 137.

6

does not support that proposition.[47] Rather, Plaintiff uses cherry-picked sound bites in a last-ditch effort to convince this Court that, somehow, aiding and abetting is an independent cause of action in Delaware. It is not. Plaintiff cites to inapposite authority outlining the *elements* of an alter ego claim, but does not cite to any authority permitting alter ego as an ***independent cause of action*** in Delaware.

16. Plaintiff inappositely quotes *In re Verizon*, ". . . alter ego claims are common law claims[,]" without any analogy whatsoever.[48] This is not surprising, as that case dealt with insurance coverage at summary judgment and whether or not a claim for alter ego – ***which accompanied an underlying breach of contract claim*** – fell under the insurance policy in question.[49] *In re Verizon* further bolsters Defendants' position that an alter ego claim can only be brought with an "underlying breach of contract claim."[50] Plaintiff's remaining authority fares no better. The court in *Crosse* – a class action case based on an ***underlying breach of contract claim*** – passively mentioned the elements of a 'veil piercing' claim before dismissing it for failure to state a claim.[51] Similarly, *Wallace* and *Trevino* – ***both of which involve underlying breach of contract claims*** – simply recite required elements of veil-piercing claims before dismissing them on the defendants' motions.[52] Indeed, Plaintiff is left with no authority supporting its position that there is "substantial Delaware precedent . . . identifying an alter ego claim . . . as a right that may be independently asserted."[53]

17. Fortunately, Defendants' authority, *In re Essar Steel Minn. LLC*, is directly on point.[54] That court unequivocally stated "alter ego liability is not an independent cause of action, rather it is a theory of liability properly asserted with [an] ***underlying breach of contract claim***."[55] ***Plaintiff's own***

---

[47] *See* Response, Section II.I.1 (citing to *In re Verizon Ins. Coverage Appeals*, 222 A.3d 566, 577 (Del. 2019), *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003), *Wallace ex. Rel. Cencom Cable Income Partners II v. Wood*, 752 A.2d 1175, 1183-85 (Del. Ch. 1999), and *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008)).
[48] *In re Verizon Ins. Coverage Appeals*, 222 A.3d 566 at 577.
[49] *See Id.*, 576-77.
[50] *Essar Steel*, 602 B.R. 600, 606 (Bankr. D. Del. 2019) (emphasis added).
[51] *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497.
[52] *See Wallace*, 752 A.2d at 1184-85; *see also Trevino*,
[53] Response, ¶ 137.
[54] 602 B.R. 600, 606 (Bankr. D. Del. 2019).
[55] *Id.*

7

*authority confirms this*, as all of its cases discussing alter ego involved underlying breach of contract claims. Plaintiff brings no such breach of contract claims against Defendants.

18. Finally, Defendants reiterate that they simply cannot be the alter egos of HCM because they do not own any interest in HCM, as is required by Delaware law.[56]

## V. Plaintiff's Money Had and Received or Unjust Enrichment Claim Fails.

19. First, Plaintiff's claim for money had and received fails because it was brought after the two-year statute of limitations expired.[57] Plaintiff's allegations are centered around alleged misconduct that occurred between 2012 and 2017, more than 2 years before the claims were made.[58]

20. Additionally, Plaintiff's unjust enrichment claims fail because unjust enrichment is not an independent claim under Texas law.[59] Plaintiff argues that its Complaint does not assert a standalone claim for unjust enrichment.[60] However, Count XXVIII is specifically a count for "Unjust Enrichment or Money Had and Received" against Defendants.[61] Accordingly, any unjust enrichment claims must be dismissed as they are not recognized by Texas law as an independent cause of action.[62]

## VI. The Trustee's Claims for Avoidance Based on Constructive and Intentional Fraudulent Transfer Must Be Dismissed.

21. Plaintiff does not dispute that he seeks to avoid allegedly fraudulent transfers that occurred on December 15, 2011,[63] and June 13, 2012,[64] more than 7 years prior to filing the bankruptcy petition, and more than 9 years prior to filing this adversary proceeding.

22. Plaintiff hopes to avoid the applicable statutes of limitations by arguing that section 544(b) permits him to utilize the 10-year period set forth in 26 U.S.C. § 6502(a)(1) – which applies

---

[56] *See* Motion, ¶¶ 9-10.
[57] *Verizon Employee Benefits Comm. v. Frawley*, 655 F. Supp. 2d 644, 647-648 (N.D. Tex. 2008).
[58] Complaint, ¶¶ 52-65.
[59] *See Midwestern Cattle Mktg., LLC v. Legend Bank, N.A.*, 999 F.3d 970, 927 (5th Cir. 2021) ([U]njust enrichment describes the nature of certain remedies, [but is] not a distinct cause of action itself").
[60] Response, ¶ 111.
[61] Complaint, ¶¶ 378-385.
[62] *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 561 (N.D. Tex. 2009) ("Because Texas law does not afford an independent cause of action for unjust enrichment, plaintiffs cannot simultaneously maintain both of these claims [for unjust enrichment and money had and received]," dismissing unjust enrichment claim).
[63] Complaint, ¶¶ 62, 264, 270.
[64] *Id.*, ¶¶ 62, 267, 272.

to the IRS's attempts to collect taxes – to avoid fraudulent transfers occurring nearly 10 years prior. Plaintiff argues that this interpretation is permitted by the "plain language" of section 544(b)(1) when read in isolation, and in fact argues that the Court should ignore the policies and purposes behind the law.[65]  However, that is not an accurate statement of the Supreme Court's instructions on statutory interpretation.  "Statutory construction . . . is a holistic endeavor.  A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."[66]  In 1850, Justice Taney described the same process: "In expounding on a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, ***and to its object and policy***."[67]  Indeed, the overriding objective of statutory construction is to effectuate the statutory purpose as expressed in the law's text: "[h]owever well these rules may serve at times to decipher the legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act ***in conformity with its dominating general purpose***, will read text in light of context, and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases ***the generally expressed legislative policy***."[68]

23. Plaintiff acknowledges that Courts should not be limited to a provision's "plain language" when it would lead to an absurd result.[69]  However, Plaintiff makes no attempt to explain how the result in this case is not absurd.  Plaintiff is attempting to stand in the shoes of the federal government to avoid state statutes of limitations to assert private claims, thus granting Plaintiff a

---

[65] Response, ¶ 165.
[66] *United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) (citations omitted).
[67] *US v. Boisdore's Heirs*, 49 U.S. (8 How.) 113, 122 (1850) (emphasis added); *see also Brotherhood of Locomotive Engineers v. Atchison, T. & S.F.R.R.*, 516 U.S. 152, 157 (1996) (finding that purpose of a statute – to promote safety by ensuring that fatigued employees do not operate trains – guides the statutory determination).
[68] *SEC v. Joiner*, 320 U.S. 344, 350-51 (1943) (emphasis added).
[69] Response, ¶ 165 (citing *In re Kipnis*, 555 B.R. 877, 882 (Bankr. S.D. Fla. 2016)).

9

power greater than that afforded to the federal sovereign;[70] Plaintiff is using the federal statute of limitations applicable to the collection of taxes to avoid transfers that have nothing to do with taxes; and Plaintiff is "standing in the shoes" of the IRS – whose claim totaled less than $4,000,[71] and whose claims have all been expunged or withdrawn,[72] meaning that the IRS is not currently a creditor of the estate – to avoid tens or hundreds of millions of dollars in transfers. When it would be to the detriment of Defendants, the Debtor has argued and this Court has held that parties whose claims have been expunged or withdrawn have no standing,[73] highlighting the absurdity of the relief sought.[74]

24. Plaintiff also doesn't deny that his interpretation of section 544(b) would extend the statute of limitations on fraudulent transfers in bankruptcy to 10 years. As explained in *In re J&M Sales*, 2022 WL 532721, at *3 n.7 (Bankr. D. Del. Feb. 22, 2022), because the IRS is a creditor in virtually every business's bankruptcy, "[u]nder the Trustee's theory, therefore, every business bankruptcy case would automatically have a ten-year lookback period for fraudulent transfers under Section 544(b). That cannot be what Congress intended when enacting Section 544(b)."

25. Plaintiff's theory would thus lead to an absurd result, both in this particular case and in bankruptcy cases in general. The purpose of section 544(b) was to "incorporate" state statutes of limitations, but Plaintiff's interpretation would "subordinate" or "eviscerate" those statutes.[75]

26. Moreover, Plaintiff's interpretation is inconsistent with the "plain language" of the statute he seeks to use. As Plaintiff concedes, 26 U.S.C. 6502(a)(1) permits the IRS to collect taxes

---

[70] *In re Vaughn Co.*, 498 B.R. 297, 304 (Bankr. D.N.M. 2013); *see also US v. Summerlin*, 310 U.S. 414, 416 (1940).
[71] Second Notice of Allowed Claims Pursuant to the Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, LP [Bk. Dkt. 3307] at 4 (allowed IRS claims totaling $3,990.16).
[72] Claims Register, Claim nos. 32 (expunged), 173 (expunged), 179 (expunged), 195 (expunged), 248 (expunged), 250 (withdrawn), 252 (expunged), 255 (expunged).
[73] *See, e.g., Appellee's Motion to Dismiss [Jim Dondero's] Appeal as Constitutionally Moot,* Case No. 3:20-cv-03390-X [Dkt. 18]; *see also, e.g., Memorandum Opinion and Order [Granting HCM's Motion to Dismiss James Dondero's Bankruptcy Appeal]*, Case 3:20-cv-03390-X [Dkt. 25] (dismissing Jim Dondero's appeal for lack of standing after he withdrew his remaining proofs of claim, noting the appeal as moot).
[74] *See Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 117-20 (2d Cir. 2014) (holding that a litigation trustee was barred by judicial estoppel from claiming that certain accounts were owned by Adelphia Recovery Trust, when the debtor previously claimed in the bankruptcy proceedings that those same accounts were owned by a subsidiary).
[75] *In re Vaughn Co.*, 498 B.R. at 304-05.

by proceeding in court "within 10 years *after* the assessment of the tax."[76] As recognized by the Fifth Circuit, that section is forward-looking.[77] Thus, it does not provide a "lookback" period, but instead permits the IRS to file claims within 10 years *after* the assessment of unpaid taxes.[78]

27. Rather than address this deficiency head on, Plaintiff argues that the Texas fraudulent transfers statute permits the IRS to avoid transfers within a "reasonable time" prior to becoming a creditor.[79] Plaintiff argues that Courts have interpreted the phrase "reasonable time" to mean at least 4 years.[80] However, apparently aware that a 4 year lookback period is insufficient to extend the statute of limitations to cover his claims occurring 7 to 9 years prior to filing suit, Plaintiff argues that the Court should "decline to determine the contours of reasonableness at this phase of the case."[81]

28. The Court should not accept Plaintiff's suggestion that the Court turn a blind eye to Plaintiff's inability to show that his claims were filed within the applicable statute of limitations. Notably, Plaintiff does not state – because he cannot – that the allegedly fraudulent transfers occurred within 4 years before the IRS became a creditor. Given that the IRS's claims have been resolved, and the IRS is no longer an existing creditor of the estate, Plaintiff should be able to do so. Moreover, Plaintiff does not argue – because he cannot – that 7 to 9 years is a "reasonable time" to file fraudulent transfer claims. Plaintiff argues that "Defendants have provided no legal grounds on which to dismiss the Trustee's fraudulent transfer claims as untimely *at this juncture*,"[82] but this is a reversal of the burden of proof. On a motion to dismiss, once the moving party has carried its burden of demonstrating the absence of an issue of material fact, the opposing party "must come forward with specific facts showing there is a genuine issue for trial."[83] Plaintiff should have provided "specific

---

[76] Response, ¶ 159 (quoting 26 U.S.C. § 6502(a)(1)) (emphasis added).
[77] *Remington v. US*, 210 F.3d 281, 284 (5th Circ. 2000).
[78] *In re Taylor, Bean & Whitaker Mtg. Corp.*, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sep. 28, 2012) (slip opinion).
[79] Response ¶¶ 97-98, 168-70.
[80] *Id.*, ¶ 170.
[81] *Id.* at 99, ¶ 170.
[82] *Id.*
[83] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 547, 587 (1986).

11

facts" showing the IRS assessed unpaid taxes within 4 years after the allegedly fraudulent transfers.[84] However, Plaintiff has not done so. Therefore, these claims must be dismissed.[85]

## VII. Plaintiff's Tortious Interference with Prospective Business Relationship Claim Still Fails.

29.   Plaintiff's claim fails because it has not sufficiently alleged that Defendants intentionally prevented the formation of the business relationship. "Courts have consistently required plaintiffs to do more than vaguely identify potential business partners purportedly influenced by a defendant's alleged misconduct."[86] For example, in *Corrosion Prevention*, the court granted the motion to dismiss the defendant's counterclaim for tortious interference with a prospective business relationship despite the fact that the defendant's alleged that plaintiffs contacted several of the defendant's "vendors and customers" to dissuade them from doing business with the defendants.[87] In fact, the defendants even named three specific companies that the plaintiffs allegedly contacted.[88] Nonetheless, the court held that the defendants had "not alleged any facts showing what business relationship they expected to have with the listed businesses or pointed to a specific contract they allegedly lost because of [the plaintiff's] actions," and thus "failed to allege facts that plausibly state a counterclaim for tortious interference with a prospective business relationship."[89] Similarly, in *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. Aug. 17, 2010), the court dismissed plaintiff's claim for tortious interference with prospective business relations under Rule 12(b)(6) even though plaintiff alleged that it had provided services to a third-party company, in the past, and expected to provide those services again in the future for another named project, but instead lost that project to

---

[84] Defendants further adopt and incorporate the arguments laid out in co-Defendants' contemporaneously filed *Reply in Support of the Okada Parties' Motion to Dismiss Amended Complaint,* Section III.
[85] After filing its response brief, Plaintiff filed his notice of supplemental authority [Dkt. 219] referring to *In re Topps Holding II Corp.*, 2022 WL 6827457 (Bankr. S.D.N.Y. Oct. 12, 2022). However, that case does not raise any unique issues or arguments. Accordingly, for the reasons stated herein and in the motion to dismiss, the Court should not follow the reasoning of the *Topps* Court, but should dismiss Plaintiff's complaint.
[86] *Pureshield, Inc. v. Allied Bioscience, Inc.*, No. 4:20-CV-734-SDJ, 2021 WL 4492861, at *3 (E.D. Tex. Sept. 30, 2021); *see also Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690 (S.D. Tex. Oct. 22, 2020).
[87] *Id.* at *4.
[88] *Id.*
[89] *Id.* at *5.

the defendant.[90] The *Stelly* court concluded that the plaintiff's claim fell short of the Rule 12(b)(6) standard because the plaintiff "[did] not plead a reasonable probability that [the plaintiff] and the third-party company would have entered into a contractual relationship" for the future project.[91] *Id.*

30. Here, Plaintiff's Amended Complaint includes even less specificity than the reasonable probability-claims in *Corrosion Prevention* and *Stelly*. Plaintiff has not identified any potential business partners influenced by the Defendants' alleged misconduct. Instead, Plaintiff only alleges "[b]ut for the actions of Dondero, NexPoint, and HCMFA, HCMLP would have continued to pursue the business opportunities that Dondero diverted to NexPoint and HCMFA."[92] Plaintiff makes no other allegations that point to a specific business relationship that failed to come to fruition. Thus, because Plaintiff only alleges that HCM *could* have entered into a business relationship with unnamed "customers or business partners," it has failed to sufficiently plead a claim for tortious interference with a prospective business relationship.

## VIII. Conclusion.

31. Defendants respectfully request this Court Grant their Motion to Dismiss.

---

[90] *M-I LLC v. Stelly*, 733 F. Supp. 2d at 775.
[91] *Id.*
[92] Complaint, ¶ 299.

13

Dated: November 14, 2022            Respectfully submitted,

                                                 */s/Deborah Deitsch-Perez*
                                                 Deborah Deitsch-Perez
                                                 State Bar No. 24036072
                                                 Michael P. Aigen
                                                 State Bar No. 24012196
                                                 STINSON LLP
                                                 2200 Ross Avenue, Suite 2900
                                                 Dallas, Texas 75201
                                                 (214) 560-2201 telephone
                                                 (214) 560-2203 facsimile
                                                 Email: deborah.deitschperez@stinson.com
                                                 Email: michael.aigen@stinson.com

                                                 **ATTORNEYS FOR DEFENDANTS HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., AND NEXPOINT ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on November 14, 2022, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all parties registered to receive electronic notices in this case.

                                                 /s/ *Deborah Deitsch-Perez*
                                                 Deborah Deitsch-Perez