Brian D. Glueckstein (admitted *pro hac vice*)
  New York Bar No. 4227005
  gluecksteinb@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Cortney C. Thomas
  Texas Bar No. 24075153
  cort@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile: (214) 327-5001

*Counsel for Mark K. Okada and
Affiliated Parties*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | : | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | : | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | : | |
| Plaintiff, | : | Adv. Pro. No. 21-03076-sgj |
| v. | : | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; | : | |

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

| | |
|---|---|
| NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST–EXEMPT TRUST#2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST–EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD., | : : : : : : : : : : : : : : : : : : : : : : |
| Defendants. | : : : |

-----------------------------------------------------------------------X

## REPLY IN SUPPORT OF THE OKADA PARTIES' MOTION TO DISMISS AMENDED COMPLAINT

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................................1

ARGUMENT .......................................................................................................................................2

I. THE BREACH OF FIDUCIARY DUTY CLAIM AGAINST MR. OKADA
MUST BE DISMISSED. ..............................................................................................................2

    A.    The Litigation Trustee Has Not Adequately Alleged that Mr. Okada Owed
Any Relevant Fiduciary Duties. ............................................................................3

    B.    There Are Insufficient Allegations to Support a Breach of Fiduciary Duty
Claim Against Mr. Okada. ....................................................................................5

    C.    The Amended Complaint Does Not Plead Insolvency. ..........................................7

II. THE LITIGATION TRUSTEE FAILS TO PLEAD A CLAIM FOR AIDING AND
ABETTING OR KNOWING PARTICIPATION IN A BREACH OF FIDUCIARY
DUTY AGAINST MR. OKADA. ................................................................................................9

III. THE TRUSTEE CANNOT SEEK TO AVOID TRANSFERS DATING BACK
TO 2010. ...................................................................................................................................10

IV. THE OKADA PARTIES ARE NOT BARRED FROM ASSERTING LACK OF
SUBJECT MATTER JURISDICTION AS A BASIS FOR DISMISSAL. ..........................13

CONCLUSION ..................................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Acad. of Allergy & Asthma in Primary Care* v. *Quest Diagnostics, Inc.*,
    998 F.3d 190 (5th Cir. 2021) ...................................................................................................9

*Computer Assocs. Int'l, Inc.* v. *Altai, Inc.*,
    918 S.W.2d 453 (Tex. 1996) ....................................................................................................8

*Continental Automotive Sys., Inc.* v. *Avanci, LLC*,
    485 F. Supp. 3d 712 (N.D. Tex. 2020) .....................................................................................6

*Division One Foods, Inc.* v. *Pizza Inn, Inc.*,
    2021 WL 3172176 (N.D. Tex. July 27, 2021) .........................................................................4

*In re Emerging Commc'ns, Inc. Shareholders Litig.*,
    2004 WL 1305745 (Del. Ch. May 3, 2004) .............................................................................3

*Erisman* v. *Zaitsev*,
    2021 WL 6134034 (Del. Ch. Dec. 29, 2021) ...........................................................................6

*In re Fedders N. Am., Inc.*,
    405 B.R. 527 (Bankr. D. Del. 2009) .........................................................................................7

*Freuler* v. *Parker*,
    803 F. Supp. 2d 630 (S.D. Tex. 2011) .....................................................................................3

*In re Gen. Motors (Hughes) Shareholder Litig.*,
    897 A.2d 162 (Del. 2006) .........................................................................................................6

*Greenwood Tr. Co.* v. *Massachusetts*,
    971 F.2d 818 (1st Cir. 1992) ..................................................................................................11

*In re Gulf Fleet Holdings, Inc.*,
    491 B.R. 747 (W.D. La. 2013) .................................................................................................2

*In re Heritage Org., L.L.C.*,
    375 B.R. 230 (Bankr. N.D. Tex. 2007) ....................................................................................8

*In re Houston Drywall, Inc.*,
    2008 WL 2754526 (Bankr. S.D. Tex. July 10, 2008) ............................................................12

*In re I.G. Servs., Ltd.*,
    2008 WL 783551 (Bankr. W.D. Tex. Mar. 19, 2008) ...........................................................13

*IberiaBank Corp.* v. *Ill. Union Ins. Co.*,
    953 F.3d 339 (5th Cir. 2020) ................................................................................................ 4

*In re J&M Sales*,
    2022 WL 532721 (Bankr. D. Del. Feb. 22, 2022) ................................................................ 10

*Lazard Debt Recovery GP, LLC* v. *Weinstock*,
    864 A.2d 955 (Del. Ch. 2004) ................................................................................................ 5

*In re Northstar Offshore Grp., LLC*
    616 B.R. 695, 726 (Bankr. S.D. Tex. 2020) ........................................................................ 12

*Sci. Accessories Corp.* v. *Summagraphics Corp.*,
    425 A.2d 957 (Del. 1980) ...................................................................................................... 4

*Shaw* v. *Villanueva*,
    918 F.3d 414 (5th Cir. 2019) ................................................................................................. 9

*In re Tops Holding II Corp.*,
    2022 WL 6827457 (Bankr. S.D.N.Y. Oct. 12, 2022) .......................................................... 11

*Triton Constr. Co.* v. *E. Shore Elec. Servs., Inc.*,
    2009 WL 1387115 (Del. Ch. May 18, 2009) ..................................................................... 3–4

*United States* v. *Cooper*,
    135 F.3d 960 (5th Cir. 1998) ............................................................................................... 13

*United States.* v. *Fernon*,
    640 F.2d 609 (5th Cir. 1981) ............................................................................................... 11

*Williams* v. *Performance Diesel, Inc.*,
    2002 WL 596414 (Tex. Ct. App. Apr. 18, 2002) ................................................................ 12

*Winslow* v. *Paxton*,
    2017 WL 283281 (N.D. Tex. Jan. 20, 2017) ......................................................................... 2

## STATUTES

11 U.S.C. § 544 .......................................................................................................................... 10

## RULES

Fed. R. Civ. P. 8(a) ....................................................................................................................... 2

## OTHER AUTHORITIES

Restatement (Third) of Agency § 8.01 ......................................................................................... 4

Defendants Mark K. Okada, MPO Trust 1 and Lawrence Tonomura in his Capacity as Trustee, and MPO Trust 2 and Lawrence Tonomura in his Capacity as Trustee (collectively, the "Okada Parties"), respectfully submit this reply in response to *The Litigation Trustee's Response in Opposition to Defendants' Motions to Dismiss and the CLO Holdco Defendants' Motion for a More Definitive Statement* [Dkt. No. 210] (the "Opposition" or "Opp.") and in further support of their *Motion to Dismiss Amended Complaint* [Dkt. No. 185] (the "Motion").[2]

## PRELIMINARY STATEMENT

1. The Opposition's attempts to obfuscate the Amended Complaint's legal and pleading deficiencies as to the Okada Parties fail. The Litigation Trustee tries to gloss over the arguments set forth in the Okada Parties' Memorandum and the dearth of allegations asserted against the Okada Parties by repeatedly and improperly referencing allegations against and arguments of the "Defendants." While the Litigation Trustee may prefer to group the Okada Parties together with Mr. Dondero and entities he controls, they are not permitted to do so.

2. The Okada Parties are independent and separate from Mr. Dondero and the other Defendants. The Amended Complaint does not assert otherwise. Therefore, the Court must unpack the Trustee's "omnibus" response and evaluate the Motion based only on the allegations contained in the Amended Complaint actually asserted against the Okada Parties. That examination reveals that the four counts asserted against any of the Okada Parties are deficient and must be dismissed.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the *Memorandum of Law in Support of the Okada Parties' Motion to Dismiss Amended Complaint* [Dkt. No. 186] (the "Memorandum or "Memo."), as applicable.

3. The Litigation Trustee's theory set forth in the Amended Complaint and highlighted in the Opposition's opening sentence is that **<u>Mr. Dondero</u>** "abused and exploited his domination and control" of HCMLP. Mr. Okada is an afterthought in the Amended Complaint and the Opposition must be considered in that light. The suggestion that Mr. Okada could nonetheless be held to breach a general fiduciary duty under the alleged circumstances is implausible. The Opposition also fails to provide any persuasive response to the myriad legal and pleading deficiencies **<u>as to the Okada Parties</u>** detailed in the Motion and supporting Memorandum.

4. The Opposition does not rebut the Okada Parties' showing that Mr. Okada did not have any relevant fiduciary duties because HCMLP's general partner had the sole authority to make distributions, and that the Amended Complaint does not sufficiently allege an actionable breach of duty or that Mr. Okada had knowledge of HCMLP's alleged insolvency. Similarly, the Litigation Trustee failed to show Mr. Okada knowingly participated in Mr. Dondero's alleged breach of fiduciary duties. Moreover, the Litigation Trustee does not provide any binding authority to rebut that nearly all of his claims are barred by the applicable statutes of limitations. The Court should dismiss the claims against the Okada Parties, with prejudice.

**ARGUMENT**

**I. THE BREACH OF FIDUCIARY DUTY CLAIM AGAINST MR. OKADA MUST BE DISMISSED.**

5. As an initial matter, "[t]he pleading standards [for Rule 8(a)] apply ***separately*** to each claim and each defendant in a plaintiff's complaint." *Winslow* v. *Paxton*, 2017 WL 283281, at *2 (N.D. Tex. Jan. 20, 2017) (emphasis added). This is critical with respect to the breach of fiduciary duty claim against Mr. Okada, which "must be decided on an individual basis." *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 780 (W.D. La. 2013). The Opposition argues that

"Defendants" have "breached fiduciary duties," lumping together Mr. Okada with Messrs. Dondero, Ellington and Leventon. (Opp. ¶ 72.) But the Court must ignore the Litigation Trustee's misleading attempts to group everyone together into a single moniker of "Defendants" and independently evaluate the allegations against Mr. Okada. *See In re Emerging Commc'ns, Inc. Shareholders Litig.*, 2004 WL 1305745, at *38 (Del. Ch. May 3, 2004) ("The liability of the directors must be determined on an individual basis because the nature of their breach of duty (if any), and whether they are exculpated from liability for that breach, can vary for each director."); *see also Freuler* v. *Parker*, 803 F. Supp. 2d 630, 652 (S.D. Tex. 2011) (dismissing breach of fiduciary duty claims against individuals where plaintiff asserted claims "against Individual Defendants collectively and fail[ed] to distinguish their individual roles with respect to all claims"). Once examined, it is clear the claim against Mr. Okada fails.[3]

### A. The Litigation Trustee Has Not Adequately Alleged that Mr. Okada Owed Any Relevant Fiduciary Duties.

6. The Litigation Trustee's argument that as an "agent[] and manager[]" of HCMLP, Mr. Okada owed a fiduciary duty with respect to the challenged equity distributions misses the mark. (Opp. ¶¶ 70, 79.) The LP Agreement expressly provides that the general partner—Strand, not Mr. Okada—had sole responsibility to make equity distributions "as it may determine ***in its sole and unfettered discretion***." (Memo. App'x 20, LPA § 3.9(a) (emphasis added).) According to the very case law that the Litigation Trustee cites (¶ 70), the "hallmark principles of agency law [that] apply to traditional corporate fiduciaries" limit the scope of an agent's fiduciary duty to the scope of his agency. *Triton Constr. Co.* v. *E. Shore Elec. Servs., Inc.*, 2009 WL 1387115,

---

[3] The Litigation Trustee wrongly claims that "Defendants," including Mr. Okada, "do not really dispute that they breached fiduciary duties under traditional principles of Delaware fiduciary duty law." (Opp. ¶ 72.) Not so. Mr. Okada disputes the breach of fiduciary duty claim in its entirety (*see* Memo. ¶¶ 21–37).

at *9 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010); *Sci. Accessories Corp.* v. *Summagraphics Corp.*, 425 A.2d 957, 962 (Del. 1980) (key managerial personnel cannot act antagonistically toward or cause injury to principal "**concerning the subject matter of his agency**") (emphasis added).[4] While the LP Agreement permitted the general partner to delegate this task, the Litigation Trustee has not alleged that this task was ever delegated to Mr. Okada or anyone else. In fact, the Amended Complaint's allegations only reinforce that Mr. Dondero, through Strand, was responsible for the challenged distributions. (*See* Am. Compl. ¶ 137 ("Dondero caused HCMLP to make" the challenged distributions); *id.* ¶ 184 (same).) Because Mr. Okada—as an agent, manager, or limited partner—had no responsibility for or authority over the challenged transfers, he had no fiduciary duty with respect to them. *See* Restatement (Third) of Agency § 8.01 ("An agent has a fiduciary duty to act loyally for the principal's benefit in all matters **connected with the agency relationship**.") (emphasis added).

7. The Litigation Trustee misconstrues Mr. Okada's arguments regarding the LP Agreement in responding to them.[5] Mr. Okada never argued, as the Litigation Trustee claims, that the LP Agreement "eliminat[ed] or modif[ied] the fiduciary duties owed to HCMLP" by Mr. Okada "as agent[] and manager[]." (Opp. ¶ 79.) Rather, Mr. Okada maintains that the LP Agreement eliminates any fiduciary duties Mr. Okada owed **as a limited partner**, which the

---

[4] The Litigation Trustee also relies on cases standing for the general proposition that a general partner owes fiduciary duties to a partnership and limited partners, a point which is irrelevant to Mr. Okada. (*See* Opp. ¶ 70 (citing *Dohmen* v. *Goodman*, 234 A.3d 1161, 1167–68 (Del. 2020); *In re Boston Celtics Ltd. P'ship S'holders Litig.*, 1999 WL 641902, at *4 (Del. Ch. Aug. 6, 1999); *Wallace ex rel. Cencom Cable Income Partners II, Inc.*, *L.P.*, 752 A.2d 1175, 1180–82 (Del. Ch. 1999).)

[5] The Litigation Trustee's assertion (¶ 73) that Mr. Okada's LP Agreement arguments constitute "an affirmative defense that cannot be determined on a motion to dismiss" is wrong. The scope of the LP Agreement's delegation of authority over the challenged transfers is a matter of contractual interpretation that should be decided on a motion to dismiss. *See IberiaBank Corp.* v. *Ill. Union Ins. Co.*, 953 F.3d 339, 348 (5th Cir. 2020); *Division One Foods, Inc.* v. *Pizza Inn, Inc.*, 2021 WL 3172176, at *1 (N.D. Tex. July 27, 2021).

Litigation Trustee appears to concede by focusing on Mr. Okada's duties as an agent and manager of HCMLP. (Memo. ¶ 24; Memo. App'x 27, LPA § 4.2.) The LP Agreement (1) expressly provides that Strand, as general partner, had sole authority to declare equity distributions, and (2) in section 4.1(k), provides that the duties of officers extend only to the *tasks* delegated to them by the general partner. (Memo. ¶ 24; Memo. App'x 20, 26–27, LPA §§ 3.9, 4.1(k).) Because authority with respect to distributions was reserved for the general partner, Mr. Okada had no authority—and thus no duty—related to these distributions. *See Lazard Debt Recovery GP, LLC* v. *Weinstock*, 864 A.2d 955, 966 (Del. Ch. 2004) (dismissing claim for breach of fiduciary duty where complained-of conduct "d[id] not fall within the scope of [defendants'] fiduciary duties as agents for the Fund's investors").

**B.  There Are Insufficient Allegations to Support a Breach of Fiduciary Duty Claim Against Mr. Okada.**

8.  Even if the Litigation Trustee had successfully alleged that Mr. Okada owed any duties with respect to the distributions, the Amended Complaint does not sufficiently allege that Mr. Okada breached such duties. Paragraph 81 of the Opposition identifies three portions of the Amended Complaint on which the breach of fiduciary duty claim against Mr. Okada is premised—none of which adequately supports such a claim.

9.  First, the Opposition cites to paragraphs 139–57 of the Amended Complaint to support the assertion that Mr. Okada breached his fiduciary duty by "accepting approximately $18 million in fraudulent transfers from HCMLP at times when he knew or willfully blinded himself to the fact that HCMLP was insolvent." (Opp. ¶ 81.) But these paragraphs merely allege the dates and the amounts of the distributions at issue and do not support that proposition, and the conclusory statement that the distributions "were made at a time when HCMLP was insolvent and as part of a scheme to transfer HCMLP's value to Dondero and Okada" cannot be credited.

*See In re Gen. Motors (Hughes) Shareholder Litig.*, 897 A.2d 162, 168 (Del. 2006) ("A trial court is not . . . required to accept as true conclusory allegations 'without specific supporting factual allegations.'" (citation omitted)); *Erisman* v. *Zaitsev*, 2021 WL 6134034, at *18 (Del. Ch. Dec. 29, 2021) (dismissing breach of fiduciary duty claims where the complaint was "devoid of factual allegations to support Plaintiffs' conclusory premise"). Second, the Opposition cites to paragraphs 274–84 of the Amended Complaint, of which only paragraphs 280–82 include any allegations against Mr. Okada. Those three paragraphs offer mere conclusory statements that Mr. Okada "knew or willfully blinded himself" about HCMLP's insolvency without any alleged facts or details to support that conclusion that likewise cannot be credited.

10. The Opposition goes on to assert in Paragraph 87 that Mr. Okada and other Defendants took "affirmative action that necessarily harmed HCMLP" and thus violated their fiduciary obligations. (Opp. ¶ 87.) Again, the Litigation Trustee cites to *nothing* actually contained in the Amended Complaint where *any* affirmative action by Mr. Okada was taken. There are no such allegations (because there were no such actions). The Litigation Trustee's attempts to fashion new allegations in the Opposition are irrelevant and cannot be considered. *See Continental Automotive Sys., Inc.* v. *Avanci, LLC*, 485 F. Supp. 3d 712, 725 (N.D. Tex. 2020) (vacated on other grounds) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011)) ("[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."). Moreover, the Amended Complaint contains no substantive allegations that Mr. Okada had knowledge of HCMLP's alleged insolvency, or that he had information sufficient to accurately determine HCMLP's solvency in real time which, according to the Litigation Trustee's own assertions, changed over brief periods of time.

11. The Litigation Trustee is left asking the Court to conclude that Mr. Okada breached his fiduciary duty in his capacity as Chief Investment Officer by not refusing receipt of duly declared equity distributions on account of his limited partnership interests. The Litigation Trustee cannot cite any authority for such a tortured theory. In fact, the law is clear that receiving compensation from a company while insolvent does not, without more, state a claim for breach of fiduciary duty. *See, e.g.*, *In re Fedders N. Am., Inc.*, 405 B.R. 527, 541 (Bankr. D. Del. 2009) ("[T]he fact that the officers and directors continued to be employed and compensated during [an insolvency] period, standing alone, is not sufficient to support a claim for breach of fiduciary duty.").

12. Third, the Opposition also argues that "Okada breached his fiduciary duties by . . . using HCMLP employees for his own personal affairs and private business interests without providing any consideration in return." (Opp. ¶ 81.) This is likewise not supported by the actual allegations in the Amended Complaint to which the Litigation Trustee cites. The Opposition relies on paragraph 119 of the Amended Complaint to support this assertion, which alleges only that one HCMLP employee did personal financial work for Mr. Okada "at Dondero's direction." There are no other allegations implicating Mr. Okada, and no allegations suggesting that Mr. Okada had access to or knowledge of that employee's HCMLP contract or permissible scope of work. The Litigation Trustee cites no case law or other basis in the Amended Complaint giving rise to a breach of fiduciary duty claim on those alleged facts, and the claim must be dismissed.

C.   **The Amended Complaint Does Not Plead Insolvency.**

13. The Litigation Trustee attempts to rebut Mr. Okada's arguments that the Amended Complaint failed to adequately plead HCMLP's insolvency by arguing the cases cited in the Memorandum are "inapposite" because the complaints at issue in those cases included only "conclusory allegations." (Opp. ¶ 91.) But that is precisely what the Amended Complaint

offers here. Though the Litigation Trustee references "detailed and objective allegations," the Opposition cites only to two barebones charts about the company's financial condition. (*Id.*) That the Litigation Trustee is arguing HCMLP went from insolvent to solvent and then back to insolvent over the course of a few years further demonstrates that the Litigation Trustee's allegations fall far short of stating a claim.

14. The Litigation Trustee further argues that "Okada's assertion that the Complaint improperly includes 'hindsight-looking settlement liabilities information' in its insolvency allegations is misplaced" because "[i]t is well settled that a solvency analysis should include liability associated with pending lawsuits." (Opp. ¶ 92.) This argument is misleading. Litigation liabilities may be properly included in solvency analyses, but it was improper for the Trustee to include admittedly ***hindsight-based*** settlement amounts in valuing those liabilities. Rather, valuations, including litigation liabilities, must be based on what was known or knowable at the time of the transfer—not years later once the risk of liability materialized. *See In re Heritage Org., L.L.C.*, 375 B.R. 230, 284 (Bankr. N.D. Tex. 2007) ("[T]he court values contingent assets and liabilities based on information known or knowable as of the date of the challenged transfer, without the benefit of hindsight.").

15. Finally, the Litigation Trustee does not dispute that pursuing breach of fiduciary duty claims against Mr. Okada relating to equity distributions made between 2010 and 2013 involves events beyond the statute of limitations. Rather, the Litigation Trustee seeks to invoke Texas's discovery rule. (Opp. ¶¶ 126–27.) But the Litigation Trustee fails to offer any allegations to demonstrate that the alleged injury was "inherently undiscoverable," as he must even at the motion to dismiss stage. *Computer Assocs. Int'l, Inc.* v. *Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). "The discovery rule is a limited exception to statutes of limitation and will

only be applied 'when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable.'" *Acad. of Allergy & Asthma in Primary Care* v. *Quest Diagnostics, Inc.*, 998 F.3d 190, 200 (5th Cir. 2021) (citation omitted). Here, HCMLP was plainly aware the transfers at issue were made. The discovery rule does not apply "'simply because a claimant does not know "the *specific cause* of the injury," "the party responsible for it," "the full extent of it," or "the chances of avoiding it."'" *Id.* at 199–200 (emphasis added; citation omitted). Rhetorically reciting that "the breaches alleged herein were inherently undiscoverable" (Am. Compl. ¶ 276) is of no moment. *See Shaw* v. *Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)).

## II. THE LITIGATION TRUSTEE FAILS TO PLEAD A CLAIM FOR AIDING AND ABETTING OR KNOWING PARTICIPATION IN A BREACH OF FIDUCIARY DUTY AGAINST MR. OKADA.

16. The Litigation Trustee's claim against Mr. Okada for aiding and abetting a breach of fiduciary duty, or knowing participation in a breach of fiduciary duty, fails because the Amended Complaint includes no allegations at all regarding the key element: *knowing participation*. (*See* Memo. ¶¶ 38–39.) The Opposition states that "Okada was aware of HCMLP's liquidity and of Dondero's misconduct in using that liquidity for his own purposes (as well as Okada's), and HCMLP's deteriorating financial condition was no secret." (Opp. ¶ 102.) But this is not sufficient to plead the critical element of knowing participation. Even if it were sufficient, as discussed above, there is not a single specific allegation in the Amended Complaint that supports Mr. Okada's knowledge of the relevant alleged facts.

17. The Litigation Trustee's allegations regarding Mr. Okada's purported use of HCMLP employees—not included as a basis for this claim in the Amended Complaint—fare no better. As an initial matter, and as discussed above, the Litigation Trustee has failed to plead this

-9-

constitutes a breach of fiduciary duty. In any event, the Amended Complaint alleges that any use of HCMLP employees for personal use was "[a]t Dondero's direction." (Am. Compl. ¶ 119.) In other words, the Litigation Trustee has asserted that Mr. Dondero directed and used HCMLP employees for his own personal use. While the Amended Complaint includes one conclusory statement that Mr. Okada also received assistance in personal matters from an HCMLP employee at Mr. Dondero's direction, this has nothing to do with whether *Mr. Okada* participated in *Mr. Dondero's* purported breach. This claim fails and must be dismissed.

### III. THE TRUSTEE CANNOT SEEK TO AVOID TRANSFERS DATING BACK TO 2010.

18. The Fifth Circuit has not opined on whether a litigation trustee can utilize section 544 of the Bankruptcy Code to benefit from the IRS's longer (or lack of) limitations period, as evidenced by the Opposition's reliance on out-of-circuit cases (Opp. ¶¶ 162–65; *Notice of Supplemental Authority* [Dkt. No. 219]), and there is no law binding on this Court.[6] The Litigation Trustee's proffered approach—exempting from state statutes of limitations any litigation trustee in any bankruptcy case in which the IRS was a creditor—would enact sweeping change in the law, upset the statute of limitations framework, and bestow upon litigation trustees sovereign powers otherwise reserved for the United States government, all without any indication that Congress intended to do so. This power grab should be rejected. *See In re J&M Sales*, 2022 WL 532721, at *3 n.7 (Bankr. D. Del. Feb. 22, 2022) (noting "[u]nder the Trustee's theory, therefore, every business bankruptcy case would automatically have a ten-year lookback period for fraudulent transfers under Section 544(b). That cannot be what Congress intended when enacting Section 544(b).").

---

[6] As explained in the Memorandum, Counts I and II should further be dismissed in their entirety because the Litigation Trustee has failed to adequately plead insolvency. (*See* Memo. ¶ 40; *supra* ¶¶ 13–14.)

19. It is well-settled that the "authority to displace a sovereign state's law is an 'extraordinary power'" courts "must assume Congress did not exercise lightly." *Greenwood Tr. Co.* v. *Massachusetts*, 971 F.2d 818, 823 (1st Cir. 1992) (citing *Gregory* v. *Ashcroft*, 501 U.S. 452, 460 (1991)). Yet the Litigation Trustee attempts to do just that by reading into section 544 the authority to invoke Texas's fraudulent transfer laws while displacing Texas's applicable statute of repose. Congress could have authorized the Litigation Trustee to displace state law, but nothing in section 544(b) indicates that Congress intended to do so. Rather, that statute is plainly designed to *incorporate* state law rather than usurp it. Simply, if Congress had intended a ten-year federal lookback period in nearly all bankruptcies (given the prevalence of IRS claims), it would have written a longer lookback period into section 548 in establishing a federal cause of action for fraudulent transfer and setting a lookback period.

20. Even if the Court disagrees, however, the Litigation Trustee still cannot reach transfers going back to 2010. The Litigation Trustee concedes that the IRS did not become a creditor of the Debtor until June 30, 2015, and *no* tax was assessed against HCMLP until November 12, 2018. (Opp. ¶ 159 n.43.) As set forth in the Memorandum, section 6502 by its plain terms is *forward looking from the date of assessment*, and thus the IRS was not eligible here to expand the period to avoid transfers beyond that provided for by TUFTA under Texas law. (Memo. ¶ 50.)[7] The Litigation Trustee could only attempt to apply section 6502 to all of the transfers at issue if the IRS had in fact assessed taxes against HCMLP dating back to April 9, 2010, the date of the earliest distribution put at issue. It is undisputed that the IRS did not do so.

---

[7] The Litigation Trustee's citations to *United States.* v. *Fernon*, 640 F.2d 609 (5th Cir. 1981) (Opp. ¶ 168) and *In re Tops Holding II Corp.*, 2022 WL 6827457 (Bankr. S.D.N.Y. Oct. 12, 2022) are unpersuasive. In both cases, the IRS was already a creditor (or alleged to have been a creditor) as of the earliest transfer date—a critical difference from the facts here.

21. The Litigation Trustee tries to avoid this outcome by arguing that the only temporal limitation on his ability to recover transfers is that under state law the IRS's claim needed to have arisen "within a reasonable time after" the relevant transfer was made (Opp. ¶ 168), and cites to a single unpublished opinion that posits, in a footnote, that "a reasonable time is within four years." (Opp. ¶ 170 (citing *In re Houston Drywall, Inc.*, 2008 WL 2754526 (Bankr. S.D. Tex. July 10, 2008)).) Even if this musing is credited for purposes of the Okada Parties' Motion—which it should not be—the Litigation Trustee certainly has provided no legal basis to recover transfers predating this supposed cut-off for reasonableness four years prior to the IRS becoming a creditor, *i.e.*, June 30, 2011. Under all circumstances, claims seeking to recover transfers before that date must be dismissed.

22. The dicta from *Houston Drywall* should in any event not be adopted by this Court. For its supposition, the *Houston Drywall* court cites to *Williams* v. *Performance Diesel, Inc.*, 2002 WL 596414 (Tex. Ct. App. Apr. 18, 2002). That case, in turn, states only that "[t]he Commissioner does not argue that claims arising in 1998 or 1999 would be within a reasonable time of transfers occurring in 1993. However, even if she did, such argument would not have merit. . . . A claim that does not even arise until after the running of the statute of repose most certainly does not arise within a reasonable time." *Williams*, 2002 WL 596414 at *4. Far from suggesting that four years is a reasonable time, this case stands only for the proposition that seeking to avoid a transfer that occurred five years prior to becoming a creditor—which the Litigation Trustee seeks to do here—is "without merit."[8]

---

[8] The other case cited by the Litigation Trustee—*In re Northstar Offshore Grp., LLC*—also implicitly rejects the Litigation Trustee's argument, referring to *Houston Drywall* as "not controlling," and noting that, in that case, the claim at issue arose less than one year after the transfer took place. 616 B.R. 695, 726 (Bankr. S.D. Tex. 2020).

-12-

23. As a result, transfers predating the four-year lookback period provided by TUFTA—October 16, 2015—should be dismissed. But at the absolute minimum, there is no legal theory whatsoever for the Litigation Trustee to maintain causes of action seeking to avoid transfers taking place prior to June 30, 2011, and those claims must be dismissed.

### IV. THE OKADA PARTIES ARE NOT BARRED FROM ASSERTING LACK OF SUBJECT MATTER JURISDICTION AS A BASIS FOR DISMISSAL.

24. The Litigation Trustee's dismissal of the Okada Parties' arguments regarding subject matter jurisdiction because "this Court has already held [that] the Court may exercise subject matter jurisdiction over the [Litigation] Trustee's claims" (Opp. ¶ 54) rings hollow. Though this Court has issued a Report & Recommendation on the Okada Parties' motion to withdraw the reference, the motion is still pending before the district court—the only court with jurisdiction to rule on this issue. It was thus proper for the Okada Parties to assert this basis to dismiss the Amended Complaint. *See United States* v. *Cooper*, 135 F.3d 960, 962–63 (5th Cir. 1998) (noting that "the recommendation of a magistrate judge is not a final decision and does not in any way 'dispose of' a party's claims"). The Litigation Trustee's argument that Defendants "did not seek reconsideration of the Court's ruling" (Opp. ¶ 56) is likewise meaningless, because there is no such process available at this juncture. *See In re I.G. Servs., Ltd.*, 2008 WL 783551, at *1 n.5 (Bankr. W.D. Tex. Mar. 19, 2008) ("there appears to be no procedural device for reconsideration of *proposed* findings of fact and conclusions of law") (emphasis in original).

### CONCLUSION

25. The Okada Parties respectfully request that the Court dismiss Counts I, II, XIV, and XXXV of the Amended Complaint as against the Okada Parties, with prejudice.

Dated: November 14, 2022
      New York, New York

          /s/ Brian D. Glueckstein
Brian D. Glueckstein (admitted *pro hac vice*)
  New York Bar No. 4227005
  gluecksteinb@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Cortney C. Thomas
  Texas Bar No. 24075153
  cort@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone:  (214) 327-5000
Facsimile:  (214) 327-5001

*Counsel for Defendants Mark K. Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #1 and Lawrence Tonomura as Trustee, and The Mark and Pamela Okada Family Trust – Exempt Trust #2 and Lawrence Tonomura as Trustee*