Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau (*Admitted pro hac vice*)
Blaire Cahn (*Admitted pro hac vice*)
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
debra.dandeneau@bakermckenzie.com
blaire.cahn@bakermckenzie.com

*Counsel for Isaac Leventon*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,<br><br>Defendants. | Adv. Pro. No. 21-03076-sgj<br><br><br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT LEVENTON'S MOTION TO DISMISS THE AMENDED COMPLAINT** |

# TABLE OF CONTENTS

ARGUMENT AND AUTHORITIES ............................................................................................... 1

I.      Failure to Preserve Claims in the Plan and Reliance on an Eleventh-Hour
        Assignment Agreement Cannot Create Standing to Bring Claims Against
        Leventon. ................................................................................................................... 1

        A.      Kirschner Fails to Meaningfully Address and Thereby Concedes that the
                Plan Did Not Clearly Preserve *Any* Specific State Law Claims Against
                Leventon. ...................................................................................................... 1

        B.      Kirschner Cannot Manufacture Standing for Non-Estate Claims Through
                a Post-Confirmation Modification of the Plan. ................................................ 2

        C.      Kirschner Cannot Refute that the Plan Reserved Fiduciary Duty Claims
                (Including Counts V, XVI, and XXXIV) for the Reorganized Debtor. .......... 5

II.     All Claims Against Leventon Must Be Dismissed for Lack of Subject Matter
        Jurisdiction (Counts V, XVI, XXVII, and XXXIV). .................................................. 6

III.    Kirschner Dodges Arguments as to Why the Amended Complaint Fails to State
        a Claim Upon Which Relief Can Be Granted as to Leventon. ..................................... 6

        A.      Settled Texas Law Undoes Kirschner's Purported Count V for Alleged
                Breach of Fiduciary Duty Owed by Leventon as an Attorney. ...................... 6

        B.      Kirschner Fails to State a Claim for Civil Conspiracy to Breach Fiduciary
                Duties (Count XVI). .................................................................................... 13

        C.      Kirschner Fails to Even Address Leventon on the Claim for Unjust
                Enrichment or Money Had and Received (Count XXVII)............................ 13

        D.      Kirschner's Generalized Allegations of Aiding and Abetting or Knowing
                Participation in a Breach of Fiduciary Duty (Count XXXIV) Are
                Insufficient................................................................................................... 14

CONCLUSION AND REQUESTED RELIEF ........................................................................ 14

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Archer v. Med. Protective Co. of Fort Wayne, Indiana*,
No. 2:03-CV-314-C, 2004 WL 1194455 (N.D. Tex. May 28, 2004) .....................................10

*In re Artho*,
587 B.R. 866 (Bankr. N.D. Tex. 2018) ..................................................................................13

*Beck v. Law Offices of Edwin J. (Ted) Terry, Jr.*,
P.C., 284 S.W.3d 416 (Tex. App.—Austin 2009, no pet.) ......................................................10

*Border Demolition & Envtl., Inc. v. Pineda*,
535 S.W.3d 140 (Tex. App.—El Paso 2017, no pet.)...............................................................9

*In re Bos. Celtics Ltd. P'ship S'holders Litig.*,
C.A. No. 16511, 1999 WL 641902 (Del. Ch. Aug. 6, 1999)....................................................7

*Brenner v. Centurion Logistics LLC ex rel. Centurion Pecos Terminal LLC*,
No. 05-20-00308-CV, 2020 WL 7332847 (Tex. App.—Dallas Dec. 14, 2020,
no pet.) .....................................................................................................................................12

*In re C-Power Prods., Inc.*,
230 B.R. 800 (Bankr. N.D. Tex. 1998)....................................................................................4

*City of Garland v. Booth*,
971 S.W.2d 631 (Tex. App.—Dallas 1998, pet. denied)...........................................................4

*De Montaigu v. Ginther (In re Ginther Trs.)*,
Nos. 98-32663-11, 06-3556, 2006 Bankr. LEXIS 3676 (Bankr. S.D. Tex.
2006) ......................................................................................................................................3, 4

*Dohmen v. Goodman*,
234 A.3d 1161 (Del. 2020) ......................................................................................................7

*Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*,
540 F.3d 351 (5th Cir. 2008) ...................................................................................................2

*Ebert v. DeJoria (In re Latitude Sols., Inc.)*,
922 F.3d 690, 695-97 (5th Cir. 2019) ...................................................................................12

*Edwards v. Dunlop-Gates*,
344 S.W.3d 424 (Tex. App.—El Paso 2011, pet. denied).......................................................13

*Elias v. Pilo*,
  781 F. App'x 336 (5th Cir. 2019) ........................................................................14

*Fink v. Anderson*,
  477 S.W.3d 460 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ...........................13

*First United Pentecostal Church of Beaumont v. Parker*,
  514 S.W.3d 214 (Tex. 2017) .................................................................................12

*Focus Fin. P'rs, LLC v. Holsopple*,
  241 A.3d 784 (Del. Ch. 2020) .................................................................................7

*Gregory v. Porter & Hedges, LLP*,
  398 S.W.3d 881 (Tex. App.—Houston [14th Dist.] 2013) .....................................12

*InLiner Ams., Inc. v. MaComb Funding Grp., L.L.C.*,
  348 S.W.3d 1 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) .......................4

*In re J.E. Marion, Inc.*,
  199 B.R. 635 (Bankr. S.D. Tex. 1996) ....................................................................5

*Jacobs v. Meghji, C.A.*
  No. 2019-1022-MTZ, 2020 Del. Ch. LEXIS 310, slip op. (Del. Ch. Oct. 8,
  2020) ......................................................................................................................14

*Lazard Debt Recovery GP, LLC v. Weinstock*,
  864 A.2d 955 (Del. Ch. 2004) ..............................................................................7, 8

*Milligan v. Salamone*,
  No. 1:18-CV-327-RP, 2019 U.S. Dist. LEXIS 41009 (W.D. Tex. Mar. 14,
  2019) ........................................................................................................................7

*Mitchell Lane Publrs., Inc. v. Rasemas*,
  No. 9144-VCN, 2014 Del. Ch. LEXIS 194 (Del. Ch. Sept. 30, 2014) ....................7

*Murphy v. Gruber*,
  241 S.W.3d 689 (Tex. App.—Dallas 2007, pet. denied) ......................................10

*Official Stanford Investors Comm. v. Greenberg Traurig, LLP*,
  No. 3:12-CV-4641-N, 2014 WL 12572881 (N.D. Tex. Dec. 17, 2014)
  (Godbey, J.) .............................................................................................................9

*Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*,
  C.A. No. 5502-CS, 2011 Del. Ch. LEXIS 116 (Del. Ch. Aug. 8, 2011) .................8

*Parker v. JPMorgan Chase Bank, N.A.*,
  No. A-14-CV-706 LY, 2014 U.S. Dist. LEXIS 191093 (W.D. Tex. Oct. 28,
  2014) ......................................................................................................................14

*PPG Indus., Inc. v. JMB/Houston Ctrs. Ltd. P'ship*,
    146 S.W.3d 79 (Tex. 2004)......................................................................................4

*Reneker v. Offill*,
    No. 3:08-CV-1394-D, 2009 WL 3365616 (N.D. Tex. Oct. 20, 2009) ...................................11

*Reneker v. Offill*,
    No. 3:08-CV-1394-D, 2009 WL 804134 (N.D. Tex. Mar. 26, 2009)..............................10, 12

*Rogers v. Zanetti*,
    517 S.W.3d 123 (Tex. App.—Dallas 2015), *aff'd*, 518 S.W.3d 394(Tex. 2017)...................11

*Sam Kholi Enterp., Inc. v. Thompson*,
    No. W–08–CA–105, 2012 WL 12950278 (W.D. Tex. Jan. 25, 2012) ....................................5

*Sci. Accessories Corp. v. Summagraphics Corp.*,
    425 A.2d 957 (Del. 1980) .......................................................................................7

*Taylor v. Scheef & Stone, LLP*,
    No. 3:19-CV-2602-D, 2020 WL 4432848 (N.D. Tex. July 31, 2020)...................................11

*Tener v. Short Carter Morris, LLP*,
    No. 01-12-00676-CV, 2014 WL 4259885 (Tex. App.—Houston [1st Dist.]
    Aug. 28, 2014, no pet.) .........................................................................................10

*Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*,
    C.A. No. 383, 2009 WL 1387115 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d
    938 (Del. 2010) ..............................................................................................7, 9

*United States Brass Corp. v Travelers Ins. Group, Inc. (In re United States Brass
    Corp.)*,
    301 F.3d 296 (5th Cir. 2002) ..................................................................................3

*In re USACafes, L.P. Litig.*,
    600 A.2d 43 (Del. Ch. 1991)...................................................................................7

*Vinson & Elkins v. Moran*,
    946 S.W.2d 381 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.) ......................4

*West Fork Advisors, LLC v. Sungard Consulting Servs., Inc.*,
    437 S.W.3d 917 (Tex. App.—Dallas 2014, pet. denied).........................................................13

*Won Pak v. Harris*,
    313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied).........................................................9

*Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*,
    714 F.3d 860 (5th Cir. 2013) ...........................................................................1, 2, 7

*Yaquinto v. Segerstrom (In re Segerstrom)*,
    247 F.3d 218 (5th Cir. 2001) ................................................................................................12

**Statutes**

11 U.S.C. § 108(a) .................................................................................................................3

11 U.S.C. § 363 .....................................................................................................................5

11 U.S.C. § 1127(b) ..............................................................................................................4

28 U.S.C. § 455 ...................................................................................................................11

Tex. Bus. Orgs. Code §§ 1.102, 1.105 ................................................................................7

Defendant Isaac Leventon hereby files his reply to Kirschner's opposition [Adv. Dkt. 210]

(the "**Opposition**") to the *Motion to Dismiss the Amended Complaint* [Adv. Dkt. 172].[1]

## ARGUMENT AND AUTHORITIES

### I. Failure to Preserve Claims in the Plan and Reliance on an Eleventh-Hour Assignment Agreement Cannot Create Standing to Bring Claims Against Leventon.

#### A. Kirschner Fails to Meaningfully Address and Thereby Concedes that the Plan Did Not Clearly Preserve *Any* Specific State Law Claims Against Leventon.

1.      Kirschner agrees that a plan must use "specific and unequivocal" language to identify claims that the debtor intends to bring post-confirmation and that the plan must put creditors on notice of any claim the debtor wishes to pursue after confirmation. Opp. ¶ 59; *Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*, 714 F.3d 860, 864 (5th Cir. 2013). Yet, Kirschner never explains how the Plan's Schedule specifically and unequivocally notified creditors that the Debtor wished to pursue claims against Leventon as a non-officer, non-insider, non-manager, former employee, when it is merely a generic and "without limitation" laundry list of claims against any of the *17 single-spaced pages of potential defendants*. [Dkt. 1875-3]. This lengthy list *does not even specifically name Leventon*, who is only tangentially included via the generic category of "any current or former employee." Tellingly, Kirschner's only argument is that a "broad preservation" against virtually any defendant is somehow justified by the "scope and scale of misconduct by *Dondero*" (Opp. ¶ 60 (emphasis added))—a tacit concession that the Schedule aimed to effect a blanket reservation rather than notice of specific claims. Certainly, as applied to an unnamed former employee like **Leventon**, the Schedule provides no more effective notice than the "any and all claims" language that the Fifth Circuit has held "utterly fails to retain,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Brief in Support of Defendant Leventon's Motion to Dismiss the Amended Complaint* (the "**Leventon Br.**") [Adv. Dkt. 173], tor in the Amended Complaint [Adv. Dkt. 158]. Docket number identifications refer to Case No. 19-34054-sgj11.

with any specificity, these types of [state law] claims." *In re SI Restructuring Inc.*, 714 F.3d at 865.

2.    Kirschner also cannot shoehorn Count XVI for Civil Conspiracy and Count XXXIV for Aiding and Abetting or Knowing Participation in Breach of Fiduciary Duty into the Schedule's reference to "breach of fiduciary duties" simply because the Schedule precedes its laundry list with "based on" and ends it with "any claims similar in nature to the foregoing claims." Opp. ¶ 61; [Dkt. 1875-3]. This is precisely the type of language that the Fifth Circuit rejected in *SI Restructuring*, where a Plan reference to specific Bankruptcy Code sections and "similar provisions of state law" was too general to preserve admittedly similar state law claims. *In re SI Restructuring Inc.*, 714 F.3d at 865. Under settled Fifth Circuit law, generic terms such as "based on" and "similar to" otherwise specified claims in the Schedule's laundry list are insufficient to preserve post-confirmation claims. *See Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 356 (5th Cir. 2008) (holding that if plaintiff wanted to pursue a post-confirmation claim "it was required to state as much clearly in the Plan").

### B.    Kirschner Cannot Manufacture Standing for Non-Estate Claims Through a Post-Confirmation Modification of the Plan.

3.    Kirschner recognizes (as he must) that Leventon was never an insider (nor an officer or manager) of the Debtor and that, accordingly, none of the claims against Leventon are Estate Claims. Opp. ¶¶ 64 n.8, 66; Leventon Br. ¶¶ 13-17. With no standing to sue Leventon, Kirschner executed an extremely broad Assignment Agreement *after* the Effective Date, *after* substantial consummation of the Plan, and *just a week before Kirschner filed his complaint*. The eleventh-hour Assignment Agreement purported to transfer to the Litigation Sub-Trust "any and all causes of action not previously assigned by operation of the Plan." Opp. ¶ 66. Kirschner tries to downplay the significance of the Assignment Agreement by stating that it merely served to avoid "any confusion" that "all of the claims asserted in the Complaint belong to the Litigation

Sub-Trust." Opp. ¶ 66. The Debtor has never claimed that the Plan confirmed by this Court was confusing. Rather, the Plan clearly instructs that the role of the Litigation Sub-Trust is to pursue *Estate* Claims only. The purpose of the Assignment Agreement is not even thinly-veiled—Kirschner recognized a week before he filed the Complaint that he did not have standing to bring claims against Leventon, and, as such, he sought *impermissibly* to modify the Plan.[2]

4.      Kirschner agrees that, after substantial consummation of a plan, any alteration of parties' "rights, obligations, and expectations" under the plan that is not "specifically contemplated and negotiated by the parties at confirmation" constitutes an impermissible plan modification. *See* Opp. ¶ 67; *accord* Leventon Br. ¶¶ 20-21. And Kirschner agrees that changing the party with standing to pursue post-confirmation claims would constitute a plan modification. *See De Montaigu v. Ginther (In re Ginther Trs.)*, Nos. 98-32663-11, 06-3556, 2006 Bankr. LEXIS 3676, at *35 (Bankr. S.D. Tex. 2006). But that is exactly what the Assignment Agreement does. The Claimant Trust's transfer of non-Estate Claims fundamentally alters the Plan's allocation of standing and is a change to the Plan that was not "specifically contemplated and negotiated" at confirmation. *United States Brass Corp. v Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 308 (5th Cir. 2002). The impermissible modification of the Plan cannot serve to manufacture standing where none exists under the plain terms of the Plan.[3]

---

[2] *See* Leventon Br. ¶¶ 13-17; Leventon Br. App'x 39, Plan § IV.B ("Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate claims."); App'x 82-83, Claimant Trust Agreement § 2.3 (retaining all rights to pursue causes of action "other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement. . ."); App'x 117, Litigation Sub-Trust Agreement § 2.2 ("The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights … held by the Debtor with respect to any Estate Claim.").

[3] If the Court were to conclude that the Assignment Agreement did not impermissibly modify the Plan because the Claimant Trustee had the authority to transfer claims to any entity, then the Litigation Sub-Trust cannot be treated as a party standing in the shoes of HCMLP for the purposes of section 108(a) of the Bankruptcy Code, and Leventon reserves all arguments with respect to the effect of such transfer on any tolling of statutes of limitation.

5.      Tacitly conceding that the Assignment Agreement modified the Plan, Kirschner invites the Court to make new law by finding that a Plan can be modified if it has "no practical impact for any of HCMLP's creditors." Opp. ¶ 68. Ignoring corporate formalities, the plain language of section 1127(b), and well-settled bankruptcy law to impose a "practical impact" test runs directly contrary to the law, and the invitation to make new law should be flatly rejected. *See, e.g.*, *In re Ginther Trs.*, 2006 Bankr. LEXIS 3676, at *34-36 ("[T]here can be no doubt that allowing [the plan proponent] to sue … over claims that belong to the Trustee would modify … the Trust;" "nor can [the plan proponent] argue that allowing him to sue … on claims belonging to the Trust is not a modification because such a change is immaterial.").

6.      The Assignment Agreement is a Plan modification. But even if it were not, Texas law prohibits any assignment, sale, or turnover of malpractice and other professional claims against lawyers, which are the claims against Leventon that the Assignment Agreement attempted to transfer. *PPG Indus., Inc. v. JMB/Houston Ctrs. Ltd. P'ship,* 146 S.W.3d 79, 87 n. 31 (Tex. 2004); *InLiner Ams., Inc. v. MaComb Funding Grp., L.L.C.*, 348 S.W.3d 1, 6 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (denying assignment of a malpractice claim by a judgment debtor to the judgment creditor); *City of Garland v. Booth*, 971 S.W.2d 631, 634-35 (Tex. App.—Dallas 1998, pet. denied) (assignment is particularly disfavored for an insolvent client); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 396 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.) (prohibition applies to intentional tort claims as well as malpractice claims against counsel).

7.      The only recognized exception to this rule is the valid assignment of a professional liability claim under a bankruptcy plan, rather than by any other mechanism, such as the Assignment Agreement. *In re C-Power Prods., Inc.*, 230 B.R. 800, 803-04 (Bankr. N.D. Tex. 1998) ("The client is the debtor, not the bankruptcy estate… As the plan did not transfer the claim

4

by operation of law to a representative of the bankruptcy estate other than the debtor, only [the

Debtor] may prosecute the claim"); *see also Sam Kholi Enterp., Inc. v. Thompson*, No. W–08–

CA–105, 2012 WL 12950278, at *1 (W.D. Tex. Jan. 25, 2012) (turnover of legal malpractice claim

by a judgment debtor to a judgment creditor under Fed. R. Civ. P. 69 is not permitted); *In re J.E.

Marion, Inc.*, 199 B.R. 635, 639 (Bankr. S.D. Tex. 1996) ("Consequently, the legal malpractice

claims against Former Counsel for Debtor, while nevertheless property of the bankruptcy estate,

are non-assignable pursuant to 11 U.S.C. § 363."). Accordingly, either the Assignment Agreement

is an invalid plan modification or a violation of Texas anti-assignment law. Either way, Kirschner

lacks standing under the Assignment Agreement to pursue claims against Leventon.

### C. Kirschner Cannot Refute that the Plan Reserved Fiduciary Duty Claims (Including Counts V, XVI, and XXXIV) for the Reorganized Debtor.

8.      The Plan reserved to and retained for the Reorganized Debtor "those Causes of

Action (including, without limitation, ***claims for breach of fiduciary duty***), that, for any reason,

are not capable of being transferred to the Claimant Trust." Leventon Br. App'x 27, Plan § I.A,

Definition of "Reorganized Debtor Assets" (emphasis added). Remarkably, Kirschner maintains

that this express and clear carve-out is not what it says but is actually intended to mean that the

Reorganized Debtor retained some other kind of unidentified breach of fiduciary duty claims than

those asserted in the Amended Complaint—*e.g.*, "the Reorganized Debtor retained breach of

fiduciary duty claims … ***unlike those asserted here***." Opp. ¶ 4. This circular and incomprehensible

argument fails to identify what breach of fiduciary duty claims "unlike those asserted here" were

retained by the Debtor through the clear and unmistakable retention of "claims for breach of

fiduciary duty" in the Plan. If the plain reservation of claims through the words "claims for breach

of fiduciary duty" were intended to mean some unidentified type of breach of fiduciary duty claim

other than the general and customary claim of breach of fiduciary duty asserted by Kirschner in

the Amended Complaint, then the Plan would have and should have said as much. Kirschner may

wish to modify the Plan (again) by qualifying Plan language to exclude breach of fiduciary duty

claims from Reorganized Debtor Assets "only to the extent" that such claims are not capable of

being transferred, Opp. ¶ 64, but he cannot explain why the Plan that was confirmed by this Court

retained breach of fiduciary duty claims if the Reorganized Debtor had intended to transfer them.

## II. All Claims Against Leventon Must Be Dismissed for Lack of Subject Matter Jurisdiction (Counts V, XVI, XXVII, and XXXIV).

9.      Kirschner misstates that subject matter jurisdiction has been determined, when the

question is before the District Court on the *Motion to Withdraw the Reference for the Causes of*

*Action in the Complaint Asserted Against the Former Employee Defendants* [Adv. Proc. Dkt. 27].

## III. Kirschner Dodges Arguments as to Why the Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted as to Leventon.

### A.      Settled Texas Law Undoes Kirschner's Purported Count V for Alleged Breach of Fiduciary Duty Owed by Leventon as an Attorney.

10.      Kirschner concedes that the Amended Complaint alleges only that Leventon owed

duties to HCMLP in his role as an in-house attorney, Opp. ¶¶ 79 n.13, 83; Am. Compl. ¶¶ 20, 202,

which admittedly is governed by Texas law. Opp. ¶¶ 83, 86. Yet, Kirschner thereafter maintains

for the first time that Leventon *also* breached common law fiduciary duties to HCMLP as a

manager or agent of HCMLP under Delaware law. Opp. ¶¶ 69-71. Of course, Leventon was not

(and is not alleged to be) a governing person, director, officer, owner or manager of Strand or

HCMLP, and any breach of fiduciary duty arises, if at all, under Texas law. In any event, Kirschner

fails to state a fiduciary duty claim under either state's laws.

11.      Initially, even if Delaware law were applicable (which it is not),[4] it is black letter

---

[4] Kirschner argues that, under Texas's conflict of laws, Delaware law should apply as HCMLP's state of incorporation, relying on cases holding that Texas's default "most significant relationship test" must give way to its codification of

law that "[a] mere employee … does not ordinarily occupy a position of trust and confidence toward his employer." *Mitchell Lane Publrs., Inc. v. Rasemas*, No. 9144-VCN, 2014 Del. Ch. LEXIS 194, at *14 (Del. Ch. Sept. 30, 2014). Even if there were allegations in the Amended Complaint that Leventon was a "manager" or "agent" of Strand or HCMLP (which there are not), Kirschner fails to cite a single case establishing that managers or agents owe fiduciary duties *to a limited partnership*. Opp. ¶ 70.[5] Instead, Kirschner improperly relies on a principle of Delaware corporation law that employees ***may*** owe fiduciary duties to a Delaware ***corporation*** when they act as crucial "key managerial personnel" or agents in a role of "special trust" or "special duty" that "connotes a dependence." *Rasemas*, 2014 Del. Ch. LEXIS 194, at *14. The case law cited by Kirschner is inapposite to the limited partnership question before the Court.

12.     By way of example, in *Lazard Debt Recovery GP, LLC v. Weinstock*, 864 A.2d 955, 966 (Del. Ch. 2004), the court dismissed breach of fiduciary duty claims against a hedge fund's two key investment personnel who allegedly plotted to usurp a corporate opportunity. After

---

[5] the internal affairs doctrine where that statute applies. Opp. ¶ 69. But the plain language of that statute applies the doctrine to duties of individuals who are "governing persons, officers, owners and members," and not to mere employees such as Leventon. Tex. Bus. Orgs. Code §§ 1.102, 1.105. Likewise, Delaware law is clear that "the internal affairs doctrine does not extend to a Delaware entity's relationships **with its employees**." *Focus Fin. P'rs, LLC v. Holsopple*, 241 A.3d 784, 811 (Del. Ch. 2020) (emphasis added). Under the applicable most significant relationship test, where there is a Texas-based attorney working for a Texas-based entity as a mere employee (and not governing person), Texas law clearly governs. *Milligan v. Salamone*, No. 1:18-CV-327-RP, 2019 U.S. Dist. LEXIS 41009, at *9 (W.D. Tex. Mar. 14, 2019) ("[T]he claims at issue here do not pertain to [the Delaware entity's] officers. Rather, they pertain to the duties owed . . . by its Austin-based counsel, its counsel's conduct, and its counsel's knowledge about the conduct of others. The parties would be justified to expect that Texas law would govern the conduct of a Texas attorney acting in Texas to represent a company headquartered in Texas.").

[5] *See Dohmen v. Goodman*, 234 A.3d 1161 (Del. 2020) (no mention of fiduciary duties owed by agents or employees); *In re Bos. Celtics Ltd. P'ship S'holders Litig.*, C.A. No. 16511, 1999 WL 641902, at *4 (Del. Ch. Aug. 6, 1999) (same); *In re USACafes, L.P. Litig.*, 600 A.2d 43, 48-49 (Del. Ch. 1991) (same); *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P.*, 752 A.2d 1175 (same); *Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, C.A. No. 383, 2009 WL 1387115, at *27 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010) ("[K]ey managerial employees may be liable for breaches of fiduciary duty in their position within a ***corporation***") (emphasis added); *Sci. Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 962 (Del. 1980) (same).

finding that the personnel did not breach alleged fiduciary duties to the fund's **investors**, the court noted that "plaintiffs do not even purport to allege that [the personnel] owed fiduciary duties to **the Fund** as a consequence of the employer-employee agency relationship. If it did, that sort of claim would fail under Delaware Supreme Court precedent." *Id.* at 966-67 (emphasis added). Likewise, in *Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, C.A. No. 5502-CS, 2011 Del. Ch. LEXIS 116, at *106 (Del. Ch. Aug. 8, 2011), the court dismissed breach of fiduciary duty claims against a husband who acted as general counsel for a hedge fund's investment manager and whose wife controlled the fund's general partner. Although the court found that the husband and wife together "controlled [the various] entities and the Hedge Fund they comprised" and that the attorney husband "was intimately involved" in the general partner's decision-making for the transaction at issue, the court held that it could not "hold that someone like [the attorney husband], who is not even an officer, director, or member of the governing fiduciary is a direct fiduciary of the limited partnership and its investors." *Id*. Here, Leventon is not an officer, director, member or manager of the General Partner (Strand), person in control (Dondero), or HCMLP. The purported breach of fiduciary duty claim under Delaware common law cannot withstand dismissal.

13.     Moreover, even if Delaware corporation law concepts of fiduciary duty could be stretched to limited partnerships, the Amended Complaint **does not** allege that Leventon was a manager or agent of HCMLP, much less that he was a "key manager" or agent, particularly with reference to the litigation he worked on, always with the advice of outside counsel. Indeed, Kirschner notes the opposite—that Leventon is **not** alleged to be an agent of Strand. Opp. ¶ 79 n.13 ("Leventon's assertion that the 'Complaint alleges that Leventon acted as an agent of the General Partner' is incorrect. . . . The Complaint alleges that Leventon 'was Assistant General Counsel at HCMLP.'"). Thus, Leventon cannot be said to have "place[d] himself in a position

antagonistic to his principal" because he is not alleged to have been a key manager or agent. *Triton Constr. Co.*, 2009 WL 1387115, *12.

14.    Shorn of irrelevant arguments under Delaware's law of corporations, Texas's anti-fracturing rule controls. The rule requires the Court to set aside the "fiduciary duty" label and determine, as a question of law, whether the "gravamen" of the allegations sound in professional negligence because they focus primarily on issues of "quality or adequacy of the attorney's representation," rather than on "the attorney obtain[ing] an improper benefit." *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied); *Official Stanford Investors Comm. v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N, 2014 WL 12572881, at *6 (N.D. Tex. Dec. 17, 2014) (Godbey, J.).[6] Even as restated in the Opposition, Leventon's alleged conduct concerns ***the quality*** of his legal representation or advice taken in litigation managed by outside counsel, not the type of self-dealing that is the hallmark of an attorney's breach of fiduciary duty. *See, e.g.*, Opp. ¶ 81 (delivering a presentation about a lawsuit that "said nothing" about a transfer made years earlier; "assisting in the drafting and execution of an agreement" that effected a transfer); Am. Compl. ¶ 214 (allegedly served as an "instrument" on cases through which others' misrepresentations and omissions were communicated to creditors). Such alleged failures to "fully and fairly disclose all facts and important information" or to "take certain actions to protect [a corporate plaintiff's] interest in a case … sound[] solely in professional negligence, rather than in breach of fiduciary duty." *Border Demolition & Envtl., Inc. v. Pineda*, 535 S.W.3d 140, 160-61 (Tex. App.—El Paso

---

[6] In footnotes 9 and 15, Kirschner attempts to distance himself from the anti-fracturing rule by contending that the rule "has no bearing on the breach of fiduciary duty claims asserted … under Delaware law." Opp. ¶ 69 n.9. As discussed above, Leventon is not alleged to be either an agent or manager, so the Delaware fiduciary duty point, even if applicable in the limited partnership context, is beside the point. Under binding Texas law, the anti-fracturing rule is required to be met as to alleged breaches of fiduciary duties by a Texas lawyer to his client, and Kirschner cites no case holding this settled rule inapplicable in the context of in-house attorneys in Texas.

2017, no pet.).

15.     Moreover, Kirschner alleges that Leventon breached his fiduciary duty pre-bankruptcy with respect to the Acis, Crusader, and UBS liabilities while receiving his ordinary compensation. A general interest in getting paid or continuing employment is not "improper" under Texas law. Leventon Br. ¶ 28; *see also Reneker v. Offill*, No. 3:08-CV-1394-D, 2009 WL 804134, at *6 (N.D. Tex. Mar. 26, 2009) (compensation for professional services is not an improper benefit and holding otherwise "would effectively transform every malpractice claim arising from a paid attorney-client relationship into a breach of fiduciary duty claim"). As to post-filing conduct, Kirschner again claims Leventon merely received compensation "HCMLP would have paid [ ] in 2020 but for the [UCC's] objection." Opp. ¶ 85.[7] Far from forming the "gravamen" of such allegations, the original complaint did not mention any alleged improper benefit element at all. And the Amended Complaint's conclusory characterization of Leventon's receipt of his contractual compensation by a third party as an "improper benefit" fails to shore up that deficiency. Additionally, the Amended Complaint does nothing to link Leventon's receipt of employee compensation to any of the specific transactions at issue.[8] Am. Compl. ¶ 204; Opp. ¶ 85.

16.     Count V also must be dismissed for failure to allege the elements of causation and

---

[7] Every case Kirschner cites to argue his allegations are predicated on an improper benefit held that improper benefits had *not* been adequately alleged and the claims sounded in negligence. Opp. ¶¶ 83-84; *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr.*, P.C., 284 S.W.3d 416, 428-29 (Tex. App.—Austin 2009, no pet.); *Tener v. Short Carter Morris, LLP*, No. 01-12-00676-CV, 2014 WL 4259885, at *11 (Tex. App.—Houston [1st Dist.] Aug. 28, 2014, no pet.) (affirmative misrepresentations did not "go beyond a mere negligence allegation"); *Murphy v. Gruber*, 241 S.W.3d 689, 699 (Tex. App.—Dallas 2007, pet. denied) (allegations asserted claims of professional negligence because, in part, an attorney's "own interest in obtaining a multimillion dollar fee" was not a sufficient improper benefit); *Archer v. Med. Protective Co. of Fort Wayne, Indiana*, No. 2:03-CV-314-C, 2004 WL 1194455, at *5 (N.D. Tex. May 28, 2004) (allegations that an attorney put own interests above client's interest constituted legal malpractice claims).

[8] The Opposition contends that Leventon "participated in" the transfer to Sentinel in 2017 and then, years later, failed to disclose the transfer to the Independent Board, all "in exchange for Sentinel's agreement to pay attorney's fees and expenses he (and Ellington) incurred in connection with HCMLP's bankruptcy." Opp. ¶ 86. But, in addition to being implausible from a timing perspective, this allegation is not contained in the Amended Complaint. Am. Compl. ¶ 78.

damages. Kirschner admits causation and damages are required elements of a fiduciary duty claim against an attorney under Texas law, but suggests that he does not have to plead them because they "are questions of fact." Opp. ¶ 86 n.16. That is not the law. Although Kirschner may not have to carry his burden of *proof* at the pleading stage, he must still allege sufficient facts that, taken as true, plausibly establish causation and the existence of damages. *See Taylor v. Scheef & Stone, LLP*, No. 3:19-CV-2602-D, 2020 WL 4432848 at *6 n.7 (N.D. Tex. July 31, 2020) (dismissing negligence claim as "allegations that a lawyer 'assisted' a client's illegal action or provided deficient legal advice that contributed to the client's harm, without more, are insufficient to satisfy the causation prong"); *Rogers v. Zanetti*, 517 S.W.3d 123, 136 (Tex. App.—Dallas 2015), *aff'd*, 518 S.W.3d 394(Tex. 2017) ("Causation is an element of the Clients' claims seeking actual damages as a remedy for their fiduciary breach claims."). The Amended Complaint's allegations that Dondero dominated HCMLP do not permit even an inference that, absent Leventon's alleged conduct, Dondero and HCMLP would have altered their actions in any way, much less adopted a different strategy that would have resulted in different outcomes.[9] Leventon Br. ¶¶ 30-34; *see Taylor*, WL 4432848, at *6 ("[I]t is speculative to assume that any change in [counsel]'s actions would have altered the actions of the [client] themselves."); *Reneker v. Offill*, No. 3:08-CV-1394-D, 2009 WL 3365616 at *6, *19-20 (N.D. Tex. Oct. 20, 2009) (complaint dismissed because it did "not allege that the [clients] were unaware of the illegality of their actions or that their illegal actions … were the result of negligent advice from their attorneys"). Indeed, the Reorganized Debtor recently agreed that it "is extremely disingenuous" to shift any blame for HCMLP's actions to HCMLP's employees. *Highland's Objection to Renewed Motion to Recuse Pursuant to 28*

---

[9] The Amended Complaint makes no allegations as to Leventon with respect to the HarbourVest transaction.

*U.S.C. § 455 and Brief in Support* [Dkt. 3595] at ¶ 42. Kirschner, therefore, fails to establish that Leventon's conduct proximately caused any of the liabilities HCMLP incurred to third parties.[10]

17.    All of the allegations against Leventon assert that he caused harm to third-parties—namely Acis, Crusader, and UBS—and that HCMLP was only harmed when these third parties became creditors of HCMLP. However, damages caused to individual creditors, and not the Debtor, are not recoverable by Kirschner. Thus, in *Ebert v. DeJoria (In re Latitude Sols., Inc.)*, the Fifth Circuit held that when "a bankruptcy trustee sued and argued a debt it owes constitutes an injury, despite having made no payments" and "the only harm alleged is the [estate's] inability to satisfy its liabilities," the harm is to the investors, not the estate. 922 F.3d 690, 695-97 (5th Cir. 2019) (reversing damages finding for breaches of fiduciary duty); *see also Reneker*, 2009 WL 804134, at *6 (when a law firm allegedly allowed its client to continue to defraud investors, "the liability owed to the investors and left unsatisfied by the assets marshaled into the Receivership Estate … while concrete and actual, is not distinct from the investors' injury").[11]

---

[10] Kirschner's contention that damages are not required when a defendant obtained a "secret gain" again misstates the law. Opp. ¶ 86 n.16. As noted in the very case Kirschner relies on and by the Fifth Circuit, "injury and causation are still required when a plaintiff seeks to recover damages for a breach of fiduciary duty"—as Kirschner does here with respect to HCMLP's liabilities—rather than an "equitable forfeiture" of an attorney's fees. *Yaquinto v. Segerstrom (In re Segerstrom)*, 247 F.3d 218, 225 n.5 (5th Cir. 2001); *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221 (Tex. 2017) (same). Nor may Kirschner seek forfeiture of fees allegedly paid by a third party under Texas law. *See Brenner v. Centurion Logistics LLC ex rel. Centurion Pecos Terminal LLC*, No. 05-20-00308-CV, 2020 WL 7332847, at *10 (Tex. App.—Dallas Dec. 14, 2020, no pet.) ("[F]ee forfeiture does not apply to fees a lawyer received from someone other than the aggrieved client."); *Gregory v. Porter & Hedges, LLP*, 398 S.W.3d 881, 886 (Tex. App.—Houston [14th Dist.] 2013) (same).

[11] Kirschner simply dismisses as "irrelevant" that HCMLP could not have suffered injury from Leventon's alleged actions if HCMLP was satisfied with Leventon's work when performed, or that under the *Wagoner* rule, Kirschner cannot assert claims against Leventon for damages to creditors allegedly caused by conduct in which HCMLP, through Strand, participated. Opp. ¶ 69 n.9. Because Fifth Circuit precedent makes these arguments not just relevant, but dispositive, Count V must be dismissed. Leventon Br. ¶¶ 30-31, 35-37.

**B.     Kirschner Fails to State a Claim for Civil Conspiracy to Breach Fiduciary Duties (Count XVI).**

18.     Kirschner concedes that Leventon cannot conspire with other HCMLP employees, but he fails to point to any non-conclusory allegation involving conduct of Leventon constituting work conducted outside the scope of his employment; nor can he, as the allegations of Leventon's specific conduct, such as drafting agreements and assisting with transactions at the express directions of his employer, were in his course and scope of his employment. *Fink v. Anderson*, 477 S.W.3d 460, 466 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Conduct that serves any purpose of the employer is within the scope of employment even if the conduct escalates beyond that assigned or permitted."). And Kirschner does not even attempt to identify any personal benefit gained by Leventon by these actions. Opp. ¶ 106.

19.     Kirschner's assertion that Leventon had a "specific intent" to harm HCMLP is no substitute for plausible allegations, particularly where the Amended Complaint fails to allege any personal purpose of his own Leventon had in following his client's instructions. *In re Artho*, 587 B.R. 866, 885 (Bankr. N.D. Tex. 2018); s*ee Edwards v. Dunlop-Gates*, 344 S.W.3d 424, 433 (Tex. App.—El Paso 2011, pet. denied).[12] Moreover, Kirschner's underlying fiduciary duty claim fails, so the derivative conspiracy claim must also fail. *West Fork Advisors, LLC v. Sungard Consulting Servs., Inc.*, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. denied).

**C.     Kirschner Fails to Even Address Leventon on the Claim for Unjust Enrichment or Money Had and Received (Count XXVII).**

20.     Despite devoting more than ten pages of briefing to Count XXVII, Kirschner still fails to identify any monies that *Leventon* received (much less improperly received) from HCMLP

---

[12] With respect to the Acis, Crusader, and UBS liabilities, any allegation of intent would be bizarre—Kirschner would need to plead that Leventon acted with the specific intent for HCMLP to lose a lawsuit to each of those creditors and to thereby suffer harm.

other than his regular compensation. *Compare* Opp. ¶ 112 n.29 (pointing to "specific monetary values" underlying the claims but including nothing as to Leventon), *and* Opp. ¶ 115 (conceding that the alleged Tall Pine transfer did ***not*** come from HCMLP), *with Parker v. JPMorgan Chase Bank, N.A.*, No. A-14-CV-706 LY, 2014 U.S. Dist. LEXIS 191093, at *16 (W.D. Tex. Oct. 28, 2014) (dismissing where plaintiff failed to identify any monies held by defendant from plaintiff); *see also Elias v. Pilo*, 781 F. App'x 336, 339 (5th Cir. 2019) (applying Texas law).[13]

### D.    Kirschner's Generalized Allegations of Aiding and Abetting or Knowing Participation in a Breach of Fiduciary Duty (Count XXXIV) Are Insufficient.

21.    Kirschner urges the court to rely on inferences and his allegations against ***Dondero*** to satisfy the requisite element of ***Leventon's*** scienter for an aiding and abetting claim. Opp. ¶ 100. Leventon was not a director, officer, or senior management; Kirschner does not even allege that he was an orchestrator of Dondero's actions. Generalized claims against Leventon stemming from Dondero's domination fail to meet the "stringent burden of alleging 'specific facts from which the court could reasonably infer knowledge of the specified breach.'" *Jacobs v. Meghji*, *C.A.* No. 2019-1022-MTZ, 2020 Del. Ch. LEXIS 310, slip op. at 25 (Del. Ch. Oct. 8, 2020) (citations omitted).

### CONCLUSION AND REQUESTED RELIEF

22.    Kirschner cannot manufacture standing and subject matter jurisdiction where none exists. Accordingly, the Court must dismiss without prejudice the claims against Leventon because Kirschner lacks standing, and the Bankruptcy Court lacks subject matter jurisdiction to adjudicate them. Moreover, the Court must dismiss with prejudice all the claims because the Amended Complaint fails to state claims for which relief can be granted against Leventon.

---

[13] While Kirschner must acknowledge that Leventon received compensation via annual letter agreements, *see* Case No. 19-34054 at Dkt. 3230, ¶ 19 *et seq.*, he summarily argues that he may still assert unjust enrichment and money-had-and-received theories because any contracts were invalid for unlawful purposes. Opp. ¶ 116. However, the Amended Complaint does not allege that Leventon's annual compensation was enacted for unlawful purposes.

Dated: November 14, 2022

By: */s/ Michelle Hartmann*

Michelle Hartmann
State Bar No. 24032402

**BAKER & MCKENZIE LLP**

1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn

**BAKER & MCKENZIE LLP**

452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com

(*Admitted pro hac vice*)


*Counsel for Isaac Leventon*

## CERTIFICATE OF SERVICE

I certify that on November 14, 2022, a true and correct copy of the above and foregoing document was served via electronic email through the Court's CM/ECF system to the parties that have requested or consented to such service.

/s/  *Michelle Hartmann*

Michelle Hartmann