| | |
|---|---|
| Michelle Hartmann | Debra A. Dandeneau (*Admitted pro hac vice*) |
| State Bar No. 24032402 | Blaire Cahn (*Admitted pro hac vice*) |
| BAKER & MCKENZIE LLP | BAKER & MCKENZIE LLP |
| 1900 North Pearl, Suite 1500 | 452 Fifth Ave |
| Dallas, Texas 75201 | New York, NY 10018 |
| Telephone: 214-978-3000 | Telephone: 212-626-4875 |
| michelle.hartmann@bakermckenzie.com | debra.dandeneau@bakermckenzie.com |
| | blaire.cahn@bakermckenzie.com |

*Counsel for Scott Ellington*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,<br><br>Defendants. | Adv. Pro. No. 21-03076-sgj<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT ELLINGTON'S MOTION TO DISMISS THE AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

ARGUMENT AND AUTHORITIES ................................................................................................ 1

    I.    Kirschner Fails to Rebut His Lack of Standing Under the Plan to Pursue the Non-Core Causes of Action Against Ellington (Counts V, XIV, XVI, XXV, XXVII, XXXIV and XXXV). ................................................................................................................ 1

    II.    All Non-Core Causes of Action Against Ellington Must Be Dismissed for Lack of Subject Matter Jurisdiction (Counts V, XIV, XVI, XXV, XXVII, XXXIV and XXXV). ............................................................................................................................ 1

    III.    Kirschner Dodges Arguments as to Why the Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted as to the Majority of Claims Against Ellington. ................................................................................................................................. 1

        A.    Counts V and XIV Fail to State a Claim for Breach of Fiduciary Duty ..................... 1

            1.    Kirschner Fails to Plead that Ellington Breached Any Fiduciary Duty Under the Fourth LPA or Delaware Law. ................................................................ 2

            2.    Settled Texas Law Forecloses Kirschner's Allegation that Ellington Breached Any Fiduciary Duty Owed as an Attorney Under Texas Law. ............. 4

                a.    Kirschner's Allegations in Count V Sound in Professional Negligence, Not Fiduciary Duty. ........................................................................... 4

                b.    In Any Event, Counts V and XIV Fail to Allege Causation and Damages. ............................................................................................. 6

        B.    Kirschner Fails to State a Claim for Civil Conspiracy to Breach Fiduciary Duties (Count XVI). ............................................................................................... 7

        C.    Kirschner Fails to State a Claim for Unjust Enrichment or Money Had and Received (Count XXVII). ......................................................................................... 8

        D.    Kirschner's Generalized Allegations of Aiding and Abetting or Knowing Participation in a Breach of Fiduciary Duty (Count XXXIV) Are Insufficient. ......... 8

        E.    Kirschner Fails to Satisfy the Reasonable Due Diligence Requirement Necessary to State a Preference Claim (Count XXXI). .............................................. 9

        F.    Kirschner's Conclusory Allegations Fall Woefully Short of the Heightened Pleading Standard Applicable to Intentional Fraudulent Transfer Claims (Counts XXIII and XXXIII). ................................................................................... 10

        G.    Kirschner Concedes that He Has No Plausible Basis to Assert that the Alleged Expense Transfers Lack Reasonably Equivalent Value (Count XXXII). ................. 11

CONCLUSION AND REQUESTED RELIEF ............................................................................... 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) .................................................................................................................9

*Border Demolition & Entvl., Inc. v. Pineda*,
   535 S.W.3d 140 (Tex. App.—El Paso 2017, no pet.) ..................................................................5

*In re Bos. Celtics Ltd. P'ship S'holders Litig.*,
   1999 WL 641902 (Del. Ch. Aug. 6, 1999) ..................................................................................2

*Brown v. Douglas (In re Dual D Health Care Operations, Inc.)*,
   No. 17-41320, 20-04059, 2021 Bankr. LEXIS 1934 (Bankr. N.D. Tex. 2021) .......................11

*Crescent Res. Litig. Tr. v. Nexen Pruet, LLC (In re Crescent Res., LLC)*,
   No. 09-11507, 11-01082, 2012 Bankr. LEXIS 287 (Bankr. W.D. Tex. 2012) .........................11

*DG BF, LLC v. Ray*,
   No. 2020-0459, 2021 Del. Ch. LEXIS 37 (Del. Ch. Mar. 1, 2021) ............................................4

*Dorsey v. Portfolio Equities, Inc*,
   540 F.3d 333 (5th Cir. 2008) .....................................................................................................11

*Ebert v. DeJoria (In re Latitude Sols., Inc.)*,
   922 F.3d 690 (5th Cir. 2019) .......................................................................................................7

*Faulkner v. Lone Star Brokering, LLC (In re Reagor-Dykes Motors, LP)*,
   Nos. 18-50214, 20-05028, 20-05038, 20-05044, 2021 Bankr. LEXIS 1643
   (Bankr. N.D. Tex. 2021) ........................................................................................................9, 11

*Fink v. Anderson*,
   477 S.W.3d 460 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ..............................................8

*Fortune Prod. Co. v. Conoco, Inc.*,
   52 S.W.3d 671 (Tex. 2000) .........................................................................................................8

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
   795 A.2d 1 (Del. Ch. 2001), *aff'd in part, rev'd in part on other grounds*, 817
   A.2d 160 (Del. 2002) ...................................................................................................................3

*Jacobs v. Meghji*,
   C.A. No. 2019-1022, slip op. (Del. Ch. Oct. 8, 2020) ................................................................9

*Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*,
   No. 7092-VCP, 2012 Del. Ch. LEXIS 287 (Del. Ch. Dec. 20, 2012) ........................................4

*Official Stanford Investors Comm. v. Greenberg Traurig, LLP*,
  No. 12-4641, 2014 WL 12572881 (N.D. Tex. Dec. 17, 2014) (Godbey, J.) ............................5

*Parker v. JPMorgan Chase Bank, N.A.*,
  No. 14-706, 2014 U.S. Dist. LEXIS 191093 (W.D. Tex. Oct. 28, 2014)................................8

*Reneker v. Offill*,
  No. 08-1394, 2009 WL 3365616 (N.D. Tex. Oct. 20, 2009).......................................................7

*Reneker v. Offill*,
  No. 08-1394, 2009 WL 804134 (N.D. Tex. Mar. 26, 2009).......................................................5

*Rogers v. Zanetti*,
  517 S.W.3d 123 (Tex. App.—Dallas 2015), *aff'd*, 518 S.W.3d 394 (Tex.
  2017) ...............................................................................................................................6

*Sci. Accessories Corp. v. Summagraphics Corp.*,
  425 A.2d 957 (Del. 1980) ..................................................................................................2

*Sommers v. Anixter, Inc. (In re Trailhead Eng'g LLC)*,
  Nos. 18-32414, 20-3094, 2020 Bankr. LEXIS 3547 (Bankr. S.D. Tex. Dec.
  21, 2020) .......................................................................................................................10

*Taylor v. Scheef & Stone, LLP*,
  No. 19-2602, 2020 WL 4432848 (N.D. Tex. July 31, 2020)................................................6, 7

*Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*,
  C.A. No. 3290, 2009 WL 1387115 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d
  938 (Del. 2010) ................................................................................................................2

*In re USACafes, L.P. Litig.*,
  600 A.2d 43 (Del. Ch. 1991)................................................................................................2

*VeroBlue Farms USA, Inc. v. Wulf*,
  465 F. Supp. 3d 633 (N.D. Tex. 2020) ...............................................................................10

*VTX Communs., LLC v. AT&T Inc.*,
  No. 19-00269, 2020 U.S. Dist. LEXIS 138286 (S.D. Tex. Aug. 4, 2020) ...........................3, 4

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ..............................................................................................9

*West Fork Advisors, LLC v. Sungard Consulting Servs., Inc.*,
  437 S.W.3d 917 (Tex. App.—Dallas 2014, pet. denied).......................................................8

*Won Pak v. Harris*,
  313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied).......................................................5

**Statutes**

11 U.S.C.S. § 548 ...........................................................................................................................11

28 U.S.C. § 455 ..............................................................................................................................7

Tex. Bus. & Com. Code § 24.005 .................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................................................................................10

Defendant Scott Ellington hereby files his reply to Kirschner's response in opposition [Adv. Dkt. 210] (the "*Opposition*") to the *Motion to Dismiss the Amended Complaint* (the "*Motion*") [Adv. Dkt. 175].[1]

## ARGUMENT AND AUTHORITIES

I. **Kirschner Fails to Rebut His Lack of Standing Under the Plan to Pursue the Non-Core Causes of Action Against Ellington (Counts V, XIV, XVI, XXV, XXVII, XXXIV and XXXV).**

1. As discussed in Sections I.A and I.C. of the Leventon Reply Brief, which are incorporated herein by reference for all purposes, the Opposition fails to overcome Kirschner's lack of standing on *any* of the state law Non-Core Causes of Action asserted against Ellington. Such counts must be dismissed.

II. **All Non-Core Causes of Action Against Ellington Must Be Dismissed for Lack of Subject Matter Jurisdiction (Counts V, XIV, XVI, XXV, XXVII, XXXIV and XXXV).**

2. Kirschner misstates that subject matter jurisdiction has been determined, when the question is before the District Court on the *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants* [Adv. Proc. Dkt. 27].

III. **Kirschner Dodges Arguments as to Why the Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted as to the Majority of Claims Against Ellington.**

   A. **Counts V and XIV Fail to State a Claim for Breach of Fiduciary Duty.**

3. The Amended Complaint fails to allege that Ellington owed fiduciary duties in any capacity other than as HCMLP's Chief Legal Officer and General Counsel. Am. Compl. ¶ 202. Kirschner concedes that any duties Ellington owed to HCMLP in his role as an in-house attorney are governed by Texas law. Opp. ¶ 83. Yet, Kirschner thereafter maintains for the first time that

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Brief in Support of Defendant Ellington's Motion to Dismiss the Amended Complaint* (the "*Ellington Br.*") [Adv. Dkt. 176], the Motion, or in the Amended Complaint [Adv. Dkt. 158], and docket number identifications refer to Case No. 19-34054-sgj11.

Ellington breached Delaware common law fiduciary duties supposedly owed as a party "who participated in the management or served as agent[] of the limited partnership." Opp. ¶¶ 70, 19. Kirschner fails to state a fiduciary duty claim under either theory.

> 1.  *Kirschner Fails to Plead that Ellington Breached Any Fiduciary Duty Under the Fourth LPA or Delaware Law.*

4. Even if Ellington owed any common law fiduciary duties,[2] they have been supplanted by the Fourth LPA. Ellington Br. ¶¶ 16-17. Contrary to Kirschner's unsupported contentions, sections 4.1.(i)(i) and 4.1(i)(h) of the Fourth LPA specifically exculpate and indemnify the General Partner and "its directors, officers, employees, agents or representatives" from liability to HCMLP for "any acts or omissions that do not constitute gross negligence or willful or wanton misconduct." Ellington Br. App'x 153-54. To the extent Kirschner alleges that Ellington acted as an agent of HCMLP, it could only be through agency authority granted by the General Partner, in which case Ellington has the protection of these sections. *See* Ellington Br. App'x 154-55, Fourth LPA § 4.1(k) (General Partner may designate officers of HCMLP, who "shall have such authority and perform such duties as the General Partner may … delegate to them").

5. Nothing in the Amended Complaint suggests that Ellington "place[d] himself in a position antagonistic to his principal concerning the subject matter of his agency." *Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, C.A. No. 3290, 2009 WL 1387115, *12 (Del. Ch. May 18, 2009). To the contrary, the Amended Complaint alleges that Ellington's actions were undertaken at the

---

[2] Kirschner fails to cite a single case establishing that managers or agents owe fiduciary duties to a *limited partnership*, rather than a corporation. *See* Opp. ¶ 70, citing *Dohmen v. Goodman*, 234 A.3d 1161 (Del. 2020) (no mention of fiduciary duties owed by agents or employees); *In re Bos. Celtics Ltd. P'ship S'holders Litig.*, 1999 WL 641902, at *4 (Del. Ch. Aug. 6, 1999) (same); *In re USACafes, L.P. Litig.*, 600 A.2d 43, 48-49 (Del. Ch. 1991) (same); *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P.*, 752 A.2d 1175 (same); *Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, C.A. No. 3290, 2009 WL 1387115, at *27 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010) ("[K]ey managerial employees may be liable for breaches of fiduciary duty in their position within a **corporation**") (emphasis added); *Sci. Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 962 (Del. 1980) (same).

instruction of the General Partner's control person, who had "solitary" and "complete control" of HCMLP. *See* Ellington Br. App'x 151, Fourth LPA, § 4.1(a); Am. Compl. ¶¶ 42, 415 ("Dondero exercised complete control over HCMLP, and Ellington acquiesced to and profited from schemes orchestrated by Dondero").

6. Likewise, under section 4.1(g) of the Fourth LPA, "whenever a conflict of interest exists or arises, … any action taken by the General Partner … shall not constitute a breach of [the Fourth LPA] or any other agreement contemplated herein or a breach of any standard of care or duty imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation" unless the General Partner acts in "bad faith." Ellington Br. App'x 153. In a case relied upon by Kirschner, a Texas district court dismissed fiduciary duty claims of self-dealing after finding that a very similar provision "does displace fiduciary duties" under Delaware law and "reduce[s] the general partner's duties from a fiduciary duty to merely a duty of good faith." *VTX Communs., LLC v. AT&T Inc.*, No. 19-00269, 2020 U.S. Dist. LEXIS 138286, at *55-56 (S.D. Tex. Aug. 4, 2020) ("Because the inquiry with respect to the Defendants' alleged breach is addressed by contractual standards, Plaintiff's claims for breach of fiduciary duty cannot survive."). Similarly here, Kirschner's fiduciary duty claims cannot withstand dismissal. Ellington cannot be liable as "manager" or "agent" for assisting in actions that the Fourth LPA permitted the principal to take. *See Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 795 A.2d 1, 34 (Del. Ch. 2001) (a corporate general partner's directors "cannot be held liable for breach of fiduciary duty in a situation where the [g]eneral [p]artner, because of its compliance with a contractual safe harbor, does not owe such liability"), *aff'd in part, rev'd in part on other grounds*, 817 A.2d 160 (Del. 2002).

7. Kirschner's contention that the Court may not dismiss the fiduciary duty counts at

3

this stage on the basis of the exculpation clause is wrong. Courts can (and should) dismiss breach claims when fiduciary duties are supplanted by a partnership agreement. *See, e.g.*, *VTX Commc'ns, LLC*, 2020 U.S. Dist. LEXIS 138286, at *55-57 (dismissing a fiduciary duty claim based on alleged self-dealing as "superfluous" and unable to "survive" due to exculpation clause); *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, No. 7092-VCP, 2012 Del. Ch. LEXIS 287, at *24 (Del. Ch. Dec. 20, 2012) ("[T]he Court may grant a motion to dismiss a claim where the plaintiffs have not adequately pled that the defendants' conduct constitutes a non-exculpated claim against a person subject to … a limited partnership agreement containing an exculpation clause."); *DG BF, LLC v. Ray*, No. 2020-0459, 2021 Del. Ch. LEXIS 37, at *24-25 (Del. Ch. Mar. 1, 2021) ("In the shadow of an exculpation clause, a plaintiff must plead non-exculpated claims to survive a motion to dismiss."). The Court must do so here, as Kirschner fails to sufficiently allege that Ellington acted other than according to the directives of HCMLP via its General Partner.

> 2. *Settled Texas Law Forecloses Kirschner's Allegation that Ellington Breached Any Fiduciary Duty Owed as an Attorney Under Texas Law.*

8. To the extent that Kirschner claims that Ellington owed duties to HCMLP in his role as an in-house attorney (Opp. ¶ 83; Am. Compl. ¶ 202), Texas law is clear that fiduciary duty claims against attorneys fail where, as in Count V, they merely re-label professional negligence allegations. Dismissal is also proper as to both Count V and Count XIV since Kirschner fails to allege the elements of causation and damages required to state a claim under ***either*** label.

> a. <u>Kirschner's Allegations in Count V Sound in Professional Negligence, Not Fiduciary Duty.</u>

9. Kirschner does not meaningfully address Texas's anti-fracturing rule. The rule requires the Court to set aside the "fiduciary duty" label and determine, as a question of law, whether the "gravamen" of the specific allegations sound in professional negligence because they focus primarily on issues of "quality or adequacy of the attorney's representation," rather than on

4

"the attorney obtain[ing] an improper benefit." *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied); *Official Stanford Investors Comm. v. Greenberg Traurig, LLP*, No. 12-4641, 2014 WL 12572881, at *6 (N.D. Tex. Dec. 17, 2014) (Godbey, J.).[3]

10. Even as restated in the Opposition, the conduct alleged as to Ellington in Count V centers on **the quality** of Ellington's legal representation or advice in performing work at the direction of his client and relating to litigation managed by outside counsel, not the type of self-dealing that is the hallmark of an attorney's breach of fiduciary duty. *See, e.g.*, Opp. ¶ 81 ("participating" in transfers of assets entities; "caus[ing] HCMLP to enter into numerous transactions"); Am. Compl. ¶ 214 ("provid[ing] false narratives" to help Dondero). Such alleged failures of an attorney to "fully and fairly disclose all facts and important information" or to "take certain actions to protect [a corporate plaintiff's] interest in a case … sound[] solely in professional negligence, rather than in breach of fiduciary duty." *Border Demolition & Entvl., Inc. v. Pineda*, 535 S.W.3d 140, 160-61 (Tex. App.—El Paso 2017, no pet.).

11. Moreover, Kirschner alleges that Ellington breached his fiduciary duty pre-bankruptcy with respect to the Acis, Crusader, HarbourVest, and UBS liabilities while receiving his ordinary compensation. Am. Compl. ¶ 204. A general interest in getting paid or continuing employment is not "improper." Ellington Br. ¶ 22; *see also Reneker v. Offill*, No. 08-1394, 2009 WL 804134, at *10 (N.D. Tex. Mar. 26, 2009) (compensation for professional services is not an improper benefit and holding otherwise "would effectively transform every malpractice claim arising from a paid attorney-client relationship into a breach of fiduciary duty claim"). With respect

---

[3] In footnotes 9 and 15, Kirschner attempts to distance himself from the anti-fracturing rule by contending that the rule "has no bearing on the breach of fiduciary duty claims asserted … under Delaware law." Opp. ¶ 69 n.9. But Kirschner's Delaware fiduciary duty points, which fail for the reasons discussed above, are beside the point. Under binding Texas law, the anti-fracturing rule is required to be met as to alleged breaches of fiduciary duties by a Texas lawyer to his client, and Kirschner cites no case holding this settled rule inapplicable in the context of in-house attorneys in Texas.

5

to post-filing conduct, Kirschner again claims that Ellington merely received compensation "HCMLP would have paid [ ] in 2020 but for the [UCC's] objection." Opp. ¶ 85. Far from forming the "gravamen" of such allegations, the original complaint failed to mention the improper benefit element at all; the Amended Complaint's conclusory characterization of Ellington's receipt of his contractual compensation as an "improper benefit" fails to shore up that deficiency. The Amended Complaint does nothing to link Ellington's receipt of employee compensation to any of the specific transactions at issue.[4] Am. Compl. ¶ 204; Opp. ¶ 84. Nor does it plausibly plead that Ellington personally received an improper, direct financial benefit by virtue of funds transferred through affiliated entities in which Ellington allegedly had an ownership interest. *See* Am. Compl. ¶¶ 201-16.

> b. <u>In Any Event, Counts V and XIV Fail to Allege Causation and Damages.</u>

12. Regardless of labels, Counts V and XIV must be dismissed for failure to allege the elements of causation and damages. In a footnote, Kirschner admits causation and damages are required elements of a fiduciary duty claim against an attorney under Texas law, but suggests that he does not have to plead them because they "are questions of fact." Opp. ¶ 86 n.16. That is not the law. Although Kirschner may not have to carry his burden of *proof* at the pleading stage, he must still allege sufficient facts that, taken as true, plausibly establish causation and the existence of damages. *See Taylor v. Scheef & Stone, LLP*, No. 19-2602, 2020 WL 4432848 at *6 n.7 (N.D. Tex. July 31, 2020) (dismissing negligence claim as "allegations that a lawyer 'assisted' a client's illegal action or provided deficient legal advice that contributed to the client's harm, without more, are insufficient to satisfy the causation prong"); *Rogers v. Zanetti*, 517 S.W.3d 123, 136 (Tex.

---

[4] The Opposition contends that Ellington "participated in" the transfer to Sentinel in 2017 and then, years later, failed to disclose the transfer to the Independent Board, all "in exchange for Sentinel's agreement to pay attorney's fees and expenses … Ellington … incurred in connection with HCMLP's bankruptcy." Opp. ¶¶ 84, 86. But, in addition to being implausible from a timing perspective, this allegation is not contained in the Amended Complaint. Am. Compl. ¶ 78.

6

App.—Dallas 2015), *aff'd*, 518 S.W.3d 394 (Tex. 2017) ("Causation is an element of the Clients' claims seeking actual damages as a remedy for their fiduciary breach claims.").

13. The Amended Complaint's allegations that Dondero dominated HCMLP do not permit even an inference that, absent Ellington's alleged conduct, Dondero and HCMLP would have altered their actions in any way, much less adopted a different strategy that would have resulted in different outcomes. Ellington Br. ¶¶ 26-28. *See Taylor*, WL 4432848, at *7 ("[I]t is speculative to assume that any change in [counsel]'s actions would have altered the actions of the [clients] themselves."); *Reneker v. Offill*, No. 08-1394, 2009 WL 3365616 at *6 (N.D. Tex. Oct. 20, 2009). Indeed, the Reorganized Debtor recently agreed that it "is extremely disingenuous" to shift any blame for HCMLP's actions to HCMLP's employees. *Highland's Objection to Renewed Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support* [Dkt. 3595] at ¶ 42. Kirschner, therefore, fails to establish that Ellington's conduct proximately caused any of the liabilities HCMLP incurred to third parties.

14. Kirschner simply dismisses as "irrelevant" that he cannot assert claims against Ellington for damages allegedly caused by conduct in which HCMLP, through Strand, participated. Opp. ¶ 69 n.9. Because Fifth Circuit precedent teaches that this point is dispositive, Kirschner's claims must be dismissed on this basis as well. Ellington Br. ¶¶ 29-31; *see also Ebert v. DeJoria (In re Latitude Sols., Inc.)*, 922 F.3d 690, 696 (5th Cir. 2019) (reversing trial court's holding for the trustee when "a bankruptcy trustee sued and argued a debt it owes constitutes an injury, despite having made no payments" because the only harm alleged is to the investors).

### B. Kirschner Fails to State a Claim for Civil Conspiracy to Breach Fiduciary Duties (Count XVI).

15. Kirschner concedes that Ellington cannot conspire with other HCMLP employees, but fails to point to any non-conclusory allegation involving conduct of Ellington constituting work

outside the scope of Ellington's employment; nor can he, as the allegations of Ellington's specific conduct, such as effecting transactions at the express direction of his employer, were in the course and scope of his employment. *Fink v. Anderson*, 477 S.W.3d 460, 466 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Conduct that serves any purpose of the employer is within the scope of employment even if the conduct escalates beyond that assigned or permitted.").

16. Moreover, Kirschner has failed to support the underlying claim for breach of fiduciary duty, so the derivative claim of conspiracy must also fail. *West Fork Advisors, LLC v. Sungard Consulting Servs., Inc.*, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. denied).

### C. Kirschner Fails to State a Claim for Unjust Enrichment or Money Had and Received (Count XXVII).

17. Despite devoting more than ten pages of briefing to Count XXVII, Kirschner still fails to plausibly allege that Ellington personally received (much less improperly) from HCMLP any monies other than his regular compensation. At most, Kirschner alleges that Ellington had an indirect ownership interest in entities through which funds ***that did not belong to or come from HCMLP*** passed, not that Ellington ***personally*** received any financial gain. Opp. ¶ 112 n.29; Am. Compl. ¶¶ 201-16. Kirschner concedes that the alleged Tall Pine transfer did ***not*** come from HCMLP. Opp. ¶ 115. Thus, Kirschner fails to state a claim under either a money had and received theory or an unjust enrichment theory. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *see also Parker v. JPMorgan Chase Bank, N.A.*, No. 14-706, 2014 U.S. Dist. LEXIS 191093, at *16 (W.D. Tex. Oct. 28, 2014) (dismissing where plaintiff had "not identified any money presently being held by [Defendant]" and had alleged an amount due).

### D. Kirschner's Generalized Allegations of Aiding and Abetting or Knowing Participation in a Breach of Fiduciary Duty (Count XXXIV) Are Insufficient.

18. Kirschner urges the court to rely on inferences and his allegations against ***Dondero*** to satisfy the requisite element of ***Ellington's*** scienter for an aiding and abetting claim. Opp. ¶ 100.

8

Neither the Opposition nor the Amended Complaint alleges that Ellington was an orchestrator of Dondero's actions, or anything other than an attorney following the instructions of HCMLP's principal. Generalized claims against Ellington stemming from Dondero's domination fail to meet the "stringent burden of alleging 'specific facts from which the court could reasonably infer knowledge of the specified breach.'" *Jacobs v. Meghji*, C.A. No. 2019-1022, slip op. at 25 (Del. Ch. Oct. 8, 2020) (dismissing knowing participation claim) (internal citations omitted).

### E. Kirschner Fails to Satisfy the Reasonable Due Diligence Requirement Necessary to State a Preference Claim (Count XXXI).

19. Kirschner concedes that he failed to expressly allege that he exercised "reasonable due diligence" or considered "reasonably known affirmative defenses" for the two expense transfers at issue in his preference claim. And despite the more than 400 paragraphs comprising the Amended Complaint, Kirschner is unable to identify a single allegation with respect to the preference claim that, taken as true, would establish that he met these requirements. Instead, and citing no authority, Kirschner argues that the Amended Complaint contains "consistently detailed allegations" with respect to other causes of action, and, thus, the court should simply "conclude" that the statutory requirements are satisfied for the preference cause of action. Opp. ¶ 178.

20. This argument defies both logic and established case law. A "recital by a *litigation trustee* that he exercised sufficient diligence, thus mimicking the language of the statute" is not sufficient. *See Faulkner v. Lone Star Brokering, LLC (In re Reagor-Dykes Motors, LP)*, Nos. 18-50214, 20-05028, 20-05038, 20-05044, 2021 Bankr. LEXIS 1643, at *6-7 (Bankr. N.D. Tex. 2021) (emphasis in original). By relying on conclusory statements and failing to include any factual support showing due diligence, Kirschner fails to allege a plausible claim. *See, e.g., Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) ("Nor does a complaint suffice if it tenders naked assertions devoid of further

9

factual enhancement.") (internal citations omitted); *cf. Sommers v. Anixter, Inc. (In re Trailhead Eng'g LLC)*, Nos. 18-32414, 20-3094, 2020 Bankr. LEXIS 3547, at *20 (Bankr. S.D. Tex. Dec. 21, 2020) (finding dismissal for lack of due diligence not warranted where the complaint, among other things, demonstrated that the trustee reviewed bank and wire records, invoices related to the alleged transfers, correspondence, and the relevant contract—none of which are present here). Accordingly, Count XXXI must be dismissed.

    **F.    Kirschner's Conclusory Allegations Fall Woefully Short of the Heightened Pleading Standard Applicable to Intentional Fraudulent Transfer Claims (Counts XXIII and XXXIII).**

21.    The law in this district is that "Rule 9 applies to actual fraudulent transfer claims." *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 652 (N.D. Tex. 2020). Kirschner's conclusory assertions fail to meet that heightened standard under Rule 9(b). For instance, Kirschner cannot shore up a failure to allege how Dondero "caused" HCMLP to make the Massand Transfers by pointing to three paragraphs that generically allege, without referring to the Massand Transfers, that Dondero dominated HCMLP. Opp. ¶ 174 n.48; *see also Wulf*, 465 F. Supp. at 652 (the "who, what, when, where, why, and how" must be sufficiently pled under Rule 9(b)).

22.    Similarly, Kirschner points to no factual support to show that Ellington intended to defraud HCMLP through the Alleged Expense Transfers or that he "caused" HCMLP to make these transfers; Kirschner concedes that he "is unable to locate any supporting documentation" bearing on whether these transfers were valid expenses. Opp. ¶ 171; Am. Compl. ¶ 416 (stating "***on information and belief***, there is no factual basis for th[is] assertion") (emphasis added). Where a trustee makes allegations on "information and belief" unaccompanied by supporting facts and then "sidesteps the issue altogether by suggesting that the assertions are supported by the pattern of self-dealing otherwise alleged within the Complaint," the claim fails to plausibly allege actual

10

fraud. *See Brown v. Douglas (In re Dual D Health Care Operations, Inc.)*, No. 17-41320, 20-04059, 2021 Bankr. LEXIS 1934, at *24, 35 (Bankr. N.D. Tex. 2021).

### G. Kirschner Concedes that He Has No Plausible Basis to Assert that the Alleged Expense Transfers Lack Reasonably Equivalent Value (Count XXXII).

23. Similarly, Kirschner fails to plausibly allege that HCMLP did not receive "reasonably equivalent value" in exchange for the Alleged Expense Transfers, a required element for his constructive fraudulent transfer claim. 11 U.S.C.S. § 548; Tex. Bus. & Com. Code § 24.005. Kirschner fails to provide any information related to invoices or other details concerning the two alleged transfers to Ellington, conceding that he is "unable" to locate documentation bearing on the issue. Opp. ¶ 171. Kirschner instead asks the Court to presume a lack of reasonably equivalent value based on a citation to an attorney's oral argument from another proceeding concerning "***other*** requests for reimbursement" not at issue here. *Id*. (emphasis added).

24. Aside from being irrelevant, the Court can only consider the "well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint." *E.g.*, *Dorsey v. Portfolio Equities, Inc*, 540 F.3d 333, 338 (5th Cir. 2008). And the Amended Complaint does not allege anything aside from "identification of the alleged transfers" and conclusory assertions that HCMLP received less than reasonably equivalent value. Accordingly, the constructive fraudulent transfer claim must be dismissed for failure to plead a plausible claim for relief. *See, e.g.*, *In re Reagor-Dykes Motors, LP*, 2021 Bankr. LEXIS 1643, at *11-12 (dismissing constructive fraudulent transfer where the complaint did not have factual allegations to support lack of reasonably equivalent value); *Crescent Res. Litig. Tr. v. Nexen Pruet, LLC (In re Crescent Res., LLC)*, No. 09-11507, 11-01082, 2012 Bankr. LEXIS 287, at *24-25 (Bankr. W.D. Tex. 2012) (dismissing section 548 claims).

## CONCLUSION AND REQUESTED RELIEF

25. The Court should dismiss without prejudice all Non-Core Causes of Action against Ellington because Kirschner lacks standing, and the Bankruptcy Court lacks subject matter jurisdiction to adjudicate them. Moreover, the Court should dismiss with prejudice ten of the claims against Ellington because the Amended Complaint fails to state claims against him for which relief can be granted.

Dated: November 14, 2022

By: */s/ Michelle Hartmann*
Michelle Hartmann
State Bar No. 24032402
**BAKER & MCKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
**BAKER & MCKENZIE LLP**
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
Email: blaire.cahn@bakermckenzie.com
(*Admitted pro hac vice*)

*Counsel for Scott Ellington*

**CERTIFICATE OF SERVICE**

I certify that on November 14, 2022, a true and correct copy of the above and foregoing document was served via electronic email through the Court's CM/ECF system to the parties that have requested or consented to such service.

/s/  *Michelle Hartmann*
Michelle Hartmann