# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | Adv. Pro. No. 21-03076-sgj |
| *Plaintiff* | **REPLY OF DEFENDANTS JAMES DONDERO, THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC. IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET | |

RECOVERY, LTD.,

*Defendants.*

**REPLY OF DEFENDANTS JAMES D. DONDERO, THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC. IN SUPPORT OF MOTION TO DISMISS**

ii

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. KIRSCHNER'S OPPOSITION DOES NOT SALVAGE DEFICIENCIES IN
THE AMENDED COMPLAINT ......................................................................................... 1

    A. Kirschner's Case For Subject Matter Jurisdiction Is Unavailing ........................... 1

    B. Kirschner's Arguments Regarding Standing Are Wrong ...................................... 2

    C. Kirchner Is Wrong About Delaware Partnership Law ........................................... 3

    D. Kirschner Fails To Identify Any Proper Allegation Of Civil Conspiracy ............. 6

    E. Kirschner's Opposition Cannot Salvage His Unjust Enrichment And
Money Had And Received Claims ........................................................................ 6

    F. Kirschner Conversion Claim Is Insufficiently Pleaded ......................................... 7

    G. Kirschner's Alter Ego Claims Fail ........................................................................ 8

    H. Kirschner May Not Step Into the Shoes Of The IRS To Assert Claims
More Than Four Years Old .................................................................................. 11

III. CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Artho*,
  587 B.R. 866 (Bankr. N.D. Tex. 2018) ................................................................................6

*Bates Energy Oil & Gas v. Complete Oilfield Servs.*,
  361 F. Supp. 3d 633 (W.D. Tex. 2019) ................................................................................7

*Brickell Partners v. Wise*,
  794 A.2d 1 (Del. Ch. 2001) ...............................................................................................3, 5

*Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Cap. Grp. Glob. I LLC*,
  2019 WL 148454 (D. Del. Jan. 9, 2019) ..............................................................................9

*Cont'l Ins. Co. v. Rutledge & Co.*,
  750 A.2d 1219 (Del. Ch. 2000) ............................................................................................4

*Craig's Stores of Tex., Inc. v. Bank of La.* (*In re Craig's Stores of Tex., Inc.*),
  266 F.3d 388 (5th Cir. 2001) ................................................................................................2

*EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*,
  No. CIV.A. 3184-VCP, 2008 WL 4057745 (Del. Ch. Sept. 2, 2008) ..................................10

*Ellis v. Wells Fargo Bank, N.A.*,
  2014 WL 12596473 (S.D. Tex. Feb. 10, 2014) ....................................................................8

*In re Essar Steel Minn. LLC*,
  602 B.R. 600 (Bankr. D. Del. 2019) ....................................................................................8

*Feeley v. NHAOCG, LLC*,
  62 A.3d 649 (Del. Ch. 2012) ................................................................................................5

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
  251 A.3d 694 (Del. Ch. 2021) ............................................................................................11

*Miller v. Am. Real Estate Partners, L.P.*,
  2001 WL 1045643 (Del. Ch. Sept. 6, 2001) .........................................................................4

*In re Northstar Offshore Grp., LLC*,
  616 B.R. 695 (Bankr. S.D. Tex. 2020) ...............................................................................12

*In re Okedokun*,
  593 B.R. 469 (Bankr. S.D. Tex. 2018) .................................................................................7

*Ryan v. Buckeye Partners, L.P.*,
    2022 WL 389827 (Del. Ch. Feb. 9, 2022) ..................................................................5

*In re SunCoke Energy Partners, L.P.*,
    2020 WL 5411286 (D. Del. Sept. 9, 2020) .................................................................3

*Trevino v. Merscorp., Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008) ...........................................................................9

*In re United Operating*,
    540 F.3d 351 (5th Cir. 2008) .................................................................................2, 3

*United States v. Golden Acres, Inc.*,
    702 F. Supp. 1097 (D. Del. 1988) ............................................................................10

*In re Vaughn Co.*,
    498 B.R. 297 (Bankr. D.N.M. 2013) ........................................................................12

*VTX Communications, LLS v. AT&T Inc.*,
    2020 WL 4465968 (S.D. Tex. Aug. 4, 2020) .............................................................5

**Statutes**

Bankruptcy Code § 544 ...........................................................................................11, 12

Del. Code Ann. Tit.6, § 17-1101(d) ................................................................................3

Delaware Revised Uniform Limited Partnership Act ..................................................3, 4

**Other Authorities**

LPA, *Kirschner* ...............................................................................................................3

I.  **INTRODUCTION**

The Litigation Trustee's Response in Opposition to Defendants' Motion to Dismiss ("Opposition") only underscores why the Amended Complaint fails to state a claim. The Litigation Trustee ignores or misstates applicable law, asks the Court to ignore language of the applicable Limited Partnership Agreement that directly conflicts with many of the Litigation Trustee's claims, and in some instances fails even to respond to the arguments set forth in the Motion to Dismiss ("Motion") filed by Defendants James D. Dondero, The Dugaboy Investment Trust, Get Good Trust, Hunter Mountain Investment Trust, Rand PE Fund I, LP, and Strand Advisors, Inc. (collectively, "Defendants"). In short, the Litigation Trustee cannot overcome the fundamental deficiencies highlighted in Defendants' Motion to Dismiss, and the Motion should be granted.

II. **KIRSCHNER'S OPPOSITION DOES NOT SALVAGE DEFICIENCIES IN THE AMENDED COMPLAINT[1]**

A.  **Kirschner's Case For Subject Matter Jurisdiction Is Unavailing**

Kirschner has no answer to most of the points made in Defendants' Motion regarding subject matter jurisdiction.[2] As Defendants explained, under binding Fifth Circuit precedent, post-confirmation "related to" jurisdiction is extraordinarily limited—it can only be exercised to adjudicate claims arising from pre-petition conduct that directly implicate the implementation of the plan of reorganization. *See* Motion at 10-11 (citing cases). Unlike the cases cited in Kirschner's Opposition, the claims at issue here arise from both pre- and post-petition conduct. *See* Am. Compl., ¶¶ 9, 59, 65, 72 n.12, 78-79, 96-104, 125, 128-29, 168-171, 195, 203, 207, 215,

---

[1] Kirschner filed a 111-page opposition to the various motions to dismissed filed by the named defendants in this lawsuit. Notwithstanding that each defendant has different arguments with respect to each of Kirschner's claims, Kirschner would only agree to give each defendant 13 pages in reply. As a result, Defendants incorporate by reference the arguments made by the other defendants in their reply briefs, as if fully set forth herein.

[2] Kirschner's main argument is that this Court has already resolved the issue in connection with its ruling on Defendants' motions to withdraw the reference. Opp., ¶¶ 55-56. But the Court's decision is not final—it has not yet been approved by the District Court—nor is it correct.

251, 289, 292, 348-354, 374, 420, 422, 427, 430, 435-37.[3] And other than the fact that a Litigation Trustee appointed pursuant to the Plan is prosecuting the claims, the claims have nothing to do with the Plan. Instead, they are garden-variety state-law claims that belong in state, not federal court.[4] These are not the type of claims that the Fifth Circuit contemplated would be captured by the very limited, post-confirmation "related to" jurisdiction standard. The Amended Complaint cannot be adjudicated in this Court (or any federal court) and should be dismissed.

**B. Kirschner's Arguments Regarding Standing Are Wrong**

The Litigation Trustee's Opposition demonstrates that the Plan's list of purportedly reserved claims is tantamount to a "blanket reservation of 'any and all claims,'" which is insufficient to retain claims under binding Fifth Circuit precedent. *See* Motion at 7; *In re United Operating*, 540 F.3d 351, 365 (5th Cir. 2008) ("blanket reservation of 'any and all claims' arising under the Code," and "specific reservation of other types of claims under various Code provisions" insufficient to preserve state-law claims).

The Litigation Trustee claims that the Plan's reservation is not a "blanket reservation" because it "lists specific causes of action and specific targets of such causes of action." Opp., ¶ 60. But in the very next paragraph, the Litigation Trustee asserts that the Plan enables the Litigation Trustee to pursue claims against Defendants even though "those claims are not listed by name on the Schedule of Causes of Action" in the Plan. Opp., ¶ 61. According to the Litigation Trustee, the Plan reserved not only the listed causes of action, but also any causes of action "based

---

[3] The one case cited by Kirschner involving any post-petition conduct is *Craig's Stores of Tex., Inc. v. Bank of La.* (*In re Craig's Stores of Tex., Inc.*), 266 F.3d 388, 390 (5th Cir. 2001), where the Fifth Circuit held that the bankruptcy court lacked "related to" jurisdiction.

[4] This Court has candidly acknowledged that the majority of the claims set forth in the Amended Complaint are non-core, state-law claims. *See Kirschner v. Dondero, et al.* Adv. Proc. Dkt. 151 at 6-7. Kirschner does not dispute this. Yet Kirschner has not alleged a basis for federal court jurisdiction other than its tenuous "related to" argument. There is no federal question involved, and complete diversity is lacking, so there is no basis for diversity jurisdiction either.

2

on" or "similar in nature to" those causes of action. *Id.*, ¶ 61-62. Such a reservation is indistinguishable from a reservation of "any and all claims" or "other types of claims under various Code provisions" and is ineffective to reserve the state-law claims under *United Operating*.

In any event, the Litigation Trustee admits that the Plan's laundry list of claims does not include claims for illegal distributions under the DRULPA (Count III), declaratory judgment (Counts VI-IX), aiding and abetting or knowing participation in breach of fiduciary duty (Count XV), or civil conspiracy (Count XVI). The Litigation Trustee nonetheless argues these claims were adequately preserved because they are "based on" or "similar in nature to" claims expressly listed in the Plan, Opp. ¶¶ 61-62, but that is exactly the type of reservation that *United Operating* and its progeny prohibit. At the very least, these claims were not retained by the Plan or Supplement and must be dismissed.

### C. Kirchner Is Wrong About Delaware Partnership Law

As Defendants explained in their Motion, the Court should dismiss Counts IV, V, XIV, XV, and XVI because HCMLP's applicable Limited Partnership Agreement ("LPA") precludes breach of fiduciary claims. In its opposition, the Kirschner argues that Defendants' invocation of the LPA is an "affirmative defense" that cannot be decided on a motion to dismiss. That is not true. In Delaware, breach of fiduciary claims may be dismissed as precluded by the governing partnership agreement. *See, e.g.*, *In re SunCoke Energy Partners, L.P.*, 2020 WL 5411286, *4 (D. Del. Sept. 9, 2020) (granting motion to dismiss breach of fiduciary duty claim as barred by the partnership agreement's safe harbor provision). As Kirschner acknowledges, the Delaware Revised Uniform Limited Partnership Act ("DRULPA") permits a limited partnership to restrict or even eliminate all fiduciary duties by contract, which is the case here. *See* Motion at 16; Opp., ¶ 74; *see also* LPA, *Kirschner*, Adv. Proc. Dkt. 143-1, §§ 4.1(g), (i); Del. Code Ann. Tit.6, § 17-1101(d) (West); *Brickell Partners v. Wise*, 794 A.2d 1, 3-4 (Del. Ch. 2001).

3

Kirschner nonetheless argues that the LPA's carve-outs for "gross negligence or willful or wanton misconduct" and "bad faith" saves his breach of fiduciary duty claim. Opp., ¶¶ 75-76. Specifically, Kirschner insists that the Amended Complaint's allegations of self-dealing and gross negligence/willful misconduct are sufficient to state a claim for breach of fiduciary duty even in light of the LPA's limiting language. Opp., ¶ 77. Again, Kirschner is wrong.

The main problem with Kirschner's position is that it relies entirely on breach of fiduciary standards articulated by the DRULPA, which the LPA expressly displaces. Nor is the case law cited by Kirschner helpful to its position. For example, Kirschner insists that the LPA precludes general partner from engaging in business activities in direct competition with HCMLP if the general partner acts in "bad faith." Opp., ¶ 75 (citing *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219 (Del. Ch. 2000)). But in *Rutledge*, the company's LPA did not disclaim or limit liability for breach of fiduciary duty in connection with business conflicts of interest. *Id.* at 1238 ("No contractual language eschews the general partner's duty to the limited partner to refrain from entering into self-dealing transactions."). Critically, unlike in *Rutledge*, HCMLP's LPA specifically authorizes Strand and Mr. Dondero to "have business interests and activities in direct competition with [HCMLP]." LPA § 4.1(f).

The other case law cited by Kirschner only underscores why his breach of fiduciary duty allegations are insufficient. Kirschner argues that the LPA's language disclaiming fiduciary duties is not "plain and unambiguous." Opp., ¶ 74 (citing *Miller v. Am. Real Estate Partners, L.P.*, 2001 WL 1045643, at *8 (Del. Ch. Sept. 6, 2001)). But in *Miller*, the defendants argued that language vaguely giving the general partner "sole discretion," supplanted traditional fiduciary duties under Delaware law. *Id.* The court deemed that language insufficiently specific. By contrast, under the heading "Outside Activities Conflicts of Interest," the LPA plainly and unambiguously sanctions

4

"any action" undertaken by Strand (or Mr. Dondero, acting as Strand's agent) in the event of a conflict of interest, regardless of any "standard of care or duty imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation." LPA, §§ 4.1(g), (i).[5] As the federal court in *VTX Communications, LLS v. AT&T Inc.* explained, where the partnership agreement permits the general partner to engage in "self-dealing transactions" in the "absence of gross negligence or willful misconduct," such language reduces the general partners duties from a fiduciary duty to merely a duty of "good faith." 2020 WL 4465968, at *19 (S.D. Tex. Aug. 4, 2020). Under these circumstances, "the inquiry with respect to the Defendants' alleged breach is addressed by contractual standards," and "Plaintiffs' claims for breach of fiduciary duty cannot survive." *Id.*

That is precisely the case here. There is no allegation in the Amended Complaint explaining why any action undertaken by Strand could be "bad faith" in light of the explicit language of the LPA sanctioning the very activities on which Kirschner's breach of fiduciary duty claim is based. Indeed, the Amended Complaint completely ignores the LPA.[6] Absent some allegation of how Strand's activities were incompatible with what the LPA expressly allowed it to do, Kirschner's breach of fiduciary duty claim cannot survive. *See Brickell Partners v. Wise*, 794 A.2d 1, 4 (Del. Ch. 2001) (granting motion to dismiss where "the plaintiff ha[d] not pled facts suggesting that the defendants did not comply with the [LPA] itself."); *see also Ryan v. Buckeye Partners, L.P.,* 2022 WL 389827 at *12 (Del. Ch. Feb. 9, 2022) (mere recitation that defendant acted "willfully and wantonly" or "in bad faith" is not sufficient; dismissal appropriate where

---

[5] Other case law cited by Kirchner is similarly distinguishable. *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 664 (Del. Ch. 2012) (cited in Opp., ¶ 74) (partnership agreement at issue contained no language expressly exculpating general partner for engaging in conflicts of interest).

[6] This choice was deliberate. Kirschner's original complaint referenced the partnership agreement. *See* Adv. Proc. Dkt. 1, ¶ 387.

5

plaintiff "ha[d] not well-pled that Defendants did not believe the Transaction was in the best interests of Buckeye and its unitholders").

### D. Kirschner Fails To Identify Any Proper Allegation Of Civil Conspiracy

The Litigation Trustee has no answer to Defendants' argument that the Amended Complaint fails to allege a meeting of the minds, which the Litigation Trustee acknowledges is required to state a claim for civil conspiracy. *See* Opp., ¶ 103; *In re Artho*, 587 B.R. 866, 886 (Bankr. N.D. Tex. 2018) (granting motion to dismiss where plaintiff "has not pleaded facts that suggest a meeting of the minds between two or more persons for the purposes of causing [plaintiff] injury."). Kirschner says that his pleading failure is irrelevant because the Court can simply infer a meeting of the minds. *See* Opp., ¶ 106. Kirschner cites no legal authority for this proposition, and there is none. The Amended Complaint's failure to allege a critical element of civil conspiracy requires dismissal of the claim.

### E. Kirschner's Opposition Cannot Salvage His Unjust Enrichment And Money Had And Received Claims

The Litigation Trustee's unjust enrichment or money had and received claim, Count XXVI, also fails for two reasons. First, as Defendants explained in their Motion, unjust enrichment is not a stand-alone claim in Texas. Motion at 24-25 (citing cases). The Litigation Trustee does not disagree. Instead, it now says it did not plead unjust enrichment, but instead pleaded a money had or received claim "on an unjust enrichment theory." Opp. at 60. That is not true. The Amended Complaint clearly asserts a claim for unjust enrichment. *See* Am. Compl., ¶¶ 362-370 ("Unjust Enrichment or Money Had and Received") (emphasis added). The Litigation Trustee does not dispute that unjust enrichment is not a stand-alone claim in Texas, and it should be dismissed.

In any event, Kirschner has not pleaded a viable money had or received claim. Texas law requires the plaintiff to "identify what money [Defendant] actually received individually and why,

6

exactly, that money belongs to [Plaintiff]." *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 675 (W.D. Tex. 2019). As Defendants pointed out in their Motion, the Amended Complaint contains no such allegations. Motion at 25. The Litigation Trustee does not point to any allegation that meets this requirement. Instead, he argues that the Complaint's allegation that "approximately $3 million" was diverted to an unspecified Cayman Islands account is sufficient. Opp., ¶ 112 n.29; *see also* Am. Compl., ¶ 366. That does not come close to meeting the pleading requirement for a money had and received claim. As Defendants explained, there is no allegation that Mr. Dondero ever received the alleged money individually or personally, which Texas law requires. Motion at 25 (citing *Bates Energy Oil. & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 675 (W.D. Tex. 2019)).[7]

### F. Kirschner Conversion Claim Is Insufficiently Pleaded

The Litigation Trustee' conversion claim, Count XXV, is also insufficiently pleaded. Defendants explained in their Motion that the Litigation Trustee's conversion claim fails because he did not allege that Mr. Dondero "unlawfully and without authorization" exercised control over the funds at issue and also fails to allege that any funds were ever delivered to Mr. Dondero or that the funds are traceable. Motion at 23-24. In response, Kirschner insists that he alleges control by alleging "on information and belief" that Mr. Dondero directed HCMLP's counsel, Wick Phillips to withhold funds due to HCMLP. Opp., ¶ 185; Am. Compl., ¶ 360. That is not the type of "control" contemplated by the relevant law. *See In re Okedokun,* 593 B.R. 469, 586 (Bankr. S.D. Tex. 2018) ("because no money was delivered [defendants] for safekeeping, [plaintiff's] claim for

---

[7] Kirschner attempts to distinguish *Bates*, arguing that the case does not require an allegation of "specific monetary amounts" belonging to HCMLP during a specific time period. Opp., ¶ 112. What Kirschner ignores is that the *Bates* court dismissed a claim for money had and received where, as here, "no allegation places [plaintiff's] money in [defendant's] pocket or that [defendant] personally received anything belonging to [plaintiff]." Motion at 25; *Bates*, 361 F. Supp. 3d at 675-76.

7

conversion of money must fail"). And the allegation that Kirschner relies upon makes clear that it was Wick Phillips and two Cayman Island entities that exercised control of the funds—not Mr. Dondero. Am. Compl., ¶¶ 356, 360. This is not sufficient.

The Litigation Trustee's insistence that he has pleaded the funds can be traced is also wrong. *See* Opp., ¶ 187. Merely reciting the amount of funds, the payment intermediary, and the recipient of the funds is insufficient. Texas law requires that the complaint allege facts permitting the identification of the specific funds moving to and from *specific accounts*. *Ellis v. Wells Fargo Bank, N.A.*, 2014 WL 12596473, at *5-6 (S.D. Tex. Feb. 10, 2014), report and recommendation adopted, 2014 WL12596480 (S.D. Tex. Mar. 5, 2014). If the specific funds are traceable, the Litigation Trustee must allege *how* they are traceable. He has not done so, and the Court should dismiss the conversion claim.

    **G.    Kirschner's Alter Ego Claims Fail**

Kirschner's arguments also are insufficient to salvage his alter ego claims against Mr. Dondero and Strand.[8] Kirschner acknowledges that stating a claim for alter ego liability requires factual allegations demonstrating that "the corporation and its shareholders operated as a single economic entity," Opp., ¶ 139. Kirschner also acknowledges that a finding of alter ego liability hinges on the existence of "some combination" of factors, including undercapitalization, a failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor entity, siphoning of corporate funds to the defendant, the absence of corporate records, and evidence that the corporation is merely a façade for the dominant shareholder. *Id.*, ¶¶ 139-40.

---

[8] As defendants NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA") explain in their Reply to the Litigation Trustee's Opposition, Kirschner's alter ego claims fail first and foremost because Delaware does not recognize an independent claim for alter ego liability. *See* NexPoint/HCMFA Reply, ¶ 15 (citing *In re Essar Steel Minn. LLC*, 602 B.R. 600, 606 (Bankr. D. Del. 2019)). Defendants hereby incorporate by reference the argument regarding alter ego liability made by NexPoint and HCMFA.

But the Amended Complaint does not allege the existence of "some combination" of these factors. It does not allege undercapitalization, the absence of corporate records, or the nonpayment of dividends.[9] It does not allege that Mr. Dondero or Strand siphoned HCMLP's corporate funds to themselves. Rather, the Amended Complaint alleges that Mr. Dondero siphoned value from HCMLP "to other entities," which is insufficient to hold *Mr. Dondero* liable in alter ego. Opp., ¶ 233. Further, virtually all of the transactions that Kirschner complains about were expressly permitted under the LPA. *See* Section C, *infra* at 3-5. The Amended Complaint also does not sufficiently allege that HCMLP was "merely a façade" for Mr. Dondero or Strand (Am. Compl., ¶¶ 228-238), nor could it. Kirschner does not dispute that, for 26 years prior to filing a chapter 11 petition, HCMLP operated as a legitimate (and heavily regulated) Registered Investment Advisor for the benefit of its managed funds and investors. Motion at 2.[10]

The alter ego allegations are particularly deficient with respect to Strand. The most the Amended Complaint says about Strand is that it failed to hold stockholder meetings at regular intervals, notwithstanding that it had only one stockholder. *See* Am. Compl., ¶ 111. That solitary allegation is not sufficient to hold Strand liable as HCMLP's alter ego. *See Trevino v. Merscorp., Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (citing in Opp., ¶ 139).[11]

As for Mr. Dondero, Kirschner alleges that Mr. Dondero "failed to observe corporate formalities with regard to HCMLP," but the only thing Kirschner points to in this regard is that

---

[9] To the contrary, the Amended Complaint alleges that HCMLP paid distributions to shareholders nearly every year in the lead-up to bankruptcy. *See* Am. Compl., ¶¶ 140-156.

[10] Kirschner argues that it has adequately pleaded HCMLP was a "mere façade" for Mr. Dondero because it has alleged Mr. Dondero acted as HCMLP's solitary decision-maker in all facets of the company's business. Opp., ¶ 141 (citing *Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Cap. Grp. Glob. I LLC*, 2019 WL 148454, at *5 (D. Del. Jan. 9, 2019)). But *Compagnie des Grands Hotels* is inapposite. In that case, unlike here, there was not a partnership agreement expressly permitting the general partner to exercise "full control over all activities of the partnership." *See* LPA, § 4.1(a).

[11] In any event, it would make no sense to hold Strand liable as HCMLP's alter ego if, as Kirschner contends, Strand may be held liable for HCMLP's debts solely by virtue of its status as its general partner. *See* Opp., ¶¶ 134-36.

9

HCMLP employees performed personal services for Mr. Dondero. *See* Am. Compl., ¶ 231. This allegation is insufficient for at least two reasons. First, this is not the type of failure to observe corporate formalities that the case law contemplates. Rather, the courts look at whether the corporation employed appropriate contracting procedures, had appropriate corporate policies, kept proper accounting records, and the like. *See EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, No. CIV.A. 3184-VCP, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008) (relying on tax filings and books and records as evidence of corporate formalities); *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1105 (D. Del. 1988) ("Of particular relevance to this inquiry [of corporate formalities] are whether adequate corporate records were kept, directors and shareholders met regularly, and corporate directors and officers functioned properly."). Kirschner makes none of these allegations. Nor does Kirschner allege that the use of corporate employees for services on behalf of Mr. Dondero—Strand's President and the person charged with managing HCMLP's business affairs—constituted gross negligence or willful misconduct. In the absence of such allegation, the LPA insulates Mr. Dondero from all liability. *See* LPA, § 4.1(i)(i).

Further, Kirschner's allegation that Mr. Dondero exercised total control of HCMLP a basis to hold him liable as the company's alter ego is insufficient. As mentioned, the LPA expressly permitted Strand to exercise total control over the affairs of HCMLP, and Mr. Dondero was Strand's President and sole director. *See* Motion at 16-17; LPA, § 4.1(a). Strand could not act except through a human being, which is precisely why the LPA insulates Mr. Dondero from liability for actions taken that are consistent with Strand's rights of ownership and control. LPA, § 4.1(i)(i).

Finally, Kirschner's argument that Dugaboy—a Delaware statutory trust—may be held liable as the alter ego of Mr. Dondero, an individual, makes no sense and finds no support in law.

10

The whole idea behind alter ego liability is to pierce the *corporate* veil to hold companies and individuals liable for a *company's* debt. Kirschner's only response is to cite case law regarding "reverse veil piercing." *See* Opp., ¶ 146 (citing *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 714 (Del. Ch. 2021)). But the case cited provides no support for Kirschner's position. *Manichaean*, like all reverse veil piercing cases, involves the imposition of liability on a business organization for the liability of its *corporate* owners. *Manichaean*, 251 A.3d at 710. At its most basic level, reverse veil piercing occurs in the corporate parent-subsidiary context. Kirschner cites no Delaware case where a corporate entity has been held liable for the debts of an individual. That would make no sense. An individual has no corporate veil to pierce.[12] Kirschner's claim seeking to hold Dugaboy liable as Mr. Dondero's alter ego should be dismissed.

      **H.    Kirschner May Not Step Into the Shoes Of The IRS To Assert Claims More Than Four Years Old**

The Litigation Trustee's argument in favor of extending the statute of limitations to 10 years fails for several reasons.[13] First, the Litigation Trustee still has not established any connection between any unsecured creditor and its respective voidable transfer in order to invoke Bankruptcy Code § 544. To utilize Section 544(b)(1) and acquire the benefit of the longer, four-year statute of limitations for avoidance actions prescribed under state law (the TUFTA), the Litigation Trustee must plead the existence of a triggering unsecured creditor for *each* of the alleged fraudulent transfers at issue. In its Opposition, Kirschner argues it has done so by alleging that "at least one or more secured creditors," could have avoided the transfers. Opp., ¶ 156; Am. Compl., ¶ 39. This is insufficient. There are no allegations that an unsecured creditor exists that

---

[12] Nor does Kirschner cite to any case law in which a Delaware statutory trust—a beast of a different nature with different protections under Delaware law—has been held liable as an alter ego.

[13] Defendants hereby incorporate by reference and explicitly rely upon arguments made by Defendant Mark K. Okada and the Okada Affiliated Parties in their simultaneously-filed Reply in Support of Motion to Dismiss.

could avoid each of the transfers at issue. *In re Northstar Offshore Grp., LLC,* 616 B.R. 695, 724 (Bankr. S.D. Tex. 2020). Indeed, the Amended Complaint and Opposition fail to tether the alleged existence of an unsecured creditor to *any* of the transfers at issue. That is fatal to the Litigation Trustee's fraudulent transfer claims.[14]

Second, the Litigation Trustee attempts to distinguish *In re Vaughn Co.*, 498 B.R. 297 (Bankr. D.N.M. 2013), a case disavowing use of the golden creditor rule in the manner advocated by Kirschner, by arguing that "*[e]very court*" that has considered *Vaughn* has rejected its holding. Opp., ¶ 160, 162 (emphasis in original). But not one of the cases cited by the Litigation Trustee follows the fact pattern of this case, making the entire body of case law irrelevant.

Further, even if the Litigation Trustee could invoke the golden creditor rule, he still cannot reach transfers going back to 2010. As explained in Defendants' Motion, section 6502 is *forward looking from the date of assessment*. Motion at 13. The Litigation Trustee concedes that the IRS did not become a creditor of the Debtor until June 30, 2015, and no tax was assessed against HCMLP until November 12, 2018. Opp. ¶ 159 n.43. Accordingly, there is no basis to allow the Litigation Trustee to avoid transfers going back to 2010—*years* before the IRS became a creditor—which even the IRS would not be permitted to do.

Kirschner also has no response to the numerous policy reasons articulated by Defendants for rejecting his effort to invoke a longer lookback period in this case. As Defendants explained in their Motion, while some courts have allowed a trustee to stand in the shoes of the IRS and benefit from this ten-year lookback period, the Fifth Circuit has not sanctioned this practice. The Litigation Trustee has no answer to this argument; it merely advocates that this Court should

---

[14] In any event, as Defendants argued in their Motion, application of Section 544 would only allow the Trustee to avoid transfers dating back four years before the Petition Date—to October 16, 2015. Motion at 12. To the extent the Amended Complaint seeks to avoid transfers before that date, the Court should dismiss the Amended Complaint.

fashion a new rule in the absence of precedent. That is inappropriate, and the Court should reject Kirschner's effort to invoke the longer, ten-year lookback period.

## III. CONCLUSION

For the foregoing reasons, and as set forth in the Defendants' Motion, the Court should dismiss the counts against Defendants.

Dated: November 14, 2022

DLA PIPER LLP (US)

*/s/ Amy. L. Ruhland*
Amy L. Ruhland (Rudd)
Texas Bar No. 24043561
amy.ruhland@us.dlapiper.com
303 Colorado Street, Suite 3000
Austin, TX 78701
Tele: 512.457.7000

Jason M. Hopkins
Texas Bar No.24059969
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: 214-743-4500
Fax: 214-743-4545
Email: jason.hopkins@us.dlapiper.com

*Attorneys for Defendants James Dondero, Dugaboy Investment Trust, Get Good Trust, Hunter Mountain Investment Trust, Rand PE Fund I, LP, and Strand Advisors, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 14, 2022, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Amy L. Ruhland*
Amy L. Ruhland (Rudd)