# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | Adv. Pro. No. 21-03076-sgj |
| *Plaintiff* | |
| v. | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET | |

RECOVERY, LTD.,

*Defendants.*

# JOINDER OF JAMES D. DONDERO AND THE DUGABOY INVESTMENT TRUST IN HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.'S MOTION TO RECUSE

I. **INTRODUCTION**

Defendants James D. Dondero and The Dugaboy Investment Trust ("Dondero Parties") hereby file this joinder in the motion of Highland Capital Management Fund Advisors, L.P. ("HCMFA") to recuse Judge Stacey G. Jernigan from serving as the magistrate judge in this adversary proceeding filed by Marc S. Kirschner, as Trustee for the Litigation Sub-Trust ("Adversary Proceeding") (the "Motion"). *See* Dkts. 309, 310.

As set forth in HCMFA's moving papers, recusal of Judge Jernigan is mandatory under 28 U.S.C. § 144 and 28 U.S.C. § 455 not only because the Judge possesses an abiding animus and prejudice against Mr. Dondero and entities that the Judge perceives to be connected to Mr. Dondero, but also because the Judge's comments inside and outside the courtroom would cause any objective observer to question her impartiality. The Dondero Parties fully join in the Motion and incorporate the arguments, authorities, and supporting affidavit as if fully set forth herein.

II. **ADDITIONAL RELEVANT FACTUAL BACKGROUND**

In addition to the relevant facts set forth HCMFA's Motion, it is notable that, just days after Law360 reported on HCMFA's Motion,[1] the Bankruptcy Court issued a ruling on a separate motion to recuse filed more than four months ago in the underlying bankruptcy proceedings by the Dondero Parties and others. *See* Memorandum Opinion and Order Denying "Amended Renewed Motion to Recuse, Pursuant to 28 U.S.C. § 455," Dkt. 3675 (Mar. 5, 2023). It is particularly curious that the Court chose to refer to the Amended Renewed Motion to Recuse ("Bankruptcy Recusal Motion") in scare quotes, which itself indicates a tenor of sarcasm unbefitting a federal

---

[1] *See* Bonnie Eslinger, *Firm Sued by Highland Trustee Wants Texas Judge Recused*, Law360 (Feb. 28, 2023), available at https://www.law360.com/articles/1580953/firm-sued-by-highland-trustee-wants-texas-judge-recused.

1

judge.[2] The Judge has not used that punctuation mechanism to refer to any other motion that she has decided in the bankruptcy proceedings. Moreover, the language used by the Judge in her opinion denying the Bankruptcy Recusal Motion only underscores why recusal is warranted. In particular, the Court took the opportunity in her ruling to again:

- Criticize the Dondero Parties for filing too much material in connection with their recusal motion. *See* Dkt. 3675 at 5 (noting that "***more than 7,000 pages of material were submitted***") (emphasis in original); *see also* Aug. 31, 2022 Hr'g Tr. at 20:13-25 (accusing the Dondero Parties and their counsel of "carpet-bombing us with paper and causing us to expend resources").[3]

- Accuse the Dondero Parties of bad behavior for even seeking the relief of recusal. *See* Dkt. 3675 at 5 n.3 (surmising "anecdotally" that the Dondero Parties had deliberately filed each of their motions to recuse "on the heels of a significant case development that [they] may perceive to be adverse to their interests"); *see also* June 30, 2020 Hr'g Tr. at 82:3-11, 85:4-16.

## III. THE MOTION TO RECUSE SHOULD BE GRANTED

### A. As Set Forth In The Motion, The Court Is Biased And At The Very Least Appears Biased Against The Dondero Parties, Requiring Recusal

HCMFA laid out Jernigan's adoption of an acerbic narrative about Mr. Dondero, his entities, his perceived affiliates, and their motivations—a narrative that Highland Capital Management, L.P. ("HCMLP" or the "Debtor"), and its professionals, have repeatedly used to their advantage. The Bankruptcy Judge's discourse has effectively hamstrung any litigant associated with Mr. Dondero from asserting or defending any of its positions in this Court.

The Motion explains that the Dondero Parties do not come to this Adversary Proceeding with a clean slate. To the contrary, as has been evident for several years, Judge Jernigan has an

---

[2] *See* Wikipedia, *Scare Quotes*, available at https://en.wikipedia.org/wiki/Scare_quotes (explaining that scare quotes "can imply doubt or ambiguity in words or ideas within the marks, or even outright contempt") (internal citations omitted).

[3] Judge Jernigan implied she did not have time to review Dondero's filings or the supporting evidence of bias necessarily appended to those filings; however, she did find time to write a book during the pendency of this bankruptcy.

2

abiding animus against Mr. Dondero, the Dondero Parties, and their perceived affiliates, formed well before Mr. Dondero's firm HCMLP sought chapter 11 bankruptcy protection.

That animus became apparent during the 2018 bankruptcy of Acis Capital Management, L.P. and its general partner, Acis Capital Management GP, LLC. When HCMLP's own chapter 11 case was transferred to Judge Jernigan's court more than a year later, the Judge immediately made clear that she would *not* put aside her negative opinions formed during the Acis bankruptcy. During the pendency of the subsequently-filed HCMLP bankruptcy, Judge Jernigan has repeatedly (1) singled out the Dondero Parties and their attorneys for unfair treatment, (2) admonished the Dondero Parties and their attorneys for invoking proper legal process to protect their interests, (3) refused to credit evidence of record when presented by the Dondero Parties, and their attorneys (even where that evidence was undisputed), and (4) departed from normal procedure where doing so would harm the legal position or rights of the Dondero Parties and their attorneys.

During the HCMLP bankruptcy proceedings, the Court has repeatedly threatened the Dondero Parties and their lawyers or otherwise accused them of committing bad acts or acting in "bad faith," even when those parties and counsel are raising legitimate legal arguments or defending their rights. In addition, the Court's repeated refrain that Mr. Dondero is a "vexatious" litigant has fueled an unfair narrative in this Court, prompting those who oppose the Dondero Parties from capitalizing on the Court's refrain at every opportunity. Most recently, the Debtor took the unusual step of filing a "vexatious litigant" motion that seeks to have the District Court declare every party remotely associated with Mr. Dondero declared "vexatious" for all purposes in every proceeding pending anywhere. Had Judge Jernigan treated the Dondero Parties fairly, it is doubtful that any party would think such a grossly overreaching motion could succeed, particularly in litigation where the Dondero entities *are defending themselves*. Further, though

3

most courts use sanctions sparingly and only when absolutely necessary, Judge Jernigan has repeatedly sanctioned Mr. Dondero and his counsel or threatened them with sanctions, even when they have sought the Court's leave to act through appropriate motion practice. The Court has not imposed similar punishment (or even threatened similar punishment) on any other party to the case.

If that were not enough, the Dondero Parties, and other challengers to the Debtor have repeatedly been thrown out of court on unusual procedural technicalities. At the same time, the Court also blocked every attempt to hold the Debtor accountable for its own voluminous filings and motion practice, much less for its violations of federal law, with opinions that are often used as a soap box to further deride the Dondero Parties. The Court's repeated ad hominem attacks against Mr. Dondero, his associates, and their lawyers, and the Court's non-evidentiary assumptions about everyone's connections to Mr. Dondero further undermine any claim of objectivity.

In short, the Motion lays bare the unbalanced nature of these proceedings that raises the palpable appearance of bias. Under these circumstances, recusal is mandatory. The Motion should be granted.

### B.     Judge Jernigan's Novels

It is well-accepted that "[a] judge may not write about or discuss a pending or impending case, or disclose nonpublic information, *even in a work of fiction*." *See* American Bar Association Model Code of Judicial Conduct, Rules 2.10, 3.5. Indeed, experts in the field of judicial misconduct have explained that a judge "has a duty at all times to avoid the appearance of partiality, to maintain integrity in fact *and in appearance*." *See* Emma Cueto, *Hardcover Hazards: 4 Ethics Risks for Judges Writing Books*, Law360 (Dec. 7, 2017) (emphasis added). That is precisely why the Model Code of Judicial Conduct "forbids judges from extrajudicial activities

4

that might cast doubt on their ability to be impartial." *Id.* This is particularly true for extrajudicial writing. A judge "has a duty to write in such a manner that the ordinary reasonable person would not get the perception from the book that the judge favors a particular litigant or group of litigants . . . ." *Id.*

Judge Jernigan's novels run afoul of these established standards, and recusal is required.[4] As explained in HCMFA's Motion, Judge Jernigan has authored not one but two novels that make extraordinarily negative commentary about the *very industry* that Mr. Dondero has been a part of for decades, and about the *same financial products* that Mr. Dondero's companies have managed. And in her second novel, *Hedging Death*, the bad guy's company name is Ranger Capital—the very name given to HCMLP at its inception. Worse still, Judge Jernigan wrote these novels *while presiding over* bankruptcies involving the very same industries and financial products she describes with disdain.

In Judge Jernigan's recent opinion denying the Bankruptcy Recusal Motion, she attempts to distance herself from the novels, describing the plot lines in a self-serving (but incomplete) manner and explaining that all authors "write about 'what they know.'" Bankr. Dkt. 3676 at 34-35. Further, the Court takes pains to explain away the bizarre coincidence of using the name "Ranger Capital," insisting the name "was never mentioned in the bankruptcy case." *Id.* at 34. As set forth below, all of these excuses are without merit.

First, Judge Jernigan omits the other elements of the plot line of *Hedging Death* (all described in HCMFA's Motion) that closely parallel the financial services, products, and players at issue in HCMLP's bankruptcy. *See* Motion at 16-18. She does so because, ironically enough,

---

[4] Jernigan specifically mentions a prior case in *He Watches All My Paths*, that was also referenced during the bankruptcy. *See* August 4, 2021 Hr'g Tr. at 26:9-13 and Jernigan, Stacey, *He Watches All My Paths,* 2019 at Ch. 7 Par. 12.

5

those parallelisms do not fit her current narrative. To fairly adjudicate the present Motion, any reviewing judge should look at all parts of the novels at issue, including the parts that appear to mirror the bankruptcy case at hand.[5] That is what any "objective observer" would do.

Second, Judge's Jernigan's comment that authors "write about what they know" is precisely the problem. Again, the Code of Judicial Conduct strictly circumscribes what judges can and cannot write about, even in fiction. That is because the integrity of the judicial system requires an "appearance of impartiality," in addition to true impartiality. Indeed, the Judicial Conference of the United States warns federal judges to "***exercise special caution*** when writing about a case the judge has heard" and to "be especially careful to avoid the potential for exploitation of the judicial position." Advisory Opinion No. 55 (2009) (emphasis added). For this very reason, the highest courts of several states have cautioned that judges should not write stories that appear to resemble cases over which they presided. *See, e.g.*, Massachusetts Supreme Judicial Court CJE Opinion No. 2021-02 ("A judge may not write about or discuss a pending or impending case, or disclose nonpublic information, even in a work of fiction …. You should ensure that the promotion of your novel does not … otherwise cast doubt on your independence, integrity, or impartiality."); Alabama Judicial Inquiry Commission Advisory Opinion 99-739 ("Even after final disposition, such writing is discouraged, and a judge should not write about a capital case in which the death penalty was imposed before the sentence is carried out.").

Judge Jernigan appears to believe that the fact that her novels are fiction makes some

---

[5] A recent Financial Times even points out the physical similarities between Mr. Dondero and the antagonist described in Judge Jernigan's novel. Like Mr. Dondero, the hedge fund manager in her book saw "his boyish brown hair turned silver." Vandevelde, Mark, *Highland court saga tests fact vs fiction*, Financial Times, March 11, 2023, available at https://www.ft.com/content/dc70c282-2684-4036-a603-579e4fcd1d06. This is a parallel drawn by an objective reporter having independently read the novel.

6

difference. In her opinion denying the Bankruptcy Recusal Motion, she quips that judges are more apt to get in trouble for writing legal nonfiction than fiction, because the former might "create[] the possibility that someone is going to infer a legal viewpoint that night signal how the judge might rule in a future case." Dkt. 3676 at 34. But again, whether a work is nonfiction or fiction is irrelevant. If a work of fiction "create[s] the possibility that someone is going to infer a legal viewpoint" by the judge, that destroys the appearance of impartiality, and that requires recusal. That is precisely what Judge Jernigan's novels have done here, as set forth in detail in the Affidavit of James D. Dondero, attached as Exhibit A to HCMFA's Motion.

Finally, Judge's Jernigan's purported ignorance about HCMLP's origin as a firm called Ranger is belied by the records of both the HCMLP and Acis bankruptcies. A search of docket entries in the Highland bankruptcy proceeding alone reveals that "Ranger" has been mentioned over 100 times in case filings.[6] Among other examples, Highland's Schedule of Executory Contracts and Unexpired Leases lists Ranger Asset Management LP as a party with whom Highland has a Collateral Management Agreement. *See* Dkt. 247 at 60-61. By virtue of this disclosure, Ranger Asset Management LP is included on numerous service lists filed throughout the bankruptcy proceeding. *See, e.g.*, Dkt. 1097 at 101; Dkt. 1322 at 110; Dkt. 1630 at 144; Dkt. 1719 at 7. And the agreement with Ranger Asset Management LP is listed on the Schedule of Contracts and Leases to be Assumed filed in connection with the February 2021 Plan confirmation hearing. Dkt. 1895 at 60. In light of these filings, it seems highly unlikely that the Court has "never once heard" of Ranger.

Further, as mentioned in HCMFA's Motion, Highland's early history as Ranger Asset

---

[6] This point was also made in a recent newsletter published by Semafor. *See* Hoffman, Liz et. al., *Semafor Business Newsletter: Crypto Courtship*, Semafor, March 9, 2023 ("In her ruling, Stacey Jernigan wrote that she was unaware of that fact, though it's mentioned in court filings.").

7

Management is discussed on NexPoint's publicly-available website,[7] and on the version Highland's webpage available at the time this proceeding was commenced in October 2019.[8] That should be more than sufficient to lead any rational and objective observer to conclude that Judge Jernigan drew the name from her experience as the presiding judge in HCMLP's bankruptcy. And that is sufficient to require recusal.

IV. **CONCLUSION**

For all of the foregoing reasons, as well as the reasons set forth in HCMFA's Motion and the accompanying exhibits and evidence, the Motion should be granted. The Dondero Parties respectfully request that Judge Jernigan be immediately recused from the *Kirschner* adversary proceeding.

Dated: March 17, 2022

Respectfully submitted,
DLA PIPER LLP (US)

*/s/ Jason M. Hopkins*
Amy L. Ruhland (Rudd)
Texas Bar No. 24043561
Amy.Ruhland@us.dlapiper.com
303 Colorado Street, Suite 3000
Austin, TX 78701
Tele: 512.457.7000

Jason M. Hopkins
Texas Bar No.24059969
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: 214-743-4500/Fax: 214-743-4545
Email: jason.hopkins@us.dlapiper.com
*Attorneys for Defendants James Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc.*

---

[7] https://www.highlandfunds.com/history/page/2/.
[8] http://web.archive.org/web/20191016172914/https://www.highlandcapital.com/about-us/our-history/.

8

## **CERTIFICATE OF SERVICE**

The undersigned hereby certified that, on this the 17th day of March, 2023, true and correct copies of this document were electronically served by the court's ECF system on parties entitled to notice thereof, including on counsel Plaintiff.

                                          /s/ *Jason M. Hopkins*
                                          Jason M. Hopkins