Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendant NexPoint Advisors, L.P.*
*and Highland Capital Management Fund Advisors, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | **Case No. 19-34054-sgj11** |
| **Reorganized Debtor.** | |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,** | |
| **Plaintiff,** | |
| **v.** | |
| **JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,** | **Adv. Pro. No. 21-03076-sgj** |
| **Defendants.** | |

## OBJECTION OF NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. TO MOTION TO SUBSTITUTE

Defendants NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA") (together, "Defendants") hereby file this Objection to the *Motion to Substitute* (the "Motion") [Dkt. 357] filed by Mark S. Kirschner, as Litigation Trustee of the Highland Litigation Sub-Trust ("Litigation Trustee"), and Hunter Mountain Investment Trust ("HMIT") (collectively "Movants"), requesting that the Court substitute HMIT as the Plaintiff of record in place of the Litigation Trustee in the above-captioned proceeding pursuant to Federal Rule of Civil Procedure 25(c).

### BACKGROUND

1.      On October 16, 2019, Highland Capital Management, L.P. ("HCMLP" or "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      On November 24, 2020, HCMLP filed the Fifth Amended Plan of Reorganization [Dkt. 1472, as modified by Dkt. 1808] (the "Plan"). Thereafter, on February 22, 2021, the Bankruptcy Court entered the Order (I) Confirming the Fifth Plan of Reorganization of Highland Capital Management, L.P. (As Modified) and (II) Granting Related Relief [Dkt. 1943].

3.      On August 11, 2021, more than four years ago, HCMLP filed the Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. [Dkt. 2700], thereby announcing that Plan had gone effective.

4.      On October 15, 2021, the Litigation Trustee commenced this Adversary Proceeding in the Bankruptcy Court, filing the Complaint and Objection to Claims [Dkt. 1] (the "Complaint").

5.      On January 21, 2022, NexPoint and HCMFA filed their *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against Defendants* (the "NP

Withdrawal Motion") [Dkt. 39] with this court seeking to withdraw the reference of this

proceeding to the District Court for the Northern District of Texas (the "District Court") pursuant

to 28 U.S.C. § 157.

6.      Several other defendants in this Adversary Proceeding likewise filed motions to

withdraw the reference to the District Court:

- Defendants Scott Ellington, Isaac Leventon, Frank Waterhouse, and CPCM, LLC (collectively, the "Former Employee Defendants") filed a *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants* [Dkt .27];

- Defendants Mark A. Okada, The Mark & Pamela Okada Family Trust – Exempt Trust #1 and Lawrence Tonomura in his Capacity as Trustee, and The Mark & Pamela Okada Family Trust – Exempt Trust #2 and Lawrence Tonomura in his Capacity as Trustee filed the *Motion of the Okada Parties to Withdraw the Reference* [Dkt. 36];

- Defendants James Dondero, The Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc. filed the *Motion to Withdraw the Reference* [Dkt. 45];

- Grant James Scott filed the *Motion to Withdraw Reference* [Dkt. 50]; and

- CLO HoldCo, Ltd., Charitable DAF HoldCo, Ltd., Charitable DAF Fund, L.P., and Highland Dallas Foundation filed the *Motion to Withdraw the Reference* [Dkt. 59].

The foregoing and the NP Withdrawal Motion are referred to as the "Withdrawal Motions."

7.      Most defendants that filed Withdrawal Motions also filed joinders to the motions

filed by their fellow defendants [*See, e.g.*, Dkt. 38, Dkt. 41, Dkt. 52].

8.      HMIT and Rand PE Fund I, LP, Series 1 also filed a *Nominal Joinder in Multiple*

*Pending Motions to Withdraw the Reference* [Dkt. 71].

9.      The Withdrawal Motions all sought withdrawal of the reference of this Adversary

Proceeding pursuant to 28 U.S.C. § 157.

10.     In the Withdrawal Motions, the defendants generally argued, among other things, that the claims asserted against them in the Complaint implicated substantial and material questions of non-core state-law and federal securities law claims that did not implicate the implementation or execution of the confirmed Plan or administration of the Debtor's bankruptcy case and that the that there is not "related to" subject matter jurisdiction under 28 U.S.C. § 1334(b) with regard to the 36 causes of action asserted in this Adversary Proceeding.

11.     The Withdrawal Motions were transmitted to the District Court and assigned Case No. 22-cv-00203.

12.     On January 18, 2022, the Former Employee Defendants also filed a *Motion to Stay the Adversary Proceeding Pending Resolution of the Motion to Withdraw the Reference* (the "Stay Motion") [Dkt. 30], which was joined by substantially all the defendants that filed Withdrawal Motions.

13.     On March 3, 2022, the court held a hearing on the Stay Motion. The transcript of that hearing is available at Docket 96 in this Adversary Proceeding.

14.     On March 8, 2022, the court issued its order [Dkt. 99] denying the Stay Motion "without prejudice to any party-in-interest to subsequently seek a stay of the above-captioned adversary proceeding from this Court."

15.     On April 6, 2022, this court issued its *Report and Recommendation to the District Court Proposing That It: (A) Grant Defendants' Motions to Withdraw the Reference at Such Time as the Bankruptcy Court Certifies That Action Is Trial Ready; but (B) Defer Pre-Trial Matters to the Bankruptcy Court* (the "Report and Recommendation") [Dkt. 151]. In the Report and Recommendation, the court recommended that the District Court "only withdraw the reference of

this Adversary Proceeding at such time as the bankruptcy court certifies that the action is trial-ready and defer to the bankruptcy court the handling of all pre-trial matters….”

16.     On March 24, 2023, the Plaintiff filed the *Litigation Trustee's Motion to Stay the Adversary Proceeding* [Dkt. 324].

17.     On April 4, 2023, the court entered the *Order Granting the Litigation Trustee's Motion to Stay the Adversary Proceeding* (the "Stay Order") [Dkt. 338], which stayed these proceedings. The Stay Order noted, however, that it was not to be construed as a stay of the adjudication of the Report and Recommendation, and objections thereto, pending before the District Court. *Id.*

18.     In response to the Stay Order, the District Court issued an order holding any further decision on the Report and Recommendation in abeyance [Case No. 22-cv-00203, Dkt. 30].

19.     On June 30, 2025, this court entered *Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* (the "HMIT Settlement") in the Debtor's bankruptcy proceeding [Case No. 19-34054, Dkt. 4216], approving a settlement between the Litigation Trustee and Defendants Hunter Mountain Investment Trust, Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Atlas IDF, LP, and Atlas IDF GP, LLC (collectively, the "HMIT Entities").

20.     The HMIT Settlement calls for the assignment of the balance of the remaining "Estate Claims" (as defined in the Plan), including the claims alleged in the Complaint, to the HMIT Entities.

21.     The HMIT Settlement is currently the subject of an appeal by certain other defendants.

22.     On July 25, 2025, the Litigation Trustee and HMIT filed the Motion seeking to substitute HMIT as the plaintiff of record in this Adversary Proceeding.

## OBJECTION

23.     The Fifth Circuit has held that "a lack of subject matter jurisdiction may be raised at any time." *McCloy v. Silverthorne (In re McCloy)*, 296 F.3d 370, 373 (5th Cir. 2002).

24.     The relief sought in the Motion implicates the pending decision of the District Court on the Report and Recommendation, because the assignment of the Estate Claims to the HMIT Entities presents new and further considerations regarding this court's subject matter jurisdiction to adjudicate the claims in the Complaint or to grant the relief sought in the Motion.

25.     The assignment of the Estate Claims also impacts any future ruling by the District Court on the Report and Recommendation as to whether the reference of this Adversary Proceeding should be withdrawn in full, which has been held in abeyance by the District Court.

26.     The jurisdiction of bankruptcy courts is set forth in 28 U.S.C. § 157, which distinguishes between core and non-core proceedings.

27.     The court has previously categorized the claims asserted in the Complaint as either core or non-core. [*See* Dkt. 151.] The court determined that Counts 3-10, 13-17, and 24-30 are "non-core ('related to')" claims. Thus, 20 of the 36 claims asserted in the Complaint—the vast majority—are non-core. [*Id.* at 6-7.] The court also found that a further 12 counts involved a mixture of core and non-core claims. [*Id.* at 8.]  So, 32 of 36 counts in the Complaint are either completely non-core or partially non-core. The subsequent Amended Complaint [*see* Dkt. 182] removed 3 of the 4 core claims, meaning only 1 of the 36 remaining claims is core.[1]

---

[1] *See* Dkt. 151 at 6 (Counts 31, 34 – 36 were core).  Between the Original Complaint [Dkt. 1] and the Amended Complaint [Dkt. 158], filed subsequent to the Court's decision, Count 31 remains the same, but Counts 34 – 36 are different, with Amended Counts 34 and 35 being Delaware state law claims, and Amended Count 36 being a claim for disallowance under Bankruptcy Code §§ 502 and 510 against HMIT's sole owner CLO Holdco, Ltd., a claim that

28.     Section 1334 grants the federal district courts jurisdiction over four types of bankruptcy matters: (1) "cases arising under title 11," (2) "proceedings arising under title 11," (3) proceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title 11. 28 U.S.C. § 1334(a)-(b).

29.     For the bankruptcy court to have subject matter "related to" jurisdiction over non-core matters, some nexus must exist between the related civil proceeding and the Title 11 case. *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995) (citing *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 787 (11th Cir.1990)) (because the tort claims at issue were not property of the estate, the bankruptcy court did not have jurisdiction). Said another way, for related-to jurisdiction to exist for § 1334 purposes, the outcome of the proceeding must affect the estate being administered in bankruptcy. *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 568-69 (5th Cir. 1995).

30.     Post-plan confirmation, courts interpret related-to subject matter jurisdiction more narrowly. *Faulkner v. Lane Grorman Trubitt, LLC (In re Reagor-Dykes Motors, LP)*, Nos. 18-50214-RLJ-11, 21-05002, 2021 Bankr. LEXIS 2891, at *6-7 (Bankr. N.D. Tex. Oct. 13, 2021) ("Bankruptcy jurisdiction becomes more limited after confirmation of a bankruptcy plan.") The "Fifth Circuit has adopted a more exacting theory for post-confirmation jurisdiction, recognizing that the broad 'related-to' category of bankruptcy jurisdiction diminishes after confirmation of a bankruptcy plan. Simply put, this is because, after confirmation of a plan, the bankruptcy estate ceases to exist." *Id.* (citing *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390-91 (5th Cir. 2001)).

---

presumably will be immediately dismissed by HMIT. *Compare* Dkt. 1 at Counts 31, 34 – 36 *with* Dkt. 158 at Counts 31, 34 – 36.

31.     The Fifth Circuit later identified three factors for determining the existence of post-confirmation jurisdiction, which are whether: (1) the claims primarily arise from pre-confirmation or post-confirmation relations between the parties; (2) any claims or antagonisms were pending between the parties on the date of plan confirmation; and (3) any facts or law deriving from the bankruptcy are necessary to the claims. *Id.* (citing *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325, 335-36 (5th Cir. 2008)).

32.     This case has long been in a post-confirmation setting (and is now nearing an end), meaning any related-to jurisdiction of the bankruptcy court is more limited than when the Report and Recommendation was submitted. And all three factors weigh against an exercise of post-confirmation jurisdiction. The claims asserted arise solely from post-confirmation relations between HMIT and the other defendants, because HMIT only took assignment of the claims post-confirmation. For the same reason, there were not antagonisms between the parties pre-confirmation; all were aligned defendants in the Adversary Proceeding. Third, as noted above, the vast majority of the claims do not rely on facts or law deriving from the bankruptcy. Rather, they are primarily non-core claims.

33.     Even under the more limited pre-confirmation test, courts have held that there is no "related to" jurisdiction over third-party complaints when the dispute has no effect on the bankruptcy estate. *See, e.g.*, *Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1084 (5th Cir.) (holding that issue of third-party creditor's rights was not "related to" bankruptcy after third-party lease had been rejected and was not part of the bankruptcy estate), cert. denied, ___ U.S. ___, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994); *In re Walker*, 51 F.3d at 569 ("[A] vast majority of cases find that 'related to' jurisdiction is lacking in connection with third-

party complaints.") (collecting cases); *accord Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325, 335 (5th Cir. 2008).

34.     Under that rationale, courts have held that the assignment of causes of action to a third party where there is no longer a benefit to the bankruptcy estate or creditors destroys any related to jurisdiction. *Cadle Co. v. Pratt (In re Pratt)*, Case Nos. 00-35214-SAF-7, 03-3163, 3:03-CV-2273-N, 2003 Bankr. LEXIS 1512, at *4-5 (Bankr. N.D. Tex. Nov. 19, 2003) ("While a recovery by the trustee would have had an effect on the administration of the bankruptcy estate, any recovery by Cadle will have no effect. With the sale of the claims to Cadle, the trustee will have no recovery to distribute to creditors should Cadle prevail.").

35.     In at least two cases in this District, the court noted that a transfer of the estate's causes of action to a third party makes jurisdictional reassessment appropriate.  In both instances, the court found that the assignment of the claims to a third party meant that the Bankruptcy Court no longer had subject matter jurisdiction over such claims. *See Cataldi v. Olo Corp. (In re County Seat Stores, Inc.)*, Case Nos. 99-10010-cb, 05-03694, 2007 Bankr. LEXIS 2163 (Bankr. N.D. Tex. Jun. 20, 2007) (no jurisdictional basis to preside once an amended complaint involved a non-debtor litigating claims against another non-debtor over state law issues that would have no effect on the bankruptcy estate); *In re Pratt*, 2003 Bankr. LEXIS 1512, at *3 ("As a result of the trustee's assignment of the claims to Cadle, the bankruptcy court lacks subject matter jurisdiction over this adversary proceeding.").

36.     The same is true here, particularly because the court's basis for retaining jurisdiction over all pre-trial matters in the Adversary Proceeding was its finding that the Estate Claims were "owned by the bankruptcy estate for the benefit of creditors," such that related to

jurisdiction existed. [Dkt. 151, at 3-4.] But the foundation of that finding is no longer true after the assignment of the Estate Claims to the HMIT Entities.

37.     The Fifth Circuit has further held that, even in instances where a district court might be able to exercise supplemental jurisdiction over third-party claims under 28 U.S.C. § 1367, a bankruptcy court does not have supplemental jurisdiction to reach such claims. *See In re Walker*, 51 F.3d at 572.

38.     The assignment of the Estate Claims to the HMIT Entities has now extinguished the relation between those claims and the underlying bankruptcy proceeding and bankruptcy estate. As a result, a court must analyze whether the bankruptcy court has subject matter jurisdiction over this proceeding that would allow the bankruptcy court to enter any order, including an order on the relief requested in the Motion.  As discussed below, based on the assignment to HMIT, the court that should do so is the District Court. This is particularly true because this Adversary Proceeding has been stayed almost since its start and has since been administratively closed by the District Court.

39.     The assignment of claims by a debtor or trustee to a third party also directly impacts the analysis of whether immediate withdrawal of the reference is appropriate or required. *See AE Mktg., L.L.C. v. Jenkins-Baldwin Corp. (In re Heritage Org., L.L.C.)*, Case Nos. 04-35574-BJH-11, 04-3624, 2007 Bankr. LEXIS 5027 at *12-16 (Bankr. N.D. Tex., Mar. 27, 2007) (explaining that, because the outcome of the case no longer impeded the proposal and confirmation of a bankruptcy plan, immediate withdrawal of the reference would be appropriate, as opposed to waiting until case was trial ready).

40.     In light of the change in circumstances, denying the Motion or holding a decision on the Motion in abeyance until the District Court can consider the subject matter jurisdiction of

this court and evaluate the Report and Recommendation is also consistent with the practice of this

court to give deference to the District Court with respect to matters of jurisdiction. *See, e.g.*, Dkt.

96, at 46-47; *Official Committee of Unsecured Creditors v. CLO Holdco Ltd., et al.*, Adv. No. 20-

03195, Dkt 65, at 50.

WHEREFORE, Defendants respectfully request that the court deny the Motion or hold a

decision on the Motion in abeyance pending the District Court's ruling on the Motion to Withdraw

the Reference of this Adversary Proceeding.


Dated: August 15, 2025                          Respectfully submitted,

                                                **STINSON LLP**

                                                */s/ Deborah Deitsch-Perez*
                                                Deborah Deitsch-Perez
                                                Texas State Bar No. 24036072
                                                Michael P. Aigen
                                                Texas State Bar No. 24012196
                                                2200 Ross Avenue, Suite 2900
                                                Dallas, Texas 75201
                                                Telephone: (214) 560-2201
                                                Email: deborah.deitschperez@stinson.com
                                                Email: michael.aigen@stinson.com

                                                **ATTORNEYS FOR DEFENDANTS**
                                                **NEXPOINT ADVISORS, L.P. AND**
                                                **HIGHLAND CAPITAL MANAGEMENT**
                                                **FUND ADVISORS, L.P.**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on the 15th day of August, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez