# EXHIBIT 5



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 6, 2022**

_____
**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 19-34054-SGJ-11** |
| HIGHLAND CAPITAL MANAGEMENT, | § | **(CHAPTER 11)** |
| L.P., | § | |
| | § | |
| REORGANIZED DEBTOR. | § | |
| _____ | § | |
| | § | |
| MARC S. KIRSCHNER, AS LITIGATION | § | |
| TRUSTEE OF THE LITIGATION | § | |
| SUB-TRUST, | § | |
| | § | **CIVIL ACTION NO. 3:22-CV-203-S** |
| PLAINTIFF, | § | |
| | § | |
| v. | § | **ADVERSARY NO. 21-03076** |
| | § | |
| JAMES D. DONDERO; MARK A. OKADA; | § | |
| SCOTT ELLINGTON; ISAAC | § | |
| LEVENTON; GRANT JAMES SCOTT III; | § | |
| FRANK WATERHOUSE; STRAND | § | |
| ADVISORS, INC.; NEXPOINT ADVISORS, | § | |

1

1934054220406000000000001

L.P.; HIGHLAND CAPITAL                    §
MANAGEMENT FUND ADVISORS, L.P.            §
DUGABOY INVESTMENT TRUST                  §
AND NANCY DONDERO, AS TRUSTEE             §
OF DUGABOY INVESTMENT TRUST;              §
GET GOOD TRUST AND GRANT JAMES            §
SCOTT III, AS TRUSTEE OF GET GOOD         §
TRUST; HUNTER MOUNTAIN                    §
INVESTMENT TRUST; MARK &                  §
PAMELA OKADA FAMILY TRUST –               §
EXEMPT TRUST #1 AND LAWRENCE              §
TONOMURA AS TRUSTEE OF MARK &             §
PAMELA OKADA FAMILY TRUST –               §
EXEMPT TRUST #1; MARK & PAMELA            §
OKADA FAMILY TRUST – EXEMPT               §
TRUST #2 AND LAWRENCE                      §
TONOMURA IN HIS CAPACITY AS               §
TRUSTEE OF MARK & PAMELA                  §
OKADA FAMILY TRUST – EXEMPT               §
TRUST #2; CLO HOLDCO, LTD.;               §
CHARITABLE DAF HOLDCO, LTD.;              §
CHARITABLE DAF FUND, LP.;                 §
HIGHLAND DALLAS FOUNDATION;               §
RAND PE FUND I, LP, SERIES 1;             §
MASSAND CAPITAL, LLC; MASSAND             §
CAPITAL, INC.; SAS ASSET RECOVERY,        §
LTD.; AND CPCM, LLC,                      §
                                          §
          DEFENDANTS.                     §
                                          §

---

**REPORT AND RECOMMENDATION TO THE DISTRICT COURT PROPOSING THAT IT: (A) GRANT DEFENDANTS' MOTIONS TO WITHDRAW THE REFERENCE AT SUCH TIME AS THE BANKRUPTCY COURT CERTIFIES THAT ACTION IS TRIAL READY; BUT (B) DEFER PRE-TRIAL MATTERS TO THE BANKRUPTCY COURT**

## I.    INTRODUCTION

As further explained herein, there are 23 Defendants in the above-referenced adversary proceeding (the "Adversary Proceeding")—almost all of whom have jury trial rights and desire to have the reference withdrawn from the bankruptcy court, so that a jury trial may ultimately occur in the District Court. All parties agree (even the Plaintiff) that the reference *must* ultimately be withdrawn for final adjudication to occur in the District Court, since: (a) jury trial rights exist, and (b) the Defendants do not consent to a jury trial occurring in the bankruptcy court.  However, there is a question of *timing* here.

Specifically, the Plaintiff believes that the bankruptcy court should, for the time being— that is, *until the action is trial-ready*—essentially serve as a magistrate and preside over all pre-trial motions and other matters, with the District Court considering reports and recommendations with regard to any dispositive motions.

The Defendants, on the other hand, believe that the District Court should *immediately* withdraw the reference, taking the position that there is not even "related to" bankruptcy subject matter jurisdiction with regard to the 36 causes of action asserted in the Adversary Proceeding (*see* 28 U.S.C. § 1334(b))—since the Adversary Proceeding was brought *after* confirmation of a Chapter 11 debtor's plan, and the claims in the Adversary Proceeding do not require interpretation or implementation of the plan.  Additionally, the Defendants argue that, even if there is "related to" bankruptcy subject matter jurisdiction, mandatory abstention applies with regard to certain of the causes of action in the Adversary Proceeding, since certain *other* federal laws—namely tax law and securities law—are implicated (*see* 28 U.S.C. § 157(d)).

The bankruptcy court disagrees with the Defendants. This Adversary Proceeding is a typical post-confirmation lawsuit being waged be a liquidating trustee, who was appointed

pursuant to a Chapter 11 bankruptcy plan to pursue pre-confirmation causes of action that were owned by the bankruptcy estate, for the benefit of creditors. Despite the "post-confirmation" timing of the ***filing*** of the lawsuit, there ***is*** still "related to" bankruptcy subject matter jurisdiction. Additionally, there will be no substantial or material consideration of "other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.*

Accordingly, the bankruptcy court recommends that the District Court only withdraw the reference of this Adversary Proceeding ***at such time as the bankruptcy court certifies that the action is trial-ready and defer to the bankruptcy court the handling of all pre-trial matters (as is most often the custom in this District)***. A more detailed explanation follows.

## II.    PROCEDURAL CONTEXT

This Adversary Proceeding is related to the bankruptcy case (the "Bankruptcy Case")[1] of Highland Capital Management, L.P. (the "Debtor," "Highland," or sometimes the "Reorganized Debtor").

Highland filed a voluntary Chapter 11 petition on October 16, 2019, in the United States Bankruptcy Court of Delaware. That court subsequently entered an order transferring venue to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), on December 4, 2019.

On February 22, 2021, the Bankruptcy Court entered an *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* (the "Confirmation Order") [Bankr. Docket No. 1943], which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)* (as amended, the "Plan" or "Highland Plan") [Bankr. Docket No. 1808].

---

[1] Bankruptcy Case No. 19-34054.

The Highland Plan went effective on August 11, 2021 (the "Effective Date").  Thus, the Bankruptcy Case is now in what is referred to as a "post-confirmation" phase.

Like many Chapter 11 plans, the Highland Plan provided for the creation of a "Claimant Trust" for the benefit of holders of Highland's creditors.  The Claimant Trust was vested with certain assets of Highland, including "all Causes of Action" and "any proceeds realized or received from such Assets." Plan §§ I.B.24, I.B.26, I.B.27. The Plan also provided for the creation of a "Litigation Sub-Trust," as a "sub-trust established within the Claimant Trust or as a wholly-owned subsidiary of the Claimant Trust," for the purpose of "investigating, prosecuting, settling, or otherwise resolving the Estate Claims" transferred to it by the Claimant Trust pursuant to the Plan. Plan §§ I.B.81, IV.B.1 ("[T]he Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims."), Plan § IV.B.4. The Litigation Trustee of the Litigation Sub-Trust is "responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust[.]" Plan § I.B.83. Under the Plan, proceeds from the Litigation Trust's pursuit of claims "shall be distributed . . . to the Claimant Trust for distribution to the Claimant Trust Beneficiaries[.]" Plan § IV.B.4.

On October 15, 2021, the Litigation Trustee ("Plaintiff") commenced the Adversary Proceeding for the benefit of Highland's creditors. [Adv. Proc. Docket. No. 1 (the "Complaint")].

The Complaint asserts *36 causes of action* against *23 Defendants*. The causes of action all arise from *pre-confirmation conduct* allegedly perpetrated by Highland's founder James Dondero and individuals and entities affiliated with him, which purportedly resulted in hundreds of millions of dollars in damages to Highland. It appears that all of the Defendants are owned, controlled, or related to Mr. Dondero, although some of the Defendants dispute this characterization.

The 36 causes of action seek: the avoidance and recovery of intentional and constructive fraudulent transfers and obligations under Sections 544, 548, and 550 of the Bankruptcy Code; illegal distributions under Delaware partnership law; breach of fiduciary duty; declaratory judgment that certain entities are liable for the debts of others under alter ego theories, successor liability, aiding and abetting, or knowing participation in breach of fiduciary duty; civil conspiracy; tortious interference with prospective business relations; breach of contract; conversion; unjust enrichment; and the disallowance or subordination of claims under Sections 502 and 510 of the Bankruptcy Code.

As further addressed below, the Bankruptcy Court has concluded that the 36 causes of action include some statutory *core* (*i.e.,* "arising under" or "arising in") claims, some *non-core* (*i.e.,* "related to") claims, and some causes of action that are a *mixture* of both core and non-core claims. The following three tables summarize the Bankruptcy Court's determination as to which counts are core, which are non-core, and which are a mixture:

| Count No. | Core ("Arising Under") Claims | Defendants Named |
|---|---|---|
| 31 | Avoidance and Recovery of One-Year Transfers as Preferential Under 11 U.S.C. §§ 547 and 550 | James Dondero and Scott Ellington |
| 34 | Disallowance of Claims Under Sections 502(b), 502(d), and 502(e) of the Bankruptcy Code | James Dondero, Scott Ellington, Isaac Leventon, Frank Waterhouse, and CPCM, LLC |
| 35-36 | Disallowance or Subordination of Claims Under Sections 502 and 510 of the Bankruptcy Code | James Dondero, Dugaboy Trust, Get Good Trust, Mark Okada, MAP #1, MAP #2, Hunter Mountain, and CLO Holdco |

| Count No. | Non-Core ("Related to") Claims | Defendants Named |
|---|---|---|
| 3 | Illegal Distributions Under Delaware Revised Uniform Limited Partnership Act | James Dondero, Strand Advisors, Dugaboy Trust, Hunter Mountain |

| 4 | Breach of Fiduciary Duty Arising Out of Dondero's Lifeboat Scheme | James Dondero, Strand Advisors |
| 5 | Breach of Fiduciary Duty Arising Out of Conduct that Resulted in HCMLP Liabilities | James Dondero, Scott Ellington, Isaac Leventon, Strand Advisors |
| 6 | Declaratory Judgment that Strand is Liable for HCMLP's Debts in its Capacity as HCMLP's General Partner | Strand Advisors |
| 7 | Declaratory Judgment that Dondero is Liable for Strand's Debts as Strand's Alter Ego | James Dondero |
| 8 | Declaratory Judgment that Dondero and Strand are Liable for HCMLP's Debts in Their Capacities as HCMLP's Alter Ego | James Dondero, Strand Advisors |
| 9 | Declaratory Judgment that NexPoint and HCMFA are Liable for the Debts of HCMLP, Strand, and Dondero as Their Alter Egos | NexPoint Advisors, HCMFA |
| 10 | Declaratory Judgment that Dugaboy is Liable for the Debts of Dondero in Their Capacities as Dondero's Alter Ego | Dugaboy Trust |
| 13 | Successor Liability | NexPoint Advisors, HCMFA |
| 14 | Breach of Fiduciary Duty in Connection with Fraudulent Transfers and Schemes | James Dondero, Mark Okada, Scott Ellington, Strand Advisors |
| 15 | Aiding and Abetting Breach of Fiduciary Duty Under Delaware Law or Knowing Participation in Breach of Fiduciary Duty Under Texas Law | Grant Scott, Strand Advisors, NexPoint Advisors, HCMFA, Get Good Trust, CLO Holdco, DAF Holdco, DAF Highland Dallas Foundation, and SAS |
| 16 | Civil Conspiracy to Breach Fiduciary Duties Under Texas Law | James Dondero, Scott Ellington, Isaac Leventon, Grant Scott, NexPoint Advisors, HCMFA, Get Good Trust, CLO Holdco, DAF Holdco, DAF, Highland Dallas Foundation, and SAS |
| 17 | Tortious Interference with Prospective Business Relations | James Dondero, NexPoint Advisors, HCMFA |
| 24 | Breach of Contract Arising Out of Hunter Mountain Note | Hunter Mountain and Rand |
| 25 | Conversion | James Dondero, Scott Ellington |
| 26-30 | Unjust Enrichment | James Dondero, Scott Ellington, Isaac Leventon, NexPoint Advisors, HCMFA, CLO Holdco, Massand Capital, and SAS |

| Count No. | Mixture of Core and Non-Core Claims | Defendants Named |
|---|---|---|
| 1 | Avoidance and Recovery of HCMLP Distributions as Constructive Fraudulent Transfers Under 11 U.S.C. §§ 544, 548, and 550, 26 U.S.C. § 6502, and Other Applicable Law | James Dondero, Mark Okada, Strand Advisors, Dugaboy Trust, Hunter Mountain, MAP #1, and MAP #2 |
| 2 | Avoidance and Recovery of HCMLP Distributions as Intentional Fraudulent Transfers Under 11 U.S.C. §§ 544, 548, and 550, 26 U.S.C. § 6502, and Other Applicable Law | James Dondero, Mark Okada, Strand Advisors, Dugaboy Trust, Hunter Mountain, MAP #1, and MAP #2 |
| 11 | Avoidance of Transfer of Management Agreements as Constructive Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, 26 U.S.C. § 6502, and Other Applicable Law | NexPoint Advisors and HCMFA |
| 12 | Avoidance of Transfer of Management Agreements as Intentionally Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, 26 U.S.C. § 6502, and Other Applicable Law | NexPoint Advisors and HCMFA |
| 18 | Avoidance of CLO Holdco Transfer and Recovery of Transferred CLO Holdco Assets as Constructive Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, and Applicable State Law | James Dondero, Grant Scott, Get Good Trust, CLO Holdco, DAF Holdco, DAF, and Highland Dallas Foundation |
| 19 | Avoidance of CLO Holdco Transfer and Recovery of Transferred CLO Holdco Assets as Intentionally Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, and Applicable State Law | James Dondero, Grant Scott, Get Good Trust, CLO Holdco, DAF Holdco, DAF, and Highland Dallas Foundation |
| 20 | Avoidance of Obligations Under Massand Consulting Agreement as Constructively Fraudulent Under 11 U.S.C. § 544, 26 U.S.C. § 6502, and Applicable State Law | Massand LLC |
| 21 | Avoidance of Obligations Under Massand Consulting Agreement as Intentionally Fraudulent Under 11 U.S.C. § 544, 26 U.S.C. § 6502, and Applicable State Law | Massand Capital |
| 22 | Avoidance and Recovery of Certain Massand Transfers as Constructive Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, 26 U.S.C. § 6502, and Applicable State Law | James Dondero, Scott Ellington, Massand Capital, and SAS |
| 23 | Avoidance and Recovery of Certain Massand Transfers as Intentional Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, 26 U.S.C. § 6502, and Applicable State Law | James Dondero, Scott Ellington, Massand Capital, and SAS |
| 32 | Avoidance and Recovery of the Alleged Expense Transfers as Constructive Fraudulent Transfers Under 11 U.S.C. §§ 544, 548, and 550, and Other Applicable Law | James Dondero and Scott Ellington |
| 33 | Avoidance and Recovery of the Alleged Expense Transfers as Intentional Fraudulent Transfers Under 11 U.S.C. §§ 544, 548, and 550, and Other Applicable Law | James Dondero and Scott Ellington |

Of the 23 Defendants, ***only one*** has a pending, unresolved proof of claim on file in the Bankruptcy Case: CLO Holdco.[2] The rest of the Defendants have either never filed proofs of claim, have withdrawn their proofs of claim, or have had them disallowed during the pendency of the Bankruptcy Case.[3] Thus, 22 of the 23 Defendants have jury trial rights.[4]  Further, none of the Defendants have consented to the Bankruptcy Court presiding over a jury trial or issuing final orders for that matter.[5]

Six motions to withdraw the reference (collectively, the "Motions to Withdraw") were subsequently filed by the following Defendants on the following dates:

• On January 18, 2022, Defendants Scott Ellington, Isaac Leventon, Frank Waterhouse, and CPCM, LLC (collectively, the "Former Employee Defendants") filed the Motion to Withdraw the Reference for Causes of Action in the Complaint Asserted Against the Former Employee Defendants [Adv. Docket No. 27] and their Brief in Support [Adv. Docket No. 28].

• On January 21, 2022, Defendants Mark A. Okada, The Mark & Pamela Okada Family Trust – Exempt Trust #1, Lawrence Tonomura in his Capacity as Trustee, The Mark & Pamela Okada Family Trust – Exempt Trust #2, and Lawrence Tonomura in his Capacity as Trustee (the "Okada Defendants") filed the Motion of the Okada Parties to Withdraw the Reference [Adv. Docket No. 36] and their Memorandum of Law in Support [Adv. Docket No. 37].

• On January 21, 2022, Defendants NexPoint Advisors L.P ("NexPoint") and Highland Capital Management Fund Advisors L.P. ("HCMFA") filed the Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against Defendants [Adv. Docket No. 39] and their Memorandum of Law in Support [Adv. Docket No. 40].

---

[2] CLO Holdco's claim (Claim No. 198) was objected to by the Litigation Trustee in an omnibus claims objection. CLO Holdco's has moved to ratify a second amended proof of claim. These matters are currently set for hearing on May 2, 2022.

[3] Actually, there are two withdrawals of proofs of claim that are not quite final.  Specifically, those of Frank Waterhouse and CPCM.  On March 24, 2022, the Reorganized Debtor filed a Bankruptcy Rule 9019 motion for the court to approve a settlement among the Litigation Trustee, Frank Waterhouse, and CPCM. Through the settlement motion, among other terms, Frank Waterhouse and CPCM have agreed to withdraw proofs of claim with prejudice. In return, the Litigation Trustee has agreed to withdraw Count 34 (the only claim asserted against Mr. Waterhouse), as to Mr. Waterhouse, with prejudice from the Complaint. The motion is currently set for hearing on May 2, 2022.

[4] *See, e.g., Grandfinanciera, S.A. v. Nordberg,* 109 S. Ct. 2782 (1989); *Lagenkamp v. Culp*, 111 S. Ct. 330 (1990).

[5] *See, e.g., Stern v. Marshall*, 564 U.S. 462 (2011).

• On January 25, 2022, Defendants James Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc. (the "Dondero Defendants") filed Defendants James D. Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc.'s Motion to Withdraw the Reference [Adv. Docket No. 45] and their Memorandum of Law in Support [Adv. Docket No. 46].

• On January 26, 2022, Defendant Grant James Scott III filed his Motion to Withdraw the Reference [Adv. Docket No. 50] and his Memorandum of Law in Support [Adv. Docket No. 41].

• On January 26, 2022, CLO Holdco, Ltd., Highland Dallas Foundation, Inc., Charitable DAF Fund, LP, and Charitable DAF Holdco, Ltd. (the "CLO Holdco-Related Defendants") filed their Motion to Withdraw the Reference [Adv. Docket No. 59] and their Brief in Support [Adv. Docket No. 59].

• On February 1, 2022, Defendants Hunter Mountain Investment Trust ("Hunter Mountain") and Rand PE Fund I, LP, Series 1 ("Rand" and together with Hunter Mountain, the "Hunter Mountain Defendants") filed a nominal joinder.

The six different Motions to Withdraw initially created six different civil actions before six different District Judges. These six actions were administratively consolidated, by an order signed and entered on March 22, 2022, in Civil Action No. 3:22-CV-203-S [Docket No. 13], and are now pending before District Judge Karen Scholer.

After holding a status conference on the Motions to Withdraw on March 17, 2022, as required by Local Bankruptcy Rule 5011, the Bankruptcy Court now submits the following report and recommendation to the District Court. Based on the reasoning set forth below, the Bankruptcy Court recommends that the Motions to Withdraw be granted, *but only at such time as the Bankruptcy Court certifies to the District Court that the lawsuit is trial-ready*. The Bankruptcy Court further recommends that the District Court *defer to the Bankruptcy Court the handling of all pre-trial matters*.

## III.    LEGAL STANDARDS

### A.    *Some General Principles Regarding Discretionary Withdrawal of the Reference*

First, some basic discussion is in order regarding discretionary or permissive withdrawal of the reference. The concept is described in 28 U.S.C. § 157(d) as follows: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."

The statute does not define "cause shown," but the United States Court of Appeal for the Fifth Circuit, interpreting the United States Supreme Court case of *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), has identified a number of factors for courts to consider in determining whether permissive withdrawal of the reference is appropriate: (1) whether the matter is core or noncore; (2) whether the matter involves a jury demand; (3) whether withdrawal would further uniformity in bankruptcy administration; (4) whether withdrawal would reduce forum-shopping and confusion; (5) whether withdrawal would foster economical use of debtors' and creditors' resources; and (6) whether withdrawal would expedite the bankruptcy process. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985). Courts in this District have placed an emphasis on the first two factors. *See Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 115-23 (N.D. Tex. 2006).

As explained by the Supreme Court in *Stern v. Marshall*, Congress has divided bankruptcy proceedings (*i.e.,* adversary proceedings or contested matters within a bankruptcy case)—over which there is bankruptcy subject matter jurisdiction—into three different categories: (a) those that "aris[e] under" Title 11; (b) those that "aris[e] in" a Title 11 case; and (c) those that are "related to" a case under Title 11. 28 U.S.C. § 1334(b). *Stern v. Marshall*, 564 U.S. 462, 473-474 (2011). Further, those that arise under Title 11 or arise in a Title 11 case are defined as "core" matters and those that are merely "related to" a Title 11 case are defined as "non-core" matters. The significance of the "core"/"non-core" distinction is that bankruptcy courts may statutorily enter

11

final judgments in "core" proceedings in a bankruptcy case, while in "non-core" proceedings, the bankruptcy courts instead may only (absent consent from all of the parties) submit proposed findings of fact and conclusions of law to the district court, for that court's review and issuance of final judgment. This is the statutory framework collectively set forth in 28 U.S.C. § 1334 and 28 U.S.C. § 157. But while a proceeding may be "core" in nature, under 28 U.S.C. § 157(b)(2), and the bankruptcy court, therefore, has the *statutory* power to enter a final judgment on the claim under 28 U.S.C. § 157(b)(1), *Stern* instructs that any district court, in evaluating whether a bankruptcy court has the ability to issue final orders and judgments, must resolve not only: (a) whether the bankruptcy court has the statutory authority under 28 U.S.C. § 157(b) to issue a final judgment on a particular claim; but also (b) whether the conferring of that authority on an Article I bankruptcy court is *constitutional* (and this turns on whether "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process"). *Stern*, 564 U.S. at 499.

Pursuant to 28 U.S.C. § 157(e), if a litigant has the right to a jury trial under applicable non-bankruptcy law, a bankruptcy court may only conduct the jury trial if: (a) the matters to be finally adjudicated fall within the scope of bankruptcy subject matter jurisdiction; (b) the district court of which the bankruptcy court is a unit authorizes the bankruptcy court to do so; and (c) all of the parties consent.[6]

Starting first with whether a right to a jury trial even exists, the Seventh Amendment, of course, provides a jury trial right in cases in which the value in controversy exceeds twenty dollars and the cause of action is to enforce statutory rights that are at least analogous to rights that were

---

[6] "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e) (West 2019).

tried at law in the late 18th century English courts. *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 708 (1999). Suits "at law" refers to "suits in which legal rights were to be ascertained and determined" as opposed to "those where equitable rights alone were recognized and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).  This analysis requires two steps: (1) a comparison of the "statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity"; and (2) whether the remedy sought is "legal or equitable in nature . . . [t]he second stage of this analysis" being "more important than the first." *See Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 205 (S.D. Tex. 2008) (quoting *Granfinanciera*, 492 U.S. at 42).

It is well established that the act of filing a proof of claim can operate to deprive a creditor of a jury trial right, by subjecting a claim, that would otherwise sound only in law, to the equitable claims allowance process. *See Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990). Withdrawing a claim from the claims allowance process of the bankruptcy courts prior to the commencement of an adversary proceeding can serve to preserve a right to a jury trial. *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) ("[T]he successful withdrawal of a claim pursuant to Fed. R. Bankr. P. 3006 prior to the trustee's initiation of an adversarial proceeding renders the withdrawn claim a legal nullity and leaves parties as if the claim had never been brought."); *In re Goldblatt's Bargain Stores, Inc.*, No. 05 C 03840, 2005 WL 8179250, at *5 (N.D. Ill. Dec. 6, 2005) (claims withdrawn before adversary proceeding are as if never filed); *see generally, In re Manchester, Inc.*, No. 08-30703-11-BJH, 2008 WL 5273289, at *3-6 (Bankr. N.D. Tex. Dec. 19, 2008) (permissible to withdraw a claim to preserve jury trial right).

### B. Post-Confirmation Bankruptcy Subject Matter Jurisdiction

Defendants argue here that this is all more than simply a matter of "permissive withdrawal of the reference" being applicable. Specifically, the Defendants argue that bankruptcy subject matter jurisdiction is lacking with regard to the Plaintiff's various causes of action (*i.e.,* all 36 causes of action) pursuant to the Fifth Circuit's rulings in *Craig's Stores of Texas, Inc. v. Bank of Louisiana (In re Craig's Stores of Texas, Inc.)*, 266 F.3d 388 (5th Cir. 2001) and *Newby v. Enron Corp. (In re Enron Corp. Securities)*, 535 F.3d 325 (5th Cir. 2008).

In *Craig's Stores*, the Fifth Circuit held that a bankruptcy court could not exercise subject matter jurisdiction over a post-confirmation breach of contract claim asserted by a reorganized debtor against its bank in connection with an alleged post-confirmation breach. The Fifth Circuit stated that, following confirmation of a plan, "expansive bankruptcy court jurisdiction" is no longer "required to facilitate 'administration' of the debtor's estate," and further noted: "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Craig's Store's*, 266 F.3d at 390. *Craig's Stores* has often been cited for the notion that bankruptcy subject matter jurisdiction significantly narrows post-confirmation of a Chapter 11 plan.

The Fifth Circuit elaborated on its *Craig's Store's* holding in *Enron*, in holding that confirmation of a plan does not divest a court of bankruptcy subject matter jurisdiction with regard to an action commenced prior to confirmation. *Enron*, 535 F.3d at 335. Noting that "Section 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation," the Fifth Circuit explained that "three factors were critical to its decision" in *Craig's Stores*:

> [F]irst, the claims at issue "principally dealt with post-confirmation relations between the parties;" second, "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization;" and third, "no facts or law deriving from the reorganization or the plan [were] necessary to the

14

claim." *Craig's Stores*, 266 F.3d at 391.  Notwithstanding its statement that bankruptcy jurisdiction exists after plan confirmation only "for matters pertaining to the implementation or execution of the plan," the facts in *Craig's Stores* were narrow; they involved post-confirmation claims based on post-confirmation activities.

*Id.* (citing *Craig's Stores*, 266 F.3d at 389–91).

Thereafter, numerous courts within the Fifth Circuit have held that the exception to jurisdiction at issue in *Craig's Store's* does not arise where, as here, a trustee of a litigation trust created under a confirmed plan of reorganization for the benefit of creditors pursues post-confirmation causes of action, predicated on pre-confirmation conduct, for the creditors' benefit. *See Faulkner v. Lane Gorman Trubitt, LLC (In re Reagor-Dykes Motors, LP)*, 2021 WL 4823525, at *2–4 (Bankr. N.D. Tex. Oct. 14, 2021) (bankruptcy court had post-confirmation subject matter jurisdiction over a litigation trustee's state law claims "based on pre-petition conduct," the recoveries of which would "affect distributions to creditors under the confirmed plan"); *Dune Operating Co. v. Watt (In re Dune Energy, Inc.)*, 575 B.R. 716, 725–26 (Bankr. W.D. Tex. 2017) (bankruptcy court had post-confirmation subject matter jurisdiction over lawsuit asserting state law claims brought by liquidating trustee established under Chapter 11 plan); *Brickley for Cryptometrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 830–32 (W.D. Tex. 2017) (holding that post-confirmation "related to" subject matter jurisdiction existed over creditors' trust's post-confirmation suit asserting pre-confirmation Chapter 5 claims and non-core state law claims where the plan vested the claims in the trust); *Schmidt v. Nordlicht*, 2017 WL 526017, at *2–3 (S.D. Tex. Feb. 9, 2017) (holding that post-confirmation "related to" subject matter jurisdiction existed over state law claims aimed at pre-confirmation conduct brought by a litigation trustee established by a confirmed plan); *Ogle v. Comcast Corp. (In re Houston Reg'l*, 547 B.R. 717, 736 (Bankr. S.D. Tex. 2016) (bankruptcy court had post-confirmation subject

matter jurisdiction over lawsuit brought by litigation trustee established under confirmed Chapter 11 plan that asserted state law claims); *Kaye v. Dupree (In re Avado Brands, Inc.)*, 358 B.R. 868, 878–79 (Bankr. N.D. Tex. 2006) (bankruptcy court had post-confirmation jurisdiction over litigation trustee's pre-confirmation core and non-core claims that were transferred to the trustee for prosecution under the plan, where proceeds were to be distributed to creditors); *Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 221 (Bankr. N.D. Tex. 2004) (bankruptcy court had post-confirmation jurisdiction over claims preserved under Chapter 11 plan and assigned to the creditor's trust for prosecution with recovery to be distributed to creditors).

The Bankruptcy Court agrees with these numerous holdings and believes that they are consistent with *Craig's Stores*. First, unlike the post-confirmation contract dispute at issue in *Craig's Stores*, the claims here all arise from **pre-confirmation** conduct. Second, "antagonism" plainly existed between the parties at the date of the reorganization. Contrary to Defendants' assertion that an action must be filed prior to confirmation, courts in the Fifth Circuit consistently hold that "where the claims are based on pre-petition conduct and the cause of action appears to have accrued before the bankruptcy, the antagonism factor is satisfied." *Faulkner*, 2021 WL 4823525, at *3; *see also Schmidt v. Nordlicht*, 2017 WL 526017, at *3 (while "no claim was pending before the bankruptcy," "antagonism existed in the relevant sense; the defendant's alleged wrongdoing harmed the company prior to the bankruptcy, and the company's cause of action appears to have accrued before the bankruptcy"); *Brickley*, 566 B.R. at 831 (confirming that "actual litigation is not necessary to find the existence of antagonism"); *Coho Oil*, 309 B.R. at 221 (finding this factor satisfied where "claims were preserved under the Plan and assigned to the creditor's trust for prosecution"). Moreover, the order confirming the Highland Plan expressly stated that "Implementation of the Plan" shall include the "establishment of" and "transfer of Estate

16

Causes of Action" to "the Litigation Sub-Trust," the Trustee of which is charged with "investigating, pursuing, and otherwise resolving any Estate Claims." *See* Confirmation Order at ¶ 42(b); *see also* Plan § IV. A ("the Plan will be implemented through . . . the Litigation Sub-Trust"); *id.* at § I.B.4 ("The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims," the proceeds of which "shall be distributed . . . to the Claimant Trust for distribution to the Claimant Trust Beneficiaries . . . ."). Courts within the Fifth Circuit have held that, where a plan "contemplates the prosecution of the claims and the distribution of . . . recovery to creditors under the Plan, and the prosecution of the claims will thus impact compliance with, or completion of, the Plan, the *Craig's Stores* test for post-confirmation jurisdiction is satisfied." *Ernst & Young LLP v. Pritchard (In re Daisytek, Inc.)*, 323 B.R. 180, 185–86 (N.D. Tex. 2005) (bankruptcy court had post-confirmation subject matter jurisdiction over a Rule 2004 motion brought by the trustee of a creditors' trust, established under a confirmed plan, relating to potential accounting malpractice investigation); *see also First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In Re Biloxi Casino Belle Inc.)*, 368 F.3d 491, 496 (5th Cir. 2004) (a suit pertained to the implementation and execution of the plan where recovery had been assigned to a "liquidating trust . . . for the benefit of unsecured creditors").

Accordingly, the Bankruptcy Court concludes that the 36 counts in the Adversary Proceeding "[w]ithout doubt . . . 'pertain[] to implementation and execution'" of the plan and the Defendants arguments to the contrary have no merit. *See Dune Energy*, 575 B.R. at 725–26 (quoting Craig's Stores).[7]

---

[7] The court in *Schmidt* also noted that "*Craig's* turned on the idea that a reorganized debtor's confirmed plan marked the end of the bankruptcy and the emergence of a new reorganized business entity not dependent on the bankruptcy court's protection," commenting that while "that rule makes a good deal of sense in the reorganization context . . . in a liquidation case like this one there is no entity that emerges from the bankruptcy to continue

17

### C. *Mandatory Withdrawal of the Reference*

Withdrawal of the reference pursuant to 28 U.S.C. § 157(d) provides for the possibility of mandatory withdrawal of the reference from the bankruptcy court: "The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Under the precedent of this District, in *Nat'l Gypsum Co.* and *Pilgrim's Pride*, mandatory withdrawal of the reference must be granted when: (1) the motion was timely filed; (2) a non-Bankruptcy Code federal law at issue has more than a *de minimis* effect on interstate commerce; and (3) the proceeding involves a substantial and material question of non-Bankruptcy Code federal law. *See U.S. Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.),* 145 B.R. 539, 541 (N.D. Tex. 1992) (stating "withdrawal must be granted if it can be established (1) that the proceeding involves a substantial and material question of both Title 11 and non-Bankruptcy Code federal law; (2) that the non-Code federal law has more than a de minimis effect on interstate commerce; and (3) that the motion for withdrawal was timely."); *see also City of Clinton, Ark. v. Pilgrim's Pride Corp.*, No. 4:09-CV-386-Y, 2009 WL 10684933, at *1 (N.D. Tex. Aug. 18, 2009).

It has been well established that "mandatory withdrawal is to be applied narrowly" and to "prevent 157(d) from becoming an 'escape hatch.'" *Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*, 2009 U.S. Dist LEXIS 102134, at *6 (N.D. Tex. Oct. 1, 2009), *adopted in its entirety*, 2009 U.S. Dist. LEXIS 102071 (N.D. Tex. Nov. 3, 2009). Unsubstantiated assertions that

---

operations." *Schmidt,* 2017 WL 526017, at *3. Here, although the Plan is one of reorganization, it is "an 'asset monetization plan' providing for the orderly wind-down of the Debtor's estate, including the sale of assets and certain of its funds over time, with the Reorganized Debtor continuing to manage certain other funds." Confirmation Order at ¶ 2. Thus, as in *Schmidt*, the role of the Litigation Trust "is nothing more or less than maximizing the pot of money for distribution to creditors." *Schmidt*, 2017 WL 526017, at *3.

non-bankruptcy federal law issues are substantial and material to an adversary proceeding are

insufficient to warrant mandatory withdrawal. *Keach v. World Fuel Servs. Corp, (In re Montreal*

*Me. & Atl. Ry.)*, 2015 U.S. Dist. LEXIS 74006, at \*21-\*23 (D. Me. June 8, 2015) (insufficient

basis for mandatory withdrawal where party failed to demonstrate specifically why a court would

have to "engage in anything beyond routine application of current law" and the party "tries to kick

up some dust to make the relevant analysis seem complicated").

   ***Why is the issue of mandatory withdrawal of the reference even being raised here***—when

the Bankruptcy Court and all the parties agree that permissive withdrawal of the reference should

be exercised here, since mere non-core "related to" claims are pervasive and jury trial rights exist?

In other words, everyone agrees the reference should be withdrawn—it's just a matter of ***when***.

Should withdrawal happen immediately or when the action is trial-ready?

   The Defendants advocate for immediate withdrawal on the grounds that the Bankruptcy

Court does not have authority to preside over the "other federal law" issues present with regard to

certain causes of action—so this should preclude the Bankruptcy Court from even presiding over

pre-trial matters.

   The court does not agree with the Defendants.  The "other federal law" issues that may be

involved in this Adversary Proceeding are not pervasive or particularly complicated.  There are,

admittedly, one or more Tax Code provisions at issue.  But bankruptcy courts routinely consider

tax matters.  Defendants' attempts to characterize what appear to be commonplace tax law issues

here as sufficient to mandate withdrawal of the reference seem disingenuous.

   Certain of the Defendants (HCMFA and NexPoint Advisors) contend that federal securities

laws are implicated by the Adversary Proceeding.  But the Plaintiff has not asserted any claims

that are based on federal securities law statutes.  Rather, HCMFA and NexPoint Advisors have

merely made barebone references to potential defenses that might implicate federal securities laws. While certain of the parties in the litigation are "registered investment advisors," this does not mean that the parties' alleged conduct will implicate broad questions of federal securities law. "If a party to a case is federally regulated, such as a bank or securities brokerage, but no federal regulation applies to the dispute at hand, the court need not withdraw the proceeding because no federal regulation will have to be considered." *Contemp. Lithographers, Inc. v. Hibbert*, 127 B.R. 122, 125 (M.D.N.C. 1991). The rule advanced by HCMFA and NexPoint Advisors would mean that bankruptcy courts would be unable to hear virtually any claims against any investment advisor or other financial entity regulated under the federal securities laws.

In summary, mandatory withdrawal of the reference is inapplicable here.

## D. CONCLUSION

In light of: (a) the non-core, related-to claims in the Complaint; (b) the jury trial rights of most Defendants; (c) the fact that only one Defendant out of 23 still has a proof of claim pending—that might arguably negate jury trial rights; and (d) the lack of consent by the Defendants to the Bankruptcy Court presiding over a jury trial or issuing final judgments, the Bankruptcy Court recommends that the District Court: refer all pre-trial matters to the Bankruptcy Court, and grant the Motions to Withdraw upon certification by the Bankruptcy Court that the parties are trial-ready.

With regard to such pre-trial matters, the Bankruptcy Court further recommends that, to the extent a dispositive motion is brought that the Bankruptcy Court determines should be granted and would finally dispose of claims in this Adversary Proceeding, the Bankruptcy Court should submit a report and recommendation to the District Court for the District Court to either adopt or reject.

**\*\*\*END OF REPORT AND RECOMMENDATION\*\*\***