Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendants NexPoint Advisors, L.P.*
*and NexPoint Asset Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>       **Reorganized Debtor.** | **Chapter 11**<br><br>**Case No. 19-34054-sgj11** |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,**<br><br>       **Plaintiff,**<br><br>       **v.**<br><br>**JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,**<br><br>       **Defendants.** | **Adv. Pro. No. 21-03076-sgj** |

## NEXPOINT ADVISORS, L.P. AND NEXPOINT ASSET MANAGEMENT L.P.'S WITNESS AND EXHIBIT LIST FOR SEPTEMBER 3, 2025  (CENTRAL TIME)

NexPoint Advisors, L.P. and NexPoint Asset Management, L.P. f/k/a Highland Capital Management Fund Advisors, L.P.  (together, "NexPoint"), submit this Witness and Exhibit List with respect to the *Motion to Substitute Plaintiff* [Doc. 357], which has been set for hearing at 11:00 a.m. (Central Time) on September 3, 2025 (the "Hearing"):

## NEXPOINT'S EXHIBIT LIST

1.     Exhibit A - The Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against Defendants [Adv. Proc. Dkt. 39].

2.     Exhibit B - the Memorandum in Support of Defendants NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P.'s Jury Demand and Motion to Withdraw the Reference [Adv. Proc. Dkt. 40].

3.     Exhibit C - Reply in Support of Motion to Withdraw the Reference [Adv. Proc. Dkt. 103].

4.     Exhibit D - Order Granting the Litigation Trustee's Motion to Stay the Adversary *Proceeding* [Dkt. 338].

5.     Any document entered or filed in the main bankruptcy case.

6.     Any document entered or filed in Case No. 22-cv-00203 pending before the United States District Court for the Northern District of Texas.

7.     All exhibits identified or offered by any other party at the Hearing.

8.     Any exhibits necessary as rebuttal evidence.

## NEXPOINT'S WITNESS LIST

NexPoint may call the following persons to testify as witnesses at the Status Conference:

1.     Any witness called by any other party; and

2.     Rebuttal witnesses as necessary.

NexPoint reserves the right to cross-examine any witness called by any other party at the Hearing.

NexPoint reserves the right to amend or supplement this Witness and Exhibit List as necessary in advance of the Hearing.

Dated: August 28, 2025                   Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

**ATTORNEYS FOR DEFENDANTS
NEXPOINT ADVISORS, L.P. AND NEXPOINT
ASSET MANAGEMENT, L.P. F/K/A
HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on August 28, 2025, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all parties registered to receive electronic notices in this case.

/s/ *Deborah Deitsch-Perez*
Deborah Deitsch-Perez

# EXHIBIT A

Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendant NexPoint Advisors, L.P.*
*and Highland Capital Management Fund Advisors, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>       **Reorganized Debtor.** | **Chapter 11**<br><br>**Case No. 19-34054-sgj11** |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,**<br><br>       **Plaintiff,**<br><br>       **v.**<br><br>**JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,**<br><br>       **Defendants.** | **Adv. Pro. No. 21-03076-sgj** |

Case 21-03076-sgj Doc 371 Filed 01/28/25 Entered 01/28/25 15:14:30 Page 2 of 4
Case 21-03076-sgj Doc 301 Filed 01/28/25 Entered 01/28/25 15:33:19 Page 7 of 64
Document    Page 7 of 64

## MOTION TO WITHDRAW THE REFERENCE FOR THE
## CAUSES OF ACTION IN THE COMPLAINT ASSERTED
## <u>AGAINST DEFENDANTS</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Defendants NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA") (collectively, "Defendants") hereby file this *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against Defendants* (the "Motion") to have the United States District Court for the Northern District of Texas, Dallas Division (the "District Court") withdraw the reference to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") for the causes of action asserted against Defendants (the "Causes of Action") in the Complaint and Objection to Claims (Adv. Pro. No. 21-03076-sgj, [Dkt. No. 1] (the "Complaint") filed in the above-captioned adversary proceeding (the "Adversary Proceeding"). In support of this Motion, Defendants respectfully state as follows:

Pursuant to 28 U.S.C. § 157(d), and for the reasons stated in the accompanying *Memorandum in Support of Defendants NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P.'s Jury Demand and Motion to Withdraw the Reference*, filed contemporaneously herewith and which is incorporated herein by reference, Defendants request that the District Court withdraw from the Bankruptcy Court the reference of the Adversary Proceeding with respect to the Causes of Action, in which case the Adversary Proceeding will continue against Defendants as a civil action in the District Court.

WHEREFORE, Defendants respectfully request that the District Court grant the Motion, immediately withdraw the reference of the Adversary Proceeding to the District Court, and grant Defendants such further and relief to which they are entitled.

Dated: January 21, 2022

Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

**ATTORNEYS FOR DEFENDANTS
NEXPOINT ADVISORS, L.P. AND
HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on the 21st day of January, 2022, a true and correct copy of this document was served electronically via the Court's CM/ECF system.


*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez

# EXHIBIT B

Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendant NexPoint Advisors, L.P.*
*and Highland Capital Management Fund Advisors, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | **Case No. 19-34054-sgj11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | **Chapter 11** |
| | § | |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| **JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST –** | § § § § § § § § § § § § § § § § § § § § § | **Adv. Pro. No. 21-03076-sgj** |

| | |
|---|---|
| **EXEMPT TRUST #1; MARK & PAMELA** | § |
| **OKADA FAMILY TRUST – EXEMPT** | § |
| **TRUST #2 AND LAWRENCE** | § |
| **TONOMURA IN HIS CAPACITY AS** | § |
| **TRUSTEE OF MARK & PAMELA** | § |
| **OKADA FAMILY TRUST – EXEMPT** | § |
| **TRUST #2; CLO HOLDCO, LTD.;** | § |
| **CHARITABLE DAF HOLDCO, LTD.;** | § |
| **CHARITABLE DAF FUND, LP.;** | § |
| **HIGHLAND DALLAS FOUNDATION;** | § |
| **RAND PE FUND I, LP, SERIES 1;** | § |
| **MASSAND CAPITAL, LLC; MASSAND** | § |
| **CAPITAL, INC.; SAS ASSET** | § |
| **RECOVERY, LTD.; AND CPCM, LLC,** | § |
| | § |
| **Defendants.** | § |

## MEMORANDUM IN SUPPORT OF DEFENDANTS NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.'S JURY DEMAND AND MOTION TO WITHDRAW THE REFERENCE

# TABLE OF CONTENTS

**Page**

I.   The Bankruptcy Court's Post-Confirmation Jurisdiction Is Limited and Does Not Extend to Non-Core Claims.................................................................................. 4

II.   Because Resolution of These Proceeding Against Defendants Requires Substantial and Material Consideration of Federal Non-Bankruptcy Law, the Reference Must Be Withdrawn................................................................................................................. 5

   A.  Plaintiff's Claims Implicate Substantial and Material Securities Law Questions............... 6

   B.  Plaintiff's State Law Claims Implicate Substantial and Material Federal Tax Law Issues Mandating Withdrawal. ................................................................................ 9

III.   The District Court May Also Withdraw the Reference for Cause................................... 13

   A.  Defendants Have a Right to a Jury Trial of All Claims Asserted Against Them. ............. 17

     1.  Declaratory Judgment that Defendants are Liable for the Debts of HCMLP, Strand, and Dondero as Alter Egos (Count IX) and Successor Liability (Count XIII). ....... 18

     2.  Constructive Fraudulent Transfers (Based Upon State Law) (Count XI) and Allegedly Intentionally Fraudulent Transfers (Count XII). .................................................. 20

     3.  Aiding and Abetting Breach of Fiduciary Duty (Count XV), and Civil Conspiracy to Breach Fiduciary Duty (Count XVI). .............................................. 20

     4.  Tortious Interference with Prospective Business Relations (Count XXVII). ................ 22

     5.  Unjust Enrichment (Count XXVIII). ....................................................................... 22

   B.  The Court Should Withdraw the Reference for All Claims.............................................. 23

IV.   Conclusion ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Walker (In re Gulf States Long Term Acute Care of Convington, LLC)*,
    455 B.R. 869 (E.D. La. 2011) .................................................24

*In re Align Strategic Partners, LLC*,
    No. 16-35702, 2019 WL 2524938 (Bankr. S.D. Tex. Mar. 5, 2019).....................24

*In re Allied Sys. Holdings, Inc.*,
    524 B.R. 598 (Bankr. D. Del. 2015) ..............................................20, 21

*In re Am. Solar King Corp.*,
    92 B.R. 207 ...................................................................6

*AstenJohnson Inc. v. Columbia Cas. Co.*,
    562 F.3d 213 (3d Cir. 2009)....................................................19

*Austin v. Shalala*,
    994 F.2d 1170 (5th Cir. 1993) .................................................23

*Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*,
    266 F.3d 388 (5th Cir. 2001)...................................................4

*Bank of Saipan v. CNG Financial Corp.*,
    380 F.3d 835 (5th Cir. 2004)..................................................23

*Beacon Theatres, Inc. v. Westover*,
    359 U.S. 500 (1959)..........................................................18

*Beitel v. OCA, Inc. (In re OCA, Inc.)*,
    551 F.3d 359 (5th Cir. 2008) ..................................................4

*Blair v. Infineon Techs. AG*,
    720 F. Supp. 2d 462 (D. Del. 2010)............................................19

*Broyles v. Cantor Fitzgerald & Co.*,
    No. CV 3:10-854-JJB-CBW, 2016 WL 4054923 (M.D. La. July 26, 2016)....................19, 20

*Buzard v. Houston*,
    119 U.S. 347 (1886)..........................................................23

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,
    No. 4:09-CV-386-Y, 2009 WL 10684933 (N.D. Tex. Aug. 18, 2009) ....................5

*City of El Paso, Tex. v. El Paso Entm't, Inc.*,
   464 Fed. Appx. 366 (5th Cir. 2012) ..................................................................19

*In re Clay*,
   35 F.3d 190 (5th Cir. 1994) ..................................................................13, 14, 15

*In re CM Holdings, Inc.*,
   221 B.R. 715 (D. Del. 1998) .............................................................................13

*In re Contemp. Lithographers, Inc.*,
   127 B.R. 122 (M.D.N.C. 1991)......................................................................6, 13

*Curriden v. Middleton*,
   232 U.S. 633 (1914)..........................................................................................21

*Dairy Queen, Inc. v. Wood*,
   269 U.S. 369 (1962)....................................................................................16, 18

*Dodd v. Savino*,
   426 S.W.3d 275 (Tex. App.—Houston [14th Dist.] 2014, no pet.)........................19

*In re Galaz*,
   765 F.3d 426 (5th Cir. 2014) ...........................................................................24

*Gordon v. Webster (In re Webster)*,
   629 B.R. 654 (Bankr. N.D. Ga. 2021) ...............................................................12

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989)..............................................14, 15, 16, 18, 19, 20, 21, 23

*In re Green*,
   183 B.R. 532 (Bankr. C.D. Ill 1995)..................................................................10

*Guffy v. Brown (In re Brown Med. Ctr., Inc.)*,
   578 B.R. 590 (Bankr. S.D. Tex. 2016) ...............................................................24

*Holland Am. Ins. Co. v. Succession of Roy*,
   777 F.2d 992 (5th Cir. 1985) .....................................................................14, 24

*Langenkamp v. Culp*,
   498 U.S. 42 (1990).........................................................................................15

*Lauria v. Thunderflower (In re Taylor, Bean & Whitaker Mortg. Corp.)*,
   Adv. No. 3:11-ap-693-JAF, 2018 WL 6721987 (Bankr. M.D. Fla. Sept. 28, 2018)...............12

*Levine v. M&A Custom Home Builder & Developer, LLC*,
   400 B.R. 200 (S.D. Tex. 2008) .........................................................................13

*Lone Star Bank of W. Tex. v. Rabo Agservices*,
   No. 2:19-CV-098-Z, 2020 U.S. Dist. LEXIS 197769
   (N.D. Tex. Oct. 23, 2020) ...............................................................................13

*In re Matter of Swift Air, L.L.C.*,
   624 B.R. 694 (D. Ariz. 2020) ..........................................................................15

*In re Mirant Corp.*,
   354 B.R. 113 (Bankr. N.D. Tex. 2006) .............................................................24

*Mirant Corp. v. Consol. Edison Co. of N.Y., Inc. (In re Mirant Corp.)*,
   Case No. 4:06-CV-540-A, 2007 U.S. Dist. LEXIS 108
   (N.D. Tex. Jan. 3, 2007) ..................................................................................16

*Mirant Corp. v. The S. Co.*,
   337 B.R. 107 (N.D. Tex. 2006) ..............................................................20, 21, 24

*In re Nat'l Gypsum Co.*,
   145 B.R. 539 (N.D. Tex. 1992) ...........................................................................5

*Nu Van Tech., Inc. v. Cottrell (In re Nu Van Tech., Inc.)*,
   Nos. 01-49589-DML-11, 03-4219, 2003 Bankr. LEXIS 1331
   (Bankr. N.D. Tex. 2003) ...........................................................................21, 22

*Pernell v. Southall Realty*,
   416 U.S. 363 (1974) ..................................................................................16, 18

*Picard v. Avellino*,
   469 B.R. 408 (S.D.N.Y. 2012) ............................................................................6

*Picard v. Flinn Invs., LLC*,
   463 B.R. 280 (S.D.N.Y. 2011) ............................................................................6

*Price v. Craddock*,
   85 B.R. 570 (D. Colo. 1988) ...............................................................................6

*In re Resorts Int'l, Inc.*,
   372 F.3d 154 (3d Cir. 2004) .............................................................................13

*Ross v. Bernhard*,
   396 U.S. 531 (1970) ..........................................................................................16

*In re Stambaugh*,
   532 B.R. 572 (Bankr. M.D. Pa. 2015) ..............................................................19

*Stern v. Marshall*,
   564 U.S. 462 (2011) ...................................................................................14, 22

*Terrell v. DeConna,*
877 F.2d 1267 (5th Cir. 1989) ...................................................................................19

*United States Brass Corp., Inc. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.),*
301 F.3d 296 (5th Cir. 2002) ...................................................................................13

*Wagner v. Ultima Homes, Inc. (In re Vaughn Co.),*
498 B.R. 297 (Bankr. D. N.M. 2013) ........................................................................10

*In re Wood,*
825 F.2d at 93 .............................................................................................................4

**Statutes**

11 U.S.C. § 502 ....................................................................................................................3

11 U.S.C. § 510 ....................................................................................................................3

11 U.S.C. § 544 ................................................................................................3, 10, 17, 24

11 U.S.C. § 547 ....................................................................................................................3

11 U.S.C. § 548 ....................................................................................................................3

11 U.S.C. § 550 ............................................................................................................17, 24

11 U.S.C. § 6901(c) ...........................................................................................................11

26 U.S.C. § 701 ..................................................................................................................10

26 U.S.C. § 6502 ...............................................................9, 10, 11, 12, 13, 17, 24

26 U.S.C. § 6901 ...............................................................................................11, 12, 13

28 U.S.C. § 157 ............................................................................................................3, 13

28 U.S.C. § 157(b)(2)(H) ...........................................................................................14, 24

28 U.S.C. § 157(d) ........................................................................................................5, 13

28 U.S.C. § 157(e) ..............................................................................................................17

28 U.S.C. § 1334 ................................................................................................................13

28 U.S.C. § 1334(b) .............................................................................................................4

28 U.S.C. § 2201 ................................................................................................................18

**Other Authorities**

Fed. R. Bank. P. 9015 ................................................................................................................1

Fed. R. Civ. P. 38 ................................................................................................................1, 18

Fed. R. Civ. P. 39 ...................................................................................................................18

Fed. R. Civ. P. 57 ...................................................................................................................18

*U.S. Const. Amend.* VII .........................................................................................................15

Weintraub and Resnick, *Bankruptcy Law Manual*, 6-15 .........................................................6

Wright & Miller, Fed. Prac. & Proc. § 2769 (4th ed.) .............................................................19

NexPoint Advisors, L.P. ("NexPoint"), and Highland Capital Management Fund Advisors, L.P. ("HCMFA") (collectively, "Defendants"), defendants in the above-captioned adversary proceeding (the "Adversary Proceeding") filed by Plaintiff Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust of Highland Capital Management, L.P. (the "Litigation Trustee" or "Plaintiff"), file this *Jury Demand and Motion to Withdraw the Reference*, as follows.[1]

## PRELIMINARY STATEMENT

1.      The claims asserted against the Defendants in this Adversary Proceeding mandate that the District Court withdraw the reference. Resolution of the claims against the Defendants necessarily implicates substantial and material consideration of federal non-bankruptcy law, including federal securities law and federal tax law.

2.      Furthermore, as set forth in detail below, the Defendants have jury trial rights with respect to nearly all of the causes of action asserted against them. The Defendants' jury trial rights constitute further cause for the District Court to withdraw the reference.

3.      Subject to and without waiving their right to compel arbitration of all issues raised in the Adversary Proceeding, Defendants hereby provide notice pursuant to Fed. R. Civ. P. 38 and Fed. R. Bank. P. 9015 of their demand for a jury trial on all the issues so triable.  Defendants respectfully do ***not*** consent to a jury trial before the bankruptcy court.

---

[1] Defendants also join in the *Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against the Former Employee Defendants* filed by Scott Ellington, Isaac Leventon, Frank Waterhouse, and CPCM, LLC (collectively, the Former Employee Defendants") and the motions of the other defendants in this Adversary Proceeding. To the extent the arguments of other defendants, including specifically the Former Employee Defendants are applicable to the claims asserted against the Defendants, the Defendants incorporate them by reference as though fully set forth herein.

## FACTUAL BACKGROUND

4.    On October 16, 2019, Highland Capital Management, L.P. ("HCMLP" or "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5.    On November 24, 2020, HCMLP filed the *Fifth Amended Plan of Reorganization* [Dkt. No. 1472, as modified by Dkt. No. 1808] (the "Plan"). Thereafter, on February 22, 2021 (the "Confirmation Date"), the Bankruptcy Court entered the *Order (I) Confirming the Fifth Plan of Reorganization of Highland Capital Management, L.P. (As Modified) and (II) Granting Related Relief* [Dkt. No. 1943] (the "Confirmation Order").

6.    On August 11, 2021, HCMLP filed the *Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Dkt. No. 2700], thereby announcing that Plan had gone effective as of the date thereof (the "Effective Date"). Since the Effective Date, the Plan has been substantially consummated, and "distributions to the Debtor's creditors are well underway." *See Appellee's Motion to Dismiss Appeal as Equitably Moot*, Adv. Proc. No. 3:21-cv-01895-D, pp. 17-20 [Dkt. No. 14] (Oct. 15, 2021).

7.    Nearly eight months after the Confirmation Date and two months after the Effective Date, the Litigation Trustee commenced the Adversary Proceeding in the Bankruptcy Court, filing the *Complaint and Objection to Claims* [Adv. Dkt. No. 1] (the "Complaint").

8.    The Complaint contains thirty-six (36) Counts against nineteen (19) defendants. There are no Counts against these Defendants, HCMFA and NPA, that do not arise out of state law causes of action or claims on which these Defendants have a right to a jury trial. Moreover, looking at the Counts against all defendants, which the Plaintiff chose to bring in one Complaint, the state law issues predominate. Specifically, the Counts asserted against all defendants can be grouped as follows:

      a.       Preference claims based upon 11 U.S.C. § 547

          (i)      Count XXXI[2]

      b.       Fraudulent transfers claims under 11 U.S.C. § 548

          (i)      Counts I, II, XI, XII, , XXXII, XXXIII[3]

      c.       Disallowance or subordination of claims under 11 U.S.C. §§ 502, 510

          (i)      Counts XXXIV, XXXV, XXVI

      d.      State law created claims under State statutes and law, state law fraudulent transfers laws, breach of fiduciary duty, and conspiracy (the "State Law Claims")

          (i)      Counts III, IV, V, VI, VII, VIII, XI, X, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, XXV, XXVI, XXVII, XXVIII, XXIX, XXX

As the Court can see, the vast majority of the claims asserted in the Complaint are claims that solely arise under State law.

## ARGUMENTS AND AUTHORITIES

9.      Pursuant to 28 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Pursuant to Misc. Order No. 33 in the United States District Court for the Northern District of Texas, all such proceedings were referred to the Bankruptcy Judges of the Northern District of Texas. *See* Local Rules of the Northern District of Texas, Misc. Order No. 33, "Order of Reference of Bankruptcy

---

[2] Even preference claims can give rise to a right to a jury trial where a defendant is not pressing pre-petition proofs of claim. *See* ¶ 33 *infra*.

[3] Counts, I, II, XI, XXXII, and XXXIII also seek avoidance of transfers under 11 U.S.C. 544 and other applicable law, which may include state law created avoidance actions. Even such claims under title 11 can give rise to a right to a jury trial where a defendant is not pressing pre-petition proofs of claim. See ¶ 33 *infra*.

Cases and Proceedings Nunc Pro Tunc," dated Aug. 3, 1984 (". . . any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 . . . and which may be filed herein hereafter . . . be and they hereby are referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law.").

## I.    The Bankruptcy Court's Post-Confirmation Jurisdiction Is Limited and Does Not Extend to Non-Core Claims.

10.    Prior to the confirmation of a debtor's reorganization plan, bankruptcy courts have broad authority to preside over non-core claims that are "related to" the bankruptcy proceedings even though they cannot issue final orders with respect to such claims.[4]

11.    The Fifth Circuit has made clear, however, that after a debtor's plan of reorganization has been confirmed, the scope of a bankruptcy court's subject matter jurisdiction is far more limited because "the debtors' estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."[5] When assessing whether the bankruptcy court had jurisdiction over non-core state law claims, the Fifth Circuit identified the following factors that supported denying bankruptcy jurisdiction:  (1) the claims at issue "principally dealt with post-confirmation relations between the parties"; (2) "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization"; and (3) "no facts or law deriving from the reorganization or the plan [were] necessary to the claim."[6]

12.    Here, the Complaint containing mostly state law created claims was filed nearly eight months after the Confirmation Order was entered. The non-core state law claims are not

---

[4] *See, e.g.*, *In re Wood*, 825 F.2d at 93 (citing 28 U.S.C. § 1334(b)); *Beitel* v. *OCA, Inc.* (*In re OCA, Inc.*), 551 F.3d 359, 367 (5th Cir. 2008) ("Bankruptcy courts have full adjudicative power over core proceedings; in non-core proceedings they are restricted to issuing proposed findings of fact and conclusions of law, which the district court may adopt or reject.").

[5] *Bank of La.* v. *Craig's Stores of Tex., Inc.* (*In re Craig's Stores of Tex., Inc.*), 266 F.3d 388, 390 (5th Cir. 2001).

[6] *Id*. at 391.

derived from the Debtor's plan, nor is the Plan necessary to the existence of the claims. Furthermore, the non-core claims are not based on post-confirmation activities. Even if the disputed facts at issue in the Complaint occurred pre-confirmation, that, by itself, is not sufficient to grant the Bankruptcy Court jurisdiction over non-core, post-confirmation claims unrelated to the Debtor's plan. The Defendants do not consent to the Bankruptcy Court issuing any final judgments with respect to any non-core claims. The Bankruptcy Court, therefore, lacks subject matter jurisdiction over the non-core claims and the District Court should withdraw the reference.

## II.     Because Resolution of These Proceeding Against Defendants Requires Substantial and Material Consideration of Federal Non-Bankruptcy Law, the Reference Must Be Withdrawn.

13.     In accordance with 28 U.S.C. § 157(d), "[t]he district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." "[C]ourts have generally held that a mandatory withdrawal of reference is warranted where 'substantial and material consideration' of federal statutes other than the Bankruptcy Code is 'necessary' to the resolution or a case or proceeding."[7] The reference must be withdrawn where "relevant non-code legal issues will require substantial and material consideration" and the court is "satisfied that consideration of these federal laws requires 'significant interpretation' on the part of the court."[8] *Id.* All of these criteria are met here.

---

[7] *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) (withdrawing the reference where proceeding involved "complex" patent infringement litigation); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, No. 4:09-CV-386-Y, 2009 WL 10684933 at *1 (N.D. Tex. Aug. 18, 2009).

[8] *Id.*

## A.     Plaintiff's Claims Implicate Substantial and Material Securities Law Questions.

14.     All counts of the complaint against NexPoint and HCMFA will implicate substantial and material questions of federal securities law. District courts have generally granted timely mandatory withdrawal motions involving securities cases with federal securities laws issues. *See, e.g., In re Contemp. Lithographers, Inc.*, 127 B.R. 122, 125 (M.D.N.C. 1991); *In re Am. Solar King Corp.*, 92 B.R. 207, 210 (W.D. Tex. 1988; *Price v. Craddock*, 85 B.R. 570, 572 (D. Colo. 1988). As the District Court in the Western District of Texas recognized, "a claim which is based on federal securities statutes 'must be heard by the district court if any party so requests.'" *In re American Solar King Corp.*, 92 B.R. at 210-11 (W.D. Tex. 1988) (quoting Weintraub and Resnick, *Bankruptcy Law Manual*, 6-15); *see also Picard v. Flinn Invs., LLC*, 463 B.R. 280, 283–87 (S.D.N.Y. 2011) (granting partial withdrawal of the reference where fraudulent transfer defendants asserted defenses implicating federal securities laws); *Picard v. Avellino*, 469 B.R. 408, 411–13 (S.D.N.Y. 2012).

15.     Plaintiffs' allegations that NexPoint and HCMFA were created fraudulently—or that funds were improperly transferred between them and the Debtor[9]—will necessarily involve resolution and significant interpretation of key questions of federal securities law. That is, Defendants will establish that the transactions complained of were undertaken, on advice of counsel, to comply with securities law, and not for the purposes alleged by Plaintiff. HCMFA has at all times been registered as an investment advisor under the Investment Advisor Act of 1940. NexPoint likewise has been registered as an investment advisor under the Investment Advisor Act of 1940 since its creation in 2012.[10]

---

[9] To be clear, NexPoint and HCMFA will *deny* these allegations.

[10] NexPoint has filed an application to deregister as an investment advisor with the SEC and the application remains pending.

16.     As registered investment advisors, the investment advice and investment transactions—especially among related entities—are subject to Securities & Exchange Commission ("SEC") regulatory scrutiny.  The Investment Company Act of 1940, the Investment Advisor Act of 1940, and applicable federal regulations promulgated pursuant thereto, generally establish limits on transactions among affiliated companies to protect investors subject to certain enumerated exceptions and between affiliated companies and control persons/owners. The allegations regarding transfers between the Debtor and HCMFA, and later allegedly between the Debtor and NexPoint, will implicate significant and broad questions of federal securities laws.

17.     For example, Section 17(d) of the Investment Company Act and Rule 17d-1 prohibit an affiliated person of a registered investment company or an affiliated person of such person, acting as a principal, from participating or effecting any transaction in connection with any joint enterprise or joint arrangement in which the investment company participates unless the Commission issues an order permitting the transaction. The SEC considers whether the participation of the investment company in the joint enterprise or joint arrangement is consistent with the provisions, policies and purposes of the Act, and Rule 17d-3 provides an opportunity to seek exemption where the joint enterprise or joint arrangement is consistent with the Investment Company Act's goals to protect investors.

18.     Section 17(a) of the Act generally prohibits an affiliated person of a registered investment company, or an affiliated person of such a person ("second-tier affiliate"), from selling any security to or acquiring any security from the company. Section 2(a)(3) of the Act defines "affiliated person" to include (a) any person directly or indirectly owning, controlling, or holding with power to vote 5% or more of the outstanding voting securities of the other person, (b) any person 5% or more of whose outstanding voting securities are directly or indirectly owned,

controlled or held with the power to vote by the other person, and (c) any person directly or indirectly controlling, controlled by, or under common control with, the other person. Section 2(a)(9) of the Act provides that a control relationship will be presumed where one person owns more than 25% of another person's voting securities. The periodic securities filings of HCMFA and NexPoint each identify Mr. Dondero as an indirect owner, giving rise to significant questions under section 17(a).

19.     Section 17(e)(1) of the Investment Company Act generally provides that it is unlawful for an affiliated person of a registered investment company ("RIC"), or an affiliated person of such person, acting as agent, to accept from any source any compensation (other than a regular salary or wages) for the purchase or sale of any property to or for such company or any controlled company thereof, except in the course of such person's business as an underwriter or broker.

20.     It is part of the public record and subject to judicial notice that Highland Capital Partners and Highland Funds Asset Management, L.P. (n/k/a HCMFA) sought and received exemptions from the Securities and Exchange Commission in connection with transactions between these related entities. *See, e.g.,* SEC Investment Company Act of 1940 Release No. 28908 (granting exemptions for related entity transactions) (available at https://www.sec.gov/rules/ic/2009/ic-28908.pdf).

21.     During the course of these proceedings, a court of competent jurisdiction will be called upon to answer some or all of the following essential questions of federal securities law:

a.     Whether the alleged transactions between the Debtor and HCMFA and NexPoint were within the restrictions of Section 17 of the Investment Company Act of 1940.

b.  Whether the alleged transactions between the Debtor and HCMFA and NexPoint were exempt from restrictions of the Investment Company Act by virtue of the exemption(s) granted by the SEC.

c.  Whether any of the alleged transactions implicate restrictions of Section 18 of the Investment Company Act of 1940 (related to classes of securities, voting rights).

d.  Whether any of the alleged transactions are exempt from restrictions of the Investment Company Act by virtue of the exemption(s) granted by the SEC?

e.  Whether the creation of NexPoint and HCMFA were motivated by compliance with federal securities regulations and limitations they create.

f.  Whether any of the Debtor's causes of action are pre-empted or displaced by federal securities laws.

22.     The aforementioned questions certainly merit "substantial and material consideration of federal statutes other than the Bankruptcy Code. Furthermore, interpretation of those statutes is necessary to the resolution of the Adversary Proceeding. Under these circumstances, withdrawal of the reference is mandatory.

**B.    Plaintiff's State Law Claims Implicate Substantial and Material Federal Tax Law Issues Mandating Withdrawal.**

23.     Plaintiff's State Law Claims against the Defendants assert that the trustee can step into the shoes of the Internal Revenue Service ("IRS") as a creditor holding an unsecured claim and use Texas and Delaware state law in conjunction with 26 U.S.C. § 6502 as "applicable law" under Bankruptcy Code § 544(b)(1) to avoid alleged fraudulent transfers that occurred within 10 years of the petition date that may be avoided only under applicable state law.

24.     The applicable federal tax statute, 26 U.S.C. § 6502, provides that "[w]here the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—(1) within 10 years after the assessment of the tax . . . ." 26 U.S.C. § 6502(a)(1).[11]

25.     Whether Plaintiff can even attempt to utilize the IRS look-back period under 26 U.S.C. § 6502(a)(1) will depend on the application of that statute where the debtor is a partnership that does not generally pay tax.[12] Although a partnership must file an annual information return to report income, deductions, gains, losses, etc., from its operations, the partnership does not pay income tax. Instead, the partnership "passes through" profits or losses to its partners who then report their share of the partnership's income or loss on their personal tax return. The Internal Revenue Code provide that "[a] partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities." 26 U.S.C. § 701; s*ee also In re Green*, 183 B.R. 532, 537 (Bankr. C.D. Ill 1995).

26.     Another issue is the application of 26 USC § 6502 to the particular proofs of claim filed by the IRS in the Debtor's bankruptcy.  They appear to be excise taxes.  It is unclear whether that is what is within § 6502 which does not mention the type of tax to which it applies.

---

[11] In addition to the IRS issues implicated, it is not a foregone conclusion that a trustee may step into the shoes of the IRS as a so-called "golden creditor" and utilize 26 U.S.C. § 6502 to expand the applicable look-back period for fraudulent transfers to ten years. There is no binding authority in the Fifth Circuit and at least one court has held that it was not Congress' intent in creating 11 U.S.C. § 544(b) to vest a bankruptcy trustee with the sovereign powers of the federal government. *Wagner v. Ultima Homes, Inc. (In re Vaughn Co.)*, 498 B.R. 297, 304–05 (Bankr. D. N.M. 2013). It is hard to understand the application of a per se 10-year reach back period for a tax claims that the Debtor may have no liability for under the Internal Revenue Code such as in this case where the Debtor is not a taxpayer.

[12] A partnership may pay taxes such as payroll taxes, but those are not at issue here.

27.     Still other questions relate to how § 6502 creates a "lookback" as Plaintiff seems to allege it does.  Recall, the statue provides:

> **(a)** **LENGTH OF PERIOD** Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
> (1)  within 10 years after the assessment of the tax, . . .
> If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

Nothing about this above language suggests that even the IRS can seek to avoid transfers that predate the accrual of any claim.  This is an issue which there does not appear to be much guidance, either in the bankruptcy cases or otherwise. The ten-year period is called the "Collection Statute Expiration Date." It is the period in which the IRS may levy against a taxpayer that it has assessed. Unlike state fraudulent transfer statutes, 26 U.S.C. § 6502 is silent on the avoidance of transfers. Its applicability to avoidance actions, therefore, is questionable.

28.     While 26 U.S.C. § 6502 provides the IRS with a period for collection, the ability of the IRS to avoid transfers is found in 26 U.S.C. § 6901, which provides the IRS with a shorter period than ten years to avoid a transfer to a transferee.[13] "In general, the IRS is subject to a ten-

---

[13] The applicable statute provides as follows:

(c) Period of Limitations. The period of limitations for assessment of any such liability of a transferee or a fiduciary shall be as follows:

(1) Initial Transferee. In the case of the liability of an initial transferee, within 1 year after the expiration of the period of limitation for assessment against the transferor;

(2) Transferee of Transferee. In the case of the liability of a transferee of a transferee, within 1 year after the expiration of the period of limitation for assessment against the preceding transferee, but not more than 3 years after the expiration of the period for assessment against the initial transferor;

except that if, before the expiration of the period of limitation for the assessment of the liability of the transferee, a court proceeding for the collection of the tax or liability in respect thereof has been begun against the initial transferor or the last preceding transferee, respectively, then the period of limitation for assessment of the liability of the transferee shall expire 1 year after the return of execution in the court proceeding.

11 U.S.C. § 6901(c).

year statute of limitations for collection, measured from the time of assessment." *Lauria v. Thunderflower (In re Taylor, Bean & Whitaker Mortg. Corp.)*, Adv. No. 3:11-ap-693-JAF, 2018 WL 6721987 at *5 (Bankr. M.D. Fla. Sept. 28, 2018). The IRS then generally has three years from the filing of a tax return to assess tax liability against a taxpayer and one year thereafter to assess tax liability against a transferee. *Id.* (citing 26 U.S.C. § 6901(c)(1)). Although several bankruptcy courts have adopted a ten-year statute of limitation based upon 26 U.S.C. § 6502, the plain language of the statute does not support that conclusion. Indeed, the *Lauria* court correctly observed that "bankruptcy case law does not make clear why the ten-year collections limitations period, under 26 U.S.C. § 6502(a)(1), should apply rather than the three-plus-one-year transferee-liability limitations periods, under 26 U.S.C. § 6901(c)(1)." *Id.* In *Luaria*, the court noted that the ten-year period under 26 U.S.C. § 6502 "appears to be a look-forward period rather than a lookback period." *Id.* at *6. To the extent that a trustee seeks to obtain a ten-year look-back period from the filing of the bankruptcy case utilizing 26 U.S.C. § 6502, it would be illogical to grant a trustee in bankruptcy greater power than that provided to the federal government.

29.     In the present case, the proofs of claim filed by the IRS do not show an assessment date. In fact, it appears that the taxes may have yet to be assessed. In *Gordon v. Webster (In re Webster)*, 629 B.R. 654, 677 (Bankr. N.D. Ga. 2021), the court noted that under 26 U.S.C. § 6502, it is the date of the assessment that is key: "whereas fraudulent conveyance provisions under state and federal law focus on the date of the transfer." To the extent that the Plaintiff here seeks to avoid transfers up to ten years prior to the bankruptcy filing based upon 26 U.S.C. § 6502, it is not readily apparent that the statute authorizes him to do so. "Considering the focus on assessment in case law and the statutory text, the Court cannot find that § 6502 operates to avoid transfers up to ten years prior to the petition irrespective of the status of tax liability or assessment." *Id.* Because

this matter has not been decided by the Fifth Circuit, the matter must be withdrawn to allow for the material consideration of the interplay of 26 U.S.C. § 6502 and 26 U.S.C. § 6901.

30.     Because a partnership does not pay income tax, and because a bankruptcy filing does not alter the taxpayer status of a partnership, the 10-year IRS lookback period under 26 U.S.C. § 6502 does not seem applicable to these proceedings. To the extent that the Plaintiff asserts otherwise would require substantial and material consideration of non-bankruptcy federal tax law, thus mandating withdrawal of the reference. *See, e.g., In re CM Holdings, Inc.*, 221 B.R. 715, 721– 22 (D. Del. 1998) (finding that withdrawal of the reference was mandatory to permit a district court to resolve unsettled federal tax law issues of first impression presented by a Chapter 11 debtor's objections to an IRS proof of claim). "Given Congress's intent to keep non-bankruptcy questions in district courts, which are more experienced at handling questions of non-bankruptcy federal law than the specialized bankruptcy courts," withdrawal of this case under Section 157(d) is mandatory. *In re Contemporary Lithographers, Inc.*, 127 B.R. at 128.

## III.     The District Court May Also Withdraw the Reference for Cause.

31.     Pursuant to 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." "The timely demand for a jury trial constitutes good cause."[14]   This is because "[b]ankruptcy courts fall outside of the constitutional authority of Article III and derive their authority from federal statutes."[15]

---

[14] *Lone Star Bank of W. Tex. v. Rabo Agservices*, No. 2:19-CV-098-Z, 2020 U.S. Dist. LEXIS 197769, at *2 (N.D. Tex. Oct. 23, 2020) (citing *In re Clay*, 35 F.3d 190, 196 (5th Cir. 1994)); *Levine v. M&A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 206 (S.D. Tex. 2008) ("When a defendant has a 7th Amendment right to a jury trial and does not consent to a jury trial, no further 'cause' for withdrawal of the reference must be shown.").

[15] *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004); *see also United States Brass Corp., Inc. v. Travelers Ins. Group, Inc., (In re United States Brass Corp.)*, 301 F.3d 296, 303 (5th Cir. 2002) ("[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. § 1334 and 157.").

32.    The Fifth Circuit has set forth a number of factors for courts to consider when determining if permissive withdrawal for cause is appropriate, including whether (i) the proceeding involves core or non-core issues, (ii) a party has demanded a jury trial, (iii) the withdrawal reduces forum shopping, (iv) withdrawal would foster the economical use of the debtors' and creditors' resources while reducing confusion, (v) the withdrawal would expedite the bankruptcy process, and (vi) withdrawal would further uniformity in bankruptcy administration.[16]

33.    However, if the right to a jury trial exists, then the distinction between core and non-core issues is immaterial.[17]    In fact, "where a case or controversy gives rise to a Seventh Amendment right to a jury trial, Congress may not give jurisdiction to a non-Article III court."[18] In *Stern v. Marshall*, 564 U.S. 462, 475, 503 (2011), the U.S. Supreme Court held that a bankruptcy court lacked jurisdiction to enter a final judgment on a claim for tortious interference, despite the fact that it was a core bankruptcy proceeding. *Id*. ("Vickie's counterclaim against Pierce for tortious interference is a 'core proceeding' under the plain text of § 157(b)(2)(C). . . .   The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.").  And in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 54-56 (1989), the U.S. Supreme Court held that a fraudulent conveyance action filed by a bankruptcy trustee on behalf of a bankruptcy estate – which Congress specifically designated a "core" proceeding under 28 U.S.C. § 157(b)(2)(H) – could not be adjudicated by a bankruptcy court.  *Id*. ("We hold that the Seventh Amendment entitles such a person to a trial by jury, notwithstanding Congress's designation of fraudulent

---

[16] *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5ᵗʰ Cir. 1985).

[17] *See In re Clay*, 35 F.3d at 194 ("Regardless of whether one characterizes a proceeding as core or noncore, a case is not a public rights case if a litigant has a Seventh Amendment right to a trial by jury.").

[18] *Id*. at 195.

conveyance actions as 'core proceedings.'"). Similarly, the Supreme Court has recognized jury

trial rights for preference actions.[19]

34.     Further, when a party has a right to a jury trial, claims regarding the economical

use of resources, reducing confusion, expediting the bankruptcy process, and advancing uniformity

in bankruptcy administration are similarly unavailing.  In *Granfinanciera, S.A. v. Nordberg*, 492

U.S. 33, 63 (1989), the U.S. Supreme Court acknowledged that, under certain circumstances,

allowing jury trials could "impede the swift resolution of bankruptcy proceedings and increase the

expense of Chapter 11 reorganizations," but the Court nevertheless concluded that "these

considerations are insufficient to overcome the clear command of the Seventh Amendment,"

particularly because "respondent's suit was commenced after the Bankruptcy Court approved the

debtor's plan of reorganization."  "The fact that a given law or procedure is efficient, convenient,

and useful in facilitating functions of government, standing alone, will not save it if it is contrary

to the Constitution."  *In re Clay*, 35 F.3d at 195.

35.     The Seventh Amendment preserves the right a jury trial in all "Suits at common

law, where the value in controversy shall exceed twenty dollars."  *U.S. Const. Amend*. VII.  "The

phrase 'suits at common law' refers to 'suits in which *legal* rights were to be ascertained and

determined," as opposed to suits in which "equitable rights alone were recognized, and equitable

remedies were administered."  *Granfinanciera*, 492 U.S. at 41 (emphasis in original).  However,

the Seventh Amendment also applies to actions "brought to enforce statutory rights that are

analogous to common-law causes of action ordinarily decided by English courts in the late 18th

century, as opposed to those customarily heard by courts of equity or admiralty."  *Id*. at 42.  In

---

[19] *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990); *see also In re Matter of Swift Air, L.L.C.*, 624 B.R. 694, 701 (D. Ariz. 2020) (finding that the bankruptcy court could not enter final judgment in preference actions asserted against non-consenting defendants who did not participate in the claims allowance process).

determining whether the claim is subject to a right to a jury trial, the Court should: 1) compare the claim to 18th century actions brought in the courts of England prior to the merger of the courts at law and equity; and 2) examine the remedy sought and determine whether it is legal or equitable in nature. *Id.* The second step of the analysis is more important than the first. *Id.*

36.    When a claim seeks money damages, the claim is generally considered to be legal rather than equitable. *See id.* at 47-48; *see also Pernell v. Southall Realty*, 416 U.S. 363, 370 (1974) ("[W]here an action is simply for the recovery . . . of a money judgment, the action is one at law."); *Dairy Queen, Inc. v. Wood*, 269 U.S. 369, 476 (1962) ("Petitioner's contention . . . is that insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal. We agree with that contention."). "There can be little doubt that fraudulent conveyance actions by bankruptcy trustees – suits which . . . 'constitute no part of the proceedings in bankruptcy but concern controversies arising out of it' – are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.". *Granfinanciera*, 492 U.S. at 56.

37.    The jury trial analysis must be conducted on a claim-by-claim basis. *See, e.g., Mirant Corp. v. Consol. Edison Co. of N.Y., Inc. (In re Mirant Corp.)*, Case No. 4:06-CV-540-A, 2007 U.S. Dist. LEXIS 108 (N.D. Tex. Jan. 3, 2007). "[W]here equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims." *Ross v. Bernhard*, 396 U.S. 531, 537-38 (1970).

38.    "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially

designated to exercise such jurisdiction by the district court *and with the express consent of all the parties*." 28 U.S.C. § 157(e) (emphasis added). Thus, if any party withholds its consent to the bankruptcy court conducting a jury trial, the matter cannot be tried before the bankruptcy court.

### A.  Defendants Have a Right to a Jury Trial of All Claims Asserted Against Them.

39.     Plaintiff has asserted eight claims against Defendants: (1) declaratory judgment that NexPoint and HCMFA are liable for the debts of HCMLP, Strand, and Dondero as Alter Egos (Count IX); (2) Constructive Fraudulent Transfers under 11 U.S.C. § 544, 550, 26 U.S.C. § 6502, and state law (Count XI); (3) Intentionally Fraudulent Transfers under 11 U.S.C. § 544, 550, 26 U.S.C. § 6502, and state law (Count XII); (4) Successor Liability (Count XIII); (5) Aiding and Abetting Breach of Fiduciary Duty (Count XV); (6) Civil Conspiracy to Breach Fiduciary Duties (Count XVI); (7) Tortious Interference with Prospective Business Relations (Count XVII); and (8) Unjust Enrichment (Count XXVIII).  Defendants have a right to a jury trial on all of these claims.

40.     First and foremost, each of the causes of action asserted against Defendants seeks monetary damages, and not equitable relief.  *See* Complaint, Count IX (Alter Ego), ¶ 238 ("As such, NexPoint and HCMFA are the alter egos of each of HCMLP, Dondero, and Strand, and the Court should pierce the corporate veil to hold NexPoint and HCMFA liable for the debts of each of HCMLP, Dondero, and Strand."); Count XI (Constructive Fraudulent Transfers), ¶ 249 ("Accordingly, these transfers should be set aside, avoided, and recovered under 11 U.S.C. § 544 and 550, 26 U.S.C. § 6502, and applicable state law, against all initial and subsequent transferees and/or entities for whose benefit the transfers were made."); Count XII (Intentionally Fraudulent Transfers), ¶ 254 (same); Count XIII (Successor Liability), ¶ 258 ("As such, HCMFA and NexPoint are liable for HCMLP's debts as the successors to HCMLP."); Count XV (Aiding and Abetting Breach of Fiduciary Duty, ¶ 267 ("The breaches of fiduciary duty that were aided and abetted by NexPoint and HCMFA caused tens of million (and potentially over one hundred

million) of dollars in damage to HCMLP."); Count XVI (Civil Conspiracy to Breach Fiduciary

Duty, P 274 ("NexPoint and HCMFA were each dominated and controlled by Dondero and, as

such, they each consciously acted in furtherance of the conspiracy, including by transferring

existing business to NexPoint and HCMFA, generating new business through NexPoint and

HCMFA, and failing to compensate HCMLP for the use of its employees and resources."); Count

XVII (Tortious Interference), P 281 ("HCMLP suffered, at minimum, tens of millions of dollars

in damage from Dondero's NexPoint's, and HCMFA's tortious interference with its prospective

business relations."); Count XXVIII (Unjust Enrichment), P 350-351 ("Through their exploitation

of HCMLP, NexPoint and HCMFA received tens or hundreds of millions of dollars of profits.

Plaintiff seeks restitution from NexPoint and HCMFA and an order from this Court disgorging all

payments, transfers, profits, fees, benefits, incentives, and other things of value obtained by them

as a result of the unjust conduct set forth above."); Prayer for Relief at p. 129 (requesting that the

Court grant relief "setting aside and avoiding the transfers of management and advisory

agreements to HCMFA and NexPoint"). Because Plaintiff seeks monetary damages, the claims

are legal in nature, and Defendants have a right to a jury trial on those claims. *Granfinanciera*,

492 U.S. at 47-48; *Pernell*, 416 U.S.at 370; *Dairy Queen, Inc.*, 269 U.S. at 476.

### 1. Declaratory Judgment that Defendants are Liable for the Debts of HCMLP, Strand, and Dondero as Alter Egos (Count IX) and Successor Liability (Count XIII).

41.     The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., and Fed. R. Civ.

P. 57 preserve the right to a jury trial in a declaratory judgment action. *See Beacon Theatres, Inc.*

*v. Westover*, 359 U.S. 500, 504 (1959) (stating that the Declaratory Judgment Act "specifically

preserves the right to jury trial for both parties."); *see also* Fed. R. Civ. P. 57 ("These rules govern

the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201. Rules 38 and 39

govern a demand for a jury trial."). "An action for declaratory relief can be either legal or equitable,

depending upon whether the action is simply an inverted lawsuit for legal relief or the counterpart of a suit in equity." *City of El Paso, Tex. v. El Paso Entm't, Inc.*, 464 Fed. Appx. 366, 370 (5th Cir. 2012) (quoting *Terrell v. DeConna*, 877 F.2d 1267, 1273 (5th Cir. 1989)). If "[a] declaratory judgment action seek[s] damages, or other legal remedy, it is a legal claim entitl[ing] the plaintiff to a jury trial." *In re Stambaugh*, 532 B.R. 572, 578 (Bankr. M.D. Pa. 2015) (citing *AstenJohnson Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 224-26 (3d Cir. 2009)); *see also* Wright & Miller, Fed. Prac. & Proc. § 2769 (4th ed.) ("If there would have been a right to jury trial on the issue if it had arisen in in action other than for a declaratory judgment, it must be tried to a jury on demand in the declaratory judgment action. There is no right to jury trial if, absent the declaratory judgment procedure, the issue would have arisen in a proceeding in equity or in admiralty.").

42.    Alter ego is not an independent cause of action under Texas or Delaware law, but rather is a "means of imposing liability for an underlying cause of action." *Dodd v. Savino*, 426 S.W.3d 275, 291 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469 (D. Del. 2010) ("The alter ego doctrine for piercing the corporate veil allows derivative liability to be placed upon a corporation's individuals.").

43.    Although the Fifth Circuit "has not weighed in on the question [of whether successor liability and piercing the corporate veil carry with them the right to a jury trial]," the court in *Broyles v. Cantor Fitzgerald & Co.*, No. CV 3:10-854-JJB-CBW, 2016 WL 4054923 (M.D. La. July 26, 2016) applied the *Granfinanciera* analysis to determine that the plaintiff in that case was entitled to a jury trial on theories of successor liability and alter ego. The Court reasoned that although the legal or equitable nature of the claims was "inconclusive" because their historical origins applied in both law and equity, the nature of the relief sought – money damages, a legal

remedy – was the more important *Granfinanciera* factor, and accordingly held that the plaintiff was entitled to a jury trial on those issues. *Id*. at *2.

44.     Here, Plaintiff's claim for declaratory judgment that Defendants are the alter egos of other defendants and its claim for successor liability are both merely attempts to hold Defendants liable for the alleged torts of other defendants.  Both request money damages. Complaint ¶¶ 238, 258.   As such, Defendants have a jury right on each of those claims.

### 2.      Constructive Fraudulent Transfers (Based Upon State Law) (Count XI) and Allegedly Intentionally Fraudulent Transfers (Count XII).

45.     The Court in *Granfinanciera* decisively resolved the issue of whether Defendants are entitled to a jury trial on Plaintiff's fraudulent transfer claims (which are claims that are created by state law).   In that case, the U.S. Supreme Court held that fraudulent transfer claims – even those arising under title 11 – are legal in nature and give rise to the right to a jury trial. *Granfinanciera,* 492 U.S. at 54-56 ("We hold that the Seventh Amendment entitles such a person to a trial by jury, notwithstanding Congress's designation of fraudulent conveyance actions as 'core proceedings.'").   Just as in *Granfinanciera*, Plaintiff seeks monetary damages.  *See* Complaint, ¶¶ 249, 254.   As such, Defendants have a right to a jury trial on Plaintiff's claims of fraudulent transfer.

### 3.      Aiding and Abetting Breach of Fiduciary Duty (Count XV), and Civil Conspiracy to Breach Fiduciary Duty (Count XVI).

46.     Historically, claims for breach of fiduciary duty are equitable under both Texas and Delaware law.  *See Mirant Corp. v. The S. Co*., 337 B.R. 107, 120 (N.D. Tex. 2006) ("Generally, claims for breach of fiduciary duty are within the exclusive jurisdiction of courts of equity.*"); In re Allied Sys. Holdings, Inc*., 524 B.R. 598, 608 (Bankr. D. Del. 2015) ("Actions for breach of fiduciary duty, historically speaking, are almost uniformly actions 'in equity' – carrying with them no right to a trial by jury.").   However, when determining whether specific claims for breach of

fiduciary duty give rise to a right to a jury trial, courts have generally followed the U.S. Supreme

Court's instructions in *Granfinanciera* to provide more weight to the relief sought. "[W]hen a

legal remedy, such as monetary relief, is sought for a breach of fiduciary duty, the action assumed

legal attributes [for purposes of determining the right to a jury trial]." *Mirant Corp.*, 337 B.R. at

120; *see also In re Allied Sys. Holdings, Inc.*, 524 B.R. at 613-14 ("The claim seeks compensatory

damages, which are legal in nature. . . . Therefore, the Court concludes that the Committee seeks

legal relief with respect to the claims against Mr. Gendregske for breach of fiduciary duty and

aiding and abetting breach of fiduciary duty because application of the second Granfinanciera

factor – the more important factor – weighs toward treating the claims as equitable."); *see also Nu*

*Van Tech., Inc. v. Cottrell (In re Nu Van Tech., Inc.)*, Nos. 01-49589-DML-11, 03-4219, 2003

Bankr. LEXIS 1331, at *5 (Bankr. N.D. Tex. 2003) (holding that Plaintiff's causes of action for,

*inter alia*, breach of fiduciary duty "are legal claims seeking monetary damages for which

Defendant would otherwise be entitled to a jury trial absent the bankruptcy proceedings" and

recommending that the district court grant the motion to withdraw); *Curriden v. Middleton*, 232

U.S. 633, 636 (1914) (holding that despite using the word "restitution," claim for conspiracy to

defraud, "[b]eing a suit for damages, the proper remedy is an action at law").

47.      Here, the Plaintiff does not seek equitable relief, such as the imposition of a

constructive trust, an equitable lien, or even the return of specific funds in Defendants' possession.

Rather, Plaintiff seeks "compensatory damages, which are legal in nature." *See In re Allied Sys.*

*Holdings, Inc.*, 524 B.R. at 613; Complaint, ¶¶ 267, 274.  As such, Defendants are entitled to a

jury trial on those claims.

Case 21-03076-sgj Doc 437 Filed 04/20/22 Entered 04/20/22 15:22:34 Page 80 of 84
Case 21-03067-sgj Doc 487 Filed 04/20/22 Entered 04/20/22 15:22:34 Page 80 of 84
Document     Page 40 of 64

4.     **Tortious Interference with Prospective Business Relations (Count XXVII).**

48.     In *Stern v. Marshall*, 564 U.S. at 475, 503, the U.S. Supreme Court held that a bankruptcy court lacked jurisdiction to enter a final judgment on a claim for tortious interference, despite the fact that it was a core bankruptcy proceeding.  *Id.* ("Vickie's counterclaim against Pierce for tortious interference is a 'core proceeding' under the plain text of § 157(b)(2)(C). . . . The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."); *see also Nu Van Tech., Inc. v. Cottrell (In re Nu Van Tech., Inc.)*, Nos. 01-49589-DML-11, 03-4219, 2003 Bankr. LEXIS 1331, at *5 (Bankr. N.D. Tex. 2003) (holding that Plaintiff's causes of action for, *inter alia*, tortious interference "are legal claims seeking monetary damages for which Defendant would otherwise be entitled to a jury trial absent the bankruptcy proceedings" and recommending that the district court grant the motion to withdraw).

49.     Like in *Stern*, Plaintiff seeks monetary damages.  *See* Complaint, ¶ 281.  And like in *Stern*, Plaintiff's claims have no bearing on a creditor's proof of claim.  Indeed, the Court has already issued [Does court actually issue it? Or just approve it? I'm not really sure, it just sounded weird?] a Plan, has resolved all proofs of claim, and the Plan has become effective.   Unlike in *Stern*, Plaintiff's claims are not asserted as counterclaims to a proceeding already pending before the bankruptcy court, which suggests even less compulsion to have those claims asserted in the bankruptcy court.   Accordingly, Defendants have a right to a jury trial on Plaintiff's tortious interference claims.

5.     **Unjust Enrichment (Count XXVIII).**

50.     According to the United States Supreme Court, "Our decisions establish beyond peradventure that '[i]n cases of fraud or mistake, as under any other head of chancery jurisdiction,

a court of the United States will not sustain a bill in equity to obtain only a decree for the payment

of money by way of damages, when the like amount can be recovered at law in an action sounding

in tort or for money had and received."[20] Thus, when a trustee seeks a money judgment as the

principal remedy, "even with 'classical equitable remedies' like restitution and avoidance, when a

money judgment is sought and no other equitable relief is requested, a complete remedy is

available at law because dollars are fungible  When money damages are sought, "any distinction

that might exist between 'damages' and monetary relief under a different label is purely semantic,

with no relevance to the adjudication of petitioners' Seventh Amendment claim."[21]

51.     Although Plaintiff states that he seeks "restitution" from Defendants, Plaintiff does

not seek the return of specific funds held by Defendants, he seeks a money judgment.  Complaint,

¶¶ 350, 351.  As such, Defendants are entitled to a jury trial on Plaintiff's claim for unjust

enrichment.

### B.     The Court Should Withdraw the Reference for All Claims.

52.     As stated above, all of Plaintiff's claims are subject to a jury trial, and therefore the

reference of all claims should be withdrawn.  However, even if the Court decides that Defendants

are entitled to a jury trial on only some claims, the Court should exercise its discretion to

permissively withdraw the reference for all claims.

53.     When evaluating whether permissive withdrawal is appropriate, the Fifth Circuit

Court of Appeals has instructed that Courts should consider whether (i) the proceeding involves

core or non-core issues, (ii) a party has demanded a jury trial, (iii) the withdrawal reduces forum

---

[20] *Granfinanciera*, 492 U.S. at 47-48 (quoting *Buzard v. Houston*, 119 U.S. 347, 352 (1886)); *see also Bank of Saipan v. CNG Financial Corp*., 380 F.3d 835, 840 (5th Cir. 2004) ("Money had and received is an equitable doctrine applied to prevent unjust enrichment."); *Austin v. Shalala*, 994 F.2d 1170, 1176 (5th Cir. 1993) (explaining that an action for restitution or quasi-contract – seeking the return of money paid by mistake to one to whom it was not owed – was an action at law tried to a jury in England in 1791, and therefore concluding that the defendant had a right to a jury trial).

[21] *Granfinanciera*, 492 U.S. at 49 n. 7.

shopping, (iv) the withdrawal would foster the economical use of the debtors' and creditors' resources while reducing confusion, (v) the withdrawal would expedite the bankruptcy process, and (vi) the withdrawal would further uniformity in bankruptcy administration.[22]

54.     Here, the Plaintiff's claims involve both core and non-core issues. While 28 U.S.C. § 157(b)(2)(H) defines fraudulent conveyance actions under Title 11 to be "core," the remaining claims are all non-core. Indeed, the fraudulent conveyance actions themselves are only partially core. In addition to fraudulent conveyance actions under the Bankruptcy Code, Plaintiff has also brought causes of action to recover allegedly fraudulent transfers under "26 U.S.C. § 6502, and applicable state law." Unlike the claims brought under §§ 544 and 550, a fraudulent transfer claim under state law is a "related to" proceeding, not a core proceeding.[23]

55.     When an adversary proceeding encompasses both core and non-core claims, courts have held that withdrawal of the reference is nevertheless appropriate because it promotes judicial efficiency.[24] Adjudicating all of the claims, both core and non-core, in the District Court eliminates the prospect of an appeal from the bankruptcy court's adjudication of core clams and dispenses with the need for the District Court to conduct a de novo review of proposed findings of fact and conclusions of law of the bankruptcy court after a trial in the bankruptcy court on non-core claims.[25] "The creation of two sets of proceedings could create judicial inefficiency, which should be avoided. This weighs in favor of withdrawal in whole."[26]

---

[22] See Holland Am. Ins. Co., 777 F.2d at 998-99.

[23] See In re Galaz, 765 F.3d 426, 431 (5th Cir. 2014) ("The district court treated [the debtor's] TUFTA claim as being 'related to' the bankruptcy rather than a core bankruptcy claim. We agree with this characterization."); In re Align Strategic Partners, LLC, No. 16-35702, 2019 WL 2524938, at *2 (Bankr. S.D. Tex. Mar. 5, 2019).

[24] In re Align Strategic Partners, LLC, 2019 WL 2524938, at *2; Guffy v. Brown (In re Brown Med. Ctr., Inc.), 578 B.R. 590, 597 (Bankr. S.D. Tex. 2016); In re Mirant Corp., 354 B.R. 113, 122 (Bankr. N.D. Tex. 2006).

[25] In re Align Strategic Partners, LLC, 2019 WL 2524938, at *2; In re Mirant Corp., 337 B.R. at 122.

[26] In re Align Strategic Partners, LLC, No. 16-35702, 2019 WL 2524938, at *2 (quoting Adler v. Walker (In re Gulf States Long Term Acute Care of Convington, LLC), 455 B.R. 869, 879 (E.D. La. 2011)).

56.    Further, regardless of whether the proceedings are core or non-core, as long as there is a right to a jury trial on some issues, the reference of the entire matter should be withdrawn. Withdrawing the entire matter will avoid judicial inefficiencies, as well as resolving issues relating to the fact that the District Court would be both a trier of fact and an appellate court on the same issues.  Accordingly, the Court should withdraw the reference for all claims against Defendants.

## IV.    Conclusion

For all of the foregoing reasons, Defendants respectfully request that the Court withdraw the reference of the claims against Defendants to the bankruptcy court, and provide Defendants such other relief to which it is entitled.

Dated: January 21, 2022                    Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Email:  deborah.deitschperez@stinson.com
Email:  michael.aigen@stinson.com

**ATTORNEYS FOR DEFENDANTS
NEXPOINT ADVISORS, L.P. AND
HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on the 21st day of January, 2022, a true and correct copy of this document was served electronically via the Court's CM/ECF system.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez

# EXHIBIT C

Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendant NexPoint Advisors, L.P.*
*and Highland Capital Management Fund Advisors, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>    **Reorganized Debtor.** | **Chapter 11**<br><br>**Case No. 19-34054-sgj11** |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,**<br><br>    **Defendants.** | **Adv. Pro. No. 21-03076-sgj** |

Case 21-03076-sgj Doc 131 Filed 03/04/22 Entered 03/04/22 15:29:34 Page 2 of 14
Case 21-03007-sgj Doc 181 Filed 03/04/25 Entered 03/04/25 11:29:30 Page 2 of 14
Document     Page 47 of 64

# <u>TABLE OF CONTENTS</u>

<b>Page</b>

I.     PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ........................... 1

II.    ARGUMENT ...................................................................................................................... 2

    A.    Defendants Have Demonstrated That This Adversary Proceeding Requires Substantial Consideration Of Federal Securities Law Triggering Mandatory Withdrawal. ................................................................................................................ 2

    B.    Defendants Have Demonstrated That This Adversary Proceeding Requires Substantial Consideration Of Federal Tax Law Triggering Mandatory Withdrawal. ................................................................................................................ 5

    C.    Immediate Permissive Withdrawal Should Occur Where, As Here, Plaintiff Concedes That Defendants Have Jury Trial Rights. ................................................. 6

    D.    The Bankruptcy Court Lacks Subject Matter Jurisdiction Over the Non-Core Causes of Action. ................................................................................................... 8

III.   CONCLUSION .................................................................................................................. 9

CORE/3522697.0002/173117187.6

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Align Strategic Partners LLC*,
  2019 WL 2527221 (Bankr. S.D. Tex. Mar. 5, 2019) ............................................................7, 8

*GenOn Mid-Atl. Dev., LLC v. Natixis Funding Corp.*,
  No. 4:19-CV-3078, 2020 WL 429880 (S.D. Tex. Jan. 28, 2020) ............................................7

*In re Clay*,
  35 F.3d 190 (5th Cir. 1994) ....................................................................................................7

*In re Contemporary Lithographers, Inc.*,
  127 B.R. 122 (M.D. N. Car. 1991) ......................................................................................3, 4

*In re Dallas Roadster, Ltd.*,
  Adv. N. 13-4033, 2013 WL 5758632 (Bankr. E.D. Tex. Sept. 27, 2013) ................................6

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  439 F.Supp.2d 692 (S.D. Tex. 2006) ......................................................................................2

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  No. CIV.A. H-01-3624, 2006 WL 6892915 (S.D. Tex. Dec. 4, 2006)....................................2

*Holtz v. JPMorgan Chase Bank, N.A.*,
  846 F.3d 928 (7th Cir. 2017) .................................................................................................4

*Lifemark Hospitals of Louisiana, Inc. v. Liljeberg Enterprises, Inc.*,
  161 B.R. 21 (E.D. La. 1993) ...............................................................................................4, 5

*Mirant Corp. v. Southern Co.*,
  337 B.R. 107 (N.D. Tex. 2006) ..............................................................................................6

*In re MPF Holding US LLC*,
  2013 WL 12146958 (Bankr. S.D. Tex. Apr. 26, 2013) ..........................................................7

*In re National Gypsum Co.*,
  145 B.R. 539 (N.D. Tex. 1992)...........................................................................................4, 6

*In re Orion Pictures Corp.*,
  4 F.3d 1095 (2d Cir. 1993).....................................................................................................7

*Picard v. Flinn Investments, L.C.*,
  463 B.R. 280 (S.D.N.Y. 2011) ...............................................................................................5

i

*In re Quality Lease & Rental Holdings, LLC*,
    No. 14-60074, 2016 WL 416961 (Bankr. S.D. Tex. Feb. 1, 2016) .....................................7, 8

*In re Sherwin Alumina Co., LLC*,
    No. 16-20012, 2016 WL 11188458 (Bankr. S.D. Tex. Dec. 21, 2016).....................................6

*Tex. United Hous. Program, Inc.* v. *Wolverine Mortg. Partner Ret.*,
    2017 WL 3822754 (N.D. Tex. Jul. 18, 2017) ...........................................................................6

**Rules and Statutes**

26 U.S.C. § 6502............................................................................................................................1, 5

26 U.S.C. § 6901...............................................................................................................................1

28 U.S.C. § 157(d).............................................................................................................................1

28 U.S.C. § 157(e).............................................................................................................................1

N. D. Tex. Bankr. Local R. 5011-1(a)(8)(C) ..................................................................................7

**Other Authorities**

SEC Investment Company Act of 1940, Release No. 28908 .........................................................3

CORE/3522697.0002/173117187.6

### REPLY IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE

Pursuant to 28 U.S.C. §§ 157(d) and (e), Federal Rule of Bankruptcy Procedure 5011 and Local Rule 5011-1, Defendants NexPoint and HCMFA hereby file this reply in response to *The Litigation Trustee's Response in Opposition to Defendants' Motion* [the "Motion"] *to Withdraw the Reference* [Dkt. No. 95] (the "Response") filed by Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust, and in further support of their Motion, Defendants respectfully state as follows:[1]

### I.      PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT[2]

1.      Contrary to Plaintiff's argument, Defendants have established that mandatory withdrawal is required because determination of the claims against them require substantial consideration of federal securities law and federal tax law. Whether Plaintiff can avoid these transfers will include the determination of whether the creation and funding of NexPoint and HCMFA were fraudulent, which will necessarily include determining whether the challenged transactions fall within an exemption *expressly granted* by the U.S. Securities and Exchange Commission, a substantial and disputed federal securities question. Whether Plaintiff can avoid transfers that occurred nearly a decade prior to the Complaint will also require material and substantial interpretation of at least two federal tax statutes—26 U.S.C. § 6502 and 26 U.S.C. § 6901.

---

[1] Defendants use the same abbreviations as they used in their Motion.

[2] Defendants also join in the *Reply in Support of Motion to Withdraw the Reference of the Causes of Action in the Complaint Asserted Against the Former Employee Defendants*, the *Reply in Support of the Okada Parties' Motion to Withdraw the Reference*, and the replies of the other defendants in this Adversary Proceeding. To the extent the arguments of other defendants, including specifically the Former Employee Defendants and the Okada parties are applicable to the arguments asserted with respect to Defendants, Defendants incorporate them by reference as though fully set forth herein.

---

2.      In addition, withdrawal is appropriate because Plaintiff has asserted non-core claims against Defendants for which Defendants have jury trial rights that the Bankruptcy Court cannot constitutionally provide. The existence of non-core claims and Defendants' jury trial rights have been conceded by Plaintiff. Accordingly, the question of whether the District Court must hear these proceedings is not a question of "if" but rather of "when."

3.      Given that the District Court must ultimately decide the matters presented in the Complaint, considerations of judicial economy and uniformity of decisions are strong reasons that the reference should be withdrawn for all purposes, and not merely for trial as Plaintiff proposes.

## II.    ARGUMENT

### A.    Defendants Have Demonstrated That This Adversary Proceeding Requires Substantial Consideration Of Federal Securities Law Triggering Mandatory Withdrawal.

As detailed in the Motion, Plaintiff's claims implicate serious, novel and complex questions of federal securities laws that require withdrawal of the reference.  Plaintiff does not dispute that NexPoint and HCMFA were both *created* pursuant to federal securities laws and from creation to the present are closely regulated by the SEC. Nor does the Trustee dispute that the Debtor is an affiliated person of NexPoint and HCMFA as defined in the federal securities laws. Since Plaintiff is alleging that the *creation* of these entities (the subject of a public filing and an SEC order) was fraudulent and is seeking to avoid the SEC-approved transfers among these entities as fraudulent, the resolution of the claims in this belated challenge to the creation and funding of NexPoint and HCMFA will implicate novel and complex questions of federal securities laws, requiring withdrawal of the reference.[3]

---

[3] *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 439 F.Supp.2d 692, 717 (S.D. Tex. 2006), on reconsideration sub nom. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. CIV.A. H-01-3624, 2006 WL 6892915 (S.D. Tex. Dec. 4, 2006) (securities laws are implicated by allegations relating to the creation and financing of sham entities).

4.      The primary alleged "fraudulent transfers" that Plaintiff claims represented a breach of fiduciary duties were the creation and funding of NexPoint and HCMFA.  Plaintiff does not dispute that some or all of these challenged transactions between Highland Capital Partners and Highland Funds Asset Management, L.P. (n/k/a HCMFA) were expressly reviewed and approved by the SEC in connection with transactions between these related entities.[4] As explicitly stated in the Motion, and unrebutted in the Response, whether and to what extent the SEC approval of these transactions operates as a complete defense to the allegations is a complex and novel securities question at the center of the claims against NexPoint and HCMFA.  It is impossible to resolve any allegation that the creation and funding of NexPoint and HCMFA were fraudulent without considering *at the very same time* whether the challenged transactions fall within an exemption *expressly granted* by the SEC.  At a minimum, the right to relief depends upon the resolution of a substantial and disputed federal securities question.

5.      In light of the SEC's grant of an exemption in connection with the challenged transfers, Plaintiff's reliance on *In re Contemporary Lithographers, Inc.* (Response at 20) is both surprising and disingenuous.  The quotation that Plaintiff provides indicates that mandatory withdrawal is not required when "no federal regulation applies to the dispute at hand."[5] Here, as in *In re Contemporary Lithographers, Inc.*, Plaintiff seeks to challenge conduct that is *directly regulated* by the SEC and at least in some instances the subject of a *specific* grant of exemption by the SEC as a violation of state common law principles.  Indeed, in the very case Plaintiff cites as a reason to reject withdrawal of the reference, the court reached the correct – and noncontroversial – conclusion that where a "federal question will affect the outcome of the

---

[4] *See, e.g.,* SEC Investment Company Act of 1940 Release No. 28908 (granting exemptions for related entity transactions) (available at https://www.sec.gov/rules/ic/2009/ic-28908.pdf).

[5] *In re Contemporary Lithographers, Inc.*, 127 B.R. 122, 125 (M.D. N. Car. 1991).

proceeding mandatory withdrawal applies."[6]  Since Plaintiff's allegations, if accepted, would run directly contrary to an exemption conferred by the SEC, this federal securities law question requires withdrawal of the reference.

6.      Plaintiff then erects a strawman, contending that NexPoint and HCMFA are seeking to exempt all federally registered investment companies from being pursued in bankruptcy. (Response at 20.) Plaintiff is incorrect. NexPoint and HCMFA are advocating for application of a simple, well-supported premise of federal bankruptcy law: where the proceeding involves a substantial question of non-bankruptcy code federal law that has more than a *de minimis* effect on interstate commerce,[7] withdrawal of the reference is required. All of the cases cited by Plaintiff in opposition support this principle and, in fact, granted the motion to withdraw the reference at issue.[8]

7.      Additionally, the fact that Plaintiff asserts only state law claims does not warrant denial of the motion to withdraw the reference.  Indeed, such inartful attempts to disguise federal securities law issues as state law claims are commonplace.  The core of these state law claims "in which one party to a contract [allegedly] conceals the fact that it planned all along to favor its own interests- is a staple of federal securities law."[9]

8.      Finally, there is nothing "speculative" about the securities law questions that will be at the center of the claims against NexPoint and HCMFA.  The transfers that Plaintiff is

---

[6] *Id.*, at 127.

[7] Plaintiff does not suggest that the transactions fail to implicate interstate commerce.  Therefore, this requirement has been conceded.

[8] *See Lifemark Hospitals of Louisiana, Inc. v. Liljeberg Enterprises, Inc.*, 161 B.R. 21, 25 (E.D. La. 1993) (granting motion to withdraw the reference because "'substantial and material' consideration of non-bankruptcy federal law is needed"); *In re National Gypsum Co.*, 145 B.R. 539, 542 (N.D. Tex. 1992) (same).

[9] *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 932 (7th Cir. 2017).

Case 21-03076-sgj Doc 181 Filed 03/04/22 Entered 03/04/22 15:29:34 Page 9 of 14
Case 21-03006-sgj Doc 181 Filed 03/04/22 Entered 03/04/22 15:29:34 Page 9 of 14
Document     Page 54 of 64

challenging were made and disclosed pursuant to the federal securities laws. As in *Picard v. Flinn Investments, L.C.*, 463 B.R. 280, 285 (S.D.N.Y. 2011), whether these transfers can be avoided in bankruptcy "requires 'significant interpretation' of the securities laws." And although Plaintiff claims in response that "Bankruptcy courts routinely consider these types of [securities] issues" (Response at 21), the Response contains no citations to any bankruptcy court anywhere considering these or similar federal securities issues. Even in the case that Plaintiff cites to oppose withdrawal on the basis that it is speculative, *Lifemark Hospitals of Louisiana,* the Bankruptcy Court granted the motion to withdraw the reference.[10]

9.      This Court should reach the same conclusion reached in every decision cited by the parties and withdraw the reference. As the Court in *Picard* concluded, withdrawal of the reference to the bankruptcy court is mandatory "in order to undertake the 'significant interpretation' of securities laws necessary" to resolve these questions."[11]

## B.     Defendants Have Demonstrated That This Adversary Proceeding Requires Substantial Consideration Of Federal Tax Law Triggering Mandatory Withdrawal.

10.      As well-explained in the replies of the Former Employee Defendants and the Okada Defendants, among others, Plaintiff misunderstands Defendants' argument concerning the tax issue that requires mandatory withdrawal. It is not whether and how section 544(b) of the Bankruptcy Code may or may not apply here. Rather the question is whether under section 6502 the IRS itself would have had the authority to avoid transfers that occurred ***before any tax assessment against HCMLP***. The latter is a complex and open question of federal tax law that requires "substantial and material consideration," necessitating immediate mandatory withdrawal

---

[10] *Lifemark Hospitals of Louisiana, Inc.*, 161 B.R. at 25 (granting motion to withdraw the reference because "substantial and material consideration of non-bankruptcy federal law" is needed).

[11] *Picard v. Flinn Investments, L.C.*, 463 B.R. at 285.

of the reference.[12]  In the interests of efficiency, Defendants adopt in full as if set forth herein the

replies of the Former Employee Defendants and the Okada Defendants, which amply detail the

arguments and authorities establishing why mandatory withdrawal is required as a result of the tax

issues present in this Adversary Proceeding.

### C.    Immediate Permissive Withdrawal Should Occur Where, As Here, Plaintiff Concedes That Defendants Have Jury Trial Rights.

11.    Plaintiff concedes that there are at least "*some* non-core claims and claims on which

Defendants have a right to a jury trial." (Response at 33 n.40). Because Plaintiff has admitted that

Defendants are entitled to a jury trial that the Bankruptcy Court cannot conduct, this Court must

recommend withdrawal of the reference to the District Court.[13]  Moreover, "[w]hen core and non-

core matters are raised in an adversary proceeding, withdrawal of the reference promotes the most

efficient use of judicial resources."[14]

12.    The existence of non-core claims and Defendants' entitlement to a jury trial, means

that the Bankruptcy Court cannot fully adjudicate all matters arising out of the Complaint. At the

very least, the District Court must conduct a jury trial at some point in these proceedings. Given

the early stages of these proceedings, immediate withdrawal of the reference would promote

judicial economy and the uniformity of decisions. Plaintiff objects, contending that Defendants are

forum shopping and that the "usual protocol" should be followed – *i.e.*, while the reference should

---

[12] *U.S. Gypsum Co.* v. *Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 145 B.R. 539, 541 (N.D. Tex. 1992); *Tex. United Hous. Program, Inc.* v. *Wolverine Mortg. Partner Ret.*, 2017 WL 3822754, at *7 (N.D. Tex. Jul. 18, 2017).

[13] *In re Sherwin Alumina Co., LLC*, No. 16-20012, 2016 WL 11188458, at *2 (Bankr. S.D. Tex. Dec. 21, 2016) (holding where legal and equitable relief pled, legal claims predominate, jury trial right exists, withdrawal is necessary).

[14] *In re Dallas Roadster, Ltd.*, Adv. N. 13-4033, 2013 WL 5758632 at *2 (Bankr. E.D. Tex. Sept. 27, 2013) (citing *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) (holding that judicial economy would be served by the district court adjudicating both core and non-core claims because this: (1) eliminated the prospect of a bankruptcy appeal regarding the core claims and (2) dispensed with the need for the district court to conduct *de novo* review regarding non-core claims).

be withdrawn, the case should be remanded back to the Bankruptcy Court to handle pre-trial matters until such time as the case is trial-ready.[15]

13.     But it is not "forum shopping" as plaintiff contends, to seek to have the District Court preside over a proceeding it will eventually be required to preside over in any event. Plaintiff's discussion of forum shopping is just an excuse to recount irrelevant instances in which the Bankruptcy Court has previously expressed negative opinions about Defendants (and various affiliates of Defendants), demonstrating that it is Plaintiff who is forum shopping, going so far as to bring claims over which the Bankruptcy Court's jurisdiction is questionable,[16] at the risk of having those claims dismissed, rather than litigate in a forum other than the one he wants. These circumstances make this case a poster child for immediate withdrawal of the reference **without a remand back**, justifying a departure from the "usual protocol," which, in any event, is not a hard and fast rule.

14.     Courts in the Fifth Circuit and elsewhere do recommend immediate withdrawal for all purposes in these circumstances.[17]     As in *Quality Lease*, the reference should be withdrawn here immediately, not just for trial. An "immediate withdrawal of the entire adversary proceeding"

---

[15] Response, p. 23, ¶ 35 (citing, *inter alia,* N. D. Tex. Bankr. Local R. 5011-1(a)(8)(C) and quoting "the motion be granted but that pre-trial matters be referred to the bankruptcy judge.").

[16] *See* Section II.D *infra*.

[17] *In re Align Strategic Partners LLC*, 2019 WL 2527221, at *5 (Bankr. S.D. Tex. Mar. 5, 2019) (recommending that the reference be immediately withdrawn based on defendant's right to a jury trial); *In re Quality Lease & Rental Holdings, LLC*, No. 14-60074, 2016 WL 416961, at *5-6 (Bankr. S.D. Tex. Feb. 1, 2016) (report and recommendation adopted) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099-1101 (2d Cir. 1993) and *In re Clay,*35 F.3d 190, 196–97 (5th Cir. 1994)); *In re MPF Holding US LLC*, 2013 WL 12146958, at *3 (Bankr. S.D. Tex. Apr. 26, 2013) (recommending immediate withdrawal to "allow the District Court to gain familiarity with the facts of the Adversary Proceeding before trial"); *c.f.*, *GenOn Mid-Atl. Dev., LLC v. Natixis Funding Corp.*, No. 4:19-CV-3078, 2020 WL 429880, at *4 (S.D. Tex. Jan. 28, 2020) (even when jury right not at stake, where non-core claims predominate, withdrawal appropriate). As in *Quality Lease*, the reference should be withdrawn here immediately, not just for trial. "If the bankruptcy court were to try the case and then enter a judgment on core claims and a report and recommendation to the district court on the non-core claims, the ultimate resolution would be complex and time-consuming." 2016 WL 416961, at *6.

---

for all purposes is the "most efficient course of action" when only the district court can try all of

the claims.[18]  Immediate withdrawal for all purposes is obviously all the more appropriate, when,

as addressed below, not only is the district court the only court that could try the entire case, it is

the only court that has jurisdiction over the entire case.

15.     Where, as here, an adversary proceeding encompasses both core and non-core

claims and jury trial rights, immediate withdrawal of the reference is appropriate because it

promotes judicial efficiency by enabling the District Court to "to gain familiarity with the facts of

the Adversary Proceeding before trial, and then hold a jury trial on all of the Avoidance [and other]

Claims."[19] In a case of this complexity, it is all the more important for the District Court to control

the development of the case.

**D.     The Bankruptcy Court Lacks Subject Matter Jurisdiction Over the Non-Core Causes
of Action.**

16.     As well-explained in the replies of Former Employee Defendants and the Okada

Defendants, among others, the Bankruptcy Court lacks jurisdiction over the post-confirmation

non-core claims against the Defendants. In the interests of efficiency, Defendants adopt in full as

if set forth herein the replies of the Former Employee Defendants and the Okada Defendants, which

amply detail the arguments and authorities demonstrating that the Bankruptcy Court lacks subject

matter jurisdiction and establishing why immediate withdrawal of the reference is appropriate in

such circumstances.

---

[18] *In re Quality Lease & Rental Holdings, LLC*, 2016 WL 416961, at *6 (Bankr. S.D. Tex. Feb. 1, 2016) ("If
the bankruptcy court were to try the case and then enter a judgment on core claims and a report and recommendation
to the district court on the non-core claims, the ultimate resolution would be complex and time-consuming.").

[19] *Align*, 2019 WL 2524938 at *4.

### III.   <u>CONCLUSION</u>

WHEREFORE, Defendants respectfully request that the District Court grant the Motion,

immediately withdraw the reference of the Adversary Proceeding to the District Court, and grant

Defendants such further and relief to which they are entitled.

Dated: March 14, 2022                    Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Email:  deborah.deitschperez@stinson.com
Email:  michael.aigen@stinson.com

**ATTORNEYS FOR DEFENDANTS
NEXPOINT ADVISORS, L.P. AND
HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on the 14th day of March, 2022, a true and correct copy of this document was served electronically via the Court's CM/ECF system.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez

# EXHIBIT D



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 4, 2023**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 21-03076-sgj |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY | |

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are (8357). The Reorganized Debtor is a Delaware limited partnership. The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.

1


1934054230404000000000006

INVESTMENT TRUST; GET GOOD TRUST
AND GRANT JAMES SCOTT III, AS
TRUSTEE OF GET GOOD TRUST; HUNTER
MOUNTAIN INVESTMENT TRUST; MARK &
PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #1 AND LAWRENCE
TONOMURA AS TRUSTEE OF MARK &
PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #1; MARK & PAMELA
OKADA FAMILY TRUST – EXEMPT TRUST
#2 AND LAWRENCE TONOMURA IN HIS
CAPACITY AS TRUSTEE OF MARK &
PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #2; CLO HOLDCO, LTD.;
CHARITABLE DAF HOLDCO, LTD.;
CHARITABLE DAF FUND, LP.; HIGHLAND
DALLAS FOUNDATION; RAND PE FUND I,
LP, SERIES 1; MASSAND CAPITAL, LLC;
MASSAND CAPITAL, INC.; AND SAS ASSET
RECOVERY, LTD.,

                    Defendants.

## ORDER GRANTING THE LITIGATION TRUSTEE'S
## MOTION TO STAY THE ADVERSARY PROCEEDING

Having considered the *Motion to Stay the Adversary Proceeding* (the "Motion")[2] filed by

Marc S. Kirschner (the "Litigation Trustee"), the Litigation Trustee of the Litigation Sub-Trust

established pursuant to the *Fifth Amended Plan of Reorganization of Highland Capital*

*Management, L.P. (as Modified)* [Bankr. Dkt. 1808][3] (as amended, the "Plan") and plaintiff in the

above-captioned adversary proceeding (the "Adversary Proceeding"), the Court finds and

concludes (i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) notice

of the Motion was sufficient under the circumstances; and (c) good cause exists to grant the relief

requested in the Motion.  Accordingly, **IT IS THEREFORE ORDERED THAT**:

      1.      The Motion is **GRANTED** as set forth herein.

---

[2] Capitalized terms not otherwise defined in this Order shall have the meanings given them in the Motion.

[3] "Bankr. Dkt." refers to the docket maintained in Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

2.      All proceedings in the Adversary Proceeding, including the *Motion to Recuse Pursuant to* 18 U.S.C. §§ 144 *and* 455 [**Dkt. No. 309**], are hereby **STAYED** through and including September 30, 2023, which stay will continue thereafter until any party to the Adversary Proceeding provides 30 days' written notice to all other parties and the Court of their intent to resume the Adversary Proceeding.

3.      Unless otherwise agreed by the Parties, the schedule set forth in the revised Scheduling Order filed with the Court on March 24, 2023, shall apply if the stay expires and the litigation has not been resolved, with the time periods extended commensurate with the period of the stay.

4.      The *Motion to Stay and Response to Plaintiff's Motion to Stay* filed by Defendants James D. Dondero, Strand Advisors, Inc., Dugaboy Investment Trust, and Get Good Trust [**Dkt. No. 329**] is deemed WITHDRAWN based on counsel's representations to the Court.

5.      All other objections and responses to the Motion including the *Response to the Litigation Trustee's Motion to Stay the Adversary Proceeding* filed by Defendants CLO Holdco, Ltd.; Charitable DAF Holdco, Ltd.; Charitable DAF Fund, LP; and Highland Dallas Foundation, Inc. [**Dkt. No. 332**]; and the *Joinder of Defendants NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P. to Defendants James D. Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc.'s Cross-Motion to Stay and Response to Plaintiff's Motion to Stay* [**Dkt. No. 331**], are also deemed WITHDRAWN based on counsel's representations to the Court.

6.      Nothing in this Order shall be construed as a stay of the adjudication of the objections to this Court's *Report and Recommendation to the District Court Proposing that it: (A) Grant Defendants' Motions to Withdraw the Reference at Such Time as the Bankruptcy Court*

3

*Certifies that Action is Trial Ready; But (B) Defer Pre-Trial Matters to the Bankruptcy Court*,
which are pending in the United States District Court of the Northern District of Texas in Case
No. 22-cv-203-S.

7.     The Defendant Parties will use good faith efforts to obtain agreements from
subpoenaed third parties that objections to and compliance with those subpoenas are all tolled for
the period of the stay, with documents to be preserved, and that new subpoenas will not be
necessary if and when the stay is terminated.  If such agreements cannot be obtained, the
subpoenaing party(ies) may elect to pursue the outstanding discovery.  The Defendant Parties shall
notify Plaintiff's counsel if they are unable to reach an agreement with any such third-party.

8.     The Court shall retain jurisdiction to hear and determine all matters arising from or
related to the implementation of this Order.

### ### END OF ORDER ###