Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Deborah.deitchperez@stinson.com
michael.aigen@stinson.com
*Counsel for Defendant NexPoint Advisors, L.P.*
*and NexPoint Asset Management, L.P.*
*f/k/a Highland Capital Management Fund Advisors, L.P.*

Amy L. Ruhland
Ryan J. Sullivan
PILLSBURY WINTHROP SHAW
PITTMAN LLP
401 W 4th Street, Suite 3200
Telephone: (512) 580-9600
amy.ruhland@pillsburylaw.com
ryan.sullivan@pillsburylaw.com
*Counsel for Defendant James Dondero,*
*The Dugaboy Investment Trust, Get*
*Good Trust, and Strand Advisors, Inc.*

Debra A. Dandeneau (Admitted pro hac vice)
Blaire Cahn (Admitted pro hac vice)
BAKER & MCKENZIE LLP
452 Fifth Ave New York, NY 10018
Telephone: 212-626-4100
debra.dandeneau@bakermckenzie.com
*Counsel for Scott Ellington and Isaac Leventon*

Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
michelle.hartmann@bakermckenzie.com
*Counsel for Scott Ellington and Isaac*
*Leventon*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>    **Reorganized Debtor.** | **Chapter 11**<br><br>**Case No. 19-34054-sgj11** |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,**<br><br>    **Plaintiff,**<br><br>      **v.**<br><br>**JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS** | **Adv. Pro. No. 21-03076-sgj** |

**TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,**

       **Defendants.**

# DEFENDANTS' OPPOSITION TO PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S EMERGENCY MOTION FOR EXPEDITED DISCOVERY

CORE/3524885.0002/231913517.7

**Table of Contents**

TABLE OF AUTHORITIES ......................................................................................... 4

I.    SUMMARY OF ARGUMENT ......................................................................... 5

II.   LEGAL STANDARD ....................................................................................... 6

III.  ARGUMENT .................................................................................................... 6

    A.   Discovery Should Not be Allowed for Injunctive Relief Until This Court's
Jurisdiction is Determined .................................................................................. 6

    B.   There Is No "Emergency" Warranting Expedited Discovery ............................... 7

    C.   HMIT Does Not Demonstrate "Good Cause" for Expedited Discovery ............... 7

        1.   There Is No Valid Basis to Seek Discovery in Aid of a Preliminary
Injunction ........................................................................................ 8

        2.   The Discovery Requests Are Overbroad ....................................... 8

        3.   HMIT Does Not Articulate Any Legitimate Purpose for the Discovery .. 10

        4.   The Discovery Sought Is Unduly Burdensome ....................................... 11

        5.   Any Relevant Discovery Can Be Sought in the Ordinary Discovery Process
................................................................................................... 13

    D.   Objections to Specific Discovery Requests ........................................................ 14

    E.   HMIT Seeks Highly Sensitive and Confidential Information Easily Subject to Misuse .... 21

IV.   CONCLUSION ................................................................................................ 22

CORE/3524885.0002/231913517.7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Crossover Mkt., LLC v. Newell,*
2022 WL 1797359 (W.D. Tex. Jan. 12, 2022) ................................................................... 11

*In re Fannie Mae Derivative Litig.,*
227 F.R.D. 142 (D.D.C. 2005) .......................................................................................... 11

*Green Const. Co. v. Kansas Power & Light Co.,*
732 F. Supp. 1550 (D. Kan. 1990) ................................................................................... 12

*Highland Capital Mgmt., L.P. v. Dondero (In re Highland Cap. Mgmt., L.P.),*
2021 Bankr. LEXIS 1533 (Bankr. N.D. Tex. June 7, 2021) .............................................. 12

*Legacy of Life, Inc. v. Am. Donor Servs.,*
Civ. Action, 2006 U.S. Dist. LEXIS 116572 (W.D. Tex. Sept. 21, 2006) ...................... 6, 10

*Northstar Offshore Ventures, LLC v. Tana Expl. Co. LLC,*
2018 WL 3970616 (N.D. Tex. Aug. 20, 2018) ................................................................ 6, 8

*Philadelphia Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.,*
1998 WL 404820 (E.D. Pa. July 15, 1998) ........................................................................ 8

*In re Reagor-Dykes Motors, L.P.,*
2021 WL 5094783 (Bankr. N.D. Tex. Oct. 29, 2021) ................................................... 8, 12

*St. Louis Grp., Inc. v. Metals & Additives Corp.,*
275 F.R.D. 236 (S.D. Tex. 2011) ....................................................................................... 6

*St. Paul Commodities, Ltd. Liab. Co. v. Crystal Creek Cattle Co.,*
2012 U.S. Dist. LEXIS 108192 (N.D. Tex. Aug. 1, 2012) ................................................ 10

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) .................................................................................................... 10

Texas Disciplinary Rules of Professional Conduct 1.05 and 1.09 .......................................... 21

CORE/3524885.0002/231913517.7

Defendants NexPoint Advisors, L.P., NexPoint Asset Management, L.P. f/k/a Highland Capital Management Fund Advisors, L.P., James Dondero, The Dugaboy Investment Trust, Get Good Trust, Strand Advisors, Inc., Scott Ellington, and Isaac Leventon (collectively, "Defendants") file this opposition to *Plaintiff Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery* (the "Discovery Motion") [Dkt. No. 380]. In support thereof, Defendants respectfully state as follows:

## I.  <u>SUMMARY OF ARGUMENT</u>

Hunter Mountain Investment Trust's ("HMIT's") grossly overbroad Discovery Motion should be denied for multiple independent reasons. In aid of an unexplained and imaginary "emergency," HMIT seeks extensive written discovery (including document requests and interrogatories about virtually every communication and financial document created by dozens of companies over the last five years) and eight depositions (including of five non-parties) (the "Requested Discovery").

As explained below in more detail and in the separately filed opposition to HMIT's Emergency Verified Motion for Temporary Restraining Order, Preliminary Injunction, and Receivership ("TRO Motion"), the Discovery Motion should be denied because (1) discovery in aid of injunctive relief cannot be granted until this Court's jurisdiction is determined; (2) there is no emergency requiring immediate discovery in this four-year-old case that has been stayed for more than two years; (3) HMIT fails to address—much less establish—any of the prerequisites to obtaining expedited discovery; (4) the Requested Discovery is overly broad and unduly burdensome, and HMIT makes no effort to narrow it to relevant issues;  (5) and the Requested Discovery seeks trade secrets and confidential information that HMIT and its management have already shown a propensity to misuse.  Therefore, the Discovery Motion should be denied.

CORE/3524885.0002/231913517.7

## II.    LEGAL STANDARD

A party seeking expedited discovery must show "good cause" for the relief. *Legacy of Life, Inc. v. Am. Donor Servs.*, Civ. Action, 2006 U.S. Dist. LEXIS 116572, at *11 (W.D. Tex. Sept. 21, 2006) "[E]xpedited discovery is not the norm," *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011), and the "Fifth Circuit has permitted such discovery" only in very limited circumstances. *Northstar Offshore Ventures, LLC v. Tana Expl. Co. LLC*, 2018 WL 3970616, at *7 (N.D. Tex. Aug. 20, 2018) (cleaned up).

As HMIT acknowledges, district courts in the Fifth Circuit typically consider five factors when determining whether to good cause exists to order expedited discovery: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the request; and (5) how far in advance of the typical discovery process the request was made." Discovery Mot. at 5 (citing *Legacy of Life, Inc.*, 2006 U.S. Dist. LEXIS 116572 (W.D. Tex. 2006)). The moving party bears the burden of establishing good cause for the expedited discovery, and any discovery allowed should be narrowly tailored. *Northstar Offshore Ventures, LLC*, 2018 WL 3970616, at *7.

## III.    ARGUMENT

### A.    Discovery Should Not be Allowed for Injunctive Relief Until This Court's Jurisdiction is Determined

As a threshold matter, and as explained in detail in Defendants' Opposition to HMIT's TRO Motion, filed concurrently with this opposition and fully incorporated herein, Defendants' pending motions to withdraw the reference and to dismiss the Amended Complaint for lack of subject matter jurisdiction must be decided (and supplemented, to account for the current posture

CORE/3524885.0002/231913517.7

of the case) before any injunctive relief or discovery in aid of such relief may be granted. For this reason alone, HMIT's Discovery Motion should be denied at this juncture.

### B.     There Is No "Emergency" Warranting Expedited Discovery

Further, as set forth in Defendants' opposition to HMIT's TRO Motion, there is no "emergency" justifying temporary injunctive relief and thus no emergency requiring expedited discovery in aid of that relief. This adversary proceeding has been stayed since April 4, 2023, and has been pending since October 15, 2021. Prior to the stay, the parties spent 16 months engaging in extensive discovery and motion practice. At no point during that period of activity did Marc S. Kirchner, the Plan-appointed Litigation Trustee, or anyone else suggest that injunctive relief might be necessary to protect an eventual judgment. And HMIT provides no explanation for why any sort of temporary restraining order or temporary injunction is needed now. Absent any real emergency, neither injunctive relief nor discovery in aid of it is appropriate.

### C.     HMIT Does Not Demonstrate "Good Cause" for Expedited Discovery

HMIT's Discovery Motion also must be denied because HMIT does not even attempt to demonstrate that there is "good cause" for expedited discovery. The entirety of HMIT's unsupported and superficial argument is contained in just two paragraphs of its Discovery Motion:

> Good cause exists for expedited discovery because of the imminent injunction hearing that follows the issuance of the temporary restraining order. A preliminary injunction is necessary to prevent HMIT from suffering irreparable harm, as further alleged in the Motion, making it impossible for Plaintiff to conduct discovery on any basis other than on an expedited basis. Plaintiff requires this expedited discovery to further develop details of Defendants' conduct and related dissipation of assets so that evidence at the upcoming injunction hearing can be presented efficiently and effectively.
>
> Additionally, the discovery requested is reasonably tailored to the subject matter of the injunctive relief requested. Defendants' scheme to dissipate assets is wide-ranging, and the discovery to be conducted by HMIT will likely lead to additional avenues for

CORE/3524885.0002/231913517.7

Case 21-03076-sgj   Doc 386   Filed 10/06/25   Entered 10/06/25 17:27:00   Desc Main
Document      Page 8 of 24

> investigation. Discovery on the merits will inevitably move forward in this case once the current stay expires on October 3, 2025, or is lifted by the Court. Leave of Court in this instance is required only to obtain discovery required under the discovery rules due to the immediacy of the preliminary injunction hearing.

Discovery Mot., Dkt. 380, at 5.

This "analysis" fails to properly address the five-factor test for good cause or provide any particularized basis for the requested relief. And application of that test mandates the denial of HMIT's Discovery Motion.

### 1.      There Is No Valid Basis to Seek Discovery in Aid of a Preliminary Injunction

First, there is no "preliminary injunction pending," nor is any form of temporary injunctive relief appropriate, for all the reasons set forth in Defendants' opposition to HMIT's TRO Motion, which is hereby incorporated by reference. Thus, the first factor is not met.

### 2.      The Discovery Requests Are Overbroad

Second, the discovery requests are extraordinarily overbroad and certainly not narrowly tailored. Courts routinely deny expedited discovery in aid of preliminary injunctions where the movant's requests are overly broad. *See, e.g.*, *In re Reagor-Dykes Motors, L.P.*, 2021 WL 5094783, at *4 (Bankr. N.D. Tex. Oct. 29, 2021) (denying discovery about the debtors' financial relationship with other creditors as unduly burdensome were discovery would have resulted in millions of documents and thousands of hours of review); *Northstar Offshore Ventures, LLC*, 2018 WL 3970616, at *9 (denying expedited discovery request because it was "not tailored, much less narrowly tailored, to address [movant's] reported justification"); *see also Philadelphia Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, 1998 WL 404820, at *1–2 (E.D. Pa. July 15, 1998).

CORE/3524885.0002/231913517.7

These principles warrant denial of the discovery sought here.  As set forth above, HMIT seeks eight expedited depositions, including five of non-parties to the litigation (Discovery Motion at 4), as well as permission to serve 13 separate interrogatories and 22 separate requests for production on each of the Defendants.  *See* Discovery Motion, Exhibits A, B, Dkts. 380-1, 380-2. With respect to depositions, HMIT seeks to take the depositions on 10 different topics (and inappropriately seeks corporate representative testimony from individual deponents).  *See id.*, Exhibit A, Dkt. 380-1.  With respect to document production, HMIT is seeking, at a minimum, every document related to every transaction that any of the Defendants (along with many other companies) has entered into since October 15, 2021.  See id., Exhibit B, Dkt. 380-2.  To put it simply, these requests are the opposite of narrowly tailored.

To make matters worse, the discovery requests have little, if anything, to do with the claims and allegations actually at issue in Amended Complaint.  The Amended Complaint concerns transactions that occurred before Highland's Chapter 11 bankruptcy was filed in 2019.  See generally, Amended Complaint, Dkt. 158. Yet HMIT's discovery requests seek information about financial transactions and transfers occurring between the date of the Amended Complaint's filing in 2021 through the present.  See, e.g., Discovery Motion, Exhibit A, Dkt. 380-1 at 12–14.  In addition, the requests seek information relating to entities that are not named in and have nothing to do with the transactions identified in the Amended Complaint. See, e.g., id. at 8–9 (seeking information relating to CoastRoad Group, Johnstone Law, Maples and Calder (Cayman) LLP, Santa Barbara Foundation, Greater Kansas City Community Foundation, and Dallas Foundation, among many others). It is obvious to anyone familiar with recent events in the bankruptcy that HMIT does not seek the discovery at issue to vindicate any right or claim at issue in this adversary proceeding but to pursue Mark Patrick's own separate, fraudulent (and potentially criminal) agenda with respect to The Charitable DAF, Ltd. and the charitable entities at the core of HMIT's

ownership structure.  That is not a proper subject of discovery, either under Rule 26 or the five-part test followed in this Circuit.  See Fed. R. Civ. P. 26(b)(1) (allowing discovery on any non-privileged matter that is relevant to a party's claims or defenses and proportional to the needs of the case); Legacy of Life, Inc., 2006 U.S. Dist. LEXIS 116572.  Moreover, "[g]enerally, courts will not permit pre-judgment discovery of a party's financial condition unless that condition is relevant to a claim or defense at issue."  *St. Paul Commodities, Ltd. Liab. Co. v. Crystal Creek Cattle Co.*, 2012 U.S. Dist. LEXIS 108192, at *12 (N.D. Tex. Aug. 1, 2012).

### 3.      HMIT Does Not Articulate Any Legitimate Purpose for the Discovery

HMIT also does not attempt to articulate any valid purpose for requesting expedited discovery, particularly the discovery sought.  Discovery was well underway in this lawsuit long before HMIT purchased the Litigation Trustee's claims.  Prior to the Court's stay of proceedings, the parties were cooperating and proceeding with case-related discovery in the ordinary course—i.e., not on any expedited schedule.  Indeed, the Litigation Trustee has already produced approximately one million documents in the case, all of which relate to the pre-petition conduct at issue.  Against this backdrop, HMIT insists that the discovery is necessary "to further develop details of Defendants' conduct and related dissipation of assets so that evidence at the upcoming injunction hearing can be presented efficiently and effectively."  Discovery Motion at 5.  But up until now, there has been no allegation—by the Litigation Trustee, Highland, or any other related party—that Defendants are dissipating the assets at issue in the litigation.  Nor did the Litigation Trustee ever see fit to seek preliminary injunctive relief to stop some imagined dissipation.  Further, as set forth in Defendants' simultaneously filed opposition to HMIT's TRO Motion, there is no allegation, much less evidence, that the targeted Defendants are insolvent or at risk of becoming insolvent as a result of any alleged transfer.  In short, HMIT's request for expedited discovery appears to be nothing more than an improper fishing expedition for information that

might assist HMIT and Mark Patrick in other, unrelated fights in other jurisdictions. Courts routinely deny expedited discovery in aid of preliminary injunctive relief under these circumstances. *See, e.g.*, *Crossover Mkt., LLC v. Newell*, 2022 WL 1797359, at *2 (W.D. Tex. Jan. 12, 2022); *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142 (D.D.C. 2005) (denying expedited discovery in aid of a preliminary injunction because it "appear[ed] to be a thinly veiled attempt to circumvent the normal litigation process").

Moreover, it is unclear why the discovery is necessary to validate HMIT's request for preliminary injunctive relief given HMIT's insistence that the allegations of the Amended Complaint are alone sufficient to support that relief. *See* Brief in Support of TRO Motion, Dkt. 379-1, at ¶ 51 ("The Amended Complaint and the documents cited therein alone establish the required likelihood of success on the merits, as to these and all of the claims asserted therein."). Likewise, Mark Patrick, HMIT's administrator, submitted a sworn verification with the TRO Motion attesting that all factual statements in that motion were "true and correct." *See id.* at ECF pp. 30–31. If Patrick's sworn verification is to be believed, then HMIT has no need of further discovery to support the facts set forth in its Motion. If, on the other hand, Patrick does not actually have sufficient knowledge of the facts to testify to them, then his verification is false. In other words, either HMIT filed a frivolous verified motion, or HMIT already has the information it needs to prosecute its TRO Motion. There is no middle ground here.

### 4.    The Discovery Sought Is Unduly Burdensome

Further, the discovery sought is incredibly and unduly burdensome, militating against allowing it to proceed. As set forth above, HMIT is seeking documentation and testimony about virtually every transaction entered into by Defendants over a four-year period involving far-flung entities and affiliates that have nothing to do with this adversary proceeding. This Court has itself previously described the company structure set up by Dondero and his affiliates as "Byzantine"

CORE/3524885.0002/231913517.7

(*Highland Capital Mgmt., L.P. v. Dondero (In re Highland Cap. Mgmt., L.P.)*, 2021 Bankr. LEXIS 1533, at \*8 (Bankr. N.D. Tex. June 7, 2021)),[1] and to require Defendants to produce every shred of financial documentation created by every entity in that structure would be burdensome and costly in the extreme. This Court has previously denied discovery in circumstances less burdensome than those posed here. *See In re Reagor-Dykes Motors*, L.P., 2021 WL 5094783, at \*3–4. (Bankr. N.D. Tex. Oct. 29, 2021) (rejecting "excessive" discovery into "the Debtors' financial relationship with other creditors and how other creditors were harmed by the Debtors" where discovery would have resulted in millions of documents and thousands of hours of review); *see also Green Const. Co. v. Kansas Power & Light Co.*, 732 F. Supp. 1550, 1554 (D. Kan. 1990) (limiting discovery on grounds that it would be "burdensome and oppressive" and because "a great amount of labor time would be required to respond").

Moreover, ordering Defendants to produce the discovery requested—particularly on an expedited basis—threatens substantial irreparable harm to Defendants' businesses. The information requested is highly sensitive and confidential, and much of it is protected by attorney-client privilege and trade secret protections. To comply with the discovery requests, Defendants would need to explain to (and likely obtain permission from) financing counterparties, investors, brokers, service providers, and joint venture partners to produce those third-parties' financial and corporate structural information in a lawsuit. And undoubtedly, any order to produce the discovery would prompt backlash and potentially third-party objections. Indeed, the breadth of the discovery sought is so stunning that no party would willingly enter into business with an entity or individual who could not protect this type of information.

---

[1] As a result, the Court required Defendants and others to make additional disclosures in the main bankruptcy case, as set forth in the responses to the *Order Requiring Disclosures. See* Bankr. Dkt. 2460, 2539, 2543, 2544 2546. 2547, and 2549.

CORE/3524885.0002/231913517.7

Additionally, the relief sought by HMIT as to the individual Defendants in this action is even more burdensome and egregious. As demonstrated below, HMIT seeks extremely broad discovery to support an injunction preventing the individuals from "transferring" or "withdrawing" any funds under their control. Yet the TRO Motion does not even allege that Mr. Leventon, Mr. Ellington or Mr. Dondero have made any transfers of personal assets. In fact, with respect to Mr. Leventon, all HMIT says is that he was aware of "Dondero's requests," whatever those are. *See* Brief in Support of TRO Motion, Dkt. 379-1, at ¶5.

As constructed, the restraining order against the individuals would prohibit them from even everyday essential tasks like withdrawing cash from an ATM or buying groceries. And the discovery sought against them would similarly seek discovery of every financial transaction entered into by those individuals, whether related to business or personal activities. As such, the relief as to the individuals, including the discovery sought from them, is particularly violative of the requirement that the discovery be narrowly tailored.

### 5.    Any Relevant Discovery Can Be Sought in the Ordinary Discovery Process

The fifth factor is not particularly relevant to the inquiry. Expedited discovery is not being sought in advance of the typical discovery process; rather, the typical discovery process was already underway at the time the Court issued a stay and will presumably resume now that the stay has been lifted. And because there is no new emergency identified by HMIT, if it does have appropriate discovery requests, then those can be served in the context of the ordinary discovery process.

In short, HMIT has not borne its burden to demonstrate that any of the five factors supporting expedited discovery are met, and the Discovery Motion should be denied.

CORE/3524885.0002/231913517.7

## D.    Objections to Specific Discovery Requests

In addition to the problems above that generally apply to all of the Discovery Requests, Defendants also address most of the specific Discovery Requests here and why they are overly burdensome and seek information not reasonably calculated to lead to the discovery of admissible evidence:

**INTERROGATORY NO. 1:**    Please identify all entities formed by, at the direction of, or for the benefit of any Defendant or Transfer Affiliate from the inception of this Lawsuit on October 15, 2021, to the present.

**Response:** As Mr. Patrick will know, as former tax counsel to many of the Defendants, the Defendants form or instruct to be formed numerous entities as part of their ordinary course of business, including, for among other reasons, tax structuring and liability limitation reasons. Entities also are formed to comply with laws specific to real estate, securities, or foreign laws. Accordingly, it would be unduly burdensome to search for, and identify, each such newly formed entity. The best estimate is approximately one hundred responsive entities are formed in-house in the legal team each year, and an unknown additional number formed by other affiliates.

Additionally, with respect to some of the Transfer Affiliates, they are not within the control of the Defendants, and as such, the Defendants could not provide this information even if they wanted to do so. The City of Plano is the most obvious example. Defendants also do not control Basis Industrial, PEG Hospitality Group, Evergreen Residential Holdings, and BH Management Services, LLC, among others. Additionally, certain of the alleged Transfer Defendants are trusts with Trustees who would be the persons with authority to release such information, and are not currently before the Court. Finally, NexBank is a state and federally regulated bank and disclosure of its confidential information is subject to federal banking laws.

HMIT has also not identified why the particular alleged Transfer Affiliates have any relation to any claims it purchased, nor any transaction related to such claims. HMIT appears to have selected entities where it believes there is value and/or on-going business activities in an effort to interfere with activities to bring pressure on Defendants to cease participation in collateral litigation against Mr. Patrick. This list of Transfer Affiliates has no relation to the claims in this case; rather, it is a list of pressure points where Mr. Patrick is using his knowledge of confidential information he learned as counsel for Defendants to discover other information he can use for collateral purposes.

Much of this information appears to be designed to identify pressure points in Defendants' businesses. The likely result will be collateral attacks in whistleblower complaints, other pending litigation, and tortious interference with on-going business relationships. For example, [description of the Texas securities commission request just received and why we think it was instigated by Mark and attach the letter as exhibit] Mr. Patrick and HMIT cannot be trusted with this information. HMIT's counsel cannot be trusted with this information. As explained below, this is the same counsel that offered to file a matter on

CORE/3524885.0002/231913517.7

behalf of HMIT that they knew was sanctionable under Rule 11, but nonetheless were willing to do so if Mr. Dondero provided them with a $2 million up front fee and an indemnity. When Mr. Dondero refused, they did not file the lawsuit. No protective order or other prohibition on the misuse of information will suffice. Mr. Patrick has shown a propensity for using counsel, intermediaries, and other tactics to create plausible deniability for his involvement in improper actions. Neither he nor his counsel can be trusted not to do so again, especially with the volume, detail, and sensitivity of the information requested in this discovery.

**INTERROGATORY NO. 2:**    Please identify the complete addresses of all locations at which any asset (real property, personal, or business) in which any Defendant or Transfer Affiliate has an Interest, is located.

**Response:** Defendants and the alleged Transfer Affiliates include registered investment advisors, individuals, and a bank, among other entities. They have thousands of assets, including numerous public and privately traded securities positions. Assembling a list of asset custodians, transfer agents, bank accounts, and trustees would be overly burdensome. In addition, given Mr. Patrick's prior and recent history,[2] described more fully below, the provision of this information is an invitation for Mr. Patrick to interfere with the Defendants' use of such assets well before Mr. Patrick has achieved a judgment of any kind.

**INTERROGATORY NO. 3:**    Please identify and describe the relationship(s) between each Defendant or Transfer Affiliate and any entities identified in response to Interrogatory No. 1.

**Response:** Again, this seeks irrelevant information and is a roadmap to pressure Defendants.

**INTERROGATORY NO. 4:**    Please identify each and every officer, director, partner, owner, investor, shareholder, member, and/or manager of any Transfer Affiliate or entity identified in response to Interrogatory No. 1, if any, at any time, including their name, title, or relationship to the entity, and current address and contact information.

**Response**: The undue burden would be substantial as it requires collection of data for potentially hundreds of entities. The disclosure of third-party investors could violate securities laws and also provisions in investor's subscription agreements, each of which would need to be reviewed prior to providing this information. Furthermore, the names and contact information requested appear to be an effort to obtain the names of people to harass as additional pressure on Defendants.

**INTERROGATORY NO. 5:**    Please identify and describe the business purpose for each Transfer Affiliate and each entity identified in response to Interrogatory No. 1, if any.

---

[2] *See* The Dugaboy Investment Trust's Motion to Stay 9019 Order at pp. 3-6, filed on July 21, 2025, Bankr. Dkt. No. 4334 (detailing allegations that Mr. Patrick converted $270 million of assets to pay himself and co-conspiring professionals millions of dollars that were supposed to be sued for the benefit of long-established charities.).

CORE/3524885.0002/231913517.7

**Response:** This interrogatory demonstrates that there is no allegation or evidence of fraudulent transfers, and this is just an opportunity to review all of Defendants' transactions in the hopes of finding something that can be argued to be fraudulent transfer. It is an improper fishing expedition.

**INTERROGATORY NO. 6:**    Please identify and describe each and every source of revenue or funding for each Transfer Affiliate and each entity identified in response to Interrogatory No. 1, if any.

Response: This interrogatory demonstrates that there is no allegation or evidence of fraudulent transfers, and this is just an opportunity to review all of Defendants' transactions in the hopes of finding something that can be argued to be a fraudulent transfer. It is an improper fishing expedition. This information almost certainly will be misused to tortiously interfere with Defendants and non-party alleged Transfer Affiliates' revenue.

**INTERROGATORY NO. 7:**    Please identify all businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has an Interest at present.

**Response:** This would require listing all assets held (other than cash) and a list of all affiliates. This will be thousands of entities, many of which Mr. Patrick participated in forming in his capacity as counsel to the Defendants. The best estimate at this time is that it would request the identification of over 2,000 entities.

**INTERROGATORY NO. 8:**    Please identify all transfers of cash or other assets from any Defendant or Transfer Affiliate to any businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has or had an Interest, at any time from October 15, 2021, to present.

**Response:** This would be hundreds, if not thousands of transactions. Collecting these would require dozens of hours of work, and even then, it is unlikely to have any ability to verify completeness.

**INTERROGATORY NO. 9:**    Please identify all transfers of cash or other assets from any Defendant or Transfer Affiliate to any of the Foundations at any time from October 15, 2021, to present.

Response: This request is clearly being made for a collateral purpose related to ongoing litigation in other courts, such as the Texas Business Court, Chapter 15, and Cayman litigations. Additionally, Mr. Patrick's defense in the Cayman litigation for his theft of over $250 million in DAF assets is that Mr. Dondero used the Foundations for improper personal benefit. This is discovery in support of that purported defense.

**INTERROGATORY NO. 10:**    Please identify all property or funds any Transfer Affiliate is holding in trust for the benefit of any Defendant or other Transfer Affiliate.

**Response:** Defendants have no way of providing a complete and accurate answer to this Interrogatory and the information is outside of its possession, custody or control.

**INTERROGATORY NO. 11:**    Please identify all of each Defendant's or Transfer

Affiliate's assets from October 15, 2021, until present, including, without limitation: (1) all real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present; (2) all personal property or business personal property in which any Defendant or Transfer Affiliate has an Interest at present; and (3) any stocks, bonds, or other securities in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present.

**Response**: Defendants and the alleged Transfer Affiliates include registered investment advisors, individuals, and a bank, among other entities. They have thousands of assets, including numerous public and privately traded securities positions. The investment portfolio of an investment advisor is one of its most important trade secrets, as is its trading patterns. Disclosure of this information to a third party would cause irreparable harm. Additionally, Mr. Patrick's stolen DAF portfolio has substantial overlap in positions with the portfolios that are the subject of this interrogatory, so it creates a substantial likelihood of providing information to a competitor who will misuse the information.

**INTERROGATORY NO. 12:**    Please identify any assets in which any Defendant or Transfer Affiliate has an Interest, held by any person or entity other than that Defendant or Transfer Affiliate.

**Response:** It would be nearly impossible to figure this out for each of these entities.

**INTERROGATORY NO. 13:**    Please identify any life insurance policies purchased by any Defendant or Transfer Affiliate or for which any Defendant or Transfer Affiliate is the beneficiary.

**Response:** This interrogatory seeks information not reasonably calculated to lead to the discovery admissible evidence and is another example of a fishing expedition by HMIT.

With respect to HMIT's Requests for Production:

**REQUEST NO. 1:** Produce all documents identifying any businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, to present.

**Response:** This request, which seeks documents that reference an entity, regardless of subject matter, would basically encompass all documents in the possession of Defendants.

**REQUEST NO. 2:** All communications to or from any Defendants, Transfer Affiliates, or Service Providers concerning: (1) any other Defendant or Transfer Affiliate; (2) the creation of any entity identified in response to Interrogatory No. 1; or (3) that evidence or refer in any way, directly or indirectly, to any and all transfers of cash, cash equivalent, or other assets made by any Defendant or Transfer Affiliate, including internal transfers, regardless of whether the transfer was made on behalf of such Defendant or Transfer Affiliate or on behalf of any other person or entity.

**Response:** As just one example of the over breadth of this request, Mr. Dondero is an officer of other Defendants and alleged Transfer Affiliates. This request would capture

CORE/3524885.0002/231913517.7

substantially all his communications. Mr. Leventon is counsel to most of the Defendants – this request would capture most of his communications.

**REQUEST NO. 3:**    All communications that evidence or refer in any way, directly or indirectly, to any and all transfers of cash, cash equivalent, or other assets made by any Defendant or Transfer Affiliate, including internal transfers, regardless of whether the transfer was made on behalf of such Defendant or Transfer Affiliate or on behalf of any other person or entity.

**Response:** This request essentially seeks all evidence of cash transactions over four years for several hundred entities. This includes, among many other things, tens of thousands of vendor payments and payments to employees. It also would show payments to counsel, including payments to counsel working against Mr. Patrick and HMIT.

**REQUEST NO. 4:**    Produce all documents identifying all transfers of cash, cash equivalent, or other assets from any Defendant to any other Defendant at any point from October 15, 2021, to present.

**Response:** This request essentially seeks all evidence of cash transactions over four years for several hundred entities. This includes, among many other things, tens of thousands of vendor payments and payments to employees. Furthermore, there is no alleged fraudulent transfer claim pending regarding any transfer from one Defendant to another Defendant after October 15, 2021, so this discovery request seeks irrelevant information.

**REQUEST NO. 5:**    Produce all documents identifying all transfers of cash, cash equivalent, or other assets from any Defendant to any Transfer Affiliate, or vice versa, at any point from October 15, 2021, to present.

**Response:** This request essentially seeks all evidence of cash transactions over four years for several hundred entities. This includes, among many other things, tens of thousands of vendor payments and payments to employees. Furthermore, there is no alleged fraudulent transfer claim pending regarding any transfer from any Defendant to an alleged Transfer Affiliate after October 15, 2021, so this discovery request seeks irrelevant information.

**REQUEST NO. 6:**    Produce all documents identifying all transfers of cash, cash equivalent, or other assets from any Defendant to any Foundation at any point from October 15, 2021, to present.

**Response:** This request essentially seeks all evidence of cash transactions over four years for several hundred entities. This includes, among many other things, tens of thousands of vendor payments and payments to employees. Nor is there any alleged fraudulent transfer claim pending regarding any transfer from any Defendant to a Foundation after October 15, 2021, so this discovery request seeks irrelevant information. Additionally, see responses to Interrogatories above related to transfers of cash.

**REQUEST NO. 7:**    Produce all documents identifying all transfers of cash, cash equivalent, or other assets from any Defendant or Transfer Affiliate to any businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, to present.

**Response:** Same as No. 2 above. Additionally, this request is even more troubling because it documents related to all transactions of Defendants (parties here) and alleged Transfer Affiliates (not even parties, nor is there an allegation explaining the any particular entities' inclusion on this list).

**REQUEST NO. 8:** To the extent not already requested or produced in response to these Requests, produce all documents identifying all transfers of cash, cash equivalent, or other assets from any Defendant or Transfer Affiliate to any other entity or individual, from October 15, 2021, to present.

**Response:** Same as No. 7 above. This request would include Mr. Dondero, Mr. Ellington, and Mr. Leventon's lunch orders, their payments to their doctors, and payments of child-care-related expenses, magazine subscriptions, purchases of gasoline, car repairs, and every other expense of everyday life. For NexPoint Advisors, HCMFA, and NexBank, this will include every employee paycheck, every employee expense reimbursement, and every employee medical expense.

**REQUEST NO. 9:** Produce all internal and third-party appraisals or other valuations of any property (real, personal, business personal, tangible or intangible) or assets in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, to present.

**Response:** Collecting these documents would take thousands of hours of work. Additionally, one of the key allegations against Mr. Patrick in the Cayman proceeding is that he manipulated the valuation of the DAF Participation Shares in an effort to justify cross-trading them away from the Foundations. This request is a fishing expedition to obtain comparable appraisal or valuation data to be able to argue as a defense against Mr. Patrick's bad acts in other litigation.

**REQUEST NO. 10:** Produce all documents identifying all financial accounts held by any Defendant or Transfer Affiliate at any time from October 15, 2021, until present.

**Response:** Obtaining these documents would take hundreds of hours, and for alleged Transfer Affiliates, would require attempting to obtain information not in any Defendants' possession, custody or control.

**REQUEST NO. 11:** Copies of all books, records, and financial statements (e.g., balance sheets, financial statements, profit, and loss statements, revenue reports, projections, etc.) maintained by or prepared for any Defendant or Transfer Affiliate at any time from October 15, 2021, until present.

**Response:** Obtaining these documents would take hundreds of hours and the ability to misuse this information would be staggering.

**REQUEST NO. 12:** Produce copies of all statements, from October 15, 2021, to the present, for all bank, checking, savings, brokerage, credit, margin, warehouse, or any other financial and/or investment accounts in which any Defendant or Transfer Affiliate has or had an Interest.

**Response:** Same as No. 11 above. Additionally, for the individual Defendants, this would be deeply intrusive into their privacy.

CORE/3524885.0002/231913517.7

**REQUEST NO. 13:** Produce all documents identifying all assets, including but not limited to deposit accounts, stocks, cash, personal property, business personal property, and real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, to present.

**Response:** Again, because of the trading volume, this would next to impossible. Many of the parties are investment management companies – trading assets is their business. For the individual defendants, "personal property" conceivably includes their clothing, medications, toys for their kids, etc.

**REQUEST NO. 14:** Produce all financial statements prepared by any Defendant or Transfer Affiliate or for the benefit of any Defendant or Transfer Affiliate covering the years 2020 until present, including any balance sheets, income statements, statements of cash flows, or similar financial documents.

**Response:** Same as No. 10 above. Additionally, the request adds a year to the timeframe, during which claims were not even pending.

**REQUEST NO. 15:** Produce all documents identifying all assets in which any Defendant or Transfer Affiliate has an Interest, held by any person or entity other than that Defendant or Transfer Affiliate.

**Response:** It would be extremely difficult to determine which documents are responsive to this request and is on its face a fishing expedition.

**REQUEST NO. 16:** Produce all documents identifying all income, revenue, and/or proceeds any Defendant or Transfer Affiliate received from any source from October 15, 2021, until present.

**Response:** The email searches for this request would be next to impossible given its overly broad nature, including seeking every cash flow into any Defendant and Transfer Affiliate.

**REQUEST NO. 17:** Produce all purchase documents or receipts for all property (real, personal, business personal, tangible or intangible) in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, to present.

**Response:** This request inappropriately seeks documents related to any transaction made by any Defendant. For individual Defendants, it would seek documents related to any transaction they have entered into, whether for meals, clothes or any other unrelated activity. There simply is no way this request is reasonably tailored and it is nothing but an improper fishing expedition.

**REQUEST NO. 18:** All documents that evidence or refer in any way, directly or indirectly, to any loans made by any Defendant or Transfer Affiliate.

**Response:** This seems like a transparent attempt to interfere with financing counterparties. Provision of this information risks Mr. Patrick taking actions designed to trigger restrictive covenant provisions in loan agreements in the hopes of terminating those agreements.

**REQUEST NO. 19:** All documents that evidence or refer in any way, directly or indirectly, to any investments owned or held by any Defendant or Transfer Affiliate.

**Response:** Same as No. 15 above.

**REQUEST NO. 20:** All documents that evidence or refer in any way, directly or indirectly, to any negotiable instruments held by any Defendant or Transfer Affiliate.

**Response:** Same as No. 15 above.

**REQUEST NO. 21:** Produce all documents identifying all income, revenue, and/or proceeds any Defendant or Transfer Affiliate received from any source from October 15, 2021, until present.

**Response:** Same as No. 16 above.

**REQUEST NO. 22:** Produce all income tax returns and all supporting documentation for any Defendant or Transfer Affiliate for tax years 2020 until present.

**Response:** This request is especially concerning. Mr. Patrick was Dondero's tax attorney, and also tax counsel for other of the requested entities and personally worked on tax years 2020 - 2023. Accordingly, he has personal knowledge of tax positions and how such positions could be challenged. This would be handing Mr. Patrick a tool to violate his duties to former clients under the Texas Disciplinary Rules of Professional Conduct 1.05 and 1.09.

### E.     HMIT Seeks Highly Sensitive and Confidential Information Easily Subject to Misuse

HMIT's overly broad Requested Discovery—specifically the discovery requests seeking highly sensitive and confidential information—demonstrate that HMIT is not seeking discovery in support of its TRO Motion, but to put undue pressure on the various Defendants by harassing them and interfering with their business operations. As set forth above, HMIT is not seeking discovery on a few discreet transactions at issue in this adversary proceeding. To the contrary, its Requested Discovery seeks information and documents with respect to every single activity and financial transaction that each of the Defendants has engaged in since October 15, 2021, a period subsequent to that at issue in the Amended Complaint. *See* Discovery Motion, Exhibit A, Dkt. 380-1. This would include sensitive customer and client information, as well as information with respect to past, current, and future financial transactions. Such information, in HMIT's hands, would allow HMIT to interfere with and interrupt Defendants' business operations for the foreseeable future.

CORE/3524885.0002/231913517.7

It would also give HMIT access to personal identifying information unrelated to the transactions at issue in this lawsuit.

Further, as set forth above, it appears that the Requested Discovery is sought primarily to pursue Mark Patrick's personal vendetta and agenda in furtherance of a massive fraud. As Defendants and others have previously made this Court aware, there is substantial evidence that Patrick has stolen over $250 million in charitable assets.[3] Patrick alleges in separate proceedings that but for Dondero, the Charitable Foundations from whom Patrick stole this money would not be able or willing to pursue him.[4] Providing Patrick substantially all of the internal information related to Defendants–every transaction, asset, loan, counterparty, affiliate, and lunch order—gives Patrick an irresistible tool to abuse as leverage or revenge.

## IV.    CONCLUSION

For all the foregoing reasons. Defendants respectfully request that the Court deny HMIT's Motion.

Dated: October 6, 2025    Respectfully submitted,

**STINSON LLP**
*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
deborah.deitschperez@stinson.com
michael.aigen@stinson.com

*Counsel for Defendants NexPoint Advisors,*
*L.P. and NexPoint Asset Management, L.P.*

---

[3] *Id.*

[4] Fourth Affidavit of Mark Eric Patrick, filed on August 19, 2025, in the Grand Court of the Cayman Islands, at ¶¶ 20, 37, 56, 57, 73, 74, 84, and 107, attached to Defendants' Appendix as Exhibit 1.

*f/k/a Highland Capital Management Fund
Advisors, L.P.*


/s/ Amy L. Ruhland
Amy L. Ruhland
Texas Bar No. 24043561
amy.ruhland@pillsburylaw.com
PILLSBURY WINTHROP SHAW
PITTMAN LLP
401 W 4th Street, Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for James Dondero, The Dugaboy
Investment Trust, Get Good Trust, and The
Strand Advisors, Inc.*

/s/Debra A. Dandeneau
Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Michelle.hartmann@bakermckenzie.com


Debra A. Dandeneau
Blaire Cahn
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Debra.dandeneau@bakermckenzie.com
Blaire.cahn@bakermckenzie.com
(Admitted pro hac vice)

*Counsel for Scott Ellington and Isaac
Leventon*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on October 6, 2025, a true and correct copy of this

document was served electronically via the Court's CM/ECF system.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez

CORE/3524885.0002/231913517.7