Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Deborah.deitschperez@stinson.com
michael.aigen@stinson.com

*Counsel for Defendant NexPoint Advisors, L.P.
and NexPoint Asset Management, L.P.
f/k/a Highland Capital Management Fund
Advisors, L.P.*

Debra A. Dandeneau (Admitted pro hac vice)
**BAKER & MCKENZIE LLP**
452 Fifth Ave New York, NY 10018
Telephone: 212-626-4100
debra.dandeneau@bakermckenzie.com

*Counsel for Scott Ellington and Isaac Leventon*

Amy L. Ruhland
Ryan J. Sullivan
**PILLSBURY WINTHROP SHAW
PITTMAN LLP**
401 W 4th Street, Suite 3200
Telephone: (512) 580-9600
amy.ruhland@pillsburylaw.com
ryan.sullivan@pillsburylaw.com

*Counsel for Defendant James Dondero, The
Dugaboy Investment Trust, Get Good Trust,
and Strand Advisors, Inc.*

Michelle Hartmann
State Bar No. 24032402
**BAKER & MCKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
michelle.hartmann@bakermckenzie.com

*Counsel for Scott Ellington and Isaac
Leventon*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | **Case No. 19-34054-sgj11** |
| **Reorganized Debtor.** | |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,** | |
| **Plaintiff,** | |
| **v.** | |
| **JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY** | **Adv. Pro. No. 21-03076-sgj** |

**INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET RECOVERY, LTD.; AND CPCM, LLC,**

  **Defendants.**

**DEFENDANTS' OPPOSITION TO PLAINTIFF HUNTER MOUNTAIN INVESTMENT
TRUST'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

**Page**

I.    FACTUAL BACKGROUND ........................................................................................... 2

II.   ARGUMENT .............................................................................................................. 4

    A.   The Court Cannot Grant Injunctive Relief Unless It Has Subject Matter
       Jurisdiction .......................................................................................................... 4

        1.   Absent an Independent Basis for Subject Matter Jurisdiction, the Court Lacks
           Authority to Issue Injunctive Relief ........................................................ 4

        2.   Section 105 of the Bankruptcy Code Is not an Independent Source of
           Jurisdiction for the Court to Grant Injunctive Relief ............................... 8

    B.   The Motion Is Procedurally Improper ................................................................ 9

        1.   HMIT Cannot Seek Injunctive Relief Based on Allegations and Claims Not at
           Issue in the Amended Complaint ............................................................ 9

        2.   The Court May Not Freeze Defendants' Assets Because HMIT Seeks Money
           Damages ................................................................................................ 12

           a.   *Because the "principal object" of the Amended Complaint is a money
              judgment, injunctive relief is unavailable.* ..................................... 13

           b.   *The injunction sought cannot issue because it is not narrowly tailored
              to the equitable relief sought* ......................................................... 16

    C.   There Is No Emergency to Address by Temporary Injunctive Relief in this Four-
       Year-Old Case ................................................................................................... 18

    D.   HMIT Cannot Satisfy the Legal Standard for a Temporary Restraining Order ........... 19

        1.   HMIT Cannot and Does Not Even Attempt to Demonstrate a Likelihood of
           Success on the Merits .............................................................................. 20

        2.   HMIT Should Be Estopped from Arguing that it Has a Likelihood of Success
           on the Merits of the Claims in this Proceeding. .................................... 24

        3.   There Is No Substantial Threat of Irreparable Injury to HMIT ............................. 25

        4.   The Balance of Harms Favors Defendants ............................................................. 27

        5.   There Is No Public Interest that Supports Granting the Requested TRO .............. 28

    E.   HMIT Must Post a Substantial Bond to Protect Defendants if Injunctive Relief Is
       Granted .............................................................................................................. 29

III.  CONCLUSION ........................................................................................................... 31

CORE/3524885.0002/232171811.21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amoco Prod. Co. v. Vill. of Gambell*,
  480 U.S. 531 (1987).................................................................................................27

*Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*,
  114 F.4th 382 (5th Cir. 2024) .................................................................................15

*Animale Grp. v. Sunny's Perfume, Inc.*,
  256 F. App'x 707 (5th Cir. 2007) ...........................................................................16

*Bluefield Water Ass'n v. City of Starkville*,
  577 F.3d 250 (5th Cir. 2009) ..................................................................................20

*Boire v. Pilot Freight Carriers, Inc.*,
  515 F.2d 1185 (5th Cir. 1975) ................................................................................19

*Bucklew v. St. Clair*,
  No. 3:18-CV-2117-N, 2019 U.S. Dist. LEXIS 88328, 2019 WL 2251109
  (N.D. Tex. May 15, 2019)..................................................................................11, 12

*BuzzBallz, LLC. v. JEM Beverage Co.*, LLC,
  No. 3:15-CV-588-L, 2015 U.S. Dist. LEXIS 83652, 2015 WL 3948757 (N.D.
  Tex. June 26, 2015)..................................................................................................19

*Chacon v. Granata*,
  515 F.2d 922 (5th Cir. 1975) ..................................................................................26

*Compass Bank v. Veytia*,
  No. EP-11-CV-228-PRM, 2011 WL 13234883 (W.D. Tex. Sept. 21, 2011)....................26, 27

*Corporate Com'n of Mille Lacs Band of Ojibwe Indians*,
  915 F. Supp. 2d 1059 (D. Minn. 2013).................................................................14

*Deckert v. Independence Shares Corp.*,
  311 U.S. 282 (1940)................................................................................................12

*Double Eagle Energy Services LLC v. Markwest Utica EMG, LLC*,
  936 F.3d 260 (5th Cir, 2019) ....................................................................................7

*Dugaboy Inv. Trust v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt.,
  L.P.)*, 2024 Bankr. LEXIS 1217 (Bankr. N.D. Tex. May 24, 2024)........................9

*Eighth Regional War Labor Board v. Humble Oil & Refining Co.*,
  145 F.2d 462 (5th Cir. 1944) ....................................................................................5

CORE/3524885.0002/232171811.21

*Engelhart v. Nguyen (In re 1960 Fam. Prac., P.A.)*,
  652 B.R. 154 (Bankr. S.D. Tex. 2023) ..................................................................14

*Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
  762 F.2d 464 (5th Cir. 1985) ................................................................................6

*Feld v. Zale Corp. (In Re Zale Corp.)*,
  62 F.3d 746 (5th Cir. 1995) ...................................................................................9

*Fiber Sys. Int'l v. Roehrs*,
  470 F.3d 1150 (5th Cir. 2006) .............................................................................18

*French v. Fisher*,
  No. 1:17-CV-248-DAE, 2018 U.S. Dist. LEXIS 127145, 2018 WL 3603107
  (W.D. Tex. July 2, 2018) ......................................................................................10

*Galaz v. Katona*,
  No. 5:14-CV-967, 2015 U.S. Dist. LEXIS 125595, 2015 WL 5565266 (W.D.
  Tex. Sept. 21, 2015).............................................................................................25

*In Matter of Galaz*,
  841 F.3d 316 (5th Cir. 2016) ...............................................................................25

*Garrison v. Doe*,
  No. 3:24-cv-00700-X, 2024 U.S. Dist. LEXIS 145370, 2024 WL 3822747
  (N.D. Tex. May 21, 2024).....................................................................................11

*Global Financial & Leasing Inc. v. Lojy Air Co.*,
  No. CV 10-1369-PK, U.S. Dist. LEXIS 46412, 2011 WL 1626051 (D. Or.
  Apr. 28, 2011) ......................................................................................................14

*GoNannies, Inc. v. GoAuPair.com, Inc.*,
  464 F. Supp. 2d 603 (N.D. Tex. 2006) .................................................................19

*Granfinanciera v. Nordberg*,
  492 U.S. 33 (1989)...............................................................................................15

*Gray Cas. & Sur. Co. v. 3i Contracting, LLC*,
  No. 3:23-CV-2511-L, 2024 U.S. Dist. LEXIS 44048, 2024 WL 1121800
  (N.D. Tex. Mar. 13, 2024) ...................................................................................22

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999)........................................................................................ *passim*

*H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs.*,
  NO. 3:09-CV-00390-L, 2009 U.S. Dist. LEXIS 52950, 2009 WL 1766095
  (N.D. Tex. June 23, 2009)....................................................................................25

CORE/3524885.0002/232171811.21

*Hall v. GE Plastic P. PTE Ltd.*,
    327 F.3d 391 (5th Cir. 2003) .................................................................................24

*In re Harvey*,
    No. 10-10242, Adv. Pro. No. 10-01011, 2011 Bankr. LEXIS 978, 2011 WL
    1045349 (Bankr. S.D. Tex. Mar. 17, 2011) ..........................................................15

*Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.*,
    331 F. Supp. 3d 581 (E.D. La. 2018).....................................................................26

*Highland Capital Mgmt., L.P. v. Dondero (In re Highland Capital Mgmt., L.P.)*,
    No. 19-34054-sgj, Adv. Pro. No. 20-03190-sgj, 2021 Bankr. LEXIS 1533,
    2021 WL 2326350 (Bankr. N.D. Tex. June 7, 2021)............................................30

*Holland Am. Ins. Co. v. Succession of Roy*,
    777 F.2d 992 (5th Cir. 1985) .................................................................................25

*iMortgage Servs. LLC v. La. Real Estate Appraisers Bd.*,
    658 F. Supp. 3d 316 (M.D. La. 2023)....................................................................18

*Infinite Fin. Sols., Inc. v. Strukmyer, LLC*,
    No. 3:14-CV-354-N, 2014 U.S. Dist. LEXIS 200954, 2014 WL 12586282
    (N.D. Tex. July 29, 2014) ................................................................................11, 12

*Jaramillo v. Texas*,
    No. 6:21cv253, 2022 U.S. Dist. LEXIS 74987, 2022 WL 1233637 (E.D. Tex.
    Mar. 21, 2022)..........................................................................................................7

*Klay v. United Healthgroup, Inc.*,
    376 F.3d 1092 (11th Cir. 2021) ...............................................................................8

*Law v. Siegel*,
    571 U.S. 415 (2014)..................................................................................................8

*Love v. Tyson Foods, Inc.*,
    677 F.3d 258 (5th Cir. 2012) .................................................................................24

*Loveless v. Grady Cnty. Crim. Just. Auth.*,
    No. CIV-24-00879-JD, 2025 U.S. Dist. LEXIS 102993, 2025 WL 1541050
    (W.D. Okla. May 30, 2025) ...................................................................................11

*Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*,
    801 F.2d 60 (2d Cir. 1986)........................................................................................8

*Massimo Motor Sports LLC v. Shandong Odes Indus. Co.*,
    No. 3:21-CV-02180-X, 2021 U.S. Dist. LEXIS 246404, 2021 WL 6135455
    (N.D. Tex. Dec. 28, 2021) .....................................................................................19

iv

*Matrix Partners VIII, LLP v. Nat. Res. Recovery, Inc.*,
    No. 1:08-CV-547, 2008 U.S. Dist. LEXIS 124412, 2009 WL 175132 (E.D.
    Tex. Jan. 23, 2009)..................................................................................................14, 20

*Mclean v. Greenfield*,
    No. 3:24-cv-00447-S, 2025 U.S. Dist. LEXIS 26861, 2025 WL 492494 (N.D.
    Tex. Jan. 13, 2025)....................................................................................................10

*McRae v. ConnectDirect Online, Inc.*,
    No. 3:24-CV-786-DPJ-ASH, 2025 U.S. Dist. LEXIS 26082, 2025 WL 495347
    (S.D. Miss. Feb. 13, 2025) ......................................................................................6, 26

*Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine
    Radio Co.)*,
    930 F.2d 1132 (6th Cir. 1991) .....................................................................................8

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*,
    999 F.3d 970 (5th Cir. 2021) ......................................................................................15

*Mirant Corp. v. The S. Co.*,
    337 B.R. 107 (Bankr. N.D. Tex. 2006)........................................................................14

*Morris-Shea Bridge Co., Inc. v. Cajun Indus. LLC*,
    No. 3:20-cv-00342, 2021 U.S. Dist. LEXIS 173783, 2021 WL 4084516 (S.D.
    Tex. Feb. 22, 2021)....................................................................................................20

*Munaf v. Geren*,
    553 U.S. 674 (2008)...................................................................................................27

*Nat'l Football League Players Ass'n v. Nat'l Football League*,
    874 F.3d 222 (5th Cir. 2017) ........................................................................................6

*Netsphere, Inc. v. Baron*,
    703 F.3d 296 (5th Cir. 2012) ...............................................................................12, 16

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)...................................................................................................24

*Pendergest-Holt v. Certain Underwriters at Lloyd's of London*,
    600 F.3d 562 (5th Cir. 2010) ......................................................................................20

*United States ex rel. Rahman v. Oncology Assocs.*,
    198 F.3d 489 (4th Cir. 1999) ......................................................................................14

*Redwood Resort Properties, LLC v. Holmes Co Ltd.*,
    No. 3:06-CV-1022-D, 2006 U.S. Dist. LEXIS 85996, 2006 WL 3531422
    (N.D. Tex. Nov. 27, 2006) ..........................................................................................16

CORE/3524885.0002/232171811.21

*In re RGV Smiles by Rocky L. Salinas D.D.S. P.A.*,
    626 B.R. 278 (Bankr. S.D. Tex. 2021) ...............................................................9

*Roark v. Individuals of Fed. Bureau of Prisons*,
    558 Fed. App'x 471 (5th Cir. 2014) ..................................................................20

*Rouf v. Cricket Communs., Inc.*,
    No. H-13-2778, 2013 U.S. Dist. LEXIS 163545, 2013 WL 6073459 (S.D.
    Tex. 2013) ...........................................................................................................21

*Royal Canin U. S. A., Inc. v. Wullschleger*,
    604 U.S. 22 (2025)................................................................................................7

*S. Tex. Lighthouse for the Blind, Inc. v. Fed. Supply Servs. Int'l, LLC*,
    No. 2:19-CV-193, 2020 U.S. Dist. LEXIS 157347, 2020 WL 5154097 (S.D.
    Tex. Aug. 28, 2020) ...........................................................................................17

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006)..........................................................................29

*Scanvec Amiable Ltd. v. Chang*,
    No. 02-6950, 2002 U.S. Dist. LEXIS 22261, 2002 WL 32341772 (E.D. Pa.
    Oct. 24, 2002) .....................................................................................................30

*Schott, Tr. for Est. of InforMD, LLC v. Massengale*,
    618 B.R. 444 (M.D. La. 2020)............................................................................15

*Slater v. U.S. Steel Corp.*,
    871 F.3d 1174 (11th Cir. 2017) .........................................................................24

*Star Satellite, Inc. v. Biloxi*,
    779 F.2d 1074 (5th Cir. 1986) ...........................................................................28

*Stone v. Ozcelebi (In re Ozcelebi)*,
    No. 20-70295, Adv. Pro. No. 22-7004, 2022 Bankr. LEXIS 1375, 2022 WL
    1529359 (Bankr. S.D. Tex. May 13, 2022) .......................................................28

*Tamposi v. Denby*,
    988 F. Supp. 2d 152 (D. Mass. 2013) ................................................................13

*Texas v. Real Parties In Int.*,
    259 F.3d 387 (5th Cir. 2001) ...............................................................................8

*Texas v. Seatrain Int'l, S. A.*,
    518 F.2d 175 (5th Cir. 1975) .............................................................................20

*Tolliver v. Thompson*,
    No. 21-1768-RGA, 2023 U.S. Dist. LEXIS 47046, 2023 WL 2572286 (D.
    Del. Mar. 20, 2023)............................................................................................11

CORE/3524885.0002/232171811.21

*Turnkey Offshore Project Servs., LLC v. JAB Energy Sols., LLC*,
No. 21-672, 2021 U.S. Dist. LEXIS 149733, 2021 WL 3509677 (E.D. La.
Aug. 10, 2021) ..................................................................................................30

*United States v. ERR, LLC*,
35 F.4th 405 (5th Cir. 2022) ............................................................................15

*Walker v. Doe*,
No. 6:24-cv-00633-ADA, 2025 U.S. Dist. LEXIS 100396, 2025 WL 1502634
(W.D. Tex. Jan, 3, 2025) ...................................................................................17

*Winter v. Natural Res. Def. Council*,
555 U.S. 7 (2008) ..............................................................................18, 25, 26

**Statutes**

11 U.S.C. § 105 .......................................................................................................8

11 U.S.C. § 544 .....................................................................................................21

11 U.S.C. § 548 .....................................................................................................21

11 U.S.C. § 550 .....................................................................................................21

26 U.S.C. § 6502 ...................................................................................................21

28 U.S.C. § 157 .......................................................................................................8

28 U.S.C. § 1334 .....................................................................................................8

**Other Authorities**

11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 ...............................26

Fed. R. Bankr. P. 7001 .......................................................................................9, 10

Fed. R. Civ. P. 8 ....................................................................................................11

Fed. R. Civ. P. 65 .........................................................................................6, 18, 29

Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/risk .....................27

## DEFENDANTS' OPPOSITION TO PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants NexPoint Advisors, L.P., NexPoint Asset Management, L.P. f/k/a Highland Capital Management Fund Advisors, L.P., James Dondero, The Dugaboy Investment Trust, Get Good Trust, Strand Advisors, Inc., Scott Ellington, and Isaac Leventon (collectively, the "Defendants") file this joint opposition to *Plaintiff Hunter Mountain Investment Trust's Emergency Motion for Temporary Restraining Order, Preliminary Injnction and Appointment of Receiver*. Dkt. 379. In support thereof, Defendants respectfully state as follows:

## SUMMARY OF ARGUMENT

The Emergency Motion for Temporary Restraining Order ("the Motion") filed by Hunter Mountain Investment Trust ("HMIT") is short on legal analysis, heavy on speculation, and almost entirely devoid of evidence.[1] Though one reason is sufficient, numerous reasons exist to deny the Motion.  First, this Court lacks jurisdiction to issue the relief requested, and decisions on pending motions raising a jurisdictional bar must be addressed before any injunctive relief issues.  Second, HMIT's Motion is procedurally deficient, both because HMIT impermissibly relies on allegations and claims that have no relationship to the Amended Complaint and because the Amended Complaint seeks primarily monetary relief, which cannot support an injunction.  Third, HMIT fails to explain how there is any "emergency" to rectify through injunctive relief, particularly since this proceeding has been pending for four years.  Fourth, HMIT does not come close to bearing its burden to establish the four prerequisites to the issuance of the grossly overbroad injunctive relief it seeks.  And finally, to the extent any appropriate injunctive could issue, HMIT should be required

---

[1] While HMIT included in its Motion a request for a preliminary injunction and a receiver, based on the parties' joint discussions with the Court and the Amended Notice of Hearing (Dkt. 385), the requests for a preliminary injunction and for appointment of a receiver will not be considered at the October 17, 2025 hearing.  Defendants reserve the right to respond separately to those requests if HMIT chooses to pursue them at a later date.

to post a hefty bond to mitigate the significant damage that would be suffered by Defendants as a result. In short, there are innumerable obstacles that preclude the relief HMIT seeks, and the Court should deny its Motion.

## I.    FACTUAL BACKGROUND

There is much water under the bridge in this four-year-old adversary proceeding. This proceeding was commenced on October 15, 2021, by Marc S. Kirchner, the plan-appointed Litigation Trustee. The parties engaged in nearly 16 months of expensive discovery and extensive motion practice before the Litigation Trustee admitted that the whole proceeding might be unnecessary in view of the estate's likely solvency. Consequently, the Trustee sought, and the Court ordered, a stay of these proceedings on April 4, 2023. At no point during the 16-month pendency of the litigation did the Litigation Trustee ever suggest that temporary injunctive relief might be necessary to protect a potential judgment against Defendants.

While this adversary proceeding remained active, Defendants moved to withdraw the reference to the District Court for the Northern District of Texas. *See* Dkts. 27, 36, 39, 45, 50, 59, 71.[2] On April 6, 2022, this Court issued a Report and Recommendation proposing that the District Court grant the motions to withdraw once the case was trial ready. Dkt. 151. Defendants filed objections to the Report and Recommendation, and those objections remained pending before the District Court when this Court stayed the case. *See Kirschner v. Dondero*, No. 3:22-CV-00203-S (N.D. Tex.), Dkts. 16, 17, 19, 20, 22.

Thereafter, the Litigation Trustee filed an Amended Complaint (Dkt. 158), and Defendants filed Motions to Dismiss. Dkts. 172, 175, 178, 182, 185, 191. Notably, Hunter Mountain—which was a named defendant in the adversary proceeding—filed its own Motion to Dismiss and adopted

---

[2] Unless otherwise specified, all docket references are to the docket in *Kirschner v. Dondero*, No. 21-03076-sgj (Bankr. N.D. Tex.).

the arguments set forth in all other Defendants' motions. *See* Dkts. 188, 190. Among other things,

the Motions to Dismiss argue that this Court lacks subject matter jurisdiction over the litigation

and that the Amended Complaint fails to state any cognizable claim for relief. The Motions to

Dismiss remained pending when the case was stayed. In light of the stay, the District Court issued

an order on August 15, 2023, abating and administratively closing the adversary proceeding.

*Kirschner v. Dondero*, No. 3:22-CV-00203-S (N.D. Tex.), Dkt. 30.

Now, four years later, there is no question that Highland's long-reorganized bankruptcy

estate is solvent. Unsecured creditors have been paid almost in full: the latest Post-confirmation

Reports filed by Highland and the Claimant Trust reveal that the estate has disbursed more than

$377 million on allowed unsecured claims, representing 95% of those claims' value. *See In re*

*Highland Cap. Mgmt., L.P.*, No. 19-34054-sgj, Dkt. 4319 (Post-confirmation Report of Highland)

at 7; Dkt. 4320 (Post-confirmation Report of Highland Claimant Trust) at 7. And publicly available

records, coupled with developments since the adversary proceeding was filed, demonstrate that

there is plenty of cash on hand to pay remaining unsecured claims. *See, e.g.*, Bankr. Dkt. 3872

(Current Balance Sheet of the Highland Claimant Trust) (showing cash on hand exceeded

remaining distributions to be made and also showing significant additional cash reserves);

*Highland Cap. Mgmt., L.P. v. Highland Cap. Mgmt. Fund Advisors, L.P.*, No. 3:21-CV-00881-X

(N.D. Tex.), Dkt. 233 (distributing more than $70 million in additional cash to Highland pursuant

to a settlement of the so-called "notes litigation").

It is undoubtedly because this adversary proceeding no longer benefits the solvent

Highland estate that Kirschner decided to abandon the litigation. On June 30, 2025, this Court

entered an order approving a 9019 settlement (the "HMIT Settlement") between Hunter Mountain

and its affiliates (the "HMIT Entities") and Highland, the Claimant Trust, and the Litigation Sub-

Trust. Bankr. Dkt. 4297. As part of the HMIT Settlement, Kirschner assigned the Litigation Sub-

Trust's claims in this adversary proceeding to HMIT.  Thereafter, on July 25, 2025, HMIT filed a

Motion to Substitute, seeking to substitute itself for Kirschner as the plaintiff in this proceeding.

Dkt. 357. Over Defendants' objections (*see* Dkts. 362, 363, 369), the Court issued an order

approving the substitution on September 5, 2025.  Dkt. 377.

On September 3, 2025, HMIT filed a notice of its intent to lift the stay of this litigation,

effectively lifting the stay as of October 3, 2025.  Dkt. 375. Less than two weeks later, HMIT filed

the present Motion. Dkt. 379.

II.    **ARGUMENT**

    A.    **The Court Cannot Grant Injunctive Relief Unless It Has Subject Matter Jurisdiction**

        1.    **Absent an Independent Basis for Subject Matter Jurisdiction, the Court Lacks Authority to Issue Injunctive Relief**

A core threshold barrier to this Court's issuance of injunctive relief is its lack of subject

matter jurisdiction. Even before HMIT was assigned the claims in this proceeding, there were

substantial questions about the Court's jurisdiction. Defendants' motions to withdraw the reference

("Withdrawal Motions"), in which HMIT joined,[3] challenged the Court's jurisdiction.  As set forth

above, the Report and Recommendation issued by this Court on those motions had not yet been

reviewed by the District Court when the case was stayed.  Nor had this Court considered or decided

Defendants' Motions to Dismiss, including the arguments contained therein that the Court lacks

subject matter jurisdiction.  The Court indicated it would not do so until the District Court resolved

pending objections to this Court's Report and Recommendation on the Withdrawal Motions.

Moreover, as was discussed at the hearing on HMIT's motion to substitute as assignee-

plaintiff, there is no question that the Court can and should consider the new posture of the case in

determining the motion to withdraw the reference.  *See* Sept. 3, 2025 Hr'g Tr., Dkt. 376 at 27:15-

_____

[3] *See* Joinder in Multiple Pending Motions to Withdraw the Reference, Dkt. 71.

16, 30:15-20 (Ex. A).[4]  Although HMIT argued that the Court may not revisit its jurisdiction,[5]

HMIT's Motion makes it abundantly clear that the Court must do so, because the requests for relief

are based on claims and allegations that are not contained in the current Amended Complaint.

Indeed, the Motion relies on allegations about events that long post-date the events at issue in the

Amended Complaint and even post-date the filing of the Amended Complaint.[6]

Until a decision is reached on the jurisdictional issues raised in the Withdrawal Motions

and Motions to Dismiss (and any upcoming supplements thereto), this Court cannot grant any

injunctive relief.[7]  The Fifth Circuit has long recognized that courts must determine that they have

jurisdiction before issuing injunctive relief.  Indeed, this is the precise holding of *Eighth Regional*

*War Labor Board v. Humble Oil & Refining Co.*, 145 F.2d 462, 463 (5th Cir. 1944).  In *Humble*

*Oil*, a non-resident defendant entered a special appearance in the case and moved to dismiss the

case for lack of jurisdiction and failure to state a claim.  *Id.* at 463.  Without ruling on the motion,

the district court entered an order granting injunctive relief against the non-resident defendants "to

whatever extent this court may have jurisdiction over the persons of said defendants for injunction

purposes."  *Id.* at 463–64.  On appeal, the Fifth Circuit held that it was improper for the district

court to so issue injunctive relief, explaining that "[t]he jurisdiction of the district court is confined

---

[4] Exhibit A, and all other exhibits referenced herein, are contained in a separate Appendix filed simultaneously with this Opposition.

[5] *See* App'x, Ex. A, Sept. 3, 2025 Hr'g Tr., Dkt. 376 at 11:6-9.

[6] For example, HMIT relies on and references new facts, parties, and events in the Motion, including the following: (i) an oral argument in an unrelated proceeding in New York state court scheduled for September 22, 2025; (ii) alleged transfers made in 2025 to a non-party called Crossvine Litigation Funding LLC; (iii) payments involving non-party Skyview Group Inc. allegedly made in 2025; (iv) an alleged wire transfer made at an unspecified time to a non-party entity called Atreyu Pipeline Logistics, LLC; and (v) newly-commenced litigation in the Cayman Islands.  *See* Brief in Support of Motion, Dkt. 379-1, at ¶¶ 3, 5, 28–32.

[7] Defendants have argued that the substitution of HMIT as the plaintiff in this litigation changes the jurisdictional analysis and makes this Court's jurisdiction even more tenuous.  HMIT disagrees. Consequently, Defendants request that this Court take additional briefing on the jurisdictional issues and set a schedule for the same.

within strict limits, and its injunctive power is further encompassed. We know of no power in the court, without determining its own challenged jurisdiction, to issue its caveat 'to whatever extent' jurisdiction may exist.'" *Id.* at 464.

Similarly, in *Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 (5th Cir. 1985), the Fifth Circuit explained that "Fed. R. Civ. P. 65 'determines only the method of seeking and obtaining any sort of an injunction, and has no bearing on either the jurisdiction to exercise, or the propriety of exercising, the injunctive power.'" *Id.* at 470 (citing 7 J. Moore, J. Lucas & K. Sinclair, Jr., *Moore's Federal Practice*, ¶ 65.03[2], at 65–25 (1985) (footnotes omitted)). The Court went on to say that "[b]ecause Rule 65 confers no jurisdiction, the district court must have both subject matter jurisdiction and *in personam* jurisdiction over the party against whom the injunction runs." *Id.* (internal citations excluded). The Court criticized the district court for postponing consideration of the issues of personal jurisdiction and subject matter jurisdiction raised by one of the parties, holding that "the district court should not have issued the preliminary injunction against [the party] without determining whether it had jurisdiction over the party enjoined." *Id.* at 472.

These cases remain good law. As recently as this year, the United States District Court for the Southern District of Mississippi reaffirmed these principles when it denied plaintiff's request for injunctive relief without prejudice because the court unable to determine whether personal jurisdiction existed over the targeted defendant. *McRae v. ConnectDirect Online, Inc.*, 2025 WL 495347, at *4 (S.D. Miss. Feb. 13, 2025). Numerous other decisions have held the same. *See Nat'l Football League Players Ass'n v. Nat'l Football League,* 874 F.3d 222 (5th Cir. 2017) (holding that a court may not issue a preliminary injunction when it lacks subject matter jurisdiction)*; Jaramillo v. Texas*, 2022 U.S. Dist. LEXIS 74987, at *2 (E.D. Tex. Mar. 21, 2022) ("the lack of jurisdiction is dispositive of Plaintiff's request for preliminary injunctive relief").

The same conclusion must follow here, warranting a denial of HMIT's Motion. The jurisdictional issues, as presaged at the hearing on the Motion to Substitute, are now particularly complex. Not only are there the significant, unresolved jurisdictional issues originally raised by the parties, but HMIT's Motion demonstrates that the litigation it seeks to pursue is something very different than what is alleged in the Amended Complaint, such that an amendment of the complaint is necessary, and new jurisdictional obstacles are in play.[8] HMIT does not appear to dispute that if it amends the complaint, jurisdiction is evaluated anew.[9] In fact, if a substitution adds a new party that is not a true successor-in-interest, even a substitution without amendment requires a new jurisdictional analysis.[10]

Under the circumstances, the only appropriate procedural course is to require HMIT to seek leave to amend to add the allegations and causes of action that its Motion seeks to pursue (all of which post-date the Amended Complaint), and if leave is granted, then determine jurisdiction based on the newly Amended Complaint.[11] But at the very least, this Court should provide guidance to the District Court concerning the impact of recent events on Defendants' jurisdictional arguments raised in the Withdrawal Motions, and, similarly taking into account recent events, this Court must resolve Defendants' jurisdictional arguments raised in the Motions to Dismiss before any temporary injunctive relief can issue.

---

[8] *See* fn. 6, *supra.*

[9] See Dkt. 369, at ¶ 7 n.3.

[10] *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 34–37 & n.7 (2025).

[11] *See id.* ("changes in parties, or changes in claims, effectively remake the suit" requiring jurisdictional reevaluation). HMIT's formulaic reliance on *Double Eagle Energy Services LLC v. Markwest Utica EMG. LLC*, 936 F.3d 260, 263-64 (5th Cir, 2019) fails to take due regard of the Supreme Court's guidance in *Royal Canin*. Moreover, *Double Eagle* is irrelevant in circumstances like these where the purported bases for an injunction are not in the original complaint but arise out of facts pertinent to the substituted party.

## 2.    Section 105 of the Bankruptcy Code is not an Independent Source of Jurisdiction for the Court to Grant Injunctive Relief

HMIT also invokes section 105(a) of the Bankruptcy Code as the source of this Court's power to enjoin Defendants from making transfers, despite acknowledging that their business involves transfers in the ordinary course.  Brief in Support of Motion, Dkt. 379-1, at ¶ 35.

But as a case relied upon by HMIT explains, "'Section 105 is the bankruptcy statute akin to the All Writs Act'" and it empowers the court only "'to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.'" *Id.* at ¶ 13 (citing *Villarreal v. N.Y. Marine & Gen. Ins. Co. (In re OGA Charters, LLC)*, 554 B.R. 415, 424 n.8 (S.D. Tex. 2016) (quoting *In re GSF Corp.*, 938 F.2d 1467, 1475 n.6 (1st Cir. 1991) (cleaned up)).  In other words, like the All Writs Act, Section 105 is not an independent grant of jurisdiction. *Texas v. Real Parties In Int.*, 259 F.3d 387, 392 (5th Cir.  2001) (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999)).  Instead, the statute only affords bankruptcy courts the power to act in aid of their existing jurisdiction.  *See Law v. Siegel,* 571 U.S. 415, 421 (2014) (the bankruptcy court's equitable power must be exercised "within the confines of the Bankruptcy Code"); *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1140 n.13 (6th Cir. 1991) (in a proceeding to obtain relief under Section 105, "the power of the bankruptcy and district courts . . . is limited to the grant of jurisdiction in 28 U.S.C. § 1334"); *Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 63 (2d Cir. 1986) ("Section 105 does not . . . broaden the bankruptcy court's jurisdiction, which must be established separately under 28 U.S.C. § 157."); *see also Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2021) (the All Writs Act codifies courts' "inherent power to protect the *jurisdiction they already have*, derived from some other source") (emphasis added).

As a result, the determination of this Court's jurisdiction is required before HMIT may invoke Section 105 as a basis for the injunctive relief sought.

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S
MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 8 OF 34

**B.**     **The Motion Is Procedurally Improper**

    **1.**     <u>HMIT Cannot Seek Injunctive Relief Based on Allegations and Claims
Not at Issue in the Amended Complaint</u>

Under Bankruptcy Rule 7001(7) a party may seek an injunction only by bringing an
adversary proceeding.  Fed R. Bankr. P. 7001(7); *Dugaboy Inv. Trust v. Highland Cap. Mgmt.,
L.P. (In re Highland Cap. Mgmt., L.P.)*, 2024 Bankr. LEXIS 1217, at \*17–18 (Bankr. N.D. Tex.
May 24, 2024) (under Bankruptcy Rule 7001 "claims for equitable [and a fortiori, injunctive]
relief . . . must be brought as an adversary proceeding."). HMIT attempts to skirt this rule by
bringing its Motion in this adversary proceeding.  But as the Amended Complaint in the adversary
proceeding demonstrates, the allegations and claims raised in the Motion have nothing to do with
the Amended Complaint and cannot support a request for injunctive relief in this adversary
proceeding.[12] Indeed, the Motion even seeks to enjoin a significant number of parties that are not
defendants. *See* Proposed Order, Dkt. 379-3. As such, Bankruptcy Rule 7001 requires HMIT to
seek leave to amend the complaint (or to file a whole new adversary proceeding containing its
allegations and claims) if it wishes to obtain injunctive relief.

In *Feld v. Zale Corp.*, the Fifth Circuit overturned injunctive relief granted when it was
awarded without having been sought in an adversary complaint. *Feld v. Zale Corp. (In Re Zale
Corp.)*, 62 F.3d 746, 763 (5th Cir. 1995) ("no evidence in the record that CIGNA and [debtor] filed
a complaint for an adversary proceeding *to demand injunctive relief*") (emphasis added). Other
courts in this circuit have reached the same result. *See e.g., In re RGV Smiles by Rocky L. Salinas
D.D.S. P.A.*, 626 B.R. 278 (Bankr. S.D. Tex. 2021) ("Rule 7001(7) is controlling and requires the
filing of an adversary proceeding for this Court to consider injunctive relief.").

---

[12] *See* fn. 6, *supra.*

After taking over as the assignee-plaintiff, HMIT seeks to introduce new allegations, new facts, new parties, and new claims in the Motion that are not found within the four corners of the Amended Complaint,[13] and which HMIT claims it "recently learned." *See* Motion, Dkt. 379, at p. 2, Brief in Support of Motion, Dkt. 379-1, at ¶¶ 5, 23, 28-34. The Motion also seeks to reach and enjoin (a) non-parties to the Amended Complaint and (b) events not mentioned in the Amended Complaint. *See* Proposed Order, Dkt. 379-3. In effect, HMIT is seeking injunctive relief via new facts and allegations contained solely within its Motion, while simultaneously arguing that it need not amend the operative Amended Complaint, to avoid a renewed jurisdictional inquiry. As noted above, HMIT also seeks injunctive relief against numerous non-parties, which is a clear violation of the requirements of Rule 7001.

Consistent with Bankruptcy Rule 7001, under common law, a court may not grant a request for injunctive relief when the request is based on allegations outside the live pleading. *French v. Fisher*, 2018 WL 3603107, at *1 (W.D. Tex. July 2, 2018) ("The Court denies the Amended Motion [for TRO and preliminary injunction] because it is based on allegations that are not in the Second Amended Complaint."). A "party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Mclean v. Greenfield*, 2025 WL 492494, at *2 (N.D. Tex. Jan. 13, 2025), *report and recommendation adopted sub nom.*, *McLean v. Acting Warden Greenfield*, 2025 WL 488418 (N.D. Tex. Feb. 13, 2025)). Because a court lacks jurisdiction over matters outside the live pleading, a court cannot grant a plaintiff's motion for injunctive relief that raises new issues from the plaintiff's complaint. *Infinite Fin. Sols., Inc. v. Strukmyer, LLC*, 2014 WL 12586282, at *9 (N.D. Tex. July 29, 2014) ("Even when a motion for a preliminary injunction is predicated on a

---

[13] *Id.*

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S**
**MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 10 OF 34

complaint, if the motion raises issues different from those presented in the complaint, the court has no jurisdiction over the motion."); *Bucklew v. St. Clair*, 2019 WL 2251109, at *3 (N.D. Tex. May 15, 2019), *report and recommendation adopted*, 2019 WL 2249719 (N.D. Tex. May 24, 2019) ("Because [plaintiff] seeks injunctive relief unrelated to the claims in her lawsuit, jurisdiction is lacking.").

A motion for "injunctive relief based on different conduct from that described in [the plaintiff's] complaint" must fail because "although the Fifth Circuit Court of Appeals has not specifically addressed this issue, district courts within this circuit have found that a request for preliminary injunction must be based on allegations related to claims in the complaint." *See Garrison v. Doe*, 2024 WL 3822747, at *4 (N.D. Tex. May 21, 2024), *report and recommendation adopted*, 2024 WL 3826471 (N.D. Tex. Aug. 13, 2024) (denying motions for injunctive relief that "reference[d] 'more incidents' and appear[ed] to assert new claims"); *see also Loveless v. Grady Cnty. Crim. Just. Auth.*, 2025 WL 1541050, at *3 n.4 (W.D. Okla. May 30, 2025) (denying injunctive relief not specifically pleaded in live complaint because "Federal Rule of Civil Procedure 8(a)(3) requires a claim to contain 'a demand for the relief sought,' and [plaintiff's] amended complaint does not seek injunctive relief . . . with sufficient specificity to satisfy this requirement"); *Tolliver v. Thompson*, 2023 WL 2572286, at *1 (D. Del. Mar. 20, 2023) ("For reasons that are unclear, rather than including her § 1982 claim and request for injunctive relief in the Second Amended Complaint, Plaintiff filed them separately as a motion for injunctive relief. The Court will deny the motion for injunctive relief, but . . . permit Plaintiff to file a third amended complaint incorporating into her Second Amended Complaint her amended § 1982 claim and request for injunctive relief.").

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S
MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 11 OF 34

The Amended Complaint in this adversary proceeding contains neither the claims at issue in the Motion nor the allegations on which HMIT bases it claims.[14] Nor does the Amended Complaint even mention—much less name as parties—many of the entities that are targets of the HMIT's Motion.  *See* Proposed Order, Dkt. 379-3. This Court does not have jurisdiction to grant injunctive relief where, as here, that relief is based on allegations and claims outside the live pleadings.  *See Infinite Fin. Sols.*, 2014 WL 12586282, at *9; *Bucklew*, 2019 WL 2251109, at *3. Therefore, the Court must deny HMIT's Motion.

## 2.   The Court May Not Freeze Defendants' Assets Because HMIT Seeks Money Damages

The Court also cannot grant HMIT the requested temporary restraining order because preliminary injunctive relief that freezes assets is not available when a creditor seeks money damages, rather than equitable relief.

As the Supreme Court has explained, federal courts may not issue a preliminary injunction to prevent alleged or anticipated fraudulent transfers of assets before entering judgment.  *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).  That is because federal courts take a "cautious approach to equitable powers," which "do not extend to property unrelated to the underlying litigation."  *Netsphere, Inc. v. Baron*, 703 F.3d 296, 309 (5th Cir. 2012).  Thus, pre-suit injunctions are available only when the "principal objects" of the suit are equitable in nature.  *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289 (1940).

The Supreme Court's decision in *Grupo Mexicano* illustrates these principles.  In that case, a creditor brought a claim for breach of contract due to non-payment of notes, seeking money damages of over $80 million. 527 U.S. at 310–312. The defendant, Grupo Mexicano, was in "serious financial trouble" and had agreed to pay obligations owed to other creditors before

---

[14] *See* fn. 6, *supra.*

satisfying the plaintiffs' claims. *Id*. at 311–12. To secure their own repayment, the plaintiffs

sought and obtained a preliminary injunction preventing the defendant from transferring assets.

*Id*. at 313. On appeal, the Supreme Court reversed, holding that "[b]ecause such a remedy was

historically unavailable from a court of equity, we hold that the District Court had no authority to

issue a preliminary injunction preventing petitioners from disposing of their assets pending

adjudication of respondents' contract claim for money damages." *Id.* at 333.

Similarly here (and as illustrated in the chart below), all or the vast majority of the claims

alleged in the Amended Complaint are legal, not equitable, in nature, and *Grupo Mexicano* thus

prohibits the injunctive relief requested by HMIT.

| **Category of Claim** | **Counts** | **Type of Claim** |
|---|---|---|
| Fraudulent Conveyance | I-III, XII-XIII, XVIII-XXIII, XXXII-XXXIII | Legal when, as here, seeking monetary relief |
| Breach of Fiduciary Duty | IV-V, XIV-XVI, XXXIV-XXXV | Legal when, as here, seeking monetary relief |
| Preference | XXXI | Legal |
| Tort | XVII, XXIV-XXV | Legal |
| Declaratory Judgment | VI-XI | Legal |
| Unjust Enrichment | XXVI-XXX | Equitable, but entirely overlapping with the legal claims;[15] and not an independent claim, but rather, a proposed remedy that seeks only money (See Section II.B.2.a, *infra*) |

       a.    *Because the "principal object" of the Amended Complaint is a money judgment, injunctive relief is unavailable.*

The Amended Complaint's handful of equitable claims do not make injunctive relief

appropriate. When reviewing an action containing both legal and equitable claims, courts look at

whether the requested injunctive relief is in service of the equitable claim and remedy requested

by the complaint. *See Tamposi v. Denby*, 988 F. Supp. 2d 152, 158 (D. Mass. 2013); *Corporate*

---

[15] For example, the Amended Complaint seeks to recover the same alleged transfer of $3mm in Count XIV (breach of fiduciary duty) and XVI (civil conspiracy) that it seeks to recover in Count XXVI (unjust enrichment).

*Com'n of Mille Lacs Band of Ojibwe Indians*, 915 F. Supp. 2d 1059, 1063 (D. Minn. 2013) (explaining that the best approach when addressing complaints that present both legal and equitable claims is to focus "on the essence of the action and the strength of the alleged equitable interest."); *Global Financial & Leasing Inc. v. Lojy Air Co.*, 2011 WL 1626051, *8–9 (D. Or., Apr. 28, 2011). "In these circumstances, it may be appropriate for courts to engage in a more penetrating analysis than a cursory examination of a complaint with boilerplate allegations of equitable claims." *Matrix Partners VIII, LLP v. Nat. Res. Recovery, Inc.*, 2009 WL 175132, at *5 (E.D. Tex. Jan. 23, 2009).

HMIT cannot circumvent *Grupo Mexicano* "merely by 'sprinkling' a bit of equity on a suit at law for money damages." *See United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 497 (4th Cir. 1999). Nor can HMIT bolster its request for a preliminary injunction by arguing that facts and claims newly alleged in the Motion itself justify equitable relief. Moreover, as explained below, all of HMIT's supposedly "equitable" claims should be treated as legal claims.

First, HMIT's claims for breach of fiduciary duty should be analyzed as legal claims because they seek monetary relief.[16] For example, Count IV (Breach of Fiduciary Duty Arising Out of Dondero's Lifeboat Scheme) of the Amended Complaint asks for a monetary remedy "in an amount to be proven in trial." Amended Complaint, ¶ 200. As this Court has explained: "Generally, claims for breach of fiduciary duty are within the exclusive jurisdiction of courts of equity. However, when a legal remedy, such as monetary relief, is sought for breach of a fiduciary duty, the action assumes legal attributes." *Mirant Corp. v. The S. Co.*, 337 B.R. 107, 110 (N.D. Tex. 2006) (internal citations omitted); *see also Engelhart v. Nguyen (1960 Fam. Prac., P.A.)*, 652

---

[16] *See* Amended Complaint, Dkt. 158, Counts IV, V, XIV-XVI, XXXIV-XXXV.

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S**
**MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 14 OF 34

B.R. 154, 167 (Bankr. S.D. Tex. 2023) (breach of fiduciary duty claim that sought personal liability via a money judgment was legal in nature).

HMIT's fraudulent transfer claims also are legal in nature because they ask for specific monetary relief, not equitable relief. In *Granfinanciera v. Nordberg*, the Supreme Court found that a fraudulent conveyance action under 11 U.S.C. §548—which sought the recovery of $1.7 million that was transferred within one year of a bankruptcy filing—was a legal, not an equitable, claim because it sought the recovery of a fixed sum of money without a claim for accounting or other equitable relief. 492 U.S. 33, 46–48 (1989). Likewise here, HMIT's fraudulent conveyance claims simply seek the recovery of money, not equitable relief,[17] and therefore the Court may not issue injunctive in aid of those claims.

HMIT's tort claims[18] are obviously legal claims that seek monetary damages. *See In re Harvey*, 2011 WL 1045349, at *2-3 (Bankr. S.D. Tex. Mar. 17, 2011) (tortious interference); *United States v. ERR, LLC*, 35 F.4th 405, 416 (5th Cir. 2022) (breach of contract); *Schott, Tr. for Est. of InforMD, LLC v. Massengale*, 618 B.R. 444, 452 (M.D. La. 2020) (conversion). Declaratory judgment claims[19] also are not equitable claims. *See Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*, 114 F.4th 382, 396–97 (5th Cir. 2024) (plaintiff's "declaratory judgment claim is legal in nature").

Therefore, the only theoretically equitable claims that the Amended Complaint contains are the claims for unjust enrichment and money had and received.[20] But these are not independent causes of action. *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th

[17] *See id.*, Counts I-III, XII-XIII, XVIII-XXIII, XXXII-XXXIII.
[18] *See id.*, Count XVII ("Tortious Interference with Prospective Business Relations"); Count XXIV ("Breach of Contract"); and Count XXV ("Conversion").
[19] *See id.*, Counts VI-XI.
[20] *See id.*, Counts XXVI-XXX.

Cir. 2021) (affirming dismissal of unjust enrichment claim because it is "not a distinct cause of action itself"); *Redwood Resort Properties, LLC v. Holmes Co Ltd.*, 2006 WL 3531422, at *8 (N.D. Tex. Nov. 27, 2006) ("Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits . . . Accordingly, the court holds that Redwood has failed to state an unjust enrichment claim on which relief can be granted, and it dismisses this action.").[21] Moreover, disgorgement of the alleged unjust enrichment is not the "principal object" of the suit. Instead, the "principal objects" of the Amended Complaint are money damages. Therefore, HMIT is not entitled to injunctive relief.

> b.    *The injunction sought cannot issue because it is not narrowly tailored to the equitable relief sought.*

The requested injunctive relief is also inappropriate because it is overbroad in the extreme and hardly reflects courts' "cautious approach to equitable powers." *Netsphere*, 703 F.3d at 309. HMIT asks the Court to prevent Defendants and anyone or anything affiliated with them[22] from "transferring, selling, liquidating, dissipating, assigning, alienating, tampering with, withdrawing, concealing, mortgaging, encumbering, granting a lien or security interest or other interest in, or otherwise harming or reducing the value of, or disposing of, any funds or other assets under the Defendants' individual or joint control including, among other things, their subsidiaries, businesses, physical assets, real property, cash, and equity interests." Proposed Order, Dkt. 379-3 at ¶ 1. This requested relief contravenes the Fifth Circuit's directive that any injunction must be narrowly tailored to the relief sought. *See Animale Grp. v. Sunny's Perfume, Inc.,* 256 F. App'x 707, 708 (5th Cir. 2007).

---

[21] See NexPoint Motion to Dismiss, Dkt. 183, at 23 n.137.

[22] The term "Defendants" in the Motion is defined to include "Defendants' successors, assigns, officers, agents, employees, and attorneys, and all persons or entities in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or through any corporation, subsidiary, division, or other device." Proposed Order, Dkt. 379-3, at ¶ 1 n.1.

HMIT's own cases reveal the overbreadth of the relief it seeks.  In those cases, the courts entered much narrower injunctions than what HMIT says should issue here.  *See Walker v. Doe*, 2025 U.S. Dist. LEXIS 100396, at *14-15 (W.D. Tex., Jan, 3, 2025) (in an action where the plaintiff was the victim of a scam, the court entered a temporary restraining order to freeze $20,000 in the account that contained the scam transfer at issue, not the entire account); *Amegy Bank N.A. v. Monarch Flight II, LLC*, 2011 U.S. Dist. LEXIS 140874, at *19-20 (S.D. Tex. Dec. 7, 2011) (the court froze specific real properties because the proceeds of a sale of partnership units were traceable to those properties and their improvements).  In contrast, HMIT has utterly failed to show any nexus between the "nuclear weapo[n] of the law," an asset-freezing prejudgment injunction (*Grupo Mexicano*, 527 U.S. at 329–330) and its unjust enrichment claims.  *See S. Tex. Lighthouse for the Blind, Inc. v. Fed. Supply Servs. Int'l, LLC*, 2020 U.S. Dist. LEXIS 157347, at *4–5 (S.D. Tex. Aug. 28, 2020) (holding that plaintiff failed to establish link between claims and property sought to be frozen).  "According to the Fifth Circuit . . . a court does not have the power to exercise jurisdiction over property not subject to the claims in the case simply to secure or preserve funds for the satisfaction of a potential later judgment."  *Id*. at *6–7.

The relief sought by HMIT against the individual Defendants in this action is even more burdensome and egregious.  HMIT seeks to prevent the individuals from "transferring" or "withdrawing" any funds under their control. *See* Proposed Order, ¶ 1. Yet the Motion fails to even allege that Mr. Leventon, Mr. Ellington or Mr. Dondero have made any transfers of personal assets. In fact, with respect to Mr. Leventon, all HMIT says is that he was aware of "Dondero's requests," whatever those are. *See* Brief in Support of Motion, Dkt. 379-1, ¶5.  Should Mr. Leventon (or any of the individuals) be required to ask Mr. Patrick every time he needs to buy a gallon of milk or take his children to the doctor?  As constructed, the restraining order against the individuals would prohibit them from engaging in everyday essential tasks like withdrawing cash from an ATM or

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S**
**MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 17 OF 34

buying groceries. As such, the relief against the individuals is particularly violative of the requirement that injunctions be narrowly tailored. *See, e.g. Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1159 (5th Cir. 2006) (citing *John Doe # 1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)) ("The scope of injunctive relief is dictated by the extent of the violation established, and an injunction must be narrowly tailored to remedy the specific action necessitating the injunction."); *iMortgage Servs. LLC v. La. Real Estate Appraisers Bd.*, 658 F. Supp. 3d 316, 326 (M.D. La. 2023) (citations omitted) ("The scope of injunctive relief is dictated by the extent of the violation established, and an injunction must be narrowly tailored to remedy the specific action necessitating the injunction. Federal Rule of Civil Procedure 65(d) requires specificity in framing injunctions so that those enjoined will know what conduct the court has prohibited").

Because HMIT seeks a grossly overbroad preliminary injunction to prevent the alleged fraudulent transfer of assets before the entry of judgment—exactly the same type of relief that *Grupo Mexicano* and its progeny hold is improper—the Court should deny HMIT's Motion.

### C.    There Is No Emergency to Address by Temporary Injunctive Relief in this Four-Year-Old Case

HMIT's Motion also should be denied because it comes way too late.  It is well-settled that emergency injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008).  HMIT appears to agree,[23] yet HMIT fails to identify any emergency warranting the injunctive relief it seeks.

This adversary proceeding has been pending for approximately four years and was actively litigated for nearly a year and a half before the Court stayed proceedings.  The facts underlying most of the claims in the Amended Complaint go back even further. *See generally* Dkt. 158. In all

---

[23] The Motion is styled as an emergency motion.

that time, the Litigation Trustee never sought emergency injunctive relief, nor made any argument that such relief was necessary to protect an eventual judgment.  HMIT's Motion does not explain why there is an emergency now—other than to invoke actions involving non-parties and entirely new allegations and claims, which as set forth above is inappropriate.

It is well-settled that "delay in seeking a remedy is an important factor bearing in the need for" emergency relief.  *Massimo Motor Sports LLC v. Shandong Odes Indus. Co.*, 2021 WL 6135455, at *2 (N.D. Tex. Dec. 28, 2021) (quoting *Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, 2006 WL 1540587, at *4 (N.D. Tex. June 6, 2006)).  Indeed, a "substantial period of delay . . . militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief."  *Id.* at *2.

Texas courts have consistently held that motions for temporary injunctive relief should be denied where the movant delayed for even a matter of months before seeking emergency relief. *See Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (denying equitable relief where party "waited three months before" seeking relief); *Gonannies, Inc. v. Goupair.com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (denying preliminary injunction where moving party delayed six months); *BuzzBallz, LLC. v. JEM Beverage Co.*, LLC, 2015 WL 3948757 (N.D. Tex. June 26, 2015) (citing six month delay as a "reason" to deny injunctive relief).

HMIT does not even attempt to explain why there is an emergency now, four years after the Kirschner complaint was filed, 16 months into active litigation, and when nothing new has occurred.  That alone precludes the requested relief.

### D.    HMIT Cannot Satisfy the Legal Standard for a Temporary Restraining Order

The Court should also deny HMIT's Motion because HMIT fails to satisfy any of the four prerequisites to be granted injunctive relief.  A temporary restraining order or preliminary injunction is appropriate only if (1) there is a substantial likelihood that the moving party will

prevail on the merits, (2) there is a substantial threat of irreparable injury, (3) the balance of harms

tips in the movant's favor, and (4) the public interest supports an injunction.  *See, e.g.*, *Pendergest-*

*Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 568-69 (5th Cir. 2010).

      The Fifth Circuit has "cautioned repeatedly" that such relief "should not be granted unless

the party seeking it has clearly carried the burden of persuasion on all four elements."  *Bluefield*

*Water Ass'n v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009) (emphasis added).  Failure to

establish any one of the elements results in denial of injunctive relief.  *Id.*  A "request for mandatory

relief . . . is particularly disfavored, and should not be issued unless the facts and law clearly favor

the moving party."  *Roark v. Individuals of Fed. Bureau of Prisons*, 558 Fed. App'x 471, 472 (5th

Cir. 2014).  The Fifth Circuit has explained that "it is inequitable to temporarily enjoin a party

from undertaking activity which he has a clear right to pursue." *Texas v. Seatrain Int'l, S. A.*, 518

F.2d 175, 180 (5th Cir. 1975).  Against this legal backdrop, it is clear that HMIT falls well short

of establishing a right to relief.

      Further, HMIT seeks the most extreme and disfavored type of injunctive relief—a freeze

of Defendants' assets (and of the assets of many identified and unidentified others) and an order

preventing Defendants and their far-flung affiliates from making transfers.  But an asset-freezing

pre-judgment injunction is a "nuclear weapo[n] of the law" and a powerful vehicle of oppression

"susceptible of the grossest abuse." *Grupo Mexicano*, 527 U.S. at 329–330; *Matrix Partners*,

*Matrix Partners VIII, LLP*, 2008 U.S. Dist. LEXIS 124412, at *19 (citations omitted).  Because

HMIT cannot demonstrate that injunctive relief is even warranted, it is not entitled to use that

nuclear weapon here.

    **1.**    <u>**HMIT Cannot and Does Not Even Attempt to Demonstrate a Likelihood of Success on the Merits**</u>

      To show a likelihood of success on the merits, the plaintiff must establish "a prima facie

case" for its claims under "standards provided by substantive law." *Morris-Shea Bridge Co., Inc.*

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S
MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 20 OF 34

*v. Cajun Indus. LLC*, 2021 U.S. Dist. LEXIS 173783, at *5 (S.D. Tex. Feb. 22, 2021).  A prima facie case requires the movant to discuss the necessary "elements or requirements" applicable to its claims, especially where its claims involve "substantive laws of different states."  *Gray Cas. & Sur. Co. v. 3i Contracting, LLC*, 2024 WL 1121800, at *6 (N.D. Tex. Mar. 13, 2024) (movant failed to show substantial likelihood of success on the merits where motion "contain[ed] no discussion regarding which state law govern[ed]" contracts at heart of its claims).  Moreover, "sweeping statements regarding [the movant's] likelihood of success are insufficient.  *Id.*

There are 36 counts in the Amended Complaint, yet HMIT does not list any of their elements or explain why it can establish a prima facie case on any particular count.  HMIT appears to base its Motion on "claims for the avoidance and recovery of intentional and constructively fraudulent transfers under 11 U.S.C. §§ 544, 548, and 550, 26 U.S.C. § 6502, as well as Delaware and Texas law."  Brief in Support of Motion, Dkt. 379-1, at ¶¶18–19.  But this is where HMIT's analysis—if it can be called that—begins and ends.  HMIT does not discuss the elements of any of the fraudulent transfer claims, let alone how HMIT satisfies each element, nor does it discuss the differences between federal, Texas, and Delaware law.  That failure precludes any finding of a likelihood of success on the merits.

Nor can HMIT establish a prima facie case by a flimsy reference to "the Amended Complaint and documents cited therein," as it appears to believe.  *See* Brief in Support of Motion, Dkt. 379-1, at ¶ 19.  The Amended Complaint is not verified, and thus it is not competent evidence that may be used to support a motion for temporary injunctive relief.  *See Rouf v. Cricket Communs., Inc.*, 2013 WL 6073459, at *2 (S.D. Tex. 2013) (citing *Higareda v. U.S. Postal Serv.*, 5 F.3d 1495 (5th Cir. 1993) ("unverified complaint does not support a claim for injunctive relief").  Mark Patrick's purported verification of the Motion (but not the Amended Complaint) is no help because he has no personal knowledge of the events alleged in the Amended Complaint.  Neither

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S
MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 21 OF 34

he nor HMIT prepared the Amended Complaint, nor did the Litigation Trustee transfer its legal

privilege in the information underlying the Amended Complaint to HMIT as part of the HMIT

Settlement.  *See* Bankr. Dkt. 4271, Ex. 1 at 12, § 8(c).

Moreover, and shockingly, HMIT's Motion fails to address ***HMIT's own Motion to***

***Dismiss the claims in counts I–IX, XIV–XIX, XXII, XXIII, XXV–XXVI, and XXXII-XXXIII of***

***the Amended Complaint****. See* Dkt. 189, 190.[24]   HMIT's Motion was never withdrawn, and the

arguments contained therein fly in the face of any argument HMIT might make now that it is likely

to succeed on the merits of its claims.  In its Motion to Dismiss, HMIT argued that the following

claims should be dismissed:

- Counts I-II, XVII-XIX, XXII-XXIII, and XXXII-XXXIII on the basis that (i) the Amended Complaint fails to sufficiently plead allegations that would allow the Litigation Trustee to avoid the alleged fraudulent transfers prior to October 16, 2017, and even if it did, the Litigation Trustee cannot, at the very least, avoid transfers prior to October 15, 2017; and (ii) Fifth Circuit precedent does not support invoking the IRS golden-creditor rule to benefit from a ten-year look back period. Dkt. 189 at 11–13.

- Counts III-IX, XIV-XVII, and XXV-XXVI on the basis that the Litigation Trustee lacked standing to pursue those state law claims because the Plan failed to specifically and unequivocally reserve those claims.  *Id.* at 6-–7.

- Counts III-IX, XIV-XVII, and XXV-XXVI on the basis that the Bankruptcy Court lacks subject matter jurisdiction over those non-core state law claims.  *Id.* at 9–11.

- Counts IV-V and XIV-XVII on the basis that breach of the fiduciary duty claims fail because the respective partnership agreement precludes those claims and limits liability.  *Id.* at 15–17.  In addition, the aiding and abetting and conspiracy claims fail because there are no underlying tort claims and because the Amended Complaint fails to sufficiently plead those claims.  *Id.* at 18–19.

- Counts VI-IX on the basis that those declaratory judgment claims, which seek a determination that certain defendants are liable for the Debtor's debts, fail to allege plausible claims for relief.  *Id.* at 19–23.

- Count XXV on the basis that the Amended Complaint fails to sufficiently plead a viable conversion claim against James Dondero.  *Id.* at 23–24.

---

[24] The Motion to Dismiss filed by HMIT is Exhibit B in the Appendix.

- Count XXVI on the basis that unjust enrichment is not an independent cause of action under Texas law and the Amended Complaint fails to sufficiently allege a claim for money had and received under Texas law. *Id.* at 24–25.

HMIT also adopted and incorporated all the arguments made by the other defendants, including the Defendants opposing HMIT's current Motion: "The Amended Complaint alleges many similar allegations against defendants Mark A. Okada (and his family trusts), Scott Ellington, Isaac Leventon, NexPoint Advisors, L.P., and Highland Capital Management Fund Advisors, L.P. ***Defendants hereby incorporate by reference as if fully set forth herein the Motions to Dismiss filed by these defendants***." *Id.* at 6 n.7 (emphasis added). The other Defendants' Motions to Dismiss cover essentially every count in the Amended Complaint. Those Defendants argued that the following claims should be dismissed:

- Counts X-XI and XXVIII on the basis that the Bankruptcy Court lacks subject jurisdiction over those non-core state law claims. *See, e.g.*, Dkt. 183 at 4.

- All counts related to non-Estate Claims (as the term is defined in the Highland's Fifth Amended Plan of Reorganization (as Modified)) on the basis that the Litigation Trustee lack standing because the assignment of claims from the Claimant Trust to the Litigation Sub-Trust was ineffective. *Id.* at 5; Dkt. 173 at 7–9; Dkt. 175 at 5.

- Counts X-XI on the basis that the Amended Complaint fails to sufficiently plead alter ego claims under Delaware law. Dkt. 183, at 6.

- Counts XII-XIII on the basis that the fraudulent transfer claims are time barred under state law and invoking the IRS golden-creditor rule is inconsistent with the Bankruptcy Code and Fifth Circuit precedent. *Id.* at 7–13.

- Counts XV-XVI on the basis that the claims for conspiracy to breach fiduciary duties are time-barred. *Id.* at 15-–17.

- Count XXVIII on the basis that claims for unjust enrichment and money had and received fail under Texas law because there are applicable contracts that govern the dispute and the money had and received claim is time-barred. *Id.* at 24–25.

This should be the stopping point in the Court's analysis as to whether the claims at issue have a likelihood of success, and the injunctive relief sought by HMIT in the Motion should be denied.

### 2.    __HMIT Should Be Estopped from Arguing that it Has a Likelihood of Success on the Merits of the Claims in this Proceeding.__

Because HMIT takes a completely contrary position in the Motion to those it took in its Motion to Dismiss, HMIT should be estopped from arguing that there is a likelihood of success on the merits with respect to the Motion or in any further motion or pleading in this adversary proceeding.

In *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), the Supreme Court explains that judicial estoppel applies when: (i) a party's later position is clearly inconsistent with its earlier position; (ii) the party has succeeded in persuading the court to accept the party's earlier position; and (iii) the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped. *Id.* at 750-51.

Defendants acknowledge that the second factor is not met here, since HMIT had not yet prevailed on the HMIT Motion to Dismiss. However, the Supreme Court has explained that the factors do not "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* To that end, the Fifth Circuit and other circuits do not strictly adhere to the above three factors and "numerous considerations may inform the doctrine's application in specific factual contexts." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (citing New Hampshire, 532 U.S. at 751); *Hall v. GE Plastic P. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003); *see also Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017) (the Eleventh Circuit, in some circumstances, employs a two-part test: "whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were "calculated to make a mockery of the judicial system"). That is because "[t]he doctrine of judicial estoppel is equitable in nature and can be invoked by a court to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding." *Love v.* 677 F.3d at 261.

__OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S__
__MOTION FOR TEMPORARY RESTRAINING ORDER__
CORE/3524885.0002/232171811.21

PAGE 24 OF 34

Indeed, the Fifth Circuit has affirmed the application of the doctrine of judicial estoppel even where the estopped party had not successfully asserted the inconsistent position in a prior proceeding**.** *See In Matter of Galaz*, 841 F.3d 316, 326 (5th Cir. 2016). In *Galaz*, there was no indication that a court previously accepted the party's inconsistent positions. 841 F.3d at 326; *Galaz v. Katona*, No. 5:14-CV-967, 2015 WL 5565266, at *14 (W.D. Tex. Sept. 21, 2015), *aff'd sub nom., In Matter of Galaz*, 841 F.3d 316 (5th Cir. 2016). Nonetheless, the Fifth Circuit agreed that judicial estoppel was proper based solely on the determination a party had previously taken the inconsistent positions in different pleadings filed in the underlying case. 841 F.3d at 326.

The same outcome should result here. HMIT, now as the assignee-plaintiff, was involved in the litigation as a *defendant* when it filed its motion to dismiss. It now has swapped roles and seeks to take wholly inconsistent positions to the detriment of the Defendants. As such, it should be judicially estopped from arguing that it is likely to prevail in the merits in any pleading filed in this proceeding or related proceedings.

At bottom, HMIT does not attempt to demonstrate a prima facie case on any claim asserted in the Amended Complaint, and there are numerous reasons why it cannot under the circumstances presented. Because HMIT cannot establish a likelihood of success on the merits, its Motion must be denied.

### 3.      There Is No Substantial Threat of Irreparable Injury to HMIT

To show irreparable harm sufficient to justify entry of preliminary injunctive relief, a moving party must prove that such injury is both "likely" and "imminent."  *Winter*, 555 U.S. at 22; *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient.").  Moreover, to be "irreparable," there must be "no other adequate legal remedy." *H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs.*, 2009 WL 1766095, at *3 (N.D. Tex. June 23, 2009);

---

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S**
**MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 25 OF 34

*Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975).  An irreparable harm is an extraordinary harm—one that cannot be fully-compensated by money damages.  *See Winter*, 555 U.S. at 22.

"Speculative injuries are not enough to satisfy this factor." 1A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1.  Courts are not to grant injunctive relief "simply to prevent the possibility of some remote future injury."  Rather, the plaintiff must show a "presently existing actual threat."  *See Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.*, 331 F. Supp. 3d 581, 603 (E.D. La. 2018) (citing 11A Wright & Miller, *Federal Practice and Procedure* § 2948.1) ("This risk of harm must be 'more than mere speculation'; 'a presently existing actual threat must be shown.'").  The Supreme Court has confirmed this standard, stating that its "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. "But clearly demonstrating irreparable injury is a heavy burden to overcome.  Plaintiffs' expressed 'fears' about the alleged 'risks' are not enough." *McRae v. ConnectDirect Online, Inc.*, 2025 WL 495347, at *7 (S.D. Miss. Feb. 13, 2025) (citing *Enter. Int'l*, 762 F.2d at 472).

Courts have previously found irreparably harm lacking in circumstances very similar to those presented here.  For example, in *Compass Bank v. Veytia*, a bank sought to enjoin any transfer of assets by defendants, arguing that without an injunction, there would be no money for the bank to recover after judgment.  2011 WL 13234883, at *3 (W.D. Tex. Sept. 21, 2011).  The court disagreed, explaining that an injunction is an extraordinary and drastic remedy that is not available any time a plaintiff is worried it may not be able to collect on its judgment.  *Id*.  Ultimately, the court denied the preliminary injunction because the bank failed to show irreparable harm.  In doing so, the court emphasized that a freeze of assets to protect a future judgment is not a proper purpose for an injunction.  *Id*.

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S
MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 26 OF 34

As in *Compass Bank*, HMIT speculates that money might not be available to pay its damages. HMIT does not proffer evidence to support its fears but, rather, relies on sweeping proclamations and conclusory statements that are insufficient to demonstrate any actual harm will befall it in the absence of injunctive relief. Indeed, HMIT mostly relies on allegations being made on "information and belief," which only underscores the speculative nature of the harm alleged. *See* Brief in Support of Motion, Dkt. 379-1, at ¶¶ 5, 16, 29, 46. Even more telling is HMIT's failure to allege or claim—whether on information and belief or otherwise—that it will be unable to recover on a judgment because Defendants will have insufficient assets available to satisfy a judgment.

Consequently, HMIT fails to carry its burden on the second factor.

## 4.    <u>The Balance of Harms Favors Defendants</u>

A preliminary injunction is an extraordinary remedy never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008). In each case, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill of Gambell*, 480 U.S. 531, 542 (1987). "The policy against the imposition of judicial restraints prior to an adjudication of the merits becomes more significant when there is reason to believe that the decree will be burdensome." *Winter v. Natural Res. Def. Council*, 555 U.S. at 27 (internal quotations omitted).

HMIT gives short shrift to this factor in its injunctive relief analysis. HMIT merely speculates there is a "risk" that it may not be able to recover on its claims. Brief in Support of Motion, Dkt. 379-1, at 19. A risk by its nature is a *possibility* that something may or may not happen, meaning that the outcome is just as likely not to occur.[25] Again, HMIT offers no evidence

---

[25] The term "risk" is defined as the "possibility of loss or injury." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/risk.

or other support for its claimed fear.  For example, there are no allegations that the Defendants are insolvent or would be unable to pay a judgment unless an injunction issues.

On the other hand, as HMIT acknowledges, there is grave potential harm to Defendants if this Court grants the requested relief, particularly given that certain of the Defendants act as asset managers or hedge funds whose business operations "frequently involve financial transactions in the millions of dollars or more."  Motion, Dkt. 379, at 2.  By asking the Court to enjoin Defendants from making transfers of any kind, HMIT seeks to prevent Defendants from conducting their business at all.  The harm that would befall Defendants under those circumstances is not speculative.  It would be immediate, pervasive, and irreparable, with far-flung consequences not just for Defendants but for third-party investors who rely upon Defendants to manage their funds and make timely and appropriate distributions.

If that were not enough to deny the relief sought, the Motion seeks not only to prohibit transfers by Defendants in this action, but also to prohibit transfers by non-parties like Skyview Group Inc. *See* Proposed Order, Dkt. 379-3, at ¶1 n.1. The Motion does not cite any fact in evidence or case law that would permit that type of relief, much less address the harms that might befall those non-parties if injunctive relief issued.

In light of the above considerations, the balance of harms clearly weighs against the issuance of an injunction, and HMIT's Motion fails on this ground as well.

## 5.    <u>There Is No Public Interest that Supports Granting the Requested TRO</u>

Plaintiffs bear the burden to show that if granted, a preliminary injunction would not be adverse to the public interest.  *Star Satellite, Inc. v. Biloxi*, 779 F.2d 1074, 1079 (5th Cir. 1986). If no public interest supports granting preliminary relief, such relief should ordinarily be denied, even if the public interest would not be harmed by one.  *Stone v. Ozcelebi (In re Ozcelebi)*, 2022 Bankr. LEXIS 1375, at *17–18 (Bankr. S.D. Tex. May 13, 2022) (internal citations omitted).

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S**
**MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 28 OF 34

HMIT's argument in support of this factor amounts to nothing more than HMIT's own self-serving statement that it is in the public interest to protect HMIT. Brief in Support of Motion, Dkt. 379-1, at ¶ 54. But granting extraordinary relief sought solely to protect HMIT (from a situation that it chose to insert itself into) does not serve the greater good.

HMIT relies on a case stating that "injunctions facilitating reorganizations serve the public interest." *Id.* (quoting *In re FiberTower Network Servs. Corp.*, 482 B.R. 169, 189 (Bankr. N.D. Tex. 2012)). But this litigation is no longer related to a reorganization or even a bankruptcy. Any judgment or recovery by HMIT will not flow to a group of creditors or increase the value of Highland's bankruptcy estate. The sole party that stands to gain from the lawsuit is HMIT. And HMIT chose to take on all the risks attendant to this litigation by virtue of the deal it struck with the Litigation Trustee to acquire the claims at issue. It is not in the public interest to protect a party from its own conduct and decisions. This factor, as with the other three, has not been satisfied.

### E.    HMIT Must Post a Substantial Bond to Protect Defendants if Injunctive Relief Is Granted

If the Court grants HMIT's request for a temporary restraining order against Defendants, such relief must be conditioned upon HMIT posting a bond to protect Defendants. Given the massive damage that will be done to Defendants' businesses and personal lives, such a bond must be in a substantial amount—potentially hundreds of millions of dollars—to safeguard Defendants.

Under Rule 65(c), courts may impose a bond "in such sums as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The amount of a bond is a determination that rests within the sound discretion of a trial court." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006). "The purpose of a bond is to assure the enjoined party that it may readily collect damages in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the applicant, and it provides the plaintiff

with notice of the maximum extent of its potential liability." *Turnkey Offshore Project Servs., LLC v. JAB Energy Sols., LLC*, 2021 U.S. Dist. LEXIS 149733, at *39 (E.D. La. Aug. 10, 2021) (citing *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 379 (5th Cir. 2008)).

"In determining an appropriate bond to maintain the preliminary injunction granted in this case, this Court agrees that in commercial actions, 'when setting the amount of security, district courts should err on the high side.'" *Scanvec Amiable Ltd. v. Chang*, 2002 U.S. Dist. LEXIS 22261, at *11 (E.D. Pa. Oct. 24, 2002) (citing *Mead Johnson & Co. v. Abbott Lab.*, 201 F.3d 883, 888 (7th Cir. 2000)).

The Motion already acknowledges that a core part of Defendants' various business relies on engaging in numerous transactions on behalf of investors and themselves. Motion, Dkt. 379, at p. 2. Preventing Defendants from transferring funds would essentially bring their operations to a halt and could cause hundreds of millions of dollars in damage. The proposed order applies to any type of transfer or transaction involving Defendants or other parties:

> Defendants shall be temporarily restrained and enjoined from transferring, selling, liquidating, dissipating, assigning, alienating, tampering with, withdrawing, concealing, mortgaging, encumbering, granting a lien or security interest or other interest in, or otherwise harming or reducing the value of, or disposing of, any funds or other assets under the Defendants' individual or joint control including, among other things, their subsidiaries, businesses, physical assets, real property, cash, and equity interests

Proposed Order, Dkt. 379-3, at ¶ 1. And as set forth above, "Defendants" is defined broadly to include parties well beyond the parties to this adversary proceeding.[26] HMIT even seeks to make

---

[26] *See* fn. 22, *supra*. Further, as the court is aware, the Defendants have a complicated corporate structure that includes at least hundreds of entities. The court has even referred to it as "byzantine." *Highland Capital Mgmt., L.P. v. Dondero (In re Highland Capital Mgmt., L.P.)*, Adv. Pro. No. 20-03190-sgj, 2021 Bankr. LEXIS 1533, at *8 (Bankr. N.D. Tex. June 7, 2021). As a result, the court required the Defendants and others to make additional disclosures in the main bankruptcy case, as set forth in the responses to the *Order Requiring Disclosures*. *See* Bankr. Dkt. 2460, 2539, 2543, 2544 2546. 2547, and 2549 (App'x, Ex F).

Defendants provide a record of every "past, current or planned transaction" in which they have transferred an asset. *Id.* at ¶ 5.

If the grossly overly broad injunctive relief is granted, HMIT must post a bond to account for the massive damages it will cause Defendants. And such a bond must not be made from the funds of HMIT that are subject to the Consent Order issued by The Grand Court of The Cayman Islands Financial Services Division on July 31, 2025.[27] That Order restricts the use by HMIT's manager, Mr. Patrick, of the over $250 million stolen from the companies established to support the charitable legacy Mr. Dondero and certain other Defendants funded. Further, any injunctive relief to be awarded should await the posting of the requisite bond.

## III.   CONCLUSION

For all the foregoing reasons. Defendants respectfully request that the Court (i) deny HMIT's Motion; and (ii) provide such further relief as is warranted.

---

[27] *See* Consent Order issued by The Grand Court Of The Cayman Islands Financial Services Division on July 31, 2025, ordering certain entities, including HMIT, "not to transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares of the CDM Entities outside of the ordinary course of business." A copy of the Consent Order is submitted with this response as App'x, Exhibit C. The term "CDM Entities" as used in the Consent Order includes HMIT, which is a subsidiary of Beacon Mountain, LLC, which is a subsidiary of CLO Holdco, LLC, which is itself a subsidiary of CLO Holdco Ltd. *See* Bankr. Dkt. 4313, June 25, 2025 Hr'g Tr. at 173–174. Excerpts of that transcript are attached as App'x, Exhibit D. A Rule 11 agreement to the same effect was entered in the Texas Business Court. *See* App'x, Exhibit E.

entPage 41 of 43   Desc Main
Document     Page 41 of 43

October 6, 2025

Respectfully submitted,

**STINSON LLP**
*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
deborah.deitschperez@stinson.com
michael.aigen@stinson.com

*Counsel for Defendants NexPoint Advisors, L.P. and NexPoint Asset Management, L.P. f/k/a Highland Capital Management Fund Advisors, L.P.*

/s/ Amy L. Ruhland
Amy L. Ruhland
Texas Bar No. 24043561
amy.ruhland@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
401 W 4th Street, Suite 3200
Austin, TX 78701
(512) 580-9600

*Attorneys for James Dondero, The Dugaboy Investment Trust, Get Good Trust, and The Strand Advisors, Inc.*

/s/Debra A. Dandeneau
Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Michelle.hartmann@bakermckenzie.com

And

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 32 OF 34

Debra A. Dandeneau
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Debra.dandeneau@bakermckenzie.com
Blaire.cahn@bakermckenzie.com
(Admitted pro hac vice)

*Counsel for Scott Ellington and Isaac
Leventon*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on Ocotber 6, 2025, a true and correct copy of this

document was served electronically via the court's CM/ECF system.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez

**OPPOSITION TO HUNTER MOUNTAIN INVESTMENT TRUST'S**
**MOTION FOR TEMPORARY RESTRAINING ORDER**
CORE/3524885.0002/232171811.21

PAGE 34 OF 34