Deborah Deitsch-Perez
Michael P. Aigen
**STINSON LLP**
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
deborah,deitschperez@stinson.com
michael.aigen@stinson.com

*Counsel for Defendant NexPoint Advisors, L.P.
and NexPoint Asset Management, L.P.
f/k/a Highland Capital Management Fund
Advisors, L.P.*

Debra A. Dandeneau (Admitted pro hac vice)
Blaire Cahn (Admitted pro hac vice)
**BAKER & MCKENZIE LLP**
452 Fifth Ave New York, NY 10018
Telephone: 212-626-4100
debra.dandeneau@bakermckenzie.com
blaire.cahn@bakermckenzie.com

*Counsel for Scott Ellington and Isaac Leventon*

Amy L. Ruhland
Ryan J. Sullivan
**PILLSBURY WINTHROP SHAW
PITTMAN LLP**
401 W 4th Street, Suite 3200
Telephone: (512) 580-9600
amy.ruhland@pillsburylaw.com
ryan.sullivan@pillsburylaw.com

*Counsel for Defendant James Dondero, The
Dugaboy Investment Trust, Get Good Trust,
and Strand Advisors, Inc.*

Michelle Hartmann
State Bar No. 24032402
**BAKER & MCKENZIE LLP**
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
michelle.hartmann@bakermckenzie.com

*Counsel for Scott Ellington and Isaac
Leventon*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.,**<br><br>    **Reorganized Debtor.** | **Chapter 11**<br><br>**Case No. 19-34054-sgj11** |
| **MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY** | **Adv. Pro. No. 21-03076-sgj** |

INVESTMENT TRUST; GET GOOD TRUST AND
GRANT JAMES SCOTT III, AS TRUSTEE OF GET
GOOD TRUST; HUNTER MOUNTAIN INVESTMENT
TRUST; MARK & PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS
TRUSTEE OF MARK & PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1; MARK & PAMELA
OKADA FAMILY TRUST – EXEMPT TRUST #2 AND
LAWRENCE TONOMURA IN HIS CAPACITY AS
TRUSTEE OF MARK & PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.;
CHARITABLE DAF HOLDCO, LTD.; CHARITABLE
DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION;
RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL,
LLC; MASSAND CAPITAL, INC.; SAS ASSET
RECOVERY, LTD.; AND CPCM, LLC,

        **Defendants.**

## APPENDIX TO DEFENDANTS' OPPOSITION TO
## PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S
## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants NexPoint Advisors, L.P., NexPoint Asset Management, L.P. f/k/a Highland

Capital Management Fund Advisors, L.P., James Dondero, The Dugaboy Investment Trust, Get

Good Trust, Strand Advisors, Inc., Scott Ellington, and Isaac Leventon (collectively, the

"Defendants") file this *Appendix in Support of Defendants' Opposition to Plaintiff Hunter*

*Mountain Investment Trust's Emergency Motion for Temporary Restraining Order.*

## <u>TABLE OF CONTENTS</u>

| Exhibit Letter | Description | Appendix Pages |
|---|---|---|

A.  Hearing Transcript from the September 3, 2025 hearing ...........................A-1—A-35

B.  HMIT's *Motion to Dismiss* filed July 12, 2022 ..........................................B-1—B-44

C.  The Grand Court Of The Cayman Islands Financial Services Division's *Consent Order* issued on July 31, 2025 ......................................................C-1—C-17

D.  Hearing Transcript excerpts from the June 25, 2025 hearing in Bankruptcy Case No. 19-34054.......................................................................................D-1—D-8

E.  Letter dated July 11, 2025 regarding Rule 11 Agreement ...............................E-1—E-5

F.  Get Good Trust's Disclosures in Response to Order Requiring Disclosures in Bankruptcy Case No. 19-43054, Dkt. 2546.................................................... F-1—F-8

G.  CLO HoldCo, Ltd, Charitable DAF Fund, LP, Highland Dallas Foundation, Inc.'s Disclosures in Response to Order Requiring Disclosures in Bankruptcy Case No. 19-43054, Dkt. 2547....................................................................G-1—G-35

H.  NexPoint Real Estate Partners, *et al*, and Highland Capital Management Services' Disclosures in Response to Order Requiring Disclosures in Bankruptcy Case No. 19-43054, Dkt. 2544.......................................................................H-1—H-8

I.  Highland Funds I, *et al*., Disclosures in Response to Order Requiring Disclosures in Bankruptcy Case No. 19-43054, Dkt. 2539.................................................I-1—I-17

J.  Next Point Advisors, L.P. and Highland Capital Fund Advisors, L.P.'s Disclosures in Response to Order Requiring Disclosures in Bankruptcy Case No. 19-43054, Dkt. 2543............................................................................................................J-1—J-9

K.  Dugaboy Investment Trust's Disclosures in Response to Order Requiring Disclosures in Bankruptcy Case No. 19-43054, Dkt. 2548 .........................K-1—K-10

Dated: October 6, 2025                      Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas State Bar No. 24036072
Michael P. Aigen
Texas State Bar No. 24012196
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for Defendants NexPoint Advisors,
L.P. and NexPoint Asset Management, L.P.
f/k/a Highland Capital Management Fund
Advisors, L.P.*

/s/ Amy L. Ruhland
Amy L. Ruhland
Texas Bar No. 24043561
amy.ruhland@pillsburylaw.com
PILLSBURY WINTHROP SHAW
PITTMAN LLP
401 W 4th Street, Suite 3200
Austin, TX 78701
(512) 580-9600


*Attorneys for James Dondero, The Dugaboy
Investment Trust, Get Good Trust, and The
Strand Advisors, Inc.*

/s/Debra A. Dandeneau
Michelle Hartmann
State Bar No. 24032402
BAKER & MCKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
Blaire Cahn
BAKER & MCKENZIE LLP
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Debra.dandeneau@bakermckenzie.com
Blaire.cahn@bakermckenzie.com
(Admitted pro hac vice)
*Counsel for Scott Ellington and Isaac Leventon*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 6, 2025, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing system to the parties that are registered or otherwise entitled to receive electronic notices in this case.

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez

# **<u>EXHIBIT A</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| In Re: | ) | **Case No. 19-34054-sgj-11** |
|  | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL | ) | Dallas, Texas |
| MANAGEMENT, L.P., | ) | September 3, 2025 |
|  | ) | 11:00 a.m. Docket |
|     Reorganized Debtor. | ) |  |
|  | ) |  |
|  | ) |  |
| KIRSCHNER, et al., | ) | **Adversary Proc. 21-3076-sgj** |
|  | ) |  |
|     Plaintiffs, | ) | MOTION FOR LEAVE TO |
|  | ) | SUBSTITUTE PLAINTIFF FILED |
| v. | ) | BY PLAINTIFF MARC KIRSCHNER |
|  | ) | [357] |
| DONDERO, et al., | ) |  |
|  | ) |  |
|     Defendants. | ) |  |
|  | ) |  |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

For the Plaintiff:      Robert Scott Loigman
                     QUINN EMANUEL URQUHART & SULLIVAN,
                      LLP
                     295 5th Avenue
                     New York, NY  10016
                     (212) 849-7000

For Hunter Mountain     Sawnie A. McEntire
Investment Trust:       Ian Salzer
                     PARSONS MCENTIRE MCCLEARY, PLLC
                     1700 Pacific Avenue, Suite 4400
                     Dallas, TX  75201
                     (214) 237-4300

For James Dondero,      Ryan J. Sullivan
et al.:                   PILLSBURY WINTHROP SHAW PITTMAN, LLP
                     401 W 4th Street, Suite 3200
                     Austin, TX  78701
                     (512) 580-9655

```
1    APPEARANCES, cont'd.:

2    For Scott Ellington and        Debra A. Dandeneau
     Isaac Leventon:                BAKER & MCKENZIE, LLP
3                                   452 Fifth Avenue
                                    New York, NY  10018
4                                   (212) 626-4875

5    For Highland Capital           Deborah Rose Deitsch-Perez
     Management Fund Advisors,      STINSON, LLP
6    LP and NexPoint Advisors,      2200 Ross Avenue, Suite 2900
     LP:                           Dallas, TX  75201
7                                   (214) 560-2201

8    Recorded by:                   Michael F. Edmond, Sr.
                                    UNITED STATES BANKRUPTCY COURT
9                                   1100 Commerce Street, 12th Floor
                                    Dallas, TX  75242
10                                  (214) 753-2062

11   Transcribed by:                Kathy Rehling
                                    311 Paradise Cove
12                                  Shady Shores, TX  76208
                                    (972) 786-3063
13

14

15

16

17

18

19

20

21

22

23

24

25          Proceedings recorded by electronic sound recording;
                 transcript produced by transcription service.
```

3

1                DALLAS, TEXAS - SEPTEMBER 3, 2025 - 11:02 A.M.

2                THE CLERK:  All rise.  The United States Bankruptcy

3    Court for the Northern District of Texas, Dallas Division, is

4    now in session, the Honorable Stacey Jernigan presiding.

5                THE COURT:  Good morning.  Please be seated.

6                MR. MCENTIRE:  Good morning.

7                THE COURT:  All right.  We have a setting this

8    morning in the adversary, Kirschner, et al. versus Dondero, et

9    al., Adversary 21-3076.

10        This is a setting on a motion for substitution of the

11   Plaintiff in the adversary.  So I will take appearances, first

12   in the courtroom.

13               MR. MCENTIRE:  Your Honor, Sawnie McEntire and Ian

14   Salzer on behalf of Hunter Mountain Investment Trust.

15               THE COURT:  All right.  Thank you.

16        We have other folks on the video.  We had a few objectors.

17   First, before that, I see Mr. Loigman.  Would you like to make

18   your appearances?

19               MR. LOIGMAN:  Yeah.  Yeah.  Thank you, Your Honor.  I

20   appreciate that.  Robert Loigman of Quinn Emanuel on behalf of

21   Marc Kirschner as the Litigation Trustee of the Highland

22   Litigation Subtrust.  And we are, of course, the co-movant on

23   this motion.

24               THE COURT:  All right.  Now I will hear from the

25   objectors.  Ms. Deitsch-Perez, I see your video.  Would you

4

1    like to appear?

2         MS. DEITSCH-PEREZ:  Yes.  Good morning, Your Honor.

3    This is Deborah Deitsch-Perez from Stinson.  We're here on

4    behalf of the Advisor Objectors, NexPoint and HCMFA.

5         THE COURT:  Okay.  Thank you.

6      All right.  Ms. Dandeneau, who do you appear for today?

7         MS. DANDENEAU:  Good morning, Your Honor.  Debra

8    Dandeneau from Baker & McKenzie.  I'm here on behalf of the

9    Individual Defendants, Scott Ellington and Isaac Leventon.

10        THE COURT:  All right.  Thank you.

11     All right.  Mr. Sullivan, I see your video on.  Who would

12   you like to appear for?

13        MR. SULLIVAN:  Good morning, Your Honor.  Ryan

14   Sullivan from Pillsbury for James Dondero, Dugaboy Investment

15   Trust, GetGood Trust, and Strand.

16        THE COURT:  Okay.  Thank you.  Does that cover all of

17   our appearances?

18      All right.  Well, as I said, we have a motion to

19   substitute the Plaintiff party.  I'll note for the record that

20   we are in an adversary proceeding that has been stayed or

21   abated since April 4th, 2023.  It's never been unstayed,

22   although we have had some ministerial activity that has

23   occurred, and I guess at least one settlement, of the Okada

24   Defendants.  We have a lot of Defendants in this one.

25      All right.  So all we have today is a motion to substitute

5

1    under Rule 25(c).  So I will hear from the co-movants.

2              MR. MCENTIRE:  May it please the Court?

3              THE COURT:  Yes.

4              MR. MCENTIRE:  My name is Sawnie McEntire.  Again,

5    for the record, I represent Hunter Mountain Investment Trust,

6    who is the assignee of the claims that this Court approved as

7    part of the settlement back in June, I think by court order

8    dated June 30th.

9        My client became the assignee transferee of the claims

10   that had been prosecuted by the Litigation Subtrust, Mr.

11   Loigman's client.

12       At the outset, we have filed a witness list and exhibit

13   list.  Our exhibits are 1 through 6.  They're all matters of

14   record in these proceedings on the docket, including the

15   settlement document, your orders, two of your orders approving

16   the settlement, a motion and the order granting an extension

17   on the term of the duration of the Litigation Subtrust, and

18   also your Report and Recommendations which will be visited

19   here today concerning the withdrawal of the reference that you

20   entered on April 6, 2022, as well as the United States

21   District Court's order in connection with the abatement of the

22   federal court proceedings pending your pretrial rulings and

23   the developments in this case, subject to the stay, of course.

24       Your Honor, I have a brief PowerPoint I'd like to present.

25   And if you'd go on to the next slide.

6

1            MS. DEITSCH-PEREZ:  I apologize, Your Honor.  I just

2    wanted to say we have no objection to the exhibits.  I didn't

3    hear Mr. McEntire mention the affidavit of Mr. Demo with the

4    attached settlement.  I wanted to make sure that was still an

5    exhibit, because we would move it in if it wasn't.

6            MR. MCENTIRE:  It is.  It's our Exhibit No. 1 that

7    contains and attaches the settlement agreement that the Court

8    approved.

9            THE COURT:  All right.  Well, you asked me to take --

10           MS. DEITSCH-PEREZ:  Thank you.

11           THE COURT:  -- judicial notice of all of these items

12   on the docket.  So I guess, to be clear, I'll take judicial

13   notice.

14      It seems like a lot for a motion to substitute.  For

15   example, the motion to withdraw the reference, I'm sure we'll

16   talk about it at some point, but that's not what is --

17           MR. MCENTIRE:  Well, --

18           THE COURT:  It's not a renewed setting on that.

19   Okay?

20           MR. MCENTIRE:  That is -- you've -- you summarized my

21   entire argument.

22           THE COURT:  Oh.

23           MR. MCENTIRE:  Your Honor, this is a real simple

24   motion under Rule 25.  The assignment of the claims to my

25   client does not result in an amendment of the lawsuit.  My

7

1  client steps into the shoes of the Litigation Subtrust.  It

2  should be as easy as that.

3      Go to the next slide, please, Ian.

4      In fact, their response and their objection, they don't

5  challenge the assignment.  There's nothing in their papers

6  that Ms. Deitsch-Perez filed that challenges the assignment.

7  There's no challenge that my client is now the real party in

8  interest.  There's no challenge under Rule 25(c) for

9  substitution.  The case law is clear that the proceedings move

10  along unabated, subject obviously to the stay that is pending,

11  which we will be giving notice to lift.

12      And so, really, their paper, in terms of their objection,

13  was not responsive at all to the motion.  They don't take

14  issue with the singular purpose of this exercise, which is to

15  substitute us in pursuant to Rule 25(c).  Rather, they go off

16  on other areas and other issues, but they don't have a motion

17  before the Court.  Nor did they file anything with the United

18  States District Court, asking the District Court to unabate

19  this proceeding so they could raise these issues with that

20  court.

21      So, really, they have not joined issue with anything in

22  our motion for substitution.  That's just as plain and simple

23  as that.  They, rather, are trying to rehash an argument

24  that's really not before the Court.  There's no formal motion

25  to reconsider your recommendations and your findings back in

1   April of 2022.  You did withdraw the reference for trial, but

2   you retained --

3           THE COURT:  I recommended --

4           MR. MCENTIRE:  Yes, that's correct, --

5           THE COURT:  -- withdrawal of the reference.

6           MR. MCENTIRE:  -- you recommended that, but you

7   retained -- you recommended to retain jurisdiction over

8   pretrial matters such as this.  This is perhaps one of the

9   most simple pretrial matters there could possibly be under

10  Rule 25(c).

11      I find it also compelling that in their briefing they do

12  cite two cases, which have been superseded by Fifth Circuit

13  precedent in the *Double Eagle* case, clearly, a case that Ms.

14  Deitsch-Perez could have located.  It's almost on all fours

15  with what we're dealing with here.  And it stands for the

16  proposition that jurisdiction is determined at the outset of

17  the lawsuit and the claims that were existing at the outset of

18  the lawsuit, not by something that is as ministerial as the

19  substitution of an assignee into the Plaintiff's shoes.  And

20  that's all this is.

21      They also ignored Supreme Court precedent, as recently as

22  a case that was decided by the U.S. Supreme Court in January

23  of this year.  And it is a case that we cited in our brief, in

24  a footnote, because the Supreme Court in that particular case,

25  it's the *Royal Canin* case, January of 2025, had to do with a

1  dismissal of federal claims.

2      The case was removed to federal court.  The plaintiff

3  really wanted the case remanded, so he dismissed the federal

4  court claims and all he had was state law -- state common law

5  claims.  And the Court basically found no jurisdiction, but

6  made it very clear in a footnote, in its Footnote No. 6, that

7  that doesn't apply to the substitution of parties, because the

8  substitution of parties is governed by what's called the First

9  Time Rule.  When -- the timing of the original pleadings, of

10  the original claims.

11      We're not dealing with a change or an amendment of the

12  relief being sought.  We're not seeking at this time any

13  change to the claims substantively.  All we're doing is simply

14  stepping into the shoes of the Litigation Subtrustee.

15      Next.  Next chart, please.  So here is the -- Rule 25 is

16  procedural only.  Let me -- okay.  There we go.  This is the

17  essence of their objection.  Again, I don't think they've

18  joined issue.  If they think they've joined issue, they

19  haven't, and they have other redress.  They can file something

20  in the United States District Court.  Or they could file a

21  proper motion, which they haven't done.  So I think, right

22  there, this inquiry could stop and the Court could grant our

23  substitution without further delay.

24      Next.  This is simply a procedural matter.  And this is a

25  case that we cited in our briefing, in our reply brief.  Rule

1   25(c) is not designed to create new relationships among the

2   parties.  It was designed to allow the action to continue

3   unabated, unabated, when an interest in the lawsuit changes

4   hands.  And that's what we're talking about here, plain and

5   simple.

6       The *Double Eagle* case is the Fifth Circuit case that Ms.

7   Deitsch-Perez and other objecting parties totally

8   ignored.  It's decided in 2019.  The cases they cite were back

9   in the late '90s or the early 2006-2007 time frame.  Clearly,

10  this is the governing precedent for this Court.  The Time-of-

11  Filing Rule is dispositive.  It's hornbook law.

12      This particular case actually involved a debtor who

13  assigned claims to a creditor, and the objecting parties tried

14  to take a position that that destroyed jurisdiction.  And

15  under the Time-of-Filing Rule, the Fifth Circuit said no,

16  that's not correct.

17      And down at the lower cite, we have the Supreme Court

18  case:  Jurisdiction, once acquired, is not divested by a

19  subsequent change in the citizenship of the parties.  That is

20  the leading principle which the Fifth Circuit in *Double Eagle*

21  adopted and developed and applied in a bankruptcy

22  context.  The *Double Eagle* case is a bankruptcy case.

23      Next.  The federal court case, and that is a plaintiff's

24  and diversity case, transferred its interests in the

25  underlying contract in a dispute, in a pending lawsuit that

1   was filed.  The successor in interest substituted into the

2   lawsuit as a plaintiff under Rule 25(c), which we are trying

3   to do here.  The U.S. Supreme Court applied the well-

4   established rule, jurisdiction at the time the action is filed

5   is not divested by subsequent events.

6       So there's nothing about our substitution that would

7   support a challenge to the subject matter jurisdiction of this

8   Court, which has already been determined by this Court in its

9   recommendations to the United States District Court.

10      In that case, the trial court retained jurisdiction,

11  notwithstanding the transfer.  And this was reaffirmed, as I

12  mentioned a moment ago, in January of this year, in Footnote

13  No. 6.

14      Next.  The *Double Eagle* case, which I mentioned, which we

15  believe is dispositive, it's a Chapter 11 debtor.  He's sued

16  for breach of contract, gets sued for breach of

17  contract.  It's an oil and gas case.  The Bankruptcy Court

18  exercised related-to jurisdiction.  As I understand, that's

19  what this Court is doing in connection with its recommendations

20  to the United States District Court.

21      The debtor -- in this case, Double Eagle -- assigned its

22  claims to a creditor.  They argue that the assignment divested

23  the Bankruptcy Court of subject matter jurisdiction.  The

24  Fifth Circuit adopted the hornbook law of the Time-of-Filing

25  Rule.  That rule should be applied here.  There is no fact in

1    this matter that would distinguish the result from the result

2    found or held, obtained, in the *Double Eagle* case.

3        The two cases that Ms. Deitsch-Perez and others cited, the

4    *Cadle* case and the *Cataldi* case, were superseded.

5        There's another case.  Can you go back to the previous

6    chart?  All right.  Rule 25 does not create a backdoor

7    challenge to jurisdiction, and that's what they're trying to

8    do here, without a proper motion before the Court or the

9    United States District Court.  It very clearly indicated that

10   the *QuarterNorth* substitution as the plaintiff did not divest

11   the court of subject matter jurisdiction.  It was an adversary

12   proceeding.  It was designed, Rule 25 was designed to allow

13   the action -- in this case, the Kirschner action, to continue

14   unabated when an interest in the lawsuit changes.

15       Because the court had related-to jurisdiction pre-

16   confirmation, neither plan confirmation nor the plaintiff's

17   substitution divested the court of jurisdiction.  The court

18   maintains related-to jurisdiction over this post-confirmation

19   adversary proceeding.

20       Next.  This is the essence of the *QuarterNorth* case.  The

21   successor in interest substitution did not result in a

22   divestiture of jurisdiction.

23       This is part of your Report and Recommendations.  You had

24   concluded in Docket No. 151 that the Bankruptcy Court

25   concludes that the 36 counts in the Kirschner proceedings are

13

1    without -- pertain to the implementation, execution of the

2    plan.  That's because the plan actually envisioned and

3    contemplated the creation of the Litigation Subtrust to pursue

4    the estate claims, and that's what those claims are.  And all

5    they've done now and the only difference is they get assigned

6    to my client in a court-approved settlement.

7        What they're really trying to do is they're trying to

8    undermine the intent and the purpose of the settlement.  That

9    settlement has great benefits for the estate.  It was heralded

10   by Mr. Morris' firm as one of the greatest events in the

11   history of this bankruptcy proceeding.  It provides great

12   benefit.

13       The Litigation Subtrust duration expires again every year,

14   and was renewed until August of next year.  Well, this way, we

15   don't have to keep renewing it.  That's number one.

16       Number two, the estate saves money.  It doesn't have to

17   pay Mr. Loigman's client fees to continue to prosecute the

18   claim.  And it allowed Hunter Mountain and the estate and the

19   Claimant Trust to come together for the first time and resolve

20   their differences with the blessing of the Court.  And now

21   they're basically trying to do a backdoor challenge by

22   challenging the jurisdiction of this Court.

23       There's no reason to disturb your Report and

24   Recommendations.  You've already determined in your findings,

25   which I've read now a couple of times, that when this case is

14

1   certified by you as trial-ready, it goes up to the U.S.

2   District Court, goes over to the U.S. District Court.  We're

3   not amending the current claims.  These claims arise largely

4   from pre-confirmation conduct, as you found in your opinion,

5   in your order.  We're only dealing with the substitution of

6   parties.

7        In addition to the economies that benefit the estate, you

8   are already familiar with the parties.  You are already

9   familiar with the majority of these claims, perhaps all of the

10  claims.  So what we're really trying to do here is achieve

11  some efficiencies.  And your retention of pretrial matters and

12  jurisdiction over the proceeding is the greatest way to

13  enhance efficiency.

14       Starting all over again in the United States District

15  Court with motions to reconsider this or that is just going to

16  slow this process down, cause a lot of expense or wasted

17  resources.  And that's why I think it's important we resolve

18  this, if possible, today.

19       That is my presentation.  I know Mr. Loigman would like to

20  say a few words on behalf of the Litigation Subtrust.  Unless

21  the Court has any questions of me, I'll sit down.

22            THE COURT:  I do not.  Thank you.

23       Mr. Loigman, anything?  Let's try not to duplicate.

24  Anything you want to add?

25            MR. LOIGMAN:  Thank you, Your Honor.  I certainly

1   will try not to duplicate, and I'll try not to take more than

2   just a minute or two of your time.

3        There's really only three points that I wanted to hit upon

4   today, some of which Mr. McEntire has already hit upon, so

5   I'll do them summarily.

6        I think really the most important issue before the Court

7   today is that this is a Rule 25 motion to substitute a party.

8   The claims have been transferred to Hunter Mountain.  There's

9   no dispute about that.  That should be the end of the inquiry,

10  and that's exactly what Rule 25 is intended for.  It's a

11  simple procedural motion, and there's no challenge to the

12  procedural basis for the motion.

13       The second point, as Mr. McEntire referenced and as the

14  Court observed at the outset, is that Defendants are trying to

15  reargue the motions to withdraw the reference.  Your Honor has

16  already held that there is bankruptcy jurisdiction and

17  recommended that the Bankruptcy Court, though, will not make

18  final determinations of the claim.  Rather, the final

19  determinations will be for the District Court to have in a

20  trial.  This Court is handling pretrial matters only, in the

21  nature of a magistrate, as we discussed earlier, which is

22  wholly appropriate.  And the Defendants, in trying to re-raise

23  that Report and Recommendation, are making much ado about

24  nothing, really.

25       And the Defendants' argument, and this is the third point,

1    about jurisdiction -- last argument, anyway -- the Supreme

2    Court decisions in *Freeport-McMoRan v. K N Energy*, and of

3    course the very recent decision in the *Royal Canin* case, which

4    cites to that case in its Footnote 6, make absolutely clear

5    that the time of filing is used to determine jurisdiction, in

6    all events, in the substitution of a party, which is exactly

7    what's happening here.

8         So, to just return to where I started, again, this is a

9    Rule 25 motion to substitute a party.  Hunter Mountain now

10   owns the claims in this case and should be the party to assert

11   them.  The Litigation Trust, my client, in contrast, no longer

12   owns the claims.  It should not have the continuing expense,

13   expense to the Claimant Trust, of course, expense to the

14   estate, expense to Highland Capital, that would be visited

15   upon the Litigation Trust if it had to continue acting as a

16   party in this case, had to continue to act as the Plaintiff in

17   this case.

18        And that, Your Honor, I would submit should be the

19   beginning and the end of this inquiry.  This is perhaps a

20   quintessential transfer of claims, and therefore an

21   appropriate time to recognize the party that actually should

22   act as Plaintiff.

23        If Your Honor has any questions, I'd be happy to address

24   them.  Otherwise, happy to turn over the "podium" here.

25             THE COURT:  Okay.  No questions.  Thank you.

17

1        All right.  I'll ask Ms. Deitsch-Perez to go next since it

2    was really her objection, and we have a couple of joinders in

3    it but she actually penned the objection.  So, Ms. Deitsch-

4    Perez, what say you?

5        (Pause.)

6            THE COURT:  You're on mute.

7            MS. DEITSCH-PEREZ:  Can you hear now?

8            THE COURT:  Yes.  Thank you.

9            MS. DEITSCH-PEREZ:  Sorry, Your Honor.  I think Your

10   Honor hit on some of this this morning when you started to

11   talk about the procedural posture we were in.  And I think you

12   can tell from our objection that we were facing something of a

13   chicken-and-egg problem here.  Because we had argued in the

14   motion to dismiss and we had argued in the motion to withdraw

15   the reference that there was no jurisdiction and we believed

16   that events since then have caused that to be all the more so,

17   we asked ourselves, well, can this Court even decide the

18   motion to substitute, given those circumstances?

19        And then on top of that, this case and the District Court

20   case was stayed, and so we thought to ourselves, should we go

21   to the District -- and I think we mention it in the objection

22   -- should we go to the District Court and ask to reargue or to

23   rebrief the motion to withdraw the reference?

24        And by the way, none of the cases cited by HMIT and the

25   Litigation Trustee deal with whether or not you can consider

1    subsequent events in determining the motion to withdraw the

2    reference.

3        So, it is correct that our original thought was to go to

4    the District Court, and Mr. McEntire points out that we

5    haven't done that.  And the reason is we waited to see the

6    response and thought, is it really right to go to the District

7    Court and ask -- and rebrief the issues, without having first

8    asked this Court for the benefit of its thoughts on the real

9    circumstances on the motion to withdraw the reference.  And so

10   shouldn't we address those issues in front of this Court

11   first?  And as I said, none of HMIT's cases address that.

12       And as for jurisdiction, Hunter Mountain admits that it

13   relies on *Royal Eagle* [sic] and says it's relying on *Royal*

14   *Canin*, but *Royal Canin* actually proves the Defendants' point.

15   *Royal Canin* says three, four, maybe five times that changing

16   the parties is an amendment.  The plaintiff's change in the

17   parties is an amendment, and so you look at the changed

18   circumstances.

19       And it's pretty funny that they rely on the footnote,

20   because in *Royal Canin* the Court itself says, gee, people

21   shouldn't rely on footnotes, even in our cases, with respect

22   to matters not before it because those are not well-reasoned.

23   You should look at the text that is reasoned.

24       And what *Royal Canin* says is when there is what is

25   effectively an amendment -- and clearly this is an amendment

19

1  because Hunter Mountain is not a successor in interest, it's a

2  bare buyer of a claim, and all you have to do is look at the

3  settlement to see that.  Hunter Mountain does not succeed to

4  the privilege.  It's not getting any assistance from the

5  Litigation Trustee.  It just bought some claims.

6      And so even the language, if you look at *Royal Canin* and

7  look at Footnote 6, even the language there, which talks about

8  the time of filing applying to the substitution of a

9  defendant, because what they -- I think what they were worried

10 about is, well, what happens if in a case a defendant adds an

11 additional limited partner that breaks diversity, should that

12 really, particularly on the eve of trial, should that upend

13 anything?  Well, that's not the circumstance we have here.  Is

14 Hunter Mountain truly going to continue to pursue claims

15 against itself and its affiliates?  Clearly not.  This is --

16 this is, whatever you call it, it is an amendment.

17     So what we think should happen here is, notwithstanding

18 the chicken-and-egg problem, is if Your Honor allows Hunter

19 Mountain to become the Plaintiff, it should be considered an

20 amendment and Defendants should have all of the rights that

21 defendants have when there's amendment.  We will make a -- we

22 will work with the Plaintiff on the timing to put out a

23 schedule so as to not burden the Court with having to

24 determine that.  But to renew the motion to withdraw the

25 reference in light of the changed circumstances, and to renew

1   the motion to dismiss in light of the changed circumstances.

2   Because under *Royal Canin*, unlike *Double Eagle*, these changes

3   do matter.  And *Royal Canin* very clearly says change in the

4   party, that's an amendment, and the court should take

5   cognizance of it.

6       Because otherwise -- let me give you the simplest example.

7   Plaintiff brings a claim where the parties are diverse because

8   it wants to be in federal court, let's say, and federal court

9   had some favorable decisions, but the next day sells the

10  claims to a non-diverse party.  Is there really still

11  jurisdiction in that circumstance?  I don't think so.

12      This is not a classic successor in interest where truly a

13  party steps into the shoes of the other, where the attorney

14  general is booted out and there's a new attorney general, or a

15  trustee dies and another member of his firm takes over as

16  trustee, or where a corporation merges into another

17  corporation.  They are truly the successor.  They have the

18  assets.  They have the liabilities.  They are, for all

19  purposes, the same party.  That's not the case here.

20      So, Your Honor, I apologize that the relief we're

21  requesting was perhaps not entirely clear in our objection,

22  because we were still pondering the chicken-and-egg problem.

23  But we think the right answer here is for the Defendants to

24  have all of the rights that accrue when a complaint has been

25  amended.

21

1       And I see Ms. Dandeneau has jumped on, so if I have

2   forgotten something, please jump in and assist.

3       Thank you.

4           THE COURT:  Before that, I just want to be clear.

5   I'm hearing arguments relevant to a motion to withdraw the

6   reference, which, okay, I understand you're trying to set the

7   stage, I suppose, but we're here under 25(c).

8           MS. DEITSCH-PEREZ:  I understand --

9           THE COURT:  What is my argument on why I should not

10  apply 25(c)?

11          MS. DEITSCH-PEREZ:  Because, in fact, Hunter Mountain

12  is not a successor in interest.  It's just a claims buyer.

13  And so we're not saying you should not allow them to amend to

14  become the Plaintiff, but truly it is an amendment, not a

15  substitution under Rule 25.

16          THE COURT:  All right.  Thank you.

17      Ms. Dandeneau?

18          MS. DANDENEAU:  Thank you, Your Honor.  I think I

19  would answer that question in a slightly different way.  I

20  don't think that the concepts of amendment and substitution

21  are mutually exclusive.  You can have a substitution of

22  parties, as the Supreme Court recognized in *Royal Canin* -- and

23  whether it's *Canin* or *Canine*, I know that it's a pet food

24  company, so I kind of think it must be *Canine*.  But you can

25  have that -- you can have a substitution that constitutes an

1   amendment.  And the rules provide for many things that a

2   plaintiff can do with respect to its complaint.  Substitution

3   of a party -- in this case, substitution of a plaintiff -- is

4   one of those things.

5       I really wanted to note there has been talk about the

6   Supreme Court case *Royal Canin*, and I want to say what the

7   Supreme Court -- just one of the quotes about this from the

8   case.  And I invite Your Honor to look at this case if you

9   have not already done so.

10      The Supreme Court says, in a unanimous opinion, So changes

11  in parties or changes in claims effectively remake the suit,

12  and that includes its jurisdictional basis.  The

13  reconfiguration accomplished by an amendment may bring the

14  suit either newly within or newly outside a federal court's

15  jurisdiction.

16      So I don't view this as being about the motion to withdraw

17  the reference.  What I view this as is it's an amendment to a

18  complaint which would -- which, if true, would give us the

19  right to essentially respond anew to the complaint, either

20  through an answer or through a renewed motion to dismiss, and

21  for the Court to look at the jurisdictional basis anew as

22  referenced by the Supreme Court.

23      I would also note that, to the extent we're going to give

24  credence to the footnote referencing the *McMoRan* case, the

25  court refers to successor in interest.  And as Ms. Deitsch-

23

1    Perez pointed out, this is not a situation where there was a

2    business combination or even some kind of -- in *McMoRan*, what

3    happened was the court specifically noted that the plaintiff

4    had transferred its interest in the underlying contract that

5    was the subject of the dispute, not the claim, for business

6    purposes that were unrelated to the lawsuit.

7        So there was some business transaction that occurred that

8    had the effect of having the plaintiff -- having a new

9    plaintiff have an interest in the lawsuit.  This is very

10   different.

11       And so I think the answer -- the question is whether this

12   -- whether Hunter Mountain is a mere successor in interest

13   that would fall, again, if you ignore the very, very clear

14   language of the Supreme Court in *Royal Canine* or *Canin*, that

15   would fall within the scope of that very limited exception.

16       So, Your Honor, I just wanted to -- I would also say there

17   was some discussion about the settlement.  Nobody objected to

18   the settlement.  Certainly, my clients did not object to the

19   settlement.  The settlement is done.  We are not seeking to

20   undo the settlement, nor can we undo the settlement, and nor

21   can --

22           THE COURT:  I'm just going to clarify, there was an

23   objection to the settlement.  And now there's an --

24           MS. DANDENEAU:  Okay, Your Honor, --

25           THE COURT:  Now there is an appeal of the approval of

1   the settlement.

2           MS. DANDENEAU:  Yes, Your Honor.  I -- that's, Your

3   Honor, why I quickly corrected myself.  I apol...

4       My clients certainly did not object to the settlement.

5   But my point is that there's nothing that happens in this

6   lawsuit; going forward, nothing can undo the settlement.  That

7   is done, and we are not seeking in this lawsuit -- in anything

8   we do in this lawsuit to undo the effect of the settlement.

9       So, Your Honor, thank you for the time, and we join in the

10  objection.

11          THE COURT:  All right.  Thank you.

12      All right.  Who did I not hear from?  There was one more

13  joinder.  Mr. Sullivan, I think?

14          MR. SULLIVAN:  Yes.  We join in all the excellent

15  points raised by the esteemed Deborahs.

16          THE COURT:  Okay.  All right.  Any rebuttal?

17          MR. MCENTIRE:  Very brief, Your Honor.  Again, Sawnie

18  McEntire for the record.

19      I think a few things.  It's clear that they're not

20  challenging the Rule 25(c) substitution itself.  I didn't hear

21  anything in either of those two presentations to suggest that.

22  And that's the only thing before the Court.  That is the only

23  issue before the Court.

24      Footnote 6 in the canine *Canin* case is very clear that you

25  treat an assignment of an interest differently than adding in

1   a non-diverse party in a diversity jurisdiction case and

2   things of that nature.  Because when you assign a claim under

3   Rule 25(c), the assignee, the successor in interest, whatever

4   you want to call it, steps into the shoes of the original

5   plaintiff.  And that's what 25(c) is about.

6       If you indulge Ms. Deitsch-Perez in her argument, it

7   renders 25(c) a nullity.  There would be no purpose to it.

8       And I find it interesting that not once in any truly

9   substantive or meaningful way did either Ms. Dandeneau or Ms.

10  Deitsch-Perez address the *Double Eagle* case.  That was a case

11  where the debtor assigned it to a creditor.  It wasn't a

12  merger or an acquisition.  They assigned the claim to a

13  creditor.  And that is prevailing dispositive Fifth Circuit

14  precedent that this Court, I believe, respectfully, should

15  follow.

16      Because that is, that is precisely what's happened here.

17  Hunter Mountain was a Basket No. 10 contingent beneficiary.

18  This is a way of resolving years of litigation.  We're now an

19  assignee.  We're stepping into the shoes of the Litigation

20  Trustee.  And all they want is to delay, delay, and delay.

21  And I would respectfully request that the Court allow the

22  substitution at this time.

23      Thank you.

24          THE COURT:  All right.  Thank you.

25          MR. LOIGMAN:  Your Honor, it's Robert Loigman.

26

1          THE COURT:  Yes.

2          MR. LOIGMAN:  If I may add just one word?

3          THE COURT:  Uh, --

4          MR. LOIGMAN:  Thank you.

5          THE COURT:  Go ahead.

6          MR. LOIGMAN:  Thank you, Your Honor.

7      I agree with the points that Mr. McEntire made about the

8  jurisdictional points, and I won't revisit those.  I think

9  they're misreading the Supreme Court case law, which I think

10 is very clear.

11     But I think the most important point, at least from my

12 client's perspective -- that is, the Litigation Trust -- is

13 that Rule 25(c) clearly applies.  They haven't argued anything

14 to the contrary.

15     And there was some mention about whether you had to be a

16 successor in interest in a broader sense.  And Rule 25(c) is

17 very clear that's not the case for the rule to apply.  It says

18 if an interest is transferred.  And that is when Rule 25(c)

19 applies.  And here, that's exactly what's happened.  Interest

20 in these claims has been transferred.  And therefore it's

21 appropriate to change the Plaintiff in this action.

22     Thank you, Your Honor.

23          THE COURT:  All right.  Thank you.

24     All right.  As I indicated at the start of this hearing, I

25 do think there is a fairly simple matter before me today,

1  although I can tell things will soon get complicated.

2      Rule 25(c) obviously permits a substitution of a party if

3  an interest has been transferred, and that is precisely what

4  we have as the underlying facts here.  The Court approved a

5  settlement, Docket No. 4297, a few weeks ago, where, among

6  other things, the Litigation Trustee, Mr. Kirschner's claims

7  were transferred, conveyed, assigned to Hunter Mountain.

8      So I do think, pursuant to that settlement agreement,

9  Hunter Mountain is now the proper party in interest as

10  Plaintiff in this Adversary 21-3076, and so substitution will

11  be granted.

12      I note that a very short form of order was proposed, and I

13  think it is appropriate.  It simply addresses the substitution

14  and nothing else.  So I grant that motion.

15      I will say that, with this motion, there is much we have

16  to think about on the horizon.  And I'll start by saying that

17  the order abating this adversary proceeding or staying this

18  adversary proceeding which was entered April 4th, 2023 --

19  that's Docket No. 338; you're all familiar with it -- it is

20  still in place.

21      I didn't think that order prevented me from ruling on this

22  motion to substitute because this is administrative or

23  ministerial in nature, not a substantive ruling on claims or

24  defenses.  But that order staying this adversary provides, and

25  Mr. McEntire alluded to it, that any party who wishes to

1    resume the adversary must provide 30 days' written notice to

2    all other parties and the Court, and that's set forth in

3    Paragraph 1 of that order.

4        So I'm not doing anything else until that has happened, or

5    anything of a substantive nature, shall we say, until that

6    process happens.  It's just a notice.  It doesn't require an

7    order.

8        But what I'm thinking is, after that happens, at a

9    minimum, we need to have a status conference in this matter,

10   or a scheduling conference.  Now, that all may be superseded

11   by motions.  I don't know.  But I am envisioning that I would

12   need to do an amended or a supplement to the Report and

13   Recommendation to Judge Scholer, letting her, at a minimum,

14   know that there's no longer an abatement, and probably, at a

15   minimum, updating her with regard to the substitution of

16   party, Plaintiff, as well as letting her know what Defendants

17   and claims have been dropped.  And the only one I know of from

18   scanning the docket is the Okada Parties, Mr. Okada and

19   related entities.  Maybe Mr. Loigman can apprise me.  It

20   looked like there was a dismissal, a settlement with those

21   Defendants, correct?

22        MR. LOIGMAN:  That's correct, Your Honor.  There was

23   also settlements and dismissals with the -- the HMIT, Hunter

24   Mountain Parties, and then there was one with CLO Holdco and I

25   believe its parent entity as well.  Those are -- the reason

1  you may not have noticed those, Your Honor, is because they're

2  not reflected in the caption, but they're -- but they have

3  been filed with the Court on the docket, those withdrawals of

4  claims against those parties.

5          THE COURT:  Okay.  Yes.  I did not focus.  But at a

6  minimum, I think we need to have a status conference to let me

7  be clear what the lay of the land is.  We originally had 21

8  Defendants or something like that.  Just updating Judge

9  Scholer (a) this adversary has been unstayed pursuant to a

10  notice I presume Hunter Mountain will be filing; (b) the Court

11  has approved a substitution of Hunter Mountain pursuant to a

12  settlement agreement and a motion; and then (c) here are the

13  claims and parties remaining.

14      I can't remember, it's been so long since I did it, but I

15  think in my Report and Recommendation I may have even put a

16  handy-dandy chart in there of there are 36 counts and here are

17  the Defendants associated with each count.

18      And then I don't know what she'll do.  I have had

19  situations in the past where it was questionable perhaps in my

20  mind whether subject matter jurisdiction still existed, and

21  the district judge followed the Time-of-Filing Rule.  Like,

22  shame on you, of course the Time-of-Filing Rule applies.

23      So I'm just letting you know, I would be -- well, I don't

24  know, I don't know what she'll do.  And of course, I have

25  discretion to change my recommendation as well.

1       Again, today's arguments along those lines were premature

2   in my mind.  We'll do what we're going to do after this matter

3   is unstayed.

4       I did not go back and scan the docket.  Was there a motion

5   to dismiss, a 12(b)(6) motion to dismiss by certain Defendants

6   that was stayed by the stay order?

7           MS. DEITSCH-PEREZ:  Your Honor, there was a motion to

8   dismiss filed.  And I think, even before it was stayed by the

9   stay order, Your Honor had said that you would await doing

10  anything substantive until the District Court had ruled on the

11  motion to withdraw the reference in case the District Court

12  was going to withdraw for all purposes.

13          THE COURT:  That's what I usually do, so I'm not

14  surprised that that's what I did.

15      So, anyway, we'll just need a status conference.  What can

16  I say?  Are we going to allow -- I'm inclined to supplement my

17  Report and Recommendation, and then parties can file whatever

18  objections they want before the District Court, rather than

19  having double, making arguments to me and then making

20  arguments to her.

21      But then we will need, I'm sure, a scheduling order, at

22  least an interim scheduling order, to talk about are you going

23  to do an amended complaint, are the parties going to have a

24  chance to do new motions to dismiss?

25      So, again, we'll do that after the 30 days run on the

1  notice I anticipate you're going to file.

2          MR. MCENTIRE:  Certainly.  But in all candor, for the

3  benefit of the Court, we do intend to issue the notice to

4  terminate the stay today.

5          THE COURT:  Okay.  All right.

6          MR. MCENTIRE:  And we also anticipate -- yes.  We

7  also -- I'm sorry.

8          THE COURT:  Just finish your sentence.

9          MR. MCENTIRE:  We also anticipate the possibility of

10 filing additional motions for equitable relief that various

11 matters have come to our attention recently.  And we would

12 expect to be filing those motions in very short order, within

13 the next 10 days to two weeks.

14     Otherwise, I absolutely do agree with you that we need a

15 status conference, and we fully support that.

16         THE COURT:  All right.  Ms. Deitsch-Perez?

17         MS. DEITSCH-PEREZ:  Yes.  Two things, one in response

18 to what Mr. McEntire just said.  Since the complaint doesn't

19 currently ask for equitable relief, filing motions for

20 equitable relief only underscores our argument that this is

21 truly an amendment, not simply a substitution.

22     And second, I was going to suggest that -- I understand

23 Your Honor's inclination not to make the parties do additional

24 work, but I do think it might be helpful for the Court to have

25 the benefit of our thoughts on the changes -- on the way

1    change in circumstances have affected the motion to withdraw

2    the reference.

3        And so I would urge, rather than just having a status

4    conference without the benefit of that, that we think about

5    and have a schedule for anyone who wants to weigh in on how

6    the circumstances affect the motion to withdraw the reference,

7    to do that before Your Honor issues a report to Judge Scholer.

8        THE COURT:  All right.  Well, again, I think maybe

9    we're all in agreement it makes sense to have a status

10   conference, and we'll flesh through what needs to happen

11   before I make any kind of supplemental report to Judge

12   Scholer.

13       All right.  So I'll look for your order of substitution.

14       And I know, I had one question.  Mr. Loigman had mentioned

15   that there was a dismissal of CLO Holdco at one point.  I know

16   one of these Defendants that is connected with CLO Holdco is

17   in a Chapter 15 in Delaware.  I got notice.  I don't know

18   what's going on with it.  I have no idea what's going on.  But

19   I think it was Charitable DAF Fund, LP.  Does anyone know

20   about that and has that party been dismissed?

21       MR. MCENTIRE:  I believe the Charitable DAF has been

22   dismissed.  And I'm generally familiar with the Chapter 15

23   proceedings.  I'm not an attorney in those proceedings.

24       THE COURT:  Well, I'm only asking because there would

25   be an automatic stay if that Chapter 15 is pending as to that

1    one Defendant.

2              MR. MCENTIRE: I don't think -- I don't think that

3    Defendant -- I think that Defendant has been dismissed from

4    this proceeding.

5              THE COURT:  Okay.

6              MR. LOIGMAN:  Your Honor, I can -- I could answer

7    that question.  At Docket No. 355, I believe, in this action,

8    there's a notice of voluntary dismissal.

9              THE COURT:  Okay.

10             MR. LOIGMAN:  And that covers Charitable DAF Holdco,

11   Charitable DAF Fund, LP, and CLO Holdco, Ltd.

12             THE COURT:  Okay.  Thank you.  All right.  So, again,

13   it's been a few years now.  I need and Judge Scholer will need

14   clarity over what Defendants are still in and which are not.

15        All right.  I'll look for the order and I'll stay tuned.

16   Okay.

17             MR. MCENTIRE:  Thank you.

18             THE COURT:  Thank you.

19        (Proceedings concluded at 11:52 a.m.)

20                          --oOo--

21                         CERTIFICATE

22       I certify that the foregoing is a correct transcript from the
     electronic sound recording of the proceedings in the above-entitled matter.
23
      /s/ Kathy Rehling                          09/03/2025
24
     _____          _____
25
     Kathy Rehling, CETD-444                        Date
     Certified Electronic Court Transcriber

34

# INDEX

PROCEEDINGS                                                                    3

WITNESSES

-none-

EXHIBITS

Judicial Notice to be Taken of Hunter Mountain                                  6
Exhibits 1 through 6

RULINGS                                                                       26

END OF PROCEEDINGS                                                            33

INDEX                                                                         34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **<u>EXHIBIT B</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | |

| | |
|---|---|
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | Adv. Pro. No. 21-03076-sgj |
| *Plaintiff* | **MOTION TO DISMISS OF DEFENDANTS JAMES DONDERO, THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC.** |
| v. | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET | |



1934054220712000000000000009

B-2

RECOVERY, LTD.,

                    *Defendants.*

## MOTION TO DISMISS OF DEFENDANTS JAMES D. DONDERO, THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC.

James Dondero, Dugaboy Investment Trust, Get Good Trust, Hunter Mountain Investment Trust, Rand PE Fund I, LP, and Strand Advisors, Inc. (collectively, "Defendants"), defendants in the above-captioned adversary proceeding (the "Adversary Proceeding"), hereby submit this Motion to Dismiss (the "Motion").  In support of this Motion, Defendants respectfully state as follows.

The Court should dismiss the counts against Defendants, either in whole or in part, for multiple reasons. First, the Court lacks post-confirmation jurisdiction to adjudicate the Adversary Proceeding, which was filed more than eight months after confirmation of the confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) (then "Plan") and which asserts a myriad of non-core, state-law claims that can have no conceivable impact on the implementation or execution of the confirmed Plan.

Second, the Litigation Trustee lacks standing to pursue many of the claims asserted against the Defendants.

Third, the claims are barred in whole or in part by the applicable statutes of limitations.

Finally, the Complaint fails to sufficiently plead the requisite elements of the claims asserted.

WHEREFORE, Defendants respectfully request that the Court grant the Motion; dismiss Counts Nos. I–IX, XIV–XIX, XXII–XXIII, XXV–XXVI, and XXXII-XXXIII as to Defendants,

2

B-3

with prejudice; grant Defendants such further and relief to which they are entitled; and enter an

order, substantially in the form of the attached hereto as Exhibit A.

Dated: July 12, 2022                          Respectfully submitted,

                                              DLA PIPER LLP (US)

                                              */s/ Amy L. Ruhland*
                                              Amy L. Ruhland (Rudd)
                                              Texas Bar No. 24043561
                                              Amy.Ruhland@us.dlapiper.com
                                              303 Colorado Street, Suite 3000
                                              Austin, TX 78701
                                              Tele: 512.457.7000

                                              Jason M. Hopkins
                                              Texas Bar No.24059969
                                              1900 N. Pearl Street, Suite 2200
                                              Dallas, Texas 75201
                                              Tel: 214-743-4500/Fax: 214-743-4545
                                              Email: jason.hopkins@us.dlapiper.com

                                              *Attorneys for Defendants James Dondero,*
                                              *Dugaboy Investment Trust, Get Good Trust,*
                                              *Hunter Mountain Investment Trust, Rand PE*
                                              *Fund I, LP, and Strand Advisors, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 12, 2022, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Amy L. Ruhland*
Amy L. Ruhland (Rudd)

# **EXHIBIT A**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | Adv. Pro. No. 21-03076-sgj |
| *Plaintiff* | |
| v. | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY | |

6

B-7

DONDERO, AS TRUSTEE OF DUGABOY
INVESTMENT TRUST; GET GOOD TRUST
AND GRANT JAMES SCOTT III, AS
TRUSTEE OF GET GOOD TRUST; HUNTER
MOUNTAIN INVESTMENT TRUST; MARK
& PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #1 AND LAWRENCE
TONOMURA AS TRUSTEE OF MARK &
PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #1; MARK & PAMELA
OKADA FAMILY TRUST – EXEMPT TRUST
#2 AND LAWRENCE TONOMURA IN HIS
CAPACITY AS TRUSTEE OF MARK &
PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #2; CLO HOLDCO, LTD.;
CHARITABLE DAF HOLDCO, LTD.;
CHARITABLE DAF FUND, LP.; HIGHLAND
DALLAS FOUNDATION; RAND PE FUND I,
LP, SERIES 1; MASSAND CAPITAL, LLC;
MASSAND CAPITAL, INC.; SAS ASSET
RECOVERY, LTD.,

*Defendants.*

## ORDER GRANTING MOTION TO DISMISS OF DEFENDANTS JAMES D. DONDERO, DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC.

Upon consideration of the Motion of the Defendants James Dondero, Dugaboy Investment Trust, Get Good Trust, Hunter Mountain Investment Trust, Rand PE Fund I, LP, and Strand Advisors, Inc. ("Defendants"), any response thereto, the pleadings, and the arguments presented by the parties before this Court, the Court hereby orders that the Motion is GRANTED.

Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, and Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Court hereby dismisses with prejudice the following Counts as against Defendants:  Counts Nos. I–IX, XIV–XIX, XXII–

XXIII, XXV–XXVI, and XXXII-XXXIII.


SO ORDERED.


Dated: _____, 2022


_____
  Honorable Stacey G. C. Jernigan
  United States Bankruptcy Judge


**### End of Order ###**

Proposed form of order prepared by:

Amy L. Ruhland (Rudd)
Texas Bar No. 24043561
DLA Piper LLP (US)
Amy.Ruhland@us.dlapiper.com
303 Colorado Street, Suite 3000
Austin, TX 78701
Tele: 512.457.7000

Jason M. Hopkins
Texas Bar No.24059969
DLA Piper LLP (US)
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: 214-743-4500/Fax: 214-743-4545
Email: jason.hopkins@us.dlapiper.com

*Attorneys for Defendants James Dondero,
Dugaboy Investment Trust, Get Good Trust,
Hunter Mountain Investment Trust, Rand PE
Fund I, LP, and Strand Advisors, Inc.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | Adv. Pro. No. 21-03076-sgj |
| *Plaintiff* | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS JAMES DONDERO, THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC.** |
| v. | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET | |



1934054220711200000000000008

RECOVERY, LTD.,

*Defendants.*

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS JAMES D. DONDERO, THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC.

## Table of Contents

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND .............................................................................. 2

    A.    HCMLP's History .................................................................................2

    B.    The Defendants ....................................................................................3

    C.    The Bankruptcy Proceedings ...............................................................5

    D.    This Adversary Proceeding ...................................................................5

III.   LEGAL STANDARD ......................................................................................... 6

IV.    THE COURT SHOULD DISMISS THE amended COMPLAINT .................... 6

    A.    The Litigation Trustee Lacks Standing To Pursue Non-Retained State-Law Claims ....................................................................................................6

    B.    The Court Does Not Have Subject Matter Jurisdiction Over The Non-Core, State-Law Claims Asserted Against The Defendants .....................9

    C.    The Fraudulent Transfer Claims Should Be Dismissed.........................11

    D.    The Amended Complaint Should Be Dismissed For Multiple Additional Reasons ..............................................................................................15

        1.    The Amended Complaint's Breach Of Fiduciary Duty Claims Fail..........15

            a.    The LPA precludes the breach of fiduciary claims.......................16

            b.    The Court Should Dismiss Counts XV And XVI. .........................18

        2.    The Declaratory Judgment Claims Are Insufficient ...............................19

        3.    The Amended Complaint Fails To Plead A Viable Conversion Claim........................................................................................................23

        4.    The Litigation Trustee's Claim For Unjust Enrichment Or Money Had And Received Fails As A Matter Of Law ..........................................24

V.     CONCLUSION................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Artho,*
    587 B.R. 866 (Bankr. N.D. Tex. 2018) .................................................................19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................................6, 18

*Bates Energy Oil & Gas v. Complete Oilfield Servs.,*
    361 F. Supp. 3d 633 (W.D. Tex. 2019) ..................................................................25

*Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,*
    296 F.3d 164 (3d Cir. 2002) ..................................................................................21

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................6

*Brickell Partners v. Wise,*
    794 A.2d 1 (Del. Ch. 2001) ...................................................................................16

*In re Brown Med. Ctr., Inc.,*
    578 B.R. 590 (Bankr. S.D. Tex. 2016) ..................................................................10

*In re Castex Energy Partners, LP,*
    584 B.R. 150 (Bankr. S.D. Tex. 2018), *aff'd sub nom. In re Castex Energy
    Partners LP,* No. AP 17-3453, 2018 WL 3068803 (S.D. Tex. June 21, 2018) ......9

*Chu v. Hong,*
    249 S.W.3d 441 (Tex. 2008) ..................................................................................19

*In re Coho Energy, Inc.,*
    309 B.R. 217 (Bankr. N.D. Tex. 2004) ..................................................................11

*In re Craig's Stores of Texas, Inc.,*
    266 F.3d 388 (5th Cir. 2001) .................................................................................10

*Curtis v. Cerner Corp.,*
    621 B.R. 141 (S.D. Tex. 2020) ..............................................................................11

*Ellis v. Wells Fargo Bank, N.A.,*
    No. CV G-13-249, 2014 WL 12596473 (S.D. Tex. Feb. 10, 2014), *report and
    recommendation adopted,* No. CV G-13-249, 2014 WL 12596480 (S.D. Tex.
    Mar. 5, 2014) ..........................................................................................................24

## Table of Authorities
### (Continued)

Page(s)

*In Matter of Galaz,*
  841 F.3d 316 (5th Cir. 2016) ...............................................................10

*Gibson v. Wells Fargo Bank, N.A.,*
  No. 4:16-CV-98-O, 2016 WL 11755377 (N.D. Tex. June 9, 2016).......................................23

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.,*
  817 A.2d 160 (Del. 2002) ...............................................................16

*Heinze v. Tesco Corp.,*
  971 F.3d 475 (5th Cir. 2020) ...............................................................6

*Johnson v. E. Baton Rouge Fed'n of Tchrs.,*
  706 F. App'x 169 (5th Cir. 2017) ...............................................................18

*In re Kipnis,*
  555 B.R. 877 (Bankr. S.D. Fla. 2016)...............................................................13, 14

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994)...............................................................10, 11

*Malpiede v. Townson,*
  780 A.2d 1075 (Del. 2001) ...............................................................18

*Marshall v. Intermountain Elec. Co., Inc.,*
  614 F.2d 260 (10th Cir. 1980) ...............................................................14

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.,*
  999 F.3d 970 (5th Cir. 2021)...............................................................25

*In re Mirant Corp.,*
  675 F.3d 530 (5th Cir. 2012) ...............................................................14

*Mirant Corp. v. The Southern Co.,*
  337 B.R. 107 (N.D. Tex. 2006)...............................................................9

*In re Morrison,*
  409 B.R. 384 (S.D. Tex. 2009) ...............................................................9

*MVS Int'l Corp. v. Int'l Advert. Sols., LLC,*
  545 S.W.3d 180 (Tex. App. 2017)...............................................................19

*In re Nat'l Gypsum Co.,*
  145 B.R. 539 (N.D. Tex. 1992)...............................................................13

### Table of Authorities
### (Continued)

Page(s)

*Matter of Okedokun*,
    968 F.3d 378 (5th Cir. 2020) ...............................................24

*Pelican Refining Co. LLC v. Adams & Reese, LLP*,
    No. CIV.A. H-07-0578, 2007 WL 1306808 (S.D. Tex. May 3, 2007).....................11

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ...............................................3

*Redwood Resort Properties, LLC v. Holmes Co. Ltd.*,
    No. CIVA 3:06CV1022 D, 2006 WL 3531422 (N.D. Tex. Nov. 27, 2006).........................24

*Rittgers v. United States*,
    131 F. Supp. 3d 644 (S.D. Tex. 2015) ...............................................4

*Rossco Holdings, Inc. v. McConnell*,
    613 F. App'x 302 (5th Cir. 2015) ...............................................7, 8

*In re Royce Homes, L.P.*,
    No. 09-32467-H4-7, 2011 WL 13340482 (Bankr. S.D. Tex. Oct. 13, 2011) .........................9

*S.E.C. v. Calvo*,
    378 F.3d 1211 (11th Cir. 2004) ...............................................14

*In re SI Restructuring Inc.*,
    714 F.3d 860 (5th Cir. 2013) ...............................................7, 8

*In re Soporex, Inc.*,
    463 B.R. 344 (Bankr. N.D. Tex. 2011)...............................................6

*In re Taylor, Bean & Whitaker Mortgage Corp.*,
    No. 3:09-BK-07047-JAF, 2018 WL 6721987 (Bankr. M.D. Fla. Sept. 28,
    2018) ...............................................13

*Tepper v. Keefe Bruyette & Woods, Inc.*,
    No. 3:11-CV-2087-L-BK, 2012 WL 4119490 (N.D. Tex. Sept. 19, 2012)..............................8

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008).........................20, 21, 22

*Tri v. J.T.T.*,
    162 S.W.3d 552 (Tex. 2005).........................19

*In re U.S. Brass Corp.*,
    301 F.3d 296 (5th Cir. 2002) ...............................................10, 11

iv

**Table of Authorities**
(Continued)

Page(s)

*In re United Operating, LLC*,
   540 F.3d 351 (5th Cir. 2008) ........................................................7, 8

*United States v. Pisani*,
   646 F.2d 83 (3d Cir. 1981).............................................................20

*In re Vaughan Co.*,
   498 B.R. 297 (Bankr. D.N.M. 2013) .........................................13, 14

*VeroBlue Farms USA, Inc. v. Wulf*,
   465 F. Supp. 3d 633 (N.D. Tex. 2020) ............................................15

*In re Wheelabrator Techs., Inc. S'holders Litig.*,
   1992 WL 212595 (Del. Ch. Sept. 1, 1992) ........................................4

*Winslow v. Paxton*,
   No. 4:17-CV-057-A, 2017 WL 283281 (N.D. Tex. Jan. 20, 2017)...................6, 18

*Matter of Wood*,
   825 F.2d 90 (5th Cir. 1987) .............................................................10

**Statutes**

11 U.S.C. § 548 ..........................................................................11, 14

11 U.S.C. § 1123 ...............................................................................7

26 U.S.C. § 6502.....................................................................11, 12, 13

28 U.S.C. § 157 .............................................................................9, 10

28 U.S.C. § 1334 .......................................................................9, 10, 25

United States Code title 11 chapter 11 ..........................................2, 5, 10, 11

Bankruptcy Code section 544 .................................................... *passim*

Bankruptcy Code section 548 .........................................................8, 14

Bankruptcy Code section 550 .............................................................8

Del. Code Ann. Tit.6, § 17-1101(d) (West) ......................................16

Delaware Revised Uniform Partnership Act......................................9

Tex. Bus. & Com. Code Ann. § 24.005(a)(1)-(2)..............................10

**<u>Table of Authorities</u>**
**(Continued)**

**Page(s)**

Tex. Bus. & Com. Code § 24.010 ...................................................................................12

Texas Uniform Fraudulent Transfer Act ...................................................................10, 12

**Other Authorities**

Federal Rule of Civil Procedure 12 ..............................................................................1, 6

Federal Rules of Bankruptcy Procedure 7012(b) .........................................................1, 6

Case 21-03076-sgj Doc 183-1 Filed 07/11/22 Entered 07/11/22 16:35:26 Page 9 of 34
Case 21-03076-sgj Doc 189 Filed 07/22/22 Entered 07/22/22 20:25:20 Page 9 of 34
Appendix     Page 60 of 202

## I.     INTRODUCTION

Defendants James D. Dondero, The Dugaboy Investment Trust, Get Good Trust, Hunter Mountain Investment Trust, Rand PE Fund I, LP, and Strand Advisors, Inc. (collectively, "Defendants")[1] move to dismiss the Amended Complaint and Objection to Claims ("Amended Complaint") filed on May 19, 2022, by Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust ("Litigation Trustee") because those claims are deficient under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(2).[2]

The Amended Complaint, which asserts 36 sweeping causes of action against 21 defendants, attempts to saddle Mr. Dondero, his employees, and numerous entities with liability for legally and contractually sanctioned management activities undertaken for the benefit of Highland Capital Management, L.P. ("HCMLP").  Hoping to paint everyone and everything with the same bad brush, the Amended Complaint vastly overreaches and falls well short of alleging viable claims against Defendants.  As explained below, the Amended Complaint should be dismissed under Rule 12(b)(1) because the Court lacks subject matter jurisdiction to hear or decide any of the non-core state-law claims asserted against Defendants.  In addition, the Amended Complaint should be dismissed under Rule 12(b)(6) and 12(h)(2) because the Litigation Trustee lacks standing to assert the claims, they are barred by the applicable statutes of limitations, and/or the allegations of the Amended Complaint fail to sufficiently plead the claims asserted.

---

[1] Defendants Hunter Mountain Investment Trust and Rand PE Fund I, LP were formerly represented by other counsel. As of July 5, 2022, they are represented in this adversary proceeding by the undersigned counsel. *See* Dkt. 170 (order granting motion to substitute counsel).

[2] Rules 12(b)(1), 12(b)(6), and 12(h)(2) are made applicable in bankruptcy through Federal Rules of Bankruptcy Procedure 7012(b).  Defendants do not consent to the entry of final orders or judgment by the Bankruptcy Court.

## II.    FACTUAL BACKGROUND

### A.    HCMLP's History

HCMLP is an SEC-registered investment advisory business founded in 1993 by Mr. Dondero and defendant Mark A. Okada.  *See* Am. Compl., ¶¶ 2, 12-13.  Although the Amended Complaint describes HCMLP and its affiliates as a complex "web" of entities operated at the whim and for the sole benefit of Mr. Dondero, for 26 years prior to filing a chapter 11 petition, HCMLP operated as a legitimate (and heavily regulated) Registered Investment Advisor ("RIA") for the benefit of its managed funds and investors.  As the Amended Complaint acknowledges, under Mr. Dondero's leadership, by the mid-2000s, HCMLP grew to over 100 employees, including "executive-level management employees, finance and legal staff, investment professionals, and back-office accounting and administrative personnel."  *Id.*, ¶ 41.  Thus, while the Litigation Trustee alleges that Mr. Dondero was "HCMLP's solitary decision-maker on all matters concerning the company's operation and management," *id.*, ¶ 42, that allegation makes no sense.  As the Litigation Trustee acknowledges, over the years—with the assistance of an expanded workforce and skilled executive team—HCMLP's original focus shifted from the leveraged loan market to "other asset classes, such as high-yield credit, public equities, real estate, private equity and special situations, structured credit, and sector- and region-specific industries."  *Id.*, ¶ 40.  At its peak, HCMLP had assets under management exceeding $40 billion.  *Id.*, ¶ 43 n.9.

Following the financial crisis in 2008, HCMLP and some of its managed funds and affiliates, like many other financial institutions and financial advisors across the globe, faced several lawsuits.  Am. Compl., ¶ 4.  The Amended Complaint characterizes those lawsuits as a "looming threat," *id.*, ¶ 5, but between 2008 and HCMLP's bankruptcy filing in 2019, virtually none of those lawsuits resulted in any sizeable liability against HCMLP.  Indeed, the only significant award issued against HCMLP at any time between 2008 and 2019 (and the only one

2

identified in the Complaint) is a $190 million arbitration award in favor of the Redeemer Committee.  *See* Am. Compl., ¶ 8.  While the Amended Complaint alleges that lawsuits filed against HCMLP by UBS, Citibank, and Barclays between 2009-2012 presented "the threat of hundreds of millions of dollars in damages," *id*. ¶¶ 45-48, the Litigation Trustee does not allege that any of these lawsuits resulted in any specific liability against HCMLP.

## B.    The Defendants

*James D. Dondero and Strand.*   For most of its operating history, Mr. Dondero served as the Chief Executive Officer of HCMLP by virtue of his ownership (and role as sole director) of its general partner, Strand Advisors, Inc. ("Strand").  Am. Compl., ¶¶ 12, 14.  Notably, when HCMLP filed for bankruptcy, Mr. Dondero did not own any direct economic interest in the Debtor.[3]

Moreover, as the Litigation Trustee acknowledges, the management of HCMLP prior to Plan confirmation was governed by a Fourth Amended and Restated Agreement of the Limited Partnership of Highland Capital Management, L.P. ("LPA").  *See* Am. Compl., ¶ 221 (referencing the "operative partnership agreements").[4]  That LPA contains several salient provisions that bear upon the allegations at issue.  In particular, the LPA permitted Strand, as general partner:

- To "make such pro rata or non-pro rata distributions as it may determine in its sole and unfettered discretion" (LPA, §3.9(a));

   To "have business interests and engage in business activities in addition to those relating to the Partnership, including, without limitation, business interests and activities in direct competition with the Partnership" (*id.*, § 4(f)).[5]

---

[3] *See* Order (I) Confirming the Fifth Amended Plan Reorganization of Highland Capital Management, L.P (as Modified) and (II) Granting Related Relief ("Confirmation Order"), Dkt. 1943, at ¶ 5; *see also id.*, ¶ 18 ("Mr. Dondero owns no equity in the Debtor directly.").

[4] *See* Dkt. 143-1, Declaration of Amy L. Ruhland, ¶ 2.  The Court may consider the LPA because it is incorporated into the Amended Complaint by reference.  *See* Compl., ¶ 221; *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[5] This right extended to Strand's directors, officers, agents, and representatives. Dkt. 143-1, Ruhland Decl., Ex. A, § 4.1(f).

3

- To exercise "full control over all activities of the Partnership," including by, among other things, (1) "purchasing and selling any asset, any debt instruments, any equity interests, any commercial paper, any note receivables, and any other obligation" of HCMLP, (2) "exchang[ing] . . . any or all of the assets of the Partnership," (3) executing on behalf of HCMLP "notes . . . and any and all other contracts," (4) "us[ing] the assets of the Partnership (including, without limitation, cash on hand) for any Partnership purpose on any terms [Strand] s[aw] fit," (5) "distributing . . . Partnership cash or other assets," (6) forming other limited or general partnerships, joint ventures, or other relationships and to contributing to "such partnerships, ventures, or relationships . . . assets and properties of the Partnership," and (7) controlling "the conduct of any litigation, the incurring of legal expenses, and the settlement of claims and suits" (*id.*, § 4.1(a)); and

Mr. Dondero, in turn, was authorized to act on behalf of Strand by virtue of his role as Strand's sole director, as set forth in Strand's organizational documents.[6] This makes sense: an entity like Strand could not act without an individual at the helm.

*Dugaboy.* Prior to Plan confirmation, Defendant The Dugaboy Investment Trust ("Dugaboy") held a minority (0.1866%) economic interest and a 74.4426% voting interest in HCMLP's Class A partnership interests. *See* Am. Compl., ¶ 16; Plan Confirmation Order, ¶ 18. Despite these interests, there is no allegation that Dugaboy exercised any control of HCMLP or orchestrated or directed any of the transactions at issue.

*Get Good.* Defendant Get Good Trust ("Get Good") is a Delaware trust established by Mr. Dondero for the benefit of his living descendants. *See* Am. Compl., ¶ 26. Get Good is neither a residual equity holder in the Debtor's estate nor a creditor.

*Hunter Mountain Investment Trust.* Defendant Hunter Mountain Investment Trust ("HMIT") is a Delaware statutory trust and the owner of 99.5% of the economic interests of HCMLP. Am. Compl., ¶ 27. HMIT is thus an equity interest holder in the Debtor.

---

[6] *See* Dkt. 143-1, Ruhland Decl., Exs. B & C. The Court may take judicial notice of a company's publicly filed organizational documents. *See Rittgers v. United States*, 131 F. Supp. 3d 644, 649-50 (S.D. Tex. 2015) (on a motion to dismiss, court may consider "documents that are subject to judicial notice as public record"); *see also In re Wheelabrator Techs., Inc. S'holders Litig.*, 1992 WL 212595, at *11-12 (Del. Ch. Sept. 1, 1992) (taking judicial notice of certificate of incorporation).

4

Although the Amended Complaint alleges that "Dondero caused" HMIT to issue "a series of notes and cash," including a $63 million secured promissory note to HCMLP (termed the "<u>Hunter Mountain Note</u>"), Am. Compl., ¶ 27, there is no allegation that Dondero has any ownership stake or other management role in HMIT, either directly or indirectly.  *See generally id.*

*Rand PE Fund I, LP.*  Defendant Rand PE Fund I, LP ("<u>Rand</u>") is a Delaware series limited partnership and indirect parent of HMIT.  Am. Compl., ¶ 28.  Although Rand is neither a creditor nor residual equity holder in the Debtor's estate, the Litigation Trustee has sued Rand as the guarantor of the Hunter Mountain Note.  *Id.*, ¶¶ 349-354.

### C.    The Bankruptcy Proceedings

On October 16, 2019 (the "<u>Petition Date</u>"), in response to an adverse arbitration award of $190 million, HCMLP filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.  Dkt. 1.  Just three months after HCMLP's bankruptcy filing, on January 9, 2020, Mr. Dondero agreed to resign from his positions at HCMLP and Strand.  Compl., ¶ 12.

On November 24, 2020, HCMP filed its Fifth Amended Plan of Reorganization (the "<u>Plan</u>"), *see* Dkt. 1808, which the Bankruptcy confirmed on February 22, 2021 ("<u>Confirmation Date</u>").  *See* Dkt. 1943.  The Plan became effective on August 11, 2021 (the "<u>Effective Date</u>"), *see* Dkt. 2700, and HCMLP has since represented that the Plan has been substantially consummated.  *See* Adv. Proc. No. 3:21-cv-01895-D, Dkt. 14, at 17-20.

### D.    This Adversary Proceeding

The Litigation Trustee did not commence this Adversary Proceeding until October 15, 2021, more than eight months after the Confirmation Date and well after the Effective Date.  On January 26, 2022, Defendants and several other defendants in this action moved for an order withdrawing the reference of this adversary proceeding to the United States District Court for the Northern District of Texas on the grounds that the Bankruptcy Court lacks subject matter

jurisdiction.  *See* Dkt. 45.  The motions to withdraw the reference remain pending before the District Court.

On March 23, 2022, Defendants James D. Dondero, Dugaboy, Get Good, and Strand, filed a motion to dismiss the Complaint.  Dkt. 147.  On May 19, 2022, the Litigation Trustee filed the Amended Complaint.  Dkt. 158.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] complaint must allege 'more than labels and conclusions,' as 'a formulaic recitation of the elements of a cause of action will not do."  *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555); *see also In re Soporex, Inc.*, 463 B.R. 344, 367 (Bankr. N.D. Tex. 2011) ("[A] court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.") (internal quotation omitted).  Further, where (as here), a complaint alleges multiple claims against multiple defendants, courts must apply the pleading standards "separately to each claim and each defendant."  *Winslow v. Paxton*, No. 4:17-CV-057-A, 2017 WL 283281, at *2 (N.D. Tex. Jan. 20, 2017).

## IV.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT[7]

### A.    The Litigation Trustee Lacks Standing To Pursue Non-Retained State-Law Claims

The Court should dismiss the state-law claims asserted against Defendants because the

---

[7] The Amended Complaint alleges many similar allegations against defendants Mark A. Okada (and his

Litigation Trustee lacks standing to pursue them.  Specifically, the Litigation Trustee lacks standing to pursue Counts III–IX, XIV–XVII, and XXV–XXVI because the Plan did not specifically and unequivocally reserve those claims.  It is axiomatic that, after confirmation of a plan of reorganization, the bankruptcy estate "ceases to exist, and the debtor loses its status as debtor-in-possession along with its authority to pursue claims as though it were a trustee."  *Rossco Holdings, Inc. v. McConnell*, 613 F. App'x 302, 306 (5th Cir. 2015) (quoting *In re SI Restructuring Inc.*, 714 F.3d 860, 864 (5th Cir. 2013)).  "[B]y losing authority to pursue a claim, the debtor loses *standing* with respect to that claim." *Id.* (emphasis added).  A plan of reorganization may vest a post-confirmation debtor or trustee with authority to pursue one or more claims held by the estate, 11 U.S.C. § 1123(b)(3), but "the ability of the debtor to enforce a claim once held by the estate is limited to that which has been retained in the plan." *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008).  "Without an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved." *In re SI Restructuring*, 714 F.3d at 864 (internal quotations omitted); *In re United Operating, LLC,* 540 F.3d at 355.

Under Fifth Circuit law, a plan's claim retention language must be "specific and unequivocal." *In re United Operating, LLC*, 540 F.3d at 355; *accord Rossco Holdings, Inc.*, 613 F. App'x at 308.  This requirement ensures that creditors have adequate notice of which claims the debtor intends to pursue after confirmation so that they can "determine whether a proposed plan resolves matters satisfactorily before they vote to approve it." *In re United Operating, LLC*, 540 F.3d at 355.  A blanket reservation of "any and all" claims, or a laundry list of generic claims, is insufficiently specific to meet this requirement. *Id.* at 356; *Rossco Holdings, Inc.*, 613 F. App'x

---

family trusts), Scott Ellington, Isaac Leventon, NexPoint Advisors, L.P., and Highland Capital Management Fund Advisors, L.P.  Defendants hereby incorporate by reference as if fully set forth herein the Motions to Dismiss filed by these defendants.

at 306–07.    Likewise, a reservation of claims "arising under the Bankruptcy Code"—even if specific and unequivocal—is insufficient to preserve state common-law claims.    *In re United Operating*, 540 F.3d at 356; *accord In re SI Restructuring Inc.*, 714 F.3d at 862-63; *Rossco Holdings, Inc.*, 613 F. App'x at 306–07; *see also Tepper v. Keefe Bruyette & Woods, Inc.*, No. 3:11-CV-2087-L-BK, 2012 WL 4119490, at *5 (N.D. Tex. Sept. 19, 2012) (no "standing to pursue a fraudulent transfer claim under Texas and New York statutory law" where the plan "only provide[d] for avoidance claims under . . . sections 544, 548, and 550 of the Bankruptcy Code").

Pursuant to these standards, the Plan and Plan Supplement fail to specifically and unequivocally retain the state-law claims asserted against the Defendants.    The Plan contains sweeping language purporting to "retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action," defined to include "any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims."    *See* Plan, Dkt. No. 1943, at 101, 146–47.    That is exactly the kind of generalized, nonspecific language that the Fifth Circuit has repeatedly found insufficient to preserve standing.    *See In re United Operating*, 540 F.3d at 356 (neither "blanket reservation of 'any and all claims' arising under the Code," nor "specific reservation of other types of claims under various Code provisions" sufficient to preserve the common-law claims); *In re SI Restructuring, Inc.*, 714 F.3d at 860 (same).    The Plan Supplement fares no better.    In what can only be described as a kitchen-sink approach, the Supplement contains a laundry list of purportedly retained claims—including "claims brought under state law, claims brought under federal law, [and] claims under any common-law theory of tort or law or equity"—that is the equivalent of an impermissible, blanket reservation of claims. *See* Dkt. No. 1875-3.    What is more, the Supplement broadly purports to retain that laundry list of claims against a multi-page list of potential defendants.    That overbroad list of potential claims

8

and defendants did not apprise the Defendants of which, if any, claims might actually be filed against which, if any, of them post-confirmation. In the absence of a more "specific and unequivocal" retention of the state-law claims asserted against Defendants, the Plan and Supplement fail to confer the requisite standing on the Litigation Trustee.

At the very least, the Litigation Trustee's claims against Defendants for illegal distributions under the DRULPA (Count III), declaratory judgment (Counts VI-IX), aiding and abetting or knowing participation in breach of fiduciary duty (Count XV), and conspiracy (Count XVI) should be dismissed because neither the Plan nor the Supplement mentions those claims at all. As a result, those claims were not retained, and the Litigation Trustee lacks standing to pursue them.

**B.    The Court Does Not Have Subject Matter Jurisdiction Over The Non-Core, State-Law Claims Asserted Against The Defendants**

The Litigation Trustee asserts that this Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 157 and 1334 because it is a "civil proceeding arising under or relating to the bankruptcy petition filed by HCMLP" and is a "core proceeding" under § 157(b). Am. Compl., ¶ 33. But as this Court already has held, the majority of the 22 claims asserted against the Defendants are non-core, state-law claims. *See* Adv. Proc. Dkt. 151 at 6-7.[8] Consequently, the Bankruptcy Court lacks subject matter jurisdiction to adjudicate those claims under 28 U.S.C. § 1334.[9] "Federal courts are courts of limited jurisdiction . . . and possess only the power

---

[8] Specifically, the Court found that the following 14 claims asserted by the Litigation Trustee against the Defendants are non-core: Count III (illegal distributions under the Delaware Revised Uniform Partnership Act), Counts IV–V and XIV (breach of fiduciary duty), Counts VI-IX (declaratory judgment), Count XV (aiding and abetting breach of fiduciary duty), Count XVI (civil conspiracy), Count XVII (tortious interference with prospective business relations), Count XXIV (breach of contract), Count XXV (conversion), and Count XXVI (unjust enrichment). Adv. Proc. Dkt. 151 at 6-7.

[9] *See In re Morrison*, 409 B.R. 384, 390 (S.D. Tex. 2009) (breach of fiduciary duty, conspiracy, and conversion proceedings are non-core); *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 117–18 (N.D. Tex. 2006) (alter-ego, unlawful dividend, and aiding and abetting breach of fiduciary duty claims are non-core); *In re Royce Homes, L.P.*, No. 09-32467-H4-7, 2011 WL 13340482, at *2 (Bankr. S.D. Tex. Oct. 13, 2011) (fiduciary duty, conversion, conspiracy, and unjust enrichment are non-core); *In re Castex Energy Partners,*

9

B-27

authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157." *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) (citation omitted). In relevant part, Section 1334 provides federal "district courts" with "original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(b).[10] The district court may refer (and has referred here) "proceedings . . . related to a case under title 11 . . . to the bankruptcy judges for the district." *Id.* § 157(a); Misc. Order No. 33 (N.D. Tex. Aug. 3, 1984). But the "related to" jurisdiction of the district courts under Section 1334(b), and by reference, the bankruptcy courts, is much narrower after confirmation of the relevant plan of reorganization. *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001). For the most part, it "*ceases to exist.*" *Id.* (emphasis added); *accord In Matter of Galaz*, 841 F.3d 316, 322 (5th Cir. 2016) (same). Post-confirmation, the debtor no longer needs the "protection" of the bankruptcy court to "facilitate 'administration' of the . . . estate." *Id.* Accordingly, in ascertaining its post-confirmation subject matter jurisdiction, the Bankruptcy Court must conform to an "*exacting*," "*narrow[]*" theory of jurisdiction. *Id.* The Court continues to have jurisdiction only over "matters pertaining to the implementation or execution of the plan." *Id.*

The exacting standard adopted and applied by the Fifth Circuit makes clear that this Court

---

*LP*, 584 B.R. 150, 155 (Bankr. S.D. Tex. 2018), *aff'd sub nom. In re Castex Energy Partners LP,* No. AP 17-3453, 2018 WL 3068803 (S.D. Tex. June 21, 2018) (state law breach of contract claims are non-core). Notably, even the fraudulent transfer claims arise in part under state law—namely, the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *See* Tex. Bus. & Com. Code Ann. § 24.005(a)(1)-(2). The Fifth Circuit has not decided whether fraudulent transfer claims are core or non-core when the pleading asserts those claims under both the TUFTA and the Bankruptcy Code. At least one Texas bankruptcy court has held that they are non-core. *See In re Brown Med. Ctr., Inc.*, 578 B.R. 590, 597 (Bankr. S.D. Tex. 2016).

[10] Because these claims are "non-core," the only relevant proceedings described in 28 U.S.C. § 1334(b) are those "related to cases under title 11." *See Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987); In re *U.S. Brass Corp.*, 301 F.3d at 304.

lacks post-confirmation jurisdiction over the non-core, state law claims asserted in the Amended

Complaint against the Defendants.  None of those claims bears upon the "implementation or

execution of the plan."[11]  Further, this is not a situation where the Court can assert supplemental

jurisdiction over non-core, state-law claims—no such jurisdiction exists in bankruptcy court—nor

has the Litigation Trustee asserted any other basis for federal court jurisdiction.  Accordingly, at

the very least, this Court should dismiss Counts III-IX, XIV-XVII, and XXV–XXVI against the

Defendants for lack of subject matter jurisdiction.

### C.    The Fraudulent Transfer Claims Should Be Dismissed

In Counts I-II, XVIII-XIX, XXII-XXIII, and XXXII-XXXIII, the Litigation Trustee seeks

avoidance of transfers allegedly made to the Defendants dating back to 2010.  Am. Compl., ¶¶

172-186, 303-323, 335-342, 408-417.  These claims should be dismissed for several reasons.

***Constructive & Fraudulent Transfers (Counts I-II, XVIII-XIX, & XXII-XXIII).***  These

Counts seek avoidance of transfers that occurred many years into the past.  But the Litigation

Trustee's avoidance powers are limited in time.  Section 548(a)(1) allows the Litigation Trustee to

avoid transfers only to the extent they were "made or incurred on or within 2 years before the date

of the filing of the petition."  11 U.S.C. § 548(a)(1).  Because HCMLP's chapter 11 bankruptcy

petition was filed on October 16, 2019, the Litigation Trustee generally cannot avoid transfers

made before October 16, 2017.  *Curtis v. Cerner Corp.*, 621 B.R. 141, 179-80 (S.D. Tex. 2020).

To justify a longer lookback period, the Litigation Trustee relies on two statutory provisions:  11

U.S.C.A. § 544 and 26 U.S.C. § 6502.  As explained below, the Trustee's reliance on these

---

[11] Some courts have wrongly considered whether a plan reserved particular claims in determining their post-confirmation "related to" jurisdiction.  *See, e.g.*, *In re Coho Energy, Inc.*, 309 B.R. 217, 221 (Bankr. N.D. Tex. 2004).  That is error.  The terms of the plan *cannot* confer subject matter upon a bankruptcy court.  *In re U.S. Brass Corp.*, 301 F.3d at 303; *accord Pelican Refining Co. LLC v. Adams & Reese, LLP*, No. CIV.A. H-07-0578, 2007 WL 1306808, at *3 (S.D. Tex. May 3, 2007); *Kokkonen*, 511 U.S. at 377 (federal jurisdiction "is not to be expanded by judicial decree").

statutory provisions is unavailing, and the Court should dismiss the fraudulent transfer claims to the extent that the transfers occurred prior to October 16, 2017.

First, the Trustee has not pleaded allegations to support this Court's application of Bankruptcy Code § 544. To utilize Section 544(b)(1) and acquire the benefit of the longer, four-year statute of limitations for avoidance actions prescribed under state law (the TUFTA),[12] the Litigation Trustee must plead the existence of a triggering unsecured creditor for *each* of the alleged fraudulent transfers at issue. The Litigation Trustee does not do this; it merely alleges the existence of an unsecured creditor holding an allowable claim as of the Petition Date. *See* Am. Compl., ¶ 39. There are no allegations that an unsecured creditor exists that could avoid each of the transfers at issue. Indeed, the Amended Complaint does not tether the alleged existence of an unsecured creditor to *any* of the transfers at issue. That is fatal to the Litigation Trustee's fraudulent transfer claims.

In any event, application of Section 544 would only allow the Trustee to avoid transfers dating back four years before the Petition Date—to October 16, 2015. To the extent the Amended Complaint seeks to avoid transfers before that date (as it does in Counts I-II, XVIII-XIX, & XXII-XXIII), the Court should dismiss the Amended Complaint.

Second, the Litigation Trustee's effort to invoke the so-called "golden creditor" rule by making passing reference to 26 U.S.C. § 6502 is also unavailing. *See* Am. Compl., ¶¶ 179, 186, 268, 273 (citing § 6502). Section 6502 affords the IRS ten years to bring a collection action from the date of a timely tax assessment. While a minority of courts have allowed a trustee to stand in the shoes of the IRS and benefit from this ten-year lookback period, the Fifth Circuit has not sanctioned this practice. And for several reasons, the Court should reject the Litigation Trustee's

---

[12] Under the TUFTA, a fraudulent transfer claim must be filed "within four years after the transfer was made or the obligation was incurred." Tex. Bus. & Com. Code § 24.010.

12

effort to invoke the IRS lookback period.

First, there is no allegation that would permit the Court to infer that the IRS could even invoke this statute to collect taxes dating back ten years.  *See In re Taylor, Bean & Whitaker Mortgage Corp.*, No. 3:09-BK-07047-JAF, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sept. 28, 2018) ("The Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment (or, alternatively, prior to accrual of the tax liability).").[13]  Under these circumstances, the Complaint fails to plead any facts that would entitle the Litigation Trustee to invoke the golden creditor rule.

Second, as a matter of statutory interpretation and policy, the Court should reject the Litigation Trustee's invitation to apply the golden creditor rule.  Notably, only in a "'few and far' between" adversary proceedings have courts permitted bankruptcy trustees to wield federal tax law as a "weapon" to extend the relevant statute of limitations.  *In re Kipnis*, 555 B.R. 877, 883 (Bankr. S.D. Fla. 2016).  There are several problems with these courts' analysis.

Most notably, the operative language of § 544(b)(1) states that certain transfers are "*voidable* under applicable law."  By its plain terms, § 6502(a)(1) does not grant the IRS the power to "void" any transfer (nor does it provide the IRS with any state-law remedy); it merely gives the IRS the right to levy taxes.  It makes no sense to read 26 U.S.C. § 6502 to permit the avoidance of transfers—something not even the IRS can do.  Moreover, it is inappropriate to treat a trustee in bankruptcy as if it is on par with a sovereign.  *In re Vaughan Co.*, 498 B.R. 297, 304-05 (Bankr. D.N.M. 2013).  Unlike the IRS, a trustee is not vindicating public rights—it is vindicating the

---

[13] As several of the defendants previously have argued in connection with their motions to withdraw the reference, whether the IRS itself could invoke the ten-year lookback period requires "substantial and material" consideration of federal tax laws which must be resolved by the District Court.  *See, e.g.*, *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992).

rights of private creditors.  *See id*. at 305.  Where the U.S. government seeks to vindicate private rather than public rights in bankruptcy, the state statute of limitations generally applies.  *Id*. at 304 (citing *Marshall v. Intermountain Elec. Co., Inc.*, 614 F.2d 260, 263 n.3 (10th Cir. 1980); *S.E.C. v. Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004)).

Further, interpreting the law to permit a bankruptcy trustee to invoke the tax statute's ten-year lookback period has the potential to "eviscerate" the bankruptcy courts' long-standing practice of looking to state law for the relevant limitations period.  *In re Kipnis*, 555 B.R. at 883.  Because "[t]he IRS is a creditor in a significant percentage of bankruptcy cases," such an interpretation would undoubtedly encourage "widespread use of § 544(b) to avoid state statute of limitations."  *Id*. at 883.  The Fifth Circuit has prevented similar efforts to extend Section 544(b)(1) before.  *See, e.g.*, *In re Mirant Corp.*, 675 F.3d 530, 535 (5th Cir. 2012) (Federal Debt Collection Procedures Act does not constitute "applicable law" under § 544(b)).  The law should not be interpreted in this manner, and the few courts that have done so are wrong.

***Expense Transfers (Counts XXXII-XXXIII).***  The Amended Complaint also seeks to avoid alleged expense transfers made to Mr. Dondero in the year before the Petition Date, invoking 11 U.S.C. § 548.  Am. Compl., ¶¶ 408-417.  Section 548 allows a trustee to avoid intentional fraudulent transfers if the transfers occurred "with actual intent to hinder, delay, or defraud."  The statute also allows the avoidance of constructive fraudulent transfers if the debtor received "less than a reasonably equivalent value in exchange for such transfer" and was insolvent at the time of the transfer, or if other conditions existed at the time of the transfer warranting its avoidance.  The Amended Complaint fails to adequately plead facts supporting the avoidance of any of the alleged expense transfers.

As to the allegedly constructively fraudulent expense transfers, the Amended Complaint

only seeks avoidance of the transfers "[t]o the extent [they] do not constitute reimbursement for valid expenses." Am. Compl., ¶ 409.  In other words, the Amended Complaint does not allege the transfers were not valid reimbursements, nor does it make any plausible allegations about why they should be considered invalid (other than allegations made on speculative "information and belief").

Likewise, the Amended Complaint's allegations that Mr. Dondero made intentional fraudulent expense transfers are deficient.  Again, the Amended Complaint only seeks to avoid these transfers "[t]o the extent [they] do not constitute reimbursement for valid expenses," Am. Compl., ¶ 414, but offers no reason why the Court should consider the transfers anything other than valid reimbursements.  *See* Am. Compl., ¶ 416.  Further, beyond rehashing allegations relating to Mr. Dondero's other unrelated alleged bad acts, the Amended Complaint makes no particular allegations demonstrating that Mr. Dondero made the transfers with specific intent to "hinder, delay, or defraud" creditors, which is preclusive.  *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 647 (N.D. Tex. 2020) (Rule 9(b) applies to intentional fraudulent transfer claims).

Counts XXXII and XXXIII are deficiently pleaded, and so the Court should dismiss them.

### D.    The Amended Complaint Should Be Dismissed For Multiple Additional Reasons

#### 1.    The Amended Complaint's Breach Of Fiduciary Duty Claims Fail

In Counts IV, V, XIV, XV, and XVI, the Litigation Trustee alleges that Mr. Dondero and Strand breached their fiduciary duties to HCMLP by, among other things, (1) creating certain "lifeboats," including NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA"), (2) engaging in actions leading to pre-petition litigation, and (3) facilitating or directing certain transfers.  *See* Am. Compl., ¶¶ 193-216, 274-284.  The Amended Complaint further alleges that Get Good aided and abetted a breach of fiduciary duty by Mr.

15

Dondero and Strand with respect to the CLO Holdco Transaction. *Id.*, ¶ 288.[14] And finally, the

Amended Complaint alleges that Get Good "conspired with Dondero to breach his fiduciary duties

to HCMLP by intentionally siphoning assets away from HCMLP to evade HCMLP's creditors."

*Id.*, ¶ 291. These claims each fail for several independent reasons.

### a.    The LPA precludes the breach of fiduciary claims.

Counts IV, V, and XIV fail because the LPA precludes those claims. The DRULPA

permits a limited partnership to restrict or even eliminate all fiduciary duties by contract. Del.

Code Ann. Tit.6, § 17-1101(d) (West); *see also Brickell Partners v. Wise*, 794 A.2d 1, 3–4 (Del.

Ch. 2001) ("principles of contract preempt fiduciary principles" where a limited partnership

agreement governs fiduciary duties). Where, as here, "the limited partnership agreement

unambiguously provides for fiduciary duties, any claim of a breach of fiduciary duty must be

analyzed generally in terms of the partnership agreement." *Gotham Partners, L.P. v. Hallwood*

*Realty Partners, L.P.*, 817 A.2d 160, 170-71 (Del. 2002). Applying these principles, the Litigation

Trustee's breach of fiduciary duty claims are unsustainable.

The Litigation Trustee alleges that Mr. Dondero and Strand breached their fiduciary duties

to HCMLP by (1) "transferr[ing] HCMLP's valuable business to the lifeboat entities, including

but not limited to NexPoint and HCMFA"; (2) incurring liability to UBS, Acis, Terry,

HarbourVest, the Crusader Funds, and the Redeemer Committee by managing HCMLP's business

in a manner that resulted in potential or actual litigation liabilities; and (3) approving transfers of

money and assets to Massand Capital and CLO Holdco and approving partnership distributions to

---

[14] The Complaint describes the CLO Holdco Transaction as one in which Dugaboy issued a note to Get Good. Am. Compl., ¶ 132. Get Good then gave the note to HCMLP in exchange for certain assets. *Id.*, ¶¶ 132-33. The Litigation Trustee alleges that this transaction was problematic because liquid assets were exchanged for an illiquid note worth less than the assets. *Id.*, ¶ 132. Ultimately the assets were contributed to defendant CLO Holdco Ltd. *Id.*

various individuals and entities.  *See* Am. Compl., ¶¶ 187-213, 259-65.  The Litigation Trustee does not allege that Mr. Dondero or Strand breached HCMLP's LPA by taking (or directing) any of these actions, nor could it.  As set forth above, the HCMLP LPA granted Strand (by and through its officers, directors, representatives, and agents) the authority to:

- Form other entities and to contribute to those entities "assets and properties of the Partnership," as well as to engage in "business interests and activities in direct competition with the Partnership" (LPA, §§ 4.1(a)(xi), 4.1(f))—as Strand allegedly did in the "lifeboat scheme";

- Perform "any and all acts necessary or appropriate to the operation of any business of the Partnership," including taking out loans, incurring indebtedness, using the assets of the Partnership, determining whether to negotiate, execute, or perform contracts, and controlling "the conduct of any litigation" (*id.*, § 4.1(a)(ii), (v), (vi), (vii), (viii), & (xii)—as Strand allegedly did in relation to UBS, Acis, Terry, HarbourVest, the Crusader Funds, and the Redeemer Committee; and

- Distribute "Partnership cash or other assets" in its "sole and unfettered discretion" (*id.*, § 4.1(ix); *id.*, § 3.9(a))—as Strand did in approving transfers and distributions to Massand, CLO Holdco, and others.

In short, the LPA granted Strand, and Mr. Dondero as Strand's director, the broad authority to undertake each and every action that allegedly constituted a breach of their fiduciary duties.

Further, Section 4.1(i) of the LPA expressly limits the liability of the General Partner and those acting on its behalf.  Specifically, that section states that "[n]either the General Partner nor its directors, officers, employees, agents, or representatives shall be liable to the Partnership or any Limited Partner for errors in judgment or for any acts or omissions that do not constitute gross negligence or willful or wanton misconduct."  LPA, § 4.1(i)(i).  The section also reiterates that the General Partner may "exercise any of the powers granted to it" under the LPA "either directly or by or through its directors, officers, employees, agents, or representatives" and states that "the General Partner ***shall not be responsible for any misconduct or negligence on the part of any agent or representative appointed by the General Partner***."  *Id.*, § 4.1(i)(ii).  Again, the Litigation Trustee has not even attempted to plead that Mr. Dondero or Strand took actions that were beyond

17

their powers under the LPA, nor has the Trustee alleged that Mr. Dondero's actions amounted to "gross negligence or willful or wanton misconduct," as is required.  Under these circumstances, the breach of fiduciary duty claims must be dismissed.

### b.    The Court Should Dismiss Counts XV And XVI.

*Aiding and Abetting.*    In Count XV, the Litigation Trustee alleges that "Scott, CLO Holdco, DAF Holdco, DAF, Get Good, and Highland Dallas aided and abetted Dondero's breach of fiduciary duties relating to the CLO Holdco Transaction."  Am. Compl., ¶ 288.  This single-sentence allegation against Get Good fails to state a claim against it for several reasons.  First, the allegation is conclusory and impermissibly lumps several defendants together.  *See Johnson v. E. Baton Rouge Fed'n of Tchrs.*, 706 F. App'x 169, 170 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 687) ("conclusory" allegations "will not be afforded the presumption of truth"); *Winslow*, 2017 WL 283281, at *2 (allegations must be made separately for "each defendant").

Second, the allegation fails to state a claim against Get Good for aiding and abetting liability under Delaware law.  The Litigation Trustee must plead, at a minimum: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation by a non-fiduciary in the fiduciary's breach, and (4) damages proximately caused by the breach.  *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).  For the reasons set forth above, *see* Section IV.D.1.a, the Litigation Trustee fails to plead that Mr. Dondero breached any fiduciary duty to HCMLP in view of the language of the LPA, nor does the Litigation Trustee even attempt to plead Get Good's "knowing participation" in any breach of fiduciary duty in relation to the CLO Holdco Transaction.  These failures are fatal to the claim against Get Good.

*Civil Conspiracy.*    In Count XVI, the Litigation Trustee alleges that "Ellington, Leventon, NexPoint, HCMFA, SAS, Scott, CLO Holdco, DAF Holdco, DAF, Get Good, and Highland Dallas conspired with Dondero to breach his fiduciary duties to HCMLP by intentionally siphoning assets

18

away from HCMLP to evade HCMLP's creditors." Am. Compl., ¶ 291. The Amended Complaint

fails to adequately plead civil conspiracy for two core reasons.

First, as with the aiding and abetting claim, a civil conspiracy claim cannot survive without

a viable underlying tort claim. There is no viable underlying claim because the breach of fiduciary

duty claims against Mr. Dondero fail. Thus, the civil conspiracy claim cannot survive.

Second, the Amended Complaint fails to allege the requisite "meeting of the minds" by the

supposed co-conspirators, which is required. *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545

S.W.3d 180, 196 (Tex. App. 2017) (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)). In this

regard, conclusory allegations are insufficient. Instead, a plaintiff must make specific allegations

demonstrating that the conspiring parties were "aware of the intended harm or proposed wrongful

conduct at the outset of the combination or agreement" and specifically intended and agreed "to

accomplish something unlawful." *Id*. Agreeing to engage in any particular conduct or transaction

is not enough; conspiracy "requires a specific intent to cause the intended injury." *In re Artho*,

587 B.R. 866, 885 (Bankr. N.D. Tex. 2018); *see also Chu v. Hong*, 249 S.W.3d 441, 447 (Tex.

2008) (same). The Amended Complaint includes no allegations of intent against Get Good and

makes only conclusory allegations against Mr. Dondero and thus fails to state claims against them.

### 2.    The Declaratory Judgment Claims Are Insufficient

Counts VI-VIII and IX seek declaratory judgment that Mr. Dondero, Strand, and Dugaboy

are liable for HCMLP's debts in various capacities. Each of these claims is deficient and should

be dismissed.

***Count VI (Strand Liable as GP).*** As an initial matter, as the Delaware statute cited in the

Amended Complaint provides, the liabilities of a general partner to the partnership may be altered

by the relevant partnership agreement, which is precisely what occurred here. *See* DRULPA, §

17-403(b) (cited in Am. Compl., ¶ 218). Count VI makes no reference to HCMLP's LPA, Strand's

19

liabilities pursuant to the LPA, or whether and to what extent the LPA supports a judgment that Strand should be liable for HCMLP's "liabilities" (none of which are specifically identified). Under these circumstances, the Complaint falls well short of alleging a plausible claim for relief.

**Count VII (Dondero Liable as Strand's Alter Ego).** Count VII suffers from similar problems. Again, Mr. Dondero's liabilities as an acting officer and director of Strand are governed by HCMLP's LPA—a document that Count VII simply ignores. But in addition, the allegations of Count VII fall short in several other respects.

Most notably, the claim fails to sufficiently allege facts that would support a finding that Mr. Dondero is Strand's alter ego. Under Delaware law, "to state a claim for piercing the corporate veil under an alter ego theory, [the plaintiff] must show (1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (dismissing alter ego claim where plaintiff failed to plead facts showing that corporation and shareholders operated as a single economic entity). The Litigation Trustee fails to adequately plead either element here.

First, although the Litigation Trustee alleges that Dondero and all his companies acted as a "single economic entity," that bare allegation is insufficient for the imposition of alter ego liability. Under Delaware law, the court must ascertain whether the claimant has adequately alleged such factors as undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of the particular company whose veil is to be pierced, siphoning of the corporation's funds by the dominant stockholder, the absence of corporate records, and that the corporation is merely a "façade" for the dominant shareholder. *Trevino*, 583 F. Supp. 2d at 528-29 (citing *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981)). The existence of any one of these factors "is not per se a reason to pierce the corporate veil." Rather, the inquiry is whether

20

the corporation was established to defraud investors or for some improper purpose.  *Id.* at 530.

The Amended Complaint falls well short of alleging the existence of the various veil-piercing factors.  For example, although the Litigation Trustee alleges that Strand was a "sham entity," the most the Litigation Trustee alleges is that Strand did not hold board meetings or frequently document corporate action.  *See* Am. Compl., ¶¶ 223, 225.  At the same time, the Amended Complaint acknowledges that Strand was formed to act as the general partner of HCMLP (a necessary and legitimate purpose in the creation and operation of a limited partnership), operated according to a set of bylaws and a limited partnership agreement, employed officers over the years, and documented some corporate actions.  *See id.*, ¶¶ 14, 223-24; *see also Trevino*, 583 F. Supp. 2d at 530 (that the corporation "was established for a *legitimate* purpose" weighed against veil piercing).  That Strand did not regularly document corporate actions or hold board meetings does not mean the entity's corporate form was being abused.  Moreover, as the Complaint acknowledges, Mr. Dondero was Strand's sole director and owner, which would make any documentation of meetings with himself quite surprising, to say the least.  And the Amended Complaint fails to allege any of the other veil-piercing factors against Strand.  There are no allegations, for example, that *Strand* was undercapitalized, was insolvent, failed to make distributions to shareholders, or was used as Mr. Dondero's personal piggybank.

The Amended Complaint also fails to sufficiently allege that Mr. Dondero used Strand's corporate form to perpetrate an injustice or unfairness.  In this regard, the allegations of the complaint must support an inference that the dominant shareholder is "using 'an independent corporation' to 'defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise evade the law.'"  *Trevino*, 583 F. Supp. 2d at 529 (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002)).  Importantly, "under Delaware

law, the fraud or injustice . . . must be found in the defendant['s] use of the corporate form." *Id.* at 530 (internal quotations and citations omitted). Merely rehashing the "underlying cause[s] of action . . . does not supply the necessary fraud or injustice." *Id.* at 531. Again, the Amended Complaint does not explain how Strand's corporate form was used to perpetrate any fraud or injustice; rather, the Amended Complaint merely rehashes the conclusory allegation that Mr. Dondero dominated Strand "to make HCMLP act contrary to its own interests." Am. Compl., ¶ 227. That allegation falls far short of the required pleading standard.

**Count VIII (Strand Liable as HCMLP's Alter Ego).** Count VIII likewise fails to set forth allegations sufficient to demonstrate that Strand acted as HCMLP's alter ego. The Amended Complaint ignores that the relationship between Strand and HCMLP was governed by the LPA, pursuant to which Strand was permitted to take various unilateral actions in its management of HCMLP. Nor does the Amended Complaint point to any provisions of the LPA that Strand or Mr. Dondero violated in the conduct of HCMLP's affairs.

The Amended Complaint also contains virtually no allegations about Strand that would support a finding that a legally-formed and heavily regulated general partner should nonetheless bear all of the limited partnership's liabilities. Indeed, the only real allegation in the Amended Complaint says about Strand is that it shared HCMLP's business address. Am. Compl., ¶ 230. But that of course makes sense: Strand was HCMLP's sole general partner, and it had no other business. And the Amended Complaint is devoid of any allegation that Strand's corporate form was abused in a manner that perpetrated some sort of fraud or injustice. Under these circumstances, the alter ego claim against Strand should be dismissed.

**Count IX (Dugaboy as Dondero's Alter Ego).** The Amended Complaint's allegation against Dugaboy is even more specious. Upon review, Defendants are unaware of any case in

22

B-40

Delaware ever holding a *company* liable as the alter ego of an *individual*.  Indeed, to allege a

plausible alter ego claim against Dugaboy, the Litigation Trustee would have to allege (among

other things) that *Mr. Dondero* was insolvent, that *Mr. Dondero* failed to observe corporate

formalities (when he is not a corporation), that Dugaboy was siphoning *Mr. Dondero's* assets for

its own benefit, etc.  Even more ridiculously, the Litigation Trustee would have to allege that *Mr.

Dondero's* existence was used to perpetrate a fraud.  Of course, the Amended Complaint does not

make any of these allegations.  Instead, the Amended Complaint seeks to hold Dugaboy, a

Delaware trust, liable for all the bad acts of its beneficiary.  There is no basis in law to do so, and

the Litigation Trustee's baseless alter ego claim against Dugaboy should be dismissed.

### 3.    The Amended Complaint Fails To Plead A Viable Conversion Claim

In Count XXV, the Litigation Trustee alleges that Mr. Dondero is liable for conversion.

To state a claim for conversion, a plaintiff must plead (1) the plaintiff "owned or had possession

of the property or entitlement to possession;" (2) the defendant "unlawfully and without

authorization assumed and exercised control over the property to the exclusion of, or inconsistent

with, the plaintiff's rights as an owner;" and (3) resulting damages.  *Gibson v. Wells Fargo Bank,

N.A.*, No. 4:16-CV-98-O, 2016 WL 11755377, at *3 (N.D. Tex. June 9, 2016).  The Complaint

fails to plead these requisite elements.

Critically, the Amended Complaint fails to plead that Mr. Dondero "unlawfully and

without authorization assumed and exercised control over the property."  *See id.* at *3.  At most,

the Complaint surmises "on information and belief" that Mr. Dondero "directed Wick Phillips to

withhold the . . . proceeds" rightfully due to HCMLP.  Am. Compl., ¶ 360.  But the Amended

Complaint does not allege that Mr. Dondero's instruction was unlawful or unauthorized, or that

Mr. Dondero ever assumed or exercised actual control of or ownership of the proceeds.  To the

contrary, the Amended Complaint alleges that Wick Phillips, and subsequently two Cayman

Islands entities, exercised that control.  *Id.*, ¶¶ 356, 360.[15]

Further, to maintain a claim for the conversion of money under Texas law, the Litigation

Trustee must also show that "the money (1) was delivered to the defendant for safekeeping, (2)

was intended to be kept segregated, (3) was substantially in the form in which it was received or

intact, and (4) was not the subject of a title claim by the defendant." *Matter of Okedokun*, 968

F.3d 378, 392 (5th Cir. 2020).  Nowhere does the Litigation Trustee allege that any funds were

delivered to Mr. Dondero for safekeeping.  At most, the Litigation Trustee alleges that the funds

were delivered *to HCMLP's counsel* for safekeeping.  Am. Compl., ¶ 356.

Finally, under Texas law, a claim for the conversion of money fails "when the plaintiff

cannot trace the exact funds claimed to be converted, making it impossible to identify the specific

monies in dispute." *Ellis v. Wells Fargo Bank, N.A.*, No. CV G-13-249, 2014 WL 12596473, at

*5-6 (S.D. Tex. Feb. 10, 2014), *report and recommendation adopted,* No. CV G-13-249, 2014 WL

12596480 (S.D. Tex. Mar. 5, 2014) (dismissing conversion claim where plaintiff did not "allege

that he can trace the funds to, for example, an escrow account.").  The Litigation Trustee does not

allege that the funds in question can be traced.  To the contrary, according to the Amended

Complaint, the funds were transferred out of an escrow account and to entities in the Cayman

Islands.  Am. Compl., ¶ 360.  The Litigation Trustee's allegations are insufficient to maintain a

claim for conversion of money under Texas law and Count XXV should therefore be dismissed.

4.      **The Litigation Trustee's Claim For Unjust Enrichment Or Money
        Had And Received Fails As A Matter Of Law**

Count XXVI should be dismissed for several reasons.  First, unjust enrichment is not an

independent cause of action under Texas law.  *Redwood Resort Properties, LLC v. Holmes Co.*

---

[15] Although the Complaint alleges that Grey Royale Ltd., was "owned and controlled by Dondero and
Ellington," *see* Am. Compl., ¶ 360, that allegation, standing alone, does not permit a factfinder to ignore
the corporate form and hold the owners of Grey Royale Ltd. liable for conversion.

*Ltd.*, No. CIVA 3:06CV1022 D, 2006 WL 3531422, at *8 (N.D. Tex. Nov. 27, 2006) ("Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits . . . Accordingly, the court holds that Redwood has failed to state an unjust enrichment claim on which relief can be granted, and it dismisses this action."); *accord Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) (affirming dismissal of unjust enrichment claim because it is "not a distinct cause of action itself"). Because unjust enrichment is not an independent cause of action, the Court should dismiss XXVI of the Amended Complaint.

The Litigation Trustee's allegations also fall far short of pleading a claim for money had and received under Texas law.  To avoid dismissal, a plaintiff must "identify what money [Defendant] actually received individually and why, exactly, that money belongs to [Plaintiff]." *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 675 (W.D. Tex. 2019). Here, the Litigation Trustee does not identify what sum Dondero received or when, and instead seeks to disgorge "all payments, transfers, profits, fees, benefits, incentives, and other things of value" obtained by Dondero.  This vague and conclusory allegation is insufficient to plead a claim for money had and received.

## V.    CONCLUSION

The Court should dismiss the counts against Defendants, either in whole or in part, because (1) the Court lacks subject matter under 28 U.S.C. § 1334 to adjudicate any of the non-core state-law claims, (2) the Litigation Trustee lacks standing to pursue many of the claims; (3) applicable statutes of limitations bar the claims either in whole or in part; and (4) the Amended Complaint fails to sufficiently plead the requisite elements of the claims asserted.

25

Dated: July 11, 2022                    DLA PIPER LLP (US)

                                        /s/ Amy L. Ruhland (Rudd)
                                        Amy L. Ruhland (Rudd)
                                        Texas Bar No. 24043561
                                        Amy.Ruhland@us.dlapiper.com
                                        303 Colorado Street, Suite 3000
                                        Austin, TX 78701
                                        Tele: 512.457.7000

                                        *Attorneys for Defendants James Dondero,
                                        Dugaboy Investment Trust, Get Good Trust,
                                        Hunter Mountain Investment Trust, Rand PE
                                        Fund I, LP, and Strand Advisors, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2022, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

                                        /s/ Amy L. Ruhland
                                        Amy L. Ruhland (Rudd)

# **<u>EXHIBIT C</u>**



**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 201 OF 2025 (RPJ)**

**IN THE MATTER OF THE GRAND COURT ACT**

**BETWEEN:**

**CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

<u>Plaintiff</u>

**AND**

| | |
|---|---|
| **(1)** | **MARK ERIC PATRICK** |
| **(2)** | **PAUL MURPHY** |
| **(3)** | **CDMCFAD, LLC** |
| **(4)** | **DFW CHARITABLE FOUNDATION** |
| **(5)** | **CDH GP, LTD. AS GENERAL PARTNER FOR AND ON BEHALF OF CHARITABLE DAF FUND, LP, AND IN ITS CAPACITY AS GENERAL PARTNER** |
| **(6)** | **CLO HOLDCO, LTD.** |

<u>Defendants</u>

---

**CONSENT ORDER**

---

**UPON** the Plaintiff's Summons dated 15 July 2025 (the "**Injunction Summons**")

**AND UPON** the First, Third, Fifth, and Sixth Defendants' Summons of dated 21 July 2025 (the "**Directions Summons**")

**AND UPON** the parties listed therein giving to the Court the undertakings recorded in Schedule A to this Order

**AND UPON** the Injunction Summons and the Directions Summons being listed for hearing on 31 July 2025 before the Honourable Justice Parker

**IT IS ORDERED BY CONSENT** that:

1    The Injunction Summons shall be adjourned and listed for hearing on the first available date after 18 September 2025 (the "**Hearing**").

2    The time estimate for the Hearing shall be 2 days.

3    Directions for evidence in the Injunction Summons shall be as follows:

    (a) The Defendants shall file and serve any evidence in answer by 4.30pm on 28 August 2025;

    (b) The Plaintiff shall (if so advised) serve any evidence in reply by 4.30pm on 11 September 2025.

4    The Plaintiff shall file an agreed hearing bundle for the Hearing in electronic form by 4pm on the date which is 12 days before the date of the hearing (once listed).

5    The parties shall file and exchange skeleton arguments by 4pm on the date which is 7 days before the date of the hearing (once listed).

6    Costs of the Injunction Summons and the Directions Summons are reserved.

7    Liberty to apply.

DATED this            day of            2025

FILED this            day of            2025

_____

**THE HONOURABLE JUSTICE PARKER**

**JUDGE OF THE GRAND COURT**

Approved as to form and content:

**Maples and Calder (Cayman) LLP**

Attorneys for the Plaintiff

**Campbells LLP**

Attorneys for the First, Third, Fifth and Sixth
Defendants

**Kobre & Kim**

Attorneys for the Second Defendant

**Baker & Partners LLP**

Attorneys for the Fourth Defendant

## Schedule A

Undertakings given by the Defendants

1    Pending the determination of the JOLs' Summons, the Defendants[1], and the related entities listed in Schedule B hereto (the "**CDM Entities**") and their respective agents, servants, employees, and representatives, agree and undertake to:

(a) not to transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares of the CDM Entities outside of the ordinary course of business;

(b) not to take any action to increase the remuneration paid to any employee, manager or director of the CDM Entities;

(c) not to take any action to dissolve, wind-down, liquidate, or otherwise alter the corporate standing of the CDM Entities;

(d) not to take any action to modify or alter the corporate governance of the CDM Entities, including but not limited to any amendment to their respective bylaws or organizational documents;

(e) not to take any action to sell, exchange, or dispossess any asset of one of the CDM Entities unless (i) the sale is to a bona fide third-party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the bona fide purchaser is made aware of this undertaking, and (iii) the proceeds from that sale, exchange, or disposition remain owned by the CDM Entities; and

(f) not to alter, conceal, or destroy any business records concerning the Defendants or the CDM Entities, including any transfers of funds, assets, receivables, or shares to or from the Defendants or CDM Entities.

2    Further, and to the extent not addressed by the foregoing, the Defendants and the CDM Entities undertake and agree that:

---

[1] Being the First Defendant, Mark Patrick; the Second Defendant, Paul Murphy; the Third Defendant, CDMCFAD, LLC; the Fourth Defendant, DFW Charitable Foundation; the Fifth Defendant, CDH GP, Ltd. as general partner for and on behalf of Charitable DAF Fund, LP, and in its capacity as general partner; and the Sixth Defendant, CLO HoldCo, Ltd.

(a) they will preserve and will not in any way dispose of, deal with, encumber, transfer or diminish the value of (as applicable) their or any interest (of whatsoever nature), whether held directly or indirectly, in Charitable DAF Fund, LP (the "**Fund**"), and/or the CDM Entities and/or any assets of the Fund other than in the ordinary course of business; and

(b) they shall not do anything to cause, procure, incite, promote or assist a breach by any other party of this undertaking.

3    From the date of this undertaking to the date of the determination of the JOLs' Summons, the Third, Fourth, Fifth and Sixth Defendants (the "**CDM Defendants**") and the CDM Entities will give 7 days' written notice to the JOLs of any payment or transaction of any nature (or series of related payments or transactions) they propose to make at or above US$50,000. Such notice must include full supporting information and documentation as well as an explanation of the rationale for the transaction.

4    From the date of this undertaking to the date of the determination of the JOLs' Summons, the First Defendant and the Second Defendant will give 7 days' written notice to the JOLs of any payment or transaction of any nature (or series of related payments or transactions) they propose to make at or above US$100,000. Such notice must include full supporting information and documentation as well as an explanation of the rationale for the transaction.

5    If the JOLs have any queries regarding a transaction (or series of related payments or transactions) and whether it is in the ordinary course of the CDM Defendants' or the CDM Entities' business, the CDM Defendants and the CDM Entities undertake to consult with the JOLs and to provide clarification. For the avoidance of doubt, nothing in this undertaking shall prohibit the Defendants and the CDM Entities from making payments to any attorney, lawyer, third party consultant, accountant, or external professional services advisor which is required, either in the ordinary course of business, or in respect of their reasonable legal fees and expenses in connection with these proceedings or the official liquidation of Charitable DAF Holdco, Ltd (In Official Liquidation) [FSD 116 of 2025 (JAJ)], or the Chapter 15 Case (defined below).  All such transactions of the CDM Defendants and the CDM Entities will be provided for in the monthly transactions report pursuant to paragraph 6 of this undertaking. However, the Defendants agree that the issue of whether

they are permitted to use funds that derive directly or indirectly from the limited partner interest in the Fund to pay their legal fees and other service providers will be determined at the Hearing (as defined in paragraph 1 of the consent order to which these undertakings are appended).

6        From the date of this undertaking to the date of the determination of the JOLs' Summons, the CDM Defendants and the CDM Entities will disclose to the JOLs, at the end of each calendar month: (i) a full listing of payments or other transactions undertaken by them below US$50,000 in the calendar month just passed; and (ii) copies of all existing and up to date balance sheets and financial statements or records prepared in relation to the CDM Defendants or the CDM Entities for the period 30 June 2024 onwards. Any information of whatever nature relating to any member of the Defendants or the CDM Entities which is provided to the JOLs pursuant to this paragraph 5, shall not be disclosed to or shared with Mr James Dondero, the Supporting Organisations (being Highland Santa Barbara Foundation, Highland Dallas Foundation, and Highland Kansas City Foundation), or any known affiliates or service providers of these individuals / entities, subject to where the JOLs' are required to disclose any such information in the discharge of their duties to the Court or as otherwise required by law.

7        With respect to the chapter 15 case, *In re Charitable DAF Holdco, Ltd (In Official Liquidation)*, United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), Case No. 25-11376 (BLS) (the "**Chapter 15 Case**"), (i) The First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities consent to the entry of an order, in the form and substance appended hereto at Schedule C, in the Chapter 15 Case, recognising and enforcing the above undertakings in the United States; (ii) the JOLs agree to adjourn the hearing to recognise the Cayman Islands liquidation of Charitable DAF Holdco, Ltd. (the "**Company**") as a foreign main proceeding from 14 August 2025, to a date as soon as practicable, based on the Bankruptcy Court's availability, following the conclusion of inter parties hearing regarding the JOL's Summons (such, date, the "**Adjourned Recognition Hearing Date**"); (iii) the JOLs and the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities agree that the deadline to object to recognition of the Cayman Islands liquidation of the Company shall be the date that is 21 days before the Adjourned Recognition Hearing Date and the deadline for JOLs to reply to objections, if any, shall be the date that is 7 days before the Adjourned Recognition Hearing Date.  For

**Page 7 of 16**

the avoidance of doubt, (i) the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities reserve their rights regarding any relief sought in the Chapter 15 Case, including the relief sought in the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative and (II) Related Relief Under Chapter 15 of the Bankruptcy Code*, other than with respect to matters expressly addressed in this undertaking; and (ii) the JOLs reserve their right to seek provisional relief against parties as they deem necessary or appropriate in furtherance of their duties as official liquidators, including in furtherance of their ongoing investigation of the business and affairs of the Company from the date hereof through the Adjourned Recognition Hearing Date.

**<u>Schedule B</u>**

<u>List of CDM Entities</u>

(i) CDH GP, Ltd. (Cayman Islands)

(ii) CDMCFAD, LLC (Delaware)

(iii) Charitable DAF Fund 2, LP (Cayman Islands)

(iv) Charitable DAF Fund, LP (Cayman Islands)

(v) CLO HoldCo, Ltd. (Cayman Islands)

(vi) Liberty CLO HoldCo, Ltd. (Cayman Islands)

(vii) HCT Holdco 2, Ltd. (Cayman Islands)

(viii) MGM Studios Holdco, Ltd. (Cayman Islands)

(ix) Liberty CLO HoldCo, LLC (Delaware)

(x) Liberty Sub, Ltd. (Delaware)

(xi) Charitable DAF Holdings Corp. (Delaware)

(xii) DST Investco, LLC (Delaware)

(xiii) Allanon Capital Management LLC (Texas)

(xiv) DFW Charitable Foundation (Delaware)

(xv) CLO HoldCo LLC (Delaware)

(xvi) Rand Advisors LLC (Delaware)

(xvii) CDHC Royse City Land LLC (Texas)

(xviii) Royse City Land Company LLC (Texas)

(xix) CDHC Assets LLC (Texas)

(xx) CDHC Fort Worth Land LLC (Texas)

(xxi) CDHC Stewart Creek LLC (Texas)

(xxii) BVP Property LLC (Delaware with CA registration)

## Schedule C

Draft form of Chapter 15 order

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| CHARITABLE DAF HOLDCO, LTD (In Official Liquidation),[2] | Case No. 25-11376 (BLS) |
| Debtor in a foreign proceeding. | |

## ORDER GRANTING PROVISIONAL RELIEF PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 1519 TO RECOGNIZE AND ENFORCE AN ORDER ENTERED BY THE CAYMAN COURT IMPLEMENTING AN ASSET PRESERVATION PROTOCOL WITH RESPECT TO THE CDM ENTITIES

Upon consideration of [a certification of counsel] with respect to the entry by the Cayman Court[3] of an Order Implementing an Asset Preservation Protocol in the Cayman Litigation, dated [July __, 2025] and attached hereto as **Exhibit 1** (the "Asset Preservation Protocol") and it being understood that the JOLs and the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities agree to the terms and form of this order (the "Order") and its entry by the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Asset Preservation Protocol is hereby recognized by this Court and all undertakings as they relate to the First, Third, Fourth, Fifth and Sixth Defendants and the CDM

---

[2] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 263805. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

[3] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 3] (the "Verified Petition").

Entities, set forth therein are fully enforceable in the United States, including, but not limited to, each of the following:

    a.  the First, Third, Fourth, Fifth and Sixth Defendants (as defined in the Asset Preservation Protocol) and the related entities listed in and attached hereto as **Exhibit 2** (the "CDM Entities") and their respective agents, servants, employees, and representatives, agree and undertake to:

        i.  not transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares of the CDM Entities outside of the ordinary course of business;

        ii.  not take any action to increase the remuneration paid to any employee, manager or director of the CDM Entities;

        iii.  not take any action to dissolve, wind-down, liquidate, or otherwise alter the corporate standing of the CDM Entities;

        iv.  not take any action to modify or alter the corporate governance of the CDM Entities, including but not limited to any amendment to their respective bylaws or organizational documents;

        v.  not take any action to sell, exchange, or dispossess any asset of one of the CDM Entities unless (i) the sale is to a bona fide third party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the bona fide purchaser is made aware of this undertaking, and (iii) the proceeds from that sale, exchange, or disposition remain owned by the CDM Entities;

vi.  not alter, conceal, or destroy any business records concerning the First, Third, Fourth, Fifth and Sixth Defendants or the CDM Entities, including any transfers of funds, assets, receivables, or shares to or from the First, Third, Fourth, Fifth and Sixth Defendants or CDM Entities;

b. Further, and to the extent not addressed by the foregoing, the First, Third, Fourth, Fifth and Sixth and the CDM Entities undertake and agree that:

i.  they will preserve and will not in any way dispose of, deal with, encumber, transfer or diminish the value of (as applicable) their or any interest (of whatsoever nature), whether held directly or indirectly, in Charitable DAF Fund, LP (the "Fund"), and/or the CDM Entities and/or any assets of the Fund other than in the ordinary course of business; and

ii.  they shall not do anything to cause, procure, incite, promote or assist a breach by any other party of this Order;

c. From the date of the Asset Preservation Protocol to the date of the determination JOLs' Summons (as defined in the Asset Preservation Protocol), the CDM Defendants (as defined in the Asset Preservation Protocol) and the CDM Entities will give 7 days' written notice to the JOLs of any payment or transaction of any nature (or series of related payments or transactions) they propose to make at or above US$50,000. Such notice must include full supporting information and documentation as well as an explanation of the rationale for the transaction;

d. From the date of the Asset Preservation Protocol to the date of the determination of the JOLs' Summons (as defined in the Asset Preservation

Protocol), the First Defendant (as defined in the Asset Preservation Protocol) will give 7 days' written notice to the JOLs of any payment or transaction of any nature (or series of related payments or transactions) he proposes to make at or above US$100,000. Such notice must include full supporting information and documentation as well as an explanation of the rationale for the transaction;

e.   If the JOLs have any queries regarding a transaction (or series of related payments or transactions) and whether it is in the ordinary course of the CDM Defendants' or the CDM Entities' business, the CDM Defendants and CDM Entities undertake to consult with the JOLs and to provide clarification. For the avoidance of doubt, nothing in this undertaking shall prohibit the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities from making payments to any attorney, lawyer, third party consultant, accountant, or external professional services advisor which is required, either in the ordinary course of business, or in respect of their reasonable legal fees and expenses in connection with the Cayman Litigation, the Cayman Proceeding or this Chapter 15 Case. All such transactions of the CDM Defendants and the CDM Entities will be provided for in the monthly transactions report pursuant to paragraph 1(f) of this Order. However, the First, Third, Fourth, Fifth and Sixth Defendants agree that the issue of whether they are permitted to use funds that derive directly or indirectly from the limited partner interest in the Fund to pay their legal fees and other service providers will be determined at the Hearing (as defined in the Asset Preservation Protocol);

    f.   from the date of the Asset Preservation Protocol to the date of the determination of the JOLs' Summons (as defined in the Asset Preservation Protocol), the CDM Defendants and the CDM Entities will disclose to the JOLs, at the end of each calendar month: (i) a full listing of payments or other transactions undertaken by them below US$50,000 in the calendar month just passed; and (ii) copies of all existing and up to date balance sheets and financial statements or records prepared in relation to the CDM Defendants or the CDM Entities for the period 30 June 2024 onwards. Any information of whatever nature relating to any member of the First, Third, Fourth, Fifth and Sixth Defendants or the CDM Entities which is provided to the JOLs pursuant to this paragraph 1(e), shall not be disclosed to or shared with Mr James Dondero, the Supporting Organizations (being Highland Santa Barbara Foundation, Highland Dallas Foundation, and Highland Kansas City Foundation), or any known affiliates or service providers of these individuals or entities, subject to where the JOLs' are required to disclose any such information in the discharge of their duties to the Cayman Court or as otherwise required by law;

2.    Notwithstanding any provision in the Bankruptcy Rules to the contrary (i) this Order shall be effective immediately and enforceable upon entry; (ii) the JOLs are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (iii) the JOLs are authorized and empowered, and may, in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

3.    Each of the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities reserve their rights regarding any relief sought in the Chapter 15 Case, including the relief sought

in the Verified Petition, other than with respect to matters expressly addressed in paragraph 1 of this Order. For the avoidance of doubt, the First, Third, Fourth, Fifth and Sixth Defendants (as defined in the Asset Preservation Protocol) and the CDM Entities hereby consent to the recognition and enforcement of the Asset Preservation Protocol in the United States through and including the date of determination of the JOLs' Summons (as defined in the Asset Preservation Protocol) and shall not oppose the continuation of such relief at any hearing for recognition of the Cayman Proceeding. By agreeing to the entry of this order, the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities have not consented to jurisdiction in this Court. All parties' rights are reserved with respect to jurisdiction

4.      This Order is a Final Order within the meaning of 28 U.S.C. § 158(a) and is effective immediately upon entry.

5.      This Order shall be binding on and inure to the benefit of the Debtor, the JOLs, the First, Third, Fourth, Fifth and Sixth Defendants, and the CDM Entities.

6.      To the extent there is any inconsistency between the terms of this Order and the Asset Preservation Protocol, the terms of the Asset Preservation Protocol as they relate to the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities shall control.

7.      This Court shall retain jurisdiction over any and all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order, any request for additional relief or any adversary proceeding brought in and through this Chapter 15 Case, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

Dated: [July ___], 2025
        Wilmington, Delaware

_____

Honorable Brendan L. Shannon
United States Bankruptcy Judge

**Exhibit 1**
[Asset Preservation Protocol]

FILED BY Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/LRA/858403.02/83824743)

# **<u>EXHIBIT D</u>**

```
                    IN THE UNITED STATES BANKRUPTCY COURT
1                   FOR THE NORTHERN DISTRICT OF TEXAS
                            DALLAS DIVISION
2
                                     )    Case No. 19-34054-sgj-11
3    In Re:                          )    Chapter 11
                                     )
4    HIGHLAND CAPITAL                )    Dallas, Texas
     MANAGEMENT, L.P.,               )    June 25, 2025
5                                    )    9:30 a.m. Docket
           Reorganized Debtor.       )
6                                    )    - MOTION TO EXTEND DURATION OF
                                     )      TRUSTS (4213)
7                                    )    - MOTION TO APPROVE SETTLEMENT
                                     )      (4216)
8    _____)

9                         TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
10                    UNITED STATES BANKRUPTCY JUDGE.

11   APPEARANCES:

12   For the Highland Capital       John A. Morris
     Management Claimant Trust:     PACHULSKI STANG ZIEHL & JONES, LLP
13                                   780 Third Avenue, 34th Floor
                                     New York, NY  10017-2024
14                                   (212) 561-7760

15   For the Highland Capital       Hayley R. Winograd
     Management Claimant Trust:     Gregory V. Demo
16                                   PACHULSKI STANG ZIEHL & JONES, LLP
                                     1700 Broadway, 36th Floor
17                                   New York, NY  10019
                                     (212) 561-7732
18
     For the Highland Capital       Jeffrey N. Pomerantz
19   Management Claimant Trust:     PACHULSKI STANG ZIEHL & JONES, LLP
                                     10100 Santa Monica Blvd.,
20                                    13th Floor
                                     Los Angeles, CA  90067
21                                   (310) 277-6910

22   For Marc S. Kirschner,         Robert Scott Loigman
     Litigation Trustee:            QUINN EMANUEL URQUHART & SULLIVAN,
23                                    LLP
                                     295 5th Avenue
24                                   New York, NY  10016
                                     (212) 849-7000

25
```

APPEARANCES, cont'd.:

| | |
|---|---|
| For the Hunter Mountain Entities: | Louis M. Phillips<br>Amelia L. Hurt<br>KELLY HART & PITRE<br>301 Main Street, Suite 1600<br>Baton Rouge, LA  70801<br>(225) 381-9643 |
| For the Dugaboy Investment Trust: | Deborah Rose Deitsch-Perez<br>STINSON, LLP<br>2200 Ross Avenue, Suite 2900<br>Dallas, TX  75201<br>(214) 560-2201 |
| For the Dugaboy Investment Trust: | Michael Justin Lang<br>CRAWFORD WISHNEW & LANG, PLLC<br>1700 Pacific Avenue, Suite 2390<br>Dallas, TX  75201<br>(214) 817-4500 |
| For Crown Global Life Insurance, Ltd. and The Dallas Foundation: | David L. Curry, Jr.<br>OKIN ADAMS, LLP<br>1113 Vine Street, Suite 240<br>Houston, TX  77002<br>(713) 228-4100 |
| For Patrick Daugherty: | Andrew K. York<br>Drake Rayshell<br>Joshua Smeltzer<br>GRAY REED & MCGRAW, LLP<br>1601 Elm Street, Suite 4600<br>Dallas, TX  75201<br>(214) 954-4135 |
| For the U.S. Trustee: | Erin Marie Schmidt<br>OFFICE OF THE UNITED STATES<br>    TRUSTEE<br>1100 Commerce Street, Room 976<br>Dallas, TX  75242-1496<br>(214) 767-1075 |
| Recorded by: | Michael F. Edmond, Sr.<br>UNITED STATES BANKRUPTCY COURT<br>1100 Commerce Street, 12th Floor<br>Dallas, TX  75242<br>(214) 753-2062 |

3

1    Transcribed by:            Kathy Rehling
                                311 Paradise Cove
2                               Shady Shores, TX  76208
                                (972) 786-3063
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25         Proceedings recorded by electronic sound recording;
              transcript produced by transcription service.

Patrick - Direct                                   172

1              MR. LANG:  Yes.

2                         DIRECT EXAMINATION

3    BY MR. LANG:

4    Q    Mr. Patrick, does this Hunter Mountain Investment Trust

5    org chart that I just handed you accurately reflect the

6    structure of the Hunter Mountain Investment Trust ownership

7    today?

8    A    Just give me a few moments to review.

9    Q    Sure.

10             MR. LEWIS:  Your Honor, I had mentioned early on that

11   we object to this whole line of questioning because it's

12   outside the scope of the objection of Dugaboy.  And I don't

13   want to interrupt, but I want to make sure that my objection

14   is continuing, because this has nothing to do with the

15   objection presented by Dugaboy.

16             THE COURT:  All right.

17             MR. PHILLIPS:  So we object to the question.

18             THE COURT:  Okay.  So the record will reflect

19   basically a running objection from Hunter Mountain?

20             MR. PHILLIPS:  We would appreciate that, Your Honor.

21             THE COURT:  Okay.  In light of the failure of Dugaboy

22   to disclose Mark Patrick as a witness, as well as the failure

23   to challenge in a written objection his authority.  Okay.  So

24   I recognized that this was quite a persuasive objection, but

25   given the magnitude, I would say, of what is going on here,

Patrick - Direct                    173

1   potentially a settlement that could come very close to ending

2   this long-running plan implementation process, I'm erring, if

3   it's an error, I'm erring on the side of allowing this.  All

4   right.  But you have a running objection that the record will

5   reflect if one day there is an appeal.

6            MR. MORRIS:  And, Your Honor, the Highland Claimant

7   Trust and the Highland Litigation Subtrust and Highland

8   Capital Management, LP join Mr. Phillips' objection.

9            THE COURT:  Okay.  Understood.

10            MR. PHILLIPS:  Thank you very much, Your Honor.

11            THE COURT:  All right.

12   BY MR. LANG:

13   Q    Mr. Patrick, have you had time to study this Hunter

14   Mountain Investment Trust org chart?

15   A    Yes, I have.

16   Q    And does this accurately show the ownership structure for

17   Hunter Mountain Investment Trust today?

18   A    I'm not sure, without reviewing the underlying corporate

19   documents on some of these entities that you have listed here.

20   Q    Did you help prepare this chart?

21   A    No.

22   Q    No?  Okay.  So Hunter Mountain Investment Trust is owned

23   by Beacon Mountain, LLC, correct?

24   A    Yes.

25   Q    And Beacon Mountain, LLC is owned by CLO Holdco, LLC,

1    correct?

2    A    Correct.

3    Q    And CLO Holdco, LLC is owned by CLO Holdco, Limited?

4    A    That's correct.

5    Q    And CLO Holdco, Limited is owned by Charitable DAF Fund,

6    LP?

7    A    Correct.

8    Q    And Charitable DAF Fund 1, LP is owned by CDMC FAD, LLC?

9    A    The ultimate beneficial owner is DFW Charitable

10   Foundation.  To my -- to the best of my recollection, I would

11   say that appears accurate.  I'm just not a hundred percent.

12   Q    Okay.  And --

13   A    But I am a hundred percent that DFW Charitable Foundation

14   is the ultimate beneficial owner.  And I'm a hundred percent

15   that Dugaboy Investment Trust has no interest in it.  And I'm

16   also a hundred percent that The Dallas Foundation or any --

17             MR. LANG:  Judge, I haven't asked --

18             THE WITNESS:  -- or any other nonprofit has any --

19             MR. LANG:  -- any of these questions.

20             THE COURT:  Okay.  There's an objection,

21   nonresponsive.  I sustain.

22   BY MR. LANG:

23   Q    Mr. Patrick, before December of 2024, Charitable DAF Fund,

24   LP was owned by Charitable DAF Holdco, correct?

25   A    (Pause.)  I'm just waiting for a relevancy.  I don't

Patrick - Direct                          175

1   understand how that's relevant to my authority --

2            THE COURT:  Okay.  You're not allowed to make a

3   relevancy objection.  Okay.

4            MR. PHILLIPS:  Your Honor, I think the problem is

5   that, if I could, we have made an objection.  And our

6   objection, our running objection is founded on relevancy and

7   founded on improper process.  So I would like to just tell the

8   Court, and so my client representative can hear it, that the

9   fact that I'm not standing up every time there's a problematic

10  question, --

11           THE COURT:  Okay.

12           MR. PHILLIPS:  -- because every question is

13  problematic, my objection is being maintained to every

14  question that's being asked.

15           THE COURT:  Okay.  You understand that, right?

16           THE WITNESS:  I --

17           THE COURT:  There's a running relevancy objection.

18  You're the witness.  You can't make the objection.  But it's

19  on the record for whatever use it might have down the road.

20           MR. PHILLIPS:  I have objected to every question

21  that's coming in connection with this line of questioning on

22  the basis of relevance.

23           THE COURT:  I got it.  I think we all have it.

24           MR. PHILLIPS:  I'm just --

25           MR. LANG:  Understood.

# **EXHIBIT E**

E-filed in the Office of the Clerk
for the Business Court of Texas
7/13/2025 5:09 PM
Accepted by: Alexis Jennings
Case Number: 25-BC01B-0027

# DuaneMorris®

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

*FIRM and AFFILIATE OFFICES*

JOSEPH M. COX
PARTNER
DIRECT DIAL: +1 214 257 7252
PERSONAL FAX: +1 214 853 9480
*E-MAIL: JMCox@duanemorris.com*

*www.duanemorris.com*

ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

HANOI
HO CHI MINH CITY

ALLIANCES IN MEXICO

July 11, 2025

Mr. Brian Shaw                                                    *Sent via email*
Carrington, Coleman, Sloman, & Blumenthal
901 Main Street, Suite 5500
Dallas, Texas 75202
bshaw@ccsb.com

> **Re:    The Highland Dallas Foundation, Inc, et al v. Mark Patrick, et al,**
> **Cause No. 25-BC01B-0027**
> **Rule 11 Agreement**

Dear Mr. Shaw:

Pursuant to Texas Rule of Civil Procedure 11, the parties in this matter The Highland Dallas Foundation, Inc., The Highland Kansas City Foundation, Inc., and The Highland Santa Barbara Foundation, Inc. (collectively "Plaintiffs"), and Mark Patrick, DFW Charitable Foundation, CDMCFAD, LLC, and CDH GP, Ltd. (collectively "Defendants"), agree to the following:

(1) The "Covered Entities" as referred to herein is defined to include collectively Charitable DAF Fund, LP and/or any of its subsidiaries, the DFW Charitable Foundation and/or any of its subsidiaries, CDMCFAD, LLC and/or any of its subsidiaries, and/or any of its subsidiaries, and CDH GP, Ltd. and/or any of its subsidiaries.

(2) Defendants shall have until Monday, July 14, 2025, to file a challenge to the court's jurisdiction (the "Plea").

(3) Plaintiffs shall have until Monday, July 21, 2025, to file a response to the Plea.

(4) Defendants shall have until Thursday, July 24, 2025, to file a reply to the Plea.

(5) The Parties agree to the following limits on discovery prior to any hearing on Plaintiffs' application for temporary injunction/appointment of receiver (the "Temporary Injunction")

Copy from re:SearchTX

DuaneMorris

Brian Shaw, Esq.
July 11, 2025
Page 2

in this matter (these limits shall have no effect on any discovery conducted after the Temporary Injunction is decided):

    a.   Plaintiffs and Defendants each (not per party) may serve 25 requests for production to the other, may serve 5 interrogatories, may serve 10 requests for admission, and may take 3 depositions (2 of which shall be limited to 3 hours, and one of which shall be limited to 6 hours, the selection of the witness for the six hour deposition to be determined by the party seeking the deposition).

    b.   The Parties shall serve all discovery requests no later than Wednesday, July 16, 2025.

    c.   Responses to the written discovery and substantial completion of related any related document production shall be served as follows: (1) if the Court denies the Plea as to any Defendant, seven business days after the Court order denying the Plea is entered; (2) if the Court grants the Plea as to all Defendants, then responses to written discovery shall not be due, if at all, until seven business days after the Court's order granting the Plea is reversed or overturned.

        Depositions shall take place within seven days after the written discovery responses and documents are served as set forth in c. above.

(6) If the Court denies the Plea, the Temporary Injunction shall be heard as reasonably practicable after the ruling, unless stayed by an appellate court. If the Plea is granted, but is later reversed or overturned, the same timelines for discovery provided in (5) above shall be followed and the Parties shall then seek to expeditiously set a hearing before the Court.

(7) Pending the Court's decision on the Temporary Injunction or grant of the Plea relating to the Temporary Injunction or Plea), the Covered Entities and their respective agents, servants, employees, representatives, and all other persons acting under the aegis of, in concert with, or for any Covered Entity, agree:

    a.   not to transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares outside of the ordinary course of business;

    b.   not take any action to increase the compensation paid to any employee of the Covered Entities;

    c.   not to take any action to dissolve, winddown, liquidate, or otherwise alter the corporate standing of Covered Entities;

    d.   not to take any action to modify or alter the corporate governance of the Covered Entities, including but not limited to any amendment to their respective bylaws or organizational documents;

    e.   not to take any action to sell, exchange, or dispossess any asset of one of the Covered Entities unless (i) the sale is to a bona third party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the bona fide

DM1 16831875.1

E-3

Copy from re:SearchTX

DuaneMorris

Brian Shaw, Esq.
July 11, 2025
Page 3

purchaser is made aware of this Rule 11 Agreement, and (iii) the proceeds from that sale, exchange, or disposition remain owned by the Covered Entities;

f.   not to alter, conceal, or destroy any business records concerning the Defendants, including any transfers of funds, assets, receivables, or shares to the Defendants;

(8) This Agreement shall be filed with the Court and, as provided in the first sentence of this letter, constitutes an enforceable agreement pursuant to Texas Rule of Civil Procedure 11. This Agreement shall expire and be of no force or effect on the earlier of (a) thirty days after a final order of the Court dismissing this case or (b) the Court's ruling on Plaintiffs' current request for a temporary injunction (or as subsequently amended). This does not prevent a party from requesting that a court of appeals issue an order to keep this Rule 11 Agreement in place during the pendency of such appeal or any objection to such request.

If the terms above accurately reflect our agreement, please acknowledge your agreement by signing below.

Best regards.

Sincerely,

Joseph M. Cox

AGREED TO FORM AND CONTENT:

Brian Shaw, Counsel for Defendants

JMC/kr
cc:    (all via email)
        Darren McCarty, Esq.
        Craig Warner, Esq.
        Clients

DM1\16831875.1

E-4

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Craig Warner on behalf of Craig Warner
Bar No. 24084158
CMWarner@duanemorris.com
Envelope ID: 103064824
Filing Code Description: Notice
Filing Description: Rule 11 Agreement
Status as of 7/14/2025 9:38 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Darren McCarty | 24007631 | darren@mccartylawpllc.com | 7/13/2025 5:09:31 PM | SENT |
| Monica G.Gaudioso | | mgaudioso@ccsb.com | 7/13/2025 5:09:31 PM | SENT |
| Jason E.Boatright | | JEBoatright@duanemorris.com | 7/13/2025 5:09:31 PM | SENT |
| Brian P.Shaw | | bshaw@ccsb.com | 7/13/2025 5:09:31 PM | SENT |
| Angie Barrera | | abarrera@ccsb.com | 7/13/2025 5:09:31 PM | SENT |
| Craig M.Warner | | CMWarner@duanemorris.com | 7/13/2025 5:09:31 PM | SENT |
| Judy Garrison | | jgarrison@ccsb.com | 7/13/2025 5:09:31 PM | SENT |
| Sherry Stewart | | sstewart@ccsb.com | 7/13/2025 5:09:31 PM | SENT |
| Joseph MCox | | JMCox@duanemorris.com | 7/13/2025 5:09:31 PM | SENT |
| Benjamin Warden | | BWarden@duanemorris.com | 7/13/2025 5:09:31 PM | SENT |
| Andrea Reed | | areed@ccsb.com | 7/13/2025 5:09:31 PM | SENT |
| Katherine Ramos | | KRamos@duanemorris.com | 7/13/2025 5:09:31 PM | SENT |
| James Billingsley | | JBillingsley@duanemorris.com | 7/13/2025 5:09:31 PM | SENT |
| Dylan JAnderson | | DJAnderson@duanemorris.com | 7/13/2025 5:09:31 PM | SENT |
| Rhonda LThomas | | rthomas@ccsb.com | 7/13/2025 5:09:31 PM | SENT |
| Emily Owen | | eowen@ccsb.com | 7/13/2025 5:09:31 PM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 7/13/2025 5:09:31 PM | SENT |

E-5

Copy from re:SearchTX

# **<u>EXHIBIT F</u>**

Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for Get Good Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

**AMENDED RESPONSE OF GET GOOD TRUST
TO ORDER REQUIRING DISCLOSURES**

COMES NOW Get Good Trust and files this response of Get Good Trust to *Order
Requiring Disclosures* [Dkt. # 2460] (the "Order"), entered by the Court *sua sponte* in the above
styled and numbered Chapter 11 bankruptcy case (the "Bankruptcy Case") of Highland Capital
Management, L.P. (the "Debtor"), respectfully stating as follows:

**I.    RESPONSE**

1.      The Court has entered an order requiring Get Good Trust to make certain
disclosures relative to its standing in connection with the above captioned matter.  The Court has
already ruled on a number of matters before this Court that Get Good Trust has possessed the
requisite standing on matters that it has taken a position or filed a support pleading.

1934054210709000000000000014

2.      The Get Good Trust is actually three different trust, the Get Good Trust, The Get Good Non Exempt Trust No. 1, and the Get Good Non Exempt Trust No. 2 (together, the "Trusts").  The Trusts are all named as "Related Entities" which are enjoined by Debtor's *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)* (the "Plan").  *See* Dkt. No. 1811-9 at p. 19.  As enjoined parties, the Trusts have standing to seek relief from the Plan.  *See, e.g., Samnorwood Indep. Sch. Dist. v. Tex. Educ. Agency*, 533 F.3d 258, 265 (5th Cir. 2008) ("a third party had standing to appeal an injunction which adversely affects its interest, even when it was not a party to the litigation").

3.      Get Good Trust is a named defendant in the matter styled *Official Committee of Unsecured Creditors vs. CLO Holdco, Ltd., Charitable DAF Holdco, Ltd., Charitable DAF Fund, LP, Highland Dallas Foundation, Inc., The Dugaboy Investment Trust, Grant James Scott III in his individual capacity, as Trustee of The Dugaboy Investment Trust, and as Trustee of The Get Good Nonexempt Trust, and James D. Dondero* (Case No. 20-03195).  In the adversary proceeding where Get Good Trust is named as a defendant, the standing of Get Good Trust is not at issue.  The suit challenges a transfer of a note by Get Good to the Debtor for certain assets and then the transfer of the acquired assets to other parties.

4.      Further, Trusts have standing based upon the proofs of claim that they have filed in this bankruptcy case.  Although the Debtor has challenged the Trusts' claims, they have the right to assert the claims and participate in these bankruptcy proceedings as parties in interest.

## II.    DISCLOSURES

5.      Get Good Trust is a **Delaware** Trust.  As a Trust, it has no owners, rather, beneficiaries and a trustee.  Distributions out of the Trust and the decisions made on behalf of the Trust are governed by the Trust documents.  The inception of the Trust was in 2001 and Jim

Dondero is the settlor of the Trust and Grant Scott is the Trustee. Grant Scott is the current

Trustee. The Trust has two parts within the Trust which are designated as Part A and Part B.

One part is designated as exempt and the other non exempt. Both Part A and Part B were created

under the 2001 Trust Document executed by Scott as Trustee and Dondero as Settlor.

6.      Ultimate beneficiaries of the Get Good Trust are the Children and Descendants of

Jim Dondero.

7.      A search of the KCC site for proofs of claim in this case reveals that Get Good

and Get Good Non Exempt Trusts 1 and 2 have filed proofs of claim. The claims are numbered

120 (the Get Good Trust), 128 (Get Good Non Exempt Trust 1) and 129 (Get Good Non Exempt

Trust 2). The claims are based upon and audit of the Debtor's 2008 tax return, which audit may

result in the Debtor being liable to its limited partners, including the three Get Good Trusts. The

Claims also relate to the Debtor's failure to make tax distributions for the period 2004 through

2018.

.

July 9, 2021.

                                        Respectfully submitted,

                                        /s/Douglas S. Draper.
                                        Douglas S. Draper, La. Bar No. 5073
                                        ddraper@hellerdraper.com
                                        Leslie A. Collins, La. Bar No. 14891
                                        lcollins@hellerdraper.com
                                        Greta M. Brouphy, La. Bar No. 26216
                                        gbrouphy@hellerdraper.com
                                        Michael E. Landis, La. Bar No. 36542
                                        mlandis@hellerdraper.com

                                        Heller, Draper & Horn, L.L.C.
                                        650 Poydras Street, Suite 2500
                                        New Orleans, LA  70130
                                        Telephone: (504) 299-3300

Fax: (504) 299-3399
*Attorneys for Get Good Trust*

## CERTIFICATE OF SERVICE

I, Douglas S. Draper, counsel for Get Good Trust, do hereby certify that I caused a copy of the above and foregoing to be served on **July 9, 2021**, via the Court's ECF Notification System as follows:

- David G. Adams    david.g.adams@usdoj.gov, southwestern.taxcivil@usdoj.gov;dolores.c.lopez@usdoj.gov
- Michael P. Aigen    michael.aigen@stinson.com, stephanie.gratt@stinson.com
- Amy K. Anderson    aanderson@joneswalker.com, lfields@joneswalker.com;amy-anderson-9331@ecf.pacerpro.com
- Zachery Z. Annable    zannable@haywardfirm.com
- Bryan C. Assink    bryan.assink@bondsellis.com
- Asif Attarwala    asif.attarwala@lw.com
- Joseph E. Bain    JBain@joneswalker.com, kvrana@joneswalker.com;joseph-bain-8368@ecf.pacerpro.com;msalinas@joneswalker.com
- Michael I. Baird    baird.michael@pbgc.gov, efile@pbgc.gov
- Sean M. Beach    bankfilings@ycst.com, sbeach@ycst.com
- Paul Richard Bessette    pbessette@KSLAW.com, ccisneros@kslaw.com;jworsham@kslaw.com;kbryan@kslaw.com;jcarvalho@kslaw.com;rmatsumura@kslaw.com
- John Y. Bonds    john@bondsellis.com
- Matthew Glenn Bouslog    mbouslog@gibsondunn.com
- Larry R. Boyd    lboyd@abernathy-law.com, ljameson@abernathy-law.com
- Jason S. Brookner    jbrookner@grayreed.com, lwebb@grayreed.com;acarson@grayreed.com;cpatterson@grayreed.com
- Greta M. Brouphy    gbrouphy@hellerdraper.com, dhepting@hellerdraper.com;vgamble@hellerdraper.com
- M. David Bryant    dbryant@dykema.com, csmith@dykema.com
- Candice Marie Carson    Candice.Carson@butlersnow.com
- Annmarie Antoniette Chiarello    achiarello@winstead.com
- Shawn M. Christianson    schristianson@buchalter.com, cmcintire@buchalter.com
- James Robertson Clarke    robbie.clarke@bondsellis.com
- Matthew A. Clemente    mclemente@sidley.com, matthew-clemente-8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russell@sidley.com;dtwomey@sidley.com
- Megan F. Clontz    mclontz@spencerfane.com, lvargas@spencerfane.com
- Andrew Clubok    andrew.clubok@lw.com, andrew-clubok-9012@ecf.pacerpro.com,ny-courtmail@lw.com
- Leslie A. Collins    lcollins@hellerdraper.com

- David Grant Crooks    dcrooks@foxrothschild.com,
  etaylor@foxrothschild.com,jsagui@foxrothschild.com,plabov@foxrothschild.com,jmanfr
  ey@foxrothschild.com
- Deborah Rose Deitsch-Perez    deborah.deitschperez@stinson.com,
  patricia.tomasky@stinson.com;kinga.mccoy@stinson.com
- Gregory V. Demo    gdemo@pszjlaw.com,
  jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com
  ;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjla
  w.com;lsc@pszjlaw.com
- Casey William Doherty    casey.doherty@dentons.com,
  dawn.brown@dentons.com;Melinda.sanchez@dentons.com;docket.general.lit.dal@dento
  ns.com
- Douglas S. Draper    ddraper@hellerdraper.com,
  dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbro
  uphy@hellerdraper.com
- Lauren Kessler Drawhorn    lauren.drawhorn@wickphillips.com,
  samantha.tandy@wickphillips.com
- Vickie L. Driver    Vickie.Driver@crowedunlevy.com,
  crissie.stephenson@crowedunlevy.com;seth.sloan@crowedunlevy.com;elisa.weaver@cr
  owedunlevy.com;ecf@crowedunlevy.com
- Jason Alexander Enright    jenright@winstead.com
- Robert Joel Feinstein    rfeinstein@pszjlaw.com
- Matthew Gold    courts@argopartners.net
- Bojan Guzina    bguzina@sidley.com
- Margaret Michelle Hartmann    michelle.hartmann@bakermckenzie.com
- Thomas G. Haskins    thaskins@btlaw.com
- Melissa S. Hayward    MHayward@HaywardFirm.com, mholmes@HaywardFirm.com
- Michael Scott Held    mheld@jw.com, lcrumble@jw.com
- Gregory Getty Hesse    ghesse@HuntonAK.com,
  astowe@HuntonAK.com;tcanada@HuntonAK.com;creeves@HuntonAK.com
- Juliana Hoffman    jhoffman@sidley.com, txefilingnotice@sidley.com;julianna-
  hoffman-8287@ecf.pacerpro.com
- A. Lee Hogewood    lee.hogewood@klgates.com,
  haley.fields@klgates.com;matthew.houston@klgates.com;mary-
  beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.co
  m;Artoush.varshosaz@klgates.com
- Warren Horn    whorn@hellerdraper.com,
  dhepting@hellerdraper.com;vgamble@hellerdraper.com
- William R. Howell    william.howell@bondsellis.com, williamhowell@utexas.edu
- John J. Kane    jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com
- Jason Patrick Kathman    jkathman@spencerfane.com,
  gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com
- Edwin Paul Keiffer    pkeiffer@romclaw.com, bwallace@romclaw.com
- Jeffrey Kurtzman    kurtzman@kurtzmansteady.com
- Phillip L. Lamberson    plamberson@winstead.com
- Lisa L. Lambert    lisa.l.lambert@usdoj.gov

- Michael Justin Lang     mlang@cwl.law,
  nvazquez@cwl.law;aohlinger@cwl.law;jgonzales@cwl.law;vpatterson@cwl.law
- Edward J. Leen     eleen@mkbllp.com
- Paul M. Lopez     bankruptcy@abernathy-law.com
- Faheem A. Mahmooth     mahmooth.faheem@pbgc.gov, efile@pbgc.gov
- Ryan E. Manns     ryan.manns@nortonrosefulbright.com
- Brant C. Martin     brant.martin@wickphillips.com, samantha.tandy@wickphillips.com
- Brent Ryan McIlwain     brent.mcilwain@hklaw.com,
  robert.jones@hklaw.com;brian.smith@hklaw.com
- Thomas M. Melsheimer     tmelsheimer@winston.com, tom-melsheimer-
  7823@ecf.pacerpro.com
- Paige Holden Montgomery     pmontgomery@sidley.com,
  txefilingnotice@sidley.com;paige-montgomery-
  7756@ecf.pacerpro.com;crognes@sidley.com;ebromagen@sidley.com;efilingnotice@sid
  ley.com
- J. Seth Moore     smoore@ctstlaw.com, jsteele@ctstlaw.com
- John A. Morris     jmorris@pszjlaw.com
- Edmon L. Morton     emorton@ycst.com
- Holland N. O'Neil     honeil@foley.com,
  jcharrison@foley.com;acordero@foley.com;holly-holland-oneil-3540@ecf.pacerpro.com
- Rakhee V. Patel     rpatel@winstead.com,
  dgalindo@winstead.com;achiarello@winstead.com
- Charles Martin Persons     cpersons@sidley.com, txefilingnotice@sidley.com;charles-
  persons-5722@ecf.pacerpro.com
- Louis M. Phillips     louis.phillips@kellyhart.com, june.alcantara-
  davis@kellyhart.com;Amelia.Hurt@kellyhart.com
- Mark A. Platt     mplatt@fbtlaw.com, aortiz@fbtlaw.com
- Jeffrey Nathan Pomerantz     jpomerantz@pszjlaw.com
- Kimberly A. Posin     kim.posin@lw.com, colleen.rico@lw.com
- Jeff P. Prostok     jprostok@forsheyprostok.com,
  jjones@forsheyprostok.com;tlevario@forsheyprostok.com;calendar@forsheyprostok.co
  m;calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com
- Linda D. Reece     lreece@pbfcm.com
- Penny Packard Reid     preid@sidley.com, txefilingnotice@sidley.com;penny-reid-
  4098@ecf.pacerpro.com;ncade@sidley.com
- Suzanne K. Rosen     srosen@forsheyprostok.com,
  jjones@forsheyprostok.com;lbreedlove@forsheyprostok.com;calendar@forsheyprostok.c
  om;srosen@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com
- Davor Rukavina     drukavina@munsch.com
- Amanda Melanie Rush     asrush@jonesday.com
- Alyssa Russell     alyssa.russell@sidley.com
- Mazin Ahmad Sbaiti     mas@sbaitilaw.com, krj@sbaitilaw.com;jeb@sbaitilaw.com
- Douglas J. Schneller     douglas.schneller@rimonlaw.com
- Michelle E. Shriro     mshriro@singerlevick.com,
  scotton@singerlevick.com;tguillory@singerlevick.com

- Nicole Skolnekovich    nskolnekovich@hunton.com,
  astowe@huntonak.com;creeves@huntonak.com
- Frances Anne Smith    frances.smith@judithwross.com,
  michael.coulombe@judithwross.com
- Eric A. Soderlund    eric.soderlund@judithwross.com
- Martin A. Sosland    martin.sosland@butlersnow.com,
  ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com
- Laurie A. Spindler    Laurie.Spindler@lgbs.com, Dora.Casiano-
  Perez@lgbs.com;dallas.bankruptcy@lgbs.com
- Jonathan D. Sundheimer    jsundhimer@btlaw.com
- Kesha Tanabe    kesha@tanabelaw.com
- Clay M. Taylor    clay.taylor@bondsellis.com, krista.hillman@bondsellis.com
- Chad D. Timmons    bankruptcy@abernathy-law.com
- Dennis M. Twomey    dtwomey@sidley.com
- Basil A. Umari    BUmari@dykema.com, pelliott@dykema.com
- United States Trustee    ustpregion06.da.ecf@usdoj.gov
- Artoush Varshosaz    artoush.varshosaz@klgates.com, Julie.garrett@klgates.com
- Julian Preston Vasek    jvasek@munsch.com
- Donna K. Webb    donna.webb@usdoj.gov,
  brian.stoltz@usdoj.gov;CaseView.ECF@usdoj.gov;brooke.lewis@usdoj.gov
- Jaclyn C. Weissgerber    bankfilings@ycst.com, jweissgerber@ycst.com
- Elizabeth Weller    dallas.bankruptcy@publicans.com, dora.casiano-
  perez@lgbs.com;Melissa.palo@lgbs.com
- Daniel P. Winikka    danw@ldsrlaw.com,
  craigs@ldsrlaw.com,dawnw@ldsrlaw.com,ivys@ldsrlaw.com
- Hayley R. Winograd    hwinograd@pszjlaw.com
- Megan Young-John    myoung-john@porterhedges.com

*/s/Douglas S. Draper.*

# **EXHIBIT G**

**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopier: (817) 878-9280

**COUNSEL FOR CLO HOLDCO, LTD., CHARITABLE DAF FUND, LP AND
HIGHLAND DALLAS FOUNDATION, INC.**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-sgj11 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | |
| **L.P.,** | § | **Chapter 11** |
| | § | |
| Debtor | § | **Relates to Dkt. No. 2460** |

---

**RESPONSE AND DISCLOSURES RELATED TO THE COURT'S ORDER REQUIRING DISCLOSURES**

CLO HoldCo, Ltd. ("CLO HoldCo"), Charitable DAF Fund, LP ("DAF Fund"), Highland

Dallas Foundation, Inc., ("Highland Dallas Foundation," collectively, the "Charitable

Respondents"),[1] file this *Response* ("Response") and submit these *Disclosures* ("Disclosures") to

comply with the Court's *sua sponte Order Requiring Disclosures* (Dkt. No. 2460) (the

"Disclosures Order").

---

[1]    CLO Holdco and Highland Dallas Foundation have filed a *Motion to Withdraw the Reference* in Adversary Case No. 20-03195 (the "Adversary Proceeding"), at Dkt. No. 24 (in the Adversary Proceeding), and neither the fact nor content of this Response is intended to be nor shall be deemed a waiver of their right to a trial by jury on all claims asserted in the Adversary Proceeding nor consent to the entry of final orders in the Adversary Proceeding by the Bankruptcy Court.  DAF Fund is also a defendant in the Adversary Proceeding but has not been served.  Neither the fact nor content of this Response by DAF Fund is intended to be nor shall be deemed: a waiver of service requirements in the Adversary Proceeding; acceptance of service of citation or summons in the Adversary Proceeding; waiver of its right to a trial by jury on all claims in the Adversary Proceeding (if ever served), nor consent to the entry of final orders in the Adversary Proceeding by the Bankruptcy Court (again, if ever served).  The Charitable Respondents submit this Response in the Bankruptcy Case solely because the Court has ordered them to do so, and because they have appeared before this Court previously.

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ I

TABLE OF AUTHORITIES ......................................................................................... II

PRELIMINARY STATEMENT ..................................................................................... 1

PROCEDURAL HISTORY ............................................................................................ 4

RESPONSE ..................................................................................................................... 7

    I.        The Charitable Respondents are independently owned and controlled charitable organizations. ................................................................................. 7

        a)    CLO HoldCo ..................................................................................... 9

        b)    DAF Fund ........................................................................................ 9

        c)    DAF Holdco ................................................................................... 10

        d)    DAF GP ......................................................................................... 11

        e)    The Supporting Organizations ....................................................... 11

        f)    Mr. Patrick's role .......................................................................... 15

    II.       The Charitable Respondents have donated tens of millions of dollars to charitable causes ................................................................................. 16

    III.      CLO HoldCo and DAF Fund may be creditors of the Debtor ............................... 18

    IV.      The Disclosures Order is procedurally improper and the Court has no power to institute *sua sponte* investigations into hypothetical standing. .............................. 20

        a)    The Court does not have the power to require non-parties to provide it with disclosures. ............................................................................... 20

        b)    The Court's *sua sponte* investigation into hypothetical standing is improper. .......... 22

        c)    The Disclosures Order is not just improper, it is prejudicial. ..................................... 26

CONCLUSION .............................................................................................................. 28

TABLE OF AUTHORITIES

Page(s)

**Cases**

Baum v. Blue Moon Ventures, LLC,
    513 F.3d 181 (5th Cir. 2008) .............................................................................26

Berry v. CIGNA/RSI-CIGNA,
    975 F.2d 1188 (5th Cir. 1992) ..........................................................................21

Brackeen v. Haaland,
    994 F.3d 249 (5th Cir. 2021) ............................................................................24

Castro v. United States,
    540 U.S. 375, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) .....................................23

In re Delta Underground Storage Co., Inc.,
    165 B.R. 596 (Bankr. S.D. Miss. 1994) ............................................................25

Franklin v. Laughlin,
    No. SA-10-CV-1027 XR, 2011 WL 598489 (W.D. Tex. Jan. 13, 2011) ................26

In re Friede Goldman Halter Inc.,
    600 B.R. 526 (Bankr. S.D. Miss. 2019) ............................................................25

Greenlaw v. United States,
    554 U.S. 237 (2008) .........................................................................................23

NASCO, Inc. v. Calcasieu Television & Radio, Inc.,
    894 F.2d 696 (5th Cir.1990) ............................................................................22

Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,
    2 F.3d 1397 (5th Cir. 1993) .........................................................................21, 22

Navtech US Surveyors USSA Inc. v. Boat/Us Inc.,
    No. 219CV184FTM99MRM, 2019 WL 3219667 (M.D. Fla. July 17, 2019) ........24

In re Saldana,
    531 B.R. 141 (Bankr. N.D. Tex.), aff'd in part, remanded in part, 534 B.R.
    678 (N.D. Tex. 2015) .......................................................................................22

Sanchez-Llamas v. Oregon,
    548 U.S. 331 (2006) .........................................................................................23

Simon v. Taylor,
    794 F. App'x 703 (10th Cir. 2019) ..................................................................23

*Thompson v. Gonzales,*
No. 1:15-CV-301-LJO-EPG, 2016 WL 5404436 (E.D. Cal. Sept. 27, 2016) ........................22

*Uberoi v. Labarga,*
769 F. App'x 692 (11th Cir. 2019) ........................................................................24

*United States v. Sineneng-Smith,*
140 S. Ct. 1575 (2020) .........................................................................................23

*Matter of Ward,*
978 F.3d 298 (5th Cir. 2020) ................................................................................21

*Wood v. Milyard,*
566 U.S. 463 (2012) .............................................................................................23

**Statutes**

11 U.S.C. § 101(10) ...............................................................................................20

11 U.S.C. § 105.........................................................................................5, 20, 21, 24

**Other Authorities**

Adam Milani & Michael Smith, *Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts*, 69 TENN. L. REV. 245 (2002) .................................23

Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory*, 41 WM. & MARY L. REV. 743, 832 (2000)....................................................................................................................24

Ralph Brubaker, *Of State Sovereign Immunity and Prospective Remedies: The Bankruptcy Discharge As Statutory Ex Parte Young Relief*, 76 AM. BANKR. L.J. 461, 563 (2002).............................................................................................24

## PRELIMINARY STATEMENT

1.      CLO HoldCo, DAF Fund, and Highland Dallas Foundation have each previously filed pleadings in this Court and are, at least arguably, parties to the Bankruptcy Case.  As set forth herein, several targets of the Court's Disclosures Order have never made an appearance before this Court including Charitable DAF Holdco, Ltd.[2] ("DAF Holdco"), Highland Santa Barbara Foundation, Inc. ("Highland Santa Barbara Foundation"), and Highland Kansas City Foundation, Inc. ("Highland Kansas City Foundation," collectively with DAF Holdco and Highland Santa Barbara Foundation, the "Non-Party Targets").[3]  The Court does not have the power to order a non-party to produce documents nor undertake *sua sponte* investigations, particularly into non-parties.  The fact that these entities are non-parties and at the same time targets, is telling.  Further the Non-Party Targets have not been served with the Disclosures Order.

2.      Neither the Charitable Respondents nor undersigned counsel are authorized to make appearances for the Non-Party Targets, and the Non-Party Targets are not by this Response submitting themselves to this Court's jurisdiction.  The Charitable Respondents file this Response and submit these Disclosures solely on their own behalf and neither they nor undersigned counsel are appearing for or on behalf of the Non-Party Targets.  Nonetheless, much of the Disclosures provided by the Charitable Respondents on their own behalf will be informative regarding the Non-Party Targets.  Further, the Non-Party Targets have provided limited authorization for the

---

[2]      Undersigned counsel has been retained to represent DAF Holdco; however, DAF Holdco has never made an appearance in this bankruptcy case and has not been served in the Adversary Proceeding.  Nor has DAF Holdco been served with this Disclosures Order.  DAF Holdco has not authorized undersigned counsel to accept service nor to make an appearance for it in this Bankruptcy Case.

[3]      The Highland Dallas Foundation, the Highland Santa Barbara Foundation, and the Highland Kansas City Foundation are sometimes also referred to as "Supporting Organizations."

1

Charitable Respondents, through Mr. Mark Patrick ("Patrick"), to provide the information to the Court that is submitted by the Charitable Respondents in this Response.

3.      Further, the Disclosures Order does not mention the third-party foundation level entities included in the Structure Chart (*infra*) ("Foundations"); however, these Foundations have provided the Charitable Respondents with documents and important information regarding their charitable giving structures and the supporting organizations include the Highland Dallas Foundation and the supporting organizations that are Non-Party Targets.  The fact and content of this Response is not intended to be nor shall be deemed to be an appearance by these Foundations in this Bankruptcy Case, nor submission by them to this Court's jurisdiction.  The Charitable Respondents file this Response and submit these Disclosures solely on their own behalf and neither they nor undersigned counsel are appearing for or on behalf of the Foundations.

4.      Patrick has provided a declaration regarding the information provided by and/or about the Foundations and the Supporting Organizations, and as provided herein within the Disclosures.  As well, he has reviewed the Response and Disclosures.  *See* **Exhibit 1** [Mark Patrick Declaration]

5.      As set forth herein, contrary to the Court's unsupported and highly prejudicial *sua sponte* assertions that the Charitable Respondents and Non-Party Targets "appear to be under the *de facto* control of Mr. Dondero," the Charitable Respondents and Non-Party Targets (along with the Foundations) make up a legal and viable charitable giving structure, established through a non-byzantine set of entities that has committed over $42 million in grants, and funded $32.5 million, to nonprofits across a wide-range of issues including education, support of military, veterans, and first-responders, and victims of family violence and child abuse.  With respect to Mr. Dondero, of course he is involved, personally in the capacity as the Donor personality.  In addition, as disclosed

within the Disclosures, he holds positions within the Supporting Organizations, which are subject

to the authority of the Foundations they support.  As well, and as established by Mr. Patrick's

uncontroverted testimony before this Court, Mr. Dondero currently acts as an unpaid investment

advisor to CLO HoldCo and DAF Fund.  However, as will be shown Mr. Dondero is not in "de

facto" or legal control of the Charitable Respondents nor the Non-Party Targets (nor the

Foundations).

6.    The Charitable Respondents take the time to refute the Court's assertions in the

Disclosures Order because not only are they factually inaccurate—which will be shown herein and

through the submitted Disclosures—but worse, these *sua sponte* findings bear directly upon the

causes of action asserted by Official Committee of Unsecured Creditors (the "Committee") against

CLO HoldCo, DAF Holdco, DAF Fund, and Highland Dallas Foundation (the "Charitable

Defendants") in Adversary Proceeding No. 20-03195 (the "Adversary Proceeding").  While there

are several motions to withdraw the reference pending in the Adversary Proceeding, this Court

should, at an absolute minimum, refrain from espousing, *sua sponte*, any "findings" or

"conclusions" that in fact are indistinguishable from allegations made in conclusory fashion (much

like the Court's expositions) by a plaintiff party in litigation currently pending in this Court.  Such

an "approach" to exercise of the judicial function (under the notion of maintaining the Court's

docket) is, frankly, not recognizable as a constitutional approach to exercise of judicial power.

This Court, it appears has become litigant, investigator and decider, far outside the scope of case

or controversy.  Through its assertions the Court appears to have decided integral issues in the

Adversary Proceeding *sua sponte* without considering any evidence nor offering the Charitable

Defendants any opportunity to present their case, and all this notwithstanding pending motions to

G-9

withdraw reference (that the Court has previously stayed over the objection of the Charitable
Defendant movers).

## PROCEDURAL HISTORY

7.      As the Court is aware, there was a show cause hearing on June 8, 2021 (the "Show
Cause Hearing") related to the lawsuit filed by CLO HoldCo and DAF Fund against the Debtor
captioned *Charitable DAF Fund, L.P. et al. v. Highland Capital Management, L.P. et al*., case no.
21-cv-00842, pending in the United States District Court for the Northern District of Texas (the
"District Court Suit").  In the District Court Suit, the plaintiffs filed a motion to amend their
complaint (the "Seery Motion"), and thereafter, the Court issued what it titled: *Order Requiring
the Violators to Show Cause Why They Should Not Be Held in Civil Contempt for Violating Two
Court Orders* [Dkt. No. 2255] (the "Show Cause Order") to determine if the "Violators" should
be held in contempt of court for filing the Seery Motion.  The Court ordered the "Violators," as
defined by the Court, including CLO HoldCo and DAF Fund, those persons who authorized the
filing of the Seery Motion and the District Court Suit (and the law firm representing the plaintiffs),
along with Mr. Dondero, to appear at the Show Cause Hearing.

8.      Patrick identified himself as the person who authorized the filing of the Seery
Motion and the District Court Suit and identified that he was vested with such authority by virtue
of his position as the director CLO HoldCo and control person of DAF Fund.  *See* Response, Dkt.
No. 2309.  The Debtor undertook extensive discovery related to the Show Cause Hearing with the
express purpose of attempting to prove that despite Mr. Patrick authorizing the filings and being
the control person of the plaintiffs, Mr. Dondero should nonetheless be held in contempt.

4

9.     Therefore, at the Show Cause Hearing, the respondents, including Patrick, introduced evidence reflecting the structure of the Charitable Respondents,[4] the ownership of the Charitable Respondents,[5] and the controlling entities/persons of the Charitable Respondents.[6] At the Show Cause Hearing, Patrick further provided extensive testimony regarding the creation, structure, organization, purpose, and control of the Charitable Respondents. *See* **Exhibit 2** [Transcript, June 8, 2021 Hearing, Excerpts].

10.     On June 17, 2021, the Court issued its Disclosures Order *sua sponte* pursuant to Section 105 of the Bankruptcy Code and its "inherent ability to efficiently monitor its docket and evaluate standing of parties who ask for relief in the [Bankruptcy Case]." Disclosures Order, p. 1.

11.     Importantly, the Disclosures Order does not relate to and was not issued in connection with any contested matter or adversary proceeding before the Bankruptcy Court. Instead, the Court states that the Disclosures Order is "in furtherance of [its] desire to be more clear about the standing of various of these entities, and to assess whether their interests may be sufficiently aligned, in some circumstances, so as to require joint pleadings." Disclosures Order, p. 12. As such, the Court appears to be attempting to ascertain some sort of generalized standing where there is no proceeding before it and contemplating the issuance of pre-filing injunctions against the Charitable Respondents and Non-Party Targets.

12.     Based on the forgoing, the Disclosures Order requires numerous parties (whether before the Court or not), including the Charitable Respondents and Non-Party Targets, to file a notice in the Bankruptcy Case disclosing: (a) who owns the entity (showing percentages); (b)

---

[4] Exhibit and Witness List, Dkt. No. 2411 (Exhibit 1)

[5] Exhibit and Witness List, Dkt. No. 2411 (Exhibit 9, 10, 11, 12, 15, 16, 17, 18, 19, 20)

[6] Exhibit and Witness List, Dkt. No. 2411 (Exhibit 3, 4, ,5, 6, 7, 8, 29)

Case 24-03050-sgj Doc 25-33 Filed 07/09/21 Entered 07/09/21 16:22:11 Page 14 of 34
Case 19-34054-sgj11 Doc 2548 Filed 07/06/21 Entered 07/06/21 15:25:29 Page 135 of 202
Appendix    Page 135 of 202

whether Mr. Dondero or his family trusts have either a direct or indirect ownership interest in the entity and, if so, what percentage of ultimate ownership; (c) who are the officers, directors, managers and/or trustees of the Non-Debtor Dondero-Related Entity (this itself looks to be a determination by this Court of "relationship" with damaging consequences); and (d) whether the entity is a creditor of the Debtor (explaining in reasonable detail the amount and substance of its claims).

13.     The Disclosures Order does not even pretend to be concerned with such mundane matters as proper service, or the right of parties not before the Court, even if creditors, to remain outside the Court.   Certainly the Court does not exhibit a glimpse of concern about possible limitations upon the judicial power to compel parties to appear before it.   Because of its assertions concerning Mr. Dondero's "de facto control" of third party entities (again, outside of any pending case or controversy and in fact contrary to evidence put before the Court), the Court has (i) dispensed with case or controversy boundaries, and (ii) sent its Disclosures Order into the universe as an all-powerful compulsion imposed upon entities that have never made appearance before the Court - all without service.   All because this Court has concluded that these third parties are controlled by Mr. Dondero, and because this Court has power over Mr. Dondero, it need not think twice about its power over any entity it has determined (without ground) to be controlled by Mr. Dondero because such party may have some relation to Mr. Dondero.

14.     As mentioned above, the Charitable Respondents are responding.   But the entities outside the scope of the Court's authority are not appearing in Response.   As set forth below, the Charitable Respondents believe this Response and the Disclosures provided herein are sufficient and compliant.   The Charitable Respondents reserve all rights.

**RESPONSE**

15.     The Charitable Respondents file their Response to the Disclosures Order to comply with it, but with full reservations concerning the propriety of such a *sua sponte* investigation into standing where there is no proceeding before the Court and the prospective issuance of pre-filing injunctions against parties who have never participated in the Bankruptcy Case (i.e. the Non-Party Targets), or have only do so on a limited basis or were compelled to by order of the Court (i.e. the Charitable Respondents).

16.     The Charitable Respondents have already provided the Debtor and the Court with much of the information ordered by the Court, and do so again and more robustly herein, to show to the Court that the Charitable Respondents are not "under the *de facto* control of Mr. Dondero" and its directors do not act "at Mr. Dondero's direction."  *See* Disclosures Order, pp. 5, 11.

17.     The Charitable Respondents, however, take this opportunity to correct any misunderstanding regarding their structure and control, while noting and reserving all rights regarding the impropriety of such prejudicial *sua sponte* assertions.

I.     **The Charitable Respondents are independently owned and controlled charitable organizations.**

18.     The best starting point to understand the structure of the Charitable Respondents is the Structure Chart attached hereto as **Exhibit 3** ["Structure Chart"].  For ease of reference, the Structure Chart is reproduced as follows:

7



19.     Second, the Charitable Respondents provide the Court with a legal memorandum of Kenneth K. Bezozo, a partner with Haynes and Boone, LLP, determined by the Charitable Respondents to be a legal expert in the field of taxation and organizational structures.  *See* **Exhibit 4** [Kenneth K. Bezozo Memorandum].  As the Bezozo Memorandum explains, the Structure Chart and the entity structure of which the Charitable Respondents are a part (along with the Supporting Organizations and the Foundations) is a structure including offshore entities that is a typical industry standard investment structure to facilitate tax-exempt ownership and charitable giving.  Given that the structure employed is in fact, within the tax-exempt, charitable entity structures neither unusual nor exotic, the Charitable Respondents submit that contrary to the jargon appropriated by the Court from the Committee and the Debtor and its counsel, this structure is not at all "Byzantine."

8

Case 3-24-03057-sgj Doc 25-3 Filed 07/09/21 Entered 07/09/21 07:56:22 Page 14 of 34
Case 21-03000-sgj Doc 48-7 Filed 07/09/21 Entered 07/09/21 07:56:22 Page 14 of 34
Appendix    Page 138 of 202

**The Entities**

### a)  CLO HoldCo

20.      As the Structure Chart reflects, CLO HoldCo is a company limited by shares incorporated in the Cayman Islands.  *See* **Exhibit 5** [Certificate of Incorporation - CLO HoldCo, Ltd.].  CLO HoldCo was incorporated in 2010. *See* **Exhibit 6** [Memorandum of Association of CLO HoldCo, Ltd.].  CLO HoldCo is managed and controlled by directors who are appointed by resolution of shareholders of CLO HoldCo.  *See* Memorandum of Association of CLO HoldCo, Ltd., p. 11-12 ("Directors").  The Directors are currently Mr. Patrick and Mr. Paul Murphy.  *See* **Exhibit 36** [CLO HoldCo - Register of Directors].

21.      CLO HoldCo is owned by the holder of its sole share.  The sole shareholder of CLO HoldCo was previously DAF Holdco who contributed the share on November 7, 2011 to DAF Fund.  *See* **Exhibit 7** [Ordinary Share Registry - CLO HoldCo].  Therefore, CLO HoldCo is wholly owned by DAF Fund.[7]

### b)  DAF Fund

22.      DAF Fund is a limited partnership organized under the laws of the Cayman Islands. *See* **Exhibit 8** [Certificate of Registration of Exempted Limited Partnership - DAF Fund]. Pursuant to the *Amended and Restated Exempted Limited Partnership Agreement dated November 7, 2011* (the "DAF Fund LP Agreement"), DAF Holdco is the limited partner of the DAF Fund and the Charitable DAF GP, LLC ("DAF GP") is the general partner.  *See* **Exhibit 9** [DAF Fund

---

[7]      While not appearing on the Structure Chart, nor made subject of the Disclosures Order, there are subsidiaries of CLO HoldCo as well, and these are named, with corresponding ownership and director exhibits identified as follows: (i) Liberty CLO Holdco, Ltd. (*see* **Exhibits 38 and 39** [Register of Directors and Share Register]); (ii) MGM Studios HoldCo, Ltd. (*see* **Exhibits 40 and 41** [Register of Directors and Share Register]); (iii) HCT HoldCo 2, Ltd. (*see* **Exhibits 42 and 43** [Register of Directors and Share Register]).  Note, Dondero holds no directorship or ownership.

9

LP Agreement].  Pursuant to the terms of the DAF Fund LP Agreement, DAF Holdco contributed its equity interest in CLO HoldCo to DAF Fund pursuant to a Contribution and Transfer Agreement dated November 7, 2011.  Ordinary Share Class Transfers - CLO HoldCo; DAF Fund LP Agreement, ¶3.1.

23.    The express purpose of DAF Fund is and always was to invest and trade in securities of all type and other investment vehicles for the purpose of befitting, direct and indirectly, the indirect equity owners of DAF Holdco, which were required to be Section 501(c)(3) of the IRS Code entities or organizations or have sole beneficiaries which are entities or organizations exempt from taxation under Section 501(c)(3) of the IRS Code.  *See* DAF Fund LP Agreement, ¶1.3.

24.    Because DAF Fund is a limited partnership, the DAF GP has the exclusive and complete discretion in the management and control of the DAF Fund.  DAF Fund LP Agreement, ¶1.6, **Exhibit 10** [DAF Fund General Partner Register].

### c)  DAF Holdco

25.    DAF Holdco is a company limited by shares incorporated under the laws of the Cayman Islands.  See **Exhibit 11** [Amended and Restated Memorandum of Association of DAF Holdco].  DAF Holdco's equity ownership consists of holders of Management and Participating Shares.  *Id*.  The Management Shares confer no right to participate in profits but rather to manage DAF Holdco, whereas Participating Shares confer the right to participate in profits or assets but not management rights.  *Id*.

26.    The Management Shares of DAF Holdco were allotted to Grant Scott ("Scott") in 2011 but as will be discussed herein, were transferred to Patrick in 2021.  *See* **Exhibit 12** [Register of Management Shares DAF Holdco].  The Directors are currently Mr. Patrick and Mr. Paul Murphy.  *See* **Exhibit 37** [DAF Holdco - Register of Directors]. The Participating Shares of DAF

10

Holdco are held by the "Supporting Organizations," which are Highland Kanas City Foundation [32.78%], Highland Dallas Foundation [32.78%], Highland Santa Barbara Foundation [32.78%], and Highland Community Foundation of North Texas [1.63%].[8]  *See* **Exhibit 13** [Register of Participating Shares DAF Holdco].

27.     As set forth in the DAF Fund LP Agreement, DAF Fund's investments are for the benefit of the equity owners of  DAF Holdco which were required to be non-profit organizations. The Supporting Organizations are those non-profit organizations.

**d) DAF GP**

28.     DAF GP is a limited liability company organized under the laws of Delaware.  *See* **Exhibit 14** [Certificate of Formation of DAF GP].  Again, DAF GP is the general partner of DAF Fund who manages and controls DAF Fund.  Prior to March 2021, 100% of the limited liability company interests in the DAF GP (the "DAF GP Membership Interests") were held by Mr. Scott. Mr. Scott transferred all of the DAF GP Membership Interests to Mr. Patrick.  **Exhibit 15** [Assignment and Assumption of Membership Interests Agreement Dated March 24, 2021].

29.     As shown by the Exhibits hereto, Dondero holds no ownership, officer, or director status in any of:  CLO HoldCo; DAF Fund; DAF HoldCo; or DAF GP.

**e) The Supporting Organizations**

30.     As mentioned, the Supporting Organizations are Highland Dallas Foundation, Highland Kansas City Foundation, Highland Santa Barbara Foundation, and Highland Community Foundation of North Texas.  These Supporting Organizations were established by the Foundations.

---

[8]     The Court has not included Highland Community Foundation of North Texas in its Disclosures Order.

- **Highland Dallas Foundation**

31.     Highland Dallas Foundation is a corporation incorporated in 2011 under the laws of Delaware. **Exhibit 16** [HDF Certificate of Incorporation]. The Highland Dallas Foundation was and is organized and operated exclusively for charitable, educational and scientific purposes within the meaning of Section 501(c)(3) of the IRS Code. **Exhibit 17** [IRS Determination - HDF].

32.     The Highland Dallas Foundation supports and benefits the Dallas Foundation. *See* HDF Certificate of Incorporation, **Exhibit 18** [Narrative Description of Activities]. The Dallas Foundation is a third-party and is the oldest community foundation in Texas.

33.     As set forth in the attached letter from the President and Chief Executive Officer of the Dallas Foundation, the Dallas Foundation is a Texas nonprofit corporation, and is the successor in interest to Dallas Community Trust, a charitable trust which was formed in 1929. **Exhibit 19** [reserved for supplementation]. The Dallas Foundation has hundreds of donors with whom it works regularly to make charitable grants supporting numerous worthy causes and regularly utilizes donor-advised funds and supporting organizations to carry out its charitable mission. *Id.*

34.     The Highland Dallas Foundation is a membership corporation, and its members have the ultimate authority to elect its Board of Directors. *Id.* **Exhibit 20** [HDF Bylaws]. The Highland Dallas Foundation has two (2) classes of members, an "Institutional Member" (the TDF), and an "Individual Member" (Mr. Dondero). *Id.*

35.     The Institutional Member has two (2) votes and the Individual Member has only one (1) vote on any matter submitted to the members. *Id.* Further, the Institutional Member elects two (2) of Highland Dallas Foundation's three (3) directors, and the Individual Member elects one (1) director. *Id.* The Board of Directors of Highland Dallas Foundation consists of Mr. Dondero, Julie Diaz (Chief Philanthropic Partnerships Officer of TDF) and Matthew Randazzo (President

12

G-18

& Chief Executive Officer of Dallas Foundation).  Mr. Dondero serves as President, Mr. Randazzo

serves as Vice President and Ms. Diaz serves as Secretary and Treasurer.

36.     So while Mr. Dondero is a member with some level of influence within the

Highland Dallas Foundation, he has 1/3 of the voting power, where TDF employees have 2/3 of

voting power.

37.     The Highland Dallas Foundation is an independent supporting organization of the

Dallas Foundation.  While Mr. Dondero is on the Board of Directors and is President of the

Highland Dallas Foundation, it cannot be said to be "under the control" (de facto or otherwise) of

Mr. Dondero, because of the control of the Board of Directors held by the Dallas Foundation.

- **Highland Santa Barbara Foundation**

38.     The Highland Santa Barbara Foundation was formed in November 2011 as a

Delaware nonprofit nonstock corporate to operate exclusively for the benefit of, to perform the

functions of, or carry out the purposes of Santa Barbara Foundation.  See **Exhibit 21** [HSBF

Certificate of Incorporation]; **Exhibit 22** [IRS Determination - HSBF].

39.     The Santa Barbara Foundation is a third-party community foundation incorporated

in 1928 as a nonprofit corporation to enrich the lives of the people of Santa Barbara County through

philanthropy.  **Exhibit 23** [SBF Letter Overview].  The Santa Barbara Foundation funds a wide

range of initiatives, projects, and organizations and has supported nearly every Santa Barbara

County nonprofit organization and essential community sproject during its 93-year history.  *Id.*

40.     Similarly to the Dallas Foundation, the Santa Barbara Foundation works with

entities organized under Section 509(a)(3) of IRS Code as supporting organizations to Santa

Barbara Foundation for the specific and primary purpose of benefiting, performing functions of,

13

and engaging in activities consistent with Santa Barbara Foundation's charitable purposes. *Id.* Highland Santa Barbara Foundation is one such supporting organization. *Id.*

41.     Again as is common amongst supporting organizations, Highland Santa Barbara Foundation has two classes of members, institutional and individual, and one member in each class. *Id.*, *see also* Bylaws HSBF. Santa Barbara Foundation is the institutional member and Mr. Dondero is the individual member. Highland Santa Barbara Foundation has three directors, two elected by SBF and one elected by Mr. Dondero. The president, secretary, and any other officers of HSBF are elected by the three directors. *Id.* The directors are Mr. Dondero, Jacqueline M. Carrera (President & CEO of SBF), and Arnold Brier (Santa Barbara County community volunteer). Currently, Mr. Dondero serves as President, Jacqueline M. Carrera as Vice President, and the Secretary position is vacant pending board of directors election.

42.     Again, while Mr. Dondero positions in the Highland Santa Barbara Foundation, it is certainly not under his "de facto" control, nor do the other directors and officers act under Mr. Dondero's direction. The Highland Santa Barbara Foundation is an independent supporting organization of the Santa Barbara Foundation, and is controlled by the Santa Barbara Foundation. Imputing a lack of independence based on what is a typical structure for supporting organization management sets a unwarrantable precedent for charitable organizations.

- **Highland Kansas City Foundation**

43.     Highland Kansas City Foundation was and is organized and operated exclusively for charitable, educational and scientific purposes within the meaning of Section 501(c)(3) of the IRS Code, and to support and benefit the Greater Kansas City Community Foundation ("GKCCF"). *See* **Exhibit 24** [GKCCF Certificate of Formation].

14

44.    The Greater Kansas City Community Foundation was created in 1978 and manages over $4 billion in assets, and again uses donor-advised funds and supporting organizations. *See* **Exhibit 25** [GKCCF Letter].  As explained by the President & CEO of Greater Kansas City Community Foundation, Highland Kansas City Foundation is one of 18 supporting organizations that Greater Kansas City Community Foundation works with. *Id.*

45.    Highland Kansas City Foundation has two classes of members, institutional and individual, and one member in each class. *See* **Exhibit 26** [Bylaws HKCF].  Greater Kansas City Community Foundation is the institutional member and Mr. Dondero is the individual member.

46.    The Directors of Highland Kansas City Foundation are: Brenda Chumley (Senior Vice President of Greater Kansas City Community Foundation), Mr. Dondero, and Deborah Wilkerson (the President & CEO of Greater Kansas City Community Foundation).  The Highland Kansas City Foundation has not named officers. All three directors approve grants by unanimous consent.

### f)  Mr. Patrick's role

47.    Prior to March 24, 2021, Mr. Scott was the holder of Management Shares in the DAF Holdco.  On March 24, 2021, Mr. Scott executed the *Share Transfer Form*, in which he transferred the management shares in DAF Holdco to Mr. Patrick.  **Exhibit 27** [Share Transfer Form].  Further on March 24, 2021, Mr. Scott and Mr. Patrick entered into that certain *Assignment and Assumption of Membership Interest* whereby Mr. Scott assigned and Mr. Patrick assumed one hundred percent of the limited liability company interest in the DAF GP.  *See* Assignment and Assumption Agreement.

48.    As the holder of the management shares in DAF Holdco, Mr. Patrick executed a resolution removing Mr. Scott as Director and appointing Mr. Patrick as Director.  **Exhibit 28** [March 25 Resolution - DAF Holdco].

15

49.     On April 2, 2021, Mr. Patrick, as holder of one hundred percent of the interest in DAF GP, executed the shareholder resolution removing Mr. Scott as Director of CLO HoldCo and appointing Mr. Patrick as director.  **Exhibit 29** [April 2 Resolution - CLO HoldCo].

50.     While on paper the switch from Mr. Scott to Mr. Patrick was completed, it became obvious that this switch would be practically more complicated.  Therefore, there was a transitional period wherein Mr. Scott had to continue to authorize certain actions with Mr. Patrick assisting him.  As of the date of filing, Mr. Scott no longer has authority/ control over the Charitable Respondents.

51.     After Mr. Patrick's appointment, he determined that given the breadth of issues facing the Charitable Respondents, including but not limited to the Adversary Proceeding, it would be in the best interest of DAF Holdco, CLO HoldCo and others for another director to be appointed. As such, on April 22, 2021, Paul Murphy was appointed a director of DAF Holdco and CLO HoldCo.  **Exhibit 30** [Written Resolution - Murphy].

## II.     The Charitable Respondents have donated tens of millions of dollars to charitable causes

52.     The Court included the Charitable Respondents and Non-Party Targets as part of what it terms — borrowing from the Committee's verbiage in the Adversary Proceeding — Mr. Dondero's "byzantine" empire and made *sua sponte* assertions regarding their lack of independence and Mr. Dondero's "de facto" control.  Again, as will be set forth herein, these findings are procedurally improper and highly prejudicial to the Charitable Defendants.  But most importantly, they are wrong.

53.     The Charitable Respondents are part of a charitable structure that donates tens of millions of dollars to charitable causes focusing on education; support for military, veterans, and

16

first responders; health and medical research; economic and community development initiatives;

and youth and family.  *See* **Exhibit 31** [Charitable Giving Overview, Grant Summary: 2012-2020].

54.     Since 2012, the Supporting Organizations have committed over $42 million to

nonprofit organizations, and have funded $32 million of the total commitments (with the remaining

commitments being comprised of future scheduled installments).  *Id.*

55.     The Supporting Organizations' charitable giving has made a tangible impact on

some of the most vulnerable including grants to the Dallas Children's Advocacy Center which

serves over 8,000 abused children a year and The Family Place which serves more than 11,000

victims of family violence.  *Id.*  The CEO of The Family Place has submitted a letter in support

which is attached hereto as **Exhibit 32** [The Family Place Letter].  The Family Place empowers

victims of family violence by providing safe housing and counseling, and identifies its partnership

with the Highland Dallas Foundation as "instrumental" in providing community exposure and

awareness of domestic violence as well as providing essential services to family violence victims.

*Id.*  As stated by the CEO, The Family Violence Place would not be able to successfully serve its

domestic violence clients without this support.

56.     Cristo Rey Dallas also submitted a letter in support of the Highland Dallas

Foundation which is submitted herewith as **Exhibit 33** [Cristo Rey Letter].  Cristo Rey Dallas

provides college preparatory high school curriculum accessible to those of limited financial

resources.  Highland Dallas Foundation provided impactful donations which allow Crito Rey

Dallas to provide services to its 465 students, including funding work study programs and remote

work places during COVID-19 pandemic.  *Id.*

57.     Dallas Children's Advocacy Center submitted a letter in support of the Highland

Dallas Foundation which is submitted herewith as **Exhibit 34** [DCAC Letter].  Dallas Children's

17

G-23

Advocacy Center's mission is to improve the lives of abused children in Dallas County and to provide national leadership on child abuse issues. *Id*. Highland Dallas Foundation has robustly supported this mission since 2016, including providing funding that has been critical to the sustainability of its programs. *Id*.

58.    The Supporting Organizations' grants to the Center for BrainHealth helped provide and training other programming to members of the military, veterans, and local law enforcements to improve their congestive health. *See* Charitable Giving Overview.

59.    The Friends of the Dallas Police grants show appreciation to men and women who risk their lives every day to make Dallas a safer city and the Supporting Organizations have funded awards programs and educational sponsorships for children of police officers. *Id*.

60.    The Charitable Respondents invite the Court, and others who have characterized the Supporting Organizations as mere "puppets" of Mr. Dondero, to review the Charitable Giving Overview provided herewith as well as the letters in support from The Family Place, Cristo Rey Dallas, Dallas Children's Advocacy Center,  the Santa Barbara Foundation, and the Highland Kansas City Foundation.  The Charitable Respondents have and will continue to make meaningful impacts on the communities they serve through the tens of millions of dollars of philanthropic giving they facilitate.

### III.    CLO HoldCo and DAF Fund may be creditors of the Debtor

61.    In the Disclosures Order, the Court requires all entities to state whether the entity is a creditor of the Debtor and explain in reasonable detail the amount and substance of its claims. Disclosures Order, p. 13.

62.    All claims bar dates have long since passed [*see* General Claims Bar Date Order [Dkt. No. 498].

63.     The Court states that CLO HoldCo filed two proofs of claim.  Disclosures Order,

p. 11.  This is not correct.  CLO HoldCo filed a proof of claim on April 8, 2020 [Proof of Claim

No. 133] and on October 21, 2021, CLO HoldCo amended that same proof of claim [Proof of

Claim No. 198] (the "Amended Proof of Claim").  In the Amended Proof of Claim, CLO HoldCo

explained that as a result of certain proceedings that effectuated a termination of the Debtor's

participation interests in the funds referred to in the CLO HoldCo proof of claim, such termination

served to cancel the CLO HoldCo interests, as well, as the CLO HoldCo interests were in effect

derivative of the Debtor's interests.  Accordingly, the Amended Proof of Claim reflected that the

CLO HoldCo claim was reduced to $0.00, and therefore resolved.

64.     The Court stated in the Disclosures Order that it was unaware of whether DAF

Holdco, DAF Fund, Highland Dallas Foundation, Highland Santa Barbara Foundation, or

Highland Kansas City Foundation filed proofs of claims (notwithstanding this "uncertainty" the

Court deemed it appropriate nevertheless to try to compel appearance).  Disclosures Order, p. 11.

A review of the Court's Claims Register and that of the Debtor's claims and noticing agent reflects

that none of these entities filed proofs of claim against the Debtor.

65.     Therefore, none of the Charitable Respondents are pre-petition creditors of the

Debtor, as the claims bar date has long since passed and no claims were filed which have not been

fully resolved.

66.     It is unclear from the Disclosures Order whether the Court is referring to the term

"creditor" as defined in section 101(10) of the Bankruptcy Code or using creditor as a lay term.  If

it is the former, the Charitable Respondents are not creditors of the Debtor.  *See* 11 U.S.C. §

101(10) (defining a "creditor" an entity that has a claim against the debtor that arose at the time of

or before the order for relief concerning the debtor).

19

67.    As the Court is aware from the Show Cause Hearing, CLO HoldCo and DAF Fund filed the District Court Suit against the Debtor.  The causes of action asserted by CLO HoldCo and DAF Fund arose after the  order for relief.  **Exhibit 35** [Complaint].  The substance of these claims is set forth in the Complaint.

### IV.    The Disclosures Order is procedurally improper and the Court has no power to institute *sua sponte* investigations into hypothetical standing.

68.    The Charitable Defendants have fully complied with the Court's Disclosures Order and provided the Court with complete information regarding: (a) who owns each entity, (b) whether Mr. Donerdo or his family trusts have direct or indirect ownership, (c) who the officers, directors, and managers are, and (d) whether the entity is a creditor of the Debtor.  The Charitable Defendants have done so because they were expressly ordered by the Court do; however, the Disclosures Order is procedurally improper and highly prejudicial.

#### a)    The Court does not have the power to require non-parties to provide it with disclosures.

69.    The Charitable Defendants are those named entities who have made appearances before this Court.  The Court does not have the power to order production or disclosures from non-parties including the Non-Party Targets.

70.    In the Disclosures Order, the Court states that the order is issued "*sua sponte* pursuant to Section 105 of the Bankruptcy Code and the court's inherent ability to efficiently monitor its docket and evaluate the standing of parties who ask for relief in the above-referenced case." Disclosures Order, p. 1.  But yet, the Disclosures Order goes on to target entities who have never asked for the relief in the Bankruptcy Case.

71.    Of course, it is undisputed that the Court has the inherent power to manage its own docket "to ensure the orderly and expeditious disposition of cases." *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31

20

(1962)).  But this inherent authority is limited, as is the Court's authority pursuant to section 105 of the Bankruptcy Code.  *Matter of Ward*, 978 F.3d 298, 303 (5th Cir. 2020) (noting that "the powers afforded to bankruptcy courts pursuant to § 105, however, are not unlimited").

72.     In *Energy Gathering*, the Fifth Circuit considered whether the district court could *sua sponte* order a party's attorney, a non-party to the case, to produce documents.  *See Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1412 (5th Cir. 1993).  In that case, the district court found that the attorney had purposefully withheld documents from the court, and "ordered [him] to produce every document in his possession relating to [his client] or business he had done with [his client]." *Id*. at 1404. The district court did not explain the source of its perceived authority to do so. *See id.* at 1405.

73.     On appeal by the attorney, the plaintiffs asserted that the district court had the inherent authority to order him to produce documents. *Id*. at 1406.  The Fifth Circuit disagreed with the plaintiffs. *See id.* at 1408-09. Specifically addressing whether the district court had the inherent authority to issue its order, the Fifth Circuit acknowledged that the district court had certain limited power "to conduct discovery not recognized by rule or statute," observing that federal courts "possess[ ] all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion." *Id*. at 1409.  The Fifth Circuit suggested that the district court had the inherent authority to order the attorney to produce documents—if at all—under its power to issue a "bill of discovery," a common law "chancery tool" that the Supreme Court has described as "the forerunner of all modern discovery procedures." *Id*. at 1409.  But recognizing that bills of discovery "could not be used to obtain documents (or other discovery) from someone who was not a party," the Fifth Circuit

therefore concluded that district courts do not have the inherent authority to order non-parties to produce discovery.  *Id.*

74.    Important here, the Fifth Circuit noted the impropriety of the *sua sponte* investigation by the district court.  *Id.* at 1411 (noting "factors [that] contribute to the order's unreasonableness" as being the *sua sponte* nature of the order and that the "court engaged in a fishing expedition").  Expressly relying upon the *Energy Gathering* opinion, the court in *Thompson v. Gonzales* determined that the court lacked inherent authority to order disclosures from non-parties.  *Thompson v. Gonzales*, No. 1:15-CV-301-LJO-EPG, 2016 WL 5404436, at *8 (E.D. Cal. Sept. 27, 2016).

**b)  The Court's *sua sponte* investigation into hypothetical standing is improper.**

75.    As the Fifth Circuit noted in *Energy Gatherings* and this Court and others numerous have many times since, inherent authority "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir.1990); *In re Saldana,* 531 B.R. 141, 166 (Bankr. N.D. Tex.), *aff'd in part, remanded in part*, 534 B.R. 678 (N.D. Tex. 2015).

76.    Here, the Court has launched a *sua sponte* investigation into parties under the stated purpose of evaluating their hypothetical standing.

77.    The American adversarial system differs from its European (and other) inquisitorial counterparts in that its central features are "party presentation of evidence and arguments" for resolution before a "neutral and passive decision maker[]."  Adam Milani & Michael Smith, *Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts*, 69 TENN. L. REV. 245, 272 & n.143 (2002); *see also United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020); *Greenlaw v. United States*, 554 U.S. 237, 243 (2008); *Wood v. Milyard*, 566 U.S. 463, 472 (2012).

22

78.    The judge "does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties."    *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 356 (2006) (quotation omitted). Thus,"[i]t is normally incumbent on each party to prove its claims," and a *sua sponte* investigation upsets the normal burden of persuasion between the parties."  Domitille Baizeau and Tessa Hayes, *The Arbitral Tribunal's Duty and Power to Address Corruption Sua Sponte*, in Andrea Menaker (ed), International Arbitration and the Rule of Law: Contribution and Conformity, ICCA Congress Series, Volume 19, pp. 225 -265.

79.    Thus, federal courts have been instructed to restrain from conducting such an inquest which is antithetical to the American adversarial system.  *Simon v. Taylor*, 794 F. App'x 703, 718 (10th Cir. 2019) (noting that scientific evidence involving environmental contamination from the district court's own *sua sponte* investigation cannot be considered); *Wood*, 566 U.S. at 472 ("federal court does not have carte blanche to depart from the principle of party presentation basic to our adversary system"); *Castro v. United States*, 540 U.S. 375, 381–383, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003).

80.    The Court asserts that it launched its investigation because standing is an issue of subject matter jurisdiction and that it must gain "clarity" with regard to standing. Disclosures Order, p. 2.  But what the Court proposes to do is render an impermissible advisory opinion on the hypothetical standing of the various entities, including some of have never filed a pleading in the Bankruptcy Case.  How can this Court have blanket power to compel investigation of entities that have never made appearances before the Court, or that have only been made parties because they have been sued, on the purported ground it needs to investigate standing?  As shown here, it cannot.

23

G-29

81.    A bankruptcy case itself is not a justiciable controversy; rather, it is the individual proceedings (contested matters or adversary proceedings) which create a justiciable case or controversy.[9]  Here, there is no proceeding, and instead, the Court expressly stated that it will determine standing *sua sponte* pursuant to section 105 of the Bankruptcy Code.  While this general rule of justiciablity standing alone would prohibit such a determination, evaluating a party's hypothetical standing absent a justiciable controversy is acutely problematic.  *See Uberoi v. Labarga*, 769 F. App'x 692, 697 (11th Cir. 2019) ("The Court should not speculate concerning the existence of standing."); *Navtech US Surveyors USSA Inc. v. Boat/Us Inc.*, No. 219CV184FTM99MRM, 2019 WL 3219667, at *2 (M.D. Fla. July 17, 2019) (noting that advisory opinions on standing are improper).

82.    This is because "standing is not dispensed in gross," rather, standing must be established for each claim a party seeks to press and for each form of relief that is sought.  *Brackeen v. Haaland*, 994 F.3d 249, 291 (5th Cir. 2021) (quoting *Town of Chester v. Laroe Estates, Inc.*, –—— U.S. ——, 137 S. Ct. 1645, 1650, 198 L.Ed.2d 64 (2017) and *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008)).

83.    This is rule is no less applicable in a bankruptcy case.  The Bankruptcy Code does not define "party in interest," offering instead a non-exclusive list of who "may raise and may appear and be heard on any issue" in cases under chapter 11.  *In re Friede Goldman Halter Inc.*,

---

[9]    Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory*, 41 WM. & MARY L. REV. 743, 832 (2000); Ralph Brubaker, *Of State Sovereign Immunity and Prospective Remedies: The Bankruptcy Discharge As Statutory Ex Parte Young Relief*, 76 AM. BANKR. L.J. 461, 563 (2002) (explaining that: "the appropriate constitutional explanation for the entirety of federal bankruptcy jurisdiction materializes only when one recognizes that the fundamental jurisdictional unit in bankruptcy is an individual bankruptcy 'proceeding' raising a justiciable controversy between adverse parties.").

600 B.R. 526, 530–31 (Bankr. S.D. Miss. 2019). "The lack of definition was intentional." *In re*

*Delta Underground Storage Co., Inc.*, 165 B.R. 596, 598 (Bankr. S.D. Miss. 1994).

84.     Congress' failure to define a party in interest specifically was discussed by both

Senator DeConcini and Representative Edwards during the proceedings preceding the enactment

of the Code.  Senator DeConcini stated:

> Rules of bankruptcy procedure or court decisions will determine who is a party in
> interest **for the particular purposes of the provision in question.**' 124 Cong.Rec.
> § 12407 (daily ed. Oct. 6, 1978).... Party in interest is an expandable concept
> **depending on the particular factual context in which it is applied**.

*Id.* (citing *In re North American Oil & Gas, Inc.*, 130 B.R. 473, 479 (Bankr.W.D.Tex.1990))

(emphasis added).  Congress has thus expressly directed that standing in a bankruptcy case must

be determined in the particular proceeding before the bankruptcy court.

85.     But here, there is no "particular purpose" or "particular factual context" in which

this Court can properly evaluate party in interest standing.  Instead, it appears that the Court

proposes to render an advisory opinion on the named entities' standing to file pleadings without

any requisite justiciable controversy before it.  But none of this makes sense, with respect to entities

not before the Court or only before the Court in capacity as defendants.  In fact the Disclosures

Order appears to be more of an investigation to find evidence that the Court could point to as

supporting its assertions about Dondero's *de facto* control.

86.     Additionally, the Court further states that beyond determining the hypothetical

standing of such parties, it also must "ascertain whether their interests are sufficiently aligned such

that the parties might be required to file joint pleadings hence forth, rather than each file pleadings

that are similar in content."  Disclosures Order, p. 1.  What the Court is describing are pre-filing

injunctions, which "are an extreme remedy" that courts should not issue "with undue haste because

such sanctions can tread on a litigant's due process right of access to the courts." *Franklin v.*

*Laughlin,* No. SA-10-CV-1027 XR, 2011 WL 598489, at *7 (W.D. Tex. Jan. 13, 2011), *report and recommendation adopted*, No. SA-10-CV-1027-XR, 2011 WL 672328 (W.D. Tex. Feb. 15, 2011).

87.     Specifically, the Fifth Circuit has explained that:

"In determining whether it should impose a pre-filing injunction or should modify an existing injunction to deter vexatious filings, a court must weigh all the relevant circumstances. Four factors must be specifically considered: (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008).

88.     What is more, this purported reason makes no sense, as multiple entities the Court seeks to compel have never made an appearance and the Court has no basis to even suspect that they might make an appearance. With respect to parties who have filed pleadings, for example the Charitable Defendants, the Court already knows that Highland Dallas Foundation and CLO HoldCo have filed joint pleadings within the Adversary Proceeding (a single motion to dismiss for failure to state claims and a single motion to withdraw reference). The Non-Party Targets are nowhere to be found within the Bankruptcy Case or any proceedings before the Court; yet the Court must conduct an investigation into these entities to see whether to compel the filing of joint pleadings? Cannot be.

### c)   The Disclosures Order is not just improper, it is prejudicial.

89.     As this Court is aware, the Charitable Defendants are defendants in the Adversary Proceeding instituted by the Committee (DAF Fund and DAF Holdco are also defendants, though yet unserved—despite the Adversary Proceeding being pending for over 6 months). Central to the Committee's claims against the Charitable Defendants are the conclusions posing as allegation(s)

that the Charitable Defendants are part of civil conspiracy to fraudulently transaction assets out of the estate orchestrated by Mr. Dondero whom the Committee characterized as: standing on top of byzantine empire, moving assets and funds from one entity to another to meet various needs. *See* Adversary Proceeding, Dkt. No. 6, ¶2. (Sounds familiar).

90.     In the Disclosures Order, the Court, seemingly already deciding this highly disputed issue in the Adversary Proceeding (which is not even a dispute—CLO HoldCo and Highland Dallas Foundation have filed a (joint) motion to dismiss under Rule 7012 for failure to state a claim), as it borrows the Committee's "byzantine" characterization and states that the targets of its Disclosures Order "appear to be under the *de facto* control of Mr. Dondero" and that the DAF Fund's decisions are "presumably at Mr. Dondero's direction." (the word "byzantine" is a much overworked word within this Bankruptcy Case, and its proceedings, pleadings, and orders of this Court). Disclosures Order, pp. 5, 11. This constitutes direct, specific, and express pre-judgment by this Court, and, of course, has tainted the Adversary Proceeding.

91.     First and foremost, as shown herein, these assertions/findings are wrong. The Charitable Respondents and Non-Party Targets comprise an independent charitable giving structure that has facilitated the donation of tens of millions of dollars to important philanthropic causes. They are not under the *de facto* control of Mr. Dondero nor does Mr. Dondero direct their decisions—though like any donor would expect, Mr. Dondero has some say in the causes which the Supporting Organizations donate to.

92.     But the fact that the Court has made these assertions/findings *sua sponte* outside of the Adversary Proceeding (or any case or controversy), when it has no authority to adjudicate the Adversary Proceeding (that is the subject of a motion to withdraw reference), is highly prejudicial to the Charitable Defendants. This Court, in its assumed posture as investigative body as well as

27

prosecutor and decider, has given cover to the utterly conclusory assertions of the Committee, and has, practically, joined the Committee as a plaintiff.

93.    At an absolute minimum, the Court should refrain from deciding or even commenting upon contested issues of law and fact *sua sponte* outside of the Adversary Proceeding, and should retract its supposed findings (issued under the transparently incorrect suggestion of its power to manage its own docket [by pre-screening parties for standing????? - again, the case law cited above shows this is not proper]).  The Charitable Respondents urge the Court, particularly after reviewing the information and documents provided in this Response and Disclosures, to reconsider such findings, and respectfully request that this Court retract its Disclosure Order or at least the problematic content therein.

### CONCLUSION

By this Response and the Disclosures, the Charitable Respondents have fully complied with this Court's Disclosures Order, but have done so with the express reservations concerning the impropriety of the Disclosures Order and the non-appearance or submission by the Non-Party Targets.  But most important to the Charitable Respondents is that the Court closely review this Response and Disclosures and reconsider its assumptions/assertions/findings/conclusion that the Charitable Respondents are under the *de facto* control of or act at the direction of Mr. Dondero. The Charitable Respondents are real, independent charitable giving vehicles that have affected, very positively, the lives of countless people through the tens of millions of dollars donated to important philanthropic causes.

*[**signature block on following page**]*

28

Respectfully submitted:

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
**Louis M. Phillips (#10505)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that a true and correct copy of the above and foregoing document and all attachments thereto were sent via electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on this July 9, 2021.

*/s/ Louis M. Phillips*
Louis M. Phillips

29

# EXHIBIT H

Jason M. Rudd
Texas State Bar No. 24028786
jason.rudd@wickphillips.com
Lauren K. Drawhorn
Texas State Bar No. 24074528
lauren.drawhorn@wickphillips.com
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255

COUNSEL FOR NREP, HCMS, NREC,
THE REAL ESTATE ADVISORS, NMCT,
NREF, NXRT, NHT, AND VB (AS DEFINED BELOW)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | **Case No.: 19-34054-sgj11** |
| | § | |
| **Debtor.** | § | |

**NOTICE AND DISCLOSURE OF NEXPOINT RE
ENTITIES AND HIGHLAND CAPITAL MANAGEMENT SERVICES INC.
IN RESPONSE TO COURT'S SUA SPONTE ORDER REQUIRING DISCLOSURES**

NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC ("NREP"), NexPoint Real Estate Capital, LLC ("NREC"), NexPoint Real Estate Advisors, L.P., NexPoint Real Estate Advisors II, L.P., NexPoint Real Estate Advisors III, L.P., NexPoint Real Estate Advisors IV, L.P., NexPoint Real Estate Advisors V, L.P., NexPoint Real Estate Advisors VI, L.P., NexPoint Real Estate Advisors VII, L.P., NexPoint Real Estate Advisors VIII, L.P. (collectively, the "Real Estate Advisors"), NexPoint Real Estate Finance Inc. ("NREF"), NexPoint Residential Trust, Inc. ("NXRT"), NexPoint Hospitality Trust ("NHT"), NexPoint Multifamily Capital Trust, Inc. ("NMCT"), VineBrook Homes, Trust, Inc. ("VB"), and Highland Capital Management Services, Inc. ("HCMS"), by and through their undersigned counsel, make the following disclosures (the

"Disclosures") as required by this Court's June 18, 2021 *Order Requiring Disclosures* [Dkt. No.

2460] (the "Order").

## I. DISCLOSURES

**A.    NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC.**

    **1.    NREP ownership, officers, directors, managers, and/or trustees.**

| Owners | Type | % | Manager | Officers |
|---|---|---|---|---|
| The Dugaboy Investment Trust | Member | 70 | James Dondero | Matt McGraner – Vice President Scott Ellington – Secretary |
| Highland Capital Management Real Estate Holdings I, LLC | Member | 25 | | |
| Highland Capital Management Real Estate Holdings II, LLC | Member | 5 | | |

    **2.    NREP ownership interest (direct or indirect) held by Mr. Dondero and/or his family trusts and percentage of such ownership.**

The Dugaboy Investment Trust owns a 70% interest in NREP.

    **3.    NREP's status as creditor of the Debtor.**

NREP timely filed a proof of claim against the Debtor's estate on April 8, 2020. [Proof of

Claim No. 146]. The Debtor objected to the NREP Proof of Claim through its First Omnibus

Objection [Dkt. No. 906]. On October 19, 2020, NREP filed its Response, asserting a claim against

the Debtor because the SE Multifamily Holdings LLC company agreement improperly allocates

the ownership percentages of the members due to mutual mistake, lack of consideration, and/or

failure of consideration and seeking to reform, rescind, and/or modify the company agreements

(the "Contested Matter"). [Dkt. No. 1212]. The Contested Matter is not yet resolved; however, the

result of a finding in favor of NREP will result in the modification of the SE Multifamily Holdings,

LLC company agreement, not a setoff against the Debtor's estate. [1]

---

[1] The Debtor filed a Motion to Compel Disqualify Wick Phillips Gould & Martin ("WPGM") from representing NREP in the contested matter only. [Dkt. No. 2196]. Wick Phillips disputes the Debtor's allegations in the Motion for the reasons set forth in Wick Phillips' Response and Brief in Opposition [Dkt. Nos. 2278, 2279]. The hearing on the Debtor's Motion is currently set for October 25, 2021. [Dkt. No. 2361].

The Debtor also initiated an adversary proceeding, Adversary No. 21-03007, against NREP based on certain demand and promissory notes. NREP filed its First Amended Answer to the Debtor's Complaint on June 11, 2021. [Dkt. No. 34]. In addition, NREP filed a Motion to Withdraw the Reference and Brief in Support on June 3, 2021. [Dkt. Nos. 20, 21]. A status conference on the Motion to Withdraw the Reference was held on July 8, 2021. [Dkt. No. 30].

## B.    Highland Capital Management Services, Inc.

### 1.    HCMS ownership, officers, directors, managers, and/or trustees.

| Owners | Type | % | Director | Officers |
|---|---|---|---|---|
| James Dondero | Shareholder | 75 | James Dondero | James Dondero – President |
| Mark Okada | Shareholder | 25 | | Scott Ellington – Secretary |
| | | | | Frank Waterhouse – Treasurer |

### 2.    HCMS ownership interest (direct or indirect) held by Mr. Dondero and/or his family trusts and percentage of such ownership.

Mr. Dondero owns 75% of the direct ownership interest in HCMS.

### 3.    HCMS' Status as creditor of the Debtor.

HCMS timely filed two proofs of claim against the Debtor's estate on April 23, 2020 [Proofs of Claim Nos. 175, 176]; however, such claims were expunged on October 20, 2020. [Dkt. No. 1233].

The Debtor initiated an adversary proceeding, Adversary No. 21-03006, against HCMS based on certain demand and promissory notes. HCMS filed its First Amended Answer to the Debtor's Complaint on June 11, 2021. [Dkt. No. 34]. In addition, NREP filed a Motion to Withdraw the Reference and Brief in Support on June 3, 2021. [Dkt. Nos. 19, 20]. A status conference on the Motion to Withdraw the Reference was held on July 8, 2021. [Dkt. No. 29].

C.    **NexPoint Real Estate Capital, LLC.**

1.    **NREC ownership, directors, officers, managers, and/or trustees.**

| Owner | Type | % | Manager |
|---|---|---|---|
| NexPoint Strategic Opportunities Fund | Member | 100 | NexPoint Strategic Opportunities Fund |

2.    **HCMS ownership interest (direct or indirect) held by Mr. Dondero and/or his family trusts and percentage of such ownership.**

Mr. Dondero and/or his family trusts have an indirect ownership interest in NREC through their ownership of 7.43% of shares of NREC's sole member, NexPoint Strategic Opportunities Fund.

D.    **NexPoint Real Estate Advisors, LP; NexPoint Real Estate Advisors II, LP; NexPoint Real Estate Advisors III, LP; NexPoint Real Estate Advisors IV, LP; NexPoint Real Estate Advisors V, LP; NexPoint Real Estate Advisors VI, LP; NexPoint Real Estate Advisors VII, LP; and NexPoint Real Estate Advisors VIII, LP.**

1.    **The Real Estate Advisors' ownership, directors, officers, managers, and/or trustees.[2]**

| Owners | Type | % | Manager | Officers |
|---|---|---|---|---|
| NexPoint Real Estate Advisors GP, LLC | General Partner | 0.1 | NexPoint Real Estate Advisors GP, LLC, the General Partner | James Dondero – President Scott Ellington – GC/Secretary Brian Mitts – EVP |
| NexPoint Advisors, LP | Limited Partner | 99.9 | | Matt McGraner – EVP Frank Waterhouse – Treasurer Dustin Norris – Asst. Treasurer |

2.    **The Real Estate Advisors ownership interest (direct or indirect) held by Mr. Dondero and/or his family trusts and percentage of such ownership.**

Mr. Dondero has a .01% indirect ownership interest in the Real Estate Advisors through their General Partner, NexPoint Advisors GP, LLC, of which Mr. Dondero is the sole member (100%). Mr. Dondero's family trusts have a 99.9% indirect ownership interest in the Real Estate Advisors through their Limited Partner, NexPoint Advisors, LP.

---

[2]    The ownership, directors, and officers are the same for each of the Real Estate Advisors entities.

E.    **NexPoint Multifamily Capital Trust Inc.**

1.    **NMCT ownership, directors, officers, managers, and/or trustees.**

| Owner | Type | % | Manager | Officers |
|-------|------|---|---------|----------|
| NHT Operating Partnership, LLC | Member | 100 | N/A | James Dondero – President<br>Scott Ellington – GC/Secretary<br>Brian Mitts – CFO/EVP-Finance/Treasurer<br>Matt McGraner – CIO/EVP<br>Matt Goetz – VP-Investment & Asset Mgmt. |

2.    **NMCT ownership interest (direct or indirect) held by Mr. Dondero and/or his family trusts and percentage of such ownership.**

NMCT is wholly owned by NHT Operating Partnership, LLC, the operating partnership of NHT (defined below). Any indirect ownership of Mr. Dondero and his family trusts are set forth in Exhibit A next to NHT.

F.    **NexPoint Real Estate Finance Inc, NexPoint Residential Trust Inc., NexPoint Hospitality Trust, and VineBrook Homes Trust, Inc.**

NexPoint Real Estate Finance, Inc. ("NREF"), NexPoint Residential Trust Inc. ("NXRT"), NexPoint Hospitality Trust ("NHT"), and VineBrook Homes Trust, Inc. ("VB" and together with NREF, NXRT, and NHT, the "Public Entities") are all governed by a Board of Trustees or Directors (depending on its form of organization). Shares of NXRT and NREF are publicly held by investors and are traded on the New York Stock Exchange. Shares of NHT are publicly held by investors and are traded on the TSX Venture Exchange. As such, each of NREF, NXRT, and NHT are owned by "retail" investors, meaning public shareholders that trade interests daily on the public markets. Because many of the shares of NREF, NXRT, and NHT are held in omnibus accounts or "street names," the actual number of shareholders is greater than the total number of account holders. Accordingly, it is not possible to list all the owners of the Public Entities publicly or by name. Shares of VB are not publicly traded but are owned by over 2,000 individual shareholders. Additionally, VB is conducting a continuous placement of its Class A common stock and, as a

result, the number of shareholders continues to increase on an ongoing basis. As such, while possible, it is not practicable to list the owners of VB publicly or by name.

The directors/trustee, officers, directors, and Mr. Dondero's and/or his family trusts' interest in the Public Entities are set forth in the chart attached to these Disclosures as **Exhibit A**.

**G.    The Public Entities, NREC, NMCT, and the Real Estate Advisors' status as creditors of the Debtor.**

The Public Entities, NREC, NMCT and the Real Estate Advisors are not creditors of the Debtor.[3] Other than the filing an Objection to Official Committee of Unsecured Creditors' Emergency Motion to Compel Production by the Debtor and Request for Protective Order [Dkt. 847] and a Joinder to Highland Capital Management Fund Advisors, LP, NexPoint Advisors, LP, and Related Funds' Objection to Confirmation of the Debtor's Fifth Amended Plan of Reorganization [Dkt. No. 1677], the Public Entities, NREC, NMCT, and the Real Estate Advisors have not otherwise been involved in the Bankruptcy Case.

---

[3]    The Public Entities, NREC, NMCT, and the Real Estate Advisors objected to the Official Committee of Unsecured Creditors' Emergency Motion to Compel Production by the Debtor [Dkt. No. 808] based on the fact that it required disclosure of data and information belonging to the Public Entities, NREC, NMCT and the Real Estate Advisors were housed on the Debtor's servers pursuant to various shared services agreements.

---

Respectfully submitted,

*/s/ Lauren K. Drawhorn*
Jason M. Rudd
Texas Bar No. 24028786
Lauren K. Drawhorn
Texas Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255
Email:  jason.rudd@wickphillips.com
           lauren.drawhorn@wickphillips.com

**COUNSEL FOR NREP, HCMS, NREC, THE REAL
ESTATE ADVISORS, NMCT, NREF, NXRT, NHT,
AND VB**

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2021, a true and correct copy of the foregoing Joinder was served via the Court's CM/ECF system upon counsel for the Debtor and all other parties requesting or consenting to such service in this bankruptcy case.

*/s/ Lauren K. Drawhorn*
Lauren K. Drawhorn

# **<u>EXHIBIT I</u>**

K&L GATES LLP
Artoush Varshosaz (TX Bar No. 24066234)
1717 Main Street, Suite 2800
Dallas, TX 75201
Tel: (214) 939-5659
artoush.varshosaz@klgates.com

A. Lee Hogewood, III (*pro hac vice*)
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Tel: (919) 743-7306
Lee.hogewood@klgates.com

*Counsel for the Funds (as defined below)*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |

## NOTICE AND DISCLOSURES OF FUNDS PURSUANT TO COURT'S SUA SPONTE
## ORDER REQUIRING DISCLOSURES

Highland Funds I and its series Highland Healthcare Opportunities Fund, Highland/iBoxx Senior Loan ETF, Highland Opportunistic Credit Fund, and Highland Merger Arbitrage Fund, Highland Funds II and its series Highland Small-Cap Equity Fund, Highland Socially Responsible Equity Fund, Highland Fixed Income Fund, and Highland Total Return Fund, NexPoint Capital, Inc., NexPoint Strategic Opportunities Fund, Highland Income Fund, Highland Global Allocation Fund, and NexPoint Real Estate Strategies Fund (each, a "Fund," and together, the "Funds"), by and through their undersigned counsel, make the following disclosures (the "Disclosures") pursuant to the Court's June 18, 2021 *Order Requiring Disclosures* [Dkt. No. 2460] (the "Order").

1

1934054210709000000000001

## Introduction and Background

Each of Highland Funds I (which has three series: Highland Healthcare Opportunities Fund, Highland/iBoxx Senior Loan ETF and NexPoint Merger Arbitrage Fund),[1] Highland Funds II (which has a single series, Highland Small-Cap Equity Fund),[2] NexPoint Capital, Inc.,[3] NexPoint Strategic Opportunities Fund, Highland Income Fund, Highland Global Allocation Fund, and NexPoint Real Estate Strategies Fund[4] is an investment company or a business development company registered under the Investment Company Act of 1940, as amended (the "1940 Act"). As registered funds, the Funds are regulated under the 1940 Act. As briefly discussed below, each of the Funds is governed by its Board of Trustees or Directors (depending on its form of organization), as required by the 1940 Act. As also briefly discussed below, each Fund's board has engaged, subject to 1940 Act requirements, a registered investment adviser (either NexPoint Advisors, L.P. or Highland Capital Management Fund Advisors, L.P.) to manage the day-to-day investment operations of the Fund. In addition, each Fund's shares are publicly held by investors, and each Fund either currently offers its securities to the public or has issued shares that are publicly traded on the New York Stock Exchange.

As 1940 Act registrants, each Fund is governed by a Board of Trustees or Directors (the

---

[1]    Highland Funds I is a Delaware statutory trust currently consisting of three series. As is typical for open-end investment companies (referred to commonly as "mutual funds"), each series of the trust is a separate and distinct fund. Highland Funds I series Highland Merger Arbitrage Fund changed its name to NexPoint Merger Arbitrage Fund on August 13, 2020. Former series Highland Opportunistic Credit Fund completed a liquidation on March 30, 2021 and no longer exists.

[2]    Highland Funds II is also a Delaware statutory trust, currently consisting of one series. Former series Highland Socially Responsible Equity Fund merged, following shareholder approval, into NexPoint Merger Arbitrage Fund on March 4, 2021. Former series Highland Fixed Income Fund and Highland Total Return Fund, following shareholder approval, each reorganized into other funds sponsored by an unaffiliated fund group on January 11, 2021 and no longer exist as series of Highland Funds II.

[3]    NexPoint Capital, Inc. has elected to be treated as a business development company ("BDC") registered under the 1940 Act. A BDC is regulated similarly to an investment company under the 1940 Act.

[4]    Each of NexPoint Strategic Opportunities Fund, Highland Income Fund, Highland Global Allocation Fund, and NexPoint Real Estate Strategies Fund is a closed-end investment company under the 1940 Act.

"Board").  Rules under the 1940 Act on which the Funds rely require that a majority of each Board consist of members (the "independent trustees") who are not "interested persons," as the term is defined in section 2(a)(19) of the 1940 Act, of the Fund, the adviser or the adviser's affiliates.  The members of each Fund's Board (referred to collectively as the "Trustees") are identified in the chart attached to these Disclosures as **Exhibit A**.  As required by the 1940 Act, the Trustees evaluate, hire, oversee, and review the activities of each Fund's service providers, including its investment adviser.  Trustees meet routinely in this regard, as well as in overseeing the Funds generally.[5]  The 1940 Act also specifically requires the Board to review and approve each Fund's investment advisory agreement annually, and such contracts may not continue without Board approval.

In addition to the requirements of federal law, all Trustees must abide by standards of care prescribed by state statutory and common law.  Specifically, the Trustees are subject to state law duties of care and loyalty.  The duty of care generally requires that Trustees act in good faith and with that degree of diligence, care and skill that a person of ordinary prudence would exercise under similar circumstances in a like position.  The duty of loyalty generally requires that Trustees exercise their powers in the interests of the Fund and not in the Trustees' own interests or in the interests of another person or organization.

In addition, the 1940 Act prescribes numerous restrictions on the Funds, such as prohibitions on affiliated transactions, which the Boards oversee though their oversight of the Funds' chief compliance officers (each, a "CCO").  A Fund CCO reports to the Independent Trustees and may only be terminated with approval of the Independent Trustees.  All of the Funds

---

[5]     In ordinary times, the Board meets quarterly for a number of day long meetings.  During 2021, because of the numerous proceedings, the Board has not only held its regular meetings, but has held a number of special meetings as well as executive session conferences to evaluate options in connection with pending litigation and the bankruptcy case.

I-4

are also required to file audited annual reports and to make quarterly, semi-annual and other reports

with the Securities and Exchange Commission (SEC), the most recent of which may be found at

the website designated in **Exhibit A** attached to these Disclosures.

**Disclosures Pursuant to Court's Order**

Pursuant to the Court's Order, the Funds hereby make the following Disclosures:

1.    Ownership:

Each Fund is owned by many thousands of "retail" investors, meaning public shareholders

that may, on a daily basis, either trade interests (for those funds listed on an exchange) or purchase

and redeem shares (for mutual funds).  Because many of the Funds' shares are owned in omnibus

accounts held in "street name" by intermediaries, such as brokerage firms, the actual number of

shareholders (being, for example, customers of a broker) is greater than the total number of account

holders and unknowable to the Funds.  Accordingly, it is not possible for the Funds to list the total

number of owners of the Funds publicly or by name.

2.    Ownership interests (direct or indirect) held by Mr. Dondero and/or his family trusts
and percentage of such ownership:

Please refer to the chart attached to these Disclosures as **Exhibit A**.

3.    Officers, directors, managers, and/or trustees:

Please refer to the chart attached to these Disclosures as **Exhibit A**.

4.    Status as creditor of the Debtor:

Each Fund timely filed a proof of claim against the Debtor, as indicated in **Exhibit A**, but

each claim was expunged.  *See* Dkt. No. 1233.

Additionally, certain of the Funds own equity interests, and, in some cases, a majority of

equity interests in certain collateralized loan obligations ("CLOs") managed by the Debtor

4

I-5

pursuant to a portfolio management agreement or servicing agreement (each, a "Servicing Agreement"). The aggregate dollar value of these Funds' investment in the CLOs managed by the Debtor was, as of February 2021, approximately $138 million. The Debtor assumed all of the Servicing Agreements with the CLOs pursuant to the terms of its confirmed Chapter 11 Plan. In the event that the Debtor were to breach any Servicing Agreement or otherwise mismanage any of the CLOs' assets, and a Fund suffered a loss as a result of such post-confirmation breach or mismanagement, then such Fund may have a claim against the Debtor for damages as a consequence of the Debtor's post-confirmation breach or mismanagement. Moreover, as the Funds have asserted elsewhere, the exculpation and gatekeeper injunction provisions of the Chapter 11 Plan limit post-petition contractual rights of the Funds pursuant to the assumed Servicing Agreements.

### Proceedings Involving the Funds

The Funds further disclose that the Funds jointly filed the *Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Dkt. No. 1670] and the *Limited Objection to (A) Official Committee of Unsecured Creditors' Emergency Motion to Compel Production by the Debtor and (B) Debtor's Motion for Entry of (I) A Protective Order, or, in the Alternative, (II) An Order Directing the Debtor to Comply with Certain Discovery Demands Tendered by the Official Committee of Unsecured Creditors, Pursuant to Federal Rule of Bankruptcy Procedure 7026 and 7034* [Dkt. No. 841]. Certain of the Funds have filed the following additional pleadings with the Court: (a) the *Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles* [Dkt. No. 1522],[6] and (b) the *Motion for Stay Pending Appeal of the Court's Order*

---

[6]     Filed only by Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc.

*Confirming the Debtor's Fifth Amended Plan* [Dkt. No. 1967].[7]  In addition, three of the Funds

are defendants in Adversary Proceeding No. 21-03000 (the "Adversary").[8]  The Defendant Funds

have filed responsive pleadings in the Adversary.  A stipulation regarding the settlement of the

Adversary was filed on June 29, 2021 [Dkt. No. 101].


Dated: July 9, 2021                          **K&L GATES LLP**

                                             By:  /s/ A. Lee Hogewood, III
                                                  A. Lee Hogewood, III (*pro hac vice*)
                                                  4350 Lassiter at North Hills Ave., Suite 300
                                                  Raleigh, NC 27609
                                                  Tel: (919) 743-7306
                                                  Lee.hogewood@klgates.com

                                                  Artoush Varshosaz (TX Bar No. 24066234)
                                                  1717 Main Street, Suite 2800
                                                  Dallas, TX 75201
                                                  Tel: (214) 939-5659
                                                  artoush.varshosaz@klgates.com

                                                  *Counsel for the Funds (as defined above)*

---

[7]      Filed only by Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation fund, and NexPoint Capital, Inc., which are also the only Funds that are parties to the corresponding appeal of the confirmation order, which is presently pending at the U.S. Court of Appeals for the Fifth Circuit.

[8]      Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc. are defendants in Adv. Pro. No. 21-03000.

**Exhibit A to Notice and Disclosures of Funds Pursuant to**
**Court's Sua Sponte Order Requiring Disclosures**

| Fund | Ticker | Combined Dondero or Family Trust Ownership % (Direct and Indirect) | Officers | Directors or Managers | Trustees | Number of Accounts[1] | Link to Most Recent SEC Filing | POC No. |
|---|---|---|---|---|---|---|---|---|
| **Highland Funds I** | N/A | None | Dustin Norris-EVP<br><br>Frank Waterhouse-PEO/PFO/PAO/Treasurer<br><br>Will Mabry-Asst. Treasurer<br><br>Stephanie Vitiello-Secretary<br><br>Jason Post-CCO/AMLO | N/A | Independent Trustees<br>Dr. Bob Froehlich<br>Bryan A. Ward<br>Ethan Powell<br><br>Interested Trustees<br>John Honis | N/A | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001354917&owner=include&count=40 | 106 |
| **Highland Healthcare Opportunities Fund** | HHCAX (Class A)<br>HHCCX (Class C)<br>HHCZX (Class Z) | None | Same as Highland Funds I | N/A | Same as Highland Funds I | 193 | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=S000021242&owner=include&scd=filin | 116 |

[1] As noted in the Disclosures, many of the Funds' shares are owned in omnibus accounts held in "street name" by intermediaries, such as brokerage firms, and therefore, the actual number of shareholders (being, for example, customers of a broker) is greater than the total number of account holders and unknowable to the Funds.

| Fund | Ticker | Combined Dondero or Family Trust Ownership % (Direct and Indirect) | Officers | Directors or Managers | Trustees | Number of Accounts[1] | Link to Most Recent SEC Filing | POC No. |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | gs&count=40 | |
| **Highland/iBoxx Senior Loan ETF** | SNLN | None | Same as Highland Funds I | N/A | Same as Highland Funds I | 48 | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=S000038289&owner=include&scd=filings&count=40 | 122 |
| **Highland Opportunistic Credit Fund** (liquidated as of 3/30/2021) | N/A - Liquidated 3/30/2021 Formerly: HNRAX (Class A) HNRCX (Class C) HNRZX (Class Z) | None | N/A - Liquidated 3/30/2021 | N/A | N/A - Liquidated 3/30/2021 | N/A - Liquidated 3/30/2021 | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=S000045651&owner=include&scd=filings&count=40 | 100 |

Exhibit A - Page 2

| Fund | Ticker | Combined Dondero or Family Trust Ownership % (Direct and Indirect) | Officers | Directors or Managers | Trustees | Number of Accounts[1] | Link to Most Recent SEC Filing | POC No. |
|------|--------|------|----------|------|----------|------|------|------|
| **Highland Merger Arbitrage Fund** (name changed to NexPoint Merger Arbitrage Fund as of 8/13/2020) | HMEAX (Class A) HMECX (Class C) HMEZX (Class Z) | 0.07% | Same as Highland Funds I | N/A | Same as Highland Funds I | 3,680 | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=S000054634&owner=include&scd=filings&count=40 | 132 |
| **Highland Funds II** | N/A | None | Dustin Norris-EVP<br><br>Frank Waterhouse-PEO/PFO/PAO/Treasurer<br><br>Will Mabry-Asst. Treasurer<br><br>Stephanie Vitiello-Secretary<br><br>Jason Post-CCO/AMLO | N/A | <u>Independent Trustees</u><br>Dr. Bob Froehlich<br>Bryan A. Ward<br>Ethan Powell<br><br><u>Interested Trustees</u><br>John Honis | N/A | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0000891079&owner=include&count=40 | 114 |

Exhibit A - Page 3

| Fund | Ticker | Combined Dondero or Family Trust Ownership % (Direct and Indirect) | Officers | Directors or Managers | Trustees | Number of Accounts[1] | Link to Most Recent SEC Filing | POC No. |
|---|---|---|---|---|---|---|---|---|
| Highland Small-Cap Equity Fund | HSZAX (Class A) HSZCX (Class C) HSZYX (Class Y) | None | Same as Highland Funds II | N/A | Same as Highland Funds II | 638 | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=S000001623&owner=include&scd=filings&count=40 | 127 |
| **Highland Socially Responsible Equity Fund** (merged into NexPoint Merger Arbitrage Fund as of 3/3/2021) | N/A - Merged away 3/3/2021 Formerly: HPEAX (Class A) HPECX (Class C) HPEYX (Class Y) | None | N/A - Merged into NexPoint Merger Arbitrage Fund as of 3/3/2021 | N/A | N/A - Merged into NexPoint Merger Arbitrage Fund as of 3/3/2021 | N/A - Merged into NexPoint Merger Arbitrage Fund as of 3/3/2021 | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=S000054634&owner=include&scd=filings&count=40 | 115 |

Exhibit A - Page 4

| Fund | Ticker | Combined Dondero or Family Trust Ownership % (Direct and Indirect) | Officers | Directors or Managers | Trustees | Number of Accounts[1] | Link to Most Recent SEC Filing | POC No. |
|---|---|---|---|---|---|---|---|---|
| **Highland Fixed Income Fund** (reorganized into fund sponsored by unaffiliated fund group as of 1/11/2021; no longer a series of Highland Funds II) | N/A - Merged away 1/11/2021 Formerly: HFBAX (Class A) HFBCX (Class C) HFBYX (Class Y) | None | N/A - Reorganized into other funds sponsored by unaffiliated fund group on 1/11/2021; no longer exists as a series of Highland Funds II | N/A | N/A - Reorganized into other funds sponsored by unaffiliated fund group on 1/11/2021; no longer exists as a series of Highland Funds II | N/A - Reorganized into other funds sponsored by unaffiliated fund group on 1/11/2021; no longer exists as a series of Highland Funds II | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=S000001613&owner=include&scd=filings&count=40 | 109 |
| **Highland Total Return Fund** (reorganized into fund sponsored by unaffiliated fund group as of 1/11/2021; no longer a series of Highland Funds II) | N/A - Merged away 1/11/2021 Formerly: HTAAX (Class A) HTACX (Class C) HTAYX (Class Y) | None | N/A - Reorganized into other funds sponsored by unaffiliated fund group on 1/11/2021; no longer exists as a series of Highland Funds II | N/A | N/A - Reorganized into other funds sponsored by unaffiliated fund group on 1/11/2021; no longer exists as a series of Highland Funds II | N/A - Reorganized into other funds sponsored by unaffiliated fund group on 1/11/2021; no longer exists as a series of Highland Funds II | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=S000001624&owner=include&scd=filings&count=40 | 126 |

Exhibit A - Page 5

| Fund | Ticker | Combined Dondero or Family Trust Ownership % (Direct and Indirect) | Officers | Directors or Managers | Trustees | Number of Accounts[1] | Link to Most Recent SEC Filing | POC No. |
|---|---|---|---|---|---|---|---|---|
| **NexPoint Capital, Inc.** | N/A | 24.6967% | James Dondero-PEO/President<br><br>Frank Waterhouse-PFO/PAO/Treasurer<br><br>Dustin Norris-EVP<br><br>Will Mabry-Asst. Treasurer<br><br>Stephanie Vitiello-Secretary<br><br>Jason Post-CCO/AMLO | Directors:<br>Class I: Ethan Powell, Bryan Ward<br>Class II: Bob Froehlich,<br>Class III: John Honis | N/A | 1,774 | https://www.sec.gov/edgar/browse/?CIK=1588272 | 107, 140 |

Exhibit A - Page 6

| Fund | Ticker | Combined Dondero or Family Trust Ownership % (Direct and Indirect) | Officers | Directors or Managers | Trustees | Number of Accounts[1] | Link to Most Recent SEC Filing | POC No. |
|---|---|---|---|---|---|---|---|---|
| **NexPoint Strategic Opportunities Fund** | NHF | 7.43% | James Dondero-PEO/President<br><br>Frank Waterhouse-PFO/PAO/Treasurer<br><br>Dustin Norris-EVP<br><br>Will Mabry-Asst. Treasurer<br><br>Stephanie Vitiello-Secretary<br><br>Jason Post-CCO/AMLO | N/A | Independent Trustees<br>Dr. Bob Froehlich<br>Bryan A. Ward<br>Ethan Powell<br>Ed Constantino<br><br>Interested Trustees<br>John Honis | 89 | https://www.sec.gov/edgar/browse/?CIK=1356115&owner=exclude | 103 |

Exhibit A - Page 7

| Fund | Ticker | Combined Dondero or Family Trust Ownership % (Direct and Indirect) | Officers | Directors or Managers | Trustees | Number of Accounts[1] | Link to Most Recent SEC Filing | POC No. |
|---|---|---|---|---|---|---|---|---|
| Highland Income Fund | HFRO | 0.23113% | Dustin Norris- EVP<br><br>Frank Waterhouse- PEO/PFO/PAO/ Treasurer<br><br>Will Mabry- Asst. Treasurer<br><br>Stephanie Vitiello- Secretary<br><br>Jason Post- CCO/AMLO | N/A | Independent Trustees<br>Dr. Bob Froehlich<br>Bryan A. Ward<br>Ethan Powell<br><br>Interested Trustees<br>John Honis | 91 | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=S000015818&owner=include&scd=filings&count=40 | 105 |
| Highland Global Allocation Fund | HGLB | 0.229% | Dustin Norris- EVP<br><br>Frank Waterhouse- PEO/PFO/PAO/ Treasurer<br><br>Will Mabry- Asst. Treasurer<br><br>Stephanie Vitiello- Secretary<br><br>Jason Post- CCO/AMLO | N/A | Independent Trustees<br>Dr. Bob Froehlich<br>Bryan A. Ward<br>Ethan Powell<br><br>Interested Trustees<br>John Honis | 71 | https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=S000001616&owner=include&scd=filings&count=40 | 98 |

Exhibit A - Page 8

I-15

| Fund | Ticker | Combined Dondero or Family Trust Ownership % (Direct and Indirect) | Officers | Directors or Managers | Trustees | Number of Accounts[1] | Link to Most Recent SEC Filing | POC No. |
|---|---|---|---|---|---|---|---|---|
| **NexPoint Real Estate Strategies Fund** | NRESF | 21.6146% | James Dondero- PEO/President<br><br>Frank Waterhouse- PFO/PAO/Treas urer<br><br>Dustin Norris- EVP<br><br>Will Mabry- Asst. Treasurer<br><br>Stephanie Vitiello- Secretary<br><br>Jason Post- CCO/AMLO | N/A | Independent Trustees<br>Dr. Bob Froehlich<br>Bryan A. Ward<br>Ethan Powell<br><br>Interested Trustees<br>John Honis | 307 | https://www.sec.gov/edgar/browse/?CIK=1663712&owner=exclude | 118 |

Exhibit A - Page 9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 9, 2021, I caused the foregoing document to be served via electronic email through the Court's CM/ECF system to the parties that have requested or consented to such service.


<u>*/s/ A. Lee Hogewood, III*</u>
A. Lee Hogewood, III

# **EXHIBIT J**

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas  75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

COUNSEL FOR NEXPOINT ADVISORS, L.P. AND
HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Chapter 11 |
| | § | |
| | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

**RESPONSE OF THE ADVISORS TO ORDER REQUIRING DISCLOSURES**

COME NOW NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA," with NexPoint, the "Advisors"), and file this their *Response to Order Requiring Disclosures* (the "Order"), entered by the Court *sua sponte* in the above styled and numbered Chapter 11 bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"), respectfully stating as follows:

**I.      THE ADVISORS HAVE CLEAR STANDING**

1.      The Court appears to question the standing of the Advisors with respect to past, present, and potentially future actions.  The Court also appears to believe that the Advisors "frequently file lengthy and contentious pleadings," while the mere fact of the Order implies that the Advisors have been opaque regarding their ownership and control.  Respectfully, any concerns along these lines are not warranted.

2.      First, the Advisors are expressly named as parties enjoined by the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)* (the "Plan"). "Enjoined Parties" under the Plan is defined as including any "Related Entity." Plan at p. 8. "Related Entity" includes "affiliates" of the Debtor and any entity on the "Related Entity List." Plan at p. 14. This list is filed as a Plan Supplement, *see* Plan at p. 14, and it includes both Advisors. *See* Docket No. 1811-9 at pp. 9 and 12.

3.      As the Advisors are both subject to the Plan's injunctions, the Advisors have unquestionable standing to seek relief from the Plan, including objecting to the Plan, appealing the Plan, and seeking to stay the Plan. *See, e.g., Samnorwood Indep. Sch. Dist. v. Tex. Educ. Agency*, 533 F.3d 258, 265 (5th Cir. 2008) ("a third party ha[s] standing to appeal an injunction which adversely affects its interest, even when it was not a party to the litigation"). Thus, even if the Advisors did not have a direct economic interest under the Plan—a point on which the Court focused—the fact that the Plan enjoined them and took from them the rights they otherwise had conferred standing. As the Advisors informed the Court, if they were not being enjoined under the Plan from advising their clients to take certain actions, or causing their clients to take certain actions, which they believed to be necessary and proper pursuant to their own fiduciary duties, and if the Plan was not exculpating various persons, including of their fiduciary duties to the Advisors and their clients, then the Advisors would not have contested the Plan. The Plan need not have enjoined the Advisors or provided broad exculpations, but it did, and the Advisors should not be faulted for contesting and continuing to contest the Plan.

4.      Next, the Debtor has filed four adversary proceedings against the Advisors. It was the Debtor who filed these, and sought preliminary injunctive relief and mandatory final injunctions. The Advisors have reasonably and lawfully *defended* themselves against the Debtor's claims and causes of action. That is not vexatiousness of any kind.

5.      On January 6, 2021, the Debtor filed a complaint against the Advisors and others, thereby initiating Adversary Proceeding No. 21-03000.  The Debtor alleged that the Advisors and others tortiously interfered with contracts and violated the automatic stay, and the Debtor sought a preliminary injunction preventing the Advisors and others from seeking to remove the Debtor as the manager of various third-party CLOs.  The Advisors agreed to a continuing temporary restraining order and the matter has been settled, subject to an imminent 9019, with the Debtor dismissing with prejudice all of its claims against the Advisors and the Advisors agreeing that they are controlled by Mr. Dondero—something they have always admitted.  That the Debtor is dismissing these claims without any settlement payment demonstrates that these claims were always baseless.  The Advisors had the right and standing to defend themselves and the interests of their clients, and they acted reasonably throughout.

6.      Next, the Debtor filed separate adversary proceedings against each of the Advisors, seeking monetary damages for amounts allegedly owing under promissory notes.  On January 22, 2021, the Debtor filed its complaint against HCMFA, thereby initiating Adversary Proceeding No. 21-03004, seeking damages of at least $7,687,653.07 under alleged promissory notes.  Also on January 22, 2021, the Debtor filed its complaint against NexPoint, thereby initiating Adversary Proceeding No. 21-03005, seeking damages of at least $23,071,195.03.  The Advisors deny any liability and have asserted various affirmative defenses.  The Advisors have the right and standing to defend themselves, and have been so doing.  The Court recently agreed that the reference for these adversary proceedings will have to be withdrawn, over the Debtor's objection.  The Advisors will note that the Debtor argued that this Court could try these promissory note suits under section 542 of the Bankruptcy Code, a proposition rejected by this Court on multiple occasions before and by most of the case law.  It was the Debtor that forced a contested hearing on what should have been, respectfully, an obvious issue and an obvious conclusion.

7.     Next, the Debtor filed a fourth adversary proceeding against the Advisors, seeking unspecified contract damages but, more importantly, seeking an exotic, if not unprecedented, mandatory injunction. The Debtor filed this Complaint on February 17, 2021, thereby initiating Adversary Proceeding No. 21-03010. The Debtor convinced the Court of an emergency, and an emergency, all-day trial was held on the mandatory injunction action on six days' notice. Even though it was reasonably clear to the Debtor that there was no issue and any issue was moot, the Debtor proceeded with its case, at the conclusion of which the Court denied the injunction as moot. The Advisors had every right and standing to contest this action, and they were proven right. It was the Debtor that chose to force an all-day hearing on an issue that never existed, never was an emergency, and was moot even under the Debtor's allegations.

8.     Separately, as the Court noted in the Order, the Advisors have filed an application for allowance of administrative claims of approximately $14 million, resulting from postpetition overpayments under shared service agreements between the Advisors and the Debtor. *See* Docket No. 1826. The Advisors' points and arguments are simple: the Debtor billed the Advisors for many employees under shared services agreements, who were actually no longer employed by the Debtor and could not have been providing the Advisors with any services, while the Advisors paid for these services without return value and in violation of the contracts. The Debtor contests the allowance of these claims and the Court will decide the claims in due course. The Advisors have the right and standing to prosecute these administrative claims, which claims are neither absurd, baseless, nor without *prima facie* evidence.

9.     Finally, NexPoint has acquired the prepetition (and potentially postpetition) claims of various former employees of the Debtor, who are now employed by NexPoint or by a staffing company engaged by NexPoint. These employees are: Bhawika Jain, Michael Beispiel, Sang Kook (Michael) Jeong, Phoebe Stewart, and Sahan Abayaratha. *See* Docket Nos. 2044, 2045,

2046, 2047, and 2266.  The amount of these employees' claims is not yet known, and remains subject to ongoing discovery.  While the Debtor has objected to these employee claims, *see* Docket No. 2059, that objection has yet to be sustained.  And, while the details are not clear to NexPoint, at least for Plan voting purposes the Court estimated the claims of these employees at $1 each.  In any event, as the holder of prepetition claims, which have yet to be disallowed, NexPoint has full standing in the Bankruptcy Case the same as any creditor.  And, since even the Court estimated these claims at *some* amount, the claims are neither absurd, baseless, nor without *prima facie* evidence.

10.     As defendants in four lawsuits, it cannot be suggested that the Advisors lacked standing to defend themselves.  As parties subject to this Court's permanent injunctions, they have the standing to contest those injunctions.  As counterparties to executory contracts with the Debtor, which were only terminated at the end of February, 2021, the Advisors were also "parties-in-interest" in the Bankruptcy Case, separate and apart from being creditors.  *See, e.g., In re Suffolk Reg'l Off-Track Betting Corp.*, 426 B.R. 397 (Bankr. E.D.N.Y. 2011).  As a "party-in-interest," the Advisors "may raise and may appear and be heard on any issue in a case under this chapter," at least until the rejection of the shared services agreements.  11 U.S.C. § 1109(b).  As unsecured and as postpetition administrative creditors—with claims that have not been disallowed or paid—the Advisors have full standing for all matters in the Bankruptcy Case due to their unsatisfied pecuniary interests.  *See, e.g., In re Mandel*, 2016 U.S. App. LEXIS 4274 (5th Cir. 2016) (holding that pecuniary interest confers bankruptcy standing); *In re Gulley*, 436 B.R. 878, 892 (Bankr. N.D. Tex. 2010) ("a mortgage servicer has standing to participate in a debtor's bankruptcy case by virtue of its pecuniary interest in collecting payments under the terms of a note").

11.     The Court was correct in previously holding that the Advisors had standing, and there is no legal or factual ground to reconsider that ruling.  Furthermore, the interests of the

Case 23-03076-sgj Doc 53-9 Filed 07/09/25 Entered 07/09/25 12:54:09 Page 6 of 8
Case 19-34054-sgj11 Doc 2489 Filed 07/09/20 Entered 07/09/20 15:42:01 Page 6 of
Appendix      Page 190 of 202

Advisors are different from various of the other entities affiliated with Mr. Dondero. As the Court

knows, the Advisors are fiduciaries to many third-party clients. The injunctions on the Advisors

place the Advisors in a difficult position that other entities affiliated with Mr. Dondero do not have.

The Advisors' postpetition claims are based on executory contracts under which they paid tens of

millions of dollars to the Debtor—something that other entities affiliated with Mr. Dondero did

not do. The Advisors' prepetition claims are based on claims acquired from former employees,

something that is categorically different from the claims of other entitles affiliated with Mr.

Dondero. Other than on plan related matters, the Advisors do not believe that there are at present,

or are likely to be in the future, contested matters and motion practice that would be suitable for

combined pleadings with other entities affiliated with Mr. Dondero, and the Advisors would object

to any such proposal or requirement.[1]

## II.      DISCLOSURES

HCMFA is owned by the following:

(i)  Strand Advisors XVI, Inc., general partner with a 1% interest;
(ii)  Highland Capital Management Services, Inc., limited partner with a 89.6667% interest; and
(iii) Okada Family Revocable Trust, limited partner with a 9.3333% interest.

HCMFA is managed by its general partner, Strand Advisors XVI, Inc., which is managed by the
following:

(i)  James Dondero, Director
(ii)  Dustin Norris, Executive Vice President
(iii) Frank Waterhouse, Treasurer
(iv)  Will Mabry, Assistant Treasurer
(v)  Stephanie Vitiello, Secretary
(vi) Jason Post, Chief Compliance Officer/Anti-Money Laundering Officer

---

[1]      Finally, and respectfully, the Advisors would note the seeming inequity in requiring detailed disclosures from the Advisors, implying that the Advisors had acted inappropriately, while apparently relieving the Debtor of its obligations (or not enforcing those obligations) under Bankruptcy Rule 2015.3 regarding tens or hundreds of millions of dollars of indirect value in the estate at the same hearing. Just as the Debtor forced contested hearings against the Advisors (losing several), yet labeled the Advisors "vexatious" and "Dondero Tentacles," so too the Court appears to be applying a different standard of disclosure to the Advisors than to the Debtor

Strand Advisors XVI, Inc. is owned 100% by James Dondero.

Highland Capital Management Services, Inc. is owned 75% by James Dondero and 25% by Mark Okada.

Highland Capital Management Services, Inc. is managed by the following:

(i)  James Dondero, Director
(ii) James Dondero, President
(iii) Scott Ellington, Secretary
(iv) Frank Waterhouse, Treasurer

It is not known who is interested in the Okada Family Revocable Trust, but it is not believed to be James Dondero or any of his family and is believed instead to me Mr. Mark Okada and his family members.

HCMFA is a postpetition creditor of the Debtor, holding an administrative claim together with NexPoint in the combined amount of approximately $14 million, which amount has not been broken down between HCHFA and NexPoint, pending discovery.  The claim has been objected to and neither allowed nor disallowed as of this filing.

HCMFA is not a prepetition creditor of the Debtor.

NexPoint is owned by the following:

(i) NexPoint Advisors GP, LLC, general partner with 1% ownership; and
(ii) The Dugaboy Investment Trust, limited partner with 99% ownership.

NexPoint is managed by its general partner, NexPoint Advisors GP, LLC, which is managed by the following:

(i)  James Dondero, Member
(ii) James Dondero, President
(iii) Dustin Norris, Executive Vice President
(iv) Frank Waterhouse, Treasurer
(v) Will Mabry, Assistant Treasurer
(vi) Stephanie Vitello, Secretary
(vii) D.C. Sauter, General Counsel
(viii) Jason Post, Chief Compliance Officer/Anti-Money Laundering Officer

NexPoint Advisors GP, LLC is owned 100% by James Dondero.

The Dugaboy Investment Trust is affiliated with Mr. Dondero and, as it will be filing its own disclosure pursuant to the Order, the Advisors would respectfully refer the Court to said disclosure.

NexPoint is a postpetition creditor of the Debtor, holding an administrative claim together with HCMFA in the combined amount of approximately $14 million, which amount has not been

broken down between HCHFA and NexPoint, pending discovery.  The claim has been objected to and neither allowed nor disallowed as of this filing.

NexPoint is a prepetition creditor of the Debtor by virtue of having acquired five (5) former employee claims, as identified above.  The amount of these claims is not known, as this depends, in part, on certain "award letters" issued by the Debtor that have not been produced in discovery yet, pending confirmation from the employees that the same may be released to NexPoint.  The claims have been objected to and neither allowed nor disallowed as of this filing.

RESPECTFULLY SUBMITTED this 9th day of July, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/  Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: drukavina@munsch.com

**COUNSEL FOR HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. AND NEXPOINT ADVISORS, L.P.**

# <u>EXHIBIT K</u>

Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for Dugaboy Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, | § | |
| L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

## SECOND AMENDED RESPONSE OF DUGABOY INVESTMENT TRUST TO ORDER REQUIRING DISCLOSURES

COMES NOW Dugaboy Investment Trust ("Dugaboy") and files this response of Dugaboy Investment Trust to *Order Requiring Disclosures* [Dkt. # 2460] (the "Order"), entered by the Court *sua sponte* in the above styled and numbered Chapter 11 bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"), respectfully stating as follows:

## I.      RESPONSE

1.      The Court has entered an order requiring Dugaboy to make certain disclosures relative to its standing in connection with the above captioned matter.  The Court has already

1934054210709000000000017

K-2

ruled on a number of matters before this Court that Dugaboy has possessed the requisite standing

on matters that it has taken a position or filed a support pleading.

      2.      Dugaboy is named as a "Related Entity" and is enjoined by the Debtor's *Fifth*

*Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)* (the

"Plan"). *See* Dkt. No. 1811-9 at p. 19. As an enjoined party, Dugaboy has standing to seek

relief from the Plan. *See, e.g., Samnorwood Indep. Sch. Dist. v. Tex. Educ. Agency*, 533 F.3d

258, 265 (5th Cir. 2008) ("a third party had standing to appeal an injunction which adversely

affects its interest, even when it was not a party to the litigation").

      3.      Dugaboy is a named defendant in the matter styled *Official Committee of*

*Unsecured Creditors vs. CLO Holdco, Ltd., Charitable DAF Holdco, Ltd., Charitable DAF*

*Fund, LP, Highland Dallas Foundation, Inc., The Dugaboy Investment Trust, Grant James Scott*

*III in his individual capacity, as Trustee of The Dugaboy Investment Trust, and as Trustee of The*

*Get Good Nonexempt Trust, and James D. Dondero* (Case No. 20-03195) and has been advised

that it will be added as a defendant in an additional adversary proceeding to be filed going

forward. In the adversary proceeding where Dugaboy is named as a defendant the standing of

Dugaboy is not at issue. What will be at issue in those cases is whether Dugaboy should be a

named party and whether the Plaintiff in those cases has asserted a recognizable cause of action

against Dugaboy.

      4.      Further, Dugaboy has standing based upon the proofs of claim that it filed in this

bankruptcy case. Although the Debtor has challenged Dugaboy's claims, it has the right to assert

the claims and participate in these bankruptcy proceedings as a party in interest.

{00376120-1}                                   2

## II.     DISCLOSURES

5.      Dugaboy is a Delaware Trust.  As a Trust, it has no owners, rather, beneficiaries and a trustee.  Distributions out of the Trust and the decisions made on behalf of the Trust are governed by the Trust documents.  The Trust Agreement is dated October 2010 and it is styled "Trust Agreement between Dana Scott Breault, Settlor and James D. Dondero and Commonwealth Trust Company, Trustees."

6.      The Trust has three (3) trustees each with a different function.  The Trust creates an Administrative Trustee, a Family Trustee and an Independent Trustee.  The initial Trustees were Commonwealth Trust Company as Administrative Trustee, James D. Dondero as Family Trustee and Grant Scott as Independent Trust.  The current Family Trustee is Nancy Dondero, the sister of James D. Dondero.

7.      The Trust Agreement creates three (3) separate trusts under the Dugaboy Investment Trust.  The first is for the benefit of James D. Dondero, the second is for children and the third is for descendants.

8.      The Trust owns an 0.1866% Class A interest in the Debtor and has filed proofs claim numbered 113, 131, and 177.

9.      Proof of Claim No. 177 is an administrative proof of claim for the mismanagement of certain funds by the Debtor.

10.      Proof of Claim No. 113 relates to the Debtor's 2008 tax return, which is currently being audited, which audit may result in the Debtor being liable to its limited partners, including Dugaboy.  Proof of Claim No. 113 also relates to the Debtor's failure to make certain tax distributions to the limited partners, including Dugaboy, from 2004 through 2018. The amount of this claim is uncertain, but Dugaboy has requested certain information from the Debtor in order

{00376120-1}                               3

K-4

to calculate a precise amount. Dugaboy obtained its status as a limited partner in the Debtor through its status as successor-in-interest to the Canis Major Trust.

11.     Lastly, Proof of Claim 131 relates to two Master Securities Lending Agreements that Dugaboy entered into with Highland Select Equity Master Fund in 2014 and 2015. Dugaboy made various loans to Highland Select in the form of 2,015,000 shares of NexPoint Credit Strategies Fund valued at $20,270,900. Dugaboy made various other loans in 2015. The Master Securities Lending Agreements were mostly terminated in July 2019. Pursuant to the Termination of Loan, Select and Dugaboy agreed to terminate the 2015 MSLA and partially terminate the 2014 MSLA such that a large number of the loaned securities remained due and owing to Dugaboy under the Loan Agreements.

12.     From 2015 until the termination of the Loan Agreements in 2019, Select and/or the Debtor made numerous repayments of the securities loaned by Dugaboy. However, a substantial number of the loaned securities have not been repaid and remain outstanding.

13.     As of the Petition Date, Dugaboy has not been repaid the outstanding shares and is owed repayment of the loaned securities or the cash value of the loaned securities, plus accrued interest, in the amount of $12,041,438. A summary of the loan account is attached as Exhibit B to the *Response of the Dugaboy Investment Trust to the Debtor's First Omnibus Objection to Certain Proofs of Claim* [Dkt. No. 1153].

14.     The gist of Dugaboy's claim is premised on the fact that the Debtor was general partner or *de facto* general partner of Highland Select and directed that the loaned funds be used for the sole benefit of the Debtor, thereby obligating the Debtor on the loans.

15.     Objections are pending to each of the proofs of claim that have been filed.

16.    In addition, Dugaboy is the maker of a note held by the Debtor that is the subject

of the Creditors' Committee Adversary Proceeding.

July 9, 2021.

Respectfully submitted,

*/s/Douglas S. Draper.*
Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Michael E. Landis, La. Bar No. 36542
mlandis@hellerdraper.com

Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust*

## CERTIFICATE OF SERVICE

I, Douglas S. Draper, counsel for The Dugaboy Investment Trust, do hereby certify that I
caused a copy of the above and foregoing to be served on **July 9, 2021**, via the Court's ECF
Notification System as follows:

- David G. Adams    david.g.adams@usdoj.gov,
  southwestern.taxcivil@usdoj.gov;dolores.c.lopez@usdoj.gov
- Michael P. Aigen    michael.aigen@stinson.com, stephanie.gratt@stinson.com
- Amy K. Anderson    aanderson@joneswalker.com, lfields@joneswalker.com;amy-
  anderson-9331@ecf.pacerpro.com
- Zachery Z. Annable    zannable@haywardfirm.com
- Bryan C. Assink    bryan.assink@bondsellis.com
- Asif Attarwala    asif.attarwala@lw.com
- Joseph E. Bain    JBain@joneswalker.com, kvrana@joneswalker.com;joseph-bain-
  8368@ecf.pacerpro.com;msalinas@joneswalker.com
- Michael I. Baird    baird.michael@pbgc.gov, efile@pbgc.gov
- Sean M. Beach    bankfilings@ycst.com, sbeach@ycst.com

- Paul Richard Bessette     pbessette@KSLAW.com,
  ccisneros@kslaw.com;jworsham@kslaw.com;kbryan@kslaw.com;jcarvalho@kslaw.com
  ;rmatsumura@kslaw.com
- John Y. Bonds     john@bondsellis.com
- Matthew Glenn Bouslog     mbouslog@gibsondunn.com
- Larry R. Boyd     lboyd@abernathy-law.com, ljameson@abernathy-law.com
- Jason S. Brookner     jbrookner@grayreed.com,
  lwebb@grayreed.com;acarson@grayreed.com;cpatterson@grayreed.com
- Greta M. Brouphy     gbrouphy@hellerdraper.com,
  dhepting@hellerdraper.com;vgamble@hellerdraper.com
- M. David Bryant     dbryant@dykema.com, csmith@dykema.com
- Candice Marie Carson     Candice.Carson@butlersnow.com
- Annmarie Antoniette Chiarello     achiarello@winstead.com
- Shawn M. Christianson     schristianson@buchalter.com, cmcintire@buchalter.com
- James Robertson Clarke     robbie.clarke@bondsellis.com
- Matthew A. Clemente     mclemente@sidley.com, matthew-clemente-
  8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russel
  l@sidley.com;dtwomey@sidley.com
- Megan F. Clontz     mclontz@spencerfane.com, lvargas@spencerfane.com
- Andrew Clubok     andrew.clubok@lw.com, andrew-clubok-9012@ecf.pacerpro.com,ny-
  courtmail@lw.com
- Leslie A. Collins     lcollins@hellerdraper.com
- David Grant Crooks     dcrooks@foxrothschild.com,
  etaylor@foxrothschild.com,jsagui@foxrothschild.com,plabov@foxrothschild.com,jmanfr
  ey@foxrothschild.com
- Deborah Rose Deitsch-Perez     deborah.deitschperez@stinson.com,
  patricia.tomasky@stinson.com;kinga.mccoy@stinson.com
- Gregory V. Demo     gdemo@pszjlaw.com,
  jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com
  ;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjla
  w.com;lsc@pszjlaw.com
- Casey William Doherty     casey.doherty@dentons.com,
  dawn.brown@dentons.com;Melinda.sanchez@dentons.com;docket.general.lit.dal@dento
  ns.com
- Douglas S. Draper     ddraper@hellerdraper.com,
  dhepting@hellerdraper.com;vgamble@hellerdraper.com;mlandis@hellerdraper.com;gbro
  uphy@hellerdraper.com
- Lauren Kessler Drawhorn     lauren.drawhorn@wickphillips.com,
  samantha.tandy@wickphillips.com
- Vickie L. Driver     Vickie.Driver@crowedunlevy.com,
  crissie.stephenson@crowedunlevy.com;seth.sloan@crowedunlevy.com;elisa.weaver@cr
  owedunlevy.com;ecf@crowedunlevy.com
- Jason Alexander Enright     jenright@winstead.com
- Robert Joel Feinstein     rfeinstein@pszjlaw.com
- Matthew Gold     courts@argopartners.net
- Bojan Guzina     bguzina@sidley.com

{00376120-1}                    6

K-7

- Margaret Michelle Hartmann    michelle.hartmann@bakermckenzie.com
- Thomas G. Haskins    thaskins@btlaw.com
- Melissa S. Hayward    MHayward@HaywardFirm.com, mholmes@HaywardFirm.com
- Michael Scott Held    mheld@jw.com, lcrumble@jw.com
- Gregory Getty Hesse    ghesse@HuntonAK.com,
  astowe@HuntonAK.com;tcanada@HuntonAK.com;creeves@HuntonAK.com
- Juliana Hoffman    jhoffman@sidley.com, txefilingnotice@sidley.com;julianna-
  hoffman-8287@ecf.pacerpro.com
- A. Lee Hogewood    lee.hogewood@klgates.com,
  haley.fields@klgates.com;matthew.houston@klgates.com;mary-
  beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.co
  m;Artoush.varshosaz@klgates.com
- Warren Horn    whorn@hellerdraper.com,
  dhepting@hellerdraper.com;vgamble@hellerdraper.com
- William R. Howell    william.howell@bondsellis.com, williamhowell@utexas.edu
- John J. Kane    jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com
- Jason Patrick Kathman    jkathman@spencerfane.com,
  gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com
- Edwin Paul Keiffer    pkeiffer@romclaw.com, bwallace@romclaw.com
- Jeffrey Kurtzman    kurtzman@kurtzmansteady.com
- Phillip L. Lamberson    plamberson@winstead.com
- Lisa L. Lambert    lisa.l.lambert@usdoj.gov
- Michael Justin Lang    mlang@cwl.law,
  nvazquez@cwl.law;aohlinger@cwl.law;jgonzales@cwl.law;vpatterson@cwl.law
- Edward J. Leen    eleen@mkbllp.com
- Paul M. Lopez    bankruptcy@abernathy-law.com
- Faheem A. Mahmooth    mahmooth.faheem@pbgc.gov, efile@pbgc.gov
- Ryan E. Manns    ryan.manns@nortonrosefulbright.com
- Brant C. Martin    brant.martin@wickphillips.com, samantha.tandy@wickphillips.com
- Brent Ryan McIlwain    brent.mcilwain@hklaw.com,
  robert.jones@hklaw.com;brian.smith@hklaw.com
- Thomas M. Melsheimer    tmelsheimer@winston.com, tom-melsheimer-
  7823@ecf.pacerpro.com
- Paige Holden Montgomery    pmontgomery@sidley.com,
  txefilingnotice@sidley.com;paige-montgomery-
  7756@ecf.pacerpro.com;crognes@sidley.com;ebromagen@sidley.com;efilingnotice@sid
  ley.com
- J. Seth Moore    smoore@ctstlaw.com, jsteele@ctstlaw.com
- John A. Morris    jmorris@pszjlaw.com
- Edmon L. Morton    emorton@ycst.com
- Holland N. O'Neil    honeil@foley.com,
  jcharrison@foley.com;acordero@foley.com;holly-holland-oneil-3540@ecf.pacerpro.com
- Rakhee V. Patel    rpatel@winstead.com,
  dgalindo@winstead.com;achiarello@winstead.com
- Charles Martin Persons    cpersons@sidley.com, txefilingnotice@sidley.com;charles-
  persons-5722@ecf.pacerpro.com

{00376120-1}                    7

K-8

- Louis M. Phillips    louis.phillips@kellyhart.com, june.alcantara-davis@kellyhart.com;Amelia.Hurt@kellyhart.com
- Mark A. Platt    mplatt@fbtlaw.com, aortiz@fbtlaw.com
- Jeffrey Nathan Pomerantz    jpomerantz@pszjlaw.com
- Kimberly A. Posin    kim.posin@lw.com, colleen.rico@lw.com
- Jeff P. Prostok    jprostok@forsheyprostok.com, jjones@forsheyprostok.com;tlevario@forsheyprostok.com;calendar@forsheyprostok.com;calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com
- Linda D. Reece    lreece@pbfcm.com
- Penny Packard Reid    preid@sidley.com, txefilingnotice@sidley.com;penny-reid-4098@ecf.pacerpro.com;ncade@sidley.com
- Suzanne K. Rosen    srosen@forsheyprostok.com, jjones@forsheyprostok.com;lbreedlove@forsheyprostok.com;calendar@forsheyprostok.com;srosen@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com
- Davor Rukavina    drukavina@munsch.com
- Amanda Melanie Rush    asrush@jonesday.com
- Alyssa Russell    alyssa.russell@sidley.com
- Mazin Ahmad Sbaiti    mas@sbaitilaw.com, krj@sbaitilaw.com;jeb@sbaitilaw.com
- Douglas J. Schneller    douglas.schneller@rimonlaw.com
- Michelle E. Shriro    mshriro@singerlevick.com, scotton@singerlevick.com;tguillory@singerlevick.com
- Nicole Skolnekovich    nskolnekovich@hunton.com, astowe@huntonak.com;creeves@huntonak.com
- Frances Anne Smith    frances.smith@judithwross.com, michael.coulombe@judithwross.com
- Eric A. Soderlund    eric.soderlund@judithwross.com
- Martin A. Sosland    martin.sosland@butlersnow.com, ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com
- Laurie A. Spindler    Laurie.Spindler@lgbs.com, Dora.Casiano-Perez@lgbs.com;dallas.bankruptcy@lgbs.com
- Jonathan D. Sundheimer    jsundhimer@btlaw.com
- Kesha Tanabe    kesha@tanabelaw.com
- Clay M. Taylor    clay.taylor@bondsellis.com, krista.hillman@bondsellis.com
- Chad D. Timmons    bankruptcy@abernathy-law.com
- Dennis M. Twomey    dtwomey@sidley.com
- Basil A. Umari    BUmari@dykema.com, pelliott@dykema.com
- United States Trustee    ustpregion06.da.ecf@usdoj.gov
- Artoush Varshosaz    artoush.varshosaz@klgates.com, Julie.garrett@klgates.com
- Julian Preston Vasek    jvasek@munsch.com
- Donna K. Webb    donna.webb@usdoj.gov, brian.stoltz@usdoj.gov;CaseView.ECF@usdoj.gov;brooke.lewis@usdoj.gov
- Jaclyn C. Weissgerber    bankfilings@ycst.com, jweissgerber@ycst.com
- Elizabeth Weller    dallas.bankruptcy@publicans.com, dora.casiano-perez@lgbs.com;Melissa.palo@lgbs.com
- Daniel P. Winikka    danw@ldsrlaw.com, craigs@ldsrlaw.com,dawnw@ldsrlaw.com,ivys@ldsrlaw.com

- Hayley R. Winograd    hwinograd@pszjlaw.com
- Megan Young-John    myoung-john@porterhedges.com

*/s/Douglas S. Draper.*