Sawnie A. McEntire
Ian B. Salzer
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
smcentire@pmmlaw.com
isalzer@pmmlaw.com
*Counsel for Plaintiff Hunter Mountain Investment Trust*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |
| | |
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | |
| **Plaintiff,** | |
| **v.** | Adv. Pro. No. 21-03076-sgj |
| **JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.** | |
| **Defendants.** | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
EMERGENCY VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Hunter Mountain Investment Trust ("HMIT") files this Reply in Support ("Reply") of its Emergency Verified Motion for Temporary Restraining Order ("Motion") and in response to Defendants' Opposition to Plaintiff Hunter Mountain Investment Trust's Emergency Motion For Temporary Restraining Order [Doc. 389] ("Response") and would respectfully show:

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iv

I.      Introduction ....................................................................................................... 1

II.     Jurisdiction has already been established. ........................................................ 3

III.    An Emergency Exists. ....................................................................................... 4

IV.     The Motion seeks injunctive relief predicated on claims in the Amended
        Complaint. ......................................................................................................... 4

V.      Injunctive relief may be granted in connection with discrete equitable claims. ............ 6

VI.     Fraudulent transfer claims are a proper basis for asset-freezing injunctions
        regardless of whether they are characterized as legal or equitable. ................. 7

VII.    The equitable remedy of disgorgement is the "primary object" of HMIT's
        fiduciary duty claims. ....................................................................................... 8

VIII.   Rule 7001 does not require requests for injunctive relief to be filed in separate
        and independent adversary proceedings. .......................................................... 9

IX.     HMIT has satisfied the elements for a TRO. .................................................. 10

a.      *Adequate verification and likelihood of success on the merits.* ..................... 11

b.      *Substantial threat of irreparable injury.* ....................................................... 13

c.      *Balance of harms.* ......................................................................................... 14

d.      *Public interest.* ............................................................................................. 14

X.      The proposed TRO is appropriately tailored. ................................................ 14

XI.     Conclusion ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Allied Dev. of Ala. LLC v. Forever 21, Inc. (In re Forever 21, Inc)*, 623 B.R. 53 (Bankr. D. Del. 2020) ........................................................................................................................ 12

*Amegy Bank N.A. v. Monarch Flight II, LLC*, No. 4:11-CV-3218, 2011 U.S. Dist. LEXIS 140874 (S.D. Tex. Dec. 7, 2011).................................................................................... 3

*Animale Grp., Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007) ............................ 8

*Bank of Am., N.A. v. Mega World Builder Corp.*, No. 4:24-CV-3021, 2024 U.S. Dist. LEXIS 203763 (S.D. Tex. Nov. 8, 2024) ................................................................. 2, 13, 15

*Bucklew*, 2019 U.S. Dist. LEXIS 88328 ...................................................................................... 6

*Carmichael v. Balke (In re Imperial Petro. Recovery Corp.)*, 84 F.4th 264 (5th Cir. 2023)......... 15

*Deckert v. Indep. Shares Corp.*, 311 U.S. 282 (1940)................................................................... 8

*Desjardins v. Van Buren Community Hosp.*, 37 F.3d 21 (1st Cir. 1994)...................................... 15

*Double Eagle Energy Servs., L.L.C. v. Markwest Utica EMG, L.L.C.*, 936 F.3d 260 (5th Cir. 2019) ............................................................................................................................ 1, 4

*Eighth Reg'l War Labor Bd. v. Humble Oil & Ref. Co.*, 145 F.2d 462 (5th Cir. 1944).................11

*Emery v. Sun Cupid Tech. (HK) Ltd.*, Civil Action No. 3:20-CV-3519-L, 2020 U.S. Dist. LEXIS 241782 (N.D. Tex. 2020) ...................................................................................... 13

*Freeport-McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426 (1991) ............................................. 4

*French v. Fisher*, No. 1:17-CV-248-DAE, 2018 U.S. Dist. LEXIS 232723 (W.D. Tex. 2018) (... 6, 10

*Galaz v. Katona (In re Galaz)*, 841 F.3d 316 (5th Cir. 2016) ...................................................... 14

*Garrison v. Doe*, No. 3:24-cv-00700-X (BT), 2024 U.S. Dist. LEXIS 145370 (N.D. Tex. 2024) . 6

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) ............... 8

*Hyundai Cap. Am. v. Kelly Grimsley Auto Grp., Ltd.*, 2025 U.S. Dist. LEXIS 189103 (W.D. Tex. Aug. 20, 2025) .......................................................................................................... 12

*In re Brier Creek Corp. Center Assoc. Ltd.*, 486 B.R. 681 (Bankr. E.D.N.C. 2013) ....................11

*In re RGV Smiles by Rocky L. Salinas D.D.S. P.A.*, 626 B.R. 278 (Bankr. S.D. Tex. 2021)......... 12

*Infinite Fin. Sols., Inc. v. Strukmyer, LLC*, Civil Action No. 3:14-CV-354-N, 2014 U.S. Dist. LEXIS 200954 (N.D. Tex. 2014).................................................................................... 6

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2010)................................................................. 2, 9, 10

*Jaramillo v. Texas*, No. 6:21-cv-253, 2022 U.S. Dist. LEXIS 74987 (E.D. Tex. 2022) ...............11

*Kellam v. Metrocare Servs.*, No. 3:12-CV-352-P, 2013 U.S. Dist. LEXIS 197235 (N.D. Tex. 2013) ............................................................................................................................... 1

*Massimo Motor Sports LLC v. Shandong Odes Indus. Co.*, 2022 U.S. Dist. LEXIS 25705 (N.D. Tex. Feb. 14, 2022) ..................................................................................................... 13

*McLean v. Greenfield*, No. 3:24-cv-00447-S (BT), 2025 U.S. Dist. LEXIS 26861 (N.D. Tex. 2025) ...................................................................................................................................... 6

*McRae v. ConnectDirect Online, Inc.*, No. 3:24-CV-786-DPJ-ASH, 2025 U.S. Dist. LEXIS 26082 (S.D. Miss. 2025) ...................................................................................................... 11

*Newby v. Enron Corp.*, 188 F. Supp. 2d 684 (S.D. Tex. 2002) ................................................ 7, 8

*NFL Players Ass'n v. NFL*, 874 F.3d 222 (5th Cir. 2017) ............................................................ 11

*Nichols v. Enterasys Networks*, Inc., 495 F.3d 185 (5th Cir. 2007) ............................................. 1

*Prep Sols., Ltd v. Lecht*, 2022 U.S. Dist. LEXIS 98756 (E.D. Tex. June 2, 2022) ...................... 10

*QuarterNorth Energy LLC and Certain of its Affiliates v. Atl. Mar. Serv. (In re Fieldwood Energy LLC)*, No. 20-33948, 2021 Bankr. LEXIS 2867 (Bankr. S.D. Tex. Oct. 15, 2021) .................. 14

*Rouf v. Cricket Communs., Inc.*, 2013 U.S. Dist. LEXIS 163545 (S.D. Tex. Nov. 18, 2013) ........ 2

*S. Texas Lighthouse for the Blind, Inc. v. Fed. Supply Servs. Int'l, Inc.*, 2020 U.S. Dist. LEXIS 157347 (S.D. Tex. Aug. 28, 2020) ................................................................................... 3

*Sargeant v. Al Saleh*, 512 S.W.3d 399 (Tex. App.—Corpus Christi 2016, no pet.) ................... 3, 9

*SEC v. Shavers*, 2014 U.S. Dist. LEXIS 194380 (E.D. Texas Aug. 26, 2014) ............................... 7

*Sharp v. SSC Farms I, LLC (In re SK Foods, L.P.)*, 2010 Bankr. LEXIS 6445, *54 (E.D. Cal. April 5, 2010) ...................................................................................................................... 3

*Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545 (5th Cir. 1993) ................................... 13

*Titlemax of Tex., Inc. v. City of Dall.*, 142 F.4th 322 (5th Cir. 2025) .......................................... 15

*Tolliver v. Thompson*, Civil Action No. 21-1768-RGA, 2023 U.S. Dist. LEXIS 47046 (D. Del. 2023) ..................................................................................................................................... 5

*Tujague v. Adkins*, No. 4:18-CV-631, 2018 U.S. Dist. LEXIS 171394 (E.D. Tex. 2018) ... 3, 9, 10, 15, 16, 17

*Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311 (1st Cir. 1988) .......................................... 3

*Walker v. Doe*, No. 6:24-cv-00633-ADA, 2025 U.S. Dist. LEXIS 100396 (W.D. Tex. 2025).. 2, 9, 10, 16

**Statutes**

11 U.S.C. § 105 ................................................................................................................................ 3

6 Del. Code § 1307 ...................................................................................................................... 3, 8

Tex. Bus. & Com. Code § 24.008 .......................................................................................... 3, 8, 14

Tex. Bus. & Com. Code  § 24.006 ............................................................................................... 14

Tex. Bus. & Com. Code § 24.005 ................................................................................................ 14

**Rules**

Fed. R. Bankr. P. 7065............................................................................................................ 10

Fed. R. Civ. P. 65 ..........................................................................................................10, 11, 15

## I.      Introduction[1]

First and foremost, the responding Defendants never deny they are knowingly moving funds offshore and out of reach of this Court's jurisdiction. They also never deny they are doing so **now**, and this silence corroborates the urgency of HMIT's requests for immediate relief. Instead of joining issue on the core allegations of the Motion, Defendants elected to engage mainly on procedural grounds, and those arguments also come up lacking. Also glaring is Defendants' failure to rebut HMIT's authoritative cases in the fraudulent transfer context, opting instead to rely on outdated or extra jurisdictional cases often involving *pro se* prisoners and civil rights issues.

Second, Defendants provide nothing more than recycled arguments concerning jurisdiction which were previously resolved against them.[2] Although Defendants claim that the posture of this Adversary Proceeding has changed, requiring the Court to reconsider its jurisdiction, they advance this argument (as they did in the recent hearing involving HMIT's substitution as Plaintiff) while continuing to discount the Fifth Circuit's holding in the *Double Eagle* case which makes clear that jurisdiction was fixed at the beginning of the case.[3] Defendants even seek the opportunity for additional jurisdictional briefing to cause further delay (Response, at 5 n.7) while their illicit transfers go unchecked. This strategy should be seen for what it really is.

---

[1] As an initial matter, Massand Capital, LLC, Massand Capital, Inc. (collectively "Massand"), and SAS Asset Recovery, Ltd. ("SAS") did not respond to HMIT's Motion or join in Defendants' Response. Therefore, the Court should grant all relief requested in HMIT's Motion against Massand and SAS. *See Kellam v. Metrocare Servs.*, No. 3:12-CV-352-P, 2013 U.S. Dist. LEXIS 197235, at *7 (N.D. Tex. 2013) ("failure to respond to arguments constitutes abandonment or waiver of the issue"); *Nichols v. Enterasys Networks*, Inc., 495 F.3d 185, 190 (5th Cir. 2007). Unless otherwise indicated, the reference to "Defendants" is intended to refer to those Defendants who filed a response.

[2] *Report and Recommendation to the District Court Proposing that it: (A) Grant Defendants' Motions to Withdraw the Reference at such time as the Bankruptcy Court Certifies that Action is Trial Ready; but (B) Defer Pre-Trial matters to the Bankruptcy Court* [Doc. 151] (the "Reference Order").

[3] September 3, 2025 Hearing Transcript, Response Ex. A, at 17:24-25:15; *Double Eagle Energy Servs., L.L.C. v. Markwest Utica EMG, L.L.C.*, 936 F.3d 260, 263 (5th Cir. 2019) (the "time-of-filing rule" is "hornbook law" providing that subject matter jurisdiction is determined when a federal court's jurisdiction is first invoked and "applies to bankruptcy jurisdiction no less than it applies to diversity or federal question jurisdiction.").

Third, Defendants' disregard for relevant authorities now extends to distorting HMIT's arguments and exaggerating facts. Salient examples of these practices are many:

- At Page 21 of the Response, Defendants suggest that the Amended Complaint must be verified as a prerequisite to injunctive relief. This is **not** correct. Here, HMIT's Motion is verified and includes or incorporates sufficient facts establishing a right to relief. That is all that is required, and *Rouf v. Cricket Communs., Inc.*, 2013 U.S. Dist. LEXIS 163545 (S.D. Tex. Nov. 18, 2013) is not to the contrary. In *Rouf*, the plaintiffs' request for a temporary restraining order was contained *only* in an unverified complaint, and they did not provide "*any* verified support" for their request. *Id.* at *3-5 (emphasis added). That is not the case here.

- At Pages 24-25 of the Response, Defendants argue that HMIT is estopped from asserting the existence of jurisdiction, citing HMIT's prior involvement in asserting a jurisdictional challenge that was never ruled upon and when HMIT was represented by different counsel. But HMIT is no longer a defendant in this adversary proceeding: HMIT settled with the Litigation Trustee and the Debtor, it is now represented by new counsel, and its substitution as Plaintiff means that it now stands in the shoes of the Litigation Trustee. Defendants' suggestion that judicial estoppel is a flexible doctrine does not consider these facts.

- At Page 2 of the Response, while never denying their activities of fraudulently transferring assets, Defendants claim there is *much ado about nothing* because the Litigation Trustee never raised an issue suggesting an emergency or the need to seek injunctive relief. But this argument is ludicrous absent a showing that the Litigation Trustee was aware of the Defendants' most recent fraudulent conduct. Indeed, HMIT had no standing to raise these issues until it became the Plaintiff in this Adversary Proceeding less than 45 days ago. Since then, HMIT has moved aggressively and without delay.

- Defendants' next argument—that injunctive relief is unavailable in light of HMIT's request for money damages—is a gross overgeneralization, and ignores case law permitting asset-freezing injunctions under our circumstances.[4] Interestingly, Defendants choose to focus on the theoretical characterization of claims as legal or equitable, and do not once address the case law permitting injunctive relief in fraudulent transfer cases, as authorized by the Texas Uniform Fraudulent Transfer

---

[4] *See, e.g., Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2010); *Walker v. Doe*, No. 6:24-cv-00633-ADA, 2025 U.S. Dist. LEXIS 100396, at *10 (W.D. Tex. 2025); *Bank of Am., N.A. v. Mega World Builder Corp.*, No. 4:24-CV-3021, 2024 U.S. Dist. LEXIS 203763, *17 (S.D. Tex. Nov. 8, 2024); *S. Texas Lighthouse for the Blind, Inc. v. Fed. Supply Servs. Int'l, Inc.*, 2020 U.S. Dist. LEXIS 157347, *3-4 (S.D. Tex. Aug. 28, 2020); *Tujague v. Adkins*, No. 4:18-CV-631, 2018 U.S. Dist. LEXIS 171394 (E.D. Tex. 2018); *Amegy Bank N.A. v. Monarch Flight II, LLC*, No. 4:11-CV-3218, 2011 U.S. Dist. LEXIS 140874, at *17 (S.D. Tex. Dec. 7, 2011); *Sargeant v. Al Saleh*, 512 S.W.3d 399 (Tex. App.—Corpus Christi 2016, no pet.); *Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311 (1st Cir. 1988); *Sharp v. SSC Farms I, LLC (In re SK Foods, L.P.)*, 2010 Bankr. LEXIS 6445, *54 (E.D. Cal. April 5, 2010).

Act (TUFTA), Tex. Bus. & Com. Code § 24.008(a)(3)(A),[5] or disgorgement cases. HMIT's Motion is not a unique request.

- ▪ Defendants devote the last half of their Response addressing the elements for a temporary restraining order (TRO), but they submit no evidence to rebut the verified allegations in the Motion. They instead claim that the scope of the proposed TRO is simply too broad (without suggesting how it might be further narrowed), while completely disregarding the actual scope of the proposed TRO, which is tailored to permit transactions in the ordinary course of business. Defendants will not be injured or frustrated in their efforts to conduct their ordinary business, and the scope of the TRO will not impact their ability to serve their clients. Defendants' Response does a great disservice to this Court and these proceedings through its over-the-top exaggerations.

Defendants' flawed reasoning cannot be reconciled with clear and unambiguous statutes and Fifth Circuit precedent, which is why Defendants consistently borrow from inapposite extra-jurisdictional authorities to cobble together their arguments. The Court should see through these tactics.

## II.    Jurisdiction has already been established.

To avoid injunctive relief aimed at stopping their current efforts to transfer assets outside the jurisdiction of the Court, Defendants once again ask the Court to revisit its Reference Order [Doc. 151], but there is no valid reason or basis to do so.[6] HMIT already briefed this issue in its Reply Brief in Support of Motion to Substitute [Doc. 369], which it incorporates by reference herein, and which the Court properly granted. The Court can properly grant HMIT's current motions as well. HMIT stands in the shoes of the Litigation Trustee, the causes of action remain those set forth in the Amended Complaint [Doc. 158], and the Court already has determined it has

---

[5] Delaware contains an identical statute. 6 Del. Code § 1307. Because HMIT's right to injunctive relief in this case is provided by state law, Defendants' focus on § 105 is irrelevant.

[6] *See Freeport-McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("[w]e have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."); *Double Eagle*, 936 F.3d at 263. Defendants claim that *Double Eagle* does not apply "where the purported bases for an injunction are not in the original complaint but arise out of facts pertinent to the substituted party," but they make no effort to explain how the "new" facts are uniquely "pertinent to" HMIT, as opposed to any plaintiff who may attempt to collect a judgment against Defendants. They also provide no authority for this fabricated distinction.

jurisdiction to hear pre-trial matters [Doc. 151].

Even if the Court were inclined to consider whether the Amended Complaint's causes of action remain "related to" the Highland Capital bankruptcy in the hands of HMIT, they indisputably do. HMIT is not a late comer to this party. Rather, HMIT held 99.5% of the equity interests in Highland Capital prior to bankruptcy and, as a result, holds $336,940,230.58 of Allowed Class 10 Interests under the Plan [Case No. 19-34054, Doc. 4297]. Even absent a transfer of the claims, HMIT would be entitled to the bulk of the proceeds in this action (after satisfaction of creditor claims and other senior obligations). Had the Litigation Trustee continued the litigation, there would be no dispute that bankruptcy jurisdiction continued to exist, and all that has happened since is that the ultimate beneficiary, HMIT, is now directly in charge of creating value for its former equity interest. That is a core component of the Highland Capital bankruptcy administration process, which has not yet closed.

## III. An Emergency Exists.

Defendants' failure to deny their involvement in transferring assets beyond the jurisdiction of this Court is more than compelling. Although Defendants' Response argues that the Litigation Trustee never raised this issue in the past, and had never suggested the need for injunctive relief (Response, at 7), this argument goes beyond silliness. Defendants provide no evidence that the Litigation Trustee was aware of the current efforts to fraudulently transfer assets. Defendants also fail to present any meaningful challenge to the integrity of HMIT's evidence that such transfers are occurring now. HMIT is entitled to protect its rights of recovery in the event it obtains a favorable judgment. In doing so, this Court's jurisdiction over the Defendants and the integrity of any judgment that may be entered against Defendants is also protected.

## IV. The Motion seeks injunctive relief predicated on claims in the Amended Complaint.

Defendants fundamentally mischaracterize what the "new" facts in the Motion represent:

HMIT is not asserting new or additional claims against Defendants; rather, any "new" allegations are included only to establish an ***emergency*** necessitating expedited relief. Importantly, HMIT does ***not*** seek new ***damages*** arising out of Defendants' post-Complaint conduct, but preservation of its existing right of recovery. By contrast, Defendants' authorities involve entirely new causes of action.[7] *See Tolliver v. Thompson*, Civil Action No. 21-1768-RGA, 2023 U.S. Dist. LEXIS 47046 (D. Del. 2023) (*pro se* plaintiff omitted § 1982 claim from amended complaint); *Garrison v. Doe*, No. 3:24-cv-00700-X (BT), 2024 U.S. Dist. LEXIS 145370, at *9 (N.D. Tex. 2024) (noting that allegations in a request for preliminary injunction need only be "related to claims in the complaint"); *Infinite Fin. Sols., Inc. v. Strukmyer, LLC*, Civil Action No. 3:14-CV-354-N, 2014 U.S. Dist. LEXIS 200954, at *25-26 (N.D. Tex. 2014) (denying request to restrain infringement on different trademark than was at issue in the complaint); *Bucklew v. St. Clair*, Civil Action No. 3:18-CV-2117-N (BH), 2019 U.S. Dist. LEXIS 88328, at *5 (N.D. Tex. 2019) (refusing to restrain alleged unlawful access to intellectual property in § 1983 case based on involuntary mental health hospitalization).

Defendants' cases highlight the distinction between new causes of action and allegations supporting emergency relief. In *French*, the plaintiff filed several preliminary injunctions but Defendants cite only to a summary order denying one of plaintiff's requests without prejudice because the underlying allegations were *new* breaches of fiduciary duties based on *new* breaches of additional contract provisions. *See French v. Fisher*, No. 1:17-CV-248-DAE, 2018 U.S. Dist. LEXIS 232723, *15 (W.D. Tex. 2018) ("*French II*"). In *McLean*, an inmate's request for

---

[7] The other authority cited by Defendants rejected a request for injunctive relief because court could not ascertain the specific relief requested from the plaintiff's confusing complaint. *Loveless v. Grady Cty. Criminal Just. Auth.*, No. CIV-24-00879-JD, 2025 U.S. Dist. LEXIS 102993, at *7 n.4 (W.D. Okla. 2025). Here, the injunctive relief set forth in the Amended Complaint could not be more clear: avoidance and disgorgement of all fraudulent transfers and ill-gotten gains from Defendants' fiduciary breaches.

preliminary injunction was denied in a suit to reinstate his good-behavior credits because it was based on a completely different issue regarding conditions at the detention center where the inmate was being held. *McLean v. Greenfield*, No. 3:24-cv-00447-S (BT), 2025 U.S. Dist. LEXIS 26861, at *5 (N.D. Tex. 2025).

Here, HMIT devotes several pages of its Motion reciting facts *from the Amended Complaint* that support equitable relief (Motion, at 5-10), and includes "new" facts only to evidence Defendants' continued movement of funds away from creditors and out of this Court's jurisdiction (Motion, at 11-13). There is more than a sufficient nexus between the equitable claims in the Amended Complaint and the equitable relief sought by HMIT.

## V.    Injunctive relief may be granted in connection with discrete equitable claims.

Defendants' attempt to shoehorn claims for which injunctive relief is available with claims for which it is not misses the mark. Defendants' argument that equitable claims must be the "principal object" of the underlying complaint to support injunctive relief is notably lacking in citations to Fifth Circuit authority and misconstrues applicable law. There is no authority supporting the proposition that a court must undertake an evaluation of whether an action as a whole is more equitable or more legal in nature before equitable relief can be granted. All that is required is a "cognizable" equitable claim in the underlying complaint with "a sufficient nexus to the defendants' assets at issue." *Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 707 (S.D. Tex. 2002) (existence of statutory causes of action and requests for money damages did not preclude consideration of TRO application).

Only a complaint that is *solely* for monetary damages precludes injunctive relief of the type requested here. *See, e.g., SEC v. Shavers*, 2014 U.S. Dist. LEXIS 194380, *4 (E.D. Texas Aug. 26, 2014) ("While … a district court cannot enter a preliminary asset freeze in cases where monetary damages are *the only damages being sought*, … if a plaintiff seeks equitable remedies, district

courts have the authority to preliminarily freeze assets to preserve the status quo, to ensure funds

will be available to satisfy any final judgment, and to guard against defendants dissipating assets."

(emphasis added)); *Animale Grp., Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir.

2007) (request for equitable relief permitted district court "to preserve the status quo by entering a

limited asset freeze").

Not even *Grupo* stands for the proposition Defendants advance. *Grupo Mexicano de*

*Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). *Grupo* recognized and

distinguished *Deckert v. Indep. Shares Corp.*, 311 U.S. 282 (1940) (which Defendants also

misapply), where injunctive relief was permitted in connection with a claim concerning the sale of

fraudulent stock certificates and because the defendant's assets were in danger of dissipation.[8] *Id.*

at 324-25. Precisely the case here. The "nuclear" option discussed in *Grupo* simply is not at issue.

*Deckert* remains good law following *Grupo*, and courts have uniformly followed the

bright-line rule that equitable claims authorize injunctive relief even where money damages are

also sought. *See Newby*, 188 F. Supp. 2d at 694-97; *Animale*, 256 Fed. Appx. at 709. Thus,

regardless of the characterization of other claims as legal or equitable, the Court may grant

injunctive relief with respect to HMIT's fiduciary duty and fraudulent transfer claims.

## VI.   Fraudulent transfer claims are a proper basis for asset-freezing injunctions regardless of whether they are characterized as legal or equitable.

HMIT has cited no less than 12 cases authorizing or supporting asset-freezing injunctions

entered in connection with fraudulent transfer claims,[9] including injunctions to preserve assets for

collection of a future judgment, and even without demonstrating the debtors' insolvency or tracing

---

[8] The Supreme Court also expressly confirmed in *Grupo* that it expressed no opinion on the impact of the Uniform Fraudulent Conveyance Act. *Id.* at 321-24 n.7.

[9] *See supra*, n.4. The majority of which are cases in the Fifth Circuit. One is a Texas state case, one is an Eastern District of Louisiana case, one is a First Circuit case, and one is an Eastern District of California case.

particular assets.[10] Plainly, both Texas and Delaware law authorize "an injunction against further disposition *by the debtor or a transferee, or both*, of the asset transferred *or of other property*." Tex. Bus. & Com. Code § 24.008(a)(3)(A); 6 Del. Code § 1307(a)(3)(A) (emphasis added).[11] Defendants do not appear to claim, as they should not, that HMIT's entitlement to injunctive relief is limited only to identifiable proceeds from particular transactions. The Uniform Fraudulent Transfer Act is broader than that.

Fraudulent transfer claims primarily seek the return of *money*, yet Defendants do not address any of these highly probative cases in their wild attempt to somehow sidestep their clear and unambiguous holdings. To be sure, the Fifth Circuit has confirmed that "avoidance of [a] transfer or obligation to the extent necessary to satisfy the creditor's claim' under TUFTA § 24.008" "is equitable in nature." *Janvey*, 647 F.3d at 600. Defendants' ignorance (or intentional disregard) of such cases undermines their opposition, and their efforts to mischaracterize HMIT's fraudulent transfer claims flies in the face of decades of established law.

**VII.    The equitable remedy of disgorgement is the "primary object" of HMIT's fiduciary duty claims.**

In addition to the statutory authorization for injunctive relief in connection with fraudulent transfer claims, disgorgement is another remedy for which asset-freezing injunctions are readily available. *See Prep Sols., Ltd v. Lecht*, 2022 U.S. Dist. LEXIS 98756, at *4 (E.D. Tex. June 2, 2022). Furthermore, in *French*, the court later granted a sweeping injunction to facilitate a disgorgement remedy in connection with a breach of fiduciary duty claim. *French II*, 2018 U.S. Dist. LEXIS 232723, at *43. Once again, Defendants ignore this case law in favor of a misleading

---

[10] *See Walker*, 2025 U.S. Dist. LEXIS 100396, at *10-11; *Tujague*, 2018 U.S. Dist. LEXIS 171394, at *8; *Sargeant*, 512 S.W.3d at 415.

[11] Because these provisions of Texas and Delaware law are identical, the remainder of the Reply discusses only the Texas statute.

argument that HMIT's fiduciary duty claims are legal in nature. But even Defendants recognize, as they must, that fiduciary duty claims are generally "within the exclusive jurisdiction of courts of equity." Response, at 14.

To avoid this obvious result, Defendants focus on HMIT's facial demand for monetary recoveries, but they ignore the source of those damages: the disgorgement of unlawful gains attributed to Defendants' fraudulent conduct and breaches of duties. Further, Defendants disregard the well-established proposition that just because "economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Janvey*, 647 F.3d at 600. Indeed, money damages are inadequate as a matter of law where, as here, a multiplicity of suits may be necessary to recover those damages due to fraudulent conduct of the Defendants.[12]

## VIII.  Rule 7001 does not require requests for injunctive relief to be filed in separate and independent adversary proceedings.

To further their strategy of distraction, one of Defendants' key arguments is that HMIT's request for injunctive relief must be brought in some other proceeding, whether by virtue of the Bankruptcy Rules governing adversary proceedings, or based on the same subject matter jurisdiction arguments rejected in the Court's Reference Order [Doc. 151]. But these arguments are nonsensical because: (a) Defendants cite no authority requiring requests for injunctive relief to be brought in separate and independent adversary proceedings; (b) the allegations supporting the need for emergency relief do not alter the underlying claims in the Amended Complaint; and (c) Defendants' authorities largely concern matters of personal jurisdiction,[13] which is not at issue.

---

[12] *See Walker*, 2025 U.S. Dist. LEXIS 100396, at *10-11; *Tujague*, 2018 U.S. Dist. LEXIS 171394, at *8.

[13] *See Eighth Reg'l War Labor Bd. v. Humble Oil & Ref. Co.*, 145 F.2d 462, 463-64 (5th Cir. 1944); *McRae v. ConnectDirect Online, Inc.*, No. 3:24-CV-786-DPJ-ASH, 2025 U.S. Dist. LEXIS 26082, at *3 (S.D. Miss. 2025) (quoting *Humble Oil*). Defendants' two other cases, *NFL Players Ass'n v. NFL*, 874 F.3d 222, 224 (5th Cir. 2017) and *Jaramillo v. Texas*, No. 6:21-cv-253, 2022 U.S. Dist. LEXIS 74987, at *4 (E.D. Tex. 2022), dealt with a failure to exhaust contractual grievance procedures and an inmate's lack of standing—neither of which are at issue here.

Fed. R. Civ. P. 65, made applicable to adversary proceedings under Bankruptcy Rule 7065, provides for the *provisional* remedy of a TRO. The rule expressly contemplates that injunctive proceedings are ordinarily separate from trial on the merits in the same action. Because the Motion was filed in a pending adversary proceeding, with all of the accompanying procedural protections, Defendants' argument that a separate proceeding is required is meritless. *See In re Brier Creek Corp. Center Assoc. Ltd.*, 486 B.R. 681, 688-89 (Bankr. E.D.N.C. 2013) ("[I]f an adversary proceeding has already commenced, [an injunction] request may be made by motion; the commencement of an entirely new adversary proceeding is unnecessary."); *cf. In re RGV Smiles by Rocky L. Salinas D.D.S. P.A.*, 626 B.R. 278, 290 (Bankr. S.D. Tex. 2021) (refusing to "entertain a request for injunctive relief in a contested matter … because contested matters, as opposed to adversary proceedings, 'require fewer procedural protections' and 'are generally designed for the adjudication of simple issues'").

Unquestionably, a party can seek injunctive relief by motion alone, so long as the motion is verified or supported by affidavit. *See, e.g., Hyundai Cap. Am. v. Kelly Grimsley Auto Grp., Ltd.*, 2025 U.S. Dist. LEXIS 189103 (W.D. Tex. Aug. 20, 2025) (considering and granting Emergency Motion for a Temporary Restraining Order attaching affidavit in support of same). And this can be achieved in an existing adversary proceeding. *See, e.g., Allied Dev. of Ala. LLC v. Forever 21, Inc. (In re Forever 21, Inc)*, 623 B.R. 53, 64 (Bankr. D. Del. 2020) ("Where an adversary proceeding has already been commenced … injunctive relief in that proceeding can be sought by motion").

## IX.    HMIT has satisfied the elements for a TRO.

Defendants did not submit evidence tending to rebut the core allegations in HMIT's Motion, electing instead to attack the Motion on procedural grounds and for merely "express[ing] 'fears' about … alleged 'risks.'" Response, at 26. But establishing the right to a TRO requires exactly that—proof of an imminent *risk* of irreparable harm—and here, HMIT's "fears" are

justified based upon Defendants' historical practices as well as contemporaneous evidence showing that Defendants' decades-long practice of dissipating assets never ceased.

### a. *Adequate verification and likelihood of success on the merits.*

HMIT's verified Motion is sufficient to carry its burden to establish a likelihood of success on the merits. Courts frequently accept verifications as competent proof to issue a TRO. *See Emery v. Sun Cupid Tech. (HK) Ltd.*, Civil Action No. 3:20-CV-3519-L, 2020 U.S. Dist. LEXIS 241782, at *13-14 (N.D. Tex. 2020) (finding verification made "on 'information and belief'" sufficient where sworn under penalty of perjury; noting that "Rule 65(b)(1) does not expressly require that *all* allegations in a complaint be verified, only those factual allegations necessary to clearly establish that immediate and irreparable injury, loss, or damage will result to the movant").[14] Additionally, Defendants' failure to deny any of the alleged conduct at issue confirms that HMIT is likely to succeed on the merits. *See, e.g.*, *Massimo Motor Sports LLC v. Shandong Odes Indus. Co.*, 2022 U.S. Dist. LEXIS 25705, at *10-11 (N.D. Tex. Feb. 14, 2022).

Although Defendants complain that HMIT's Motion does not include an in-depth discussion of HMIT's various causes of action, they do not identify any specific elements that have not been established. Response, at 21. Rather than address this issue substantively, Defendants assert in conclusory fashion that Mr. Patrick simply "has no personal knowledge of the events alleged in the Amended Complaint." Response, at 21. Not only is this accusation unfounded, it also disregards competent evidence cited in the Motion itself, including numerous filings in this bankruptcy and other proceedings. Defendants attempt to make this an issue of proof but offer no proof of their own.

---

[14] *See also Mega World*, 2024 U.S. Dist. LEXIS 203763, at *6 ("In presiding over a preliminary injunction hearing, a district court may 'give even inadmissible evidence some weight … .'"); *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) (same).

Defendants' also advance a futile judicial estoppel argument. Response, at 24 (admitting "that the second factor is not met here"). Even assuming *arguendo* that the Court had previously ruled in HMIT's favor on the motions to dismiss—which is now impossible because HMIT has been dismissed as a defendant—through the assignment of claims and substitution of HMIT as the Plaintiff in this proceeding, HMIT has stepped into the shoes of the Litigation Trustee, who never asserted a position inconsistent with that being taken by HMIT here. An assignee, of course, "stands in the shoes" of the assignor and should be judged in that capacity only. *See, e.g.*, *QuarterNorth Energy LLC and Certain of its Affiliates v. Atl. Mar. Serv. (In re Fieldwood Energy LLC),* No. 20-33948, 2021 Bankr. LEXIS 2867, at *6 n.4 (Bankr. S.D. Tex. Oct. 15, 2021) (substituted plaintiff by virtue of assignment 'stood in the shoes' of the prior plaintiff).

*Galaz*, a case Defendants cite, illustrates this point. *Galaz v. Katona (In re Galaz)*, 841 F.3d 316 (5th Cir. 2016). There, an assignee was held to the previous position of its assignor, not the other way around. *Id*. at 326 ("Because Galaz is Vernon's successor-in-interest, he inherits the positions that she has taken throughout the litigation."). Here too, HMIT, now dismissed as a defendant, has inherited the positions taken by the Litigation Trustee.

Regardless, judicial estoppel is not an automatic bar against inconsistent positions—there are plenty of cases "where a party is free to assert a position from which it later withdraws." *Desjardins v. Van Buren Community Hosp*., 37 F.3d 21, 23 (1st Cir. 1994); *see Carmichael v. Balke (In re Imperial Petro. Recovery Corp.)*, 84 F.4th 264, 273 (5th Cir. 2023) ("[T]he propriety of applying estoppel is dictated by the 'specific factual context' … [and] exists to 'protect the integrity of the judicial process' from the misbehavior of litigants."). HMIT does not join Defendants in unresolved motions filed almost three years ago, and there is no risk of inconsistent positions moving forward.

Finally, Defendants attempt to negate the element of likelihood of success by effectively asking the Court to grant their motions to dismiss. HMIT obviously disagrees with the Motions to Dismiss based on the Litigation Trustee's Response [Doc. 210], which HMIT adopts and incorporates herein, but that is not the standard. *See Mega World*, 2024 U.S. Dist. LEXIS 203763, at *7 ("To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment."). Additionally, Defendants do not address the sliding-scale for analysis of the TRO elements, which imposes a less restrictive standard on the burden to establish a likelihood of success as the "level of persuasion in relation to the other three factors increases." *Titlemax of Tex., Inc. v. City of Dall.*, 142 F.4th 322 (5th Cir. 2025); *see Tujague*, 2018 U.S. Dist. LEXIS 171394, at *6 (requiring plaintiff seeking asset-freezing injunction in fraudulent transfer case to show only "that he *may* succeed on the merits" (emphasis in original)).

### b. *Substantial threat of irreparable injury.*

Astonishingly, Defendants hardly address what many courts deem to be the most important element for injunctive relief, and their failure to provide any factual support regarding this factor is gravely concerning. They also gloss over this Court's stated concern in a related proceeding that the coverup of the Sentinel scheme (which HMIT's evidence indicates is ongoing) potentially violated criminal statutes.[15] Courts have consistently held that dissipation of assets in frustration of a future judgment constitutes irreparable injury as a matter of law,[16] and Defendants offer no plausible rationale for departing from this well settled rule. Nor have Defendants rebutted HMIT's proof of ongoing transfers in furtherance of Defendants' historical pattern and practice of secreting assets.

---

[15] August 8, 2022 Hearing Transcript [Adv. Pro. No. 21-3020-sgj, Doc. 183], p. 131.

[16] *See, e.g.*, *Walker*, 2025 U.S. Dist. LEXIS 100396, at *10-11; *Tujague*, 2018 U.S. Dist. LEXIS 171394, at *8.

### c. Balance of harms.

HMIT is not required to show that Defendants are insolvent to obtain an asset-freezing injunction. TUFTA § 24.008 permits injunctive relief restraining "further disposition … of other property," and claims under TUFTA do not require proof of insolvency—only "actual intent to hinder, delay, or defraud" or that the transfer was made "without receiving reasonably equivalent value." *See* TUFTA § 24.005.[17]

Further, Defendants have offered no evidence of the harm they allegedly may experience if a TRO is imposed, which is fatal to their objection. *See Tujague*, 2018 U.S. Dist. LEXIS 171394, at *9-10. In particular, Defendants make no argument that requiring regular reporting of their transactions will cause any harm whatsoever. This is critically significant because, without any potential corresponding harm, there is no basis on which to set a bond.

Furthermore, the Defendants' Response grossly exaggerates the scope of the requested injunctive relief. The proposed TRO makes no effort to restrain Defendants' conduct in the ordinary course of business. And this begs the question—are Defendants suggesting they will be harmed if they are not allowed to fraudulently transfer assets?

### d. Public interest.

Defendants' argument that there is no public policy supporting HMIT's request for injunctive relief misses the mark. There is clear authority that asset-freezing injunctions "further[] the public's interest in protecting against fraudulent conduct." *Tujague*, 2018 U.S. Dist. LEXIS 171394, at *10.

## X.    The proposed TRO is appropriately tailored.

---

[17] Insolvency is only an element of constructive fraudulent transfers under TUFTA § 24.006, not actual fraudulent transfers under § 24.005, and where multiple causes of action are at issue the plaintiff "need only present a prima facie case on one of them" to obtain injunctive relief. *Bank of Am., N.A. v. Mega World Builder Corp.*, No. 4:24-CV-3021, 2024 U.S. Dist. LEXIS 203763, at *7 (S.D. Tex. 2024).

Defendants' final Hail Mary is their argument that the proposed TRO is too broad. In making this argument, Defendants do not address the ordinary course exception in Paragraph 4 of the proposed TRO. The TRO seeks to stop fraudulent conduct, not legitimate activities. As such, no bond is appropriate.

Defendants also advance a silly argument concerning the language restraining Defendants' representatives and "all persons or entities in active concert or participation" with Defendants. They presumably never looked at Rule 65(d)(2), which expressly identifies this type of language to include parties that may be bound by a TRO.

## XI.    Conclusion

For these reasons, Hunter Mountain Investment Trust respectfully requests the Court grant HMIT's Motion, grant a temporary restraining order, schedule a preliminary injunction hearing, and award HMIT such other relief, in law or equity, to which it may be entitled.

Respectfully submitted,

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
State Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN
INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

*/s/ Ian B. Salzer*
Ian B. Salzer

3207090