## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>　　　　　Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST**<br><br>　　　**Plaintiff,**<br><br>　　v.<br><br>**JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.**<br><br>　　　**Defendants.** | Adv. Pro. No. 21-03076-sgj |

## <u>PLAINTIFF'S WITNESS AND EXHIBIT LISTS</u>

Plaintiff Hunter Mountain Investment Trust ("HMIT") submits the following witness and exhibit lists with respect to HMIT's *Motion for Expedited Discovery* [Doc. 380], which is set for hearing at 9:30 a.m. (Central Time) on Friday, October 17, 2025:

A.     **Witnesses**

1.  Any witness identified or called by any other party; and

2.  Any witness necessary for rebuttal.

B.     **Exhibits**

| No. | Exhibit | Offered | Admitted |
|---|---|---|---|
| 1. | Special Turnover Petition filed by UBS Securities LLC and UBS London Branch AG in the Supreme Court of New York County, New York [Index No. 650744/2023] | | |
| 2. | Exhibit 40 to Special Turnover Petition filed by UBS Securities LLC and UBS London Branch AG in the Supreme Court of New York County, New York [Index No. 650744/2023] | | |
| 3. | Exhibit 71 to Special Turnover Petition filed by UBS Securities LLC and UBS London Branch AG in the Supreme Court of New York County, New York [Index No. 650744/2023] | | |
| 4. | Index No. 650744/2023 Docket Sheet | | |
| 5. | 2024 Texas Franchise Tax Public Information Report for Skyview Group, Inc. | | |
| 6. | Funding Agreement of Joint Official Liquidators dated 11 July 2025 | | |
| 7. | Certificate of Formation for Crossvine Holdings, LLC | | |
| 8. | Certificate of Formation for Crossvine Foundation | | |
| 9. | Plaintiff Hunter Mountain Investment Trust's Emergency Verified Motion for Temporary Restraining Order [Doc. 379] | | |
| 10. | Plaintiff Hunter Mountain Investment Trust's Memorandum of Law in Support of its Emergency Verified Motion for Temporary Restraining Order [Doc. 379-1] | | |
| 11. | Proposed Order Granting Temporary Restraining Order and Setting Hearing on Plaintiff's Motion for Temporary Injunction and Appointment of Receiver [Doc. 379-3] | | |
| 12. | Report and Recommendation to the District Court Proposing that it: (A) Grant Defendants' Motions to Withdraw the Reference at such time as the Bankruptcy Court Certifies that Action is Trial Ready; but (B) Defer Pre-Trial matters to the Bankruptcy Court [Doc. 151] | | |
| 13. | Stipulation and Proposed Fourth Amended Scheduling Order [Doc. 337] | | |
| 14. | Agreed Protective Order [Doc. 202] | | |
| 15. | Proposed Expedited Interrogatories and Requests for Production [Doc. 380-1] | | |
| 16. | Proposed Expedited Deposition Notices and Subpoenas [Doc. 380-2] | | |

| No. | Exhibit | Offered | Admitted |
|-----|---------|---------|----------|
| 17. | Proposed Order Granting Plaintiff Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery [Doc. 380-3] | | |
| 18. | Any document exchanged during discovery. | | |
| 19. | Any document entered or filed in the main bankruptcy case. | | |
| 20. | Any document entered or filed in this adversary proceeding. | | |
| 21. | All exhibits identified or offered by any other party at the Hearing. | | |

Respectfully submitted,

/s/ Sawnie A. McEntire
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN
INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

/s/ Ian B. Salzer
Ian B. Salzer

3207486

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

UBS SECURITIES LLC and UBS AG LONDON
BRANCH,

                        Petitioners,

      - against -

JAMES DONDERO, SCOTT ELLINGTON,
HIGHLAND CDO HOLDING COMPANY,
HIGHLAND CDO OPPORTUNITY MASTER FUND,
L.P., HIGHLAND FINANCIAL PARTNERS, L.P.,
HIGHLAND SPECIAL OPPORTUNITIES HOLDING
COMPANY, CLO HOLDCO, LTD., MAINSPRING,
LTD., and MONTAGE HOLDINGS, LTD.,

                        Respondents.

Index No. _____

**SPECIAL TURNOVER PETITION**

**ORAL ARGUMENT REQUESTED**

Andrew Clubok
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020-1300
Phone:   (212) 906-1200
Email:    andrew.clubok@lw.com

Jason R. Burt[*]
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
Phone:   (202) 637-2200
Email:    jason.burt@lw.com

Kathryn K. George[*]
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611-3695
Phone:   (312) 876-7700
Email:    kathryn.george@lw.com

*Counsel for Petitioners UBS Securities LLC
and UBS AG London Branch*

---

[*]   Motion for admission *pro hac vice* forthcoming.

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

THE PARTIES.......................................................................................................2

JURISDICTION AND VENUE .............................................................................4

LEGAL AUTHORITY FOR RELIEF....................................................................6

FACTS ...................................................................................................................7

I.     Dondero, Ellington, And The Byzantine Structure Of The Highland Capital Management "Complex" ........................................................................7

II.    The Underlying Action ...............................................................................14

III.   Anticipating Liability, Dondero And Ellington Shuffle Assets To Put Them Beyond UBS's Reach ......................................................................17

       A.     The 2010 Fraudulent Conveyance From CDO Holding To CLO HoldCo ...........17
       B.     The 2017 Fraudulent Conveyances To Sentinel ..................................22
            1.    Dondero And Ellington Manufacture The ATE Policy As A Way To Transfer Assets ..................................................................23
            2.    Dondero And Ellington Set And Carry Out The Terms Of The ATE Policy...........................................................................25
            3.    At All Times, Dondero And Ellington Controlled Sentinel ...................29
            4.    Dondero And Ellington Try To Conceal The 2017 Sentinel Transfers .............................................................................30
       C.     The 2019 Fraudulent Conveyance To Sebastian Clarke.......................................35

IV.   Dondero And Ellington Use The 2017 Transferred Assets As A Piggy Bank .................37

       A.     The 2019-2021 Voidable Transfers To Dondero And Ellington ...........................37
            1.    The 2019-2020 Fraudulent Ellington Reimbursements............................38
            2.    The 2020-2021 Fraudulent "Dividends" To Mainspring And Montage ...................................................................................42
       B.     The 2020 Voidable Transfer To Pay Bonuses In Violation Of The Bankruptcy Court Order ....................................................................44
            1.    Dondero And Ellington Make Bonus Payments Blocked By The Bankruptcy Court..................................................................44
            2.    Ellington And Others Defraud The Bankruptcy Court By Filing Claims Seeking Bonuses Already Procured By Fraud ...............................47

CLAIMS FOR RELIEF ........................................................................................49

i

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document     Page 7 of 376

I.     CLAIM I: TURNOVER PREDICATED ON FRAUDULENT AND VOIDABLE CONVEYANCES AGAINST CLO HOLDCO, ELLINGTON, MAINSPRING, AND MONTAGE (CPLR 5225(b)) ....................................................................49

     A.   New York's Former Fraudulent Conveyance Law (Effective Through April 3, 2020) .................................................................................................49
     B.   The 2010 Fraudulent Conveyance To CLO HoldCo ...............................50
     C.   The Ellington Reimbursements Were Fraudulent Conveyances ...........52
     D.   New York's Current Voidable Transactions Law (Effective April 4, 2020)........53
     E.   The April 2020 And January 2021 "Dividends" To Mainspring And Montage Were Voidable Conveyances ....................................................54

II.    CLAIM II: TURNOVER PREDICATED ON ALTER EGO LIABILITY AGAINST DONDERO, ELLINGTON, AND CDO HOLDING (CPLR 5225(b)) ..........55

     A.   Dondero And Ellington Were Each Alter Egos Of The Judgment Debtors ..........56
          1.   Dondero And Ellington Dominated The Judgment Debtors.....................57
          2.   Dondero And Ellington Used Their Domination Over The Judgment Debtors To Defraud And Harm UBS ..............................61
     B.   Dondero And Ellington Were The Alter Egos Of Mainspring And Montage, Respectively.............................................................................62
          1.   Dondero And Ellington Dominated Mainspring And Montage, Respectively.............................................................................62
          2.   Dondero And Ellington Used Their Control Of Mainspring And Montage To Defraud UBS ...............................................63
     C.   CDO Holding Is An Alter Ego Of HFP..................................................64
          1.   HFP Dominated Its "Asset Repository" CDO Holding..........................64
          2.   HFP Used Its Domination Over CDO Holding To Defraud UBS ............66

II.    CLAIM III: VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") BY DONDERO AND ELLINGTON (18 U.S.C. § 1962(c)) .......................................................................66

     A.   The RICO Enterprise ..............................................................................68
     B.   The Pattern Of Racketeering Activity.....................................................71
     C.   The Predicate Acts ..................................................................................75
          1.   Wire Fraud In Violation Of 18 U.S.C. § 1343 ...........................75
          2.   Money Laundering In Violation Of 18 U.S.C. § 1956 .............80
     D.   Summary Of Allegations To Each RICO Defendant...............................81
     E.   The Harm To UBS ..................................................................................83

III.   CLAIM IV: CONSPIRACY TO VIOLATE RICO BY ELLINGTON (18 U.S.C. § 1962(d)).........................................................................................................84

REQUESTS FOR RELIEF ..........................................................................................85

App. 004

## INTRODUCTION

1.      Petitioners UBS Securities LLC and UBS AG London Branch (together, "UBS")
bring this proceeding under CPLR Article 52 to enforce more than a billion dollars in related
judgments that UBS obtained after a decade of hard-fought litigation against Highland Capital
Management, L.P. ("HCM") and its affiliates. *See UBS Secs. LLC v. Highland Cap. Mgmt., L.P.*,
Index No. 650097/2009 (Sup. Ct. N.Y. Cnty.) (the "Underlying Action"). The court bifurcated
the Underlying Action into two phases ("Phase I" and "Phase II") and entered judgment for UBS
in each phase ("Phase I Judgment," "Phase II Judgment," and collectively, the "Judgment").

2.      In the Phase I Judgment, the court awarded UBS $1,042,391,031.79 against
Highland Special Opportunities Holding Company ("SOHC") and CDO Opportunity Master Fund,
L.P. ("CDO Fund") collectively,[1] including prejudgment interest and another $257,027.92
accruing daily in post-judgment interest. *See* Ex. 11, Phase I Judgment, at 2-3 (Feb. 10, 2020). In
the Phase II Judgment, the court awarded UBS $67,222.00 against CDO Fund; adjudged defendant
Highland Financial Partners, L.P. ("HFP" and with CDO Fund and SOHC, the "Judgment
Debtors") the alter ego of SOHC and liable for SOHC's portion of the Judgment; and awarded
UBS $16,283,331.00 in attorney's fees. *See* Ex. 24, Phase II Judgment, at 9-10 (Nov. 21, 2022).

3.      After UBS obtained the Phase I Judgment, it discovered that HCM's two former
principals—James Dondero (former President and Chief Executive Officer) and Scott Ellington
(former Chief Legal Officer and General Counsel)—conspired for over a decade to frustrate UBS's
ultimate recovery by systematically draining the Judgment Debtors' assets. Dondero and Ellington
exercised unfettered control over HCM and numerous other entities—including the Judgment

---

[1]     The Phase I Judgment ordered CDO Fund to pay $531,619,426.24 and SOHC to pay
$510,771,605.55. Ex. 11, Phase I Judgment, at 2-3.

Debtors—to fraudulently transfer assets away from the Judgment Debtors and other potentially liable entities to enrich themselves at UBS's expense. UBS brings this petition (the "Turnover Petition" or "Petition") to collect on its Judgment and hold accountable Dondero, Ellington, and certain entities they controlled and used as part of their scheme to defraud UBS.

## THE PARTIES

4.      Petitioner UBS Securities LLC is a Delaware limited liability company with its headquarters and principal place of business at 1285 Avenue of the Americas in New York, New York 10019.

5.      Petitioner UBS AG London Branch is a Swiss banking corporation with its principal place of business at 5 Broadgate, London EC2M 2QS, United Kingdom.

6.      Respondent Dondero is an individual who resides at 3807 Miramar Ave, Dallas, TX 75205. Dondero co-founded HCM in 1993 and served as its President and Chief Executive Officer until his removal in 2020.

7.      Respondent Ellington is an individual who resides at 3825 Potomac Ave, Dallas, TX 75205. Ellington was HCM's Chief Legal Officer and General Counsel until his removal in 2021.

8.      Respondent SOHC is a Cayman Islands corporation with its principal office at Walker House, 87 Mary Street, George Town, Grand Cayman, Cayman Islands. UBS has a Judgment against SOHC in the amount of $527,054,936.55, on which $137,839,662.28 of gross post-judgment interest has accrued and $33,366,517.87 of post-judgment interest only has been satisfied. *See* Ex. 11, Phase I Judgment, at 3; Ex. 24, Phase II Judgment, at 9.

9.      Respondent HFP is a Delaware limited partnership with its principal office at 100 Crescent Street, Suite 1850, Dallas, Texas 75201. The Supreme Court of New York has declared HFP to be an alter ego of SOHC and adjudged HFP liable for UBS's judgment against SOHC,

presently totaling $631,528,081.35, including post-judgment interest.  Ex. 24, Phase II Judgment, at 9.

10.    Respondent CDO Fund is a Bermuda limited partnership with its principal office at 52 Reid Street, Hamilton, Bermuda.  UBS has a Judgment against CDO Fund in the amount of $547,969,979.24, on which $143,454,428.88 of gross post-judgment interest has accrued and $52,420,980.58 of post-judgment interest only has been satisfied.  Ex. 11, Phase I Judgment, at 2; Ex. 24, Phase II Judgment, at 9.  Although an independently managed HCM now controls CDO Fund, Dondero and Ellington controlled CDO Fund at all times relevant to allegations involving CDO Fund in this Turnover Petition.[2]

11.    Respondent Highland CDO Holding Company ("CDO Holding") is a Cayman Islands company with its registered office at Intertrust Corporate Services (Cayman) Limited, One Nexus Way, Camana Bay, Grand Cayman, KY1-9005, Cayman Islands.  CDO Holding is a wholly owned subsidiary of HFP.

12.    Respondent CLO HoldCo, Ltd. ("CLO HoldCo"), is a Cayman Islands company with its registered office at Intertrust Corporate Services (Cayman) Limited, One Nexus Way, Camana Bay, Grand Cayman, KY1-9005, Cayman Islands.  CLO HoldCo is a wholly owned subsidiary of Charitable DAF Fund, L.P. (the "DAF"), which Dondero indirectly controls and has funded from his personal assets, his family trusts, and HCM.

---

[2]    This Turnover Petition names the Judgment Debtors from the Underlying Action as Respondents because it seeks to pierce the corporate veil against the Judgment Debtors' alter egos. In an action to impose alter ego liability, each alter ego is a necessary party.  *Intelligent Prod. Sols., Inc. v. Morstan Gen. Agency, Inc.*, 45 Misc.3d 1225(A), 2014 WL 6883125, at *2 (Sup. Ct. Suffolk Cnty. Dec. 4, 2014) (citing *Mannucci v. Missionary Sisters of Sacred Heart of Jesus*, 94 A.D.3d 471 (1st Dep't 2012)).

13.     Respondent Mainspring, Ltd. ("Mainspring"), is a Cayman Islands company with a registered office at P.O. Box 10008 (c/o Services Cayman Limited), Willow House, Cricket Square, Grand Cayman KY1-1001, Cayman Islands.  Dondero is the ultimate beneficial owner of Mainspring.

14.     Respondent Montage Holdings, Ltd. ("Montage"), is a Cayman Islands company which shares Mainspring's registered office address: P.O. Box 10008 (c/o Services Cayman Limited), Willow House, Cricket Square, Grand Cayman KY1-1001, Cayman Islands.  Ellington is the ultimate beneficial owner of Montage.

## JURISDICTION AND VENUE

15.     As a court of general jurisdiction, this Court has subject-matter jurisdiction over this case.  *See* N.Y. Const. art. VI, § 7; Judiciary Law § 140-b.

16.     Venue is proper under CPLR 5221(a)(4) because this is a special proceeding to enforce a judgment entered by the Commercial Division of the Supreme Court of the State of New York, New York County, and there is no county in this state in which any respondent "resides or is regularly employed or has a place for the regular transaction of business in person."  *See* Ex. 24, Phase II Judgment.  CPLR 5221(a)(4) instructs that "if there is no such county," a judgment creditor may bring a judgment-enforcement proceeding in the supreme court in "the county in which the judgment was entered."  That makes this Court the proper forum.

17.     This Court also has personal jurisdiction over all Respondents.

18.     The Court has personal jurisdiction over CDO Fund and SOHC under General Obligations Law § 5-1402 based on the forum-selection clauses in the agreements underpinning the claims in the Underlying Action.  *See* Ex. 92, Cash Warehouse Agreement ¶ 15 (Mar. 14, 2008) (UBS, CDO Fund, and SOHC agreeing to "submit to the exclusive jurisdiction of the federal and New York state courts located in the county of New York, New York in connection with any

dispute related to this Agreement or any of the matters contemplated hereby"); Ex. 93, Synthetic

Warehouse Agreement ¶ 15 (Mar. 14, 2008) (same); Ex. 11, Phase I Decision and Order, at 39

(Nov. 14, 2019) (finding CDO Fund and SOHC liable for breaching these two agreements as part

of UBS's Judgment). These clauses "obviat[e] the need for a separate analysis of the propriety of

exercising personal jurisdiction," *Oak Rock Fin., LLC v. Rodriguez*, 148 A.D.3d 1036, 1038 (2d

Dep't 2017) and remain enforceable and provide personal jurisdiction for "judgment enforcement

claims" even after Judgment on the claims, *Cortlandt St. Recovery Corp. v. Bonderman*, 73 Misc.

3d 1217(A), 2021 WL 5272497, at *7 (Sup. Ct. N.Y. Cnty. 2021), *reargument denied*, 75 Misc.

3d 469, 476-78 (Sup. Ct. N.Y. Cnty. 2022).

19.     For similar reasons, the Court has personal jurisdiction over HFP. Although not a

signatory to the agreements involved in the Underlying Action, HFP is "bound" by the agreements'

forum-selection clause as "an alter ego of a signatory," SOHC, as the court found in Phase II.

*Highland Crusader Offshore Partners, L.P. v. Targeted Delivery Techs. Holdings, Ltd.*, 184

A.D.3d 116, 122 (1st Dep't 2020); Ex. 24, Phase II Judgment, at 5-6.

20.     The Court has personal jurisdiction over Dondero and Ellington because, as

explained below, they are alter egos of the Judgment Debtors. The Court has personal jurisdiction

over CDO Holding because, as also explained below, it is the alter ego of Judgment Debtor HFP.

21.     The Court also has personal jurisdiction over all Respondents under CPLR

302(a)(2) and (a)(3) as participants in a conspiracy involving tortious acts in New York to frustrate

the judgment of a New York court, which resulted in injury in New York. As demonstrated below,

all Respondents participated in a scheme to funnel away assets to frustrate UBS's efforts to collect

on a judgment from a New York action. *See, e.g.*, *Wimbledon Fin. Master Fund, Ltd. v. Bergstein*,

2016 WL 4410881, at *4 (Sup. Ct. N.Y. Cnty. Aug. 19, 2016) (citing cases) (holding that

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
                    Document         Page 13 of 376

conspiracy to frustrate New York judgment established personal jurisdiction over participants),

*aff'd*, 147 A.D.3d 644, 645 (1st Dep't 2017).

## <u>LEGAL AUTHORITY FOR RELIEF</u>

22.    UBS brings this special turnover proceeding under CPLR 5225(b) to enforce the

Judgment in its favor.  *See* Ex. 11, Phase I Judgment, at 2-3; Ex. 24, Phase II Judgment at 10-11.

To date, the total amount owed on the Judgment, including statutory post-judgment interest, is

$1,253,939,017.66.

23.    A judgment creditor can bring a special proceeding under CPLR 5225(b) against

any person or entity that (1) possesses or has custody over assets in which the judgment debtor has

an interest; (2) unlawfully received assets from the judgment debtor, or received judgment debtor

assets in which the judgment creditor has a superior interest, or (3) owes or will owe a debt to the

judgment debtor.

24.    The same standards "governing a motion for summary judgment, 'requiring the

court to decide the matter upon the pleadings, papers[,] and admissions to the extent that no triable

issues of fact are raised'" govern a special proceeding.  *Triadou SPV S.A. v. Chetrit*, 2021 WL

3290834, at *9 (Sup. Ct. N.Y. Cnty. Aug. 2, 2021) (quoting *Matter of Gonzalez v City of New*

*York*, 127 A.D.3d 632, 633 (1st Dep't 2015)).

25.    Although a special proceeding, this action remains a plenary action and allows this

Court to adjudicate all disputes between the parties.  *See, e.g.*, *Cardinal Health 414 LLC v. U.S.*

*Heartcare Mgmt., Inc.*, 2013 WL 563288, at *3 (Sup. Ct. Suffolk Cnty. Feb. 13, 2013) ("Although

originally a creditor was required to commence a plenary action to achieve this goal, now it can

be accomplished through a special proceeding under CPLR 5225 or 5227." (citing *Siemens &*

*Halske GmbH v. Gres*, 32 A.D.2d 624, 624 (1st Dep't 1969) (per curiam))); *Matter of WBP Cent.*

*Assocs., LLC v. DeCola*, 50 A.D.3d 693, 694 (2d Dep't 2008) ("[A] claim to set aside an allegedly

fraudulent conveyance of money, assets, or property may be asserted in a special proceeding pursuant to CPLR 5225(b), without first commencing a plenary action . . . .").

**FACTS**

I.    **DONDERO, ELLINGTON, AND THE BYZANTINE STRUCTURE OF THE HIGHLAND CAPITAL MANAGEMENT "COMPLEX"**

26.    Before its bankruptcy, HCM was an investment management firm that managed billions of dollars of assets "through its organizational structure of approximately 2,000 separate business entities." *In re Acis Cap. Mgmt., L.P.*, 2019 WL 417149, at *5 (Bankr. N.D. Tex. Jan. 31, 2019), *aff'd*, 604 B.R. 484 (N.D. Tex. 2019), *aff'd sub nom. In re Acis Cap. Mgmt., L.P.*, 850 F. App'x 302 (5th Cir. 2021).

27.    Dondero co-founded HCM in 1993 and was its majority owner, President, and Chief Executive Officer until his removal in 2020.[3]    *See* Ex. 36, Email from L. Thedford, at HCMUBS000050 (Mar. 1, 2017) (attaching Highland Affiliate Ownership Chart); *see also In re Highland Cap. Mgmt., L.P.*, 2021 WL 2326350, at *1, *21 (Bankr. N.D. Tex. June 7, 2021). Ellington served as HCM's Chief Legal Officer and General Counsel from 2010 until his removal in January 2021. *See In re Highland*, 2021 WL 2326350, at *17; Ex. 116, Ellington Dep. at 55:4-13 (July 29, 2021).    At all times relevant to this Turnover Petition, Ellington operated as one of Dondero's top lieutenants and confidants, often handing many aspects of the business himself.

---

[3]    Dondero resigned from director positions at the Judgment Debtors in 2021. *See* Ex. 129, Letter from Clay Taylor, at HCMUBS005324 (Apr. 28, 2021) ("[T]his letter shall serve as Mr. Dondero's immediate resignation of the alleged director position(s) at HFP and SOHC and/or any officer positions at those entities."); *see also* Ex. 130, Letter from J. Pomerantz, at HCMUBS005322 (May 7, 2021) (requesting that Dondero also confirm his resignation from Highland CDO Opportunity Fund, Ltd. ("CDO Opportunity Fund"), and its subsidiaries, including CDO Fund).

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
NYSCEF DOC. NO. 186

INDEX NO. 650744/2023

RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 15 of 376

28.    Dondero, with Ellington at his side, for years controlled HCM and its vast web of funds and other entities under its management and control with unilateral and unfettered discretion. *See, e.g.*, Ex. 97, HFP 2010 Organizational Chart, at UBSPROD2415709; Ex. 113, Dondero Dep. at 48:8-13 (May 10, 2021) (Dondero was the "decision maker" for HFP and its subsidiaries); Ex. 114, Dondero Dep. at 319:20-325:14 (May 12, 2021) (Dondero had the authority to authorize the sale and assignment of the assets of SOHC, CDO Fund, and related entities); *see also* Ex. 2, Dudney Report, at 40-41 (Apr. 18, 2013) (expert report from the Underlying Action that concludes "HCM and its President and majority owner, Mr. Dondero, sit at the top of [the HCM] organization chart," and "[f]rom this position, Mr. Dondero controlled" HCM and many related entities— including SOHC, CDO Fund, Highland Financial Corp. ("HFC"), HFP, and CDO Holding); Ex. 2, Dudney Report, at 5 ("Mr. Dondero also served as the sole Director of SOHC and as President of the ultimate general partner of CDO Fund."); *In re Acis Cap. Mgmt.*, 2019 WL 417149, at *5 (holding that Dondero controlled his many related entities through friends, family members, and directors-for-hire that the Court described as "nominal figureheads who are paid to act like they are in charge, while they are not.").

29.    Dondero exercised his control in part through his status as the sole stockholder and director of Strand Advisors, Inc. ("Strand"), HCM's general partner. *See* Ex. 117, Ellington Dep. at 12:4-13:17 (Oct. 19, 2022); Ex. 105, HCM Organizational Chart; *see also generally* Ex. 5, Bk. Dkt. No. 281-1 (Dec. 12, 2019). Dondero unilaterally made decisions for HCM, and "through his controlling stake in HCM, and/or his positions within SOHC, CDO Fund and HFP, Mr. Dondero was able to control these entities," Ex. 2, Dudney Report, at 41-42, as demonstrated in part by the below (attached in larger format as Ex. 100, HCM Affiliates Organizational Chart (July 2019)):

App. 012



30.    Dondero's dominion over HCM and the related web of entities was so extensive that the bankruptcy court overseeing HCM's reorganization proceeding (the "Bankruptcy Court") labeled this web the "Non-Debtor Dondero-Related Entities" as "[m]any of these non-Debtor entities appear to be under the *de facto* control of Mr. Dondero—as he is the president and portfolio manager for many or most of them."  *In re Highland*, 2021 WL 2326350, at *3.

31.    Ellington, as an officer of Strand and the Chief Legal Officer of HCM, also exercised control over the HCM complex.  *See* Ex. 117, Ellington Dep. at 21:2-23:16 (as an officer of Strand, Ellington performed any task that Dondero instructed him to perform).  Dondero "delegated and entrusted" many decisions related to SOHC, CDO Fund, and related entities to Ellington, *see* Ex. 113, Dondero Dep. at 215:19-216:11, including signatory authority and litigation strategy, *see* Ex. 117, Ellington Dep. at 194:22-196:12; *see also* Ex. 50, Email from S. Goldsmith, at UBSPROD2630461, -463 (Aug. 31, 2017) (Ellington signs on behalf of CDO Fund

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document      Page 17 of 376

to transfer assets); Ex. 53, Email from J. Sevilla, at BC SEN0000767181 (Nov. 20, 2017)

(Ellington signs on behalf of CDO Fund appointing Beecher as representative).[4]

32.      Among their vast web of HCM-linked entities, Dondero and Ellington directed six

to initiate the fraudulent activities at issue in this proceeding (the "Transferors"):

- **CDO Fund**, a Judgment Debtor to UBS and an indirect subsidiary of HCM (and, with SOHC, the "Funds").

- **SOHC**, a Judgment Debtor to UBS and wholly owned subsidiary and alter ego of HFP.

- **HFP**, a Judgment Debtor to UBS as alter ego of SOHC and an indirect subsidiary of HCM.

- **HFC**, a subsidiary of HFP. *See* Ex. 97, HFP 2010 Organizational Chart, at UBSPROD2415709 (reflecting entity organization); *see also* Ex. 26, Email from J. Blumer, at UBSHCDO-160165 (row 665) (attaching Highland Entity Excel Chart and reflecting Dondero as the sole Director/Manager/Trustee of HFC).

- **CDO Holding**, a wholly owned subsidiary of HFP. *See* Ex. 97, HFP 2010 Organizational Chart, at UBSPROD2415709 (reflecting entity organization).[5]

- **CDO Opportunity Fund**, which is also an indirect subsidiary of HCM and serves as the "offshore feeder" fund to CDO Fund. *See* Ex. 104, CDO Opportunity Fund Organizational Chart, at UBSPROD5113036.

33.      A testifying expert in the Underlying Action applied New York principles of alter

ego relationships and concluded that "HCM and its President and majority owner, Mr. Dondero,

---

[4]      Indeed, Ellington's repeated use of the term "we" under oath to describe himself, Dondero, and their web of companies evidences Ellington's understanding of his control over the HCM complex and his partnership with Dondero at all times during the relevant events. *See* Ex. 117, Ellington Dep. at 119:10-120:15, 140:25-141:12, 192:6-11, 369:8-11.

[5]      Although HFC was listed in the organizational chart as an intermediate parent of CDO Holding just below HFP, *see* Ex. 97, HFP 2010 Organizational Chart, at UBSPROD2415709, Dondero and Ellington similarly ignored this corporate form as evidenced by their own documented plan to directly strip CDO Holding of its assets in 2010 and again in the 2017 Fraudulent Conveyances defined and described *infra* Section III. *See, e.g.*, Ex. 40, Email from I. Leventon, at HCMUBS005260 (Apr. 19, 2017) (internal document ignoring HFC's intermediate ownership of CDO Holding).

App. 014

sit at the top of [the HCM] organization chart," and "[f]rom this position, Mr. Dondero controlled"

several HCM-related entities—including the Funds, HFC, HFP, and CDO Holding. Ex. 2, Dudney

Report, at 40. In support, the expert relied upon the following facts and findings:

- Dondero "unilaterally ma[d]e decisions on behalf of HCM," and "through his controlling stake in HCM, and/or his positions within SOHC, CDO Fund and HFP, Mr. Dondero was able to control these entities." Ex. 2, Dudney Report, at 41-42.

- In 2009, Dondero eliminated the requirement that HFP have independent directors and made himself the sole director of HFP and direct decision maker for HFP and its subsidiaries. Ex. 88, Email from H. Kim, at UBSPROD1854773 (Sept. 11, 2020) (attaching HFP board minutes). HFP and its subsidiaries were financially dependent on HCM for their capital needs; indeed, at one point Dondero committed that HCM "would cover up to $12 million of margin calls" for HFP. Ex. 2, Dudney Report, at 49. In general, there was a "lack of separateness between HFP and its subsidiaries and HCM." Ex. 2, Dudney Report, at 49. This alter ego relationship encompassed CDO Holding, which HFP dominated for the benefit of itself and other HCM subsidiaries. Ex. 2, Dudney Report, at 44, 49.

- "Dondero exercised his ability to dominate and control HCM, SOHC, CDO Fund and HFP, amongst other [HCM] [e]ntities," to his own benefit, including to "authorize loans to himself" and facilitate transfers among these entities— "which were not at arm's length or executed in accordance with corporate formalities." Ex. 2, Dudney Report, at 54-56.

34. The expert's findings track the conduct animating this special proceeding. Dondero

and Ellington ensured the entities they controlled routinely failed to observe corporate formalities

with respect to their personnel, internal systems, and considerable assets. *See, e.g.*, Ex. 117,

Ellington Dep. at 113:5-9 (HCM employees' salaries reflected "an amalgamation of total efforts"

on behalf of all affiliated entities "as directed by Mr. Dondero as the [General Partner]" of HCM);

*see also* Ex. 26, Email from J. Blumer, at UBSHCDO-160165 (rows 536, 666) (attaching Highland

Entity Excel Chart and reflecting Dondero as CEO and "sole member of 'Monitoring Committee'"

of HFP).[6]   At all times material to UBS's claims in this Petition, these entities functioned as

extensions of one another and ultimately extensions of Dondero and Ellington.

35.     HCM, the Judgment Debtors, and the other Transferors often utilized the same

offices, employees, and internal counsel. *See, e.g.*, Ex. 121, Leventon Dep. at 27:25-28:15, 31:6-

19 (Oct. 10, 2022) (CDO Fund and SOHC shared the same registered office in the Cayman Islands

and also operated out of the same business office as HCM, "co-located" in Delaware); *id.* at 28:21-

29:3, 31:20-25 (CDO Fund and SOHC did not have any employees or internal counsel separate

from HCM); *see also* Ex. 92, Cash Warehouse Agreement ¶ 9 (Mar. 14, 2008) (listing the same

address for all Judgment Debtors: Two Galleria Tower 13455 Noel Road, Suite 800 Dallas, Texas

75240).   Many of these entities did not have separate boards of directors or a formal corporate

structure.   *See* Ex. 111, DiOrio Dep. at 22:10-23:5.

36.     Dondero and Ellington exerted their control through high-ranking HCM

employees, including Matthew DiOrio (Managing Director), Katie Lucas Irving (Managing

Director), Isaac Leventon (Assistant General Counsel), and Jean Paul Sevilla (Assistant General

Counsel), who functioned as Dondero and Ellington's lieutenants in executing their instructions.

*See, e.g.*, Ex. 111, DiOrio Dep. at 18:3-21:1 ("[w]hen asked to do something" by Dondero or

Ellington, DiOrio "would do it"); Ex. 119, Irving Dep. at 18:11-15 (Sept. 20, 2022) ("I would work

on anything that Mr. Ellington needed me to work on."); Ex. 121, Leventon Dep. at 26:22-29:9

(Leventon provided services to both HFP and its wholly owned subsidiary SOHC, while he was

an employee at HCM without separate compensation from either entity); Ex. 121, Leventon Dep.

---

[6]     *See also, e.g.*, Ex. 116, Ellington Dep. at 61:16-23 (HCM compensated Ellington for his
work on behalf of HCM's affiliates and managed funds); *id.* at 63:20-64:4 (Ellington used an HCM
email address in connection with his work on behalf of HCM's affiliates); Ex. 111, DiOrio Dep.
at 20:22-22:9 (Oct. 3, 2022) (Ellington hired DiOrio to work on matters for an HCM affiliate, but
he never received separate paychecks).

at 183:8-18 (Leventon did work for SAS without separate compensation); Ex. 125, Sevilla Dep. at 37:15-23 (Oct. 11, 2022) (Sevilla performed work on Dondero's personal matters because he "ha[d] been assigned it, by Mr. Ellington and/or Mr. Dondero" and because he "considered it part of his job" as an HCM employee).

37.     HCM employees even performed work for Dondero and Ellington personally as part of their HCM employment, all without separate compensation.  As DiOrio testified, "everyone wore multiple hats at Highland, I guess. . . . Highland employees would work on NexPoint issues, *personal business for Dondero*, anything like that."   Ex. 111, DiOrio Dep. at 17:23-18:15 (emphasis added); Ex. 111, DiOrio Dep. at 21:25-22:9 (DiOrio only received a paycheck from HCM despite doing work for other entities).   Below are a few examples:

- Sevilla and Leventon each worked for years, along with another HCM-employed bookkeeper, on tasks related to Dondero's divorce.  Ex. 125, Sevilla Dep. at 30:19-31:10, 31:18-25; Ex. 121, Leventon Dep. at 43:25-44:12.

- Leventon also litigated a lemon law claim for Dondero without separate compensation.  Ex. 121, Leventon Dep. at 44:13-25.

- Stephanie Vitiello helped Dondero manage a building leased to a salon.  *See* Ex. 128, Vitiello Dep. at 39:7-21 (Sept. 19, 2022).

38.     Even Ellington did personal tasks for Dondero, just as he expected of other HCM employees.  *See* Ex. 117, Ellington Dep. at 51:2-8 (HCM "employees also performed work for entities connected with Mr. Dondero for which there was no shared services agreement" and "for Mr. Dondero personally"); *see also* Ex. 117, Ellington Dep. at 115:23-116:2 (Ellington's "team sometimes did personal work for" him).  Completing personal tasks for Dondero influenced HCM employees' annual compensation. *See* Ex. 117, Ellington Dep. at 113:13-16 ("[I]f it was a personal assignment for Mr. Dondero, it was still seen as value to Mr. Dondero as the GP, and he set these overall compensation numbers.").

39.     Sevilla and Irving also worked on personal matters for Ellington, including conducting diligence and analysis for personal investments that Ellington was considering.  Ex. 125, Sevilla Dep. at 35:22-36:25; Ex. 119, Irving Dep. at 18:11-22 (Irving would work on "anything that Mr. Ellington needed me to work on," including personal matters).   Likewise, DiOrio conducted diligence for Ellington's personal investments, paid rent on a warehouse Ellington leased, and helped manage Ellington's personal trust.  Ex. 111, DiOrio Dep. at 15:9-16:8, 18:3-21:1.  For these tasks, DiOrio was not paid separately from his HCM salary.  Ex. 111, DiOrio Dep. at 15:5-8, 17:4-18:2.  And regularly DiOrio did not have an understanding of the entity for which he was performing his work.  Ex. 111, DiOrio Dep. at 18:3-19:16, 52:24-53:7.

40.     DiOrio was particularly loyal to Ellington.  He has known him since 2009.  Ex. 111, DiOrio Dep. at 90:22-91:1.  Before joining HCM, at an event with Ellington in a bar, DiOrio agreed to become a shareholder of one of the entities Ellington owned without any knowledge of the entity after Ellington assured DiOrio he would not "have any liability."  Ex. 111, DiOrio Dep. at 89:25-92:1.  DiOrio never paid for the shares, received any equity or distributions, or attended any meetings; indeed, he could not even remember the entity.  Ex. 111, DiOrio Dep. at 89:25-90:6, 95:18-96:24.  Indeed, after getting fired from HCM, Ellington hired DiOrio to work at Skyview.  Ex. 110, DiOrio Dep. at 12:11-12.

## II.     THE UNDERLYING ACTION

41.     UBS became entangled in Dondero and Ellington's web back in 2007.  In 2007 and 2008, UBS agreed to pursue a complex securitization transaction involving collateralized debt

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 22 of 376

obligations and collateralized loan obligations with HCM, CDO Fund, and SOHC (the "Knox Transaction").[7]

42.    The Funds stood to earn significant fees in connection with this transaction and in exchange agreed to bear 100% of the risk of loss associated with the transaction. *See* Ex. 11, Phase I Decision and Order, at 12, 17.

43.    In late 2008, amid the global economic recession, the assets suffered steep losses and the Funds breached their contractual obligations to bear 100% of those losses. *See* Ex. 11, Phase I Judgment, at 2. UBS thus terminated the agreements in December 2008, at which point the losses on the diminished assets had grown to $519,374,149. Ex. 11, Phase I Decision and Order, at 26-27.

44.    UBS sued HCM, the Funds, and several other affiliated entities (including HFP) in the New York Supreme Court for breach of contract from the Funds and indemnification from HCM. *See* Ex. 11, Decision and Order, at 1.

45.    Prior to the court's entry of the Phase I Judgment and the Phase II trial on UBS's remaining claims, HCM filed for bankruptcy, staying the Phase II trial.[8] In January 2020, an independent board of directors (the "Independent Board") of Strand took over sole authority to oversee HCM's operations, management of its assets, and its bankruptcy proceeding. *See* Ex. 6, Bk. Dkt. No. 339 (Jan. 9, 2020).

---

[7]    A collateralized loan obligation ("CLO") is a financial structure that acquires and manages a pool of loans or other debt. The CLO raises money by issuing its own debt tranches, as well as equity, and uses the proceeds of those issuances to obtain loans. As the borrowers of the underlying loans make payments, the CLO distributes the money to its investors.

[8]    HCM's bankruptcy case was transferred to the United States Bankruptcy Court for the Northern District of Texas under case number 19-bk-34054.

App. 019

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023
Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 23 of 376

46. In late 2020, HCM and several of its largest creditors, including UBS, participated in a Bankruptcy Court-ordered mediation. *See* Ex. 10, Bk. Dkt. No. 912, at 2 (Aug. 3, 2020). During this time, Ellington repeated several misrepresentations to UBS that he had made over the years, including that the Funds were "ghost funds." *See* Ex. 87, Email from I. Leventon, at UBSPROD1738891 (Aug. 21, 2020) (Ellington misrepresenting that (1) "[m]ost of the employees and custodians" of documents related to the Funds' assets "have not worked for the debtor or related entities in 10+ years," (2) the Funds are "ghost funds" and noting that "UBS is aware of this situation . . . because I have personally discussed it with [Andy Clubok, UBS's counsel] several dozen times," and (3) Ellington and Leventon spent 100+ hours "trying to piece together everything we can" and "all that is available" about the Funds).

47. Despite long discussions with mediators and months of settlement discussions between the parties, it was only after Dondero and Ellington were removed that HCM and UBS were able to reach an agreement in principle to settle UBS's claims in the bankruptcy. Then, on or about February 10, 2021, on the eve of the parties signing a settlement agreement, HCM disclosed several fraudulent conveyances that HCM entities (at the direction of Dondero and Ellington) had conducted in concert with Sentinel, a Dondero- and Ellington-affiliated insurance entity based in the Cayman Islands. *See* Ex. 90, HCM and UBS Settlement Agreement, at 2 (Mar. 30, 2021) (acknowledging disclosure of ATE Policy); Ex. 16, Bk. Dkt. No. 2389, at Exhibit 1, at 2 (May 27, 2021) (order approving settlement). UBS and HCM renegotiated their settlement, including settlement of UBS's Phase II claims against HCM and certain related entities.

48. On July 27, 2022, the court issued a Decision and Order on the remaining, unsettled Phase II claims, finding HFP to be an alter ego of SOHC and liable for satisfying the $510,771,605.55 Phase I Judgment against SOHC, plus all statutory interest. Ex. 23, Phase II

16

Decision and Order (July 29, 2022). On November 21, 2022, the court issued the Phase II

Judgment. Ex. 24, Phase II Judgment.

### III. ANTICIPATING LIABILITY, DONDERO AND ELLINGTON SHUFFLE ASSETS TO PUT THEM BEYOND UBS'S REACH

#### A. The 2010 Fraudulent Conveyance From CDO Holding To CLO HoldCo

49.     In late October 2010, the parties to the Underlying Action had fully briefed, and the

presiding court held a hearing on, HFP's and the Funds' motion to dismiss UBS's claim against

HFP as alter ego of SOHC. *See* Ex. 12, Motion to Dismiss Hearing Transcript, 650097/2009 (Oct.

19, 2011). UBS highlighted the many facts animating UBS's allegations that HFP exercised

unfettered control over SOHC and used that control to defraud UBS, all facts the court later

determined to be true. Ex. 12, Motion to Dismiss Hearing Transcript at 29:24-30:14 (citing the

allegations in UBS's complaint that explained the alter ego relationship between HFP and SOHC).

Dondero and Ellington saw the writing on the wall and correctly predicted that the court would

hold that HFP is the alter ego of SOHC and thus liable for claims under which UBS would seek

hundreds of millions of dollars in damages. *See* Ex. 1, Decision and Order Denying Motion to

Dismiss, 650097/2009, at 10 (Nov. 3, 2011) (holding that UBS sufficiently pled an alter ego

relationship between SOHC and HFP and denying motion to dismiss); *see also* Ex. 23, Phase II

Decision and Order, at 9 (holding that HFP is the alter ego of SOHC and liable for the Judgment).

50.     The following figure (attached in larger format as Ex. 97, HFP 2010 Organizational

Chart, at UBSPROD2415709), shows the way HCM controlled HFP as the 100% owner of its

general partner. It also shows the way HCM was thus able to control HFP's subsidiaries:

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document        Page 25 of 376



51.     Shortly after the hearing, Dondero acted to move HFP's assets out of its structure and therefore ostensibly out of the reach of any future UBS judgment.  On December 23, 2010, CDO Holding transferred substantially *all* of its assets in exchange for cash and a promissory note to CLO HoldCo, an entity created just weeks before (the "2010 Fraudulent Conveyance").  *See* Ex. 96, CDO Holding Balance Sheet, at UBSPROD4957189, tab "200.3 CDO BS."

52.     CDO Holding was "one of the primary repositories of assets of HFP."  Ex. 121, Leventon Dep. at 32:5-15.  HFP used CDO Holding's assets for whatever HFP and HFP's subsidiaries needed.  Indeed, HFP's former President and Chief Executive Officer (an HCM employee), Todd Travers, admitted that HFP and its subsidiaries did not employ any specific limitations or procedures that governed when one HFP subsidiary could cover the debt of HFP or another subsidiary.  *See* Ex. 127, Travers Dep. at 192:14-193:8 (Apr. 3, 2012) (decisions to cover debts for HFP or its subsidiaries were "all just sort of done on an ad hoc basis as Mr. Dondero

directed"). Dondero—who controlled HFP and therefore CDO Holding—could not even recall if HFP had any policies or procedures in place to determine whether HFP or its subsidiaries would pay its debts. *See* Ex. 112, Dondero Dep. at 431:2-12 (June 11, 2012). HFP's former Chief Operating Officer, Philip Braner, similarly testified that transfers between HFP and its subsidiaries were rarely formally documented as HFP did not have any policies requiring documentation of such transfers. *See* Ex. 108, Braner Dep. at 804:3-20 (Dec. 7, 2011).

53.    For instance, to cover certain SOHC losses in 2008, HFP withdrew about $15 million from CDO Holding. *See* Ex. 2, Dudney Report, at 19; *see also* Ex. 107, Braner Dep. at 323:19-326:11 (Dec. 6, 2011) (Braner approved both the $15 million transfer from CDO Holding to HFP and the later transfer from HFP to SOHC with a one-word email reading "approved"). HFP also used money from CDO Holding to pay legal invoices related to the Underlying Action, even though CDO Holding was not a party. *See* Ex. 121, Leventon Dep. at 32:5-33:7. And as Leventon testified, "if there was any collection against HFP, that collection would then be against its equity holding in CDO [Holding], which would then expose CDO [Holding]'s assets to seizure." Ex. 121, Leventon Dep. at 32:5-33:7.

54.    Assets moved in the other direction as well. CDO Holding routinely "required cash contributions from HFP in order to make various disbursements." Ex. 2, Dudney Report, at 47. In June 2008, SOHC recorded a dividend of $10.5 million to HFP, which HFP in turn moved to CDO Holding. *Id.* In reality, the cash transfer went directly from SOHC to CDO Holding (and not through HFP). *See id.* at 43. That month, HFP also raised $40 million from other HCM entities and transferred the money to CDO Holding to distribute it. *See id.* at 48. In December 2008, "as part of a single set of instructions to Bank of New York Mellon, SOHC transferred $3.7 million to

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 27 of 376

HFP, which was then transferred to CDO Hold[ing] and ultimately to James Dondero." *See id.* at 48.

55.     CLO HoldCo, on the other hand, was set up specifically to carry out the 2010 Fraudulent Conveyance. CLO HoldCo was incorporated on December 13, 2010, ***ten days*** before the 2010 Fraudulent Conveyance, "to hold certain CLO assets" and to "enter[] into an investment transaction [the] next week." *See* Ex. 28, Email from H. Kim, at UBSHCDO-015354 (Dec. 14, 2010) (attaching CLO HoldCo's Certificate of Incorporation at UBSHCDO-015356); Ex. 29, Email from A. Alvarez, at UBSHCDO-135396, -98 (Dec. 16, 2010). CDO Holding recorded no sales to any other entity in 2010. *See* Ex. 96, CDO Holding Balance Sheet, at UBSPROD4957189, tab "200.3 CDO BS."

56.     Dondero controlled CLO HoldCo through its parent, Highland Capital Management Partners Charitable Trust #2, and later, the DAF, which Dondero funded with his own assets and assets from HCM and other sources. *See* Ex. 71, Email from H. Kim, at UBSPROD2389234, tab "Dissolved Entities," row 429; tab "DAF," row 11 (Sept. 23, 2019) (attaching Legal Entities List); Ex. 18, Bk. Dkt. No. 2660, at 2-3 (Aug. 4, 2021) (CLO HoldCo Contempt Order)]; Ex. 32, Email from M. Okolita, at UBSHCDO-125280 (Dec. 21, 2010) ("Jim [Dondero] will be contributing ~16% of the value [of] the assets . . . .").

57.     To solidify his control, Dondero put an empty suit in charge of CLO HoldCo. On paper, Grant Scott was CLO HoldCo's director and sole manager. Ex. 28, Email from H. Kim, at UBSHCDO-015354, -55. However, as the Bankruptcy Court recently explained when holding CLO HoldCo in contempt for violating court orders, Grant is "a patent lawyer with no experience in finance or running charitable organizations, who was Mr. Dondero's long-time friend, college housemate, and best man at his wedding." *See* Ex. 18, Bk. Dkt. No. 2660, at 2. The documentation

underlying the 2010 Fraudulent Conveyance further underscores Dondero's control, as Dondero

signed as the "[g]atekeeper" for both CDO Holding and CLO HoldCo on an internal compliance

report for the transfer.  *See* Ex. 35, Email from C. Chism, at UBSHCDO-212473 (Jan. 5, 2011)

(attaching Dec. 21, 2010 Compliance Report).

58.    The 2010 Fraudulent Conveyance was far from an arm's-length transaction, with

contemporaneous internal HCM documentation evidencing concern over the lack of independent

review and evaluation of the terms of the underlying note.[9]

59.    The justification for the transfer was similarly suspect.  One rushed valuation

determined the assets to be worth at least $39,638,160.00.  *See* Ex. 30, Email from M. Khankin, at

UBSHCDO-117919 (Dec. 16, 2010) (attaching Dec. 8, 2010 Highland Valuation Results Letter).[10]

Dondero justified transferring the asset portfolio to provide "[l]iquidity" to CDO Holding.  Ex. 35,

Email from C. Chism, at UBSHCDO-212473 (attaching Dec. 21, 2010 Compliance Report).  But

CDO Holding received just $6,597,862.00 in cash from the transfer, along with a promissory note

for $32,801,593.00 plus interest that would not be payable for *fifteen* years.  *See* Ex. 96, CDO

Holding Balance Sheet, at UBSPROD4957189, tab "200.3 CDO BS," row 19 (reflecting that

---

[9]    "It appears that the note from the trust to the CDO Holdi[ng] is **not being** independently valued.  I expressed sever [sic] concerns about this being at arms length and told him I had spoken to Clint and Frank AND JIM [Dondero] about this and that it was a requirement and I don't know how you deem a transaction at arms length when you control the terms of the note and no one has reviewed them!???!  He expressed concerns that no one had told him this before to which I reiterated I had told everyone about this, including him and Jim [Dondero] and playing ignorant is not helpful and that I had serious doubts as to how this transaction was fair."  Ex. 32, Email from M. Okolita, at UBSHCDO-125280 (emphasis in original).

[10]    A subsequent version of this document indicates that the two largest CLOs in the portfolio made returns in Euros.  *See* Ex. 34, Email from M. Khankin, at UBSHCDO-056482 (Jan. 3, 2011) (attaching Dec. 8, 2010 Revised Highland Valuation Results Letter).  The dollar figure in this petition calculates the value based on the Euro-to-Dollar spot exchange rate from the valuation date, Dec. 8, 2010.  *See* European Central Bank, Euro Foreign Exchange Rates (Dec. 8, 2010), https://www.ecb.europa.eu/stats/exchange/eurofxref/shared/pdf/2010/12/20101208.pdf        (last accessed Feb. 5, 2023).

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
NYSCEF DOC. NO. 186

INDEX NO. 650744/2023

RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document      Page 29 of 376

between December 31, 2009, and December 31, 2010, CDO Holding added a new intercompany receivable from CLO HoldCo in the amount of $32,801,593.00); *id.* at tab "200.5 CDO CF," row 1478 (showing that on December 23, 2010, CDO Holding recorded a "sale" of "CDO Holding Assets" to CLO HoldCo in exchange for $6,597,862.00).

60.      UBS did not discover the 2010 Fraudulent Conveyance until well after Dondero's and Ellington's removal from HCM.  On February 10, 2021, HCM's bankruptcy counsel sent UBS a copy of the ATE Policy, which included a schedule listing a promissory note from CLO HoldCo to CDO Holding.  And only after that initial disclosure did UBS receive a copy of the actual promissory note and details surrounding the fraudulent nature of the conveyance.

**B.      The 2017 Fraudulent Conveyances To Sentinel**

61.      As the Underlying Action progressed, the defendants' (and, by extension, Dondero's and Ellington's) litigation setbacks continued to mount.  And after summary judgment losses in March 2017, Dondero and Ellington knew an adverse judgment was inevitable.  *See* Ex. 116, Ellington Dep. at 115:13-116:13 (Ellington believed Judgment Debtors would lose, was not surprised by the size of the damages verdict, and had warned Dondero that UBS would likely prevail); Ex. 120, Leventon Dep. at 87:22-88:4 (July 22, 2021) (Leventon advised Dondero and Ellington that Judgment Debtors were likely to be found liable).

62.      Dondero and Ellington also knew that the Transferors held substantial assets—all of which were ultimately under HCM's (and therefore Dondero's and Ellington's) control, and all of which could be used to satisfy an award to UBS.  And as early as April 2017, HCM's Legal Department, at Ellington's direction, prepared an internal document that specifically contemplated the financial and legal risks to HCM, its related entities, and Dondero himself, pending the outcome of the Underlying Action.  *See* Ex. 38, Email from I. Leventon, at HCMUBS005289 (Apr. 12, 2017) (attaching an HCM "Settlement Analysis" which identified risks to Dondero and the HCM-

related entities associated with the Underlying Action, including a $1.2 billion judgment, and
analyzed how transferring assets away from the Transferors could obviate these risks).

63.     And so Dondero and Ellington devised and implemented a scheme to move *all* the
Judgment Debtors' remaining assets (as well as assets of the other Transferors) that could be
subject to the impending judgment to Sentinel Reinsurance, Ltd. ("Sentinel"), a Cayman Islands-
based reinsurance company that Dondero and Ellington ultimately owned (the "2017 Fraudulent
Conveyances").  *See* Ex. 68, Email from C. Price, at DISCEN0008408, -8410 (June 20, 2019)
(attaching Sentinel Structure Ownership Chart).

1.     <u>Dondero And Ellington Manufacture The ATE Policy As A Way To
Transfer Assets</u>

64.     As guise for the 2017 Fraudulent Conveyances, Ellington devised that the Funds
and the other Transferors would transfer substantially all their assets (the "2017 Transferred
Assets") to Sentinel as "premium" on a so-called "After-The-Event" insurance policy (the "ATE
Policy") to the Funds and CDO Holding (together, the "Insureds") for liability in the Underlying
Action, under an attendant Asset Purchase Agreement (the "APA").  *See* Ex. 117, Ellington Dep.
at 119:10-11; *see also* Ex. 37, Email from S. Vitiello, at UBSPROD4837429 (Apr. 11, 2017)
(email between Stephanie Vitiello and Leventon attaching draft ATE Policy presentation "[b]ased
on our discussion with Scott [Ellington]"); Ex. 38, Email from I. Leventon, at HCMUBS005295
(attached revised ATE Policy presentation including purchase of "$100m ATE policy from
Sentinel" with "ATE premium = all assets in HFP/CDO Fund").  By moving all the 2017
Transferred Assets, Dondero and Ellington could avoid loss of the assets, HCM facing "years of
fraudulent transfer claims throughout Highland structure," and "liability to backstop HFP/CDO
Fund for up to $1.2b" if UBS won.  Ex. 40, Email from I. Leventon, at HCMUBS005253-54 (Apr.

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 31 of 376

19, 2017). The moves also avoided $257 million tax liabilities for HCM, including $50 million

for Dondero personally, if HCM happened to win the case. *Id.*

65.    Ellington concocted the idea without input from Sentinel or Beecher Carlson,

Sentinel's insurance manager ("Beecher").[11]  *See* Ex. 117, Ellington Dep. at 327:2-14, 328:9-

329:1; *id.* at 119:10-11 (the ATE policy was Ellington's idea); *see also* Ex. 121, Leventon Dep. at

132:3-18 (the presentation "was a document that was being prepared as a presentation to Mr.

Dondero to encourage him to settle the UBS litigation"); *see also, e.g.*, Ex. 106, Beecher Dep. at

145:11-19 (Apr. 12, 2022) (that the policy premium would "be satisfied by the transfer of the entire

investment portfolios of the [F]unds" was Sevilla's idea).

66.    Sentinel's prior business and financial status at the time of the ATE Policy further

evidences the ATE Policy's fraudulent nature. Sentinel had never issued an after-the-event legal

liability policy before it issued one to the Insureds, nor has it issued one since. *See* Ex. 124, Sevilla

Dep. at 138:23-25 (July 21, 2021); Ex. 106, Beecher Dep. at 124:20-125:4. Before the ATE Policy,

Sentinel exclusively wrote director and officer liability policies for Dondero- and Ellington-related

entities worth fractions of that of the ATE Policy. Ex. 124, Sevilla Dep. at 95:9-23; Ex. 49, Email

from K. Irving, at HCMUBS001079 (Aug. 16, 2017). Without the 2017 Transferred Assets,

Sentinel would have been unable to pay the full $100 million coverage of the ATE Policy: as of

December 2016, Sentinel had only $19,193,823.23 in total assets, $5,886,746.39 of which were

cash. *See* Ex. 49, Email from K. Irving, at HCMUBS001079.

---

[11]    Beecher "specialized in setting up and helping to manage captive[]" insurers. Ex. 106,
Beecher Dep. at 19:6-11. Beecher "helped set up [Sentinel]" and then provided services
"consisting of financial statements, preparation, coordination of board meetings, corresponding
with the regulators . . . [and] [i]nteracting with the various service providers that Sentinel would
engage for audit [and] actuarial" work. *Id.* at 16:1-18.

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document     Page 32 of 376

2.     Dondero And Ellington Set And Carry Out The Terms Of The ATE Policy

67.     Dondero, Ellington, and their lieutenants unilaterally dictated the substantive terms of the ATE Policy and associated APA, reinforcing the transfers' fraudulent nature and Dondero and Ellington's control over the Judgment Debtors.

68.     *First*, Dondero and Ellington's lieutenants revised the ATE Policy to allow reimbursement of expenses even if the Insureds could not afford to litigate the Underlying Action—a near certainty given that the Insureds transferred substantially all of their assets to purchase the ATE Policy.  *See* Ex. 42, Email from P. Kranz, at BC SEN0000745902 (Aug. 8, 2017) (responding to an email chain in which Sevilla directs Solomon Harris to remove an exclusion that would permit Sentinel to deny coverage to an insured that lacked the funds to litigate its case).

69.     *Second*, Dondero and Ellington's lieutenants carefully tailored the terms of the ATE Policy to enable the Insureds and other related entities to drain the policy limit through reimbursements unrelated to the Underlying Action.  *See* Ex. 42, Email from P. Kranz, at BC SEN0000745902-03 (Sevilla directing Solomon Harris to extend coverage under the Policy to the Insureds' "own costs and expenses," and later broadening that language to the "costs and expenses of the Representative *and other service providers in the normal course*, including related tax, which are incurred during the conduct of the legal action on behalf of the insured" (emphasis added)).

70.     *Third*, when Sentinel's actuary analyzed the ATE under the terms Dondero and Ellington's lieutenants provided, including the coverage limit and premium, the actuary noted that "[e]ven under reasonably optimistic assumptions," Sentinel would lose money on the ATE Policy. Ex. 41, Email from T. Adamczak, at BC SEN0000745987 (June 28, 2017). But this did not deter Dondero, Ellington, or their lieutenants.

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
NYSCEF DOC. NO. 186

INDEX NO. 650744/2023

RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 33 of 376

71. *Finally*, to ensure that they would have the authority to push the transaction through on Sentinel's behalf, Dondero and Ellington arranged for their own appointment as sole members of the Sentinel Advisory Board of ITA Trust, the entity with ultimate voting control over Sentinel. Although Sentinel had been operating for five years, Dondero and Ellington's tenure on the Sentinel Advisory Board commenced at the same time Sentinel and the Transferors executed the ATE Policy and APA. *See* Ex. 116, Ellington Dep. at 93:9-10 (Ellington testifying that Sentinel was formed in 2012); Ex. 66, Email from C. Price, at BC SEN0000076075 (Mar. 5, 2019) (attaching Sentinel Board Minutes). As the sole members of the Advisory Board, Dondero and Ellington would "guide the decision making of the Trustee of the ITA Trust in its role as an indirect shareholder in [Sentinel]." *Id.*

72. While developing the ATE Policy and APA, Sentinel's outside counsel at Solomon Harris questioned the "legal validity" of the contemplated transfer, ***articulating the exact theory of fraud animating UBS's claims here***: that the 2017 Fraudulent Conveyances put the assets "beyond the reach of the plaintiffs in the [Underlying Action] against the [F]unds" and a court could determine "that the 'premium' has to be returned or . . . set aside as some unlawful preference or similar." Ex. 42, Email from P. Kranz, at BC SEN0000745905. This did not dissuade Dondero or Ellington. In August 2017, Dondero executed the ATE Policy and corresponding APA, transferring the 2017 Transferred Assets valued at over $105,647,679.00 to satisfy a $25,000,000 "premium." *See* Ex. 51, Email from I. Leventon (Oct. 26, 2017); Ex. 98, Asset Purchase Agreement (Aug. 7, 2017).[12]

---

[12] The final APA largely mirrors Appendix 1 that was attached to the settlement analysis presentation prepared by Ellington and his team in April 2017 and presented to Dondero. *See* Ex. 39, Email from I. Leventon, at UBSPROD4837680 (Apr. 13, 2022) (attaching Settlement Analysis presentation).

73.     The face value of the transferred cash and promissory notes sent as part of the 2017

Transferred Assets alone were worth nearly twice the ATE Policy premium.  *See* Ex. 98, Email

from I. Leventon, at BC SEN0000089127-28 (Schedule A to APA).[13]

74.     In its time managing "[t]housands" of insurance policies, Beecher had never before

seen a premium paid in this fashion.  *See* Ex. 106, Beecher Dep. at 180:18-181:5.  But as DiOrio

observed, "I don't think there was a consideration of picking and choosing assets to send.  It was

all or none, and they chose all to pay for the policy."  Ex. 111, DiOrio Dep. at 304:16-305:1.

75.     Under the final ATE Policy, Sentinel agreed to indemnify CDO Holding—a non-

party to the Underlying Action but alter ego to parties HFP and SOHC—and the Funds for up to a

$100 million limit for any adverse judgment or settlement with UBS.  *See* Ex. 51, Email from I.

Leventon, at UBSPROD1973056, -70.  Though CDO Holding is not a defendant in the Underlying

Action, Dondero and Ellington determined it "had liability" in the suit, *see* Ex. 125, Sevilla Dep.

at 118:18-120:4, no doubt because it was an "asset repository" for HFP.  Ex. 121, Leventon Dep.

at 32:5-15.

76.     The other three Transferors that contributed their assets—CDO Opportunity Fund,

HFC, and HFP—were not insured under the ATE Policy and, as for CDO Opportunity Fund and

HFC, were not even party to the Underlying Action.  *Compare* Ex. 98, Asset Purchase Agreement,

---

[13]   The 2017 Fraudulent Conveyances included the assignment of three promissory notes.  *See* Ex. 98, Asset Purchase Agreement, at BC SEN000089127-28.  This included the $32,801,593 CLO HoldCo promissory note, originally issued for the 2010 Fraudulent Conveyance.  Ex. 54, Email from L. Thompson (April 6, 2018) (attaching Assignment Agreement Ex. A (CLO HoldCo Promissory Note)).  It also included the assignment of a promissory note from the Dugaboy Investment Trust for $2,399,996, signed by Dondero's sister, Nancy, and a promissory note from Governance Re Ltd. for $2,155,144, signed by Dondero, both originally issued to CDO Fund on August 7, 2017, just days before the 2017 Fraudulent Conveyances.  *See* Ex. 63, Email from I. Leventon, at UBSPROD2309345-47, 43-44 (Nov. 14, 2018) (attaching Dugaboy and Governance Re promissory notes).

at BC SEN000089127-28, *with* Ex. 51, Email from I. Leventon, at UBSPROD1983071. These three had nothing to gain from the 2017 Fraudulent Conveyances except to safeguard their assets (ultimately under the control of Dondero and Ellington) from an adverse judgment and alter ego liability in the Underlying Action. *See generally* Ex. 122, Raver Dep. at 111:20-112:7 (May 6, 2021) (the Transferors *lost* money in these transfers).

77.      Dondero, Ellington, and their lieutenants were intimately involved in effecting the 2017 Fraudulent Conveyances from both sides. Ellington got the transaction approved and completed, *see* Ex. 113, Dondero Dep. at 74:9-17, and Dondero signed the ATE Policy on behalf of all the Insureds and the APA on behalf of all Transferors, *see* Ex. 51, Email from I. Leventon, at UBSPROD1983071; Ex. 98, Asset Purchase Agreement, at BC SEN0000089124-25. Dondero even tried to sign a corollary to the APA on behalf of the Transferors *and* Sentinel. *See* Ex. 48, Email from T. Loiben, at HCMUBS000863 (Aug. 14, 2017); Ex. 47, Email from T. Loiben, at HCMUBS000947, (Aug. 14, 2017) (attaching Assignment Agreement signed by Dondero as assignor and assignee). Even when they were not acting directly, Dondero and Ellington directed others at HCM to carry out their plans. *See, e.g.*, Ex. 43, Email from J. Sevilla, at UBSPROD2566503 (Aug. 10, 2017) (replying to an email from H. Kim noting that she had to track down Dondero's signature on behalf of the Judgment Debtors); Ex. 46, Email from D. Willmore, at HCMUBS000563 (Aug. 11, 2017) (confirming to Dondero and Ellington's lieutenants that wires had been initiated "to move all of CDO Fund's cash to Sentinel."). For instance, Vitiello worked with Leventon and Ellington to help design the ATE Policy, Ex. 121, Leventon Dep. at 157:14-158:6, and Irving was instrumental in ensuring that Sentinel received all the assets in satisfaction of the premium payment under the APA, *see* Ex. 118, Irving Dep. at 87:13-18 (Nov. 15, 2021).

78.     When asked, Dondero could not be sure who he or Ellington represented in the 2017 Fraudulent Conveyances: Sentinel, the Transferors, or both. *See* Ex. 113, Dondero Dep. at 143:21-144:14 ("And although Scott Ellington coordinated the overall transaction, I don't know if there was somebody separate representing one side or the other or if he represented both [Sentinel and the Insureds].").

### 3.     At All Times, Dondero And Ellington Controlled Sentinel

79.     Dondero and Ellington happily moved assets out of the various HCM-entities because they fully controlled Sentinel and would still have control over and access to the 2017 Transferred Assets.

80.     As noted above, Dondero and Ellington are and have always been the ultimate beneficial owners of Sentinel. Dondero tasked Ellington with setting up and managing Sentinel through HCM's in-house legal team. *See* Ex. 115, Dondero Dep. at 18:25-22:19 (Oct. 18, 2022); *see also* Ex. 117, Ellington Dep. at 50:1-16 (noting that Dondero had "very wide latitude" to direct HCM employees to work on Sentinel). As a reward, even though Ellington did not contribute any capital, he would receive 30% of the contingent residual interest; Dondero would receive the remaining 70%. Ex. 115, Dondero Dep. at 22:2-12; Ex. 116, Ellington Dep. at 155:17-156:6. Dondero and Ellington "call[ed] the shots" as the ultimate beneficial owners of Sentinel. Ex. 106, Beecher Dep. at 34:16-19.

81.     Ellington was "responsible for managing . . . and monitoring [Sentinel]," Ex. 113, Dondero Dep. at 134:1-4, and in turn directed a close circle of trusted HCM employees to perform, in their roles as HCM employees, work in connection with Sentinel. *See* Ex. 125, Sevilla Dep. at 41:22-25 (Ellington "directed [Sevilla's] work on the Sentinel platform"); Ex. 111, DiOrio Dep. at 33:4-24 (Ellington instructed DiOrio to work on different platforms, including Sentinel); Ex. 119, Irving Dep. at 238:14-23 (Irving did work for Ellington, including work for Sentinel); Ex.

121, Leventon Dep. at 91:13-92:7 (Ellington directed Leventon's work on Sentinel).  Sentinel had

no separate employees and instead was, until 2021, run exclusively by HCM employees at

Dondero and Ellington's direction.  *See* Ex. 106, Beecher Dep. at 18:10-25; *id.* at 16:22-17:23

(Sevilla, Irving, DiOrio, and Leventon worked on behalf of Sentinel); *see also* Ex. 110, DiOrio

Dep. at 88:25-89:23 (July 23, 2021) (same); Ex. 106, Beecher Dep. at 32:9-22 ("[a]nything

pertaining to the entities within the Sentinel structure . . . would either be communicated by"

Sevilla or select other HCM employees, including DiOrio); Ex. 111, DiOrio Dep. at 115:10-12

(Sevilla "watched" over day-to-day management of Sentinel).  In fact, Ellington appointed DiOrio

as a Sentinel director, using DiOrio to continue to control Sentinel and to push through various

fraudulent dividends and disbursements described below, even going so far as to remove a Sentinel

director at whim.  *See* Ex. 111, DiOrio Dep. at 212:13-19 (DiOrio worked to remove a fellow

Sentinel director because Ellington instructed him to do so).[14]

      4.      Dondero And Ellington Try To Conceal The 2017 Sentinel Transfers

      82.      Dondero and Ellington went to great lengths to cover up the 2017 Fraudulent

Conveyances to Sentinel.

      83.      To start, Dondero and Ellington concealed their ownership of Sentinel and the true

purpose of the ATE Policy from everyone except their trusted lieutenants.  *See* Ex. 113, Dondero

Dep. at 167:20-25 (Dondero did not "remember" or "recall" telling anyone at HCM that he was

the majority beneficial holder of Sentinel); Ex. 123, Ringheimer Dep. at 29:14-18 (Apr. 30, 2021)

(HCM employee who helped push through the transfers was aware they were urgent but could not

---

[14]    DiOrio removed the director and pushed forward the dividend in the same breath: "[p]lease
see the attached shareholder resolution removing Dilip Massand from the Sentinel board. I think
we should be good to get the dividend paid out now."  *See* Ex. 83, Email from J. Neveril, at BC
SEN0000770886 (Apr. 24, 2020).

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
NYSCEF DOC. NO. 186
INDEX NO. 650744/2023
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 38 of 376

recall an explanation for the urgency); Ex. 126, Stoops Dep. at 16:3-20:16 (Apr. 27, 2021) (HCM employee who helped push through the transfers had "very, very limited knowledge" of the ATE Policy but knew that there was urgency to execute the associated transfers); *see also* Ex. 126, Stoops Dep. at 14:5-17:9 (Sevilla told HCM employee who helped push through the transfers that the transfers were necessary because UBS and HCM were in settlement negotiations and UBS required HCM to remit settlement in cash).

84.    Later on in 2018, Sentinel (on behalf of Dondero and Ellington) tried to hide the fraudulent nature of the transfers by ascribing only $68 million in value to the 2017 Transferred Assets, *assets which HCM confirmed were worth $105,647,679.00 less than one year after the transfers. See* Ex. 69, Email from K. Irving, at UBSPROD2572277 (Aug. 6, 2019) (attaching Sentinel Presentation to CIMA); Ex. 61, Email from R. Swadley, at HCMUBS003792 (Sept. 12, 2018) (attaching Tax Memorandum).  But an auditor for Sentinel noted that even under this value, "Sentinel [w]as . . . overpaid by approximately $15m" for the premium with "no return of overpayment." Ex. 55, Email from J. Sevilla, at BC SEN0000707457 (June 6, 2018).  This raised "the question 'is this an arms-length transaction'" and would require "a ton of additional disclosures in the audit report." *Id.*  Dondero, Ellington, and their lieutenants tried to conceal this disparity through retroactive "adjustments" to the ATE Policy terms, all of which underscore the illicit nature of the 2017 Fraudulent Conveyances.

85.    Around June 2018, Sentinel executed the first of two undated endorsements (or amendments) to the ATE Policy, which "adjusted" the premium from $25,000,000 to Sentinel's $68,362,333.62 valuation of the assets.  *See* Ex. 69, Email from K. Irving, at UBSPROD2572277 (attaching Sentinel Presentation to CIMA); Ex. 52, Limited Liability Insurance Policy and Endorsements, at DISCEN0007913 (June 2018).  The post-hoc increase in the ATE Policy

App. 035

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
NYSCEF DOC. NO. 186

INDEX NO. 650744/2023

RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document     Page 39 of 376

premium did not increase the policy limit or period of coverage—every other aspect of the ATE Policy remained the same.  *See* Ex. 52, Limited Liability Insurance Policy and Endorsements.

86.     Later that same month, Sentinel executed a second endorsement to the ATE Policy, reducing the premium and coverage by $9 million for monies that the Insureds supposedly "prepaid" to "cover risk mitigation costs, which include but are not limited to, legal defense costs." *See* Ex. 69, Email from K. Irving, at UBSPROD2572277 (attaching Sentinel Presentation to CIMA); Ex. 52, Limited Liability Insurance Policy and Endorsements, at DISCEN0007913.

87.     Despite the substantive changes to the ATE Policy resulting from the endorsements, no representative of the Insureds signed either endorsement, and Beecher could not recall whether the Insureds had representation in connection with these amendments.  *See* Ex. 106, Beecher Dep. at 236:7-13.

88.     The fraudulent nature of the ATE Policy and related transfers came to light in March 2019 when the Cayman Island Monetary Authority ("CIMA") conducted onsite inspections of Sentinel.[15]  Because Sentinel's only active policy at the time was the ATE Policy, CIMA focused its assessment on the ATE Policy, the APA, and associated transfers.  CIMA was concerned that "[t]hose charged with . . . governance could not explain the basis upon which the [2017 Transferred Assets] had been valued on or about August 1, 2017 for the purpose of premium settlement," and "they could not explain the reason why the information that was relied on to value the [2017 Transferred Assets] could not be readily provided to the auditors upon request."  Ex. 67, Email from S. Dube, at BC SEN0000078819, -22 (May 6, 2019) (attaching CIMA Sentinel Final

---

[15]  "[CIMA's] Insurance Supervision Division is responsible for the supervision, regulation, and licensing of all insurance companies and insurance brokers, managers and agents through an integrated risk-based supervisory approach while ensuring compliance with regulatory legislation."  Cayman Islands Monetary Auth., "Divisions," https://www.cima.ky/about-division (last accessed Feb. 6, 2023).

App. 036

Inspection Reports). CIMA similarly found the post hac endorsements troubling, as "[t]hose charged with governance could not explain why the premium was adjusted from US$25 million to US$68.3 million without a commensurate adjustment to the indemnity limit provided or why the initial pricing for the policy was subsequently deemed not sufficient." *Id.* These facts, coupled with the realization that the 2017 Transferred Assets led to a near seven-fold increase in Sentinel's investment portfolio between December 2016 and December 2017, "cast significant doubt on the economic substance and business purpose of the transactions relating to the ATE coverage" that were "at the very least questionable." *Id.*

89. Dondero and Ellington's lieutenants sought to legitimize the ATE Policy by lying to CIMA in claiming that Sentinel's actuary independently determined the ATE Policy's terms — which the actuary denied and the documentary evidence shows is false. *See* Ex. 67, Email from S. Dube, at BC SEN0000078822 (attaching CIMA Sentinel Final Inspection Reports). In reality, the actuary flagged a "huge down-side risk" with "not much to gain" and warned Sentinel that "[e]ven under reasonably optimistic assumptions, Highlands' loss would exceed the projected premium." Ex. 41, Email from T. Adamczak, at BC SEN0000745985-987, -993 (June 28, 2017).[16] CIMA determined as much through its inspection, finding that Sentinel's actuary "was not involved in the determination of premium pricing . . . to any extent at all" and that the actuary's "involvement arose after premium decisions had been finalized by [Sentinel]." Ex. 67, Email from S. Dube, at BC SEN0000078822. CIMA expressed "concern that the management's assertion that the ATE [P]olicy premium of US$25 million was established based on a pricing study conducted by [Sentinel's] actuary contradicts the actuary's position." *Id.* However, nothing came of these

---

[16] This analysis assumed a premium of $20 million and coverage of $80 million—the final ATE Policy maintained the same losing ratio, with a $25 million premium for $100 million in coverage. Ex. 41, Email from T. Adamczak, at BC SEN0000745985-987.

inspections and the fraudulent nature of the 2017 Fraudulent Conveyances and ATE Policy remained hidden.

90.    After the court entered the Phase I Judgment, Dondero and Ellington continued to make every effort to obscure from UBS the existence of the ATE Policy and the 2017 Fraudulent Conveyances.[17]

91.    During years of settlement negotiations with UBS, UBS made requests for documentation relating to the Funds' assets as of February 2009 and any subsequent transfer or dissipation. *See* Ex. 13, Bk. Dkt. No. 1345, at 10 (Nov. 6, 2020). In response, Dondero, Ellington, and their lieutenants repeatedly lied to UBS, stating such documentation was limited or did not exist, that CDO Fund and SOHC were "ghost funds," that "had no assets left, but if there was a settlement, that Mr. Dondero could come up with funds from some other source to satisfy a relatively small settlement on behalf of those funds." *See, e.g.*, Ex. 87, Email from I. Leventon, at UBSPROD1738891 ("I know that UBS is aware of this situation and I know Andy Clubok knows of this situation because *I have personally discussed it with him several dozen times*. Including as recently as this year.") (emphasis added); Ex. 103, Ellington Subpoena (Mar. 1, 2022); Ex. 116, Ellington Dep. at 83:15-84:24 (Ellington did not disclose the ATE Policy to UBS's counsel or the Bankruptcy Court); Ex. 120, Leventon Dep. at 150:25-152:4, 268:4-20 (Leventon did not disclose the ATE Policy to UBS, the Independent Board, or HCM's bankruptcy counsel).[18]

---

[17]    Indeed, Dondero and Ellington's lieutenants even went as far as to disclaim any knowledge of Sentinel's relationship with HCM.  *See, e.g.*, Ex. 89, Email from G. Demo, at UBSPROD3603372 (Feb. 9, 2021) (DiOrio, a director of Sentinel at the time, lies in response to a question from Demo requesting visibility into Sentinel's ownership and purpose, "It is a non-debtor, non-affiliate reinsurance company and I do not know who or how it is owned.").

[18]    Neither did Dondero, Ellington, and their lieutenants disclose to the Independent Board that HFP, SOHC, and CDO Fund were insured for up to $100 million under the ATE Policy when representing that they were insolvent.  *See* Ex. 117, Ellington Dep. at 133:3-10, 137:15-138:11 (Ellington did not disclose the ATE Policy to the Independent Board); Ex. 124, Sevilla Dep. at

92.     It was only on or about February 10, 2021, after Dondero's and Ellington's removal, that the Independent Board first shared with UBS the existence of the ATE Policy and APA, revealing for the first time the clandestine scheme to frustrate the Judgment and defraud UBS. *See* Ex. 90, HCM and UBS Settlement Agreement, at 2 (acknowledging disclosure of ATE Policy).

### C.     The 2019 Fraudulent Conveyance To Sebastian Clarke

93.     Just a month after the court found the Funds liable in the Underlying Action, Dondero and Ellington, through their lieutenants, sought to drain Sentinel of the remaining 2017 Transferred Assets.

94.     In a single day on December 31, 2019, DiOrio and Sevilla forced through the transfer of $35,201,589 of the 2017 Transferred Assets to Sebastian Clarke—yet another Cayman Island entity Dondero and Ellington owned and controlled.[19] *See* Ex. 82, Email from M. DiOrio, at BC SEN0000638651 (Mar. 19, 2020) (Sevilla requests that the directors of Sebastian Clarke, John Cullinane and David Egglishaw, "review a matter for approval today" involving a transfer of assets "Sentinel currently marks at zero and which Sentinel would propose to transfer to Sebastian Clarke for minimal consideration"); *id*. at BC SEN0000638650 (DiOrio notes that "[a]ll we need is an email consent to the transfer and we will have it documented later this week"); Ex. 60, Email from J. Venza, at HCMUBS003785 (Sept, 5, 2018) (attaching Offshore Fund Structure Chart) (reflecting Dondero and Ellington's ownership interests in various entities, including Sebastian

---

278:20-279:3 (Sevilla did not disclose the ATE Policy to the Independent Board); Ex. 86, Email from I. Leventon, at UBSPROD1706963 (Aug. 5, 2020) (Leventon did not disclose the ATE Policy when representing that "HFP (the parent of SOHC) and CDO Fund both informed their investors in 2009 that they had zero net asset value," and that, after personally tracking down SOHC's and CDO Fund's assets, "both portfolio assets are illiquid unless the underlying PE positions are sold").

[19]   Sentinel later told UBS that Sebastian Clarke returned the assets.

App. 039

Clarke); Ex. 111, DiOrio Dep. at 109:22-110:21 (Sebastian Clarke was "an entity under still the same general common ownership" as Sentinel).

95. In exchange for the assets it sent Sebastian Clarke, Sentinel received just *$3*, even though the assets included two promissory notes from the 2017 Transferred Assets with a face value of over $35 million—notes from entities Dondero confirmed had the ability to pay.[20] *See* Ex. 99, Asset Transfer Agreement, at UBSPROD020571 (Dec. 31, 2019); Ex. 114, Dondero Dep. at 333:5-16 (confirming that Dugaboy has the solvency to pay off the Dugaboy promissory note); Ex. 115, Dondero Dep. at 190:1-6 (confirming that the estimated value of CLO HoldCo exceeds $100 million).

96. When pushed to explain why he deemed the notes worthless, DiOrio could only recall vaguely that "there were some notes that were not paying interest, and I didn't have the info to provide to VRC [the independent valuation company] to have them valued." Ex. 111, DiOrio Dep. at 293:1-16. But, on the face of the $32,800,000 promissory note from CLO HoldCo, no interest is due until maturity in 2025. Ex. 54, Email from L. Thompson, at Ex. A (attaching Assignment Agreement). And DiOrio was unaware whether Sentinel had even demanded payment on the promissory note backed by Dondero's personal trust. Ex. 111, DiOrio Dep. at 295:14-296:21.

---

[20] Though within his power, Dondero has done nothing to cause these two promissory notes to be paid to Sentinel. Dondero is the sole beneficiary of the Dugaboy Investment Trust, and he has admitted that his sister, the trustee, "take[s] guidance from me on the asset management side." Ex. 115, Dondero Dep. at 62:19-63:16; *see also* Ex. 114, Dondero Dep. at 280:7-21. Dondero "tr[ies] [to] have as much of [his] assets as possible [stored] in Dugaboy," including "a lot of [his houses]," and has admitted that he had not ever asked his sister whether she would pay off the Dugaboy note. Ex. 115, Dondero Dep. at 245:21-246:8, 248:15-21. Similarly, Dondero testified that he has done nothing to ensure that CLO HoldCo would pay off the promissory note. *Id.* at 240:22-25.

97.     DiOrio claimed the reason for the rush was that "Sentinel had to get these assets off its balance sheet per the instruction of CIMA" because they "could not be valued or were not valued" and would lead to "a qualified audit opinion."  Ex. 111, DiOrio Dep. at 109:22-110:13. But only DiOrio deemed these assets "worthless;" Sentinel did not have the assets independently valued.  Ex. 82, Email from M. DiOrio, at BC SEN0000638649, -51 (DiOrio characterizing the assets transferred to Sebastian Clarke as "worthless" but admitting that Sentinel did not have the assets formally valued).  And Beecher had "no way of confirming" the value of the assets because "Sentinel had no documents" on the assets' value.  Ex. 106, Beecher Dep. at 281:17-282:2.  In fact, DiOrio only advised Beecher of the transfer months after the agreement's execution.  *See* Ex. 82, Email from M. DiOrio, at BC SEN0000638649 (DiOrio forwarding the agreement to Beecher on March 19, 2020, "Not sure if I ever sent this to you guys.  Sale of worthless assets agreement").

## IV.     DONDERO AND ELLINGTON USE THE 2017 TRANSFERRED ASSETS AS A PIGGY BANK

98.     Dondero and Ellington exercised their control over Sentinel to enrich themselves using cash at Sentinel that was originally transferred with, or generated by, the 2017 Transferred Assets.  This diminished the fraudulently transferred assets at Sentinel, all of which should have been available to UBS to satisfy the judgment.[21]

### A.     The 2019-2021 Voidable Transfers To Dondero And Ellington

99.     In the months after the November 2019 Phase I Decision and Order, Dondero and Ellington spent, transferred, and otherwise dissipated the 2017 Transferred Assets.  They did this in two main ways.

---

[21]  On September 1, 2022, UBS entered into a final settlement agreement with Sentinel, whereby, among other terms, Sentinel agreed to transfer to UBS what remained at Sentinel of the 2017 Transferred Assets, and UBS agreed to count those assets toward satisfaction of the Judgment.  *See* Ex. 25, Partial Satisfaction-Piece for Post-Judgment Interest (Feb. 1, 2023).

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document      Page 45 of 376

100.    *First*, Ellington charged the ATE Policy for ludicrous personal expenses, unrelated "business development" expenses meant to develop business for other Dondero- and Ellington-entities, and unrelated litigation funding expenses (collectively, and as set forth *infra* ¶¶ 103-112, the "Fraudulent Ellington Reimbursements").

101.    *Second*, Dondero, Ellington, and their lieutenants arranged for "dividend" transfers from Sentinel to Dondero and Ellington's holding companies, Mainspring and Montage.  *See infra* ¶¶ 113-119.

102.    Each of these transfers was made for no consideration and was purely to transfer the 2017 Transferred Assets parked at Sentinel to Dondero and Ellington and away from UBS.

1.    The 2019-2020 Fraudulent Ellington Reimbursements

103.    Ellington received several direct cash transfers that funded his high-flying party lifestyle and supposed attempts to drum up non-Sentinel business—expenses unrelated to the ATE Policy or to Sentinel at all.

104.    On December 16, 2019, Ellington submitted for reimbursement $21,557.04 in expenses for travel to Los Angeles, New York City, and Chicago.  *See* Ex. 74, Email from M. DiOrio, at BC SEN0000712799 (Dec. 17, 2019).  DiOrio forwarded the expense to Beecher Carlson with instructions to reimburse pursuant to the ATE Policy with no further explanation to justify why they qualified as "risk mitigation" expenses under the ATE Policy.  *Id.*  Beecher made the reimbursement without question.  Ex. 76, Email from CIBC Bank, at BC SEN0000004342-43 (Dec. 20, 2019).

105.    On December 19, 2019, Ellington submitted for reimbursement $318,934.88 in expenses for a single day in Austin and seven days in Las Vegas during December 11-17, 2019, all of which Sentinel reimbursed as "business development."   *See* Ex. 75, Email from T. Adamczak, at BC SEN0000663342 (Dec. 20, 2019) (attaching Ellington Dec. 19 Expense Report).

App. 042

Among the expenses were $42,324 in charges from a *single night* at Sapphire, a Las Vegas strip club,[22] $97,706.19 at nightclub OMNIA, and $157,855.47 at the Wynn casino and hotel in Las Vegas.  Ex. 117, Ellington Dep. at 368:16-373:2; Ex. 75, Email from T. Adamczak, at BC SEN00000663344 (attaching Ellington Dec. 19 Expense Report).

106.    Ellington justified the expenses at OMNIA and the strip club Sapphire as related to a party for a real estate brokerage firm that had "worked out and disposed of" hundreds of millions of dollars of real estate for **HCM**.  Ex. 117, Ellington Dep. at 369:6-18.  Ellington wanted to "thank[] them for their service [to HCM]."  *See id.* at 370:15-371:10.

107.    The $150,000+ Ellington spent at the Wynn Hotel was purportedly related to a trial in Lake Las Vegas.  Ellington explained Sentinel had "a contingency relationship where Sentinel was investing in fronting part of the money for a return of any recoveries."  *See* Ex. 117, Ellington Dep. at 373:10-374:15.  But according to public court records, Ellington and Sevilla's trial in Lake Las Vegas was in **August and September** 2019 for **HCM**-affiliated entity "LLV Holdco."  *See* Ex. 70, Email from J. Sevilla, at UBSPROD2708622 (Sept. 13, 2019) (reflecting Sevilla and Ellington stayed at the Wynn Hotel during a seven-week trial on behalf of LLV Holdco); *see generally* Ex. 3, Docket Excerpts, *LLV Holdco LLC v. James Coyne*, No. A-17-749387 (Jan. 8, 2023) (case docket does not reflect any trial dates during December 2019).

108.    On January 30, 2020, Ellington instructed DiOrio to submit reimbursement requests totaling $78,841.93 for Ellington's personal trips to London and Paris with his girlfriend Stephanie Archer as "Risk Mitigation" expenses under the ATE Policy.  Ex. 80, Email from A. Devins (Feb. 6, 2020) (attaching Ellington January Expense Report).  For instance, in a December 12, 2019

---

[22]  When Beecher asked questions about the Sapphire expenses, DiOrio simply stated that "this is how [HCM] do[es] business."  *See* Ex. 106, Beecher Dep. at 101:7-102:2.

email exchange planning for the trip, Archer wrote to Ellington, "I would love to do Christmas Eve Dinner at Claridge's." Ex. 72, Email from S. Ellington, at UBSPROD460936 (Dec. 12, 2019). Sure enough, on December 24, 2019, Ellington recorded a $2,629.26 charge to the ATE Policy for "Risk Mitigation" at Claridge's. Ex. 80, Email from A. Devins, at BC SEN0000727324 (attaching Ellington January 30 Expense Report). Ellington and Archer similarly enjoyed visits to the Park Chinois ($4,155.66) and Sexy Fish restaurants ($716.75), as well as a jaunt to the Four Seasons in Paris ($8,089.44). *Id.* Each of these were billed as "Risk Mitigation" expenses. *Id.* When faced with this damning documentary evidence, Ellington admitted that none of the $78,841.93 were in any way related to "Risk Mitigation" or even to Sentinel at all. Ex. 117, Ellington Dep. at 365:6-10.

109.   Also in January 2020, Ellington instructed DiOrio to submit reimbursement requests totaling more than $140,000 for a trip to Toronto that lasted less than a week. Ex. 80, Email from A. Devins, at BC SEN0000727325; Ex. 77, Email from M. DiOrio, at BC SEN0000713384-87 (Jan. 2, 2020). But Ellington could not keep his story straight as to why Sentinel should pay the bill. Although Ellington directed DiOrio to expense the $43,353.54 for his private jet travel to Toronto as purely for "work . . . on settlement for the ATE matter," Ex. 77, Email from M. DiOrio, at BC SEN0000713384-87, he also submitted the $97,492.82 he spent while in Toronto for a mix of "risk mitigation" and "business development" expenses. Ex. 80, Email from A. Devins, at BC SEN0000727324, -26 (attaching Ellington January Expense Report).[23]   Despite the conflicting justifications, Sentinel approved all of Ellington's reimbursement requests for the trip. *See* Ex. 117, Ellington Dep. at 366:19-368:11.

---

[23]   Like his other trips, while in Toronto, Ellington spent more than $20,000 at the Shangri-La Hotel and $18,292.60 at Goldie, a nightclub. *See* Ex. 80, Email from A. Devins, at BC SEN0000727325, (attaching Ellington January Expense Report).

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023

NYSCEF DOC. NO. 186

RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 48 of 376

110.    Next, on March 12, 2020, Ellington's secretary Sarah Goldsmith submitted a reimbursement request for another London trip costing $273,662.82 for around six days of purported "travel & business meetings related to Sentinel." *See* Ex. 81, Email from A. Damien, at BC SEN0000777547 (Mar. 16, 2020) (attaching Ellington March Expense Report).   Those expenses included three $6,000+ airfares for Kristen Leonardelli, Sara Leonardelli, and Julia Masiello—three people who appear to be unaffiliated with Sentinel. *Id.* at BC SEN0000777513-15.   And again, on one day in London, Ellington spent $75,914.86 at two restaurants and a night club. *Id.* at BC SEN0000777506.

111.    Sentinel reimbursed every single Fraudulent Ellington Reimbursement that Ellington submitted. *See* Ex. 106, Beecher Dep. at 65:19-24.   DiOrio confirmed that he would submit these reimbursements without question. *See* Ex. 111, DiOrio Dep. at 264:5-265:1 ("[W]hen he submitted something . . . and said it was for UBS, I trusted that was the case.").   After all, while DiOrio was a director at Sentinel, "Ellington was [his] direct boss" at HCM. *Id.* at 19:9-16.   And as long as Dondero and Ellington said the expenses were appropriate, Sentinel reimbursed them. *See* Ex. 106, Beecher Dep. at 104:22-105:2 (Q  . . . [The expense] is . . . appropriate because the UBOs said it was appropriate? . . . A  To my knowledge, yes.").

112.    Beecher also "had no choice other than to follow the direction of the directors" no matter the expense. *See id.* at 85:11-86:8; *see also* Ex. 80, Email from A. Devins, at BC SEN0000727319 (processing fraudulent Ellington expenses).   Beecher understood that even if it had pushed back, it "would have had no choice other" than to follow the instructions of DiOrio and other individuals controlled by Dondero and Ellington.   *See* Ex. 106, Beecher Dep. at 85:22-86:5.   In the end, Beecher understood Dondero and Ellington "called the shots," and it never pushed back on any Fraudulent Ellington Reimbursement requests even when Beecher internally

questioned their legitimacy. *Id.* at 24:13-25:13; Ex. 75, Email from T. Adamczak, at BC SEN0000663342 (confirming that Beecher pushed through an expense despite "question[ing] how much 'business development' is actually being done"); Ex. 79, Email from A. Devins, at BC SEN0000713829 (June 1, 2020) (expensing private jet as a risk mitigation expense but noting internally, "I think it's a little excessive, but who am I to say. . .").

2.    The 2020-2021 Fraudulent "Dividends" To Mainspring And Montage

113.    From 2020-2021, Dondero and Ellington extracted millions from Sentinel that should have been payable to UBS to satisfy the Phase I Judgment through "dividends" to Mainspring and Montage. At the time, Dondero owned 99.5% of Mainspring and Ellington owned 99% of Montage, *see* Ex. 68, Email from C. Price, at DISCEN0008408, -8410 (attaching Sentinel Structure Ownership Chart). They only revealed their near-complete ownership of Mainspring and Montage—and thus Sentinel—after CIMA regulators warned that the complexity of Sentinel's prior ownership structure "could impede effective regulatory judgment," Ex. 45, Email from A. Devins, at BC SEN0000133653 (Mar. 22, 2018).

114.    On April 24, 2020, Sentinel transferred a total of $6.4 million to Mainspring and Montage, $4,480,000.00 to Mainspring as payment of Dondero's 70% share of the dividend and $1,920,000.00 to Montage as Ellington's 30% share of the dividend. *See* Ex. 101, CIBC Bank Statement, at BC SEN0000598154 (Apr. 30, 2020); Ex. 84, Email from CIBC, at BC SEN0000004334 (Apr. 24, 2020) (attaching wire transfer to Mainspring); Ex. 85, Email from CIBC, at BC SEN0000004242-43 (Apr. 24, 2020) (attaching wire transfer to Montage).

115.    Despite DiOrio's commitment that Sentinel would "not be entertaining any dividend issuance while the ATE policy is active," Ex. 62, Email from J. Arbeit, at DISCSEN0006464-65 (Oct. 3, 2018) (Beecher advising that issuance of dividends to Dondero and Ellington "would decrease the cash position below the amount of the loss reserves"), this dividend

42

payment occurred *after* the court entered the Phase I Judgment.  Sentinel's own manager could not explain the basis for this dividend distribution.  *See* Ex. 106, Beecher Dep. at 210:3-211:10.

116.    As the ultimate beneficial owners of Sentinel, Dondero and Ellington determined when Sentinel issued the dividends.  *See* Ex. 111, DiOrio Dep. at 196:8-197:3.  Ellington simply "would say, can we issue a dividend, and [DiOrio] would send the analysis like if we—if you want to, we can, shareholders, so it is ultimately—he's the UBO." *Id.* at 195:12-25.  Indeed, Dondero and Ellington "could ask [for dividends] every day of the year." *Id.* at 196:8-21, 238:25-239:12; *see also id.* at 224:20-225:12 (Sentinel issued dividends at Ellington's request rather than according to a set payment schedule).

117.    On January 12, 2021, a year after the Phase I Judgment, Dondero and Ellington repeated the same play: they moved another $2.5 million to themselves by sending $1,750,000.00 to Mainspring and $750,000.00 to Montage.  *See* Ex. 102, CIBC Bank Statement, at BC SEN0000610180 (Jan. 29, 2021).  This violated not only Sentinel's commitment against dividend issuance while the ATE Policy was in effect, but also CIMA's policy requiring that it receive notice before a dividend was issued.  Ex. 95, CIMA Statement of Guidance, at 4.2.1 (Jan. 2014).  When Sentinel finally provided notice of the dividend issuance to CIMA three months later, it obscured the retroactive nature of the request by noticing a future "dividend *to be declared and paid*." Ex. 91, Email from G. Pereira, at BC SEN0000083961 (Apr. 27, 2021).

118.    In the end, Sentinel's board never rejected a single dividend request submitted on behalf of Dondero and Ellington.  *See* Ex. 111, DiOrio Dep. at 196:22-197:1.  Ultimately, Dondero and Ellington had "the ultimate responsibility of [Sentinel] meeting capital and solvency requirements." Ex. 106, Beecher Dep. at 21:2-22:9, 23:25-24:25.

119.    Ellington acknowledged receiving millions of dollars from these dividends.[24]  Ex. 117, Ellington Dep. at 126:12-21.  Meanwhile, when the Bankruptcy Court blocked certain bonus payments, Dondero used at least some of his dividend money to reward his loyalists with payments that matched the amounts HCM allegedly owed.  *See id.*

### B.    The 2020 Voidable Transfer To Pay Bonuses In Violation Of The Bankruptcy Court Order

#### 1.    Dondero And Ellington Make Bonus Payments Blocked By The Bankruptcy Court

120.    During its bankruptcy, HCM requested that the Bankruptcy Court allow it to pay all employee bonuses.  Ex. 4, Bk. Dkt. No. 177, at 1 (Dec. 4, 2019).  The Bankruptcy Court rejected bonus payments to four "statutory insiders": Ellington; Leventon; Frank Waterhouse, former HCM CFO; and Thomas Surgent, former HCM Chief of Compliance, *see* Ex. 7, Bk. Dkt. No. 380, at 2-3 (Jan. 22, 2020) (order approving payment only for "Covered employees"); *see also* Ex. 17, Bk. Dkt. No. 2423, at 118-19 (June 8, 2021) (transcript of Jan. 21, 2020 hearing excluding four "statutory insiders" from the "Covered employees").

121.    In defiance of this order, and with knowledge of the Judgment, Dondero and Ellington schemed to funnel payments to Ellington, Waterhouse, Leventon, and Surgent through Dondero- and Ellington-controlled entities using Judgment Debtor resources.  *See* Ex. 117, Ellington Dep. at 60:22-61:8 (describing nature of the plan); *id.* at 216:7-217:11 (conceding he developed the plan); *id.* at 126:12-21 (conceding he, Leventon, Surgent, and Waterhouse received millions from Mainspring); *id.* at 129:5-24 (conceding he was aware of the Judgment when he

---

[24]    Ellington disputed that he had ever received any "dividends" from Sentinel, but agreed that he had received "distributions," based on his understanding of the terms.  Ex. 117, Ellington Dep. at 125:3-17.  At the time of the payments to Dondero and Ellington, Sentinel called them "dividends" and this Petition adopts that term.

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document      Page 52 of 376

orchestrated the payments); Ex. 115, Dondero Dep. at 126:7-25, 127:9-18, 128:19-129:15 (confirming Ellington developed the plan).

122.    Ellington created an entity called Tall Pine Group, LLC ("Tall Pine") and its general partner, Sunshine Coast Development, LLC ("Sunshine Coast") to enter into consulting agreements with various Dondero-controlled entities, including NexBank,[25] NexPoint,[26] Highland Funds Asset Management,[27] Sentinel,[28] and the DAF,[29] and then subcontract with entities owned by or affiliated with Surgent, Waterhouse, and Leventon.  *See* Ex. 117, Ellington Dep. at 56:21-24, 59:7-60:7, 60:22-61:8, 217:12-24; *see also* Ex. 120, Leventon Dep. at 29:3-31:11 (conceding Leventon received some of the blocked bonus payments from NexPoint).[30]

---

[25]   ***NexBank Capital, Inc.*** ("NexBank") is majority owned by Dondero.  *See* Ex. 100, HCM Affiliate Organizational Chart.  Ellington discussed the consulting scheme with John Holt (President and Chief Executive Officer) and Matt Siekielski (Chief Operating Officer).  *See* Ex. 117, Ellington Dep. at 56:21-24, 217:12-217:23.

[26]   ***NexPoint Advisors, L.P.*** ("NexPoint"), with general partner NexPoint Advisors GP, LLC, is 100% owned by Dondero.  *See* Ex. 100, HCM Affiliate Organizational Chart.  Ellington discussed the consulting scheme with Brian Mitts (Chief Financial Officer of NexPoint Real Estate Advisors).  *See* Ex. 117, Ellington Dep. at 217:12-24; *id.* at 56:19-24.

[27]   ***Highland Funds Asset Management, L.P.***, with general partner Strand Advisors XVI, Inc., is 100% owned by James Dondero.  *See* Ex. 100, HCM Affiliate Organizational Chart (July 2019); *see also* Ex. 94 Highland Funds Asset Management Relationship, at UBSPROD1824596 (Feb. 18, 2011) (clarifying that Highland Capital Management Fund Advisors, L.P. was formerly known as Highland Funds Asset Management, L.P.).

[28]   Ellington used his influence at Sentinel to convince the directors to make a distribution to Mainspring to help fund the bonus payments.  *See* Ex. 117, Ellington Dep. at 215:2-9.

[29]   The ***Charitable DAF Fund, L.P.***, is indirectly controlled by Dondero, as described *supra* ¶¶ 12, 56, and was funded with his own assets, his family trusts, and HCM.  *See* Ex. 18, Bk. Dkt. No. 2660, at 2 (Aug. 4, 2021) (CLO HoldCo Contempt Order).

[30]   At times, the contributing entities, such as Mainspring and NexPoint, made these payments to or created these consulting agreements directly with entities owned by or affiliated with Surgent, Waterhouse, and Leventon.  *See* Ex. 19, Bk. Dkt. No. 2856 ¶ 32 (Sept. 21, 2021) (stipulation that Surgent received $750,906.13 from Tall Pine, $1,887,929.00 from Mainspring, and $135,437.00 from NexPoint).

123.    Under the consulting agreements, the contributing entities "were jointly and severally liable for the total amount on the various milestone payment dates." Ex. 117, Ellington Dep. at 214:7-18.  Contributions were based not on services rendered but on ability to pay and regulatory limitations.  *See id*.  When Tall Pine received a "consulting" payment, it would distribute the payment to a pass-through entity controlled by one of the employees.  *See id.* at 59:12-60:2.  As the ultimate economic owner of Tall Pine, *id.* at 60:10-16, Ellington kept the amounts that remained after it paid out the other claims.

124.    The objective was to create the appearance of legitimate business dealings to conceal Dondero and Ellington's true purpose of funneling cash to senior leaders to thwart the Bankruptcy Court's freeze on bonus payments.  But such "consulting agreements" were fraudulent because the "consultants" performed no other work on top of the services already being performed by those individuals as employees of HCM, and in certain instances some of the employees did no work for certain contributing entities.  For example, Ellington used distributions from Sentinel to Mainspring to pay Waterhouse's HCM bonus—but Waterhouse did not do any work for Sentinel. Ex. 117, Ellington Dep. at 226:1-13.

125.    Ellington ultimately directed the amount of the payments and directed members of his legal team, including Sevilla and Leventon, to help structure these consulting agreements and coordinate with the various parties.  *Id.* at 54:11-24, 215:21-23, 216:7-15; Ex. 115, Dondero Dep. at 133:13-15.  He also worked with Waterhouse, the Chief Financial Officer at HCM for more than decade, who instructed the accounting department to generate the amounts HCM owed in bonuses to himself, Ellington, Leventon, and Surgent so that Dondero and Ellington could pay those amounts through the consulting agreements. Ex. 117, Ellington Dep. at 213:8-215:1; Ex. 20, Bk. Dkt. No 2940 ¶ 1 (Oct. 19, 2021).

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
RECEIVED NYSCEF: 03/29/2023
Document       Page 54 of 376

126.    Under these fraudulent consulting agreements, Ellington, Surgent, Waterhouse, and Leventon received[31] roughly $8,638,536.07 in 2020, including about $5,874,203.21 from Mainspring.[32]

- Ellington received $3,074,408.  *See* Ex. 15, Bk. Claim No. 244 (Mar. 23, 2021) (Ellington's amended claim for $3,074,408.16 in bonus payments).

- Surgent received $2,774,272.  Ex. 19, Bk. Dkt. No. 2856 ¶ 32 (Motion for Entry of Order, reflecting Surgent's claim for $2,774,272.13 in bonus payments).

- Waterhouse received $2,102,260.  Ex. 8, Bk. Claim No. 182, at 2 (May 26, 2020) (Waterhouse's claim for $2,102,260.99 in bonus payments).

- Leventon received $687,594.  Ex. 14, Bk. Claim No. 216 Rider 3, at 3 (Mar. 3, 2021) (Leventon's amended claim for $687,594.79 in bonus payments).

2.    Ellington And Others Defraud The Bankruptcy Court By Filing Claims Seeking Bonuses Already Procured By Fraud

127.    Despite having received cash intended to replace the bonuses the Bankruptcy Court denied, Waterhouse, Leventon, Surgent, and Ellington filed proofs of claim that included the amounts already secured through these illicit payments.  Ex. 8, Bk. Claim No. 182 (Waterhouse's claim for $2,102,260.99); Ex. 9, Bk. Claim No. 183 (May 26, 2020) (Surgent's claim for $3,958,628.14); Ex. 14, Bk. Claim No. 216 (Leventon's amended claim for $687,594.79); Ex. 15, Bk. Claim No. 244 (Ellington's amended claim for $3,074,408.16).  After Waterhouse, Leventon,

---

[31]    Ellington testified that he, Surgent, Waterhouse, and Leventon were paid "the amounts that each of them believed were owed to them by HCM, but not paid."  Ex. 117, Ellington Dep. at 211:5-213:14.

[32]    Upon HCM's discovery of some of the illicit payments, Surgent disclosed the full scheme and revealed that Mainspring had contributed 68% of his total bonus payments.  Ex. 19, Bk. Dkt. No. 2856 ¶ 32.  Each entity contributed the same percentage to each employee.  Ex. 117, Ellington Dep. at 225:11-18.  Thus, about $5,874,203.21 of these illicit bonus payments came through Mainspring from Sentinel.

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document      Page 55 of 376

and Ellington left HCM, each of them joined Skyview Group ("Skyview"),[33] an entity Ellington owns. They assigned their claims to CPCM LLC ("CPCM"), a wholly owned subsidiary of Skyview. *See* Ex. 116, Ellington Dep. at 38:23-45:21; Ex. 120, Leventon Dep. at 56:24-57:2. CPCM ultimately withdrew both Leventon's and Ellington's claims because of objections.

128.    In January 2021, HCM entered into stipulations with Surgent and Waterhouse that ostensibly resolved their claims. The Bankruptcy Court approved the settlement in February 2021. But before any payment could occur, the Independent Board uncovered evidence of the above-described sizable payments from entities owned by Dondero and Ellington and filed a motion to reconsider the stipulation on account of the uncovered fraud. Ex. 19, Bk. Dkt. No. 2856 ¶¶ 26-35; Ex. 20, Bk. Dkt. No. 2940 ¶¶ 24-27. After HCM presented this evidence to the Bankruptcy Court, Surgent agreed to apply payments already received against his claim. Ex. 19, Bk. Dkt. No. 2856 ¶¶ 36-39. CPCM, however, fought the motion, and Waterhouse moved to quash a subpoena sent by HCM as imposing an undue burden on a third party. Ex. 21, Bk. Dkt. No. 3191 ¶ 5. Ultimately, CPCM and Waterhouse agreed to a settlement and withdrew the claim against HCM for bonus amounts. Ex. 22, Bk. Dkt. No. 3317 ¶ 18 (Mar. 24, 2022).

---

[33]    Skyview also hired DiOrio, Irving, and Vitiello. *See* Ex. 110, DiOrio Dep. at 12:11-12; Ex. 119, Irving Dep. at 10:2-24; Ex. 128, Vitiello Dep. 64:6-65:4. Skyview has around 30 to 40 employees, "almost all ex-Highland Capital Management employees." Ex. 120, Leventon Dep. at 55:23-56:18. Leventon testified that, at the time, it operated out of the same offices as NexBank and NexPoint, *id.*, entities that Dondero fully controls, *see supra* ¶ 122, nn.25-26.

App. 052

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 56 of 376

## CLAIMS FOR RELIEF

I.    **CLAIM I: TURNOVER PREDICATED ON FRAUDULENT AND VOIDABLE CONVEYANCES AGAINST CLO HOLDCO, ELLINGTON, MAINSPRING, AND MONTAGE (CPLR 5225(B))**

A.    **New York's Former Fraudulent Conveyance Law (Effective Through April 3, 2020)**

129.    The former version of New York Debtor & Creditor Law ("DCL") § 276[34] sets forth a clear standard for finding and voiding intentional fraudulent conveyances.  It provides, "[e]very conveyance made and every obligation incurred with actual intent . . . to hinder, delay, defraud either present or future creditors, is fraudulent as to both present and future creditors." DCL 276 (2019).

130.    Because "fraudulent intent, by its very nature, is rarely susceptible to direct proof," it "must be established by inference from the circumstances surrounding the allegedly fraudulent act."  *Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 530 (S.D.N.Y. 2011).

131.    To establish fraudulent intent under the earlier DCL 276, courts look to "badges of fraud," which are "circumstances so commonly associated with fraudulent transfers 'that their presence gives rise to an inference of intent.'"  *Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529 (1st Dep't 1999).

132.    These "badges of fraud" include:

(1) a close relationship between the parties to the transaction,

(2) a secret and hasty transfer not in the usual course of business,

---

[34]    The former version of DCL 276, which was in effect through April 3, 2020, applies to all fraudulent conveyances that occurred through that date.  James Gadsden & Alan Kolod, Supplemental Practice Commentaries, McKinney's Cons Laws of NY, Book 12, Debtor and Creditor Law Ch. 12, Art. 10 (explaining that the amended DCL "became effective on April 4, 2020, and applies to transfers and incurrences effected on or after that date").

(3) inadequacy of consideration,

(4) the transferor's knowledge of the creditor's claim and his or her inability to pay it,

(5) the use of dummies or fictitious parties, and

(6) retention of control of the property by the transferor after the conveyance.

*Matter of Shelly v. Doe*, 249 A.D.2d 756, 758 (3d Dep't 1998).

133.    In addition, "when a transfer has been made for no consideration, the courts recognize a rebuttable presumption of insolvency and fraudulent transfer." *Wimbledon Fin. Master Fund, Ltd. v. Wimbledon Fund, SPC*, 2016 WL 7440844, at *4-6 (Sup. Ct. N.Y. Cnty. Dec. 22, 2016) (applying CPLR 5225 turnover principles to DCL 276).

**B.**    **The 2010 Fraudulent Conveyance To CLO HoldCo**

134.    Paragraphs 1-133 are incorporated by reference as if fully stated here.

135.    On December 23, 2010, CDO Holding transferred its entire portfolio of assets to CLO HoldCo for only a little cash and a note with no principal or interest payments due for fifteen years. *See supra* ¶¶ 51, 59. Because CDO Holding was an alter ego of HFP, this transfer of assets was made by an entity of which UBS was a current or future creditor.

136.    The circumstances surrounding the transaction, including the strong likelihood that the court in the Underlying Action would assess liability against HFP and Leventon's specific awareness that such liability "would then expose CDO Holding's assets to seizure," explain the real reason for a trade that otherwise did not make sense. *See supra* ¶ 53. Indeed, the trade bore many of the quintessential "badges of fraud" that reveal it was a fraudulent conveyance.

137.    *A Close Relationship Between The Parties To The Transaction:* CDO Holding and CLO HoldCo were each controlled by Dondero, also the ultimate controlling shareholder of

each of the Judgment Debtors.    On an internal compliance report, Dondero signed as the "gatekeeper" for both entities.    *See supra* ¶ 57.

138.    ***A Secret And Hasty Transfer Not In The Usual Course Of Business:***    Despite Dondero justifying the transfer for "liquidity," CDO Holding transferred substantially *all* of its assets in exchange for consideration that was in large part a note that was not payable for *fifteen years*.    There was also no negotiation of any kind; the rushed terms were set based on just a single valuation, prompting concern from an HCM employee.    And CDO Holding recorded no sales to any other entity in 2010.    *See* Ex. 96, CDO Holding Balance Sheet, at UBSPROD4957189, tab "200.3 CDO BS."    This was not a transfer "in the usual course of business."    *See supra* ¶¶ 58-59.

139.    In addition, the 2010 Fraudulent Conveyance was "hasty": it was executed just days after CLO HoldCo, the receiving entity, was created in the Cayman Islands for the purpose of receiving these assets.    *See supra* ¶¶ 55, 57.

140.    ***Inadequacy Of Consideration:***    The inadequacy of the consideration underscores how brazen this transfer was.    Rather than receiving nearly $40 million in cash for the CLOs on the open market, CLO HoldCo sold the assets to another Dondero-controlled entity for consideration that was, in large part, a note not payable for fifteen years.    *See supra* ¶ 59.

141.    ***The Use Of Dummies Or Fictitious Parties:***    Although not a "fictitious" party, CLO HoldCo was set up specifically to carry out *this* fraudulent conveyance.    *See supra* ¶ 55.

142.    ***Retention Of The Property After The Conveyance:***    Dondero, ultimately controlled CDO Holding (through HFP) and CLO HoldCo.    After Dondero personally funded a portion of the consideration for the transfer, Dondero's close ally Grant Scott oversaw the parent structure that housed CDO Holding's former assets at CLO HoldCo.    *See supra* ¶¶ 56-57.

143.     The Court should void the 2010 Fraudulent Conveyance, enter judgment against CLO HoldCo for the value of the transferred assets, and award UBS's costs and attorney's fees incurred in connection with this special proceeding.  *See* DCL 276-A (2019).

### C.     The Ellington Reimbursements Were Fraudulent Conveyances

144.     Paragraphs 1-143 are incorporated by reference as if fully stated here.

145.     The hundreds of thousands of dollars that Ellington spent on lavish personal vacations and questionable "business development" expenses were in fact assets to which UBS was entitled based on its status as a creditor—indeed, the largest creditor—of the Judgment Debtors.

146.     The transactions that led to the "reimbursements" occurred in two steps: (i) move the assets from the Judgment Debtors to Sentinel, and then (ii) move the assets from Sentinel to Ellington.

147.     New York's fraudulent conveyance law protects judgment creditors against exactly these kinds of fraudulent conveyances, which used Judgment Debtor assets to pay for the lifestyle expenses of those who controlled those Judgment Debtors.  For these reasons, the badges of fraud are readily apparent from the Fraudulent Ellington Reimbursements.

148.     ***A Close Relationship Between The Parties To The Transaction:***  Ellington did not just have a close relationship to the other parties in the transaction, he created the transaction and controlled it from all sides.  As Dondero's trusted lieutenant, Ellington is the one who proposed moving the assets away from the Transferors and sending them to Sentinel's Cayman Islands accounts—accounts over which Ellington had a 30% stake as one of the ultimate beneficial owners.  *See supra* ¶¶ 78, 80.  Once Dondero and Ellington had the assets tucked away offshore, Ellington was one of the two people who "called the shots" about Sentinel and the use of the assets.  *See supra* ¶ 80.  Ellington even took his control a step further: he installed his subordinate DiOrio

App. 056

onto Sentinel's board and then submitted the Fraudulent Ellington Reimbursements to him directly to get approved. *See supra* ¶ 81.

149. ***A Secret And Hasty Transfer Not In The Usual Course Of Business:*** DiOrio unquestioningly submitted hundreds of thousands of dollars in Ellington's highly questionable charges without receiving from Ellington, or providing to Beecher, *any* legitimate business justification for the massive costs. *See supra* ¶¶ 103-112.

150. ***Inadequacy Of Consideration:*** There was no consideration provided for these expenses—Sentinel never got any benefit, a single new client, or a single new dollar, in exchange for the $833,843.05 it provided Ellington in travel, fine dining, and partying reimbursements. *See supra* ¶¶ 103-112.

151. ***The Transferor's Knowledge Of The Creditor's Claim And His Or Her Inability To Pay It:*** Ellington and DiOrio knew of UBS's Judgment and understood the 2017 Transferred Assets should go to UBS to pay that Judgment—their own legal advisors at Solomon Harris told them as much. *See supra* ¶ 72. They distributed the assets through the Fraudulent Ellington Reimbursements anyway.

152. The Court should void the Fraudulent Ellington Reimbursements and award UBS's costs and attorney's fees incurred in connection with this special proceeding. *See* DCL 276-A (2019).

**D.** **New York's Current Voidable Transactions Law (Effective April 4, 2020)**

153. On April 4, 2020, New York replaced its former fraudulent conveyance statute. *See* James Gadsden & Alan Kolod, Supplemental Practice Commentaries, McKinney's Cons Laws of NY, Book 12, Debtor and Creditor Law Ch. 12, Art. 10 (explaining that the amended DCL "became effective on April 4, 2020, and applies to transfers and incurrences effected on or after that date").

154.    The newly enacted statute addresses "voidable transactions" instead of "fraudulent conveyances."  Substantively, however, much of the voidable transactions law remains the same.  For instance, DCL 273(a)(1) provides that a transfer made by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the debtor made the transfer, if made "with actual intent to hinder, delay or defraud any creditor of the debtor."  DCL 273(a)(1) (2020).

155.    The statute defines "Debtor" to include any "person that is liable on a claim."  DCL 270(f).  The statute provides eleven factors to weigh when determining whether a transaction is voidable (like the badges of fraud that courts consider when reviewing claims under the prior version of DCL 276).  *See* DCL 273.  As relevant here, these factors include, among others, whether: "the transfer or obligation was to an insider;" "the transfer or obligation was disclosed or concealed;" "the debtor removed or concealed assets;" "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;" and "the transfer occurred shortly before or shortly after a substantial debt was incurred."  DCL 273(b).

**E.      The April 2020 And January 2021 "Dividends" To Mainspring And Montage Were Voidable Conveyances**

156.    Paragraphs 1-155 are incorporated by reference as if fully stated here.

157.    Like the Fraudulent Ellington Reimbursements, the multi-million-dollar "dividends" that Dondero and Ellington sent themselves through Sentinel were the final step in the process to move Judgment Debtor assets away from UBS and to themselves.  They are voidable under New York's 2020 Debtor and Creditor Law.

158.    ***The Transfers Were To Insiders:***  Dondero and Ellington "called the shots" at the Judgment Debtors as well as Sentinel, and the payments to Mainspring and Montage were payments to Dondero and Ellington as Sentinel's ultimate beneficial owners.  *See supra* ¶¶ 112,

114; DCL 273(b)(1); *see also* DCL 270(h)(2)(iii) (defining "Insider" to include "a person in control of the debtor"). Sentinel made the payments even after Sentinel's directors determined the insurer would not pay any dividends while the ATE Policy was active. *See supra* ¶¶ 115-116.

159. ***The Transfers Were For Insufficient Consideration:*** The 2017 Fraudulent Conveyances from the Judgment Debtors were for insufficient consideration. The 2020 and 2021 transfers from Sentinel to Dondero and Ellington in their capacity as "shareholders" were for no consideration. Sentinel made the transfers only because of a specific request from Ellington (rather than a set payment schedule). *See supra* ¶ 116.

160. ***The April 2020 Transfer Occurred Shortly After A Substantial Debt Was Incurred:*** The court entered the Phase I Judgment shortly before the April 2020 transfers. At the time, Dondero and Ellington understood—because Solomon Harris warned them—that the court may order Sentinel to return all of the 2017 Transferred Assets to UBS in a fraudulent conveyance action like this one. *See supra* ¶ 72; *see also* DCL 273(b)(10).

161. The Court should void the dividends to Mainspring and Montage and award UBS's costs and attorney's fees incurred in connection with this special proceeding. *See* DCL 276-A (2020).

## II.    CLAIM II: TURNOVER PREDICATED ON ALTER EGO LIABILITY AGAINST DONDERO, ELLINGTON, AND CDO HOLDING (CPLR 5225(B))

162. Paragraphs 1-161 are incorporated by reference as if fully stated here.

163. To establish an alter ego claim, a plaintiff must show (i) that the defendant exercised "complete domination of the corporation . . . in respect to the transaction attacked," and (ii) "that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Baby Phat Holding Co. v Kellwood Co.*, 123 A.D.3d 405, 407 (1st Dep't 2014).

164.    The first element—domination or control—can involve many factors, including the disregard of corporate formalities; inadequate capitalization; intermingling of funds; overlap in ownership, officers, directors, and personnel; common office space or telephone numbers; the degree of discretion demonstrated by the allegedly dominated corporation; whether dealings between the parties involved were at arm's length; whether the dominated corporation was treated as independent profit center; and the payment or guaranty of the corporation's debts by the dominating entity.  *See Fantazia Int'l Corp. v CPL Furs N.Y., Inc.*, 67 A.D.3d 511, 512 (1st Dep't 2009).  No one factor is dispositive.  *Id.*

165.    As to the second element—using control to commit a fraud or wrong against the plaintiff—a scheme to render an entity judgment-proof is one of the classic examples justifying alter ego liability.  *See, e.g., Chase Manhattan Bank (N.A.) v. 264 Water St. Assocs.*, 174 A.D.2d 504, 505 (1st Dep't 1991) (allegations that defendants "masterminded a scheme to denude the subsidiary of its assets in order to render it unable to honor its obligations resulting in a loss to plaintiff" held sufficient).

166.    If a defendant or respondent qualifies as an alter ego, it becomes liable for the full amount of the outstanding judgment against its alter ego.  *See* Ex. 24, Phase II Judgment, at 5 ("alter ego liability makes HFP liable for satisfying the judgment against SOHC").

### A.    Dondero And Ellington Were Each Alter Egos Of The Judgment Debtors

167.    Dondero and Ellington exercised complete control over the Judgment Debtors and used that control to defraud UBS.  As a matter of equity, this Court should pierce the corporate veils of HFP, CDO Fund, and SOHC and hold that Dondero and Ellington—as the individuals ultimately responsible for the Judgment Debtors' harm to UBS—are their alter egos and thus personally liable for the Judgment.

1.     Dondero And Ellington Dominated The Judgment Debtors

168.    Applying the factors that New York courts consider when determining whether individuals exercised "complete dominion" over their alter ego to the facts in this Petition confirms that Dondero and Ellington exercised complete dominion over the Judgment Debtors.

169.    ***Disregard Of Corporate Formalities:***  Dondero and Ellington disregarded the corporate formalities of HCM, SOHC, CDO Fund, and HFP to advance their own personal interests.  They facilitated transfers among these entities without even trying to provide the appearance of arm's-length bargaining.  *See supra* ¶¶ 52-57.  During the Underlying Action, a testifying expert detailed the substantial evidence of an alter ego relationship between Dondero and HCM, SOHC, CDO Fund, and HFP since the time of the transaction underpinning the Underlying Action, specifically noting the "lack of separateness" between the entities.  *See supra* ¶ 33.

170.    Through 2017, Dondero and Ellington continued to operate just as they always had done, without any regard for the corporate forms of the Judgment Debtors.  For instance, in the case of the 2017 Fraudulent Conveyances, one of the main benefits of the asset transfers was to help Dondero avoid a potential $50 million personal tax bill.  *See supra* ¶ 64.  At other times, Dondero brazenly authorized loans from the entities to himself.  *See supra* ¶ 33.  Dondero even altered formal control structures to increase his domination: In 2009, Dondero eliminated the requirement that HFP have independent directors and made himself the sole director of HFP—and thus the direct decision maker for HFP and its subsidiaries, including SOHC and CDO Holding. *See supra* ¶ 33.

171.    Dondero and Ellington also enriched themselves through improper use of HCM employees for any entity they pleased, repeatedly ignoring corporate formalities.  Despite their formal terms of employment, HCM employees served as Dondero and Ellington's workers,

completing any task that Dondero and Ellington asked them to complete, whether personal or business related, including work for the Judgment Debtors. *See supra* ¶¶ 35-40.

172. The Judgment Debtors were not separate bona fide entities with distinct corporate ownership and controls—they were part of an overall structure that Dondero and Ellington unilaterally directed. Dondero was the ultimate decision maker for the Judgment Debtors. *See supra* ¶¶ 27-30, 32-33. He did not consult any board before authorizing the sale and assignment of the assets of SOHC, CDO Fund, HFP, and related entities. *See supra* ¶¶ 28-29. In fact, many of these entities did not have separate boards of directors or any sort of formal corporate structure. *See supra* ¶¶ 28, 33, 35. And Ellington, as Dondero's right-hand man, also exercised unfettered authority over the Judgment Debtors, including signatory authority and directing litigation and settlement efforts. *See supra* ¶ 31, 36.

173. Dondero and Ellington repeatedly disregarded corporate formalities by shuffling assets among entities they controlled, including the Judgment Debtors, without formal documentation. Wholly owned subsidiaries of HFP would often dividend money up to HFP and HFP would then put the cash into different subsidiaries to satisfy one of that subsidiary's debts. *See supra* ¶¶ 52-54. At times, these transfers also were made without formal documentation. *See supra* ¶¶ 52-53. In 2008, with a single word, Dondero and Ellington directed HFP to withdraw about $15 million from CDO Holding before directing the funds to SOHC to cover SOHC's losses. *See supra* ¶ 53.

174. Whether orders came from Dondero himself, or his proxy Ellington, the result was the same: protect the collective interests of Dondero, Ellington, and their web of entities, rather than the distinct interests (and responsibilities) of any one entity. *See supra* ¶¶ 29, 31, 34, 36-40, 49-55, 61-81.

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document      Page 66 of 376

175.   ***Common Office Space:***   Dondero- and Ellington-controlled entities, including the Judgment Debtors, shared common office space and operated out of the same registered addresses, with no separation of the entities.   *See supra* ¶ 35.   The entities employed the same roster of employees, did not separately pay those employees, and did not retain separate internal counsel. *See supra* ¶¶ 34-37.

176.   ***Deliberate   Undercapitalization:***      Dondero   and   Ellington   deliberately undercapitalized the Judgment Debtors to prevent UBS from collecting on the Judgment.   *See supra* ¶¶ 49, 55-78, 93-97.   In the wake of the adverse summary judgment rulings, and with trial looming in the Underlying Action for claims on which their own lieutenant Leventon told them they would be found liable, Dondero and Ellington ensured that the Judgment Debtors would be judgment proof by effecting the 2017 Fraudulent Conveyances.   *See supra* ¶¶ 61-92.

177.   ***Intermingling Of Funds:***   Dondero and Ellington intermingled their funds and those of the entities they controlled.   In one instance, Dondero committed HCM's cash to cover HFP's shortfalls in the face of margin calls.   *See supra* ¶ 33.   Dondero also used his own money to partially fund the consideration CLO HoldCo sent to CDO Holding in the 2010 Fraudulent Conveyance.   The testifying expert in the Underlying Action noted many additional examples of "HFP's and its subsidiaries' financial dependence on HCM," which Dondero dominated, controlled, and even funded.   *See supra* ¶ 33.

178.   After Dondero and Ellington combined all the assets of the Judgment Debtors (and the other Transferors) in Sentinel in 2017, they later withdrew assets for themselves or entities they controlled whenever they saw fit, both as "dividends" and improper "reimbursements."   *See supra* ¶¶ 98-119.

App. 063

179.    ***Overlap In Ownership, Officers, And Directors:***  Dondero and Ellington owned and controlled the Judgment Debtors.  Dondero co-founded HCM and held the most influential roles up and down the HCM organizational chart.  Dondero held many titles under the HCM umbrella and particularly among the Judgment Debtors:  He was HCM's President and Chief Executive Officer from 1993 until his removal in 2020; chairman of the Board of Directors for HFP; sole Director for SOHC; and President and ultimate General Partner for CDO Fund until his resignation in 2021.  *See supra* ¶¶ 6, 27 n.3, 28-29.  Ellington, always at Dondero's side, implemented Dondero's directives while maintaining discretion to make his own decisions about the entities.  *See supra* ¶¶ 28, 31, 36, 39-40, 77-78.  The two maintained these roles and their control over the Judgment Debtors as officers of Strand, HCM's general partner.  *See supra* ¶¶ 29-31.  Dondero was Strand's sole stockholder.  *See supra* ¶ 29.

180.    ***The Degree Of Discretion Demonstrated By The Allegedly Dominated Corporation:***  Dondero and Ellington were the decision makers for all the entities.  *See supra* ¶¶ 28-34, 36, 52-54, 65, 67, 71, 77.  Dondero, and Ellington as his designee, unilaterally made decisions for HCM and, through his control of HCM, controlled the Judgment Debtors as well.  *See supra* ¶¶ 28-34, 36, 52-54, 65, 67, 71, 77.  These decisions were not for the benefit of the individual entities but were all in service of protecting Dondero and Ellington themselves.

181.    ***Whether Dealings Between The Parties Involved Were At Arm's Length:***  The key dealings at issue in this Turnover Petition, the 2017 Fraudulent Conveyances, were not at arm's length.  Rather, the Judgment Debtors collectively transferred all of their assets, all with different valuations, for a shared (and sham) ATE Policy that did not treat them differently based on their differing contributions to the Policy.  *See supra* ¶¶ 74-76.  The shared contribution—including by three non-insureds, and the shared coverage (including CDO Holding, a non-party to

the Underlying Action)—evidences that these entities were merely instruments of the broader plan

to move assets out of UBS's reach. Once they shuffled the 2017 Transferred Assets out of the

Judgment Debtors, Dondero and Ellington appropriated the assets for their own ends, including

through personal withdrawals as dividends and reimbursements for romantic getaways. *See supra*

¶¶ 98-119.

> 2.  Dondero And Ellington Used Their Domination Over The Judgment Debtors To Defraud And Harm UBS

182.    Dondero's and Ellington's control over the Judgment Debtors enabled them to

orchestrate the fraudulent acts that have directly led to UBS's harm: its difficulty collecting on the

Judgment.

183.    ***Use Of Corporate Funds For Personal Purposes:*** Dondero and Ellington

routinely directed Judgment Debtor funds and assets to Sentinel, and ultimately to Dondero and

Ellington themselves. *See supra* ¶¶ 61-81, 93-128. Dondero and Ellington diverted these funds

out of Judgment Debtor hands and into Sentinel's coffers to render the Judgment Debtors judgment

proof and keep the assets in Dondero and Ellington's possession, using the assets for their own

ends and to fund other entities they controlled. *See supra* ¶¶ 61-81, 93-128.

184.    Ellington, in particular, used Judgment Debtor assets to fund his lavish lifestyle,

including tens of thousands of dollars in luxurious trips to London and Paris for him and his

companions, personal meals with his girlfriend, and to reimburse his outings to bars, night clubs,

and a strip club. *See supra* ¶¶ 103-110. None of these reimbursements were for any plausible

business purpose—much less related to the Policy insuring against the Underlying Action—and

instead were strictly for Ellington's personal expenses. *See supra* ¶¶ 103-112.

185.    Dondero and Ellington also used Judgment Debtors funds in issuing Mainspring

and Montage millions of dollars in "dividends," which they in turn used for their own personal

purposes. *See supra* ¶¶ 113-128 (Ellington confirming he received millions in dividends; Dondero approving the use of his dividends to make fraudulent bonus payments). Like the Ellington reimbursements and original 2017 Fraudulent Conveyances, Dondero and Ellington masterminded the dividends, showing the complete control Dondero and Ellington had over the Judgment Debtors and the later transferees of the Judgment Debtors' assets.

186.    Like fraud and breaches of contract the Court identified in the Underlying Action, the 2017 Fraudulent Conveyances that Dondero and Ellington orchestrated from the Judgment Debtors to Sentinel were quintessential abuses of the corporate form at UBS's expense, satisfying the second required element for alter ego liability. The Court should thus pierce the corporate veil and hold Dondero and Ellington liable for the judgment against CDO Fund, SOHC, and HFP.

## B.    **Dondero And Ellington Were The Alter Egos Of Mainspring And Montage, Respectively**

187.    As a matter of equity, Dondero should be liable for the debts of Mainspring and Ellington should be liable for the debts of Montage. At the time of the fraudulent conveyances from Sentinel to Mainspring and Montage, Dondero had complete control of Mainspring as its ultimate beneficial owner, and Ellington had complete control of Montage as its ultimate beneficial owner. *See supra* ¶¶ 13-14. In fact, Dondero controls 99.5% of Mainspring's assets and Ellington controls 99% of Montage's assets. *See supra* ¶ 113.

### 1.    Dondero And Ellington Dominated Mainspring And Montage, Respectively

188.    Once again applying the same alter ego factors, the evidence confirms that Dondero and Ellington exercised complete dominion over Mainspring and Montage, respectively.

189.    ***Intermingling Of Funds:*** Sentinel's "dividend" payments were at the sole discretion of Dondero and Ellington in their personal capacities. *See supra* ¶¶ 113-119. But to pay Dondero's and Ellington's respective dividends, Sentinel transferred money not to them

App. 066

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 70 of 376

directly but to Mainspring and Montage.  *See supra* ¶¶ 113-119.  Even as Beecher facilitated these payments to Mainspring and Montage, it understood that it was in fact paying dividends to Dondero and Ellington.  *See supra* ¶¶ 115-118.

190.    ***Overlap In Ownership:***  At the time of the fraudulent conveyances from Sentinel to Mainspring and Montage, Dondero had complete control and domination of Mainspring as its ultimate beneficial owner, and Ellington had complete control and domination of Montage as its ultimate beneficial owner.  *See supra* ¶¶ 13-14, 116-119.  Dondero and Ellington were also the ultimate controllers of the Transferors, who sent the assets to Sentinel, and of Sentinel itself.

191.    ***The Degree Of Discretion Demonstrated By The Allegedly Dominated Corporation:***  Neither Mainspring nor Montage demonstrated any discretion.  Rather, Dondero and Ellington took the dividend payments that Sentinel deposited and used them for personal purposes unrelated to Mainspring and Montage.  They moved the money to other entities they controlled to pay court-blocked bonuses to former *HCM* employees who were never affiliated with Mainspring and even to personally enrich Ellington.  *See supra* ¶¶ 120-128.  There is no indication that Mainspring or Montage had any operations or purpose other than to receive money for Dondero and Ellington.

2.    <u>Dondero And Ellington Used Their Control Of Mainspring And Montage To Defraud UBS</u>

192.    Dondero and Ellington used their complete dominion over Mainspring and Montage to take for themselves funds that should have been available to satisfy the Judgment.

193.    By ordering the siphoning of millions of dollars in dividends from Sentinel to Mainspring and Montage, Dondero and Ellington ensured that Sentinel would have even fewer Judgment Debtor assets to return to satisfy the Judgment.  *See supra* ¶¶ 113-119.  Dondero and Ellington forced through these dividend payments over Sentinel's express commitment that it

App. 067

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document      Page 71 of 376

would "not be entertaining any dividend issuance while the ATE policy is active." *See supra* ¶¶ 113-119. Dondero and Ellington's clear disregard of this commitment illustrates their abuse of their complete control over the entities.

194.    Dondero and Ellington abused their control over these dummy entities by secreting assets from the Judgment Debtors and to other entities that Dondero and Ellington owned and controlled all to frustrate any claim UBS had to those funds. *See supra* ¶¶ 51-81, 93-128. The Court should pierce the corporate veil and hold Dondero and Ellington liable for the judgment against CDO Fund, SOHC, and HFP.

### C.    CDO Holding Is An Alter Ego Of HFP

195.    When it transferred substantially all of its assets to CLO HoldCo in 2010, CDO Holding was an alter ego of Judgment Debtor HFP.

196.    CDO Holding's relationship to HFP is in all material respects the same as SOHC's adjudged alter ego relationship to HFP. In its alter ego default judgment in the Underlying Action, the court held that UBS's allegations sufficiently linked SOHC and HFP as alter egos because SOHC "was HFP's instrumentality, had no independence, could not exercise any business discretion, did not have its own offices, officers or employees, and that HFP completely dominated the day-to-day operations of SOHC as well as SOHC's *sister affiliates*." Ex. 24, Phase II Judgment, at 6 (emphasis added). The evidence shows that HFP both dominated CDO Holding and abused its control over CDO Holding to defraud UBS. The Court should reverse-pierce the corporate veil and hold CDO Holding to account for its role as a controlled asset repository for HFP.

### 1.    HFP Dominated Its "Asset Repository" CDO Holding

197.    The factors that characterized the HFP and SOHC alter ego relationship also apply to HFP and CDO Holding, one of SOHC's "sister affiliates."

App. 068

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document      Page 72 of 376

198.    ***Disregard Of Corporate Formalities:***  CDO Holding, under the complete control and domination of HFP, was a key repository for HFP assets.  It had no independence and regularly saw its assets taken by HFP for the benefit of HFP or HFP's other subsidiaries.  *See supra* ¶¶ 52-55.

199.    ***Intermingling Of Funds:***  In 2017, CDO Holding intermingled its funds and assets with several other Dondero-controlled entities, including HFP, to pay the premium on the ATE Policy.  *See supra* ¶¶ 61-78.  The entities that combined their funds to pay the ATE Policy did not allocate coverage amounts according to contributions; the real goal of the ATE Policy was to move money from the Judgment Debtors and their potential alter egos to Sentinel, another entity that Dondero and Ellington owned and controlled.  *See supra* ¶¶ 61-76.  Moreover, CDO Holding was not a named defendant in the Underlying Action but still was an Insured because it was an alter ego of defendant HFP, and Dondero and Ellington realized that a court would determine as much. *See supra* ¶¶ 64, 75.

200.    ***Overlap In Ownership, Officers, And Directors:***  Dondero was ultimately in charge of HFP and CDO Holding and was the sole director of each.  *See supra* ¶¶ 28-30, 32-33, 62.

201.    ***The Degree Of Discretion Demonstrated By The Allegedly Dominated Corporation:***  There is no evidence that CDO Holding ever demonstrated any discretion.  Just the opposite, it saw its assets stripped for the benefit of HFP and its other subsidiaries, such as SOHC. *See supra* ¶¶ 51-53.  These transfers were not arm's-length transactions; CDO Holding was simply an asset repository that existed for the benefit of HFP.  CDO Holding also lost all of its equity assets in a single 2010 transfer conducted at the direction of HFP's controller Dondero.  *See supra* ¶¶ 49-51, 55-59.

202.   ***The Payment Or Guaranty Of The Corporation's Debts By The Dominating Entity:***  At other times, HFP moved money into CDO Holding to enable CDO Holding to make distributions to other creditor entities or make payments for other of HFP's subsidiaries.  *See supra* ¶ 54.

### 2.   HFP Used Its Domination Over CDO Holding To Defraud UBS

203.   HFP, alongside its controller Dondero, used its control of CDO Holding to defraud UBS.  In 2010, Dondero ordered a transaction to fraudulently move substantially all of CDO Holding's assets to CLO HoldCo.  The portfolio was worth nearly $40 million.  *See supra* ¶¶ 51, 55-60.  In return, CDO Holding received scant cash and a note that was not payable until 2025.  *See supra* ¶ 59.

204.   The 2010 asset transfer to Dondero-controlled CLO HoldCo, which left CDO Holding and HFP without assets they could have used to satisfy the Judgment, satisfies the second element of an alter ego claim.  It was a fraud against UBS that sought to prevent UBS from collecting on any eventual judgment in the underlying action.

205.   The Court should thus reverse-pierce the corporate veil to find that CDO Holding was the alter ego of HFP at the time of the 2010 Fraudulent Conveyance and that CDO Holding was and is liable for the HFP's portion of the Judgment.

## II.   CLAIM III: VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") BY DONDERO AND ELLINGTON (18 U.S.C. § 1962(C))

206.   For the reasons set forth above, Dondero and Ellington each are alter egos of the Judgment Debtors and should be personally liable for the full outstanding amount on the Judgment. If the Court finds for UBS on Claim II, it need not reach Claims III and IV.

207.   In the alternative, Dondero and Ellington are liable for treble damages under 18 U.S.C. § 1962(c) for the reasons below.

208. A civil RICO claim is established when there is: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *NRO Bos. LLC v. Yellowstone Cap. LLC*, 72 Misc. 3d 267, 271 (Sup. Ct. Rockland Cnty. 2021) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)). A violation of § 1962(c) requires a corresponding criminal violation of the substantive RICO statute through "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly . . . participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc*., 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1962(c)). A plaintiff can establish civil damages by showing "that he was 'injured in his business or property by reason of a violation of section 1962.'" *Id.* (emphasis omitted) (quoting 18 U.S.C. § 1964(c)).

209. Dondero and Ellington are each individuals able to hold a legal or beneficial interest in property and are thus "person[s]" under 18 U.S.C. §§ 1961(3) and 1962(c).

210. Dondero and Ellington each violated 18 U.S.C. § 1962(c) by leveraging a separate and distinct enterprise that engaged in a pattern of racketeering activity that harmed UBS in violation of 18 U.S.C. § 1964(c).

211. Dondero and Ellington, acting individually and together in concert, have orchestrated and participated in a continually running scheme dating to at least 2010 and lasting to the present. They have, among other acts, fraudulently transferred assets to individuals and companies in different states and countries in anticipation and frustration of an adverse judgment in the Underlying Action. Dondero and Ellington, through the Enterprise, conducted the predicate

acts of racketeering through interstate wires or other instrumentalities of interstate commerce, including by sending funds to the Cayman Islands and other international destinations.

A. **The RICO Enterprise**

212. Dondero and Ellington conducted these misrepresentations and frauds through an association-in-fact enterprise that comprised these nine persons and nineteen entities: Dondero and Ellington, together with Leventon, Sevilla, DiOrio, Waterhouse, Irving, Vitiello, and Surgent (the "Associates"); and CDO Fund, SOHC, HFP, HFC, CDO Opportunity Fund, CDO Holding, CLO HoldCo, Sentinel, Sebastian Clarke, Mainspring, Montage, Tall Pine, Sunshine Coast, NexBank, NexPoint, Highland Funds Asset Management, the DAF, Skyview, and CPCM (collectively, "the Enterprise"). The common purpose of the Enterprise was to generate money for its members. *See supra* ¶¶ 49-97.

213. The entities that constituted the Enterprise were owned, directed, or otherwise controlled by Dondero and Ellington, as described in ¶¶ 13, 14, 32, 33, 94, 122, and 147, *supra*, and served these functions in the Enterprise:

- *The Transferors.* The role of CDO Fund, SOHC, HFP, HFC, CDO Opportunity Fund, and CDO Holding, as Judgment Debtors or subsidiaries of HCM and/or Judgment Debtors against whom UBS could foreseeably collect on the Judgment, was to be rendered insolvent and therefore judgment-proof.

- *The Transferees.* The role of CLO HoldCo, Sentinel, Sebastian Clarke, Mainspring, Montage, Tall Pine, and Sunshine Coast (together, "the Transferees") was to receive fraudulently transferred assets from the Transferors or other Transferees and shuffle assets farther away from UBS and to Dondero and Ellington.

- *The Facilitators Of Bonus Payments.* The role of NexBank, NexPoint, Highland Funds Asset Management, the DAF, Mainspring, Sunshine Coast, Tall Pine, Skyview, and CPCM was to make—and cover-up—fraudulent payments to associates Ellington, Leventon, Waterhouse, and Surgent. This scheme diverted about $5.9 million in Judgment Debtor assets.

214.    The Associates were employees at HCM who reported to Dondero or Ellington and who engaged in predicate acts or received the spoils of the predicate acts at Dondero and Ellington's direction.

215.    *Leventon* worked at HCM for more than a decade, ultimately as Assistant General Counsel, and reported directed to Ellington.  *See supra* ¶ 36.  He also did personal work for Dondero while employed at HCM, including working on his divorce and litigating a lemon law claim. *See supra* ¶ 37.  Leventon worked with Ellington closely in bringing to life Ellington's idea for the ATE Policy to drain substantially all assets from the Transferors.  *See supra* ¶¶ 64-65.  He also helped draft the fraudulent consulting agreements and coordinated with Sentinel and other funding entities in the Enterprise—for which he was paid his "bonus" of roughly $687,594.00. *See supra* ¶¶ 126-127.  Despite receiving these payments, and to cover his tracks, Leventon lied to the Bankruptcy Court and filed an amended claim. *See supra* ¶¶ 127.  After getting fired from HCM, Leventon went to work at Ellington-owned Skyview.  *See id.*

216.    *Sevilla* worked at HCM for nine years, ultimately as Assistant General Counsel. *See supra* ¶ 36.  He worked directly with Ellington and Dondero and even did personal work for them, including conducting diligence on personal investments Ellington was considering and helping Dondero with his divorce, paying bills, and administrative matters. *See supra* ¶ 37.  Sevilla oversaw the daily management of Sentinel and helped develop the idea that the ATE Policy premium would be satisfied by transferring the entire investment portfolios of the Transferors.  *See supra* ¶ 65.  Sevilla also facilitated the fraudulent conveyance between Sentinel and Sebastian Clarke.  *See supra* ¶ 94.  He also helped structure the fraudulent consulting agreements to pay associate bonuses and coordinated with Sentinel and other funding entities in the Enterprise.  *See*

*supra* ¶¶ 125-127. After getting fired from HCM, Ellington hired Sevilla to work at Skyview. *See supra* ¶ 127.

217. ***DiOrio*** has known Ellington since 2009. *See supra* ¶ 40. When Ellington approached him in a bar in 2014, DiOrio blindly agreed to serve as a director of an Ellington-controlled company in Sentinel's ownership structure. *See supra* ¶ 40. As an HCM employee, DiOrio did personal work for Ellington, including paying rent on a warehouse he leased and helping to manage his personal trust. *See supra* ¶ 39. After Ellington asked DiOrio to serve as a director of Sentinel, DiOrio pushed through Ellington's requests for reimbursement of hundreds of thousands of dollars in personal expenses without question. *See supra* ¶¶ 111-112. From his position as a director of Sentinel, DiOrio also ultimately helped funnel $8,900,000.00 in "dividends" to Dondero and Ellington. *See supra* ¶¶ 113-119. DiOrio also facilitated the fraudulent conveyance between Sentinel and Sebastian Clarke and falsely characterized the assets transferred as "worthless." *See supra* ¶¶ 93-97. After getting fired from HCM, Ellington hired DiOrio to work at Skyview. *See supra* ¶ 40.

218. ***Waterhouse*** served as the Chief Financial Officer of HCM for more than a decade. *See supra* ¶ 125. At Ellington's instruction, Waterhouse had employees in his department determine the amounts HCM owed in bonuses to Waterhouse, Ellington, Leventon, and Surgent so that they could be paid through the fraudulent consulting agreements. *See supra* ¶¶ 120-125. For his participation in this scheme, Waterhouse received the roughly $2,000,000.00 bonus blocked by the Bankruptcy Court. *See supra* ¶ 126. Despite receiving these payments, and to cover his tracks, Waterhouse lied to the Bankruptcy Court and filed an amended claim for his bonus payment. *See supra* ¶ 127. After getting fired from HCM, Ellington hired Waterhouse to work at Skyview. *See supra* ¶ 127.

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
NYSCEF DOC. NO. 186
INDEX NO. 650744/2023
RECEIVED NYSCEF: 03/29/2023
Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 78 of 376

219.    **Surgent** has been a long-time employee at HCM, serving as Chief Compliance Officer for much of the relevant period.  *See supra* ¶ 120.  According to a stipulation he signed with the Independent Board, Surgent entered into consulting agreements with Mainspring and Tall Pine and, in March and September 2020, received payments through a pass-through entity (Prive Solutions LLC) totaling $2,774,272.13.  *See supra* ¶ 126.  This included $750,906.13 from Tall Pine, $1,887,929.00 from Mainspring, and $135,437.00 from NexPoint.  *See supra* ¶ 122 n.30.  Surgent failed to disclose these payments and instead submitted a claim to the Bankruptcy Court seeking, in part, money he had already received.  *See supra* ¶¶ 126-127.

220.    **Irving** reported to Ellington for the more than eight years she worked at HCM.  She testified that she "would work on anything that Mr. Ellington needed [her] to work on," including diligence for Ellington's personal investments.  *See supra* ¶ 36.  Irving was instrumental in ensuring that Sentinel received all the assets in satisfaction of the premium payment under the APA.  *See supra* ¶ 77.  After getting fired from HCM, Irving joined Skyview, where she reports to Sevilla and ultimately Ellington.  *See supra* ¶ 127 n.33.

221.    **Vitiello** worked in the legal department in HCM for seven years, at times reporting to Leventon.  She conducted personal work for Dondero, including helping to manage a building Dondero leased to a salon.  *See supra* ¶ 37.  Vitiello worked with Leventon and Ellington to design the ATE Policy to drain substantially all assets from the Judgment Debtors.  *See supra* ¶ 64.  She is now at Skyview.  *See supra* ¶ 127 n.33.

**B.    The Pattern Of Racketeering Activity**

222.    From at least 2010 to the present, Dondero and Ellington were associated with the Enterprise and conducted or participated, directly or indirectly, in the management and operation of the Enterprise's affairs through a pattern of racketeering activity, including acts of

App. 075

wire fraud in violation of 18 U.S.C. § 1343 and acts of money laundering in violation of 18 U.S.C. § 1956.

223.    These acts were a pattern of fraudulent transactions intended to facilitate the theft of Judgment Debtor assets using the Associates, misrepresentations, and shell companies to hide their involvement in the schemes.

224.    The predicate acts funneled money ever farther away from UBS.  They centered on these events: (1) the 2010 Fraudulent Conveyance; (2) the 2017 Fraudulent Conveyances; (3) the 2018 fraudulent amendments to the ATE Policy; (4) the 2019 fraudulent conveyance to Sebastian Clarke; (5) the 2019-2020 Fraudulent Ellington Reimbursements; (6) the 2020-2021 fraudulent dividends to Mainspring and Montage; (7) the 2020 fraudulent bonus payments; and (8) misrepresentations to UBS about the solvency of the Judgment Debtors.

225.    ***Horizontal Relatedness.***    Dondero and Ellington conducted the related acts constituting the pattern of racketeering activity for the same purpose: making themselves rich and hiding the assets to which UBS had superior right.  *See supra* ¶¶ 49-72, 82-87, 90-92, 93-97, 103-112, 113-117, 122-126.  The methods of commission are also similar: Dondero and Ellington repeatedly flouted corporate formalities to use the Associates and entities under their control to hide the assets owed to UBS.  For example, Dondero and Ellington failed to observe corporate formalities in moving assets from the Transferors and among the Transferees, *see supra* ¶¶ 55-63, 94, in using individuals involved in the Enterprise to do their personal work and the work of other entities in the Enterprise, *see supra* ¶¶ 36-40, in misrepresenting to regulators the fraudulent nature of the ATE Policy, *see supra* ¶¶ 88-89, in using Sentinel as a piggy bank to reimburse personal expenses and pay out dividends, *see supra* ¶¶ 103-119, and in fraudulently issuing bonus payments blocked by the Bankruptcy Court, *see supra* ¶¶ 120-127.

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document      Page 80 of 376

226.    ***Vertical Relatedness.***   The acts constituting the pattern of racketeering activity related to the Enterprise as a whole: Dondero and Ellington were able to commit the offenses only because of their powerful positions in the Enterprise.

227.    As chair and sole member of the Board of Directors for HFP, sole Director for SOHC, and President and ultimate General Partner for CDO Fund, Dondero had specific control over the Judgment Debtors.  *See supra* ¶¶ 28-33.  As the sole stockholder and sole director of Strand, Dondero had ultimate control over every HCM entity, affiliate, and employee.  *See supra* ¶ 29.  Dondero often leveraged this control to direct individuals associated with the Enterprise to perform work for other entities in the Enterprise.  *See supra* ¶¶ 36-38.  Dondero also used his position to authorize fraudulent conveyances, sometimes from all sides: he approved, for example, both the sale and purchase of assets from CDO Holding to CLO HoldCo in 2010.  *See supra* ¶¶ 51-57.  And he signed the ATE Policy on behalf of all Transferors at the same time he was the 70% ultimate beneficial owner of Sentinel and a member of the ITA Advisory Board overseeing Sentinel.  *See supra* ¶¶ 71, 77-78, 80.  He also exercised his authority over Sentinel and the other funding entities to authorize their issuance of fraudulent "consulting" payments to associates who had rendered services to HCM.  *See supra* ¶¶ 122-126.

228.    Ellington also leveraged his position as Dondero's right-hand man in the Enterprise to commit this pattern of racketeering.  Ellington's position as General Counsel at HCM, an officer of Strand, and a 30% ultimate beneficial owner of Sentinel uniquely positioned him to implement his idea to drain all Judgment Debtor assets pursuant to the ATE Policy and APA.  *See supra* ¶¶ 31, 64, 80.  He also used these positions to acquire fraudulent reimbursements and unwarranted dividends.  *See supra* ¶¶ 103-119.  Finally, Ellington leveraged his position in the Enterprise to

App. 077

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document      Page 81 of 376

smuggle bonus payments to himself and to Waterhouse, Leventon, and Surgent in 2020 under sham consulting agreements using Judgment Debtor funds. *See supra* ¶¶ 122-127.

229.    ***Continuity.***   The pattern of racketeering activity Dondero and Ellington engaged in and conducted has been continuous from at least 2010 to the present.  Dondero and Ellington have completed at least ***seven*** separate schemes involving predicate acts of wire fraud and money laundering over the course of more than a decade.  *See* Ex. A (table detailing selected acts of wire fraud); Ex. B (table detailing selected acts of money laundering).  Such misconduct satisfies the requirements of closed-ended continuity.

230.    In the alternative, the pattern of racketeering activity committed by Dondero and Ellington is open-ended in that it has no predetermined end date and is continuous, as Dondero and Ellington have shown that their scheme is the regular way of operating and conducting themselves and their ongoing business.  *See supra* ¶¶ 49-72, 82-87, 90-92, 93-97, 103-112, 113-117, 122-126.  Dondero and Ellington used their connections while controlling HCM to move Judgment Debtor assets not only within HCM, but to other entities outside HCM that were also in their control.  *See supra* ¶¶ 113-119.  As their control over HCM faded during the bankruptcy, Dondero and Ellington simply created or recruited non-HCM entities to join the Enterprise, including NexBank, NexPoint, Highland Funds Asset Management, the DAF, Tall Pine, Sunshine Coast, Skyview, and CPCM.  *See supra* ¶ 122.

231.    Dondero and Ellington retain positions of power in the Enterprise.  *See supra* ¶¶ 122, 127 n.33.  Ellington employs most of the Associates at Skyview, which at first shared an address with, and still preforms work for, Dondero-affiliated entities NexPoint and NexBank.  *See supra* ¶ 127 n.33.  Thus, there also exists the threat of continuing long-term racketeering activity.

## C.    **The Predicate Acts**

### 1.    Wire Fraud In Violation Of 18 U.S.C. § 1343

232.    Dondero and Ellington used the Enterprise to transmit communications in interstate commerce by means of wire in violation of 18 U.S.C. § 1343 in furtherance of their scheme to defraud UBS.

233.    UBS incorporates by reference Exhibit A, which sets forth particular uses of wire communications in the U.S. in furtherance of the scheme to defraud, describing which RICO Defendant or individual associated with the Enterprise caused the communication to be wired, when the communication was made, and how it furthered the scheme.  The wire communications described in Exhibit A were made in furtherance of the scheme to defraud UBS.

234.    UBS also incorporates by reference Exhibit B, which sets forth money laundering transactions in furtherance of the scheme to defraud.  Each of these wire transfers was made in furtherance of the scheme to defraud UBS and constitutes another instance of wire fraud.

### a.    The 2010 Fraudulent Conveyance

235.    On or about December 23, 2010, Dondero, through the Enterprise, violated 18 U.S.C. § 1343 by using interstate wires to fraudulently transfer to CLO HoldCo nearly all the assets from CDO Holding, a subsidiary and alter ego of HFP.  *See supra* ¶¶ 49-60.

236.    This fraudulent conveyance aimed to render CDO Holding judgment-proof and to keep UBS from receiving the money the Judgment Debtors owed in the Underlying Action. Exhibit A lists specific instances of wire fraud undertaken in furtherance of this scheme.

### b.    The 2017 Fraudulent Conveyances

237.    On or about April 2017, through the Enterprise (including through associates Leventon, Sevilla, DiOrio, Irving, and Vitiello), Dondero and Ellington violated 18 U.S.C. § 1343

App. 079

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document     Page 83 of 376

by using interstate wires to orchestrate the 2017 Fraudulent Conveyances to render the Transferors judgment proof.

238.    After summary judgment rulings in favor of UBS in the Underlying Action, Dondero and Ellington anticipated an enormous damages verdict.  *See supra* ¶ 61.  Despite the explicit warning by outside counsel as to the "legal validity" of sending assets "beyond the reach of the plaintiffs in the [Underlying Action] against the [F]unds," *see supra* ¶ 72, Dondero and Ellington drained the 2017 Transferred Assets, valued at over $105,647,679.00, in satisfaction of the ATE Policy's $25,000,000.00 "premium."  *See supra* ¶ 72.

239.    The 2017 Fraudulent Conveyances included the use of interstate wires to deceive UBS, Cayman regulators, and HCM employees and other persons facilitating the transfer to believe that the ATE Policy was in good faith instead of a fraudulent sham.  *See supra* ¶¶ 68-71. The objective of the transfer was to render the Transferors judgment-proof and to defraud UBS of the more than one billion dollars it was owed.  *See supra* ¶ 64.  Exhibit A lists specific instances of wire fraud sent in furtherance of this scheme.

c.    The 2018 Fraudulent Adjustments To The ATE Policy

240.    In or around June 2018, through the Enterprise (including associates DiOrio, Sevilla, and Irving), Dondero and Ellington violated 18 U.S.C. § 1343 by using interstate wires to make fraudulent retroactive "adjustments" to ATE Policy terms and valuations of the 2017 Transferred Assets.  *See supra* ¶¶ 82-87.

241.    The objective of the adjustments was to keep the Transferors judgment-proof and to defraud UBS of the millions of dollars the Judgment Debtors owed.  *See supra* ¶¶ 90-92.  Exhibit A lists specific instances of wire fraud undertaken in furtherance of this scheme.

App. 080

d.    <u>The 2019 Fraudulent Conveyance To Sebastian Clarke</u>

242.    In or around December 31, 2019, through the Enterprise (including through associates DiOrio and Sevilla), Dondero and Ellington violated 18 U.S.C. § 1343 by using the interstate wires to transfer certain of the 2017 Transferred Assets to Sebastian Clarke for $3 to hide assets from UBS. *See supra* ¶¶ 93-97. Exhibit A lists specific instances of wire fraud sent in furtherance of this scheme.

e.    <u>The 2019-2020 Fraudulent Ellington Reimbursements</u>

243.    In or around November 2019 until March 2020, through the Enterprise (including through associate DiOrio), Ellington violated 18 U.S.C. § 1343 by using the interstate wires to defraud UBS by reimbursing his personal entertainment expenses and business expenses unrelated to the UBS litigation or the ATE Policy.

244.    The objective of these reimbursements was to enrich Ellington and to hide assets from UBS that could be used as payment for the Judgment. *See supra* ¶¶ 102-112. Exhibit A lists specific instances of wire fraud sent in furtherance of this scheme.

f.    <u>The 2020-2021 Fraudulent "Dividends"</u>

245.    In or around April 2020 and January 2021, through the Enterprise (including through associate DiOrio), Dondero and Ellington violated 18 U.S.C. § 1343 by using interstate wires to defraud UBS by causing Sentinel to issue $8,900,000.00 in dividends to entities owned and controlled by Dondero and Ellington. *See supra* ¶¶ 114, 117.

246.    Sentinel fraudulently issued these distributions upon the request of Ellington, even with the knowledge that Sentinel would need to return all of the 2017 Transferred Assets to the Transferors, because the 2017 Fraudulent Conveyances were fraudulent. *See supra* ¶¶ 113-117. And Sentinel issued the distributions after its directors had set a moratorium on dividend issuance while the ATE Policy was active. *See supra* ¶¶ 115, 117.

77

247.     The objective of these dividends was to enrich Dondero and Ellington, to hide assets that could be used to pay the Judgment, and to defraud UBS of the millions of dollars owed. *See supra* ¶¶ 113-119.  Exhibit A lists specific instances of wire fraud sent in furtherance of this scheme.

g.     The 2020 Fraudulent Bonus Payments

248.     In or around 2021, through the Enterprise (including through associates Leventon, Sevilla, Surgent, and Waterhouse), Dondero and Ellington also violated 18 U.S.C. § 1343 by using interstate wires to defraud UBS by diverting Judgment Debtor assets to Ellington, Waterhouse, Leventon, and Surgent.

249.     In 2020, the Bankruptcy Court blocked HCM from making bonus payments to Waterhouse, Ellington, Leventon, and Surgent.  *See supra* ¶ 120.  Ellington came up with a plan (approved by Dondero) to make these bonus payments to himself and the others by transferring assets from entities in Ellington and Dondero's control.  *See supra* ¶ 120.

250.     In furtherance of this scheme, Ellington used interstate wires to convince various Dondero-affiliated entities and their affiliates, including NexBank, NexPoint, Highland Funds Asset Management, Mainspring, and the DAF to contribute to the illicit payments.  *See supra* ¶ 122.

251.     In furtherance of this scheme, Ellington used interstate wires to create Tall Pine and its general partner, Sunshine Coast, as "special purpose entities" to enter into consulting agreements with NexBank, NexPoint, Highland Funds Asset Management, Mainspring, and the DAF, and then to subcontract with entities owned by or affiliated with Surgent, Waterhouse, and Leventon.  *See supra* ¶ 122.

252.     In furtherance of this scheme, Dondero and Ellington caused "consulting" payments to be issued via interstate wires (either directly or through Tall Pine) to pass-through

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023
Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 86 of 376

entities controlled by Ellington, Surgent, Waterhouse, and Leventon. *See supra* ¶¶ 122-123. Contributions were based not on services rendered but on ability to pay and regulatory limitations. *See supra* ¶¶ 124-125.

253.    As a result of this scheme, Dondero and Ellington diverted approximately $5,874,203.21 of Judgment Debtor assets from Sentinel, through Mainspring, to Ellington, Surgent, Waterhouse, and Leventon. *See supra* ¶ 126.

254.    Despite having received these payments, Ellington, Surgent, Waterhouse, and Leventon filed proofs of claim seeking those same amounts in bonuses. *See supra* ¶ 127. In furtherance of the scheme, Ellington, Waterhouse, and Leventon assigned these claims to CPCM, a wholly owned subsidiary of Skyview, which pursued them on their behalf.

255.    The objective of this scheme was to enrich Ellington and the Associates, to hide assets from UBS for the Judgment, and to defraud UBS of the millions of dollars owed. *See supra* ¶ 121. Exhibit A lists specific instances of wire fraud in furtherance of this scheme.

> h.    The Misrepresentations About The Solvency Of CDO Fund And HFP

256.    As part of the scheme to defraud UBS, Ellington, through his control of the Enterprise, made false representations to UBS as to the solvency of the Judgment Debtors and their ability to pay the Judgment. This scheme included the use of interstate wires to deceive UBS and to deprive it of money owed.

257.    In furtherance of this scheme, Ellington repeatedly misrepresented to UBS that some of the Judgment Debtors had been "ghost funds" since 2009 without disclosing that Dondero and Ellington had made them insolvent through the 2010 Fraudulent Conveyance and 2017 Fraudulent Conveyances. *See supra* ¶ 46, 91. Exhibit A lists specific instances of wire fraud sent in furtherance of this scheme.

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 186
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 87 of 376

2.      Money Laundering In Violation Of 18 U.S.C. § 1956

258.    Dondero and Ellington have also committed acts of money laundering to carry on and promote illegal activity in violation of 18 U.S.C. § 1956. They knowingly caused the transportation, transmission, and transfer of funds to or from the United States to themselves and other Enterprise associates to promote unlawful activity, including but not limited to the violations of 18 U.S.C. § 1343 alleged above.

259.    Dondero and Ellington engaged in several financial transactions over the course of operating and managing their scheme to defraud UBS, including (i) financial transactions constituting predicate acts of wire fraud and (ii) financial transactions to funnel the proceeds of their scheme between and among themselves and other individuals associated with the Enterprise.

260.    The assets sent from CLO HoldCo to CDO Holding became proceeds of wire fraud at the time of the 2010 Fraudulent Conveyance, because they stemmed from a fraudulent transfer. *See supra* ¶¶ 49-60. Later, Dondero and Ellington engaged in financial transactions involving additional proceeds of wire fraud, including: (1) the 2017 Fraudulent Conveyances; (2) the 2019 fraudulent conveyance to Sebastian Clarke; (3) the 2019-2020 Fraudulent Ellington Reimbursements; (4) the 2020-2021 fraudulent dividends to Mainspring and Montage; and (5) the 2020 fraudulent bonus payments.[35]

---

[35] Even if every individual transfer did not comprise Judgment Debtor assets, all financial transactions made under the fraudulent bonus scheme in 2020 also involved the proceeds of wire fraud as defined in 18 U.S.C. § 1956(a)(1)(B) because each transaction was part of a set of parallel or dependent transactions in this scheme, at least one of which (the payments made from Mainspring) involved the proceeds of wire fraud. In addition, all were part of a single plan or arrangement concocted by Ellington to pay himself, Leventon, Waterhouse, and Surgent bonuses blocked by the Bankruptcy Court. *See supra* ¶¶ 120-128.

App. 084

261. Dondero and Ellington directed these transactions with knowledge that the funds at issue were actually owed to UBS (either pursuant to the contractual breach, court order, or the Judgment). The funds were therefore the proceeds of wire fraud in violation of 18 U.S.C. § 1343:

- The 2017 Fraudulent Conveyances occurred after it became clear to Dondero and Ellington that the Judgment Debtors would lose in the Underlying Action. *See supra* ¶ 72.

- The 2019 fraudulent conveyance from Sentinel to Sebastian Clarke; the 2019 and 2020 Fraudulent Ellington Reimbursements; the 2020 and 2021 fraudulent dividends from Sentinel to Mainspring and Montage; and the voidable transfers from Mainspring (at times, through Tall Pine) to entities owned by Ellington, Leventon, Waterhouse, and Surgent all took place after the court in the Underlying Action found CDO Fund and SOHC liable to UBS. *See supra* ¶¶ 93-95, 103-112, 120-122, 113-117.

262. Dondero and Ellington conducted these financial transactions with the intent to promote and continue their unlawful activities as alleged in this Petition, and designing the financial transactions in whole or part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of their unlawful activities, and to prevent recovery of the proceeds by UBS. *See supra* ¶¶ 49, 61-63, 93, 98, 103, 113, 120-121. Had Dondero and Ellington intended to pay the Judgment, then they would have revealed the existence of the ATE Policy when the court issued the Phase I Decision and Order, rather than point to their empty pockets. *See supra* ¶¶ 46-47.

263. Exhibit B details known money laundering transactions in furtherance of the scheme to defraud. The twelve money laundering violations listed in the table total more than $130 million.

**D.    Summary Of Allegations To Each RICO Defendant**

264. Dondero and Ellington have both participated in and conducted the affairs of the Enterprise by engaging in multiple predicate acts, as alleged above and summarized immediately

FILED: NEW YORK COUNTY CLERK 03/29/2023 11:58 AM
NYSCEF DOC. NO. 186

INDEX NO. 650744/2023
RECEIVED NYSCEF: 03/29/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 89 of 376

below.   The conduct of each constitutes a pattern of racketeering activity under 18 U.S.C. § 1961(5).

265.   **Dondero** has committed many predicate acts, including wire fraud and money laundering.  Dondero, directly or indirectly, used the interstate wires in violation of 18 U.S.C. § 1343 to:

- fraudulently transfer assets rightfully owed to UBS to CLO HoldCo in 2010;

- fraudulently transfer assets rightfully owed to UBS to Sentinel in 2017;

- fraudulently issue amendments to cover up the sham ATE Policy in 2018;

- fraudulently transfer assets rightfully owed to UBS to Sebastian Clarke in 2019;

- fraudulently transfer assets rightfully owed to UBS from Mainspring to Tall Pine and ultimately to Ellington and entities owned by Leventon, Waterhouse, and Surgent as bonus payments from HCM in 2020; and to

- fraudulently transfer assets rightfully owed to UBS to himself and Ellington through the issuance of dividends from Sentinel to Mainspring and Montage (their alter egos) in 2020-2021.

266.   Dondero also engaged in financial transactions involving the known proceeds of wire fraud in violation of 18 U.S.C. § 1956, including:

- the 2017 Fraudulent Conveyances;

- the 2019 fraudulent conveyances to Sebastian Clarke;

- the voidable transfers of about $5.9 million from Mainspring (at times, through Tall Pine) to entities owned by Ellington, Leventon, Waterhouse, and Surgent in 2020; and

- the fraudulent issuance of roughly $9 million in "dividends" to himself and Ellington from Sentinel in 2020-2021.

267.   **Ellington** has committed many predicate acts, including wire fraud and money laundering.  Ellington, directly or indirectly, used the interstate wires in violation of 18 U.S.C. § 1343 to:

App. 086

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 90 of 376

- fraudulently transfer assets rightfully owed to UBS to Sentinel in 2017;

- fraudulently issue amendments to cover up the sham ATE Policy in 2018;

- fraudulently transfer assets rightfully owed to UBS to Sebastian Clarke in 2019;

- fraudulently transfer assets rightfully owed to UBS to himself through personal expense reimbursements in 2019-2020;

- fraudulently transfer assets rightfully owed to UBS from Mainspring to Tall Pine and ultimately to himself and entities owned Leventon, Waterhouse, and Surgent as bonus payments from HCM in 2020;

- fraudulently transfer assets rightfully owed to UBS to himself and Dondero through the issuance of dividends from Sentinel to Mainspring and Montage (their alter egos) in 2020-2021; and to

- fraudulently make repeated misrepresentations to UBS as to the solvency of the Judgment Debtors and their ability to pay on the Judgment.

268.    Ellington also engaged in financial transactions involving the known proceeds of wire fraud in violation of 18 U.S.C. § 1956, including:

- the 2017 Fraudulent Conveyances;

- the 2019 fraudulent conveyances to Sebastian Clarke;

- the fraudulent reimbursements of $833,843.05 for his personal expenses in 2019-2020;

- the voidable transfers of about $5.9 million from Mainspring (at times, through Tall Pine) to entities owned by Ellington, Leventon, Waterhouse, and Surgent in 2020; and

- the fraudulent issuance of roughly $9 million in "dividends" to himself and Dondero from Sentinel in 2020-2021.

**E.    The Harm To UBS**

269.    UBS has suffered substantial injury to its business and property because of, and through, Dondero and Ellington's commission of the enumerated racketeering acts in violation of 18 U.S.C. §§ 1962(c) and 1964(c).

App. 087

270.     Dondero and Ellington have frustrated UBS's ability to collect virtually any of the more than a $1 billion judgment entered against CDO Fund, SOHC, and HFP. *See supra* ¶ 98. The looting of the Judgment Debtors and subsequent shuffling of assets continued for more than a decade. *See supra* ¶¶ 49, 62, 104, 108, 113, 122-123. As a direct, proximate, and consequential damage of the result of the predicate acts described UBS has suffered: (1) lost-debt damages for the amount that UBS would have been able to collect from the Judgment Debtors but for Dondero and Ellington's wrongful conduct as set forth above; and (2) separate and independent damages in the nature of collection expense damages for the attorney's fees and other expenses incurred by UBS in connection with its enforcement of its Judgment. *See supra* ¶¶ 48, 98 n.21.

271.     Under 18 U.S.C. § 1964(c), UBS has a right to recover threefold the damages it sustained, and the cost of this suit, including reasonable attorney's fees.

## III.   CLAIM IV: CONSPIRACY TO VIOLATE RICO BY ELLINGTON (18 U.S.C. § 1962(D))

272.     UBS repeats and realleges each of the allegations in the preceding paragraphs as if fully set forth here.

273.     UBS pleads Claim IV in addition to Ellington's direct liability for violating 18 U.S.C. § 1962(c).

274.     Ellington, along with Dondero, willfully conspired, and agreed to conduct and participate, directly or indirectly, in the conduct of the Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c), thereby violating 18 U.S.C. § 1962(d).

275.     Dondero knew of, agreed to, and acted to further the overall objective of the conspiracy by agreeing to and conspiring to use wire communications at the times, places, and circumstances discussed above to transfer assets and valuable rights, titles, and interests from the Judgment Debtors. *See supra* ¶¶ 49-72, 82-87, 90-92, 93-97, 103-112, 113-117, 122-126.

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document        Page 92 of 376

276.    Ellington knew of, agreed to, and acted to further the overall objective of the conspiracy by agreeing to and conspiring to use wire communications at the times, places, and circumstances discussed above to transfer assets and valuable rights, titles, and interests from the Judgment Debtors.  *See supra* ¶¶ 31 n.4, 49-72, 82-87, 90-92, 93-97, 102-112, 113-117, 122-126.

277.    Ellington committed the predicate acts of wire fraud and money laundering and thereby injured UBS in its business and property.

278.    As a result of Ellington's assistance in the conspiracy, Dondero could misappropriate assets that would have otherwise been available to satisfy the Judgment.

279.    As a result of Ellington's involvement in the conspiracy, UBS expended legal costs in attempts to collect its Judgment, which remains unsatisfied.  In addition to its legal costs, UBS has sustained lost-debt damages for the amount that UBS would have been able to collect from the Judgment Debtors but for Ellington's involvement in the conspiracy, including the harm from the fraudulent conveyances and dissipation of assets.  Dondero and Ellington's violations have thus damaged UBS.

280.    Under 18 U.S.C. § 1964(c), UBS has a right to recover threefold the damages it sustained, and the cost of this suit, including reasonable attorney's fees.

## **REQUESTS FOR RELIEF**

281.    Based on the facts and claims set forth above, UBS seeks the following relief:

i.      Under CPLR 5225(b) and the former DCL 270 *et seq.*, to void the fraudulent conveyances of assets from CDO Holding to CLO HoldCo and from the Judgment Debtors to Ellington through Sentinel, and to enter money judgments against CLO Holdco and Ellington for the full value of the transfers;

ii.     Under CPLR 5225(b) and the current DCL 270 *et seq.*, to void all voidable conveyances from the Judgment Debtors to Mainspring and Montage through Sentinel in 2020 and 2021 and to enter money judgments against Mainspring and Montage for all amounts received in said transfers;

iii. Under CPLR 5225(b), an order that: (a) CDO Holding at all relevant times was the alter ego of HFP, and is thus jointly and severally liable for the Judgment as against HFP and SOHC; (b) Dondero and Ellington at all relevant times were the alter egos of CDO Fund, SOHC, and HFP and are therefore jointly and severally liable for the Judgment; (c) Dondero at all relevant times was the alter ego of Mainspring and is liable for any turnover order and judgment against Mainspring; and (d) Ellington at all relevant times was the alter ego of Montage and is liable for any turnover order and judgment against Mainspring;

iv. Under CPLR 6201 *et seq.*, (a) an order of attachment against the Judgment Debtors' assets and/or assets to which UBS has a superior right up to the sum of $631,658,040.11, including statutory interest for the Judgment against SOHC and HFP, and $639,138,543.43, including statutory interest for the Judgment against CDO Fund; and (b) a temporary restraining order against the Respondents as to the transfer of the Judgment Debtors' assets and assets to which UBS has a superior right, including, but not limited to, (i) the assets transferred as part of the 2010 fraudulent conveyance to CLO HoldCo, and (ii) the assets transferred to Ellington, Mainspring, and Montage through Sentinel;

v. Under CPLR 6220 and 408, an order requiring Respondents to make disclosure as to any other assets that may be subject to attachment, and permitting UBS to obtain additional, related disclosure as needed;

vi. In the alternative to a finding of alter-ego liability under (iii) above and under 18 U.S.C. § 1964(c), an award of threefold lost-debt damages against Dondero and Ellington for the amount that UBS would have been able to collect from the Judgment Debtors but for Dondero and Ellington's wrongful conduct;

vii. Under the formerly enacted DCL 276-A, which was in effect at the time of the 2010 Fraudulent Conveyance and Ellington Fraudulent Reimbursement, an award of UBS's costs and attorney's fees incurred in connection with the enforcement of the Judgment as to those transfers, to include costs and fees incurred in UBS's investigation of the facts animating the claims set forth above;

viii. Under the newly enacted DCL 276-A, which was in effect at the time of the April 2020 and January 2021 Dividends, an award of UBS's costs and attorney's fees incurred in connection with the enforcement of the Judgment as to those transfers, to include costs and fees incurred in UBS's investigation of the facts animating the claims set forth above;

ix. Under 18 U.S.C. § 1964(c), an award of UBS's costs and attorney's fees incurred in connection with UBS's civil RICO claims; and

x. Such other relief as the Court deems just and proper.

Dated:  February 6, 2023
New York, NY

Respectfully submitted,

/s/ Andrew Clubok

Andrew Clubok
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020-1300
Phone:    (212) 906-1200
Email:     andrew.clubok@lw.com

Jason R. Burt*
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
Phone:    (202) 637-2200
Email:     jason.burt@lw.com

Kathryn K. George*
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611-3695
Phone:    (312) 876-7700
Email:     kathryn.george@lw.com

*Counsel for Petitioners UBS Securities LLC
and UBS AG London Branch*

---

\*    Motion for admission *pro hac vice* forthcoming.

# EXHIBIT 2

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document      Page 96 of 376

# EXHIBIT 40

**From:** Isaac Leventon <ILeventon@HighlandCapital.com>
**To:** JP Sevilla <JSevilla@HighlandCapital.com>
**Subject:** UBS Settlement Structure (9).pptx
**Date:** Wed, 19 Apr 2017 14:06:01 -0500
**Importance:** Normal
**Attachments:** UBS_Settlement_Structure_(9).pptx

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.





EXHIBIT 86
WIT: Leventon
DATE: 10-10-22
S. Klinger, RMR-CRR

HCMUBS005251

App. 094

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 46

INDEX NO. 650744/2023

RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document      Page 98 of 376

# Settlement Analysis

 VS. 

HCMUBS005252

# *If Highland does not settle...*

**AND UBS WINS:**

1. Highland loses all assets in HFP/CDO Fund (HFP assets include $32m DAF Note Payable) (*see Slide 9 and Appendix 1*); *AND*

2. Highland faces years of fraudulent transfer claims throughout Highland structure (*see Slide 9*); *AND*

3. HCMLP faces clawback of $9m and liability to backstop HFP/CDO Fund for up to $1.2b ($686m principal + $511m interest back to 2009) (*see Slide 9*); *AND*

4. Giant PR hit (*see Slide 7*).

**OR HIGHLAND WINS:**

1. HFP is solvent = reverses 2008's $257m tax write-off by HCMLP (resulting in $50m+ in taxes due from HCMLP's partners) (*see Slides 3*); *AND*

2. UBS appeals, so issue is left unresolved for years (*see Slide 4*); *AND*

3. Citi has $34m claim against CDO Fund assets (*see Slides 5, 9*); *AND*

4. If CDO Fund can't pay Citi $34m, then HCMLP has to pay the balance (*see Slides 5, 9*).

*BOTTOM LINE: There is no upside to going to trial in either matter.*

2

HCMUBS005253

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 46

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document      Page 100 of 376

# *Taxes: If Highland Wins... it Loses*

- If Lackey wins at trial = HFP has positive value
- Result: Reverses 2008 HFP tax-write off from 2008
- Resulting Tax Liability:

  Dondero: $50m+            *Pat Daugherty: $167k
  *Crusader: $20m+          Davis Deadman: $110k
  *Goldman: $15m+           Also: Plumer, Paul Kauffman,
  Scott Kavanaugh: $1.4m    Borud, Okada, Joe Dougherty,
  *Todd Travers: $1m        John Morgan
  John Honis: $212k

- Everyone who suffers tax consequences has a litigation claim for mismanagement against HCMLP and Dondero (as decision maker for HFP)

*Red, most likely to assert claims

3

HCMUBS005254

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 101 of 376

# *If Highland does not settle: UBS Appeals*

- UBS appeals in NY State Court
- Average time to outcome is 2 years
- $5m additional legal expenses
- Can be remanded back to trial court to start all over; OR
- Can be reversed and HCM loses

4

HCMUBS005255

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 102 of 376

# *If Highland does not settle: Citi*

- Trial in late 2017 or 2018
- Additional PR issues
- Delay repairing trading relationship
- Incur $3-4m in Lackey fees through trial
- Have to pay for Citi's legal fees under the terms of the contract
- $24m principal liability + $10m in Citi's legal fees
- CDO Fund pays, but if it can't, then HCMLP has to pay balance

5

HCMUBS005256

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 16

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document      Page 103 of 376

# *If Highland Settles...*

1. Sentinel controls HFP/CDO Fund assets (currently $94m) (*see Slide 10*); *AND*

2. Sentinel and HCMLP can use HFP/CDO Fund assets to generate cash to pay UBS settlement, Citi, and outstanding legal fees (*see Slides 12-16*); *AND*

3. HCMLP's $50m+ tax liability is avoided (*see Slides 3, 9*); *AND*

4. Residual assets (up to $50m) stay at Sentinel (*see Slide 16*); *AND*

5. Potential to repair UBS distribution/relationship (*see Slide 7*); *AND*

6. PR issues resolved (*see Slide 7*); *AND*

7. Crusader Redeemer Committee remains the stand-alone target (*see Slide 7*).

*BOTTOM LINE: Even if UBS and Citi are awarded ZERO damages, settlement still nets $100m (Avoids $50m tax liability + keeps $50m in net HFP/CDO Fund assets)*

6

HCMUBS005257

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 46
INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023
Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document         Page 104 of 376

# *If Highland Settles: PR*

- Amicably and **privately** resolve:
  - Credit Strat
  - UBS
  - Citi
- No more defensive bank-counterparty lawsuits
  - Credit Suisse "offense" is the only remaining story
- Final "Crisis" issue is Crusader (Committee is alone on an island)

7

HCMUBS005258

# UBS Settlement: Structure Summary

Step 1: HFP/CDO Fund buy $100m ATE policy from Sentinel
    *ATE premium = all assets in HFP/CDO Fund*

Step 2: Negotiate settlement amount with UBS

Step 3: Sentinel generates cash from HFP/CDO Fund Assets

Step 4: Sentinel pays settlement amount to UBS

Step 5: Sentinel pays Lackey legal bills

Step 6: HCMLP (or designee) or Sentinel pay Citi

Conclusion: Sentinel keeps net assets (could be up to $50 million)

*Here is why we should settle...*

8

HCMUBS005259

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 106 of 376

## UBS Settlement: Assets and Liabilities



HCMUBS005260

9

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 46

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 107 of 376

## UBS Settlement: Step 1 – ATE Policy



HCMUBS005261

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document      Page 108 of 376

## UBS Settlement: Step 2 – Negotiate Settlement Amount



HCMUBS005262

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 109 of 376

## UBS Settlement: Step 3 – Generate Cash



HCMUBS005263

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document      Page 110 of 376

## UBS Settlement: Step 4 – Pay UBS



Actor: Sentinel

CDO Fund ($0)

HCMLP — Sentinel($) — Payment of Settlement Cash under ATE policy → **UBS**

HFP ($0)

CDO Holdco ($0)    SOHC ($0)

13

HCMUBS005264

## UBS Settlement: Step 5 – Pay Lackey



HCMUBS005265

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 112 of 376

## UBS Settlement: Step 6 – Pay Citi



HCMUBS005266

App. 109

## UBS Settlement: Step 7 – Remainder





HCMUBS005267

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document      Page 114 of 376

# Appendix 1

17

HCMUBS005268

# EXHIBIT 3

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM

NYSCEF DOC. NO. 77

INDEX NO. 650744/2023

RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document      Page 116 of 376

# EXHIBIT 71

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77

INDEX NO. 650744/2023

RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document      Page 117 of 376

**From:** Helen Kim <HKim@HighlandCapital.com>
**To:** Isaac Leventon <ILeventon@HighlandCapital.com>
**Subject:** RE: Highland Entity List
**Date:** Mon, 23 Sep 2019 09:17:33 -0500
**Importance:** Normal
**Attachments:** 0-Legal_Entities_List_(Q2_2019)_9.13.19.xls
**Inline-Images:** image001.jpg

---

Attached

---

**From:** Isaac Leventon
**Sent:** Monday, September 23, 2019 9:13 AM
**To:** Helen Kim
**Subject:** Highland Entity List

Will you please send me the most recent version?

**ISAAC LEVENTON |** ASSISTANT GENERAL COUNSEL



300 Crescent Court | Suite 700 | Dallas, Texas 75201

O: 972.628.4100 | D: 972.419.4482 | F: 972.628.4147

ileventon@highlandcapital.com | www.highlandcapital.com

---

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.

---

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.

UBSPROD2389233

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

No Images Produced

UBSPROD2389234

| Name | EIN | Formation Date | Jurisdiction | Foreign Qualification | Category | Owners | Ownership Type | Ownership % | Voting Shares | Director/Manager/ Trustee | Officers | Bank Signatory | Fund Contact | Accounting Contact Books & Records | Dissolve (Y/N) | Termination Date | Entity Description (one sentence) | Other Notes | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15 and 17 HoldCo LLC | | 9/16/2013 | Texas | N/A | NB | NexBank Capital, Inc. | Member | 100 | | | | | Dierk Hohman | Courtney Burton | Y | 3/26/2015 | Underlying assets sold on 1/30/2015 | | |
| 2006 Prosper Partners GP, LLC | | 9/15/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero James Dondero-Pres Ted Dameris Ted Dameris-VP Scott Ellington Scott Ellington -Secy/Treas | | Ted Dameris, Chris Wise, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 10/30/2014 | This entity is the general partner of a partnership that owns a real estate asset for investment purposes. | FORECLOSED | Dissolve upon distribution of funds |
| 2006 Prosper Partners, L.P. | | 9/15/2006 | Texas | N/A | RE | 2006 Prosper Partners GP, LLC | Class A Limited Partner | 0.09 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Clifford Stoops. | Ted Dameris | Drew Wilson | Terminated | 10/5/2012 | This entity owns a real estate asset for investment purposes. | FORECLOSED | Dissolve upon distribution of funds |
| 2006 Prosper Partners, L.P. | | 9/15/2006 | Texas | N/A | RE | 2006 Prosper Partners GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Clifford Stoops. | Ted Dameris | Drew Wilson | Terminated | 10/5/2012 | This entity owns a real estate asset for investment purposes. | FORECLOSED | Dissolve upon distribution of funds |
| 2006 Prosper Partners, L.P. | | 9/15/2006 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 99.9 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Clifford Stoops. | Ted Dameris | Drew Wilson | Terminated | 10/5/2012 | This entity owns a real estate asset for investment purposes. | FORECLOSED | Dissolve upon distribution of funds |
| 2014 Galveston Jones Drive, LLC | | 5/27/2014 | Texas | N/A | REIT | HMCF IB Investors, LLC | Member | 42.75 | n/a | Rene O. Campos-Manager | | | Matt McGraner | Brandon Knott | N | 2/11/2016 | Holds multifamily real property known as "Island Bay" located at 7400 Jones Dr, Galveston, TX 77551 | Redeemed 2/11/16 | |
| 2014 Galveston Jones Drive, LLC | | 5/27/2014 | Texas | N/A | REIT | Galveston Jones Drive Member, LLC | Member | 57.25 | n/a | Rene O. Campos-Manager | | | Matt McGraner | Brandon Knott | N | 2/11/2016 | Holds multifamily real property known as "Island Bay" located at 7400 Jones Dr, Galveston, TX 77551 | Redeemed 2/11/16 | |
| 2606 Shelby Avenue, Ltd. | | 7/12/2005 | Texas | N/A | RE | HCREH Shelby Townhomes, L.P. | Investor Limited Partner | 50 | n/a | General Partner Controlled | | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | This is not one of our entities.  It is an operating entity in which one of the investment entities is invested. S. Caudle Properties, Inc. c/o Sam Caudle 5633 Preston Fairways Drive Dallas, TX 75252 | SOLD AT FORECLOSURE AUCTION IN 2008 | |
| 2606 Shelby Avenue, Ltd. | | 7/12/2005 | Texas | N/A | RE | Third Party Investors | Developer Partner | 49 | n/a | General Partner | n/a | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | | SOLD AT FORECLOSURE AUCTION IN 2008 | |
| 2606 Shelby Avenue, Ltd. | | 7/12/2005 | Texas | N/A | RE | Third Party Investors | General Partner | 1 | n/a | General Partner | n/a | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | | SOLD AT FORECLOSURE AUCTION IN 2008 | |
| 2747 Camelback, LLC | | 3/16/2007 | Delaware | AZ | RE | Biltmore Camelback Investors, LLC | Member | 100% | n/a | HCMLP-Manager | HCMLP-Manager | HCMLP-Manager | Ted Dameris | Drew Wilson | Y | 3/31/2017 | Underlying project is a 4.46 acre site located in Phoenix, AZ, improved with three vacant office buildings that are expected to be demolished for construction of a condo tower upon receipt of amended height restriction. | Dissolution docs sent to DE SOS & AZ SOS on 3.30.17 | |
| 3500 Beverly, L.P. | | 2/15/2005 | Delaware | | JD | The Get Good Non-Exempt Trust No. 2 | Limited Partner | 59 | n/a | Strand Advisors VIII, LLC | N/A | James Dondero | Matt Griffith | Matt Griffith | Y | 12/17/2010 | Jim's investment property | SOLD 6/21/10 | |
| 3500 Beverly, L.P. | | 2/15/2005 | Delaware | | JD | Strand Advisors VIII, LLC | General Partner | 1 | n/a | Strand Advisors VIII, LLC | | James Dondero | Matt Griffith | Matt Griffith | Y | 12/17/2010 | Jim's investment property | SOLD 6/21/10 | |
| 3500 Beverly, L.P. | | 2/15/2005 | Delaware | | JD | Third Party Investor | Limited Partner | 40 | n/a | Strand Advisors VIII, LLC | n/a | James Dondero | Matt Griffith | Matt Griffith | Y | 12/17/2010 | Jim's investment property | SOLD 6/21/10 | |
| 3700 Euclid, L.P. | | 1/17/2006 | Delaware | | JD | The Get Good Trust | Limited Partner | 99 | n/a | Strand Advisors XIV, LLC | | James Dondero | Matt Griffith | Matt Griffith | Y | 8/20/2010 | Jim's investment property | SOLD 6/8/09 | |
| 3700 Euclid, L.P. | | 1/17/2006 | Delaware | | JD | Strand Advisors XIV, LLC | General Partner | 1 | n/a | Strand Advisors XIV, LLC | | James Dondero | Matt Griffith | Matt Griffith | Y | 8/20/2010 | Jim's investment property | SOLD 6/8/09 | |
| 3704 Euclid, L.P. | | 5/10/2006 | Delaware | | JD | The Get Good Trust | Limited Partner | 99 | n/a | Strand Advisors XIV, LLC | | James Dondero | Matt Griffith | Matt Griffith | Y | 8/20/2010 | Jim's investment property | SOLD 6/8/09 | |
| 3704 Euclid, L.P. | | 5/10/2006 | Delaware | | JD | Strand Advisors XIV, LLC | General Partner | 1 | n/a | Strand Advisors XIV, LLC | | James Dondero | Matt Griffith | Matt Griffith | Y | 8/20/2010 | Jim's investment property | SOLD 6/8/09 | |
| 3708 Harvard, L.P. | | 8/1/2005 | Delaware | | JD | Strand Advisors X, LLC | General Partner | 1 | n/a | Strand Advisors X, LLC | | James Dondero | Matt Griffith | Matt Griffith | Y | 8/20/2010 | Jim's investment property | SOLD 10/2008 | |
| 4041 Grasmere, L.P. | | 12/22/2004 | Delaware | | JD | Strand Advisors VI, LLC | General Partner | 1 | n/a | Strand Advisors VI, LLC | | James Dondero | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | Jim's investment property | Wayne Lewis interest transferred to GGNE#2 in 2011 | |
| 4041 Grasmere, L.P. | | 12/22/2004 | Delaware | | JD | The Get Good Non-Exempt Trust No. 2 | Limited Partner | 99 | n/a | Strand Advisors VI, LLC | | James Dondero | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | Jim's investment property | Wayne Lewis interest transferred to GGNE#2 in 2011 | |
| 4201 Versailles, L.P. | | 12/22/2004 | Delaware | | JD | Strand Advisors VII, LLC | General Partner | 1 | n/a | Strand Advisors VII, LLC | | James Dondero | Melissa Schroth | Melissa Schroth | Y | 4/20/2012 | Jim's investment property | | |
| 4201 Versailles, L.P. | | 12/22/2004 | Delaware | | JD | The Get Good Trust | Limited Partner | 59 | n/a | Strand Advisors VII, LLC | | James Dondero | Melissa Schroth | Melissa Schroth | Y | 4/20/2012 | Jim's investment property | | |
| 4201 Versailles, L.P. | | 12/22/2004 | Delaware | | JD | Wayne Lewis | Limited Partner | 40 | n/a | Strand Advisors VII, LLC | | James Dondero | Melissa Schroth | Melissa Schroth | Y | 4/20/2012 | Jim's investment property | | |
| 4223 Bordeaux, L.P. | | 9/28/2005 | Delaware | | JD | Strand Advisors XI, LLC | General Partner | 1 | n/a | Strand Advisors XI, LLC | | James Dondero | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | Jim's investment property | Wayne Lewis interest transferred to GGT in 2011 | 2 EINs were obtained for the entity - 20-2197558 is active and 20-3646318 should be terminated |
| 4223 Bordeaux, L.P. | | 9/28/2005 | Delaware | | JD | The Get Good Trust | Limited Partner | 99 | n/a | Strand Advisors XI, LLC | | James Dondero | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | Jim's investment property | Wayne Lewis interest transferred to GGT in 2011 | |
| 4346 Overhill, L.P. | | 11/24/2004 | Delaware | | JD | The Get Good Non-Exempt Trust No. 2 | Limited Partner | 99 | n/a | Strand Advisors V, LLC | | James Dondero | Matt Griffith | Matt Griffith | Y | 8/20/2010 | Jim's investment property | SOLD 7/23/09 | |
| 4346 Overhill, L.P. | | 11/24/2004 | Delaware | | JD | Strand Advisors V, LLC | General Partner | 1 | n/a | Strand Advisors V, LLC | | James Dondero | Matt Griffith | Matt Griffith | Y | 8/20/2010 | Jim's investment property | SOLD 7/23/09 | |
| 78/Kreymer, Ltd. | | 2/6/2004 | Texas | | JD | The Get Good Non-Exempt Trust No. 1 | Shareholder | 30.07 | n/a | James Dondero-Trustee | James Dondero | James Dondero | Melissa Schroth | Melissa Schroth | N | | Jim's investment property | | |
| 78/Kreymer, Ltd. | | 2/6/2004 | Texas | | JD | Third Party Investors | Shareholder | 69.93 | n/a | James Dondero-Trustee | James Dondero | James Dondero | Melissa Schroth | Melissa Schroth | N | | Jim's investment property | | |
| Acis CLO Opportunity Fund I, L.P. | | 5/16/2014 | Delaware | N/A | Hedge | Acis CLO Opportunity Funds GP, LLC | GP | TBD | | GP | | | Hunter Covitz | Kristin Hendrix | Y | 12/28/2016 | | | |
| Acis CLO Opportunity Fund I, L.P. | | 5/16/2014 | Delaware | N/A | Hedge | Acis CLO Opportunity Funds SLP, LLC | Special LP | TBD | | GP | | | Hunter Covitz | Kristin Hendrix | Y | 12/28/2016 | | | |
| Acis CLO Opportunity Fund II, L.P. | | 5/16/2014 | Delaware | N/A | Hedge | Acis CLO Opportunity Funds GP, LLC | GP | TBD | n/a | GP | | | Hunter Covitz | Kristin Hendrix | Y | 12/28/2016 | | | |
| Acis CLO Opportunity Fund II, L.P. | | 5/16/2014 | Delaware | N/A | Hedge | Acis CLO Opportunity Funds SLP, LLC | Special LP | TBD | n/a | GP | | | Hunter Covitz | Kristin Hendrix | Y | 12/28/2016 | | | |
| Acis CLO Opportunity Fund III, L.P. | | 5/16/2014 | Delaware | N/A | Hedge | James Dondero | Initial LP | TBD | | GP | | | Hunter Covitz | Kristin Hendrix | Y | 12/28/2016 | | | |
| Acis CLO Opportunity Fund III, L.P. | | 5/16/2014 | Delaware | N/A | Hedge | Acis CLO Opportunity Funds GP, LLC | GP | TBD | | GP | | | Hunter Covitz | Kristin Hendrix | Y | 12/28/2016 | | | |
| Acis CLO Value Fund I Investment Team Assets L | | 12/21/2012 | Delaware | N/A | Hedge | Acis CLO Opportunity Funds SLP, LLC | Member | TBD | | Manager | Manager | Dondero, Terry,  Waterhouse, Stoops, Wise, Chism | Josh Terry | David Willmore | Dissolved | 10/17/2013 | NOT USED | | |
| Acis CLO Value Intermediate Fund, L.P. | | 7/21/2010 | Cayman Islands | N/A | Hedge | Acis CLO Value GP, LLC | General Partner | TBD | | | | TBD | Josh Terry | Cliff Stoops | Y | 12/31/2012 | Dissolve | | |
| Acis Funding Manager, LLC | | 2/14/2014 | Delaware | N/A | Brasilinvest | Acis Capital Management, LLC | Member | 100 | | N/A | | | Philip Braner | | Y | 4/8/2014 | Set up in connection with TMRS transaction but will not be used | | |
| Acis Funding, LLC | | 2/7/2014 | Delaware | N/A | Brasilinvest | Acis Funding Manager, LLC | Non-economic Member | | | Acis Funding Manager, LLC (Manager) | TBD | | Philip Braner | | Y | 4/8/2014 | Set up in connection with TMRS transaction but will not be used | | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM

NYSCEF DOC. NO. 77

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 120 of 376

INDEX NO. 650744/2023

RECEIVED NYSCEF: 02/08/2023

| | A | B | C | D | E | F | G | H | I | J | K | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 43 | Acis Funding, LLC | | 2/7/2014 | Delaware | N/A | BrasilInvest | CLO HoldCo, Ltd | Member | TBD | | Acis Funding Manager, LLC (Manager) | TBD | | Philip Braner | | Y | 4/8/2014 | Set up in connection with TMRS transaction but will not be used | | |
| 44 | Acis Funding, LLC | | 2/7/2014 | Delaware | N/A | BrasilInvest | Third Party (Northern Providence) | Member | TBD | | Acis Funding Manager, LLC | TBD | | Philip Braner | | Y | 4/8/2014 | Set up in connection with TMRS transaction but will not be used | | |
| 45 | AFM Highland Village Partners I, L.P. | | 5/11/2006 | Texas | N/A | RE | HCREA Highland Village, L.P. | Class A Limited Partner | 90 | n/a | Non HCMLP GP | n/a | Dennis McDaniel | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 46 | AFM Highland Village Partners I, L.P. | | 5/11/2006 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 9.9 | n/a | Non HCMLP GP | n/a | Dennis McDaniel | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 47 | AFM Highland Village Partners I, L.P. | | 5/11/2006 | Texas | N/A | RE | Third Party Investors | General Partner | 0.1 | n/a | Non HCMLP GP | n/a | Dennis McDaniel | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 48 | Amcast Industrial Corporation | | 7/26/2005 | Delaware | PE | | CalPERS | Shareholder | 6.33 | n/a | | Richard Smith-VP-Finance/CFO Jeffrey McWilliams-VP-Admin/Secy | Carl Moore | Carl Moore | | Y | | DELETE PER C. MOORE | | |
| 49 | Amcast Industrial Corporation | | 7/26/2005 | Delaware | PE | | Highland Crusader Offshore Partners, L.P. | Shareholder | 14.17 | n/a | same | same | same | Carl Moore | Carl Moore | | Y | | DELETE PER C. MOORE | | |
| 50 | Amcast Industrial Corporation | | 7/26/2005 | Delaware | PE | | Highland Legacy Limited | Shareholder | 4.64 | n/a | same | same | same | Carl Moore | Carl Moore | | Y | | DELETE PER C. MOORE | | |
| 51 | Amcast Industrial Corporation | | 7/26/2005 | Delaware | PE | | Pam Capital Funding, L.P. | Shareholder | 28.56 | n/a | same | same | same | Carl Moore | Carl Moore | | Y | | DELETE PER C. MOORE | | |
| 52 | Amcast Industrial Corporation | | 7/26/2005 | Delaware | PE | | PamCo Cayman Ltd. | Shareholder | 21.59 | n/a | same | same | same | Carl Moore | Carl Moore | | Y | | DELETE PER C. MOORE | | |
| 53 | Amcast Industrial Corporation | | 7/26/2005 | Delaware | PE | | Third Party Investors | Shareholder | 24.71 | n/a | same | same | same | Carl Moore | Carl Moore | | Y | | DELETE PER C. MOORE | | |
| 54 | Andrew Merrick Homes-4301 Bordeaux, L.P. | | 9/14/2007 | Delaware | JD | | Strand Advisors XV, LLC | General Partner | 1 | n/a | Strand Advisors XV, LLC | N/A | James Dondero | Matt Griffith | Matt Griffith | Y | 1/17/2012 | Jim's home building company | | |
| 55 | Andrew Merrick Homes-4301 Bordeaux, L.P. | | 9/14/2007 | Delaware | JD | | The Get Good Trust | Limited Partner | 99 | n/a | Strand Advisors XV, LLC | N/A | James Dondero | Matt Griffith | Matt Griffith | Y | 1/17/2012 | Jim's home building company | | |
| 56 | Appennini, LLC | | 9/24/2015 | Delaware | N/A | JD | The Dugaboy Investment Trust | Member | 100 | n/a | Grant Scott-Director | Grant Scott-Director | Grant Scott-Director | Mark Patrick | Melissa Schroth | Y | 5/27/2016 | Investment in Rand PE Fund I, LP - Series 1 | | |
| 57 | Armstrong Loan Funding, Ltd. | | 2/22/2008 | Cayman Islands | N/A | CLO | Highland Credit Opportunities CDO, Ltd. | Class 1 Voting Preferred Shares | 19.46 | 7,500 | Maples Finance | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Josh Terry | Hunter Covitz / Edward Leo | N | | Issuer for CLO investment structure. | Liquidating | |
| 58 | Armstrong Loan Funding, Ltd. | | 2/22/2008 | Cayman Islands | N/A | CLO | Highland Crusader Offshore Partners, L.P. | Class 1 Voting Preferred Shares | 2.59 | 1,000 | Maples Finance | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Josh Terry | Hunter Covitz / Edward Leo | N | | Issuer for CLO investment structure. | Liquidating | |
| 59 | Armstrong Loan Funding, Ltd. | | 2/22/2008 | Cayman Islands | N/A | CLO | Tunstall Opportunities Master Fund, L.P. | Class 1 Voting Preferred Shares | 2.59 | 1,000 | Maples Finance | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Josh Terry | Hunter Covitz / Edward Leo | N | | Issuer for CLO investment structure. | Liquidating | |
| 60 | Armstrong Loan Funding, Ltd. | | 2/22/2008 | Cayman Islands | N/A | CLO | CLO HoldCo, Ltd | Class 1 Voting Preferred Shares | 8.69 | 3,350 | Maples Finance | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Josh Terry | Hunter Covitz / Edward Leo | N | | Issuer for CLO investment structure. | Liquidating | |
| 61 | Armstrong Loan Funding, Ltd. | | 2/22/2008 | Cayman Islands | N/A | CLO | Highland Crusader Offshore Partners, LP | Class 2 Voting Preferred Shares | 38.52 | 14,845 | Maples Finance | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Josh Terry | Hunter Covitz / Edward Leo | N | | Issuer for CLO investment structure. | Liquidating | |
| 62 | Armstrong Loan Funding, Ltd. | | 2/22/2008 | Cayman Islands | N/A | CLO | Highland Credit Strategies Master Fund, LP | Class 2 Voting Preferred Shares | 28.14 | 10,845 | Maples Finance | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Josh Terry | Hunter Covitz / Edward Leo | N | | Issuer for CLO investment structure. | Liquidating | |
| 63 | Atascosa Investments LLC | | 10/22/2004 | Delaware | N/A | Hedge Blocker | Highland Crusader Offshore Partners, L.P. | Member | 100 | n/a | Member | James Dondero-Pres | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | Y | 8/4/2016 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership | |
| 64 | Bandera Strategic Credit Partners I GP, LLC (fka Highland Strategic Partners GP, LLC) | | 1/23/2014 | Delaware | TX | I-Fund | Bandera Strategic Credit Partners I SLP, L.P. | Member | 100 | n/a | Sole member | N/A | Dondero, Okada, Ellington, Parker Waterhouse, Palmer, Stoops, Chism | Trey Parker | Charlie Hoedebeck | N | 8/23/2018 | TMRS fund | | |
| 65 | Bandera Strategic Credit Partners I SLP GP, LLC | | 4/3/2014 | Delaware | TX | I-Fund | Bandera Capital Management, L.P. | Member | 100 | n/a | Sole member | N/A | Dondero, Okada, Ellington, Parker Waterhouse, Palmer, Stoops, Chism | Trey Parker | Charlie Hoedebeck | N | 8/23/2018 | TMRS fund | | |
| 66 | Bandera Strategic Credit Partners I SLP, L.P. | | 4/3/2014 | Delaware | TX | I-Fund | Bandera Strategic Credit Partners I SLP GP, LLC | General Partner | 50 | n/a | GP | GP | Dondero, Okada, Ellington, Parker Waterhouse, Palmer, Stoops, Chism | Trey Parker | Charlie Hoedebeck | N | 8/23/2018 | TMRS fund | | |
| 67 | Bandera Strategic Credit Partners I SLP, L.P. | | 4/3/2014 | Delaware | TX | I-Fund | Bandera Capital Management, L.P. | Initial LP | 50 | n/a | GP | GP | Dondero, Okada, Ellington, Parker Waterhouse, Palmer, Stoops, Chism | Trey Parker | Charlie Hoedebeck | N | 8/23/2018 | TMRS fund | | |
| 68 | Bandera Strategic Credit Partners I, L.P. (fka Highland Strategic Partners Fund, L.P.) | | 1/23/2014 | Delaware | TX | I-Fund | Bandera Strategic Credit Partners I GP, LLC | General Partner | 0 | n/a | GP | GP | Dondero, Okada, Ellington, Parker Waterhouse, Palmer, Stoops, Chism | Trey Parker | Charlie Hoedebeck | N | GP/management terminated 5.31.18 | TMRS fund | | |
| 69 | Bandera Strategic Credit Partners I, L.P. (fka Highland Strategic Partners Fund, L.P.) | | 1/23/2014 | Delaware | TX | I-Fund | Highland Capital Management, L.P. | LP | 0.35 | n/a | GP | GP | Dondero, Okada, Ellington, Parker Waterhouse, Palmer, Stoops, Chism | Trey Parker | Charlie Hoedebeck | N | GP/management terminated 5.31.18 | TMRS fund | | |
| 70 | Bandera Strategic Credit Partners I, L.P. (fka Highland Strategic Partners Fund, L.P.) | | 1/23/2014 | Delaware | TX | I-Fund | Texas Municipal Retirement System | LP | 99.65 | n/a | GP | GP | Dondero, Okada, Ellington, Parker Waterhouse, Palmer, Stoops, Chism | Trey Parker | Charlie Hoedebeck | N | GP/management terminated 5.31.18 | TMRS fund | | |
| 71 | Bankruptcy Funding, LLC | | 11/12/2013 | Delaware | N/A | Legal | BFC 1, LLC | Member | 50 | n/a | N/A | James Dondero-Pres Scott Ellington-VP | Scott Ellington-Pres | Jason Goldsmith | Katie Irving | Y | 3/31/2016 | | | |
| 72 | Bankruptcy Funding, LLC | | 11/12/2013 | Delaware | N/A | Legal | BFC 1, LLC | Member | 50 | n/a | N/A | James Dondero-Pres Scott Ellington-VP | Scott Ellington-VP | Jason Goldsmith | Katie Irving | Y | 3/31/2016 | | | |
| 73 | Barrier Advisors, Inc. | | 4/27/2006 | Delaware | NB | | NexBank Capital, Inc. | Shareholder | 100 | n/a | John Holt, Mike Rossi, Harrison Price | Harrison Price-Pres Harold Kessler-VP/Treas | Mike Rossi, Lisa Stuart, Harrison Price | Josh Bock | Mike Rossi | | Merged into NSI as of 1/1/12 | Barrier Advisors is a turnaround, workout, and distressed M&A consulting firm. | Barrier merged with NSI on 1/1/2012, with NSI as the surviving entity | |
| 74 | BB Highland Floating Rate Fund I | | | Dublin | | Irish Fund | Highland CDO Opportunity Master Fund, Member | Member | 0 | n/a | | Dondero, Okada, Parker, Stoops, Chism | Hunter Covitz | Tom Beauchamp | | 4/30/2016 | Irish sub-fund of BB Unit Trust Ireland, an open-ended umbrella unit trust | | |
| 75 | BB Highland Floating Rate Fund I | | | Dublin | | Irish Fund | Mark Okada | Member | 0 | n/a | | Dondero, Okada, Palmer, Parker, Waterhouse, Palmer, Stoops, Chism | Hunter Covitz | Tom Beauchamp | | 4/30/2016 | Irish sub-fund of BB Unit Trust Ireland, an open-ended umbrella unit trust | | |
| 76 | BB Highland Floating Rate Fund I | | | Dublin | | Irish Fund | Mark and Pamela Family Trust | Member | 0 | n/a | | Dondero, Okada, Parker, Stoops, Chism | Hunter Covitz | Tom Beauchamp | | 4/30/2016 | Irish sub-fund of BB Unit Trust Ireland, an open-ended umbrella unit trust | | |
| 77 | BFC 1, LLC | | 11/12/2013 | Delaware | N/A | Legal | Bankruptcy Funding, LLC | Member | 100 | n/a | N/A | James Dondero | Scott Ellington-Pres | Jason Goldsmith | Katie Irving | Y | 3/31/2016 | | | |
| 78 | Biltmore Camelback Investors, LLC | | 3/20/2007 | Delaware | AZ | RE | HE Capital 2747, LLC | Member | 100 | n/a | HCMLP-Manager | HCMLP-Manager | HCMLP-Manager | Matt McGraner | Nexbank | Y | 3/31/2017 | Underlying project is a 4.46 acre site located in Phoenix, AZ, improved with three vacant office buildings that are expected to be demolished for construction of a condo tower upon receipt of amended height restriction. | Dissolution docs sent to DE SOS & AZ SOS on 3.30.17 | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM — INDEX NO. 650744/2023
NYSCEF DOC. NO. 77 — RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 121 of 376

| | A | B | C | D | E | F | G | H | I | J | K | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 79 | Blackwell BMC, LLC (fka HCM-BMC, LLC) | | 3/9/2007 | Delaware | TX | Hedge Blocker | HCM Blackwell Holding Corporation | Member | 88.92 | | 100 | Managers: Jon Poglitsch/Carl Moore | Poglitsch-President Moore-Treasurer Stoops-Asst. Treas Chism-Asst. Treas Palmer-Asst. Treas | Poglitsch-President Moore-Treasurer Stoops-Asst. Treas Chism-Asst. Treas Palmer-Asst. Treas | Carl Moore/ Jon Poglitsch | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Entity holding a portion of Crusader's interest in BlackWell | | Name changed from HCM-BMC, LLC to Blackwell BMC, LLC on 4/13/07 |
| 80 | Blackwell BMC, LLC (fka HCM-BMC, LLC) | | 3/9/2007 | Delaware | TX | Hedge Blocker | Highland Crusader Holding Corporation | Member | 11.08 | | 100 | Managers: Jon Poglitsch/Carl Moore | Poglitsch-President Moore-Treasurer Stoops-Asst. Treas Chism-Asst. Treas Palmer-Asst. Treas | Poglitsch-President Moore-Treasurer Stoops-Asst. Treas Chism-Asst. Treas Palmer-Asst. Treas | Carl Moore/ Jon Poglitsch | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Entity holding a portion of Crusader's interest in BlackWell | | Name changed from HCM-BMC, LLC to Blackwell BMC, LLC on 4/13/07 |
| 81 | Bradenton RE Holdings, LLC | | 12/10/2015 | Delaware | FL | Non-REIT | NexPoint Real Estate Capital, LLC | Member | 100 | | | Member Managed | Member Managed | | Scott Wilson | Cornerstone | Y | 2/2/2018 | Cornerstone sub | | |
| 82 | Breckenridge Apartments Investors, L.P. | | 3/7/2006 | Delaware | N/A | RE | HCREA Breckenridge L.P. | Limited Partner | 90 | n/a | | Non HCMLP GP | General Partner Controlled | | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | SOLD AT FORECLOSURE AUCTION IN 2009 | |
| 83 | Breckenridge Apartments Investors, L.P. | | 3/7/2006 | Delaware | N/A | RE | Third Party Investors | General Partner | 0.1 | n/a | | Non HCMLP GP | General Partner Controlled | | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | SOLD AT FORECLOSURE AUCTION IN 2009 | |
| 84 | Breckenridge Apartments Investors, L.P. | | 3/7/2006 | Delaware | N/A | RE | Third Party Investors | Limited Partner | 9.9 | n/a | | Non HCMLP GP | General Partner Controlled | | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | SOLD AT FORECLOSURE AUCTION IN 2009 | |
| 85 | Brentwood Cayman Holdings, Ltd. | | 4/17/2009 | Cayman Islands | N/A | CLO Blocker | Brentwood CLO, Ltd. | Shares | 100 | | 100 | Maples Finance | N/A | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Palmer, Stoops, Chism | Hunter Covitz | Brandon Wurz | | 3/20/2018 | Blocker 100% owned by the CLO to hold ownership interest in real estate/real property foreclosures | To be dissolved | |
| 86 | Brentwood Panda Holdings, Ltd. | | 4/22/2009 | Cayman Islands | N/A | CLO Blocker | Brentwood CLO, Ltd. | Shares | 100.00 | | 100 | Maples Finance | N/A | | Dondero, Okada, Ellington, Palmer, Waterhouse, Palmer, Stoops, Chism | Jon Reiter | | Y | 12/6/2013 | Blocker 100% owned by the CLO to hold Panda Hereford assets | To be dissolved | |
| 87 | Buckhead Capital, LLC | | 7/2/2013 | Delaware | N/A | RE | TBD | | | | | TBD | TBD | | Isaac Leventon | James Palmer | | 12/30/2014 | Blocker to hold CS litigation assignment | No assignment yet | |
| 88 | Burnet Partners, LLC | | 10/22/2004 | Delaware | N/A | HCM Hedge Blocker | Highland Crusader Offshore Partners, L.P. | Member | 100 | n/a | | Member | James Dondero-Pres | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership | |
| 89 | C-1 Meridian, Inc. | | 1/24/2014 | Delaware | N/A | REIT | BH Equities, LLC | Stockholder | 100 | 100 | | Brian Mitts | Brian Mitts - Secy/auth sig | Brian Mitts | Matt McGraner | Brandon Knott | Y | 1/31/2018 | UNDERLYING PROPERTY SOLD - but perhaps we change the name to NXRT SM, Inc. and use it for | | |
| 90 | C-1 Timberglen, Inc. | | 1/24/2014 | Delaware | N/A | REIT | BH Equities, LLC | Stockholder | 100 | 100 | | Brian Mitts | Brian Mitts - Secy/auth sig | Brian Mitts | Matt McGraner | Brandon Knott | Y | 12/27/2018 | | | |
| 91 | C-1 Toscana, Inc. | | 1/24/2014 | Delaware | N/A | REIT | BH Equities, LLC | Stockholder | 100 | 100 | | Brian Mitts | Brian Mitts - Secy/auth sig | Brian Mitts | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | | |
| 92 | Canopy Timberlands GP, LLC | | 4/29/2008 | Delaware | N/A | Canopy | HCM Canopy Holdings, LLC | Member | 75 | | 75 | HCM Member | N/A | | Dondero, Jameson, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Taylor Colbert | | | General partnership - owns 0.1% of the Canopy Timberlands, LP, management fees and the | | |
| 93 | Canopy Timberlands GP, LLC | | 4/29/2008 | Delaware | N/A | Canopy | Third Party Investors | Member | 25 | | 25 | HCM Member | N/A | | Dondero, Jameson, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Taylor Colbert | | | General partnership - owns 0.1% of the Canopy Timberlands, LP, management fees and the Blocker set up for our lender, MetLife; Owned 100% by Canopy Timberlands GP, LLC | | |
| 94 | Canopy Timberlands Maine GP, LLC | | 6/13/2008 | Delaware | ME | Canopy | Canopy Timberlands GP, LLC | Member | 100 | n/a | | Member | James Dondero-Pres Matt Jameson-VP Frank Waterhouse-Asst Treas | Dondero, Jameson, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Taylor Colbert | | | | | |
| 95 | Canopy Timberlands Spout Springs GP, LLC | | 8/19/2008 | Delaware | N/A | Canopy | HCM Spout Springs Holdings, LLC | Member | 75 | | n/a | HCM Member | N/A | | Dondero, Jameson, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Taylor Colbert | CRUSADER IMA TERMINATED | 8/4/2016 | General partnership - owns 0.1% of the Canopy Timberlands Spout Springs, LP, management fees and the managers' carried interest is paid to this entity | | |
| 96 | Canopy Timberlands Spout Springs GP, LLC | | 8/19/2008 | Delaware | N/A | Canopy | Third Party Investors | Member | 25 | | n/a | HCM Member | N/A | | Dondero, Jameson, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Taylor Colbert | CRUSADER IMA TERMINATED | 8/4/2016 | General partnership - owns 0.1% of the Canopy Timberlands Spout Springs, LP, management fees and the managers' carried interest is paid to this entity | | |
| 97 | Canopy Timberlands Spout Springs Holdings, LLC | | 7/1/2008 | Delaware | N/A | Canopy | Canopy Timberlands Spout Springs GP, LLC | Member | 100 | n/a | | Member | James Dondero-Pres Matt Jameson-VP Frank Waterhouse-Asst Treas | Dondero, Jameson, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Taylor Colbert | CRUSADER IMA TERMINATED | 8/4/2016 | Blocker set up for our lender, MetLife; Owned 100% by Canopy Timberlands Spout Springs GP, LLC | | |
| 98 | Canopy Timberlands Spout Springs Holdings, L.P. | | 7/1/2008 | Delaware | AR | Canopy | Canopy Timberlands Spout Springs Holdings GP, LLC | GP | 0.1 | n/a | | GP | | Stoops, Chism | | Taylor Colbert | CRUSADER IMA TERMINATED | 8/4/2016 | Owns 100% Canopy Timberlands Spout Springs, LLC | | |
| 99 | Canopy Timberlands Spout Springs Holdings, L.P. | | 7/1/2008 | Delaware | AR | Canopy | Canopy Timberlands Spout Springs L.P. | LP | 99.9 | n/a | | GP | | Stoops, Chism | | Taylor Colbert | CRUSADER IMA TERMINATED | 8/4/2016 | Owns 100% Canopy Timberlands Spout Springs, LLC | | |
| 100 | Canopy Timberlands Spout Springs L.P. | | 8/19/2008 | Delaware | N/A | Canopy | Canopy Timberlands Spout Springs GP, LLC | GP | 0 | n/a | | GP | | Dondero, Jameson, Waterhouse, Palmer, Stoops, Chism | | Taylor Colbert | CRUSADER IMA TERMINATED | 8/4/2016 | Owns 99.9% Canopy Timberlands Spout Springs Holdings, LP | | |
| 101 | Canopy Timberlands Spout Springs L.P. | | 8/19/2008 | Delaware | N/A | Canopy | Highland Crusader Holding Corporation | LP | 100 | n/a | | GP | | Dondero, Jameson, Waterhouse, Palmer, Stoops, Chism | | Taylor Colbert | CRUSADER IMA TERMINATED | 8/4/2016 | Owns 99.9% Canopy Timberlands Spout Springs Holdings, LP | | |
| 102 | Canopy Timberlands Spout Springs, LLC | | 7/1/2008 | Delaware | AR | Canopy | Canopy Timberlands Spout Springs Holdings, L.P. | Member | 100 | n/a | | Member | James Dondero-Pres Matt Jameson-VP | Stoops, Chism | | Brandon Knott | CRUSADER IMA | 8/4/2016 | Owns ~19,000 acres of timber in Arkansas | | |
| 103 | Canyon Falls GP, LLC | | 5/24/2010 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | | James Dondero Ted Dameris | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | | Y | | Replacement GP to Canyon Falls Land Partners, LP | FORECLOSED | Dissolve upon distribution of funds |
| 104 | Canyon Falls Land GP, LLC | | 5/25/2010 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | | James Dondero Ted Dameris | n/a | Ted Dameris/ Jim Pfertner | Drew Wilson | | Y | 12/31/2012 | Replacement GP to McGinnis Land Partners I, LP | Investment property foreclosed | |
| 105 | Canyon Falls Land Partners, L.P. | | 3/16/2006 | Texas | N/A | RE | HCREA Canyon Falls L.P. | Class A Limited Partner | 50 | n/a | | GP | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | | Y | 4/30/2014 | This entity owns a real estate asset for investment | FORECLOSED | Dissolve upon distribution of funds |
| 106 | Canyon Falls Land Partners, L.P. | | 3/16/2006 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 49.9 | n/a | | GP | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | | Y | 4/30/2014 | This entity owns a real estate asset for investment purposes. | FORECLOSED | Dissolve upon distribution of funds |
| 107 | Canyon Falls Land Partners, L.P. | | 3/16/2006 | Texas | N/A | RE | Third Party Investors | Class C Limited Partner | 0.1 | n/a | | GP | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | | Y | 4/30/2014 | This entity owns a real estate asset for investment purposes. | FORECLOSED | Dissolve upon distribution of funds |
| 108 | Canyon Falls Land Partners, L.P. | | 3/16/2006 | Texas | N/A | RE | Canyon Falls GP, LLC | General Partner | 0 | n/a | | GP | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | | Y | 4/30/2014 | This entity owns a real estate asset for investment purposes. | FORECLOSED | Dissolve upon distribution of funds |
| 109 | Canyon Falls TC GP, LLC | | 5/26/2010 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | | James Dondero Scott Ellington Ted Dameris | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | | Y | 12/17/2012 | Replacement GP to Canyon Falls Town Center Partners, LP | Investment property foreclosed | |
| 110 | Canyon Falls Town Center Partners, LP | | 3/2/2007 | Texas | N/A | RE | HCREA Canyon Falls Town Center, LP | Class A Limited Partner | 50 | n/a | | GP | Scott Ellington James Dondero Ted Dameris | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | | Y | 12/17/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 111 | Canyon Falls Town Center Partners, LP | | 3/2/2007 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 49.9 | n/a | | GP | Scott Ellington James Dondero Ted Dameris | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | | Y | 12/17/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 112 | Canyon Falls Town Center Partners, LP | | 3/2/2007 | Texas | N/A | RE | Third Party Investors | Class C Limited Partner | 0.1 | n/a | | GP | Scott Ellington Ted Dameris James Dondero | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | | Y | 12/17/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 113 | Canyon Falls Town Center Partners, LP | | 3/2/2007 | Texas | N/A | RE | Canyon Falls TC GP, LLC | General Partner | 0 | n/a | | GP | Scott Ellington Ted Dameris James Dondero | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | | Y | 12/17/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 114 | Celina Springs, Ltd. | | 5/16/2007 | Texas | N/A | RE | Celina Springs Partners, Ltd. | Class B Limited Partner | 13.77 | n/a | | Non HCMLP GP | General Partner Controlled | | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |
| 115 | Celina Springs, Ltd. | | 5/16/2007 | Texas | N/A | RE | Third Party Investor | General Partner | 0.01 | n/a | | Non HCMLP GP | General Partner Controlled | | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 122 of 376

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 116 | Celina Springs, Ltd. | | 5/16/2007 | Texas | N/A | RE | HCREA Celina Springs, LP | Class A Limited Partner | 86.22 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Daneris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |
| 117 | CHG Acquisition, LLC | | 9/24/2007 | Delaware | N/A | Hedge Blocker | Highland Capital Management, L.P. | Member | 3.65 | 1,022,000 | Carl Moore-Manager | Carl Moore-Manager | Carl Moore | Matt Jameson | David Willmore | Y | 2/24/2017 | Held Cornerstone assets - Cornerstone shares transferred directly to members | | |
| 118 | CHG Acquisition, LLC | | 9/24/2007 | Delaware | N/A | Hedge Blocker | Highland Credit Strategies Master Fund, L.P. | Member | 29.00 | 8,119,000 | Carl Moore-Manager | Carl Moore-Manager | Carl Moore | Matt Jameson | David Willmore | Y | 2/24/2017 | Held Cornerstone assets - Cornerstone shares transferred directly to members | | |
| 119 | CHG Acquisition, LLC | | 9/24/2007 | Delaware | N/A | Hedge Blocker | Highland Restoration Capital Partners, L.P. | Member | 52.96 | 14,830,000 | Carl Moore-Manager | Carl Moore-Manager | Carl Moore | Matt Jameson | David Willmore | Y | 2/24/2017 | Held Cornerstone assets - Cornerstone shares transferred directly to members | | |
| 120 | CHG Acquisition, LLC | | 9/24/2007 | Delaware | N/A | Hedge Blocker | Highland Restoration Capital Partners, L.P. | Member | 6.48 | 1,813,000 | Carl Moore-Manager | Carl Moore-Manager | Carl Moore | Matt Jameson | David Willmore | Y | 2/24/2017 | Held Cornerstone assets - Cornerstone shares transferred directly to members | | |
| 121 | CHG Acquisition, LLC | | 9/24/2007 | Delaware | N/A | Hedge Blocker | Highland Restoration Capital Partners | Member | 7.91 | 2,216,000 | Carl Moore-Manager | Carl Moore-Manager | Carl Moore | Matt Jameson | David Willmore | Y | 2/24/2017 | Held Cornerstone assets - Cornerstone shares transferred directly to members | | |
| 122 | Children's Healthcare of Atlanta, Inc. | | 10/24/1997 | Georgia | N/A | Sep Acct | Third Party Investors | Shareholder | 100 | n/a | Ruth Fowler - SVP/CFO | Ruth Fowler - SVP/CFO | | Josh Terry | David Willmore | Y | 8/26/2014 | IMA terminated as of 8/26/14 | | |
| 123 | Cleat LLC | | 12/12/2012 | Delaware | TX | HCM | Highland Capital Management, L.P. | Sole Member | 100 | | | | | JP Sevilla | Kristin Hendrix | Y | 12/31/2015 | Formed to hold Barclays' interest but not used | | |
| 124 | College Savings Bank | | | Texas | | NB | NexBank SSB | Member | 100 | | | | | Dierk Holman | Courtney Burton | Y | | Merged into NexBank SSB and became a division of SSB | | |
| 125 | Complete Wellness Solutions, LLC | | 4/3/2012 | Texas | N/A | JD | James Dondero | Managing Member | 100 | n/a | Manager - James Dondero | Manager - James Dondero | James Dondero | Melissa Schroth | Melissa Schroth | Y | 11/7/2013 | Jim's pharmaceutical investment | | |
| 126 | Context Alternative Strategies Fund | | | | | Retail | Context Capital Funds | Trust | 100 | | Context Capital Funds - Trust / | | | Ethan Powell | Chris Wise | N | | | | |
| 127 | Copernicus Euro CDO I B.V.<br>[REMOVE – no longer manage] | | 9/11/2000 | Netherlands | N/A | Euro CLO | Third Party Investors | Common Shareholder | 100 | 33,250,000 | Mr. J.R. de Vos van Steenwijk, Ms. M.C. van James Jongele, | None | | John McAuliffe | Frank Waterhouse | N | Terminated 10/1/2014<br>Sold 8/17/12 | HCMLP subadvised - Subadvisory Agent as of 1/23/14<br>invest in various products, such as loans, bonds, cfo, synthetics | | |
| 128 | Crusader Master Fund Equity Holdings, Ltd. | | 12/20/2007 | Cayman Islands | N/A | Hedge | Highland Crusader Offshore Partners, L.P. | Shareholder | 100 | n/a | James Dondero | | Dondero, Okada, Dougherty, Boyce, Colvin, Kauffman, Halpin, Post, Stoops, Chism | Dondero/Okada | Cliff Stoops | Y | 12/9/2010 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership | |
| 129 | Crusader Offshore Holdings, Ltd. | | 6/18/2008 | Bermuda | N/A | Hedge | Highland Crusader Offshore Partners, L.P. | Sole Shareholder | 100 | n/a | James Dondero, Roderick Forrest, Nicholas Hoskins | James Dondero-Pres Roderick Forrest-VP Lorna Phillips-Secy | Chris Halpin, Jason Post, Cliff Stoops | Dondero/Okada | Cliff Stoops | Y | 12/7/2009 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership | |
| 130 | Denton 288 GP, LLC | | 1/9/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero Ted Daneris Scott Ellington | James Dondero-Pres Ted Daneris-VP Scott Ellington -Secy/Treas | Ted Daneris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Daneris | Drew Wilson | Y | 12/30/2014 | This entity is the general partner of a partnership that owns a real estate asset for investment purposes. | FORECLOSED | Dissolve upon distribution of funds |
| 131 | Denton 288, L.P. | | 1/9/2006 | Texas | N/A | RE | Denton 288 GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Daneris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Daneris | Drew Wilson | Y | 12/30/2014 | This entity owns a real estate asset for investment purposes. | FORECLOSED | Dissolve upon distribution of funds |
| 132 | Denton 288, L.P. | | 1/9/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 98.99 | n/a | General Partner | n/a | Ted Daneris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Daneris | Drew Wilson | Y | 12/30/2014 | This entity owns a real estate asset for investment purposes. | FORECLOSED | Dissolve upon distribution of funds |
| 133 | Denton 288, L.P. | | 1/9/2006 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 1 | n/a | General Partner | n/a | Ted Daneris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Daneris | Drew Wilson | Y | 12/30/2014 | This entity owns a real estate asset for investment purposes. | FORECLOSED | Dissolve upon distribution of funds |
| 134 | EFPRF Investments, LLC [IMA transferred from Charles G. Koch Charitable Foundation] | | 12/24/1980 | Kansas | N/A | Sep Acct | Koch Industries, Inc. | Member | 100 | n/a | David May | Brian Menkes-Secy | Acis - IM | Josh Terry | Will Mabry | Y | 6/30/2014 | Koch separate account managed by Acis | IMA will terminate as of 6/30/14 | |
| 135 | Elk CLO Holdings, LLC | | 9/16/2010 | Delaware | N/A | CLO Blocker | CLO HoldCo, Ltd. | Member | 20.4187 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Ted Daneris | Ed Leo | Y | 12/31/2014 | CLO blocker to hold Kyle assets (KAG Property) | Hewett's interest transferred to CLO Holdco as of 8/1/13 | |
| 136 | Elk CLO Holdings, LLC | | 9/16/2010 | Delaware | N/A | CLO Blocker | Highland Park CDO 1, Ltd. | Member | 38.7438 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Ted Daneris | Ed Leo | Y | 12/31/2014 | CLO blocker to hold Kyle assets (KAG Property) | | |
| 137 | Elk CLO Holdings, LLC | | 9/16/2010 | Delaware | N/A | CLO Blocker | Jasper CLO, Ltd. | Member | 4.5375 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Ted Daneris | Ed Leo | Y | 12/31/2014 | CLO blocker to hold Kyle assets (KAG Property) | | |
| 138 | Elk CLO Holdings, LLC | | 9/16/2010 | Delaware | N/A | CLO Blocker | Liberty CLO, Ltd. | Member | 4.5375 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Ted Daneris | Ed Leo | Y | 12/31/2014 | CLO blocker to hold Kyle assets (KAG Property) | | |
| 139 | Elk CLO Holdings, LLC | | 9/16/2010 | Delaware | N/A | CLO Blocker | Loan Funding IV LLC | Member | 4.5375 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Ted Daneris | Ed Leo | Y | 12/31/2014 | CLO blocker to hold Kyle assets (KAG Property) | | |
| 140 | Elk CLO Holdings, LLC | | 9/16/2010 | Delaware | N/A | CLO Blocker | Loan Funding VII LLC | Member | 4.5375 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Ted Daneris | Ed Leo | Y | 12/31/2014 | CLO blocker to hold Kyle assets (KAG Property) | | |
| 141 | Elk CLO Holdings, LLC | | 9/16/2010 | Delaware | N/A | CLO Blocker | Stratford CLO, Ltd. | Member | 22.6875 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Ted Daneris | Ed Leo | Y | 12/31/2014 | CLO blocker to hold Kyle assets (KAG Property) | | |
| 142 | Embarcadero Partners, L.P. | | 6/21/2005 | Texas | N/A | RE | HCREA Embarcadero L.P. | Class A Limited Partner | 54 | n/a | General Partner | n/a | Ted Daneris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Daneris | Tanya Massie | Y | 12/20/2010 | This entity owns a real estate asset for investment purposes. | IN CH 11 PROCESS | |
| 143 | Embarcadero Partners, L.P. | | 6/21/2005 | Texas | N/A | RE | Third Party Investors | Class A Limited Partner | 6 | n/a | General Partner | n/a | Ted Daneris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Daneris | Tanya Massie | Y | 12/20/2010 | This entity owns a real estate asset for investment purposes. | IN CH 11 PROCESS | |
| 144 | Embarcadero Partners, L.P. | | 6/21/2005 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 39 | n/a | General Partner | n/a | Ted Daneris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Daneris | Tanya Massie | Y | 12/20/2010 | This entity owns a real estate asset for investment purposes. | IN CH 11 PROCESS | |
| 145 | Embarcadero Partners, L.P. | | 6/21/2005 | Texas | N/A | RE | Pierview Partners, LLC | General Partner | 1 | n/a | General Partner | n/a | Ted Daneris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Daneris | Tanya Massie | Y | 12/20/2010 | This entity owns a real estate asset for investment purposes. | IN CH 11 PROCESS | |
| 146 | Embarcadero Water Supply Corp. | | 5/18/2006 | Texas | N/A | RE | [Stocks never issued] | | n/a | n/a | Wallace H. Scott, III H.M. Pike, Jr. Glen Nickerson | Wallace H. Scott, III H.M. Pike, Jr. Glen Nickerson | | Ted Daneris | Tanya Massie | Y | 12/20/2010 | Entity set up to control the water rights of one of the projects that HCREF is a limited partner (HCREA Embarcadero Partners, LP) | | |
| 147 | Emerald Orchard Limited | | | 36804 | Cayman Islands | Sep Acct | Ontario Teachers' Pension Plan | Shareholders | 100 | N/A | Bank of Nova Scotia | | Dondero, Okada, Dougherty, Boyce, Colvin, Kauffman, Halpin, Post, Stoops, | Paul Kauffman | Jack Bateman | Terminated | 7/15/2010 | Highland-managed separate account for Ontario Teacher's Pension Plan. Management terminated | | |
| 148 | Endurance Investement Holdings Ltd. (fka Montpelier Investment Holdings, Ltd.) | IMA-10/30/12 | Bermuda | N/A | Sep Acct | Endurance Specialty Holdings, Ltd. | Shareholder | 100 | | Michael J. McGuire-CFO John V. Del Col-GC | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Hunter Covitz | Taylor Colbert/ Charlie Hoedebeck | Terminated | 8/31/2016 | Acis managed - IMA signed 10/30/2012 Acquired by Endurance effective 7/31/15 | Contact: Mark Silverstein msilverstein@enduranceservi | | | |
| 149 | Entegra Crusader Superholdco, LLC | | 8/16/2013 | Delaware | N/A | Hedge Blocker | Highland Holding Corporation | Member | 100 | n/a | Dondero, Okada, Ellington, Waterhouse | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matthew Gray | James Palmer | CRUSADER IMA Y | 12/26/2014 | Crusader blocker to hold Entegra Power interest | | | |
| 150 | Entegra-DCF Superholdco, LLC | | 8/16/2013 | Delaware | N/A | I-Blocker | Highland Offshore Partners, L.P. | Member | 100 | n/a | Dondero, Okada, Ellington, Waterhouse | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matthew Gray | Taylor Colbert | Y | 12/26/2018 | DCF blocker to hold Entegra Power interest | | | |
| 151 | Entegra-Granite Bay Holdco, LLC | | 9/25/2014 | Delaware | N/A | I-Blocker | Granite Bay Long/Short Credit Master Fund, L.P. | Member | 100 | n/a | N/A | Okada, Parker, Waterhouse | Matthew Gray | Charlie Hoedebeck | Y | 12/27/2018 | | | | |
| 152 | Falcon E&P Five, LLC | | 11/17/2011 | Texas | N/A | Falcon | Falcon E&P Opportunities Fund, L.P. | Member | 100 | 100 Member | Lane Britain-Managing Director | | Member | Lane Britain/ Marc Manzo | Mike Throckmorton | Y | 12/27/2018 | Falcon investment subsidiary | | | |
| 153 | Falcon E&P Opportunities Fund B, L.P. | | 3/31/2010 | Delaware | N/A | Falcon | Oil&Gas/Ca nopy | Falcon E&P Opportunities Fund GP, LLC | General Partner | TBD | 0 | GP | | N/A | Marc Manzo Lane Britain | Marc Manzo | Y | 12/13/2011 | New energy fund (non-taxable) - not launched yet | | | |
| 154 | Falcon E&P Seven, LLC | | 6/6/2013 | Texas | N/A | Falcon | Oil&Gas/Ca nopy | Falcon E&P Opportunities Fund, L.P. | Member | 100 | 100 Member | Lane Britain-Managing Director | | Member | Lane Britain/ Marc Manzo | Mike Throckmorton | Y | 12/30/2014 | Falcon investment subsidiary | | | |
| 155 | Falcon E&P Three, LLC | | 5/16/2011 | Texas | N/A | Falcon | Oil&Gas/Ca nopy | Falcon E&P Opportunities Fund, L.P. | Member | 100 | 100 Member | Lane Britain-Managing Director | | Member | Lane Britain/ Marc Manzo | Mike Throckmorton | Y | 12/27/2018 | Falcon investment subsidiary | | | |
| 156 | Falcon Seven Opus JOA | | n/a | n/a | N/A | Oil&Gas/ Canopy | Lane Britain | | | | | | | Lane Britain/ Marc Manzo | Jennifer Blumer | | | | | | |
| 157 | Fanshaw Bay, LLC | | 12/26/2017 | Delaware | N/A | I-Blocker | Mark Okada | Member | 12.36 | N/A | | James Dondero-President Mark Okada-EVP Trey Parker-Secy Frank Waterhouse-Treas | James Dondero-President Mark Okada-EVP Trey Parker-Secy Frank Waterhouse-Treas | Jon Poglitsch | Mike Throckmorton | Y | 6/12/2019 | iHeart blocker | Granite Bay interest assigned to Okada of 12.4.18 | | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 123 of 376

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

| A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fanshaw Bay, LLC | | 12/26/2017 | Delaware | N/A | I-Blocker | Highland Dynamic Income Master Fund, L.P. | Member | 8.48 | | N/A | | | | James Dondero-President Mark Okada-EVP Trey Parker-Secy Frank Waterhouse-Treas | James Dondero-President Mark Okada-EVP Trey Parker-Secy Frank Waterhouse-Treas | Jon Poglitsch | Mike Throckmorton | Y | 6/12/2019 | iHeart blocker | | |
| Fanshaw Bay, LLC | | 12/26/2017 | Delaware | N/A | I-Blocker | Longhorn Credit Funding, LLC | Member | 30.4 | | N/A | | | | James Dondero-President Mark Okada-EVP Trey Parker-Secy Frank Waterhouse-Treas | James Dondero-President Mark Okada-EVP Trey Parker-Secy Frank Waterhouse-Treas | Jon Poglitsch | Mike Throckmorton | Y | 6/12/2019 | iHeart blocker | | |
| Fanshaw Bay, LLC | | 12/26/2017 | Delaware | N/A | I-Blocker | PensionDanmark | Member | 48.76 | | N/A | | | | James Dondero-President Mark Okada-EVP Trey Parker-Secy Frank Waterhouse-Treas | James Dondero-President Mark Okada-EVP Trey Parker-Secy Frank Waterhouse-Treas | Jon Poglitsch | Mike Throckmorton | Y | 6/12/2019 | iHeart blocker | | |
| Firearms Venture I, LLC | | 1/11/2008 | Delaware | N/A | JD | James Dondero | Member | 100 | N/A | | | | | James Dondero-Member | N/A | | James Dondero | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | Jim's firearms investment | | |
| First Trust/Highland Capital Floating Rate Income Fund II | | 5/16/2005 | Ontario | N/A | Retail | Third Party Investors | Shareholder | 100 | | n/a | | | | Mark Bradley Robert Bredemeier Fraser Howell Ronald McAlister John Szucs Robert Turner | Ronald McAlister-CEO Mark Bradley-CFO Scott Blair-SVP Craig Brown-Secy Lawrence Guy-VP Liberty Rivera-VP | Auth Sigs: Joe Dougherty Matt Okolita Greg Stuecheli Brian Mitts Ethan Powell Mandy Garrett | Joe Dougherty | Ethan Powell | Y | 3/31/2011 | FT1 merged with FT2 in 8/18/09 | Liquidated 3/31/11 | |
| First Trust/Highland Capital Senior Loan Trust | | 5/16/2005 | Ontario | N/A | Retail | Third Party Investors | Shareholder | 100 | | n/a | | | | Mark Bradley Robert Bredemeier | Ronald McAlister-CEO Mark Bradley-CFO Scott Blair-SVP | Auth Sigs: Joe Dougherty Matt Okolita | Joe Dougherty | Ethan Powell | Y | 3/31/2011 | | Liquidated 3/31/11 | |
| Focsle LLC | | 12/12/2012 | Delaware | TX | HCM | Cleat LLC | Sole Member | 100 | N/A | | | | | | | | JP Sevilla | Kristin Hendrix | | Y | 12/31/2015 | Formed to hold Barclays' interest but not used | | |
| Foremast LLC | | 12/12/2012 | Delaware | TX | HCM | Highland Capital Management, L.P. | Sole Member | 100 | N/A | | | | | | | | JP Sevilla | Kristin Hendrix | | Y | 12/31/2015 | Formed to hold Barclays' interest but not used | | |
| Fountain Hills, LLC | | 8/11/2004 | Arizona | N/A | RE | Ellman Holdings, Inc | Member | 10.00% | | | | | | Bob Kaufman-EVP/Ellman Management Group, Inc.-Manager | Bob Kaufman-EVP/Ellman Management Group, Inc.-Manager | Bob Kaufman-EVP/Ellman Management Group, Inc.-Manager | Ted Dameris/Jim Pfertner | | Y | 12/30/2009 | RE investment portfolio | | |
| Fountain Hills, LLC | | 8/11/2004 | Arizona | N/A | RE | Stanfield Capital Partners, LLC | Member | 22.50% | | | | | | Ellman | Ellman | Ellman | Ted Dameris/Jim Pfertner | | Y | 12/30/2009 | | | |
| Fountain Hills, LLC | | 8/11/2004 | Arizona | N/A | RE | Highland Capital Real Estate Fund, L.P. | Member | 22.50% | | | | | | Ellman | Ellman | Ellman | Ted Dameris/Jim Pfertner | | Y | 12/30/2009 | | | |
| Fountain Hills, LLC | | 8/11/2004 | Arizona | N/A | RE | Camulous Capital, LP | Member | 22.50% | | | | | | Ellman | Ellman | Ellman | Ted Dameris/Jim Pfertner | | Y | 12/30/2009 | | | |
| Fountain Hills, LLC | | 8/11/2004 | Arizona | N/A | RE | Credit Suisse Management, LLC | Member | 22.50% | | | | | | Ellman | Ellman | Ellman | Ted Dameris/Jim Pfertner | | Y | 12/30/2009 | | | |
| FRBH Arbors, LLC | | 12/10/2013 | Texas | N/A | REIT | FRBH C1 Residential, LLC | Member | 100 | | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts | Brian Mitts | | Y | 1/14/2014 | Dissolve in TX and reform in DE | | |
| FRBH Colonial Forest SM, Inc. | | 8/19/2014 | Delaware | N/A | REIT | BH Equities, LLC | Shareholder | 100 | | | | | | Brian Mitts | Brian Mitts - Secy/auth sig | Brian Mitts | Matt McGraner | Brandon Knott | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD | |
| FRBH Colonial Forest, LLC | | 6/18/2014 | Delaware | FL | REIT | FRBH JAX-TPA, LLC | Member | 90 | N/A | | | | | | Matt McGraner | Matt McGraner | Matt McGraner | Brandon Knott | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD | |
| FRBH Colonial Forest, LLC | | 6/18/2014 | Delaware | FL | REIT | Third Party | Member | 10 | N/A | | | | | | | Matt McGraner | Matt McGraner | Brandon Knott | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD | |
| FRBH CP, LLC | | 12/10/2013 | Texas | N/A | REIT | FRBH C1 Residential, LLC | Member | 100 | | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts | Brian Mitts | | Y | 1/14/2014 | Dissolve in TX and reform in DE | | |
| FRBH Eaglecrest, LLC | | 12/10/2013 | Texas | N/A | REIT | FRBH C1 Residential, LLC | Member | 100 | | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts | Brian Mitts | | Y | 1/14/2014 | Dissolve in TX and reform in DE | | |
| FRBH Frederick, LLC | | 2/18/2014 | Delaware | MD | REIT | FRBH C1 Residential, LLC | Member | 76.3 | N/A | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Matt McGraner | Matt McGraner | Brandon Knott | | Y | 12/28/2017 | | | |
| FRBH Frederick, LLC | | 2/18/2014 | Delaware | MD | REIT | Third Party | Member | 23.7 | N/A | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Matt McGraner | Matt McGraner | Brandon Knott | | Y | 12/28/2017 | | | |
| FRBH Meridian, LLC | | 12/10/2013 | Texas | N/A | REIT | FRBH C1 Residential, LLC | Member | 100 | | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts | Brian Mitts | | Y | 5/17/2017 | Dissolve in TX and reform in DE | | |
| FRBH Meridian, LLC | | 1/3/2014 | Delaware | TX | REIT | FRBH C1 Residential, LLC | Member | 90 | N/A | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Matt McGraner | Brandon Knott | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD | |
| FRBH Meridian, LLC | | 1/3/2014 | Delaware | TX | REIT | Third Party | Member | 10 | N/A | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | | Matt McGraner | Brandon Knott | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD | |
| FRBH Park at Blanding SM, Inc. | | 8/19/2014 | Delaware | N/A | REIT | BH Equities, LLC | Shareholder | 100 | | | | | | Brian Mitts | Brian Mitts - Secy/auth sig | Brian Mitts | Matt McGraner | Brandon Knott | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD | |
| FRBH Park at Blanding, LLC | | 6/24/2014 | Delaware | FL | REIT | FRBH JAX-TPA, LLC | Member | 90 | N/A | | | | | | Matt McGraner | Matt McGraner | Matt McGraner | Brandon Knott | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD | |
| FRBH Park at Blanding, LLC | | 6/24/2014 | Delaware | FL | REIT | Third Party | Member | 10 | N/A | | | | | | | Matt McGraner | Matt McGraner | Brandon Knott | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD | |
| FRBH Park at Regency SM, Inc. | | 8/19/2014 | Delaware | N/A | REIT | BH Equities, LLC | Shareholder | 100 | | | | | | Brian Mitts | Brian Mitts - Secy/auth sig | Brian Mitts | Matt McGraner | Brandon Knott | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD | |
| FRBH Park at Regency, LLC | | 6/24/2014 | Delaware | FL | REIT | FRBH JAX-TPA, LLC | Member | 90 | N/A | | | | | | Brian Mitts | Matt McGraner | Matt McGraner | Brandon Knott | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD | |
| FRBH Park at Regency, LLC | | 6/24/2014 | Delaware | FL | REIT | Third Party | Member | 10 | N/A | | | | | | Brian Mitts | Matt McGraner | Matt McGraner | Brandon Knott | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD | |
| FRBH Silverbrook, LLC | | 12/10/2013 | Texas | N/A | REIT | FRBH C1 Residential, LLC | Member | 100 | | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts | Brian Mitts | | Y | 1/14/2014 | Dissolve in TX and reform in DE | | |
| FRBH Timberglen, LLC | | 12/10/2013 | Texas | N/A | REIT | FRBH C1 Residential, LLC | Member | 100 | | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts | Brian Mitts | | Y | 1/14/2014 | Dissolve in TX and reform in DE | | |
| FRBH Toscana, LLC | | 12/10/2013 | Texas | N/A | REIT | FRBH C1 Residential, LLC | Member | 100 | | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts | Brian Mitts | | Y | 1/14/2014 | Dissolve in TX and reform in DE | | |
| FRBH Toscana, LLC | | 1/3/2014 | Delaware | TX | REIT | FRBH C1 Residential, LLC | Member | 100 | N/A | | | | | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Matt McGraner | Brandon Knott | | | Y | 1/31/2018 | | | |

| # | A | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 192 | FRBH Toscana, LLC | 1/3/2014 | Delaware | TX | REIT | C-1 Toscana, Inc. | Special Member | 0 | N/A | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts-Manager Harry Bookey-Manager | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | |
| 193 | FRBH Victoria Park SM, Inc. | 9/10/2014 | Delaware | N/A | REIT | BH Equities, LLC | Shareholder | 100 | N/A | Brian Mitts | Brian Mitts - Secy/auth sig | | Matt McGraner | Brandon Knott | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD |
| 194 | FRBH Victoria Park, LLC | 6/24/2014 | Delaware | FL | REIT | FRBH JAX-TPA, LLC | Member | 90 | N/A | | Brian Mitts Matt McGraner | | Matt McGraner | Brandon Knott | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD |
| 195 | FRBH Victoria Park, LLC | 6/24/2014 | Delaware | FL | REIT | Third Party | Member | 10 | N/A | | Brian Mitts Matt McGraner | | Matt McGraner | Brandon Knott | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD |
| 196 | FRBH Willowdale, LLC | 4/22/2014 | Delaware | MD | REIT | BH Willowdale Manager, LLC | Member | 80 | N/A | | Brian Mitts Matt McGraner | | Matt McGraner | Brandon Knott | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD |
| 197 | FRBH Willowdale, LLC | 4/22/2014 | Delaware | MD | REIT | Freedom Willowdale, LLC | Member | 10 | N/A | | Brian Mitts Matt McGraner | | Matt McGraner | Brandon Knott | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD |
| 198 | FRBH Willowdale, LLC | 4/22/2014 | Delaware | MD | REIT | SMG Willowdale LLC | Member | 14 | N/A | | Brian Mitts Matt McGraner | | Matt McGraner | Brandon Knott | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD |
| 199 | FRBH Wood Forest SM, Inc. | 8/19/2014 | Delaware | N/A | REIT | BH Equities, LLC | Shareholder | 100 | | Brian Mitts | Brian Mitts - Secy/auth sig | | | | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD |
| 200 | FRBH Wood Forest, LLC | 6/24/2014 | Delaware | FL | REIT | FRBH JAX-TPA, LLC | Member | 90 | N/A | | Brian Mitts Matt McGraner | | Matt McGraner | Brandon Knott | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD |
| 201 | FRBH Wood Forest, LLC | 6/24/2014 | Delaware | FL | REIT | Third Party | Member | 10 | N/A | | Brian Mitts Matt McGraner | | Matt McGraner | Brandon Knott | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD |
| 202 | Freedom BBY 22401, LLC | 9/27/2013 | Delaware | MD | REIT | NexPoint Real Estate Opportunities, LLC (fka Freedom REIT LLC) | Member | 100 | N/A | Member Managed | Member Managed | James Dondero-Pres/PEO Brian Mitts-EVP/PFO/PAO Frank Waterhouse-Treas Cliff Stoops-Asst Treas Dustin Norris-Secy | Matt McGraner | Brandon Knott | Y | 5/17/2017 | | UNDERLYING PROPERTY SOLD |
| 203 | Freedom BBY 32114, LLC | 9/25/2013 | Delaware | FL | REIT | NexPoint Real Estate Opportunities, LLC (fka Freedom REIT LLC) | Member | 100 | N/A | Member Managed | Member Managed | James Dondero-Pres/PEO Brian Mitts-EVP/PFO/PAO Frank Waterhouse-Treas Cliff Stoops-Asst Treas Dustin Norris-Secy | Matt McGraner | Brandon Knott | Y | 5/17/2017 | Best Buy - Daytona, Floria | UNDERLYING PROPERTY SOLD |
| 204 | Freedom Miramar SM, Inc. | 1/7/2015 | Delaware | N/A | REIT | NexPoint Real Estate Opportunities, LLC (fka Freedom REIT LLC) | Shareholder | 100 | N/A | Brian Mitts | Brian Mitts-Secy/ Authorized Agent | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | |
| 205 | Freedom Overlook Manor, LLC | 2/19/2014 | Delaware | MD | REIT | NexPoint Residential Trust Operating Partnership, L.P. | Member | 100 | N/A | | Brian Mitts Matt McGraner | | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | |
| 206 | Freedom RAD Canton, LLC | 11/8/2013 | Delaware | Michigan | REIT | Freedom REIT LLC | Member | 100 | N/A | Member Managed | Member Managed | Brian Mitts/Dustin Norris | Brian Mitts | Dustin Norris | N | 8/8/2014 | RiteAid - Canton, Michigan | |
| 207 | Freedom Regatta Bay, LLC | 2/19/2014 | Delaware | TX | REIT | NexPoint Residential Trust Operating Partnership, L.P. | Member | 100 | N/A | Member Managed | Member Managed | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/31/2018 | Investment partner in Regatta Bay Apartments in Seabrook, TX | |
| 208 | Freedom Sarasota LLC | 6/6/2013 | Delaware | FL | REIT | NexPoint Real Estate Opportunities, LLC (fka Freedom REIT LLC) | Member | 100 | N/A | Member Managed | Member Managed | James Dondero-Pres/PEO Brian Mitts-EVP/PFO/PAO Frank Waterhouse-Treas Cliff Stoops-Asst Treas Dustin Norris-Secy | Matt McGraner | Brandon Knott | Y | 5/17/2017 | Staples Sarasota purchase | UNDERLYING PROPERTY SOLD |
| 209 | Freedom SPLS Phoenix, LLC | 10/24/2013 | Delaware | AZ | REIT | Freedom REIT LLC | Member | 100 | 100 | Member Managed | Member Managed | Brian Mitts/Dustin Norris | Brian Mitts | Dustin Norris | N | 8/8/2014 | Staples Phoenix purchase | |
| 210 | Frisco TC LP | 8/26/2004 | Texas | N/A | JD | Texas Land Management LLC | General Partner | 0 | | Texas Land Management LLC | N/A | Texas Land Management LLC | Matt Griffith | Matt Griffith | Y | sold 8/8/07 | | 5400 Dallas Pkwy Frisco, TX 75034 |
| 211 | Frisco TC LP | 8/26/2004 | Texas | N/A | JD | Mark Okada | Limited Partner | 2.5 | | Texas Land Management LLC | | Texas Land Management LLC | Matt Griffith | Matt Griffith | Y | sold 8/8/07 | Jim's investment property | as of 12/31/08 |
| 212 | Frisco TC LP | 8/26/2004 | Texas | N/A | JD | Todd & Kim Travers | Limited Partner | 2.5 | | Texas Land Management LLC | | Texas Land Management LLC | Matt Griffith | Matt Griffith | Y | sold 8/8/07 | Jim's investment property | as of 12/31/08 |
| 213 | Frisco TC LP | 8/26/2004 | Texas | N/A | JD | Highland Real Estate Fund 2002-A | Limited Partner | 20 | | Texas Land Management LLC | | Texas Land Management LLC | Matt Griffith | Matt Griffith | Y | sold 8/8/07 | Jim's investment property | as of 12/31/08 |
| 214 | Frisco TC LP | 8/26/2004 | Texas | N/A | JD | The Get Good Non-Exempt Trust No. 1 | Limited Partner | 5 | | Texas Land Management LLC | | Texas Land Management LLC | Matt Griffith | Matt Griffith | Y | sold 8/8/07 | Jim's investment property | as of 12/31/08 |
| 215 | Frisco TC LP | 8/26/2004 | Texas | N/A | JD | Pat Dougherty | Limited Partner | 2.5 | | Texas Land Management LLC | | Texas Land Management LLC | Matt Griffith | Matt Griffith | Y | sold 8/8/07 | Jim's investment property | as of 12/31/08 |
| 216 | Frisco TC LP | 8/26/2004 | Texas | N/A | JD | Raymond Joseph Dougherty | Limited Partner | 1.25 | | Texas Land Management LLC | | Texas Land Management LLC | Matt Griffith | Matt Griffith | Y | sold 8/8/07 | Jim's investment property | as of 12/31/08 |
| 217 | Frisco TC LP | 8/26/2004 | Texas | N/A | JD | Kurt Plumer | Limited Partner | 1.25 | | Texas Land Management LLC | | Texas Land Management LLC | Matt Griffith | Matt Griffith | Y | sold 8/8/07 | Jim's investment property | as of 12/31/08 |
| 218 | Frisco TC LP | 8/26/2004 | Texas | N/A | JD | Brad Borud | Limited Partner | 1.25 | | Texas Land Management LLC | | Texas Land Management LLC | Matt Griffith | Matt Griffith | Y | sold 8/8/07 | Jim's investment property | as of 12/31/08 |
| 219 | Frisco TC LP | 8/26/2004 | Texas | N/A | JD | Third Party Investors | Limited Partner | 63.75 | | Texas Land Management LLC | | Texas Land Management LLC | Matt Griffith | Matt Griffith | Y | sold 8/8/07 | Jim's investment property | as of 12/31/08 |
| 220 | FTI Panda Holdings Corp. | 4/20/2009 | Delaware | N/A | JD | First Trust/Highland Capital Floating Rate Income Fund II | Common Shareholder | 100 | N/A | Ronald McAlister, Mark Bradley | Ronald McAlister-Pres, Mark Bradley-Sec/Treasurer | Joe Dougherty | Ethan Powell | Y | 3/31/2011 | | Liquidated 3/31/11 |
| 221 | Gambier Bay, LLC | 12/26/2017 | Delaware | N/A | Retail Blocker | NexPoint Capital, Inc. | Member | 20 | N/A | | Dustin Norris-EVP F. Waterhouse-Treas/PAO/PFO/PEO Cliff Stoops-A. Treas Lauren Thedford-Secy | Dustin Norris-EVP F. Waterhouse-Treas/PAO/PFO/PEO Cliff Stoops-A. Treas Lauren Thedford-Secy | Jon Poglitsch | Will Mabry/ Will Duffy | N | 6/12/2019 | iHeart blocker |
| 222 | Gambier Bay, LLC | 12/26/2017 | Delaware | N/A | Retail Blocker | NexPoint Credit Strategies Fund | Member | 20 | N/A | | Dustin Norris-EVP F. Waterhouse-Treas/PAO/PFO/PEO Cliff Stoops-A. Treas Lauren Thedford-Secy Jason Post-CCO/AMLO | Dustin Norris-EVP F. Waterhouse-Treas/PAO/PFO/PEO Cliff Stoops-A. Treas | Jon Poglitsch | Will Mabry/ Will Duffy | N | 6/12/2019 | iHeart blocker |
| 223 | Gambier Bay, LLC | 12/26/2017 | Delaware | N/A | Retail Blocker | Highland Floating Rate Opportunities Fund | Member | 20 | N/A | | Dustin Norris-EVP F. Waterhouse-Treas/PAO/PFO/PEO Cliff Stoops-A. Treas | Dustin Norris-EVP F. Waterhouse-Treas/PAO/PFO/PEO Cliff Stoops-A. Treas | Jon Poglitsch | Will Mabry/ Will Duffy | N | 6/12/2019 | iHeart blocker |
| 224 | Gambier Bay, LLC | 12/26/2017 | Delaware | N/A | Retail Blocker | Highland Global Allocation Fund | Member | 20 | N/A | | Dustin Norris-EVP F. Waterhouse-Treas/PAO/PFO/PEO Cliff Stoops-A. Treas | Dustin Norris-EVP F. Waterhouse-Treas/PAO/PFO/PEO Cliff Stoops-A. Treas | Jon Poglitsch | Will Mabry/ Will Duffy | N | 6/12/2019 | iHeart blocker |
| 225 | Gambier Bay, LLC | 12/26/2017 | Delaware | N/A | Retail Blocker | Highland Opportunistic Credit Fund | Member | 20 | N/A | | Dustin Norris-EVP F. Waterhouse-Treas/PAO/PFO/PEO Cliff Stoops-A. Treas | Dustin Norris-EVP F. Waterhouse-Treas/PAO/PFO/PEO Cliff Stoops-A. Treas | Jon Poglitsch | Will Mabry/ Will Duffy | N | 6/12/2019 | iHeart blocker |
| 226 | Gardens of Denton, L.P. | 12/23/2009 | Delaware | N/A | JD | Andrew Merrick Construction LLC | General Partner | 1 | N/A | GP/Wayne Lewis | GP/Wayne Lewis | James Dondero, Wayne Lewis | Matt Griffith | Matt Griffith | Y | 3/7/2011 | Jim's investment property | |
| 227 | Gardens of Denton, L.P. | 12/23/2009 | Delaware | N/A | JD | Wayne Lewis | Limited Partner | 99 | N/A | GP/Wayne Lewis | GP/Wayne Lewis | James Dondero, Wayne Lewis | Matt Griffith | Matt Griffith | Y | 3/7/2011 | Jim's investment property | |

| # | A | C | D | E | F | G | H | I | J | K | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 228 | Gardens of Denton, L.P. | 3/2/2011 | Texas | N/A | JD | Dugaboy Project Management GP, LLC | General Partner | 1 | JD | General Partner | Nancy Dondero-Trustee of sole member of GP | Nancy Dondero-Trustee of sole member of GP | Melissa Schroth | Melissa Schroth | Y | 12/29/2016 | Jim's investment property | |
| 229 | Gardens of Denton, L.P. | 3/2/2011 | Texas | N/A | JD | The Dugaboy Investment Trust | Class I LP | 75 | JD | General Partner | Nancy Dondero-Trustee of sole member of GP | Nancy Dondero-Trustee of sole member of GP | Melissa Schroth | Melissa Schroth | Y | 12/29/2016 | Jim's investment property | |
| 230 | Gardens of Denton, L.P. | 3/2/2011 | Texas | N/A | JD | The Dugaboy Investment Trust | Class II LP | 24 | JD | General Partner | Nancy Dondero-Trustee of sole member of GP | Nancy Dondero-Trustee of sole member of GP | Melissa Schroth | Melissa Schroth | Y | 12/29/2016 | Jim's investment property | |
| 231 | Geneve Corporation | 11/23/1971 | Delaware | N/A | Sep Acct | [Netter International Ltd.] | First Series Class B Common Shares | 100 | | External Geneve Directors | External Geneve Directors | External Geneve Directors | Michael Gregory | Dustin Norris | Terminated | 12/31/2012 | Separate Account managed by Cummings Bay Capital through Michael Gregory | Management Agreement terminated as of 12/31/12 |
| 232 | Gillespie Income Fund, LLC | 10/22/2004 | Delaware | N/A | Hedge Blocker | Highland Crusader Offshore Partners, L.P. | Member | 100 | n/a | James Dondero-Pres | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Tom Beauchamp | CRUSADER IMA TERMINATED | 8/4/2016 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership |
| 233 | Goldfield Preserve Development, LLC | 5/10/2006 | Delaware | N/A | RE | Ellman Management Group, Inc. | Class A Member | 50.00% | | Bob Kaufman-EVP/Ellman Management Group, Inc.-Manager | Bob Kaufman-EVP/Ellman Management Group, Inc.-Manager | Bob Kaufman-EVP/Ellman Management Group, Inc.-Manager | Ted Dameris | | Y | | RE investment portfolio | Foreclosed |
| 234 | Goldfield Preserve Development, LLC | 5/10/2006 | Delaware | N/A | RE | SOLA Preserve, LLC | Class B-1 Member | 12.90% | | Ellman | Ellman | Ellman | Ted Dameris | | Y | | RE investment portfolio | |
| 235 | Goldfield Preserve Development, LLC | 5/10/2006 | Delaware | N/A | RE | SOLUS, LLC | Class B-1 Member | 0.90% | | Ellman | Ellman | Ellman | Ted Dameris | | Y | | RE investment portfolio | |
| 236 | Goldfield Preserve Development, LLC | 5/10/2006 | Delaware | N/A | RE | CMF Goldfield LTD | Class B-1 Member | 8.28% | | Ellman | Ellman | Ellman | Ted Dameris | | Y | | RE investment portfolio | |
| 237 | Goldfield Preserve Development, LLC | 5/10/2006 | Delaware | N/A | RE | Credit Suisse Management, LLC | Class B-1 Member | 9.66% | | Ellman | Ellman | Ellman | Ted Dameris | | Y | | RE investment portfolio | |
| 238 | Goldfield Preserve Development, LLC | 5/10/2006 | Delaware | N/A | RE | Highland Goldfield Preserve Holding, LLC | Class B-1 Member | 3.45% | | Ellman | Ellman | Ellman | Ted Dameris | | Y | | RE investment portfolio | |
| 239 | Goldfield Preserve Development, LLC | 5/10/2006 | Delaware | N/A | RE | Highland Goldfield Preserve Holdings II, LLC | Class B-1 Member | 2.76% | | Ellman | Ellman | Ellman | Ted Dameris | | Y | | RE investment portfolio | |
| 240 | Goldfield Preserve Development, LLC | 5/10/2006 | Delaware | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class B-1 Member | 0.69% | | Ellman | Ellman | Ellman | Ted Dameris | | Y | | RE investment portfolio | |
| 241 | Goldfield Preserve Development, LLC | 5/10/2006 | Delaware | N/A | RE | Highland Crusader Offshore Partners, L.P. | Class B-1 Member | 1.38% | | Ellman | Ellman | Ellman | Ted Dameris | | Y | | RE investment portfolio | |
| 242 | Goldfield Preserve Development, LLC | 5/10/2006 | Delaware | N/A | RE | Credit Suisse Securities (USA) LLC | Class B-2 Member | 10.00% | | Ellman | Ellman | Ellman | Ted Dameris | | Y | | RE investment portfolio | |
| 243 | Granite Bay Long/Short Credit Fund, L.P. | 9/17/2010 | Delaware | N/A | I-Fund | Granite Bay Long/Short Credit GP, LLC | General Partner | 0 | N/A | GP | GP | Okada, Parker, Waterhouse, Stoops, Palmer, Chism | Mark Okada | Charlie Hoedebeck | Y | 12/27/2018 | | |
| 244 | Granite Bay Long/Short Credit Fund, L.P. | 9/17/2010 | Delaware | N/A | I-Fund | Mark Okada | Limited Partner | 89.54 | N/A | GP | GP | Okada, Parker, Waterhouse, Stoops, Palmer, Chism | Mark Okada | Charlie Hoedebeck | Y | 12/27/2018 | | |
| 245 | Granite Bay Long/Short Credit Fund, L.P. | 9/17/2010 | Delaware | N/A | I-Fund | Granite Bay Advisors, L.P. | Limited Partner | 10.46 | N/A | GP | GP | Okada, Parker, Waterhouse, Stoops, Palmer, Chism | Mark Okada | Charlie Hoedebeck | Y | 12/27/2018 | | |
| 246 | Granite Bay Long/Short Credit Fund, Ltd. | 3/1/2012 | Cayman Islands | N/A | I-Fund | Granite Bay Advisors, L.P. | Shareholder | 0 | 1 | Mark Okada James Dondero (Intertrust) | N/A | Okada, Parker, Waterhouse, Stoops, Palmer, Chism | Mark Okada | Charlie Hoedebeck | Y | 3/29/2019 | | |
| 247 | Granite Bay Long/Short Credit GP, LLC | 9/17/2010 | Delaware | Cayman Islands | I-Fund | Granite Bay Advisors, L.P. | Member | 100 | N/A | Sole Member | Sole Member | Okada, Parker, Waterhouse, Stoops, Palmer, Chism | Mark Okada | Charlie Hoedebeck | Y | 12/27/2018 | | |
| 248 | Granite Bay Long/Short Credit Master Fund, L.P. | 9/24/2010 | Cayman Islands | N/A | I-Fund | Granite Bay Long/Short Credit Fund, L.P. | Limited Partner | 100 | N/A | GP (Intertrust) | GP | Okada, Parker, Waterhouse, Stoops, Palmer, Chism | Mark Okada | Charlie Hoedebeck | Y | 12/28/2018 | | |
| 249 | Granite Bay Long/Short Credit Master Fund, L.P. | 9/24/2010 | Cayman Islands | N/A | I-Fund | Granite Bay Long/Short Credit Fund, Ltd. | Limited Partner | 0 | N/A | GP (Intertrust) | GP | Okada, Parker, Waterhouse, Stoops, Palmer, Chism | Mark Okada | Charlie Hoedebeck | Y | 12/28/2018 | | |
| 250 | Grey Walls Bexar County, L.P. | 10/12/2005 | Texas | N/A | RE | HCREA Grey Walls, L.P. | Limited Partner | 60 | | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity owns a real estate asset for investment purposes. | SOLD TO SHADFAN IN 2009 |
| 251 | Grey Walls Bexar County, L.P. | 10/12/2005 | Texas | N/A | RE | Grey Walls San Antonio GP, LLC | General Partner | 40 | | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity owns a real estate asset for investment purposes. | SOLD TO SHADFAN IN 2009 |
| 252 | Grey Walls San Antonio GP, LLC | 4/21/2008 | Delaware | TX | RE | James Dondero | Sole Member | 100 | n/a | James Dondero Ted Dameris Scott Ellington | James Dondero-Pres Ted Dameris-VP Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops | Ted Dameris | Tanya Massie | Y | 12/22/2010 | This entity is the general partner of a partnership that owns a real estate asset for investment purposes (Grey Walls Bexar County, LP). | GP to Grey Walls Bexar County, LP |
| 253 | Harvest Fund XX, L.P. | 3/1/2006 | Texas | N/A | RE | HCREA Princeton 380 L.P. | Class A Limited Partner | 90 | N/A | General Partner Controlled | | General Partner Controlled | Ted Dameris | Drew Wilson | FORECLOSED | | This entity owns a real estate asset for investment purposes. | FORECLOSED — We do not control - delete |
| 254 | Harvest Fund XX, L.P. | 3/1/2006 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 9.9 | N/A | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Drew Wilson | FORECLOSED | | This entity owns a real estate asset for investment purposes. | FORECLOSED — We do not control - delete |
| 255 | Harvest Fund XX, L.P. | 3/1/2006 | Texas | N/A | RE | Third Party Investors | General Partner | 0.1 | N/A | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Drew Wilson | FORECLOSED | | This entity owns a real estate asset for investment purposes. | FORECLOSED — We do not control - delete |
| 256 | Hayman Capital Master Fund, LP | 12/12/2005 | N/A | N/A | JD | Hayman Capital Partners, L.P. | Limited Partner | 62.3 | N/A | | | | Melissa Schroth | Melissa Schroth | N | | | as of 12/31/08 |
| 257 | Hayman Capital Master Fund, LP | 12/12/2005 | Delaware | N/A | JD | Third Party Investors | Limited Partner | 37.7 | N/A | | | | Melissa Schroth | Melissa Schroth | N | | | as of 12/31/08 |
| 258 | Hayman Capital Partners, L.P. | 12/12/2005 | Delaware | N/A | JD | The Get Good Non-Exempt Trust No. 2 | Limited Partner | 1.23 | N/A | | | | Melissa Schroth | Melissa Schroth | N | | | as of 6/1/09 |
| 259 | Hayman Capital Partners, L.P. | 12/12/2005 | Delaware | N/A | JD | Third Party Investors | Limited Partner | 98.77 | N/A | | | | Melissa Schroth | Melissa Schroth | N | | | as of 6/1/09 |
| 260 | HBI Asset Management Gestora de Recursos, LTDA | 8/31/2010 | Brazil | N/A | BrasilInvest | Highland Capital Management AG | Shareholder | 0.2 | 2 | | | | Philip Braner | Frank Waterhouse | N | | Old Brazilian manager entity, not currently being utilized, perhaps to dissolve later in the year | NOT HIGHLAND AFFILIATE |
| 261 | HBI Asset Management Gestora de Recursos, LTDA | 8/31/2010 | Brazil | N/A | BrasilInvest | HBI Capital, SA (Brazil) (Third Party) | Shareholder | 99.8 | 998 | | | | Philip Braner | Frank Waterhouse | N | | Old Brazilian manager entity, not currently being utilized, perhaps to dissolve later in the year | NOT HIGHLAND AFFILIATE |
| 262 | HCM Blackwell Holding Corporation | 3/9/2007 | Delaware | N/A | Hedge Blocker | Highland Crusader Offshore Partners, L.P. | Shareholder | 100 | 100 James Dondero, Mark Okada | Dondero-Pres Okada-EVP Ellington-Secy Waterhouse-Treas | Dondero, Okada, Ellington, Waterhouse, Palmer, Stoops, Chism | Carl Moore/ Jon Poglitsch | James Palmer/ Jon Poglitsch | CRUSADER IMA TERMINATED | 8/4/2016 | | |
| 263 | HCM Canopy Holdings, LLC | 10/10/2008 | Delaware | N/A | HCM | Highland Capital Management, L.P. | Member | 100 | 100 Member | James Dondero – President Matt Jameson – VP Frank Waterhouse – Secretary | Dondero, Jameson, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Taylor Colbert | N | | Receives 75% of the carry and 25% of the fees from Canopy Timberlands GP, LLC - represents Highland's portion of the partnership | |
| 264 | HCM Europe, Ltd. | 12/7/2012 | UK | N/A | HCM | Highland Capital Management, L.P. | Shareholder | 100 | James Dondero Mark Okada | Dondero, Okada | Dondero, Okada, Waterhouse | Frank Waterhouse | Kristin Hendrix | Y | 5/19/2015 | New HCM Europe office | |

| # | A (Name) | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W | X |
|---|----------|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 265 | HCM Holdco, LLC | 10/27/2015 | Delaware | N/A | Corporate | Highland Capital Management, L.P. | Member | 100 | N/A | | | | Dave Klos | Kristin Hendrix | Y | 8/23/2018 | Investment holdco | | |
| 266 | HCM ParM West Guarantor, LLC | 10/14/2016 | Delaware | TX | RE | Highland TCI Holding Company, LLC | Member | 100 | | Member Managed | Member Managed | | Ted Dameris | Neubank | Y | 1/30/2019 | Park West RE holding | | |
| 267 | HCM ParK West Office, LLC | 10/14/2016 | Delaware | TX | RE | Highland TCI Holding Company, LLC | Member | 100 | | Member Managed | Member Managed | | Ted Dameris | Neubank | Y | 1/30/2019 | Park West RE holding | | |
| | HCM Spout Springs Holdings, LLC | 10/10/2008 | Delaware | N/A | HCM | Highland Capital Management, L.P. | Member | 100 | 100 Member | James Dondero – President / Matt Jamison – VP / Frank Waterhouse – Secretary | Dondero, Jameson, Waterhouse, Palmer, Stoops, Colbert | Matt Jameson | Taylor Colbert | | | | Receives 75% of the carry and 25% of the fees from Canopy Timberlands Spout Springs Holdings GP, LLC - represents Highland's portion of the partnership | | |
| 268 | HCM Trident (Delaware) Corp. | 7/3/2007 | Delaware | N/A | HCM | HCM Trident Holdco | shareholder | 100 | n/a | Gene Miao | n/a | n/a | Chris Halpin | Frank Waterhouse | Y | 12/20/2010 | Not expected to have any activity going forward, may want to dissolve. This entity was supposed to be the warehouse for the Collateralized Fund Obligation (CFO). Never launched. | | |
| 269 | HCMLP, LLC | 6/23/2009 | Delaware | N/A | HCM | Highland Capital Management Services, Inc. | Member | 100 | n/a | N/A | N/A | N/A | Carl Moore | Clay Callan | Y | 8/18/2010 | LLC formed in order to participate in HySky auction. Did not get the bid. CAN WE DISSOLVE? | fka Highland ERA Management LLC. Name amended on 10/2/09 | |
| 270 | HCRE Park Central Residential Shell, LLC (fka Park Central Residential, LLC) | 2/27/2014 | Texas | N/A | REIT-JD | HCRE Partners, LLC | Member | 100 | n/a | | | | Matt McGraner | Brandon Knott | Y | | Forfeited status in TX | Name change filed 4/25/14 | |
| 271 | HCREA Breckenridge GP, LLC | 2/7/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero / Ted Dameris / Scott Ellington | Ted Dameris-VP / Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets are sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| 272 | HCREA Breckenridge L.P. | 2/7/2006 | Texas | N/A | RE | HCREA Breckenridge GP, LLC | General Partner | 0.01 | | General Partner | | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets are sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| 273 | HCREA Breckenridge L.P. | 2/7/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | | General Partner | | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets are sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| 274 | HCREA Breckenridge L.P. | 2/7/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 10.14 | | General Partner | | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | N | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets are sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| 275 | HCREA Breckenridge L.P. | 2/7/2006 | Texas | N/A | RE | Highland Financial Real Estate Corporation | Class A Limited Partner | 14.79 | | General Partner | | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets are sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| 276 | HCREA Breckenridge L.P. | 2/7/2006 | Texas | N/A | RE | Third Party Investors | Class A Limited Partner | 55.07 | | General Partner | | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets are sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| 277 | HCREA Canyon Falls GP, LLC | 3/15/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero / Ted Dameris / Scott Ellington | James Dondero, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 10/30/2014 | This entity is the general partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 278 | HCREA Canyon Falls L.P. | 3/15/2006 | Texas | N/A | RE | HCREA Canyon Falls GP, LLC | General Partner | 0.01 | | General Partner | | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 4/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 279 | HCREA Canyon Falls L.P. | 3/15/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | | General Partner | | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 4/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 280 | HCREA Canyon Falls L.P. | 3/15/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 40 | | General Partner | | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 4/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 281 | HCREA Canyon Falls L.P. | 3/15/2006 | Texas | N/A | RE | Highland Crusader Holding Corporation fka Highland Crusader Real Estate Holding Corp. | Class A Limited Partner | 40 | | General Partner | | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 4/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 282 | HCREA Canyon Falls Town Center GP, LLC | 3/6/2007 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | James Dondero / Ted Dameris / Scott Ellington | James Dondero-Pres / Ted Dameris-VP / Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/17/2012 | This entity is the general partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 283 | HCREA Canyon Falls Town Center, LP | 3/2/2007 | Texas | N/A | RE | HCREA Canyon Falls Town Center GP, LLC | General Partner | 0.01 | | General Partner | | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/17/2012 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 284 | HCREA Canyon Falls Town Center, LP | 3/2/2007 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | | General Partner | | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/17/2012 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 285 | HCREA Canyon Falls Town Center, LP | 3/2/2007 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 80 | | General Partner | | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/17/2012 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 286 | HCREA Celina Springs GP, LLC | 5/30/2007 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | James Dondero / Ted Dameris / Scott Ellington | James Dondero-Pres / Ted Dameris-VP / Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the general partner of a partnership that owns a real estate asset for investment purposes. | | |
| 287 | HCREA Celina Springs, LP | 5/30/2007 | Texas | N/A | RE | HCREA Celina Springs GP, LLC | General Partner | 0.01 | | General Partner | | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 288 | HCREA Celina Springs, LP | 5/30/2007 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | | General Partner | | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 289 | HCREA Celina Springs, LP | 5/30/2007 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 80 | | General Partner | | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 290 | HCREA Cornerstone GP, LLC | 1/25/2006 | Texas | N/A | RE | Internal Investors | Member | 100 | n/a | James Dondero / Ted Dameris / Scott Ellington | James Dondero-Pres / Ted Dameris-VP / Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | | | |
| 291 | HCREA Cornerstone, L.P. | 1/25/2006 | Texas | N/A | RE | HCREA Cornerstone GP, LLC | General Partner | 0.01 | | General Partner | | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | | The real estate assets are sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| 292 | HCREA Cornerstone, L.P. | 1/25/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | | General Partner | | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | | The real estate assets are sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| 293 | HCREA Cornerstone, L.P. | 1/25/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 80 | | General Partner | | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | | The real estate assets are sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| 294 | HCREA Court Glen GP, LLC | 2/21/2007 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | James Dondero / Ted Dameris / Scott Ellington | James Dondero-Pres / Ted Dameris-VP / Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the general partner of a partnership that is a limited partner of a partnership that owns a real estate asset for investment purposes. | | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77
INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023
Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 127 of 376

| A | B | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HCREA Court Glen, LP | | 2/21/2007 | Texas | N/A | RE | HCREA Court Glen, LP, LLC | | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Court Glen, LP | | 2/21/2007 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Court Glen, LP | | 2/21/2007 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Embarcadero GP, LLC | | 2/9/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero Ted Dameris Scott Ellington | James Dondero-Pres Ted Dameris-VP Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the general partner of a limited partnership that is a limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| HCREA Embarcadero L.P. | | 2/9/2006 | Texas | N/A | RE | HCREA Embarcadero GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes. | | |
| HCREA Embarcadero L.P. | | 2/9/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes. | | |
| HCREA Embarcadero L.P. | | 2/9/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 40.3 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes. | | |
| HCREA Embarcadero L.P. | | 2/9/2006 | Texas | N/A | RE | Third Party Investors | Class A Limited Partner | 39.7 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes. | | |
| HCREA Georgetown Apts G.P., LLC | | 10/11/2005 | Texas | N/A | RE | Internal Investors | Member | 100 | n/a | James Dondero Ted Dameris Scott Ellington | James Dondero-Pres Ted Dameris-VP Scott Ellington -Secy/Treas | | Ted Dameris | Tanya Massie | Y | 12/27/2010 | | | |
| HCREA Georgetown Apts, L.P. | | 10/11/2005 | Texas | N/A | RE | HCREA Georgetown Apts G.P., LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the general partner of a limited partnership that is a limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Georgetown Apts, L.P. | | 10/11/2005 | Texas | N/A | RE | Highland Capital Management, L.P. | Service Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the general partner of a limited partnership that is a limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Georgetown Apts, L.P. | | 10/11/2005 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Investment Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the general partner of a limited partnership that is a limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Grand Prairie Truck Service GP, LLC | | 1/20/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero Ted Dameris | James Dondero-VP | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the general partner of a limited partnership that is a limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| HCREA Grand Prairie Truck Service, L.P. | | 1/23/2006 | Texas | N/A | RE | HCREA Grand Prairie Truck Service GP, LLC | General Partner | 0.01 | n/a | James Dondero Ted Dameris | James Dondero-VP | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Grand Prairie Truck Service, L.P. | | 1/23/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Service Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Grand Prairie Truck Service, L.P. | | 1/23/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Investment Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes. | | |
| HCREA Grey Walls GP, LLC | | 9/26/2005 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero Ted Dameris Scott Ellington | James Dondero-VP Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the general partner of a partnership that owns a real estate asset for investment purposes. | | |
| HCREA Grey Walls, L.P. | | 9/29/2005 | Texas | N/A | RE | HCREA Grey Walls GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Grey Walls, L.P. | | 9/29/2005 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Grey Walls, L.P. | | 9/29/2005 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 55.93 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Grey Walls, L.P. | | 9/29/2005 | Texas | N/A | RE | Third Party Investors | Class A Limited Partner | 24.07 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Highland Village GP, LLC | | 6/26/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | James Dondero Ted Dameris | James Dondero-Pres Ted Dameris-VP | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity is the general partner of a partnership that is a limited partner of a partnership that owns a real | Investment property foreclosed | |
| HCREA Highland Village, L.P. | | 6/26/2006 | Texas | N/A | RE | HCREA Highland Village GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes. | Investment property foreclosed | |
| HCREA Highland Village, L.P. | | 6/26/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes. | Investment property foreclosed | |
| HCREA Highland Village, L.P. | | 6/26/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class A Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes. | Investment property foreclosed | |
| HCREA Hutchins Truck Service, LP | | 3/28/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero Ted Dameris Scott Ellington | James Dondero-VP Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the general partner of a partnership that is a limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| HCREA Hutchins Truck Service, LP | | 3/30/2006 | Texas | N/A | RE | HCREA Hutchins Truck Service, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Hutchins Truck Service, LP | | 3/30/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Service Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Hutchins Truck Service, LP | | 3/30/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Investment Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot be dissolved | |
| HCREA Indian Creek GP, LLC | | 7/19/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | James Dondero Ted Dameris Scott Ellington | James Dondero-VP Scott Ellington -Secy/Treas | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the general partner of a limited partnership that is a limited partner of a partnership that owns a real estate asset for investment purposes. | | Upon notification from Isaac, can be dissolved |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 128 of 376

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

| | A | B | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 326 | HCREA Indian Creek, L.P. | | 7/19/2006 | Texas | N/A | RE | HCREA Indian Creek GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | Interest being sold - upon notification from Isaac, can be dissolved |
| 327 | HCREA Indian Creek, L.P. | | 7/19/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | Interest being sold - upon notification from Isaac, can be dissolved |
| 328 | HCREA Indian Creek, L.P. | | 7/19/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 52.93 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | Interest being sold - upon notification from Isaac, can be dissolved |
| 329 | HCREA Indian Creek, L.P. | | 7/19/2006 | Texas | N/A | RE | Third Party Investors | Class A Limited Partner | 27.07 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | Interest being sold - upon notification from Isaac, can be dissolved |
| 330 | HCREA Kings Wood GP, LLC | | 1/4/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero, Ted Dameris, Scott Ellington | James Dondero-Pres, Ted Dameris-VP, Scott Ellington-Secy/Treas | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity is the general partner of a limited partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 331 | HCREA Kings Wood, L.P. | | 1/6/2006 | Texas | N/A | RE | HCREA Kings Wood GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 332 | HCREA Kings Wood, L.P. | | 1/6/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 333 | HCREA Kings Wood, L.P. | | 1/6/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. (sold) | Class A Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 334 | HCREA Lockhill Retail GP, LLC | | 3/20/2006 | Texas | N/A | RE | HCREF-X Holding Corp. | Member | 100 | n/a | James Dondero, Ted Dameris, Scott Ellington | James Dondero-Pres, Ted Dameris-VP, Scott Ellington-Secy/Treas | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2016 | This entity is the general partner of a partnership that owns a real estate asset for investment purposes. | | |
| 335 | HCREA Lockhill Retail LP | | 3/20/2006 | Texas | N/A | RE | HCREA Lockhill Retail GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/29/2016 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 336 | HCREA Lockhill Retail LP | | 3/20/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/29/2016 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 337 | HCREA Lockhill Retail LP | | 3/20/2006 | Texas | N/A | RE | Gunwale, LLC | Class A Limited Partner | 46.74 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/29/2016 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 338 | HCREA Lockhill Retail LP | | 3/20/2006 | Texas | N/A | RE | HCREF-X Holding Corp. | Class A Limited Partnership | 33.26 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/29/2016 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 339 | HCREA Nolen Drive GP, LLC | | 7/17/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | James Dondero, Ted Dameris, Scott Ellington | James Dondero-Pres, Ted Dameris-VP, Scott Ellington-Secy/Treas | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the general partner of a limited partnership that owns a real estate asset for investment purposes. | | |
| 340 | HCREA Nolen Drive, L.P. | | 7/17/2006 | Texas | N/A | RE | HCREA Nolen Drive GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 341 | HCREA Nolen Drive, L.P. | | 7/17/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 24.99 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 342 | HCREA Nolen Drive, L.P. | | 7/17/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 10 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 343 | HCREA Nolen Drive, L.P. | | 7/17/2006 | Texas | N/A | RE | Third Party | Class A Limited Partner | 31.2 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 344 | HCREA Nolen Drive, L.P. | | 7/17/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class A Limited Partner | 33.8 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 345 | HCREA Pilot Point Land GP, LLC | | 7/26/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | James Dondero, Ted Dameris, Scott Ellington | James Dondero-Pres, Ted Dameris-VP, Scott Ellington-Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the general partner of a limited partnership that owns a real estate asset for investment purposes. | | |
| 346 | HCREA Pilot Point Land, L.P. | | 7/26/2006 | Texas | N/A | RE | HCREA Pilot Point Land GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 347 | HCREA Pilot Point Land, L.P. | | 7/26/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 348 | HCREA Pilot Point Land, L.P. | | 7/26/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 349 | HCREA Princeton 380 GP, LLC | | 3/6/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero, Ted Dameris, Scott Ellington | James Dondero-Pres, Ted Dameris-VP, Scott Ellington-Secy/Treas | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 10/30/2014 | This entity is the general partner of a limited partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 350 | HCREA Princeton 380 L.P. | | 3/6/2006 | Texas | N/A | RE | HCREA Princeton 380 GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 4/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 351 | HCREA Princeton 380 L.P. | | 3/6/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 4/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 352 | HCREA Princeton 380 L.P. | | 3/6/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 4/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 353 | HCREA Prosper Crossing East GP, LLC | | 4/9/2007 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | James Dondero, Ted Dameris, Scott Ellington | James Dondero-Pres, Ted Dameris-VP, Scott Ellington-Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the general partner of a limited partnership that owns a real estate asset for investment purposes. | | |
| 354 | HCREA Prosper Crossing East, LP | | 4/9/2007 | Texas | N/A | RE | HCREA Prosper Crossing East GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 355 | HCREA Prosper Crossing East, LP | | 4/9/2007 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 356 | HCREA Prosper Crossing East, LP | | 4/9/2007 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 129 of 376

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

| | A | C | D | F | G | H | I | J | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 357 | HCREA Prosper Crossing West GP, LLC | 4/9/2007 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | James Dondero, Ted Dameris, Scott Ellington | James Dondero-Pres, Ted Dameris-VP, Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the general partner of a limited partnership that is a limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 358 | HCREA Prosper Crossing West, LP | 4/9/2007 | Texas | N/A | RE | HCREA Prosper Crossing West GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 359 | HCREA Prosper Crossing West, LP | 4/9/2007 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 360 | HCREA Prosper Crossing West, LP | 4/9/2007 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 361 | HCREA Terrell Land GP, LLC | 10/26/2005 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero, Ted Dameris | James Dondero-Pres, Ted Dameris-VP | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 10/30/2014 | This entity is the general partner of a limited partnership that is a limited partner of a | Interest sold | Dissolve upon distribution of funds |
| 362 | HCREA Terrell Land, L.P. | 10/26/2005 | Texas | N/A | RE | HCREA Terrell Land GP, LLC (GP transferred to Third Party) | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | | SOLD | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Interest sold | Removed upon distribution of funds |
| 363 | HCREA Terrell Land, L.P. | 10/26/2005 | Texas | N/A | RE | Highland Capital Management, L.P. (SOLD) | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | | SOLD | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Interest sold | Removed upon distribution of funds |
| 364 | HCREA Terrell Land, L.P. | 10/26/2005 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. (SOLD) | Class A Limited Investor | 45.94 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | | SOLD | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Interest sold | Removed upon distribution of funds |
| 365 | HCREA Terrell Land, L.P. | 10/26/2005 | Texas | N/A | RE | Third Party Investors | Class A Limited Investor | 34.06 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | | SOLD | This entity is the limited partner of a partnership | Interest sold | Removed upon distribution of funds |
| 366 | HCREA The Tribute GP, LLC | 12/21/2005 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero, Ted Dameris | James Dondero-Pres, Ted Dameris-VP | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the general partner of a limited partnership that is a limited partner of a | Interest sold | Dissolve upon distribution of funds |
| 367 | HCREA The Tribute, L.P. | 12/22/2005 | Texas | N/A | RE | HCREA The Tribute GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Interest sold | Removed upon distribution of funds |
| 368 | HCREA The Tribute, L.P. | 12/22/2005 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Interest sold | Removed upon distribution of funds |
| 369 | HCREA The Tribute, L.P. | 12/22/2005 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 26.84 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment | Interest sold | Removed upon distribution of funds |
| 370 | HCREA The Tribute, L.P. | 12/22/2005 | Texas | N/A | RE | Third Party Investors | Class A Limited Partner | 53.16 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Interest sold | Removed upon distribution of funds |
| 371 | HCREA Trimarchi of North Dallas, GP, LLC | 3/23/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero, Ted Dameris | James Dondero-Pres, Ted Dameris-VP | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the general partner of a limited partnership that is a limited partner of a | Investment property foreclosed | Dissolve upon distribution of funds |
| 372 | HCREA Trimarchi of North Dallas, LP | 3/23/2006 | Texas | N/A | RE | HCREA Trimarchi of North Dallas, GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment | Investment property foreclosed | Dissolve upon distribution of funds |
| 373 | HCREA Trimarchi of North Dallas, LP | 3/23/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Service Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 374 | HCREA Trimarchi of North Dallas, LP | 3/23/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Investment Limited Partner | 16 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 375 | HCREA Trimarchi of North Dallas, LP | 3/23/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class A Limited Investment Limited Partner | 30 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 376 | HCREA Trimarchi of North Dallas, LP | 3/23/2006 | Texas | N/A | RE | Third Party Investors | Class A Limited Investment Limited Partner | 34 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | Investment property foreclosed | Dissolve upon distribution of funds |
| 377 | HCREA Wilcox 190, GP, LLC | 7/25/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero, Ted Dameris | James Dondero-Pres, Ted Dameris-VP | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the general partner of a limited partnership that is a limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 378 | HCREA Wilcox 190, L.P. | 7/25/2006 | Texas | N/A | RE | HCREA Wilcox 190 GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 379 | HCREA Wilcox 190, L.P. | 7/25/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 380 | HCREA Wilcox 190, L.P. | 7/25/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 381 | HCREA Wylie Partners I GP, LLC | 3/30/2006 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero, Ted Dameris, Scott Ellington | James Dondero-Pres, Ted Dameris-VP, Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the general partner of a limited partnership that owns a real estate asset for investment purposes. | | |
| 382 | HCREA Wylie Partners I, LP | 3/30/2006 | Texas | N/A | RE | HCREA Wylie Partners I GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that | | |
| 383 | HCREA Wylie Partners I, LP | 3/30/2006 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that | | |
| 384 | HCREA Wylie Partners I, LP | 3/30/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 80 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 385 | HCREF-X Holding Corp. | 12/13/2012 | Delaware | N/A | HCM | Highland Capital Management, L.P. | Shareholder | 100 | 1,000 | James Dondero | N/A | James Dondero | Mark Patrick | Kristin Hendrix | Y | 12/15/2016 | Holds HCMLP's interest in HCREA Lockhill Retail LP | | |
| 386 | HCREH Shelby Townhomes GP I, LLC | 9/9/2005 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero, Ted Dameris, Scott Ellington | James Dondero-Pres, Ted Dameris-VP, Scott Ellington -Secy/Treas | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 3/26/2010 | This entity is the general partner of a limited partnership that is a limited partner of a partnership that owns a real estate asset for investment purposes. | | |
| 387 | HCREH Shelby Townhomes, L.P. | 9/9/2005 | Texas | N/A | RE | HCREH Shelby Townhomes GP I, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 3/26/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot |
| 388 | HCREH Shelby Townhomes, L.P. | 9/9/2005 | Texas | N/A | RE | Highland Capital Management, L.P. | Class B Limited Partner | 19.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 3/26/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot |
| 389 | HCREH Shelby Townhomes, L.P. | 9/9/2005 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 40 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 3/26/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot |
| 390 | HCREH Shelby Townhomes, L.P. | 9/9/2005 | Texas | N/A | RE | Third Party Investors | Class A Limited Partner | 40 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 3/26/2010 | This entity is the limited partner of a partnership that owns a real estate asset for investment purposes. | The real estate assets were sold but this entity assets are pledge in the Wachovia loan, so cannot |
| 391 | HCREP WP, LLC | 1/30/2015 | Delaware | N/A | REIT-JO | HCRE Partners, LLC | Member | 96.69 | N/A | HCRE Partners, LLC | Matt McGraner-VP/Secy | Jame Dondero, Matt McGraner | Matt McGraner | Melissa Schroth | Y | 12/26/2018 | | | |
| 392 | HCREP WP, LLC | 1/30/2015 | Delaware | N/A | REIT-JO | KHM Interests, LLC (third party) | Member | 2.5 | N/A | HCRE Partners, LLC | Matt McGraner-VP/Secy | Jame Dondero, Matt McGraner | Matt McGraner | Melissa Schroth | Y | 12/26/2018 | | | |
| 393 | HCREP WP, LLC | 1/30/2015 | Delaware | N/A | REIT-JO | Ventoux Capital, LLC (third party) | Member | 0.81 | N/A | HCRE Partners, LLC | Matt McGraner-VP/Secy | Jame Dondero, Matt McGraner | Matt McGraner | Melissa Schroth | Y | 12/26/2018 | | | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 130 of 376

| # | A | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 394 | HCSLR Camelback Investors, LLC | 7/14/2016 | Delaware | N/A | RE Blocker | HCSLR Camelback Investors (Cayman), Ltd. | Member | 0 | 9,104 | Scott Ellington-Manager Isaac Leventon-Manager | n/a | Scott Ellington-Manager Isaac Leventon-Manager | Matt McGraner | Nexbank | Y | 12/26/2018 | All assets distributed to HCSLR Camelback, LLC | |
| 395 | HCSLR Camelback Investors, LLC | 7/14/2016 | Delaware | N/A | RE Blocker | Longhorn Credit Funding, LLC | Member | 0 | 896 | Scott Ellington-Manager Isaac Leventon-Manager | n/a | Scott Ellington-Manager Isaac Leventon-Manager | Matt McGraner | Nexbank | Y | 12/26/2018 | All assets distributed to HCSLR Camelback, LLC | |
| 396 | HE 1001 West Loop Holdings GP, LLC | 12/13/2007 | Texas | N/A | RE | HE 1001 West Loop Project, LLC | Member | 100.00% | n/a | Member | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | | Underlying property is a 228,820 sf B+ multi-tenant office building in Houston, TX. | Dissolve upon distribution of funds |
| 397 | HE 1001 West Loop Holdings LP, LLC | 12/4/2007 | Delaware | N/A | RE | HE 1001 West Loop Project, LLC | Member | 100.00% | n/a | Member | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | 1/30/2017 | Underlying property is a 228,820 sf B+ multi-tenant office building in Houston, TX. | Dissolve upon distribution of funds |
| 398 | HE 1001 West Loop Project, LLC | 12/6/2007 | TX | | RE | Highland Credit Strategies Holding Corporation | Member | 97.50% | n/a | HCMLP-Manager | HCMLP-Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | 1/30/2017 | Underlying property is a 228,820 sf B+ multi-tenant office building in Houston, TX. | Dissolve upon distribution of funds |
| 399 | HE 1001 West Loop Project, LLC | 12/6/2007 | TX | | RE | HE CLO Holdco, LLC | Member | 2.50% | n/a | HCMLP-Manager | HCMLP-Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | 1/30/2017 | Underlying property is a 228,820 sf B+ multi-tenant office building in Houston, TX. | Dissolve upon distribution of funds |
| 400 | HE 1001 West Loop, LP | 12/13/2007 | Texas | N/A | RE | HE 1001 West Loop Holdings LP, LLC | LP | 99.00% | n/a | GP | GP | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | | Underlying property is a 228,820 sf B+ multi-tenant office building in Houston, TX. | Dissolve upon distribution of funds |
| 401 | HE 1001 West Loop, LP | 12/13/2007 | Texas | N/A | RE | HE 1001 West Loop Holdings GP, LLC | GP | 1.00% | n/a | GP | GP | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | | Underlying property is a 228,820 sf B+ multi-tenant office building in Houston, TX. | Dissolve upon distribution of funds |
| 402 | HE 2425 West Loop Holdings GP, LLC | 12/6/2007 | Delaware | N/A | RE | HE 2425 West Loop Project, LLC | Member | 100.00% | n/a | Member | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | | Underlying property is a 281,590 sf B+ multi-tenant office building in Houston, TX. | |
| 403 | HE 2425 West Loop Holdings LP, LLC | 12/4/2007 | Delaware | N/A | RE | HE 2425 West Loop Project, LLC | Member | 100.00% | n/a | Member | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | 1/30/2017 | Underlying property is a 281,590 sf B+ multi-tenant office building in Houston, TX. | |
| 404 | HE 2425 West Loop Project, LLC | 12/4/2007 | TX | | RE | Highland Credit Strategies Holding Corporation | Member | 97.50% | n/a | HCMLP-Manager | HCMLP-Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | 1/30/2017 | Underlying property is a 281,590 sf B+ multi-tenant office building in Houston, TX. | |
| 405 | HE 2425 West Loop Project, LLC | 12/4/2007 | TX | | RE | HE CLO Holdco, LLC | Member | 2.50% | n/a | HCMLP-Manager | HCMLP-Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | 1/30/2017 | Underlying property is a 281,590 sf B+ multi-tenant office building in Houston, TX. | |
| 406 | HE 2425 West Loop, LP | 12/6/2007 | Texas | N/A | RE | HE 2425 West Loop Holdings LP, LLC | LP | 99.00% | n/a | GP | GP | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | | Underlying property is a 281,590 sf B+ multi-tenant office building in Houston, TX. | |
| 407 | HE 2425 West Loop, LP | 12/6/2007 | Texas | N/A | RE | HE 2425 West Loop Holdings GP, LLC | GP | 1.00% | n/a | GP | GP | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | | Underlying property is a 281,590 sf B+ multi-tenant office building in Houston, TX. | |
| 408 | HE Capital 2747, LLC | 8/15/2007 | Delaware | AZ | RE | Gunwale, LLC | Member | 13.89% | n/a | HCMLP-Manager | HCMLP-Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | 3/31/2017 | Underlying project is a 4.46 acre site located in Phoenix, AZ, improved with three vacant office buildings that are expected to be demolished for construction of a condo tower upon receipt of amended height restriction. | Dissolution docs sent to DE SOS & AZ SOS on 3.30.17 |
| 409 | HE Capital 2747, LLC | 8/15/2007 | Delaware | AZ | RE | Highland Crusader Holding Corporation | Member | 55.83% | n/a | HCMLP-Manager | HCMLP-Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | 3/31/2017 | Underlying project is a 4.46 acre site located in Phoenix, AZ, improved with three vacant office buildings that are expected to be demolished for construction of a condo tower upon receipt of amended height restriction. | Dissolution docs sent to DE SOS & AZ SOS on 3.30.17 |
| 410 | HE Capital 2747, LLC | 8/15/2007 | Delaware | AZ | RE | Highland Credit Opportunities Holding Corporation | Member | 13.89% | n/a | HCMLP-Manager | HCMLP-Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | 3/31/2017 | Underlying project is a 4.46 acre site located in Phoenix, AZ, improved with three vacant office buildings that are expected to be demolished for construction of a condo tower upon receipt of amended height restriction. | Dissolution docs sent to DE SOS & AZ SOS on 3.30.17 |
| 411 | HE Capital 2747, LLC | 8/15/2007 | Delaware | AZ | RE | Highland Credit Strategies Holding Corporation | Member | 13.89% | n/a | HCMLP-Manager | HCMLP-Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | 3/31/2017 | Underlying project is a 4.46 acre site located in Phoenix, AZ, improved with three vacant office buildings that are expected to be demolished for construction of a condo tower upon receipt of amended height restriction. | Dissolution docs sent to DE SOS & AZ SOS on 3.30.17 |
| 412 | HE Capital 2747, LLC | 8/15/2007 | Delaware | AZ | RE | HE CLO Holdco, LLC | Member | 2.50% | n/a | HCMLP-Manager | HCMLP-Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Drew Wilson | Y | 3/31/2017 | Underlying project is a 4.46 acre site located in Phoenix, AZ, improved with three vacant office buildings that are expected to be demolished for construction of a condo tower upon receipt of amended height restriction. | Dissolution docs sent to DE SOS & AZ SOS on 3.30.17 |
| 413 | HE Sugar Land Buildings, LP | 7/2/2007 | Texas | N/A | RE | HE Sugar Land Holdings LP, LLC | LP | 99 | n/a | HCMLP-Manager | HCMLP-Manager | Ted Dameris/Jim Pfertner | Jim Pfertner | | 12/31/2012 | Underlying project is a 528,857 sf single tenant A- office building in Sugar Land, TX. | Investment property foreclosed |
| 414 | HE Sugar Land Buildings, LP | 7/2/2007 | Texas | N/A | RE | HE Sugar Land Holdings GP, LLC | GP | 1 | n/a | HCMLP-Manager | HCMLP-Manager | Ted Dameris/Jim Pfertner | Jim Pfertner | | 12/31/2012 | Underlying project is a 528,857 sf single tenant A- office building in Sugar Land, TX. | Investment property foreclosed |
| 415 | HE Sugar Land Development, LP | 7/16/2007 | Texas | N/A | RE | HE Sugar Land Holdings LP, LLC | LP | 99 | n/a | HCMLP-Manager | HCMLP-Manager | Ted Dameris/Jim Pfertner | Jim Pfertner | | 12/31/2012 | Underlying project is a 528,857 sf single tenant A- office building in Sugar Land, TX. | |
| 416 | HE Sugar Land Development, LP | 7/16/2007 | Texas | N/A | RE | HE Sugar Land Holdings GP II, LLC | GP | 1 | n/a | HCMLP-Manager | HCMLP-Manager | Ted Dameris/Jim Pfertner | Jim Pfertner | | 12/31/2012 | Underlying project is a 528,857 sf single tenant A- office building in Sugar Land, TX. | |
| 417 | HE Sugar Land Holdings GP II, LLC | 7/16/2007 | Texas | N/A | RE | HE Sugar Land Project, LLC | Member | 100 | n/a | HCMLP-Manager | HCMLP-Manager | Ted Dameris/Jim Pfertner | Jim Pfertner | | 12/31/2012 | Underlying project is a 528,857 sf single tenant A- office building in Sugar Land, TX. | |
| 418 | HE Sugar Land Holdings GP, LLC | 6/29/2007 | Texas | N/A | RE | HE Sugar Land Project, LLC | Member | 100 | n/a | HCMLP-Manager | HCMLP-Manager | Ted Dameris/Jim Pfertner | Jim Pfertner | | 12/31/2012 | Underlying project is a 528,857 sf single tenant A- office building in Sugar Land, TX. | Investment property foreclosed |
| 419 | HE Sugar Land Holdings LP, LLC | 6/26/2007 | Texas | N/A | RE | HE Sugar Land Project, LLC | Member | 100 | n/a | HCMLP-Manager | HCMLP-Manager | Ted Dameris/Jim Pfertner | Jim Pfertner | | 12/31/2012 | Underlying project is a 528,857 sf single tenant A- office building in Sugar Land, TX. | |
| 420 | HE Sugar Land Project, LLC | 6/19/2007 | Delaware | N/A | RE | Highland Capital Real Estate Fund, L.P. | Member | 39.22% | n/a | HCMLP-Manager | HCMLP-Manager | Ted Dameris/Jim Pfertner | Jim Pfertner | | 12/31/2012 | Underlying project is a 528,857 sf single tenant A- office building in Sugar Land, TX. | |
| 421 | HE Sugar Land Project, LLC | 6/19/2007 | Delaware | N/A | RE | Highland Employee Retention Assets LLC | Member | 58.28% | n/a | HCMLP-Manager | HCMLP-Manager | Ted Dameris/Jim Pfertner | Jim Pfertner | | 12/31/2012 | Underlying project is a 528,857 sf single tenant A- office building in Sugar Land, TX. | |
| 422 | HE Sugar Land Project, LLC | 6/19/2007 | Delaware | N/A | RE | HE CLO Holdco, LLC | Member | 2.50% | n/a | HCMLP-Manager | HCMLP-Manager | Ted Dameris/Jim Pfertner | Jim Pfertner | | 12/31/2012 | Underlying project is a 528,857 sf single tenant A- office building in Sugar Land, TX. | |
| 423 | Headquarters, LP | 10/10/2003 | Texas | N/A | JD | Texas Land Management, LLC | General Partner | 0 | n/a | Texas Land Management, LLC | N/A | Texas Land Management, LLC | Melissa Schroth | Melissa Schroth | Y | SOLD 7/29/2010 | | |
| 424 | Headquarters, LP | 10/10/2003 | Texas | N/A | JD | The Get Good Trust | Limited Partner | 8.75 | n/a | Texas Land Management, LLC | N/A | Texas Land Management, LLC | Melissa Schroth | Melissa Schroth | Y | SOLD 7/29/2010 | | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM

NYSCEF DOC. NO. 77

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 131 of 376

INDEX NO. 650744/2023

RECEIVED NYSCEF: 02/08/2023

| | A | C | D | E | F | G | H | I | K | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 425 | Headquarters, LP | 10/10/2003 | Texas | N/A | JD | Mark Okada | Limited Partner | 2.5 | | Texas Land Management, LLC | N/A | Texas Land Management, LLC | Melissa Schroth | Melissa Schroth | Y | | SOLD 7/29/2010 | |
| 426 | Headquarters, LP | 10/10/2003 | Texas | N/A | JD | Todd Travers | Limited Partner | 1.667 | | Texas Land Management, LLC | N/A | Texas Land Management, LLC | Melissa Schroth | Melissa Schroth | Y | | SOLD 7/29/2010 | |
| 427 | Headquarters, LP | 10/10/2003 | Texas | N/A | JD | Todd Travers IRA Sterling Trust | Limited Partner | 0.417 | | Texas Land Management, LLC | N/A | Texas Land Management, LLC | Melissa Schroth | Melissa Schroth | Y | | SOLD 7/29/2010 | |
| 428 | Headquarters, LP | 10/10/2003 | Texas | N/A | JD | Davis Deadman | Limited Partner | 1.667 | | Texas Land Management, LLC | N/A | Texas Land Management, LLC | Melissa Schroth | Melissa Schroth | Y | | SOLD 7/29/2010 | |
| 429 | Headquarters, LP | 10/10/2003 | Texas | N/A | JD | Highland Real estate Fund 2002-A | Limited Partner | 10 | | Texas Land Management, LLC | N/A | Texas Land Management, LLC | Melissa Schroth | Melissa Schroth | Y | | SOLD 7/29/2010 | |
| 430 | Headquarters, LP | 10/10/2003 | Texas | N/A | JD | Third Party Investors | Limited Partner | 75 | | Texas Land Management, LLC | N/A | Texas Land Management, LLC | Melissa Schroth | Melissa Schroth | Y | | SOLD 7/29/2010 | |
| 431 | Heimskringla, LLC | 11/9/2015 | Nevada | N/A | HCM | Highland Capital Management, L.P. | Member | 100 | | | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | David Klos | Kristin Hendrix | Y | 11/15/2016 | Investment holdco | |
| 432 | Heron Pointe Residential Partners SM, Inc. | 1/26/2016 | Delaware | N/A | REIT-JD | Gardens of Denton II, L.P. | Shareholder | 100 | 100 N/A | Matt McGraner - Secu/Auth Agent | | Matt McGraner - Secu/Auth Agent | Matt McGraner | Melissa Schroth | Y | 12/26/2018 | | To be dissolved |
| 433 | Heron Pointe Residential Partners, LLC | 1/22/2016 | Delaware | FL | REIT-JD | Heron Pointe Investors, LLC | Member | 100 | n/a | | | | Matt McGraner | Melissa Schroth | Y | 2/17/2017 | | Entity sold to Somerstone, LLC on 2/17/2017 |
| 434 | Heron Pointe, LLC | 1/20/2016 | Delaware | N/A | REIT-JD | Gardens of Denton II, L.P. | Member | 100 | n/a | | | | Matt McGraner | Melissa Schroth | Y | 1/22/2016 | Formation null and void | |
| 435 | HGPH A Inc. | 11/30/2006 | Delaware | N/A | Hedge | Highland Goldfield Preserve Holding, Ltd. | Shareholder | 100 | n/a | James Dondero | James Dondero | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 10/23/2013 | Sub of Credit Strat | |
| 436 | HGPH B Inc. | 11/30/2006 | Delaware | N/A | Hedge | Highland Goldfield Preserve Holding, Ltd. | Shareholder | 100 | n/a | James Dondero | James Dondero | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 10/23/2013 | Sub of Credit Strat | |
| 437 | HGPH C Inc. | 11/30/2006 | Delaware | N/A | Hedge | Highland Goldfield Preserve Holding, Ltd. | Shareholder | 100 | n/a | James Dondero | James Dondero | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 10/23/2013 | Sub of Credit Strat | |
| 438 | HGPH D Inc. | 11/30/2006 | Delaware | N/A | Hedge | Highland Goldfield Preserve Holding, Ltd. | Shareholder | 100 | n/a | James Dondero | James Dondero | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 10/23/2013 | Sub of Credit Strat | |
| 439 | HGPH II-A Inc. | 11/30/2006 | Delaware | N/A | Hedge | Highland Goldfield Preserve Holding II, Ltd. | Shareholder | 100 | n/a | James Dondero | James Dondero | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 10/23/2013 | Sub of Crusader | All Crusader related entities are in wind-down with the Master Partnership |
| 440 | HGPH II-B Inc. | 11/30/2006 | Delaware | N/A | Hedge | Highland Goldfield Preserve Holding II, Ltd. | Shareholder | 100 | n/a | James Dondero | James Dondero | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 10/23/2013 | Sub of Crusader | All Crusader related entities are in wind-down with the Master Partnership |
| 441 | HGPH II-C Inc. | 11/30/2006 | Delaware | N/A | Hedge | Highland Goldfield Preserve Holding II, Ltd. | Shareholder | 100 | n/a | James Dondero | James Dondero | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 10/23/2013 | Sub of Crusader | All Crusader related entities are in wind-down with the Master Partnership |
| 442 | HGPH II-D Inc. | 11/30/2006 | Delaware | N/A | Hedge | Highland Goldfield Preserve Holding II, Ltd. | Shareholder | 100 | n/a | James Dondero | James Dondero | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 10/23/2013 | Sub of Crusader | All Crusader related entities are in wind-down with the Master Partnership |
| 443 | Highland Acquisition Corporation | 4/25/2016 | Delaware | TX | Retail | Highland Capital Management, L.P. | Initial Shareholder | 98.96 | 7,112,500 | James Dondero-Chairman/ Class C Director | James Dondero-CEO/President | James Dondero-CEO/President Mark Okada-EVP | Brian Mitts | David Klos | Y | 11/29/2017 | SPAC offering | |
| 444 | Highland Acquisition Corporation | 4/25/2016 | Delaware | TX | Retail | William Swenson | Initial Shareholder | 0.35 | 25,000 | James Dondero-Chairman/ Class C Director | James Dondero-CEO/President | James Dondero-CEO/President Mark Okada-EVP | Brian Mitts | David Klos | Y | 11/29/2017 | SPAC offering | |
| 445 | Highland Acquisition Corporation | 4/25/2016 | Delaware | TX | Retail | Kevin MacDonald | Initial Shareholder | 0.35 | 25,000 | James Dondero-Chairman/ Class C Director | James Dondero-CEO/President | James Dondero-CEO/President Mark Okada-EVP | Brian Mitts | David Klos | Y | 11/29/2017 | SPAC offering | |
| 446 | Highland Acquisition Corporation | 4/25/2016 | Delaware | TX | Retail | Robert W. Scannell | Initial Shareholder | 0.35 | 25,000 | James Dondero-Chairman/ Class C Director | James Dondero-CEO/President | James Dondero-CEO/President Mark Okada-EVP | Brian Mitts | David Klos | Y | 11/29/2017 | SPAC offering | |
| 447 | Highland All Cap Equity Value Fund | 4/8/2010 | Delaware | N/A | Retail | TBD | TBD | | | Trustees: Dougherty-Pres/CEO | Dougherty-Pres/CEO | | Joe Dougherty | Brian Mitts | Terminated | 10/28/2010 | Highland Funds Series of Trust | |
| 448 | Highland Alpha Trend Strategies Fund | 10/31/2011 | Massachusetts | N/A | Retail | Third Party Investors | Common | 0 | | Trustees: Powell-EVP/Sec | Powell-EVP/Sec | | Brian Mitts | Brian Mitts | Liquidated | 1/16/2014 | Series of trust of Highland-Funds II | HCMFA - advisor, |
| 449 | Highland Alternative Income Fund | 1/13/2012 | Massachusetts | N/A | Retail | Third Party Investors | Common | 0 | | Trustees: Tim Hui, Bryan Ward, Scott Kavanaugh, Ethan Powell, John Honis, Terrence Jones | Mitts-Treas Head-CCO/AMLO | Mitts-Treas Head-CCO/AMLO | Brian Mitts | Brian Mitts | | | HCMFA - advisor, Anchor capital-Subadvisor | Acquired by Northern Lights Fund Trust |
| 450 | Highland Brasilinvest, Ltda | 1/31/2012 | Cayman Islands | N/A | Brasilinvest | Highland International Holdings, Ltda | Shareholder | 75 | | James Dondero Jack Takacs | | | Philip Braner | Frank Waterhouse | Dissolved | 3/28/2013 | Cayman vehicle for any fee related activities that could arise from offshore activities related to Brazil | Will unwound in 2013 |
| 451 | Highland Brasilinvest, Ltda | 1/31/2012 | Cayman Islands | N/A | Brasilinvest | Brasilinvest Investimentos Participacoes e Consultoria LTDA (Third Party) | Shareholder | 25 | | Jack Takacs | | | Philip Braner | Frank Waterhouse | Dissolved | 3/28/2013 | Cayman vehicle for any fee related activities that could arise from offshore activities related to Brazil | Will unwound in 2013 |
| 452 | Highland Brasilinvest, S.A. | 4/19/2010 | Brazil | N/A | Brasilinvest | Brasilinvest Investimentos Participacoes e Consultoria LTDA (Third Party) | Shareholder | 100 | | Mario Bernardo Garneiro; Mario Bernardo Monteiro | Sueli de Fatima Ferretti-Pres; | | Philip Braner | Frank Waterhouse | N | | Old Brazilian company that was to be used as part of the initial Brazilian strategy, not currently being utilized. | |
| 453 | Highland Capital Equity Partners GP, LLC | 3/21/2013 | Delaware | TX | Private | Highland Capital Management, L.P. | Member | 100 | n/a | Sole Member | | Dondero, Okada, Ellington, Terry, Waterhouse,Palmer, Stoops, Chism | Jonathan Lamensdorf | Charlie Hoedebeck | Y | 11/17/2015 | | |
| 454 | Highland Capital Equity Partners, L.P. | 3/21/2013 | Delaware | TX | Private Fund | Highland Capital Equity Partners GP, LLC | General Partner | 0 | n/a | GP | | Dondero, Okada, Ellington, Terry, Waterhouse,Palmer, Stoops, Chism | Jonathan Lamensdorf | Charlie Hoedebeck | Y | 11/17/2015 | | |
| 455 | Highland Capital Equity Partners, L.P. | 3/21/2013 | Delaware | TX | Private Fund | Eames, Ltd. | Limited Partner | 100 | n/a | GP | | Dondero, Okada, Ellington, Terry, Waterhouse,Palmer, Stoops, Chism | Jonathan Lamensdorf | Charlie Hoedebeck | Y | 11/17/2015 | | |
| 456 | Highland Capital Healthcare Advisors GP, LLC (fka Cummings Bay Capital Management GP, LLC) | 2/26/2010 | Delaware | TX | I-Advisor | Highland Capital Management Services, Inc. | Member | 100 | n/a | Sole Member - HCMSI | Dondero-Pres Okada-VP | Palmer, Chism | Michael Gregory | Kristin Hendrix | Y | 5/11/2018 | GP of the new retail advisor - fka Veris Capital Management GP, LLC - name changed 3/4/10 and 3/19/10 | |
| 457 | Highland Capital Healthcare Advisors, L.P. (fka Cummings Bay Capital Management, L.P.) | 2/26/2010 | Delaware | TX | I-Advisor | Highland Capital Healthcare Advisors GP, LLC | GP | 0.1 | n/a 75 | GP | | Dondero, Okada, Waterhouse, Stoops, Palmer, Chism | Michael Gregory | Kristin Hendrix | Y | 5/11/2018 | New retail advisor - fka Veris Capital Management, LP - name change 3/4/10 and 3/19/10 | |
| 458 | Highland Capital Healthcare Advisors, L.P. (fka Cummings Bay Capital Management, L.P.) | 2/26/2010 | Delaware | TX | I-Advisor | Highland Capital Management Services, Inc. | LP | 99.9 | n/a | GP | | Dondero, Okada, Waterhouse, Stoops, Palmer, Chism | Michael Gregory | Kristin Hendrix | Y | 5/11/2018 | New retail advisor | |
| 459 | Highland Capital Healthcare Advisors, L.P. (fka Cummings Bay Capital Management, L.P.) | 2/26/2010 | Delaware | TX | I-Advisor | James Dondero | Non-economic LP | 0 | n/a | GP | | Dondero, Okada, Waterhouse, Stoops, Palmer, Chism | Michael Gregory | Kristin Hendrix | Y | 5/11/2018 | New retail advisor | |
| 460 | Highland Capital Healthcare Partners (Master), L.P. (fka Cummings Bay Healthcare Master Fund, L.P.) | 2/1/2011 | Cayman Islands | N/A | Hedge | Highland Capital Healthcare Partners, L.P. | LP | 100.00 | | General Partner | | Dondero, Okada, Waterhouse, Stoops, Palmer, Chism | Michael Gregory | Tom Beauchamp | N | 6/6/2016 | Name change filed 2/28/14 | |
| 461 | Highland Capital Healthcare Partners (Master), L.P. (fka Cummings Bay Healthcare Master Fund, L.P.) | 2/1/2011 | Cayman Islands | N/A | Hedge | Highland Capital Healthcare Partners, L.P. | LP | - | | General Partner | | Dondero, Okada, Waterhouse, Stoops, Palmer, Chism | Michael Gregory | Tom Beauchamp | N | 6/6/2016 | Name change filed 2/28/14 | |
| 462 | Highland Capital Healthcare Partners GP, LLC (fka Cummings Bay Healthcare GP, LLC) | 1/31/2011 | Delaware | N/A | Hedge | Highland Capital Healthcare Advisors, L.P. | Member | Member | | | | Dondero, Okada, Waterhouse, Stoops, Palmer, Chism | Michael Gregory | Tom Beauchamp | N | 4/27/2016 | Name change filed 2/26/14 | |
| 463 | Highland Capital Healthcare Partners, L.P. (fka Cummings Bay Healthcare Fund, L.P.) | 6/27/2006 | Delaware | N/A | Hedge | Third Party Investors | LP | 46.25 | 4,088,108.68 | General Partner | | Dondero, Okada, Waterhouse, Stoops, Palmer, Chism | Michael Gregory | Tom Beauchamp | N | 4/27/2016 | Name change filed 2/26/14 | |
| 464 | Highland Capital Healthcare Partners, L.P. (fka Cummings Bay Healthcare Fund, L.P.) | 6/27/2006 | Delaware | N/A | Hedge | Highland Capital Management, L.P. | LP | 53.75 | 1,372,811.25 | General Partner | | Dondero, Okada, Waterhouse, Stoops, Palmer, Chism | Michael Gregory | Tom Beauchamp | N | 4/27/2016 | Name change filed 2/26/14 | |

| | A | B | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 465 | Highland Capital Healthcare Partners, Ltd. (fka Cummings Bay Healthcare Fund, Ltd.) | | 2/1/2011 | Cayman Islands | N/A | Hedge | Highland Capital Healthcare Advisors, L.P. | Shareholder | 0 | 1 | James Dondero Mark Okada | N/A | Dondero, Okada, Waterhouse, Stoops, Palmer, Chism | Michael Gregory | David Willmore | T | 10/12/2016 | Name change filed 2/28/14 | |
| 466 | Highland Capital Management Europe, Limited | | 6/21/2001 | United Kingdom | N/A | HCM | Highland Capital Management, L.P. | Shareholder | 100 | n/a | Dondero, Okada, McAuliffe | Authorized Sigs: Dondero, Okada, McAuliffe | | Frank Waterhouse | Frank Waterhouse | Y | 12/31/2013 | HCMLP's Europe office. | In dissolution |
| 467 | Highland Capital Management Partners Charitable Trust #1 | | 12/29/2005 | Texas | N/A | JD | Highland Capital Management, L.P. | Settlor | 100 | n/a | Grant Scott-Trustee | Grant Scott-Trustee | Grant Scott-Trustee | Mark Patrick | Melissa Schroth | Y | 12/29/2015 | 10-year trust | Trust expired as of 12/29/2015 |
| 468 | Highland Capital Management Partners Charitable Trust #1 | | 12/29/2005 | Texas | N/A | JD | Highland Dallas Foundation, Inc. | Remainder Beneficiary | 100 | n/a | Grant Scott-Trustee | Grant Scott-Trustee | Grant Scott-Trustee | Mark Patrick | Melissa Schroth | Y | 12/29/2015 | 10-year trust | Trust expired as of 12/29/2015 |
| 469 | Highland Capital Management Partners Charitable Trust #2 | | 11/30/2006 | Texas | N/A | JD | James Dondero | Settlor | 100 | n/a | Grant Scott - Trustee | Grant Scott - Trustee | Grant Scott - Trustee | Frank Waterhouse | Frank Waterhouse | Y | 12/1/2011 | Terminated and all assets transferred to Charitable DAF HoldCo, Ltd. then to Charitable DAF Fund, LP | |
| 470 | Highland Capital Management, LTD. | | 6/21/2000 | Bermuda | N/A | HCM | Mark Okada | Shareholder | 25 | n/a | James Dondero Mark Okada | James Dondero-Pres Mark Okada-VP | Dondero, Okada | Frank Waterhouse | Kristin Hendrix | Y | 2/6/2017 | | |
| 471 | Highland Capital Management, LTD. | | 6/21/2000 | Bermuda | N/A | HCM | Mark Okada | Shareholder | 75 | n/a | James Dondero Mark Okada | James Dondero-Pres Mark Okada-VP Loran Phillips-Secy | Dondero, Okada | Frank Waterhouse | Kristin Hendrix | Y | 2/6/2017 | | |
| 472 | Highland Capital Multi-Strategy Fund | | 1/23/2007 | Delaware | N/A | Retail | | | | | | | | Joe Dougherty | | Y | 5/14/2010 | Deregistered on 12/18/08 | |
| 473 | Highland Capital Real Estate Holdings, LLC | | 8/25/2005 | Delaware | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | Member | Member | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Cliff Stoops | Y | 5/25/2012 | | |
| 474 | Highland Capital SLS, LLC | | 4/1/2007 | Delaware | TX | HCM | Highland Capital Management, L.P. | Member | 100 | n/a | Member | Member | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Chris Halpin | Frank Waterhouse | Y | 8/20/2010 | Insurance related entity. Established in case Highland wanted to buy policies directly from sellers. | |
| 475 | Highland Capital Terrell Investment Partners, L.P. | | 5/18/2005 | Texas | CO | RE | Highland Capital Real Estate Fund GP, LLC | General Partner | 1 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Drew Wilson | | Y | 4/30/2014 | This entity owns a real estate asset for investment purposes. | |
| 476 | Highland Capital Terrell Investment Partners, L.P. | | 5/18/2005 | Texas | CO | RE | Highland Capital Real Estate Fund, L.P. | Limited Partner | 99 | n/a | General Partner | n/a | Ted Dameris, Chris Wise, Carter Chism, Ted Dameris | Drew Wilson | | Y | 4/30/2014 | This entity owns a real estate asset for investment purposes. | |
| 477 | Highland CLO Intermediate Holdings I, LLC | | 10/19/2017 | Delaware | N/A | I-Fund | Highland HCF Advisor Ltd. | Managing Member | 0 | 0 economic/ 100 voting | Managing Member | N/A | Dondero, Okada, Ellington, Waterhouse, Stoops, Ringheimer, Willmore | Hunter Covitz | Mike Throckmorton | Y | 5/22/2019 | Highland CLO risk retention C-MOA fund | |
| 478 | Highland CLO Intermediate Holdings I, LLC | | 10/19/2017 | Delaware | N/A | I-Fund | Highland CLO Intermediate Holdings II, LLC | Non-voting Member | 100 | 100 economic/ 0 voting | Managing Member | N/A | Dondero, Okada, Ellington, Waterhouse, Stoops, Ringheimer, Willmore | Hunter Covitz | Mike Throckmorton | Y | 5/22/2019 | Highland CLO risk retention C-MOA fund | |
| 479 | Highland CLO Intermediate Holdings II, LLC | | 10/19/2017 | Delaware | N/A | I-Fund | Highland CLO Management Holdings, L.P. | Sole Member | 100 | | Sole Member | N/A | Dondero, Okada, Ellington, Waterhouse, Stoops, Ringheimer, Willmore | Hunter Covitz | Mike Throckmorton | Y | 5/22/2019 | Highland CLO risk retention C-MOA fund | |
| 480 | Highland CLO Management GP, LLC | | 10/19/2017 | Delaware | Cayman Islands | I-Fund | Highland HCF Advisor Ltd. | Member | | | Sole Member | N/A | Dondero, Okada, Ellington, Waterhouse, Stoops, Ringheimer, Willmore | Hunter Covitz | Mike Throckmorton | Y | 7/9/2019 | Highland CLO risk retention C-MOA fund | |
| 481 | Highland CLO Management Holdings, L.P. | | 10/20/2017 | Cayman Islands | N/A | I-Fund | Highland CLO Management GP, LLC | General Partner | 0 | | General Partner | N/A | Dondero, Okada, Ellington, Waterhouse, Stoops, Ringheimer, Willmore | Hunter Covitz | Mike Throckmorton | Y | 6/21/2019 | Highland CLO risk retention C-MOA fund | |
| 482 | Highland CLO Management Holdings, L.P. | | 10/20/2017 | Cayman Islands | N/A | I-Fund | Highland HCF Advisor Ltd. | Class A LP | 50.1 | | General Partner | N/A | Dondero, Okada, Ellington, Waterhouse, Stoops, Ringheimer, Willmore | Hunter Covitz | Mike Throckmorton | Y | 6/21/2019 | Highland CLO risk retention C-MOA fund | |
| 483 | Highland CLO Management Holdings, L.P. | | 10/20/2017 | Cayman Islands | N/A | I-Fund | Highland HCF Advisor, Ltd. as Trustee for and on behalf of Highland CLO Trust, as nominee for and on behalf of Highland CLO | Class B LP | 49.9 | | General Partner | N/A | Dondero, Okada, Ellington, Waterhouse, Stoops, Ringheimer, Willmore | Hunter Covitz | Mike Throckmorton | Y | 6/21/2019 | Highland CLO risk retention C-MOA fund | |
| 484 | Highland CLO Management, LLC | | 10/19/2017 | Delaware | N/A | Relying Advisor | Highland CLO Management Holdings L, LLC | Management Series/ EU Originator | 100 | | Don Puglisi-Independent Manager | James Dondero-Pres Mark Okada-EVP Scott Ellington-Secy | Dondero, Okada, Ellington, Waterhouse, Stoops, Ringheimer, Willmore | JP Sevilla | Kristin Hendrix | Y | 5/22/2019 | Relying adviser to Highland CLO risk retention C-MOA fund | |
| 485 | Highland CLO Management, LLC | | 10/19/2017 | Delaware | N/A | Relying Advisor | Highland CLO Management Holdings, L.P. | US Retention Series | 100 | | Don Puglisi-Independent Manager | James Dondero-Pres Mark Okada-EVP Scott Ellington-Secy | Dondero, Okada, Ellington, Waterhouse, Stoops, Ringheimer, Willmore | JP Sevilla | Kristin Hendrix | Y | 5/22/2019 | Relying adviser to Highland CLO risk retention C-MOA fund | |
| 486 | Highland CLO Value Fund (Bermuda), L.P. | | 9/30/2008 | Bermuda | N/A | Hedge | Third Party Investors (Arizona PSPRS Trust) | Limited Partner | 100 | n/a | GP | N/A | Chris Halpin, Jason Post, Cliff Stoops | Gibran Mahmud | Cliff Stoops | Y | 12/16/2010 | CLO value offshore fund | Liquidated as of 11/23/09 - in process of dissolving |
| 487 | Highland CLO Value Fund GP, LLC | | 8/12/2008 | Delaware | TX | Hedge | Highland Capital Management, L.P. | Member | 100 | n/a | Member | N/A | Chris Halpin, Jason Post, Cliff Stoops | Gibran Mahmud | Cliff Stoops | Y | 11/17/2010 | GP to CLO Value | Liquidated as of 11/23/09 - in process of dissolving |
| 488 | Highland CLO Value Fund, L.P. | | 8/12/2008 | Delaware | TX | Hedge | Highland CLO Value Fund GP, LLC | Limited Partner | 100 | n/a | GP | N/A | Chris Halpin, Jason Post, Cliff Stoops | Gibran Mahmud | Cliff Stoops | Y | 11/17/2010 | Onshore CLO Value fund | Liquidated as of 11/23/09 - in process of dissolving |
| 489 | Highland CLO Value Intermediate Fund, L.P. | | 9/30/2008 | Bermuda | N/A | Hedge | Highland CLO Value Fund (Bermuda), L.P. | Limited Partner | 100 | n/a | GP | N/A | Chris Halpin, Jason Post, Cliff Stoops | Gibran Mahmud | Cliff Stoops | Y | 12/16/2010 | Offshore intermediate fund | Liquidated as of 11/23/09 - in process of dissolving |
| 490 | Highland CLO Value Master Fund, L.P. | | 9/30/2008 | Bermuda | N/A | Hedge | Highland CLO Value Intermediate Fund, L.P. | Limited Partner | 82 | n/a | GP | N/A | Chris Halpin, Jason Post, Cliff Stoops | Gibran Mahmud | Cliff Stoops | Y | 12/16/2010 | Master fund | Liquidated as of 11/23/09 - in process of dissolving |
| 491 | Highland CLO Value Master Fund, L.P. | | 9/30/2008 | Bermuda | N/A | Hedge | Highland CLO Value Fund, L.P. | Limited Partner | 18 | n/a | GP | N/A | Chris Halpin, Jason Post, Cliff Stoops | Gibran Mahmud | Cliff Stoops | Y | 12/16/2010 | Master fund | Liquidated as of 11/23/09 - in process of dissolving |
| 492 | Highland Commingled Holding Company | | 9/22/2008 | Delaware | N/A | I-Blocker | Highland Offshore Partners, L.P. | Shareholder | 100 | n/a | Dondero, Okada | Dondero-Pres Okada-EVP Ellington-Secy Parker-Asst Secy | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Hunter Covitz | Taylor Colbert | Y | 5/30/2018 | Onshore blocker for Diversified Credit (fka Comingled Loan) | |
| 493 | Highland Core Equity Fund, Ltd. | | 12/19/2005 | Bermuda | N/A | Hedge | Highland Capital Management, L.P. | Shareholder | 100 | n/a | James Dondero, Roderick Forrest, Nicholas Hoskins | James Dondero-Pres Roderick Forrest-VP Penny Cornell-Secy MQ Services-Asst Secy | James Dondero, Okada, Brittain, Ellington, Boyce, Terry, Waterhouse,Wise, Stoops, Chism | James Dondero | Chris Dunn | Y | 2/6/2014 | Select offshore fund (fka Highland Select Equity Fund, Ltd.) BMA deregistered as of 10/18/13 | |
| 494 | Highland Core Equity Intermediate Fund, L.P. | | 6/26/2008 | Bermuda | N/A | Hedge | Highland Select Equity Fund GP, LLC | General Partner | 50 | n/a | GP | N/A | Chris Halpin, Jason Post, Cliff Stoops | Dondero/Chris Colvin | Cliff Stoops | Y | 3/1/2010 | Dissolved 3/1/10 | |
| 495 | Highland Core Equity Intermediate Fund, L.P. | | 6/26/2008 | Bermuda | N/A | Hedge | Highland Core Equity Fund, Ltd. | Limited Partner | 50 | n/a | GP | N/A | Chris Halpin, Jason Post, Cliff Stoops | Dondero/Chris Colvin | Cliff Stoops | Y | 3/1/2010 | Dissolved 3/1/10 | |

| | A | B | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 496 | Highland Credit Opportunities CDO Asset Holdings Ltd. | | 3/31/2009 | Cayman Islands | N/A | Hedge | Highland Credit Opportunities CDO Holdings, Ltd. | | 100 | n/a | Walkers SPV: Rachel Rankin Otelia Scott | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Josh Terry | David Willmore | Y | 7/15/2014 | Credit Ops Sub-holding fund | | |
| 497 | Highland Credit Opportunities CDO Holdings, Ltd. | | 3/31/2009 | Cayman Islands | N/A | Hedge | Highland Credit Opportunities CDO, Ltd. | Shareholder | 100 | n/a | Walkers SPV: David Lloyd Ferona Bartley-Davis | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Josh Terry | David Willmore | Y | 7/15/2014 | Credit Ops Sub-holding fund | | |
| 498 | Highland Credit Opportunities Master Assets Holdings Ltd. | | 4/16/2009 | Cayman Islands | N/A | Hedge | Highland Credit Opportunities CDO, L.P. | Shareholder | 100 | n/a | James Dondero Mark Okada | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Josh Terry | David Willmore | Y | 7/15/2014 | Credit Ops Sub-holding fund | | |
| 499 | Highland Crusader Fund GP, L.P. | | 10/20/2005 | Delaware | N/A | Hedge | Highland Capital Management, L.P. | Limited Partner | 99 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Winding down as of 11/15/08 | | |
| 500 | Highland Crusader Fund GP, L.P. | | 10/20/2005 | Delaware | N/A | Hedge | Highland Crusader GP, LLC | General Partner | 1 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Winding down as of 11/15/08 | | |
| 501 | Highland Crusader Fund II, Ltd. | | 1/21/2002 | Bermuda | N/A | Hedge | Third Party Investors | Shareholder | 90.45 | n/a | James Dondero, Roderick Forrest, Nicholas Hoskins | James Dondero-Pres Roderick Forrest-VP Penny Cornell-Secy MQ Services-Asst Secy | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Winding down as of 11/15/08 | | |
| 502 | Highland Crusader Fund II, Ltd. | | 1/21/2002 | Bermuda | N/A | Hedge | Highland Capital Management (401(k) Plan) | Shareholder | 0.04 | n/a | James Dondero, Roderick Forrest, Nicholas Hoskins | James Dondero-Pres Roderick Forrest-VP Penny Cornell-Secy MQ Services-Asst Secy | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Winding down as of 11/15/08 | | |
| 503 | Highland Crusader Fund II, Ltd. | | 1/21/2002 | Bermuda | N/A | Hedge | Highland Capital Management, L.P. | Shareholder | 4.14 | n/a | James Dondero, Roderick Forrest, Nicholas Hoskins | James Dondero-Pres Roderick Forrest-VP Penny Cornell-Secy | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 504 | Highland Crusader Fund II, Ltd. | | 1/21/2002 | Bermuda | N/A | Hedge | Highland Capital Management, Ltd. (Deferred Fees) | Shareholder | 4.08 | n/a | James Dondero, Roderick Forrest, Nicholas Hoskins | James Dondero-Pres Roderick Forrest-VP Penny Cornell-Secy | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Winding down as of 11/15/08 | | |
| 505 | Highland Crusader Fund II, Ltd. | | 1/21/2002 | Bermuda | N/A | Hedge | Highland Capital Management Services, Inc. | Shareholder | 1.29 | n/a | James Dondero, Roderick Forrest, Nicholas Hoskins | James Dondero-Pres Roderick Forrest-VP Penny Cornell-Secy | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 506 | Highland Crusader Fund, L.P. | | 7/10/2000 | Delaware | TX | Hedge | Dallas Police and Fire | Limited Partner | 11.17 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Winding down as of 11/15/08 | | |
| 507 | Highland Crusader Fund, L.P. | | 7/10/2000 | Delaware | TX | Hedge | Highland Capital Management Multi-Strategy Insurance Dedicated Fund, L.P. | Limited Partner | 4.78 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 508 | Highland Crusader Fund, L.P. | | 7/10/2000 | Delaware | TX | Hedge | Highland Crusader Fund GP, L.P. | General Partner | 0 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 509 | Highland Crusader Fund, L.P. | | 7/10/2000 | Delaware | TX | Hedge | Highland Capital Management Services, Inc. | Limited Partner | 3.24 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Winding down as of 11/15/08 | | |
| 510 | Highland Crusader Fund, L.P. | | 7/10/2000 | Delaware | TX | Hedge | Highland Capital Management, L.P. | Limited Partner | 5.71 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 511 | Highland Crusader Fund, L.P. | | 7/10/2000 | Delaware | TX | Hedge | Barclays (Eames, Ltd.) | Limited Partner | 27.19 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Winding down as of 11/15/08 | | |
| 512 | Highland Crusader Fund, L.P. | | 7/10/2000 | Delaware | TX | Hedge | James Dondero | Limited Partner | 0.04 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 513 | Highland Crusader Fund, L.P. | | 7/10/2000 | Delaware | TX | Hedge | Mark Okada | Limited Partner | 0.61 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Winding down as of 11/15/08 | | |
| 514 | Highland Crusader Fund, L.P. | | 7/10/2000 | Delaware | TX | Hedge | Third Party Investors | Limited Partner | 47.27 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 515 | Highland Crusader Fund, Ltd. | | 8/1/2000 | Bermuda | N/A | Hedge | Highland Capital Management, Ltd. (Deferred Fees) | Shareholder | 7.60 | n/a | James Dondero, Roderick Forrest, Nicholas Hoskins | James Dondero-Pres Roderick Forrest-VP Penny Cornell-Secy | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Winding down as of 11/15/08 | | |
| 516 | Highland Crusader Fund, Ltd. | | 8/1/2000 | Bermuda | N/A | Hedge | Third Party Investors | Shareholder | 92.40 | n/a | James Dondero, Roderick Forrest, Nicholas Hoskins | James Dondero-Pres Roderick Forrest-VP | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 517 | Highland Crusader GP, LLC | | 10/20/2005 | Delaware | N/A | Hedge | Highland Capital Management, L.P. | Member | 100 | n/a | Member | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 518 | Highland Crusader Holding Corporation | | 3/20/2006 | Delaware | N/A | Hedge Blocker | Highland Crusader Offshore Partners, L.P. | Shareholder | 100 | n/a | James Dondero | Dondero-Pres Okada-EVP | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA TERMINATED | 8/4/2016 | Winding down as of 11/15/08 | | fka Highland Crusader Real Estate Holding Corp. |
| 519 | Highland Crusader Offshore Partners, L.P. | | 7/10/2000 | Bermuda | N/A | Hedge | Highland Crusader Fund GP, L.P. | General Partner | 0 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 520 | Highland Crusader Offshore Partners, L.P. | | 7/10/2000 | Bermuda | N/A | Hedge | Highland Crusader Fund II, Ltd. | Limited Partner | 77.96 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 521 | Highland Crusader Offshore Partners, L.P. | | 7/10/2000 | Bermuda | N/A | Hedge | Highland Crusader Fund, Ltd. | Limited Partner | 18.10 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 522 | Highland Crusader Offshore Partners, L.P. | | 7/10/2000 | Bermuda | N/A | Hedge | Highland Crusader Fund, Ltd. | Limited Partner | 3.94 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Winding down as of 11/15/08 | | |
| 523 | Highland Debt Dislocation Fund (Cayman), L.P. | | 2/22/2016 | Cayman Islands | N/A | Hedge | Highland Debt Dislocation Fund GP, LLC | General Partner | | | | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | David Willmore | Y | 6/30/2017 | | | |
| 524 | Highland Debt Dislocation Fund (Cayman), L.P. | | 2/22/2016 | Cayman Islands | N/A | Hedge | James Dondero | Limited Partner | | | | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | David Willmore | Y | 6/30/2017 | | | |
| 525 | Highland Debt Dislocation Fund GP, LLC | | 2/12/2016 | Delaware | N/A | Hedge | Highland Capital Management, L.P. | Member | 100 | n/a | | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | David Willmore | Y | 4/20/2017 | | | |
| 526 | Highland Debt Dislocation Fund SLP, LLC | | 2/12/2016 | Delaware | N/A | Hedge | Highland Capital Management, L.P. | Member | 100 | n/a | | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | David Willmore | Y | 4/20/2017 | | | |
| 527 | Highland Debt Dislocation Fund, L.P. | | 3/1/2016 | Delaware | N/A | Hedge | Highland Debt Dislocation Fund GP, LLC | General Partner | | | | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | David Willmore | Y | 4/20/2017 | | | |
| 528 | Highland Debt Dislocation Master Fund, L.P. | | 2/22/2016 | Cayman Islands | N/A | Hedge | Highland Debt Dislocation Fund GP, LLC | General Partner | | | | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | David Willmore | Y | 6/30/2017 | | | |

| # | A | C | D | E | F | G | H | I | J | O | P | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 529 | Highland Debt Dislocation Master Fund, L.P. | 2/22/2016 | Cayman Islands | N/A | Hedge | James Dondero | Limited Partner | | | | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | David Willmore | Y | 6/30/2017 | | |
| 530 | Highland Diversified Credit Fund GP, L.P. | 10/20/2005 | Delaware | N/A | I-Fund | Highland Capital Management, L.P. | Limited Partner | 99 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | Taylor Colbert | Y | 2/12/2018 | GP of Diversified Credit (fka Commingled Loan) | fka Highland Commingled Loan Fund GP, L.P. |
| 531 | Highland Diversified Credit Fund GP, L.P. | 10/20/2005 | Delaware | N/A | I-Fund | Highland Diversified Credit Fund GP, LLC | General Partner | 1 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | Taylor Colbert | Y | 2/12/2018 | | |
| 532 | Highland Diversified Credit Fund, L.P. | 11/19/1999 | TX | | I-Fund | Highland Diversified Credit Fund GP, L.P. | General Partner | 0 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | Taylor Colbert | Y | 2/12/2018 | Onshore feeder | fka Highland Commingled Loan Fund, L.P. |
| 533 | Highland Diversified Credit Fund, L.P. | 11/19/1999 | TX | | I-Fund | Highland Capital Management, L.P. | Limited Partner | 100.00% | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | Taylor Colbert | Y | 2/12/2018 | | |
| 534 | Highland Diversified Credit Fund, Ltd. | 11/11/2000 | Bermuda | N/A | Hedge | Third Party Investors | Shareholder | 100 | n/a | James Dondero, Roderick Forrest, Nicholas Hoskins | James Dondero-Pres Roderick Forrest-VP Penny Cornell-Secy | | Josh Terry | Chris Dunn | Y | 12/3/2013 | fka Highland Loan Fund, Ltd. | BMA deregistered as of 10/23/13 |
| 535 | Highland Diversified Credit Fund GP, LLC | 10/20/2005 | Delaware | N/A | I-Fund | Highland Capital Management, L.P. | Member | 100 | n/a | GP | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | Taylor Colbert | Y | 2/12/2018 | GP of Diversified Credit (fka Commingled Loan) | fka Highland Commingled Loan Fund GP, LLC |
| 536 | Highland Dividend Equity Fund | 10/31/2011 | Massachusetts | N/A | Retail | Third Party Investors | Common | 99.42 | 1,623,120.50 | Independent Trustees: Dr. Bob Froehlich, Bryan Ward, Tim Hui, | Ethan Powell-EVP/PEO F. Waterhouse-Treas | Dustin Norris-A. Treas | Dustin Norris | James Palmer | Terminated 2/23/16 | Series of trust of Highland-Funds II | HCMFA - advisor, Brookmont capital - Subadvisor |
| 537 | Highland Employee Retention Assets II LLC | 3/16/2016 | Delaware | N/A | HCM | N/A | N/A | N/A | N/A | N/A | Dustin Norris-A. Treas | Dustin Norris-A. Treas | Thomas Surgent | Kristin Hendrix | Y | 2/24/2017 | DID NOT LAUNCH / Liquidated as of 1/25/16 | |
| 538 | Highland Equity Focus Fund GP, L.P. | 10/20/2005 | Delaware | N/A | Private Fund | Highland Capital Management, L.P. | Limited Partner | 99 | n/a | GP | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | James Dondero | Taylor Colbert | Y | 4/26/2016 | GP of Equity Focus | |
| 539 | Highland Equity Focus Fund GP, L.P. | 10/20/2005 | Delaware | N/A | Private Fund | Highland Equity Focus Fund GP, LLC | General Partner | 1 | n/a | GP | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | James Dondero | Taylor Colbert | Y | 4/26/2016 | GP of Equity Focus | |
| 540 | Highland Equity Focus Fund, L.P. | 8/1/2002 | TX | | Private Fund | Highland Equity Focus Fund GP, L.P. | General Partner | 0 | n/a | GP | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | James Dondero | Taylor Colbert | Y | 4/26/2016 | | |
| 541 | Highland Equity Focus Fund, L.P. | 8/1/2002 | TX | | Private Fund | Neutra Ltd. | Limited Partner | 99.57 | n/a | GP | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | James Dondero | Taylor Colbert | Y | 4/26/2016 | | |
| 542 | Highland Equity Focus Fund, L.P. | 8/1/2002 | TX | | Private Fund | Mark Okada | Limited Partner | 0.43 | n/a | GP | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | James Dondero | Taylor Colbert | Y | 4/26/2016 | | |
| 543 | Highland Equity Focus Fund GP, LLC | 10/20/2005 | Delaware | N/A | Private Fund | Highland Capital Management, L.P. | Member | 100 | n/a | GP | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | James Dondero | Taylor Colbert | Y | 4/26/2016 | GP of Equity Focus | |
| 544 | Highland Event Driven Fund | 7/20/2007 | Delaware | N/A | Retail | | | | | | | | Joe Dougherty | Brian Mitts | | 3/29/2010 | Never launched; | |
| 545 | Highland Financial Real Estate Corporation | 3/15/2006 | Maryland | N/A | HFP | Highland Capital Management, L.P. | Shareholder | 49 | | 51 Jim Dondero | Jim Dondero-Pres Cliff Stoops-Secy & Interim | Jim Dondero / Cliff Stoops | Philip Braner | Cliff Stoops | Y | 12/31/2009 | | |
| 546 | Highland Financial Real Estate Corporation | 3/15/2006 | Maryland | N/A | HFP | Highland Financial Partners, L.P. | Shareholder | 51 | | 49 Jim Dondero | Jim Dondero-Pres Cliff Stoops-Secy & Interim | Jim Dondero / Cliff Stoops | Philip Braner | Cliff Stoops | Y | 12/31/2009 | | |
| 547 | Highland Financial Real Estate TRS, Inc. | 7/19/2007 | Delaware | N/A | HFP | Highland Financial Real Estate Corporation | Shareholder | 100 | | 100 Jim Dondero | Jim Dondero-Pres Cliff Stoops-Secy & Interim | Jim Dondero / Cliff Stoops | Philip Braner | Cliff Stoops | Y | 12/31/2009 | | |
| 548 | Highland Financial Solutions, LLC | 5/24/2007 | Delaware | N/A | HFP | Highland Distressed Opportunities, Inc. | Member | 100 | | | | | Joe Dougherty | | Y | 1/14/2010 | | |
| 549 | Highland Floating Rate Advantage Fund | 11/26/2007 | Delaware | N/A | Retail | | Common-Class Z | 0 | 41,459 | Trustees: Bryan Ward, Scott Kavanaugh, James Leary, | Dougherty-Pres/CEO Powell-Sec Mitts-Treas | Dougherty-Pres/CEO Powell-Sec Mitts-Treas | Joe Dougherty | Brian Mitts | Terminated | 6/13/2011 | Assets acquired by Highland Floating Rate Opportunities Fund | |
| 550 | Highland Floating Rate Fund | 11/26/2007 | Delaware | N/A | Retail | HCMLP 401(k) & DBP Plans | Common-Class Z | 0.01 | 74,810 | Trustees: Bryan Ward, Scott Kavanaugh, James Leary, | Dougherty-Pres/CEO Powell-Sec Mitts-Treas | Dougherty-Pres/CEO Powell-Sec Mitts-Treas | Joe Dougherty | Ethan Powell | Terminated | 6/13/2011 | Assets acquired by Highland Floating Rate Opportunities Fund | |
| 551 | Highland Floating Rate Opportunities Fund | 1/13/2000 | Delaware | N/A | Retail | Highland Capital Management, L.P. | Common | 0.10% | 99,428.54 | Independent Trustees: Dr. Bob Froehlich | Brad Ross-Pres/PEO Trey Parker-EVP | Brad Ross-Pres/PEO Trey Parker-EVP | Dustin Norris | James Palmer/ Austin Spence | Y | | Acquired assets from Highland Floating Rate Advantage Fund & Highland Floating Rate Fund on 6/13/2011 and now series of trust of Highland Floating Rate | |
| 552 | Highland Floating Rate Opportunities Fund | 1/13/2000 | Delaware | N/A | Retail | Highland 401(k) Plan | Common | 0.20% | 189,390.96 | Independent Trustees: Dr. Bob Froehlich | Brad Ross-Pres/PEO Trey Parker-EVP | Brad Ross-Pres/PEO Trey Parker-EVP | Dustin Norris | James Palmer/ Austin Spence | Y | | Acquired assets from Highland Floating Rate Advantage Fund & Highland Floating Rate Fund on 6/13/2011 and now series of trust of Highland Floating Rate | |
| 553 | Highland Floating Rate Opportunities Fund | 1/13/2000 | Delaware | N/A | Retail | James Dondero and Mark Okada | Common | 0.04% | 41,480.19 | Independent Trustees: Dr. Bob Froehlich John Honis | F. Waterhouse-Treas/PAO/PFO Brad Ross-Pres/PEO Trey Parker-EVP | | Dustin Norris | James Palmer/ Austin Spence | Y | | Acquired assets from Highland Floating Rate Advantage Fund & Highland Floating Rate Fund on 6/13/2011 and now series of trust of Highland Floating Rate | |
| 553 | Highland Floating Rate Opportunities Fund | 1/13/2000 | Delaware | N/A | Retail | Third Party Investors | Common | 99.66% | ########### | Independent Trustees: Dr. Bob Froehlich John Honis Timothy Hui Bryan A. Ward; Interested Trustees: Ethan Powell | F. Waterhouse-Treas/PAO/PFO Brad Ross-Pres/PEO Trey Parker-EVP F. Waterhouse-Treas/PAO/PFO Cliff Stoops-A. Treas Dustin Norris-Secy Carter Chism-Auth Sig Jason Post-CCO/AMLO James Palmer-Auth Sig | | Dustin Norris | James Palmer/ Austin Spence | Y | | Acquired assets from Highland Floating Rate Advantage Fund & Highland Floating Rate Fund on 6/13/2011 and now series of trust of Highland Funds I | |
| 554 | Highland Gemini Program (Castor), L.P. | 11/14/2016 | Delaware | | Hedge | Highland Gemini Program GP, LLC | General Partner | | | | | | Trey Parker | Chris Dunn | Y | 11/29/2017 | | |
| 555 | Highland Gemini Program (Castor), L.P. | 11/14/2016 | Delaware | | Hedge | James Dondero | Initial LP | | | | | | Trey Parker | Chris Dunn | Y | 11/29/2017 | | |
| 556 | Highland Gemini Program (Pollux), L.P. | 11/15/2016 | Cayman Islands | | Hedge | Highland Gemini Program GP, LLC | General Partner | | | | | | Trey Parker | Chris Dunn | Y | 11/16/2017 | | |
| 557 | Highland Gemini Program (Pollux), L.P. | 11/15/2016 | Cayman Islands | | Hedge | James Dondero | Initial LP | | | | | | Trey Parker | Chris Dunn | Y | 11/16/2017 | | |
| 558 | Highland Gemini Program , L.P. | 11/15/2016 | Cayman Islands | | Hedge | Highland Gemini Program GP, LLC | General Partner | | | | | | Trey Parker | Chris Dunn | Y | 11/16/2017 | | |
| 559 | Highland Gemini Program , L.P. | 11/15/2016 | Cayman Islands | | Hedge | James Dondero | Initial LP | | | | | | Trey Parker | Chris Dunn | Y | 11/16/2017 | | |
| 560 | Highland Gemini Program GP, LLC | 11/14/2016 | Delaware | | Hedge | Highland Capital Management, L.P. | Member | 100 | | | | | Trey Parker | Chris Dunn | Y | 11/29/2017 | | |
| 562 | Highland Global Equity Fund | Acquired by HCM on 2/18/11. | Massachusetts | | Retail | Third Party Investors | Common | 0 | 0 | Trustees: Tim Hui, Bryan Ward, Scott Kavanaugh, Ethan | Powell-Pres/Sec Mitts-Treas Head-CCO/AMLO | Powell-Pres/Sec Mitts-Treas Head-CCO/AMLO | Brian Mitts | Brian Mitts | N | 9/2014 | Series of trust of Highland-Funds II / HCMFA - advisor, GEAM - Subadvisor | Merged into Highland Global Allocation Fund in 9/2014 |

| | A | B | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 563 | Highland Goldfield Preserve Holding II, LLC | | 11/30/2006 | Delaware | N/A | Hedge | HGPH II-A Inc. | Member | 33 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Dissolved | 10/15/2013 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership | |
| 564 | Highland Goldfield Preserve Holding II, LLC | | 11/30/2006 | Delaware | N/A | Hedge | HGPH II-B Inc. | Member | 33 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Dissolved | 10/15/2013 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership | |
| 565 | Highland Goldfield Preserve Holding II, LLC | | 11/30/2006 | Delaware | N/A | Hedge | HGPH II-C Inc. | Member | 33 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Dissolved | 10/15/2013 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership | |
| 566 | Highland Goldfield Preserve Holding II, LLC | | 11/30/2006 | Delaware | N/A | Hedge | HGPH II-D Inc. | Member | 1 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Dissolved | 10/15/2013 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership | |
| 567 | Highland Goldfield Preserve Holding II, Ltd. | | 9/7/2006 | Cayman Islands | N/A | Hedge | Highland Crusader Offshore Partners, L.P. | Shareholder | 100 | n/a | James Dondero | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 6/17/2014 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership | |
| 568 | Highland Goldfield Preserve Holding, LLC | | 11/30/2006 | Delaware | N/A | Hedge | HGPH A Inc. | Member | 33 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Dissolved | 10/15/2013 | Sub of Credit Strat | | |
| 569 | Highland Goldfield Preserve Holding, LLC | | 11/30/2006 | Delaware | N/A | Hedge | HGPH B Inc. | Member | 33 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Dissolved | 10/15/2013 | Sub of Credit Strat | | |
| 570 | Highland Goldfield Preserve Holding, LLC | | 11/30/2006 | Delaware | N/A | Hedge | HGPH C Inc. | Member | 33 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Dissolved | 10/15/2013 | Sub of Credit Strat | | |
| 571 | Highland Goldfield Preserve Holding, LLC | | 11/30/2006 | Delaware | N/A | Hedge | HGPH D Inc. | Member | 1 | n/a | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Dissolved | 10/15/2013 | Sub of Credit Strat | | |
| 572 | Highland Goldfield Preserve Holding, Ltd. | | 8/9/2006 | Cayman Islands | N/A | Hedge | Highland Credit Strategies Master Fund, L.P. | Shareholder | 100 | n/a | James Dondero | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 6/17/2014 | Sub of Credit Strat | | |
| 573 | Highland HFR Equity Hedge ETF | | 6/1/2015 | Delaware | N/A | Retail | | | | | Independent Trustees Dr. Bob Froehlich John Honis Tim Hui | Brad Ross-Pres/PEO Dr. Bob Mitts-Secy/PEO/PAO F. Waterhouse-Treas Dustin Norris-A. Treas | Brad Ross-Pres/PEO Brian Mitts-Secy/PEO/PAO F. Waterhouse-Treas Dustin Norris-A. Treas | | | Y | Liquidation Plan effective date 4/11/16 | Series of trust of Highland Funds I | | |
| 575 | Highland HFR Event-Driven ETF | | 6/1/2015 | Delaware | N/A | Retail | | | | | Independent Trustees Dr. Bob Froehlich John Honis Tim Hui | Brad Ross-Pres/PEO Dr. Bob Mitts-Secy/PEO/PAO F. Waterhouse-Treas Dustin Norris-A. Treas | Brad Ross-Pres/PEO Brian Mitts-Secy/PEO/PAO F. Waterhouse-Treas Dustin Norris-A. Treas | | | Y | Liquidation Plan effective date 4/11/16 | Series of trust of Highland Funds I | | |
| 576 | Highland HFR Global ETF | | 6/1/2015 | Delaware | N/A | Retail | | | | | Independent Trustees Dr. Bob Froehlich | Brad Ross-Pres/PEO Brian Mitts-Secy/PEO/PAO | Brad Ross-Pres/PEO Brian Mitts-Secy/PEO/PAO | | | Y | Liquidation Plan effective date 4/11/16 | Series of trust of Highland Funds I | | |
| | Highland High Income Fund | | 2/1/2007 | Delaware | N/A | Retail | | | | | | | | | | Y | 11/9/2009 | Series of trust of Highland Funds I | | |
| 577 | Highland Income Fund | | 2/1/2007 | Delaware | N/A | Retail | | | | | | | | | | Y | 11/9/2009 | Series of trust of Highland Funds I | | |
| 578 | Highland International Equity Fund | | Acquired by HCM on 2/18/11; | Massachusetts | | Retail | Third Party Investors | Common | 0 | 0 | Trustees: Tim Hui, Bryan Ward, Scott Kavanaugh, Ethan James Dondero Jack Takacs | Powell-EVP/Sec Head-CCO/AMLO | Powell-EVP/Sec Head-CCO/AMLO | Brian Mitts | Brian Mitts | N | 9/2014 | Series of trust of Highland Funds II | HCMFA - advisor, GEAM - Subadvisor | Merged into Highland Global Allocation Fund in 9/2014 |
| 579 | Highland International Holdings, Ltda (fka Highland Brasilinvest, Ltd.) | | 5/3/2011 | Cayman Islands | N/A | Brasilinvest | Highland Capital Management AG | Shareholder | 100 | | | | | Philip Braner | Frank Waterhouse | Dissolved | 12/31/2012 | Cayman vehicle for any fee related estate actions that could arise from offshore activities related to Brazil | | |
| 580 | Highland Life Settlement Program, LP | | 6/7/2006 | Delaware | N/A | I-Fund | 2018 Life Settlement GP, LLC | General Partner | 0 | n/a | GP | GP | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Charlie Hoedebeck | N | 2/27/2018 | fka Ocean Gate Life Settlement Program, LP - Highland replaced GP and IM on 07/13/11 | GP resigned and IMA terminated as of 2/27/18 | |
| 581 | Highland Life Settlement Program, LP | | 6/7/2006 | Delaware | N/A | I-Fund | California Public Employees' Retirement System | Limited Partner | 100 | n/a | GP | GP | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Charlie Hoedebeck | N | 2/27/2018 | fka Ocean Gate Life Settlement Program, LP - Highland replaced GP and IM on 07/13/11 | GP resigned and IMA terminated as of 2/27/18 | |
| 582 | Highland LS GP, LLC | | 4/13/2011 | Delaware | N/A | I-Fund | Highland Capital Management, L.P. | Sole Member | 100 | | Member | Dondero-Pres Okada-VP Ellington-Secy Waterhouse-Treas | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Charlie Hoedebeck | | 5/17/2018 | GP to new Life Settlements fund | Withdrew as GP of HLSP as of 2/27/18 | |
| 583 | Highland Merger Arbitrage Fund GP, LLC | | 10/16/2014 | Delaware | N/A | Private Fund | Highland Capital Management, L.P. | Member | 100 | n/a | Sole Member | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Jonathan Lamensdorf | Kristin Hendrix | Y | 12/28/2016 | Merged into Retail fund | Dissolve? | |
| 584 | Highland Merger Arbitrage Fund, L.P. | | 10/16/2014 | Delaware | N/A | Private Fund | Highland Merger Arbitrage Fund GP, LLC | General Partner | 0 | n/a | N/A | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Jonathan Lamensdorf | Kristin Hendrix | Y | 12/28/2016 | Merged into Retail fund | Dissolve? | |
| 585 | Highland Merger Arbitrage Fund, L.P. | | 10/16/2014 | Delaware | N/A | Private Fund | Highland Capital Management, L.P. | Limited Partner | 100 | n/a | GP | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Jonathan Lamensdorf | Kristin Hendrix | Y | 12/28/2016 | Merged into Retail fund | Dissolve? | |
| 586 | Highland Money Market Fund | | 2/29/1988 | Maryland | | Retail | Third Party Investors | Common | - | - | | | | Brian Mitts | Brian Mitts | N | 12-Dec | Not launched yet | | |
| 587 | Highland Offshore Partners, L.P. | | 2/29/2000 | Bermuda | N/A | I-Fund | Highland Diversified Credit Fund GP, L.P. | General Partner | 0 | n/a | N/A | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | Taylor Colbert | Y | 1/26/2014 | Master to Diversified Credit (fka Commingled Loan) | | |
| 588 | Highland Offshore Partners, L.P. | | 2/29/2000 | Bermuda | N/A | I-Fund | Highland Diversified Credit Fund, L.P. | Limited Partner | 100 | n/a | GP | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Trey Parker | Taylor Colbert | Y | 1/26/2014 | Master to Diversified Credit (fka Commingled Loan) | | |
| 589 | Highland Park Cayman Holdings, Ltd. | | 4/17/2009 | Cayman Islands | N/A | CLO Blocker | Highland Park CDO 1, Ltd. | Common Shares | 100 | | Maples Corporate Services Limited | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | Hunter Covitz | Brandon Wurz | Y | 3/13/2018 | Blocker entity 100% owner by the CLO to hold ownership interest in real estate/real property foreclosures | | |
| 590 | Highland Pharmaceutical Royalty Fund | | 1/12/2009 | Delaware | N/A | Retail | Highland Capital Management, L.P. | Common | 100 | - | | | | Joe Dougherty | Charlie Hoedebeck | Y | 8/24/2010 | | | |
| 591 | Highland Premium Dividend Fund | | 10/31/2011 | Delaware | N/A | Retail | N/A | | N/A | N/A | N/A | | | Dustin Norris | Charlie Hoedebeck | Y | 2/24/2017 | DID NOT LAUNCH | HCMFA - advisor, Brookmont capital - Subadvisor | |
| 592 | Highland Premium Long/Short Equity Fund | | 11/30/2011 | Delaware | N/A | Retail | N/A | | N/A | N/A | N/A | | | Mark Patrick | Frank Waterhouse | Y | 2/24/2017 | DID NOT LAUNCH | | |
| 593 | Highland Purchased Holdings , L.P. | | 8/2/2012 | Delaware | N/A | Hedge | Highland Purchased Holdings GP, LLC | General Partner | 0.1 | | GP | GP | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Mark Patrick | Frank Waterhouse | Y | 2/11/2013 | NOT USED | | |
| 594 | Highland Purchased Holdings , L.P. | | 8/2/2012 | Delaware | N/A | Hedge | Highland Capital Management, L.P. | Limited Partner | 99.9 | | GP | GP | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Stoops, Chism | Mark Patrick | Frank Waterhouse | Y | 2/11/2013 | NOT USED | | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 136 of 376

| A | B | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Highland Purchased Holdings GP, LLC | | 8/2/2012 | Delaware | N/A | Hedge | Highland Capital Management, L.P. | Member | 100 | N/A | Sole Member - HCMLP | N/A | Dondero, Okada, Britain, Ellington, Boyce, Terry, Waterhouse, Wise, Chism | Mark Patrick | Frank Waterhouse | Y | 2/11/2013 | NOT USED | | |
| Highland Residential Trust I, Inc. | | 6/26/2014 | Maryland | N/A | REIT | NexPoint Real Estate Opportunities, LLC (fka Freedom REIT LLC) | Shareholder | 100 | | NexPoint Advisors, LP-Manager | Brian Mitts-Pres/Treas Matt McGraner-Secy | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | | 1/30/2019 | | | |
| Highland RT Corporation | | 10/8/2008 | Delaware | N/A | Hedge | Highland Capital Management, L.P. | Shareholder | 100 | n/a | Dondero, Okada | Dondero, Okada, Colvin, Boyce | Dondero, Okada, Dougherty, Boyce, Colvin, Kauffman, Halpin, Post, Stoops, Chism | Dondero/Okada | | | 12/20/2010 | Served as Noteholders Agent on HFP Note transaction | | |
| Highland S&P AAA CLO ETF | | | | | Retail | | | | | | | | | | Y | 4/11/2016 | Series of trust of Highland Funds I | NEVER LAUNCHED | |
| Highland Special Situations Fund | | 4/12/2005 | Delaware | N/A | | Highland Capital Management, L.P. | Common | n/a | | n/a Trustees: Tim Hui, Dr. Bob Froehlich, Bryan Ward | Ethan Powell-EVP/Sec Brian Norris-A. Treas | Ethan Powell-EVP/Sec Brian Mitts-Treas | Dustin Norris | James Palmer | Y | 6/20/2016 | Privately offered closed-end fund with Highland as only shareholder. Fka Restoration Opportunities Fund | Deregistered with SEC on 3.25.2015 | |
| Highland Special Situations Fund | | 4/12/2005 | Delaware | N/A | | Third Party Investors | Common | n/a | | n/a Trustees: Tim Hui, Dr. Bob Froehlich, Bryan Ward | Ethan Powell-EVP/Sec Brian Mitts-Treas | Dustin Norris-A. Treas Brian Mitts-Treas | Dustin Norris | James Palmer | Y | 6/20/2016 | | Deregistered with SEC on 3.25.2015 | |
| Highland Special Situations Fund | | 4/12/2005 | Delaware | N/A | Retail | Internal Investors | Preferred | n/a | | n/a Trustees: Tim Hui, Dr. Bob Froehlich, Bryan Ward | Ethan Powell-EVP/Sec Brian Mitts-Treas | Dustin Norris-A. Treas Brian Mitts-Treas | Dustin Norris | James Palmer | Y | 6/20/2016 | Redeemed in 2010 | Deregistered with SEC on 3.25.2015 | |
| Highland Special Situations Fund | | 4/12/2005 | Delaware | N/A | Retail | Third Party Investors | Preferred | n/a | | n/a Trustees: Tim Hui, Dr. Bob Froehlich, Bryan Ward | Ethan Powell-EVP/Sec Brian Mitts-Treas | Dustin Norris-A. Treas Brian Mitts-Treas | Dustin Norris | James Palmer | Y | 6/20/2016 | Redeemed in 2010 | Deregistered with SEC on 3.25.2015 | |
| Highland Special Situations Fund II | | 6/5/2008 | Delaware | N/A | Retail | - | - | - | - | n/a Trustees: Tim Hui, Scott Kavanaugh, James Leary, Bryan Ward, 0 | Dougherty-Pres/CEO Blackburn-Sec/Treas Powell-EVP/Sec | Dougherty-Pres/CEO Borud-EVP Blackburn-Sec/Treas Powell-EVP/Sec | Joe Dougherty | Jason Blackburn | Y | 3/29/2010 | | | |
| Highland Trend Following Fund | | 3/31/2009 | Massachusetts | N/A | Retail | Third Party Investors | Common | 0 | | 0 Trustees: Tim Hui, Bryan Ward, Scott Kavanaugh, Ethan | Brian Mitts Mitts-Treas Head-CCO/AMLO | Brian Mitts Mitts-Treas Head-CCO/AMLO | Brian Mitts | Brian Mitts | Y | Liquidated | Series of trust of Highland Funds II | HCMFA - advisor, Incline capital -Subadvisor | |
| Highland Westgate Investments Holding II, LLC | | 3/23/2007 | Delaware | N/A | Hedge | HWH II A Inc. | Member | 19.8 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding II, LLC | | 3/23/2007 | Delaware | N/A | Hedge | HWH II B Inc. | Member | 19.8 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding II, LLC | | 3/23/2007 | Delaware | N/A | Hedge | HWH II C Inc. | Member | 19.8 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding II, LLC | | 3/23/2007 | Delaware | N/A | Hedge | HWH II D Inc. | Member | 19.8 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding II, LLC | | 3/23/2007 | Delaware | N/A | Hedge | HWH II E Inc. | Member | 19.8 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding II, LLC | | 3/23/2007 | Delaware | N/A | Hedge | HWH II F Inc. | Member | 1 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding II, Ltd. | | 9/7/2006 | Cayman Islands | N/A | Hedge | Highland Crusader Offshore Partners, L.P. | Shareholder | 100 | N/A | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 12/1/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding, LLC | | 3/28/2007 | Delaware | N/A | Hedge | HWH A Inc. | Member | 19.8 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding, LLC | | 3/28/2007 | Delaware | N/A | Hedge | HWH B Inc. | Member | 19.8 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding, LLC | | 3/28/2007 | Delaware | N/A | Hedge | HWH C Inc. | Member | 19.8 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding, LLC | | 3/28/2007 | Delaware | N/A | Hedge | HWH D Inc. | Member | 19.8 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding, LLC | | 3/28/2007 | Delaware | N/A | Hedge | HWH E Inc. | Member | 19.8 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding, LLC | | 3/28/2007 | Delaware | N/A | Hedge | HWH F Inc. | Member | 1 | N/A | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |
| Highland Westgate Investments Holding, Ltd. | | 8/9/2006 | Cayman Islands | N/A | Hedge | Highland Credit Strategies Master Fund, L.P. | Shareholder | 100 | N/A | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 12/1/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |
| Highland/U.S. Global Infrastructure Fund | | 8/4/2008 | Delaware | N/A | Retail | - | Common | - | - | | | | Joe Dougherty | Jason Blackburn | N | 3/29/2010 | | | |
| Highlander Equity Holdings III, Ltd. | | 1/15/2013 | Cayman Islands | N/A | Euro CLO | Maples | Initial Subscriber | 100 | 1 | Maples-Wendy Ebanks, Laura Chisholm | Maples Secretaries (Cayman) Limited - | Maples-Christopher Watler, Wendy Ebanks | Josh Terry | Hunter Covitz / Edward Leo | N | | Highlander III Repack | | |
| Highlander Equity Holdings, Ltd. | | 12/12/2012 | Cayman Islands | N/A | Euro CLO | Maples | Initial Subscriber | 100 | 1 | Maples-Christopher Watler, Wendy Ebanks | Maples Secretaries (Cayman) Limited - | Maples | Josh Terry | Hunter Covitz / Edward Leo | N | | Highlander II Repack | | |
| Highlander Euro CDO (Cayman) Ltd. | | 4/29/2004 | Cayman Islands | N/A | CLO | Third Party Investors | Common Shareholder | 100 | | Maples | Maples | Maples | Josh Terry | Hunter Covitz / Edward Leo | Sold to Carlyle | 2/28/2012 | Issuer for CLO investment structure. | Sold to Carlyle on 2/28/2012 | Sold to Carlyle |
| Highlander Euro CDO II (Cayman) Ltd. | | 6/7/2006 | Cayman Islands | N/A | CLO | Third Party Investors | Common | 100 | | Maples | Maples | Maples | Josh Terry | Hunter Covitz / Edward Leo | Sold to Carlyle | 2/28/2012 | Issuer for CLO investment structure. | Sold to Carlyle on 2/28/2012 | |
| Highlander Euro CDO II, B.V. | | 6/7/2006 | Netherlands | N/A | Euro CLO | Highlander Equity Holdings, Ltd. | Class F-2 Primary Subordinated | 51 | 35,700,000 | M.C. van der Sluijs-Plantz, Mr. H.P.C. Mourits, Ms. | Carlyle | Carlyle | Josh Terry | Hunter Covitz / Edward Leo | Servicing contract sold to Carlyle | 2/28/2012 | invest in various products, such as loans, bonds, cfo, synthetics | Servicing contract sold to Carlyle on 2/28/2012 | |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 625 | Highlander Euro CDO II, B.V. | | 6/7/2006 | Netherlands | N/A | Euro CLO | Third Party Investors | Class F-1 Secondary Subordinated Notes | 49 | 34,300,000 | M.C. van der Sluijs-Plantz, Mr. H.P.C. Mourits, Ms. Th.F.C. Wijnen | Carlye | | | Carlyle | | | Josh Terry | Hunter Covitz / Edward Leo | Servicing contract sold to Carlye | 2/28/2012 | invest in various products, such as loans, bonds, sfo, synthetics | Servicing contract sold to Carlye on 2/28/2012 | |
| 626 | Highlander Euro CDO III, B.V. | | 9/13/2006 | Netherlands | N/A | Euro CLO | Highlander Equity Holdings III, Ltd. | Class F-1 Secondary Subordinated Notes | 11.25 | 9,000,000 | M.C. van der Sluijs-Plantz, Mr. H.P.C. Mourits, Ms. Th.F.C. Wijnen | Carlye | | | Carlyle | | | Josh Terry | Hunter Covitz / Edward Leo | Servicing contract sold to Carlye | 2/28/2012 | invest in various products, such as loans, bonds, sfo, synthetics | Servicing contract sold to Carlye on 2/28/2012 | |
| 627 | Highlander Euro CDO III, B.V. | | 9/13/2006 | Netherlands | N/A | Euro CLO | Highlander Equity Holdings III, Ltd. | Class F-2 Primary Subordinated Notes | 27.25 | 21,800,000 | M.C. van der Sluijs-Plantz, Mr. H.P.C. Mourits, Ms. Th.F.C. Wijnen | Carlye | | | Carlyle | | | Josh Terry | Hunter Covitz / Edward Leo | Servicing contract sold to Carlye | 2/28/2012 | invest in various products, such as loans, bonds, sfo, synthetics | Servicing contract sold to Carlye on 2/28/2012 | |
| 628 | Highlander Euro CDO III, B.V. | | 9/13/2006 | Netherlands | N/A | Euro CLO | Third Party Investors | Subordinated Notes | 61.5 | 49,200,000 | M.C. van der Sluijs-Plantz, Mr. H.P.C. Mourits, Ms. Th.F.C. Wijnen | Carlye | | | Carlyle | | | Josh Terry | Hunter Covitz / Edward Leo | Servicing contract sold to Carlye | 2/28/2012 | invest in various products, such as loans, bonds, sfo, synthetics | Servicing contract sold to Carlye on 2/28/2012 | |
| 629 | Highlander Euro CDO IV, B.V. | | 12/11/2006 | Netherlands | N/A | Euro CLO | Highland Crusader Offshore Partners, LP | Class F-2 Subordinated Notes | 19.92 | 14,140,000 | M.C. van der Sluijs-Plantz, Mr. H.P.C. Mourits, Ms. Th.F.C. Wijnen | Carlye | | | Carlyle | | | Josh Terry | Hunter Covitz / Edward Leo | Servicing contract sold to Carlye | 2/28/2012 | invest in various products, such as loans, bonds, sfo, synthetics | Servicing contract sold to Carlye on 2/28/2012 | |
| 630 | Highlander Euro CDO IV, B.V. | | 12/11/2006 | Netherlands | N/A | Euro CLO | Highland Credit Strategies Master Fund, LP | Class F-2 Subordinated Notes | 14.08 | 10,000,000 | M.C. van der Sluijs-Plantz, Mr. H.P.C. Mourits, Ms. Th.F.C. Wijnen | Carlye | | | Carlyle | | | Josh Terry | Hunter Covitz / Edward Leo | Servicing contract sold to Carlye | 2/28/2012 | invest in various products, such as loans, bonds, sfo, synthetics | Servicing contract sold to Carlye on 2/28/2012 | |
| 631 | Highlander Euro CDO IV, B.V. | | 12/11/2006 | Netherlands | N/A | Euro CLO | CLO HoldCo, Ltd | Class F-2 Subordinated Notes | 51 | 36,210,000 | M.C. van der Sluijs-Plantz, Mr. H.P.C. Mourits, Ms. Th.F.C. Wijnen | Carlye | | | Carlyle | | | Josh Terry | Hunter Covitz / Edward Leo | Servicing contract sold to Carlye | 2/28/2012 | invest in various products, such as loans, bonds, sfo, synthetics | Servicing contract sold to Carlye on 2/28/2012 | |
| 632 | Highlander Euro CDO IV, B.V. | | 12/11/2006 | Netherlands | N/A | Euro CLO | Third Party Investors | Common Shareholder | 15 | 10,650,000 | M.C. van der Sluijs-Plantz, Mr. H.P.C. Mourits, Ms. Th.F.C. Wijnen | Carlye | | | Carlyle | | | Josh Terry | Hunter Covitz / Edward Leo | Servicing contract sold to Carlye | 2/28/2012 | invest in various products, such as loans, bonds, sfo, synthetics | Servicing contract sold to Carlye on 2/28/2012 | |
| 633 | Highlander Euro CDO, B.V. | | 4/29/2004 | Netherlands | N/A | Euro CLO | CLO HoldCo, Ltd | Class F-2 Primary Subordinated Notes | 68 | 34,000,000 | Ms. M.C. van der Sluijs-Plantz, Ms. Th.F.C. Wijnen, | Carlye | | | Carlyle | | | Josh Terry | Hunter Covitz / Edward Leo | Servicing contract sold to Carlye | 2/28/2012 | invest in various products, such as loans, sfo, synthetics | Servicing contract sold to Carlye on 2/28/2012 | |
| 634 | Highlander Euro CDO, B.V. | | 4/29/2004 | Netherlands | N/A | Euro CLO | Third Party Investors | Class F-1 Secondary Subordinated Notes | 32 | 16,000,000 | Ms. M.C. van der Sluijs-Plantz, Ms. Th.F.C. Wijnen, | Carlye | | | Carlyle | | | Josh Terry | Hunter Covitz / Edward Leo | Servicing contract sold to Carlye | 2/28/2012 | invest in various products, such as loans, sfo, synthetics | Servicing contract sold to Carlye on 2/28/2012 | |
| 635 | Hillcrest IV, LLC | | 10/17/2011 | Delaware | N/A | Retail | Highland Credit Strategies Fund | Member | 50 | N/A | Member Managed | Member Managed | | | Powell-EVP/Sec Mitts-Treas Head-CCO/AMLO | | | Brian Mitts | Brian Mitts | Dissolved | 7/12/2013 | Assignee of Highland Funds' claims against CBRE and CS re LLV loans | | |
| 636 | Hillcrest IV, LLC | | 10/17/2011 | Delaware | N/A | Retail | Highland Floating Rate Opportunites Fund | Member | 50 | N/A | Member Managed | Member Managed | | | Powell-EVP/Sec Mitts-Treas Head-CCO/AMLO | | | Brian Mitts | Brian Mitts | Dissolved | 7/12/2013 | Assignee of Highland Funds' claims against CBRE and CS re LLV loans | | |
| 637 | Hills of Kings Wood, L.P. | | 1/3/2006 | Texas | N/A | RE | HCREA Kings Wood, L.P. | Limited Partner | 50.52 | n/a | Non HCMLP GP | n/a | | | General Partner Controlled | | | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 638 | Hills of Kings Wood, L.P. | | 1/3/2006 | Texas | N/A | RE | Third Party Investors | General Partner | 0 | n/a | Non HCMLP GP | n/a | | | General Partner Controlled | | | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 639 | Hills of Kings Wood, L.P. | | 1/3/2006 | Texas | N/A | RE | Third Party Investors | Limited Partner | 49.48 | n/a | Non HCMLP GP | n/a | | | General Partner Controlled | | | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 640 | HKW Land Holdings, L.P. | | 1/3/2006 | Texas | N/A | RE | HCREA Kings Wood, L.P. | Limited Partner | 50.58 | n/a | Non HCMLP GP | n/a | | | General Partner Controlled | | | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 641 | HKW Land Holdings, L.P. | | 1/3/2006 | Texas | N/A | RE | Third Party Investors | General Partner | 0 | n/a | Non HCMLP GP | n/a | | | General Partner Controlled | | | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 642 | HKW Land Holdings, L.P. | | 1/3/2006 | Texas | N/A | RE | Third Party Investors | Limited Partner | 49.42 | n/a | Non HCMLP GP | n/a | | | General Partner Controlled | | | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/31/2012 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |
| 643 | HMCF IB Investors, LLC | | 6/4/2014 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | | | James Dondero-Pres/PEO Brian Mitts-EVP/PFO/PAO Frank Waterhouse-Treas | | | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | | |
| 644 | HMCF RV Investors, LLC | | 8/7/2014 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | | | James Dondero-Pres/PEO Brian Mitts-EVP/PFO/PAO Frank Waterhouse-Treas | | | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | | |
| 645 | Home Interiors & Gifts | | 3/10/1999 | Delaware | | PE | Atascosa Investments LLC | Shareholder | 0.33 | n/a | Joe Colonnetta Barbara Hammond Christina Carter Urschel | Michael Lohner-Pres/CEO Kenneth Cichocki-SVP/CFO/Secy | | | Michael Lohner-Pres/CEO Kenneth Cichocki-SVP/CFO/Secy Eugenia Price-SVP | | | Carl Moore | Clay Callan | Y | | NO EQUITY HOLDING | | |
| 646 | Home Interiors & Gifts | | 3/10/1999 | Delaware | | PE | Burnet Partners, LLC | Shareholder | 0.38 | n/a | same | same | | | same | | | Carl Moore | Clay Callan | Y | | NO EQUITY HOLDING | | |
| 647 | Home Interiors & Gifts | | 3/10/1999 | Delaware | | PE | Gillespie Income Fund, LLC | Shareholder | 0.33 | n/a | same | same | | | same | | | Carl Moore | Clay Callan | Y | | NO EQUITY HOLDING | | |
| 648 | Home Interiors & Gifts | | 3/10/1999 | Delaware | | PE | Highland Crusader Offshore Partners, L.P. | Shareholder | 46.31 | n/a | same | same | | | same | | | Carl Moore | Clay Callan | Y | | NO EQUITY HOLDING | | |
| 649 | Home Interiors & Gifts | | 3/10/1999 | Delaware | | PE | Highland Legacy Limited | Shareholder | 3.76 | n/a | same | same | | | same | | | Carl Moore | Clay Callan | Y | | NO EQUITY HOLDING | | |
| 650 | Home Interiors & Gifts | | 3/10/1999 | Delaware | | PE | Highland Special Situations Fund | Shareholder | 3.27 | n/a | same | same | | | same | | | Carl Moore | Clay Callan | Y | | NO EQUITY HOLDING | | |
| 651 | Home Interiors & Gifts | | 3/10/1999 | Delaware | | PE | Hopkins Capital Partners, LLC | Shareholder | 0.33 | n/a | same | same | | | same | | | Carl Moore | Clay Callan | Y | | NO EQUITY HOLDING | | |
| 652 | Home Interiors & Gifts | | 3/10/1999 | Delaware | | PE | Milam High Yield Fund, LLC | Shareholder | 0.41 | n/a | same | same | | | same | | | Carl Moore | Clay Callan | Y | | NO EQUITY HOLDING | | |
| 653 | Home Interiors & Gifts | | 3/10/1999 | Delaware | | PE | Navarro Investment Partners, LLC | Shareholder | 0.41 | n/a | same | same | | | same | | | Carl Moore | Clay Callan | Y | | NO EQUITY HOLDING | | |
| 654 | Home Interiors & Gifts | | 3/10/1999 | Delaware | | PE | Pam Capital Funding, L.P. | Shareholder | 12.09 | n/a | same | same | | | same | | | Carl Moore | Clay Callan | Y | | NO EQUITY HOLDING | | |
| 655 | Home Interiors & Gifts | | 3/10/1999 | Delaware | | PE | Third Party Investors | Shareholder | 32.38 | n/a | same | same | | | same | | | Carl Moore | Clay Callan | Y | | NO EQUITY HOLDING | | |
| 656 | Hopkins Capital Partners, LLC | | 10/22/2004 | Delaware | N/A | Hedge Blocker | Highland Crusader Offshore Partners, L.P. | Member | 100 | n/a | James Dondero-Pres | James Dondero-Pres | | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | | | Matt Jameson | CRUSADER IMA | 8/4/2016 | Sub of Crusader | | |
| 657 | Hoss I, LLC | | 5/14/2008 | Delaware | N/A | CLO Blocker | Highland Loan Funding V, Ltd. | Shareholder | 100 | | James Dondero-Manager | N/A | | | James Dondero-Manager | | | Josh Terry | Hunter Covitz / Edward Leo | 6/18/2012 | Conduit entity related to Marcal restructure - provided funds to Outland 77, LLC | | |
| 658 | Hoss II, LLC | | 5/14/2008 | Delaware | N/A | CLO Blocker | Rockwall CDO, Ltd. | Shareholder | 100 | | James Dondero-Manager | N/A | | | James Dondero-Manager | | | Josh Terry | Hunter Covitz / Edward Leo | 6/18/2012 | Conduit entity related to Marcal restructure - provided funds to Outland 77, LLC | | |
| 659 | Hoss III, LLC | | 5/14/2008 | Delaware | N/A | CLO Blocker | Grayson CLO, Ltd. | Shareholder | 100 | | James Dondero-Manager | N/A | | | James Dondero-Manager | | | Josh Terry | Hunter Covitz / Edward Leo | 6/18/2012 | Conduit entity related to Marcal restructure - provided funds to Outland 77, LLC | | |
| 660 | Hoss IV, LLC | | 5/14/2008 | Delaware | N/A | CLO Blocker | Brentwood CLO, Ltd. | Shareholder | 100 | | James Dondero-Manager | N/A | | | James Dondero-Manager | | | Josh Terry | Hunter Covitz / Edward Leo | 6/18/2012 | Conduit entity related to Marcal restructure - provided funds to Outland 77, LLC | | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77

Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document      Page 138 of 376

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

| | A | B | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 661 | Hoss IX, LLC | | 5/14/2008 | Delaware | N/A | CLO Blocker | Greenbriar CLO, Ltd. | Shareholder | 100 | | James Dondero- Manager | | James Dondero-Manager | Josh Terry | Hunter Covitz / Edward Leo | Y | 6/18/2012 | Conduct entity related to Marcal restructure - provided funds to Outland 77, LLC | | |
| 662 | Hoss V, LLC | | 5/14/2008 | Delaware | N/A | CLO Blocker | Eastland CLO, Ltd. | Shareholder | 100 | | James Dondero- Manager | | James Dondero-Manager | Josh Terry | Hunter Covitz / Edward Leo | Y | 6/18/2012 | Conduct entity related to Marcal restructure - provided funds to Outland 77, LLC | | |
| 663 | Hoss VI, LLC | | 5/14/2008 | Delaware | N/A | CLO Blocker | Rockwall CDO II, Ltd. | Shareholder | 100 | | James Dondero- Manager | | James Dondero-Manager | Josh Terry | Hunter Covitz / Edward Leo | Y | 6/18/2012 | Conduct entity related to Marcal restructure - provided funds to Outland 77, LLC | | |
| 664 | Hoss VII, LLC | | 5/14/2008 | Delaware | N/A | CLO Blocker | Westchester CLO, Ltd. | Shareholder | 100 | | James Dondero- Manager | | James Dondero-Manager | Josh Terry | Hunter Covitz / Edward Leo | Y | 6/18/2012 | Conduct entity related to Marcal restructure - provided funds to Outland 77, LLC | | |
| 665 | Hoss VIII, LLC | | 5/14/2008 | Delaware | N/A | CLO Blocker | Stratford CLO, Ltd. | Shareholder | 100 | | James Dondero- Manager | | James Dondero-Manager | Josh Terry | Hunter Covitz / Edward Leo | Y | 6/18/2012 | Conduct entity related to Marcal restructure - provided funds to Outland 77, LLC | | |
| 666 | HRT Aspen Grove, LLC | | 7/21/2014 | Delaware | N/A | REIT | Freedom REIT LLC | Member | 100 | n/a | | | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/31/2016 | | | |
| 667 | HRTBH Arbors, LLC | | 8/18/2014 | Delaware | GA | REIT | HRTBH North Atlanta, LLC | Member | 100 | n/a | Member Managed | Member Managed | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | | |
| 668 | HRTBH Aspen Grove Owner, LLC | | 10/9/2014 | Delaware | CO | REIT | HRTBH Aspen Grove, LLC | Member | 100 | n/a | Sole Member | Sole Member | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/11/2016 | | | |
| 669 | HRTBH Aspen Grove, LLC | | 7/21/2014 | Delaware | N/A | REIT | BH Equities, LLC | Managing Member | 0.1 | n/a | Authorized Signatories Brian Mitts Harry Bookey Nicholas H. Roby | Authorized Signatories Brian Mitts Harry Bookey Nicholas H. Roby | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/11/2016 | | | |
| 670 | HRTBH Aspen Grove, LLC | | 7/21/2014 | Delaware | N/A | REIT | BH Aspen Grove, LLC | Member | 9.9 | n/a | Auth Sigs | Auth Sigs | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/11/2016 | | | |
| 671 | HRTBH Aspen Grove, LLC | | 7/21/2014 | Delaware | N/A | REIT | HRT Aspen Grove, LLC | Member | 90 | n/a | Auth Sigs | Auth Sigs | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/11/2016 | | | |
| 672 | HRTBH Knolls, LLC | | 8/18/2014 | Delaware | GA | REIT | HRTBH North Atlanta, LLC | Member | 100 | n/a | Member Managed | Member Managed | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | | |
| 673 | HRTBH Wood Bridge, LLC | | 8/18/2014 | Delaware | GA | REIT | HRTBH North Atlanta, LLC | Member | 100 | n/a | Member Managed | Member Managed | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | | |
| 674 | HRTBH Wood Station, LLC | | 8/18/2014 | Delaware | GA | REIT | HRTBH North Atlanta, LLC | Member | 100 | n/a | Member Managed | Member Managed | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | | |
| 675 | HSMEP Tulsa Plaza, LP | | | | | JD | James Dondero | Limited Partner | 6.76 as of 12/31/08 | | | N/A | | Melissa Schroth | Melissa Schroth | Written off | 7/1/2011 | Jim's investment property | | |
| 676 | HSMEP Tulsa Plaza, LP | | | | | JD | Third Party Investors | Limited Partner | 93.24 as of 12/31/08 | | | N/A | | Melissa Schroth | Melissa Schroth | Written off | 7/1/2011 | Jim's investment property | | |
| 677 | HT Cornerstone Limited Partnership | | 1/31/2006 | Texas | N/A | RE | HCREA Cornerstone, L.P. | Limited Partner | 50 | n/a | General Partner | n/a | Davis Deadman, Mike Rossi, Lisa Stuart | Ted Darneris | Tanya Massie | Y | 1/9/2009 | | SOLD TO RREEF IN 2007 | |
| 678 | HT Cornerstone Limited Partnership | | 1/31/2006 | Texas | N/A | RE | General Partner | General Partner | 1 | n/a | General Partner | n/a | Davis Deadman, Mike Rossi, Lisa Stuart | Ted Darneris | Tanya Massie | Y | 1/9/2009 | | SOLD TO RREEF IN 2007 | |
| 679 | HT Cornerstone Limited Partnership | | 1/31/2006 | Texas | N/A | RE | Third Party Investors | Limited Partner | 0.3 | n/a | General Partner | n/a | Davis Deadman, Mike Rossi, Lisa Stuart | Ted Darneris | Tanya Massie | Y | 1/9/2009 | | SOLD TO RREEF IN 2007 | |
| 680 | HT Cornerstone Limited Partnership | | 1/31/2006 | Texas | N/A | RE | Third Party Investors | Limited Partner | 48.7 | n/a | General Partner | n/a | Davis Deadman, Mike Rossi, Lisa Stuart | Ted Darneris | Tanya Massie | Y | 1/9/2009 | | SOLD TO RREEF IN 2007 | |
| 681 | HTT Advisors, AG | | 7/7/2010 | Switzerland | N/A | HCM | Highland Capital Management, AG | Shareholder | 100 | 100,000 | James Dondero Philip Braner | N/A | | Philip Braner | Gabi Gonzales | Y | | New Swiss advisory entity to assist in the management of the Swiss healthcare platform | In liquidation - initial share capital being returned to Dugaboy | |
| 682 | Hukill REO LLC | | | Texas | | NB | NCI Assets Holding | Member | 100 | | | | | Dierk Hohman | Courtney Burton | Y | 8/12/2016 | | | |
| 683 | Hutchins Truck Service Partners, L.P. | | 3/31/2006 | Texas | N/A | RE | HCREA Hutchins Truck Service, LP | Limited Partner | 90 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Darneris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | SOLD AT FORECLOSURE AUCTION IN 2009 | |
| 684 | Hutchins Truck Service Partners, L.P. | | 3/31/2006 | Texas | N/A | RE | Third Party Investors | General Partner | 0 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Darneris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | SOLD AT FORECLOSURE AUCTION IN 2009 | |
| 685 | Hutchins Truck Service Partners, L.P. | | 3/31/2006 | Texas | N/A | RE | Third Party Investors | Limited Partner | 10 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Darneris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | SOLD AT FORECLOSURE AUCTION IN 2009 | |
| 686 | HWIH A Inc. | | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |
| 687 | HWIH B Inc. | | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |
| 688 | HWIH C Inc. | | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |

| # | A | C | D | E | F | H | Role | I | J | O | P | Management | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 689 | HWH D Inc. | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |
| 690 | HWH E Inc. | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Credit Strat | CAN BE DISSOLVED | |
| 691 | HWH F Inc. | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | Will Mabry | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| 692 | HWH II A Inc. | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding II, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| 693 | HWH II B Inc. | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding II, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| 694 | HWH II C Inc. | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding II, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| 695 | HWH II D Inc. | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding II, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| 696 | HWH II E Inc. | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding II, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| 697 | HWH II F Inc. | 3/23/2007 | Delaware | N/A | Hedge | Highland Westgate Investment Holding II, Ltd. | Shareholder | 100 | n/a | James Dondero | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Dondero/Okada | James Palmer | Y | 4/8/2014 | Sub of Crusader | CAN BE DISSOLVED | |
| 698 | Hwy 80 Terrell Partners, Ltd. | 8/11/2005 | Texas | N/A | RE | HCREA Terrell Land, L.P. (SOLD) | Class A Limited Partner | 98.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | SOLD | This entity owns a real estate asset for investment purposes. | SOLD | Remove once funds distributed |
| 699 | Hwy 80 Terrell Partners, Ltd. | 8/11/2005 | Texas | N/A | RE | TODO Terrell Partners, LLC (GP transferred to Third Party) | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | SOLD | This entity owns a real estate asset for investment purposes. | SOLD | Remove once funds distributed |
| 700 | Hwy 80 Terrell Partners, Ltd. | 8/11/2005 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 1 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | SOLD | This entity owns a real estate asset for investment purposes. | SOLD | Remove once funds distributed |
| 701 | HySky Communications LLC | 11/17/2006 | Delaware | N/A | PE | Highland Capital Management, L.P. | Member | 84.35 | n/a | Gustavo Prilick, Charles McQueary, Joseph Andrulis | HySky CFO, Kevin Van de Grift | HySky CFO, Kevin Van de Grift | Carl Moore | Clay Callan | Y | 12/31/2010 Dissolve | | Discharged in bankruptcy | |
| 702 | HySky Communications LLC | 11/17/2006 | Delaware | N/A | PE | Highland Crusader Fund, L.P. | Member | 9.31 | n/a | same | same | same | Carl Moore | Clay Callan | Y | 12/31/2010 Dissolve | | Discharged in bankruptcy | |
| 703 | HySky Communications LLC | 11/17/2006 | Delaware | N/A | PE | Highland Management Services | Member | 6.34 | n/a | same | same | same | Carl Moore | Clay Callan | Y | 12/31/2010 Dissolve | | Discharged in bankruptcy | |
| 704 | Indian Creek Development GP, LLC | 2/9/2011 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | James Dondero, Scott Ellington | James Dondero-Pres, Ted Damerio-VP, Scott Ellington -Secy/Treas | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the general partner of a partnership that owns a real estate asset for investment purposes. | GP to LW Indian Creek Dev. LP | Dissolve once LP sale finalizes (Isaac) |
| 705 | Integrated Wellness Pharmacy, LLC | 4/5/2012 | Texas | N/A | JD | Complete Wellness Solutions, LLC | Sole Member | 100 | n/a | James Dondero Manager - Complete Wellness Solutions, LLC | Scott Ellington -Manager - Complete Wellness Solutions, LLC | James Dondero | Melissa Schroth | Melissa Schroth | Y | 11/7/2013 | Jim's pharmaceutical investment | | |
| 706 | KD Rocky Creek, L.P. | 8/18/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Class A Limited Partner | 89.9 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Donna Engstrom | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |
| 707 | KD Rocky Creek, L.P. | 8/18/2006 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 10 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Donna Engstrom | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |
| 708 | KD Rocky Creek, L.P. | 8/18/2006 | Texas | N/A | RE | Third Party Investors | General Partner | 0.1 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Donna Engstrom | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |
| 709 | Keegans Glen Apartments, Ltd. | 2/16/2007 | Texas | N/A | RE | HCREA Court Glen, LP | Class A Limited Partner | 90 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |
| 710 | Keegans Glen Apartments, Ltd. | 2/16/2007 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 9.9 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |
| 711 | Keegans Glen Apartments, Ltd. | 2/16/2007 | Texas | N/A | RE | Third Party Investors | General Partner | 0.1 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |
| 712 | Keel LLC | 12/11/2012 | Delaware | TX | HCM | Foremast LLC | Sole Member | 100 | N/A | N/A | | | JP Sevilla | Kristin Hendrix | Y | 12/31/2013 | Formed to hold Barclays' interest but not used | | |
| 713 | Keller 1709 Land, Ltd. | 1/30/2004 | Texas | N/A | JD | Third Party Investors | Shareholder | 50 | as of 12/31/08 | Texas Land Management, LLC, Mark R. Smith Company, Inc. | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | | |
| 714 | Keller 1709 Land, Ltd. | 1/30/2004 | Texas | N/A | JD | The Get Good Non-Exempt Trust No. 1 | Shareholder | 5.53 | as of 12/31/08 | Texas Land Management, LLC, Mark R. Smith Company, Inc. | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | | |
| 715 | Keller 1709 Land, Ltd. | 1/30/2004 | Texas | N/A | JD | Todd Travers | Shareholder | 1.37 | as of 12/31/08 | Texas Land Management, LLC, Mark R. Smith Company, Inc. | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | | |
| 716 | Keller 1709 Land, Ltd. | 1/30/2004 | Texas | N/A | JD | Mark Okada | Shareholder | 2.77 | as of 12/31/08 | Texas Land Management, LLC, Mark R. Smith Company, Inc. | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | | |
| 717 | Keller 1709 Land, Ltd. | 1/30/2004 | Texas | N/A | JD | Highland Capital Real Estate Fund, L.P. | Shareholder | 9.67 | as of 12/31/08 | Texas Land Management, LLC, Mark R. Smith Company, Inc. | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | | |
| 718 | Keller 1709 Land, Ltd. | 1/30/2004 | Texas | N/A | JD | Pat Daugherty | Shareholder | 1.37 | as of 12/31/08 | Texas Land Management, LLC, Mark R. Smith Company, Inc. | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | | |
| 719 | Keller 1709 Land, Ltd. | 1/30/2004 | Texas | N/A | JD | Kurt Plumer | Shareholder | 0.7 | as of 12/31/08 | Mark R. Smith Company, Inc. | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | | |
| 720 | Keller 1709 Land, Ltd. | 1/30/2004 | Texas | N/A | JD | Joe Dougherty | Shareholder | 0.7 | as of 12/31/08 | Mark R. Smith Company, | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | | |
| 721 | Keller 1709 Land, Ltd. | 1/30/2004 | Texas | N/A | JD | Davis Deadman | Shareholder | 1.37 | as of 12/31/08 | Texas Land Management, LLC, Mark R. Smith | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | | |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 722 | Keller 1709 Land, Ltd. | | 1/30/2004 | Texas | N/A | JD | Paul Kauffman | Shareholder | 0.7 | | as of 12/31/08 | Management, LLC, Mark R. Smith Company, Inc. | | | | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | |
| 723 | Keller 1709 Land, Ltd. | | 1/30/2004 | Texas | N/A | JD | John Morgan | Shareholder | 0.7 | | as of 12/31/08 | Management, LLC, Mark R. Smith Company, Inc. | | | | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | |
| 724 | Keller 1709 Land, Ltd. | | 1/30/2004 | Texas | N/A | JD | Maso Properties, Ltd. | Shareholder | 25.13 | | as of 12/31/08 | Management, LLC, Mark R. Smith Company, Inc. | | | | | | Melissa Schroth | Melissa Schroth | N | | Jim's property investment | |
| 725 | Knobkerrie, LLC | | 10/28/2009 | Texas | N/A | Oil&Gas/Canopy | PetroCap Management Company LLC | Manager & Member | 100 | | | PetroCap Management Company LLC | Richard Rinehart-Manager | | Lane Britain | Marc Manzo | Y | 8/24/2010 | Shell entity - holds no interest | |
| 726 | Larkspur, LLC | | 7/2/2013 | Delaware | N/A | HCM | TBD | | | | | | | | Isaac Leventon | | N | | Blocker to hold CS litigation assignment | No assignment yet |
| 727 | LF GrayWest CLO Holdings, LLC | | 1/15/2010 | Delaware | N/A | CLO Blocker | Loan Funding VII LLC | Member | 34 | n/a | | HCMLP-Manager | N/A | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Matthew Gray | Ed Leo | Y | 4/8/2014 | DE blocker to hold Panda Hereford assets | |
| 728 | LF GrayWest CLO Holdings, LLC | | 1/15/2010 | Delaware | N/A | CLO Blocker | Grayson CLO, Ltd. | Member | 33 | n/a | | HCMLP-Manager | N/A | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Matthew Gray | Ed Leo | Y | 4/8/2014 | DE blocker to hold Panda Hereford assets | |
| 729 | LF GrayWest CLO Holdings, LLC | | 1/15/2010 | Delaware | N/A | CLO Blocker | Westchester CLO, Ltd. | Member | 33 | n/a | | HCMLP-Manager | N/A | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse,Wise, Stoops, Chism | Matthew Gray | Ed Leo | Y | 4/8/2014 | DE blocker to hold Panda Hereford assets | |
| 730 | Life Settlements Prospects GP, LLC | | 9/22/2008 | Delaware | N/A | Hedge | Highland Capital Management, L.P. | Member | 100 | n/a | | Member | Dondero-Pres Okada-EVP Ellington-Secy | | Dondero, Okada, Ellington, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | Tom Beauchamp | Y | 8/4/2016 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership |
| 731 | Life Settlements Prospects, L.P. | | 9/22/2008 | Delaware | N/A | Hedge | Highland Crusader Holding Corporation | LP | 100 | n/a | | GP | Dondero, Okada, Ellington, Waterhouse, Palmer, Stoops, Chism | | | Matt Jameson | Tom Beauchamp | Y | 8/4/2016 | Sub of Crusader | All Crusader-related entities are in wind-down with the Master Partnership |
| 732 | LM Houston Apartments, LLC | | 11/20/2014 | Texas | N/A | REIT | Freedom La Mirage, LLC | Member | 76.09 | | | Knightvest 2014, LLC (Manager) | Knightvest 2014, LLC (Manager) | Brian Mitts | | Matt McGraner | Brandon Knott | N | Dec-17 | sold 12/2017 | |
| 733 | LM Houston Apartments, LLC | | 11/20/2014 | Texas | N/A | REIT | Knightvest La Mirage, LLC | Member | 23.91 | | | Knightvest 2014, LLC (Manager) | Knightvest 2014, LLC (Manager) | Brian Mitts | | Matt McGraner | Brandon Knott | N | Dec-17 | sold 12/2017 | |
| 734 | Loan Funding IV LLC (Bristol Bay) | | 9/17/2003 | Delaware | N/A | CLO | Citibank, N.A. | Member | 100 | n/a | | Rick Caplan, Doug Warren, Sumit Roy | | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Hunter Covitz | Robert Hill/ Brandon Wurz | Terminated | 12/29/2015 | Issuer for CLO investment structure. | Assets transferred to Bristol Bay |
| 735 | Loan Funding VII LLC (Valhalla) | | 4/6/2004 | Delaware | N/A | CLO | Citibank, N.A. | Member | 100 | n/a | | Rick Caplan, Doug Warren, N/A | | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Hunter Covitz | Robert Hill/ Brandon Wurz | Terminated | 7/25/2016 | Issuer for CLO investment structure. | Assets transferred to Valhalla |
| 736 | Loan Star State Trust | | 6/30/2004 | Cayman Islands | N/A | Sep Acct | The Norinchukin Bank | Shareholder | 100 | N/A | | Bank of New York Mellon | N/A | | Dondero, Okada, Dougherty, Boyce, Colvin, Kauffman, Gilchrist, Post, Stoops, Chism | Paul Kauffman | Jack Bateman | Terminated | 1/13/2011 | Highland managed separate account for Norinchukin Bank. Management terminated | |
| 737 | Lockhill Partners, Ltd. | | 10/31/2005 | Texas | N/A | RE | HCREA Lockhill Retail GP (SOLD) | Limited Partner | 50 | n/a | | Non HCMLP GP | | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | | This entity owns a real estate asset for investment purposes. | SOLD |
| 738 | Lockhill Partners, Ltd. | | 10/31/2005 | Texas | N/A | RE | Third Party Investors | General Partner | 1 | n/a | | Non HCMLP GP | | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | | This entity owns a real estate asset for investment purposes. | SOLD |
| 739 | Lockhill Partners, Ltd. | | 10/31/2005 | Texas | N/A | RE | Third Party Investors | Limited Partner | 49 | n/a | | Non HCMLP GP | | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | | This entity owns a real estate asset for investment purposes. | SOLD |
| 740 | LW Indian Creek Development, L.P. | | 7/14/2006 | Texas | MS | RE | HCREA Indian Creek, L.P. (SOLD) | Class A Limited Partner | 89.9 | n/a | | Non HCMLP GP | | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity owns a real estate asset for investment purposes. | Being sold | Can be removed once Isaac finalizes sale |
| 741 | LW Indian Creek Development, L.P. | | 7/14/2006 | Texas | MS | RE | Third Party Investors | Class A Limited Partner | 10 | n/a | | Non HCMLP GP | | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity owns a real estate asset for investment purposes. | Being sold | Can be removed once Isaac finalizes sale |
| 742 | LW Indian Creek Development, L.P. | | 7/14/2006 | Texas | MS | RE | Third Party Investors | Class C Limited Partner | 0.1 | n/a | | Non HCMLP GP | | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity owns a real estate asset for investment purposes. | Being sold | Can be removed once Isaac finalizes sale |
| 743 | LW Indian Creek Development, L.P. | | 7/14/2006 | Texas | MS | RE | Indian Creek Development GP, LLC | General Partner | 0 | n/a | | Non HCMLP GP | | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity owns a real estate asset for investment purposes. | Being sold | Can be removed once Isaac finalizes sale |
| 744 | LW Indian Creek Land, L.P. | | 7/14/2006 | Texas | MS | RE | HCREA Indian Creek, L.P. (SOLD) | Class A Limited Partner | 89.9 | n/a | | Non HCMLP GP | | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | SOLD | This entity owns a real estate asset for investment purposes. | Sold |
| 745 | LW Indian Creek Land, L.P. | | 7/14/2006 | Texas | MS | RE | Third Party Investors | Class B Limited Partner | 10 | n/a | | Non HCMLP GP | | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | SOLD | This entity owns a real estate asset for investment purposes. | Sold |
| 746 | LW Indian Creek Land, L.P. | | 7/14/2006 | Texas | MS | RE | Third Party Investors | General Partner | 0.1 | n/a | | Non HCMLP GP | | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | SOLD | This entity owns a real estate asset for investment purposes. | Sold |
| 747 | MA Boerne Partners, LP | | 6/15/2006 | Texas | N/A | RE | NexBank Capital, Inc. | Class A Limited Partner | 15 | n/a | | N/A | | | N/A | Ted Dameris/ Jim Pfertner | Drew Wilson | SOLD | | MA Boerne Partners is a passive investment. Nexbank Capital, Inc. ("NCI") received a profits interest, but we don't serve as GP or hold any officer positions in the entity | Transferred/sold in settlement w/ Terry Gwin Group |
| 748 | MA Boerne Partners, LP | | 6/15/2006 | Texas | N/A | RE | Third Party Investors | Class A Limited Partner | 50 | n/a | | Non HCMLP GP | | | N/A | Ted Dameris/ Jim Pfertner | Drew Wilson | SOLD | | same | Transferred/sold in settlement w/ Terry Gwin Group |
| 749 | MA Boerne Partners, LP | | 6/15/2006 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 34.9 | n/a | | Non HCMLP GP | | | N/A | Ted Dameris/ Jim Pfertner | Drew Wilson | SOLD | | same | Transferred/sold in settlement w/ Terry Gwin Group |
| 750 | MA Boerne Partners, LP | | 6/15/2006 | Texas | N/A | RE | Third Party Investors | General Partner | 0.1 | n/a | | Non HCMLP GP | | | N/A | Ted Dameris/ Jim Pfertner | Drew Wilson | SOLD | | same | Transferred/sold in settlement w/ Terry Gwin Group |
| 751 | Mansard Holdings LLC | | 4/27/2016 | Texas | N/A | JD | Highland Capital Management Services, Inc. | Member | 100 | n/a | | | | | JP Sevilla | | Melissa Schroth | Y | 5/8/2017 | | |
| 752 | McGinnis Land Partners I, L.P. | | 3/20/2005 | Texas | N/A | RE | HCREA Canyon Falls L.P. | Class A Limited Partner | 50 | n/a | | James Dondero Ted Dameris Scott Ellington | n/a | | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/30/2014 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | Y |
| 753 | McGinnis Land Partners I, L.P. | | 3/20/2005 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 49.9 | n/a | | James Dondero Ted Dameris Scott Ellington | | | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/30/2014 | This entity owns a real estate asset for investment purposes. | Investment property foreclosed | |

| A | C | D | E | F | G | H | J | O | P | Q | R | S | T | U | V |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| McGinnis Land Partners I, L.P. | 3/20/2005 | Texas | N/A | RE | Third Party Investors | Class C Limited Partner | 0.01 | n/a | James Dondero Ted Dameris Scott Ellington | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/30/2014 | This entity owns a real estate asset for investment purposes. |
| McGinnis Land Partners I, L.P. | 3/20/2005 | Texas | N/A | RE | Canyon Falls Land GP, LLC | General Partner | 0 | n/a | Ted Dameris Scott Ellington | | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/30/2014 | This entity owns a real estate asset for investment purposes. |
| Merchant Ventures, LLC | 10/2/2015 | Delaware | TX | JD | Yellow Metal Merchants, Inc. | Member | 100 | n/a | Sole Member | James Dondero | James Dondero | Melissa Schroth | Melissa Schroth | Y | 2/16/2016 | |
| MF 380 Tollway East, LP | 4/9/2007 | Texas | N/A | RE | HCREA Prosper Crossing East, LP | Class A Limited Partner | 91.3 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity owns a real estate asset for investment purposes. |
| MF 380 Tollway East, LP | 4/9/2007 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 8.69 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity owns a real estate asset for investment purposes. |
| MF 380 Tollway East, LP | 4/9/2007 | Texas | N/A | RE | Tollway East GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity owns a real estate asset for investment purposes. |
| MF 380 Tollway West, LP | 4/16/2007 | Texas | N/A | RE | HCREA Prosper Crossing West, LP | Class A Limited Partner | 98.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity owns a real estate asset for investment purposes. |
| MF 380 Tollway West, LP | 4/16/2007 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 1 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity owns a real estate asset for investment purposes. |
| MF 380 Tollway West, LP | 4/16/2007 | Texas | N/A | RE | Tollway West GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | This entity owns a real estate asset for investment purposes. |
| MF Fund 3 GP, LLC | 11/30/2010 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero Ted Dameris Scott Ellington | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/17/2012 | New GP to Mooreland Fund III 380 Comm Office, LP — New GP not accepted |
| MF Fund 8 GP, LLC | 11/30/2010 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero Ted Dameris Scott Ellington | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/17/2012 | New GP to MF VIII WF Comm Corner, LP — New GP not accepted |
| MF VII Prosper 41, LP | 8/9/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Limited Partner | 99.99 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | Involuntarily terminated 9/28/2012 | This entity owns a real estate asset for investment purposes. — Investment property foreclosed |
| MF VII Prosper 41, LP | 8/9/2006 | Texas | N/A | RE | Prosper 41 GP, LLC | General Partner | 0.01 | n/a | General Partner | n/a | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | Involuntarily terminated 9/28/2012 | This entity owns a real estate asset for investment purposes. — Investment property foreclosed |
| MF VIII WF Comm Corner, L.P. | 1/25/2006 | Texas | N/A | RE | Mooreland Fund General Parnter, Inc. | General Partner | 0 | 0 | | | Ted Dameris, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | FORECLOSED | FORECLOSED |
| MF VIII WF Comm Corner, L.P. | 1/25/2006 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Limited Partner | 100 | 15 | | | Ted Dameris, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | FORECLOSED | FORECLOSED |
| Milam High Yield Fund, LLC | 10/22/2004 | Delaware | N/A | Hedge Blocker | Highland Crusader Offshore Partners, L.P. | Member | 100 | Member | James Dondero-Pres | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Sub of Crusader — All Crusader-related entities are in wind-down with the |
| Moll Holdings, Inc. | 12/29/2004 | Delaware | N/A | JD | Highland Capital Management Partners Charitable Trust #1 | Shareholder | 60.61 | n/a | | | Matt Griffith | Matt Griffith | Y | Written off 12/30/09 | NO EQUITY HOLDING |
| Moll Holdings, Inc. | 12/29/2004 | Delaware | N/A | JD | Highland Crusader Offshore Partners, L.P. | Shareholder | 6.06 | n/a | | | Matt Griffith | Matt Griffith | Y | Written off 12/30/09 | NO EQUITY HOLDING |
| Moll Holdings, Inc. | 12/29/2004 | Delaware | N/A | JD | Third Party Investors | Shareholder | 33.33 | n/a | | | Matt Griffith | Matt Griffith | Y | Written off 12/30/09 | NO EQUITY HOLDING |
| Moll Industries, Inc. | 4/16/1990 | Delaware | N/A | JD | Moll Holdings, Inc. | Shareholder | 100 | n/a | | | Matt Griffith | Matt Griffith | Y | Written off 12/30/09 | NO EQUITY HOLDING |
| Nashville RE Holdings, LLC | 12/15/2015 | Delaware | N/A | PE | NexPoint Multifamily Operating Partnership, L.P. | Member | 100 | n/a | | | Scott Wilson | | Y | 10/2/2017 | Cornerstone sub - transferred to NMCT OP |
| Navarro Investment Partners, LLC | 10/22/2004 | Delaware | N/A | Hedge Blocker | Highland Crusader Offshore Partners, L.P. | Member | 100 | n/a | James Dondero-Pres | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Sub of Crusader — All Crusader-related entities are in wind-down with the |
| Navigators Stevens Ranch, LP | 3/16/2006 | Texas | N/A | PE | Navigators Stevens Ranch GP, LLC | Limited Partner | 99.9 | n/a | GP | N/A | GP | Carl Moore | Jim Pfertner | Y | Written off 9/24/10 | Named in litigation and cannot be dissolved until resolved. |
| Navigators Stevens Ranch, LP | 3/16/2006 | Texas | N/A | RE | NSR GP, LLC | General Partner | 0.1 | n/a | same | same | same | Carl Moore | Jim Pfertner | Y | Written off 9/24/10 | Named in litigation and cannot be dissolved until resolved. |
| Nevada Land Group, LLC | 11/4/2009 | Delaware | NV | RE | Highland Floating Rate Opportunities Fund | Member | 20.69 | 30.00 | Member Committee/ Kurt Daum | n/a | | JP Sevilla | Nexbank | N | | |
| Nevada Land Group, LLC | 11/4/2009 | Delaware | NV | RE | Third Party Investor | Member | 79.31 | 115.00 | Member Committee/ Kurt Daum | | | JP Sevilla | Nexbank | N | | |
| Nexpak Corporation | 11/20/1998 | Delaware | N/A | PE | Highland Crusader Offshore Partners, L.P. | Shareholder | 6.8 | 98 | Pat Daugherty, John Honis, Reece Fulgham, Alvo Oddis, Charles | Randy Johnson-Pres/CFO/Secy Robert Rhoades-COO/VP- | Alan Kirschner Michael Davis | Carl Moore | Carl Moore | Y | Written off 7/31/09 | NO EQUITY HOLDING |
| Nexpak Corporation | 11/20/1998 | Delaware | N/A | PE | HCM Services, Inc. | Shareholder | 13.9 | 199 | same | same | same | Carl Moore | Carl Moore | Y | Written off 7/31/09 | NO EQUITY HOLDING |
| Nexpak Corporation | 11/20/1998 | Delaware | N/A | PE | HCMLP - Smith Barney Acct 13HS7106 | Shareholder | 21 | 306 | same | same | same | Carl Moore | Carl Moore | Y | Written off 7/31/09 | NO EQUITY HOLDING |
| Nexpak Corporation | 11/20/1998 | Delaware | N/A | PE | HCMLP Internal | Shareholder | 19.1 | 274 | same | same | same | Carl Moore | Carl Moore | Y | Written off 7/31/09 | NO EQUITY HOLDING |
| Nexpak Corporation | 11/20/1998 | Delaware | N/A | PE | Highland Legacy Limited | Shareholder | 5.3 | 76 | same | same | same | Carl Moore | Carl Moore | Y | Written off 7/31/09 | NO EQUITY HOLDING |
| Nexpak Corporation | 11/20/1998 | Delaware | N/A | PE | Pam Capital Funding, L.P. | Shareholder | 33.6 | 482 | same | same | same | Carl Moore | Carl Moore | Y | Written off 7/31/09 | NO EQUITY HOLDING |
| NexPoint BDC, LLC | 9/26/2013 | Delaware | N/A | Retail | | N/A | N/A | N/A | | | Brian Mitts | Brian Mitts | Y | 9/18/2015 | Never launched; |
| NexPoint Capital REIT, LLC | 2/2/2016 | Delaware | N/A | BD | NexPoint Capital, Inc. | | | | | | Brian Mitts | | Y | 3/8/2016 | Not used |
| NexPoint Capital REIT, LLC | 6/15/2016 | Delaware | N/A | BD | NexPoint Capital, Inc. | | | | | | Brian Mitts | Charlie Hoedebeck | Y | 8/11/2016 | BDC Sub |
| NexPoint Hospitality Trust, Inc. | 10/3/2014 | Maryland | N/A | REIT | NexPoint Real Estate Advisors III, L.P. | Shareholder | 100 | 22,223 Brian Mitts | Dondero-Pres Ellington-GC/Secy | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 5/23/2019 | NexPoint Real Estate Advisors III is its advisor |
| NexPoint Hospitality, L.P. | 10/21/2014 | Delaware | N/A | REIT | NexPoint Hospitality Trust, Inc. | General Partner | 99 | n/a | GP | | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 5/23/2019 | NexPoint Real Estate Advisors III is its advisor |
| NexPoint Hospitality, L.P. | 10/21/2014 | Delaware | N/A | REIT | NexPoint Real Estate Advisors III, L.P. | Special LP | 1 | n/a | GP | | Brian Mitts Matt McGraner | Matt McGraner | Brandon Knott | Y | 5/23/2019 | NexPoint Real Estate Advisors III is its advisor |
| NexPoint Real Estate Finance, Inc. | 10/23/2015 | Maryland | N/A | NEVER LAUNCHED | NexPoint Real Estate Finance Advisor , L.P. | Advisor | | | | | Brian Mitts | Brandon Knott | Y | 5/10/2017 | NEVER LAUNCHED |
| NexPoint Residential Merger Company, LLC | 2/2/2015 | Delaware | N/A | REIT | Freedom REIT LLC | Member | 100 | n/a | Member-managed | N/A | Matt McGraner | Brandon Knott | Y | 3/31/15 | Merged into NexPoint Residential Trust Operating Partnership, LP |
| North Texas Certified Development Corp | | | | JD | James Dondero | Shareholder | 9.29 | N/A | | | Matt Griffith | Matt Griffith | | | |
| North Texas Certified Development Corp | | | | JD | Mark Okada | Shareholder | 9.29 | N/A | | | Matt Griffith | Matt Griffith | | | |

**FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM**
NYSCEF DOC. NO. 77

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 142 of 376

| # | A (Name) | C (Date) | D (State) | E | F (Type) | G (Related Entity) | H (Role) | I (%) | J | K | L | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 796 | North Texas Certified Development Corp | | | | JD | Third Party Investors | Shareholder | 81.42 | N/A | | | | Matt Griffith | Matt Griffith | Y | | | |
| 797 | Northview Concourse SC, Ltd. | 11/1/2005 | Texas | N/A | RE | HCREA Lockhill Retail LP | Investment Limited Partner | 50 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Dameris/ Austin Trantham | Donna Engstrom | Y | | This entity owns a real estate asset for investment purposes. | |
| 798 | Northview Concourse SC, Ltd. | 11/1/2005 | Texas | N/A | RE | Third Party Investors | General Partner | 1 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Dameris/ Austin Trantham | Donna Engstrom | Y | | This entity owns a real estate asset for investment purposes. | |
| 799 | Northview Concourse SC, Ltd. | 11/1/2005 | Texas | N/A | RE | Third Party Investors | Limited Partner | 49 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Dameris/ Austin Trantham | Donna Engstrom | Y | | This entity owns a real estate asset for investment purposes. | |
| 800 | NREA Casa Investors, LLC | 6/20/2016 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 50 | | Member Managed | Brian Mitts | James Dondero-PEO / Matt McGraner / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 12/27/2018 | | |
| 801 | NREA Casa Investors, LLC | 6/20/2016 | Delaware | N/A | REIT | NexPoint Real Estate Strategies Fund | Member | 50 | | Member Managed | Brian Mitts | Matt McGraner / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 12/27/2018 | | |
| 802 | NREC AA Investors, LLC | 10/26/2015 | Delaware | N/A | REIT | | Member | 100 | | Sole Member | Brian Mitts | Brian Mitts | Matt McGraner | Brandon Knott | Y | 5/17/2017 | | INTEREST REDEEMED ON 4/6/16 |
| 803 | NREC AA TRS, Inc. | 12/10/2015 | Delaware | N/A | REIT | WW Ross Avenue LP | Shareholder | 100 | 100 Brian Mitts | | Brian Mitts - Pres/Secy | | Matt McGraner | Brandon Knott | Y | 5/17/2017 | | INTEREST REDEEMED ON 4/6/16 |
| 804 | NREC BM Investors, LLC | 3/17/2015 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | James Dondero-Pres/PEO / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 12/27/2018 | | To be dissolved |
| 805 | NREC BP Investors, LLC | 12/1/2014 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | James Dondero-Pres/PEO / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 12/27/2018 | | To be dissolved |
| 806 | NREC EAH Investors, LLC | 3/11/2015 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | James Dondero-Pres/PEO / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | |
| 807 | NREC HG Investors, LLC | 3/17/2015 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | James Dondero-Pres/PEO / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 12/27/2018 | | To be dissolved |
| 808 | NREC MOM, LLC | 12/1/2014 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | James Dondero-Pres/PEO / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | |
| 809 | NREC Nashville Investors, LLC (fka HREC Nashville Investors, LLC) | 8/7/2014 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | James Dondero-Pres/PEO / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 12/27/2018 | | To be dissolved |
| 810 | NREC NF Investors, LLC | 5/26/2015 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | James Dondero-Pres/PEO / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | |
| 811 | NREC Richmond Investors, LLC | 12/16/2014 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Brian Mitts / Matt McGraner | James Dondero-Pres/PEO / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 12/26/2018 | | To be dissolved |
| 812 | NREC VAH Investors, LLC | 4/10/2015 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | James Dondero-Pres/PEO / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | |
| 813 | NREC WO Investors, LLC | 10/14/2015 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | James Dondero-Pres/PEO / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | |
| 814 | NREC YC Investors, LLC | 11/20/2015 | Delaware | N/A | REIT | NexPoint Real Estate Capital, LLC | Member | 100 | n/a | Member Managed | Member Managed | James Dondero-Pres/PEO / Brian Mitts-EVP/PFO/PAO | Matt McGraner | Brandon Knott | Y | 1/31/2018 | | |
| 815 | NREC NW DT, LLC | 2/13/2018 | Delaware | N/A | REIT | NexPoint Real Estate Opportunities, LLC | Member | 100 | n/a | Member Managed | Member Managed | | Matt McGraner | Brandon Knott | Y | 12/26/2018 | | To be dissolved |
| 816 | NSR GP, LLC | 6/9/2006 | Texas | N/A | PE | James Dondero | Member | 100 | n/a | Managers: James Dondero Mark Okada Matt McGraner | Managers: James Dondero Dougherty-VP Okada-VP/Secy/Treas Pat Daugherty-Brian Mitts | | Carl Moore | Jim Pfertner | Y | Written off 9/24/10 | Named in litigation and cannot be dissolved until resolved. | |
| 817 | NXRT McMillan, LLC | 12/10/2014 | Delaware | N/A | REIT | NexPoint Residential Trust Operating Partnership, L.P. | Member | 100 | n/a | Member Managed | Member Managed | | Matt McGraner | Brandon Knott | Y | 12/26/2018 | | To be dissolved |
| 818 | Off-the-Strip Land Holding Company, LLC | 3/18/2009 | Delaware | N/A | CLO Blocker | Eastland CLO, Ltd. | Members | 6.25 | 1,000,000 | HCMLP-Manager | Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Brandon Wurz | Y | 12/27/2018 | Real estate blocker to hold Weststate equity | fka Buffalo Jump Holding Company, LLC |
| 819 | Off-the-Strip Land Holding Company, LLC | 3/18/2009 | Delaware | N/A | CLO Blocker | Gleneagles CLO, Ltd. | Members | 18.75 | 3,000,000 | HCMLP-Manager | Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Brandon Wurz | Y | 12/27/2018 | Real estate blocker to hold Weststate equity | fka Buffalo Jump Holding Company, LLC; new amended on 10/21/09 |
| 820 | Off-the-Strip Land Holding Company, LLC | 3/18/2009 | Delaware | N/A | CLO Blocker | Grayson CLO, Ltd. | Members | 25 | 4,000,000 | HCMLP-Manager | Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Brandon Wurz | Y | 12/27/2018 | Real estate blocker to hold Weststate equity | fka Buffalo Jump Holding Company, LLC; amended on 10/21/09 |
| 821 | Off-the-Strip Land Holding Company, LLC | 3/18/2009 | Delaware | N/A | CLO Blocker | Jasper CLO, Ltd. | Members | 18.75 | 3,000,000 | HCMLP-Manager | Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Brandon Wurz | Y | 12/27/2018 | Real estate blocker to hold Weststate equity | fka Buffalo Jump Holding Company, LLC; amended on 10/21/09 |
| 822 | Off-the-Strip Land Holding Company, LLC | 3/18/2009 | Delaware | N/A | CLO Blocker | Highland Legacy Limited | Members | 6.25 | 1,000,000 | HCMLP-Manager | Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Brandon Wurz | Y | 12/27/2018 | Real estate blocker to hold Weststate equity | fka Buffalo Jump Holding Company, LLC; amended on 10/21/09 |
| 823 | Off-the-Strip Land Holding Company, LLC | 3/18/2009 | Delaware | N/A | CLO Blocker | Valhalla CLO, Ltd. | Members | 25 | 4,000,000 | HCMLP-Manager | Manager | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Brandon Wurz | Y | 12/27/2018 | Real estate blocker to hold Weststate equity | fka Buffalo Jump Holding Company, LLC; Name amended on 10/21/09 |
| 824 | Okada Trading LLC | 10/25/2012 | Delaware | N/A | MO | The Mark and Pamela Okada Family Trust - Exempt Descendants' Trust | Member | 100 | n/a | Trustee-Lawrence Tonomura | N/A | Trustee-Lawrence Tonomura | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | | |
| 825 | Outland 77, LLC | 5/8/2008 | Delaware | N/A | CLO Blocker | Hoss I, LLC | Member | 7.84 | | James Dondero-Manager | Dondero-Pres Okada-EVP Ellington-Secy | Dondero, Okada, Boyce, Ellington, Terry, Josh Terry | Hunter Covitz / Edward Leo | | | 10/9/2012 | Conduit entity related to Marcal restructure - provided revolver funds to Marcal | Liquidated |
| 826 | Outland 77, LLC | 5/8/2008 | Delaware | N/A | CLO Blocker | Hoss II, LLC | Member | 11.77 | | James Dondero-Manager | Dondero-Pres Okada-EVP Ellington-Secy | Dondero, Okada, Boyce, Ellington, Terry, Josh Terry | Hunter Covitz / Edward Leo | | | 10/9/2012 | Conduit entity related to Marcal restructure - provided revolver funds to Marcal | Liquidated |
| 827 | Outland 77, LLC | 5/8/2008 | Delaware | N/A | CLO Blocker | Hoss III, LLC | Member | 9.8 | | James Dondero-Manager | Dondero-Pres Okada-EVP Ellington-Secy | Dondero, Okada, Boyce, Ellington, Terry, Josh Terry | Hunter Covitz / Edward Leo | | | 10/9/2012 | Conduit entity related to Marcal restructure - provided revolver funds to Marcal | Liquidated |
| 828 | Outland 77, LLC | 5/8/2008 | Delaware | N/A | CLO Blocker | Hoss IV, LLC | Member | 11.77 | | James Dondero-Manager | Dondero-Pres Okada-EVP Ellington-Secy Terry-A. Secy | Dondero, Okada, Boyce, Ellington, Terry, Josh Terry | Hunter Covitz / Edward Leo | | | 10/9/2012 | Conduit entity related to Marcal restructure - provided revolver funds to Marcal | Liquidated |
| 829 | Outland 77, LLC | 5/8/2008 | Delaware | N/A | CLO Blocker | Hoss V, LLC | Member | 7.84 | | James Dondero-Manager | Dondero-Pres Okada-EVP Ellington-Secy Terry-A. Secy | Dondero, Okada, Boyce, Ellington, Terry, Josh Terry | Hunter Covitz / Edward Leo | | | 10/9/2012 | Conduit entity related to Marcal restructure - provided revolver funds to Marcal | Liquidated |
| 830 | Outland 77, LLC | 5/8/2008 | Delaware | N/A | CLO Blocker | Hoss VI, LLC | Member | 5.88 | | James Dondero-Manager | Dondero-Pres Okada-EVP Ellington-Secy Terry-A. Secy | Dondero, Okada, Boyce, Ellington, Terry, Josh Terry | Hunter Covitz / Edward Leo | | | 10/9/2012 | Conduit entity related to Marcal restructure - provided revolver funds to Marcal | Liquidated |
| 831 | Outland 77, LLC | 5/8/2008 | Delaware | N/A | CLO Blocker | Hoss VII, LLC | Member | 7.84 | | James Dondero-Manager | Dondero-Pres Okada-EVP Ellington-Secy Terry-A. Secy | Dondero, Okada, Boyce, Ellington, Terry, Josh Terry | Hunter Covitz / Edward Leo | | | 10/9/2012 | Conduit entity related to Marcal restructure - provided revolver funds to Marcal | Liquidated |
| 832 | Outland 77, LLC | 5/8/2008 | Delaware | N/A | CLO Blocker | Hoss VIII, LLC | Member | 17.65 | | James Dondero-Manager | Dondero-Pres Okada-EVP Ellington-Secy Terry-A. Secy | Dondero, Okada, Boyce, Ellington, Terry, Josh Terry | Hunter Covitz / Edward Leo | | | 10/9/2012 | Conduit entity related to Marcal restructure - provided revolver funds to Marcal | Liquidated |
| 833 | Outland 77, LLC | 5/8/2008 | Delaware | N/A | CLO Blocker | Hoss IX, LLC | Member | 19.61 | | James Dondero-Manager | Dondero-Pres Okada-EVP Ellington-Secy Terry-A. Secy | Dondero, Okada, Boyce, Ellington, Terry, Josh Terry | Hunter Covitz / Edward Leo | | | 10/9/2012 | Conduit entity related to Marcal restructure - provided revolver funds to Marcal | Liquidated |
| 834 | Pacific East Flamingo, LLC | 3/4/2009 | Nevada | N/A | Retail | Highland Credit Strategies Fund | Managing Member | 54.35 | n/a | Managing Member | | Managing Member | Joe Dougherty | Sam Madden | Y | 8/24/2010 | Las Vegas Pacific Clarion property fka Pacific Clarion Hotel, LLC | Check w/ Sam Madden, asset has been sold so probably can be |
| 835 | Pacific East Flamingo, LLC | 3/4/2009 | Nevada | N/A | Retail | Highland Floating Rate Advantage Fund | Managing Member | 23.91 | n/a | Managing Member | | Managing Member | Joe Dougherty | Sam Madden | Y | 8/24/2010 | | |

| A (Entity) | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pacific East Flamingo, LLC | 5/4/2009 | Nevada | N/A | Retail | Highland Floating Rate Fund | Member | 21.74 | n/a | Managing Member | n/a | Managing Member | Joe Dougherty | Sam Madden | | 8/24/2010 | |
| Pacific Select Fund - Floating Rate Loan Portfolio | 5/4/1987 | Massachusetts | N/A | Retail | Third Party Investors | Common | 100 | n/a | Trustees: Frederick Blackmon, Gale | James Morris-CEO, Mary Ann Brown-Pres | Authorized Sigs: Dougherty, Blackburn, Colvin, Means, | Joe Dougherty | Ethan Powell | Y | 4/30/2010 | Advisory Agreement terminated 4/30/10 |
| Park Central Residential, LLC | 4/22/2014 | Delaware | TX | REIT-ID | HCRE Partners, LLC | Member | 100 | n/a | HCRE Partners, LLC - Managing Member | HCRE Partners, LLC - Managing Member | | Matt McGraner | | | 12/26/2018 | |
| Pierview Partners, LLC | 1/14/2008 | Texas | N/A | RE | James Dondero | Sole Member | 100 | n/a | James Dondero | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/20/2010 | This entity is the general partner of a partnership that owns a real estate asset for investment purposes | |
| PL Floating Rate Loan Fund | 5/21/2001 | Delaware | N/A | Retail | Third Party Investors | Common | 100 | N/A | Trustees: Frederick Blackmon, Gale | James Morris-CEO | Authorized Sigs: Dougherty, Blackburn, Colvin, Means, | Joe Dougherty | Frank Waterhouse | Y | 6/30/2010 | Advisory Agreement terminated 6/30/10 |
| PMA GP, LLC | 8/18/2005 | Delaware | N/A | HCM | Highland Capital Management, L.P. | Member | 100 | | Mary Ann Brown-Pres | | | Chris Halpin | Frank Waterhouse | Y | 1/14/2010 | Entity was in existence, no activity since 2006 |
| Poguerosa, LLC | 10/3/2017 | Texas | N/A | JD | HCRE Partners, LLC | Member | 100 | | | | | Chris Halpin | Frank Waterhouse | | 11/30/2017 | |
| Presidio Capital Management, LLC | 10/22/2004 | Delaware | N/A | Hedge Blocker | Highland Crusader Offshore Partners, L.P. | Member | 100 | n/a | Member | James Dondero-Pres | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Matt Jameson | James Palmer | CRUSADER IMA | 8/4/2016 | Sub of Crusader | All Crusader-related entities are in wind-down with the |
| Prospect Management Advisers, L.P. | 11/22/2004 | Delaware | N/A | HCM | Highland Capital Management, L.P. | Limited Partner | 99 | n/a | | | | Chris Halpin | Frank Waterhouse | Y | 1/14/2010 | Entity was in existence, no activity since 2006 |
| Prospect Management Advisers, LLC | 11/22/2004 | Delaware | N/A | HCM | PMA GP, LLC | General Partner | 1 | n/a | | | | Chris Halpin | Frank Waterhouse | Y | 1/14/2010 | Entity was in existence, no activity since 2006 |
| Prosper 41 GP, LLC | 7/11/2010 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | n/a | James Dondero Ted Dameris | Ted Dameris, Patrick Boyce, Chris Wise, Carter Chism, Clifford Stoops. | | Ted Dameris/ Jim Pfertner | Drew Wilson | Y | 12/17/2012 | New GP to MF VII Prosper 41, LP | Investment property foreclosed |
| Pyxis Global High Yield Fund | | Massachusetts | N/A | Retail | Third Party Investors | | | | Powell-EVP/Sec Mitts-Treas | Powell-EVP/Sec Mitts-Treas | | Brad Ross | Brian Mitts | | 9/30/2012 | Series of trust of Highland Pyxis Funds II | Highland Pyxis - advisor, GEAM - Subadvisor |
| Pyxis Government Securities Fund | Acquired by HCM on | Massachusetts | N/A | Retail | Third Party Investors | Common | 0 | 0 | Trustees: Tim Hui, Scott Kavanaugh, | Powell-EVP/Sec Mitts-Treas | Powell-EVP/Sec Mitts-Treas | Brad Ross | Brian Mitts | | 9/30/2012 | Series of trust of Highland Pyxis Funds II | Acquired by the fixed income fund. |
| Pyxis Money Market Fund II | Acquired by HCM on 9/23/2011 | Massachusetts | N/A | Retail | Third Party Investors | Common | 0 | 0 | Trustees: Tim Hui, Scott Kavanaugh, | Powell-EVP/Sec Mitts-Treas | Powell-EVP/Sec Mitts-Treas | Brad Ross | Brian Mitts | | 12/31/2012 | Series of trust of Highland Pyxis Funds II | This will be liquidated by 12/31/12 |
| Pyxis Natural Resources Fund | 9/23/2011 | Massachusetts | N/A | Retail | Third Party Investors | Common | 0 | 0 | Trustees: | Powell-EVP/Sec | Powell-EVP/Sec | Brad Ross | Brian Mitts | | 12/31/2011 | This will be liquidated by 12/31/12 | Pyxis - advisor |
| Pyxis Premium Long/Short Equity Fund | 2/4/2010 | Delaware | N/A | Retail | N/A | N/A | N/A | N/A | | | | | | | 2/24/2012 | DID NOT LAUNCH | |
| Pyxis Short-Term Government Fund (this series of | Acquired by | Massachusetts | | Retail | Third Party Investors | Common | 0 | 0 | Trustees: | Powell-EVP/Sec | Powell-EVP/Sec | Brad Ross | Brian Mitts | Y | 9/30/2012 | Series of trust of Highland Pyxis Funds II | Highland Pyxis - advisor, |
| Pyxis U.S. Equity Fund | Acquired by | Massachusetts | | Retail | Third Party Investors | Common | 0 | 0 | Trustees: | Powell-EVP/Sec | Powell-EVP/Sec | Brad Ross | Brian Mitts | Merged | 5/4/2010 | Series of trust of Highland Fund II | HCMFA - advisor, |
| Real Estate Opportunities GP, LLC | 9/22/2008 | Delaware | N/A | Hedge | Highland Capital Management, L.P. | Member | 100 | n/a | Member | Dondero-Pres | Chris Halpin, Jason Post, Cliff Stoops | Ted Dameris | Cliff Stoops | Y | 5/4/2010 | Dissolved 5/4/10 | |
| Real Estate Opportunities, L.P. | 9/22/2008 | Delaware | N/A | Hedge | Real Estate Opportunities GP, LLC | Partner | 100 | n/a | | | Chris Halpin, Jason Post, Cliff Stoops | Ted Dameris | Cliff Stoops | Y | 5/4/2010 | Dissolved 5/4/10 | |
| Republic Loan Funding, Ltd | 10/7/2008 | Cayman | N/A | Sep Acct | Teacher Retirement Systems of Texas | Preferred | 100 | N/A | State Street | | Dondero, Okada, Dougherty, Boyce, | Paul Kauffman | Andrew Padilla | Terminated | 1/16/2011 | Highland managed separate account for Texas Teachers | |
| Restoration Funding CLO, Ltd. | 12/3/2001 | Cayman Islands | N/A | CLO | Third Party Investors | Voting Preference Shares | 100 | 31,000,000 | Maples Finance | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Hunter Covitz | Brandon Wurz | Y | 4/26/2018 | Issuer for CLO investment structure. | |
| Rockwall Cayman Holdings II, Ltd. | 4/17/2009 | Cayman Islands | N/A | CLO Blocker | Rockwall COD II Ltd. | Common Shares | 100 | 0 | Maples Finance | N/A | Dondero, Okada, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | Hunter Covitz | Brandon Wurz | | 3/13/2018 | Blocker 100% owned by the CLO to hold ownership interest in real estate/real property foreclosures | To be dissolved |
| Rockwall COD II Panda Holdings, Ltd. | 4/22/2009 | Cayman Islands | N/A | CLO Blocker | Rockwall COD II Ltd. | Common Shares | 100 | 0 | Maples Finance | N/A | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Hunter Covitz | Jon Reiter | | 12/6/2013 | Blocker 100% owned by the CLO to hold Panda Hereford assets | |
| Rundberg Residential Partners SM, Inc. | 1/26/2016 | Delaware | N/A | REIT-ID | 201 Tarrant Partners, LLC | Shareholder | 100 | | Matt McGraner-Secy/Auth Agent | | | Matt McGraner | Melissa Schroth | | 12/26/2018 | |
| Rundberg Residential Partners, LLC | 1/19/2016 | Delaware | TX | REIT-ID | 201 Tarrant Partners, LLC | Member | 100 | n/a | | | | Matt McGraner | Melissa Schroth | | 12/26/2018 | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Highland Crusader Offshore Partners, L.P. | Common Stock | 30.65 | 15,692,376 | Mark A. Phariss | Dennis McGill-EVP/CFP Jeff Robertson-SVP/Controller Paul Lee-VP/Treas | Dennis McGill-EVP/CFP Jeff Robertson- | Carl Moore | N | SOLD | | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Governance Re, LLC | Common Stock | 0.48 | 244,489 | same | same | same | Carl Moore | N | SOLD | | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Highland Credit Opportunities CDO, Ltd. | Common Stock | 2.35 | 1,204,126 | same | same | same | Carl Moore | N | SOLD | | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Highland Credit Strategies Holding Corporation | Common Stock | 1.57 | 803,468 | same | same | same | Carl Moore | N | SOLD | | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Highland Equity Focus Fund, L.P. | Common Stock | 0.40 | 206,000 | same | same | same | Carl Moore | N | SOLD | | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Highland Restoration Capital Partners Master, L.P. | Common Stock | 1.40 | 715,981 | same | same | same | Carl Moore | N | SOLD | | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Highland Restoration Capital Partners, L.P. | Common Stock | 1.14 | 585,803 | same | same | same | Carl Moore | N | SOLD | | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Highland Special Opportunities Holding Company | Common Stock | 0.16 | 81,237 | same | same | same | Carl Moore | N | SOLD | | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Pyxis Credit Strategies Fund | Common Stock | 0.39 | 200,964 | same | same | same | Carl Moore | N | SOLD | | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Pyxis Special Situations Fund | Common Stock | 0.18 | 93,061 | same | same | same | Carl Moore | N | SOLD | | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Tunstall Opportunities Master Fund, L.P. | Common Stock | 0.34 | 173,328 | same | same | same | Carl Moore | N | SOLD | | |
| Safety-Kleen, Inc. | 4/6/2005 | Delaware | N/A | PE | Third Party Investors | Common Stock | 60.93 | 31,195,650 | same | same | same | Carl Moore | N | SOLD | | |
| SAMAS, LLC | 12/2/2014 | South Dakota | N/A | MO | Mark Okada | Member | 100 | n/a | | | | Melissa Schroth | Melissa Schroth | Y | 12/5/2016 | Okada's estate planning |
| Semence, LLC | 12/16/2013 | Delaware | N/A | HCM | Highland Capital Management, L.P. | Member | 100 | n/a | | | | Ethan Powell | Ethan Powell | Y | 7/28/2015 | |
| Serena Residential Partners, LLC | 11/12/2015 | Texas | N/A | REIT-ID | HCRE Partners, LLC | Member | 100 | | HCRE Partners, LLC | | | Matt McGraner | Melissa Schroth | Y | | |
| Simba GP, LLC | 2/4/2009 | Delaware | N/A | JD | James Dondero | Member | 100 | N/A | James Dondero | N/A | | Melissa Schroth | Melissa Schroth | Y | 12/2/2014 | Not Used |
| Simba, L.P. | 2/4/2009 | Delaware | N/A | JD | Simba GP, LLC | General Partner | 100 | N/A | Simba GP, LLC | N/A | | Melissa Schroth | Melissa Schroth | Y | 12/2/2014 | Not Used |
| SK Shareholder Services, LLC | 10/24/2012 | Delaware | N/A | HCM | HCMLP - Manager | Member | 100 | n/a | Manager | Dondero/ Britain | | Melissa Schroth | Melissa Schroth | Y | 3/1/2015 | Shareholder rep for SK deal |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | Delaware | | PE | Brentwood CLO, Ltd. | Member | 7.04 | 7.04 | HCMLP - Manager | Authorized Sigs: Lane Britain | | Carl Moore | Shawn Lederman | Y | 12/14/2012 | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | 3/24/2008 | Delaware | NJ | PE | Eastland CLO, Ltd. | Member | 10.56 | 10.56 | HCMLP - Manager | Authorized Sigs: Lane Britain | | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | 3/24/2008 | Delaware | NJ | PE | Gleneagles CLO, Ltd. | Member | 4.51 | 4.51 | HCMLP - Manager | Authorized Sigs: Shawn Lederman, Lane Britain | | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | 3/24/2008 | Delaware | NJ | PE | Grayson CLO, Ltd. | Member | 10.82 | 10.82 | HCMLP - Manager | Authorized Sigs: Lane Britain | | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | 3/24/2008 | Delaware | NJ | PE | Greenbriar CLO, Ltd. | Member | 11.73 | 11.73 | HCMLP - Manager | Authorized Sigs: Lane Britain | | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
INDEX NO. 650744/2023
NYSCEF DOC. NO. 77
Case 21-03076-sgj    Doc 394    Filed 10/13/25    Entered 10/13/25 17:40:03    Desc Main
Document    Page 144 of 376
RECEIVED NYSCEF: 02/08/2023

| A | B | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | 3/24/2008 | Delaware | NJ | PE | Highland Loan Funding V, Ltd. | Member | 7.4 | 7.40 | | HCMLP - Manager | Authorized Sigs: Lane Britain Shawn Lederman | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | | | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | 3/24/2008 | Delaware | NJ | PE | Jasper CLO, Ltd. | Member | 1.81 | 1.81 | | HCMLP - Manager | Authorized Sigs: Lane Britain Shawn Lederman | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | | | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | 3/24/2008 | Delaware | NJ | PE | Liberty CLO, Ltd. | Member | 5.42 | 5.42 | | HCMLP - Manager | Authorized Sigs: Lane Britain Shawn Lederman | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | | | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | 3/24/2008 | Delaware | NJ | PE | Loan Funding IV LLC | Member | 1.81 | 1.81 | | HCMLP - Manager | Authorized Sigs: Lane Britain Shawn Lederman | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | | | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | 3/24/2008 | Delaware | NJ | PE | Loan Funding VII LLC | Member | 3.16 | 3.16 | | HCMLP - Manager | Authorized Sigs: Lane Britain Shawn Lederman | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | | | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | 3/24/2008 | Delaware | NJ | PE | Red River CLO, Ltd. | Member | 5.42 | 5.42 | | HCMLP - Manager | Authorized Sigs: Lane Britain Shawn Lederman | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | | | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | 3/24/2008 | Delaware | | | Rockwall CDO, Ltd. | Member | 7.04 | 7.04 | | | | | Shawn Lederman | Y | 12/14/2012 | | | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | 3/24/2008 | Delaware | NJ | PE | Rockwall CDO II, Ltd. | Member | 6.23 | 6.23 | | HCMLP - Manager | Authorized Sigs: Lane Britain Shawn Lederman | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | | | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | 3/24/2008 | Delaware | NJ | PE | Southfork CLO, Ltd. | Member | 1.81 | 1.81 | | HCMLP - Manager | Authorized Sigs: Lane Britain Shawn Lederman | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | | | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | 3/24/2008 | Delaware | NJ | PE | Stratford CLO, Ltd. | Member | 10.56 | 10.56 | | HCMLP - Manager | Authorized Sigs: Lane Britain Shawn Lederman | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | | | |
| Slater Drive Property, LLC (f/k/a Marcal Paper Warehouse, LLC) | | 3/24/2008 | Delaware | NJ | PE | westchester CLO, Ltd. | Member | 4.69 | 4.69 | | HCMLP - Manager | Authorized Sigs: Lane Britain Shawn Lederman | Carl Moore | Shawn Lederman | Y | 12/17/12-DE/ 1/24/13-NJ | | | |
| Solstice Neurosciences Inc. | | 8/29/2003 | Delaware | N/A | PE | Highland CDO Opportunity Master Fund, L.P. | Shareholder | 4.3 | n/a | Shawn Patrick O'Brien Douglas Fambrough Fade Husain Liza Page Nelson James Thomas Brett Pope Nathan Hukill Brian Gallaher | Shawn O'Brien-President/ CEO Michael Pagnotta Michael Abraham Randall Mastrangeto Dee Grosso | Shawn O'Brien-President/ CEO Michael Pagnotta Michael Abraham Randall Mastrangeto Dee Grosso | Carl Moore | Carl Moore | Y | 8/6/2010 | SOLD - DELETE PER C. MOORE | | |
| Solstice Neurosciences Inc. | | 8/29/2003 | Delaware | N/A | PE | Highland Credit Opportunities CDO, L.P. | Shareholder | 2.4 | n/a | same | same | same | Carl Moore | Carl Moore | Y | 8/6/2010 | SOLD - DELETE PER C. MOORE | | |
| Solstice Neurosciences Inc. | | 8/29/2003 | Delaware | N/A | PE | Highland Credit Strategies Master Fund, L.P. | Shareholder | 5.4 | n/a | same | same | same | Carl Moore | Carl Moore | Y | 8/6/2010 | SOLD - DELETE PER C. MOORE | | |
| Solstice Neurosciences Inc. | | 8/29/2003 | Delaware | N/A | PE | Highland Crusader Offshore Partners, L.P. | Shareholder | 12.9 | n/a | same | same | same | Carl Moore | Carl Moore | Y | 8/6/2010 | SOLD - DELETE PER C. MOORE | | |
| Solstice Neurosciences Inc. | | 8/29/2003 | Delaware | N/A | PE | Third Party Investors | Shareholder | 75 | n/a | same | same | same | Carl Moore | Carl Moore | Y | 8/6/2010 | SOLD - DELETE PER C. MOORE | | |
| Sterling Capital Long/Short Equity Fund | | | | Sep Acct | | Sterling Capital Funds (Third Party) | Trust | 100 | 2,391,465 | Sterling Capital Funds - Trust / Sterling Capital | | | Jonthan Lamensdorf | James Palmer/ Austin Spence | Y | 1/26/2018 | HCHA sub-advised / Subadvisory Agent as of 12/10/13 | | |
| Strand Advisors II, Inc. | | 3/11/1996 | Delaware | TX | JD | James Dondero | Shareholder | 100 | n/a | James Dondero | James Dondero-Pres/Secy | James Dondero-Pres/Secy | Melissa Schroth | Melissa Schroth | Y | 12/15/2016 | Formerly served as GP to Financial Computer Software, LP (FCS) | | |
| Strand Advisors VI, LLC | | 12/22/2004 | Delaware | N/A | JD | James Dondero | Member | 100 | n/a | James Dondero | James Dondero-Pres/Secy Mark Okada-EVP | James Dondero-Pres/Secy Mark Okada-EVP | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | GP to Jim's investment property - 4041 Grassmere | | |
| Strand Advisors VII, LLC | | 12/22/2004 | Delaware | N/A | JD | James Dondero | Member | 100 | n/a | James Dondero | James Dondero-Pres/Secy | James Dondero-Pres/Secy | Melissa Schroth | Melissa Schroth | Y | 4/20/2012 | GP to Jim's investment property - 4201 Versailles | | |
| Strand Advisors VIII, LLC | | 2/15/2005 | Delaware | N/A | JD | James Dondero | Member | 100 | n/a | James Dondero | James Dondero-Pres/Secy | James Dondero-Pres/Secy | Matt Griffith | Matt Griffith | Y | 12/20/2010 | GP to Jim's investment property - 3500 Beverly | | |
| Strand Advisors X, LLC | | 8/1/2005 | Delaware | N/A | JD | James Dondero | Member | 100 | n/a | James Dondero | James Dondero-Pres/Secy | James Dondero-Pres/Secy | Matt Griffith | Matt Griffith | Y | 12/20/2010 | GP to Jim's investment property - 3708 Harvard | | |
| Strand Advisors XI, LLC | | 9/27/2005 | Delaware | TX | JD | James Dondero | Member | 100 | n/a | James Dondero | James Dondero-Pres/Secy | James Dondero-Pres/Secy | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | GP to Jim's investment property - 4223 Bordeaux | | |
| Strand Advisors XII, LLC | | 1/17/2006 | Delaware | N/A | JD | James Dondero | Member | 100 | n/a | James Dondero | James Dondero-Pres/Secy | James Dondero-Pres/Secy | Matt Griffith | Matt Griffith | Y | 12/20/2010 | GP to Jim's investment property - 3700 Euclid | | |
| Strand Advisors XIV, LLC | | 5/26/2006 | Delaware | N/A | JD | James Dondero | Member | 100 | n/a | James Dondero | James Dondero-Pres/Secy | James Dondero-Pres/Secy | Matt Griffith | Matt Griffith | Y | 12/20/2010 | GP to Jim's investment property - 3704 Euclid | | |
| Strand Advisors XV, LLC | | 5/26/2006 | Delaware | N/A | JD | James Dondero | Member | 100 | n/a | James Dondero | James Dondero-Pres/Secy | James Dondero-Pres/Secy | Matt Griffith | Matt Griffith | Y | 1/15/2012 | GP to Jim's investment property - Andrew Merrick Homes-4301 Bordeaux | | |
| Stratford Capital Holdings, Ltd. | | 1/7/2009 | Cayman Islands | N/A | CLO Blocker | Stratford CLO, Ltd. | Shares | 100 | 100 | Maples Finance | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | Hunter Covitz | Brandon Wurz | Y | | Blocker 100% owned by the CLO to hold ownership interest in real estate/real property foreclosures To be dissolved | | |
| Stream Asset Secured Income Fund, LP (Forest Hills) | | 1/8/2007 | | | JD | The Get Good Non-Exempt Trust No. 1 | Limited Partner | 8.6 as of 5/31/09 | N/A | | Investment Manager: Stream Capital Management | Investment Manager: Stream Capital Management | Melissa Schroth | Melissa Schroth | Redeemed | 2012 | | Scott E. Johnson @ Stream Capital Management 2200 Ross Ave, 54th Fl. | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77
Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 145 of 376
INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

| A | C | D | E | F | G | H | I | J | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Stream Asset Secured Income Fund, LP (Forest Hills) | 1/8/2007 | | | JD | Third Party Investors | Limited Partners | 91.4 as of 5/31/09 | | N/A | Investment Manager: Stream Capital Management | Investment Manager: Stream Capital Management | Melissa Schroth | Melissa Schroth | Redeemed | 2012 | | | |
| Sur Mer Phase II Holdings LLC | 12/18/2008 | Delaware | N/A | RE | | | | | | | | Ted Dameris | Ted Dameris | N | | Per Ted Dameris, this entity was created not by nor for Highland in connection with a CS loan transaction but was not used. | This is not a Highland affiliate and Highland is not responsible in anyway | |
| Sur Mer Phase II Member LLC | 12/18/2008 | Delaware | N/A | RE | | | | | | | | Ted Dameris | Ted Dameris | N | | Per Ted Dameris, this entity was created not by nor for Highland in connection with a CS loan transaction but was not used. | This is not a Highland affiliate and Highland is not responsible in anyway | |
| SV TIC Residential Partners, LLC | 1/11/2016 | Delaware | TX | REIT-JD | 201 Tarrant Partners, LLC | Member | 100 | n/a | Sole Member | James Dondero | Matt McGraner | Matt McGraner | Melissa Schroth | Y | 12/26/2018 | | | |
| Tesoro Golf Holdings LLC | 12/18/2008 | Delaware | FL | PE | G-LA Resorts Holdings LLC | Member | 100 | | Ted Dameris | Member | Member | Ted Dameris | Ted Dameris | Y | 5/27/2016 | | Dallas, TX 75201 | |
| TGDO Terrell Partners, LLC | 10/26/2005 | Texas | N/A | RE | James Dondero | Member | 100 | n/a | James Dondero | James Dondero-Pres Ted Dameris-VP Scott Ellington | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 10/30/2014 | This entity is the general partner of a partnership (HWY 80 Terrell Partners, Ltd) | INTEREST SOLD | sjohnson@streamsc.com DISSOLVE |
| The Canis Major Trust | 8/31/2005 | Texas | N/A | JD | James Dondero | Grantor/ Beneficiary | 100 | n/a | James Dondero-Trustee | Scott Ellington -Secv/Treas James Dondero-Trustee | James Dondero-Trustee | Matt Griffith | Matt Griffith | Terminated | 8/31/2010 | All assets transferred to JD personally due to the outstanding payables due to JD | | |
| The Canis Minor Trust | 11/29/2002 | Texas | N/A | JD | James D. Dondero Descendants | Grantor/ Beneficiary | 100 | n/a | James Dondero-Trustee | James Dondero-Trustee | James Dondero-Trustee | Melissa Schroth | Melissa Schroth | Terminated | 11/30/2007 | All assets transferred to The Get Good Non-Exempt Trust No. 2 | | |
| The Dugaboy Trust | 9/26/2008 | Texas | N/A | JD | James Dondero | Family Trust | 100 | n/a | James Dondero-Trustee | James Dondero-Trustee | James Dondero-Trustee | Matt Griffith | Matt Griffith | Terminated | 11/16/2010 | All assets transferred to The Dugaboy Investment Trust | | |
| The Get Better Trust | 6/10/2002 | Texas | N/A | JD | James D. Dondero Descendants | Grantor/ Beneficiary | 100 | n/a | James Dondero-Trustee | James Dondero-Trustee | James Dondero-Trustee | Melissa Schroth | Melissa Schroth | Terminated | 6/11/2007 | All assets transferred to The Get Good Non-Exempt Trust No. 1 | | |
| The Mooreland Fund III 380 Comm Office, L.P. | 12/13/2005 | Texas | N/A | RE | Mooreland Fund General Parnter, Inc. | General Partner | 0 | - | Non HCMLP GP | n/a | General Partner Controlled | Ted Dameris | Drew Wilson | Y | FORECLOSED | | write off | |
| The Mooreland Fund III 380 Comm Office, L.P. | 12/13/2005 | Texas | N/A | RE | Highland Capital Real Estate Fund, L.P. | Partnership Interest | 100 | 1,063,694 | Non HCMLP GP | n/a | General Partner Controlled | Ted Dameris | Drew Wilson | Y | FORECLOSED | | write off | |
| The Tutwiler Hotel LLC | | Delaware | | NB | NexBank Capital, Inc. | Member | 100 | | | | | Dierk Hohman | Courtney Burton | | 9/25/2015 | | | |
| Tollway East GP, LLC | 2/11/2010 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | | Managers: Dondero, Dameris, Ellington | N/A | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | New GP of MF 380 Tollway East, LP | | |
| Tollway West GP, LLC | 2/11/2010 | Texas | N/A | RE | Highland Capital Management, L.P. | Member | 100 | | Managers: Dondero, Dameris, Ellington | N/A | Ted Dameris, Patrick Boyce, Clint Gilchrist, Jason Post, Clifford Stoops. | Ted Dameris | Tanya Massie | Y | 12/27/2010 | New GP of MF 380 Tollway West, LP | | |
| Tribute Management GP, LLC | 1/7/2009 | Texas | N/A | RE | James Dondero | Sole Member | 100 | n/a | James Dondero | James Dondero-Pres | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops. | Ted Dameris | Drew Wilson | Y | 12/30/2014 | This entity is the general partner of a partnership | Investment property | Dissolve once Tribute |
| Triden Village Holding, LP | 4/4/2006 | Texas | N/A | RE | HCREA Trimarchi of North Dallas, LP | Limited Partner | 90 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Drew Wilson | FORECLOSED | | This entity owns a real estate asset for investment | FORECLOSED | Remove once Trimarchi entities foreclosed |
| Triden Village Holding, LP | 4/4/2006 | Texas | N/A | RE | Third Party Investors | General Partner | 1 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | FORECLOSED | This entity owns a real estate asset for investment purposes. | FORECLOSED | Remove once Trimarchi entities dissolved |
| Triden Village Holding, LP | 4/4/2006 | Texas | N/A | RE | Third Party Investors | Limited Partner | 9 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | FORECLOSED | This entity owns a real estate asset for investment purposes. | FORECLOSED | Remove once Trimarchi entities dissolved |
| Triden Village, L.P. | 4/5/2006 | Texas | N/A | RE | HCREA Trimarchi of North Dallas, LP | Limited Partner | 90 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | FORECLOSED | This entity owns a real estate asset for investment purposes. | FORECLOSED | Remove once Trimarchi entities dissolved |
| Triden Village, L.P. | 4/5/2006 | Texas | N/A | RE | Third Party Investors | General Partner | 1 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | FORECLOSED | This entity owns a real estate asset for investment purposes. | FORECLOSED | Remove once Trimarchi entities dissolved |
| Triden Village, L.P. | 4/5/2006 | Texas | N/A | RE | Third Party Investors | Limited Partner | 9 | n/a | Non HCMLP GP | | General Partner Controlled | Ted Dameris | Drew Wilson | Y | FORECLOSED | This entity owns a real estate asset for investment purposes. | FORECLOSED | Remove once Trimarchi entities dissolved |
| Triple R Eastwood Holdings, LLC | 9/2/2010 | Delaware | N/A | CLO Blocker | Brentwood CLO, Ltd. | Member | 37.5 | n/a | HCMLP-Manager | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Carl Moore | Brandon Wurz | Y | 12/27/2018 | CLO blocker to hold Medical Staffing equity interest | | |
| Triple R Eastwood Holdings, LLC | 9/2/2010 | Delaware | N/A | CLO Blocker | Eastland CLO, Ltd. | Member | 18.75 | n/a | HCMLP-Manager | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Carl Moore | Brandon Wurz | Y | 12/27/2018 | CLO blocker to hold Medical Staffing equity interest | | |
| Triple R Eastwood Holdings, LLC | 9/2/2010 | Delaware | N/A | CLO Blocker | Red River CLO, Ltd. | Member | 6.25 | n/a | HCMLP-Manager | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Carl Moore | Brandon Wurz | Y | 12/27/2018 | CLO blocker to hold Medical Staffing equity interest | | |
| Triple R Eastwood Holdings, LLC | 9/2/2010 | Delaware | N/A | CLO Blocker | Rockwall CDO, Ltd. | Member | 25 | n/a | HCMLP-Manager | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Carl Moore | Brandon Wurz | Y | 12/27/2018 | CLO blocker to hold Medical Staffing equity interest | | |
| Triple R Eastwood Holdings, LLC | 9/2/2010 | Delaware | N/A | CLO Blocker | Rockwall CDO II, Ltd. | Member | 12.5 | n/a | HCMLP-Manager | | Dondero, Okada, Ellington, Parker, Waterhouse, Palmer, Stoops, Chism | Carl Moore | Brandon Wurz | Y | 12/27/2018 | CLO blocker to hold Medical Staffing equity interest | | |
| Tunstall Capital Management GP, LLC | 12/16/2009 | Delaware | TX | Institutional Advisor | Tunstall Capital Management Services, Inc. | Sole Member | 100 | n/a | Sole Member - HCMSI | Dondero-Pres/Sec Okada-VP Waterhouse-Treas | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Frank Waterhouse | Frank Waterhouse | | 11/21/2014 | GP of a new RIA - fka Highland Capital Management Services COO GP, LLC - name changed 2/10/10 | In wind down | |
| Tunstall Capital Management, L.P. | 12/16/2009 | Delaware | TX | Institutional Advisor | Tunstall Capital Management GP, LLC | GP | 1 | n/a | GP | Dondero-Pres/Sec Okada-VP Waterhouse-Treas GP | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Frank Waterhouse | Frank Waterhouse | | 11/21/2014 | New RIA for new Tunstall funds - fka Highland Capital Management Services COO, LP - name changed 2/10/10 | In wind down | |
| Tunstall Capital Management, L.P. | 12/16/2009 | Delaware | TX | Institutional Advisor | James Dondero | LP | 99 | n/a | GP | GP | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Frank Waterhouse | Frank Waterhouse | | 11/21/2014 | | In wind down | |
| Tunstall Diversified Opportunities Fund, L.P. | 8/10/2010 | Delaware | N/A | Hedge | Tunstall GP, LLC | General Partner | 100 | n/a | GP | GP | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Dondero | Kristin Hendrix | | 11/21/2014 | | In wind down | |
| Tunstall GP, LLC | 2/4/2009 | Delaware | TX | Hedge | Tunstall Capital Management, L.P. | Member | 100 | n/a | N/A | Dondero-Pres/Sec Okada-VP | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Dondero | Will Mabry | | 11/21/2014 | | In wind down | |
| Tunstall Opportunities Fund, L.P. | 2/4/2009 | Delaware | TX | Hedge | Highland Capital Management Services, Inc. | Limited Partner | 2.53% | n/a | GP | N/A | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Dondero | Will Mabry | | 11/21/2014 | | In wind down | |
| Tunstall Opportunities Fund, L.P. | 2/4/2009 | Delaware | TX | Hedge | Tunstall Capital Management, L.P. | Limited Partner | 0 | n/a | GP | N/A | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Dondero | Will Mabry | | 11/21/2014 | | In wind down | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77
INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023
Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 146 of 376

| | A | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 947 | Tunstall Opportunities Fund, L.P. | 2/4/2009 | Delaware | TX | Hedge | Cornerstone Healthcare Group Holding, Inc. | Limited Partner | 97.47% | n/a | GP | N/A | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Dondero | Will Mabry | Y | 11/21/2014 | | In wind down | |
| 948 | Tunstall Opportunities Fund, L.P. | 2/4/2009 | Delaware | TX | Hedge | Trussway Holdings, Inc. | Limited Partner | 0 | n/a | GP | N/A | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Dondero | Will Mabry | Y | 11/21/2014 | | In wind down | |
| 949 | Tunstall Opportunities Fund, L.P. | 2/4/2009 | Delaware | TX | Hedge | Tunstall GP, LLC | General Partner | 0 | n/a | GP | N/A | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Dondero | Will Mabry | Y | 11/21/2014 | | In wind down | |
| 950 | Tunstall Opportunities Fund, Ltd. | 12/16/2009 | Cayman Islands | N/A | Hedge | Tunstall GP, LLC | Shareholder | 100 | 1 | James Dondero | James Dondero-Director | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Dondero | James Palmer | Dissolved | 8/17/2012 | | | |
| 951 | Tunstall Opportunities Master Fund, L.P. | 2/23/2010 | Cayman Islands | N/A | Hedge | Tunstall GP, LLC | General Partner | 0 | n/a | GP | N/A | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Dondero | Will Mabry | Y | 11/20/2014 | | In wind down | |
| 952 | Tunstall Opportunities Master Fund, L.P. | 2/23/2010 | Cayman Islands | N/A | Hedge | Tunstall Opportunities Fund, L.P. | Limited Partner | 100 | n/a | GP | N/A | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Dondero | Will Mabry | Y | 11/20/2014 | | In wind down | |
| 953 | Tunstall Opportunities Master Fund, L.P. | 2/23/2010 | Cayman Islands | N/A | Hedge | Tunstall Opportunities Fund, Ltd. | Limited Partner | 0 | n/a | GP | N/A | Dondero, Okada, Waterhouse, Wise, Stoops, Chism | Dondero | Will Mabry | Y | 11/20/2014 | | In wind down | |
| 955 | USA Grand Prairie Truck Service Partners, L.P. | 3/13/2006 | Texas | N/A | RE | HCREA Grand Prairie Truck Service, L.P. | Limited Partner | 90 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | SOLD TO PRIME WEST IN 2007 | |
| 955 | USA Grand Prairie Truck Service Partners, L.P. | 3/13/2006 | Texas | N/A | RE | Third Party Investors | General Partner | 0 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | SOLD TO PRIME WEST IN 2007 | |
| 956 | USA Grand Prairie Truck Service Partners, L.P. | 3/13/2006 | Texas | N/A | RE | Third Party Investors | Limited Partner | 10 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | SOLD TO PRIME WEST IN 2007 | |
| 957 | Van Alstyne 386, L.P. | | Texas | N/A | RE | Mark Okada | Limited Partner | 3.3 as of 12/31/08 | Non HCMLP GP | n/a | | General Partner Controlled | Ted Dameris | Donna Engstrom | Y | 7/29/2010 | LP interest abandoned | |
| 958 | Van Alstyne 386, L.P. | | Texas | N/A | RE | The Get Good Trust | Limited Partner | 5.5 as of 12/31/08 | Non HCMLP GP | n/a | | General Partner Controlled | Ted Dameris | Donna Engstrom | Y | 7/29/2010 | LP interest abandoned | |
| 959 | Van Alstyne 386, L.P. | | Texas | N/A | RE | Todd and Kim Travers | Limited Partner | 2.2 as of 12/31/08 | Non HCMLP GP | n/a | | General Partner Controlled | Ted Dameris | Donna Engstrom | Y | 7/29/2010 | LP interest abandoned | |
| 960 | Van Alstyne 386, L.P. | | Texas | N/A | RE | David Smith | Limited Partner | 16.5 as of 12/31/08 | Non HCMLP GP | n/a | | General Partner Controlled | Ted Dameris | Donna Engstrom | Y | 7/29/2010 | LP interest abandoned | |
| 961 | Van Alstyne 386, L.P. | | Texas | N/A | RE | Highland Real estate Fund 2002-A | Limited Partner | 22 as of 12/31/08 | Non HCMLP GP | n/a | | General Partner Controlled | Ted Dameris | Donna Engstrom | Y | 7/29/2010 | LP interest abandoned | |
| 962 | Van Alstyne 386, L.P. | | Texas | N/A | RE | Third Party Investors | General Partner | 50.5 as of 12/31/08 | Non HCMLP GP | n/a | | General Partner Controlled | Ted Dameris | Donna Engstrom | Y | 7/29/2010 | LP interest abandoned | |
| 963 | W/J Tribute, Ltd. | 12/14/2005 | Texas | N/A | RE | Tribute Management GP, LLC | General Partner | 0 | n/a | General Partner | N/A | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops | Ted Dameris | Drew Wilson | SOLD | | This entity owns a real estate asset for investment purposes. | SOLD | Remove once Tribute funds distributed and dissolved |
| 964 | W/J Tribute, Ltd. | 12/14/2005 | Texas | N/A | RE | HCREA The Tribute, L.P. | Limited Partner | 97 | n/a | General Partner | N/A | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops | Ted Dameris | Drew Wilson | SOLD | | This entity owns a real estate asset for investment purposes. | SOLD | Remove once Tribute funds distributed and dissolved |
| 965 | W/J Tribute, Ltd. | 12/14/2005 | Texas | N/A | RE | Third Party Investors | Limited Partner | 3 | n/a | General Partner | N/A | Ted Dameris, Chris Wise, Carter Chism, Clifford Stoops | Ted Dameris | Drew Wilson | SOLD | | This entity owns a real estate asset for investment purposes. | SOLD | Remove once Tribute funds distributed and dissolved |
| 966 | WAICCS Recovery Partners, LLC | 3/17/2015 | Delaware | N/A | CLO Blocker | TBD | Members | | | | | | Isaac Leventon | Jon Reiter | Y | 5/18/2016 | Blocker to hold CLOs assets in WAICCS but was not used | Can be dissolved per Isaac | |
| 967 | WDS 190, L.P. | 8/10/2006 | Texas | N/A | RE | HCREA Wilcox 190, L.P. | Class A Limited Partner | 80 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |
| 968 | WDS 190, L.P. | 8/10/2006 | Texas | N/A | RE | Third Party Investors | Class B Limited Partner | 19.9 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |
| 969 | WDS 190, L.P. | 8/10/2006 | Texas | N/A | RE | Third Party Investors | General Partner | 0.1 | n/a | Non HCMLP GP | n/a | General Partner Controlled | Ted Dameris | Tanya Massie | Y | | This entity owns a real estate asset for investment purposes. | LP interest abandoned | |
| 970 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Brentwood CLO, Ltd. | Members | 5.77 | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, | Ted Dameris | Jon Reiter | Y | 3/5/2016 | CLO blocker to hold J Hotel equity interest | Tax to get clearance to dissolve from Comptroller | |
| 971 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Eastland CLO, Ltd. | Members | 15.38 | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold J Hotel equity interest | | |
| 972 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Gleneagles CLO, Ltd. | Members | | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold J Hotel equity interest | | |
| 973 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Grayson CLO, Ltd. | Members | 13.46 | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold J Hotel equity interest | | |
| 974 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Greenbriar CLO, Ltd. | Members | 9.62 | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold J Hotel equity interest | | |
| 975 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Highland Loan Funding V, Ltd. | Members | 3.85 | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, Chism | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold J Hotel equity interest | | |
| 976 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Jasper CLO, Ltd. | Members | 7.69 | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold J Hotel equity interest | | |
| 977 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Liberty CLO, Ltd. | Members | 9.62 | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold J Hotel equity interest | | |
| 978 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Loan Funding IV LLC | Members | 1.92 | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold J Hotel equity interest | | |
| 979 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Loan Funding VII LLC | Members | 3.85 | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold J Hotel equity interest | | |
| 980 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Red River CLO, Ltd. | Members | 3.85 | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold J Hotel equity interest | | |
| 981 | West 22nd Street Luxury Resort, LLC | 10/22/2010 | Texas | N/A | CLO Blocker | Rockwall CDO, Ltd. | Members | 3.85 | | HCMLP-Manager | | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Palmer, Stoops, | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold J Hotel equity interest | | |

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 147 of 376

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

| A | B | C | D | E | F | G | H | I | J | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| West 22nd Street Luxury Resort, LLC | | 10/22/2010 | Texas | N/A | CLD Blocker | Rockwell CDO II, Ltd. | Members | 1.92 | | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Terry, Waterhouse, Stoops, Chism | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold | Hotel equity interest | |
| West 22nd Street Luxury Resort, LLC | | 10/22/2010 | Texas | N/A | CLD | Southfork CLO, Ltd. | Members | 5.77 | | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Chism | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold | Hotel equity interest | |
| West 22nd Street Luxury Resort, LLC | | 10/22/2010 | Texas | N/A | CLD | Westchester CLO, Ltd. | Members | 7.69 | | HCMLP-Manager | N/A | Dondero, Okada, Britain, Ellington, Chism | Ted Dameris | Jon Reiter | Y | Mar-16 | CLO blocker to hold | Hotel equity interest | |
| Westgate Investments, LLC | | 4/7/2005 | Delaware | N/A | RE | Ellman | Class A Member | 54.58% | | Bob Kaufman-EVP/Ellman Management Group, Inc.-Manager | Bob Kaufman-EVP/Ellman Management Group, Inc.-Manager | Bob Kaufman-EVP/Ellman Management Group, Inc.-Manager | Ted Dameris/Jim Pfertner | Jim Pfertner | Written off | Jan-12 | RE investment portfolio | | Investment foreclosed 2012 |
| Westgate Investments, LLC | | 4/7/2005 | Delaware | N/A | RE | Highland Credit Strategies Fund | Class B-1 Member | 0.76% | | Ellman | Ellman | Ellman | Ted Dameris/Jim Pfertner | Jim Pfertner | Written off | Jan-12 | RE investment portfolio | | Investment foreclosed 2012 |
| Westgate Investments, LLC | | 4/7/2005 | Delaware | N/A | RE | Highland Westgate Investment Holding II, LLC | Class B-1 Member | 3.74% | | Ellman | Ellman | Ellman | Ted Dameris/Jim Pfertner | Jim Pfertner | Written off | Jan-12 | RE investment portfolio | | Investment foreclosed 2012 |
| Westgate Investments, LLC | | 4/7/2005 | Delaware | N/A | RE | Highland Westgate Investment Holding, LLC | Class B-1 Member | 3.03% | | Ellman | Ellman | Ellman | Ted Dameris/Jim Pfertner | Jim Pfertner | Written off | Jan-12 | RE investment portfolio | | Investment foreclosed 2012 |
| Westgate Investments, LLC | | 4/7/2005 | Delaware | N/A | RE | Camulous Capital, LP | Class B-1 Member | 5.05% | | Ellman | Ellman | Ellman | Ted Dameris/Jim Pfertner | Jim Pfertner | Written off | Jan-12 | RE investment portfolio | | Investment foreclosed 2012 |
| Westgate Investments, LLC | | 4/7/2005 | Delaware | N/A | RE | Stanfield Capital Partners, LLC | Class B-1 Member | 12.63% | | Ellman | Ellman | Ellman | Ted Dameris/Jim Pfertner | Jim Pfertner | Written off | Jan-12 | RE investment portfolio | | Investment foreclosed 2012 |
| Westgate Investments, LLC | | 4/7/2005 | Delaware | N/A | RE | Credit Suisse Management, LLC | Class B-1 Member | 5.05% | | Ellman | Ellman | Ellman | Ted Dameris/Jim Pfertner | Jim Pfertner | Written off | Jan-12 | RE investment portfolio | | Investment foreclosed 2012 |
| Westgate Investments, LLC | | 4/7/2005 | Delaware | N/A | RE | Credit Suisse Securities (USA) LLC | Class B-2 Member | 15.16% | | Ellman | Ellman | Ellman | Ted Dameris/Jim Pfertner | Jim Pfertner | Written off | Jan-12 | RE investment portfolio | | Investment foreclosed 2012 |
| Willoughby McCabe and Co., L.P. | | 1/11/2008 | Delaware | N/A | JD | Firearms Venture I, LLC | General Partner | 1 | n/a | General Partner | N/A | General Partner | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | | | |
| Willoughby McCabe and Co., L.P. | | 1/11/2008 | Delaware | N/A | JD | Patrick Willoughby-McCabe | Limited Partner | 10 | n/a | General Partner | N/A | General Partner | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | | | |
| Willoughby McCabe and Co., L.P. | | 1/11/2008 | Delaware | N/A | JD | The Get Good Trust | Limited Partner | 89 | n/a | General Partner | N/A | General Partner | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | | | |
| Wilmington Multi-Manager Alternative Fund | | | | | Sep Acct | | | | | Wilmington | | | Michael Gregory/ Jonathan Lamensdorf | James Palmer | N | 1/12/2017 | HCHA/HCMFA sub-advised | Sub-advisory terminated on 1.12.2017 | |
| Windana GP, LLC | | 2/5/2009 | Delaware | N/A | JD | James Dondero | Member | 100 | | James Dondero | N/A | N/A | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | Not Used | | |
| Windana, L.P. | | 2/5/2009 | Delaware | N/A | JD | Windana GP, LLC | General Partner | 100 | | Windana GP, LLC | N/A | | Melissa Schroth | Melissa Schroth | Y | 12/2/2016 | Not Used | | |
| Withers REO LLC | | | Texas | | NB | NCI Assets Holding | Member | 100 | | | | | Dierk Hohman | Courtney Burton | Y | 8/12/2016 | | | |
| Woori Highland Healthcare Private Equity Fund I | | | | | | | | | | | | | | | | | | | |
| Wynwood Peninsula Venture | | 1/3/2007 | Texas | N/A | RE | Third Party Investors | Managing JV Partner | 50 | n/a | Non HCMLP Managing JV | n/a | Non HCMLP Managing JV | Ted Dameris | Drew Wilson | Y | SOLD | This entity is the general partner of a partnership that owns a real estate asset for investment purposes. | INTEREST SOLD IN JV | Remove once Tribute funds distributed and dissolved |
| Wynwood Peninsula Venture | | 1/3/2007 | Texas | N/A | RE | W/J Tribute, Ltd. (SOLD) | Joint Venture Partner | 50 | n/a | Non HCMLP Managing JV | n/a | Non HCMLP Managing JV | Ted Dameris | Drew Wilson | Y | SOLD | This entity is the general partner of a partnership that owns a real estate asset for investment purposes. | INTEREST SOLD IN JV | Remove once Tribute funds distributed and dissolved |
| Granite Bay Advisors GP, LLC | | 7/22/2010 | Delaware | TX | I-Advisor | Mark Okada | Member | 100 | n/a | N/A | Mark Okada-Pres Trey Parker-Secy F. Waterhouse-Treas | Okada, Parker, Waterhouse, Stoops, Palmer, Chism | Jon Poglitsch | Melissa Schroth | Y | 8/29/2019 | GP of a new RIA - fka Kiyoshi Capital Management GP, LLC - name changed 8/13/10 | | |
| Granite Bay Advisors, L.P. | | 7/22/2010 | Delaware | TX | I-Advisor | Granite Bay Advisors GP, LLC | GP | 0.1 | n/a | GP | GP | Okada, Parker, Waterhouse, Stoops, Palmer, Chism | Jon Poglitsch | Kristin Hendrix | Y | 8/29/2019 | New RIA for proposed new long/short healthcare funds - fka Kiyoshi Capital Management, LP - name changed 8/13/10 | | |
| Granite Bay Advisors, L.P. | | 7/22/2010 | Delaware | TX | I-Advisor | Mark Okada | LP | 69.9 | n/a | GP | GP | Okada, Parker, Waterhouse, Stoops, Palmer, Chism | Jon Poglitsch | Kristin Hendrix | Y | 8/29/2019 | | | |
| Granite Bay Advisors, L.P. | | 7/22/2010 | Delaware | TX | I-Advisor | James Dondero | LP | 30.0 | n/a | GP | GP | Okada, Parker, Waterhouse, Stoops, Palmer, Chism | Jon Poglitsch | Kristin Hendrix | Y | 8/29/2019 | | | |
| MAR Quail Landing, LLC | | 10/3/2016 | Delaware | OK | RDT-OST | SE Quail Landing, LLC | Member | 100 | | | | | Matt McGraner | Bonner McDermott | | 2019 | Project Unicorn - Quail Landing | SOLD BEGINNING OF 2019 | |

App. 144

FILED: NEW YORK COUNTY CLERK 02/08/2023 12:41 AM
NYSCEF DOC. NO. 77

INDEX NO. 650744/2023
RECEIVED NYSCEF: 02/08/2023

Case 21-03076-sgj   Doc 394   Filed 10/13/25   Entered 10/13/25 17:40:03   Desc Main
Document   Page 148 of 376

| Name | EIN | Formation Date | Jurisdiction | Foreign Qualification | Category | Owners | Ownership Type | Ownership % | Voting Shares | Director/Manager/ Trustee | Officers | Bank Signatory | Fund Contact | Accounting Contact Books & Records | Dissolve (Y/N) | Termination Date | Entity Description (one sentence) | Other Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Acis CLO Value Fund II Charitable DAF Ltd. | | 2/5/2013 | Cayman Islands | N/A | DAF | Charitable DAF Fund, L.P. | Shareholder | 100 | n/a | Grant Scott (Maples) | Grant Scott | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| Charitable DAF Fund, L.P. | | 10/28/2011 | Cayman Islands | N/A | DAF | Charitable DAF GP, LLC | GP | 1 | n/a | GP (Intrustust) | GP | | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| Charitable DAF Fund, L.P. | | 10/28/2011 | Cayman Islands | N/A | DAF | Charitable DAF HoldCo, Ltd | LP | 99 | n/a | GP (Intrustust) | | | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| Charitable DAF GP, LLC | | 10/25/2011 | Delaware | N/A | DAF | Grant Scott | Managing Member | 100 | n/a | Grant Scott-Managing Member | | | Grant Scott | Mark Patrick | Taylor Colbert | N | | Grant Scott became managing member as of 1/1/2012 |
| Charitable DAF HoldCo, Ltd | | 10/27/2011 | Cayman Islands | N/A | DAF | Grant Scott | Management Shares | 0 | 100 | Grant Scott (Intrustust) | n/a | | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| Charitable DAF HoldCo, Ltd | | 10/27/2011 | Cayman Islands | N/A | DAF | Highland Dallas Foundation, Inc. | Participation Shares | 32.786885 | 100 | Grant Scott (Intrustust) | n/a | | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| Charitable DAF HoldCo, Ltd | | 10/27/2011 | Cayman Islands | N/A | DAF | Highland Kansas City Foundation, Inc. | Participation Shares | 32.786885 | 100 | Grant Scott (Intrustust) | n/a | | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| Charitable DAF HoldCo, Ltd | | 10/27/2011 | Cayman Islands | N/A | DAF | Highland Santa Barbara Foundation, Inc. | Participation Shares | 32.786885 | 100 | Grant Scott (Intrustust) | n/a | | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| Charitable DAF HoldCo, Ltd | | 10/27/2011 | Cayman Islands | N/A | DAF | Highland Capital Management, LP Charitable Fund | Participation Shares | 1.6393443 | 5 | Grant Scott (Intrustust) | n/a | | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| CLO HoldCo, Ltd. | | 12/13/2010 | Cayman Islands | N/A | DAF | Charitable DAF Fund, L.P. | Shareholder | 100 | 1 | Grant Scott (Intrustust) | | | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| Empower Dallas Foundation, Inc. | | 2/10/2015 | Delaware | N/A | JD | The Dallas Foundation | Institutional Member | 66.67 | | 2 Institutional Directors: Gary Garcia/Mary Jalonick Individual Director: Grant Scott | Grant Scott-Chair/Pres Mary Jalonick-VP/CFO Gary Garcia-Secy | | Mark Patrick | Melissa Schroth | N | | Charitable giving set up with The Dallas Foundation |
| Empower Dallas Foundation, Inc. | | 2/10/2015 | Delaware | N/A | JD | Grant Scott | Individual Member | 33.33 | | 1 Institutional Directors: Gary Garcia/Mary Jalonick Individual Director: Grant Scott | Grant Scott-Chair/Pres Mary Jalonick-VP/CFO Gary Garcia-Secy | | Mark Patrick | Melissa Schroth | N | | Charitable giving set up with The Dallas Foundation |
| HCT Holdco 2, Ltd. | | 12/29/2010 | Cayman Islands | N/A | DAF | CLO HoldCo, Ltd. | Shareholder | 100 | N/A | Grant Scott (Intrustust) | | | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| Highland Dallas Foundation, Inc. | | 11/22/2011 | Delaware | N/A | DAF | The Dallas Foundation (third party) | Shareholder | 100 | 100 | James Dondero | James Dondero - Pres | | Mark Patrick | Taylor Colbert | N | | Charitable giving set up with The Dallas Foundation |
| Highland Kansas City Foundation, Inc. | | 11/23/2011 | Delaware | N/A | DAF | Greater Kansas City Community Foundation (third party) | Shareholder | 100 | 100 | James Dondero Grant Scott Debbie Wilkerson | Mary M. Jalonick - VP James Dondero - Pres Grant Scott - Secy/Treas | | Mark Patrick | Taylor Colbert | N | | Charitable giving set up with The Dallas Foundation |
| Highland Santa Barbara Foundation, Inc. | | 11/22/2011 | Delaware | N/A | DAF | Santa Barbara Foundation (third party) | Shareholder | 100 | 100 | James Dondero Grant Scott Arnold Brier Ronald Gallo | James Dondero - Pres Grant Scott - Secy/Treas Ronald Gallo - VP | | Mark Patrick | Taylor Colbert | N | | Charitable giving set up with The Dallas Foundation |
| Liberty CLO Holdco, Ltd. | | 6/6/2012 | Cayman Islands | N/A | DAF | CLO HoldCo, Ltd | Shareholder | 100.00 | 1 | Grant Scott (Intrustust) | | | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| Liberty Sub, Ltd. | | 4/12/2018 | Cayman Islands | N/A | DAF | Liberty CLO Holdco, Ltd. | Shareholder | 100.00 | 1 | Grant Scott (Intrustust) | N/A | | Grant Scott | Carl Moore | David Willmore | N | | Hold Tandem interest |
| MGM Studios HoldCo, Ltd. | | 11/12/2014 | Cayman Islands | N/A | DAF | CLO HoldCo, Ltd. | Shareholder | 100 | 1 | Grant Scott - Director (Intrustust) | N/A | | Grant Scott | Mark Patrick | Taylor Colbert | N | | | |
| BVP Property, LLC | | 1/4/2012 | Delaware | N/A | NB | Liberty CLO Holdco, Ltd. | Member | 100 | | Member Managed | Member Managed | | John Holt | Taylor Colbert | | | | |
| NCI Apache Trail LLC | | 5/23/2014 | Texas | N/A | NB | Liberty CLO Holdco, Ltd. | Member | 100 | | Member Managed | Member Managed | | John Holt | Taylor Colbert | | | | |
| NCI Fort Worth Land LLC | | 5/23/2014 | Texas | N/A | DAF | Liberty CLO Holdco, Ltd. | Member | 100 | | Member Managed | Member Managed | | John Holt | Taylor Colbert | | | | |
| NCI Royse City Land LLC | | 5/23/2014 | Texas | N/A | NB | Liberty CLO Holdco, Ltd. | Member | 100 | | Member Managed | Member Managed | | John Holt | Taylor Colbert | | | | |
| NCI Stewart Creek LLC | | 5/23/2014 | Texas | N/A | DAF | Liberty CLO Holdco, Ltd. | Member | 100 | | | | | John Holt | Taylor Colbert | | | | |
| NLA Assets LLC | | 12/9/2014 | Texas | N/A | NB | Liberty CLO Holdco, Ltd. | Member | 100 | | Member Managed | Member Managed | | John Holt | Taylor Colbert | | | | |

# EXHIBIT 4





# WebCivil Supreme - Appearance Detail

| Court: | **New York Supreme Court** |
|---|---|
| Index Number: | **650744/2023** |
| Case Name: | **UBS Securities LLC et al vs. Dondero, James et al** |
| Case Type: | **Comm-Other** |
| Track: | **Standard** |

### Appearance Information:

| Appearance Date | Time | Court Date Purpose | Fully Virtual | Court Date Type | Outcome Type | Justice Part | Remarks | Motion Seq |
|---|---|---|---|---|---|---|---|---|
| 09/22/2025 | 09:30 AM | Motion-Notice of Petition | Yes | Remote | | Crane, Hon. Melissa A. 60M | ORAL ARGUMENT - REMOTE | 2 |
| 05/14/2025 | 09:30 AM | Motion-Notice of Petition | No | Administrative - No Appearance Required | Adjourned | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | SO ORDERED. NYSCEF DOC. #446. | 2 |
| 04/16/2025 | 12:00 PM | Conference-Status | Yes | Remote | Held | Crane, Hon. Melissa A. 60 | | |
| 04/02/2025 | 11:00 AM | Conference-Status | Yes | Remote | Held | Crane, Hon. Melissa A. 60 | MS TEAMS | |
| 07/08/2024 | 02:15 PM | Motion-Notice of Motion | Yes | Remote | Fully Submitted | Crane, Hon. Melissa A. 60M | ORAL ARGUMENT - REMOTE PRIOR DATE AND TIME CHANGED PER PART'S REQUEST | 11 |
| 07/08/2024 | 02:15 PM | Motion-Notice of Motion | Yes | Remote | Fully Submitted | Crane, Hon. Melissa A. 60M | ORAL ARGUMENT - REMOTE PRIOR DATE AND TIME CHANGED PER PART'S REQUEST. | 12 |
| 07/08/2024 | 02:15 PM | Motion-Notice of Motion | Yes | Remote | Fully Submitted | Crane, Hon. Melissa A. 60M | ORAL ARGUMENT - REMOTE PRIOR DATE AND TIME CHANGED PER PART'S REQUEST. | 13 |
| 06/28/2024 | 09:30 AM | Motion-Notice of Petition | No | Administrative - No Appearance Required | Adjourned | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | SO ORDERED. NYSCEF DOC. #208. MOTION DECIDED | 2 |
| 05/17/2024 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Fully Submitted - No Opposition | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS | 15 |
| 05/17/2024 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Fully Submitted - No Opposition | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS | 16 |
| 05/17/2024 | 10:30 AM | Conference-Preliminary | Yes | Remote | Held | Crane, Hon. Melissa A. 60 | VIA MS TEAMS | |
| 05/15/2024 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Fully Submitted - No Opposition | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS | 14 |
| 05/09/2024 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Adjourned | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS NO APPEARANCE NECESSARY | 11 |
| 05/09/2024 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Adjourned | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS NO APPEARANCE NECESSARY | 12 |
| 05/09/2024 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Adjourned | Crane, Hon. Melissa A. | ROOM 130 SUBMISSIONS NO APPEARANCE NECESSARY | 13 |

App. 147

| 02/16/2024 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Fully Submitted - No Opposition | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS | 10 |
| 02/14/2024 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Fully Submitted - No Opposition | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS NO APPEARANCE NECESSARY | 6 |
| 02/14/2024 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Fully Submitted - No Opposition | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS NO APPEARANCE NECESSARY | 7 |
| 02/14/2024 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Fully Submitted - No Opposition | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS NO APPEARANCE NECESSARY | 8 |
| 02/14/2024 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Fully Submitted - No Opposition | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS NO APPEARANCE NECESSARY | 9 |
| 04/28/2023 | 09:30 AM | Motion-Notice of Petition | No | Administrative - No Appearance Required | Adjourned | Lebovits, Hon. Gerald SUBMISSION - NO APPEARANCE | PER SO-ORDERED STIP DOC#175/ROOM 130 SUBMISSIONS | 2 |
| 03/24/2023 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Fully Submitted - No Opposition | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS | 4 |
| 03/24/2023 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Fully Submitted - No Opposition | Crane, Hon. Melissa A. SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS | 5 |
| 03/24/2023 | 09:30 AM | Motion-Notice of Petition | No | Administrative - No Appearance Required | Adjourned | Lebovits, Hon. Gerald SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS | 2 |
| 03/24/2023 | 09:30 AM | Motion-Notice of Motion | No | Administrative - No Appearance Required | Fully Submitted - No Opposition | Lebovits, Hon. Gerald SUBMISSION - NO APPEARANCE | ROOM 130 SUBMISSIONS | 3 |
| 03/20/2023 | 02:15 PM | Motion-Order to Show Cause (Returnable) | No | Administrative - No Appearance Required | Fully Submitted | Crane, Hon. Melissa A. 60M | ORAL ARGUMENT VIA MICROSOFT TEAMS - NO PERSONAL APPEARANCE | 1 |

Close

# EXHIBIT 5

05-102
(Rev.9-15/33)

**Texas Franchise Tax Public Information Report**

*To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP),*
*Professional Associations (PA) and Financial Institutions*

■ **Tcode** 13196 Franchise

| Taxpayer number | | | | | | | | | | Report year | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 2 | 0 | 7 | 8 | 0 | 8 | 0 | 1 | 5 | 0 | 2 | 0 | 2 | 4 |

**You have certain rights** under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.

Taxpayer name: **SKYVIEW GROUP, INC.**

○ Blacken circle if the mailing address has changed.

Mailing address: **2101 CEDAR SPRINGS RD STE 1200**

City: **DALLAS**   State: **TX**   ZIP code plus 4: **75201**

Secretary of State (SOS) file number or Comptroller file number: **0803967249**

● Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office: **2101 CEDAR SPRINGS ROAD STE 1200, DALLAS, TX, 75201**

Principal place of business: **2101 CEDAR SPRINGS ROAD STE 1200, DALLAS, TX, 75201**

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

*Please sign below!* **This report must be signed to satisfy franchise tax requirements.**

1000000000015

**SECTION A**  Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Title | Director | | Term expiration | m m d d y y |
|---|---|---|---|---|---|
| **SCOTT ELLINGTON** | **DIRECTOR** | ● YES | | | |
| Mailing address **2101 CEDAR SPRINGS RD STE 1200** | City **DALLAS** | State **TX** | | ZIP Code **75201** | |
| Name | Title | Director ○ YES | | Term expiration | m m d d y y |
| Mailing address | City | State | | ZIP Code | |
| Name | Title | Director ○ YES | | Term expiration | m m d d y y |
| Mailing address | City | State | | ZIP Code | |

**SECTION B**  Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| | | | |
| | | | |

**SECTION C**  Enter information for each corporation, LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| | | | |

Registered agent and registered office currently on file *(see instructions if you need to make changes)*

Agent: **CT CORPORATION SYSTEM**

*You must make a filing with the Secretary of State to change registered agent, registered office or general partner information.*

Office: **1999 BRYAN ST STE 900**   City **DALLAS**   State **TX**   ZIP Code **75201**

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related person, LLC, LP, PA or financial institution.

sign here ▶ **FRANK WATERHOUSE**   Title **TREASURER**   Date **11/04/2024**   Area code and phone number ( **214** ) **550 - 4500**

**Texas Comptroller Official Use Only**

VE/DE ○   PIR IND ○

# EXHIBIT 6

**DATED 11 JULY 2025**

**(1) CROSSVINE LITIGATION FUNDING, LLC**

**(2) MARGOT MACINNIS AND SANDIPAN BHOWMIK OF GRANT THORNTON SPECIALIST SERVICES (CAYMAN) LIMITED IN THEIR CAPACITY AS JOINT OFFICIAL LIQUIDATORS OF CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

---

**FUNDING AGREEMENT OF JOINT OFFICIAL LIQUIDATORS**

---



1

**FUNDING AGREEMENT**

**DATED 11 JULY 2025**

**BETWEEN**

(1)     **Crossvine Litigation Funding, LLC** of c/o CO Services Cayman Limited Willow House, Cricket Square Cayman Islands (the **Funder**)

(2)     **Margot MacInnis** and **Sandipan Bhowmik** in their capacity as the joint official liquidators of Charitable DAF HoldCo, Ltd (In Official Liquidation), of Grant Thornton Specialist Services (Cayman) Limited, 2nd Floor, Century Yard, Cricket Square PO Box 1044, Grand Cayman, Cayman Islands, KY1-1102 (together and each of them severally the **JOLs**).

        (together the **Parties** and each individually a **Party**)

**RECITALS:**

A       **WHEREAS**, the JOLs were appointed as official liquidators of Charitable DAF HoldCo, Ltd (In Official Liquidation) (the **Company**) pursuant to an order of Justice Jalil Asif KC of the Grand Court of the Cayman Islands dated 6 May 2025

B       **WHEREAS**, the Company was previously the sole limited partner of Charitable DAF Fund, LP (the **Fund**), a Cayman Islands exempted limited partnership. The Company's valuable interest in the Fund was transferred to a third party in December 2024 (the **Disposal**)

C       **WHEREAS**, following the Disposal, the Company is believed to have no, or very limited, liquid assets

D       **WHEREAS**, the JOLs require funding to, among other things meet the Remuneration and Expenses incurred by the JOLs up to and including Effective Date (defined below) in connection with: (i) the conduct of the liquidation of the Company; (ii) pursuing proceedings in the Cayman Islands for and on behalf of the Company against the Company's former directors and entities under their control in connection with the Disposal (the **Claim**); and (iii) obtain ancillary relief in the United States in support of the Claim, and the Funder desires to extend limited funding to the JOLs for these purposes on the terms below

E       **NOW, THEREFORE**, in consideration for the mutual agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

**AGREED TERMS**

**1       CONSTRUCTION**

1.1     For purposes of this Agreement, capitalised terms shall have the meanings set forth herein and in Section 2 below.

2

1.2     Headings are for information only and do not form part of the operative provisions of this Agreement.

1.3     References to this Agreement include references to the Recitals.

1.4     In this Agreement, unless a clear contrary intention appears:

(a)     words denoting the singular include the plural and vice versa;

(b)     words denoting any gender include all genders;

(c)     all references to "$" or dollars shall mean U.S. Dollars;

(d)     the word "or" shall include both the adjunctive and the disjunctive meaning thereof; and

(e)     the words "include," "includes," and "including" shall be deemed to be followed by the phrase "without limitation."

1.5     The terms of this Agreement have been negotiated between the Parties in an arms' length transaction with the advice of counsel and shall not be construed for or against either Party by reason of the drafting or preparation hereof.

## 2     DEFINITIONS

The following terms shall have the meanings given below:

2.1     **"Agreement"** means, collectively, this Agreement, together with all exhibits, schedules and amendments hereto, including all documents expressly incorporated herein by reference.

2.2     **"Affiliate"** means as to any Person (i) any other Person that directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person or its respective successors or (ii) if such Person is an individual, a spouse, parent, sibling, or descendant of such Person, or a trust over which such Person has sole investment and dispositive power for the benefit of such Person, spouse, parent, sibling, or descendant. The term "control" including the terms "controlling," "controlled by," and "under common control with" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting shares, by contract, or otherwise. Affiliates include such entities whether now existing or later established by investment, merger, or otherwise, including the successors and assigns of such Person.

2.4     **"Business Day"** means any day except any Saturday, any Sunday, and any day that is a federal legal holiday in the United States and any public holiday in the Cayman Islands.

3

2.5 **"Counsel"** means any barrister(s) who have been or are to be instructed to represent the JOLs in respect of the Claim, or such other barrister or barristers as may be instructed in respect of the Claim from time to time.

2.6 **"Court"** means the Grand Court of the Cayman Islands.

2.7 **"Defendant(s)"** means any Person against which Litigation is brought or threatened.

2.8 **"Documents"** means documents in the possession of the JOLs arising in and relating to the Claim and includes without limitation copies of:-

   (i) pleadings, orders, judgments, disclosure lists, disclosed documents, witness statements, affidavits, written submissions, notes of oral submissions, and costs schedules;

   (ii) correspondence passing between the JOLs and/or the Legal Practitioner (on the one hand) and the Defendants and/or the Defendants' lawyers (on the other hand);

   (iii) any advice or notes of advice given by the Legal Practitioner and/or Counsel and/or any other lawyers instructed by the JOLs in relation to the Claim; and

   (iv) instructions to and correspondence with and from, and reports and drafts of reports prepared by, expert witness or potential witnesses.

2.9 **"Investigation"** means the work done by the JOLs to consider relief that may be sought by the Company in respect of (amongst other things) the Disposal.

2.10 **"Legal Practitioner"** means any firm of attorneys who has been retained to represent the JOLs in respect of the Claim and/or such other firm of attorneys as may be retained by the JOLs from time to time.

2.11 **"Litigation"** includes the Claim and any other court or arbitration proceedings, suits or actions (including any interim or ancillary proceedings or interlocutory applications) brought by the JOLs (whether acting in the name of the Company or the JOLs), and whether within or outside the United States, including in any U.S. district court and the courts of the Cayman Islands.

2.12 **"Person"** means any individual, firm, company, corporation, partnership, limited liability company, sole proprietorship, government, state, or agency, or subdivision of a state (or governmental entity), or any association, trust, joint venture, or consortium (whether or not having separate legal personality).

2.13 **"Recovered Assets"** means assets over which the JOLs obtain control for the benefit of the Company on and from the Effective Date.

2.14 **"Representative"** means the employees, officers, directors, partners, members, shareholders, co-investors, potential co-investors, agents, advisors, consultants, accountants, attorneys, trustees, or authorised representatives of a Party.

2.15 **"Settlement"**  means any agreement between the JOLs and any one or more Defendants and/or any third party in settlement of the Claim or any part of the Claim including with respect to costs (including interim costs), including any agreement by the JOLs with any Defendant or any other third party to abandon or withdraw the Claim or to discontinue or stay the Claim.

2.16 **"Taxes"** means any non-U.S., U.S. federal, state, provincial, territorial, local, municipal, or other governmental taxes, duties, levies, fees, excises, or tariffs, arising as a result of or in connection with any amounts of property received or paid under this Agreement, including: (i) any state or local sales or use taxes; (ii) any import, value-added, consumption, or similar tax; (iii) any business transfer tax; (iv) any taxes imposed or based on or with respect to or measured by any net or gross income or receipts of any of the Parties; (v) any withholding or franchise taxes, taxes on doing business, gross receipts taxes or capital stock or property taxes; or (vi) any other tax now or hereafter imposed by any governmental or taxing authority on any aspect of this Agreement, the Recoveries

## 3    EFFECTIVE DATE

This Agreement shall be conditional upon and take effect from the date of an order from the Court sanctioning the JOLs to enter into (and to cause the Company to enter into) this Agreement (the **Effective Date**).

## 4    FUNDING ARRANGEMENT

4.1 Subject to Section 4.2 and the terms and conditions of this Agreement, the Funder hereby agrees to pay a lump sum of ▮▮▮▮▮▮ to the JOLs within 7 Business Days of the Effective Date ▮▮▮▮▮▮▮▮▮ for the purpose of meeting:

   (a)    the remuneration of the JOLs (the **Remuneration**); and

   (b)    the expenses and disbursements properly and reasonably incurred by the JOLs (the **Expenses**),

within the meaning of those terms under Rule 1(1)(h) and Rule 1(1)(k) respectively of Order 20 of the Companies Winding Up Rules (2023 Consolidation) (the **CWR**).

4.2 The Parties agree and acknowledge that the ▮▮▮▮▮▮ is provided by the Funder for the specific purpose of only paying the:

   (a)    Remuneration; and

   (b)    Expenses relating to any Legal Practitioner or Counsel (including any disbursements incurred or paid by any Legal Practitioner or Counsel in connection with the Claim).

5



6



7

6.8     The Funder's written consent shall be required for the negotiation, settlement, or compromise of payment obligations under Section 6.6, such written consent to be provided by Funder in its sole discretion.

**7       Third Party Costs / Cross Undertaking.**

The Parties acknowledge that the courts of the Cayman Islands and other jurisdictions may require the JOLs, when seeking any interim order in any Litigation, to pay the reasonable costs of any innocent third party in complying with such an order ("**Innocent Party Costs**"), or to offer a cross undertaking in damages as a condition of obtaining an order ("**Cross Undertaking**"). The Funder agrees that it will pay any Innocent Party Costs incurred and provide (if so required) any Cross Undertaking, and will, if so ordered, provide security for any such Cross Undertaking in the sum and on the terms ordered by the Court.

**8       RECOVERIES**

8.1     In the event that the JOLs recover any unencumbered assets to which the Company is beneficially entitled in a cumulative amount equal to or exceeding ▮▮▮▮▮▮▮▮ (**Threshold Amount**) such that the Company has assets lawfully and properly available (as reasonably determined by the JOLs), any amount in excess of the Threshold Amount shall be paid to the Funder in the following priority:

(a)     first, the Remuneration and Expenses paid by the Funder will be repaid to it by the JOLs: (i) in priority to the claims of creditors and contributories of the Company, in accordance with section 109 of the Companies Act (As Revised); and (ii) as an expense of the liquidation under Rule 1(1)(h) or 1(1)(k) of Order 20 of the CWR, until the Funder has received one-hundred percent (100%) of the aggregate amount paid by it under this Agreement; and

(b)     second:

(i)     if the Recovered Assets exceed US$50million, the Funder shall receive an additional 10% of the amount paid by the Funder pursuant to this Agreement;

(ii)    if the Recovered Assets exceed US$100million, the Funder shall receive an additional 20% of the amount of the amount paid by the Funder pursuant to this Agreement; and

(iii)   if the Recovered Assets exceed US$270million, the Funder shall receive an additional 30% of the amount paid by the Funder pursuant to this Agreement.

8.2     The JOLs shall be permitted to retain any amount less than or equal to the Threshold Amount for the purpose of meeting outstanding and future Remuneration and Expenses of the JOLs.

8.3    To the extent that the JOLs do not use part or all of the Threshold Amount to meet their Remuneration and Expenses, any remaining amount shall be paid to the Funder in accordance with Section 8.1.

## 9    INFORMATION AND ACCESS

9.1    This Section 9 shall remain in force from the date of this Agreement for so long as any amount remains payable to the Funder and under Section 7.

9.2    The JOLs shall:

(a)    keep the Funder regularly informed of all developments in the Claim as soon as reasonably practicable and in any event within seven (7) Business Days, including but not limited to:

(i)    any development that may have an impact on the cost budgeting or outcome of the Claim, ███████████████████████████████████;

(ii)    the progress of any Settlement discussions or any Settlement offer with the other parties to the Claim, howsoever made or raised, including developments before, during and after any alternative dispute resolution;

(iii)    any pre-action or interlocutory (or equivalent) application it intends to make or which is threatened or made by a Defendant in respect of the Claim;

(iv)    any hearing that is listed in the Claim; and/or

(v)    any change in the Legal Practitioner's or Counsel's appraisal of the JOLs' prospects of success in the Claim, as a whole or in respect of any part or stage of the Claim.

9.3    <u>Matter Monitoring:</u>  The JOLs shall keep Funder reasonably informed of the progress of the assertion of the Claims and shall provide Funder access to all non-privileged information and Documents, including, without limitation (but subject to any confidentiality or sealing orders) (i) reports on settlement negotiations, settlement agreements, electronic copies of all pleadings, court filings, notices of hearings, rulings or orders, and all other non-privileged information as soon as practicable after receipt or creation of such information; (ii) oral status reports as may be reasonably requested by Funder from time to time; and (iii) and timely disclosure of important documents and material events or changes regarding the Claim. Funder understands that the timing and scope of its requests must be reasonable given the activity in the Claim, and Funder shall not make requests or demands that will interfere with the JOLs' obligations to the Court or with respect to the Claim. The JOLs shall not be obligated to provide access to documents or information the disclosure of which would violate any order by a court or tribunal, confidentiality or sealing order, or agreement governing confidentiality or non-disclosure.

9

9.4   <u>Privileged Consultation.</u> It is the intent of the Parties that the communications and exchanges of information between Funder and the JOLs shall be regarded as subject to litigation privilege and not subject to disclosure to any third-party not a Party to this Agreement. Pursuant to such litigation privilege, the JOLs agree (subject to any orders of the Court) to notify (but not invite comment from) the Funder with respect to: (i) any filings with respect to the Claim prior to such material being filed with the court, including providing Funder with an opportunity to review such filings prior to its being filed; and (ii) material strategy decisions with respect to the Claim.

9.5   <u>No Control</u>. The Funder agrees that subject to the approval rights expressly granted to the Funder under this Agreement, the JOLs are free to act as they see fit, provided that such conduct is not inconsistent with their legal and statutory duties, and the JOLs are under no obligation to take or refrain from taking any action requested by Funder relating to the Claim or any further Investigations or Litigation.

## 10   CONFIDENTIALITY

10.1   Each Party agrees that it will treat as confidential and, save as expressly authorised by this Agreement, will not disclose to any third party without the express prior written approval of each of the other Party, or unless required by applicable law or regulations of any governmental or regulatory authority or ordered to do so by a court of competent jurisdiction, any information or documentation in connection with this Agreement and that it will treat as confidential (and subject to common interest privilege (which it will take all reasonable steps to maintain)) all communications between itself and the JOLs and/or the Legal Practitioner (including communications pre-dating the date of this Agreement).

10.2   Notwithstanding Section 10.1, any Party may disclose such information or documentation in connection with this Agreement to its Affiliate or its Affiliate's directors, officers, employees, advisers, agents, representatives and providers of finance, provided that each Party shall procure that each such person to whom such information is so disclosed shall comply with the undertakings in this Section, and will be responsible for any failure by such persons to do so. The Parties may also make such disclosure:

   (b)   to any entity to whom a Party considers disclosure is necessary in order to give effect to this Agreement and that Party's obligations pursuant to Sections 3 and 4;

   (c)   ███████████████████████████████████████████  or

   (d)   to parties whom, and to the extent that, information is required to be disclosed by any applicable law, regulation or court order.

10.3   The Parties agree and acknowledge that the provision of privileged information and documents to Funder, and any reference in this Agreement to materials that are or may be privileged and/or confidential, is not intended to diminish and shall not waive or diminish in any way the confidentiality and privilege that subsists in them.

10.4    Each Party shall use all reasonable endeavours to procure that each Party to whom disclosure of information is made will put in place reasonable measures to maintain the confidentiality and privilege of the same.

10.5    Each Party shall inform the other Parties as soon as reasonably practicable of any application or request by a third party for the disclosure (not otherwise permitted in this Section 10) of any information or documentation in connection with this Agreement and, unless each other Party consents to such disclosure, agrees to resist such disclosure and assert to the maximum extent possible claims to confidentiality, common interest privilege and/or legal professional privilege

## 11    TERMINATION

This Agreement shall terminate upon the later of the conclusion of the liquidation of the Company as ordered by the Court or the re-payment of all amounts to the Funder as required under this Agreement.

## 12    GOVERNING LAW AND JURISDICTION

This Agreement is governed by the laws of the Cayman Islands.  Each Party irrevocably agrees that the Courts of the Cayman Islands shall have exclusive jurisdiction to hear and decide any suit, action or proceedings, and/or to settle any disputes, which may arise out of or in any way relate to this Deed or its formation.

## 13    TAXES

13.1    All Taxes shall be the financial responsibility of the Party obligated to pay such Taxes as determined by applicable law and no Party is or shall be liable at any time for any of the other Parties' Taxes incurred in connection with or related to amounts paid under this Agreement. The JOLs acknowledge that all amounts advanced to them under this Agreement by Funder are eligible to be claimed as charitable contributions under the U.S. Internal Revenue Code.

13.2     The JOLs agree to cooperate with Funder with respect to provision and/or execution of any documents or information reasonably requested by Funder to (i) evidence the amounts paid under this Agreement and (ii) evidence the charitable intent and nature of any amounts paid under this Agreement.

## 14    MISCELLANEOUS

14.1    No Personal Liability of the JOLs. The JOLs execute this Agreement solely in their capacity as official liquidators of the Company and assume no personal liability under the terms of this Agreement.

14.2    Entire Agreement and Amendments. This Agreement constitutes the entire agreement between the Parties with respect to the matters covered herein and supersede all prior agreements, promises, representations, warranties, statements, and understandings with respect to the subject matter hereof as between the Parties. This Agreement may not be

amended, altered, or modified except by an amendment or supplement to this Agreement executed by all Parties hereto.

14.3    <u>Partial Invalidity; Severability.</u> If, at any time, any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under any law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions nor the legality, validity or enforceability of such provisions under the law of any other jurisdiction shall in any way be affected or impaired.

14.4    <u>Remedies and Waivers.</u> No failure to exercise, nor any delay in exercising, on the part of any Party hereto, of any right or remedy under this Agreement shall operate as a waiver, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise or the exercise of any other right or remedy. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights or remedies provided by law. No provision of this Agreement may be waived except in writing signed by the Party granting such waiver.

14.5    <u>Assignment.</u> No Party may assign or delegate their rights or obligations under this Agreement without the prior written consent of all other parties to this Agreement.

14.6    <u>Notices.</u>

(a)    all notices, reports and other communications required or permitted under this Agreement shall be in writing. They shall be delivered by hand or sent by regular mail, courier, email or other reliable means of electronic communication to the Parties at their addresses indicated below or at such other address as may be specified hereafter in writing by any of the Parties to the other Party in accordance with this Section(a).

| <u>JOLs</u><br>Margot MacInnis and Sandipan Bhowmik in their capacity as the joint official liquidators of Charitable DAF HoldCo, Ltd (In Official Liquidation)<br>2nd floor, Century Yard,<br>Cricket Square<br>PO Box 1044<br><br>Grand Cayman, KY1-1102<br>margot.macinnis@uk.gt.com<br>sandipan.bhowmik@uk.gt.com<br><br>With copy to:<br>Maples and Calder (Cayman) LLP<br>PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands<br>caroline.moran@maples.com<br>justin.naidu@maples.com | <u>Funder</u><br>Crossvine Litigation Funding<br>C/O Services Cayman Limited, P.O. Box 10008, Willow House, Cricket Square, Grand Cayman, KY1-1001, Cayman Islands<br><br>With copy to:<br>Ogier (Cayman) LLP<br>89 Nexus Way Camana Bay<br>christopher.levers@ogier.com or<br>nour.khaleq@ogier.com |
|---|---|

App. 163

|  |  |
|  |  |
|  |  |

(b)    any notice, report or other communication hereunder shall be deemed to have been delivered and received (i) on the date delivered, if delivered personally by hand or sent by courier, (ii) on the date sent, if sent by email or other form of electronic communication provided that confirmation of delivery is received by the sending party, and (iii) five (5) Business Days after mailing, if placed in the U.S. mail, by registered or certified mail, first class postage prepaid, with a request for a confirmation of delivery.

(c)    any notice, report or other communication sent under this Agreement that is sent by fax, email or other electronic communication must be confirmed by sending a hard paper copy thereof to the recipient in accordance with subsection (a) above, provided, the effective date of such notice, report or other communication shall be as specified in subsection (b) above. If the recipient actually received a fax, email or other electronic form of a notice, report or other communication, then the notice, report or other communication shall be deemed to have been given and delivered even if the sender fails to send a hard copy as called for in this subsection or the sender does not receive a confirmation of delivery under subsection (b)(ii) above.

14.7    <u>No Presumption Against Drafter.</u> This Agreement has been negotiated by the Parties and their respective counsel and will be fairly interpreted in accordance with its terms and without any strict construction in favour of or against a Party.

14.8    <u>Counterparts.</u> This Agreement may be executed in counterparts which, when read together, shall constitute a single instrument, and this has the same effect as if the signatures on the counterparts were on a single copy hereof.

14.9    <u>No Third-Party Beneficiaries.</u> This Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

***************REMAINDER OF PAGE INTENTIONALLY LEFT BLANK***************

13

App. 164

**IN WITNESS WHEREOF –**

The Parties execute this Agreement effective as of the Effective Date.

**Funder: Crossvine Litigation Funding, LLC**

By: _____

Name: Scott Ellington

Title: Manager

**JOLs: Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators of Charitable DAF HoldCo, Ltd.**

By: _____

Name: Margot MacInnis

Title: Joint Official Liquidator

14

App. 165

# EXHIBIT 7



Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

Filing Fee: $300

**Certificate of Formation
Limited Liability Company**

**Filed in the Office of the
Secretary of State of Texas
Filing #: 805984614 04/08/2025
Document #: 1468771430003
Image Generated Electronically
for Web Filing**

### Article 1 - Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

### Crossvine Holdings, LLC

### Article 2 – Registered Agent and Registered Office

☑A. The initial registered agent is an organization (cannot be company named above) by the name of:

### Capitol Corporate Services, Inc.

### OR

☐B. The initial registered agent is an individual resident of the state whose name is set forth below:

C. The business address of the registered agent and the registered office address is:

**Street Address:**
**1501 S. Mopac Expy., Ste. 220   Austin  TX  78746**

### Consent of Registered Agent

☑A. A copy of the consent of registered agent is attached. **Crossvine Holdings, LLC.pdf**

### OR

☐B. The consent of the registered agent is maintained by the entity.

### Article 3 - Governing Authority

☑A. The limited liability company is to be managed by managers.

### OR

☐B. The limited liability company will not have managers. Management of the company is reserved to the members.

The names and addresses of the governing persons are set forth below:

Manager 1: **Scott    Ellington**                                    Title: **Manager**

Address: **2101 Cedar Springs Rd., Ste. 1200   Dallas  TX, USA  75201**

### Article 4 - Purpose

The purpose for which the company is organized is for the transaction of any and all lawful business for which limited
liability companies may be organized under the Texas Business Organizations Code.

### Supplemental Provisions / Information

[The attached addendum, if any, is incorporated herein by reference.]

### Initial Mailing Address

Address to be used by the Comptroller of Public Accounts for purposes of sending tax information.

The initial mailing address of the filing entity is:

**2101 Cedar Springs Rd., Suite 1200**
**Dallas, TX 75201**
**USA**

### Organizer

The name and address of the organizer are set forth below.

**Scott Ellington**          **2101 Cedar Springs Rd., Ste. 1200, Dallas, TX 75201**

### Effectiveness of Filing

☑A. This document becomes effective when the document is filed by the secretary of state.

### OR

☐B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is:

### Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

**Scott Ellington**

Signature of Organizer

**FILING OFFICE COPY**

**Form 401-A**
**(Revised 12/09)**



**Acceptance of Appointment**
**and**
**Consent to Serve as Registered Agent**
**§5.201(b) Business Organizations Code**

The following form may be used when the person designated as registered agent in a registered agent filing is an individual.

<u>Acceptance of Appointment and Consent to Serve as Registered Agent</u>

I acknowledge, accept and consent to my designation or appointment as registered agent in Texas for

*Name of represented entity*

I am a resident of the state and understand that it will be my responsibility to receive any process, notice, or demand that is served on me as the registered agent of the represented entity; to forward such to the represented entity; and to immediately notify the represented entity and submit a statement of resignation to the Secretary of State if I resign.

**x:** _____

*Signature of registered agent*　　　　　*Printed name of registered agent*　　　*Date (mm/dd/yyyy)*

The following form may be used when the person designated as registered agent in a registered agent filing is an organization.

<u>Acceptance of Appointment and Consent to Serve as Registered Agent</u>

I am authorized to act on behalf of　Capitol Corporate Services, Inc.

*Name of organization designated as registered agent*

The organization is registered or otherwise authorized to do business in Texas. The organization acknowledges, accepts and consents to its appointment or designation as registered agent in Texas for:

Crossvine Holdings, LLC

*Name of represented entity*

The organization takes responsibility to receive any process, notice, or demand that is served on the organization as the registered agent of the represented entity; to forward such to the represented entity; and to immediately notify the represented entity and submit a statement of resignation to the Secretary of State if the organization resigns.

**x:** *Geneva Harris* 　　Geneva Harrison, Asst. Sec. on behalf
　　　　　　　　　　　　　　of Capitol Corporate Services, Inc.　　04/08/2025

*Signature of person authorized to act on behalf of organization*　*Printed name of authorized person*　*Date (mm/dd/yyyy)*

Form 401-A　　　　　　　　　　　3

# EXHIBIT 8

| Form 202 | | |
|---|---|---|
| Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>Filing Fee: $25 | <br>**Certificate of Formation<br>Nonprofit Corporation** | **Filed in the Office of the<br>Secretary of State of Texas<br>Filing #: 805986556 04/10/2025<br>Document #: 1469596750002<br>Image Generated Electronically<br>for Web Filing** |

## Article 1 - Corporate Name

The filing entity formed is a nonprofit corporation. The name of the entity is :

## Crossvine Foundation

## Article 2 – Registered Agent and Registered Office

☑A. The initial registered agent is an organization (cannot be corporation named above) by the name of:

**Capitol Corporate Services, Inc.**

### OR

☐B. The initial registered agent is an individual resident of the state whose name is set forth below:

C. The business address of the registered agent and the registered office address is:

Street Address:
**1501 S. Mopac Expy., Ste. 220   Austin  TX  78746**

### Consent of Registered Agent

☑A. A copy of the consent of registered agent is attached. **CS Registered Agent Consent.PDF**

### OR

☐B. The consent of the registered agent is maintained by the entity.

## Article 3 - Management

☐ A. Management of the affairs of the corporation is to be vested solely in the members of the corporation.

### OR

☑ B. Management of the affairs of the corporation is to be vested in its board of directors. The number of directors, which must be a minimum of three, that constitutes the initial board of directors and the names and addresses of the persons who are to serve as directors until the first annual meeting or until their successors are elected and qualified are set forth below.

Director 1: **Scott    Ellington**                                      Title: **Director**

Address: **2101 Cedar Springs Road, Ste. 1200   Dallas  TX, USA  75201**

Director 2: **Gabriel     Pardo**                                       Title: **Director**

Address: **2101 Cedar Springs Road, Ste. 1200   Dallas  TX, USA  75201**

Director 3: **Giancarlo     Stanton**                                   Title: **Director**

Address: **2101 Cedar Springs Road, Ste. 1200   Dallas  TX, USA  75201**

## Article 4 - Organization Structure

☐ A. The corporation will have members.

or

☑ B. The corporation will not have members.

## Article 5 - Purpose

The corporation is organized for the following purpose or purposes:
**The Corporation is organized and shall be operated exclusively for charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the Code), or corresponding provisions of any subsequent federal tax laws. The general purposes for which the Corporation is organized**

App. 171

are to receive and maintain a fund or funds of property and, subject to the restrictions and limitations hereinafter set forth, to use and apply the whole or any part of the income therefrom and the principal thereof exclusively for charitable, religious, scientific, literary, or educational purposes either directly or by contributions to organizations described in Section 501(c)(3) and exempted from taxation under Section 501(a) of the Code and the Regulations thereunder.

### Supplemental Provisions / Information

See attached Addendum for:
Article 6 Foundation Limitations;
Article 7 No Corporate Shares; and
Article 8 Liability and Indemnity of Directors.

[The attached addendum, if any, is incorporated herein by reference.]

Addendum.pdf

### Effectiveness of Filing

☑A. This document becomes effective when the document is filed by the secretary of state.

**OR**

☐B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is:

### Initial Mailing Address

Address to be used by the Comptroller of Public Accounts for purposes of sending tax information.

The initial mailing address of the filing entity is:
2101 Cedar Springs Road, Ste. 1200
Dallas, TX 75201
USA

### Organizer

The name and address of the organizer are set forth below.

Scott Ellington        2101 Cedar Springs Road, Ste. 1200, Dallas, Texas 75201

### Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Scott Ellington
Signature of organizer.

FILING OFFICE COPY

**Addendum to Form 202 Certificate of Formation**
**Nonprofit Corporation**
**Crossvine Foundation**

### Article 6 – Foundation Limitations

**A.**    No part of the net earnings of the Corporation shall inure to the benefit of any director, trustee, or officer of the Corporation or of any private individual (except that reasonable compensation may be paid for services rendered to or for the Corporation affecting one or more of its purposes), and no director, trustee, or officer of the Corporation or private individual shall be entitled to share in the distribution of any of the corporate assets upon dissolution of the Corporation. No substantial part of the activities of the Corporation shall consist of activities which do not further the Corporation's exempt purposes or of the carrying on of propaganda or otherwise attempting to influence legislation. The Corporation shall not participate or intervene (including the publication or distribution of statements) in any political campaign on behalf of any candidate for public office.

**B.**    Upon dissolution of the Corporation, the assets of the Corporation shall be distributed exclusively to charitable, religious, scientific, or educational organizations that would then qualify under the provisions of § 501(c)(3) and §§ 509(a)(1), (a)(2), or (a)(3) of the Code and the Regulations thereunder as they now exist or as they may be amended.

**C.**    The Corporation shall distribute its income for each taxable year at such time and in such manner as not to become subject to the tax on undistributed income imposed by § 4942 of the Code or corresponding provisions of any subsequent federal tax laws.

**D.**    The Corporation shall not engage in any act of self-dealing as defined in § 4941(d) of the Code or corresponding provisions of any subsequent federal tax laws.

**E.**    The Corporation shall not retain any excess business holdings as defined in § 4943(c) of the Code or corresponding provisions of any subsequent federal tax laws.

**F.**    The Corporation shall not make any investments in such manner as to subject it to tax under § 4944 of the Code or corresponding provisions of any subsequent federal tax laws.

**G.**    The Corporation shall not make any taxable expenditures as defined in § 4945(d) of the Code or corresponding provisions of any subsequent federal tax laws.

**H.**    The Corporation is intended to be an organization defined in § 509(a) of the Code.

### Article 7 – No Corporate Shares

The Corporation shall have no stock or shares.

### Article 8 – Liability and Indemnity of Directors

A Director of the Corporation shall not be liable to the Corporation for monetary damages for an act or omission in the individual's capacity as a Director, except for liability (i) for any breach of the Director's duty of loyalty to the Corporation; (ii) for acts or omissions which are not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) for any transaction from which the Director received an improper benefit, whether or not the benefit resulted from an action taken within the scope of the Director's office; or (iv) for acts or omissions for which the liability of a Director is expressly provided by the Act or any other statute of the State of Texas. This provision shall in no way limit or relieve a Director of any liability for federal excise taxes under Chapter 42 of the Code.

The Corporation shall have the power to indemnify the directors, officers, employees, and agents of the Corporation and to purchase liability insurance for those persons as, and to the extent, permitted by the Act or any other statute of the State of Texas.

**Form 401-A**
**(Revised 12/09)**



### Acceptance of Appointment
### and
### Consent to Serve as Registered Agent
### §5.201(b) Business Organizations Code

The following form may be used when the person designated as registered agent in a registered agent filing is an individual.

---

Acceptance of Appointment and Consent to Serve as Registered Agent

I acknowledge, accept and consent to my designation or appointment as registered agent in Texas for

*Name of represented entity*

I am a resident of the state and understand that it will be my responsibility to receive any process, notice, or demand that is served on me as the registered agent of the represented entity; to forward such to the represented entity; and to immediately notify the represented entity and submit a statement of resignation to the Secretary of State if I resign.

x:

| *Signature of registered agent* | *Printed name of registered agent* | *Date (mm/dd/yyyy)* |

---

The following form may be used when the person designated as registered agent in a registered agent filing is an organization.

---

Acceptance of Appointment and Consent to Serve as Registered Agent

I am authorized to act on behalf of   Capitol Corporate Services, Inc.

*Name of organization designated as registered agent*

The organization is registered or otherwise authorized to do business in Texas. The organization acknowledges, accepts and consents to its appointment or designation as registered agent in Texas for:

Crossvine Foundation

*Name of represented entity*

The organization takes responsibility to receive any process, notice, or demand that is served on the organization as the registered agent of the represented entity; to forward such to the represented entity; and to immediately notify the represented entity and submit a statement of resignation to the Secretary of State if the organization resigns.

x: *Mary Fink*      Mary Fink, Asst. Sec., on behalf of      04/09/2025
Capitol Corporate Services, Inc.

| *Signature of person authorized to act on behalf of organization* | *Printed name of authorized person* | *Date (mm/dd/yyyy)* |

---

Form 401-A                                3

# EXHIBIT 9

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL<br>MANAGEMENT, L.P.,<br><br>     Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,**<br><br>     **Defendants.** | **Adv. Pro. No. 21-03076-sgj** |

**PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S
EMERGENCY VERIFIED MOTION FOR TEMPORARY RESTRAINING
ORDER, PRELIMINARY INJUNCTION, AND APPOINTMENT OF RECEIVER**

Plaintiff Hunter Mountain Investment Trust ("HMIT") files this Emergency Verified

Motion ("Motion") seeking entry of a temporary restraining order and a preliminary injunction

enjoining Defendants James Dondero, Scott Ellington, Isaac Leventon, Strand Advisors, Inc., The

- 1 -

Get Good Trust, NexPoint Advisors, L.P., Highland Capital Management Fund Advisors, L.P.,

The Dugaboy Investment Trust, Highland Dallas Foundation, Massand Capital LLC, Massand

Capital, Inc., and SAS Asset Recovery, Ltd., (collectively, "<u>Defendants</u>") and those persons acting

in concert or participation with them from secreting, concealing or otherwise transferring any

funds or assets beyond the jurisdiction of this Court that would hinder or prevent the satisfaction

of a potential recovery or judgment awarded to Plaintiff in this adversary proceeding. HMIT also

seeks a mandatory injunction to require Defendants to periodically report to HMIT and the Court

any and all asset transfers regardless of purpose to maintain full and complete transparency.

Defendants have engaged in underhanded conduct for years, as orchestrated by Defendants

Dondero, Ellington and their affiliated entities, and Plaintiff has recently learned that they are

doing so again, this time to deprive the Court of the ability to enforce a judgment in favor of

Plaintiff. Defendants are asset managers, hedge funds, and their affiliates, whose business

operations frequently involve financial transactions in the millions of dollars or more. Defendants

have historically attempted to prop up sham transactions as otherwise legitimate, then used their

intimate familiarity with the civil litigation system to evade judgments in the face of clear liability.

Without question, HMIT is entitled to injunctive relief. A temporary restraining order and/or

preliminary injunction are vitally necessary to preserve the Court's jurisdiction over the

Defendants' assets by preventing their concealment or transfer beyond the Court's reach, thereby

ensuring they remain available to satisfy any judgment herein.

This Motion further requests that the Court appoint a receiver over the assets and property

of the Defendants and authorize the receiver to take control of such assets and property to the

extent necessary to ensure the Defendants' compliance with the injunctive relief requested herein

and to prevent the transfer of assets and property beyond the jurisdiction of the Court.

- 2 -

Unfortunately, given the Defendants' long history of avoiding liability through a complicated web of entities and fraudulent transfers, as well as recent evidence indicating that this pattern and practice of dissipating assets to avoid judgments remains ongoing, neither the Court nor HMIT can have any confidence that this conduct will not continue absent direct supervision.

In support of the Motion, HMIT respectfully incorporates herein, as if fully set forth verbatim, Plaintiff Hunter Mountain Investment Trust's Memorandum of Law in Support of its Emergency Verified Motion for Temporary Restraining Order, Preliminary Injunction and Appointment of Receiver ("<u>Memorandum</u>"), which is being filed contemporaneously with this Motion.

## <u>JURISDICTION AND VENUE</u>

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b).

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

3. The predicates for the relief requested in the Motion are 11 U.S.C. § 105(a), Federal Rule of Bankruptcy Procedure 7065, and Federal Rule of Civil Procedure 65.

4. The requested receivership is authorized, additionally, by Tex. Bus. & Orgs. Code §§ 11.403(a)(3) and 11.410(a), Tex. Bus. & Com. Code § 24.008(a)(3)(B), and/or Tex. Civ. Prac. & Rem. Code §§ 64.001(a)(2) and (a)(7).

## <u>RELIEF REQUESTED</u>

5. HMIT requests that this Court issue the proposed form of restraining order attached hereto as **<u>Exhibit A</u>** ("<u>Proposed Order</u>") pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065.

6.      For the reasons set forth more fully in HMIT's Memorandum, HMIT seeks injunctive relief enjoining Defendants from directly or indirectly, through their affiliated corporate entities or anyone else acting on their behalf or in concert with them, from concealing, secreting or dissipating any assets or otherwise transferring any assets out of the country or beyond the jurisdiction of this Court that would hinder or prevent the satisfaction of a potential recovery or judgment awarded to HMIT in this proceeding. The Court also should enjoin Defendants requiring periodic disclosure of all transfers or dispositions of assets.

7.      HMIT further seeks the appointment of a receiver over the assets and property of the Defendants to ensure that the Defendants' conduct does not continue, as fully authorized by applicable law.

8.      Absent injunctive relief, and the appointment of a receiver to ensure Defendants' compliance, HMIT's ability to obtain the relief requested in this proceeding, which includes equitable relief in the form of the avoidance, recovery and return of fraudulently transferred assets out of the Debtor's estate,[1] will be jeopardized, and the integrity of this lawsuit and the estate assets at issue will be severely threatened. Emergency relief is needed to avoid this immediate and irreparable harm that will be caused to HMIT.

9.      In accordance with Rule 7.1 of the *Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas*, contemporaneously herewith and in support of this Motion, HMIT is submitting its: (a) *Memorandum of Law*, (b) *Proposed Order*, and (c) *Motion for Expedited Hearing on Emergency Motion for a Temporary Restraining Order and Preliminary Injunction* ("Motion to Expedite"). HMIT also provides the Court with the

---

[1] Amended Complaint and Objection to Claims [Doc. 158] ("Amended Complaint").

Verification of Mark Patrick ("Verification") as to the statements made in this Motion and the

Memorandum concerning the facts at issue and the necessity of immediate relief.

10.    As is demonstrated by this Motion, the Memorandum, the Verification, and the

evidentiary materials referenced therein, HMIT is entitled to the relief requested herein as set forth

in the Proposed Order.

11.    Notice of this Motion has been provided to Defendants in compliance with Fed. R.

Civ. P. 65, and HMIT submits that no other or further notice need be provided.

WHEREFORE, HMIT respectfully requests that the Court (i) enter the Proposed Order

substantially in the form annexed hereto as **Exhibit A** granting the relief requested herein, and (ii)

grant HMIT such other and further relief as the Court may deem proper.

Respectfully submitted,

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN
INVESTMENT TRUST**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that, on September 15, 2025, counsel for HMIT emailed counsel for Defendants regarding the relief requested in this Emergency Motion for Temporary Restraining Order, Preliminary Injunction and Appointment of Receiver, and stating that if a response was not received by 2:00 p.m. HMIT would consider Defendants to be opposed. Counsel for HMIT then and conducted a telephone call with counsel for Defendants Dondero, Dugaboy, Nexpoint, and HCMFA, who advised that such Defendants are opposed to the relief requested this Motion, and further stated that they would attempt to coordinate with the other Defendants, but that HMIT should assume the remaining Defendants are also opposed. Accordingly, this Motion is being filed as opposed due to the need for immediate relief.

/s/ *Ian B. Salzer*
Ian B. Salzer

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

/s/ *Ian B. Salzer*
Ian B. Salzer

3204169

# EXHIBIT 10

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL<br>MANAGEMENT, L.P.,<br><br>  Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |

| | |
|---|---|
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST**<br><br>  **Plaintiff,**<br><br>**v.**<br><br>**JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,**<br><br>  **Defendants.** | **Adv. Pro. No. 21-03076-sgj** |

### PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER, <u>PRELIMINARY INJUNCTION, AND APPOINTMENT OF RECEIVER</u>

Plaintiff Hunter Mountain Investment Trust ("<u>HMIT</u>") submits this Memorandum of Law

in Support ("<u>Memorandum</u>") of its Emergency Verified Motion for Temporary Restraining Order,

- i -

Preliminary Injunction, and Appointment of Receiver ("Verified Motion"), pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure and Section 24.008(a)(3)(B) of the Texas Business and Commerce Code, also known as the Texas Uniform Fraudulent Transfer Act ("TUFTA"), seeking to enjoin Defendants James Dondero ("Dondero"), Scott Ellington ("Ellington"), Isaac Leventon ("Leventon"), Strand Advisors, Inc. ("Strand Advisors"), The Get Good Trust ("Get Good"), NexPoint Advisors, L.P. ("NexPoint"), Highland Capital Management Fund Advisors, L.P. ("HCMFA"), The Dugaboy Investment Trust ("Dugaboy"), Highland Dallas Foundation ("HDF"), Massand Capital LLC, Massand Capital, Inc., and SAS Asset Recovery, Ltd. ("SAS") (collectively, "Defendants") from (i) secreting or concealing assets in any manner or otherwise transferring assets out of the country beyond the jurisdiction of this Court that would hinder, frustrate or prevent the satisfaction of a potential recovery or judgment awarded against them in these proceedings; and, (ii) imposing a receivership on Defendants NexPoint, Get Good, HCMFA and Dugaboy pursuant to TUFTA Section 24.008(a)(3)(B). In support, HMIT states:

## TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ................................................................................................v

**I. INTRODUCTION** ..........................................................................................................1

**II. FACTUAL BACKGROUND** ........................................................................................4

**A.**   **Procedural and Substantive Background** ............................................................4

**B.**   **Defendants' Historical Pattern of Diverting and Concealing Assets** ............6

    *The Highland Bankruptcy* ...................................................................................6

    *Dondero Engaged In Misconduct Relating to Acis and Joshua Terry* ............7

    *Dondero and Ellington Fraudulently Induced an Investment from HarbourVest* .........8

    *Willful Misconduct in the Transfer of Highland Capital Credit Strategies Fund's Assets* ...........................................................................................9

    *Willful Misconduct in the Transfer of Highland Crusader Fund's Assets* ......9

    *Dondero and His Accomplices Caused Highland to Engage In Misconduct That Increased Liability To UBS* ..............................................................10

**C.**   **Defendants' Recent Efforts to Transfer and Conceal Assets** .......................11

**III. LEGAL STANDARD** ...............................................................................................13

**A.**   **Injunctive Relief** .................................................................................................13

**B.**   **Receivership** ........................................................................................................14

**IV. ARGUMENT** ..............................................................................................................15

**A.**   **HMIT Will Suffer Irreparable Harm in the Absence of Injunctive Relief** .............15

**B.**   **HMIT Demonstrates Likelihood of Success on the Merits** ...........................18

**C.**   **The Equities Strongly Favor HMIT** .................................................................19

**D.**   **Injunctive Relief Serves the Public Interest** ...................................................20

**E.**   **Appointment of a Receiver** ................................................................................20

**IV. SECURITY** .................................................................................................................22

Case 21-30757-sgj Doc 879-1 Filed 10/09/25 Entered 10/09/25 12:54:08 Desc Main
Memo of Law ISO Preliminary Injection Page 4 of 31
Case 22-03067-sgj Doc 3479-1 Filed 10/09/25 Entered 10/09/25 14:03:49 Desc Main
Document Page 190 of 376    Page 4 of 31

**V. CONCLUSION** ................................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*35 Bar & Grille, LLC v. City of San Antonio*, 943 F. Supp. 2d 706 (W.D. Tex. 2013) ................ 18

*Akin, Gump, Strauss, Hauer and Feld, L.L.P. v. E-Court, Inc.*, 2003 Tex. App. LEXIS 3966 (Tex. App.—Austin May 8, 2003, no pet.) ..................................................................................... 21

*Amegy Bank N.A. v. Monarch Flight II, LLC*, No. 4:11-CV-3218, 2011 U.S. Dist. LEXIS 140874 (S.D. Tex. Dec. 7, 2011) ................................................................................................... 16

*Bank of Am., N.A. v. Mega World Builder Corp.*, No. 4:24-CV-3021, 2024 U.S. Dist. LEXIS 203763 (S.D. Tex. Nov. 8, 2024) ........................................................................................ 16

*Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733 (N.D. Tex. 2008) ..................................... 21

*Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300 (5th Cir. 1978) ..................................... 22

*Craig v. McCarty Ranch Trust (In re Cassidy Land and Cattle Co.)*, 836 F.2d 1130 (8th Cir. 1988) ................................................................................................................................. 15

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579 (5th Cir. 2013) ....... 15

*Green v. Wells Fargo Bank, N.A.*, 575 Fed. Appx. 322 (5th Cir. 2014) ...................................... 14

*In re Compton Corp.*, 90 B.R. 798 (Bankr. N.D. Tex. 1988) ................................................... 14

*In re FiberTower Network Servs. Corp.*, 482 B.R. 169 (Bankr. N.D. Tex. 2012) .................. 13, 20

*In re Hunt*, 93 B.R. 484 (Bankr. N.D. Tex. 1988) ............................................................. 15, 20

*In re Memorial Estates, Inc.*, 797 F.2d 516 (7th Cir. 1986) .................................................... 15

*In re OGA Charters, LLC*, 554 B.R. 415 (Bankr. S.D. Tex. 2016) ....................................... 13, 20

*In re Seatco, Inc.*, 259 B.R. 279 (Bankr. N.D. Tex. 2001) ..................................................... 14

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2010) ................................................. 15, 16, 17, 18

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996) ................................................... 22

*Louisiana v. Becerra*, 20 F.4th 260 (5th Cir. 2021) .............................................................. 14

*Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618 (5th Cir. 1985) ...................... 13

*Moore v. Brown*, 868 F.3d 398 (5th Cir. 2017) ................................................................... 14

*Nobelman v. American Savings Bank*, 508 U.S. 324 (1993) ................................................... 15

*Prep Sols., Ltd v. Lecht*, 2022 U.S. Dist. LEXIS 98756 (E.D. Tex. June 2, 2022) ...................... 16

*S. Texas Lighthouse for the Blind, Inc. v. Fed. Supply Servs. Int'l, Inc.*, 2020 U.S. Dist. LEXIS 157347 (S.D. Tex. Aug. 28, 2020) ..................................................................................... 17

*Sargeant v. Al Saleh*, 512 S.W.3d 399 (Tex. App.—Corpus Christi 2016, no pet.) ..................... 17

*SEC v. Barton*, 135 F.4th 206 (5th Cir. 2025) ..................................................................... 16

*Sharp v. SSC Farms I, LLC (In re SK Foods, L.P.)*, 2010 Bankr. LEXIS 6445 (E.D. Cal. April 5, 2010) ............................................................................................................................. 17, 18

*Star Satellite, Inc. v. City of Biloxi*, 779 F.2d 1074 (5th Cir. 1986) .......................................... 14

*Titlemax of Tex., Inc. v. City of Dall.*, 142 F.4th 322 (5th Cir. 2025) ..................................... 18

*Triadou SPV S.A. v. Chetrit*, 2021 WL 3290834, at *9 (Sup. Ct. N.Y. Cnty. Aug. 2, 2021) ....... 10

*Tujague v. Adkins*, No. 4:18-CV-631, 2018 U.S. Dist. LEXIS 171394 (E.D. Tex. 2018) ...... 16, 17

*Turnkey Offshore Project Servs., LLC v. JAB Energy Solutions, LLC*, 2021 U.S. Dist. LEXIS 149733 (E.D. La. Aug. 10, 2021) ....................................................................................... 17

*Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311 (1st Cir. 1988) ........................................ 14

*Walker v. Doe*, No. 6:24-cv-00633-ADA, 2025 U.S. Dist. LEXIS 100396 (W.D. Tex. 2025) 16, 17

**Statutes**

11 U.S.C. § 105 .......................................................................................................... 13, 14, 15

11 U.S.C. § 544 ................................................................................................................... 20

11 U.S.C. § 548 ................................................................................................................... 20

11 U.S.C. § 550 ........................................................................................................... 20

26 U.S.C. § 6502 ......................................................................................................... 20

N.Y. C.P.L.R. § 5225 .................................................................................................. 10

Tex. Bus. & Comm. Code § 24.008 ........................................................... ii, 4, 22, 23

Tex. Bus. Orgs. Code § 11.403 ................................................................................... 23

Tex. Bus. Orgs. Code § 11.410 ................................................................................... 24

Tex. Civ. Prac. & Rem. Code § 64.001 ...................................................................... 23

**Rules**

Fed. R. Bankr. P. 7065 ..................................................................................... ii, 13, 14

Fed. R. Civ. P. 65(c) .......................................................................................... 13, 14, 22

## I.
## INTRODUCTION

1.      Dondero and Ellington, and the other Defendants which they control or with which they are closely allied, are preparing for imminent reckonings, and they are using their affiliated entities to secrete and conceal assets that would otherwise be available to satisfy a judgment against them in this adversary proceeding. After decades of avoiding accountability through a "byzantine" web of entities and fraudulent transfers, the walls are finally closing in on Defendants.

2.      There are two such reckonings on the immediate horizon. First, this adversary proceeding, alone, seeks to impose hundreds of millions of dollars of liability on Dondero and Ellington, individually, as well as entities they control. HMIT recently reactivated this adversary proceeding after a two-year stay.[1] Dondero and other Defendants aggressively opposed HMIT's acquisition of the rights to prosecute this adversary proceeding and, now, fully realizing the stay would be lifted, opposed HMIT's substitution as Plaintiff.[2]

3.      The other immediate reckoning is the oral argument now scheduled for September 22, 2025, in a turnover case brought by UBS—one of Highland's largest original creditors[3]—seeking to hold Dondero and Ellington personally liable for over $1.4 billion in damages and accrued interest related to an underlying transaction involving Highland Capital Management, L.P. ("Highland").[4] UBS seeks to hold Dondero and Ellington accountable for

---

[1] HMIT's notice to lift stay was served on Wednesday, September 3, 2025 [Doc. 375].

[2] *See* Objection of NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P. to Motion to Substitute [Doc. 364]; Joinder to Objection of NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P. to Motion to Substitute [Doc. 363]; Joinder of Scott Ellington and Isaac Leventon to the Objection of NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P. to Motion to Substitute [Doc. 362].

[3] UBS's Claims against Highland's estate (Claim Nos. 190 and 191) exceeded $1 billion, of which $125 million was ultimately allowed against the estate. *See* Order Approving Debtor's Settlement With UBS Securities LLC And UBS AG London Branch And Authorizing Actions Consistent Therewith [BK Doc. 2389].

[4] The UBS litigation is pending in New York Supreme Court, Index 6500744/2023, *UBS Securities LLC and UBS AG London Branch v. James Dondero, Scott Ellington, et al.* ("UBS Lawsuit").

fraudulent transfers predating Highland's bankruptcy,[5] and also seeks to impose alter ego liability upon them for the very large judgment against Highland in favor of UBS.[6] Thus, when combined, the UBS litigation and this adversary proceeding seek to impose over $1.7 billion in damages, making Defendants' motivations undeniably clear—Defendants are aggressively seeking to insulate their assets at all costs.

4.      HMIT's immediate need for injunctive relief stems from Defendants' recent use of an old playbook of moving and secreting assets. They are using shell entities and moving assets outside the jurisdiction of this and other interested U.S. courts to achieve this end. If not immediately restrained, the Defendants' efforts will frustrate the essential purpose of this adversary proceeding—recovering assets fraudulently and improperly transferred out of Highland's estate. In sum, Defendants are controlling assets which they wrongfully diverted from Highland, and they are now trying to prevent restitution of those assets.

5.      Recent evidence confirms that Dondero and Ellington are involved in transferring or seeking to transfer substantial assets using affiliated entities they control. One of these entities is Skyview Group Inc. ("Skyview"), an entity nominally owned by Ellington, but ultimately controlled and largely funded by Dondero.[7] These recent transfers or attempts to transfer include:

- Transfers of millions of dollars in 2025 to Crossvine Litigation Funding LLC ("CLF"), a Cayman entity created in April 2025 and controlled by Ellington and funded by Dondero;[8]

- Efforts to liquidate or transfer a stock ownership position (held directly or indirectly by Dondero) involving multi-family housing

---

[5] Certain of these fraudulent transfers involved other Defendants, including Massand Capital and SAS.

[6] Special Turnover Petition (a true and correct copy is attached as **Exhibit 1**) ("UBS Petition"), ¶¶ 1-3 [Index No. 650744/2023, Supreme Court of New York County, New York, *UBS Securities LLC, et al. v. James Dondero, et al.*

[7] Skyview provides back-office support for Dondero's NexPoint and HCMFA, which manage assets wrongfully diverted from Highland.

[8] CLF is owned by Crossvine Holdings LLC and Crossvine Foundation (collectively "Crossvine")—two Texas entities created by Ellington in April 2025.

and thereby moving over $30 million to a "charity" under Dondero's control and which, upon information and belief, is located in the Cayman Islands;[9]

▪ Dondero's highly improper, if not illegal demand to the Charitable DAF Fund, LP ("DAF") which indirectly owns HMIT, to send $1.5 million dollars to an offshore entity to bolster and "maintain the Sentinel structure," which involved a bogus insurance company created by Dondero and Ellington to hide assets from UBS. DAF's control person, Mark Patrick ("Patrick"), has independent contemporaneous evidence of this request. This attempt to funnel money from DAF to Sentinel was and is part of an ongoing effort that would continue (and, as described below, has continued) into the future;

▪ Even though DAF rejected Dondero's demand, Skyview made multiple wires in connection with this proposed scheme, including a $3 million wire to Atreyu Pipeline Logistics, LLC, an entity controlled by Ellington,[10] and there is contemporaneous evidence that as much as $7 million was transferred by Dugaboy, NexPoint and/or Ellington (acting through Skyview); and

▪ Isaac Leventon, a Defendant, was aware of Dondero's requests but made it clear to Patrick that he would deny any involvement in any related conversations.

6.    The conduct at issue flows from the same vein as the types of conduct previously considered by this Court when the Court expressed concern that Defendants' efforts to conceal their ongoing fraudulent schemes and transfers involving Sentinel potentially violated federal criminal statutes.[11]

7.    Absent a TRO and preliminary injunction, HMIT's ability to recover the relief requested in this proceeding, which includes the avoidance, recovery and return of assets diverted

---

[9] Preparations for the transfer of this stock position occurred within the immediate past, and is evidenced by a contemporaneous tape recording.

[10] Ellington refused to provide 1099s to Skyview tax professionals relating to Atreyu and certain other entities in an ostensible effort to evade scrutiny.

[11] See August 8, 2022 Hearing Transcript [Adv. Pro. No. 21-3020-sgj, Doc. 183] , p. 131; see also Highland Capital Management, L.P.'s Memorandum Of Law In Support Of Its Motion To Deem The Dondero Entities Vexatious Litigants And For Related Relief [Case No. 3:21-cv-881, Doc. 137] ("Vexatious Litigant Motion").

or fraudulently transferred out of Highland's estate,[12] will be jeopardized, and the integrity of these

proceedings undermined. If Defendants' schemes remain unchecked, they will succeed in

frustrating HMIT's efforts to collect on a judgment in this lawsuit, resulting in a colossal waste of

party and judicial resources. At a minimum, HMIT will be forced to incur additional legal expense

to unwind Defendants' fraudulent transactions.

8.      The imposition of a receivership is separately justified because the Liquidation

Trustee's claims, now assigned to HMIT, include a probable interest and right to various assets

under Defendants' wrongful control. In light of Defendants' history of diverting assets and

fraudulent transfers, a receivership is appropriate pursuant to TEX. BUS. & COMM. CODE

§ 24.008(a)(3)(B).

9.      It is clear that emergency relief is needed. However, if for any reason this Court

disagrees with HMIT's application for an immediate TRO, then HMIT alternatively requests an

expedited hearing date at the Court's earliest convenience for consideration of a preliminary

injunction and the appointment of a receiver. Expedited relief is needed to avoid the harms which

HMIT will otherwise suffer if Defendants are allowed to continue transferring and secreting assets

undeterred and to preserve the Court's jurisdiction over these assets and ability to grant relief.

HMIT is separately seeking expedited discovery in anticipation of this hearing.

## II.
## FACTUAL BACKGROUND

### A.    Procedural and Substantive Background

10.     This adversary proceeding was filed in October 2021, shortly after the Effective

Date of the Fifth Amended Plan of Reorganization of Highland Capital Management, LP (as

---

[12] *See* Amended Complaint, ¶¶ 137-186.

modified) (the "Plan"), and was initiated by a Litigation Sub-Trust created pursuant to the Plan.

The purpose of the Litigation Sub-Trust was to bring and prosecute claims belonging to the

Debtor's estate. Those claims have now been assigned and transferred to HMIT;[13] and HMIT

stands in the shoes of the Litigation Sub-Trust as Plaintiff.

11.     The relief sought in this adversary proceeding is wide-ranging, seeking to impose

liability for myriad wrongful acts and fraudulent transfers induced by Dondero, Ellington and other

Defendants. As this Court previously noted:[14]

> The 36 causes of action [in this lawsuit] seek: the avoidance and recovery of
> intentional and constructive fraudulent transfers and obligations under Sections
> 544, 548, and 550 of the Bankruptcy Code; illegal distributions under Delaware
> partnership law; breach of fiduciary duty; declaratory judgment that certain entities
> are liable for the debts of others under alter ego theories, successor liability, aiding
> and abetting, or knowing participation in breach of fiduciary duty; civil conspiracy;
> tortious interference with prospective business relations; breach of contract;
> conversion; unjust enrichment; and the disallowance or subordination of claims
> under Sections 502 and 510 of the Bankruptcy Code.

12.     As set forth in the Amended Complaint, at ¶¶ 110-171, stretching back to 2013,

Dondero and Ellington have used their control over affiliated entities, such as Dugaboy, Get Good,

NexPoint, and SAS, for improper purposes, including improper insider distributions and transfers

out of the reach of creditors. Over $50 million remains to be clawed back from Dondero for

voidable transfers alone, not including the hundreds of millions of dollars HMIT seeks for its other

claims against Dondero and the other Defendants.[15]

---

[13] Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement [BK Doc. 4297]; Order
Granting Motion to Substitute [Doc. 377].

[14] Report And Recommendation To The District Court Proposing That It: (A) Grant Defendants' Motions To
Withdraw The Reference At Such Time As The Bankruptcy Court Certifies That Action Is Trial Ready; But (B) Defer
Pre-Trial Matters To The Bankruptcy Court [Doc. 151], p. 6.

[15] *See* Amended Complaint, ¶¶ 171-186.

**B.**     **Defendants' Historical Pattern of Diverting and Concealing Assets**

13.     Dondero, and those acting in concert with him, including Ellington, NexPoint and
the other Defendants, have repeatedly undermined the authority and ability of the Court to deal
with Highland's estate. Although a meaningful elucidation of the Defendants' conduct would
require hundreds of pages, the following historical exemplars, as alleged in the Amended
Complaint, exemplify Defendants' wrongful conduct. A common scheme and pattern of behavior
is also evident—fraudulent transfers and the diversion of assets.

*The Highland Bankruptcy*

14.     Dondero was formerly the President and Chief Executive Officer of Highland, and
the sole member of its general partner, Strand Advisors. Together with Ellington—Highland's
former general counsel—Dondero directed Highland to file for Chapter 11 bankruptcy in Delaware
in late 2019 in response to several massive litigation awards against Highland.[16] Soon after
Highland's bankruptcy was transferred to this Court, the Unsecured Creditors Committee
demanded, and the Court approved, a change of control resulting in Dondero's removal as the sole
control person and the appointment of an independent board of directors and a new CEO.[17]

15.     On October 9, 2020, Dondero was instructed to fully resign from all positions
related to Highland or face removal as a Highland employee and as portfolio manager for all
Highland managed funds due to conduct detrimental to Highland, as the Debtor, and its creditors.[18]
Ellington was similarly terminated for cause on January 5, 2021, for actions adverse to Highland.[19]

---

[16] *See* Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As
Modified) and (II) Granting Related Relief [BK Doc. 1943] ("Confirmation Order"), ¶¶ 6-8.

[17] *See* Confirmation Order, ¶¶ 11-13.

[18] *See* Confirmation Order, ¶ 4.

[19] *See* Plaintiff's First Amended Original Complaint [Civil Action No. 3:24-cv-498 in the Northern District of Texas,
Doc. 82] ("HERA Complaint"), ¶ 125.

16.     Highland's bankruptcy was unique because the largest creditor claims arose from litigation awards and judgments.[20] Indeed, upon information and belief, Dondero and Ellington expected to use the bankruptcy process to thwart recoveries while maintaining control of Highland, but the bankruptcy instead served to reveal a pattern of recurring misconduct that led to over $1 billion dollars in litigation judgments and arbitration claims against Highland and over $40,000,000 in legal fees.[21]

17.     On February 8, 2021, the Court confirmed the Plan, and the Court entered its Confirmation Order on February 22, 2021.[22] The Plan became effective on August 11, 2021, and, as a result, Highland's ownership was restructured.[23] Both before and after bankruptcy, Defendants Dondero and Ellington have been working to strip the assets of entities they controlled to ensure that any aggrieved party could not collect on its hard-fought judgments or its rights of ownership. This Court previously considered evidence of wrongdoing and expressed concern that criminal laws may have been violated.[24]

### *Dondero Engaged In Misconduct Relating to Acis and Joshua Terry*[25]

18.     In 2010, Dondero formed Acis Capital Management, L.P. ("Acis") as a "lifeboat" to divert collateralized loan business fees from Highland after its lenders placed security liens on Highland's assets. Initially, Acis was owned indirectly by Dondero and others. Joshua Terry, a Highland employee, later joined the platform in 2011 to manage Acis.

---

[20] Confirmation Order, ¶ 8.

[21] *See* Amended Complaint, ¶¶ 66, 95.

[22] Confirmation Order, p. 4, ¶ k.

[23] *See* Notice Of Occurrence Of Effective Date Of Confirmed Fifth Amended Plan Of Reorganization Of Highland Capital Management, L.P. [BK Doc. 2700].

[24] August 8, 2022 Hearing Transcript [Adv. Pro. No. 21-3020-sgj, Doc. 183], p. 131.

[25] The following summary refers to and incorporates ¶¶ 67-72 of the Amended Complaint.

19.     In 2016, Dondero sought to finance an investment in South America by causing a separate portfolio company, Trussway Industries Inc. ("Trussway"), to incur unnecessary debt and divert loan proceeds to finance the purchase. Terry criticized this conduct as a breach of fiduciary duties to Acis' investors, and Dondero responded by firing Terry. Dondero and Terry ultimately went to arbitration in which the panel found against Dondero and Highland.

20.     Four days after Terry's arbitration judgment was issued, Dondero, acting through Highland, and with the aid of Ellington and others, entered into numerous transactions designed to take control of Acis's business and strip Acis of assets so it would be unable to pay Terry's arbitration award. This scheme to render Acis judgment-proof led Terry to file involuntary Chapter 11 petitions against Acis. In response, Dondero, through Highland, which Dondero still controlled, amped up Dondero's mismanagement of the Acis funds, leading Acis' appointed bankruptcy trustee to replace Highland as sub-advisor.

21.     Dondero also caused Highland to commence litigation against Acis' trustee, prompting a countersuit pursuant to which the Chapter 11 trustee sought to recover fraudulent transfers Dondero had directed. This led to the entry of a temporary restraining order against Highland.

### *Dondero and Ellington Fraudulently Induced an Investment from HarbourVest*[26]

22.     Dondero and Ellington fraudulently induced an investment from a group of third-party investors collectively known as "HarbourVest." Dondero and Ellington used Highland to induce HarbourVest to purchase 49.9% of HCLOF—the owner of the equity tranche of the Acis CLOs—for approximately $75 million in cash, with a commitment to invest an additional $75 million. Unbeknownst to HarbourVest, however, Dondero intended to use the $75 million from

---

[26] The following summary refers to and incorporates ¶¶ 73-75 of the Amended Complaint.

HarbourVest to make investments in other Dondero controlled and owned entities, including entities managed by NexPoint and HCMFA. Thus, the HarbourVest investment benefited Dondero personally, but left Highland exposed to hundreds of millions of dollars in potential damages to HarbourVest.

### *Willful Misconduct in the Transfer of Highland Capital Credit Strategies Fund's Assets*[27]

23.     Another example of fraudulent transfers involved the judgment relating to Highland Capital Credit Strategies Fund. In that case, Dondero was found to have engaged in willful misconduct by secretly causing Highland (still under Dondero's control) to move certain assets to other entities for far less than actual value. Highland paid only $24 million for those assets—far less than valuations performed by third parties, even those hired by Highland (up to $37 million). The arbitration panel found Dondero's explanations to excuse his conduct "to put it mildly, far-fetched"—and awarded Highland Capital Credit Strategies Fund over $30 million in damages.

### *Willful Misconduct in the Transfer of Highland Crusader Fund's Assets*[28]

24.     Dondero and Ellington engaged in misconduct relating to a group of Highland managed funds known as the "Crusader Funds." On July 5, 2016, the "Redeemer Committee," which was formed to oversee the wind-down and distribution of proceeds from the Crusader Funds, commenced an arbitration (the "Redeemer Arbitration") against Highland alleging misconduct as its investment advisor. The Redeemer Arbitration culminated in a nine-day evidentiary hearing in September 2018 that resulted in an award of damages of $136.8 million and total damages (including interest) of $190.8 million.

---

[27] *See* HERA Complaint, ¶ 153.

[28] The following summary refers to and incorporates ¶¶ 87-93 of the Amended Complaint.

25.     One of the many willful breaches the arbitrators found is that Dondero and Ellington caused Highland to commit surreptitious self-benefitting transfers of approximately $32 million in Deferred Fees from the Crusader Funds' accounts on January 21 and April 6, 2016.

### *Dondero and His Accomplices Caused Highland to Engage In Misconduct That Increased Liability To UBS*[29]

26.     In August 2017, Dondero and Ellington, along with others including Leventon, transferred assets to Sentinel Reinsurance, Ltd. ("Sentinel"), a Cayman Islands entity created, and indirectly owned and controlled, by Dondero and Ellington, to ensure that assets would be out of UBS's reach in the event a judgment was entered in its favor in a pending New York State Court proceeding.[30] In or around August 2017, Dondero, Ellington and others orchestrated the surreptitious transfer of all assets of the judgment defendants—with a face amount of $300 million and a market value of at least $100 million—to Sentinel. The goal of this transfer was to drain assets while keeping the assets within Dondero's and Ellington's ownership and control.

27.     In February 2023, UBS filed a turnover petition in New York State Court seeking to collect its judgment from Dondero, Ellington, and others, by clawing-back the assets from Sentinel and unwinding several other alleged fraudulent transfers. Exhibit 71 to UBS's petition outlines the hundreds of entities Dondero and Ellington have under their control to move assets and avoid scrutiny.[31] Oral arguments on the turnover petition are now scheduled for September 22, 2025, following which the turnover petition will be ripe for summary adjudication.[32]

---

[29] The following summary refers to and incorporates ¶¶ 76-80 of the Amended Complaint.

[30] *See* UBS Petition (**Exhibit 1**), pp. 22-35; UBS Pet. Ex. 40 (a true and correct copy of which is attached as **Exhibit 2**) (outlining Sentinel structure and aftershocks of "years of fraudulent transfer claims throughout [the] Highland structure" should Dondero refuse to settle).

[31] A true and correct copy is attached as **Exhibit 3**.

[32] *See* Index No. 650744/2023 Docket Sheet (a true and correct copy is attached as **Exhibit 4**); N.Y. C.P.L.R. § 5225; *Triadou SPV S.A. v. Chetrit*, 2021 WL 3290834, at *9 (Sup. Ct. N.Y. Cnty. Aug. 2, 2021) (noting that turnover petitions are governed by the same standards as summary judgments).

## C.    **Defendants' Recent Efforts to Transfer and Conceal Assets**

28.    Following their exodus from Highland, Dondero and Ellington picked up the mantle under the banner of the newly formed Skyview. With Highland no longer under Dondero's control, Skyview and NexPoint are now the primary means by which Defendants continue their fraudulent activities.

29.    Ellington nominally owns Skyview,[33] but Dondero, through NexPoint, is Skyview's primary client. Using Skyview, Dondero is currently seeking to move and transfer approximately $30 million in assets to a new "charity" which Dondero controls. This ownership stake includes a stock position involving multi-family projects and other assets. Upon information and belief, this "charity" is an offshore Cayman entity that has been described as "DAF-2." This scheme was underway as recently as August 2025.

30.    Dondero, acting individually and through Skyview, made a highly improper demand upon Patrick, the control person of DAF, to transfer $1.5 million to an entity unrelated to the charitable purposes of DAF and without any consideration. This transaction was properly rejected by Patrick. It is also apparent Dondero would have used Patrick's compliance with his demand (which never occurred) to exert leverage over Patrick in his capacity as DAF's control person. It was one of many reasons Patrick reorganized the DAF structure in the Cayman Islands. Ultimately, Dondero and Ellington transferred $7 million overseas to "maintain the Sentinel structure." Over $3 million (of the $7 million) initially went to Atreyu. The remaining $4 million was also funded.

---

[33] A true and correct copy of the 2024 Texas Franchise Tax Public Information Report for Skyview Group, Inc. is attached as **Exhibit 5**.

31.    Due in large part to Dondero's improper demands, Mr. Patrick left Skyview. Since then, Dondero, Ellington, and their conspirators have embarked on a multi-front litigation campaign designed to harass Mr. Patrick and the entities he controls. The cornerstone of this new wave of litigation involves liquidation proceedings in the Cayman Islands regarding a former limited-partner within the DAF structure. Consistent with Dondero's theme of using entities without standing to challenge transactions Dondero does not like, the entity over which Dondero seeks to gain control in the Caymans has no authority to exercise control over any other DAF entity, nor any right to object to transactions made by other DAF entities. Nonetheless, Dondero, either individually or through his representatives, is funding this litigation assault in the Cayman Islands to undo the reorganization of DAF—a series of transactions that were designed to reinforce Dondero's lack of influence over the DAF entities.

32.    Dondero and Ellington recently created several new entities that are being used to fund this Cayman litigation by funneling funds to a Cayman entity known as Crossvine, and are doing so through layers of Crossvine-related entities.[34] Ellington is identified as the control person in this Cayman entity,[35] but again, it is clear that Dondero is funding this entity.[36] There is no credible dispute that these Crossvine entities are controlled by Dondero and Ellington. Ellington is the member or manager of these various Crossvine vehicles.[37]

---

[34] *See* Funding Agreement of Joint Official Liquidators dated 11 July 2025 ("<u>Funding Agreement</u>") (a true and correct copy of which is attached as **Exhibit 6**); Certificate of Formation for Crossvine Holdings, LLC (a true and correct copy of which is attached as **Exhibit 7**); Certificate of Formation for Crossvine Foundation (a true and correct copy of which is attached as **Exhibit 8**).

[35] *See id.*

[36] The Joint Official Liquidators ("<u>JOLs</u>") have admitted in the Cayman proceedings that Crossvine is a special purpose entity ultimately created for Dondero's benefit.

[37] *Id.*

33.     This litigation funding serves a dual purpose: (i) it shuffles money to offshore allies in exchange for contingent future recoveries that are legally distinct from the assets that funded those returns, and subject to further dissipation, and (ii) it serves to frustrate this adversary proceeding against Dondero, Ellington, and the other Defendants which, to the extent of any recovery, will benefit the restructured DAF and its charitable mission. This new attempt to move funds offshore under the guise of "litigation funding" is conspicuously similar to the movement of assets through Sentinel.

34.     The continued attempts by Dondero, Ellington, and their affiliates to frustrate HMIT's prosecution of the claims in this adversary proceeding confirm that their litigation strategy is the same today as it has been throughout the past decade: delay, defraud, and dissipate.

### III.
### LEGAL STANDARD

#### A.  Injunctive Relief

35.     Bankruptcy Rule 7065 provides that Fed. R. Civ. P. 65 applies in an adversary proceeding. Under Rule 65, the Court is authorized to issue injunctive relief, and a decision to do so is committed to the Court's sound discretion. *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). Likewise, § 105(a) of the Bankruptcy Code authorizes bankruptcy courts to "issue any order, process, of judgment that is necessary or appropriate to carry out the provisions of the Code," including injunctions. *In re FiberTower Network Servs. Corp.*, 482 B.R. 169, 182 (Bankr. N.D. Tex. 2012) (*quoting* 11 U.S.C. § 105); *see also In re OGA Charters, LLC*, 554 B.R. 415, 424 (Bankr. S.D. Tex. 2016) (*quoting Miss. Power*, 760 F.2d at 621).

36.     The purpose of injunctive relief is to "prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Miss. Power*, 760 F.2d at 627. A court also may appropriately exercise its powers to grant injunctive relief by compelling disclosure

of regular audited financial reports and freezing transfers of assets outside the ordinary course of business. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311 (1st Cir. 1988).

37. To obtain injunctive relief under either Rule 65 or § 105, a movant must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017); *Green v. Wells Fargo Bank, N.A.*, 575 Fed. Appx. 322, 323 n. 3 (5th Cir. 2014). "Likelihood of success and irreparable injury to the movant are the most significant factors." *Louisiana v. Becerra*, 20 F.4th 260, 262 (5th Cir. 2021).

38. A temporary restraining order should be granted pending a hearing for a preliminary injunction where it appears that "immediate and irreparable injury, loss or damage will result to the movant." *See* Fed. R. Bankr. P. 7065 (incorporating by reference Fed. R. Civ. P. 65); *see also In re Seatco, Inc.*, 259 B.R. 279, 285 (Bankr. N.D. Tex. 2001). Again, the issuance of an injunction is within the broad discretion of the court. *See In re Compton Corp.*, 90 B.R. 798, 806 (Bankr. N.D. Tex. 1988); *Star Satellite, Inc. v. City of Biloxi*, 779 F.2d 1074, 1079 (5th Cir. 1986).

**B. Receivership**

39. Given the Defendants' long history of transferring and hiding assets, setting up new entities, abusing the bankruptcy system, and engaging in every conceivable effort to delay and avoid responsibility, a preliminary injunction may not be enough to protect Plaintiff and/or the jurisdiction of the Court over the assets at issue. Accordingly, HMIT also asks the Court to appoint a receiver.

40. It is well understood that § 105(b) of the Bankruptcy Code does not prohibit the appointment of a receiver in a related adversary proceeding where authorized and appropriate. *See, e.g., Craig v. McCarty Ranch Trust (In re Cassidy Land and Cattle Co.)*, 836 F.2d 1130, 1133 (8th

Cir. 1988); *In re Memorial Estates, Inc.*, 797 F.2d 516, 520 (7th Cir. 1986) ("The power cut off by section 105(b) of the Bankruptcy Code is the power to appoint a receiver for the bankrupt estate, that is, a receiver in lieu of a trustee."). The Court's appointment of a receiver is otherwise governed by applicable state law. *See Nobelman v. American Savings Bank*, 508 U.S. 324, 329 (1993). In this instance, the appointment of a receiver is also authorized under TUFTA.

## IV.
## ARGUMENT

**A.    HMIT Will Suffer Irreparable Harm in the Absence of Injunctive Relief**

41.    HMIT will be severely harmed if Defendants are not enjoined from transferring assets outside the jurisdiction of this Court or otherwise secreting or concealing assets in a blatant attempt to avoid the impact of an adverse judgment and interfere with the Court's authority to grant relief.

42.    Irreparable harm occurs "where there is no adequate remedy at law.'" *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2010); *see OGA Charters*, 554 B.R. at 424 (*quoting Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013)). In the bankruptcy context, "irreparable harm" refers to either "irreparable harm to the interest of a creditor or irreparable harm to the bankruptcy estate," including th[e] Court's exclusive authority to effectively manage the[] case[]." *In re Hunt*, 93 B.R. 484, 495 (Bankr. N.D. Tex. 1988) (internal quotations omitted).

43.    Although money damages may, in some circumstances, be *available* to remediate threatened harm, the Fifth Circuit has recognized, the "mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Janvey*, 647 F.3d at 600. "For example, some courts have found that a remedy at law is inadequate if legal redress may be obtained only by pursuing a multiplicity of actions." *Id.*; *see Walker v. Doe*, No. 6:24-cv-00633-

- 15 -

ADA, 2025 U.S. Dist. LEXIS 100396, at *10 (W.D. Tex. 2025) (finding money damages to be inadequate remedy in light of alleged scheme to launder funds beyond the reach of the court); *Tujague v. Adkins*, No. 4:18-CV-631, 2018 U.S. Dist. LEXIS 171394 (E.D. Tex. 2018) ("[A] plaintiff seeking economic damages will suffer irreparable harm when the defendant's dissipation of assets would require the plaintiff to initiate '"a multiplicity of suits … to gain relief."'").

44.       Courts have determined repeatedly that a dissipation or transfer of assets impairing the court's ability to grant an effective remedy constitutes irreparable harm, and injunctive relief is appropriate where the underlying complaint includes claims that are equitable in nature. *See, e.g., Janvey*, 647 F.3d 585; *Walker*, 2025 U.S. Dist. LEXIS 100396; *Tujague*, 2018 U.S. Dist. LEXIS 171394; *Prep Sols., Ltd v. Lecht*, 2022 U.S. Dist. LEXIS 98756 (E.D. Tex. June 2, 2022) ("[t]he Court can permissibly freeze assets to protect a plaintiff's equitable remedies—such as the equitable remedy of disgorgement"); *Amegy Bank N.A. v. Monarch Flight II, LLC*, No. 4:11-CV-3218, 2011 U.S. Dist. LEXIS 140874, at *17 (S.D. Tex. Dec. 7, 2011) (irreparable harm is established and injunctive relief is appropriate where there is "evidence showing that … the defendant intends to dissipate his assets to make a judgment awarding damages uncollectible"); *Bank of Am., N.A. v. Mega World Builder Corp*., No. 4:24-CV-3021, 2024 U.S. Dist. LEXIS 203763, *17 (S.D. Tex. Nov. 8, 2024) ("When the dissipation of assets that are the subject of a lawsuit would impair the district court's ability to grant an effective remedy at the conclusion of the case, the district court may enter a preliminary injunction to protect against those assets' dissipation"); *SEC v. Barton*, 135 F.4th 206, 228 (5th Cir. 2025) ("[T]he SEC has also shown irreparable harm to the defrauded investors through further dissipation of assets. If those assets were distributed, there would be no recovery for the defrauded investors—thus making the harm irreparable."); *Turnkey Offshore Project Servs., LLC v. JAB Energy Solutions, LLC,* 2021 U.S. Dist.

LEXIS 149733, at *15-16 (E.D. La. Aug. 10, 2021) ("[W]hen the underlying claim is one that is
equitable in nature, a Rule 65 injunction may be available to preserve the defendant's assets during
the pendency of the proceeding."). In cases like this one, the Court has full authority to issue an
injunction if necessary to prevent Defendants from dissipating, disposing or transferring assets
prior to judgment. *See id.*; *Sargeant v. Al Saleh*, 512 S.W.3d 399 (Tex. App.—Corpus Christi 2016,
no pet.) (affirming sweeping asset-freezing injunction in TUFTA case).

45.      Fraudulent transfer, disgorgement, and declaratory judgment claims form a large
part of the Amended Complaint.[38] Unquestionably, these are equitable claims that support
injunctive relief where appropriate. *See, e.g.*, *Janvey*, 647 F.3d 585; *Walker*, 2025 U.S. Dist. LEXIS
100396; *Tujague*, 2018 U.S. Dist. LEXIS 171394; *Sharp v. SSC Farms I, LLC (In re SK Foods,
L.P.)*, 2010 Bankr. LEXIS 6445, *54 (E.D. Cal. April 5, 2010) ("Courts have held that a preliminary
injunction freezing the transfer of assets is proper where fraudulent conveyance is alleged in a
bankruptcy case."); *S. Texas Lighthouse for the Blind, Inc. v. Fed. Supply Servs. Int'l, Inc.*, 2020
U.S. Dist. LEXIS 157347, *3-4 (S.D. Tex. Aug. 28, 2020) (noting that a fraudulent transfer claim
in a complaint is a claim for equitable relief that will support injunctive relief if assets are being
concealed or dissipated).

46.      An injunction is particularly appropriate where, as here, the assets at issue are not
just being dissipated or concealed, but are, upon information and belief, intentionally transferred
outside the jurisdiction of the Court and therefore beyond the authority of the Court to enforce a
judgment in favor of HMIT. *See, e.g., Janvey*, 647 F.3d 585; *Walker*, 2025 U.S. Dist. LEXIS
100396; *Tujague*, 2018 U.S. Dist. LEXIS 171394; *Sharp*, 2010 Bankr. LEXIS 6445, at *53 ("In
the event an injunction is not issued and Defendants are permitted to transfer or sell their assets

---

[38] ¶¶ 137-186.

beyond the reach of this Court, the Trustee, and the creditors of the estates, will suffer irreparable harm.").

47.   Such activity should be prohibited and, in reaching the determination to do so, this Court is free to and should consider Dondero's and Ellington's long history of engaging in the very type of conduct sought to be enjoined. Manifestly, "[p]rior misconduct in hiding or depleting assets is 'extremely relevant to the concern that [defendants] might conceal or dissipate assets' again and is properly considered in granting an injunction." *Sharp*, 2010 Bankr. LEXIS, at *55.

48.   In the absence of injunctive relief, HMIT will face imminent and irreparable harm that cannot be adequately remedied. If Defendants continue to engage in the conduct sought to be prohibited, HMIT's ability to effectively recover the fraudulent transfers and assets at issue will be impaired and the Court will not be able to effectively grant the relief requested. If Defendants are not immediately enjoined from engaging in their attempts to hide assets and place those assets beyond the jurisdiction of the Court, this entire proceeding may be rendered futile.

**B.    HMIT Demonstrates Likelihood of Success on the Merits**

49.   HMIT is likely to succeed on the merits. To satisfy the likelihood of success element, the movant need only present a "prima facie case." *Janvey*, 647 F.3d at 595. In that regard, the Fifth Circuit recognizes that "[n]one of the [preliminary injunction] prerequisites has a fixed quantitative value," and instead employs a sliding scale which balances the likelihood of success on the merits against the other factors. *Titlemax of Tex., Inc. v. City of Dall.*, 142 F.4th 322, 328 (5th Cir. 2025). "As the level of persuasion in relation to the other three factors increases, the degree of persuasion necessary on the substantial likelihood of success factor may decrease." *35 Bar & Grille, LLC v. City of San Antonio*, 943 F. Supp. 2d 706, 722 (W.D. Tex. 2013).

50.   Here, the Amended Complaint alleges, among other things, numerous claims for the avoidance and recovery of intentional and constructively fraudulent transfers under 11 U.S.C.

§§ 544, 548, and 550, 26 U.S.C. § 6502, as well as Delaware and Texas law, as applicable. The Amended Complaint details the avoidable transactions at issue, in explicit detail and with numerous references to competent evidence amassed throughout these bankruptcy proceedings, and explains why the transfers were illegal under applicable law and should be recovered.

51.     The Amended Complaint and the documents cited therein alone establish the required likelihood of success on the merits, as to these and all of the claims asserted therein. As they are doing now, and as they have done in the past, Dondero and Ellington have devised elaborate schemes to place assets beyond the ability of the Court and HMIT to recover.[39] There is no legitimate defense to Defendants' various fraudulent schemes, whether through "lifeboats," their use of pass-through entities to transfer assets, and their other actions in avoidance of this Court's management of the Highland bankruptcy.

## C.     The Equities Strongly Favor HMIT

52.     The balance of the equities also tip decisively in HMIT's favor. In the absence of injunctive relief, HMIT faces imminent and irreparable harm. If Defendants are not prevented from secreting or transferring assets outside the jurisdiction of the Court, HMIT's ability to recover on its claims will be at risk, as will the Court's jurisdiction to effectively render judgment. By contrast, there are no equities that favor denying injunctive relief as Defendants have no legal or equitable right to engage in conduct intentionally designed to avoid paying a judgment awarded against them. Should Defendants have a legitimate need to transfer assets, they can seek the Court's permission to do so.

---

[39] *See* Vexatious Litigant Motion, ¶ 5 n.5 ("Dondero's proclivity for frivolous litigation is so well known that HCMLP was unable to obtain cost-effective insurance because the insurance market refuses to insure the risk of Dondero's vexatiousness, calling it the 'Dondero Exclusion.'").

53.    In sum, the potential harm to HMIT in the absence of injunctive relief far outweighs
any harm to Defendants if injunctive relief issues.

**D.    Injunctive Relief Serves the Public Interest**

54.    Finally, injunctive relief will further the public interest because it is necessary to
protect HMIT's ability to successfully prosecute its claims and recover assets wrongfully taken
from the Highland estate. "Courts have often held that injunctions that facilitate reorganizations
serve the public interest." *FiberTower*, 482 B.R. at 189; *see also Hunt,* 93 B.R. at 497 ("Chapter
11 expresses the public interest of preserving the going-concern values of businesses, protecting
jobs, ensuring the equal treatment of and payment of creditors, and if possible saving something
for the equity holders."); *OGA Charters*, 554 B.R. at 426 (finding that the "public interest may be
served where the purpose of the preliminary injunction is such that it serves to" uphold a core
"pillar of bankruptcy by preserving a debtor's … assets that can be potentially used to satisfy valid
claims against the bankruptcy estate."). By contrast, the public interest will not be served by
allowing Defendants to continue to avoid the claims asserted against them and place assets at issue
beyond the reach of HMIT and the Court's jurisdiction.

**E.    Appointment of a Receiver**

55.    Among other things, the Amended Complaint includes claims under TUFTA, which
expressly authorizes the appointment of a receiver under "applicable principles of equity" when
necessary to "take charge of the asset transferred or of other property of the transferee." TEX. BUS.
& COM. CODE § 24.008(a)(3)(B). TUFTA provides creditors, secured or unsecured, with "a
substantive right to the prejudgment appointment of a receiver" when a defendant is "seeking to
hinder, delay, or defraud creditors." *Biliouris v. Sundance Res., Inc*., 559 F. Supp. 2d 733, 737-39
(N.D. Tex. 2008) ("TUFTA provides creditors—secured and unsecured alike—with the
substantive right to seek quickly the appointment of a receiver to secure their interests and prevent

- 20 -

further fraudulent conduct without first enduring the long delay necessary to reduce their claims

to judgment").

56.     The Texas Civil Practices & Remedies Code § 64.001 also authorizes any "court of

competent jurisdiction" to appoint a receiver for numerous reasons, including "in an action by a

creditor to subject any property or fund to the creditor's claim" and "in any other case in which a

receiver may be appointed under the rules of equity." Tex. Civ. Prac. & Rem. Code §§ 64.001(a)(2)

and (a)(7). Under subsection (a)(2), a receiver may be appointed where the applicant has "a

probable interest in or right to the property or fund" and the property or fund is "in danger of being

lost, removed, or materially injured." *Id*. at § 64.001(b). The decision to appoint a receiver, whether

under TUFTA, § 64.001(a)(2) or § 64.001(a)(7), "rests in the sound discretion of the trial court."

*Akin, Gump, Strauss, Hauer and Feld, L.L.P. v. E-Court, Inc*., 2003 Tex. App. LEXIS 3966, *10

(Tex. App.—Austin May 8, 2003, no pet.).

57.     Like § 64.001, a court that has subject matter jurisdiction over specific property of

a domestic or foreign entity in Texas may appoint a receiver for that property, or the proceeds from

that property, in several scenarios, including actions "by a creditor to subject the property or fund

to the creditor's claim," and between "partners or others jointly owning or interested in the property

or fund." Tex. Bus. Orgs. Code §§ 11.403(a)(2), (a)(3). Additionally, under § 11.410 of the Texas

Business Organizations Code, a court may appoint a receiver for all of the property, in and outside

Texas, of a foreign entity doing business in Texas if the court determines, in accordance with the

ordinary usages of equity, that circumstances exist that necessitate the appointment of a receiver

even if a receiver has not been appointed by another court.

58.     Defendants Dondero and Ellington, along with their controlled entities, affiliates,

and allies, are actively seeking to deprive the Court of jurisdiction over the assets and funds at

issue in this adversary proceeding, which were in large part diverted or fraudulently transferred

from the Debtor. Absent relief, HMIT will be frustrated in its efforts to recover those assets and

collect on any future judgment issued herein. The documented history of Defendants' manipulation

of corporate entities and assets to retain control and to avoid expected judgments strongly suggests

that a receiver should be appointed to preserve Defendants' assets, or, at a minimum, assets

sufficient to satisfy any judgment rendered in this case.

59.    HMIT will be irreparably harmed if the Defendants' manipulation, dissipation and

fraudulent transfers of assets are allowed to continue through the remaining course of these

proceedings, and Defendants have given the Court no reason to believe they will fully respect and

comply with a preliminary injunction alone. Thus, the Court should invoke its authority to appoint

a receiver.

## IV.
## SECURITY

60.    Generally, the Court may issue a TRO if Plaintiff "gives security in an amount that

the [C]ourt considers proper to pay the costs and damages sustained by any party found to have

been wrongfully enjoined or restrained." *See* Fed. R. Civ. P. 65(c). Despite the language of Rule

65(c), the Fifth Circuit has held that a court, in the proper exercise of its discretion, "may elect to

require no security at all" in an appropriate case. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628

(5th Cir. 1996) (*quoting Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir.

1978)). Here, because there is no risk of monetary loss to the Defendants, and the relief requested

is in fact directed to *preserving* the alleged assets, the Court should waive the bond or set a nominal

amount for its issuance.

**V.**

**CONCLUSION**

WHEREFORE, Plaintiff Hunter Mountain Investment Trust respectfully requests that the Court grant its Motion and enter an Order in the form annexed thereto as Exhibit A, and grant any further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN
INVESTMENT TRUST**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

*/s/ Ian B. Salzer*
Ian B. Salzer

3203957

- 23 -

# ITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL<br>MANAGEMENT, L.P.,<br><br>     Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| **HUNTER MOUNTAIN INVESTMENT TRUST,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HIGHLAND DALLAS FOUNDATION; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,**<br><br>     **Defendants.** | **Adv. Pro. No. 21-03076-sgj** |

## <u>VERIFICATION</u>

My name is Mark Patrick, my date of birth is April 23, 1972, and my address is 6716 Glenhurst Drive, Dallas, Texas 75254. I am the Administrator of Hunter Mountain Investment Trust ("<u>HMIT</u>"), I am of sound mind, and I am competent to make this Verification. I declare under penalty of perjury that the factual statements contained in HMIT's Emergency Verified Motion for Temporary Restraining Order and Preliminary Injunction, as well as the accompanying Memorandum of Law in Support, are true and correct to the best of my knowledge and belief.

- 1 -

Executed in Dallas County, State of Texas, on September 15, 2025.

DocuSigned by:

_____

9590502D4484D45F...

MARK PATRICK

# EXHIBIT 11

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | |
| | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

| | |
|---|---|
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | |
| **Plaintiff,** | |
| **v.** | **Adv. Pro. No. 21-03076-sgj** |
| **JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD** | |

TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE
OF GET GOOD TRUST; HUNTER MOUNTAIN
INVESTMENT TRUST; CLO HOLDCO, LTD.;
CHARITABLE DAF HOLDCO, LTD.; CHARITABLE
DAF FUND, LP; HIGHLAND DALLAS FOUNDATION;
RAND PE FUND I, LP, SERIES 1; MASSAND
CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS
ASSET RECOVERY, LTD.,

      **Defendants.**

## ORDER GRANTING TEMPORARY RESTRAINING ORDER AND SETTING HEARING ON PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION AND APPOINTMENT OF RECEIVER

Having considered Plaintiff Hunter Mountain Investment Trust's ("HMIT") *Emergency Motion for Temporary Restraining Order, Preliminary Injunction, and Appointment of a Receiver and Memorandum in Support* ("Verified Motion") against Defendants James Dondero, Scott Ellington, Isaac Leventon, Strand Advisors, Inc., The Get Good Trust, NexPoint Advisors, L.P., Highland Capital Management Fund Advisors, L.P., The Dugaboy Investment Trust, Highland Dallas Foundation, Massand Capital LLC, Massand Capital, Inc., and SAS Asset Recovery, Ltd. (collectively, "Defendants"), and all persons acting in concert or participation with them, the Court finds the following:

HMIT's Verified Motion and accompanying Memorandum of Law in Support, the evidentiary materials referenced therein, the record in this adversary proceeding and in the underlying bankruptcy case of Highland Capital Management, L.P., establish sufficient grounds for issuance of a temporary restraining order as set forth in the Verified Motion. The Court specifically finds that:

- HMIT has established a likelihood that it will prevail on the merits of the claims asserted against Defendants in the Amended Complaint, which details the avoidable transactions and conduct at issue in explicit detail and with numerous references to competent evidence amassed throughout these bankruptcy proceedings;

- HMIT will be irreparably harmed absent immediate injunctive relief if Defendants' efforts to conceal assets, or transfer such assets outside the jurisdiction of this Court, are allowed to continue;

- The equities favor HMIT;

- Injunctive relief serves the public interest; and

- Defendants have no legal or equitable right to engage in conduct designed to avoid paying a judgment awarded against them.

Accordingly, pending the hearing and determination of HMIT's Motion for Preliminary Injunction and Appointment of a Receiver, and HMIT having established grounds for the issuance of a temporary restraining order, the Court hereby **ORDERS** that:

1. Defendants[1] shall be temporarily restrained and enjoined from transferring, selling, liquidating, dissipating, assigning, alienating, tampering with, withdrawing, concealing, mortgaging, encumbering, granting a lien or security interest or other interest in, or otherwise harming or reducing the value of, or disposing of, any funds or other assets under the Defendants' individual or joint control including, among other things, their subsidiaries, businesses, physical assets, real property, cash, and equity interests ("Assets").

2. Defendants shall be temporarily restrained and enjoined from transferring any Assets to other entities owned or controlled, directly or indirectly, by the Defendants, whether such entity is currently existing or newly created.

3. Defendants shall be temporarily restrained and enjoined from transferring any Assets owned or controlled by the Defendants, directly or indirectly, to any account, entity or individual located outside the United States of America or beyond the jurisdiction of this Court.

---

[1] Including Defendants' successors, assigns, officers, agents, employees, and attorneys, and all persons or entities in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or through any corporation, subsidiary, division, or other device,

4.      Notwithstanding this Order, the Defendants are allowed to continue to engage in transactions in the ordinary course of business, but all transactions are subject to the disclosure requirements set forth in Paragraph 5. For purposes of this paragraph, "ordinary course of business" shall include transfers, assignments or sales to a bona fide third-party purchaser or assignee for equivalent value, as viewed by an objective observer with knowledge of the party's business, so long as such transactions are at arm's length, on commercially reasonable terms, and with unaffiliated third parties, without involving extraordinary commitments, unprecedented expenditures, or actions that would breach duties or dissipate assets outside the jurisdiction of this Court or in any manner that may frustrate collection of any judgment in this lawsuit.

5.      The Defendants are ordered to identify and disclose on or before September ___, 2025, all past, current or planned transactions in which they have been involved or are currently involved relating to or involving the transfer, assignment, monetization or other disposition of any Assets since the commencement of this adversary proceeding through the date of the hearing on the Preliminary Injunction set forth below.

6.      The Court shall hold a hearing on HMIT's request for preliminary injunctive relief and appointment of receiver(s) on _____, 2025 at _____.

7.      Defendants may submit any opposition to the requested preliminary injunction and/or the appointment of a receiver on or before _____, 2025, to which HMIT may reply on or before _____, 2025.

8.      This Order is effective immediately and the Court, in the exercise of its discretion, finds that no security is required.

9.      The Court retains jurisdiction for such other pre-trial orders as shall be deemed just and necessary.

### END OF ORDER ###

# EXHIBIT 12



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed April 6, 2022**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 19-34054-SGJ-11** |
| | § | **(CHAPTER 11)** |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| REORGANIZED DEBTOR. | § § | |
| _____ | § | |
| | § | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | § § § | |
| | § | **CIVIL ACTION NO. 3:22-CV-203-S** |
| PLAINTIFF, | § § | |
| v. | § | **ADVERSARY NO. 21-03076** |
| | § | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; FRANK WATERHOUSE; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, | § § § § § | |

1

1934054220406000000000001

L.P.; HIGHLAND CAPITAL                §
MANAGEMENT FUND ADVISORS, L.P.        §
DUGABOY INVESTMENT TRUST              §
AND NANCY DONDERO, AS TRUSTEE         §
OF DUGABOY INVESTMENT TRUST;          §
GET GOOD TRUST AND GRANT JAMES        §
SCOTT III, AS TRUSTEE OF GET GOOD     §
TRUST; HUNTER MOUNTAIN                §
INVESTMENT TRUST; MARK &              §
PAMELA OKADA FAMILY TRUST –           §
EXEMPT TRUST #1 AND LAWRENCE          §
TONOMURA AS TRUSTEE OF MARK &         §
PAMELA OKADA FAMILY TRUST –           §
EXEMPT TRUST #1; MARK & PAMELA        §
OKADA FAMILY TRUST – EXEMPT           §
TRUST #2 AND LAWRENCE                 §
TONOMURA IN HIS CAPACITY AS           §
TRUSTEE OF MARK & PAMELA              §
OKADA FAMILY TRUST – EXEMPT           §
TRUST #2; CLO HOLDCO, LTD.;           §
CHARITABLE DAF HOLDCO, LTD.;          §
CHARITABLE DAF FUND, LP.;             §
HIGHLAND DALLAS FOUNDATION;           §
RAND PE FUND I, LP, SERIES 1;         §
MASSAND CAPITAL, LLC; MASSAND         §
CAPITAL, INC.; SAS ASSET RECOVERY,    §
LTD.; AND CPCM, LLC,                  §
                                      §
     DEFENDANTS.                      §
                                      §

---

**REPORT AND RECOMMENDATION TO THE DISTRICT COURT PROPOSING THAT IT: (A) GRANT DEFENDANTS' MOTIONS TO WITHDRAW THE REFERENCE AT SUCH TIME AS THE BANKRUPTCY COURT CERTIFIES THAT ACTION IS TRIAL READY; BUT (B) DEFER PRE-TRIAL MATTERS TO THE BANKRUPTCY COURT**

2

## I.   INTRODUCTION

As further explained herein, there are 23 Defendants in the above-referenced adversary proceeding (the "Adversary Proceeding")—almost all of whom have jury trial rights and desire to have the reference withdrawn from the bankruptcy court, so that a jury trial may ultimately occur in the District Court. All parties agree (even the Plaintiff) that the reference **must** ultimately be withdrawn for final adjudication to occur in the District Court, since: (a) jury trial rights exist, and (b) the Defendants do not consent to a jury trial occurring in the bankruptcy court.  However, there is a question of **timing** here.

Specifically, the Plaintiff believes that the bankruptcy court should, for the time being— that is, **until the action is trial-ready**—essentially serve as a magistrate and preside over all pre-trial motions and other matters, with the District Court considering reports and recommendations with regard to any dispositive motions.

The Defendants, on the other hand, believe that the District Court should **immediately** withdraw the reference, taking the position that there is not even "related to" bankruptcy subject matter jurisdiction with regard to the 36 causes of action asserted in the Adversary Proceeding (*see* 28 U.S.C. § 1334(b))—since the Adversary Proceeding was brought **after** confirmation of a Chapter 11 debtor's plan, and the claims in the Adversary Proceeding do not require interpretation or implementation of the plan.  Additionally, the Defendants argue that, even if there is "related to" bankruptcy subject matter jurisdiction, mandatory abstention applies with regard to certain of the causes of action in the Adversary Proceeding, since certain **other** federal laws—namely tax law and securities law—are implicated (*see* 28 U.S.C. § 157(d)).

The bankruptcy court disagrees with the Defendants. This Adversary Proceeding is a typical post-confirmation lawsuit being waged be a liquidating trustee, who was appointed

pursuant to a Chapter 11 bankruptcy plan to pursue pre-confirmation causes of action that were

owned by the bankruptcy estate, for the benefit of creditors. Despite the "post-confirmation"

timing of the *filing* of the lawsuit, there *is* still "related to" bankruptcy subject matter jurisdiction.

Additionally, there will be no substantial or material consideration of "other laws of the United

States regulating organizations or activities affecting interstate commerce." *Id.*

Accordingly, the bankruptcy court recommends that the District Court only withdraw the

reference of this Adversary Proceeding *at such time as the bankruptcy court certifies that the*

*action is trial-ready and defer to the bankruptcy court the handling of all pre-trial matters (as*

*is most often the custom in this District)*. A more detailed explanation follows.

## II.    PROCEDURAL CONTEXT

This Adversary Proceeding is related to the bankruptcy case (the "Bankruptcy Case")[1] of

Highland Capital Management, L.P. (the "Debtor," "Highland," or sometimes the "Reorganized

Debtor").

Highland filed a voluntary Chapter 11 petition on October 16, 2019, in the United States

Bankruptcy Court of Delaware. That court subsequently entered an order transferring venue to the

United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the

"Bankruptcy Court"), on December 4, 2019.

On February 22, 2021, the Bankruptcy Court entered an *Order (i) Confirming the Fifth*

*Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii)*

*Granting Related Relief* (the "Confirmation Order") [Bankr. Docket No. 1943], which confirmed

the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)*

(as amended, the "Plan" or "Highland Plan") [Bankr. Docket No. 1808].

---

[1] Bankruptcy Case No. 19-34054.

The Highland Plan went effective on August 11, 2021 (the "Effective Date"). Thus, the Bankruptcy Case is now in what is referred to as a "post-confirmation" phase.

Like many Chapter 11 plans, the Highland Plan provided for the creation of a "Claimant Trust" for the benefit of holders of Highland's creditors. The Claimant Trust was vested with certain assets of Highland, including "all Causes of Action" and "any proceeds realized or received from such Assets." Plan §§ I.B.24, I.B.26, I.B.27. The Plan also provided for the creation of a "Litigation Sub-Trust," as a "sub-trust established within the Claimant Trust or as a wholly-owned subsidiary of the Claimant Trust," for the purpose of "investigating, prosecuting, settling, or otherwise resolving the Estate Claims" transferred to it by the Claimant Trust pursuant to the Plan. Plan §§ I.B.81, IV.B.1 ("[T]he Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims."), Plan § IV.B.4. The Litigation Trustee of the Litigation Sub-Trust is "responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust[.]" Plan § I.B.83. Under the Plan, proceeds from the Litigation Trust's pursuit of claims "shall be distributed . . . to the Claimant Trust for distribution to the Claimant Trust Beneficiaries[.]" Plan § IV.B.4.

On October 15, 2021, the Litigation Trustee ("Plaintiff") commenced the Adversary Proceeding for the benefit of Highland's creditors. [Adv. Proc. Docket. No. 1 (the "Complaint")].

The Complaint asserts *36 causes of action* against *23 Defendants*. The causes of action all arise from *pre-confirmation conduct* allegedly perpetrated by Highland's founder James Dondero and individuals and entities affiliated with him, which purportedly resulted in hundreds of millions of dollars in damages to Highland. It appears that all of the Defendants are owned, controlled, or related to Mr. Dondero, although some of the Defendants dispute this characterization.

The 36 causes of action seek: the avoidance and recovery of intentional and constructive fraudulent transfers and obligations under Sections 544, 548, and 550 of the Bankruptcy Code; illegal distributions under Delaware partnership law; breach of fiduciary duty; declaratory judgment that certain entities are liable for the debts of others under alter ego theories, successor liability, aiding and abetting, or knowing participation in breach of fiduciary duty; civil conspiracy; tortious interference with prospective business relations; breach of contract; conversion; unjust enrichment; and the disallowance or subordination of claims under Sections 502 and 510 of the Bankruptcy Code.

As further addressed below, the Bankruptcy Court has concluded that the 36 causes of action include some statutory *core* (*i.e.,* "arising under" or "arising in") claims, some *non-core* (*i.e.,* "related to") claims, and some causes of action that are a *mixture* of both core and non-core claims. The following three tables summarize the Bankruptcy Court's determination as to which counts are core, which are non-core, and which are a mixture:

| Count No. | Core ("Arising Under") Claims | Defendants Named |
|---|---|---|
| 31 | Avoidance and Recovery of One-Year Transfers as Preferential Under 11 U.S.C. §§ 547 and 550 | James Dondero and Scott Ellington |
| 34 | Disallowance of Claims Under Sections 502(b), 502(d), and 502(e) of the Bankruptcy Code | James Dondero, Scott Ellington, Isaac Leventon, Frank Waterhouse, and CPCM, LLC |
| 35-36 | Disallowance or Subordination of Claims Under Sections 502 and 510 of the Bankruptcy Code | James Dondero, Dugaboy Trust, Get Good Trust, Mark Okada, MAP #1, MAP #2, Hunter Mountain, and CLO Holdco |

| Count No. | Non-Core ("Related to") Claims | Defendants Named |
|---|---|---|
| 3 | Illegal Distributions Under Delaware Revised Uniform Limited Partnership Act | James Dondero, Strand Advisors, Dugaboy Trust, Hunter Mountain |

6

| 4 | Breach of Fiduciary Duty Arising Out of Dondero's Lifeboat Scheme | James Dondero, Strand Advisors |
| 5 | Breach of Fiduciary Duty Arising Out of Conduct that Resulted in HCMLP Liabilities | James Dondero, Scott Ellington, Isaac Leventon, Strand Advisors |
| 6 | Declaratory Judgment that Strand is Liable for HCMLP's Debts in its Capacity as HCMLP's General Partner | Strand Advisors |
| 7 | Declaratory Judgment that Dondero is Liable for Strand's Debts as Strand's Alter Ego | James Dondero |
| 8 | Declaratory Judgment that Dondero and Strand are Liable for HCMLP's Debts in Their Capacities as HCMLP's Alter Ego | James Dondero, Strand Advisors |
| 9 | Declaratory Judgment that NexPoint and HCMFA are Liable for the Debts of HCMLP, Strand, and Dondero as Their Alter Egos | NexPoint Advisors, HCMFA |
| 10 | Declaratory Judgment that Dugaboy is Liable for the Debts of Dondero in Their Capacities as Dondero's Alter Ego | Dugaboy Trust |
| 13 | Successor Liability | NexPoint Advisors, HCMFA |
| 14 | Breach of Fiduciary Duty in Connection with Fraudulent Transfers and Schemes | James Dondero, Mark Okada, Scott Ellington, Strand Advisors |
| 15 | Aiding and Abetting Breach of Fiduciary Duty Under Delaware Law or Knowing Participation in Breach of Fiduciary Duty Under Texas Law | Grant Scott, Strand Advisors, NexPoint Advisors, HCMFA, Get Good Trust, CLO Holdco, DAF Holdco, DAF Highland Dallas Foundation, and SAS |
| 16 | Civil Conspiracy to Breach Fiduciary Duties Under Texas Law | James Dondero, Scott Ellington, Isaac Leventon, Grant Scott, NexPoint Advisors, HCMFA, Get Good Trust, CLO Holdco, DAF Holdco, DAF, Highland Dallas Foundation, and SAS |
| 17 | Tortious Interference with Prospective Business Relations | James Dondero, NexPoint Advisors, HCMFA |
| 24 | Breach of Contract Arising Out of Hunter Mountain Note | Hunter Mountain and Rand |
| 25 | Conversion | James Dondero, Scott Ellington |
| 26-30 | Unjust Enrichment | James Dondero, Scott Ellington, Isaac Leventon, NexPoint Advisors, HCMFA, CLO Holdco, Massand Capital, and SAS |

| Count No. | Mixture of Core and Non-Core Claims | Defendants Named |
|---|---|---|
| 1 | Avoidance and Recovery of HCMLP Distributions as Constructive Fraudulent Transfers Under 11 U.S.C. §§ 544, 548, and 550, 26 U.S.C. § 6502, and Other Applicable Law | James Dondero, Mark Okada, Strand Advisors, Dugaboy Trust, Hunter Mountain, MAP #1, and MAP #2 |
| 2 | Avoidance and Recovery of HCMLP Distributions as Intentional Fraudulent Transfers Under 11 U.S.C. §§ 544, 548, and 550, 26 U.S.C. § 6502, and Other Applicable Law | James Dondero, Mark Okada, Strand Advisors, Dugaboy Trust, Hunter Mountain, MAP #1, and MAP #2 |
| 11 | Avoidance of Transfer of Management Agreements as Constructive Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, 26 U.S.C. § 6502, and Other Applicable Law | NexPoint Advisors and HCMFA |
| 12 | Avoidance of Transfer of Management Agreements as Intentionally Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, 26 U.S.C. § 6502, and Other Applicable Law | NexPoint Advisors and HCMFA |
| 18 | Avoidance of CLO Holdco Transfer and Recovery of Transferred CLO Holdco Assets as Constructive Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, and Applicable State Law | James Dondero, Grant Scott, Get Good Trust, CLO Holdco, DAF Holdco, DAF, and Highland Dallas Foundation |
| 19 | Avoidance of CLO Holdco Transfer and Recovery of Transferred CLO Holdco Assets as Intentionally Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, and Applicable State Law | James Dondero, Grant Scott, Get Good Trust, CLO Holdco, DAF Holdco, DAF, and Highland Dallas Foundation |
| 20 | Avoidance of Obligations Under Massand Consulting Agreement as Constructively Fraudulent Under 11 U.S.C. § 544, 26 U.S.C. § 6502, and Applicable State Law | Massand LLC |
| 21 | Avoidance of Obligations Under Massand Consulting Agreement as Intentionally Fraudulent Under 11 U.S.C. § 544, 26 U.S.C. § 6502, and Applicable State Law | Massand Capital |
| 22 | Avoidance and Recovery of Certain Massand Transfers as Constructive Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, 26 U.S.C. § 6502, and Applicable State Law | James Dondero, Scott Ellington, Massand Capital, and SAS |
| 23 | Avoidance and Recovery of Certain Massand Transfers as Intentional Fraudulent Transfers Under 11 U.S.C. §§ 544 and 550, 26 U.S.C. § 6502, and Applicable State Law | James Dondero, Scott Ellington, Massand Capital, and SAS |
| 32 | Avoidance and Recovery of the Alleged Expense Transfers as Constructive Fraudulent Transfers Under 11 U.S.C. §§ 544, 548, and 550, and Other Applicable Law | James Dondero and Scott Ellington |
| 33 | Avoidance and Recovery of the Alleged Expense Transfers as Intentional Fraudulent Transfers Under 11 U.S.C. §§ 544, 548, and 550, and Other Applicable Law | James Dondero and Scott Ellington |

Of the 23 Defendants, **only one** has a pending, unresolved proof of claim on file in the Bankruptcy Case: CLO Holdco.[2] The rest of the Defendants have either never filed proofs of claim, have withdrawn their proofs of claim, or have had them disallowed during the pendency of the Bankruptcy Case.[3] Thus, 22 of the 23 Defendants have jury trial rights.[4] Further, none of the Defendants have consented to the Bankruptcy Court presiding over a jury trial or issuing final orders for that matter.[5]

Six motions to withdraw the reference (collectively, the "Motions to Withdraw") were subsequently filed by the following Defendants on the following dates:

• On January 18, 2022, Defendants Scott Ellington, Isaac Leventon, Frank Waterhouse, and CPCM, LLC (collectively, the "Former Employee Defendants") filed the Motion to Withdraw the Reference for Causes of Action in the Complaint Asserted Against the Former Employee Defendants [Adv. Docket No. 27] and their Brief in Support [Adv. Docket No. 28].

• On January 21, 2022, Defendants Mark A. Okada, The Mark & Pamela Okada Family Trust – Exempt Trust #1, Lawrence Tonomura in his Capacity as Trustee, The Mark & Pamela Okada Family Trust – Exempt Trust #2, and Lawrence Tonomura in his Capacity as Trustee (the "Okada Defendants") filed the Motion of the Okada Parties to Withdraw the Reference [Adv. Docket No. 36] and their Memorandum of Law in Support [Adv. Docket No. 37].

• On January 21, 2022, Defendants NexPoint Advisors L.P ("NexPoint") and Highland Capital Management Fund Advisors L.P. ("HCMFA") filed the Motion to Withdraw the Reference for the Causes of Action in the Complaint Asserted Against Defendants [Adv. Docket No. 39] and their Memorandum of Law in Support [Adv. Docket No. 40].

---

[2] CLO Holdco's claim (Claim No. 198) was objected to by the Litigation Trustee in an omnibus claims objection. CLO Holdco's has moved to ratify a second amended proof of claim. These matters are currently set for hearing on May 2, 2022.

[3] Actually, there are two withdrawals of proofs of claim that are not quite final. Specifically, those of Frank Waterhouse and CPCM. On March 24, 2022, the Reorganized Debtor filed a Bankruptcy Rule 9019 motion for the court to approve a settlement among the Litigation Trustee, Frank Waterhouse, and CPCM. Through the settlement motion, among other terms, Frank Waterhouse and CPCM have agreed to withdraw proofs of claim with prejudice. In return, the Litigation Trustee has agreed to withdraw Count 34 (the only claim asserted against Mr. Waterhouse), as to Mr. Waterhouse, with prejudice from the Complaint. The motion is currently set for hearing on May 2, 2022.

[4] *See, e.g., Grandfinanciera, S.A. v. Nordberg,* 109 S. Ct. 2782 (1989); *Lagenkamp v. Culp*, 111 S. Ct. 330 (1990).

[5] *See, e.g., Stern v. Marshall*, 564 U.S. 462 (2011).

9

• On January 25, 2022, Defendants James Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc. (the "Dondero Defendants") filed Defendants James D. Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc.'s Motion to Withdraw the Reference [Adv. Docket No. 45] and their Memorandum of Law in Support [Adv. Docket No. 46].

• On January 26, 2022, Defendant Grant James Scott III filed his Motion to Withdraw the Reference [Adv. Docket No. 50] and his Memorandum of Law in Support [Adv. Docket No. 41].

• On January 26, 2022, CLO Holdco, Ltd., Highland Dallas Foundation, Inc., Charitable DAF Fund, LP, and Charitable DAF Holdco, Ltd. (the "CLO Holdco-Related Defendants") filed their Motion to Withdraw the Reference [Adv. Docket No. 59] and their Brief in Support [Adv. Docket No. 59].

• On February 1, 2022, Defendants Hunter Mountain Investment Trust ("Hunter Mountain") and Rand PE Fund I, LP, Series 1 ("Rand" and together with Hunter Mountain, the "Hunter Mountain Defendants") filed a nominal joinder.

The six different Motions to Withdraw initially created six different civil actions before six different District Judges. These six actions were administratively consolidated, by an order signed and entered on March 22, 2022, in Civil Action No. 3:22-CV-203-S [Docket No. 13], and are now pending before District Judge Karen Scholer.

After holding a status conference on the Motions to Withdraw on March 17, 2022, as required by Local Bankruptcy Rule 5011, the Bankruptcy Court now submits the following report and recommendation to the District Court. Based on the reasoning set forth below, the Bankruptcy Court recommends that the Motions to Withdraw be granted, *but only at such time as the Bankruptcy Court certifies to the District Court that the lawsuit is trial-ready*. The Bankruptcy Court further recommends that the District Court *defer to the Bankruptcy Court the handling of all pre-trial matters*.

## III.   LEGAL STANDARDS

### A.   *Some General Principles Regarding Discretionary Withdrawal of the Reference*

First, some basic discussion is in order regarding discretionary or permissive withdrawal of the reference. The concept is described in 28 U.S.C. § 157(d) as follows: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."

The statute does not define "cause shown," but the United States Court of Appeal for the Fifth Circuit, interpreting the United States Supreme Court case of *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), has identified a number of factors for courts to consider in determining whether permissive withdrawal of the reference is appropriate: (1) whether the matter is core or noncore; (2) whether the matter involves a jury demand; (3) whether withdrawal would further uniformity in bankruptcy administration; (4) whether withdrawal would reduce forum-shopping and confusion; (5) whether withdrawal would foster economical use of debtors' and creditors' resources; and (6) whether withdrawal would expedite the bankruptcy process. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985). Courts in this District have placed an emphasis on the first two factors. *See Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 115-23 (N.D. Tex. 2006).

As explained by the Supreme Court in *Stern v. Marshall*, Congress has divided bankruptcy proceedings (*i.e.,* adversary proceedings or contested matters within a bankruptcy case)—over which there is bankruptcy subject matter jurisdiction—into three different categories: (a) those that "aris[e] under" Title 11; (b) those that "aris[e] in" a Title 11 case; and (c) those that are "related to" a case under Title 11. 28 U.S.C. § 1334(b). *Stern v. Marshall*, 564 U.S. 462, 473-474 (2011). Further, those that arise under Title 11 or arise in a Title 11 case are defined as "core" matters and those that are merely "related to" a Title 11 case are defined as "non-core" matters. The significance of the "core"/"non-core" distinction is that bankruptcy courts may statutorily enter

11

final judgments in "core" proceedings in a bankruptcy case, while in "non-core" proceedings, the bankruptcy courts instead may only (absent consent from all of the parties) submit proposed findings of fact and conclusions of law to the district court, for that court's review and issuance of final judgment. This is the statutory framework collectively set forth in 28 U.S.C. § 1334 and 28 U.S.C. § 157. But while a proceeding may be "core" in nature, under 28 U.S.C. § 157(b)(2), and the bankruptcy court, therefore, has the *statutory* power to enter a final judgment on the claim under 28 U.S.C. § 157(b)(1), *Stern* instructs that any district court, in evaluating whether a bankruptcy court has the ability to issue final orders and judgments, must resolve not only: (a) whether the bankruptcy court has the statutory authority under 28 U.S.C. § 157(b) to issue a final judgment on a particular claim; but also (b) whether the conferring of that authority on an Article I bankruptcy court is *constitutional* (and this turns on whether "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process"). *Stern*, 564 U.S. at 499.

Pursuant to 28 U.S.C. § 157(e), if a litigant has the right to a jury trial under applicable non-bankruptcy law, a bankruptcy court may only conduct the jury trial if: (a) the matters to be finally adjudicated fall within the scope of bankruptcy subject matter jurisdiction; (b) the district court of which the bankruptcy court is a unit authorizes the bankruptcy court to do so; and (c) all of the parties consent.[6]

Starting first with whether a right to a jury trial even exists, the Seventh Amendment, of course, provides a jury trial right in cases in which the value in controversy exceeds twenty dollars and the cause of action is to enforce statutory rights that are at least analogous to rights that were

---

[6] "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e) (West 2019).

tried at law in the late 18th century English courts. *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 708 (1999). Suits "at law" refers to "suits in which legal rights were to be ascertained and determined" as opposed to "those where equitable rights alone were recognized and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). This analysis requires two steps: (1) a comparison of the "statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity"; and (2) whether the remedy sought is "legal or equitable in nature . . . [t]he second stage of this analysis" being "more important than the first." *See Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 205 (S.D. Tex. 2008) (quoting *Granfinanciera*, 492 U.S. at 42).

It is well established that the act of filing a proof of claim can operate to deprive a creditor of a jury trial right, by subjecting a claim, that would otherwise sound only in law, to the equitable claims allowance process. *See Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990). Withdrawing a claim from the claims allowance process of the bankruptcy courts prior to the commencement of an adversary proceeding can serve to preserve a right to a jury trial. *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) ("[T]he successful withdrawal of a claim pursuant to Fed. R. Bankr. P. 3006 prior to the trustee's initiation of an adversarial proceeding renders the withdrawn claim a legal nullity and leaves parties as if the claim had never been brought."); *In re Goldblatt's Bargain Stores, Inc.*, No. 05 C 03840, 2005 WL 8179250, at *5 (N.D. Ill. Dec. 6, 2005) (claims withdrawn before adversary proceeding are as if never filed); *see generally, In re Manchester, Inc.*, No. 08-30703-11-BJH, 2008 WL 5273289, at *3-6 (Bankr. N.D. Tex. Dec. 19, 2008) (permissible to withdraw a claim to preserve jury trial right).

**B. Post-Confirmation Bankruptcy Subject Matter Jurisdiction**

Defendants argue here that this is all more than simply a matter of "permissive withdrawal of the reference" being applicable. Specifically, the Defendants argue that bankruptcy subject matter jurisdiction is lacking with regard to the Plaintiff's various causes of action (*i.e.,* all 36 causes of action) pursuant to the Fifth Circuit's rulings in *Craig's Stores of Texas, Inc. v. Bank of Louisiana (In re Craig's Stores of Texas, Inc.)*, 266 F.3d 388 (5th Cir. 2001) and *Newby v. Enron Corp. (In re Enron Corp. Securities)*, 535 F.3d 325 (5th Cir. 2008).

In *Craig's Stores*, the Fifth Circuit held that a bankruptcy court could not exercise subject matter jurisdiction over a post-confirmation breach of contract claim asserted by a reorganized debtor against its bank in connection with an alleged post-confirmation breach. The Fifth Circuit stated that, following confirmation of a plan, "expansive bankruptcy court jurisdiction" is no longer "required to facilitate 'administration' of the debtor's estate," and further noted: "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Craig's Store's*, 266 F.3d at 390. *Craig's Stores* has often been cited for the notion that bankruptcy subject matter jurisdiction significantly narrows post-confirmation of a Chapter 11 plan.

The Fifth Circuit elaborated on its *Craig's Store's* holding in *Enron*, in holding that confirmation of a plan does not divest a court of bankruptcy subject matter jurisdiction with regard to an action commenced prior to confirmation. *Enron*, 535 F.3d at 335. Noting that "Section 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation," the Fifth Circuit explained that "three factors were critical to its decision" in *Craig's Stores*:

> [F]irst, the claims at issue "principally dealt with post-confirmation relations between the parties;" second, "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization;" and third, "no facts or law deriving from the reorganization or the plan [were] necessary to the

14

claim." *Craig's Stores*, 266 F.3d at 391. Notwithstanding its statement that bankruptcy jurisdiction exists after plan confirmation only "for matters pertaining to the implementation or execution of the plan," the facts in *Craig's Stores* were narrow; they involved post-confirmation claims based on post-confirmation activities.

*Id.* (citing *Craig's Stores*, 266 F.3d at 389–91).

Thereafter, numerous courts within the Fifth Circuit have held that the exception to jurisdiction at issue in *Craig's Store's* does not arise where, as here, a trustee of a litigation trust created under a confirmed plan of reorganization for the benefit of creditors pursues post-confirmation causes of action, predicated on pre-confirmation conduct, for the creditors' benefit. *See Faulkner v. Lane Gorman Trubitt, LLC (In re Reagor-Dykes Motors, LP)*, 2021 WL 4823525, at *2–4 (Bankr. N.D. Tex. Oct. 14, 2021) (bankruptcy court had post-confirmation subject matter jurisdiction over a litigation trustee's state law claims "based on pre-petition conduct," the recoveries of which would "affect distributions to creditors under the confirmed plan"); *Dune Operating Co. v. Watt (In re Dune Energy, Inc.)*, 575 B.R. 716, 725–26 (Bankr. W.D. Tex. 2017) (bankruptcy court had post-confirmation subject matter jurisdiction over lawsuit asserting state law claims brought by liquidating trustee established under Chapter 11 plan); *Brickley for Cryptometrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 830–32 (W.D. Tex. 2017) (holding that post-confirmation "related to" subject matter jurisdiction existed over creditors' trust's post-confirmation suit asserting pre-confirmation Chapter 5 claims and non-core state law claims where the plan vested the claims in the trust); *Schmidt v. Nordlicht*, 2017 WL 526017, at *2–3 (S.D. Tex. Feb. 9, 2017) (holding that post-confirmation "related to" subject matter jurisdiction existed over state law claims aimed at pre-confirmation conduct brought by a litigation trustee established by a confirmed plan); *Ogle v. Comcast Corp. (In re Houston Reg'l*, 547 B.R. 717, 736 (Bankr. S.D. Tex. 2016) (bankruptcy court had post-confirmation subject

matter jurisdiction over lawsuit brought by litigation trustee established under confirmed Chapter 11 plan that asserted state law claims); *Kaye v. Dupree (In re Avado Brands, Inc.)*, 358 B.R. 868, 878–79 (Bankr. N.D. Tex. 2006) (bankruptcy court had post-confirmation jurisdiction over litigation trustee's pre-confirmation core and non-core claims that were transferred to the trustee for prosecution under the plan, where proceeds were to be distributed to creditors); *Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 221 (Bankr. N.D. Tex. 2004) (bankruptcy court had post-confirmation jurisdiction over claims preserved under Chapter 11 plan and assigned to the creditor's trust for prosecution with recovery to be distributed to creditors).

The Bankruptcy Court agrees with these numerous holdings and believes that they are consistent with *Craig's Stores*. First, unlike the post-confirmation contract dispute at issue in *Craig's Stores*, the claims here all arise from **pre-confirmation** conduct. Second, "antagonism" plainly existed between the parties at the date of the reorganization. Contrary to Defendants' assertion that an action must be filed prior to confirmation, courts in the Fifth Circuit consistently hold that "where the claims are based on pre-petition conduct and the cause of action appears to have accrued before the bankruptcy, the antagonism factor is satisfied." *Faulkner*, 2021 WL 4823525, at *3; *see also Schmidt v. Nordlicht*, 2017 WL 526017, at *3 (while "no claim was pending before the bankruptcy," "antagonism existed in the relevant sense; the defendant's alleged wrongdoing harmed the company prior to the bankruptcy, and the company's cause of action appears to have accrued before the bankruptcy"); *Brickley*, 566 B.R. at 831 (confirming that "actual litigation is not necessary to find the existence of antagonism"); *Coho Oil*, 309 B.R. at 221 (finding this factor satisfied where "claims were preserved under the Plan and assigned to the creditor's trust for prosecution"). Moreover, the order confirming the Highland Plan expressly stated that "Implementation of the Plan" shall include the "establishment of" and "transfer of Estate

16

Causes of Action" to "the Litigation Sub-Trust," the Trustee of which is charged with "investigating, pursuing, and otherwise resolving any Estate Claims." *See* Confirmation Order at ¶ 42(b); *see also* Plan § IV. A ("the Plan will be implemented through . . . the Litigation Sub-Trust"); *id*. at § I.B.4 ("The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims," the proceeds of which "shall be distributed . . . to the Claimant Trust for distribution to the Claimant Trust Beneficiaries . . . ."). Courts within the Fifth Circuit have held that, where a plan "contemplates the prosecution of the claims and the distribution of . . . recovery to creditors under the Plan, and the prosecution of the claims will thus impact compliance with, or completion of, the Plan, the *Craig's Stores* test for post-confirmation jurisdiction is satisfied." *Ernst & Young LLP v. Pritchard (In re Daisytek, Inc.)*, 323 B.R. 180, 185–86 (N.D. Tex. 2005) (bankruptcy court had post-confirmation subject matter jurisdiction over a Rule 2004 motion brought by the trustee of a creditors' trust, established under a confirmed plan, relating to potential accounting malpractice investigation); *see also First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In Re Biloxi Casino Belle Inc.)*, 368 F.3d 491, 496 (5th Cir. 2004) (a suit pertained to the implementation and execution of the plan where recovery had been assigned to a "liquidating trust . . . for the benefit of unsecured creditors").

Accordingly, the Bankruptcy Court concludes that the 36 counts in the Adversary Proceeding "[w]ithout doubt . . . 'pertain[] to implementation and execution'" of the plan and the Defendants arguments to the contrary have no merit. *See Dune Energy*, 575 B.R. at 725–26 (quoting Craig's Stores).[7]

---

[7] The court in *Schmidt* also noted that "*Craig's* turned on the idea that a reorganized debtor's confirmed plan marked the end of the bankruptcy and the emergence of a new reorganized business entity not dependent on the bankruptcy court's protection," commenting that while "that rule makes a good deal of sense in the reorganization context . . . in a liquidation case like this one there is no entity that emerges from the bankruptcy to continue

### C.  *Mandatory Withdrawal of the Reference*

Withdrawal of the reference pursuant to 28 U.S.C. § 157(d) provides for the possibility of mandatory withdrawal of the reference from the bankruptcy court: "The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Under the precedent of this District, in *Nat'l Gypsum Co.* and *Pilgrim's Pride*, mandatory withdrawal of the reference must be granted when: (1) the motion was timely filed; (2) a non-Bankruptcy Code federal law at issue has more than a *de minimis* effect on interstate commerce; and (3) the proceeding involves a substantial and material question of non-Bankruptcy Code federal law. *See U.S. Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.),* 145 B.R. 539, 541 (N.D. Tex. 1992) (stating "withdrawal must be granted if it can be established (1) that the proceeding involves a substantial and material question of both Title 11 and non-Bankruptcy Code federal law; (2) that the non-Code federal law has more than a de minimis effect on interstate commerce; and (3) that the motion for withdrawal was timely."); *see also City of Clinton, Ark. v. Pilgrim's Pride Corp.*, No. 4:09-CV-386-Y, 2009 WL 10684933, at *1 (N.D. Tex. Aug. 18, 2009).

It has been well established that "mandatory withdrawal is to be applied narrowly" and to "prevent 157(d) from becoming an 'escape hatch.'" *Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*, 2009 U.S. Dist LEXIS 102134, at *6 (N.D. Tex. Oct. 1, 2009), *adopted in its entirety*, 2009 U.S. Dist. LEXIS 102071 (N.D. Tex. Nov. 3, 2009). Unsubstantiated assertions that

---

operations." *Schmidt,* 2017 WL 526017, at *3. Here, although the Plan is one of reorganization, it is "an 'a sset monetization plan' providing for the orderly wind-down of the Debtor's estate, including the sale of assets and certain of its funds over time, with the Reorganized Debtor continuing to manage certain other funds." Confirmation Order at ¶ 2. Thus, as in *Schmidt*, the role of the Litigation Trust "is nothing more or less than maximizing the pot of money for distribution to creditors." *Schmidt*, 2017 WL 526017, at *3.

non-bankruptcy federal law issues are substantial and material to an adversary proceeding are insufficient to warrant mandatory withdrawal. *Keach v. World Fuel Servs. Corp, (In re Montreal Me. & Atl. Ry.)*, 2015 U.S. Dist. LEXIS 74006, at *21-*23 (D. Me. June 8, 2015) (insufficient basis for mandatory withdrawal where party failed to demonstrate specifically why a court would have to "engage in anything beyond routine application of current law" and the party "tries to kick up some dust to make the relevant analysis seem complicated").

*Why is the issue of mandatory withdrawal of the reference even being raised here*—when the Bankruptcy Court and all the parties agree that permissive withdrawal of the reference should be exercised here, since mere non-core "related to" claims are pervasive and jury trial rights exist? In other words, everyone agrees the reference should be withdrawn—it's just a matter of *when*. Should withdrawal happen immediately or when the action is trial-ready?

The Defendants advocate for immediate withdrawal on the grounds that the Bankruptcy Court does not have authority to preside over the "other federal law" issues present with regard to certain causes of action—so this should preclude the Bankruptcy Court from even presiding over pre-trial matters.

The court does not agree with the Defendants. The "other federal law" issues that may be involved in this Adversary Proceeding are not pervasive or particularly complicated. There are, admittedly, one or more Tax Code provisions at issue. But bankruptcy courts routinely consider tax matters. Defendants' attempts to characterize what appear to be commonplace tax law issues here as sufficient to mandate withdrawal of the reference seem disingenuous.

Certain of the Defendants (HCMFA and NexPoint Advisors) contend that federal securities laws are implicated by the Adversary Proceeding. But the Plaintiff has not asserted any claims that are based on federal securities law statutes. Rather, HCMFA and NexPoint Advisors have

merely made barebone references to potential defenses that might implicate federal securities laws. While certain of the parties in the litigation are "registered investment advisors," this does not mean that the parties' alleged conduct will implicate broad questions of federal securities law. "If a party to a case is federally regulated, such as a bank or securities brokerage, but no federal regulation applies to the dispute at hand, the court need not withdraw the proceeding because no federal regulation will have to be considered." *Contemp. Lithographers, Inc. v. Hibbert*, 127 B.R. 122, 125 (M.D.N.C. 1991). The rule advanced by HCMFA and NexPoint Advisors would mean that bankruptcy courts would be unable to hear virtually any claims against any investment advisor or other financial entity regulated under the federal securities laws.

In summary, mandatory withdrawal of the reference is inapplicable here.

## D. CONCLUSION

In light of: (a) the non-core, related-to claims in the Complaint; (b) the jury trial rights of most Defendants; (c) the fact that only one Defendant out of 23 still has a proof of claim pending— that might arguably negate jury trial rights; and (d) the lack of consent by the Defendants to the Bankruptcy Court presiding over a jury trial or issuing final judgments, the Bankruptcy Court recommends that the District Court: refer all pre-trial matters to the Bankruptcy Court, and grant the Motions to Withdraw upon certification by the Bankruptcy Court that the parties are trial-ready.

With regard to such pre-trial matters, the Bankruptcy Court further recommends that, to the extent a dispositive motion is brought that the Bankruptcy Court determines should be granted and would finally dispose of claims in this Adversary Proceeding, the Bankruptcy Court should submit a report and recommendation to the District Court for the District Court to either adopt or reject.

**\*\*\*END OF REPORT AND RECOMMENDATION\*\*\***

# EXHIBIT 13



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 29, 2022**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>    Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND | Adv. Pro. No. 21-03076-sgj |

---

[1]    The last four digits of the Reorganized Debtor's taxpayer identification number are (8357).  The Reorganized Debtor is a Delaware limited partnership.  The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.



GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,

Defendants.

## AGREED PROTECTIVE ORDER

This Agreed Protective Order (the "Order") governs any document, information, or other thing that has been or will be produced or received by a Party (as defined below) in the action *Kirschner v. Dondero et al.*, Adv. Pro. No. 21-03076-sgj (the "Action"), pending in the United States Bankruptcy Court for the Northern District of Texas (the "Court") (collectively, the "Discovery Materials").  Discovery Materials include, without limitation, testimony adduced at depositions; responses to interrogatories; responses to requests for admission (and documents produced in connection with such responses); and documents and things produced voluntarily or in response to any type of request.  "Party" or "Parties" means any person or entity that (1) produces, (2) designates, (3) receives, formally or informally, or (4) reviews any Discovery Materials.

## TERMS OF AGREED ORDER

1.    Confidential Information.  As used in this Order, "Confidential Information" means all documents, data, reports, interpretations, forecasts, financial and business projections, records, agreements, contracts, business plans, marketing materials and vendor agreements or

programs (whether in oral or written form, electronically stored, or otherwise) containing or otherwise reflecting information provided by or on behalf of any Party or any of the Parties' respective Representatives (as defined below) before, on, or after the date hereof, and all reproductions of such information (whether in written form, electronically stored, or otherwise or substantially derived from the information described above), that the producing Party reasonably believes in good faith is confidential or sensitive proprietary, personal, commercial, financial, or business information or that is otherwise subject to protection under a pre-existing agreement or applicable law or regulation.  Accordingly, for example, "Confidential Information" does not include information that (a) is or becomes generally available to the public other than as a result of disclosure by a Party or any of the Parties' Representatives in breach of this Order; (b) was lawfully within a Party's possession prior to it being furnished to such Party in the Action; (c) becomes available to a Party from a source other than the producing Party or any of its Representatives, provided that such source is not, to such receiving Party's knowledge, bound by a confidentiality agreement with, or other contractual, legal or fiduciary obligation of confidentiality to, the producing Party with respect to such information; or (d) is independently developed by a receiving Party without reference to or reliance upon any information furnished to such receiving Party by or on behalf of the producing Party.

2.     Use and Disclosure of Confidential Information.  Subject to the terms of this Order, each Party shall (i) keep the Confidential Information confidential in accordance with the terms of this Order; (ii) not disclose any Confidential Information except in accordance with the terms of this Order; (iii) not use any Confidential Information in any way other than in connection with the Action; and (iv) hold and treat all Confidential Information in confidence and with the same degree of care that such Party exercises with regard to its own Confidential Information;

*provided, however*, that each Party may disclose any Confidential Information (A) to a party to the Action and, as applicable, such party's directors, officers, trustees, and employees; (B) counsel and other professionals retained by a party to the Action, including but not limited to experts, and regular or temporary employees and service vendors of such counsel and other professionals; (C) to the extent permitted pursuant to paragraph 9 below; (D) to the United States Bankruptcy Court for the Northern District of Texas and its personnel as long as the information is filed under seal under the procedures set forth in L.B.R. 9077-1; (E) any person who is indicated on the face of a document or its related documents to have been an author, addressee or copy recipient of such document, an actual or intended recipient of such document, or in the case of meeting minutes, an attendee of the meeting; (F) witnesses who have been noticed, subpoenaed, or are on a witness list for hearing or trial, and the witness's counsel, (i) either at a deposition or in court proceedings or (ii) for purposes of witness preparation, in each case to the extent that such disclosure is reasonably necessary for the subject matter of testimony, provided such deponent or witness has agreed to be bound by the terms of this Protective Order and confirmed such agreement by signing Exhibit A hereto; and (G) in the case of a deposition or court hearing, to any court reporter, stenographer, or videographer in attendance.   For purposes of this Order, "Representatives" means a Party's parent(s), subsidiaries, affiliates, officers, directors, employees, contractors, attorneys (whether in-house or outside counsel), financial advisors and other professionals engaged by the Party, or its agents and representatives.

        3.    <u>Highly Confidential Information</u>.   A producing Party may designate information that it reasonably believes in good faith is so personally, economically, or competitively sensitive that (a) disclosure would materially affect or threaten injury to its personal, commercial, or financial interests, and (b) the protections provided to Confidential Information in

this Order are insufficient, as being restricted Highly Confidential Information (the "Highly Confidential Information").

4.      Use and Disclosure of Highly Confidential Information.  Discovery Materials designated as "Highly Confidential" may only be viewed by the people and entities identified in paragraphs 2(iv) (B), (C), (D), (E), (F) or (G).  Discovery Materials designated as "Highly Confidential" may not otherwise be disclosed without the producing Party's prior written consent or further order of the Court.

5.      Designating Confidential and Highly Confidential Information.  Where practicable, the producing Party may designate Discovery Materials as Confidential or Highly Confidential by applying the legend "Confidential" or "Highly Confidential" to the Discovery Materials.  In the case of data stored in electronic form ("ESI"), the legend shall be printed on the cover or container of the disk, tape or other medium in which the electronic data is produced and/or on the ESI itself.  If such measures are not practicable, the producing Party shall designate the Discovery Materials as Confidential or Highly Confidential through other feasible means.

6.      Disputes Over Designation of Confidential Information.  In the event that any Party objects to any designation of Discovery Materials as Confidential Information (the "Objecting Party"), the Objecting Party shall notify the producing or designating Party in writing, stating the grounds of the objection.  The producing or designating Party shall have ten (10) business days following the receipt of an objection from the Objecting Party of any Confidential Information designation to attempt to resolve the objection, at the end of which the Objecting Party may seek a ruling from the Court by written notice and a motion and pursuant to the Court's individual rules and procedures that such information should not be treated as Confidential

Information.  For the avoidance of doubt, the burden of establishing that any Discovery Materials are Confidential Information shall be borne by the producing or designating Party.

7.      <u>Disputes Over Designation of Highly Confidential Information.</u>  In the event that any Party objects to any designation of Discovery Materials as Highly Confidential Information, the Objecting Party shall notify the producing or designating Party in writing, stating the grounds of the objection.  The producing or designating Party shall have five (5) business days following receipt of an objection from the Objecting Party of any Highly Confidential Information designation to attempt to resolve the objection, at the end of which, if the dispute is not resolved, the producing or designating Party must seek a ruling from the Court by written notice and a motion and pursuant to the Court's individual rules and procedures that such information should be treated as Highly Confidential Information.  In the absence of such a filing within five (5) business days from the receipt of the objection, the information will be deemed Confidential Information (and not Highly Confidential Information) under this Order.  For the avoidance of doubt, the burden of establishing that any Discovery Materials are Highly Confidential Information shall be borne by the producing or designating Party.

8.      <u>Use of Discovery Material in Open Court.</u>  Counsel for parties to the Action shall confer on such procedures as are necessary to protect the confidentiality of Confidential Material or Highly Confidential Material used in the course of any Court proceeding, and in the event counsel cannot agree on such procedures, the question shall be submitted to the Court.

9.      <u>Depositions.</u>  During any deposition or interview, if counsel for any Party intends to use a document marked "Confidential" or "Highly Confidential," or reasonably believes that any answer to a question will result in the disclosure of Confidential Information or Highly

Confidential Information, counsel may require that all persons other than those entitled to view

the Confidential Information or Highly Confidential Information, as the case may be, leave the

room during the relevant portion of the deposition or interview.  Any Party shall have the right to

designate on the record, or within ten (10) business days following receipt of the final transcript

of the deposition, any portion of the deposition transcript as Confidential Information or Highly

Confidential Information.  Deposition transcripts shall be treated as Highly Confidential during

the ten-day period following any deposition.  Transcripts of testimony or portions thereof

designated as containing Confidential Information or Highly Confidential Information during the

deposition shall be appropriately marked.  Designation or lack of designation of a deposition

transcript shall not alter the confidentiality designation of Discovery Materials entered as exhibits

at depositions.

          10.   <u>Legally Required Disclosure</u>.  If any Party is requested or required (by oral

questions, interrogatories, requests for information or documents in legal proceedings, subpoena,

civil investigative demand or other similar process, or by applicable law or the rules or regulations

of any regulatory authority having jurisdiction over such Parties) to disclose in connection with a

matter that is not the Action any of the Confidential Information or Highly Confidential

Information, such Party shall provide the Party that produced or designated such information with

prompt written notice of any such request or requirement so that the producing or designating Party

may seek a protective order or other remedy, and/or waive compliance with the provisions of this

Order.  In the absence of a protective order or other remedy at the time of the deadline for the

production of the Confidential Information or Highly Confidential Information (including any

extensions of such deadline), the Party may, without liability hereunder, disclose that portion of

the Confidential Information or Highly Confidential Information which is legally required to be disclosed.

11.    <u>No Waiver</u>.    The failure to designate any Discovery Materials as Confidential Information or Highly Confidential Information shall not constitute a waiver of such claim.  If at any time any of the Parties believes that certain testimony or Discovery Materials that were previously produced should have been designated as Confidential Information or Highly Confidential Information, that Party shall promptly notify in writing all of the other Parties who have received such testimony or Discovery Materials, and such designated testimony or Discovery Materials will thereafter be treated as Confidential Information or Highly Confidential Information under the terms of this Order.  If such information has been disclosed by a Party between the time of production or receipt of the transcript containing the testimony and the time at which a Party gives notice that the Discovery Materials are to be designated as Confidential Information or Highly Confidential Information, such disclosure shall not constitute a violation of this Order.

12.    <u>Claw Back of Inadvertently Produced Protected Materials</u>.    If Discovery Materials protected from disclosure under Federal Rule of Civil Procedure 26(b)(5) ("<u>Protected Materials</u>") are inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or work-product immunity for such information or any other information that may be protected from disclosure by the attorney-client privilege, work-product immunity, or any other legally cognizable privilege or other protection.  If the producing Party inadvertently or mistakenly produces Protected Materials, upon written request by the producing Party after the discovery of such inadvertent or mistaken production, the receiving Party shall use all commercially reasonable efforts to return or destroy the Protected Materials and all copies of it, including any work product containing, identifying, or

referencing such information, and the receiving Party shall not use such information for any purpose other than in connection with a motion to compel production of the information. The Parties shall not use any inadvertently produced Protected Materials, or information gleaned exclusively from any inadvertently produced Protected Materials, in connection with the Action, except to the extent that the inadvertently producing Party withdraws its designation of the relevant material as Protected Materials or that the Court determines that the relevant material was not properly designated as Protected Materials.

13.    <u>Limited Waiver of Privilege</u>. The Litigation Trustee agrees to voluntarily waive—solely with respect to the Defendants in this Action and solely for use in this Action—attorney-client privilege and work-product protection belonging to HCMLP as to documents and communications that relate to claims in the Action and were created prior to October 16, 2019 (the "<u>Litigation Trustee's Limited Waiver</u>").[2] Defendants agree, to the extent they claim any attorney-client privilege and work-product protections as to documents and communications that are produced to the Defendants subject to the Litigation Trustee's Limited Waiver, to voluntarily waive any such privileges and protections solely with respect to the Litigation Trustee and other Defendants in this Action and solely for use in this Action (the "<u>Defendants' Limited Waiver</u>" and, together with the Litigation Trustee's Limited Waiver, the "<u>Limited Waivers</u>"), and release the Litigation Trustee from any and all suits, actions, causes of action, damages and claims, known and unknown, that Defendants have or may have in connection with the production of any documents to the Defendants during the course of this Action subject to the Limited Waivers. The

---

[2]    The period prior to October 16, 2019 shall be referred to herein as the "<u>Limited Waiver Period</u>," and period from October 16, 2019 through the present shall be referred to as the "<u>Post-Petition Period</u>."

Litigation Trustee and Defendants do not waive any claim of attorney-client privilege, work-product protection, or other privilege or protection over any other document or communication, including, but not limited to, on the basis that any document or communication created during the Post-Petition Period relates to the same subject matter as any document or communication created during the Limited Waiver Period and subject to the Limited Waivers, and all claims of attorney-client privilege, work-product protection, or other privilege or protection over any document or communication created during the Post-Petition Period or not subject to the Limited Waivers are expressly preserved. Defendants (i) shall not assert in this Action or in any other proceeding, and expressly waive any argument, that the Litigation Trustee's voluntary production of any document or communication subject to the Litigation Trustee's Limited Waiver in this Action is the basis of a waiver of attorney-client privilege, work-product protection, or other privilege or protection with respect to a document or communication created during the Post-Petition Period or not subject to the Limited Waivers, and (ii) agree not to seek, and expressly waive the right to seek, the production of any document or communication created during the Post-Petition Period or not subject to the Limited Waivers that is withheld on the grounds of attorney-client privilege, work-product protection, or other privilege or protection, on the basis that any such document or communication relates to the same subject matter as any document or communication subject to the Litigation Trustee's Limited Waiver. For the avoidance of doubt, the Litigation Trustee and Defendants do not waive and expressly preserve all other bases to seek production of any document or communication created during the Post-Petition Period or not subject to the Limited Waivers, including, but not limited to, on the basis of subject matter waiver, if any, arising from disclosures other than those made subject to the Limited Waivers set forth in this paragraph. For all purposes other than other than the prosecution or defense of claims in, or the settlement of, the Action, the

Discovery Materials produced subject to the Limited Waivers shall remain subject to all applicable attorney-client privileges, work-product protections, or other privileges or protections under Federal Rule of Evidence 502(d), as incorporated by Federal Rule of Bankruptcy Procedure 9017, and this Order shall be interpreted to provide the maximum protection to the Litigation Trustee and Defendants allowed by Federal Rule of Evidence 502(d).

14.    <u>Notice to Non-Parties Regarding the Limited Waivers</u>. The filing on the above-captioned docket of this Agreed Protective Order and the accompanying Motion shall serve as notice to non-parties to the Agreed Protective Order that the Litigation Trustee and Defendants are waiving certain limited attorney-client privileges and work-product protections. To the extent any non-party to the Agreed Protective Order has concerns that HCMLP has possession of documents or communications from before October 16, 2019, over which the non-party to the Agreed Protective Order asserts a claim of attorney-client privilege, work-product protection, or other privilege or protection, such non-party shall have fourteen (14) days from the date the Court approves the Agreed Protective Order to assert such claims of attorney-client privilege, work-product protection, or other privilege or protection. Upon any such notification, the Litigation Trustee will work with such non-party to the Agreed Protective Order in good faith to evaluate the validity of the assertion and take steps to protect any valid claims of attorney-client privilege, work-product protection, or other privilege or protection over any document or communication that would be subject to the Limited Waivers. Nothing contained herein shall limit any valid protections to any non-party to the Agreed Protective Order allowed by Federal Rule of Evidence 502(d), as incorporated by Federal Rule of Bankruptcy Procedure 9017.  To the extent any materials subject to an attorney-client privilege, work-product protection, or other privilege or

protection belonging to a non-party to the Agreed Protective Order is inadvertently produced, such materials shall be subject to the claw back provisions set forth in paragraph 12 herein.

15. <u>No Bar Against Seeking Further Protection</u>.  Nothing in this Order shall be construed as preventing any Party from seeking further protection for or disclosure of any Discovery Material.

16. <u>No Admission Regarding Admissibility or Relevancy</u>.  Nothing in this Order shall be construed to affect in any way the admissibility or relevance of any Discovery Material or other evidence.

17. <u>Use and Disclosure of Discovery Materials</u>. No Discovery Materials may be used for any reason other than the prosecution or defense of claims in, or the settlement of, the Action.

18. <u>No Bar to Use of Party's Own Discovery Material</u>.  This Order shall have no effect on, and shall not apply to, a producing Party's use or disclosure of its own Discovery Materials for any purposes whatsoever.

19. <u>Conclusion of Litigation and Return of Confidential Information</u>.  Within sixty (60) calendar days after final judgment in this Action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement, each Party or other person subject to the terms of this Protective Order is under an obligation to destroy or return to the producing Party all materials and documents containing Confidential Information or Highly Confidential Information, and to certify to the producing Party that this destruction or return has been done.  However, outside counsel for any Party is entitled to retain all court papers,

trial transcripts, exhibits, and attorney work product provided that any such materials are maintained and protected in accordance with the terms of this Agreed Protective Order.

        20.    <u>Exclusive Jurisdiction.</u>  This Court retains exclusive jurisdiction for matters arising from or related to this Order.  The Court further reserves the right to amend this Order upon a motion of any party in interest after notice and a hearing.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 24 2022

Respectfully submitted,

**SIDLEY AUSTIN LLP**

/s/ *Paige Holden Montgomery*
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue, Suite 2000
Dallas, Texas 74201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

-and-

**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
Susheel Kirpalani (admitted *pro hac vice*)
Deborah J. Newman (admitted *pro hac vice*)
Robert Loigman (admitted *pro hac vice*)
Benjamin I. Finestone (admitted *pro hac vice*)
Calli Ray (admitted *pro hac vice*)
Alexandre J. Tschumi (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000

*Counsel for the Marc. S. Kirschner, as
Litigation Trustee of the Highland Litigation
Sub-Trust*

**KANE RUSSELL COLEMAN LOGAN PC**

/s/ *John J. Kane*
John J. Kane
Brian W. Clark
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Facsimile: (214) 777-4299

*Counsel for Defendant Grant James Scott III*

**KELLY HART PITRE**

/s/ *Louis M. Philips*
Louis M. Phillips
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Amelia L. Hurt
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
Michael D. Anderson
Katherine T. Hopkins
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

*Counsel for Defendants CLO Holdco, Ltd., Highland Dallas Foundation, Inc., Charitable DAF Fund, LP, and Charitable DAF Holdco, Ltd.*

**STINSON L.L.P.**

/s/ *Deborah Deitsch-Perez*
Deborah Deitsch-Perez
3102 Oak Lawn Avenue. Suite 777
Dallas, Texas 75219
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendants NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P.*

**DLA PIPER LLP**

/s/ *Amy L. Ruhland*
Amy L. Ruhland
303 Colorado Street, Suite 3000
Austin, Texas 78701
Telephone: (512) 457-7000
Facsimile: (512) 457-7001

Jason M. Hopkins
Texas Bar No.24059969
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

*Counsel for Defendants James D. Dondero,
Strand Advisors, Inc., The Dugaboy
Investment Trust, The Get Good Trust,
Hunter Mountain Investment Trust and Rand
PE Fund I, LP, Series I*

**BAKER & MCKENZIE LLP**

/s/ *Michelle Hartmann*
Michelle Hartmann
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099

and

Debra A. Dandeneau
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875

*Counsel for Scott Ellington and
Isaac Leventon*

**SULLIVAN & CROMWELL LLP**

/s/ *Brian D. Glueckstein*
Brian D. Glueckstein
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

and

Cortney C. Thomas
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile: (214) 327-5001

*Counsel for Mark Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #1, and The Mark and Pamela Okada Family Trust – Exempt Trust #2*

### End of Order ###

**Exhibit A**

<u>Agreement to Be Bound by Protective Order</u>

I, _____ , of _____ , declare under

penalty of perjury that I have read in its entirety and understand the Protective Order entered by

the United States Bankruptcy Court for the Northern District of Texas in *Kirschner v. Dondero et

al.*, Adv. Pro. No. 21-03076-sgj (the "Action").

I agree to comply with and to be bound by all the terms of this Protective Order, and I

understand and acknowledge that failure to comply could expose me to sanctions and

punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner

any information or item that is subject to this Protective Order to any person or entity except in

strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States Bankruptcy Court for the

Northern District of Texas for the purpose of enforcing the terms of this Protective Order, even if

such enforcement proceedings occur after termination of the Action.

Date: _____

City and State: _____

Printed Name: _____

Signature: _____

# EXHIBIT 14



**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON
THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 4, 2023**

_____
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 21-03076-sgj |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN | STIPULATION AND PROPOSED FOURTH AMENDED SCHEDULING ORDER |

---

[1]  The last four digits of the Reorganized Debtor's taxpayer identification number are (8357).  The Reorganized Debtor is a Delaware limited partnership.  The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.


1934054230404000000000005

INVESTMENT TRUST; MARK & PAMELA OKADA
FAMILY TRUST – EXEMPT TRUST #1 AND
LAWRENCE TONOMURA AS TRUSTEE OF MARK
& PAMELA OKADA FAMILY TRUST – EXEMPT
TRUST #1; MARK & PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #2 AND LAWRENCE
TONOMURA IN HIS CAPACITY AS TRUSTEE OF
MARK & PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #2; CLO HOLDCO, LTD.;
CHARITABLE DAF HOLDCO, LTD.; CHARITABLE
DAF FUND, LP.; HIGHLAND DALLAS
FOUNDATION; RAND PE FUND I, LP, SERIES 1;
MASSAND CAPITAL, LLC; MASSAND CAPITAL,
INC.; AND SAS ASSET RECOVERY, LTD.,

                    Defendants.

## STIPULATION AND PROPOSED FOURTH AMENDED SCHEDULING ORDER

This stipulation and proposed fourth amended scheduling order (the "Stipulation") is made

and entered into, subject to Court approval, in the above-captioned adversary proceeding (the

"Adversary Proceeding") by and among Marc S. Kirschner, as Litigation Trustee of the Litigation

Sub-Trust (the "Trustee"), and James D. Dondero; Mark A. Okada; Scott Ellington; Isaac

Leventon; Grant James Scott III; Strand Advisors, Inc.; NexPoint Advisors, L.P.; Highland Capital

Management Fund Advisors, L.P.; Dugaboy Investment Trust and Nancy Dondero, as Trustee of

Dugaboy Investment Trust; Get Good Trust and Grant James Scott III, As Trustee of Get Good

Trust; Hunter Mountain Investment Trust; Mark & Pamela Okada Family Trust – Exempt Trust

#1 and Lawrence Tonomura, as Trustee of Mark & Pamela Okada Family Trust – Exempt Trust

#1; Mark & Pamela Okada Family Trust – Exempt Trust #2 and Lawrence Tonomura, as Trustee

of Mark & Pamela Okada Family Trust – Exempt Trust #2; CLO Holdco, Ltd.; Charitable DAF

Holdco, Ltd.; Charitable DAF Fund, L.P.; Highland Dallas Foundation; and Rand PE Fund I, LP,

Series 1 (each, a "Defendant" and collectively, the "Defendants," and with the Trustee, the

"Parties"), by and through their respective undersigned counsel.  In support of the Stipulation, the

Parties respectfully state as follows:

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. ("HCMLP"), filed a voluntary petition for relief under title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware.  The case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division and captioned *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11;

WHEREAS, on February 22, 2021, the Court confirmed HCMLP's *Fifth Amended Plan of Reorganization* [Case No. 19-34054-sgj11, Docket No. 1943] (the "Plan") which, among other things, established the Litigation Sub-Trust (as defined in the Plan) for the benefit of the Claimant Trust Beneficiaries (as defined in the Plan);

WHEREAS, on October 15, 2021, the Trustee commenced the Adversary Proceeding by filing a complaint against Defendants [Docket No. 1];

WHEREAS, on October 18, 2021, the Clerk of Court for the United States Bankruptcy Court for the Northern District of Texas issued the *Summons In An Adversary Proceeding* [Docket No. 3];

WHEREAS, on October 18, 2021, the Court entered the *Order Regarding Adversary Proceedings Trial Setting and Alternative Scheduling Order* [Docket No. 4] which, among other things, sets forth an Alternative Scheduling Order that applies to the Adversary Proceeding "[i]f the [P]arties do not submit a proposed scheduling order or do not schedule a status conference with the Court to discuss the provisions and deadlines of a scheduling order within forty-five days of the filing of this [A]dversary [P]roceeding";

WHEREAS, on December 2, 2021, the Trustee filed the *Stipulation and Proposed Scheduling Order* [Docket No. 21], setting forth a proposed schedule mutually agreed to by the Parties;

WHEREAS, on December 17, 2021, the Court entered the *Order Approving Adversary Proceedings Trial Setting and Alternative Scheduling Order* (the "Scheduling Order") [Docket No. 22];

WHEREAS, on February 11, 2022, the Court entered the Amended Scheduling Order (the "First Amended Scheduling Order") [Docket No. 81];

WHEREAS, on May 19, 2022, the Trustee filed the *Amended Complaint and Objection to Claims* [Docket No. 158];

WHEREAS, on June 20, 2022, the Parties filed the *Stipulation and Proposed Second Amended Scheduling Order* [Docket No. 162], setting forth a proposed schedule mutually agreed to by the Parties;

WHEREAS, on June 29, 2022, the Court entered the *Stipulation and Proposed Second Amended Scheduling Order* (the "Second Amended Scheduling Order") [Docket No. 167];

WHEREAS, on November 18, 2022, the Parties filed the *Stipulation and Proposed Third Amended Scheduling Order* [Docket No. 228];

WHEREAS, on November 28, 2022, the Court entered the Stipulation and Proposed Third Amended Scheduling Order (the "Third Amended Scheduling Order") [Docket No. 229];

WHEREAS, the Parties have met and conferred as to proposed amendments to the Third Amended Scheduling Order, and have mutually agreed to the schedule as set forth below;

**NOW, THEREFORE,** it is hereby stipulated and agreed, and upon approval by the Court it shall be **SO ORDERED:**

1.      Proposed Fourth Amended Scheduling Order. The Parties agree to the following proposed scheduling order (the "Proposed Fourth Amended Scheduling Order"):

| Event | Deadline |
|---|---|
| Substantial Completion of Fact Document Discovery | Wednesday, August 9, 2023 |
| Start of Fact Depositions | Earlier of Wednesday, September 6, 2023 or decision on the last outstanding motion to dismiss |
| Completion of Fact Depositions | Monday, December 4, 2023 |
| Deadline to Exchange Names and Addresses of Experts and Expert Witness Reports | Friday, February 9, 2024 |
| Deadline to Exchange Names and Addresses of Rebuttal Experts and Rebuttal Expert Witness Reports | Friday, April 5, 2024 |
| Expert Discovery Closes | Friday, May 17, 2024 |
| Dispositive Motion Deadline | Friday, June 14, 2024 |
| Deadline to File a Response to Dispositive Motions | Friday, August 9, 2024 |
| Deadline to File a Reply in Support of Dispositive Motions | Monday, September 9, 2024 |
| Last Date For Hearings on Dispositive Motions (subject to the Court's schedule) | Monday, October 7, 2024 |
| Deadline to Exchange Expert and Witness Lists | Tuesday, October 15, 2024 |
| Joint Pretrial Order Deadline | Friday, November 1, 2024 |
| Written Proposed Findings of Fact and Conclusions of Law Deadline | Friday, November 1, 2024 |
| Docket call (subject to the Court's schedule) | The first docket call scheduled on or after November 4, 2024 at 1:30pm |

2.     Pending approval of this Stipulation by the Court, each of the Parties agrees that it is and will be bound by this Stipulation and waives any right to object to approval by the Court. In the event that this Stipulation is not approved by the Court, it will be null and void and have no force or effect whatsoever except as may be otherwise agreed in writing by the Parties.

3.     If approved by the Court, the Proposed Fourth Amended Scheduling Order shall be modified only by a writing signed by all Parties or further order of the Court.

4.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Proposed Scheduling Order.

*[Remainder of Page Intentionally Left Blank]*

Dated:  March 24, 2023

Respectfully submitted,

**SIDLEY AUSTIN LLP**

*/s/ Paige Holden Montgomery*

Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue, Suite 2000
Dallas, Texas 74201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

-and-

**QUINN EMANUEL URQUHART &
SULLIVAN LLP**

Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
Calli Ray (admitted *pro hac vice*)
Anna Deknatel (admitted *pro hac vice*)
Aaron M. Lawrence (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000

*Counsel for the Marc. S. Kirschner, as
Litigation Trustee of the Highland Litigation
Sub-Trust*

**KANE RUSSELL COLEMAN LOGAN PC**

*/s/ John J. Kane*

John J. Kane
Brian W. Clark
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Facsimile: (214) 777-4299

*Counsel for Defendant Grant James Scott*

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
Louis M. Phillips
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801
Telephone: (225) 381-9643
Facsimile: (225) 336-9763

and

Amelia L. Hurt
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
Michael D. Anderson
Katherine T. Hopkins
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

*Counsel for Defendants CLO Holdco, Ltd.,
Highland Dallas Foundation, Charitable DAF
Fund, LP, and Charitable DAF Holdco, Ltd.*

**STINSON L.L.P.**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
3102 Oak Lawn Avenue. Suite 777
Dallas, Texas 75219
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

*Counsel for Defendants NexPoint Advisors,
L.P. and Highland Capital Management Fund
Advisors, L.P.*

-7-

**DLA PIPER LLP**

*/s/ Amy L. Ruhland*
Amy L. Ruhland
303 Colorado Street, Suite 3000
Austin, Texas 78701
Telephone: (512) 457-7000
Facsimile: (512) 457-7001

*Counsel for Defendants James D. Dondero,*
*Strand Advisors, Inc., The Dugaboy*
*Investment Trust, The Get Good Trust, Hunter*
*Mountain Investment Trust, and Rand PE*
*Fund I, LP, Series I*


**BAKER & MCKENZIE LLP**

*/s/ Michelle Hartmann*
Michelle Hartmann
1900 North Pearl, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099

and

Debra A. Dandeneau
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875

*Counsel for Defendants Scott Ellington and*
*Isaac Leventon*


**SULLIVAN & CROMWELL LLP**

*/s/ Brian D. Glueckstein*
Brian D. Glueckstein
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

and

**BROWN FOX PLLC**
Cortney C. Thomas
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile: (214) 327-5001

*Counsel for Defendants Mark Okada, The
Mark and Pamela Okada Family Trust –
Exempt Trust #1, and The Mark and Pamela
Okada Family Trust – Exempt Trust #2*

# EXHIBIT 15

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

| | |
|---|---|
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | |
| **Plaintiff,** | |
| **v.** | **Adv. Pro. No. 21-03076-sgj** |
| **JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,** | |
| **Defendants.** | |

## PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S
## EXPEDITED INTERROGATORIES AND REQUESTS FOR PRODUCTION

TO: _____

    Pursuant to the Court's Order Granting Emergency Motion for Expedited Discovery

("Order"), Plaintiff Hunter Mountain Investment Trust ("Plaintiff" or "HMIT") serves the

following Expedited Interrogatories and Requests for Production (collectively the "<u>Requests</u>") to

_____ ("<u>Defendant</u>" or "_____"). Defendant is requested to respond fully and in

writing, along with producing all responsive, non-privileged documents, within thirty (30) days of

service.

## <u>INSTRUCTIONS</u>

1.      Each Request shall be construed and answered separately and shall not be combined for the purpose of supplying a common response thereto. Each answer shall set forth verbatim the Request to which it responds. The answer to a Request shall not be supplied by referring to the answer to another Request unless the Request referred to supplies a complete and accurate answer to the Request being answered. The specificity of any Request shall not be construed or understood as limiting the generality or breadth of any other Request.

2.      These Requests require you to produce Documents and Communications and/or to provide information in your physical possession, custody, or control, as well as in the possession, custody, or control of any agents, employees, officers, members, managing members, directors, shareholders, partners, general partners, legal representatives, predecessors, successors, and assigns. All requested Documents, Communications, or information not subject to a valid objection that is known by, possessed by, or available to you that appears in your records must be provided.

3.      In addition to original and final versions of Documents and Communications, each Request includes all drafts, alterations, modifications, changes, and amendments of such Documents and Communications, as well as copies non-identical to the original in any respect, including any copies bearing non-identical markings or notations of any kind.

4.      If any requested Document, Communication, or information was, but no longer is, in Defendant's possession, state whether a copy thereof is in the possession, custody, or control of some other person, agency, entity, partnership, or corporation, and why such Document, Communication, or information is no longer available, and the circumstances under which the loss occurred.

5.      Each requested Document and Communication shall be produced in its entirety with an affixed bates stamp. If an identical copy appears in more than one person's files, each of the copies shall be produced or the extracted metadata shall reflect the source, owner, and/or custodian for all persons with identical copies. If a Document or Communication responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why the production of the remainder is not possible.

6.      In the event you do not answer any Request, in whole or in part, on the basis of an assertion of attorney-client privilege, the work-product doctrine, or any other claim of privilege or immunity, answer each Request to the extent consistent with the privilege or immunity asserted and provide information sufficient to permit the Court to make a determination of whether a proper basis exists for the assertion of privilege or immunity. For all documents withheld on the basis of privilege, state the basis for your claim with specificity and, for each such document, identify:

> a.   whether the document contains a request for legal advice and, if so, identify the person who requested the legal advice;

b. whether the document contains advice as to the meaning or application of particular laws or rules in response to such request;

c. any further information to explain and support the claim of privilege and to permit the adjudication of the propriety of that claim;

d. the nature of the privilege (including work product) that is being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and the type of document, *e.g.* letter or memorandum; the general subject of the document; and such other information  sufficient to identify the document, including, where appropriate, the date, author, addressee, and other recipient(s) of the document.

7.      These Requests specifically seek the production of electronic or magnetic data.

8.      If there are no Documents or Communications responsive to a particular Request, please provide a written response so stating.

9.      Plaintiff specifically reserves the right to serve additional Requests.

10.      These Requests are continuing in nature as to require supplemental responses in accordance with the Federal Rules of Civil Procedure if and when additional Documents, Communications, or information responsive to any of the Requests herein is/are obtained, discovered, or located between the time of responding to these Requests and the final disposition of this action.

## RULES OF CONSTRUCTION

Along with the rules of construction and instructions provided under applicable discovery rules and law, these Rules of Construction apply to the following Requests:

1.      Unless specifically stated otherwise in a particular Request, the relevant time period is October 15, 2021, to the present.

2.      The terms "any" and "all" should be understood in either the most or the least inclusive sense as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope. "Any" includes the word "all," and "all" includes the term "any."

3.      The terms "any," "all," and "each" shall each be construed as encompassing any and all.

4.      The use of the singular form of any word shall be construed to include the plural and vice versa.

5.      All phrases following the terms "including" are intended to illustrate the kinds of information responsive to each Interrogatory, and shall be construed as "including, but not limited to." Such examples are not intended to be exhaustive of the information sought and shall not in any way be read to limit the scope of an Interrogatory.

6.      References to an entity are intended to include past and present officers, directors, employees, agents, affiliates, subsidiaries, owners, partners, general partners, shareholders, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, and/or any other person(s) acting on behalf of such entity.

## **DEFINITIONS**

For the purposes of these Requests, the following terms shall have the following definitions and meanings, unless expressly provided otherwise:

1.      "_____," "you," and "your," shall mean the party to whom these Requests are directed and all of its/his/her managing members and other members, officers, agents, employees, representatives, attorneys, partners, predecessors, successors, assigns, and anyone else acting on its/his/her behalf, now or at any time relevant to the response.

2.      "Transfer Affiliates" shall mean, collectively, each and every direct or indirect subsidiary, affiliate, joint venture, parent company, sister company, trust, officer, director, partner, owner, insider, investor, shareholder, member, and/or manager of any Defendant at any time, including but not limited to:

      a.      Skyview Group, Inc. ("Skyview");
      b.      Skyview Legal, PC;
      c.      Crossvine Litigation Funding LLC;
      d.      Crossvine Holdings LLC;
      e.      Crossvine Foundation;
      f.      CEV Holdings LLC;
      g.      Greystone Advisors LLC;
      h.      Sunshine Coast Development LLC;
      i.      Highgate Consulting Group Inc.;
      j.      Tall Pine Group LLC;
      k.      Fineline Cinemas, LLC;
      l.      Zebra Land & Cattle, LLC;
      m.      Atreyu Pipeline Logistics, LLC;
      n.      Ellington Management Group LLC;
      o.      NexBank Capital, Inc.;
      p.      NexBank, SSB;
      q.      The SLHC Trust;
      r.      Sentinel Reinsurance, Ltd. ("Sentinel");
      s.      Highland Capital Management Services Inc.;
      t.      Basis Industrial;
      u.      CMP Capital Partners;
      v.      CMP Capital Management;
      w.      City of Plano, Texas;
      x.      PEG Hospitality Group;
      y.      Evergreen Residential Holdings;
      z.      Ohio State Life Insurance Company;
      aa.      Strategic Realty Solutions, LLC;
      bb.      Capital Acquisition Partners, LLC;
      cc.      BH Management Services, LLC; and
      dd.      Change Lending, LLC.

For purposes of the following Requests for Production, "Transfer Affiliates" shall include any and all entities identified in response to Interrogatory No. 1.

3.      "Communication(s)" and "communicate" shall mean any manner in which the mental processes of one individual are relayed to another, including, without limitation, any verbal utterance, correspondence, email, text message, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

4.      "Concerning" shall mean reflecting, regarding, relating to, referring to, describing, evidencing, supporting, forming any basis for, or constituting.

5.      "Document" or "Documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the Federal Rules of Civil Procedure, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, accounting software printouts or reports (e.g. Quickbooks), disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

6.      "Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) and/or all related metadata with respect to all such Documents/ESI.

7.      "Identify" or "Identity(ies)" (person(s)) when referring to person (or entity) shall, shall mean to provide the person's (or entity's) full first and last (or business) name; last known address, telephone number, and e-mail address; and last known place of employment.

8.      "Identify" or "Identity(ies)" (document(s)) when referring to a document, shall mean to provide the document's name; the date of the document's creation; the form of the document (e.g., letter, e-mail message, etc.); a description of the substance of the document; and

the identity of the person who currently possesses the document (and, if the document no longer exists, an explanation for why it no longer exists and the date on which it ceased to exist).

9. "Lawsuit" shall mean and refer to the above-captioned lawsuit styled: *Hunter Mountain Investment Trust v. James D. Dondero, et al.*, Adversary Proceeding No. 21-03076 in the United States Bankruptcy Court for the Northern District of Texas.

10. "Interest," shall mean any ownership interest, whether direct, indirect, legal, equitable, or beneficial, in whole or in part, as well as any investment interest, including ownership of stock, shares or equity, possessory interest, security interest, contingent or unvested interest, or right of first refusal.

11. "Person" shall mean any natural person and/or any business, legal, or governmental entity or association.

12. "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, shall mean the party or parties, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13. "Defendants" shall mean, collectively, all Defendants to this Lawsuit:

   a. James D. Dondero;
   b. Scott Ellington;
   c. Isaac Leventon;
   d. Strand Advisors, Inc. ("Strand Advisors"),
   e. Get Good Trust and Grant Scott as Trustee of the Get Good Trust ("Get Good"),
   f. NexPoint Advisors, L.P. ("NexPoint"),
   g. Highland Capital Management Fund Advisors, L.P. ("HCMFA"),
   h. Dugaboy Investment Trust and Nancy Dondero as Trustee of the Dugaboy Investment Trust ("Dugaboy"),
   i. Highland Dallas Foundation ("HDF"),
   j. Massand Capital LLC,
   k. Massand Capital, Inc.; and
   l. SAS Asset Recovery, Ltd. ("SAS").

14. "Service Providers" shall mean, collectively:

   a. Armanino LLP;
   b. Baker McKenzie LLP;
   c. Carey Olsen LLP;
   d. CoastRoad Group;
   e. Grant Thornton (Cayman) LLP;
   f. Grant Thornton Specialist Services (Cayman) Limited;
   g. Haynes & Boone LLP;
   h. Johnstone Law;
   i. Maples and Calder (Cayman) LLP;

    j.      Reed Smith LLP
    k.     Highgate Consulting Group Inc.;
    l.      Texas Capital Bank; and
    m.    Winston & Strawn LLP.

15.     "Foundations" shall mean, collectively:

    a.     Santa Barbara Foundation;
    b.     Greater Kansas City Community Foundation;
    c.     Dallas Foundation;
    d.     North Texas Community Foundation;
    e.     Highland Santa Barbara Foundation, Inc.;
    f.      Highland Kansas City Foundation, Inc.; and
    g.     HCMLP Charitable Fund.

16.     "Highland," "HCM," or "Debtor" shall mean Highland Capital Management, L.P.

17.     "HMIT Settlement" shall mean the Settlement Agreement entered into between HMIT and Highland confirmed by Order Pursuant To Bankruptcy Rule 9019 And 11 U.S.C. § 363 Approving Settlement Between The Highland Entities And The HMIT Entities And Authorizing Actions Consistent Therewith [HCM Bk. Doc. 4297].

18.     "DAF HoldCo Liquidation" shall mean the Official Liquidation of Charitable DAF HoldCo, Ltd. in the Grand Court of the Cayman Islands, Financial Services Division, FSD No. 2025-116.

## PLAINTIFF'S FIRST SET OF EXPEDITED INTERROGATORIES

**INTERROGATORY NO. 1:**        Please identify all entities formed by, at the direction of, or for the benefit of any Defendant or Transfer Affiliate from the inception of this Lawsuit on October 15, 2021, to the present.

**ANSWER:**

**INTERROGATORY NO. 2:**        Please identify the complete addresses of all locations at which any asset (real property, personal, or business) in which any Defendant or Transfer Affiliate has an Interest, is located.

**ANSWER:**

**INTERROGATORY NO. 3:**        Please identify and describe the relationship(s) between each Defendant or Transfer Affiliate and any entities identified in response to Interrogatory No. 1.

**ANSWER:**

**INTERROGATORY NO. 4:**        Please identify each and every officer, director, partner, owner, investor, shareholder, member, and/or manager of any Transfer Affiliate or entity identified in response to Interrogatory No. 1, if any, at any time, including their name, title or relationship to the entity, and current address and contact information.

**ANSWER:**

**INTERROGATORY NO. 5:**        Please identify and describe the business purpose for each Transfer Affiliate and each entity identified in response to Interrogatory No. 1, if any.

**ANSWER:**

**INTERROGATORY NO. 6:**        Please identify and describe each and every source of revenue or funding for each Transfer Affiliate and each entity identified in response to Interrogatory No. 1, if any.

**ANSWER:**

**INTERROGATORY NO. 7:**        Please identify all businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has an Interest at present.

**ANSWER:**

**INTERROGATORY NO. 8:**        Please identify all transfers of cash or other assets from any Defendant or Transfer Affiliate to any businesses, partnerships, joint ventures, corporations,

subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has or had an Interest, at any time from October 15, 2021, to present.

**ANSWER:**

**INTERROGATORY NO. 9:**        Please identify all transfers of cash or other assets from any Defendant or Transfer Affiliate to any of the Foundations at any time from October 15, 2021, to present.

**ANSWER:**

**INTERROGATORY NO. 10:**        Please identify all property or funds any Transfer Affiliate is holding in trust for the benefit of any Defendant or other Transfer Affiliate.

**ANSWER:**

**INTERROGATORY NO. 11:**        Please identify all of each Defendant's or Transfer Affiliate's assets from October 15, 2021, until present, including, without limitation: (1) all real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present; (2) all personal property or business personal property in which any Defendant or Transfer Affiliate has an Interest at present; and (3) any stocks, bonds, or other securities in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present.

**ANSWER:**

**INTERROGATORY NO. 12:**        Please identify any assets in which any Defendant or Transfer Affiliate has an Interest, held by any person or entity other than that Defendant or Transfer Affiliate.

**ANSWER:**

**INTERROGATORY NO. 13:**        Please identify any life insurance policies purchased by any Defendant or Transfer Affiliate or for which any Defendant or Transfer Affiliate is the beneficiary.

**ANSWER:**

## PLAINTIFF'S FIRST SET OF EXPEDITED REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**   Produce all documents identifying any businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, to present.

**RESPONSE:**

**REQUEST NO. 2:**   All communications to or from any Defendants, Transfer Affiliates, or Service Providers concerning: (1) any other Defendant or Transfer Affiliate; (2) the creation of any entity identified in response to Interrogatory No. 1; or (3) that evidence or refer in any way, directly or indirectly, to any and all transfers of cash, cash equivalent, or other assets made by any Defendant or Transfer Affiliate, including internal transfers, regardless of whether the transfer was made on behalf of such Defendant or Transfer Affiliate or on behalf of any other person or entity.

**RESPONSE:**

**REQUEST NO. 3:**   All communications that evidence or refer in any way, directly or indirectly, to any and all transfers of cash, cash equivalent, or other assets made by any Defendant or Transfer Affiliate, including internal transfers, regardless of whether the transfer was made on behalf of such Defendant or Transfer Affiliate or on behalf of any other person or entity.

**RESPONSE:**

**REQUEST NO. 4:**   Produce all documents identifying all transfers of cash, cash equivalent, or other assets from any Defendant to any other Defendant at any point from October 15, 2021, to present.

**RESPONSE:**

**REQUEST NO. 5:**   Produce all documents identifying all transfers of cash, cash equivalent, or other assets from any Defendant to any Transfer Affiliate, or vice versa, at any point from October 15, 2021, to present.

**RESPONSE:**

**REQUEST NO. 6:**   Produce all documents identifying all transfers of cash, cash equivalent, or other assets from any Defendant to any Foundation at any point from October 15, 2021, to present.

**RESPONSE:**

**REQUEST NO. 7:**   Produce all documents identifying all transfers of cash, cash equivalent, or other assets from any Defendant or Transfer Affiliate to any businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, to present.

**RESPONSE:**

**REQUEST NO. 8:** To the extent not already requested or produced in response to these Requests, produce all documents identifying all transfers of cash, cash equivalent, or other assets from any Defendant or Transfer Affiliate to any other entity or individual, from October 15, 2021, to present.

**RESPONSE:**

**REQUEST NO. 9:** Produce all internal and third-party appraisals or other valuations of any property (real, personal, business personal, tangible or intangible) or assets in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, to present.

**RESPONSE:**

**REQUEST NO. 10:** Produce all documents identifying all financial accounts held by any Defendant or Transfer Affiliate at any time from October 15, 2021, until present.

**RESPONSE:**

**REQUEST NO. 11:** Copies of all books, records, and financial statements (e.g. balance sheets, financial statements, profit and loss statements, revenue reports, projections, etc.) maintained by or prepared for any Defendant or Transfer Affiliate at any time from October 15, 2021, until present.

**RESPONSE:**

**REQUEST NO. 12:** Produce copies of all statements, from October 15, 2021, to the present, for all bank, checking, savings, brokerage, credit, margin, warehouse, or any other financial and/or investment accounts in which any Defendant or Transfer Affiliate has or had an Interest.

**RESPONSE:**

**REQUEST NO. 13:** Produce all documents identifying all assets, including but not limited to deposit accounts, stocks, cash, personal property, business personal property, and real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, to present.

**RESPONSE:**

**REQUEST NO. 14:** Produce all financial statements prepared by any Defendant or Transfer Affiliate or for the benefit of any Defendant or Transfer Affiliate covering the years 2020 until present, including any balance sheets, income statements, statements of cash flows, or similar financial documents.

**RESPONSE:**

**REQUEST NO. 15:** Produce all documents identifying all assets in which any Defendant or Transfer Affiliate has an Interest, held by any person or entity other than that Defendant or Transfer Affiliate.

**RESPONSE:**

**REQUEST NO. 16:** Produce all documents identifying all income, revenue, and/or proceeds any Defendant or Transfer Affiliate received from any source from October 15, 2021, until present.

**RESPONSE:**

**REQUEST NO. 17:** Produce all purchase documents or receipts for all property (real, personal, business personal, tangible or intangible) in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, to present.

**RESPONSE:**

**REQUEST NO. 18:** All documents that evidence or refer in any way, directly or indirectly, to any loans made by any Defendant or Transfer Affiliate.

**RESPONSE:**

**REQUEST NO. 19:** All documents that evidence or refer in any way, directly or indirectly, to any investments owned or held by any Defendant or Transfer Affiliate.

**RESPONSE:**

**REQUEST NO. 20:** All documents that evidence or refer in any way, directly or indirectly, to any negotiable instruments held by any Defendant or Transfer Affiliate.

**RESPONSE:**

**REQUEST NO. 21:** Produce all documents identifying all income, revenue, and/or proceeds any Defendant or Transfer Affiliate received from any source from October 15, 2021, until present.

**RESPONSE:**

**REQUEST NO. 22:** Produce all income tax returns and all supporting documentation for any Defendant or Transfer Affiliate for tax years 2020 until present.

**RESPONSE:**

Respectfully submitted,

/s/ DRAFT
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on _____, 2025, in compliance with the Federal Rules of Civil Procedure.

/s/ DRAFT
IAN B. SALZER

3204430

EXHIBIT 16

EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | |
| | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

| | |
|---|---|
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | |
| **Plaintiff,** | |
| **v.** | **Adv. Pro. No. 21-03076-sgj** |
| **JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,** | |
| **Defendants.** | |

## PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S
## NOTICE OF EXPEDITED ORAL AND VIDEOTAPED
## <u>DEPOSITION OF JAMES DONDERO</u>

Pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of

Bankruptcy Procedure, and the Court's *Order Granting Expedited Discovery* [Doc. ___], Hunter

1

Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of James Dondero ("Dondero") on the topics attached as **Exhibit A**.

The deposition will take place before a certified court reporter or other individual authorized by law to administer oaths and take depositions at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location), or remotely via Zoom, beginning at __**:**__ __**.m. (Central)** on _____, **2025**, and continuing day after day until completed.

The deposition will be videotaped and a Zoom remote link will be provided to all of the Defendants and their counsel at least twenty-four hours prior to the deposition, if applicable.

Respectfully submitted,

*/s/ DRAFT*_____
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN
INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on September __, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

*/s/ DRAFT*_____
Ian B. Salzer

3204687

**EXHIBIT A**

**DEFINITIONS**

For the purposes of this Notice, the following terms shall have the following definitions and meanings, unless expressly provided otherwise:

1. "Dondero," "you," and "your," shall mean the party to whom this Notice is directed and all of its/his/her managing members and other members, officers, agents, employees, representatives, attorneys, partners, predecessors, successors, assigns, and anyone else acting on its/his/her behalf, now or at any time relevant to the response.

2. "Transfer Affiliates" shall mean, collectively, each and every direct or indirect subsidiary, affiliate, joint venture, parent company, sister company, trust, officer, director, partner, owner, insider, investor, shareholder, member, and/or manager of any Defendant at any time, including but not limited to:

    a.    Skyview Group, Inc. ("Skyview");

    b.    Skyview Legal, PC;

    c.    Crossvine Litigation Funding LLC;

    d.    Crossvine Holdings LLC;

    e.    Crossvine Foundation;

    f.    CEV Holdings LLC;

    g.    Greystone Advisors LLC;

    h.    Sunshine Coast Development LLC;

    i.    Highgate Consulting Group Inc.;

    j.    Tall Pine Group LLC;

    k.    Fineline Cinemas, LLC;

    l.    Zebra Land & Cattle, LLC;

    m.    Atreyu Pipeline Logistics, LLC;

    n.    Ellington Management Group LLC;

    o.    NexBank Capital, Inc.;

    p.    NexBank, SSB;

    q.    The SLHC Trust;

    r.    Sentinel Reinsurance, Ltd. ("Sentinel");

    s.    Highland Capital Management Services Inc.;

    t.    Basis Industrial;

    u.    CMP Capital Partners;

    v.    CMP Capital Management;

    w.    City of Plano, Texas;

    x.    PEG Hospitality Group;

    y.    Evergreen Residential Holdings;

    z.    Ohio State Life Insurance Company;

    aa.    Strategic Realty Solutions, LLC;

    bb.    Capital Acquisition Partners, LLC;

    cc.    BH Management Services, LLC; and

    dd.    Change Lending, LLC.

3.      "Communication(s)" and "communicate" shall mean any manner in which the mental processes of one individual are relayed to another, including, without limitation, any verbal utterance, correspondence, email, text message, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

4.      "Concerning" shall mean reflecting, regarding, relating to, referring to, describing, evidencing, supporting, forming any basis for, or constituting.

5.      "Document" or "Documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the Federal Rules of Civil Procedure, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, accounting software printouts or reports (e.g. Quickbooks), disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

6.      "Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) and/or all related metadata with respect to all such Documents/ESI.

7.      "Identify" or "Identity(ies)" (person(s)) when referring to person (or entity) shall, shall mean to provide the person's (or entity's) full first and last (or business) name; last known address, telephone number, and e-mail address; and last known place of employment.

8.      "Identify" or "Identity(ies)" (document(s)) when referring to a document, shall mean to provide the document's name; the date of the document's creation; the form of the document (e.g., letter, e-mail message, etc.); a description of the substance of the document; and the identity of the person who currently possesses the document (and, if the document no longer exists, an explanation for why it no longer exists and the date on which it ceased to exist).

9.     "Lawsuit" shall mean and refer to the above-captioned lawsuit styled: *Hunter Mountain Investment Trust v. James D. Dondero, et al.*, Adversary Proceeding No. 21-03076 in the United States Bankruptcy Court for the Northern District of Texas.

10.     "Interest," shall mean any ownership interest, whether direct, indirect, legal, equitable, or beneficial, in whole or in part, as well as any investment interest, including ownership of stock, shares or equity, possessory interest, security interest, contingent or unvested interest, or right of first refusal.

11.     "Person" shall mean any natural person and/or any business, legal, or governmental entity or association.

12.     "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, shall mean the party or parties, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13.     "Defendants" shall mean, collectively, all Defendants to this Lawsuit:

    a.     James D. Dondero;
    b.     Scott Ellington;
    c.     Isaac Leventon;
    d.     Strand Advisors, Inc. ("Strand Advisors"),
    e.     Get Good Trust and Grant Scott as Trustee of the Get Good Trust ("Get Good"),
    f.     NexPoint Advisors, L.P. ("NexPoint"),
    g.     Highland Capital Management Fund Advisors, L.P. ("HCMFA"),
    h.     Dugaboy Investment Trust and Nancy Dondero as Trustee of the Dugaboy Investment Trust ("Dugaboy"),
    i.     Highland Dallas Foundation ("HDF"),
    j.     Massand Capital LLC,
    k.     Massand Capital, Inc.; and
    l.     SAS Asset Recovery, Ltd. ("SAS").

14.     "Service Providers" shall mean, collectively:

    a.     Armanino LLP;
    b.     Baker McKenzie LLP;
    c.     Carey Olsen LLP;
    d.     CoastRoad Group;
    e.     Grant Thornton (Cayman) LLP;
    f.     Grant Thornton Specialist Services (Cayman) Limited;
    g.     Haynes & Boone LLP;
    h.     Johnstone Law;
    i.     Maples and Calder (Cayman) LLP;
    j.     Reed Smith LLP
    k.     Highgate Consulting Group Inc.;

l.   Texas Capital Bank; and
m.   Winston & Strawn LLP.

15.   "Foundations" shall mean, collectively:

a.   Santa Barbara Foundation;
b.   Greater Kansas City Community Foundation;
c.   Dallas Foundation;
d.   North Texas Community Foundation;
e.   Highland Santa Barbara Foundation, Inc.;
f.   Highland Kansas City Foundation, Inc.; and
g.   HCMLP Charitable Fund.

16.   "Highland," "HCM," or "Debtor" shall mean Highland Capital Management, L.P.

17.   "HMIT Settlement" shall mean the Settlement Agreement entered into between HMIT and Highland confirmed by Order Pursuant To Bankruptcy Rule 9019 And 11 U.S.C. § 363 Approving Settlement Between The Highland Entities And The HMIT Entities And Authorizing Actions Consistent Therewith [HCM Bk. Doc. 4297].

18.   "DAF HoldCo Liquidation" shall mean the Official Liquidation of Charitable DAF HoldCo, Ltd. in the Grand Court of the Cayman Islands, Financial Services Division, FSD No. 2025-116 (JAJ).

## DEPOSITION TOPICS

1. All shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

2. The purported business purpose for each shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants;

3. The relationship(s) between each Defendant or Transfer Affiliate and any other entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

4. All actual or proposed transfers of funds or assets by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

5. The purported business justification for each actual or proposed transfer of funds or assets by, at the direction, or for the benefit of one or more of Defendants;

6. All internal or third-party valuations prepared for the assets involved in any transfers made by, at the direction of, or for the benefit of one or more of Defendants;

7. All businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has an Interest at present;

8. All of each Defendant's or Transfer Affiliate's assets from October 15, 2021, until present, including, without limitation: (1) all real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present; (2) all personal property or business personal property in which any Defendant or Transfer Affiliate has an Interest at present; and (3) any stocks, bonds, or other securities in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present;

9. Defendants' attempts to interfere with the HMIT Settlement; and

10. Defendants' attempts to interfere with the DAF HoldCo Liquidation.

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | |
| | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

| | |
|---|---|
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | |
| **Plaintiff,** | |
| **v.** | **Adv. Pro. No. 21-03076-sgj** |
| **JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,** | |
| **Defendants.** | |

## PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S
## NOTICE OF ORAL AND VIDEOTAPED DEPOSITION
## <u>OF NEXPOINT ADVISORS, L.P.</u>

Pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of

Bankruptcy Procedure, and the Court's *Order Granting Expedited Discovery* [Doc. ___], Hunter

Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of a corporate representative of NexPoint Advisors, L.P. ("Nexpoint") on the topics attached as **Exhibit A**.

The deposition will take place before a certified court reporter or other individual authorized by law to administer oaths and take depositions at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location), or remotely via Zoom, beginning at __:__ _.m. (Central)** on _____, **2025**, and continuing day after day until completed.

The deposition will be videotaped and a Zoom remote link will be provided to all of the Defendants and their counsel at least twenty-four hours prior to the deposition, if applicable.

Respectfully submitted,

*/s/ DRAFT*_____
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN
INVESTMENT TRUST**

### CERTIFICATE OF SERVICE

I hereby certify that on September __, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

*/s/ DRAFT*_____
Ian B. Salzer

2

**EXHIBIT A**

## DEFINITIONS

For the purposes of this Notice, the following terms shall have the following definitions and meanings, unless expressly provided otherwise:

1.      "Nexpoint," "you," and "your," shall mean the party to whom this Notice is directed and all of its/his/her managing members and other members, officers, agents, employees, representatives, attorneys, partners, predecessors, successors, assigns, and anyone else acting on its/his/her behalf, now or at any time relevant to the response.

2.      "Transfer Affiliates" shall mean, collectively, each and every direct or indirect subsidiary, affiliate, joint venture, parent company, sister company, trust, officer, director, partner, owner, insider, investor, shareholder, member, and/or manager of any Defendant at any time, including but not limited to:

a.      Skyview Group, Inc. ("Skyview");
b.      Skyview Legal, PC;
c.      Crossvine Litigation Funding LLC;
d.      Crossvine Holdings LLC;
e.      Crossvine Foundation;
f.      CEV Holdings LLC;
g.      Greystone Advisors LLC;
h.      Sunshine Coast Development LLC;
i.      Highgate Consulting Group Inc.;
j.      Tall Pine Group LLC;
k.      Fineline Cinemas, LLC;
l.      Zebra Land & Cattle, LLC;
m.      Atreyu Pipeline Logistics, LLC;
n.      Ellington Management Group LLC;
o.      NexBank Capital, Inc.;
p.      NexBank, SSB;
q.      The SLHC Trust;
r.      Sentinel Reinsurance, Ltd. ("Sentinel");
s.      Highland Capital Management Services Inc.;
t.      Basis Industrial;
u.      CMP Capital Partners;
v.      CMP Capital Management;
w.      City of Plano, Texas;
x.      PEG Hospitality Group;
y.      Evergreen Residential Holdings;
z.      Ohio State Life Insurance Company;
aa.     Strategic Realty Solutions, LLC;
bb.     Capital Acquisition Partners, LLC;
cc.     BH Management Services, LLC; and
dd.     Change Lending, LLC.

3.  "Communication(s)" and "communicate" shall mean any manner in which the mental processes of one individual are relayed to another, including, without limitation, any verbal utterance, correspondence, email, text message, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

4.  "Concerning" shall mean reflecting, regarding, relating to, referring to, describing, evidencing, supporting, forming any basis for, or constituting.

5.  "Document" or "Documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the Federal Rules of Civil Procedure, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, accounting software printouts or reports (e.g. Quickbooks), disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

6.  "Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) and/or all related metadata with respect to all such Documents/ESI.

7.  "Identify" or "Identity(ies)" (person(s)) when referring to person (or entity) shall, shall mean to provide the person's (or entity's) full first and last (or business) name; last known address, telephone number, and e-mail address; and last known place of employment.

8.  "Identify" or "Identity(ies)" (document(s)) when referring to a document, shall mean to provide the document's name; the date of the document's creation; the form of the document (e.g., letter, e-mail message, etc.); a description of the substance of the document; and the identity of the person who currently possesses the document (and, if the document no longer exists, an explanation for why it no longer exists and the date on which it ceased to exist).

9. "Lawsuit" shall mean and refer to the above-captioned lawsuit styled: *Hunter Mountain Investment Trust v. James D. Dondero, et al.*, Adversary Proceeding No. 21-03076 in the United States Bankruptcy Court for the Northern District of Texas.

10. "Interest," shall mean any ownership interest, whether direct, indirect, legal, equitable, or beneficial, in whole or in part, as well as any investment interest, including ownership of stock, shares or equity, possessory interest, security interest, contingent or unvested interest, or right of first refusal.

11. "Person" shall mean any natural person and/or any business, legal, or governmental entity or association.

12. "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, shall mean the party or parties, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13. "Defendants" shall mean, collectively, all Defendants to this Lawsuit:

    a. James D. Dondero;
    b. Scott Ellington;
    c. Isaac Leventon;
    d. Strand Advisors, Inc. ("Strand Advisors"),
    e. Get Good Trust and Grant Scott as Trustee of the Get Good Trust ("Get Good"),
    f. NexPoint Advisors, L.P. ("NexPoint"),
    g. Highland Capital Management Fund Advisors, L.P. ("HCMFA"),
    h. Dugaboy Investment Trust and Nancy Dondero as Trustee of the Dugaboy Investment Trust ("Dugaboy"),
    i. Highland Dallas Foundation ("HDF"),
    j. Massand Capital LLC,
    k. Massand Capital, Inc.; and
    l. SAS Asset Recovery, Ltd. ("SAS").

14. "Service Providers" shall mean, collectively:

    a. Armanino LLP;
    b. Baker McKenzie LLP;
    c. Carey Olsen LLP;
    d. CoastRoad Group;
    e. Grant Thornton (Cayman) LLP;
    f. Grant Thornton Specialist Services (Cayman) Limited;
    g. Haynes & Boone LLP;
    h. Johnstone Law;
    i. Maples and Calder (Cayman) LLP;
    j. Reed Smith LLP
    k. Highgate Consulting Group Inc.;

6

l.       Texas Capital Bank; and
m.     Winston & Strawn LLP.

15.    "Foundations" shall mean, collectively:

a.      Santa Barbara Foundation;
b.      Greater Kansas City Community Foundation;
c.      Dallas Foundation;
d.      North Texas Community Foundation;
e.      Highland Santa Barbara Foundation, Inc.;
f.      Highland Kansas City Foundation, Inc.; and
g.      HCMLP Charitable Fund.

16.    "Highland," "HCM," or "Debtor" shall mean Highland Capital Management, L.P.

17.    "HMIT Settlement" shall mean the Settlement Agreement entered into between HMIT and Highland confirmed by Order Pursuant To Bankruptcy Rule 9019 And 11 U.S.C. § 363 Approving Settlement Between The Highland Entities And The Hmit Entities And Authorizing Actions Consistent Therewith [HCM Bk. Doc. 4297].

18.    "DAF HoldCo Liquidation" shall mean the Official Liquidation of Charitable DAF HoldCo, Ltd. in the Grand Court of the Cayman Islands, Financial Services Division, FSD No. 2025-116 (JAJ).

## DEPOSITION TOPICS

1. All shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

2. The purported business purpose for each shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants;

3. The relationship(s) between each Defendant or Transfer Affiliate and any other entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

4. All actual or proposed transfers of funds or assets by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

5. The purported business justification for each actual or proposed transfer of funds or assets by, at the direction, or for the benefit of one or more of Defendants;

6. All internal or third-party valuations prepared for the assets involved in any transfers made by, at the direction of, or for the benefit of one or more of Defendants;

7. All businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has an Interest at present;

8. All of each Defendant's or Transfer Affiliate's assets from October 15, 2021, until present, including, without limitation: (1) all real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present; (2) all personal property or business personal property in which any Defendant or Transfer Affiliate has an Interest at present; and (3) any stocks, bonds, or other securities in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present;

9. Defendants' attempts to interfere with the HMIT Settlement; and

10. Defendants' attempts to interfere with the DAF HoldCo Liquidation.

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | |
| **Plaintiff,** | |
| **v.** | **Adv. Pro. No. 21-03076-sgj** |
| **JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,** | |
| **Defendants.** | |

## PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF SUBPOENA FOR EXPEDITED ORAL AND VIDEOTAPED DEPOSITION OF HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.

Pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of

Bankruptcy Procedure, and the Court's *Order Granting Expedited Discovery* [Doc. ____], Hunter

Mountain Investment Trust ("HMIT") will take the oral and videotaped deposition of a corporate

1

representative of Highland Capital Management Fund Advisors, L.P. ("HCMFA") on the topics attached as **Exhibit A**.

The deposition will take place before a certified court reporter or other individual authorized by law to administer oaths and take depositions at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location), or remotely via Zoom, beginning at __:__ _.m. **(Central)** on _____, **2025**, and continuing day after day until completed.

The deposition will be videotaped and a Zoom remote link will be provided to all of the Defendants and their counsel at least twenty-four hours prior to the deposition, if applicable.

Respectfully submitted,

*/s/ DRAFT*_____
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN
INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on September __, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

*/s/ DRAFT*_____
Ian B. Salzer

**EXHIBIT A**

## **DEFINITIONS**

For the purposes of this Notice, the following terms shall have the following definitions and meanings, unless expressly provided otherwise:

1. "HCMFA," "you," and "your," shall mean the party to whom this Notice is directed and all of its/his/her managing members and other members, officers, agents, employees, representatives, attorneys, partners, predecessors, successors, assigns, and anyone else acting on its/his/her behalf, now or at any time relevant to the response.

2. "Transfer Affiliates" shall mean, collectively, each and every direct or indirect subsidiary, affiliate, joint venture, parent company, sister company, trust, officer, director, partner, owner, insider, investor, shareholder, member, and/or manager of any Defendant at any time, including but not limited to:

    a.     Skyview Group, Inc. ("Skyview");
    b.     Skyview Legal, PC;
    c.     Crossvine Litigation Funding LLC;
    d.     Crossvine Holdings LLC;
    e.     Crossvine Foundation;
    f.     CEV Holdings LLC;
    g.     Greystone Advisors LLC;
    h.     Sunshine Coast Development LLC;
    i.     Highgate Consulting Group Inc.;
    j.     Tall Pine Group LLC;
    k.     Fineline Cinemas, LLC;
    l.     Zebra Land & Cattle, LLC;
    m.     Atreyu Pipeline Logistics, LLC;
    n.     Ellington Management Group LLC;
    o.     NexBank Capital, Inc.;
    p.     NexBank, SSB;
    q.     The SLHC Trust;
    r.     Sentinel Reinsurance, Ltd. ("Sentinel")
    s.     Highland Capital Management Services Inc.;
    t.     Basis Industrial;
    u.     CMP Capital Partners;
    v.     CMP Capital Management;
    w.     City of Plano, Texas;
    x.     PEG Hospitality Group;
    y.     Evergreen Residential Holdings;
    z.     Ohio State Life Insurance Company;
    aa.    Strategic Realty Solutions, LLC;
    bb.    Capital Acquisition Partners, LLC;
    cc.    BH Management Services, LLC; and
    dd.    Change Lending, LLC.

3.    "Communication(s)" and "communicate" shall mean any manner in which the mental processes of one individual are relayed to another, including, without limitation, any verbal utterance, correspondence, email, text message, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

4.    "Concerning" shall mean reflecting, regarding, relating to, referring to, describing, evidencing, supporting, forming any basis for, or constituting.

5.    "Document" or "Documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the Federal Rules of Civil Procedure, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, accounting software printouts or reports (e.g. Quickbooks), disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

6.    "Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) and/or all related metadata with respect to all such Documents/ESI.

7.    "Identify" or "Identity(ies)" (person(s)) when referring to person (or entity) shall, shall mean to provide the person's (or entity's) full first and last (or business) name; last known address, telephone number, and e-mail address; and last known place of employment.

8.    "Identify" or "Identity(ies)" (document(s)) when referring to a document, shall mean to provide the document's name; the date of the document's creation; the form of the document (e.g., letter, e-mail message, etc.); a description of the substance of the document; and the identity of the person who currently possesses the document (and, if the document no longer exists, an explanation for why it no longer exists and the date on which it ceased to exist).

5

9. "Lawsuit" shall mean and refer to the above-captioned lawsuit styled: *Hunter Mountain Investment Trust v. James D. Dondero, et al.*, Adversary Proceeding No. 21-03076 in the United States Bankruptcy Court for the Northern District of Texas.

10. "Interest," shall mean any ownership interest, whether direct, indirect, legal, equitable, or beneficial, in whole or in part, as well as any investment interest, including ownership of stock, shares or equity, possessory interest, security interest, contingent or unvested interest, or right of first refusal.

11. "Person" shall mean any natural person and/or any business, legal, or governmental entity or association.

12. "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, shall mean the party or parties, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13. "Defendants" shall mean, collectively, all Defendants to this Lawsuit:

    a. James D. Dondero;
    b. Scott Ellington;
    c. Isaac Leventon;
    d. Strand Advisors, Inc. ("Strand Advisors"),
    e. Get Good Trust and Grant Scott as Trustee of the Get Good Trust ("Get Good"),
    f. NexPoint Advisors, L.P. ("NexPoint"),
    g. Highland Capital Management Fund Advisors, L.P. ("HCMFA"),
    h. Dugaboy Investment Trust and Nancy Dondero as Trustee of the Dugaboy Investment Trust ("Dugaboy"),
    i. Highland Dallas Foundation ("HDF"),
    j. Massand Capital LLC,
    k. Massand Capital, Inc.; and
    l. SAS Asset Recovery, Ltd. ("SAS").

14. "Service Providers" shall mean, collectively:

    a. Armanino LLP;
    b. Baker McKenzie LLP;
    c. Carey Olsen LLP;
    d. CoastRoad Group;
    e. Grant Thornton (Cayman) LLP;
    f. Grant Thornton Specialist Services (Cayman) Limited;
    g. Haynes & Boone LLP;
    h. Johnstone Law;
    i. Maples and Calder (Cayman) LLP;
    j. Reed Smith LLP
    k. Highgate Consulting Group Inc.;

6

l. Texas Capital Bank; and

m. Winston & Strawn LLP.

15. "Foundations" shall mean, collectively:

a. Santa Barbara Foundation;

b. Greater Kansas City Community Foundation;

c. Dallas Foundation;

d. North Texas Community Foundation;

e. Highland Santa Barbara Foundation, Inc.;

f. Highland Kansas City Foundation, Inc.; and

g. HCMLP Charitable Fund.

16. "Highland," "HCM," or "Debtor" shall mean Highland Capital Management, L.P.

17. "HMIT Settlement" shall mean the Settlement Agreement entered into between HMIT and Highland confirmed by Order Pursuant To Bankruptcy Rule 9019 And 11 U.S.C. § 363 Approving Settlement Between The Highland Entities And The HMIT Entities And Authorizing Actions Consistent Therewith [HCM Bk. Doc. 4297].

18. "DAF HoldCo Liquidation" shall mean the Official Liquidation of Charitable DAF HoldCo, Ltd. in the Grand Court of the Cayman Islands, Financial Services Division, FSD No. 2025-116 (JAJ).

## DEPOSITION TOPICS

1. All shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

2. The purported business purpose for each shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants;

3. The relationship(s) between each Defendant or Transfer Affiliate and any other entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

4. All actual or proposed transfers of funds or assets by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

5. The purported business justification for each actual or proposed transfer of funds or assets by, at the direction, or for the benefit of one or more of Defendants;

6. All internal or third-party valuations prepared for the assets involved in any transfers made by, at the direction of, or for the benefit of one or more of Defendants;

7. All businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has an Interest at present;

8. All of each Defendant's or Transfer Affiliate's assets from October 15, 2021, until present, including, without limitation: (1) all real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present; (2) all personal property or business personal property in which any Defendant or Transfer Affiliate has an Interest at present; and (3) any stocks, bonds, or other securities in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present;

9. Defendants' attempts to interfere with the HMIT Settlement; and

10. Defendants' attempts to interfere with the DAF HoldCo Liquidation.

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL<br>MANAGEMENT, L.P.,<br><br>      Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,**<br><br>      **Defendants.** | **Adv. Pro. No. 21-03076-sgj** |

## PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S
## NOTICE OF SUBPOENA FOR EXPEDITED ORAL AND
## <u>VIDEOTAPED DEPOSITION OF FRANK WATERHOUSE</u>

Pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of

Bankruptcy Procedure, and the Court's *Order Granting Expedited Discovery* [Doc. ___] Hunter

Mountain Investment Trust ("HMIT") intends to serve the Subpoena for oral and videotaped deposition of Frank Waterhouse ("Waterhouse") attached as **Exhibit A** ("Subpoena").

The deposition will take place before a certified court reporter or other individual authorized by law to administer oaths and take depositions at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location), or remotely via Zoom, beginning at __:__ _.m. **(Central)** on _____, **2025**, and continuing day after day until completed.

The deposition will be videotaped and a Zoom remote link will be provided to all of the Defendants and their counsel at least twenty-four hours prior to the deposition, if applicable.

Respectfully submitted,

*/s/ DRAFT*_____
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN
INVESTMENT TRUST**

**CERTIFICATE OF SERVICE**

I hereby certify that on September __, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

*/s/ DRAFT*_____
Ian B. Salzer

2

**EXHIBIT A**

# UNITED STATES BANKRUPTCY COURT

_____ District of _____

In re Highland Capital Management, L.P.
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. __19-34054-sgj11__

Mark S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust,
Plaintiff

v.

James D. Dondero, et al.
Defendant

Chapter 11

Adv. Proc. No. __21-03076-sgj__

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: **Frank Waterhouse**_____

(Name of person to whom the subpoena is directed)

☐ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding).  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: **See Exhibit A**.

| PLACE Parsons, McEntire, McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 | DATE AND TIME |
|---|---|

The deposition will be recorded by this method:

__Stenographer and videographer.__

☐ *Production*:  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of **Fed. R. Civ. P. 45**, made applicable in bankruptcy cases by **Fed. R. Bankr. P. 9016**, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____          _____
Signature of Clerk or Deputy Clerk                    Attorney's signature

The name, address, email address, and telephone number of the attorney representing Hunter Mountain Investment Trust,  who issues or requests this subpoena, are:

__See Exhibit A__.

Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

## DEFINITIONS

For the purposes of this Notice, the following terms shall have the following definitions and meanings, unless expressly provided otherwise:

1.  "Waterhouse," "you," and "your," shall mean the party to whom this Notice is directed and all of its/his/her managing members and other members, officers, agents, employees, representatives, attorneys, partners, predecessors, successors, assigns, and anyone else acting on its/his/her behalf, now or at any time relevant to the response.

2.  "Transfer Affiliates" shall mean, collectively, each and every direct or indirect subsidiary, affiliate, joint venture, parent company, sister company, trust, officer, director, partner, owner, insider, investor, shareholder, member, and/or manager of any Defendant at any time, including but not limited to:

   a.  Skyview Group, Inc. ("Skyview");
   b.  Skyview Legal, PC;
   c.  Crossvine Litigation Funding LLC;
   d.  Crossvine Holdings LLC;
   e.  Crossvine Foundation;
   f.  CEV Holdings LLC;
   g.  Greystone Advisors LLC;
   h.  Sunshine Coast Development LLC;
   i.  Highgate Consulting Group Inc.;
   j.  Tall Pine Group LLC;
   k.  Fineline Cinemas, LLC;
   l.  Zebra Land & Cattle, LLC;
   m.  Atreyu Pipeline Logistics, LLC;
   n.  Ellington Management Group LLC;
   o.  NexBank Capital, Inc.;
   p.  NexBank, SSB;
   q.  The SLHC Trust;
   r.  Sentinel Reinsurance, Ltd. ("Sentinel");
   s.  Highland Capital Management Services Inc.;
   t.  Basis Industrial;
   u.  CMP Capital Partners;
   v.  CMP Capital Management;
   w.  City of Plano, Texas;
   x.  PEG Hospitality Group;
   y.  Evergreen Residential Holdings;
   z.  Ohio State Life Insurance Company;
   aa.  Strategic Realty Solutions, LLC;
   bb.  Capital Acquisition Partners, LLC;
   cc.  BH Management Services, LLC; and
   dd.  Change Lending, LLC.

3.　　"Communication(s)" and "communicate" shall mean any manner in which the mental processes of one individual are relayed to another, including, without limitation, any verbal utterance, correspondence, email, text message, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

4.　　"Concerning" shall mean reflecting, regarding, relating to, referring to, describing, evidencing, supporting, forming any basis for, or constituting.

5.　　"Document" or "Documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the Federal Rules of Civil Procedure, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, accounting software printouts or reports (e.g. Quickbooks), disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

6.　　"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) and/or all related metadata with respect to all such Documents/ESI.

7.　　"Identify" or "Identity(ies)" (person(s)) when referring to person (or entity) shall, shall mean to provide the person's (or entity's) full first and last (or business) name; last known address, telephone number, and e-mail address; and last known place of employment.

8.　　"Identify" or "Identity(ies)" (document(s)) when referring to a document, shall mean to provide the document's name; the date of the document's creation; the form of the document (e.g., letter, e-mail message, etc.); a description of the substance of the document; and the identity of the person who currently possesses the document (and, if the document no longer exists, an explanation for why it no longer exists and the date on which it ceased to exist).

9.  "Lawsuit" shall mean and refer to the above-captioned lawsuit styled: *Hunter Mountain Investment Trust v. James D. Dondero, et al.*, Adversary Proceeding No. 21-03076 in the United States Bankruptcy Court for the Northern District of Texas.

10.  "Interest," shall mean any ownership interest, whether direct, indirect, legal, equitable, or beneficial, in whole or in part, as well as any investment interest, including ownership of stock, shares or equity, possessory interest, security interest, contingent or unvested interest, or right of first refusal.

11.  "Person" shall mean any natural person and/or any business, legal, or governmental entity or association.

12.  "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, shall mean the party or parties, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13.  "Defendants" shall mean, collectively, all Defendants to this Lawsuit:

   a.  James D. Dondero;
   b.  Scott Ellington;
   c.  Isaac Leventon;
   d.  Strand Advisors, Inc. ("Strand Advisors"),
   e.  Get Good Trust and Grant Scott as Trustee of the Get Good Trust ("Get Good"),
   f.  NexPoint Advisors, L.P. ("NexPoint"),
   g.  Highland Capital Management Fund Advisors, L.P. ("HCMFA"),
   h.  Dugaboy Investment Trust and Nancy Dondero as Trustee of the Dugaboy Investment Trust ("Dugaboy"),
   i.  Highland Dallas Foundation ("HDF"),
   j.  Massand Capital LLC,
   k.  Massand Capital, Inc.; and
   l.  SAS Asset Recovery, Ltd. ("SAS").

14.  "Service Providers" shall mean, collectively:

   a.  Armanino LLP;
   b.  Baker McKenzie LLP;
   c.  Carey Olsen LLP;
   d.  CoastRoad Group;
   e.  Grant Thornton (Cayman) LLP;
   f.  Grant Thornton Specialist Services (Cayman) Limited;
   g.  Haynes & Boone LLP;
   h.  Johnstone Law;
   i.  Maples and Calder (Cayman) LLP;
   j.  Reed Smith LLP
   k.  Highgate Consulting Group Inc.;

6

l.　　Texas Capital Bank; and

m.　　Winston & Strawn LLP.

15.　　"Foundations" shall mean, collectively:

a.　　Santa Barbara Foundation;

b.　　Greater Kansas City Community Foundation;

c.　　Dallas Foundation;

d.　　North Texas Community Foundation;

e.　　Highland Santa Barbara Foundation, Inc.;

f.　　Highland Kansas City Foundation, Inc.; and

g.　　HCMLP Charitable Fund.

16.　　"Highland," "HCM," or "Debtor" shall mean Highland Capital Management, L.P.

17.　　"HMIT Settlement" shall mean the Settlement Agreement entered into between HMIT and Highland confirmed by Order Pursuant To Bankruptcy Rule 9019 And 11 U.S.C. § 363 Approving Settlement Between The Highland Entities And The HMIT Entities And Authorizing Actions Consistent Therewith [HCM Bk. Doc. 4297].

18.　　"DAF HoldCo Liquidation" shall mean the Official Liquidation of Charitable DAF HoldCo, Ltd. in the Grand Court of the Cayman Islands, Financial Services Division, FSD No. 2025-116 (JAJ).

## DEPOSITION TOPICS

1. All shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

2. The purported business purpose for each shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants;

3. The relationship(s) between each Defendant or Transfer Affiliate and any other entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

4. All actual or proposed transfers of funds or assets by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

5. The purported business justification for each actual or proposed transfer of funds or assets by, at the direction, or for the benefit of one or more of Defendants;

6. All internal or third-party valuations prepared for the assets involved in any transfers made by, at the direction of, or for the benefit of one or more of Defendants;

7. All businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has an Interest at present;

8. All of each Defendant's or Transfer Affiliate's assets from October 15, 2021, until present, including, without limitation: (1) all real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present; (2) all personal property or business personal property in which any Defendant or Transfer Affiliate has an Interest at present; and (3) any stocks, bonds, or other securities in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present;

9. Defendants' attempts to interfere with the HMIT Settlement; and

10. Defendants' attempts to interfere with the DAF HoldCo Liquidation.

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL<br>MANAGEMENT, L.P.,<br><br>      Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,**<br><br>      **Defendants.** | **Adv. Pro. No. 21-03076-sgj** |

### PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S
### NOTICE OF SUBPOENA FOR ORAL AND VIDEOTAPED
### <u>DEPOSITION OF JAMES P. SEERY, JR.</u>

Pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of

Bankruptcy Procedure, and the Court's *Order Granting Expedited Discovery* [Doc. ___] Hunter

Mountain Investment Trust ("HMIT") intends to serve the Subpoena for oral and videotaped deposition of James P. Seery, Jr. ("Seery") attached as **Exhibit A** ("Subpoena").

The deposition will take place before a certified court reporter or other individual authorized by law to administer oaths and take depositions at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location), or remotely via Zoom, beginning at **__:__ _.m. (Central)** on **_____, 2025**, and continuing day after day until completed.

The deposition will be videotaped and a Zoom remote link will be provided to all of the Defendants and their counsel at least twenty-four hours prior to the deposition, if applicable.

Respectfully submitted,

*/s/ DRAFT_____*
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN
INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on September __, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

*/s/ DRAFT_____*
Ian B. Salzer

2

**EXHIBIT A**

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District of _____

In re Highland Capital Management, L.P.
                                    Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 19-34054-sgj11

Mark S. Kirschner, as Litigation Trustee of the Litigation
Sub-Trust,
                                    Plaintiff

Chapter 11

v.

James D. Dondero, et al.
                                    Defendant

Adv. Proc. No. 21-03076-sgj

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: **James P. Seery Jr.**_____

*(Name of person to whom the subpoena is directed)*

☐ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: **See Exhibit A**.

| PLACE Parsons, McEntire, McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 | DATE AND TIME |
|---|---|

The deposition will be recorded by this method:

  Stenographer and videographer.

☐ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of **Fed. R. Civ. P. 45**, made applicable in bankruptcy cases by **Fed. R. Bankr. P. 9016**, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____                  _____
*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing Hunter Mountain Investment Trust, who issues or requests this subpoena, are:

  **See Exhibit A**.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS

For the purposes of this Notice, the following terms shall have the following definitions and meanings, unless expressly provided otherwise:

1.     "Seery," "you," and "your," shall mean the party to whom this Notice is directed and all of its/his/her managing members and other members, officers, agents, employees, representatives, attorneys, partners, predecessors, successors, assigns, and anyone else acting on its/his/her behalf, now or at any time relevant to the response.

2.     "Transfer Affiliates" shall mean, collectively, each and every direct or indirect subsidiary, affiliate, joint venture, parent company, sister company, trust, officer, director, partner, owner, insider, investor, shareholder, member, and/or manager of any Defendant at any time, including but not limited to:

        a.     Skyview Group, Inc. ("Skyview");
        b.     Skyview Legal, PC;
        c.     Crossvine Litigation Funding LLC;
        d.     Crossvine Holdings LLC;
        e.     Crossvine Foundation;
        f.     CEV Holdings LLC;
        g.     Greystone Advisors LLC;
        h.     Sunshine Coast Development LLC;
        i.     Highgate Consulting Group Inc.;
        j.     Tall Pine Group LLC;
        k.     Fineline Cinemas, LLC;
        l.     Zebra Land & Cattle, LLC;
        m.     Atreyu Pipeline Logistics, LLC;
        n.     Ellington Management Group LLC;
        o.     NexBank Capital, Inc.;
        p.     NexBank, SSB;
        q.     The SLHC Trust;
        r.     Sentinel Reinsurance, Ltd. ("Sentinel");
        s.     Highland Capital Management Services Inc.;
        t.     Basis Industrial;
        u.     CMP Capital Partners;
        v.     CMP Capital Management;
        w.     City of Plano, Texas;
        x.     PEG Hospitality Group;
        y.     Evergreen Residential Holdings;
        z.     Ohio State Life Insurance Company;
        aa.     Strategic Realty Solutions, LLC;
        bb.     Capital Acquisition Partners, LLC;
        cc.     BH Management Services, LLC; and
        dd.     Change Lending, LLC.

3.      "Communication(s)" and "communicate" shall mean any manner in which the mental processes of one individual are relayed to another, including, without limitation, any verbal utterance, correspondence, email, text message, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

4.      "Concerning" shall mean reflecting, regarding, relating to, referring to, describing, evidencing, supporting, forming any basis for, or constituting.

5.      "Document" or "Documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the Federal Rules of Civil Procedure, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, accounting software printouts or reports (e.g. Quickbooks), disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

6.      "Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) and/or all related metadata with respect to all such Documents/ESI.

7.      "Identify" or "Identity(ies)" (person(s)) when referring to person (or entity) shall, shall mean to provide the person's (or entity's) full first and last (or business) name; last known address, telephone number, and e-mail address; and last known place of employment.

8.      "Identify" or "Identity(ies)" (document(s)) when referring to a document, shall mean to provide the document's name; the date of the document's creation; the form of the document (e.g., letter, e-mail message, etc.); a description of the substance of the document; and the identity of the person who currently possesses the document (and, if the document no longer exists, an explanation for why it no longer exists and the date on which it ceased to exist).

9. "Lawsuit" shall mean and refer to the above-captioned lawsuit styled: *Hunter Mountain Investment Trust v. James D. Dondero, et al.*, Adversary Proceeding No. 21-03076 in the United States Bankruptcy Court for the Northern District of Texas.

10. "Interest," shall mean any ownership interest, whether direct, indirect, legal, equitable, or beneficial, in whole or in part, as well as any investment interest, including ownership of stock, shares or equity, possessory interest, security interest, contingent or unvested interest, or right of first refusal.

11. "Person" shall mean any natural person and/or any business, legal, or governmental entity or association.

12. "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, shall mean the party or parties, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13. "Defendants" shall mean, collectively, all Defendants to this Lawsuit:

   a. James D. Dondero;
   b. Scott Ellington;
   c. Isaac Leventon;
   d. Strand Advisors, Inc. ("Strand Advisors"),
   e. Get Good Trust and Grant Scott as Trustee of the Get Good Trust ("Get Good"),
   f. NexPoint Advisors, L.P. ("NexPoint"),
   g. Highland Capital Management Fund Advisors, L.P. ("HCMFA"),
   h. Dugaboy Investment Trust and Nancy Dondero as Trustee of the Dugaboy Investment Trust ("Dugaboy"),
   i. Highland Dallas Foundation ("HDF"),
   j. Massand Capital LLC,
   k. Massand Capital, Inc.; and
   l. SAS Asset Recovery, Ltd. ("SAS").

14. "Service Providers" shall mean, collectively:

   a. Armanino LLP;
   b. Baker McKenzie LLP;
   c. Carey Olsen LLP;
   d. CoastRoad Group;
   e. Grant Thornton (Cayman) LLP;
   f. Grant Thornton Specialist Services (Cayman) Limited;
   g. Haynes & Boone LLP;
   h. Johnstone Law;
   i. Maples and Calder (Cayman) LLP;
   j. Reed Smith LLP
   k. Highgate Consulting Group Inc.;

6

   l.  Texas Capital Bank; and
   m.  Winston & Strawn LLP.

 15.  "Foundations" shall mean, collectively:

   a.  Santa Barbara Foundation;
   b.  Greater Kansas City Community Foundation;
   c.  Dallas Foundation;
   d.  North Texas Community Foundation;
   e.  Highland Santa Barbara Foundation, Inc.;
   f.  Highland Kansas City Foundation, Inc.; and
   g.  HCMLP Charitable Fund.

 16.  "Highland," "HCM," or "Debtor" shall mean Highland Capital Management, L.P.

 17.  "HMIT Settlement" shall mean the Settlement Agreement entered into between HMIT and Highland confirmed by Order Pursuant To Bankruptcy Rule 9019 And 11 U.S.C. § 363 Approving Settlement Between The Highland Entities And The HMIT Entities And Authorizing Actions Consistent Therewith [HCM Bk. Doc. 4297].

 18.  "DAF HoldCo Liquidation" shall mean the Official Liquidation of Charitable DAF HoldCo, Ltd. in the Grand Court of the Cayman Islands, Financial Services Division, FSD No. 2025-116 (JAJ).

## DEPOSITION TOPICS

1. All shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

2. The purported business purpose for each shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants;

3. The relationship(s) between each Defendant or Transfer Affiliate and any other entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

4. All actual or proposed transfers of funds or assets by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

5. The purported business justification for each actual or proposed transfer of funds or assets by, at the direction, or for the benefit of one or more of Defendants;

6. All internal or third-party valuations prepared for the assets involved in any transfers made by, at the direction of, or for the benefit of one or more of Defendants;

7. All businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has an Interest at present;

8. All of each Defendant's or Transfer Affiliate's assets from October 15, 2021, until present, including, without limitation: (1) all real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present; (2) all personal property or business personal property in which any Defendant or Transfer Affiliate has an Interest at present; and (3) any stocks, bonds, or other securities in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present;

9. Defendants' attempts to interfere with the HMIT Settlement; and

10. Defendants' attempts to interfere with the DAF HoldCo Liquidation.

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL<br>MANAGEMENT, L.P.,<br><br>      Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,**<br><br>      **Defendants.** | **Adv. Pro. No. 21-03076-sgj** |

## PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S
## NOTICE OF SUBPOENA FOR EXPEDITED ORAL AND
## <u>VIDEOTAPED DEPOSITION OF ASHLEY GUNTER</u>

Pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of

Bankruptcy Procedure, and the Court's *Order Granting Expedited Discovery* [Doc. ___] Hunter

1

Mountain Investment Trust ("HMIT") intends to serve the Subpoena for oral and videotaped deposition of Ashley Gunter ("Gunter") attached as **Exhibit A** ("Subpoena").

The deposition will take place before a certified court reporter or other individual authorized by law to administer oaths and take depositions at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location), or remotely via Zoom, beginning at __:__ _.m. (Central) on _____, **2025**, and continuing day after day until completed.

The deposition will be videotaped and a Zoom remote link will be provided to all of the Defendants and their counsel at least twenty-four hours prior to the deposition, if applicable.

Respectfully submitted,

*/s/ DRAFT*_____
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN INVESTMENT TRUST**

**CERTIFICATE OF SERVICE**

I hereby certify that on September __, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

*/s/ DRAFT*_____
Ian B. Salzer

2

**EXHIBIT A**

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding)

# UNITED STATES BANKRUPTCY COURT

_____ District of _____

In re Highland Capital Management, L.P.

Debtor

*(Complete if issued in an adversary proceeding)*

Mark S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust,

Plaintiff

v.

James D. Dondero, et al.

Defendant

Case No. 19-34054-sgj11

Chapter 11

Adv. Proc. No. 21-03076-sgj

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: **Ashley Gunter**_____

*(Name of person to whom the subpoena is directed)*

☐ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: **See Exhibit A**.

| PLACE Parsons, McEntire, McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 | DATE AND TIME |
|---|---|

The deposition will be recorded by this method:

_Stenographer and videographer._

☐ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of **Fed. R. Civ. P. 45**, made applicable in bankruptcy cases by **Fed. R. Bankr. P. 9016**, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing Hunter Mountain Investment Trust, who issues or requests this subpoena, are:

**See Exhibit A**.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date: _____

                                            _____
                                                        *Server's signature*

                                            _____
                                                        *Printed name and title*

                                            _____
                                                        *Server's address*


Additional information concerning attempted service, etc.:

Case 21-30807-sgj Doc 89-80 Filed 10/25/21 Entered 10/25/21 14:00:09 Desc Main Case 21-03076-sgj Doc 3 Filed 10/25/21 Entered 10/25/21 14:00:09 Desc Main Document Page 344 of 376

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS

For the purposes of this Notice, the following terms shall have the following definitions and meanings, unless expressly provided otherwise:

1.      "Gunter," "you," and "your," shall mean the party to whom this Notice is directed and all of its/his/her managing members and other members, officers, agents, employees, representatives, attorneys, partners, predecessors, successors, assigns, and anyone else acting on its/his/her behalf, now or at any time relevant to the response.

2.      "Transfer Affiliates" shall mean, collectively, each and every direct or indirect subsidiary, affiliate, joint venture, parent company, sister company, trust, officer, director, partner, owner, insider, investor, shareholder, member, and/or manager of any Defendant at any time, including but not limited to:

|     |     |
|-----|-----|
| a.  | Skyview Group, Inc. ("Skyview"); |
| b.  | Skyview Legal, PC; |
| c.  | Crossvine Litigation Funding LLC; |
| d.  | Crossvine Holdings LLC; |
| e.  | Crossvine Foundation; |
| f.  | CEV Holdings LLC; |
| g.  | Greystone Advisors LLC; |
| h.  | Sunshine Coast Development LLC; |
| i.  | Highgate Consulting Group Inc.; |
| j.  | Tall Pine Group LLC; |
| k.  | Fineline Cinemas, LLC; |
| l.  | Zebra Land & Cattle, LLC; |
| m.  | Atreyu Pipeline Logistics, LLC; |
| n.  | Ellington Management Group LLC; |
| o.  | NexBank Capital, Inc.; |
| p.  | NexBank, SSB; |
| q.  | The SLHC Trust; |
| r.  | Sentinel Reinsurance, Ltd. ("Sentinel") |
| s.  | Highland Capital Management Services Inc.; |
| t.  | Basis Industrial; |
| u.  | CMP Capital Partners; |
| v.  | CMP Capital Management; |
| w.  | City of Plano, Texas; |
| x.  | PEG Hospitality Group; |
| y.  | Evergreen Residential Holdings; |
| z.  | Ohio State Life Insurance Company; |
| aa. | Strategic Realty Solutions, LLC; |
| bb. | Capital Acquisition Partners, LLC; |
| cc. | BH Management Services, LLC; and |
| dd. | Change Lending, LLC. |

3. "Communication(s)" and "communicate" shall mean any manner in which the mental processes of one individual are relayed to another, including, without limitation, any verbal utterance, correspondence, email, text message, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

4. "Concerning" shall mean reflecting, regarding, relating to, referring to, describing, evidencing, supporting, forming any basis for, or constituting.

5. "Document" or "Documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the Federal Rules of Civil Procedure, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, accounting software printouts or reports (e.g. Quickbooks), disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

6. "Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) and/or all related metadata with respect to all such Documents/ESI.

7. "Identify" or "Identity(ies)" (person(s)) when referring to person (or entity) shall, shall mean to provide the person's (or entity's) full first and last (or business) name; last known address, telephone number, and e-mail address; and last known place of employment.

8. "Identify" or "Identity(ies)" (document(s)) when referring to a document, shall mean to provide the document's name; the date of the document's creation; the form of the document (e.g., letter, e-mail message, etc.); a description of the substance of the document; and the identity of the person who currently possesses the document (and, if the document no longer exists, an explanation for why it no longer exists and the date on which it ceased to exist).

9.      "Lawsuit" shall mean and refer to the above-captioned lawsuit styled: *Hunter Mountain Investment Trust v. James D. Dondero, et al.*, Adversary Proceeding No. 21-03076 in the United States Bankruptcy Court for the Northern District of Texas.

10.      "Interest," shall mean any ownership interest, whether direct, indirect, legal, equitable, or beneficial, in whole or in part, as well as any investment interest, including ownership of stock, shares or equity, possessory interest, security interest, contingent or unvested interest, or right of first refusal.

11.      "Person" shall mean any natural person and/or any business, legal, or governmental entity or association.

12.      "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, shall mean the party or parties, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13.      "Defendants" shall mean, collectively, all Defendants to this Lawsuit:

    a.      James D. Dondero;
    b.      Scott Ellington;
    c.      Isaac Leventon;
    d.      Strand Advisors, Inc. ("Strand Advisors"),
    e.      Get Good Trust and Grant Scott as Trustee of the Get Good Trust ("Get Good"),
    f.      NexPoint Advisors, L.P. ("NexPoint"),
    g.      Highland Capital Management Fund Advisors, L.P. ("HCMFA"),
    h.      Dugaboy Investment Trust and Nancy Dondero as Trustee of the Dugaboy Investment Trust ("Dugaboy"),
    i.      Highland Dallas Foundation ("HDF"),
    j.      Massand Capital LLC,
    k.      Massand Capital, Inc.; and
    l.      SAS Asset Recovery, Ltd. ("SAS").

14.      "Service Providers" shall mean, collectively:

    a.      Armanino LLP;
    b.      Baker McKenzie LLP;
    c.      Carey Olsen LLP;
    d.      CoastRoad Group;
    e.      Grant Thornton (Cayman) LLP;
    f.      Grant Thornton Specialist Services (Cayman) Limited;
    g.      Haynes & Boone LLP;
    h.      Johnstone Law;
    i.      Maples and Calder (Cayman) LLP;
    j.      Reed Smith LLP
    k.      Highgate Consulting Group Inc.;

l.      Texas Capital Bank; and

m.    Winston & Strawn LLP.

15.    "Foundations" shall mean, collectively:

a.     Santa Barbara Foundation;

b.     Greater Kansas City Community Foundation;

c.     Dallas Foundation;

d.     North Texas Community Foundation;

e.     Highland Santa Barbara Foundation, Inc.;

f.     Highland Kansas City Foundation, Inc.; and

g.     HCMLP Charitable Fund.

16.    "Highland," "HCM," or "Debtor" shall mean Highland Capital Management, L.P.

17.    "HMIT Settlement" shall mean the Settlement Agreement entered into between HMIT and Highland confirmed by Order Pursuant To Bankruptcy Rule 9019 And 11 U.S.C. § 363 Approving Settlement Between The Highland Entities And The HMIT Entities And Authorizing Actions Consistent Therewith [HCM Bk. Doc. 4297].

18.    "DAF HoldCo Liquidation" shall mean the Official Liquidation of Charitable DAF HoldCo, Ltd. in the Grand Court of the Cayman Islands, Financial Services Division, FSD No. 2025-116 (JAJ).

## DEPOSITION TOPICS

1. All shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

2. The purported business purpose for each shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants;

3. The relationship(s) between each Defendant or Transfer Affiliate and any other entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

4. All actual or proposed transfers of funds or assets by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

5. The purported business justification for each actual or proposed transfer of funds or assets by, at the direction, or for the benefit of one or more of Defendants;

6. All internal or third-party valuations prepared for the assets involved in any transfers made by, at the direction of, or for the benefit of one or more of Defendants;

7. All businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has an Interest at present;

8. All of each Defendant's or Transfer Affiliate's assets from October 15, 2021, until present, including, without limitation: (1) all real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present; (2) all personal property or business personal property in which any Defendant or Transfer Affiliate has an Interest at present; and (3) any stocks, bonds, or other securities in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present;

9. Defendants' attempts to interfere with the HMIT Settlement; and

10. Defendants' attempts to interfere with the DAF HoldCo Liquidation.

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

| | |
|---|---|
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | |
| **Plaintiff,** | |
| **v.** | **Adv. Pro. No. 21-03076-sgj** |
| **JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,** | |
| **Defendants.** | |

## PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S NOTICE OF SUBPOENA FOR EXPEDITED ORAL AND <u>VIDEOTAPED DEPOSITION OF RICK SWADLEY</u>

Pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of

Bankruptcy Procedure, and the Court's *Order Granting Expedited Discovery* [Doc. ___] Hunter

1

Mountain Investment Trust ("HMIT") intends to serve the Subpoena for oral and videotaped deposition of Rick Swadley ("Swadley") attached as **Exhibit A** ("Subpoena").

The deposition will take place before a certified court reporter or other individual authorized by law to administer oaths and take depositions at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location), or remotely via Zoom, beginning at __:__ _.m. **(Central)** on _____, **2025**, and continuing day after day until completed.

The deposition will be videotaped and a Zoom remote link will be provided to all of the Defendants and their counsel at least twenty-four hours prior to the deposition, if applicable.

Respectfully submitted,

*/s/ DRAFT*_____
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN
INVESTMENT TRUST**

**CERTIFICATE OF SERVICE**

I hereby certify that on September __, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

*/s/ DRAFT*_____
Ian B. Salzer

**EXHIBIT A**

# UNITED STATES BANKRUPTCY COURT

_____ District of _____

In re Highland Capital Management, L.P.
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 19-34054-sgj11

Mark S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust,
Plaintiff

Chapter 11

v.

James D. Dondero, et al.
Defendant

Adv. Proc. No. 21-03076-sgj

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: **Rick Swadley**_____

*(Name of person to whom the subpoena is directed)*

☐ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: **See Exhibit A**.

| PLACE Parsons, McEntire, McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 | DATE AND TIME |
|---|---|

The deposition will be recorded by this method:

__Stenographer and videographer.__

☐ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of **Fed. R. Civ. P. 45**, made applicable in bankruptcy cases by **Fed. R. Bankr. P. 9016**, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

CLERK OF COURT

OR

_____      _____
Signature of Clerk or Deputy Clerk      Attorney's signature

The name, address, email address, and telephone number of the attorney representing Hunter Mountain Investment Trust, who issues or requests this subpoena, are:

__See Exhibit A.__

<strong>Notice to the person who issues or requests this subpoena</strong>

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS

For the purposes of this Notice, the following terms shall have the following definitions and meanings, unless expressly provided otherwise:

1.      "Swadley," "you," and "your," shall mean the party to whom this Notice is directed and all of its/his/her managing members and other members, officers, agents, employees, representatives, attorneys, partners, predecessors, successors, assigns, and anyone else acting on its/his/her behalf, now or at any time relevant to the response.

2.      "Transfer Affiliates" shall mean, collectively, each and every direct or indirect subsidiary, affiliate, joint venture, parent company, sister company, trust, officer, director, partner, owner, insider, investor, shareholder, member, and/or manager of any Defendant at any time, including but not limited to:

a.      Skyview Group, Inc. ("Skyview");
b.      Skyview Legal, PC;
c.      Crossvine Litigation Funding LLC;
d.      Crossvine Holdings LLC;
e.      Crossvine Foundation;
f.      CEV Holdings LLC;
g.      Greystone Advisors LLC;
h.      Sunshine Coast Development LLC;
i.      Highgate Consulting Group Inc.;
j.      Tall Pine Group LLC;
k.      Fineline Cinemas, LLC;
l.      Zebra Land & Cattle, LLC;
m.      Atreyu Pipeline Logistics, LLC;
n.      Ellington Management Group LLC;
o.      NexBank Capital, Inc.;
p.      NexBank, SSB;
q.      The SLHC Trust;
r.      Sentinel Reinsurance, Ltd. ("Sentinel");
s.      Highland Capital Management Services Inc.;
t.      Basis Industrial;
u.      CMP Capital Partners;
v.      CMP Capital Management;
w.      City of Plano, Texas;
x.      PEG Hospitality Group;
y.      Evergreen Residential Holdings;
z.      Ohio State Life Insurance Company;
aa.     Strategic Realty Solutions, LLC;
bb.     Capital Acquisition Partners, LLC;
cc.     BH Management Services, LLC; and
dd.     Change Lending, LLC.

4

3.     "Communication(s)" and "communicate" shall mean any manner in which the mental processes of one individual are relayed to another, including, without limitation, any verbal utterance, correspondence, email, text message, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

4.     "Concerning" shall mean reflecting, regarding, relating to, referring to, describing, evidencing, supporting, forming any basis for, or constituting.

5.     "Document" or "Documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the Federal Rules of Civil Procedure, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, accounting software printouts or reports (e.g. Quickbooks), disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

6.     "Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) and/or all related metadata with respect to all such Documents/ESI.

7.     "Identify" or "Identity(ies)" (person(s)) when referring to person (or entity) shall, shall mean to provide the person's (or entity's) full first and last (or business) name; last known address, telephone number, and e-mail address; and last known place of employment.

8.     "Identify" or "Identity(ies)" (document(s)) when referring to a document, shall mean to provide the document's name; the date of the document's creation; the form of the document (e.g., letter, e-mail message, etc.); a description of the substance of the document; and the identity of the person who currently possesses the document (and, if the document no longer exists, an explanation for why it no longer exists and the date on which it ceased to exist).

9.     "Lawsuit" shall mean and refer to the above-captioned lawsuit styled: *Hunter Mountain Investment Trust v. James D. Dondero, et al.*, Adversary Proceeding No. 21-03076 in the United States Bankruptcy Court for the Northern District of Texas.

10.     "Interest," shall mean any ownership interest, whether direct, indirect, legal, equitable, or beneficial, in whole or in part, as well as any investment interest, including ownership of stock, shares or equity, possessory interest, security interest, contingent or unvested interest, or right of first refusal.

11.     "Person" shall mean any natural person and/or any business, legal, or governmental entity or association.

12.     "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, shall mean the party or parties, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13.     "Defendants" shall mean, collectively, all Defendants to this Lawsuit:

    a.     James D. Dondero;
    b.     Scott Ellington;
    c.     Isaac Leventon;
    d.     Strand Advisors, Inc. ("Strand Advisors"),
    e.     Get Good Trust and Grant Scott as Trustee of the Get Good Trust ("Get Good"),
    f.     NexPoint Advisors, L.P. ("NexPoint"),
    g.     Highland Capital Management Fund Advisors, L.P. ("HCMFA"),
    h.     Dugaboy Investment Trust and Nancy Dondero as Trustee of the Dugaboy Investment Trust ("Dugaboy"),
    i.     Highland Dallas Foundation ("HDF"),
    j.     Massand Capital LLC,
    k.     Massand Capital, Inc.; and
    l.     SAS Asset Recovery, Ltd. ("SAS").

14.     "Service Providers" shall mean, collectively:

    a.     Armanino LLP;
    b.     Baker McKenzie LLP;
    c.     Carey Olsen LLP;
    d.     CoastRoad Group;
    e.     Grant Thornton (Cayman) LLP;
    f.     Grant Thornton Specialist Services (Cayman) Limited;
    g.     Haynes & Boone LLP;
    h.     Johnstone Law;
    i.     Maples and Calder (Cayman) LLP;
    j.     Reed Smith LLP
    k.     Highgate Consulting Group Inc.;

l.     Texas Capital Bank; and

m.    Winston & Strawn LLP.

15.    "Foundations" shall mean, collectively:

a.     Santa Barbara Foundation;

b.     Greater Kansas City Community Foundation;

c.     Dallas Foundation;

d.     North Texas Community Foundation;

e.     Highland Santa Barbara Foundation, Inc.;

f.     Highland Kansas City Foundation, Inc.; and

g.     HCMLP Charitable Fund.

16.    "Highland," "HCM," or "Debtor" shall mean Highland Capital Management, L.P.

17.    "HMIT Settlement" shall mean the Settlement Agreement entered into between HMIT and Highland confirmed by Order Pursuant To Bankruptcy Rule 9019 And 11 U.S.C. § 363 Approving Settlement Between The Highland Entities And The HMIT Entities And Authorizing Actions Consistent Therewith [HCM Bk. Doc. 4297].

18.    "DAF HoldCo Liquidation" shall mean the Official Liquidation of Charitable DAF HoldCo, Ltd. in the Grand Court of the Cayman Islands, Financial Services Division, FSD No. 2025-116 (JAJ).

## DEPOSITION TOPICS

1. All shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

2. The purported business purpose for each shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants;

3. The relationship(s) between each Defendant or Transfer Affiliate and any other entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

4. All actual or proposed transfers of funds or assets by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

5. The purported business justification for each actual or proposed transfer of funds or assets by, at the direction, or for the benefit of one or more of Defendants;

6. All internal or third-party valuations prepared for the assets involved in any transfers made by, at the direction of, or for the benefit of one or more of Defendants;

7. All businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has an Interest at present;

8. All of each Defendant's or Transfer Affiliate's assets from October 15, 2021, until present, including, without limitation: (1) all real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present; (2) all personal property or business personal property in which any Defendant or Transfer Affiliate has an Interest at present; and (3) any stocks, bonds, or other securities in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present;

9. Defendants' attempts to interfere with the HMIT Settlement; and

10. Defendants' attempts to interfere with the DAF HoldCo Liquidation.

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

| | |
|---|---|
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | |
| **Plaintiff,** | |
| **v.** | **Adv. Pro. No. 21-03076-sgj** |
| **JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.,** | |
| **Defendants.** | |

## PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S
## NOTICE OF SUBPOENA FOR EXPEDITED ORAL AND
## <u>VIDEOTAPED DEPOSITION OF JULIE DIAZ</u>

Pursuant to the Federal Rules of Civil Procedure, as adopted by the Federal Rules of

Bankruptcy Procedure, and the Court's *Order Granting Expedited Discovery* [Doc. ___] Hunter

1

Mountain Investment Trust ("HMIT") intends to serve the Subpoena for oral and videotaped deposition of Julie Diaz ("Diaz") attached as **Exhibit A** ("Subpoena").

The deposition will take place before a certified court reporter or other individual authorized by law to administer oaths and take depositions at the offices of Parsons McEntire McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 (or at another mutually agreeable location), or remotely via Zoom, beginning at __**:**__ _.m. **(Central)** on _____, **2025**, and continuing day after day until completed.

The deposition will be videotaped and a Zoom remote link will be provided to all of the Defendants and their counsel at least twenty-four hours prior to the deposition, if applicable.

Respectfully submitted,

*/s/ DRAFT* _____
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on September __, 2025, a true and correct copy of the foregoing document was served on all parties of record via the Court's ECF system.

*/s/ DRAFT* _____
Ian B. Salzer

2

**EXHIBIT A**

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding)

# UNITED STATES BANKRUPTCY COURT

_____ District of _____

In re Highland Capital Management, L.P.
_____
                    Debtor

Case No.  19-34054-sgj11

_(Complete if issued in an adversary proceeding)_

Mark S. Kirschner, as Litigation Trustee of the Litigation
Sub-Trust,
                    Plaintiff

Chapter 11

v.

James D. Dondero, et al.
                    Defendant

Adv. Proc. No.  21-03076-sgj

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  _____**Julie Diaz**_____

_(Name of person to whom the subpoena is directed)_

☐ _Testimony_:  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding).  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: **See Exhibit A**.

| PLACE Parsons, McEntire, McCleary, PLLC, 1700 Pacific Ave., Suite 4400, Dallas, TX 75201 | DATE AND TIME |
|---|---|

The deposition will be recorded by this method:

  Stenographer and videographer.

☐ _Production_:  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of **Fed. R. Civ. P. 45**, made applicable in bankruptcy cases by **Fed. R. Bankr. P. 9016**, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

                    CLERK OF COURT

                                                OR

_____          _____
   _Signature of Clerk or Deputy Clerk_              _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing Hunter Mountain Investment Trust,  who issues or requests this subpoena, are:

  **See Exhibit A**.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

      I declare under penalty of perjury that this information is true and correct.

Date: _____

 

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

    (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

    (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

        (i) is a party or a party's officer; or

        (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

    (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

    (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

    *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

    *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

        (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

        (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

    *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

        (i) fails to allow a reasonable time to comply;

        (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

        (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

        (iv) subjects a person to undue burden.

    *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

        (i) disclosing a trade secret or other confidential research, development, or commercial information; or

        (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

    *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

        (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

        (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

    *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

    *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

    *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

    *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

    *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

        (i) expressly make the claim; and

        (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

    *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## DEFINITIONS

For the purposes of this Notice, the following terms shall have the following definitions and meanings, unless expressly provided otherwise:

1.    "Diaz," "you," and "your," shall mean the party to whom this Notice is directed and all of its/his/her managing members and other members, officers, agents, employees, representatives, attorneys, partners, predecessors, successors, assigns, and anyone else acting on its/his/her behalf, now or at any time relevant to the response.

2.    "Transfer Affiliates" shall mean, collectively, each and every direct or indirect subsidiary, affiliate, joint venture, parent company, sister company, trust, officer, director, partner, owner, insider, investor, shareholder, member, and/or manager of any Defendant at any time, including but not limited to:

   a.    Skyview Group, Inc. ("Skyview");
   b.    Skyview Legal, PC;
   c.    Crossvine Litigation Funding LLC;
   d.    Crossvine Holdings LLC;
   e.    Crossvine Foundation;
   f.    CEV Holdings LLC;
   g.    Greystone Advisors LLC;
   h.    Sunshine Coast Development LLC;
   i.    Highgate Consulting Group Inc.;
   j.    Tall Pine Group LLC;
   k.    Fineline Cinemas, LLC;
   l.    Zebra Land & Cattle, LLC;
   m.    Atreyu Pipeline Logistics, LLC;
   n.    Ellington Management Group LLC;
   o.    NexBank Capital, Inc.;
   p.    NexBank, SSB;
   q.    The SLHC Trust;
   r.    Sentinel Reinsurance, Ltd. ("Sentinel");
   s.    Highland Capital Management Services Inc.;
   t.    Basis Industrial;
   u.    CMP Capital Partners;
   v.    CMP Capital Management;
   w.    City of Plano, Texas;
   x.    PEG Hospitality Group;
   y.    Evergreen Residential Holdings;
   z.    Ohio State Life Insurance Company;
   aa.    Strategic Realty Solutions, LLC;
   bb.    Capital Acquisition Partners, LLC;
   cc.    BH Management Services, LLC; and
   dd.    Change Lending, LLC.

4

3. "Communication(s)" and "communicate" shall mean any manner in which the mental processes of one individual are relayed to another, including, without limitation, any verbal utterance, correspondence, email, text message, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

4. "Concerning" shall mean reflecting, regarding, relating to, referring to, describing, evidencing, supporting, forming any basis for, or constituting.

5. "Document" or "Documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the Federal Rules of Civil Procedure, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, accounting software printouts or reports (e.g. Quickbooks), disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

6. "Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) and/or all related metadata with respect to all such Documents/ESI.

7. "Identify" or "Identity(ies)" (person(s)) when referring to person (or entity) shall, shall mean to provide the person's (or entity's) full first and last (or business) name; last known address, telephone number, and e-mail address; and last known place of employment.

8. "Identify" or "Identity(ies)" (document(s)) when referring to a document, shall mean to provide the document's name; the date of the document's creation; the form of the document (e.g., letter, e-mail message, etc.); a description of the substance of the document; and the identity of the person who currently possesses the document (and, if the document no longer exists, an explanation for why it no longer exists and the date on which it ceased to exist).

9.    "Lawsuit" shall mean and refer to the above-captioned lawsuit styled: *Hunter Mountain Investment Trust v. James D. Dondero, et al.*, Adversary Proceeding No. 21-03076 in the United States Bankruptcy Court for the Northern District of Texas.

10.    "Interest," shall mean any ownership interest, whether direct, indirect, legal, equitable, or beneficial, in whole or in part, as well as any investment interest, including ownership of stock, shares or equity, possessory interest, security interest, contingent or unvested interest, or right of first refusal.

11.    "Person" shall mean any natural person and/or any business, legal, or governmental entity or association.

12.    "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, shall mean the party or parties, and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13.    "Defendants" shall mean, collectively, all Defendants to this Lawsuit:

    a.    James D. Dondero;
    b.    Scott Ellington;
    c.    Isaac Leventon;
    d.    Strand Advisors, Inc. ("Strand Advisors"),
    e.    Get Good Trust and Grant Scott as Trustee of the Get Good Trust ("Get Good"),
    f.    NexPoint Advisors, L.P. ("NexPoint"),
    g.    Highland Capital Management Fund Advisors, L.P. ("HCMFA"),
    h.    Dugaboy Investment Trust and Nancy Dondero as Trustee of the Dugaboy Investment Trust ("Dugaboy"),
    i.    Highland Dallas Foundation ("HDF"),
    j.    Massand Capital LLC,
    k.    Massand Capital, Inc.; and
    l.    SAS Asset Recovery, Ltd. ("SAS").

14.    "Service Providers" shall mean, collectively:

    a.    Armanino LLP;
    b.    Baker McKenzie LLP;
    c.    Carey Olsen LLP;
    d.    CoastRoad Group;
    e.    Grant Thornton (Cayman) LLP;
    f.    Grant Thornton Specialist Services (Cayman) Limited;
    g.    Haynes & Boone LLP;
    h.    Johnstone Law;
    i.    Maples and Calder (Cayman) LLP;
    j.    Reed Smith LLP
    k.    Highgate Consulting Group Inc.;

6

l.      Texas Capital Bank; and

m.    Winston & Strawn LLP.

15.    "Foundations" shall mean, collectively:

a.     Santa Barbara Foundation;

b.     Greater Kansas City Community Foundation;

c.     Dallas Foundation;

d.     North Texas Community Foundation;

e.     Highland Santa Barbara Foundation, Inc.;

f.     Highland Kansas City Foundation, Inc.; and

g.     HCMLP Charitable Fund.

16.    "Highland," "HCM," or "Debtor" shall mean Highland Capital Management, L.P.

17.    "HMIT Settlement" shall mean the Settlement Agreement entered into between HMIT and Highland confirmed by Order Pursuant To Bankruptcy Rule 9019 And 11 U.S.C. § 363 Approving Settlement Between The Highland Entities And The HMIT Entities And Authorizing Actions Consistent Therewith [HCM Bk. Doc. 4297].

18.    "DAF HoldCo Liquidation" shall mean the Official Liquidation of Charitable DAF HoldCo, Ltd. in the Grand Court of the Cayman Islands, Financial Services Division, FSD No. 2025-116 (JAJ).

## DEPOSITION TOPICS

1. All shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

2. The purported business purpose for each shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants;

3. The relationship(s) between each Defendant or Transfer Affiliate and any other entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

4. All actual or proposed transfers of funds or assets by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

5. The purported business justification for each actual or proposed transfer of funds or assets by, at the direction, or for the benefit of one or more of Defendants;

6. All internal or third-party valuations prepared for the assets involved in any transfers made by, at the direction of, or for the benefit of one or more of Defendants;

7. All businesses, partnerships, joint ventures, corporations, subsidiaries, or affiliates in which any Defendant or Transfer Affiliate has an Interest at present;

8. All of each Defendant's or Transfer Affiliate's assets from October 15, 2021, until present, including, without limitation: (1) all real property in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present; (2) all personal property or business personal property in which any Defendant or Transfer Affiliate has an Interest at present; and (3) any stocks, bonds, or other securities in which any Defendant or Transfer Affiliate has or had an Interest at any point from October 15, 2021, until present;

9. Defendants' attempts to interfere with the HMIT Settlement; and

10. Defendants' attempts to interfere with the DAF HoldCo Liquidation.

# EXHIBIT 17

Case 21-03076-sgj Doc 380-1 Filed 10/09/25 Entered 10/09/25 14:03:09 Desc Main
Proposed Order on Motion for Expedited Discovery    Page 1 of 4
Case 21-03076-sgj Doc 394 Filed 10/15/25 Entered 10/15/25 10:40:13 Desc Main
Document Page 373 of 376    Page 1 of 4

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

| | |
|---|---|
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | |
| **Plaintiff,** | |
| **v.** | **Adv. Pro. No. 21-03076-sgj** |
| **JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD** | |

- 1 -

TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE
OF GET GOOD TRUST; HUNTER MOUNTAIN
INVESTMENT TRUST; CLO HOLDCO, LTD.;
CHARITABLE DAF HOLDCO, LTD.; CHARITABLE
DAF FUND, LP; HIGHLAND DALLAS FOUNDATION;
RAND PE FUND I, LP, SERIES 1; MASSAND
CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS
ASSET RECOVERY, LTD.,

      **Defendants.**

## ORDER GRANTING PLAINTIFF HUNTER MOUNTAIN INVESTMENT TRUST'S EMERGENCY MOTION FOR EXPEDITED DISCOVERY

Having considered Plaintiff Hunter Mountain Investment Trust's ("HMIT") Emergency
Motion for Expedited Discovery ("Motion") against Defendants James Dondero ("Dondero"),
Scott Ellington ("Ellington"), Isaac Leventon ("Leventon"), Strand Advisors, Inc. ("Strand
Advisors"), The Get Good Trust ("Get Good"), NexPoint Advisors, L.P. ("NexPoint"), Highland
Capital Management Fund Advisors, L.P. ("HCMFA"), The Dugaboy Investment Trust
("Dugaboy"), Highland Dallas Foundation ("HDF"), Massand Capital LLC, Massand Capital,
Inc., and SAS Asset Recovery, Ltd. ("SAS") (collectively, "Defendants"), the Court finds as
follows:

HMIT's Motion, together with its Emergency Verified Motion for Temporary Restraining
Order, Preliminary Injunction, and Appointment of Receiver and its Memorandum of Law in
Support, establish the need for expedited discovery in connection with the matters addressed
therein. Accordingly, the Court **GRANTS** the Motion and hereby **ORDERS** that:

1.     Defendants shall answer the written requests for production of documents and
answer interrogatories as specified in the requests attached as **Exhibit A** to the Motion, which are
related to the following general topics:

1. All shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

2. The purported business purpose for each shell or special-purpose entities formed by, at the direction of, or for the benefit of one or more of Defendants;

3. All actual or proposed transfers of funds or assets by, at the direction of, or for the benefit of one or more of Defendants since the inception of this Adversary Proceeding to the present;

4. The purported business justification for each actual or proposed transfer of funds or assets by, at the direction, or for the benefit of one or more of Defendants;

5. All internal or third-party valuations prepared for the assets involved in any transfers made by, at the direction of, or for the benefit of one or more of Defendants;

6. Defendants' attempts to interfere with the Settlement Agreement entered into between HMIT and Highland confirmed by Order Pursuant To Bankruptcy Rule 9019 And 11 U.S.C. § 363 Approving Settlement Between The Highland Entities And The HMIT Entities And Authorizing Actions Consistent Therewith [HCM Bk. Doc. 4297]; and

7. Defendants' attempts to interfere with the Official Liquidation of Charitable DAF HoldCo, Ltd. in the Grand Court of the Cayman Islands, Financial Services Division, FSD No. 2025-116.

2.    Plaintiff HMIT may take expedited oral depositions of the following individuals, as set forth in the individual deposition notices attached as **Exhibit B** to the Motion:

1. James Dondero;

2. NexPoint Corporate Representative;

3. HCMFA Corporate Representative;

4. Frank Waterhouse (non-party);

5. James P. Seery (non-party);

6. Ashley Gunter (non-party);

7. Rick Swadley (non-party); and

8. Julie Diaz (non-party).

3.      All responsive documents, information, written responses, and witnesses as identified above shall be produced at the offices of Parsons McEntire McCleary PLLC, 1700 Pacific Avenue, Suite 4400, Dallas, Texas 75201, on or before September 26, 2025, or as otherwise agreed by the parties, and in any event no later than the preliminary injunction hearing set herein.

4.      The Court further grants HMIT leave to issue subpoenas to all non-party deponents listed above, requesting them to appear for an oral deposition no later than September 26, 2025.

5.      The Court shall retain jurisdiction to interpret, construe, and enforce this Order, and any such other or further Orders of this Court.

### END OF ORDER ###