IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| In Re: | **Case No. 19-34054-sgj-11** |
|  | Chapter 11 |
| HIGHLAND CAPITAL | Dallas, Texas |
| MANAGEMENT, L.P., | September 3, 2025 |
|  | 11:00 a.m. Docket |
|     Reorganized Debtor. |  |
| KIRSCHNER, et al., | **Adversary Proc. 21-3076-sgj** |
|     Plaintiffs, | MOTION FOR LEAVE TO |
|  | SUBSTITUTE PLAINTIFF FILED |
| v. | BY PLAINTIFF MARC KIRSCHNER |
|  | [357] |
| DONDERO, et al., |  |
|     Defendants. |  |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

For the Plaintiff:          Robert Scott Loigman
                            QUINN EMANUEL URQUHART & SULLIVAN,
                              LLP
                            295 5th Avenue
                            New York, NY  10016
                            (212) 849-7000

For Hunter Mountain         Sawnie A. McEntire
Investment Trust:           Ian Salzer
                            PARSONS MCENTIRE MCCLEARY, PLLC
                            1700 Pacific Avenue, Suite 4400
                            Dallas, TX  75201
                            (214) 237-4300

For James Dondero,          Ryan J. Sullivan
et al.:                     PILLSBURY WINTHROP SHAW PITTMAN, LLP
                            401 W 4th Street, Suite 3200
                            Austin, TX  78701
                            (512) 580-9655

EXHIBIT
A

```
 1    APPEARANCES, cont'd.:

 2    For Scott Ellington and        Debra A. Dandeneau
      Isaac Leventon:                BAKER & MCKENZIE, LLP
 3                                   452 Fifth Avenue
                                     New York, NY  10018
 4                                   (212) 626-4875

 5    For Highland Capital          Deborah Rose Deitsch-Perez
      Management Fund Advisors,     STINSON, LLP
 6    LP and NexPoint Advisors,     2200 Ross Avenue, Suite 2900
      LP:                           Dallas, TX  75201
 7                                  (214) 560-2201

 8    Recorded by:                  Michael F. Edmond, Sr.
                                    UNITED STATES BANKRUPTCY COURT
 9                                  1100 Commerce Street, 12th Floor
                                    Dallas, TX  75242
10                                  (214) 753-2062

11    Transcribed by:              Kathy Rehling
                                    311 Paradise Cove
12                                  Shady Shores, TX  76208
                                    (972) 786-3063
13

14

15

16

17

18

19

20

21

22

23

24
           Proceedings recorded by electronic sound recording;
25             transcript produced by transcription service.
```

**APP 00002**

1           DALLAS, TEXAS - SEPTEMBER 3, 2025 - 11:02 A.M.

2           THE CLERK:  All rise.  The United States Bankruptcy

3   Court for the Northern District of Texas, Dallas Division, is

4   now in session, the Honorable Stacey Jernigan presiding.

5           THE COURT:  Good morning.  Please be seated.

6           MR. MCENTIRE:  Good morning.

7           THE COURT:  All right.  We have a setting this

8   morning in the adversary, Kirschner, et al. versus Dondero, et

9   al., Adversary 21-3076.

10      This is a setting on a motion for substitution of the

11  Plaintiff in the adversary.  So I will take appearances, first

12  in the courtroom.

13          MR. MCENTIRE:  Your Honor, Sawnie McEntire and Ian

14  Salzer on behalf of Hunter Mountain Investment Trust.

15          THE COURT:  All right.  Thank you.

16      We have other folks on the video.  We had a few objectors.

17  First, before that, I see Mr. Loigman.  Would you like to make

18  your appearances?

19          MR. LOIGMAN:  Yeah.  Yeah.  Thank you, Your Honor.  I

20  appreciate that.  Robert Loigman of Quinn Emanuel on behalf of

21  Marc Kirschner as the Litigation Trustee of the Highland

22  Litigation Subtrust.  And we are, of course, the co-movant on

23  this motion.

24          THE COURT:  All right.  Now I will hear from the

25  objectors.  Ms. Deitsch-Perez, I see your video.  Would you

1   like to appear?

2          MS. DEITSCH-PEREZ:  Yes.  Good morning, Your Honor.

3   This is Deborah Deitsch-Perez from Stinson.  We're here on

4   behalf of the Advisor Objectors, NexPoint and HCMFA.

5          THE COURT:  Okay.  Thank you.

6      All right.  Ms. Dandeneau, who do you appear for today?

7          MS. DANDENEAU:  Good morning, Your Honor.  Debra

8   Dandeneau from Baker & McKenzie.  I'm here on behalf of the

9   Individual Defendants, Scott Ellington and Isaac Leventon.

10          THE COURT:  All right.  Thank you.

11      All right.  Mr. Sullivan, I see your video on.  Who would

12   you like to appear for?

13          MR. SULLIVAN:  Good morning, Your Honor.  Ryan

14   Sullivan from Pillsbury for James Dondero, Dugaboy Investment

15   Trust, GetGood Trust, and Strand.

16          THE COURT:  Okay.  Thank you.  Does that cover all of

17   our appearances?

18      All right.  Well, as I said, we have a motion to

19   substitute the Plaintiff party.  I'll note for the record that

20   we are in an adversary proceeding that has been stayed or

21   abated since April 4th, 2023.  It's never been unstayed,

22   although we have had some ministerial activity that has

23   occurred, and I guess at least one settlement, of the Okada

24   Defendants.  We have a lot of Defendants in this one.

25      All right.  So all we have today is a motion to substitute

1   under Rule 25(c).  So I will hear from the co-movants.

2          MR. MCENTIRE:  May it please the Court?

3          THE COURT:  Yes.

4          MR. MCENTIRE:  My name is Sawnie McEntire.  Again,

5   for the record, I represent Hunter Mountain Investment Trust,

6   who is the assignee of the claims that this Court approved as

7   part of the settlement back in June, I think by court order

8   dated June 30th.

9       My client became the assignee transferee of the claims

10  that had been prosecuted by the Litigation Subtrust, Mr.

11  Loigman's client.

12      At the outset, we have filed a witness list and exhibit

13  list.  Our exhibits are 1 through 6.  They're all matters of

14  record in these proceedings on the docket, including the

15  settlement document, your orders, two of your orders approving

16  the settlement, a motion and the order granting an extension

17  on the term of the duration of the Litigation Subtrust, and

18  also your Report and Recommendations which will be visited

19  here today concerning the withdrawal of the reference that you

20  entered on April 6, 2022, as well as the United States

21  District Court's order in connection with the abatement of the

22  federal court proceedings pending your pretrial rulings and

23  the developments in this case, subject to the stay, of course.

24      Your Honor, I have a brief PowerPoint I'd like to present.

25  And if you'd go on to the next slide.

**APP 00005**

1          MS. DEITSCH-PEREZ:  I apologize, Your Honor.  I just

2     wanted to say we have no objection to the exhibits.  I didn't

3     hear Mr. McEntire mention the affidavit of Mr. Demo with the

4     attached settlement.  I wanted to make sure that was still an

5     exhibit, because we would move it in if it wasn't.

6          MR. MCENTIRE:  It is.  It's our Exhibit No. 1 that

7     contains and attaches the settlement agreement that the Court

8     approved.

9          THE COURT:  All right.  Well, you asked me to take --

10          MS. DEITSCH-PEREZ:  Thank you.

11          THE COURT:  -- judicial notice of all of these items

12     on the docket.  So I guess, to be clear, I'll take judicial

13     notice.

14       It seems like a lot for a motion to substitute.  For

15     example, the motion to withdraw the reference, I'm sure we'll

16     talk about it at some point, but that's not what is --

17          MR. MCENTIRE:  Well, --

18          THE COURT:  It's not a renewed setting on that.

19     Okay?

20          MR. MCENTIRE:  That is -- you've -- you summarized my

21     entire argument.

22          THE COURT:  Oh.

23          MR. MCENTIRE:  Your Honor, this is a real simple

24     motion under Rule 25.  The assignment of the claims to my

25     client does not result in an amendment of the lawsuit.  My

1   client steps into the shoes of the Litigation Subtrust.  It

2   should be as easy as that.

3        Go to the next slide, please, Ian.

4        In fact, their response and their objection, they don't

5   challenge the assignment.  There's nothing in their papers

6   that Ms. Deitsch-Perez filed that challenges the assignment.

7   There's no challenge that my client is now the real party in

8   interest.  There's no challenge under Rule 25(c) for

9   substitution.  The case law is clear that the proceedings move

10  along unabated, subject obviously to the stay that is pending,

11  which we will be giving notice to lift.

12       And so, really, their paper, in terms of their objection,

13  was not responsive at all to the motion.  They don't take

14  issue with the singular purpose of this exercise, which is to

15  substitute us in pursuant to Rule 25(c).  Rather, they go off

16  on other areas and other issues, but they don't have a motion

17  before the Court.  Nor did they file anything with the United

18  States District Court, asking the District Court to unabate

19  this proceeding so they could raise these issues with that

20  court.

21       So, really, they have not joined issue with anything in

22  our motion for substitution.  That's just as plain and simple

23  as that.  They, rather, are trying to rehash an argument

24  that's really not before the Court.  There's no formal motion

25  to reconsider your recommendations and your findings back in

1   April of 2022.  You did withdraw the reference for trial, but

2   you retained --

3           THE COURT:  I recommended --

4           MR. MCENTIRE:  Yes, that's correct, --

5           THE COURT:  -- withdrawal of the reference.

6           MR. MCENTIRE:  -- you recommended that, but you

7   retained -- you recommended to retain jurisdiction over

8   pretrial matters such as this.  This is perhaps one of the

9   most simple pretrial matters there could possibly be under

10  Rule 25(c).

11      I find it also compelling that in their briefing they do

12  cite two cases, which have been superseded by Fifth Circuit

13  precedent in the *Double Eagle* case, clearly, a case that Ms.

14  Deitsch-Perez could have located.  It's almost on all fours

15  with what we're dealing with here.  And it stands for the

16  proposition that jurisdiction is determined at the outset of

17  the lawsuit and the claims that were existing at the outset of

18  the lawsuit, not by something that is as ministerial as the

19  substitution of an assignee into the Plaintiff's shoes.  And

20  that's all this is.

21      They also ignored Supreme Court precedent, as recently as

22  a case that was decided by the U.S. Supreme Court in January

23  of this year.  And it is a case that we cited in our brief, in

24  a footnote, because the Supreme Court in that particular case,

25  it's the *Royal Canin* case, January of 2025, had to do with a

1  dismissal of federal claims.

2      The case was removed to federal court.  The plaintiff

3  really wanted the case remanded, so he dismissed the federal

4  court claims and all he had was state law -- state common law

5  claims.  And the Court basically found no jurisdiction, but

6  made it very clear in a footnote, in its Footnote No. 6, that

7  that doesn't apply to the substitution of parties, because the

8  substitution of parties is governed by what's called the First

9  Time Rule.  When -- the timing of the original pleadings, of

10  the original claims.

11      We're not dealing with a change or an amendment of the

12  relief being sought.  We're not seeking at this time any

13  change to the claims substantively.  All we're doing is simply

14  stepping into the shoes of the Litigation Subtrustee.

15      Next.  Next chart, please.  So here is the -- Rule 25 is

16  procedural only.  Let me -- okay.  There we go.  This is the

17  essence of their objection.  Again, I don't think they've

18  joined issue.  If they think they've joined issue, they

19  haven't, and they have other redress.  They can file something

20  in the United States District Court.  Or they could file a

21  proper motion, which they haven't done.  So I think, right

22  there, this inquiry could stop and the Court could grant our

23  substitution without further delay.

24      Next.  This is simply a procedural matter.  And this is a

25  case that we cited in our briefing, in our reply brief.  Rule

1  25(c) is not designed to create new relationships among the

2  parties.  It was designed to allow the action to continue

3  unabated, unabated, when an interest in the lawsuit changes

4  hands.  And that's what we're talking about here, plain and

5  simple.

6     The *Double Eagle* case is the Fifth Circuit case that Ms.

7  Deitsch-Perez and other objecting parties totally

8  ignored.  It's decided in 2019.  The cases they cite were back

9  in the late '90s or the early 2006-2007 time frame.  Clearly,

10 this is the governing precedent for this Court.  The Time-of-

11 Filing Rule is dispositive.  It's hornbook law.

12    This particular case actually involved a debtor who

13 assigned claims to a creditor, and the objecting parties tried

14 to take a position that that destroyed jurisdiction.  And

15 under the Time-of-Filing Rule, the Fifth Circuit said no,

16 that's not correct.

17    And down at the lower cite, we have the Supreme Court

18 case:  Jurisdiction, once acquired, is not divested by a

19 subsequent change in the citizenship of the parties.  That is

20 the leading principle which the Fifth Circuit in *Double Eagle*

21 adopted and developed and applied in a bankruptcy

22 context.  The *Double Eagle* case is a bankruptcy case.

23    Next.  The federal court case, and that is a plaintiff's

24 and diversity case, transferred its interests in the

25 underlying contract in a dispute, in a pending lawsuit that

1   was filed.  The successor in interest substituted into the

2   lawsuit as a plaintiff under Rule 25(c), which we are trying

3   to do here.  The U.S. Supreme Court applied the well-

4   established rule, jurisdiction at the time the action is filed

5   is not divested by subsequent events.

6       So there's nothing about our substitution that would

7   support a challenge to the subject matter jurisdiction of this

8   Court, which has already been determined by this Court in its

9   recommendations to the United States District Court.

10       In that case, the trial court retained jurisdiction,

11   notwithstanding the transfer.  And this was reaffirmed, as I

12   mentioned a moment ago, in January of this year, in Footnote

13   No. 6.

14       Next.  The *Double Eagle* case, which I mentioned, which we

15   believe is dispositive, it's a Chapter 11 debtor.  He's sued

16   for breach of contract, gets sued for breach of

17   contract.  It's an oil and gas case.  The Bankruptcy Court

18   exercised related-to jurisdiction.  As I understand, that's

19   what this Court is doing in connection with its recommendations

20   to the United States District Court.

21       The debtor -- in this case, Double Eagle -- assigned its

22   claims to a creditor.  They argue that the assignment divested

23   the Bankruptcy Court of subject matter jurisdiction.  The

24   Fifth Circuit adopted the hornbook law of the Time-of-Filing

25   Rule.  That rule should be applied here.  There is no fact in

1   this matter that would distinguish the result from the result

2   found or held, obtained, in the *Double Eagle* case.

3       The two cases that Ms. Deitsch-Perez and others cited, the

4   *Cadle* case and the *Cataldi* case, were superseded.

5       There's another case.  Can you go back to the previous

6   chart?  All right.  Rule 25 does not create a backdoor

7   challenge to jurisdiction, and that's what they're trying to

8   do here, without a proper motion before the Court or the

9   United States District Court.  It very clearly indicated that

10  the *QuarterNorth* substitution as the plaintiff did not divest

11  the court of subject matter jurisdiction.  It was an adversary

12  proceeding.  It was designed, Rule 25 was designed to allow

13  the action -- in this case, the Kirschner action, to continue

14  unabated when an interest in the lawsuit changes.

15      Because the court had related-to jurisdiction pre-

16  confirmation, neither plan confirmation nor the plaintiff's

17  substitution divested the court of jurisdiction.  The court

18  maintains related-to jurisdiction over this post-confirmation

19  adversary proceeding.

20      Next.  This is the essence of the *QuarterNorth* case.  The

21  successor in interest substitution did not result in a

22  divestiture of jurisdiction.

23      This is part of your Report and Recommendations.  You had

24  concluded in Docket No. 151 that the Bankruptcy Court

25  concludes that the 36 counts in the Kirschner proceedings are

1  without -- pertain to the implementation, execution of the

2  plan.  That's because the plan actually envisioned and

3  contemplated the creation of the Litigation Subtrust to pursue

4  the estate claims, and that's what those claims are.  And all

5  they've done now and the only difference is they get assigned

6  to my client in a court-approved settlement.

7      What they're really trying to do is they're trying to

8  undermine the intent and the purpose of the settlement.  That

9  settlement has great benefits for the estate.  It was heralded

10  by Mr. Morris' firm as one of the greatest events in the

11  history of this bankruptcy proceeding.  It provides great

12  benefit.

13      The Litigation Subtrust duration expires again every year,

14  and was renewed until August of next year.  Well, this way, we

15  don't have to keep renewing it.  That's number one.

16      Number two, the estate saves money.  It doesn't have to

17  pay Mr. Loigman's client fees to continue to prosecute the

18  claim.  And it allowed Hunter Mountain and the estate and the

19  Claimant Trust to come together for the first time and resolve

20  their differences with the blessing of the Court.  And now

21  they're basically trying to do a backdoor challenge by

22  challenging the jurisdiction of this Court.

23      There's no reason to disturb your Report and

24  Recommendations.  You've already determined in your findings,

25  which I've read now a couple of times, that when this case is

APP 00013

1  certified by you as trial-ready, it goes up to the U.S.

2  District Court, goes over to the U.S. District Court.  We're

3  not amending the current claims.  These claims arise largely

4  from pre-confirmation conduct, as you found in your opinion,

5  in your order.  We're only dealing with the substitution of

6  parties.

7       In addition to the economies that benefit the estate, you

8  are already familiar with the parties.  You are already

9  familiar with the majority of these claims, perhaps all of the

10  claims.  So what we're really trying to do here is achieve

11  some efficiencies.  And your retention of pretrial matters and

12  jurisdiction over the proceeding is the greatest way to

13  enhance efficiency.

14       Starting all over again in the United States District

15  Court with motions to reconsider this or that is just going to

16  slow this process down, cause a lot of expense or wasted

17  resources.  And that's why I think it's important we resolve

18  this, if possible, today.

19       That is my presentation.  I know Mr. Loigman would like to

20  say a few words on behalf of the Litigation Subtrust.  Unless

21  the Court has any questions of me, I'll sit down.

22            THE COURT:  I do not.  Thank you.

23       Mr. Loigman, anything?  Let's try not to duplicate.

24  Anything you want to add?

25            MR. LOIGMAN:  Thank you, Your Honor.  I certainly

1   will try not to duplicate, and I'll try not to take more than

2   just a minute or two of your time.

3       There's really only three points that I wanted to hit upon

4   today, some of which Mr. McEntire has already hit upon, so

5   I'll do them summarily.

6       I think really the most important issue before the Court

7   today is that this is a Rule 25 motion to substitute a party.

8   The claims have been transferred to Hunter Mountain.  There's

9   no dispute about that.  That should be the end of the inquiry,

10  and that's exactly what Rule 25 is intended for.  It's a

11  simple procedural motion, and there's no challenge to the

12  procedural basis for the motion.

13      The second point, as Mr. McEntire referenced and as the

14  Court observed at the outset, is that Defendants are trying to

15  reargue the motions to withdraw the reference.  Your Honor has

16  already held that there is bankruptcy jurisdiction and

17  recommended that the Bankruptcy Court, though, will not make

18  final determinations of the claim.  Rather, the final

19  determinations will be for the District Court to have in a

20  trial.  This Court is handling pretrial matters only, in the

21  nature of a magistrate, as we discussed earlier, which is

22  wholly appropriate.  And the Defendants, in trying to re-raise

23  that Report and Recommendation, are making much ado about

24  nothing, really.

25      And the Defendants' argument, and this is the third point,

1   about jurisdiction -- last argument, anyway -- the Supreme

2   Court decisions in *Freeport-McMoRan v. K N Energy*, and of

3   course the very recent decision in the *Royal Canin* case, which

4   cites to that case in its Footnote 6, make absolutely clear

5   that the time of filing is used to determine jurisdiction, in

6   all events, in the substitution of a party, which is exactly

7   what's happening here.

8        So, to just return to where I started, again, this is a

9   Rule 25 motion to substitute a party.  Hunter Mountain now

10  owns the claims in this case and should be the party to assert

11  them.  The Litigation Trust, my client, in contrast, no longer

12  owns the claims.  It should not have the continuing expense,

13  expense to the Claimant Trust, of course, expense to the

14  estate, expense to Highland Capital, that would be visited

15  upon the Litigation Trust if it had to continue acting as a

16  party in this case, had to continue to act as the Plaintiff in

17  this case.

18       And that, Your Honor, I would submit should be the

19  beginning and the end of this inquiry.  This is perhaps a

20  quintessential transfer of claims, and therefore an

21  appropriate time to recognize the party that actually should

22  act as Plaintiff.

23       If Your Honor has any questions, I'd be happy to address

24  them.  Otherwise, happy to turn over the "podium" here.

25            THE COURT:  Okay.  No questions.  Thank you.

APP 00016

1      All right.  I'll ask Ms. Deitsch-Perez to go next since it

2  was really her objection, and we have a couple of joinders in

3  it but she actually penned the objection.  So, Ms. Deitsch-

4  Perez, what say you?

5      (Pause.)

6          THE COURT:  You're on mute.

7          MS. DEITSCH-PEREZ:  Can you hear now?

8          THE COURT:  Yes.  Thank you.

9          MS. DEITSCH-PEREZ:  Sorry, Your Honor.  I think Your

10  Honor hit on some of this this morning when you started to

11  talk about the procedural posture we were in.  And I think you

12  can tell from our objection that we were facing something of a

13  chicken-and-egg problem here.  Because we had argued in the

14  motion to dismiss and we had argued in the motion to withdraw

15  the reference that there was no jurisdiction and we believed

16  that events since then have caused that to be all the more so,

17  we asked ourselves, well, can this Court even decide the

18  motion to substitute, given those circumstances?

19      And then on top of that, this case and the District Court

20  case was stayed, and so we thought to ourselves, should we go

21  to the District -- and I think we mention it in the objection

22  -- should we go to the District Court and ask to reargue or to

23  rebrief the motion to withdraw the reference?

24      And by the way, none of the cases cited by HMIT and the

25  Litigation Trustee deal with whether or not you can consider

1  subsequent events in determining the motion to withdraw the

2  reference.

3      So, it is correct that our original thought was to go to

4  the District Court, and Mr. McEntire points out that we

5  haven't done that.  And the reason is we waited to see the

6  response and thought, is it really right to go to the District

7  Court and ask -- and rebrief the issues, without having first

8  asked this Court for the benefit of its thoughts on the real

9  circumstances on the motion to withdraw the reference.  And so

10  shouldn't we address those issues in front of this Court

11  first?  And as I said, none of HMIT's cases address that.

12      And as for jurisdiction, Hunter Mountain admits that it

13  relies on *Royal Eagle* [sic] and says it's relying on *Royal*

14  *Canin*, but *Royal Canin* actually proves the Defendants' point.

15  *Royal Canin* says three, four, maybe five times that changing

16  the parties is an amendment.  The plaintiff's change in the

17  parties is an amendment, and so you look at the changed

18  circumstances.

19      And it's pretty funny that they rely on the footnote,

20  because in *Royal Canin* the Court itself says, gee, people

21  shouldn't rely on footnotes, even in our cases, with respect

22  to matters not before it because those are not well-reasoned.

23  You should look at the text that is reasoned.

24      And what *Royal Canin* says is when there is what is

25  effectively an amendment -- and clearly this is an amendment

1    because Hunter Mountain is not a successor in interest, it's a

2    bare buyer of a claim, and all you have to do is look at the

3    settlement to see that.  Hunter Mountain does not succeed to

4    the privilege.  It's not getting any assistance from the

5    Litigation Trustee.  It just bought some claims.

6       And so even the language, if you look at *Royal Canin* and

7    look at Footnote 6, even the language there, which talks about

8    the time of filing applying to the substitution of a

9    defendant, because what they -- I think what they were worried

10   about is, well, what happens if in a case a defendant adds an

11   additional limited partner that breaks diversity, should that

12   really, particularly on the eve of trial, should that upend

13   anything?  Well, that's not the circumstance we have here.  Is

14   Hunter Mountain truly going to continue to pursue claims

15   against itself and its affiliates?  Clearly not.  This is --

16   this is, whatever you call it, it is an amendment.

17      So what we think should happen here is, notwithstanding

18   the chicken-and-egg problem, is if Your Honor allows Hunter

19   Mountain to become the Plaintiff, it should be considered an

20   amendment and Defendants should have all of the rights that

21   defendants have when there's amendment.  We will make a -- we

22   will work with the Plaintiff on the timing to put out a

23   schedule so as to not burden the Court with having to

24   determine that.  But to renew the motion to withdraw the

25   reference in light of the changed circumstances, and to renew

1 │ the motion to dismiss in light of the changed circumstances.

2 │ Because under *Royal Canin*, unlike *Double Eagle*, these changes

3 │ do matter.  And *Royal Canin* very clearly says change in the

4 │ party, that's an amendment, and the court should take

5 │ cognizance of it.

6 │     Because otherwise -- let me give you the simplest example.

7 │ Plaintiff brings a claim where the parties are diverse because

8 │ it wants to be in federal court, let's say, and federal court

9 │ had some favorable decisions, but the next day sells the

10 │ claims to a non-diverse party.  Is there really still

11 │ jurisdiction in that circumstance?  I don't think so.

12 │     This is not a classic successor in interest where truly a

13 │ party steps into the shoes of the other, where the attorney

14 │ general is booted out and there's a new attorney general, or a

15 │ trustee dies and another member of his firm takes over as

16 │ trustee, or where a corporation merges into another

17 │ corporation.  They are truly the successor.  They have the

18 │ assets.  They have the liabilities.  They are, for all

19 │ purposes, the same party.  That's not the case here.

20 │     So, Your Honor, I apologize that the relief we're

21 │ requesting was perhaps not entirely clear in our objection,

22 │ because we were still pondering the chicken-and-egg problem.

23 │ But we think the right answer here is for the Defendants to

24 │ have all of the rights that accrue when a complaint has been

25 │ amended.

1       And I see Ms. Dandeneau has jumped on, so if I have

2    forgotten something, please jump in and assist.

3       Thank you.

4           THE COURT:  Before that, I just want to be clear.

5    I'm hearing arguments relevant to a motion to withdraw the

6    reference, which, okay, I understand you're trying to set the

7    stage, I suppose, but we're here under 25(c).

8           MS. DEITSCH-PEREZ:  I understand --

9           THE COURT:  What is my argument on why I should not

10   apply 25(c)?

11          MS. DEITSCH-PEREZ:  Because, in fact, Hunter Mountain

12   is not a successor in interest.  It's just a claims buyer.

13   And so we're not saying you should not allow them to amend to

14   become the Plaintiff, but truly it is an amendment, not a

15   substitution under Rule 25.

16          THE COURT:  All right.  Thank you.

17      Ms. Dandeneau?

18          MS. DANDENEAU:  Thank you, Your Honor.  I think I

19   would answer that question in a slightly different way.  I

20   don't think that the concepts of amendment and substitution

21   are mutually exclusive.  You can have a substitution of

22   parties, as the Supreme Court recognized in *Royal Canin* -- and

23   whether it's *Canin* or *Canine*, I know that it's a pet food

24   company, so I kind of think it must be *Canine*.  But you can

25   have that -- you can have a substitution that constitutes an

1   amendment.  And the rules provide for many things that a

2   plaintiff can do with respect to its complaint.  Substitution

3   of a party -- in this case, substitution of a plaintiff -- is

4   one of those things.

5       I really wanted to note there has been talk about the

6   Supreme Court case *Royal Canin*, and I want to say what the

7   Supreme Court -- just one of the quotes about this from the

8   case.  And I invite Your Honor to look at this case if you

9   have not already done so.

10      The Supreme Court says, in a unanimous opinion, So changes

11  in parties or changes in claims effectively remake the suit,

12  and that includes its jurisdictional basis.  The

13  reconfiguration accomplished by an amendment may bring the

14  suit either newly within or newly outside a federal court's

15  jurisdiction.

16      So I don't view this as being about the motion to withdraw

17  the reference.  What I view this as is it's an amendment to a

18  complaint which would -- which, if true, would give us the

19  right to essentially respond anew to the complaint, either

20  through an answer or through a renewed motion to dismiss, and

21  for the Court to look at the jurisdictional basis anew as

22  referenced by the Supreme Court.

23      I would also note that, to the extent we're going to give

24  credence to the footnote referencing the *McMoRan* case, the

25  court refers to successor in interest.  And as Ms. Deitsch-

1   Perez pointed out, this is not a situation where there was a

2   business combination or even some kind of -- in *McMoRan*, what

3   happened was the court specifically noted that the plaintiff

4   had transferred its interest in the underlying contract that

5   was the subject of the dispute, not the claim, for business

6   purposes that were unrelated to the lawsuit.

7       So there was some business transaction that occurred that

8   had the effect of having the plaintiff -- having a new

9   plaintiff have an interest in the lawsuit.  This is very

10  different.

11      And so I think the answer -- the question is whether this

12  -- whether Hunter Mountain is a mere successor in interest

13  that would fall, again, if you ignore the very, very clear

14  language of the Supreme Court in *Royal Canine* or *Canin*, that

15  would fall within the scope of that very limited exception.

16      So, Your Honor, I just wanted to -- I would also say there

17  was some discussion about the settlement.  Nobody objected to

18  the settlement.  Certainly, my clients did not object to the

19  settlement.  The settlement is done.  We are not seeking to

20  undo the settlement, nor can we undo the settlement, and nor

21  can --

22          THE COURT:  I'm just going to clarify, there was an

23  objection to the settlement.  And now there's an --

24          MS. DANDENEAU:  Okay, Your Honor, --

25          THE COURT:  Now there is an appeal of the approval of

1  the settlement.

2         MS. DANDENEAU:  Yes, Your Honor.  I -- that's, Your

3  Honor, why I quickly corrected myself.  I apol...

4      My clients certainly did not object to the settlement.

5  But my point is that there's nothing that happens in this

6  lawsuit; going forward, nothing can undo the settlement.  That

7  is done, and we are not seeking in this lawsuit -- in anything

8  we do in this lawsuit to undo the effect of the settlement.

9      So, Your Honor, thank you for the time, and we join in the

10  objection.

11         THE COURT:  All right.  Thank you.

12      All right.  Who did I not hear from?  There was one more

13  joinder.  Mr. Sullivan, I think?

14         MR. SULLIVAN:  Yes.  We join in all the excellent

15  points raised by the esteemed Deborahs.

16         THE COURT:  Okay.  All right.  Any rebuttal?

17         MR. MCENTIRE:  Very brief, Your Honor.  Again, Sawnie

18  McEntire for the record.

19      I think a few things.  It's clear that they're not

20  challenging the Rule 25(c) substitution itself.  I didn't hear

21  anything in either of those two presentations to suggest that.

22  And that's the only thing before the Court.  That is the only

23  issue before the Court.

24      Footnote 6 in the canine *Canin* case is very clear that you

25  treat an assignment of an interest differently than adding in

1   a non-diverse party in a diversity jurisdiction case and

2   things of that nature.  Because when you assign a claim under

3   Rule 25(c), the assignee, the successor in interest, whatever

4   you want to call it, steps into the shoes of the original

5   plaintiff.  And that's what 25(c) is about.

6       If you indulge Ms. Deitsch-Perez in her argument, it

7   renders 25(c) a nullity.  There would be no purpose to it.

8       And I find it interesting that not once in any truly

9   substantive or meaningful way did either Ms. Dandeneau or Ms.

10  Deitsch-Perez address the *Double Eagle* case.  That was a case

11  where the debtor assigned it to a creditor.  It wasn't a

12  merger or an acquisition.  They assigned the claim to a

13  creditor.  And that is prevailing dispositive Fifth Circuit

14  precedent that this Court, I believe, respectfully, should

15  follow.

16      Because that is, that is precisely what's happened here.

17  Hunter Mountain was a Basket No. 10 contingent beneficiary.

18  This is a way of resolving years of litigation.  We're now an

19  assignee.  We're stepping into the shoes of the Litigation

20  Trustee.  And all they want is to delay, delay, and delay.

21  And I would respectfully request that the Court allow the

22  substitution at this time.

23      Thank you.

24          THE COURT:  All right.  Thank you.

25          MR. LOIGMAN:  Your Honor, it's Robert Loigman.

1          THE COURT:  Yes.

2          MR. LOIGMAN:  If I may add just one word?

3          THE COURT:  Uh, --

4          MR. LOIGMAN:  Thank you.

5          THE COURT:  Go ahead.

6          MR. LOIGMAN:  Thank you, Your Honor.

7      I agree with the points that Mr. McEntire made about the

8  jurisdictional points, and I won't revisit those.  I think

9  they're misreading the Supreme Court case law, which I think

10  is very clear.

11      But I think the most important point, at least from my

12  client's perspective -- that is, the Litigation Trust -- is

13  that Rule 25(c) clearly applies.  They haven't argued anything

14  to the contrary.

15      And there was some mention about whether you had to be a

16  successor in interest in a broader sense.  And Rule 25(c) is

17  very clear that's not the case for the rule to apply.  It says

18  if an interest is transferred.  And that is when Rule 25(c)

19  applies.  And here, that's exactly what's happened.  Interest

20  in these claims has been transferred.  And therefore it's

21  appropriate to change the Plaintiff in this action.

22      Thank you, Your Honor.

23          THE COURT:  All right.  Thank you.

24      All right.  As I indicated at the start of this hearing, I

25  do think there is a fairly simple matter before me today,

1   although I can tell things will soon get complicated.

2        Rule 25(c) obviously permits a substitution of a party if

3   an interest has been transferred, and that is precisely what

4   we have as the underlying facts here.  The Court approved a

5   settlement, Docket No. 4297, a few weeks ago, where, among

6   other things, the Litigation Trustee, Mr. Kirschner's claims

7   were transferred, conveyed, assigned to Hunter Mountain.

8        So I do think, pursuant to that settlement agreement,

9   Hunter Mountain is now the proper party in interest as

10  Plaintiff in this Adversary 21-3076, and so substitution will

11  be granted.

12       I note that a very short form of order was proposed, and I

13  think it is appropriate.  It simply addresses the substitution

14  and nothing else.  So I grant that motion.

15       I will say that, with this motion, there is much we have

16  to think about on the horizon.  And I'll start by saying that

17  the order abating this adversary proceeding or staying this

18  adversary proceeding which was entered April 4th, 2023 --

19  that's Docket No. 338; you're all familiar with it -- it is

20  still in place.

21       I didn't think that order prevented me from ruling on this

22  motion to substitute because this is administrative or

23  ministerial in nature, not a substantive ruling on claims or

24  defenses.  But that order staying this adversary provides, and

25  Mr. McEntire alluded to it, that any party who wishes to

28

1    resume the adversary must provide 30 days' written notice to

2    all other parties and the Court, and that's set forth in

3    Paragraph 1 of that order.

4        So I'm not doing anything else until that has happened, or

5    anything of a substantive nature, shall we say, until that

6    process happens.  It's just a notice.  It doesn't require an

7    order.

8        But what I'm thinking is, after that happens, at a

9    minimum, we need to have a status conference in this matter,

10   or a scheduling conference.  Now, that all may be superseded

11   by motions.  I don't know.  But I am envisioning that I would

12   need to do an amended or a supplement to the Report and

13   Recommendation to Judge Scholer, letting her, at a minimum,

14   know that there's no longer an abatement, and probably, at a

15   minimum, updating her with regard to the substitution of

16   party, Plaintiff, as well as letting her know what Defendants

17   and claims have been dropped.  And the only one I know of from

18   scanning the docket is the Okada Parties, Mr. Okada and

19   related entities.  Maybe Mr. Loigman can apprise me.  It

20   looked like there was a dismissal, a settlement with those

21   Defendants, correct?

22       MR. LOIGMAN:  That's correct, Your Honor.  There was

23   also settlements and dismissals with the -- the HMIT, Hunter

24   Mountain Parties, and then there was one with CLO Holdco and I

25   believe its parent entity as well.  Those are -- the reason

1    you may not have noticed those, Your Honor, is because they're

2    not reflected in the caption, but they're -- but they have

3    been filed with the Court on the docket, those withdrawals of

4    claims against those parties.

5            THE COURT:  Okay.  Yes.  I did not focus.  But at a

6    minimum, I think we need to have a status conference to let me

7    be clear what the lay of the land is.  We originally had 21

8    Defendants or something like that.  Just updating Judge

9    Scholer (a) this adversary has been unstayed pursuant to a

10   notice I presume Hunter Mountain will be filing; (b) the Court

11   has approved a substitution of Hunter Mountain pursuant to a

12   settlement agreement and a motion; and then (c) here are the

13   claims and parties remaining.

14        I can't remember, it's been so long since I did it, but I

15   think in my Report and Recommendation I may have even put a

16   handy-dandy chart in there of there are 36 counts and here are

17   the Defendants associated with each count.

18        And then I don't know what she'll do.  I have had

19   situations in the past where it was questionable perhaps in my

20   mind whether subject matter jurisdiction still existed, and

21   the district judge followed the Time-of-Filing Rule.  Like,

22   shame on you, of course the Time-of-Filing Rule applies.

23        So I'm just letting you know, I would be -- well, I don't

24   know, I don't know what she'll do.  And of course, I have

25   discretion to change my recommendation as well.

1        Again, today's arguments along those lines were premature

2   in my mind.  We'll do what we're going to do after this matter

3   is unstayed.

4        I did not go back and scan the docket.  Was there a motion

5   to dismiss, a 12(b)(6) motion to dismiss by certain Defendants

6   that was stayed by the stay order?

7             MS. DEITSCH-PEREZ:  Your Honor, there was a motion to

8   dismiss filed.  And I think, even before it was stayed by the

9   stay order, Your Honor had said that you would await doing

10  anything substantive until the District Court had ruled on the

11  motion to withdraw the reference in case the District Court

12  was going to withdraw for all purposes.

13            THE COURT:  That's what I usually do, so I'm not

14  surprised that that's what I did.

15       So, anyway, we'll just need a status conference.  What can

16  I say?  Are we going to allow -- I'm inclined to supplement my

17  Report and Recommendation, and then parties can file whatever

18  objections they want before the District Court, rather than

19  having double, making arguments to me and then making

20  arguments to her.

21       But then we will need, I'm sure, a scheduling order, at

22  least an interim scheduling order, to talk about are you going

23  to do an amended complaint, are the parties going to have a

24  chance to do new motions to dismiss?

25       So, again, we'll do that after the 30 days run on the

1  notice I anticipate you're going to file.

2  MR. MCENTIRE:  Certainly.  But in all candor, for the

3  benefit of the Court, we do intend to issue the notice to

4  terminate the stay today.

5  THE COURT:  Okay.  All right.

6  MR. MCENTIRE:  And we also anticipate -- yes.  We

7  also -- I'm sorry.

8  THE COURT:  Just finish your sentence.

9  MR. MCENTIRE:  We also anticipate the possibility of

10  filing additional motions for equitable relief that various

11  matters have come to our attention recently.  And we would

12  expect to be filing those motions in very short order, within

13  the next 10 days to two weeks.

14  Otherwise, I absolutely do agree with you that we need a

15  status conference, and we fully support that.

16  THE COURT:  All right.  Ms. Deitsch-Perez?

17  MS. DEITSCH-PEREZ:  Yes.  Two things, one in response

18  to what Mr. McEntire just said.  Since the complaint doesn't

19  currently ask for equitable relief, filing motions for

20  equitable relief only underscores our argument that this is

21  truly an amendment, not simply a substitution.

22  And second, I was going to suggest that -- I understand

23  Your Honor's inclination not to make the parties do additional

24  work, but I do think it might be helpful for the Court to have

25  the benefit of our thoughts on the changes -- on the way

32

1  change in circumstances have affected the motion to withdraw
2  the reference.

3      And so I would urge, rather than just having a status
4  conference without the benefit of that, that we think about
5  and have a schedule for anyone who wants to weigh in on how
6  the circumstances affect the motion to withdraw the reference,
7  to do that before Your Honor issues a report to Judge Scholer.

8          THE COURT:  All right.  Well, again, I think maybe
9  we're all in agreement it makes sense to have a status
10  conference, and we'll flesh through what needs to happen
11  before I make any kind of supplemental report to Judge
12  Scholer.

13      All right.  So I'll look for your order of substitution.

14      And I know, I had one question.  Mr. Loigman had mentioned
15  that there was a dismissal of CLO Holdco at one point.  I know
16  one of these Defendants that is connected with CLO Holdco is
17  in a Chapter 15 in Delaware.  I got notice.  I don't know
18  what's going on with it.  I have no idea what's going on.  But
19  I think it was Charitable DAF Fund, LP.  Does anyone know
20  about that and has that party been dismissed?

21          MR. MCENTIRE:  I believe the Charitable DAF has been
22  dismissed.  And I'm generally familiar with the Chapter 15
23  proceedings.  I'm not an attorney in those proceedings.

24          THE COURT:  Well, I'm only asking because there would
25  be an automatic stay if that Chapter 15 is pending as to that

1  one Defendant.

2          MR. MCENTIRE: I don't think -- I don't think that

3  Defendant -- I think that Defendant has been dismissed from

4  this proceeding.

5          THE COURT:  Okay.

6          MR. LOIGMAN:  Your Honor, I can -- I could answer

7  that question.  At Docket No. 355, I believe, in this action,

8  there's a notice of voluntary dismissal.

9          THE COURT:  Okay.

10          MR. LOIGMAN:  And that covers Charitable DAF Holdco,

11  Charitable DAF Fund, LP, and CLO Holdco, Ltd.

12          THE COURT:  Okay.  Thank you.  All right.  So, again,

13  it's been a few years now.  I need and Judge Scholer will need

14  clarity over what Defendants are still in and which are not.

15      All right.  I'll look for the order and I'll stay tuned.

16  Okay.

17          MR. MCENTIRE:  Thank you.

18          THE COURT:  Thank you.

19      (Proceedings concluded at 11:52 a.m.)

20                      --oOo--

21                    CERTIFICATE

22      I certify that the foregoing is a correct transcript from the
   electronic sound recording of the proceedings in the above-entitled matter.

23

    /s/ Kathy Rehling                           09/03/2025

24

   _____        _____

25
   Kathy Rehling, CETD-444                      Date
   Certified Electronic Court Transcriber

34

1

                                INDEX

2
PROCEEDINGS                                                  3

3
WITNESSES

4
-none-

5
EXHIBITS

6
Judicial Notice to be Taken of Hunter Mountain              6
Exhibits 1 through 6

7
RULINGS                                                     26

8
END OF PROCEEDINGS                                          33

9
INDEX                                                       34

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**APP 00034**