## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | Adv. Pro. No. 21-03076-sgj |
| *Plaintiff* | **MOTION TO DISMISS OF DEFENDANTS JAMES DONDERO, THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC.** |
| v. | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; SAS ASSET | |

EXHIBIT

**B**



RECOVERY, LTD.,

*Defendants.*

## MOTION TO DISMISS OF DEFENDANTS JAMES D. DONDERO, THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC.

James Dondero, Dugaboy Investment Trust, Get Good Trust, Hunter Mountain Investment Trust, Rand PE Fund I, LP, and Strand Advisors, Inc. (collectively, "Defendants"), defendants in the above-captioned adversary proceeding (the "Adversary Proceeding"), hereby submit this Motion to Dismiss (the "Motion").  In support of this Motion, Defendants respectfully state as follows.

The Court should dismiss the counts against Defendants, either in whole or in part, for multiple reasons. First, the Court lacks post-confirmation jurisdiction to adjudicate the Adversary Proceeding, which was filed more than eight months after confirmation of the confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) (then "Plan") and which asserts a myriad of non-core, state-law claims that can have no conceivable impact on the implementation or execution of the confirmed Plan.

Second, the Litigation Trustee lacks standing to pursue many of the claims asserted against the Defendants.

Third, the claims are barred in whole or in part by the applicable statutes of limitations.

Finally, the Complaint fails to sufficiently plead the requisite elements of the claims asserted.

WHEREFORE, Defendants respectfully request that the Court grant the Motion; dismiss Counts Nos. I–IX, XIV–XIX, XXII–XXIII, XXV–XXVI, and XXXII-XXXIII as to Defendants,

2

with prejudice; grant Defendants such further and relief to which they are entitled; and enter an

order, substantially in the form of the attached hereto as Exhibit A.

Dated: July 12, 2022                    Respectfully submitted,

                                        DLA PIPER LLP (US)


                                        */s/ Amy L. Ruhland*
                                        Amy L. Ruhland (Rudd)
                                        Texas Bar No. 24043561
                                        Amy.Ruhland@us.dlapiper.com
                                        303 Colorado Street, Suite 3000
                                        Austin, TX 78701
                                        Tele: 512.457.7000

                                        Jason M. Hopkins
                                        Texas Bar No.24059969
                                        1900 N. Pearl Street, Suite 2200
                                        Dallas, Texas 75201
                                        Tel: 214-743-4500/Fax: 214-743-4545
                                        Email: jason.hopkins@us.dlapiper.com

                                        *Attorneys for Defendants James Dondero,*
                                        *Dugaboy Investment Trust, Get Good Trust,*
                                        *Hunter Mountain Investment Trust, Rand PE*
                                        *Fund I, LP, and Strand Advisors, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on July 12, 2022, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.


*/s/ Amy L. Ruhland*
Amy L. Ruhland (Rudd)

**APP 00038**

**EXHIBIT A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | Adv. Pro. No. 21-03076-sgj |
| *Plaintiff* | |
| v. | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY | |

6

DONDERO, AS TRUSTEE OF DUGABOY
INVESTMENT TRUST; GET GOOD TRUST
AND GRANT JAMES SCOTT III, AS
TRUSTEE OF GET GOOD TRUST; HUNTER
MOUNTAIN INVESTMENT TRUST; MARK
& PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #1 AND LAWRENCE
TONOMURA AS TRUSTEE OF MARK &
PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #1; MARK & PAMELA
OKADA FAMILY TRUST – EXEMPT TRUST
#2 AND LAWRENCE TONOMURA IN HIS
CAPACITY AS TRUSTEE OF MARK &
PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #2; CLO HOLDCO, LTD.;
CHARITABLE DAF HOLDCO, LTD.;
CHARITABLE DAF FUND, LP.; HIGHLAND
DALLAS FOUNDATION; RAND PE FUND I,
LP, SERIES 1; MASSAND CAPITAL, LLC;
MASSAND CAPITAL, INC.; SAS ASSET
RECOVERY, LTD.,

*Defendants.*

## ORDER GRANTING MOTION TO DISMISS OF DEFENDANTS JAMES D. DONDERO, DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC.

Upon consideration of the Motion of the Defendants James Dondero, Dugaboy Investment Trust, Get Good Trust, Hunter Mountain Investment Trust, Rand PE Fund I, LP, and Strand Advisors, Inc. ("Defendants"), any response thereto, the pleadings, and the arguments presented by the parties before this Court, the Court hereby orders that the Motion is GRANTED.

Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, and Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Court hereby dismisses with prejudice the following Counts as against Defendants:  Counts Nos. I–IX, XIV–XIX, XXII–

XXIII, XXV–XXVI, and XXXII-XXXIII.


SO ORDERED.


Dated: _____, 2022


_____
Honorable Stacey G. C. Jernigan
United States Bankruptcy Judge


**### End of Order ###**

Proposed form of order prepared by:

Amy L. Ruhland (Rudd)
Texas Bar No. 24043561
DLA Piper LLP (US)
Amy.Ruhland@us.dlapiper.com
303 Colorado Street, Suite 3000
Austin, TX 78701
Tele: 512.457.7000

Jason M. Hopkins
Texas Bar No.24059969
DLA Piper LLP (US)
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: 214-743-4500/Fax: 214-743-4545
Email: jason.hopkins@us.dlapiper.com


*Attorneys for Defendants James Dondero,*
*Dugaboy Investment Trust, Get Good Trust,*
*Hunter Mountain Investment Trust, Rand PE*
*Fund I, LP, and Strand Advisors, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST, | Adv. Pro. No. 21-03076-sgj |
| *Plaintiff* | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS JAMES DONDERO, THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC.** |
| v. | |
| JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2 AND LAWRENCE TONOMURA IN HIS CAPACITY AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #2; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO, LTD.; CHARITABLE DAF FUND, LP.; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET | |



RECOVERY, LTD.,

*Defendants.*

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS JAMES D. DONDERO, THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, HUNTER MOUNTAIN INVESTMENT TRUST, RAND PE FUND I, LP, AND STRAND ADVISORS, INC.

## Table of Contents

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND .................................................................. 2

    A.   HCMLP's History ...................................................................... 2

    B.   The Defendants ......................................................................... 3

    C.   The Bankruptcy Proceedings .................................................... 5

    D.   This Adversary Proceeding ....................................................... 5

III.  LEGAL STANDARD ............................................................................ 6

IV.  THE COURT SHOULD DISMISS THE amended COMPLAINT ..................... 6

    A.   The Litigation Trustee Lacks Standing To Pursue Non-Retained State-Law Claims ...................................................................... 6

    B.   The Court Does Not Have Subject Matter Jurisdiction Over The Non-Core, State-Law Claims Asserted Against The Defendants ................... 9

    C.   The Fraudulent Transfer Claims Should Be Dismissed ............................ 11

    D.   The Amended Complaint Should Be Dismissed For Multiple Additional Reasons ....................................................... 15

        1.   The Amended Complaint's Breach Of Fiduciary Duty Claims Fail.......... 15

            a.   The LPA precludes the breach of fiduciary claims....................... 16

            b.   The Court Should Dismiss Counts XV And XVI. ........................ 18

        2.   The Declaratory Judgment Claims Are Insufficient ................................. 19

        3.   The Amended Complaint Fails To Plead A Viable Conversion Claim ...... 23

        4.   The Litigation Trustee's Claim For Unjust Enrichment Or Money Had And Received Fails As A Matter Of Law ......................................... 24

V.   CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Artho,*
   587 B.R. 866 (Bankr. N.D. Tex. 2018) .................................................................. 19

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................ 6, 18

*Bates Energy Oil & Gas v. Complete Oilfield Servs.,*
   361 F. Supp. 3d 633 (W.D. Tex. 2019) .................................................................. 25

*Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,*
   296 F.3d 164 (3d Cir. 2002) .................................................................................. 21

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................ 6

*Brickell Partners v. Wise,*
   794 A.2d 1 (Del. Ch. 2001) .................................................................................... 16

*In re Brown Med. Ctr., Inc.,*
   578 B.R. 590 (Bankr. S.D. Tex. 2016) .................................................................. 10

*In re Castex Energy Partners, LP,*
   584 B.R. 150 (Bankr. S.D. Tex. 2018), *aff'd sub nom. In re Castex Energy
   Partners LP,* No. AP 17-3453, 2018 WL 3068803 (S.D. Tex. June 21, 2018) ...... 9

*Chu v. Hong,*
   249 S.W.3d 441 (Tex. 2008) .................................................................................. 19

*In re Coho Energy, Inc.,*
   309 B.R. 217 (Bankr. N.D. Tex. 2004) .................................................................. 11

*In re Craig's Stores of Texas, Inc.,*
   266 F.3d 388 (5th Cir. 2001) ................................................................................. 10

*Curtis v. Cerner Corp.,*
   621 B.R. 141 (S.D. Tex. 2020) .............................................................................. 11

*Ellis v. Wells Fargo Bank, N.A.,*
   No. CV G-13-249, 2014 WL 12596473 (S.D. Tex. Feb. 10, 2014), *report and
   recommendation adopted,* No. CV G-13-249, 2014 WL 12596480 (S.D. Tex.
   Mar. 5, 2014) ......................................................................................................... 24

**APP 00047**

Case 21-03076-sgj Doc 183 Filed 07/11/22 Entered 07/11/22 14:25:06 Page 5 of 34
Case 21-03076-sgj Doc 183 Filed 07/11/22 Entered 07/11/22 14:25:06 Page 5 of 34
Exhibit B    Page 14 of 43

## <u>Table of Authorities</u>
### (Continued)

Page(s)

*In Matter of Galaz*,
    841 F.3d 316 (5th Cir. 2016) .............................................................10

*Gibson v. Wells Fargo Bank, N.A.*,
    No. 4:16-CV-98-O, 2016 WL 11755377 (N.D. Tex. June 9, 2016) .....................................23

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
    817 A.2d 160 (Del. 2002) .............................................................16

*Heinze v. Tesco Corp.*,
    971 F.3d 475 (5th Cir. 2020) .............................................................6

*Johnson v. E. Baton Rouge Fed'n of Tchrs.*,
    706 F. App'x 169 (5th Cir. 2017) .............................................................18

*In re Kipnis*,
    555 B.R. 877 (Bankr. S.D. Fla. 2016) ............................................................13, 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................10, 11

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) .............................................................18

*Marshall v. Intermountain Elec. Co., Inc.*,
    614 F.2d 260 (10th Cir. 1980) .............................................................14

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*,
    999 F.3d 970 (5th Cir. 2021) .............................................................25

*In re Mirant Corp.*,
    675 F.3d 530 (5th Cir. 2012) .............................................................14

*Mirant Corp. v. The Southern Co.*,
    337 B.R. 107 (N.D. Tex. 2006) .............................................................9

*In re Morrison*,
    409 B.R. 384 (S.D. Tex. 2009) .............................................................9

*MVS Int'l Corp. v. Int'l Advert. Sols., LLC*,
    545 S.W.3d 180 (Tex. App. 2017) .............................................................19

*In re Nat'l Gypsum Co.*,
    145 B.R. 539 (N.D. Tex. 1992) .............................................................13

APP 00048

## <u>Table of Authorities</u>
### (Continued)

**Page(s)**

*Matter of Okedokun*,
    968 F.3d 378 (5th Cir. 2020) ...........................................................................24

*Pelican Refining Co. LLC v. Adams & Reese, LLP*,
    No. CIV.A. H-07-0578, 2007 WL 1306808 (S.D. Tex. May 3, 2007)....................11

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ............................................................................3

*Redwood Resort Properties, LLC v. Holmes Co. Ltd.*,
    No. CIVA 3:06CV1022 D, 2006 WL 3531422 (N.D. Tex. Nov. 27, 2006)..........................24

*Rittgers v. United States*,
    131 F. Supp. 3d 644 (S.D. Tex. 2015) ..............................................................4

*Rossco Holdings, Inc. v. McConnell*,
    613 F. App'x 302 (5th Cir. 2015) ..................................................................7, 8

*In re Royce Homes, L.P.*,
    No. 09-32467-H4-7, 2011 WL 13340482 (Bankr. S.D. Tex. Oct. 13, 2011) ...........................9

*S.E.C. v. Calvo*,
    378 F.3d 1211 (11th Cir. 2004) .......................................................................14

*In re SI Restructuring Inc.*,
    714 F.3d 860 (5th Cir. 2013) ........................................................................7, 8

*In re Soporex, Inc.*,
    463 B.R. 344 (Bankr. N.D. Tex. 2011)..............................................................6

*In re Taylor, Bean & Whitaker Mortgage Corp.*,
    No. 3:09-BK-07047-JAF, 2018 WL 6721987 (Bankr. M.D. Fla. Sept. 28,
    2018) .........................................................................................................13

*Tepper v. Keefe Bruyette & Woods, Inc.*,
    No. 3:11-CV-2087-L-BK, 2012 WL 4119490 (N.D. Tex. Sept. 19, 2012).............................8

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008)........................................................20, 21, 22

*Tri v. J.T.T.*,
    162 S.W.3d 552 (Tex. 2005)...........................................................................19

*In re U.S. Brass Corp.*,
    301 F.3d 296 (5th Cir. 2002) .......................................................................10, 11

iv

## Table of Authorities
### (Continued)

Page(s)

*In re United Operating, LLC,*
  540 F.3d 351 (5th Cir. 2008) .................................................................7, 8

*United States v. Pisani,*
  646 F.2d 83 (3d Cir. 1981).....................................................................20

*In re Vaughan Co.,*
  498 B.R. 297 (Bankr. D.N.M. 2013) .................................................13, 14

*VeroBlue Farms USA, Inc. v. Wulf,*
  465 F. Supp. 3d 633 (N.D. Tex. 2020) ....................................................15

*In re Wheelabrator Techs., Inc. S'holders Litig.,*
  1992 WL 212595 (Del. Ch. Sept. 1, 1992) ...............................................4

*Winslow v. Paxton,*
  No. 4:17-CV-057-A, 2017 WL 283281 (N.D. Tex. Jan. 20, 2017)...................6, 18

*Matter of Wood,*
  825 F.2d 90 (5th Cir. 1987) ...................................................................10

**Statutes**

11 U.S.C. § 548 .........................................................................................11, 14

11 U.S.C. § 1123...............................................................................................7

26 U.S.C. § 6502.....................................................................................11, 12, 13

28 U.S.C. § 157.............................................................................................9, 10

28 U.S.C. § 1334.......................................................................................9, 10, 25

United States Code title 11 chapter 11........................................................2, 5, 10, 11

Bankruptcy Code section 544 ............................................................................. *passim*

Bankruptcy Code section 548 ..............................................................................8, 14

Bankruptcy Code section 550 ..................................................................................8

Del. Code Ann. Tit.6, § 17-1101(d) (West) ..............................................................16

Delaware Revised Uniform Partnership Act.................................................................9

Tex. Bus. & Com. Code Ann. § 24.005(a)(1)-(2).........................................................10

v

### Table of Authorities
#### (Continued)

Page(s)

Tex. Bus. & Com. Code § 24.010.................................................................................12

Texas Uniform Fraudulent Transfer Act...............................................................10, 12

**Other Authorities**

Federal Rule of Civil Procedure 12 .........................................................................1, 6

Federal Rules of Bankruptcy Procedure 7012(b)......................................................1, 6

vi

## I.    INTRODUCTION

Defendants James D. Dondero, The Dugaboy Investment Trust, Get Good Trust, Hunter Mountain Investment Trust, Rand PE Fund I, LP, and Strand Advisors, Inc. (collectively, "Defendants")[1] move to dismiss the Amended Complaint and Objection to Claims ("Amended Complaint") filed on May 19, 2022, by Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust ("Litigation Trustee") because those claims are deficient under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(2).[2]

The Amended Complaint, which asserts 36 sweeping causes of action against 21 defendants, attempts to saddle Mr. Dondero, his employees, and numerous entities with liability for legally and contractually sanctioned management activities undertaken for the benefit of Highland Capital Management, L.P. ("HCMLP").  Hoping to paint everyone and everything with the same bad brush, the Amended Complaint vastly overreaches and falls well short of alleging viable claims against Defendants.  As explained below, the Amended Complaint should be dismissed under Rule 12(b)(1) because the Court lacks subject matter jurisdiction to hear or decide any of the non-core state-law claims asserted against Defendants.  In addition, the Amended Complaint should be dismissed under Rule 12(b)(6) and 12(h)(2) because the Litigation Trustee lacks standing to assert the claims, they are barred by the applicable statutes of limitations, and/or the allegations of the Amended Complaint fail to sufficiently plead the claims asserted.

---

[1] Defendants Hunter Mountain Investment Trust and Rand PE Fund I, LP were formerly represented by other counsel.  As of July 5, 2022, they are represented in this adversary proceeding by the undersigned counsel.  *See* Dkt. 170 (order granting motion to substitute counsel).

[2] Rules 12(b)(1), 12(b)(6), and 12(h)(2) are made applicable in bankruptcy through Federal Rules of Bankruptcy Procedure 7012(b).  Defendants do not consent to the entry of final orders or judgment by the Bankruptcy Court.

APP 00052

## II.    FACTUAL BACKGROUND

### A.    HCMLP's History

HCMLP is an SEC-registered investment advisory business founded in 1993 by Mr. Dondero and defendant Mark A. Okada.  *See* Am. Compl., ¶¶ 2, 12-13.  Although the Amended Complaint describes HCMLP and its affiliates as a complex "web" of entities operated at the whim and for the sole benefit of Mr. Dondero, for 26 years prior to filing a chapter 11 petition, HCMLP operated as a legitimate (and heavily regulated) Registered Investment Advisor ("RIA") for the benefit of its managed funds and investors.  As the Amended Complaint acknowledges, under Mr. Dondero's leadership, by the mid-2000s, HCMLP grew to over 100 employees, including "executive-level management employees, finance and legal staff, investment professionals, and back-office accounting and administrative personnel."  *Id.*, ¶ 41.  Thus, while the Litigation Trustee alleges that Mr. Dondero was "HCMLP's solitary decision-maker on all matters concerning the company's operation and management," *id.*, ¶ 42, that allegation makes no sense.  As the Litigation Trustee acknowledges, over the years—with the assistance of an expanded workforce and skilled executive team—HCMLP's original focus shifted from the leveraged loan market to "other asset classes, such as high-yield credit, public equities, real estate, private equity and special situations, structured credit, and sector- and region-specific industries."  *Id.*, ¶ 40.  At its peak, HCMLP had assets under management exceeding $40 billion.  *Id.*, ¶ 43 n.9.

Following the financial crisis in 2008, HCMLP and some of its managed funds and affiliates, like many other financial institutions and financial advisors across the globe, faced several lawsuits.  Am. Compl., ¶ 4.  The Amended Complaint characterizes those lawsuits as a "looming threat," *id.*, ¶ 5, but between 2008 and HCMLP's bankruptcy filing in 2019, virtually none of those lawsuits resulted in any sizeable liability against HCMLP.  Indeed, the only significant award issued against HCMLP at any time between 2008 and 2019 (and the only one

2

Case 21-03076-sgj Doc 189 Filed 07/14/22 Entered 07/14/22 14:52:31 Page 1 of 34
Case 21-03006-sgj Doc 89-2 Filed 02/14/25 Entered 02/14/25 20:43:50 Page 1 of 64
Exhibit B    Page 20 of 43

identified in the Complaint) is a $190 million arbitration award in favor of the Redeemer Committee. *See* Am. Compl., ¶ 8. While the Amended Complaint alleges that lawsuits filed against HCMLP by UBS, Citibank, and Barclays between 2009-2012 presented "the threat of hundreds of millions of dollars in damages," *id*. ¶¶ 45-48, the Litigation Trustee does not allege that any of these lawsuits resulted in any specific liability against HCMLP.

### B.    The Defendants

***James D. Dondero and Strand.*** For most of its operating history, Mr. Dondero served as the Chief Executive Officer of HCMLP by virtue of his ownership (and role as sole director) of its general partner, Strand Advisors, Inc. ("Strand"). Am. Compl., ¶¶ 12, 14. Notably, when HCMLP filed for bankruptcy, Mr. Dondero did not own any direct economic interest in the Debtor.[3]

Moreover, as the Litigation Trustee acknowledges, the management of HCMLP prior to Plan confirmation was governed by a Fourth Amended and Restated Agreement of the Limited Partnership of Highland Capital Management, L.P. ("LPA"). *See* Am. Compl., ¶ 221 (referencing the "operative partnership agreements").[4] That LPA contains several salient provisions that bear upon the allegations at issue. In particular, the LPA permitted Strand, as general partner:

- To "make such pro rata or non-pro rata distributions as it may determine in its sole and unfettered discretion" (LPA, §3.9(a));

  To "have business interests and engage in business activities in addition to those relating to the Partnership, including, without limitation, business interests and activities in direct competition with the Partnership" (*id.*, § 4(f)).[5]

---

[3] *See* Order (I) Confirming the Fifth Amended Plan Reorganization of Highland Capital Management, L.P (as Modified) and (II) Granting Related Relief ("Confirmation Order"), Dkt. 1943, at ¶ 5; *see also id.*, ¶ 18 ("Mr. Dondero owns no equity in the Debtor directly.").

[4] *See* Dkt. 143-1, Declaration of Amy L. Ruhland, ¶ 2. The Court may consider the LPA because it is incorporated into the Amended Complaint by reference. *See* Compl., ¶ 221; *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[5] This right extended to Strand's directors, officers, agents, and representatives. Dkt. 143-1, Ruhland Decl., Ex. A, § 4.1(f).

- To exercise "full control over all activities of the Partnership," including by, among other things, (1) "purchasing and selling any asset, any debt instruments, any equity interests, any commercial paper, any note receivables, and any other obligation" of HCMLP, (2) "exchang[ing] . . . any or all of the assets of the Partnership," (3) executing on behalf of HCMLP "notes . . . and any and all other contracts," (4) "us[ing] the assets of the Partnership (including, without limitation, cash on hand) for any Partnership purpose on any terms [Strand] s[aw] fit," (5) "distributing . . . Partnership cash or other assets," (6) forming other limited or general partnerships, joint ventures, or other relationships and to contributing to "such partnerships, ventures, or relationships . . . assets and properties of the Partnership," and (7) controlling "the conduct of any litigation, the incurring of legal expenses, and the settlement of claims and suits" (*id.*, § 4.1(a)); and

Mr. Dondero, in turn, was authorized to act on behalf of Strand by virtue of his role as Strand's sole director, as set forth in Strand's organizational documents.[6]  This makes sense: an entity like Strand could not act without an individual at the helm.

*Dugaboy.*    Prior to Plan confirmation, Defendant The Dugaboy Investment Trust ("Dugaboy") held a minority (0.1866%) economic interest and a 74.4426% voting interest in HCMLP's Class A partnership interests.  *See* Am. Compl., ¶ 16; Plan Confirmation Order, ¶ 18.  Despite these interests, there is no allegation that Dugaboy exercised any control of HCMLP or orchestrated or directed any of the transactions at issue.

*Get Good.*  Defendant Get Good Trust ("Get Good") is a Delaware trust established by Mr. Dondero for the benefit of his living descendants.  *See* Am. Compl., ¶ 26.  Get Good is neither a residual equity holder in the Debtor's estate nor a creditor.

*Hunter Mountain Investment Trust.*    Defendant Hunter Mountain Investment Trust ("HMIT") is a Delaware statutory trust and the owner of 99.5% of the economic interests of HCMLP.  Am. Compl., ¶ 27.  HMIT is thus an equity interest holder in the Debtor.

---

[6] *See* Dkt. 143-1, Ruhland Decl., Exs. B & C.  The Court may take judicial notice of a company's publicly filed organizational documents.  *See Rittgers v. United States*, 131 F. Supp. 3d 644, 649-50 (S.D. Tex. 2015) (on a motion to dismiss, court may consider "documents that are subject to judicial notice as public record"); *see also In re Wheelabrator Techs., Inc. S'holders Litig.*, 1992 WL 212595, at *11-12 (Del. Ch. Sept. 1, 1992) (taking judicial notice of certificate of incorporation).

4

Although the Amended Complaint alleges that "Dondero caused" HMIT to issue "a series of notes and cash," including a $63 million secured promissory note to HCMLP (termed the "<u>Hunter Mountain Note</u>"), Am. Compl., ¶ 27, there is no allegation that Dondero has any ownership stake or other management role in HMIT, either directly or indirectly.  *See generally id.*

    *__Rand PE Fund I, LP.__*  Defendant Rand PE Fund I, LP ("<u>Rand</u>") is a Delaware series limited partnership and indirect parent of HMIT.  Am. Compl., ¶ 28.  Although Rand is neither a creditor nor residual equity holder in the Debtor's estate, the Litigation Trustee has sued Rand as the guarantor of the Hunter Mountain Note.  *Id.*, ¶¶ 349-354.

### C.    The Bankruptcy Proceedings

    On October 16, 2019 (the "<u>Petition Date</u>"), in response to an adverse arbitration award of $190 million, HCMLP filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.  Dkt. 1.  Just three months after HCMLP's bankruptcy filing, on January 9, 2020, Mr. Dondero agreed to resign from his positions at HCMLP and Strand.  Compl., ¶ 12.

    On November 24, 2020, HCMP filed its Fifth Amended Plan of Reorganization (the "<u>Plan</u>"), *see* Dkt. 1808, which the Bankruptcy confirmed on February 22, 2021 ("<u>Confirmation Date</u>").  *See* Dkt. 1943.  The Plan became effective on August 11, 2021 (the "<u>Effective Date</u>"), *see* Dkt. 2700, and HCMLP has since represented that the Plan has been substantially consummated. *See* Adv. Proc. No. 3:21-cv-01895-D, Dkt. 14, at 17-20.

### D.    This Adversary Proceeding

    The Litigation Trustee did not commence this Adversary Proceeding until October 15, 2021, more than eight months after the Confirmation Date and well after the Effective Date.  On January 26, 2022, Defendants and several other defendants in this action moved for an order withdrawing the reference of this adversary proceeding to the United States District Court for the Northern District of Texas on the grounds that the Bankruptcy Court lacks subject matter

**APP 00056**

jurisdiction.  *See* Dkt. 45.  The motions to withdraw the reference remain pending before the District Court.

On March 23, 2022, Defendants James D. Dondero, Dugaboy, Get Good, and Strand, filed a motion to dismiss the Complaint.  Dkt. 147.  On May 19, 2022, the Litigation Trustee filed the Amended Complaint.  Dkt. 158.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] complaint must allege 'more than labels and conclusions,' as 'a formulaic recitation of the elements of a cause of action will not do."  *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555); *see also In re Soporex, Inc.*, 463 B.R. 344, 367 (Bankr. N.D. Tex. 2011) ("[A] court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.") (internal quotation omitted).  Further, where (as here), a complaint alleges multiple claims against multiple defendants, courts must apply the pleading standards "separately to each claim and each defendant."  *Winslow v. Paxton*, No. 4:17-CV-057-A, 2017 WL 283281, at *2 (N.D. Tex. Jan. 20, 2017).

## IV.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT[7]

### A.    The Litigation Trustee Lacks Standing To Pursue Non-Retained State-Law Claims

The Court should dismiss the state-law claims asserted against Defendants because the

---

[7] The Amended Complaint alleges many similar allegations against defendants Mark A. Okada (and his

APP 00057

Litigation Trustee lacks standing to pursue them.  Specifically, the Litigation Trustee lacks standing to pursue Counts III–IX, XIV–XVII, and XXV–XXVI because the Plan did not specifically and unequivocally reserve those claims.  It is axiomatic that, after confirmation of a plan of reorganization, the bankruptcy estate "ceases to exist, and the debtor loses its status as debtor-in-possession along with its authority to pursue claims as though it were a trustee." *Rossco Holdings, Inc. v. McConnell*, 613 F. App'x 302, 306 (5th Cir. 2015) (quoting *In re SI Restructuring Inc.*, 714 F.3d 860, 864 (5th Cir. 2013)).  "[B]y losing authority to pursue a claim, the debtor loses *standing* with respect to that claim." *Id*. (emphasis added).  A plan of reorganization may vest a post-confirmation debtor or trustee with authority to pursue one or more claims held by the estate, 11 U.S.C. § 1123(b)(3), but "the ability of the debtor to enforce a claim once held by the estate is limited to that which has been retained in the plan." *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008).  "Without an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved." *In re SI Restructuring*, 714 F.3d at 864 (internal quotations omitted); *In re United Operating, LLC,* 540 F.3d at 355.

Under Fifth Circuit law, a plan's claim retention language must be "specific and unequivocal." *In re United Operating, LLC*, 540 F.3d at 355; *accord Rossco Holdings, Inc.*, 613 F. App'x at 308.  This requirement ensures that creditors have adequate notice of which claims the debtor intends to pursue after confirmation so that they can "determine whether a proposed plan resolves matters satisfactorily before they vote to approve it." *In re United Operating, LLC*, 540 F.3d at 355.  A blanket reservation of "any and all" claims, or a laundry list of generic claims, is insufficiently specific to meet this requirement.  *Id.* at 356; *Rossco Holdings, Inc.*, 613 F. App'x

---

family trusts), Scott Ellington, Isaac Leventon, NexPoint Advisors, L.P., and Highland Capital Management Fund Advisors, L.P.  Defendants hereby incorporate by reference as if fully set forth herein the Motions to Dismiss filed by these defendants.

at 306–07.  Likewise, a reservation of claims "arising under the Bankruptcy Code"—even if specific and unequivocal—is insufficient to preserve state common-law claims.  *In re United Operating*, 540 F.3d at 356; *accord In re SI Restructuring Inc.*, 714 F.3d at 862-63; *Rossco Holdings, Inc.*, 613 F. App'x at 306–07; *see also Tepper v. Keefe Bruyette & Woods, Inc.*, No. 3:11-CV-2087-L-BK, 2012 WL 4119490, at *5 (N.D. Tex. Sept. 19, 2012) (no "standing to pursue a fraudulent transfer claim under Texas and New York statutory law" where the plan "only provide[d] for avoidance claims under . . . sections 544, 548, and 550 of the Bankruptcy Code").

Pursuant to these standards, the Plan and Plan Supplement fail to specifically and unequivocally retain the state-law claims asserted against the Defendants.  The Plan contains sweeping language purporting to "retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action," defined to include "any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims."  *See* Plan, Dkt. No. 1943, at 101, 146–47.  That is exactly the kind of generalized, nonspecific language that the Fifth Circuit has repeatedly found insufficient to preserve standing.  *See In re United Operating*, 540 F.3d at 356 (neither "blanket reservation of 'any and all claims' arising under the Code," nor "specific reservation of other types of claims under various Code provisions" sufficient to preserve the common-law claims); *In re SI Restructuring, Inc.*, 714 F.3d at 860 (same).  The Plan Supplement fares no better.  In what can only be described as a kitchen-sink approach, the Supplement contains a laundry list of purportedly retained claims—including "claims brought under state law, claims brought under federal law, [and] claims under any common-law theory of tort or law or equity"—that is the equivalent of an impermissible, blanket reservation of claims.  *See* Dkt. No. 1875-3.  What is more, the Supplement broadly purports to retain that laundry list of claims against a multi-page list of potential defendants.  That overbroad list of potential claims

8

and defendants did not apprise the Defendants of which, if any, claims might actually be filed against which, if any, of them post-confirmation.  In the absence of a more "specific and unequivocal" retention of the state-law claims asserted against Defendants, the Plan and Supplement fail to confer the requisite standing on the Litigation Trustee.

At the very least, the Litigation Trustee's claims against Defendants for illegal distributions under the DRULPA (Count III), declaratory judgment (Counts VI-IX), aiding and abetting or knowing participation in breach of fiduciary duty (Count XV), and conspiracy (Count XVI) should be dismissed because neither the Plan nor the Supplement mentions those claims at all.  As a result, those claims were not retained, and the Litigation Trustee lacks standing to pursue them.

### B.    The Court Does Not Have Subject Matter Jurisdiction Over The Non-Core, State-Law Claims Asserted Against The Defendants

The Litigation Trustee asserts that this Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 157 and 1334 because it is a "civil proceeding arising under or relating to the bankruptcy petition filed by HCMLP" and is a "core proceeding" under § 157(b). Am. Compl., ¶ 33.  But as this Court already has held, the majority of the 22 claims asserted against the Defendants are non-core, state-law claims.  *See* Adv. Proc. Dkt. 151 at 6-7.[8]  Consequently, the Bankruptcy Court lacks subject matter jurisdiction to adjudicate those claims under 28 U.S.C. § 1334.[9]  "Federal courts are courts of limited jurisdiction . . . and possess only the power

---

[8] Specifically, the Court found that the following 14 claims asserted by the Litigation Trustee against the Defendants are non-core:  Count III (illegal distributions under the Delaware Revised Uniform Partnership Act), Counts IV–V and XIV (breach of fiduciary duty), Counts VI-IX (declaratory judgment), Count XV (aiding and abetting breach of fiduciary duty), Count XVI (civil conspiracy), Count XVII (tortious interference with prospective business relations), Count XXIV (breach of contract), Count XXV (conversion), and Count XXVI (unjust enrichment).  Adv. Proc. Dkt. 151 at 6-7.

[9] *See In re Morrison*, 409 B.R. 384, 390 (S.D. Tex. 2009) (breach of fiduciary duty, conspiracy, and conversion proceedings are non-core); *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 117–18 (N.D. Tex. 2006) (alter-ego, unlawful dividend, and aiding and abetting breach of fiduciary duty claims are non-core); *In re Royce Homes, L.P.*, No. 09-32467-H4-7, 2011 WL 13340482, at *2 (Bankr. S.D. Tex. Oct. 13, 2011) (fiduciary duty, conversion, conspiracy, and unjust enrichment are non-core); *In re Castex Energy Partners,*

9

Case 21-03076-sgj Doc 189 Filed 07/14/25 Entered 07/14/25 21:12:49 Page 18 of 34
Case 21-03076-sgj Doc 189-2 Filed 07/14/25 Entered 07/14/25 21:12:49 Page 18 of 34
Exhibit B    Page 27 of 43

authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157." *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) (citation omitted). In relevant part, Section 1334 provides federal "district courts" with "original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(b).[10] The district court may refer (and has referred here) "proceedings . . . related to a case under title 11 . . . to the bankruptcy judges for the district." *Id.* § 157(a); Misc. Order No. 33 (N.D. Tex. Aug. 3, 1984). But the "related to" jurisdiction of the district courts under Section 1334(b), and by reference, the bankruptcy courts, is much narrower after confirmation of the relevant plan of reorganization. *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001). For the most part, it "*ceases to exist.*" *Id.* (emphasis added); *accord In Matter of Galaz*, 841 F.3d 316, 322 (5th Cir. 2016) (same). Post-confirmation, the debtor no longer needs the "protection" of the bankruptcy court to "facilitate 'administration' of the . . . estate." *Id.* Accordingly, in ascertaining its post-confirmation subject matter jurisdiction, the Bankruptcy Court must conform to an "*exacting,*" "*narrow[]*" theory of jurisdiction. *Id.* The Court continues to have jurisdiction only over "matters pertaining to the implementation or execution of the plan." *Id.*

The exacting standard adopted and applied by the Fifth Circuit makes clear that this Court

---

*LP*, 584 B.R. 150, 155 (Bankr. S.D. Tex. 2018), *aff'd sub nom. In re Castex Energy Partners LP,* No. AP 17-3453, 2018 WL 3068803 (S.D. Tex. June 21, 2018) (state law breach of contract claims are non-core). Notably, even the fraudulent transfer claims arise in part under state law—namely, the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *See* Tex. Bus. & Com. Code Ann. § 24.005(a)(1)-(2). The Fifth Circuit has not decided whether fraudulent transfer claims are core or non-core when the pleading asserts those claims under both the TUFTA and the Bankruptcy Code. At least one Texas bankruptcy court has held that they are non-core. *See In re Brown Med. Ctr., Inc.*, 578 B.R. 590, 597 (Bankr. S.D. Tex. 2016).

[10] Because these claims are "non-core," the only relevant proceedings described in 28 U.S.C. § 1334(b) are those "related to cases under title 11." *See Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987); In re *U.S. Brass Corp.*, 301 F.3d at 304.

lacks post-confirmation jurisdiction over the non-core, state law claims asserted in the Amended
Complaint against the Defendants.  None of those claims bears upon the "implementation or
execution of the plan."[11]  Further, this is not a situation where the Court can assert supplemental
jurisdiction over non-core, state-law claims—no such jurisdiction exists in bankruptcy court—nor
has the Litigation Trustee asserted any other basis for federal court jurisdiction.  Accordingly, at
the very least, this Court should dismiss Counts III-IX, XIV-XVII, and XXV–XXVI against the
Defendants for lack of subject matter jurisdiction.

### C.    The Fraudulent Transfer Claims Should Be Dismissed

In Counts I-II, XVIII-XIX, XXII-XXIII, and XXXII-XXXIII, the Litigation Trustee seeks
avoidance of transfers allegedly made to the Defendants dating back to 2010.  Am. Compl., ¶¶
172-186, 303-323, 335-342, 408-417.  These claims should be dismissed for several reasons.

***Constructive & Fraudulent Transfers (Counts I-II, XVIII-XIX, & XXII-XXIII).***  These
Counts seek avoidance of transfers that occurred many years into the past.  But the Litigation
Trustee's avoidance powers are limited in time.  Section 548(a)(1) allows the Litigation Trustee to
avoid transfers only to the extent they were "made or incurred on or within 2 years before the date
of the filing of the petition."  11 U.S.C. § 548(a)(1).  Because HCMLP's chapter 11 bankruptcy
petition was filed on October 16, 2019, the Litigation Trustee generally cannot avoid transfers
made before October 16, 2017.  *Curtis v. Cerner Corp.*, 621 B.R. 141, 179-80 (S.D. Tex. 2020).
To justify a longer lookback period, the Litigation Trustee relies on two statutory provisions:  11
U.S.C.A. § 544 and 26 U.S.C. § 6502.  As explained below, the Trustee's reliance on these

---

[11] Some courts have wrongly considered whether a plan reserved particular claims in determining their post-
confirmation "related to" jurisdiction.  *See, e.g.*, *In re Coho Energy, Inc.*, 309 B.R. 217, 221 (Bankr. N.D.
Tex. 2004).  That is error.  The terms of the plan *cannot* confer subject matter upon a bankruptcy court.  *In
re U.S. Brass Corp.*, 301 F.3d at 303; *accord Pelican Refining Co. LLC v. Adams & Reese, LLP*, No. CIV.A.
H-07-0578, 2007 WL 1306808, at *3 (S.D. Tex. May 3, 2007); *Kokkonen*, 511 U.S. at 377 (federal
jurisdiction "is not to be expanded by judicial decree").

11

**APP 00062**

B-28

statutory provisions is unavailing, and the Court should dismiss the fraudulent transfer claims to the extent that the transfers occurred prior to October 16, 2017.

First, the Trustee has not pleaded allegations to support this Court's application of Bankruptcy Code § 544.  To utilize Section 544(b)(1) and acquire the benefit of the longer, four-year statute of limitations for avoidance actions prescribed under state law (the TUFTA),[12] the Litigation Trustee must plead the existence of a triggering unsecured creditor for *each* of the alleged fraudulent transfers at issue.  The Litigation Trustee does not do this; it merely alleges the existence of an unsecured creditor holding an allowable claim as of the Petition Date.  *See* Am. Compl., ¶ 39.  There are no allegations that an unsecured creditor exists that could avoid each of the transfers at issue.  Indeed, the Amended Complaint does not tether the alleged existence of an unsecured creditor to *any* of the transfers at issue.  That is fatal to the Litigation Trustee's fraudulent transfer claims.

In any event, application of Section 544 would only allow the Trustee to avoid transfers dating back four years before the Petition Date—to October 16, 2015.  To the extent the Amended Complaint seeks to avoid transfers before that date (as it does in Counts I-II, XVIII-XIX, & XXII-XXIII), the Court should dismiss the Amended Complaint.

Second, the Litigation Trustee's effort to invoke the so-called "golden creditor" rule by making passing reference to 26 U.S.C. § 6502 is also unavailing.  *See* Am. Compl., ¶¶ 179, 186, 268, 273 (citing § 6502).  Section 6502 affords the IRS ten years to bring a collection action from the date of a timely tax assessment.  While a minority of courts have allowed a trustee to stand in the shoes of the IRS and benefit from this ten-year lookback period, the Fifth Circuit has not sanctioned this practice.  And for several reasons, the Court should reject the Litigation Trustee's

---

[12] Under the TUFTA, a fraudulent transfer claim must be filed "within four years after the transfer was made or the obligation was incurred."  Tex. Bus. & Com. Code § 24.010.

12

**APP 00063**

effort to invoke the IRS lookback period.

First, there is no allegation that would permit the Court to infer that the IRS could even invoke this statute to collect taxes dating back ten years. *See In re Taylor, Bean & Whitaker Mortgage Corp.*, No. 3:09-BK-07047-JAF, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sept. 28, 2018) ("The Court is unaware of case law permitting the IRS to avoid transfers made prior to the original taxpayer assessment (or, alternatively, prior to accrual of the tax liability).").[13]  Under these circumstances, the Complaint fails to plead any facts that would entitle the Litigation Trustee to invoke the golden creditor rule.

Second, as a matter of statutory interpretation and policy, the Court should reject the Litigation Trustee's invitation to apply the golden creditor rule.  Notably, only in a "'few and far' between" adversary proceedings have courts permitted bankruptcy trustees to wield federal tax law as a "weapon" to extend the relevant statute of limitations. *In re Kipnis*, 555 B.R. 877, 883 (Bankr. S.D. Fla. 2016).  There are several problems with these courts' analysis.

Most notably, the operative language of § 544(b)(1) states that certain transfers are "*voidable* under applicable law."  By its plain terms, § 6502(a)(1) does not grant the IRS the power to "void" any transfer (nor does it provide the IRS with any state-law remedy); it merely gives the IRS the right to levy taxes.  It makes no sense to read 26 U.S.C. § 6502 to permit the avoidance of transfers—something not even the IRS can do.  Moreover, it is inappropriate to treat a trustee in bankruptcy as if it is on par with a sovereign. *In re Vaughan Co.*, 498 B.R. 297, 304-05 (Bankr. D.N.M. 2013).  Unlike the IRS, a trustee is not vindicating public rights—it is vindicating the

---

[13] As several of the defendants previously have argued in connection with their motions to withdraw the reference, whether the IRS itself could invoke the ten-year lookback period requires "substantial and material" consideration of federal tax laws which must be resolved by the District Court. *See, e.g.*, *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992).

APP 00064

rights of private creditors. *See id*. at 305. Where the U.S. government seeks to vindicate private rather than public rights in bankruptcy, the state statute of limitations generally applies. *Id.* at 304 (citing *Marshall v. Intermountain Elec. Co., Inc.*, 614 F.2d 260, 263 n.3 (10th Cir. 1980); *S.E.C. v. Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004)).

Further, interpreting the law to permit a bankruptcy trustee to invoke the tax statute's ten-year lookback period has the potential to "eviscerate" the bankruptcy courts' long-standing practice of looking to state law for the relevant limitations period. *In re Kipnis*, 555 B.R. at 883. Because "[t]he IRS is a creditor in a significant percentage of bankruptcy cases," such an interpretation would undoubtedly encourage "widespread use of § 544(b) to avoid state statute of limitations." *Id*. at 883. The Fifth Circuit has prevented similar efforts to extend Section 544(b)(1) before. *See, e.g.*, *In re Mirant Corp.*, 675 F.3d 530, 535 (5th Cir. 2012) (Federal Debt Collection Procedures Act does not constitute "applicable law" under § 544(b)). The law should not be interpreted in this manner, and the few courts that have done so are wrong.

***Expense Transfers (Counts XXXII-XXXIII).*** The Amended Complaint also seeks to avoid alleged expense transfers made to Mr. Dondero in the year before the Petition Date, invoking 11 U.S.C. § 548. Am. Compl., ¶¶ 408-417. Section 548 allows a trustee to avoid intentional fraudulent transfers if the transfers occurred "with actual intent to hinder, delay, or defraud." The statute also allows the avoidance of constructive fraudulent transfers if the debtor received "less than a reasonably equivalent value in exchange for such transfer" and was insolvent at the time of the transfer, or if other conditions existed at the time of the transfer warranting its avoidance. The Amended Complaint fails to adequately plead facts supporting the avoidance of any of the alleged expense transfers.

As to the allegedly constructively fraudulent expense transfers, the Amended Complaint

APP 00065

only seeks avoidance of the transfers "[t]o the extent [they] do not constitute reimbursement for valid expenses." Am. Compl., ¶ 409.  In other words, the Amended Complaint does not allege the transfers were not valid reimbursements, nor does it make any plausible allegations about why they should be considered invalid (other than allegations made on speculative "information and belief").

Likewise, the Amended Complaint's allegations that Mr. Dondero made intentional fraudulent expense transfers are deficient.  Again, the Amended Complaint only seeks to avoid these transfers "[t]o the extent [they] do not constitute reimbursement for valid expenses," Am. Compl., ¶ 414, but offers no reason why the Court should consider the transfers anything other than valid reimbursements.  *See* Am. Compl., ¶ 416.  Further, beyond rehashing allegations relating to Mr. Dondero's other unrelated alleged bad acts, the Amended Complaint makes no particular allegations demonstrating that Mr. Dondero made the transfers with specific intent to "hinder, delay, or defraud" creditors, which is preclusive.  *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 647 (N.D. Tex. 2020) (Rule 9(b) applies to intentional fraudulent transfer claims).

Counts XXXII and XXXIII are deficiently pleaded, and so the Court should dismiss them.

**D.    The Amended Complaint Should Be Dismissed For Multiple Additional Reasons**

**1.    The Amended Complaint's Breach Of Fiduciary Duty Claims Fail**

In Counts IV, V, XIV, XV, and XVI, the Litigation Trustee alleges that Mr. Dondero and Strand breached their fiduciary duties to HCMLP by, among other things, (1) creating certain "lifeboats," including NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA"), (2) engaging in actions leading to pre-petition litigation, and (3) facilitating or directing certain transfers.  *See* Am. Compl., ¶¶ 193-216, 274-284.  The Amended Complaint further alleges that Get Good aided and abetted a breach of fiduciary duty by Mr.

15

Dondero and Strand with respect to the CLO Holdco Transaction. *Id.*, ¶ 288.[14] And finally, the Amended Complaint alleges that Get Good "conspired with Dondero to breach his fiduciary duties to HCMLP by intentionally siphoning assets away from HCMLP to evade HCMLP's creditors." *Id.*, ¶ 291. These claims each fail for several independent reasons.

<b>a.      The LPA precludes the breach of fiduciary claims.</b>

Counts IV, V, and XIV fail because the LPA precludes those claims. The DRULPA permits a limited partnership to restrict or even eliminate all fiduciary duties by contract. Del. Code Ann. Tit.6, § 17-1101(d) (West); *see also Brickell Partners v. Wise*, 794 A.2d 1, 3–4 (Del. Ch. 2001) ("principles of contract preempt fiduciary principles" where a limited partnership agreement governs fiduciary duties). Where, as here, "the limited partnership agreement unambiguously provides for fiduciary duties, any claim of a breach of fiduciary duty must be analyzed generally in terms of the partnership agreement." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170-71 (Del. 2002). Applying these principles, the Litigation Trustee's breach of fiduciary duty claims are unsustainable.

The Litigation Trustee alleges that Mr. Dondero and Strand breached their fiduciary duties to HCMLP by (1) "transferr[ing] HCMLP's valuable business to the lifeboat entities, including but not limited to NexPoint and HCMFA"; (2) incurring liability to UBS, Acis, Terry, HarbourVest, the Crusader Funds, and the Redeemer Committee by managing HCMLP's business in a manner that resulted in potential or actual litigation liabilities; and (3) approving transfers of money and assets to Massand Capital and CLO Holdco and approving partnership distributions to

---

[14] The Complaint describes the CLO Holdco Transaction as one in which Dugaboy issued a note to Get Good. Am. Compl., ¶ 132. Get Good then gave the note to HCMLP in exchange for certain assets. *Id.*, ¶¶ 132-33. The Litigation Trustee alleges that this transaction was problematic because liquid assets were exchanged for an illiquid note worth less than the assets. *Id.*, ¶ 132. Ultimately the assets were contributed to defendant CLO Holdco Ltd. *Id.*

16

various individuals and entities.  *See* Am. Compl., ¶¶ 187-213, 259-65.  The Litigation Trustee

does not allege that Mr. Dondero or Strand breached HCMLP's LPA by taking (or directing) any

of these actions, nor could it.  As set forth above, the HCMLP LPA granted Strand (by and through

its officers, directors, representatives, and agents) the authority to:

- Form other entities and to contribute to those entities "assets and properties of the Partnership," as well as to engage in "business interests and activities in direct competition with the Partnership" (LPA, §§ 4.1(a)(xi), 4.1(f))—as Strand allegedly did in the "lifeboat scheme";

- Perform "any and all acts necessary or appropriate to the operation of any business of the Partnership," including taking out loans, incurring indebtedness, using the assets of the Partnership, determining whether to negotiate, execute, or perform contracts, and controlling "the conduct of any litigation" (*id.*, § 4.1(a)(ii), (v), (vi), (vii), (viii), & (xii)—as Strand allegedly did in relation to UBS, Acis, Terry, HarbourVest, the Crusader Funds, and the Redeemer Committee; and

- Distribute "Partnership cash or other assets" in its "sole and unfettered discretion" (*id.*, § 4.1(ix); *id.*, § 3.9(a))—as Strand did in approving transfers and distributions to Massand, CLO Holdco, and others.

In short, the LPA granted Strand, and Mr. Dondero as Strand's director, the broad authority to

undertake each and every action that allegedly constituted a breach of their fiduciary duties.

Further, Section 4.1(i) of the LPA expressly limits the liability of the General Partner and

those acting on its behalf.  Specifically, that section states that "[n]either the General Partner nor

its directors, officers, employees, agents, or representatives shall be liable to the Partnership or any

Limited Partner for errors in judgment or for any acts or omissions that do not constitute gross

negligence or willful or wanton misconduct." LPA, § 4.1(i)(i).  The section also reiterates that the

General Partner may "exercise any of the powers granted to it" under the LPA "either directly or

by or through its directors, officers, employees, agents, or representatives" and states that "the

General Partner *shall not be responsible for any misconduct or negligence on the part of any*

*agent or representative appointed by the General Partner*." *Id.*, § 4.1(i)(ii).  Again, the Litigation

Trustee has not even attempted to plead that Mr. Dondero or Strand took actions that were beyond

17

Case 21-03076-sgj Doc 189-2 Filed 07/14/22 Entered 07/14/22 15:01:12 Page 36 of 44
Case 21-03076-sgj Doc 189-2 Filed 07/14/22 Entered 07/14/22 15:01:12 Page 36 of 44
Exhibit B    Page 35 of 43

their powers under the LPA, nor has the Trustee alleged that Mr. Dondero's actions amounted to "gross negligence or willful or wanton misconduct," as is required. Under these circumstances, the breach of fiduciary duty claims must be dismissed.

### b.    The Court Should Dismiss Counts XV And XVI.

*Aiding and Abetting.* In Count XV, the Litigation Trustee alleges that "Scott, CLO Holdco, DAF Holdco, DAF, Get Good, and Highland Dallas aided and abetted Dondero's breach of fiduciary duties relating to the CLO Holdco Transaction." Am. Compl., ¶ 288. This single-sentence allegation against Get Good fails to state a claim against it for several reasons. First, the allegation is conclusory and impermissibly lumps several defendants together. *See Johnson v. E. Baton Rouge Fed'n of Tchrs.*, 706 F. App'x 169, 170 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 687) ("conclusory" allegations "will not be afforded the presumption of truth"); *Winslow*, 2017 WL 283281, at *2 (allegations must be made separately for "each defendant").

Second, the allegation fails to state a claim against Get Good for aiding and abetting liability under Delaware law. The Litigation Trustee must plead, at a minimum: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation by a non-fiduciary in the fiduciary's breach, and (4) damages proximately caused by the breach. *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001). For the reasons set forth above, *see* Section IV.D.1.a, the Litigation Trustee fails to plead that Mr. Dondero breached any fiduciary duty to HCMLP in view of the language of the LPA, nor does the Litigation Trustee even attempt to plead Get Good's "knowing participation" in any breach of fiduciary duty in relation to the CLO Holdco Transaction. These failures are fatal to the claim against Get Good.

*Civil Conspiracy.* In Count XVI, the Litigation Trustee alleges that "Ellington, Leventon, NexPoint, HCMFA, SAS, Scott, CLO Holdco, DAF Holdco, DAF, Get Good, and Highland Dallas conspired with Dondero to breach his fiduciary duties to HCMLP by intentionally siphoning assets

18

Case 21-03076-sgj Doc 189 Filed 07/14/22 Entered 07/14/22 15:31:12 Page 2 of 34
Case 21-03076-sgj Doc 189-6 Filed 07/14/22 Entered 07/14/22 15:01:11 Page 2 of 34
Exhibit B    Page 36 of 43

away from HCMLP to evade HCMLP's creditors." Am. Compl., ¶ 291. The Amended Complaint fails to adequately plead civil conspiracy for two core reasons.

First, as with the aiding and abetting claim, a civil conspiracy claim cannot survive without a viable underlying tort claim. There is no viable underlying claim because the breach of fiduciary duty claims against Mr. Dondero fail. Thus, the civil conspiracy claim cannot survive.

Second, the Amended Complaint fails to allege the requisite "meeting of the minds" by the supposed co-conspirators, which is required. *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 196 (Tex. App. 2017) (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)). In this regard, conclusory allegations are insufficient. Instead, a plaintiff must make specific allegations demonstrating that the conspiring parties were "aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement" and specifically intended and agreed "to accomplish something unlawful." *Id*. Agreeing to engage in any particular conduct or transaction is not enough; conspiracy "requires a specific intent to cause the intended injury." *In re Artho*, 587 B.R. 866, 885 (Bankr. N.D. Tex. 2018); *see also Chu v. Hong*, 249 S.W.3d 441, 447 (Tex. 2008) (same). The Amended Complaint includes no allegations of intent against Get Good and makes only conclusory allegations against Mr. Dondero and thus fails to state claims against them.

### 2.    The Declaratory Judgment Claims Are Insufficient

Counts VI-VIII and IX seek declaratory judgment that Mr. Dondero, Strand, and Dugaboy are liable for HCMLP's debts in various capacities. Each of these claims is deficient and should be dismissed.

***Count VI (Strand Liable as GP).*** As an initial matter, as the Delaware statute cited in the Amended Complaint provides, the liabilities of a general partner to the partnership may be altered by the relevant partnership agreement, which is precisely what occurred here. *See* DRULPA, § 17-403(b) (cited in Am. Compl., ¶ 218). Count VI makes no reference to HCMLP's LPA, Strand's

liabilities pursuant to the LPA, or whether and to what extent the LPA supports a judgment that Strand should be liable for HCMLP's "liabilities" (none of which are specifically identified). Under these circumstances, the Complaint falls well short of alleging a plausible claim for relief.

*Count VII (Dondero Liable as Strand's Alter Ego).* Count VII suffers from similar problems. Again, Mr. Dondero's liabilities as an acting officer and director of Strand are governed by HCMLP's LPA—a document that Count VII simply ignores. But in addition, the allegations of Count VII fall short in several other respects.

Most notably, the claim fails to sufficiently allege facts that would support a finding that Mr. Dondero is Strand's alter ego. Under Delaware law, "to state a claim for piercing the corporate veil under an alter ego theory, [the plaintiff] must show (1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (dismissing alter ego claim where plaintiff failed to plead facts showing that corporation and shareholders operated as a single economic entity). The Litigation Trustee fails to adequately plead either element here.

First, although the Litigation Trustee alleges that Dondero and all his companies acted as a "single economic entity," that bare allegation is insufficient for the imposition of alter ego liability. Under Delaware law, the court must ascertain whether the claimant has adequately alleged such factors as undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of the particular company whose veil is to be pierced, siphoning of the corporation's funds by the dominant stockholder, the absence of corporate records, and that the corporation is merely a "façade" for the dominant shareholder. *Trevino*, 583 F. Supp. 2d at 528-29 (citing *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981)). The existence of any one of these factors "is not per se a reason to pierce the corporate veil." Rather, the inquiry is whether

the corporation was established to defraud investors or for some improper purpose.  *Id.* at 530.

The Amended Complaint falls well short of alleging the existence of the various veil-piercing factors.  For example, although the Litigation Trustee alleges that Strand was a "sham entity," the most the Litigation Trustee alleges is that Strand did not hold board meetings or frequently document corporate action.  *See* Am. Compl., ¶¶ 223, 225.  At the same time, the Amended Complaint acknowledges that Strand was formed to act as the general partner of HCMLP (a necessary and legitimate purpose in the creation and operation of a limited partnership), operated according to a set of bylaws and a limited partnership agreement, employed officers over the years, and documented some corporate actions.  *See id.*, ¶¶ 14, 223-24; *see also Trevino*, 583 F. Supp. 2d at 530 (that the corporation "was established for a *legitimate* purpose" weighed against veil piercing).  That Strand did not regularly document corporate actions or hold board meetings does not mean the entity's corporate form was being abused.  Moreover, as the Complaint acknowledges, Mr. Dondero was Strand's sole director and owner, which would make any documentation of meetings with himself quite surprising, to say the least.  And the Amended Complaint fails to allege any of the other veil-piercing factors against Strand.  There are no allegations, for example, that *Strand* was undercapitalized, was insolvent, failed to make distributions to shareholders, or was used as Mr. Dondero's personal piggybank.

The Amended Complaint also fails to sufficiently allege that Mr. Dondero used Strand's corporate form to perpetrate an injustice or unfairness.  In this regard, the allegations of the complaint must support an inference that the dominant shareholder is "using 'an independent corporation' to 'defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise evade the law.'"  *Trevino*, 583 F. Supp. 2d at 529 (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002)).  Importantly, "under Delaware

21

law, the fraud or injustice . . . must be found in the defendant[']s use of the corporate form." *Id.* at 530 (internal quotations and citations omitted). Merely rehashing the "underlying cause[s] of action . . . does not supply the necessary fraud or injustice." *Id.* at 531. Again, the Amended Complaint does not explain how Strand's corporate form was used to perpetrate any fraud or injustice; rather, the Amended Complaint merely rehashes the conclusory allegation that Mr. Dondero dominated Strand "to make HCMLP act contrary to its own interests." Am. Compl., ¶ 227. That allegation falls far short of the required pleading standard.

*Count VIII (Strand Liable as HCMLP's Alter Ego).* Count VIII likewise fails to set forth allegations sufficient to demonstrate that Strand acted as HCMLP's alter ego. The Amended Complaint ignores that the relationship between Strand and HCMLP was governed by the LPA, pursuant to which Strand was permitted to take various unilateral actions in its management of HCMLP. Nor does the Amended Complaint point to any provisions of the LPA that Strand or Mr. Dondero violated in the conduct of HCMLP's affairs.

The Amended Complaint also contains virtually no allegations about Strand that would support a finding that a legally-formed and heavily regulated general partner should nonetheless bear all of the limited partnership's liabilities. Indeed, the only real allegation in the Amended Complaint says about Strand is that it shared HCMLP's business address. Am. Compl., ¶ 230. But that of course makes sense: Strand was HCMLP's sole general partner, and it had no other business. And the Amended Complaint is devoid of any allegation that Strand's corporate form was abused in a manner that perpetrated some sort of fraud or injustice. Under these circumstances, the alter ego claim against Strand should be dismissed.

*Count IX (Dugaboy as Dondero's Alter Ego).* The Amended Complaint's allegation against Dugaboy is even more specious. Upon review, Defendants are unaware of any case in

22

Delaware ever holding a *company* liable as the alter ego of an *individual*.  Indeed, to allege a plausible alter ego claim against Dugaboy, the Litigation Trustee would have to allege (among other things) that *Mr. Dondero* was insolvent, that *Mr. Dondero* failed to observe corporate formalities (when he is not a corporation), that Dugaboy was siphoning *Mr. Dondero's* assets for its own benefit, etc.  Even more ridiculously, the Litigation Trustee would have to allege that *Mr. Dondero's* existence was used to perpetrate a fraud.  Of course, the Amended Complaint does not make any of these allegations.  Instead, the Amended Complaint seeks to hold Dugaboy, a Delaware trust, liable for all the bad acts of its beneficiary.  There is no basis in law to do so, and the Litigation Trustee's baseless alter ego claim against Dugaboy should be dismissed.

### 3.    The Amended Complaint Fails To Plead A Viable Conversion Claim

In Count XXV, the Litigation Trustee alleges that Mr. Dondero is liable for conversion. To state a claim for conversion, a plaintiff must plead (1) the plaintiff "owned or had possession of the property or entitlement to possession;" (2) the defendant "unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner;" and (3) resulting damages.  *Gibson v. Wells Fargo Bank, N.A.*, No. 4:16-CV-98-O, 2016 WL 11755377, at *3 (N.D. Tex. June 9, 2016).  The Complaint fails to plead these requisite elements.

Critically, the Amended Complaint fails to plead that Mr. Dondero "unlawfully and without authorization assumed and exercised control over the property."  *See id.* at *3.  At most, the Complaint surmises "on information and belief" that Mr. Dondero "directed Wick Phillips to withhold the . . . proceeds" rightfully due to HCMLP.  Am. Compl., ¶ 360.  But the Amended Complaint does not allege that Mr. Dondero's instruction was unlawful or unauthorized, or that Mr. Dondero ever assumed or exercised actual control of or ownership of the proceeds.  To the contrary, the Amended Complaint alleges that Wick Phillips, and subsequently two Cayman

23

Islands entities, exercised that control.  *Id.*, ¶¶ 356, 360.[15]

Further, to maintain a claim for the conversion of money under Texas law, the Litigation

Trustee must also show that "the money (1) was delivered to the defendant for safekeeping, (2)

was intended to be kept segregated, (3) was substantially in the form in which it was received or

intact, and (4) was not the subject of a title claim by the defendant."  *Matter of Okedokun*, 968

F.3d 378, 392 (5th Cir. 2020).  Nowhere does the Litigation Trustee allege that any funds were

delivered to Mr. Dondero for safekeeping.  At most, the Litigation Trustee alleges that the funds

were delivered *to HCMLP's counsel* for safekeeping.  Am. Compl., ¶ 356.

Finally, under Texas law, a claim for the conversion of money fails "when the plaintiff

cannot trace the exact funds claimed to be converted, making it impossible to identify the specific

monies in dispute."  *Ellis v. Wells Fargo Bank, N.A.*, No. CV G-13-249, 2014 WL 12596473, at

*5-6 (S.D. Tex. Feb. 10, 2014), *report and recommendation adopted,* No. CV G-13-249, 2014 WL

12596480 (S.D. Tex. Mar. 5, 2014) (dismissing conversion claim where plaintiff did not "allege

that he can trace the funds to, for example, an escrow account.").  The Litigation Trustee does not

allege that the funds in question can be traced.  To the contrary, according to the Amended

Complaint, the funds were transferred out of an escrow account and to entities in the Cayman

Islands.  Am. Compl., ¶ 360.  The Litigation Trustee's allegations are insufficient to maintain a

claim for conversion of money under Texas law and Count XXV should therefore be dismissed.

### 4.    The Litigation Trustee's Claim For Unjust Enrichment Or Money Had And Received Fails As A Matter Of Law

Count XXVI should be dismissed for several reasons.  First, unjust enrichment is not an

independent cause of action under Texas law.  *Redwood Resort Properties, LLC v. Holmes Co.*

---

[15] Although the Complaint alleges that Grey Royale Ltd., was "owned and controlled by Dondero and
Ellington," *see* Am. Compl., ¶ 360, that allegation, standing alone, does not permit a factfinder to ignore
the corporate form and hold the owners of Grey Royale Ltd. liable for conversion.

Case 21-03076-sgj Doc 189-2 Filed 07/14/22 Entered 07/14/22 14:25:01 Page 33 of 34
Case 21-30376-sgj Doc 189-2 Filed 07/14/22 Entered 07/14/22 14:25:01 Page 33 of 34
Exhibit B    Page 42 of 43

*Ltd.*, No. CIVA 3:06CV1022 D, 2006 WL 3531422, at *8 (N.D. Tex. Nov. 27, 2006) ("Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits . . . Accordingly, the court holds that Redwood has failed to state an unjust enrichment claim on which relief can be granted, and it dismisses this action."); *accord Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) (affirming dismissal of unjust enrichment claim because it is "not a distinct cause of action itself"). Because unjust enrichment is not an independent cause of action, the Court should dismiss XXVI of the Amended Complaint.

The Litigation Trustee's allegations also fall far short of pleading a claim for money had and received under Texas law.  To avoid dismissal, a plaintiff must "identify what money [Defendant] actually received individually and why, exactly, that money belongs to [Plaintiff]." *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 675 (W.D. Tex. 2019). Here, the Litigation Trustee does not identify what sum Dondero received or when, and instead seeks to disgorge "all payments, transfers, profits, fees, benefits, incentives, and other things of value" obtained by Dondero.  This vague and conclusory allegation is insufficient to plead a claim for money had and received.

## V.    CONCLUSION

The Court should dismiss the counts against Defendants, either in whole or in part, because (1) the Court lacks subject matter under 28 U.S.C. § 1334 to adjudicate any of the non-core state-law claims, (2) the Litigation Trustee lacks standing to pursue many of the claims; (3) applicable statutes of limitations bar the claims either in whole or in part; and (4) the Amended Complaint fails to sufficiently plead the requisite elements of the claims asserted.

APP 00076

Dated: July 11, 2022                         DLA PIPER LLP (US)

                                             /s/ Amy L. Ruhland (Rudd)
                                             Amy L. Ruhland (Rudd)
                                             Texas Bar No. 24043561
                                             Amy.Ruhland@us.dlapiper.com
                                             303 Colorado Street, Suite 3000
                                             Austin, TX 78701
                                             Tele: 512.457.7000

                                             *Attorneys for Defendants James Dondero,
                                             Dugaboy Investment Trust, Get Good Trust,
                                             Hunter Mountain Investment Trust, Rand PE
                                             Fund I, LP, and Strand Advisors, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2022, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

                                             /s/ Amy L. Ruhland
                                             Amy L. Ruhland (Rudd)

APP 00077                                                    B-43