Sawnie A. McEntire
Ian B. Salzer
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
smcentire@pmmlaw.com
isalzer@pmmlaw.com
*Counsel for Plaintiff Hunter Mountain Investment Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | |

| | |
|---|---|
| **MARK S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST** | |
| **Plaintiff,** | |
| **v.** | Adv. Pro. No. 21-03076-sgj |
| **JAMES D. DONDERO; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; CLO HOLDCO, LTD.; CHARITABLE DAF HOLDCO,** | |

- 1 -

| **LTD.; CHARITABLE DAF FUND, LP; HIGHLAND DALLAS FOUNDATION; RAND PE FUND I, LP, SERIES 1; MASSAND CAPITAL, LLC; MASSAND CAPITAL, INC.; AND SAS ASSET RECOVERY, LTD.** | |
| **Defendants.** | |

### PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS EMERGENCY VERIFIED MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Hunter Mountain Investment Trust ("Plaintiff" or "HMIT") respectfully submits this Supplemental Brief in Support of its Emergency Verified Motion for Temporary Restraining Order, Preliminary Injunction and Receivership [Doc. 379] ("TRO") and Motion for Expedited Discovery [Doc. 380] ("Discovery Motion") (collectively, the "Motions"), as follows:

## <u>TABLE OF CONTENTS</u>

Page

**TABLE OF AUTHORITIES** ...........................................................................................4

**I.**   **Introduction** .................................................................................................7

**II.**   **Statement Regarding the Bankruptcy Court's Continuing Role as Magistrate Over Pre-Trial Matters in Accordance With Usual Practice** ...........................................9

**III.**   **The Court Has Jurisdiction Over Pre-Trial Matters; The Assignment of Claims to HMIT Changes Nothing** ..................................................................9

**IV.**   **The Court Has the Authority to Issue an Asset-Freezing Injunction to Prevent Defendants' Intentional Dissipation and Secretion of Assets** ...........................15

**V.**   **The Evidence of Intentional Dissipation of Assets is Strong** ...........................23

**VI.**   **The Court May Tailor Its Injunctive Relief if Appropriate** ...........................26

**VII.**   **Conclusion** .................................................................................................28

## TABLE OF AUTHORITIES

**Cases**

*Allied Dev. of Ala. LLC v. Forever 21, Inc. (In re Forever 21, Inc.)*, 623 B.R. 53 (Bankr. D. Del. 2020) ........................................................................................................... 19

*Amegy Bank N.A. v. Monarch Flight II, LLC*, No. 4:11-CV-3218, 2011 U.S. Dist. LEXIS 140874 (S.D. Tex. Dec. 7, 2011) ...................................................................... 15

*Animale Grp., Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007) ...................... 17

*Bank of Am., N.A. v. Mega World Builder Corp.*, No. 4:24-CV-3021, 2024 U.S. Dist. LEXIS 203763 (S.D. Tex. Nov. 8, 2024) ............................................................... 16

*Doe v. Roman Cath. Church of Archdiocese of New Orleans*, 588 F. Supp. 3d 698 (E.D. La. 2022 ) ..................................................................................................... 11

*Double Eagle Energy Servs., L.L.C. v. Markwest Utica EMG, L.L.C.*, 936 F.3d 260 (5th Cir. 2019) ..................................................................................... 9, 10, 11, 12, 13

*Epley v. Lopez*, No. 23-10374, 2025 U.S. App. LEXIS 9448 (5th Cir. 2025) ......................... 13

*Freeport-McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426 (1991) ............................... 10, 12, 13

*French v. Fisher*, No. 1:17-CV-248-DAE, 2018 U.S. Dist. LEXIS 232723 (W.D. Tex. 2018) . 17

*FTC v. Southwest Sunsites, Inc.*, 665 F.2d 711 (5th Cir. 1982) .................................................. 26

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567 (2004) .................................................. 11

*In re Acis Capital Mgmt., L.P.*, Nos. 18-30264-SGJ-11, 18-30265-SGJ-11, 2019 Bankr. LEXIS 292 (Bankr. N.D. Tex. 2019) ............................................................... 21

*In re Briar Creek Corp. Center Assoc. Ltd.*, 486 B.R. 681 (Bankr. E.D.N.C. 2013) .................. 18

*In re FiberTower Network Servs. Corp.*, 482 B.R. 169 (Bankr. N.D. Tex. 2012) ....................... 14

*In re RGV Smiles by Rocky L. Salinas D.D.S. P.A.*, 626 B.R. 278 (Bankr. S.D. Tex. 2021) ..... 19

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2010) ................................................................... 17, 21

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) ................................................................. 23

*Newby v. Enron Corp.*, 188 F. Supp.2d 684 (S.D. Tex. 2002) ........................................... 16, 21

*O'Dowd v. Geske*, No. SA-24-CV-00855-XR, 2025 U.S. Dist. LEXIS 137973 (W.D. Tex. 2025) .................................................................................................................................... 13

*Prep Sols., Ltd v. Lecht*, 2022 U.S. Dist. LEXIS 98756 (E.D. Tex. June 2, 2022) ......... 15, 20, 22

*QuarterNorth Energy LLC and Certain of its Affiliates v. Atl. Mar. Serv. (In re Fieldwood Energy LLC)*, No. 20-33948, 2021 Bankr. LEXIS 2867 (Bankr. S.D. Tex. Oct. 15, 2021) .. 11

*Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) .......................... 6, 7, 9, 11, 12, 13

*S. Texas Lighthouse for the Blind, Inc. v. Fed. Supply Servs. Int'l, Inc.*, 2020 U.S. Dist. LEXIS 157347 (S.D. Tex. Aug. 28, 2020) ............................................................... 16, 20, 22

*Sargeant v. Al Saleh*, 512 S.W.3d 399 (Tex. App.—Corpus Christi 2016, no pet.) ......... 16, 21

*SEC v. Barton*, 135 F.4th 206 (5th Cir. 2025) ............................................................. 16

*SEC v. Shavers*, 2014 U.S. Dist. LEXIS 194380 (E.D. Texas Aug. 26, 2014) .......................... 22

*Sharp v. SSC Farms I, LLC (In re SK Foods, L.P.)*, 2010 Bankr. LEXIS 6445 (E.D. Cal. April 5, 2010) ...................................................................................... 16, 18, 20, 22

*Simpson v. Amerisave Mortg. Corp.*, Civil Action No. 4:23-cv-00906, 2025 U.S. Dist. LEXIS 191167 (E.D. Tex. 2025) ......................................................................... 13

*Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571 (2017) ................................. 26

*Tujague v. Adkins*, No. 4:18-CV-631, 2018 U.S. Dist. LEXIS 171394 (E.D. Tex. 2018) ... 15, 18

*Turnkey Offshore Project Servs., LLC v. JAB Energy Solutions, LLC*, 2021 U.S. Dist. LEXIS 149733 (E.D. La. Aug. 10, 2021) ........................................................................ 16

*United States v. Daughtry*, 2020 U.S. Dist. LEXIS 205606 (E.D. Tex. Sept. 9, 2020) ............. 26

*Walker v. Doe*, No. 6:24-cv-00633-ADA, 2025 U.S. Dist. LEXIS 100396 (W.D. Tex. 2025). 17, 18

*Wimbledon Fund, SPC (Class TT) v. Graybox, LLC*, Case No. 215CV06633, 2015 U.S. Dist. LEXIS 134966 (C.D. Cal. Sept. 29, 2015) ...................................................... 22, 23

**Statutes**

11 U.S.C. § 105 ................................................................................................................. 14

6 D.E. Code § 1307 ........................................................................................................... 15

Tex. Bus. & Com. Code § 24.008 ........................................................................ 15, 20, 21, 22

**Rules**

Fed. R. Bankr. P. 7065 ....................................................................................................... 14

Fed. R. Civ. P. 65 .......................................................................................................... 14, 16

I.    **Introduction**

On October 17, 2025, following a status conference, the Court requested additional briefing on several issues: (i) the implications of the U.S. Supreme Court's decision in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) as it relates to this Court's jurisdiction; and (ii) the standards for an asset freezing injunction. Although HMIT's Motions were noticed for hearing after the Court's status conference, the Court elected to not hear those Motions pending the further briefing it requested.

HMIT had filed its Motions, of necessity, after discovering that Defendants[1] are engaged in an ongoing effort to move funds offshore—out of reach of the Court's jurisdiction—to deny HMIT a recovery on causes of action asserted in Plaintiff's Amended Complaint [Doc. 158]. Ironically, Plaintiff's causes of action themselves arise out of Defendants' earlier efforts to strip assets from Highland Capital prior to bankruptcy. Defendants, then and now, treat assets and corporate entities implicated in various lawsuits like a game of whack-a-mole as a matter of course.

Thus far, Defendants have not denied HMIT's claim that they are moving assets offshore, nor have Defendants agreed to limited discovery to alleviate HMIT's legitimate concerns. Instead, Defendants raise a laundry list of procedural objections relating to the

---

[1] "Defendants," as used herein, refers to Defendants James Dondero, Scott Ellington, Isaac Leventon, Strand Advisors, Inc., The Get Good Trust, NexPoint Advisors, L.P., Highland Capital Management Fund Advisors, L.P., The Dugaboy Investment Trust, Massand Capital LLC, Massand Capital, Inc., and SAS Asset Recovery, Ltd.

Court's jurisdiction to grant the relief requested, which objections have been previously addressed extensively.[2] To reiterate for the convenience of the Court, however, Defendants' objections are without merit. Manifestly: (1) the assignment of the Litigation Trustee's pending, pre-existing causes of action to HMIT has no effect on the Court's continuing "related to" jurisdiction to address pre-trial matters,[3] as the Supreme Court reaffirmed in *Royal Canin*; and (2) the Court has ample authority to grant HMIT's requested relief to preserve the jurisdiction of the Court over the assets at issue in light of Defendants' intentional dissipation and secretion of those assets. HMIT is not making *new* claims of fraudulent transfer, but rather seeking the Court's assistance to preserve its ability to recover on the Litigation Trustee's pre-confirmation causes of action *already asserted* in the Amended Complaint. *See* Doc. 158, ¶¶ 137-186.

The relief requested, moreover, is narrowly tailored. HMIT has taken care to exempt Defendants' ordinary business operations from the scope of the requested

---

[2] HMIT incorporates by reference, as if fully set forth herein, its Emergency Verified Motion for Temporary Restraining Order, Preliminary Injunction, and Appointment of Receiver [Doc. 379], Emergency Motion for Expedited Discovery [Doc. 380], Reply in Support of Emergency Verified Motion for Temporary Restraining Order [Doc. 391], Reply in Support of Emergency Motion for Expedited Discovery [Doc. 392], Motion to Substitute [Doc. 357], Reply Brief in Support of Motion to Substitute [Doc. 369], The Litigation Trustee's Response in Opposition to Defendants' Motions to Withdraw the Reference [Doc. 95], The Litigation Trustee's Response in Support of Bankruptcy Court's Report and Recommendation [Doc. 155], The Litigation Trustee's Response in Opposition to Defendants' Motions to Dismiss [Doc. 210], and Notice of Supplemental Authority [Doc. 237].

[3] The Court has already determined that it will hear and decide pre-trial matters, with the Plaintiff's claims ultimately certified for trial in the District Court. *See* Doc. 151, Report and Recommendation to the District Court Proposing That It: (A) Grant Defendants' Motions to Withdraw the Reference at Such Time as the Bankruptcy Court Certifies That Action Is Trial Ready; but (B) Defer Pre-Trial Matters to the Bankruptcy Court.

injunction and seeks only to assure that Defendants' assets, wrongfully stripped from the

Highland Capital estate prior to bankruptcy, remain available and within the jurisdiction

of the Court to satisfy a judgment entered in favor of HMIT on the Litigation Trustee's

pre-existing claims. If the Court determines that additional protections are required, it

may tailor the relief as appropriate. Whether in the form provided by HMIT or as crafted

by the Court, an injunction should surely issue. The purpose of this proceeding is to

recover assets fraudulently and improperly transferred out of Highland Capital's

bankruptcy estate, and Defendants may not avoid judgment by transferring assets *yet*

*again* beyond the reach of the Court.

## II.     Statement Regarding the Bankruptcy Court's Continuing Role as <u>Magistrate Over Pre-Trial Matters in Accordance With Usual Practice</u>

Although the District Court could also address HMIT's request for injunctive relief

and other pre-trial matters, it is HMIT's position that this Court's substantial and long-

standing familiarity with the parties, and the bankruptcy from which this adversary

proceeding arises, is such that the Bankruptcy Court should continue addressing pre-trial

motions and discovery consistent with the usual practice of this District. *See* Doc. 151, at

4.

## III.    The Court Has Jurisdiction Over Pre-Trial Matters; <u>The Assignment of Claims to HMIT Changes Nothing</u>

On April 6, 2022, the Court recommended that the District Court "only withdraw

the reference of this Adversary Proceeding at such time as the bankruptcy court certifies

that the action is trial ready and defer to the bankruptcy court the handling of all pre-trial matters (as is most often the custom in this District)." Doc. 151, at 4. In so doing, the Court rejected Defendants' argument that the post-confirmation filing of this adversary proceeding by the Litigation Trustee deprives the Court of "related to" bankruptcy subject matter jurisdiction. The Court concluded, after a detailed discussion, as follows:

> The bankruptcy court disagrees with the Defendants. This Adversary Proceeding is a typical post-confirmation lawsuit being waged be a liquidating trustee, who was appointed pursuant to a Chapter 11 bankruptcy plan to pursue pre-confirmation causes of action that were owned by the bankruptcy estate, for the benefit of creditors. Despite the "post-confirmation" timing of the **filing** of the lawsuit, there **is** still "related to" bankruptcy subject matter jurisdiction.

Doc. 151, at 3-4 (emphasis in original). The only difference now is a subsequent assignment of claims from the Litigation Trustee to HMIT, which was approved by the Court over Defendants' largely identical objections. *See* Doc. 377. The assignment of claims to HMIT has no effect on the Court's "related to" jurisdiction. HMIT has simply stepped into the shoes of the Litigation Trustee to continue prosecuting the pre-confirmation causes of action already asserted in the Amended Complaint. *See Double Eagle Energy Servs., L.L.C. v. Markwest Utica EMG, L.L.C.*, 936 F.3d 260, 263-64 (5th Cir. 2019).

Defendants' insistence that the *Royal Canin* decision changes this analysis is simply wrong, and they also ignore relevant authorities that followed *Royal Canin*. The assignment of claims to HMIT, and the substitution of HMIT for the Litigation Trustee as

Plaintiff, has no impact on issues of subject matter jurisdiction. The Supreme Court's

decision in *Freeport-McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426 (1991) remains directly

on point. In *Freeport-McMoRan*, the plaintiff transferred its interest in the underlying

contract to a third-party and sought to amend the complaint to substitute that third-party

as plaintiff under Rule 25(c). *Id*. at 427. The district court permitted the addition of the

third-party as a plaintiff, even though that party was not diverse to the defendant. *Id*. at

427-28. The Eighth Circuit subsequently held that the addition of the new plaintiff

destroyed federal jurisdiction, but the Supreme Court reversed based on the "well-

established rule that diversity of citizenship is assessed at the time the action is filed." *Id*.

at 428. The Supreme Court emphasized it has "consistently held that if jurisdiction exists

at the time an action is commenced, such jurisdiction may not be divested by subsequent

events." *Id*.

The Fifth Circuit's holding in *Double Eagle Energy Servs., L.L.C. v. Markwest Utica*

*EMG, L.L.C.*, 936 F.3d 260 (5th Cir. 2019), also demonstrates that the reasoning of *Freeport-*

*McMoran* applies equally here. In *Double Eagle*, the district court dismissed a case for lack

of subject matter jurisdiction after the debtor assigned its claim against the defendants to

a creditor. *Id*. at 263. On appeal, the Fifth Circuit reversed, holding that an assignment—

like the one here—has no effect on subject matter jurisdiction because the "time-of-filing"

rule, described by the Fifth Circuit as "hornbook law," provides that subject matter

jurisdiction is determined when a federal court's jurisdiction is first invoked. *Id*. (*citing*

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004)). The Court noted that "[a]lthough courts have not often considered the time-of-filing rule for cases related to bankruptcy, it applies to bankruptcy jurisdiction no less than it applies to diversity or federal question jurisdiction." *Id.*

Since the *Double Eagle* decision in 2019, there is no doubt that an assignment of claims does not impact or destroy related-to-bankruptcy subject matter jurisdiction. *See, e.g., QuarterNorth Energy LLC and Certain of its Affiliates v. Atl. Mar. Serv. (In re Fieldwood Energy LLC)*, No. 20-33948, 2021 Bankr. LEXIS 2867, *13-14 (Bankr. S.D. Tex. Oct. 15, 2021) (holding that neither the confirmation of a reorganization plan nor the substitution of a third-party as plaintiff divests the court of "related to" subject matter jurisdiction); *Doe v. Roman Cath. Church of Archdiocese of New Orleans*, 588 F. Supp. 3d 698, 708 (E.D. La. 2022 ) (citing *Double Eagle* for its holding that "the time-of-filing rule applies to bankruptcy jurisdiction and that the related-to-bankruptcy jurisdiction that existed at the outset of this case never went away").

*Royal Canin*, which addressed pendant jurisdiction in an entirely different procedural posture, does not change this analysis, and does not reject the underlying holding in *Double Eagle.* In *Royal Canin*, the plaintiffs brought an action in Missouri state court asserting federal and state law claims arising out of the same facts, and the defendants removed the matter to federal court based on federal-question jurisdiction. 604 U.S. at 25. In response, the plaintiffs amended their complaint as a matter of right,

"delete[d] its every mention of the" federal claim, and moved to remand. *Id*. at 29. The

district court denied the request to remand, the Eighth Circuit reversed, and the Supreme

Court accepted certiorari to resolve a spilt in the circuits regarding whether "a post-

removal amendment [can] divest a federal court of jurisdiction." *Id*. at 30. In upholding

remand to state court, the Supreme Court concluded that "[w]hen an amendment excises

the federal-law claims that enabled removal, the federal court loses its supplemental

jurisdiction over the related state-law claims." *Id*. at 25. Here, there are no issues of

removal and remand, and Plaintiff's causes of action remain the same.

More importantly, *Royal Canin* expressly confirms that the holding of *Freeport-

McMoRan* is alive and well, as is the Fifth Circuit's holding in *Double Eagle*. In *Royal Canin*,

the Supreme Court cited *directly* to *Freeport-McMoRan* and stated that the time-of-filing

rule continues to apply in a situation—like this one—where there has been merely an

assignment of claims and a new party "steps into the … shoes" of one of the pre-existing

parties. *Id*. at 37 n.6.[4] Here, having already addressed jurisdiction based on the allegations

in the Amended Complaint, it would be improper for this Court—under both Supreme

---

[4] Defendants distort the plain meaning of the term "successor-in-interest," as used in footnote 6 in the *Royal Canin* decision. Under any analysis, HMIT has succeeded to the interest of the litigation trustee. In *Royal Canin*, the Supreme Court's reference to a "successor-in-interest" in footnote 6, while citing to and reaffirming its holding in *Freeport-McMoRan*, negates Defendants' attempt to cabin the term "successor-in-interest" to exclude an assignee. In *Freeport-McMoRan* itself, the plaintiff assigned its interest in an underlying contract to a third-party and then sought to amend the complaint to substitute that third-party as plaintiff. *See* 498 U.S. at 427.

Court and Fifth Circuit precedent—to revisit that decision based solely on a post-filing assignment.

Indeed, Defendants' erroneous and misleading arguments relating to *Royal Canin* also ignore more recent decisions in the Fifth Circuit, which have continued to apply the principals articulated in *Freeport-McMoRan* following *Royal Canin*. Three months after *Royal Canin* was decided, the Fifth Circuit continued to cite *Double Eagle* as correctly stating the time of filing rule. *See Epley v. Lopez*, No. 23-10374, 2025 U.S. App. LEXIS 9448, at *24 (5th Cir. 2025) (rejecting diversity jurisdiction, which did not exist at time of original filing, based on new citizenship allegations in amended petition pursuant to continuing domicile doctrine); *see also O'Dowd v. Geske*, No. SA-24-CV-00855-XR, 2025 U.S. Dist. LEXIS 137973, at *11 (W.D. Tex. 2025) (noting that for "related to" jurisdiction to exist, a plaintiff "must establish that his suit could have had a conceivable effect on the bankruptcy estate ***at the time he filed his complaint***"). In an even more recent case, the Eastern District noted that in some instances, like *Royal Canin*, "an amended complaint may destroy jurisdiction," but nevertheless applied the well settled rule requiring analysis of diversity at the time of removal. *Simpson v. Amerisave Mortg. Corp.*, Civil Action No. 4:23-cv-00906, 2025 U.S. Dist. LEXIS 191167, at *7 (E.D. Tex. 2025).

Even if the Court were to reopen the jurisdictional analysis, the result would not change because the Amended Complaint's causes of action remain fully "related to" the Highland Capital bankruptcy in the hands of HMIT. HMIT held 99.5% of the equity

interests in Highland Capital prior to bankruptcy and holds $336,940,230.58 of Allowed

Class 10 Interests under the Plan. *See* Case No. 19-34054, Doc. 4297. Even absent a transfer

of the claims, HMIT would be entitled to the bulk of proceeds in this action after

satisfaction of creditor claims and other senior obligations. All that has happened is that

the ultimate beneficiary, HMIT, is now in charge of creating value for its former equity

interest, which this Court approved by virtue of the HMIT Settlement.[5] Defendants'

jurisdictional objection should be seen for what it really is—obfuscation designed to cause

delay to further allow their illicit transfers.

## IV.     The Court Has the Authority to Issue an Asset-Freezing Injunction
## to Prevent Defendants' Intentional Dissipation and Secretion of Assets

Defendants' additional arguments are also unavailing. Bankruptcy Rule 7065

provides that Fed. R. Civ. P. 65 applies in an adversary proceeding and, under Rule 65,

the Court is authorized to issue injunctive relief. Additionally, Section 105(a) of the

Bankruptcy Code authorizes bankruptcy courts to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of the Code," including

injunctions. *See, e.g.*, *In re FiberTower Network Servs. Corp.*, 482 B.R. 169, 182 (Bankr. N.D.

Tex. 2012) (quoting 11 U.S.C. § 105). In fraudulent transfer cases, both Texas and Delaware

law specifically authorize an injunction "against further disposition by the debtor or a

---

[5] Case No. 19-34054, Doc. 4297.

transferee, or both, of the asset transferred or of other property." Tex. Bus. & Com. Code § 24.008(a)(3)(A); 6 D.E. Code § 1307(a)(3)(A).

The Court unquestionably has the authority to issue an asset-freezing injunction in a case like this one, where a defendant is alleged to have committed fraudulent transfers and relief is necessary to preserve the defendant's assets for collection and/or to forestall a multiplicity of suits that would otherwise be required to enforce a judgment. Indeed, courts in the Fifth Circuit consistently hold that a dissipation or transfer of assets impairing a court's ability to grant an effective remedy constitutes irreparable harm, and injunctive relief is appropriate in such cases where the underlying complaint includes claims that are equitable in nature. At least the following authorities support the relief requested:

- *Tujague v. Adkins*, No. 4:18-CV-631, 2018 U.S. Dist. LEXIS 171394, at *8-9 (E.D. Tex. 2018) ("[A] plaintiff seeking economic damages will suffer irreparable harm when the defendant's dissipation of assets would require the plaintiff to initiate '"a multiplicity of suits … to gain relief."').

- *Prep Sols., Ltd v. Lecht*, 2022 U.S. Dist. LEXIS 98756 (E.D. Tex. June 2, 2022) ("[t]he Court can permissibly freeze assets to protect a plaintiff's equitable remedies—such as the equitable remedy of disgorgement").

- *Amegy Bank N.A. v. Monarch Flight II, LLC*, No. 4:11-CV-3218, 2011 U.S. Dist. LEXIS 140874, at *17 (S.D. Tex. Dec. 7, 2011) (irreparable harm is established and injunctive relief is appropriate where there is "evidence showing that … the defendant intends to dissipate his assets to make a judgment awarding damages uncollectible").

- *Newby v. Enron Corp.*, 188 F. Supp.2d 684, 707 (S.D. Tex. 2002) (noting that "[i]n the cases in which such a prejudgment asset-freezing injunction is granted, the courts have been presented with allegations and evidence showing that the defendants were concealing assets, were transferring them so as to place them out of the reach of post-judgment collection, or were dissipating the assets").

- *Bank of Am., N.A. v. Mega World Builder Corp.*, No. 4:24-CV-3021, 2024 U.S. Dist. LEXIS 203763, *17 (S.D. Tex. Nov. 8, 2024) ("When the dissipation of assets that are the subject of a lawsuit would impair the district court's ability to grant an effective remedy at the conclusion of the case, the district court may enter a preliminary injunction to protect against those assets' dissipation.").

- *SEC v. Barton*, 135 F.4th 206, 228 (5th Cir. 2025) ("[T]he SEC has also shown irreparable harm to the defrauded investors through further dissipation of assets. If those assets were distributed, there would be no recovery for the defrauded investors—thus making the harm irreparable.").

- *Turnkey Offshore Project Servs., LLC v. JAB Energy Solutions, LLC,* 2021 U.S. Dist. LEXIS 149733, at *15-16 (E.D. La. Aug. 10, 2021) ("[W]hen the underlying claim is one that is equitable in nature, a Rule 65 injunction may be available to preserve the defendant's assets during the pendency of the proceeding.").

- *Sargeant v. Al Saleh*, 512 S.W.3d 399 (Tex. App.—Corpus Christi 2016, no pet.) (affirming sweeping asset-freezing injunction in TUFTA case).

- *Sharp v. SSC Farms I, LLC (In re SK Foods, L.P.),* 2010 Bankr. LEXIS 6445, *54 (E.D. Cal. April 5, 2010) ("Courts have held that a preliminary injunction freezing the transfer of assets is proper where fraudulent conveyance is alleged in a bankruptcy case.").

- *S. Texas Lighthouse for the Blind, Inc. v. Fed. Supply Servs. Int'l, Inc.*, 2020 U.S. Dist. LEXIS 157347, *3-4 (S.D. Tex. Aug. 28, 2020) (noting that a fraudulent transfer claim in a complaint is a claim for equitable relief

that will support injunctive relief if assets are being concealed or dissipated).

- *Animale Grp., Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) ("Because Defendants seek equitable relief, the district court was authorized to preserve the status quo by entering a limited asset freeze").

- *French v. Fisher*, No. 1:17-CV-248-DAE, 2018 U.S. Dist. LEXIS 232723, at *53 (W.D. Tex. 2018) (ordering production of financial reports to special master in aid of injunction preventing dissipation of funds to preserve disgorgement and constructive trust remedies).

These decisions confirm that this Court has full authority to issue an injunction if necessary to prevent Defendants from dissipating, disposing, or transferring assets prior to judgment, and it is equally well-established that the availability of monetary damages that may never be collected as a result of the Defendants' conduct is not an adequate remedy at law:

- *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2010) (the "mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'").

- *Walker v. Doe*, No. 6:24-cv-00633-ADA, 2025 U.S. Dist. LEXIS 100396, at *10 (W.D. Tex. 2025) (finding money damages to be inadequate remedy in light of alleged scheme to launder funds beyond the reach of the court).

An injunction is particularly appropriate where, as here, the assets at issue are not just being dissipated or concealed, but being intentionally transferred outside the jurisdiction of the Court. *See, e.g., Janvey*, 647 F.3d, at 600 ("If the defendants were to dissipate or transfer these assets out of the jurisdiction, the district court would not be

able to grant the effective remedy, either in equity or in law, that the Receiver seeks."); *Walker*, 2025 U.S. Dist. LEXIS 100396, at *11 ("The Court finds that the injury to Plaintiff is irreparable … because, in light of the nature of the scheme alleged, the funds which Plaintiff contends were obtained under false pretenses will, more likely than not, be moved beyond the reach of Plaintiff and the Court absent immediate Court intervention."); *Tujague*, 2018 U.S. Dist. LEXIS 171394, at *8-9 ("The record reflects that, shortly after Tujague provided Adkins with money to invest in the Tire Business, Adkins deposited those funds into entities he controls, seemingly to make Tujague's funds difficult to trace" and thus a preliminary injunction is necessary to "ensure that the funds he provided to Adkins for investments can be returned should Tujague prevail on the merits."); *Sharp*, 2010 Bankr. LEXIS 6445, at *53 ("In the event an injunction is not issued, and Defendants are permitted to transfer or sell their assets beyond the reach of this Court, the Trustee, and the creditors of the estates, will suffer irreparable harm.").

In the face of overwhelming authority supporting HMIT's requested relief, Defendants are forced to nibble around the edges to create doubt where there is none. Defendants have argued, for example, that HMIT is required to initiate a separate adversary proceeding to request injunctive relief, even though HMIT's request for injunctive relief was filed in a pending adversary proceeding with all of the accompanying procedural protections. *See In re Briar Creek Corp. Center Assoc. Ltd.*, 486 B.R. 681, 688-89 (Bankr. E.D.N.C. 2013) ("A request for an injunction pursuant to the

court's powers under § 105 must ordinarily be made by filing an adversary proceeding,

but if an adversary proceeding has already commenced, the request may be made by

motion; the commencement of an entirely new adversary proceeding is unnecessary.");

*Allied Dev. of Ala. LLC v. Forever 21, Inc. (In re Forever 21, Inc.)*, 623 B.R. 53, 64 (Bankr. D.

Del. 2020) ("Where an adversary proceeding has already been commenced … injunctive

relief in that proceeding can be sought by motion"); *cf. In re RGV Smiles by Rocky L. Salinas

D.D.S. P.A.*, 626 B.R. 278, 290 (Bankr. S.D. Tex. 2021) (refusing a request for injunctive

relief in a contested matter "because contested matters, as opposed to adversary

proceedings, 'require fewer procedural protections' and 'are generally designed for the

adjudication of simple issues'") (citations omitted). Where an adversary proceeding is

already pending, a party can seek injunctive relief by motion alone.

Equally specious is Defendants attempt to parse HMIT's claims, which include

fraudulent transfer, disgorgement, declaratory judgment, and breach of fiduciary duty

causes of action,[6] in a manner to preclude equitable relief. Defendants focus on HMIT's

demand for monetary damages, but ignore that those "monetary damages" are actually

predicated on the equitable disgorgement of unlawful gain attributed to their fraudulent

conduct and breaches of duties. The fact that monetary damages are necessary to address

the Defendants' fraudulent transfers does not make HMIT's claims any less equitable in

---

[6] *See* Doc. 158, at ¶¶ 137-186.

nature, nor is injunctive relief any less appropriate. Fraudulent transfer claims are themselves equitable. *See, e.g., Sharp*, 2010 Bankr. LEXIS 6445, at *54 ("Courts have held that a preliminary injunction freezing the transfer of assets is proper where fraudulent conveyance is alleged in a bankruptcy case."); *S. Texas Lighthouse for the Blind*, 2020 U.S. Dist. LEXIS 157347, at *3-4 (noting that a fraudulent transfer claim in a complaint is a claim for equitable relief that will support injunctive relief where assets are being concealed or dissipated).

A claim for disgorgement is also an equitable remedy. *See Prep Sols., Ltd.*, 2022 U.S. Dist. LEXIS 98756, at *4 ("The Court can permissibly freeze assets to protect a plaintiff's equitable remedies—such as the equitable remedy of disgorgement"). And the disgorgement sought in the Amended Complaint is wide-ranging. *See* Doc. 158, ¶¶ 50-65 (alleging improper transfer of management contracts, resulting in potentially hundreds of millions in usurped profits), ¶¶ 66-104 (alleging breaches of fiduciary duties resulting in hundreds of millions in liability to third parties).

Defendants further disregard that an injunction in this situation is authorized by statute. *See* Tex. Bus. & Com. Code § 24.008(a)(3)(A) ("In an action for relief against a transfer or obligation under this chapter, a creditor … may obtain … subject to applicable principles of equity and in accordance with applicable rules of civil procedure … an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property"). Importantly, TUFTA does not limit a party to freezing

only the underlying asset at issue. *See id.*; *In re Acis Capital Mgmt., L.P.*, Nos. 18-30264-SGJ-11, 18-30265-SGJ-11, 2019 Bankr. LEXIS 292, at *40 n.78 (Bankr. N.D. Tex. 2019) ("TUFTA's injunction provision is construed broadly and courts have found that '[a] claim for fraudulent transfer under Texas law contemplates the issuance of a preliminary injunction.'" (quoting *Sargeant v. Al Saleh*, 512 S.W.3d 399, 413 (Tex. App.—Corpus Christi 2016, no pet.) (upholding sweeping asset-freezing injunction)). Even if the nature of HMIT's claims was a legitimate objection, and it is not, the fact that monetary damages are available means nothing if those damages cannot be collected because of Defendants' dissipation of assets outside the jurisdiction of the Court. *See, e.g., Janvey*, 647 F.3d at 600 (that "economic damages may be available does not always mean that a remedy at law is 'adequate.'").

Defendants' related argument that equitable claims must be the "principal object" of the underlying complaint to support injunctive relief also provides no help to them and misconstrues applicable law. All that is required is a "cognizable" equitable claim with "a sufficient nexus to the defendants' assets at issue." *Newby*, 188 F. Supp. 2d 684, 707 (S.D. Tex. 2002) ("Neither the statutory causes of action Amalgamated pleads, nor the fact that it seeks substantial monetary damages, preclude this court from considering the application"). Defendants cite no authority (because there is none) supporting the proposition that a court must undertake an evaluation of whether a pleading as a whole is more equitable or more legal in nature before equitable relief can be granted in

connection with specific claims. Only a complaint that is *solely* for monetary damages might preclude injunctive relief. *See, e.g., SEC v. Shavers*, 2014 U.S. Dist. LEXIS 194380, *4 (E.D. Texas Aug. 26, 2014) ("While … a district court cannot enter a preliminary asset freeze in cases where monetary damages are the only damages being sought … if a plaintiff seeks equitable remedies, district courts have the authority to preliminarily freeze assets to preserve the status quo, to ensure funds will be available to satisfy any final judgment, and to guard against defendants dissipating assets."). Thus, regardless of the characterization of HMIT's other claims as legal or equitable, the Court may still grant injunctive relief with respect to HMIT's fraudulent transfer claims, which indisputably implicate equity and authorize injunctive relief. *See, e.g., Sharp*, 2010 Bankr. LEXIS 6445, at *54; *S. Texas Lighthouse for the Blind*, 2020 U.S. Dist. LEXIS 157347, at *3-4; *Prep Sols., Ltd.*, 2022 U.S. Dist. LEXIS 98756, at *4; Tex. Bus. & Com. Code § 24.008(a)(3)(A).

## V.    <u>The Evidence of Intentional Dissipation of Assets is Strong</u>

HMIT's Emergency Verified Motion for Temporary Restraining Order, Preliminary Injunction, and Appointment of Receiver details Defendants' historical pattern of diverting and concealing assets. *See* Doc. 379-1, at 6-10. Importantly, this prior conduct, which is consistent with the current scheme, is highly relevant to the Court's consideration of injunctive relief. *See, e.g., Wimbledon Fund, SPC (Class TT) v. Graybox, LLC*, Case No. 215CV06633, 2015 U.S. Dist. LEXIS 134966, *20 (C.D. Cal. Sept. 29, 2015) ("[i]n determining whether an asset freeze is appropriate, Courts have frequently looked to

evidence of the defendant's prior conduct" (*citing Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) ("Couturier's own prior conduct establishes a likelihood that in the absence of an asset freeze and accounting, Plaintiffs will not be able to recover the improperly diverted funds and will thus be irreparably harmed."))). In *Wimbledon Fund*, for example, the court granted an injunction freezing the assets of the defendant to prevent the defendant from dissipating a $2.9 million wire transfer after finding that "Graybox's manager Bergstein has regularly transferred assets between Graybox and various other entities which he controls" and there were "serious accusations regarding the corporate integrity of Graybox and other entities controlled and/or managed by Bergstein." *Id*. at 21. This Court may look similarly to the prior conduct of Dondero, Ellington, and their cohorts.

HMIT provided the Court with sufficient evidence to support a temporary restraining order, and this evidence and additional discovery will show, that Defendants Dondero and Ellington, acting through their affiliates, are engaged in transferring and hiding substantial assets offshore using affiliated entities they control. One of these is Skyview Group Inc., an entity nominally owned by Ellington, but ultimately controlled and largely funded by Dondero. The recent transfers or attempts to transfer of which HMIT is aware include:

- Transfers of millions of dollars in 2025 to Crossvine Litigation Funding LLC ("CLF"), a Cayman entity created in April 2025 and controlled by Ellington and funded by Dondero;[7]

- As evidenced by a contemporaneous tape recording, efforts to liquidate a stock ownership position (held directly or indirectly by Dondero) involving multi-family housing, and move over $30 million to a "charity" under Dondero's control and which, upon information and belief, is located in the Cayman Islands;

- Dondero's highly improper, if not illegal demand to the Charitable DAF Fund, LP ("DAF") which indirectly owns HMIT, to send $1.5 million dollars to an offshore entity to bolster and "maintain the Sentinel structure," which involved a bogus insurance company created by Dondero and Ellington to hide assets from UBS. DAF's control person, Mark Patrick ("Patrick"), has independent contemporaneous evidence of this request. Mr. Patrick understands and believes that this attempt to funnel money from DAF to Sentinel was and is part of an ongoing effort that would continue (and, as described below, has continued) into the future;

- Even though DAF rejected Dondero's demand, Skyview made multiple wires in connection with this proposed scheme, including a $3 million wire to Atreyu Pipeline Logistics, LLC, an entity controlled by Ellington,[8] and there is contemporaneous evidence that as much as $7 million was transferred by Dugaboy, NexPoint and/or Ellington (acting through Skyview); and

- Isaac Leventon, a Defendant, was aware of Dondero's requests but made it clear to Patrick that he would deny any involvement in any related conversations.

---

[7] CLF is owned by Crossvine Holdings LLC and Crossvine Foundation (collectively "Crossvine")—two Texas entities recently created by Ellington in April 2025.

[8] Upon information and belief, Ellington refused to provide 1099s to Skyview tax professionals relating to Atreyu and certain other entities in an ostensible effort to evade scrutiny of these transfers.

HMIT expects that additional evidence will be forthcoming when, with the assistance of the Court, HMIT obtains discovery as requested in its Emergency Motion for Expedited Discovery [Doc. 380] and/or if the Court requires an accounting of recent transfers or appoints a receiver to investigate such transfers, as HMIT has requested in its Emergency Verified Motion for Preliminary Injunction [Doc. 379]. It is already apparent, however, that Defendants are using shell entities and moving assets, assets that were fraudulently and improperly transferred out of Highland Capital's bankruptcy estate to begin with, outside the jurisdiction of the Court to avoid collection of a judgment in this proceeding designed to recover those assets. For that reason, an injunction should issue.

## VI.   The Court May Tailor Its Injunctive Relief if Appropriate

Defendants argue that the scope of the proposed injunction would constitute an unwarranted intrusion into Defendants' ordinary business obligations and responsibilities to various stakeholders. But HMIT has taken care to exclude ordinary course transactions from its proposed relief. Paragraph 4 of HMIT's proposed temporary restraining order, which would likely be carried forward to a temporary injunction, provides as follows:

> Notwithstanding this Order, the Defendants are allowed to continue to engage in transactions in the ordinary course of business, but all transactions are subject to the disclosure requirements set forth in Paragraph 5. For purposes of this paragraph, "ordinary course of business" shall include transfers, assignments or sales to a bona fide third-party purchaser or assignee for equivalent value, as viewed by an objective observer with knowledge of the party's business, so long as such

transactions are at arm's length, on commercially reasonable terms, and with unaffiliated third parties, without involving extraordinary commitments, unprecedented expenditures, or actions that would breach duties or dissipate assets outside the jurisdiction of this Court or in any manner that may frustrate collection of any judgment in this lawsuit.

*See* Doc. 379-3, p. 5. Defendants also have taken issue with language restraining Defendants' representatives and "all persons or entities in active concert or participation" with Defendants, but Rule 65(d)(2) expressly enumerates these parties as those that may be bound by an injunction. HMIT stands by the relief as requested.

If the Court feels the proposed order does not adequately protect or exempt Defendants' legitimate business operations from the scope of the required injunction, however, or otherwise unfairly burdens the Defendants, the Court has the discretion and authority to tailor the relief. "Crafting a preliminary injunction is an exercise of discretion and judgment" and thus "a court need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579-80 (2017); *see also FTC v. Southwest Sunsites, Inc.*, 665 F.2d 711, 721 (5th Cir. 1982) (noting that it is "within the discretion of the district court to tailor any preliminary injunction to minimize the harm to appellees' legitimate business activities"); *United States v. Daughtry*, 2020 U.S. Dist. LEXIS 205606, *22 (E.D. Tex. Sept. 9, 2020) ("The Court can use its discretion to fashion a narrowly tailored injunction that will not result in unnecessary hardships to Defendants."). The Court's discretion and ability to craft an appropriate injunction is a part of the process.

## VII.    Conclusion

For the reasons discussed, and in its prior briefing, HMIT respectfully requests

that the Court continue its role in this proceeding and grant the relief requested in HMIT's

Emergency Verified Motion for Temporary Restraining Order, Preliminary Injunction

and Receivership [Doc. 379] and Motion for Expedited Discovery [Doc. 380].

Respectfully submitted,

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
Texas Bar No. 24110325
isalzer@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

**ATTORNEYS FOR HUNTER MOUNTAIN
INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2025, a true and correct copy of the
foregoing document was served on all parties of record via the Court's ECF system.

*/s/ Ian B. Salzer*
Ian B. Salzer

3210096