IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS)

IN RE:                              .  Case No. 19-34054-SGJ-11
                                    .
HIGHLAND CAPITAL MANAGEMENT,        .  Chapter 11
L.P.,                               .
                                    .
          Debtor.                   .
                                    .
. . . . . . . . . . . . . . . . .   .
                                    .  Adv. Case No. 21-003076-BWO
HUNTER MOUNTAIN INVESTMENT          .
TRUST,                              .
                                    .
          Plaintiff,                .
                                    .
       vs.                          .
                                    .
JAMES D. DONDERO, ET AL.,           .
                                    .
          Defendants.               .
                                    .  Tuesday, January 27, 2026
. . . . . . . . . . . . . . . . .   .  1:38 P.M.


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE BRAD W. ODELL
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES ON NEXT PAGE.


Audio Recorder:          Nicholas Noble
                         Earle Cabell Federal Building
                         501 West 10th Street
                         Dallas, Texas 75242

Transcription Service:   Liberty Transcripts
                         9107 Topridge Drive
                         Austin, Texas 78750
                         (847) 848-4907
                         DBPATEL1180@GMAIL.COM


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

APPEARANCES VIA WEBEX:

For Plaintiff Hunter Mountain Investment Trust:

          Parsons McEntire McCleary, PLLC
          BY: SAWNIE A. McENTIRE, ESQUIRE
          1700 Pacific Avenue, Suite 4400
          Dallas, Texas 75201
          (214) 237-4300
          smcentire@pmmlaw.com

          Parsons McEntire McCleary, PLLC
          BY: IAN SALZER, ESQUIRE
          1700 Pacific Avenue, Suite 4400
          Dallas, Texas 75201
          (214) 237-4300
          isalzer@pmmlaw.com

For Defendants Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.:

          Stinson LLP
          BY: DEBORAH DEITSCH-PEREZ, ESQUIRE
          2200 Ross Avenue, Suite 2900
          Dallas, Texas 75201
          (214) 560-2201
          deborah.deitschperez@stinson.com

For Defendants James D. Dondero; Strand Advisors, Inc.; Dugaboy Investment Trust and Nancy Dondero, as Trustee of Dugaboy Investment Trust; and Get Good Trust and Grant James Scott III, as Trustee of Get Good Trust:

          Pillsbury Winthrop Shaw Pittman LLP
          BY: AMY L. RUHLAND, ESQUIRE
          401 West 4th Street, Suite 3200
          Austin, Texas 78701
          (512) 580-9655
          amy.ruhland@pillsburylaw.com

For Defendants Isaac Leventon and Scott Ellington:

          Baker & McKenzie LLP
          BY: DEBRA DANDENEAU, ESQUIRE
          452 Fifth Avenue
          New York, New York 10018
          (212) 626-4875
          debra.dandeneau@bakermckenzie.com

(The proceedings commenced at 1:38 p.m.)

THE COURT:  Good afternoon, this is Judge Odell. We're here on our 1:30 special setting in the case of Hunter Mountain Investment Trust versus Dondero, et al., Adversary Proceeding Number 21-3076.  We're going to start off by getting appearances.  If I can start with getting appearances from counsel for the Plaintiff, Hunter Mountain.

MR. McENTIRE:  Yes, Your Honor.  This is Sawnie McEntire with Parsons McEntire McCleary on behalf of Hunter Mountain.  I'm also joined by Mr. Ian Salzer.

THE COURT:  All right, let me start off next with getting appearances by counsel for James Dondero and any of the related Dondero Parties.

MS. RUHLAND:  Yes, Your Honor.  This is Amy Ruhland from Pillsbury Winthrop Shaw Pittman.  And I represent James Dondero, Strand Advisors, Inc., the Dugaboy Investment Trust, and Get Good Trust.

THE COURT:  Thank you.  Next, let me get --

MS. DEITSCH-PEREZ:  Good morning.

Good morning.  There are more.  This is Deborah Deitsch-Perez from Stinson, and we represent NexPoint Advisors and HCMFA, two affiliated entities.

THE COURT:  Okay.  Could you state your last name again, Ms. --

MS. DEITSCH-PEREZ:  Yes.

Deitsch-Perez, D-E-I-T-S-C-H, hyphen, P-E-R-E-Z.

THE COURT:  Thank you.  I was going to jump to you next or your clients next.  I understand that there may be some relation between all these parties and the Donderos.

Okay, the next is counsel for Scott Ellington and Isaac Leventon.

MS. DANDENEAU:  Thank you, Your Honor.

Good afternoon, I believe it is.  This is Debra Dandeneau from Baker McKenzie, and I'm here as counsel for Scott Ellington and Isaac Leventon.

THE COURT:  Wonderful.  Thank you.

All right.  Are there any other parties or counsel that need to make an appearance in this matter?

(No audible response)

THE COURT:  All right.  The Court went ahead and set this matter for a status conference, now that I'm going to be taking over this adversary proceeding.  I do know some general background regarding the matter, though I think it would be helpful for the Court, in particular for me, to get a good idea of somewhat of a background from each party but then to discuss what I think is the biggest issue of where do we go from here?

As I understand it, I think there are two motions that are currently pending that are both Plaintiff's motions.  But also, I understand that there is an original report and recommendation that was made to the district court with a

supplement by Judge Jernigan that still has not been ruled on or addressed by the district court.

So let me start with you, Mr. McEntire.  Let me get from you kind of how you see the matter and where you think we should go from here.

MR. McENTIRE:  Yes, sir.  Is my audio good?  Can you hear me, Your Honor?

THE COURT:  Yes, we can hear you just fine.

MR. McENTIRE:  All right.  I represent Hunter Mountain.  They were the 99.5-percent equity holder in the Debtor before the bankruptcy.  We received an assignment from the Litigation Trustee back in the summer as a result of a settlement between Hunter Mountain, my client, and the Litigation Trustee in the claimant trust.

As a result of that assignment, Judge Jernigan entered an order in, I believe it was in late August, early September, allowing my client to substitute in as the appropriate Plaintiff.  That was opposed by all the Defendants' counsel here on the basis of jurisdiction.  We argued that. The Court effectively, in my opinion, overruled their objection.  She allowed the substitution.

I subsequently advised the Court at that time that we'd be filing a motion for equitable relief, injunctive relief, at that hearing.  That was back in, I believe, August of last year.  We did file that motion.  I also almost

concurrently, the day after the Court allowed our substitution, I terminated by providing notice for the termination of the stay, which had been in effect for approximately two years. The stay was lifted effectively on October 3rd.

There is a scheduling order in place that predated, perhaps it was entered, I think, contemporaneously with the stay order, but basically all of the dates and deadlines set forth in the scheduling order would be adjusted by how much time had passed during the stay.

As a result of that, I believe that document discovery will be substantially completed under the terms of the scheduling order or should be substantially completed sometime in the month of February.  I believe according to our calculations, and I'll stand corrected if my calculations are incorrect, I believe fact discovery will begin in March.  No depositions have been taken.  Virtually no action was taken subsequent to the Court's allowing me to substitute in.

We had a hearing on, we had a status conference with Judge Jernigan in late October, I believe, in connection with my application for injunctive relief.  She invited more briefing.  That briefing was submitted on November 18.  We did nothing, no parties have done anything from that point forward, other than perhaps some reply briefs or surreply briefs.  We were waiting on Judge Jernigan's ruling and recommendations, which came down, I believe, on December 18th, just before

Christmas.

And as you know, she recused herself.  And she did not address the jurisdictional issues that the Defendants' counsel continued to advance.  We believe that the Court has jurisdiction.  We believe it was vested with subject matter jurisdiction from day one, and under the time of filing rule.  So we're not really concerned about that, but I do believe some of the briefing issues have not been fully addressed.

Our application for TRO, I think, has somewhat been, if not mooted, I think the next step on that regard would probably be a hearing set on our application for a preliminary injunction.  However, we did ask for, and the Court has not yet ruled, Judge Jernigan did not rule on our request for expedited discovery.  We had tailored some specific document requests in anticipation of that hearing, and also identified three or four individuals to be deposed.  Of course, fact witness discovery is going to begin anyway, shortly.  We would like an opportunity to have a preliminary injunction set sometime in March or April, after fact discovery is undertaken, deposition discovery is undertaken.

As you may know, Your Honor, Judge Jernigan's original recommendation back in 2022, I believe, was that she would retain handling of the case subject to a withdrawal of reference for trial.  I don't think there's any dispute that all the Defendants, all parties, are entitled to a jury trial

because of the demand for jury and there are jury questions, and no one has consented to a trial before the bankruptcy court.

The issue there was whether or not the bankruptcy court would retain the handling jurisdiction in effect as a de facto magistrate pending a determination that it was trial ready.  We're in the process of evaluating, and I'm inclined to expect that we would agree to the withdrawal of reference completely at this point.  We would like to get on with litigation.

I am concerned that there are lots of issues here, lots of learning curves here, and Judge Scholer does have some background in the case.  I would simply like the opportunity to make that decision before the end of this week.  I need to understand better Judge Scholer's docket and whether or not she would otherwise appoint a magistrate of some type.

It's my understanding that's in effect what this Court's role would be to address all pretrial issues.  We do believe the case is appropriately -- has to be -- reference has to be withdrawn for trial.  And I believe that perhaps the best efficiencies are to allow the entire matter of reference to be withdrawn at this time.  I would like a day or two just to complete that analysis.

THE COURT:  Okay.  Mr. McEntire, have you filed any briefing or any responses to Judge Jernigan's latest supplement

that she filed regarding withdrawal of the reference?

MR. McENTIRE:  Your Honor, I must be honest.  I'm having some difficulty in hearing you.  I didn't really catch the whole question.

THE COURT:  Give me a second.  I'm going to adjust my technology here.  So my question was, has anyone filed or has your side filed any response or objection to Judge Jernigan's recommendation in the supplement that she filed with the district court?

MR. McENTIRE:  There's been nothing filed as a result of her December 18 recommendation.  There were challenges to her original recommendations and that was an appeal to Judge Scholer, as I understand it, and Judge Scholer abated those proceedings pending the lifting of the stay.  I believe the case remains abated in Judge Scholer's court at this time, if that answers your question.

THE COURT:  Okay.  Yeah, that does answer my question.  I know that, again, Judge Jernigan had issued a supplemental recommendation to the district court.  I don't know that she put in anything, and I guess you haven't decided yet whether or not you would just agree to the withdrawal of the reference, but she certainly seemed to be of the opinion that withdrawal of the reference made the most sense.

MS. DEITSCH-PEREZ:  Your Honor, I think I could answer your question.  No party objected to Judge Jernigan's

supplement to her report and recommendation.

THE COURT:  Okay.  All right.  Thank you.

Anything further, Mr. McEntire, at this time?

MR. McENTIRE:  No, Your Honor.

THE COURT:  Okay.  Are you envisioning, Mr. McEntire, that you would just advise opposing counsel as to your agreement to withdraw the reference?

MR. McENTIRE:  Yes.  I think I can probably do that within 48 hours.

THE COURT:  Okay.  Then let me go ahead, then, and hear from Ms. Ruhland.

MS. RUHLAND:  Sure.  I mean, I think Mr. McEntire fairly summarized the timeline here.  I do think that the Defendants strongly disagree that this Court retains jurisdiction or should have jurisdiction over the case.  We made that argument, by the way, in our original motions to withdraw the reference and in our motions to dismiss.  And all of those motions remain pending in the district court.

And in our latest briefing before the bankruptcy court, which led to the most recent supplement to her recommendation on withdrawal of the reference, we argued that the bankruptcy court no longer has jurisdiction because this case has been effectively given over to, sold to Hunter Mountain Investment Trust, and the Debtor is no longer affected by any of the machinations in the case.  The estate is no

longer affected, and this is essentially a lawsuit between private parties.

And so that's our position on jurisdiction.  We do think that the case should be withdrawn to the district court for all purposes.  And because no party objected to the latest supplement to the report and recommendation, we think the time to do that is now.  Although if Mr. McEntire is going to agree to that, then obviously we're not going to put up any objection to that.

THE COURT:  Okay.  At this time, to the extent that this, you know, the parties aren't agreeing and I'm just going to act as if right now it's in my Court.  So as far as your position on discovery, where it sits, how much time is needed, the parties dispute that we've got an ending deadline in February and a deadline that starts in March?

MS. DEITSCH-PEREZ:  Your Honor, if I may.

THE COURT:  Hold on one moment.  I'm asking Ms. Ruhland.  I'm going to give every party a chance.

MS. RUHLAND:  Yeah.  I confess Your Honor.  I haven't looked back at the discovery deadlines in the case.  I frankly, because we just don't know what the current status of where this case is going to sit is,  I think it's hard to guesstimate what, you know, discovery deadlines should be in place.  But to be fair, I haven't looked back at discovery deadlines in the case to determine what I think the right cutoffs are.

Ms. Deitsch-Perez may have done that.

THE COURT:  Okay.  All right.  Anything further, Ms. Ruhland?

MS. RUHLAND:  No, thank you.  Your Honor.

THE COURT:  All right.  Ms. Deitsch-Perez?

MS. DEITSCH-PEREZ:  Could I apologize for popping up? We had informally talked before the hearing and had agreed that for just ease of reference, I would speak for everyone.  But I I'm happy to share the podium with my colleagues.

Because of this -- this action was originally brought to the cover -- by the Litigation Trustee to cover the shortfall between what the Debtor was saying was going to be available and what was needed by the creditors.  And it turned out that the Defendants were correct that there was no shortfall.  And so if we look at the most recent reports, the creditors have been paid.  Most of them have been paid a hundred cents on the dollar.  There's a short -- one category is 97 percent.  And that claim is reserved for.

So among the various motions to dismiss that were made at the time and there is -- in addition to the two motions that Your Honor mentioned, there's also a pending motion to dismiss all the claimants in the case for statute of limitations, and also because the avoidance actions are simply not needed to pay creditors.  Creditors are going to be paid a hundred cents on the dollar.

And in recognition of that, the Litigation Trustee stayed the entire case years ago because it became increasingly clear that this was a hundred-cents-on-the-dollar case.  So while there was an initial discovery schedule, almost none of it has been completed.  When the stay was put in place, there were many, many unanswered subpoenas, unanswered document requests, all kinds of unanswered discovery.  The discovery that Hunter Mountain has proposed conducting has nothing to do with the claims in the case.  And there will be enormous controversy over the appropriateness, the relevance and the scope of them.

And so for those reasons, we think that because there are so many things that will need to be decided once and if this case survives the motion to dismiss, that none of that ought to proceed until the case is where it's ultimately going to be, whether that's the district court or in large part in state court, because there will be so many discovery disputes that should be decided under the appropriate procedural rules.

And for that reason, what the Defendants would propose is simply awaiting Judge Scholer's determination as to where the case should be.

THE COURT:  Let me ask a couple of questions regarding that.  First off, this case didn't start in state court, correct?

MS. DEITSCH-PEREZ:  Correct.

THE COURT:  Okay.  And so is the argument on the whole, on the jurisdictional issue that there are state court claims or state law claims and there are fraudulent transfer or we'll just broadly characterize them as avoidance claims, which are bankruptcy causes of action, that those should actually be dismissed leaving only state law claims.  And that's why the federal courts don't have jurisdiction?

MS. DEITSCH-PEREZ:  There are a couple of issues.  One is that there are only a few Title 11 claims.  And so there's no supplemental jurisdiction for all of the state law claims.  There are some -- many Defendants for whom there's no bankruptcy-type claim against them and they would be dismissed in their entirety.  And that of the claims that are Title 11 claims, and there are only a few, that those now that the Plaintiff is not the Litigation Trustee and this is not being brought for the benefit of the estate, they wouldn't have the benefit of the golden creditor rule.  And therefore, all of them would be long time-barred.

So there are a number of interacting factors that would deprive the Court of any jurisdiction at the end of the day, when all of the considerations were evaluated.  And I see Ms. Dandeneau who is much more expert in the issue of jurisdiction jumping up.  So I would defer to her if she has anything further to say.

THE COURT:  Hold on.  Again, we'll get to all counsel

in order here, but I'm just trying to understand.  I'm trying to understand this argument and I'm not trying to say that I'm going to decide this argument on jurisdiction today, but there's the issue of jurisdiction and then there's the issue of whether or not the case should be referred to the bankruptcy court.

And I want to make sure that we're talking about the same thing here, because if there is federal court jurisdiction that is related to the bankruptcy case, that doesn't deprive the me or the federal courts, as I see it, as having jurisdiction.  Now, whether or not the reference should be withdrawn and it be heard before the district court is different than jurisdiction or subject matter jurisdiction.  So I'm just wanting to make sure that I understand what the parties are saying.

So what I hear you saying is, is that as to some of these Defendants, there is questions of subject matter jurisdiction because there are no Title 11 claims or causes of action.  As to others, there may be Title 11 causes of action but even still, because of jury rights, the reference should be withdrawn no matter what because of those issues.

Is that a fair way to summarize what you're saying?  And then I'll let Ms. Dandeneau also provide some context to all that.

MS. DEITSCH-PEREZ:  Yes.  And I will pass the baton.

THE COURT:  Okay.  All right.  Go ahead.

MS. DANDENEAU:  Thank you, Your Honor.  For the record --

THE COURT:  Forgive me if I mispronounce your last name.  Please forgive me.

MS. DANDENEAU:  It happens all the time, Your Honor.

For the record, Deborah Dandeneau for Mr. Ellington and Mr. Leventon.  I'm the token bankruptcy lawyer here, so that's why they punt all these questions to me.

Your Honor, just to put this all in context, this case was brought post-confirmation.  And as Your Honor knows, post-confirmation jurisdiction in and of itself, even when brought by a litigation trustee or the debtor, comes under stricter scrutiny.

And so just so we're clear, we had argued from the outset that putting aside the Title 11 causes of action, that we felt there was no post-confirmation -- there was no bankruptcy subject matter jurisdiction at all for the case back when it was being brought by the litigation trust.  And we continue to believe that but also now, and this was part of the discussion that we had with Judge Jernigan, what our position is that given the change in Plaintiff, actually from going from a Defendant to becoming the Plaintiff here, given the change of Plaintiff, we believe the Court has to re-examine its bankruptcy subject matter jurisdiction.  And we think that

argument is even stronger now.

That is also part of our motion to dismiss, for which Judge Jernigan issued a report and recommendation on that particular issue.  She didn't really supplement the motion to dismiss report and recommendation, but that is also pending before the district court.  So I just wanted to clarify to the extent that needed any clarification that we've always asserted that there was an issue with subject matter jurisdiction with these (indiscernible).  And the predominant claims are state law claims.  There are a handful of fraudulent transfer claims at issue.  No preference claims, simply fraudulent transfer claims, some of which as Ms. Deitsch-Perez alleged go back 10 years before the petition date on the basis of the so-called golden creditor rule.

So that's the only thing I wanted to add, just in terms of correction of Mr. McEntire's comments was, I think he made a statement that we objected on jurisdictional grounds when he filed his Rule 25 motion to substitute and that the Court overruled our jurisdiction arguments.  What Judge Jernigan said in that context was that she viewed Rule 25 as a procedural issue and that we would address the issue on subject matter jurisdiction later.

So I didn't want this Court to have some impression that Judge Jernigan has actually ruled on the effect of Mr. McEntire's client substituting in as counsel --

MR. McENTIRE:  Your Honor, may I briefly respond just --

THE COURT:  One moment, Mr. McEntire.  Again, we're not -- this is a status conference.  I understand the parties don't necessarily agree on each other's positions, but I'm just trying to understand the case.

Real quick though, Ms. Dandeneau, so the motion to dismiss that was filed by the Defendants, Judge Jernigan has only issued a report and recommendation on that?

MS. DANDENEAU:  Your Honor, actually I think I may be incorrect.  I'm not sure that she actually ever issued a report and recommendation on the motion to dismiss.

My recollection is that she stated that it was her position, and I know that somebody is going to correct me if I misstate this, that it is her position not to rule on substantive motions while there is a pending motion to withdraw the reference before the district court because it's really up to the district court to decide the extent to which the district court wanted the bankruptcy court to weigh in on particularly substantive issues in the case.

THE COURT:  Okay.  But that motion has been heard?

MS. DANDENEAU:  It was heard before the bankruptcy judge.  I'm sorry, it was briefed.  It was briefed --

THE COURT:  Okay.

MS. DANDENEAU:  But it is subject -- yes.

MS. RUHLAND:  The motions to dismiss have essentially just been sitting since the motion to withdraw the reference report and recommendation was objected to and sent up to the district court to resolve.  And so the bankruptcy court, as Ms. Dandeneau totally correctly said, the bankruptcy court said it was its practice not to rule on a motion like that, not to even hear it until the objections to the report and recommendation were resolved by the district court.

THE COURT:  Okay.

MR. McENTIRE:  Is this an appropriate time now, Your Honor?

THE COURT:  Let me just make sure that Ms. Dandeneau now doesn't have anything further that she wanted to say.

MS. DANDENEAU:  Nothing further, Your Honor.  Thank you.

THE COURT:  All right.  Go ahead, Mr. McEntire.

MR. McENTIRE:  So I'd like to correct a couple of things, Ms. Dandeneau indicated at least one.  There has been no challenge or appeal concerning any ruling on the impact on jurisdiction, subject matter jurisdiction, due to the assignment.  That's not pending before the United States District Court at this time.  They've not challenged that in front of the United States District Court.

And I think it's very clear that as a jurisdictional issue, or challenge, that's not going to go very far, number

one, because the Fifth Circuit has very clearly indicated in its Double Eagle case that almost a case exactly like ours, where a third party, non-debtor receives an assignment.  It does not change the jurisdictional analysis, which is vested.  If the Court has subject matter jurisdiction on day one, it has subject matter jurisdiction throughout.

So the issue of the assignment is, that has not really been -- there's been no formal motion to dismiss on those grounds that I'm aware of, all right.  And it's certainly not been brought before the United States District Court on those grounds.  And I would also refer the Court to Judge Jernigan's order, and I believe it's -- and original recommendations, which is Docket 151, where she goes through and looks at every one of the claims, the core claims, the non-core claims, the related-to claims and a mixture.  And she goes through a very detailed analysis and breaks it out on the grid.

And there are 36 causes of action and she analyzes every one.  And she said, based upon that, she rejected their arguments that there was no subject matter jurisdiction.  That is what is currently pending before the United States District Court, as I understand on appeal.  And that appeal is what has been abated pending further action of this Court on the motion to lift the stay and the stay has been lifted.  And they have made no effort to undo the abatement in the United States District Court, to my knowledge, to further prosecute that

appeal.

THE COURT:  Okay.  Let me just state something because I think I understand everybody's positions and the very different way in which this all works for bankruptcy courts.

Mr. McEntire, what I understand you saying is, is that the district court still has before it, it abated it, but it still had before it the report and recommendation on whether or not to withdraw the reference.  And that has not been decided.  That Judge Jernigan's original report and recommendation stated that she didn't think the reference should be withdrawn until the trial because of the jury trial issue, jury trial rights.

But I also understand that we've got a motion to dismiss that was briefed but never heard or ruled on that does not relate to the assignment as Mr. McEntire has mentioned.  And so, no party has at this point moved to dismiss based on the new Plaintiff that is Hunter Investment or Hunter Management or Hunter Mountain.

MR. McENTIRE:  It's been briefed.  There's been no formal motion.  It's been --

THE COURT:  I think what was briefed, Mr. McEntire, was just whether or not this change has an effect on the withdrawal of the reference --

MR. McENTIRE:  Okay, fair enough.

THE COURT:  -- as opposed to whether or not the case

should be dismissed.

Ms. Deitsch-Perez, I saw you raise your hand.  Is that what you were going to say?

MS. DEITSCH-PEREZ:  It was.  I was going to say Judge Jernigan passed along all the briefing to Judge Scholer.  So while there's been no formal motion, the issues have been placed in front of Judge Scholer by way of the transmission of the supplement to the report and recommendation and all of the briefing that went with it.

THE COURT:  All right.  So here's what I'm hearing the parties tell the Court, which is as follows.  It sounds like we're very close to all the parties agreeing that the reference should be withdrawn to the district court.

Certainly, I think the parties at a minimum agree that this Court will not be the one that ultimately tries the case because of jury trial rights.  But we're waiting to hear from the district court as to whether or not she's going to -- or the district court's going to withdraw the reference and completely take this Court out or it's still possible that the judge there decides that I'll act as a magistrate.

Right.  We're still kind of waiting for that, though the parties may all agree just remove it or withdraw it to district court and you all will make your arguments on dismissal and subject matter jurisdiction to that Court.  So that's fine.

Let me ask this.  Have the parties asked for or requested in any way with the district court a status conference to discuss -- and I realize Mr. McEntire maybe just stated today for all the other parties' benefit that he's very close and considering withdrawal of the reference.  But what is the parties' intention to inform the district court if an agreement on withdrawal of the reference is reached?

MR. McENTIRE:  Well, Your Honor, assuming that we do agree to withdraw the reference, I would propose that I act immediately requesting the status conference.  And I mean, immediately.  Because we need to get all this behind us and get the case moving.

THE COURT:  Okay, all right.  I'm just trying to understand whether or not I need to set motions for hearings.  Or whether I need to -- because I do understand that there was an original stay pending the termination of the withdrawal of the reference was sought, but denied, I think.  But of course, then after that, there was the agreed upon stay by the Litigation Trustee because of what was happening in the main bankruptcy case, which obviously Mr. McEntire has put on notice that that's no longer in place.

So all that being said, I'm just trying to determine how I manage this on my docket.  So it doesn't sound like -- or it sounds like within the next 48 hours, Mr. McEntire is going to determine, on behalf of his clients, whether or not they're

going to seek or agree to withdrawal of the reference and then seek a status conference with the district court.

To the extent that that is not what is determined, then I'm going to need a party to file a -- Mr. McEntire, you're going to have to set your motions for hearing, I guess, is the best way to move forward next. Because otherwise this will just sit out there and I don't want that to happen, so --

MR. McENTIRE: Yes, sir.

THE COURT: We will -- what I will do so that I make sure that I don't lose this is we will set another status conference. So if we don't hear from the parties, we will set another status conference. We will most likely set it by Webex. Well, we will set it by Webex. I will get with my courtroom deputy, but you all will see, similar to the notation for this status conference, it will be noted on the docket as to when that will be set.

Certainly, I will let the parties know that this Court does not have any issues with or take offense to the idea of withdrawing the reference. It certainly sounds like it may be best in the district court. I don't know. But otherwise, we're happy to make sure that things move forward in the case so that it doesn't sit there.

Is there anything further that the parties believe they need to bring to the Court's attention at this time?

MR. McENTIRE: I would ask for one indulgence, Your

Honor.  Forty-eight hours.  May I have until end of business 5

o'clock on Friday to advise of our position?

THE COURT:  That'll be fine.  I mean, if you agree,

Mr. McEntire, that the reference should be withdrawn, I'm not

expecting anything filed in my Court.  I'm expecting that

you'll be filing with the district court something to get them

to put them on notice that you're wanting a status conference

regarding the report and recommendation.

MR. McENTIRE:  Yes, sir, I'll do that.

THE COURT:  So, okay.  All right, if there's nothing

further from the parties, I appreciate everybody's time.  I

appreciate everybody's indulgence and bringing me up to speed.

And obviously, we're here if you all need us and, if not,

that'll be fine too.  So, thank you.

MR. McENTIRE:  Thank you.

MS. DEITSCH-PEREZ:  Thank you, Your Honor.

MS. DANDENEAU:  Thank you, Your Honor.

MS. RUHLAND:  Thank you, Your Honor.

MR. McENTIRE:  Bye-bye.

(The proceedings were adjourned at 2:13 p.m.)

* * * * *

CERTIFICATE

I, DIPTI PATEL, court approved transcriber, do hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and transcribed to the best of my ability.

_____

DIPTI PATEL, AAERT CET-997

Expires: December 6, 2026

Liberty Transcripts                    Date:  February 22, 2026